**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**


IN RE CIGNA CORPORATION PBM          Civil No. 3:16-cv-1702 (WWE)
LITIGATION

                                     CLASS ACTION



**DEFENDANT OPTUMRX, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**THE CONSOLIDATED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

FACTUAL ALLEGATIONS IN THE COMPLAINT ......................................... 2

LEGAL STANDARD .......................................................................................... 6

ARGUMENT........................................................................................................ 6

I.      PLAINTIFFS FAIL TO STATE PLAUSIBLE ERISA CLAIMS .......................... 6

    A.      Plaintiffs Are Entitled Only to the Prices Set Forth in their Benefit Plans. ........................................................................................................ 6

    B.      Plaintiffs Fail To State A Plausible Claim For Benefits under Either ERISA Section 502(a)(1)(B) (Count I) or ERISA Section 702 (Count V)........................................................................................................... 7

        1.      Plaintiffs Failed To Exhaust Their Administrative Remedies—A Prerequisite To Seeking Benefits Under Section 502(a)(1)(B) (Count I)............................................................. 8

        2.      Three of the Named Plaintiffs Fail to Allege Anything Other Than That They Purchased Prescriptions On Certain Dates ........... 12

        3.      Plaintiffs' Deficient Discrimination Allegations Cannot Salvage Their Claim For Benefits (Count V) .................................. 13

    C.      Plaintiffs Fail to State Ancillary Fiduciary Claims (Counts II-IV & VI)......................................................................................................... 14

        1.      Plaintiffs Fail to Allege Fiduciary Acts ........................................... 15

        2.      Plaintiffs Fail to Plead the Elements of a Prohibited Transaction or Breach of Fiduciary Duty Claim (Counts II-IV & VI) ................................................................................................ 17

    D.      Plaintiffs' Ancillary Claims Also Fail Because They Fail to Plead a Proper ERISA Remedy (Count II-VII) ...................................................... 19

1.    Plaintiffs Fail to Plead a Claim On Behalf Of The Plans And
            Therefore Fail To State A Claim For Relief Under ERISA
            Section 502(a)(2) (Count IV) ........................................................ 19

      2.    Plaintiffs' ERISA Section 502(a)(3) Claims Seek Duplicative
            Relief And As A Matter Of Law Cannot Proceed As
            Standalone Claims (Counts II-VII) ............................................. 20

   E.   Plaintiffs' Derivative Claims For Co-Fiduciary And Non-Fiduciary
        Liability Fail To State A Claim For Relief (Counts VI and VII)............... 22

II.   PLAINTIFFS' CIVIL RICO CLAIMS FAIL (COUNTS IX) .............................. 23

   A.   Plaintiffs' Racketeering Allegations Fail to Meet the Heightened
        Pleading Requirements Of Fed. R. Civ. P. 9(b) ........................................ 24

   B.   Plaintiffs Fail to Allege Facts Plausibly Demonstrating OptumRx
        And Wholly Independent Pharmacies Qualify As A RICO Enterprise ...... 25

   C.   Plaintiffs Fail to Plead that OptumRx had "Control" Over the
        Alleged Enterprise .................................................................................... 29

III.  Plaintiffs' Failure to Plead a RICO Claim Against OptumRx Dooms Their
      Conspiracy Claim (Count X).................................................................... 30

CONCLUSION ............................................................................................. 30

## INTRODUCTION

Plaintiffs seek to recover pharmacy benefits under benefits plans sponsored by their respective employers and insured or administered by Cigna Health and Life Insurance Company (collectively with Defendant Cigna Corporation, "Cigna").  Plaintiffs allege they were charged co-payments, coinsurance, or deductibles (collectively, "member contributions") that were higher than the amounts set forth in their ERISA plans.  Plaintiffs are mistaken in fact and law.

Plaintiffs assert nine claims against OptumRx, Inc. ("OptumRx").  OptumRx provides pharmacy benefit management services to Cigna such as negotiating retail pharmacy network contracts.  Like their claims against Cigna, however, Plaintiffs' claims against OptumRx fail.

- Plaintiffs' claim for ERISA benefits (Count I) fails from the start because Plaintiffs have not exhausted their required administrative remedies, and three of the named Plaintiffs also fail to  allege even a plausible factual basis for a claim under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Plaintiffs also fail to state a claim for discrimination under ERISA Section 702 (Count V) because they fail to allege that they pay higher member contribution amounts because they have certain medical conditions.

- Plaintiffs' ERISA breach of fiduciary duty and prohibited transactions claims (Counts II-IV & VI-VII) fail because they do not plausibly allege that OptumRx or Cigna engaged in any fiduciary act or that OptumRx took plan assets.

- In addition, the ERISA remedy provisions Plaintiffs invoke do not give them the right to recover against OptumRx.

- Plaintiffs' RICO claims (Counts IX-X)[1] fail because Plaintiffs do not plausibly allege that OptumRx agreed to conspire, exercised control over an enterprise, or engaged in a pattern of racketeering activity.  The garden-variety business services Plaintiffs challenge do not come close to satisfying the requirements for pleading a RICO claim.

The Consolidated Complaint ("Complaint") thus should be dismissed in its entirety.[2]

---

[1] OptumRx is not named in Count VIII, which asserts a civil RICO claim against Cigna.

[2] As noted in its Motion, OptumRx also hereby joins in Cigna's Motion to Dismiss and incorporates by reference as if fully restated in this Memorandum of Law the arguments made in Cigna's motion and supporting memorandum of law and exhibits.

## FACTUAL ALLEGATIONS IN THE COMPLAINT

The five Plaintiffs assert ERISA claims under the terms of four distinct health plans administered by Cigna and sponsored by Plaintiffs' employers (collectively, "Plans").  Compl. ¶¶ 35-39; Exs. 1-4.[3]  Three of the four Plans are self-funded, meaning that benefits due under those plans are paid from the assets of the sponsoring employers.  The fourth plan is an insured plan, for which Cigna plays the traditional risk-bearing role of an insurer.  All four sponsoring employers are the designated ERISA "Plan Administrators" under their respective Plans.  Ex. 1 at 60; Ex. 2 at 56; Ex. 3 at 53; Ex. 4 at 58.  OptumRx acted under a contract with Cigna to perform certain designated pharmacy benefit services.  Compl. ¶ 4.

Plaintiffs' Plans all include specific provisions addressing prescription drug coverage. Although their terms vary, each Plan states that a participant may have to pay a member contribution for prescription drugs, including copayments, deductibles, and/or coinsurance.  Ex. 1 at 36; Ex. 2 at 35; Ex. 3 at 30; Ex. 4 at 13.  Each Plan also includes a schedule identifying the applicable member contribution based on the drug (e.g., generic, brand-name with generic-equivalent, or brand-name without generic equivalent) and where it is purchased (e.g., network pharmacy, retail network pharmacy, non-network pharmacy, or mail order pharmacy).  Ex. 1 at 36-37; Ex. 2 at 35-36; Ex. 3 at 30-31; Ex. 4 at 13-15.

While Plaintiffs summarize only a few provisions of the Plans, all of them have distinct language and operation.  After satisfying the annual deductible, Daniel Perry's Plan, for example, requires a $10, $30, or $50 copay depending on the tier level of the drug for those

---

[3] Plaintiffs provided OptumRx with the plan documents attached hereto and represented that these were the document referred to in the Complaint.  OptumRx does not represent that those are the legally operative plan documents.

purchased at an in-network pharmacy.  Ex. 3 at 30-33.  Courtney Gallagher's Plan provides for a coinsurance amount based on the tier level, and subject to certain minimums for Tier 2 and Tier 3 drugs.  Ex. 1 at 36-39.  Nina and Roger Curol's Plan provides for a copayment or a certain percentage of cost, *whichever is greater*, based on tier level.  Ex. 4 at 13-14.  And Kimberly Negron's Plan provides for a certain copayment based on tier level.  Ex. 2 at 35-36.  Each Plan defines the term Copayment or Coinsurance.  Ex. 1 at 36; Ex. 2 at 35; Ex. 3 at 30; Ex. 4 at 13.[4]

Plaintiffs allege that Cigna uses a mix of internal and external resources to administer pharmacy benefits to members.  Compl. ¶ 3.  They assert that Cigna has an in-house pharmacy benefit manager ("PBM") to assist in the administration of certain pharmacy benefit functions, but outsources and subcontracts other functions to third-party service providers.  *Id.*  Plaintiffs further allege that Cigna contracts with both Argus Health Systems Inc. (a non-party) and OptumRx to manage certain aspects of the plans' pharmaceutical benefits.  Compl. ¶¶ 3-4.  According to the Complaint, Argus and OptumRx both act as Cigna's agent in administering Cigna's plans.  Compl. ¶ 50.[5]

Plaintiffs allege that OptumRx provides pharmacy benefit management services to Cigna under a Pharmacy Benefit Management Agreement ("PBM Services Agreement").  Compl. ¶ 4.[6]

---

[4] Some of the Plans also provide for certain maximum member contribution amounts.  Negron's and the Curols' Plans provide that the member contribution amount will not exceed the amount paid by the plan or the pharmacy's usual and customary charge.  Ex. 2 at 38, Ex. 4 at 13.  The Usual and Customary Charge is defined as "the established Pharmacy retail cash price, less all applicable customer discounts the Pharmacy usually applies to its customers, regardless of the customer's payment source."  *Id.*  While Plaintiffs allege that Negron's Plan had a 50% cap, the Plan provides otherwise, stating: "If the cost of a Prescription Drug or Related Supply is less than the copay, then you . . . pay 100% of the cost."  Ex. 2 at 13.

