IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, and ROGER CUROL, Individually and on Behalf of All Others Similarly Situated, | No. 3:16-cv-01702-WWE (Consolidated) |
| Plaintiffs | |
| v. | |
| CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, and OPTUMRX, INC.,<br>DEFENDANTS. | April 21, 2017 |

## STIPULATION AND (PROPOSED) ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and

through their undersigned counsel, that the following specifications shall govern discovery of all

documents, electronically stored information ("ESI"), and any other materials and information

produced by the Parties during discovery in the above-captioned action.

**I.      General**

A.      The Parties shall take reasonable steps to comply with the procedures set forth in

this Stipulation.

B.      To the extent reasonably possible, the production of documents shall be

conducted to maximize efficient and quick access to documents and minimize related discovery

costs.  The terms of this Stipulation shall be construed so as to ensure the prompt, efficient, and

cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the

Local Rules, and any orders by this Court.

1.     Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.

2.     This Stipulation shall neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

3.     Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to an Agreed Protective Order on Confidentiality to be entered by the Court ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

4.     The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent compliance

with this Stipulation imposes an undue burden with respect to any protocol, source, or search

term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5.      The Parties agree that neither party is obligated to translate foreign

language documents into English for production purposes.

6.      Consistent with their obligations under applicable Federal Rules of Civil

Procedure, the Parties will attempt to resolve, in person, in writing (including email) or by

telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or

otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort,

the Parties may seek Court intervention in accordance with the Court's procedures.

## II.      Production Format – Hard Copy

Hard copy documents should be scanned in a manner so as to retain the original

organization of the hard copy documents.   Hard copy documents should be scanned in PDF

format or as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file

and a delimited database load file (i.e., .dat).  The database load file should contain the following

fields to the extent captured at the time of collection: "BEGNO," "ENDNO," "BEGATTACH,"

"ENDATTACH," "PAGES" and "CUSTODIAN."  Hard copy documents should be physically

unitized.  Color originals may be scanned in black and white ("B&W"), but either party may

subsequently request, by Bates number(s), a replacement set of images in color only to the extent

that the Requesting Party demonstrates that the loss of the color detracts from the usability or

reduces the ability to understand the information imparted in the original; however, categorical

or wholesale requests are deemed invalid.  To the extent the Producing Party OCRs the

document for its own benefit, OCR should be produced.

**III.      Production Format – Electronically Stored Information**

ESI should be produced as single-page, Group IV, 300 DPI TIFF images with the

exception of audio, video, and spreadsheet-type files (including, but not limited to, Microsoft

Excel and CSV files) which should be produced in native format.  All ESI should be produced

with a delimited, database load file that contains the metadata fields listed in Table 1 hereto, to

the extent captured at the time of the collection.  To the extent that metadata does not exist or is

not reasonably accessible or available because it was overwritten for any documents produced,

nothing in this Stipulation shall require any Party to extract, capture, collect or produce such

data.  An .opt image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the

reader using the native software that created the document.  For example, TIFF images of email

messages should include the BCC line.  PowerPoint documents should be processed with hidden

slides and all speaker notes unhidden, and should be processed to show both the slide and the

speaker's notes on the TIFF/JPG image.  Color originals may be produced in B&W TIFF format;

provided that: (1) a party may subsequently request, by Bates number(s), a replacement set of

images in Color and (2) the producing party must provide such Color versions within 10 business

days. The parties agree to only request color versions if they believe that the loss of the color

detracts from the usability or reduces the ability to understand the original.

If a document is produced in native format, a single-page Bates-stamped TIFF image

slip-sheet containing the confidential designation and text stating the document has been

produced in native format should also be provided.  If documents requested in native format

require redactions, the parties should meet and confer regarding how to implement redactions

while ensuring that proper formatting and usability are maintained.  Each native file should be

4

named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

The parties acknowledge that in some circumstances it may be more efficient to collect Electronic Files informally.  Accordingly, a party may collect and produce up to five hundred (500) Electronic Files utilizing informal collection methods even though such collection method may alter certain aspects of those files' metadata as they exist at the time of collection (e.g., created date, file path); provided that (1) the producing party will disclose to the receiving party, by Bates number, the files that were collected utilizing informal methods and (2) if the original metadata of these informally collected files becomes of material importance during the course of the litigation, the parties shall meet and confer regarding how to address that issue.

## IV.     Production Format - Structured Data

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## V.     Production Format - Media

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter or email.  If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover or email, an explanation of how to decrypt the files.

## VI.     Processing Specifications

A.      ESI Date and Time Processing: To the extent reasonably practicable, all ESI shall be processed within a uniform time zone: i.e., Greenwich Mean Time "GMT". To the extent a Producing Party cannot process ESI with GMT, it shall disclose the same and the Parties shall meet and confer regarding a reasonable alternative.