[5] The Complaint does not indicate what part of the claims processing Argus is responsible for and what part OptumRx is responsible for.  It does allege that Argus is a PBM and claims processor, Compl. ¶ 43, and provides "administrative management of pharmacy claims for millions of Cigna's commercial plan members."  *Id.* ¶ 43, n. 10.  Argus was the "primary external PBM" Cigna used before 2013 and remains "part of Cigna's pharmacy benefits delivery system."  *Id.* ¶ 4.

[6] On June 10, 2013, Cigna entered into the PBM Services Agreement with Catamaran PBM of Illinois, Inc. ("Catamaran").  In 2015, OptumRx acquired Catamaran.

Plaintiffs allege that the PBM Services Agreement tasks OptumRx with providing "prescription drug procurement and inventory management, order fulfillment for Cigna's home-delivery pharmacy, retail network contracting, and claims processing."  *Id.* ¶ 42, n. 8.

Generally, pharmacy benefits in health plans include a "network" of pharmacies that have agreed to discounted prices in exchange for the benefit of being included in the plan's network. *See* Compl. ¶ 59.  The discounted rates are often described as a percentage of Average Wholesale Price ("AWP").[7]  Even setting aside the health plan's contribution, a member of a plan that includes a pharmacy benefit thus is likely to pay a lower price than an uninsured individual who seeks to purchase the same medication at the same pharmacy based on the retail price.

Plaintiffs allege that when an individual fills a prescription, certain information must be gathered and transmitted to determine the proper price of the drug.  Compl. ¶ 52. The patient's name, the drug type, and the drug quantity, all are transmitted via wire to a "switch" that directs the information to the correct PBM.  *Id.*  The PBM then processes the claim in real time based on the terms of the plan Cigna is administering.  *Id.*  The PBM then electronically transmits a message back to the pharmacy indicating whether the drug and patient are covered and, if so, the amount the pharmacy must collect from the patient as a member contribution.  *Id.*  The Complaint alleges that such communication is done by Argus or OptumRx at Cigna's direction. *Id.* ¶ 255(a)-(dd).

When that message is transmitted back to the pharmacy, at least two different scenarios are possible.  If the contracted network price the PBM has agreed to pay the pharmacy for that drug is *higher* than the member contribution paid by the patient, then the member makes the member contribution and the PBM pays the pharmacy the remaining amount owed.  *Id.* ¶ 53.

---

[7] The AWP is set by the prescription drug manufacturers, not Cigna or OptumRx.  *Id.* ¶ 62, n. 12.

But if the contract price the PBM has agreed to pay the pharmacy is *lower* than the member contribution, then the member makes the member contribution and the pharmacy returns the residual amount to the PBM.  The Complaint refers to this residual amount as the "spread."  *Id.* ¶ 54.  Plaintiffs allege that OptumRx collected the "spread" and returned it to Cigna.  *Id.* ¶¶ 70-71, 242.

The Complaint also uses some examples to illustrate the point.  For example, it alleges that on January 26, 2016, OptumRx directed a pharmacy to collect from Plaintiff N. Curol a $10.00 copayment for a prescription drug, while the fee paid to the pharmacy was $7.37.  *Id.* ¶ 287(h).  The Complaint alleges that OptumRx then "clawed back" from the pharmacy the $2.63 "spread."  *Id.*  Far from supporting Plaintiffs' theories, however, this example undercuts them.  Curol's Plan provides that for a Tier 1 drug at a Retail Network Pharmacy, she is to pay a "$10.00 copay or 30% of the cost, *whichever is greater*"—precisely the amount she paid on January 26. Ex. 4 at 14 (emphasis added).  And although the Plan also provides that the copayment will not "exceed the amount paid by the Plan or the Pharmacy's Usual and Customary (U&C) charge," *id.* at 13, the Complaint makes no allegations regarding the amount paid by Curol's Plan or the usual and customary charge for N. Curol's or R. Curol's prescriptions.  Compl. ¶ 287.

The Complaint is even more bereft of details with respect to the prescription transactions of the other Plaintiffs.  For Plaintiffs Gallagher, Negron and Perry, the Complaint alleges only that they made prescription purchases on certain dates.  It makes no mention of their member contribution amount, whether any of their transactions were subject to a "clawback," or any other factual allegations supporting their claim that the pharmacy charges violated their Plans.  Compl.

¶¶ 96-100, 255, 287.  The mere fact that these individuals made purchases, of course, does not entitle them to any relief.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 545.  A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  To survive a motion to dismiss, "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is *plausible* on its face," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted) (emphasis added).

On a motion to dismiss, the Court may consider documents referenced in the complaint (here, plan documents) because they are "integral to the complaint." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (quotation omitted); *see also In re Avon Prods.*, 2009 U.S. Dist. LEXIS 32542, at *24 n.12 (S.D.N.Y. Mar. 3, 2009).

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE PLAUSIBLE ERISA CLAIMS

### A.    Plaintiffs Are Entitled Only to the Prices Set Forth in their Benefit Plans.

Plaintiffs' ERISA claims fail for many independent reasons.  At the outset, they all fail because Plaintiffs appear at times to assume that they are *always* entitled to the lower amount of the member contribution or the contracted network price the PBM paid the pharmacy.  Compl. ¶¶ 5, 20.  That is just not so.  Plaintiffs instead are entitled only to the prices *set forth in their respective ERISA plans*.  Sometimes, the member contribution is higher than the contracted network price; sometimes, it is lower.  The Complaint concedes that if the member contribution is lower than the network price, the PBM must pay the pharmacy the remaining amount owed.

*Id.* ¶ 54.  By the same token, there is nothing remotely pernicious or actionable about requiring members to pay their *plan-defined* member contribution amounts if those amounts are higher than the contracted network price.

In enacting ERISA, Congress set out to "induc[e] employers to offer benefits by assuring a predictable set of liabilities."  *Rush Prudential HMO Inc.* v. *Moran*, 536 U.S. 355, 379 (2002).  ERISA relies on a "straightforward rule of hewing to" the contractual "plan documents" in which plans set forth their terms.  *Kennedy* v. *Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009).  ERISA "is built around reliance on the face of [those] written plan documents," *id.* (citation omitted), and its "repeatedly emphasized purpose [is] to protect contractually defined benefits."  *Mass. Mut. Life Ins. Co.* v. *Russell*, 473 U.S. 134, 148 (1985).

These foundational principles of ERISA plainly bar any attempt by Plaintiffs to demand a "better" price than the ones set forth in their plans.  In *Alves v. Harvard Pilgrim Health Care, Inc.,* 204 F. Supp. 2d 198, 210-11 (D. Mass. 2002), for example, the plaintiff claimed that his group health plan administrator charged him a copay that exceeded the price the administrator paid for the drug, and that the administrator improperly kept the difference.  *Id.* at 202.  Rejecting that claim, the Court noted that the terms of the plan identified the copays that participants would pay, and nothing about the administrator's distinct financial arrangement implicated ERISA's fiduciary rules.  *Id.* at 211.