B.      Global or Horizontal Deduplication:  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN field should list each Custodian, separated by a semicolon, who was a source of that document.

C.      Email Thread Suppression:  Each Party may also deduplicate emails in such a way as to eliminate earlier or incomplete chains of emails, and produce only the most complete iteration of an email chain and any unique attachments associated with the email set; provided that none of the earlier emails in the chain contained attachments.  In other words, regardless of the existence of a more complete, later email, all emails that contain attachments must also be produced.

D.      Corrupted or Unreadable Files:  If any file is corrupted or not readable by the Producing Party, and is attached to an otherwise responsive document, it shall be produced with a slip sheet indicating the file is corrupt and could not be reviewed.

E.      System Files:  Each Party may exclude certain files and folders that are reasonably identified as system files and do not contain user-created files.

F.      Bates Numbering:  All images must be assigned a unique and sequential Bates number.

## VII.   Identification and Collection of Documents

A.      Except as otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

1.      List of records custodians;

2.      Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

3.      Location of relevant data sources including custodial and non-custodial; and

4.      Applicable timeframe for collection and review of documents.


B.      Search Methodology:

1.      Email and Non-Email: the Parties agree to search for responsive records from sources of hard copy and ESI to the extent that a custodian reveals, or a party believes, such locations may contain responsive information.

## VIII.  Preservation

A.      The Parties acknowledge that they have an obligation to take reasonable steps to preserve discoverable information in the Party's possession, custody, or control.

B.      Unless otherwise provided in this Stipulation, paper and electronic records that may contain non-duplicative information potentially relevant to the claims alleged in the Complaint, or any defenses thereto, or that may be reasonably calculated to lead to the discovery of admissible evidence, are subject to preservation.

C.      The Parties agree that the circumstances of this case do not currently warrant the preservation, collection, review, or production of the following types of ESI, which tend not to be reasonably accessible:

1.      Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4.      Data stored on photocopiers, scanners, and fax machines.

5.      Overwritten data in metadata fields that are frequently updated automatically, such as last-opened dates.

6.      Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy ("Backup System"). The prescription drug transaction data from October 2010 through the date of final judgment has been identified as residing on active media. To the extent such data resides on BackUp Systems, Defendants will notify Plaintiffs, and the parties will meet and confer to determine the proper steps for preservation, collection, review, or production.

7.      Server, system, or network logs.

8.      Voicemail messages.

9.      Text messages.

10.     Data only available on personal mobile devices.

11.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

12.     Logs of calls made from cellular or land-line phones.

13.     Instant messages, such as messages sent on Lync Online, Microsoft Communicator or any other instant message platform.

D.     The Parties anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery.  However, nothing herein shall prevent a Party from subsequently requesting ESI or other Documents identified above be preserved and produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval.

## IX.    Privilege and Privilege Logs

A.     The Parties agree that the following types of communication need not be included on a privilege log: (1) communications between and among Defendant's employees, representatives, or agents, on the one hand, and Defendant's in-house or outside legal counsel, on the other hand, relating to this litigation; (2) communications between Plaintiffs and their counsel; (3) communications between or among Defendants' counsel, including within a law firm; and (4) communications between or among Plaintiffs' counsel, including within a law firm.

B.     In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party will (1) identify the nature of the privilege (including work product) which is being claimed; (2) provide the

following information: (i) the type of document, e.g., letter or memorandum; (ii) the general

subject matter of the document; (iii) the date of the document; and (iv) the author of the

document, the addressees of the document, and any other recipients, and, where not apparent, the

relationship of the author, addressees, and recipients to each other when necessary to evaluate the

claim of privilege (e.g., identifying the attorney when the attorney-client privilege is claimed);

and (3) prepare a summary log containing, for each document claimed as privileged, an export of

all or a subset of the metadata fields listed above (as agreed upon by the Parties) to the extent

such information exists and has not been suppressed or redacted for privilege.  The export should

include the following information:

- BEGNO
- ENDNO
- BEGATTACH
- ENDATTACH
- CUSTODIAN
- FROM
- TO
- CC
- BCC
- SUBJECT
- SENTDATE
- RECEIVEDDATE
- FILENAME
- AUTHOR
- CREATEDDATE
- PRIV_CLAIM

As set forth in VI.C, only the most complete iteration of an email chain redacted or

withheld needs to be identified on the privilege log.

C.      If the requesting party requires further information, it shall explain in writing the

need for such information and identify, by Bates number or other unique identifier, each

document for which it seeks this information.  Within fifteen (15) business days of such a

request, the Producing Party must either (i) provide the requested information or (ii) challenge

the request.  If a Party challenges a request for further information, the Parties shall meet and

confer to try to reach a mutually agreeable solution. If they cannot agree, the Parties must request

a conference with the Court before any motions may be filed.