### B.    Plaintiffs Fail To State A Plausible Claim For Benefits under Either ERISA Section 502(a)(1)(B) (Count I) or ERISA Section 702 (Count V)

Count I should also be dismissed because Plaintiffs failed to exhaust their administrative remedies—a prerequisite to seeking benefits under a Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), claim.  In addition, three of the named Plaintiffs allege only that they purchased (unidentified) prescription drugs on certain dates without any factual support for their claim that

they were improperly denied benefits under the terms of their Plans.  And Plaintiffs' fallback attempts to obtain benefits through Count V reflect a fundamental misreading of Section 702 of ERISA, 29 U.S.C. § 1182.

1.   Plaintiffs Failed To Exhaust Their Administrative Remedies—A Prerequisite To Seeking Benefits Under Section 502(a)(1)(B) (Count I)

Plaintiffs concede they have not exhausted the administrative remedies provided to them under ERISA and their Plans.  The only question is whether exhaustion is required here.  It is, and Count I should be dismissed.

ERISA Section 503 requires every employee benefit plan to establish an administrative process for adjudicating claims for plan benefits that offers a "full and fair" review of a participant's claim.  29 U.S.C. § 1133(2).  The Second Circuit consistently has held that these claims processes must be exhausted before an ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), claim may be brought in court.  *Peterson v. Cont'l Cas. Co.,* 282 F.3d 112, 117-18 (2d Cir. 2002); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993); *see also DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 536 (E.D.N.Y. 2011).  This exhaustion requirement helps to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all those concerned."  *Kennedy*, 989 F.2d at 594 (citations omitted).  Thus, a complaint's failure to plead that these remedies have been exhausted mandates the dismissal of an ERISA Section 502(a)(1)(B) claim at the pleading stage.  *DeSilva*, 770 F. Supp. 2d at 536; *Zupa v. GE*, 2016 U.S. Dist. LEXIS 95765, at *4-12 (D. Conn. July 22, 2016) (granting motion to dismiss based on failure to plead administrative exhaustion).

All of the Plan documents describe procedures for invoking this administrative review process. Although the Plans' specific language varies, each Plan allows participants to submit claims to Cigna for "benefits" they believe are due. Ex. 1 at 62; Ex. 2 at 52; Ex. 3 at 47; Ex. 4 at 40. If Cigna denies that claim, the Plans provide a process for appealing that denial to Cigna. Some of the Plans even offer two separate opportunities to appeal that denial, each of which is delivered to a different Cigna employee. Ex. 1 at 62-63; Ex. 2 at 52; Ex. 3 at 48; Ex. 4 at 40. Cigna will then resolve the appeals, and, if adverse to the participant or beneficiary, will provide a letter identifying the specific reasons for the adverse determination. Ex. 1 at 64; Ex. 2 at 53; Ex. 3 at 49; Ex 4 at 41. Each Plan also requires these procedures to be exhausted before a participant or beneficiary may sue under ERISA. Ex. 1 at 65; Ex. 2 at 53; Ex. 3 at 49; Ex 4 at 41; *see also Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 485 (S.D.N.Y. 2004) (applying exhaustion requirement to claim that participant paid too much under plan terms for prescription drugs); 29 C.F.R. § 2560.503-1(c)(3)(iii).

These requirements are not mere formalities. They permit a plan's claims administrator (here Cigna) to interpret and apply the particular Plan terms governing each Plaintiff's benefits. That is not always a simple task. Determining whether, and to what extent, Plaintiffs are entitled to additional benefits requires a review and analysis of multiple plan terms—including plan copay/coinsurance provisions, deductible provisions, in-network verses out-of-network provisions, determining whether the Plaintiffs' "out of pocket maximum" has been met, and the Plans' prescription benefit terms and conditions. Allowing Cigna to interpret and apply these various Plan terms—and giving it the opportunity to perhaps determine that benefits should be paid for some plaintiffs—is exactly why courts require the ERISA administrative process to be exhausted before litigation may be commenced. *Kennedy,* 989 F.2d at 594.

Plaintiffs insist that they need not comply with this process because (1) their claim only seeks to "clarify" the right to future benefits, not past damages; and (2) exhaustion would be futile.  Compl. ¶ 148.  Neither argument saves their claim from dismissal.

*First,* Plaintiffs cannot circumvent the exhaustion requirement by arguing that they only "seek to enforce their rights under the terms of the ERISA Plans and clarify future rights, not recover benefits due."  Compl. ¶ 148; *see Del Greco*, 337 F. Supp. 2d at 485 (requiring exhaustion in case where plaintiff alleged that generic drug was erroneously classified as name brand, notwithstanding argument she was not seeking benefits).  In the first place, Plaintiffs' characterization of their claim contradicts the Complaint's requested relief—which demands that the Court declare that the "clawback" violates plan terms, and to enter an order "for payment of all amounts due them in accordance with their rights under the ERISA Plans."  Compl. ¶ 170(c); *see also* Compl. ¶ 169 (Plaintiffs "are entitled to recover the amounts they have been overcharged").

More fundamentally, seeking to "enforce" or "clarify" Plaintiffs' rights under their Plans still asks the kind of plan interpretation questions that the administrative process is designed to answer.  As a result, ERISA's exhaustion requirement thus applies just as much to requests to clarify future rights as to claims for past benefits.  *See, e.g., Kesselman v. Rawlings Co., LLC,* 668 F. Supp. 2d 604, 610 (S.D.N.Y. 2009) ("An action seeking to 'clarify . . . rights to future benefits' is still subject to the same exhaustion requirement as is an action to recover benefits due."); *Schein v. News Am. Publ.,* 1989 U.S. Dist. LEXIS 5705, at *7 (S.D.N.Y. May 23, 1989) (same).  This result logically flows from the text of ERISA Section 502(a)(1)(B), which allows participants both to obtain past benefits owed and to "clarify [their] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

*Second,* Plaintiffs cannot avoid dismissal for failure to exhaust their administrative remedies by alleging that it would be "futile" to do so.  To plead futility adequately, Plaintiffs must make a "clear and positive showing that pursuing available administrative remedies would be futile."  *Davenport v. Abrams,* 249 F.3d 130, 133 (2d Cir. 2001); *Millane v. Becton Dickinson & Co.*, 84 F. Supp. 2d 282, 288 (D. Conn. 1999) (Eginton, J.).  A plaintiff cannot simply suggest that a claim is likely to be denied—but instead must plead facts plausibly demonstrating "that it is certain that [their] claim" would have been denied.  *MacLeannan v. Provident Life & Accident Ins. Co.,* 676 F. Supp. 2d 57, 66 (D. Conn. 2009) (citations omitted).  The denial of that administrative appeal must be a "foregone conclusion."  *Saladin v. Prudential Ins. Co. of Am.,* 337 F. App'x 78, 80 (2d Cir. 2009); *Davenport*, 249 F.3d at 133.

Plaintiffs cannot meet this "heavy burden."  *MacLennan*, 676 F. Supp. 2d at 66.  Plaintiffs allege that "it is unlikely" that exhaustion would cause a refund or change in Cigna's practice.  Compl. ¶ 154.  But, merely alleging that recovery of benefits is "unlikely" is a far cry from alleging that a denial is a "foregone conclusions."  Nor may exhaustion be excused simply because the denial of benefits is based upon an established policy or practice.  *See Novella v. Empire State Carpenters Pension Fund*, 2007 U.S. Dist. LEXIS 63540, at *10-11 (S.D.N.Y. Aug. 28, 2007) ("[A] statement of past practice does not establish futility.  Indeed, the exhaustion requirement exists in part to allow plan administrators to review and remedy an error in its practices.").  The Complaint alleges that the "clawback" program is an established practice and occurs automatically by way of computer programs.  But, nothing precludes Plaintiffs from arguing to Cigna—as they do in their Complaint—that this program violates particular Plan

terms and giving Cigna the opportunity to pay benefits or reimburse Plaintiffs if it determines

they paid too much under the Plan terms.[8]

One federal court of appeals has already reached this precise conclusion.  In *Bickley v. Caremark Rx, Inc.,* 461 F.3d 1325, 1329-1330 (11th Cir. 2006), the Eleventh Circuit affirmed the Rule 12 dismissal of an ERISA benefits claim against a PBM for failure to exhaust administrative remedies.  The PBM allegedly kept a "spread" between the cost of the drug to the plan, and the discounted price the PBM paid to the manufacturer.  *Id*. at 1328.  The court rejected plaintiffs' claim that exhaustion would have been futile—even though the retention of this "spread" was allegedly an ongoing practice.  *Id.* at 1330.  Instead, the court held that the claim of futility was "merely speculative because [plaintiff] did not even attempt to pursue the administrative remedies available."  *Id.*  The same is true here.[9]

2.    Three of the Named Plaintiffs Fail to Allege Anything Other Than That They Purchased Prescriptions On Certain Dates

To state a claim for benefits, Plaintiffs must "provide the court with enough factual information to determine" whether they were entitled to benefits under the terms of their ERISA plan.  *See N.Y. State Psychiatric Ass'n v. UnitedHealth Grp. ("NYSPA")*, 798 F.3d 125, 135 (2d Cir. 2015) (affirming dismissal of claims for failing to identify plans or terms of plans or facts about wrongful denial of benefits under terms of plans).  Here, Plaintiffs Perry, Negron, and

---

[8] The mere fact that this matter is a class action does not excuse Plaintiffs' failure to exhaust—there is no class action exception to the exhaustion requirement.  *See Kennedy*, 989 F.2d at 594-95 (affirming dismissal of ERISA class action where named plaintiffs had not exhausted administrative remedies); *Frishberg v. Deloitte & Touche Pension Plan*, 2008 U.S. Dist. LEXIS 65343, at *16 (D. Conn. Aug. 26, 2008).

[9] Further, although Plaintiffs claim that they were unaware that Cigna was collecting and keeping the spread, they do not allege that were unaware that they allegedly paid more than they should have under the terms of their plans. And nothing would prevent them from raising this in the administrative review process, as they do in their Complaint.  *See Del Greco*, 2003 U.S. Dist. LEXIS 16910, at *19 (rejecting argument that concealment of conduct established futility); *Crumpler v. Boilermaker Local 587*, 1995 U.S. Dist. LEXIS 18744, at *7-8 (E.D. Tex. Nov. 30, 1995) (requiring exhaustion in concealment case).

Gallagher allege only that they purchased (unidentified) prescription drugs on certain dates.[10] They do not allege how much of a member contribution they paid, whether a portion of this member contribution was subject to a "clawback," or why they were entitled to pay less under the terms of their ERISA plans.  Plaintiffs simply allege that "[u]pon information and belief based on the fact that Plaintiffs purchased drugs for which Defendants overcharge customers, Plaintiffs were charged fees for prescription drugs in excess of the fees permitted by their Plans." Compl. ¶ 96.  But presuming the validity of a claim is not the same thing as plausibly pleading it. This is exactly the sort of conclusory allegation of liability that courts hold fail to state an ERISA claim for benefits.  *See also Iqbal*, 556 U.S. at 678.

### 3.    Plaintiffs' Deficient Discrimination Allegations Cannot Salvage Their Claim For Benefits (Count V)

Plaintiffs alternatively attempt to obtain plan benefits by arguing in Count V that Plan terms requiring the payment of member contributions that sometimes exceed the PBM's contracted network price (and, thus, subject to a "clawback") violate the antidiscrimination provisions of ERISA Section 702, 29 U.S.C. § 1182, because in *other* instances the participants pay less than the contracted network price.  This badly misreads Section 702's purpose and effect.

Section 702 prohibits a plan from requiring any participant to pay "a premium or contribution" greater than any other plan participant because of "any health status-related factor."  29 U.S.C. § 1182(a)(1).  This rule was designed to prevent a plan from "singl[ing] out an individual based on" health status, but it does not prevent a plan from creating "generally

---

[10] Although OptumRx believes that Plaintiffs Nina Curol and Roger Curol cannot prove that any violation of plan terms occurred, due to the generous standards applicable to a Rule 12(b)(6) motion, OptumRx is not moving to dismiss on this basis at this time.

applicable terms" that "may have a disparate impact on individual enrollees."  H.R. Rep. No. 104-736, at 186-87 (1996).

Plaintiffs do not allege that they pay higher member contributions because they have a certain medical condition—indeed, they do not allege *any* facts about their individual "health status."  *See* 29 C.F.R. § 2590.702(a) (defining "health factors").  Plaintiffs acknowledge that the member contribution amount required to be paid for prescription drugs under a particular plan is calculated in the same way for everyone covered under that plan regardless of an individuals' medical condition or the specific drug being purchased.  Compl. ¶¶ 88-89.  That is all that Section 702 requires.  *See* 29 C.F.R. § 2590.702(b)(2)(i)(B).

To be sure, Plaintiffs allege that participants may pay different copays for different *drugs*, but that does not violate Section 702, as long as those copays do not change based upon a particular participant's "health status."  *See* 29 C.F.R. § 2590.702(b)(2), Example 6.  This is true even if participants with particular conditions must pay for particular drugs, since the copay pricing rules are not "directed at individual participants or beneficiaries."  *Id.*  Plaintiffs acknowledge that the "clawbacks" apply to all plan participants who purchase a particular *drug*, regardless of whatever health conditions might cause them to use the drug.  Compl. ¶¶ 63, 86. This mandates the dismissal of their Section 702 claim in Count V.

### C.  Plaintiffs Fail to State Ancillary Fiduciary Claims (Counts II-IV & VI)

Each of Plaintiffs' ancillary fiduciary duty claims reflects a variation on a single theme— that by collecting the "spread" from pharmacies OptumRx and Cigna inappropriately received plan assets in violation of ERISA's fiduciary and prohibited transaction rules.  *See, e.g.*, Compl. ¶ 188.  These claims should be dismissed.

To maintain the breach of fiduciary duty and prohibited transaction claims raised in Counts II- IV, and VI, Plaintiffs must plausibly allege that OptumRx was (1) a fiduciary under

ERISA and (2) acted in its fiduciary capacity when taking the complained of action.  *See* 29

U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000).[11]  Plaintiffs have failed to

plead either.

        1.      <u>Plaintiffs Fail to Allege Fiduciary Acts</u>

To become an ERISA fiduciary, a party must exercise "*discretionary* authority or

*discretionary* control" over the "assets" of or "the administration of" the plan.  29 U.S.C. §

1002(21)(A) (emphases added); *see Yurevich v. Sikorsky Aircraft Div., United Techs. Corp.*, 51

F. Supp. 2d 144, 151 (D. Conn. 1999) (holding person performing ministerial function was not

ERISA fiduciary) (Eginton, J.).

Plaintiffs attempt to satisfy this requirement by pleading that the "Defendants" generally

engaged in certain fiduciary activities.  *See* Comp. ¶ 106.  Such categorical pleading is plainly

insufficient under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  The Second

Circuit has held expressly that "lumping all of the defendants together violates *Twombly*'s

requirement that plaintiffs plead a plausible factual basis for their claims.[12]  *Atuahene v. City of*

*Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each

claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint

failed to satisfy [Rule 8's] minimum standard." ).

Plaintiffs fare no better in making conclusory allegations that OptumRx and Cigna

"exercised discretionary control" or "improperly trade[ed] off the interests of plan participants."

---

[11] Specifically, Plaintiffs claim in Count IV that OptumRx breached its fiduciary duties when it collected the spread requires that it be a fiduciary.  *See Pegram,* 530 U.S. at 222.  Further all of the prohibited transaction claims in Counts II and III under ERISA Section 406(a) and (b) apply only to fiduciaries.  *See* ERISA § 406(a), 29 U.S.C. § 1106(a) (precluding a "fiduciary" from engaged in a prohibited transaction); ERISA § 406(b), 29 U.S.C. § 1106(b) (precluding a "fiduciary" from self-dealing activities).

[12] *See also Zalewski v. T.P. Builders, Inc.*, No. 1:10-cv-876, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011).

Compl. ¶ 106(p).  Those kinds of allegations are nothing more than a recitation of the legal

standard under ERISA.[13]  Legal conclusions masked as factual statements also fail to state a

claim under *Twombly*, 550 U.S. at 564.

When Plaintiffs *do* attempt to identify specific acts taken by OptumRx (acting as an

alleged agent of Cigna), those allegations affirmatively undermine Plaintiffs' legal conclusions.

Plaintiffs focus, for example, on OptumRx's roles in negotiating contracts with pharmacies,

processing claims at the time members submitted them, and communicating copay information

to pharmacies.  Those are not discretionary or fiduciary acts; they are instead ministerial acts

undertaken as part of OptumRx's arms-length business dealings with Cigna and network

pharmacies.

In *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463

(7th Cir. 2007), for example, the Seventh Circuit dismissed claims against a PBM accused of

inappropriately keeping rebates it received from drug manufacturers.  The plaintiffs alleged that

the PBM violated ERISA's fiduciary and prohibited transaction rules by failing to disclose, and

return, these rebates to the ERISA plan.  *Id.* at 471.  The Seventh Circuit rejected this argument,

finding that the PBM was not acting in an ERISA fiduciary role when it negotiated prices with

drug manufacturers, negotiated prices and contracts with retail pharmacies, made initial

decisions on whether participants were eligible for benefits, and then kept the spread between the

price paid by the ERISA plan and the price charged by the manufacturers.  *Id*. at 472-76.

Instead, the Court concluded that all of the PBM's activities were ministerial actions or business

---

[13] *See* ERISA § 3(21) ("[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any
discretionary authority or discretionary control respecting management of such plan . . . ."); ERISA § 406(b) ("A
fiduciary with respect to a plan shall not . . . act in any transaction involving the plan on behalf of a party (or
represent a party) whose interests are adverse to the interests of the plan or the interests of its participants . . . .").

activities unrelated to the administration of any particular ERISA plan. *Id.*[14] The same is true here.

The Complaint thus fails plausibly to allege any fiduciary acts by OptumRx or Cigna.

           2.     <u>Plaintiffs Fail to Plead the Elements of a Prohibited Transaction or Breach of Fiduciary Duty Claim (Counts II-IV & VI)</u>

In Counts II and III, Plaintiffs allege that Defendants' collection of the "spread" violates ERISA Section 406(a)(1)(D) & 406(b), respectively.  These prohibited transaction provisions require a plaintiff to show that the defendants inappropriately took "plan" assets for their own benefit.  Section 406(a)(1)(D) prohibits a "fiduciary" from "us[ing] . . . *any assets of the plan*." 29 U.S.C. § 1106(a)(1)(D) (emphasis added).  Similarly, Section 406(b)(1) prohibits a "fiduciary" from "deal[ing] with *the assets of the plan in his own interest*," while Section 406(b)(3) prohibits a "fiduciary" from "receiv[ing]" consideration "from any party dealing with [a] plan in connection with a transaction *involving the assets of the plan*."  29 U.S.C. § 1106(b)(1), (2) (emphases added).[15]

Plaintiffs have failed to allege that OptumRx or Cigna took "the assets of the plan" when it collected the "spread" from the pharmacies.  ERISA "plan assets" include assets the plan itself

---

[14] *See also Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.,* 973 F. Supp. 60, 67-68 (D. Mass. 1997) (holding that "the organization and offering of restricted pharmacy networks" was part of the carrier's administration of its own business and *not* the administration of the ERISA plans to whom it provided services, noting "it is critical to distinguish between the carrier's administration of the ERISA plan and 'its own administration of its business'"); *Pharm. Care Mgmt. Assoc. v. Rowe,* 429 F.3d 294, 301 (1st Cir. 2005), *cert. denied,* 547 U.S. 1179 (2006) (PBMs are generally not fiduciaries because they lack discretionary authority or control in the management of the plan but rather engage in ministerial duties); *Bickley v. Caremark Rx, Inc.,* 361 F. Supp. 2d 1317, 1330-34 (N.D. Ala. 2011) (PBM was not a fiduciary when it collected a "spread" and did not have discretionary authority over a plan); *Moeckel v. Caremark, Inc.,* 622 F. Supp. 2d 663, 676-78 (M.D. Tenn. 2007) (PBM was not a fiduciary when it decided ministerial claims and created networks); *Mulder v. PCS Health Sys., Inc.,* 432 F. Supp.2d 450, 460 (D.N.J. 2006).

[15] Although Plaintiffs also make reference to ERISA 406(b)(2), they have not only failed to allege that OptumRx engaged in any fiduciary act, *see supra* Section I.C.1, but they fail to allege that when collecting the "spread" that OptumRx represented a party in a "transaction involving the plan" (as opposed to its participants) as is required.  *See* 29 U.S.C. 1106(b)(2).

(as opposed to any of its beneficiaries) "*has an ownership interest in*" under the common law.
*See In re Luna*, 406 F.3d 1192, 1199-1200 (10th Cir. 2005) (emphasis added).   Plaintiffs have
failed to allege facts plausibly suggesting that the plans have an ownership interest in the
"spread."   The payments at issue here are collected from the contracting pharmacies, *not* from
the plan's assets, which alone preclude those assets from being considered plan assets.   *See
Deluca v. Michigan,* No. 06-12552, 2007 WL 1500331, at *3 (E.D. Mich. May 23, 2007)
(holding that copays are "profits belonging" to medical providers who provided care); *Caremark,*
474 F.3d at 476 n.6.[16]

Similarly, although Plaintiffs allege that the "clawbacks" come from underlying member
contribution amounts, those sums indisputably come from the individual participants (rather than
from the plan itself), and accordingly are not plan assets as a matter of law.   *Deluca*, 2007 WL
1500331, at *3; *Cf Larson v. UnitedHealthcare Ins. Co.*, 723 F.3d 905, 916-17 (7th Cir. 2013)
(noting that the establishment of copays in an insurance policy is not a fiduciary act).

Plaintiffs also cannot save their prohibited transaction claim by arguing that the contracts
between OptumRx and its network of pharmacies are plan assets.   Courts have regularly rejected
claims that a PBM deals with "plan assets" when it contracts with pharmacies.   A PBM's
contracts with network pharmacies are not "plan assets" even if they are part of the value the
PBM brings to the health plan.   In addition, "contracting with retail pharmacies . . . is a part of [a
PBM's] administration of its own business" and thus "is not fiduciary in nature."   *Moeckel*, 622
F. Supp. 2d at 677.   A PBM's contract with a pharmacy does not involve the administration of

---

[16] Cases such as *Caremark* make it clear that a PBM does not inappropriately use a "plan['s] assets" when it collects
a rebate from a third party, such as the "spread" from the pharmacies in this case, pursuant to contractual terms.
*Caremark*, 474 F.3d at 476; *see also Moeckel*, 622 F. Supp. 2d at 691-93 (holding that a PBM who received rebates
related to drug sales did not deal with plan assets).

any ERISA plan, but instead involves the PBM's "own business." *Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc.*, 973 F. Supp. 60, 67-68 (D. Mass. 1997)).

For these reasons, Plaintiffs fail to allege that OptumRx inappropriately used plan assets when it collected the "spread" from pharmacies.  Count IV therefore should be dismissed.

### D. Plaintiffs' Ancillary Claims Also Fail Because They Fail to Plead a Proper ERISA Remedy (Count II-VII)

Plaintiffs' claims in Counts II-VII also fail because the ERISA remedy provisions they invoke do not give them the right to recover.  Each of Plaintiffs' claims under Counts II-VII seek relief under ERISA Sections 502(a)(2) and 502(a)(3), which are the only ERISA remedial provisions available.[17]  In addition to the reasons discussed above, Count IV's request for relief under Section 502(a)(2)—which provides the remedy for a plaintiff raising a claim "on behalf of" a plan—fails because Plaintiffs only seek personal damages.  Further, Plaintiffs request relief under Section 502(a)(3) when they already have adequate relief under their Section 502(a)(1)(B) claim for benefits.  Their request for duplicative relief under ERISA Section 502(a)(3) cannot proceed as a separate, stand-alone claim.

1. Plaintiffs Fail to Plead a Claim On Behalf Of The Plans And Therefore Fail To State A Claim For Relief Under ERISA Section 502(a)(2) (Count IV)

Plaintiffs' Section 502(a)(2) claim in Count V fails because Plaintiffs seek relief on behalf of themselves, not on behalf of the ERISA Plan itself.  Section 502(a)(2), 29 U.S.C. allows only a "participant, beneficiary, or fiduciary" to sue to recover for "any losses to the plan"

---

[17] *See* 29 U.S.C. § 1132(a)(2) & (a)(3); *Shamoun v. Bd. of Trustees*, No. 05-CV-5730, 2007 U.S. Dist. LEXIS 62606, at *11 (E.D.N.Y. Aug. 23, 2007).

resulting from a breach of fiduciary duty.[18]  Because this section only protects the interests of a

plan as an entity, Section 502(a)(2) claims may be brought only by plan participants "in a

representative capacity on behalf of the plan." *Russell,* 473 U.S. at 142 n.9.  Courts reject claims

under Section 502(a)(2) raised on behalf of participants seeking personal relief.  *See Lee,* 991

F.2d at 1009.

The crux of Plaintiffs' Complaint is that they have suffered *individual* damages because

they were allegedly over charged for prescriptions.  Compl. ¶¶ 5, 18.  According to Plaintiffs, the

language of their individual Plans prohibited the collection of "spreads."  *Id.* ¶¶ 91-93.  Plaintiffs

seek remedies for their own individual benefit, such as clarifying *their* rights, restoring *their*

alleged losses, and awarding *them* damages, "equitable relief," and attorney's fees.  *See* Compl.,

Prayer for Relief ¶¶ G, H, I, J, L,M, O, P, Q.  Their prayer for relief does not include a single

request for plan-based monetary relief.  Because Plaintiffs only seek relief for themselves, they

cannot proceed with a claim "on behalf of the plan" under ERISA Section 502(a)(2).

2. Plaintiffs' ERISA Section 502(a)(3) Claims Seek Duplicative Relief And
As A Matter Of Law Cannot Proceed As Standalone Claims (Counts II-VII)

Although Plaintiffs alternatively seek relief for their claims in Counts II-VII under

Section 502(a)(3), they have no remedy under that section either.  Because their claim is one

solely for benefits allegedly due under their Plans, they are limited to the remedy available under

Section 502(a)(1)(B) (which requires exhaustion of administrative remedies).  They cannot

circumvent the procedural rules in that section by pleading a duplicative claim under ERISA

Section 502(a)(3).

---

[18] *Bona v. Barasch*, No. 01 Civ. 2289 (MBM), 2003 U.S. Dist. LEXIS 4186, at *27 (S.D.N.Y. Mar. 20, 2003) ("Unlike ERISA's other enforcement provisions, Section 502(a)(2) authorizes relief for the benefit of a plan only.") (*citing Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985)).

Section 502(a)(3) is a "catchall" provision that acts as a "safety net" for injuries caused by ERISA violations that ERISA's other civil enforcement provisions do not adequately remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); 29 U.S.C. § 1132(a)(3).  Where the other provisions provide adequate relief for an injury, however, further equitable relief under this section is not "appropriate."  *Id.* at 515.  In light of *Varity*, "[c]ourts in this Circuit" have held that "a claimant may not seek the *same relief* under 29 U.S.C. § 1132(a)(3) as she is seeking under another subsection of [ERISA Section 502]."  *Whelehan v. Bank of Am. Pension Plan for Legacy Cos.-Fleet-Traditional Benefit*, No. 6:12-CV-6279 MAT, 2014 WL 4285028, at *5 (W.D.N.Y. Aug. 29, 2014), *aff'd sub nom.*, 621 F. App'x 70 (2d Cir. 2015) (emphasis added).

Here, the relief Plaintiffs seek in their Section 502(a)(1)(B) claim is identical to that sought under Section 502(a)(3).  Plaintiffs seek a declaration that the collection of the "spread" violates Plan terms, with monetary damages in the amount of the "spread," and an injunction precluding any future "clawbacks."  Compl. ¶¶ 168-70, 181, 191, 201.[19]  *Cf. NYPSA*, 798 F.3d at 134 (holding that a separate ERISA Section 502(a)(3) claim could proceed where the pleadings sought different relief under than section than the ERISA Section 502(a)(1)(B) claim).  In every instance, the damages they seek are limited to the "spread" that OptumRx allegedly collects on behalf of Cigna.

Because Plaintiffs seek identical relief under these sections, their claims under Section 502(a)(3) should be dismissed.  Courts regularly reject Section 502(a)(3) claims based upon the same factual predicates and seeking the same relief available to them under Section 502(a)(1)(B).

---

[19] Although Plaintiffs seek injunctive and declaratory relief under ERISA Section 502(a)(3) prohibiting future clawbacks, that same relief is available to them under ERISA Section 502(a)(1)(B).  *See* ERISA § 502(a)(1)(B) (authorizing civil action to "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").

*See Frommert v. Conkright,* 433 F.3d 254, 270 (2d Cir. 2006) (dismissing 502(a)(3) claim where "[t]he relief that the plaintiffs seek . . . falls comfortably within the scope of § 502(a)(1)(B)"). This is true even where, as here, a plaintiff's claim for relief under Section 502(a)(3) is "couch[ed] in equitable terms," because in substance it is indistinguishable from the relief sought in the ERISA Section 502(a)(1)(B) claim.  *Id.*; *Frommert*, 433 F.3d at 270.[20]  Because the "real nature of the relief" Plaintiffs seek entirely duplicates the relief available under ERISA Section 502(a)(1)(B), the Court should ignore Plaintiffs' equitable "label."  *Gerosa v. Savasta & Co.,* 329 F.3d 317, 321 (2d Cir. 2003) (courts "must look to the real nature of the relief sought, not its label" to see if (a)(3) relief is "appropriate").[21]  To hold otherwise would allow Plaintiffs to avoid the rules courts have established governing Section 502(a)(1)(B) claims (such as exhaustion, *see supra* Section I.B.1) simply by repackaging their benefits claim in equitable clothing.[22]

## E.   Plaintiffs' Derivative Claims For Co-Fiduciary And Non-Fiduciary Liability Fail To State A Claim For Relief (Counts VI and VII)

Finally, Plaintiffs' attempt to raise derivative claims against OptumRx in the form of co-fiduciary claims in Counts VI, and claims against OptumRx as a non-fiduciary in Count VII all fail to state a claim for relief.  Each of these claims is derivative of Plaintiffs' breach of fiduciary

---

[20] *See also Hall v. Kodak Ret. Income Plan*, No. 07-CV-6169, 2008 U.S. Dist LEXIS 22411, at *16 (W.D.N.Y. Mar. 20, 2008) ("[I]n determining whether an action for equitable relief is properly brought under ERISA, [courts] look to the substance of the remedy sought … rather than the label placed on that remedy." (quotation omitted)); *see also Crosby v. Bowater Inc.*, 382 F.3d 587, 595 (6th Cir. 2004) (noting that plaintiff could not "transmogrify" claim for damages into equitable claim merely by using words equitable trust); *Kirk v. Lockheed Martin Group Benefits Plan No. 594*, No. 15-cv-00842, 2015 U.S. Dist. LEXIS 102727, at *11 (N.D. Cal. Aug. 4, 2015).

[21] *See also Pelosi v. Schwab Capital Mkts., LP.,* 462 F. Supp. 2d 503, 515 (S.D.N.Y. 2006) (dismissing an ERISA Section 502(a)(3) claim where the plaintiff did "not allege facts and conduct with respect to his fiduciary duty claim that are in any way different from the allegations supporting his other ERISA causes of action").

[22] *See Englert v. Prudential Ins. Co. of Am.*, 186 F. Supp. 3d 1044, 1048 (N.D. Cal. 2016) (dismissing an ERISA Section 502(a)(3) claim seeking an injunction on grounds that clarification of rights under plan pursuant to ERISA Section 502(a)(1)(B) was identical relief); *Schultz v. Prudential Insurance Co.*, 678 F. Supp. 2d 771, 777 (N.D. Ill. 2010) (denying ERISA Section 502(a)(3) relief where the participant's claim for benefits based on ERISA statutory violation was a "thinly veiled effort to repackage a benefits claim").

duty claims in Count II, III, and IV, and depend upon a predicate finding Cigna acted as a fiduciary, thereby making OptumRx liable as either a co-fiduciary or non-fiduciary party in interest for any violations of ERISA Sections 404(a) or 406(a).  Compl ¶¶ 216-18, 224.  Because these claims require an antecedent breach of fiduciary duty or trust to be viable, Plaintiffs' failure to plead any underlying fiduciary conduct (or violations) requires dismissal of Counts VI and VII.  *In re Citigroup ERISA Litig.*, 662 F.3d 128, 145 (2d Cir. 20011), *abrogated on other grounds by Fifth Third Bancorp v. Dudenhoeffer*, 134 S.C.t 2459 (2014) (affirming dismissal of co-fiduciary breach claim where plaintiffs failed to plead underlying breach of fiduciary duty); *Rosen v. Prudential Ret. Ins. & Annuity. Co.*, No. 3:15-1839 (VAB), 2016 WL 7494320, at *11 (D. Conn. Dec. 30, 2016) ("Without an underlying breach of fiduciary duty or breach of trust on the part of a Plan fiduciary, Prudential cannot be held liable for a knowing participation in a breach of trust" for non-fiduciary liability).

## II.    PLAINTIFFS' CIVIL RICO CLAIMS FAIL (COUNTS IX)

In Count IX, Plaintiffs allege that OptumRx violated RICO by (1) conducting an (2) enterprise through a (3) pattern of (4) racketeering activity.  *United States v. Turkette*, 452 U.S. 576, 580-81 (1981).  But Plaintiffs pursuing civil RICO claims face a particularly high pleading burden, and Plaintiffs cannot remotely meet it here.  To begin, Plaintiffs fail to allege any predicate acts of fraud, and certainly fail to allege those acts with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs may believe that they are entitled to additional plan benefits, but that kind of "garden variety . . . breach of contract" claim does not come close to stating a RICO claim.  *Aliev v. Borukhov*, No. 15-CV-6113 (ERK) (JO), 2016 U.S.

Dist. LEXIS 88856, at *14 (E.D.N.Y. July 8, 2016).[23]  Even if it could, OptumRx does not

conduct Cigna's affairs any more than Cigna conducts OptumRx's affairs.  The same is true with

respect to the independent pharmacies with which OptumRx contracts.  They are instead

independent companies that have engaged in arms-length transactions—not RICO co-

conspirators conducting some ill-defined criminal enterprise.  Count IX should be dismissed.[24]

### A.   Plaintiffs' Racketeering Allegations Fail to Meet the Heightened Pleading Requirements Of Fed. R. Civ. P. 9(b)

The Complaint's only assertions of "racketeering activity" involve alleged acts of mail

and wire fraud.  Because the Complaint "sounds in the predicate acts of mail and wire fraud, the

conduct of the defendant that allegedly constitutes fraud must be pleaded with particularity under

[Fed. R. Civ. P. 9(b)]."  *Faryniarz v. Ramirez*, No. 3:13-CV-01064 (CSH), 2015 U.S. Dist.

LEXIS 151472, at *20 (D. Conn. Nov. 9, 2015); *see also Curtis v. Law Office of David M.*

*Bushman, Esq.*, 443 F. App'x 582, 584 (2d Cir. 2011).  Plaintiffs must therefore plead, with

particularity: "(1) a scheme to defraud, (2) the defendant's knowing participation in the scheme,

and (3) the use of wire [or] mail . . . communications in interstate commerce in furtherance of the

scheme."  *Chanayil v. Gulati*, 169 F.3d 168, 170-71 (2d Cir. 1999).  In addition, "allegations of

predicate mail and wire acts should (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent."  *Id.* at 21; *see also Macomber v. Travelers Prop.*

---

[23] *See also Holmes v. Parade Place, LLC*, No. 12 Civ. 6299 (GBD), 2013 U.S. Dist. LEXIS 138645, at *13 (S.D.N.Y. Sept. 26, 2013) (rejecting "attempts to transform a garden variety fraud or breach of contract case into a federal RICO claim").

[24] Plaintiffs allege the existence of "four separate and distinct enterprises."  Dkt. 51, Am. RICO Case Stmt. at 2.  The fact that Plaintiffs are unable to settle on a single RICO theory to fit the allegations of the Complaint is further evidence that they are "trying to fit a square peg in a round hole by squeezing garden-variety business disputes into Civil RICO actions."  *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992).

*Cas. Corp.*, 3:98-CV-01060 (WWE), 3:98-CV-01093 (WWE), 1999 U.S. Dist. LEXIS 2707, at

*3-4 (D. Conn. Jan. 28, 1999) (Plaintiffs must "[s]pecify how their allegations of mail fraud and

wire fraud demonstrate [] a material misrepresentation or omission, the *sina qua non* of a scheme

to defraud, [and] defendants' knowing or intentional participation in such a scheme to defraud").

The Complaint fails to do any of these things, and should be dismissed for that reason

alone.  In fact, even if Rule 9(b) did not apply, the Complaint fails plausibly to allege the

elements of a RICO claim even under Rule 8.  Plaintiffs have failed, for example, to plead that

OptumRx or any other defendant made any fraudulent statement to the pharmacies or to the

Plaintiffs, or conducted a fraudulent scheme, as required to state a mail or wire fraud

racketeering claim.  *See Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) (mail

and wire fraud statutes require a showing of intentional fraud), *cert. denied*, 484 U.S. 1005

(1988), *overruled on other grounds*, *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989)

(en banc).  Although Plaintiffs allege that OptumRx communicated copay amounts to the

pharmacies for prescription drugs, they never allege that this copay information was inaccurate,

let alone fraudulent.  Compl. ¶¶ 287(a)-(r).  Nor do Plaintiffs allege that OptumRx made any

fraudulent statement to any of the other Plaintiffs or to pharmacies in conjunction with their

purchases, or had some legal duty to disclose additional facts.  Compl. ¶ 287.  Whether viewed

under ordinary or heightened pleading rules, Count IX thus fails to allege a viable RICO claim.

### B.    Plaintiffs Fail to Allege Facts Plausibly Demonstrating OptumRx And Wholly Independent Pharmacies Qualify As A RICO Enterprise

Plaintiffs also fail plausibly to allege that OptumRx perpetrated "racketeering" activity

through the actions of an "enterprise."  18 U.S.C. § 1962(c).  RICO defines an enterprise as (a)

"any individual, partnership, corporation, association, or other legal entity," or (b) an

"association in fact" enterprise, comprising "any . . . group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).

Plaintiffs allege two "enterprises" in the Complaint.  The first (asserted against Cigna in Count VIII) asserts that Cigna conducts the affairs of OptumRx and Argus.  As set forth more fully by Cigna, that alleged enterprise is nothing more than a legitimate business relationship.  The second (asserted against OptumRx in Count IX) asserts that OptumRx participated in an "association in fact" enterprise with the various pharmacies with whom it contracts (what Plaintiffs deem the "OptumRx Pharmacy Enterprise").  *See* Compl. ¶¶ 265-292.  Plaintiffs fail to allege facts plausibly suggesting this group qualifies as a RICO enterprise.

For one thing, Plaintiffs must allege that OptumRx and the pharmacies had the "a common purpose to engage in a particular fraudulent course of conduct and work[ed] together to achieve such purposes."  *Blue Cross v. SmithKline Beecham Clinical Labs., Inc*., 62 F. Supp. 2d 544, 551 (D. Conn. 1998) (internal quotation and citations omitted); *see also Boyle v. United States,* 556 U.S. 938, 948-49 (2009); *Turkette*, 452 U.S. at 583.[25]  The Complaint not only fails to meet this test, but alleges facts that directly refute the existence of an association in fact.  The Complaint repeatedly alleges that the pharmacies and OptumRx were at odds over various aspects of their commercial relationships—particularly regarding OptumRx's collection of the "spread" from the pharmacies.  Compl. ¶ 9 ("Defendants and/or their agents . . . force[d] network pharmacies to charge patients unauthorized and excessive amounts . . . .").  The Complaint also alleges that the pharmacies would like to disclose these alleged overcharges to customers, but are

---

[25] *See also First Nationwide Bank v. Gelt Funding,* Corp., 820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079 (1995) (plaintiff did not allege connection between various unrelated borrowers and defendant mortgage broker sufficient to establish RICO enterprise); *Cullen v. Paine Webber Group, Inc*., 689 F. Supp. 269, 273 (S.D.N.Y. 1988) (holding that clients of broker-plaintiffs did not share a common purpose or association to establish a RICO enterprise).

prevented from doing so by OptumRx.  Compl. ¶¶ 271-74.  Plaintiffs further allege that the pharmacies themselves are victims of the "clawback scheme."  Compl. ¶ 291; *see also* Pls.' Am. RICO Case Statement [Dkt. No. 51] at 32, ¶ 6(f) (describing pharmacies "as passive instruments through which Defendants engaged in the alleged racketeering activity").  The facts alleged conclusively demonstrate that OptumRx and the pharmacies did not have a "common purpose" in collecting the "clawback" on behalf of Cigna.

Courts have consistently rejected similarly-pled enterprises where the participants so clearly lack a common unifying purpose.  For example, in *SmithKline*, the Court rejected a proposed "enterprise" consisting of a company that allegedly "defrauded" group health plans, and the independent physicians who were duped into ordering unnecessary tests.  62 F. Supp. 2d at 552.  The Court held that the physicians—who were allegedly victims of the fraud—did not have a "common purpose" to conspire with the principal entity.  *Id.*[26]  Plaintiffs thus have failed to plausibly allege that OptumRx and the pharmacies had a "common purpose" to defraud Plaintiffs and, therefore, Count IX must be dismissed.[27]

In any event, Plaintiffs' RICO claim also fails because the Complaint does not plead that the individual pharmacies worked *together* to defraud plan participants.  So-called "hub and

---

[26] *See also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010); *Blue Cross and Blue Shield of Ala. v. Caremark, Inc.,* 98-CV-1285, 1999 U.S. Dist. LEXIS 16230, at *8 (N.D. Ill. 1999) ("Plaintiffs fail to allege how this large and geographically diverse group of almost 3,000 independent physicians and entities acted in concert with one another . . . . [T]here is no indication that the individual [providers] were even aware of each other's existence.").

[27] While Plaintiffs allege that OptumRx and the pharmacies had a common purpose to provide "Plaintiffs and Class members medically necessary prescription drugs in accordance with the terms of their Plans" is not sufficient to state a RICO "enterprise."  Rather, Plaintiffs must allege that OptumRx and the pharmacies had a "*shared illegal purpose to defraud.*"  *In re Pharm. Indus. Average Wholesale Price Litig.*, 307 F. Supp. 2d 196, 205 (D. Mass. 2004) (citing *SmithKline*, 62 F. Supp. at 549) (emphasis added).[27]  Here, the Complaint repeatedly alleges that the pharmacies had no interest, and no desire, to allegedly "defraud" the individual participants.  *E.g.*, Compl. ¶¶ 9, 68 (OptumRx forced pharmacies to agree to contractual terms); ¶ 58(c) ("pharmacy must accept the 'Clawback' amount as determined by the PBM"); ¶ 272 (pharmacies that did not abide by terms of "clawback scheme" would face "termination from all Optum pharmacy networks").  The Complaint lacks any allegation that any individual pharmacy profited from the "scheme."

spoke" enterprises (with OptumRx as the hub and the pharmacies as the spokes) "have long been held by courts in [the Second Circuit] to be insufficient as a matter of law to constitute a RICO enterprise" absent coordination or relationship among the "spokes" separate and distinct from the "hub." *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 98 (D. Conn. 2014) (citing *City of N.Y. v. Chavez*, 944 F. Supp. 2d 260, 269-76 (S.D.N.Y 2013), *rev'd and remanded on other grounds*, *City of N.Y. v. Bello*, 579 F. App'x 15 (2d Cir. 2014)).  Absent "concerted effort or organized cooperation between the spokes," there is no RICO enterprise.  *Id*. at 99.

Plaintiffs fail to allege a single fact suggesting that the pharmacy "spokes" had any relationship with one another.  There is no allegation these pharmacies coordinated their activities, or helped one another to perpetrate the allegedly fraudulent "clawbacks," or even knew of each other's existence.  *See N.E. Carpenters Health & Welfare Fund v. Abbott Labs.*, 2014 U.S. Dist. Lexis 134857, at *17-18 (N.D. Ill. Sept. 25, 2014) (dismissing RICO claims and noting the lack of communication among the spokes and awareness that other spokes were part of the alleged enterprise).  Nor is there any allegation that any of the individual pharmacies "depend[ed]" on the other pharmacies to perpetrate the fraudulent acts.  *See id.*; *Chavez*, 944 F. Supp. 2d at 275.

The alleged "hub-and-spoke" enterprise is similar to that alleged in *In re Trilegiant Corp.,* 11 F. Supp. 3d at 98.  There, Trilegiant allegedly sold fraudulent products through various e-merchants and credit card issuers.  *Id.* at 91.  The court held these entities did not constitute a RICO enterprise because "[t]here are no allegations that the spokes, comprised of the various E-Merchant Defendants and arguably the Credit Card Defendants, have any agreements or mutual expectations of reciprocal behavior."  *Id.* at 99.  Rather, "[a]t best, the Plaintiffs ha[d] alleged a series of bilateral . . . agreements between Trilegiant, one E-Merchant Defendant, and possibly

28

one Credit Card Defendant for each alleged fraudulent transaction."  *Id.*   Because these different

e-merchants and credit card issuers did not "work[] in a concerted manner," the plaintiffs'

attempt to establish a RICO enterprise failed as a matter of law.  *Id.*[28]

Plaintiffs have similarly failed to plead that the pharmacy-"spokes" worked together in a

coordinated fashion to perpetrate the alleged racketeering activity.  Their RICO claim against

OptumRx fails to state a claim and must be dismissed.

### C.   Plaintiffs Fail to Plead that OptumRx had "Control" Over the Alleged Enterprise

Finally, Plaintiffs' RICO claim fails because they fail to allege that OptumRx

"conducted" the affairs of the "enterprise."  Liability for participating in a RICO enterprise

extends only to those who "conduct" the enterprise—that is, those who "have some part in

directing [the enterprise's] affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179, (1993).  To

satisfy this test, more is required than being "part of an enterprise without having a role in its

management and operation" or "[s]imply performing services for the enterprise."  *Walter v.

Drayson,* 538 F.3d 1244, 1249 (9th Cir. 2008).  Rather, a "proper RICO defendant must have

exerted managerial control over the enterprise."  *Ally Bank v. Castle*, 2012 U.S. Dist. LEXIS

118452, at * 40-41 (N.D. Cal. Aug. 20, 2012) (internal quotations and citation omitted).

Here, Plaintiffs allege that, by virtue of arm's-length contracts with pharmacies,

OptumRx conducted the affairs of the pharmacies for purposes of RICO.  Compl. ¶¶ 273, 274,

277.  But arm's-length business dealings with an alleged enterprise do not satisfy the "operation

or management" test because "liability depends on showing that the defendants conducted or

---

[28] *See, e.g.*, *Ins. Brokerage*, 618 F.3d at 376; *N.E. Carpenters*, 2014 U.S. Dist. Lexis 134857, at *17-18 (noting lack of communication among the spokes and awareness that other spokes were part of the enterprise); *Target Corp. v. LCH Pavement Consultants, LLC*, 2013 U.S. Dist. Lexis 80306, at *12 (D. Minn. June 7, 2013) ("[T]he Third Circuit and several district courts have reasoned that a rimless hub-and-spokes organization does not qualify as an association-in-fact enterprise.").

participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Reves*, 507 U.S. at 185.  The contracts with its pharmacies create garden-variety "business relationships" and without more, cannot sustain a claim that OptumRx "conducted the affairs" of the alleged RICO enterprise or the pharmacies.  *Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, 2013 U.S. Dist. LEXIS 190701, at *21 (C.D. Cal. Dec. 13, 2013) (quotation omitted).  The pharmacies are independent actors separate and apart from OptumRx, and their relationships are governed by negotiated "contracts and agreements."  Compl. ¶ 270.

## III.   PLAINTIFFS' FAILURE TO PLEAD A RICO CLAIM AGAINST OPTUMRX DOOMS THEIR CONSPIRACY CLAIM (COUNT X)

In Count X, Plaintiffs allege that OptumRx and Cigna conspired to violate RICO.  But "analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled."  *Trilegiant*, 11 F. Supp. 3d at 108.  The reason is that a plaintiff may recover civil penalties for a conspiracy to violate RICO only if he has been injured "by reason of" an underlying RICO violation.  18 U.S.C. § 1964(c).  As explained above and in Cigna's Motion to Dismiss, the Complaint does not allege a cognizable violation of RICO.  *Trilegiant*, 11 F. Supp. 3d at 108.  Plaintiffs thus fail to state a claim under Section 1962(d).  Count X should be dismissed.

## CONCLUSION

For the reasons discussed above, the Consolidated Complaint should be dismissed with prejudice.

Dated:  March 10, 2017                    Respectfully submitted,


                                          By  */s/ Theodore J. Tucci*
                                          Theodore J. Tucci (ct05249)
                                          Kelly Frye Barnett (ct29817)
                                          ROBINSON & COLE LLP
                                          280 Trumbull Street
                                          Hartford, CT 06103
                                          Tel.: (860) 275-8200
                                          Fax: (860) 275-8206
                                          E-mail: ttucci@rc.com
                                          E-mail: kbarnett@rc.com

                                          William R. Stoeri (*Pro Hac Vice – ct14744*)
                                          Michelle S. Grant (*Pro Hac Vice – phv08827*)
                                          Andrew Holly (*Pro Hac Vice – phv08826*)
                                          DORSEY & WHITNEY LLP
                                          50 South 6th Street, Suite 1500
                                          Minneapolis, MN  55402-1498
                                          Telephone:      (612) 340-2600
                                          Facsimile:      (612) 340-2868
                                          stoeri.bill@dorsey.com
                                          grant.michelle@dorsey.com
                                          holly.andrew@dorsey.com

                                          *Attorneys for Defendant OptumRx, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017, I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if required.

By: */s/ Kelly Frye Barnett*
      Kelly Frye Barnett

4842-2178-8997\1