## X.       Production of Privileged or Otherwise Protected Material

A.       Nothing in this Stipulation shall be construed to prohibit a Producing Party from

seeking relief from any production – inadvertent or not – of confidential, privileged, or work-

product information.   Nothing in this Stipulation shall diminish the legal rights of any person

seeking such relief.   When a Producing Party gives notice to Receiving Parties that certain

produced material is subject to a claim of privilege or other protection, the obligations of the

Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).  Pursuant to

Federal Rule of Evidence 502(d), neither the attorney-client privilege nor the work product

protection is waived by production in this case or in any other federal or state proceeding.  This

Stipulation shall be interpreted to provide the maximum protection allowed by Federal Rule of

Evidence 502(d).

B.       Nothing contained in this Stipulation is intended to or shall serve to limit a Party's

right to conduct a review of documents, ESI or information (including metadata) for relevance,

responsiveness and/or segregation of privileged and/or protected information before production.

## XI.    Good Faith

The Parties shall make their best efforts to comply with and resolve any differences

concerning compliance with this Stipulation.  If a Producing Party cannot comply with any

material aspect of this Stipulation, such Party shall inform the Requesting Party as to why

compliance with the Stipulation was unreasonable or not possible within ten (10) business days

after so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## XII.    No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data are preserved and may be asserted at any time.

## XIII.   Costs and Burden

Each party shall bear the costs of producing, collecting, processing, reviewing, and producing its own documents and ESI. In the event that a party contends that the costs associated with producing, collecting, processing, reviewing, or producing documents or ESI responsive to a discovery request are disproportional to the needs of the case, *see* Fed. R. Civ. P. 26(b)(1), that party shall raise its objection before incurring such costs, and—if the parties are unable to reach an agreement on their own—promptly seek relief from the Court. *See* Fed. R. Civ. P. 26(b)(2)(C).

## XIV.   Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

IN WITNESS THEREOF, the Parties have executed this Stipulation effective as of April 21, 2017.

**Plaintiffs  Kimberly A. Negron, Daniel Perry, Courtney Gallagher, Nina Curol, Roger Curol**

<u>        s/ Robert A. Izard        </u>
Robert A. Izard  (ct01601)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
860-493-6292
860-493-6290 fax
rizard@ikrlaw.com

William H. Narwold (ct00133)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
860-882-1681
860-882-1682 fax
bnarwold@motleyrice.com


*(Signed with consent pursuant to § XI(D) of the Electronic Filing Policies & Procedures)

**Defendants Cigna Corporation and Cigna Health and Life Insurance Company**

<u>        s/  Eleanor R. Farrell*        </u>
Joseph J. Costello
Eleanor R. Farrell, pro hac vice
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215-963-5000
215-963-5001 fax
joseph.costello@morganlewis.com
eleanor.farrrell@morganlewis.com


**Defendant OptumRx, Inc.**

<u>        s/ Michelle S. Grant*        </u>
Michelle S. Grant
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402
(612) 340-2600
(612) 340-2868 fax
grant.michelle@dorsey.com


\*     \*     \*     \*


Dated: _____, 2017

SO ORDERED:

_____

Honorable Warren W. Eginton
United States District Court

13

TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| MEDIA VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| RECORDTYPE | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document |
| SENTDATE | MM/DD/YYYY HH:MM | The date & time the email was sent. **NOTE:** For attachments to e-mails, this field should be populated with the date sent of the e-mail transmitting the attachment. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| RECEIVEDDATE | MM/DD/YYYY HH:MM | The date & time the document was received. |
| TIME ZONE | GMT | Greenwich Mean Time |
| FILEPATH | i.e. Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items Joe Smith/Loose Files/Accounting/... Joe Smith/Loose Files/Documents and Settings/... | Location of the original document. The source should be the start of the full path. |
| AUTHOR | jsmith | The author of a document from entered metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| DOCTITLE | | The extracted document title of a document. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| UNREAD | Y or N | Y if an e-mail is unread, N if it has been read. This value is blank for attachments and non e-mail documents. |
| IMPORTANCE | High Importance, Low Importance, Normal, etc. | E-mail Importance Flag |

15

| | | |
|---|---|---|
| **CUSTODIAN** | | The custodian / source of a document. If the documents are de-duped on a global level, this field will contain the name of each custodian from which the document originated. |
| **ATTACH COUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILETYPE** | MS Excel Spreadsheet | The file type of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **MD5HASH** | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| **FOREIGNLANGUAGE** | Korean; Japanese; English | Specifies all languages found in the document to the best of the processing software's ability (might not be 100% accurate). |
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate Unicode text file per document. These text files should be named with their bates numbers. **Note**: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |