**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KIMBERLY A. NEGRON, Individually and on Behalf of All Others Similarly Situated, DANIEL PERRY, Individually and on Behalf of All Others Similarly Situated, COURTNEY GALLAGHER, Individually and on Behalf of All Others Similarly Situated, NINA CUROL, Individually and on Behalf of All Others Similarly Situated, and ROGER CUROL, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Civil No. 3:16-cv-1702 (WWE) |
| v. | June 12, 2017 |
| CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC., | |
| Defendants. | |

**DEFENDANTS CIGNA CORPORATION AND CIGNA HEALTH
AND LIFE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.    PLAINTIFFS SHOULD NOT BE EXCUSED FROM EXHAUSTING PLAN
REMEDIES .............................................................................................................. 2

II.    PLAINTIFFS FAIL TO STATE ERISA FIDUCIARY BREACH AND
PROHIBITED TRANSACTION CLAIMS ............................................................ 5

    A.    Plaintiffs' Breach Of Fiduciary Duty And Prohibited Transaction Claims
Mirror Their Plan Interpretation Claim Under Section 502(a)(1)(B) ................... 5

    B.    Plaintiffs Have Failed To Allege Any Fiduciary Conduct To Maintain
Their Breach Of Fiduciary Duty And Prohibited Transaction Claims ................. 8

    C.    Plaintiffs' Characterization Of Plan Assets And Transactions Cannot Save
Their Prohibited Transaction Claims ................................................................... 13

III.    PLAINTIFFS CANNOT SUSTAIN THEIR ERISA DISCRIMINATION CLAIM ...... 14

IV.    PLAINTIFFS' OPPOSITION BRIEF CANNOT CURE THE DEFICIENCIES IN
THEIR RICO CLAIMS ......................................................................................... 15

    A.    Neither Cigna Nor CHLIC "Conducts The Affairs" Of Optum Or Argus .......... 15

    B.    Plaintiffs Fail To Allege Cognizable Predicate Acts Of Mail Or Wire
Fraud .................................................................................................................... 17

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

Allstate Insurance Company v. Seigel,
312 F. Supp. 2d 260 (D. Conn. 2004) ...................................................................17

Bell v. Pfizer, Inc.,
626 F.3d 66 (2d Cir. 2010)...................................................................................9

Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.,
775 F. Supp. 2d 730 (S.D.N.Y. 2011)........................................................6, 10, 14

Brookdale Univ. Hosp'l & Med. Ctr. v. Health Ins. Plan of Greater N.Y.,
No. 07-1471, 2009 WL 928718 (E.D.N.Y. Mar. 31, 2009)............................15, 19

Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.,
771 F.3d 150 (2d Cir. 2014)...................................................................................6

Chicago Bd. Options Exch. v. Connecticut Gen. Life Ins. Co.,
713 F.2d 254 (7th Cir. 1983) ...............................................................................12

Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,
474 F.3d 463 (7th Cir. 2007) ...............................................................................11

Cigna Corp. v. Amara,
563 U.S. 421 (2011)...............................................................................................6

Corsini v. United Healthcare Corp.,
965 F. Supp. 265 (D.R.I. 1997).............................................................................3

Crabhouse of Douglaston Inc. v. Newsday Inc.,
801 F. Supp. 2d 64 (E.D.N.Y. 2011) ...................................................................16

Davenport v. Harry N. Abrams, Inc.,
249 F.3d 130 (2d Cir. 2001)...................................................................................4

Del Greco v. CVS Corp.,
337 F. Supp. 2d 475 (S.D.N.Y. 2004)................................................................3, 4

Deluca v. Michigan,
No. 06-12552, 2007 WL 1500331 (E.D. Mich. May 23, 2007) ...........................11

Devlin v. Empire Blue Cross & Blue Shield,
274 F.3d 76 (2d Cir. 2001).....................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.,
   805 F.2d 732 (7th Cir. 1986) ...................................................................................13

Everson v. Blue Cross & Blue Shield of Ohio,
   898 F. Supp. 532 (N.D. Ohio 1994)....................................................................11, 12

F.H. Krear & Co. v. Nineteen Named Trs.,
   810 F.2d 1250 (2d Cir. 1987)...................................................................................12

Faber v. Metro. Life Ins. Co.,
   648 F.3d 98 (2d Cir. 2011)........................................................................................11

Fechter v. Connecticut Gen. Life Ins. Co.,
   800 F. Supp. 182 (E.D. Pa. 1992) ............................................................................12

Frishberg v. Deloitte & Touche Pension Plan,
   No. 3:07-1081, 2008 WL 4000569 (D. Conn. Aug. 26, 2008).................................5

Great Earth Int'l Franchising Corp. v. Milks Dev.,
   311 F. Supp. 2d 419 (S.D.N.Y. 2004)......................................................................18

Haddock v. Nationwide Fin. Servs., Inc.,
   419 F. Supp. 2d 156 (D. Conn. 2006) ......................................................................10

Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.,
   302 F.3d 18 (2d Cir. 2002)........................................................................................13

Hecker v. Deere & Co.,
   556 F.3d 575 (7th Cir. 2009) ...................................................................................10

In re Blue Cross of W. Pa. Litig.,
   942 F. Supp. 1061 (W.D. Pa. 1996).........................................................................3

In re Fidelity ERISA Float Litig.,
   829 F.3d 55 (1st Cir. 2016).......................................................................................10

Katzman v. Victoria's Secret Catalogue,
   167 F.R.D. 649 (S.D.N.Y. 1996) ............................................................................17

Kennedy v. Empire Blue Cross & Blue Shield,
   989 F.2d 588 (2d. Cir. 1993).............................................................................2, 4, 5

Kirkendall v. Halliburton, Inc.,
   707 F.3d 173 (2d Cir. 2013).....................................................................................3

TABLE OF AUTHORITIES
(continued)

Page(s)

Marks v. Independence Blue Cross,
    71 F. Supp. 2d 432 (E.D. Pa. 1999) ...................................................................12

Moeckel v. Caremark, Inc.,
    622 F. Supp. 2d 663 (M.D. Tenn. 2007) ...........................................................11

Mulder v. PCS Health Sys., Inc.,
    432 F. Supp. 2d 450 (D.N.J. 2006) .....................................................................9

N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,
    798 F.3d 125 (2d Cir. 2015) ................................................................................7

Peck v. Aetna Life Ins. Co.,
    464 F. Supp. 2d 122 (D. Conn. 2006) .................................................................4

Pharma. Care Mgmt. Assoc. v. Rowe,
    429 F.3d 294 (1st Cir. 2005) ...............................................................................9

Powers v. British Vita, P.L.C.,
    57 F.3d 176 (2d Cir. 1995) ................................................................................20

Reves v. Ernst & Young,
    507 U.S. 170 (1993) ...........................................................................................15

Schulist v. Blue Cross,
    717 F.2d 1127 (7th Cir. 1983) ...........................................................................12

Sec'y of Labor v. Doyle,
    675 F.3d 187 (3d Cir. 2012) ..............................................................................10

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ..............................................................................20

Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec., Inc.,
    964 F. Supp. 147 (S.D.N.Y. 1997) ...................................................................13

Smith v. United HealthCare Servs., Inc.,
    No. 00-1163, 2000 WL 1198418 (D. Minn. Aug. 18, 2000) ...............................3

Teitel v. Deloitte & Touche Pension Plan,
    420 F. App'x 116 (2d Cir. 2011) ........................................................................4

Tr. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.,
    783 F. Supp. 899 (D.N.J. 1992) ........................................................................12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.,
  822 F.3d 650 (2d Cir. 2016)................................................................17, 19

United States v. D'Amato,
  39 F.3d 1249 (2d Cir. 1994)....................................................................18

Varity Corp. v. Howe,
  516 U.S. 489 (1996)................................................................................6

Vickers Stock Research Corp. v. Quotron Sys., Inc.,
  No. 96-2269, 1997 WL 420265 (S.D.N.Y. July 25, 1997).........................16, 17, 19

Wegmann v. Young Adult Inst., Inc.,
  No. 15-3815, 2016 WL 827780 (S.D.N.Y. Mar. 2, 2016)........................7

Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional
  Ben.,
  621 F. App'x 70 (2d Cir. 2015) ...............................................................6

**STATUTES**

18 U.S.C. § 1962(d) ....................................................................................15

29 U.S.C. § 1109(a) ....................................................................................8 14

29 U.S.C. § 1109(b)(2) ...............................................................................14

29 U.S.C. § 1132(a)(1)(B) ..........................................................................7

29 U.S.C. § 1132(d) ....................................................................................11

**RULES**

Fed. R. Civ. P. 9(b) .....................................................................................20

Fed. R. Civ. P. 12(b)(6)...............................................................................6, 7

Fed. R. Civ. P. 26(f) ....................................................................................1

**OTHER AUTHORITIES**

DOL Adv. Op. 2013-03A, 2013 WL 3546834 (July 3, 2013)....................10

Fed. R. Civ. P. 56 ........................................................................................17

## INTRODUCTION

Plaintiffs concede in their Opposition that there is nothing unlawful about "Spread" or recouping "Spread" from a pharmacy (the action that Plaintiffs refer to as "Clawback").[1]  They do not dispute that courts have blessed plan designs that provide for participant cost-share payments exceeding an insurance company's or pharmacy benefits manager's negotiated rate with a pharmacy or healthcare provider.  E.g., Pls.' Opp. at 28, 32-33.  Plaintiffs' main argument is that recouping Spread from pharmacies violates the terms of their Plans, and they admit that this is the crux of their case.[2]  This argument, however, relies on a self-serving interpretation of Plan language – excised out of context – that Plaintiffs acknowledge "[t]echnically" makes no sense.  Id. at 5 n.4.  And although their ERISA Section 502(a)(1)(B) plan interpretation claim could possibly proceed in this case if they had exhausted their Plans' administrative remedies, they have not.  Their vague assertions of inequity and futility are not sufficient to excuse this fact.

Plaintiffs then double-down on their plan interpretation and try to dress up a straightforward claim to determine plan benefits under Section 502(a)(1)(B) as breaches of fiduciary duty, prohibited transactions, and RICO violations.  Id. at 33 (arguing that Defendants breached their ERISA duty of loyalty by "charging Spread and taking Clawbacks" because the "cost-sharing payments [were] in excess of those permitted by the plans"); see also id. at 28, 32-33, 59.  These efforts to disguise their claim to determine plan benefits fail as a matter of law because they have no plausible independent basis.  All of Plaintiffs' claims should be dismissed.[3]

---

[1] Plaintiffs define "Spread" as the "difference between the amount Defendants paid the pharmacy and the amount that the [participant] paid to the pharmacy."  Pls.' Opp. at 1, 5.  "Spread," for purposes of Cigna and CHLIC's Motion is therefore the difference between the participant's cost-share amount defined in their Plans and "the amount that the Defendants paid to the pharmacy."  "Clawback," as Plaintiffs define that term, is really a verb and refers to the action of the pharmacies paying Spread to Defendants (id. at 1, 8) – or, in reality, the action of Defendants recouping Spread amounts from pharmacies.

[2] In response to a question from the Court during the parties' May 16, 2017 telephonic scheduling conference, Plaintiffs acknowledged that the "$64,000 question" in this case is whether and to what extent Defendants violated the Plans' terms by authorizing or permitting pharmacies to collect and then remit Spread amounts to Defendants, as reflected in, among other things, Plaintiffs' topics for discovery in the parties' Rule 26(f) Report.  Dkt. 61 at 8.

[3] Cigna and CHLIC hereby incorporate by reference as if fully restated therein the arguments made in Defendant OptumRx's reply brief in further support of its motion to dismiss.

**ARGUMENT**

I.      **Plaintiffs Should Not Be Excused From Exhausting Plan Remedies**

Plaintiffs offer no legitimate basis to depart from the Second Circuit's long-standing requirement that ERISA participants must exhaust their plans' administrative remedies for claims brought under Section 502(a)(1)(B), such as those in Count I.  Cigna Br. at 13-14.  They abandon their assertion that exhaustion should not apply because they seek "to enforce their rights under the terms of the ERISA Plans and clarify future rights" rather than to recover benefits due.  Compl. ¶ 148; Cigna Br. at 14-15.  Instead, they now argue that they did not understand their obligation to exhaust under their respective Plans.  They also cling to their view that exhaustion would be futile.  These excuses fall short of the mark and ignore that exhaustion is crucial to "(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of administrative action (or inaction) is made under the arbitrary and capricious standard, not *de novo*."  Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d. Cir. 1993).

Plaintiffs' new theory is that they should be excused from exhausting because they did not understand that their Plans required exhaustion in these circumstances.  Pls.' Opp. at 12-16.  They point out that they did not receive a "denial of benefits" (i.e., their prescription drug claims were not "denied") and argue that they were unaware that they had a claim to appeal.  Id.  But Plaintiffs' cramped reading of the relevant Plan language – not alleged in the Complaint – ignores the Plans' clear internal claims and appeals procedures.  Cigna Br. at 12, 14.  Although the language varies, each Plan provides for an administrative process that commences by a participant contacting Customer Service if she has any concern, including about "contractual benefits" like those at issue here.  Id.  If the participant is not satisfied with the outcome of discussions with Customer Service, she may initiate an appeal in accordance with the instructions set forth in the Plan.  Id.  Plaintiffs are right that they never received a denial notice to initiate an appeal, but that is because, as they admit, they never made an initial claim to

2

Customer Service about any alleged overpayment for prescription drugs.  Pls.' Opp. at 13.  This claim is what "invokes" the administrative process.  That Plaintiffs contend they were "never denied prescription drug coverage" does not render the Plans' administrative procedures unnecessary.[4]  Id. at 12.  If Plaintiffs' reading of the exhaustion provisions were correct, then all disputes about participants' cost-share payments, amounts paid to providers, or questions concerning plan interpretation – separate and apart from full denials of benefits – would be exempt from exhaustion.  This is contrary to the Plans' terms and the fundamental principles underlying ERISA's exhaustion requirement.

Plaintiffs' reliance on Kirkendall v. Halliburton, Inc., 707 F.3d 173 (2d Cir. 2013), is misplaced.  Pls.' Opp. at 14-15.  There, the Second Circuit held that the plaintiff's reasonable interpretation of the plan's ambiguous claims and appeals procedures excused exhaustion where she "attempt[ed] to resolve [her benefits] dispute by writing letters and making inquiries with the assistance of counsel before she filed suit [, which] demonstrate[d] that she was confused as to the procedure she should follow."  Kirkendall, 707 F.3d at 181.  Here, not only are the Plans' administrative procedures clear, Plaintiffs also made no effort to resolve their benefit determination disputes with Cigna or CHLIC through *any* means before filing this lawsuit.

Moreover, the Second Circuit has recognized that a participant's ignorance of the proper claims procedures does not excuse the exhaustion requirement:

> Even if plaintiff was unaware of her remedies under the plan prior to the institution of this action, she became aware of them now and yet inexcusably has failed to avail herself of them.  A dismissal for failure to exhaust would promote the purposes of [ERISA] by enabling the plan committee to perform the function that Congress contemplated that it would perform.

---

[4] The cases upon which Plaintiffs rely to avoid the application of the Plans' claims and appeals procedures have not been endorsed by the Second Circuit and do not advance their argument because, here, the Plans include administrative remedies to address Plaintiffs' Plan violation claim.  Pls.' Opp. at 13-14 (discussing Smith v. United HealthCare Servs., Inc., No. 00-1163, 2000 WL 1198418 (D. Minn. Aug. 18, 2000); Corsini v. United Healthcare Corp., 965 F. Supp. 265 (D.R.I. 1997); In re Blue Cross of W. Pa. Litig., 942 F. Supp. 1061 (W.D. Pa. 1996)).  In fact, a court within the Second Circuit expressly rejected In re Blue Cross and Plaintiffs' argument that exhaustion is only required for complete "denials" of benefits.  Del Greco v. CVS Corp., 337 F. Supp. 2d 475, 484-85 (S.D.N.Y. 2004), adhered to on reconsideration, 354 F. Supp. 2d 381 (S.D.N.Y. 2005), aff'd, 164 F. App'x 75 (2d Cir. 2006) (finding that plaintiff's claim concerning determination of co-payments was a claim "for denial of benefits" and thus required exhaustion).

Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 134 (2d Cir. 2001) (citation and internal quotations omitted).  Plaintiffs do not dispute that they had access to their Plans containing the administrative procedures before filing the Complaint.  Because Plaintiffs must have been aware of the factual basis for their claims before this lawsuit, they have no excuse for failing to exhaust.

Equally defective is Plaintiffs' allegation that it would be futile to exhaust their Plans' administrative remedies.  Plaintiffs insist that they can demonstrate futility because the "Clawback scheme" is a "long-standing, broadly applied policy" that "Defendants continue to vigorously defend" in this litigation.  Pls.' Opp. at 16-18.  But none of this constitutes "a clear and positive showing that pursuing their administrative remedies would be futile."  Kennedy, 989 F.2d at 594 (citation and internal quotation marks omitted).

First, the Second Circuit has held that there is no futility where, as here, a plaintiff has not "even *notified* [the plan administrator] of any disputed claim" prior to filing a lawsuit.  Id. at 595.[5]

Second, contrary to the out-of-circuit district court cases upon which Plaintiffs rely, the Second Circuit has expressly rejected the argument that exhaustion is futile just because the defendant "vigorously" defends a broadly-applied policy in litigation.[6]  Plaintiffs argue that Cigna and CHLIC's "only response" to the Section 502(a)(1)(B) claim is that Plaintiffs were required to exhaust Plan remedies before filing this lawsuit.  Pls.' Opp. at 10, 12.  This is technically true, but actually proves Cigna's point – Plaintiffs' benefit determination claims should first be addressed through the Plans' administrative procedures.  Cigna Br. at 14-15.

---

[5] Plaintiffs try unsuccessfully to distinguish Del Greco on this point.  They argue that the court in that case found that the plaintiff could not invoke the futility exception because she never filed a written prescription drug claim, which Plaintiffs say they are not required to file when they purchase prescription drugs from participating pharmacies.  Pls.' Opp. at 17.  But Plaintiffs misunderstand Del Greco.  There, the plaintiff had filled several prescriptions, but never "submitted a written claim form nor a written request for review within the time period specified under the Plan" to dispute the cost of her prescriptions.  Del Greco, 337 F. Supp. 2d at 484-86.  The same is true here.  Plaintiffs are required to avail themselves of the Plans' administrative procedures, see supra pp. 2-5, and they cannot claim futility since they made no effort to do so.  Cigna Br. at 15.

[6] See Teitel v. Deloitte & Touche Pension Plan, 420 F. App'x 116, 116 (2d Cir. 2011) ("Nor does a defendants' choice to defend this action on its merits in the district court operate *ex post facto* to make exhaustion futile."); Davenport, 249 F.3d at 134 (same); Peck v. Aetna Life Ins. Co., 464 F. Supp. 2d 122, 126 (D. Conn. 2006) (rejecting argument that "resort[ing] to the administrative appeals process would have been futile because [the defendant] ha[d] a 'vigorous and fixed plan for not paying benefits that accrue during the waiting period'").

Finally, Plaintiffs cannot circumvent exhaustion of their individual claims just because they seek to represent a class that has not yet been certified where putative class members may not be aware of their claims.[7]  Pls.' Opp. at 16; see Kennedy, 989 F.2d at 594-95 (affirming dismissal of ERISA class action where named plaintiffs had not exhausted administrative remedies); Frishberg v. Deloitte & Touche Pension Plan, No. 3:07-1081, 2008 WL 4000569, at *6 (D. Conn. Aug. 26, 2008) ("The defendant, in having a more thorough understanding of the claims of the class, may determine whether broad based relief is appropriate, and the plaintiffs, if unsatisfied with the outcome of the administrative process, could still proceed in court in pursuit of an adequate remedy.") (citation and internal quotation marks omitted).[8]  Plaintiffs' Section 502(a)(1)(B) claim in Count I should be dismissed for failure to exhaust plan remedies.

## II.   Plaintiffs Fail To State ERISA Fiduciary Breach And Prohibited Transaction Claims

### A.   Plaintiffs' Breach Of Fiduciary Duty And Prohibited Transaction Claims Mirror Their Plan Interpretation Claim Under Section 502(a)(1)(B)

Plaintiffs acknowledge that the "$64,000 question" in this case hinges on interpreting the terms of their Plans – which they do not dispute is properly achieved through a Section 502(a)(1)(B) claim.  Their Opposition makes clear that their breach of fiduciary and prohibited transaction claims are merely additional causes of action seeking the same relief.[9]  E.g., Pls.' Opp. at 32 ("Since Defendants have breached rather than followed the terms of the plans, they have breached their fiduciary duties."); see also 5, 7-8, 10-11, 19, 24, 27-34.  The Supreme Court has explained that Section 502(a)(1)(B) "specifically provides a remedy *for breaches of fiduciary*

---

[7] Cigna and CHLIC have not argued that each putative class member must exhaust the administrative remedies under his or her plan to pursue Section 502(a)(1)(B) claims should the class be certified.

[8] Plaintiffs selectively quote only a portion of the language in their Plans and suggest that the "relevant terms" to resolve their Section 502(a)(1)(B) claims are "substantively the same" across the Plans.  Pls.' Opp. at 4 n.3. Although they are incorrect in that the Plan language varies, Plaintiffs' allegation underscores the value of exhaustion since, according to Plaintiffs, their Plans "all share common features."  Id. at 4.

[9] To the extent that Plaintiffs are pursuing a fiduciary breach claim in the form of alleged misrepresentations, this claim, too, is dependent on interpretation of the Plan terms (and a finding of fiduciary status).  See Pls.' Opp. at 34-36 (describing alleged misrepresentation "concerning the patients' cost-sharing payments" in that the "plan documents themselves contain false and misleading statements because they did not reflect Defendants' actual practices of charging Spread and taking Clawbacks").

*duty with respect to the interpretation of plan documents and the payment of claims*," and that

Section 502(a)(3) is the remedy available for "*other* breaches of other sorts of fiduciary

obligations."  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996) (emphasis added).  The Supreme

Court's interpretation of Section 502(a)(1)(B) thus forecloses Plaintiffs from pursuing their plan

interpretation-based breach of fiduciary duty claim and prohibited transaction claims in Counts

II, III and IV under 502(a)(2) and 502(a)(3).  See Whelehan v. Bank of Am. Pension Plan for

Legacy Companies-Fleet-Traditional Ben., 621 F. App'x 70, 72 (2d Cir. 2015) ("ERISA §

502(a)(3) . . . may not be relied on by a claimant to pursue relief—in this case, pension

benefits—available under a separate ERISA provision.") (citing Varity, 516 U.S. at 515).

None of the cases cited by Plaintiffs support the proposition that Plaintiffs can separately

pursue breach of fiduciary duty or prohibited transaction claims under a plan violation theory

that is clearly redressable under Section 502(a)(1)(B).  Pls.' Opp. at 44-47.

Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76 (2d Cir. 2001), does not support

Plaintiffs' position because the Section 502(a)(3) claim and the Section 502(a)(1)(B) claim in

that case were directed at different conduct.  Id. at 87.  The plaintiffs' breach of fiduciary duty

claim was based on alleged misrepresentations in letters about their life insurance coverage.  The

Section 502(a)(1)(B) claim alleged that plan terms were not followed.  Id. at 78, 87.

Like Devlin, Cigna Corporation v. Amara, 563 U.S. 421 (2011), involved claims arising

from statements made in documents other than the official plan document.  Id. at 436-37.  There

was no claim that the terms of the plan document were violated.  For that reason, multiple courts

in the Second Circuit have not found Amara to be a barrier to dismissing breach of fiduciary

claims based on alleged plan violations redressable under Section 502(a)(1)(B).[10]

---

[10] See, e.g., Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co., 771 F.3d 150, 154 (2d
Cir. 2014) (affirming Rule 12(b)(6) dismissal of Section 502(a)(3) claim where, although labeled as ones for
declaratory and injunctive relief, those claims really sought money damages in the form of a "declaration that
[defendant] ha[d] primary responsibility for paying claimants' future and past expenses, and injunctive 'relief'
compelling the payments," so such a claim seeking to enforce the terms of a plan to receive monetary relief in the
future was insufficient to withstand dismissal); Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F.
Supp. 2d 730, 738 (S.D.N.Y. 2011) (granting motion to dismiss fiduciary duty claims seeking declaratory and
injunctive relief under Section 502(a)(3), holding that "since the gravamen of the three challenged ERISA claims is
that Oxford failed to follow proper procedures in denying the Patient's claim for benefits, which resulted in an

Similarly, <u>N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.</u>, 798 F.3d 125 (2d Cir.

2015), involved a breach of fiduciary duty claim independent of a Section 502(a)(1)(B) claim.

<u>Id.</u> at 131-34.  While the plaintiffs' Section 502(a)(1)(B) claims alleged that the plan terms were

violated in how their claims were administered, their 502(a)(3) claims separately alleged that the

defendant breached its fiduciary duties by violating the Mental Health Parity and Addiction Act

and the Affordable Care Act via the standards and processes applied concerning plaintiffs'

mental health benefits.  Indeed, the plaintiffs argued, even if "the Plaintiffs' Plans authorized or

required [the defendant] to engage in the practices at issue . . . [the defendant] was obligated as a

fiduciary to disregard such requirements and comply with applicable law."[11]  Thus, the court

could not discern based on the plaintiffs' complaint whether monetary benefits under Section

502(a)(1)(B) alone would provide a sufficient remedy for plaintiffs' Section 502(a)(3) claims and

therefore allowed the two claims to proceed.  <u>Id.</u>  Critically, <u>NYPSA</u> did not foreclose a Rule

12(b)(6) dismissal of a Section 502(a)(3) claim where that claim existed solely as a second route

to relief sought under Section 502(a)(1)(B).[12]

Here, it is clear that Plaintiffs' Section 502(a)(3) claim is directed at the same conduct

and relief as their Section 502(a)(1)(B) claim.  Plaintiffs are pursuing "payment of all amounts

due to them in accordance with their rights under the ERISA Plans" (which they describe as the

"amount of the 'Spread' compensation, including 'Clawbacks'"), a declaration that the act of

remitting Clawbacks violates the Plans' terms, and an injunction to enforce the terms of their

Plans.  Compl. ¶¶ 168-70; <u>see</u> 29 U.S.C. § 1132(a)(1)(B) (authorizing a civil action "to recover

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan,

or to clarify his rights to future benefits under the terms of the plan").  Plaintiffs ask for the same

form of monetary, declaratory, and injunctive relief under Section 502(a)(3) to redress their

---

improper denial of benefits owed to the Patient under the terms of the Plan, adequate relief for these claims [was] plainly available under Section 502(a)(1)(B)" pled in another count).

[11] Corrected Pls.' Mem. of  in Opp. to Defs.' Motion to Dismiss, <u>NYSPA</u>, 2013 WL 3943184, at *11 (July 26, 2013).

[12] <u>See, e.g.</u>, <u>Wegmann v. Young Adult Inst., Inc.</u>, No. 15-3815, 2016 WL 827780, at *6 (S.D.N.Y. Mar. 2, 2016).

fiduciary duty and prohibited transaction claims.[13]  See Compl. ¶¶ 181, 191, 201.  Plaintiffs cannot use plan-based breach of fiduciary duty and prohibited transaction claims to obtain duplicative relief for the same injury pursuant to Section 502(a)(3) when the alleged plan violation can be addressed under Section 502(a)(1)(B).  Their fiduciary duty and prohibited transaction claims in Counts II, III, and IV should therefore be dismissed.[14]

**B.**     **Plaintiffs Have Failed To Allege Any Fiduciary Conduct To Maintain Their Breach Of Fiduciary Duty And Prohibited Transaction Claims**

To the extent that Plaintiffs try to bring breach of fiduciary duty and prohibited transaction claims separate and apart from their plan violation theory, they fail to articulate an independent basis to establish Cigna's, CHLIC's, and/or Optum's fiduciary status as to the challenged conduct.  These remaining allegations fit squarely into the type of conduct that is non-fiduciary:  (1) the determination of what plan participants' cost-share payments are and how they will be calculated; (2) the negotiation of payment terms with the pharmacies; and (3) not exercising authority or control over plan assets.  See Pls.' Opp. at 19-24; Cigna Br. at 16-22.

*(1) Plan Design* – Even if Defendants were responsible for deciding participants' copayments, coinsurance, or deductible amounts, these plan design decisions were non-fiduciary.  Cigna Br. at 17-19, 27-29.  Plaintiffs agree.  Pls.' Opp. at 27 (admitting that "settlor decisions about the content or 'design' of a plan are not fiduciary acts").  Seeking to avoid this point, Plaintiffs claim that Defendants were fiduciaries in their "management" of the Plans, including the ongoing calculations of Plaintiffs' cost-share payments.  Id. at 20-22.  Plaintiffs try to transform routine claim processing functions into fiduciary conduct by claiming that that

---

[13] Although Plaintiffs claim that they are seeking different, equitable relief under Section 502(a)(3) in the form of "disgorgement of profits" not available under Section 502(a)(1)(B) (Pls.' Opp. at 44), it is clear that these "profits," however labelled, are nothing more than the alleged "overpayments made by the ERISA subclass" retained through Clawbacks from pharmacies, the exact money damages sought for their benefits claim under Section 502(a)(1)(B).  Compare Compl. ¶ 156 with id. ¶¶ 168-70.

[14] ERISA Section 502(a)(2), also cited  by Plaintiffs, provides for damages or disgorgement of profits to restore losses suffered by a *plan* under Section 409(a).  29 U.S.C. § 1109(a) (allowing for recovery "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary").  Because Plaintiffs seek only individual relief – the Spread amounts to which the Plans have no entitlement – they cannot proceed with a claim on behalf of the Plans under Section 502(a)(2) to remedy their breach of fiduciary duty claims.

Defendants exercised "*discretion* to charge patients excessive cost-sharing payments."  <u>Id.</u> at 22

(emphasis added).  The repeated misuse of this ERISA buzzword cannot change the fact that

CHLIC applied the terms of the Plans when it calculated Plaintiffs' cost-share payments for each

prescription drug that they obtained.[15]  This is a ministerial, non-discretionary function within

the framework of the Plans that does not implicate any discretionary aspects of CHLIC's claims

administrator role to render it a fiduciary.[16]  Plaintiffs' dispute only concerns the adequacy of the

language used in the Plan terms, not CHLIC's ministerial claim-processing function.

        *(2) Management of PBM Business* – Plaintiffs argue that Defendants became fiduciaries

because they required pharmacies to collect Spread from Plaintiffs, required pharmacies to pay

Spread as Clawbacks, and set their own compensation for services performed by dictating Spread

and taking Clawbacks.  Pls.' Opp. at 21-24.  These arguments are directed at Cigna's, CHLIC's,

and Optum's business operations, not plan-specific administrative functions, and ignore the

economic and business realities of the PBM marketplace.  Neither Cigna/CHLIC nor the Plans

are involved in Optum's negotiation of drug prices or payment terms with its network

pharmacies.  And the Plans are not involved in CHLIC's contract negotiations with Optum.

Plaintiffs cannot avoid similar cases that find that the conduct of such business affairs is non-

fiduciary in nature.  Cigna Br. at 19-22.

        *(3) Alleged Exercise and Control Over Plan Assets* – Underpinning Plaintiffs'

arguments about Defendants' fiduciary status is their contention that Cigna, CHLIC, and/or

Optum are fiduciaries because they exercise authority and control over plan assets.  Pls.' Opp. at

---

[15] Plaintiffs also ignore the fact that the calculation of Plaintiffs' cost-share is partially dependent on a variable completely outside of CHLIC's control – the pharmacy's usual and customary ("U&C") price for the prescription. Cigna Br. at 8; Compl. ¶ 92(b) n.20.

[16] <u>See</u> <u>Bell v. Pfizer, Inc.</u>, 626 F.3d 66, 74 (2d Cir. 2010) (finding that even where a party has discretion in certain aspects of plan management, where a complaint concerns "ministerial tasks . . . such as the application of rules determining eligibility for participation, preparation of plan communication materials, the calculation of benefits, and the maintenance of employee records," such conduct does not trigger fiduciary status); <u>Pharma. Care Mgmt. Assoc. v. Rowe</u>, 429 F.3d 294, 301 (1st Cir. 2005) (PBMs are generally not ERISA fiduciaries because they lack discretionary authority or control in management of the plan but rather engage in ministerial duties); <u>Mulder v. PCS Health Sys., Inc.</u>, 432 F. Supp. 2d 450, 452-61 (D.N.J. 2006) (PBM was not a fiduciary with regards to processing claims pursuant to plan specifications, negotiating contracts with drug manufacturers about formularies and drug rebates, and designing and implementing programs).

24.  They argue that the "participants' cost-sharing payments" are plan assets, and according to Plaintiffs' new argument, Spread amounts recouped from pharmacies are therefore plan assets because the participants' cost-share generates the Spread amount if it exceeds the pharmacy's agreed-to reimbursement amount for the particular drug.  Id. at 26, 38.  Plaintiffs cite no analogous legal authority to support their theory.  And nothing in the Plan documents suggests that the *Plans* have any ownership interest in participants' cost-share payments to a pharmacy or a Spread amount recouped from a pharmacy.  See Cigna Br. at 24-26; Sec'y of Labor v. Doyle, 675 F.3d 187, 204 (3d Cir. 2012) ("[T]he assets of a welfare plan . . . include any property, tangible or intangible, in which the *plan* has a *beneficial ownership interest*.") (emphasis added).  The cost-share is an amount that the participant is required to pay to a provider or pharmacy.  The participants – not their Plans or employers – pay their cost-share amounts to their pharmacies with their own money.  Therefore, the pharmacies gain possession of any Spread amount.  The Plans do not have possession of or rights to this money.  It thus makes little sense to conclude under ordinary notions of property rights that the Spread amounts are plan assets.[17]

Plaintiffs' argument that the Court should adopt a two-part "functional" definition of plan assets first articulated in Haddock v. Nationwide Fin. Servs., Inc., 419 F. Supp. 2d 156 (D. Conn. 2006), is unfounded.[18]  Pls.' Opp. at 25-26.  Neither the Department of Labor nor the Second Circuit has adopted this approach.  E.g., DOL Adv. Op. 2013-03A, 2013 WL 3546834, at *2

---

[17] Cf. In re Fidelity ERISA Float Litig., 829 F.3d 55, 60 (1st Cir. 2016) (holding that payments that "do[] not go, and [are] not intended to go, to the plan itself" are not plan assets as a matter of law).

[18] This functional test holds that plan assets include funds received as a result of a person's status as a fiduciary or her exercise of fiduciary authority or discretion, if the funds can be used to benefit the fiduciary at the expense of plan participants or beneficiaries.  Haddock, 419 F. Supp. 2d at 170.  The court in Haddock was able to conclude, in circular logic, that the revenue sharing payments from mutual funds received by the defendant (an investment advisor to a 401(k) plan) could potentially be plan assets *only after* it determined that the defendant could be acting as a fiduciary as to the selection of the mutual funds to be offered to participants under the plans.  Id. at 160, 170-71.  Because Cigna and CHLIC are not fiduciaries when they negotiated with the pharmacies for, among other terms, recoupment of the Spread (see supra pp. 8-9), any alleged payments by the pharmacies (or Plaintiffs) are not plan assets under Haddock.  See Hecker v. Deere & Co., 556 F.3d 575, 584 (7th Cir. 2009) (noting that Haddock was neither "helpful" nor "persuasive, since the service provider in that case had the authority to delete and substitute mutual funds from the plan without seeking approval from the named fiduciary").  Moreover, Haddock involved a retirement plan, not a healthcare benefit plan, and therefore it involved an entirely different kind of possible plan asset – revenue sharing generated as a result of investment of indisputable *plan assets*.  Haddock's functional test is thus not analogous or applicable to the current circumstances.

(July 3, 2013) (reaffirming its long-standing view that plan assets generally include property in which the plan has beneficial ownership interest, and concluding that revenue sharing payments as described are not plan assets where the *plan* itself did not actually receive revenue sharing payments, but received credits that were calculated by reference to the revenue sharing amounts received by plan's service provider); Faber v. Metro. Life Ins. Co., 648 F.3d 98, 106 (2d Cir. 2011) ("As we have before, we find the DOL's approach of defining 'plan assets' consistent with 'ordinary notions of property rights' persuasive and entitled to Skidmore deference."). Moreover, Plaintiffs have not and cannot adequately distinguish the cases that recognize that any negotiated Spread amount is not a plan asset and does not transform a party into an ERISA fiduciary by recouping this Spread amount from a party with whom it contracts.  See Pls.' Opp. at 26-27; Cigna Br. at 23-24.[19]

Plaintiffs also continue to rely on their allegation that the contracts underpinning their Plans are plan assets.  Recognizing that the Optum-Retail Pharmacy Contracts are not plan assets (Cigna Br. at 25-26), Plaintiffs try to clarify in their Opposition that the ASO agreements and insurance policies between "Cigna and the plan" are the plan assets. Pls.' Opp. at 26.  They are wrong.  First, CHLIC and the plan sponsors – not the Plans – are parties to the ASO agreements and insurance policies.  See, e.g., Cigna Br. Ex. 2 at Appx. 0065.  Although Plaintiffs try to refer to "plan sponsors" and "plans" interchangeably, a "plan" is a separate legal entity.  See 29 U.S.C. § 1132(d).  Second, Plaintiffs' reliance on Everson v. Blue Cross & Blue Shield of Ohio, 898 F. Supp. 532 (N.D. Ohio 1994), does not support their new plan asset theory.  That case did not involve a self-funded welfare plan, and therefore, it offers no basis for finding that the ASO

---

[19] See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 476 n.6 (7th Cir. 2007) ("Caremark was not controlling assets of the plan but rather was controlling its own assets in making these contractual rebate payments to Carpenters."); Deluca v. Michigan, No. 06-12552, 2007 WL 1500331, at *3 (E.D. Mich. May 23, 2007) ("Increased contributions, co-payments, and deductibles paid by participants and beneficiaries . . . represent out-of-pocket expenses of individual participants and beneficiaries.  [They] also are not profits 'of [the plan] fiduciary' or profits 'made through use of assets of the plan.'. . . They are profits belonging to the hospitals that provided health care services to the participants and beneficiaries of the plan."); Moeckel v. Caremark, Inc., 622 F. Supp. 2d 663, 692 (M.D. Tenn. 2007) (rebates received for prescription drugs sales were not plan assets; and even assuming they were, defendant exercised no control or authority to confer fiduciary status).

agreements (i.e., administrative services only contracts) are plan assets.  ASO agreements are contracts for services provided to the plan, not an insurance policy or source of money.  In the context of a fully insured health plan, the district court in Everson found that "the plan's *only* asset consists of an insurance policy," implicitly rejecting that discounts negotiated between the health insurer and service providers were plan assets.  Id. at 540 (emphasis added).  Everson therefore further undermines Plaintiffs' argument that the Spread amounts are plan assets.  Similarly, in Marks v. Independence Blue Cross, 71 F. Supp. 2d 432 (E.D. Pa. 1999), the plaintiffs alleged that the insurer of a fully insured plan breached its fiduciary duties and engaged in prohibited transactions by failing to pass on discounts that it received from providers.  Id. at 434-36.  The court nonetheless found that the insurer controlled only its own money and not plan assets, suggesting that neither the discounts nor the insurance policy were plan assets.  Id. at 435.

Even assuming that the insurance policies for fully insured plans or the ASO agreements for self-funded plans are plan assets, the conduct challenged by Plaintiffs – the recoupment of Spread amounts from pharmacies – did not arise from or involve Cigna, CHLIC, and/or Optum exercising authority or control over these alleged assets.  The fact that Cigna might have been a *party* to a contract which itself constitutes a plan asset does not render Cigna a fiduciary for all actions relating to that contract.  E.g., F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987) (party negotiating a contract with a plan is not a fiduciary); Schulist v. Blue Cross, 717 F.2d 1127, 1131-32 (7th Cir. 1983) (insurer not a fiduciary in entering into, and enforcing, arm's length contract with plan).  If that were the case, there would be no non-fiduciary functions in insurer-insured or claims-administrator-plan relationships.  That is not the law.  Instead, a party to a contract, even a plan asset contract, is only a fiduciary only if it unilaterally changes the terms of its arrangement with the plan sponsor.  E.g., Chicago Bd. Options Exch. v. Connecticut Gen. Life Ins. Co., 713 F.2d 254, 260 (7th Cir. 1983).[20]  Where, as

---

[20] Cases cited by Plaintiffs regarding the "plan asset" status of contracts are consistent with this principle.  See Tr. of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co., 783 F. Supp. 899, 910 (D.N.J. 1992) (deviating from terms of "plan asset" contract is a breach of fiduciary duty); Fechter v. Connecticut Gen. Life Ins. Co., 800 F. Supp. 182, 208 (E.D. Pa. 1992) (insurer not a fiduciary where it insisted on compliance with policy terms); Everson,

here, the insurer or claims administrator does not have or exercise any discretion to change the terms of its insurance or services arrangement with the plan sponsor, but instead simply follows the terms of its contract, it will not be found to be acting as a fiduciary.[21]

In sum, because Plaintiffs fail to plausibly allege that Cigna, CHLIC, and/or Optum acted as a fiduciary with respect to actions subject to complaint, Counts II, III, IV, VI, and VII should be dismissed.[22]  Cigna Br. at 16-22.

### C.  Plaintiffs' Characterization Of Plan Assets And Transactions Cannot Save Their Prohibited Transaction Claims

As Cigna and CHLIC explained, each of Plaintiffs' prohibited transaction claims fail as a matter of law.  Cigna Br. at 23-26.  First, even if Plaintiffs have made plausible allegations of fiduciary conduct as to the challenged actions, Plaintiffs cannot proceed with their claims under Section 406(a)(1)(D), 406(b)(1) and 406(b)(3) because they have not identified plan assets that are involved in the challenged transactions.  Id. at 24-26.  Plaintiffs' attempts to recharacterize the alleged plan assets in their Opposition cannot save these claims.  See supra pp. 10-13.

Second, Cigna and CHLIC explained that, even assuming Defendants' fiduciary status, Plaintiffs' Section 406(a)(1)(C), 406(a)(1)(D), and 406(b)(2) claims also fail because they have not identified a *plan* transaction that Defendants purportedly caused.  Cigna Br. at 23-24. Plaintiffs criticize Cigna and CHLIC for arguing that the Optum-Retail Pharmacy Contracts are not plan transactions, claiming that these agreements are not the underlying basis for their

---

898 F. Supp. at 540 (claim stated that insurer "misused plan assets" where it failed to follow policy terms in calculating copayment).

[21] Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002) (insurer not fiduciary in enforcing limits on plan's withdrawal); Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc., 805 F.2d 732, 737 (7th Cir. 1986) ("No discretion is exercised when an insurer merely adheres to a specific contract term."); Sirna, Jr., P.C. Profit Sharing Plan v. Prudential Sec., Inc., 964 F. Supp. 147, 150 (S.D.N.Y. 1997) (finding with respect to services agreement between plan and securities broker, nothing "suggests that one who makes an arm's length arrangement with a qualified plan thereafter becomes a fiduciary by virtue of the fact that he or she thereafter has the unilateral right to confer benefits on the plan which were not required by the terms of the bargain").

[22] Plaintiffs do not dispute their co-fiduciary and non-fiduciary claims under Section 405 and 502(a)(3) are wholly derivative of their other fiduciary breach and prohibited transaction claims.  Pls.' Opp. at 42-43.  They also do not dispute that co-fiduciary and non-fiduciary liability require an antecedent breach of fiduciary duty or trust to be viable.  Id.  These claims therefore should be dismissed.  See Cigna Br. at 22-23.

prohibited transaction claims.  Pls.' Opp. at 39.  However, if there is any "transaction" that governs CHLIC's ability to recover the Spread amounts from the pharmacies – which Plaintiffs take issue with as violating the Plans' terms – it is the Optum-Retail Pharmacy Contracts because those contracts establish the negotiated amount that the pharmacies have agreed to accept for each prescription.  Cigna Br. at 23-24.  While correct that "*Plaintiffs* are not parties to the pharmacy agreements," Plaintiffs overlook that the *Plans* are not parties to these agreements either, thus belying any claimed "plan transaction."  Id.

To attempt to avoid dismissal, Plaintiffs confuse the issue further.  Their claims, however articulated, undisputedly require a predicate "transaction" involving the Plans and a fiduciary.  See 29 U.S.C. §§ 1109(a)(1)(C), (a)(1)(D), and (b)(2).  Plaintiffs argue that "each time a patient filled a prescription, the patient's plan engaged in a transaction pursuant to which the plan provided prescription drug benefits."  Pls.' Opp. at 37, 39.  But taken to its logical conclusion, if Plaintiffs are correct, there would be a plan transaction governed by ERISA's prohibited transaction rules each time a plan participant used her pharmacy (or, for that matter, any) benefits simply because the plan provides "prescription drug coverage."  This would render this provision needlessly duplicative of the remedies under Section 502(a)(1)(B).  According to Plaintiffs, this is a prohibited transaction because the participant's cost-share and/or the Spread amounts are plan assets.  Id. at 37.  It is unsurprising that Plaintiffs fail to cite a single case to support this expansive theory, which the Court should decline to adopt.

**III.     Plaintiffs Cannot Sustain Their ERISA Discrimination Claim**

Plaintiffs fail to address the argument that their Section 702 discrimination claim fails because they acknowledge that the cost-share amounts for prescription drugs under a particular plan are calculated the same way for everyone covered under that plan regardless of an individual's medical condition (i.e., "health status") or the specific drug purchased.  Cigna Br. at 31.  They ineffectively try to ground their claim in a "list of examples of the prescription medications for which certain plan participants, including the Plaintiffs, pay the Clawbacks" and contend that they should be permitted to take discovery to fully develop their Section 702 claim.

Pls.' Opp. at 42 n.34.  However, Plaintiffs' identification of prescription drugs that allegedly generate a Spread amount is not sufficient to withstand dismissal.  Critically, they do not contend that every prescription drug (generic and brand) used to treat a certain medical condition generates a Spread amount.  Their discrimination claim in Count V should thus be dismissed because they challenge conduct not proscribed by Section 702.  Cigna Br. at 30-32.

## IV.  **Plaintiffs' Opposition Brief Cannot Cure The Deficiencies In Their RICO Claims**

As set forth in Cigna and CHLIC's Opening Brief (at 32-40), Plaintiffs' Complaint lacks allegations sufficient to establish the "conduct" and "racketeering" elements of RICO violations. Indeed, nowhere in the 20+ pages they devote to RICO in their Opposition do Plaintiffs articulate how the allegations regarding the contractual relationships at issue here (which were freely negotiated at arm's length between sophisticated parties) give rise to an inference that Cigna or CHLIC conducts the affairs of the alleged RICO enterprises, Optum and/or Argus.  Nor have Plaintiffs overcome the fundamental principle that allegations of fraudulent intent that seek "to 'dress-up' a breach-of-contract claim as a [RICO] fraud claim" are insufficient as a matter of law.  Brookdale Univ. Hosp'l & Med. Ctr. v. Health Ins. Plan of Greater N.Y., No. 07-1471, 2009 WL 928718, at *4 (E.D.N.Y. Mar. 31, 2009).  Counts VIII and X should be dismissed.[23]

### A.  **Neither Cigna Nor CHLIC "Conducts The Affairs" Of Optum Or Argus**

Plaintiffs do not cite a single case in which a court concluded – as Plaintiffs argue here – that a RICO defendant controlled the affairs of another sophisticated party, alleged to be a RICO enterprise, through a bona fide contract.  Further, Plaintiffs do not (and cannot) point to any facts alleged in the Complaint that Cigna and/or CHLIC purportedly "controlled" Argus or Optum (or its predecessor, Catamaran) in any way other than pursuant to the applicable contracts.  See Pls.' Opp. at 59; Compl. ¶ 238; Cigna Br. at 34 n.22.  The Court should dismiss the RICO claims due to the lack of plausible, non-conclusory allegations that Cigna or CHLIC controlled the affairs of

---

[23] Because the Complaint does not allege any cognizable violation of RICO, Plaintiffs' derivative RICO conspiracy claim under 18 U.S.C. § 1962(d) (Count X) should also be dismissed.  See Cigna Br. at 40.

any alleged enterprise.  See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (RICO liability does not extend to "complete 'outsiders'").  Indeed, it strains credulity for Plaintiffs to glibly suggest that Cigna – one of UnitedHealth Group's competitors – is controlling and conducting the affairs of Optum, UnitedHealth Group's wholly-owned subsidiary.[24]  Compl. ¶¶ 42 n.6, 238.

Plaintiffs urge the Court to infer that Cigna or CHLIC conducted the affairs of the alleged enterprises because Optum or Argus were "allowed . . . to keep a portion of the fraudulent Clawbacks."  Pls.' Opp. at 59 (citing Compl. ¶¶ 71, 242, 250).  This, Plaintiffs say, distinguishes the instant case from Crabhouse of Douglaston Inc. v. Newsday Inc., 801 F. Supp. 2d 64, 75 (E.D.N.Y. 2011), where RICO liability did not extend to a defendant that "stood at arm's length" to the alleged enterprise.  But courts in the Second Circuit have rejected the idea that a party "conducts the affairs" of a purported enterprise simply because both purportedly benefit from the alleged RICO violation, as that would "'RICO-ize' contract claims where the parties had worked closely together to realize contractual goals."  Vickers Stock Research Corp. v. Quotron Sys., Inc., No. 96-2269, 1997 WL 420265, at *4 (S.D.N.Y. July 25, 1997).  Just as the publisher in Crabhouse did not conduct the affairs of the alleged auditor-enterprise (which was paid to provide services to the publisher), Cigna and CHLIC do not conduct the affairs of Optum or Argus simply because there is alleged value to each of the parties resulting from their contract.  Indeed, that is presumably the reason why any entity enters into a contract in the first place.

Plaintiffs next urge the Court to excuse the deficiencies in the Complaint because Plaintiffs should not be expected to have "sufficient factual information regarding the inner workings of a RICO enterprise" or to be able to plead how Cigna or CHLIC allegedly conducted the affairs of Optum or Argus.  Pls.' Opp. at 61.  Plaintiffs claim that Vickers illustrates the "dangers of ignoring Plaintiffs' well-pled allegations" because the court converted a motion to

---

[24] Plaintiffs also set up a straw man by claiming Defendants believe all contracts serve as "paper shields" against RICO liability.  Pls.' Opp. at 59.  Defendants' demurrer does not sweep so broadly.  Properly stated, Defendants' position is that Plaintiffs' RICO claims fail here because the Complaint alleges only that Optum and Argus are independent actors separate and apart from Cigna and CHLIC, and the parties' relationships are governed by negotiated "contracts and agreements" by which Optum and Argus "agreed to process claims" submitted by plan participants.  See Cigna Br. at 36 (quoting Compl. ¶¶ 238, 243, 250(b)).

dismiss on the "conduct" element into a motion for summary judgment.  Id.  But the Vickers

court did not rule pursuant to Rule 56 because "the role of the particular defendant in the RICO

enterprise [was] unclear" or because the plaintiffs were entitled to take discovery; rather, the

court did so because the moving party attached materials to the motion that were outside the

pleadings.  1997 WL 420265, at *3.[25]  Relevant here, the Vickers court granted judgment as a

matter of law to the defendant because the defendant's dealings with the alleged enterprises arose

"directly from their contractual relationship," and "any persuasive power [the defendant] may

have possessed" over the alleged enterprises sprang "from their contractual relationship."  Id. at

*4.  Far from suggesting that Plaintiffs should be allowed to proceed despite lacking information

to satisfy the "conduct" element of RICO, Vickers confirms that the "conduct" element is a

question of law that the Court should "flush out [at] . . . an early stage of the litigation."

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).

### B.        Plaintiffs Fail To Allege Cognizable Predicate Acts Of Mail Or Wire Fraud

Plaintiffs assert that their RICO claims involving the so-called "Clawback scheme" stem

from Defendants' allegedly fraudulent misrepresentations in Plaintiffs' medical benefit plans.

See, e.g., Pls.' Opp. at 64.  Notwithstanding Plaintiffs' flawed assertion that the alleged practice

is actionable as a "departure" from "moral uprightness," Plaintiffs admit that the gravamen of

their case is the allegation that they overpaid for prescription drugs in violation of promises made

in their Plans.  Id.; see supra p. 1 n.2.

Further, Plaintiffs do not dispute the general rule in the Second Circuit that "[a] breach of

contract does not amount to mail [or wire] fraud."  United States ex rel. O'Donnell v.

Countrywide Home Loans, Inc., 822 F.3d 650, 660 (2d Cir. 2016); Pls.' Opp. at 64, 67.  Rather,

they seek to avoid that rule by claiming that the alleged violations of Plans constitute a "scheme

---

[25] The instant case is also distinguishable from Allstate Insurance Company v. Seigel, 312 F. Supp. 2d 260, 276 (D. Conn. 2004), cited by Plaintiffs (at 59-61), in which the court denied a motion to dismiss because "the facts regarding [the d]efendant's conduct and its effect" on the alleged enterprise were not fully known.  Here, Plaintiffs concede that Cigna and CHLIC interacted with Argus or Optum only pursuant to contracts that were negotiated at arm's length, and there are no disputed factual questions that call into question whether Cigna or CHLIC controlled either of the alleged enterprises.

to defraud" because Cigna or CHLIC had "fraudulent intent at the time of contract execution" and suggesting that Cigna or CHLIC had "no intent ever to perform" their obligations under the plans. Pls.' Opp. at 64, 67 (citing O'Donnell, 822 F.3d at 658, 662). But the allegations in the Complaint do not permit the Court to infer any such fraudulent intent or to treat the otherwise ordinary plan terms as fraudulent misrepresentations capable of supporting a RICO claim.

Plaintiffs concede that to adequately plead a RICO claim based on representations contained in their respective Plans, they must plead facts giving rise to a "strong inference" that Cigna or CHLIC intended to defraud Plaintiffs by way of those representations. See Pls.' Opp. at 67. Plaintiffs have not satisfied this demanding standard.

Plaintiffs first argue that fraudulent intent may be inferred "from the scheme itself" because the so-called "Clawback scheme" allegedly injured Plaintiffs by causing them "to pay excess charges to participating pharmacies in exchange for receiving their prescription drugs." Pls.' Opp. at 66-67 (quoting Compl. ¶¶ 5, 274). But the Second Circuit has held that fraudulent intent may *not* be inferred from a failure to comply with a contractual obligation, as "[t]o infer fraudulent intent from mere nonperformance . . . would eviscerate the distinction between a breach of contract and fraud." United States v. D'Amato, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994). Here, Plaintiffs acknowledge that the central issue is whether their respective plans permit and adequately disclose Cigna's recovery of Spread from pharmacies, which Plaintiffs concede is not inherently unlawful. The so-called "Clawback scheme" is thus a practice that Plaintiffs believe is improper because it allegedly violates the Plans' terms. Alleged misrepresentations relating to a contract or plan do not rise to the level of fraud, however, unless they concern a matter that is "collateral or extraneous" to the document. See Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 427 (S.D.N.Y. 2004). Plaintiffs' allegations in this case do not.

None of the cases Plaintiffs cite stands for the proposition that an alleged breach of contract gives rise to an inference of fraudulent intent whenever the "necessary result" of the breach was to injure or raise prices for others. Pls.' Opp. at 66. Thus, the allegation that Plaintiffs paid more than they should have under the terms of their Plans does not, as a matter of

18

law, support an inference that Cigna or CHLIC never intended to perform under those plans.  See Brookdale, 2009 WL 928718, at *4-5 (dismissing RICO claims against insurance company because "fraud claims premised on an 'undisclosed intention to breach' a contract cannot be predicated on a 'mere showing of nonperformance'").

Plaintiffs next argue that fraudulent intent may be inferred from alleged efforts to conceal the so-called "Clawback scheme."  Businesses, however, routinely adopt reasonable measures such as confidentiality provisions governing proprietary business practices and negotiated pricing.  Such confidentiality provisions serve important and legitimate business interests, particularly in competitive industries like Cigna and CHLIC's, where healthcare provider and prescription drug rates vary among competitors and can significantly contribute to each company's individual value proposition in the marketplace.  To infer a RICO violation from the alleged existence of such provisions or practices would further improperly RICO-ize ordinary business relationships.  See Vickers, 1997 WL 420265, at *4.

Plaintiffs also argue that fraudulent intent may be inferred from factual allegations of "a motive for committing fraud and a clear opportunity for doing so."  Pls.' Opp. at 67.  But Plaintiffs have alleged neither in their Complaint.  For motive, they cite conclusory allegations that Cigna or CHLIC hoped to gain "undisclosed profit in exchange for little to nothing."  Id. at 68 (quoting Compl. ¶¶ 19, 65).  But a profit motive without more is insufficient as a matter of law to support an inference of fraudulent intent.  See, e.g., Brookdale, 2009 WL 928718 at *6 ("The only 'motive' ascribed to the Defendants is a generalized profit motive that could be imputed to any company, and thus has been consistently rejected as a basis for inferring fraudulent intent.").  Were it otherwise, any efficient breach would give rise to an inference of fraudulent intent; that is not the law.  See O'Donnell, 822 F.3d at 658-59 (explaining that "proof that a promise was made and that it was not fulfilled" has "never been" sufficient to establish fraud).  Plaintiffs then suggest that the Court may infer a "clear opportunity" to commit fraud because Cigna and CHLIC are "trusted actors in the health industry."  Pls.' Opp. at 68 (quoting Compl. ¶¶ 70, 275).  Setting aside the fact that those paragraphs of the Complaint make no

mention of Cigna and CHLIC's status in the health industry, the Court may not infer fraudulent intent from a defendant's good reputation.  Rather, Plaintiffs must also allege that Cigna or CHLIC possessed the necessary "authority" to commit fraud – when the plans were issued – by, for example, exercising "substantial influence over [Plaintiffs'] decision-making."  See Powers v. British Vita, P.L.C., 57 F.3d 176, 185 (2d Cir. 1995).  Plaintiffs make no such allegations here.

Finally, Plaintiffs argue that fraudulent intent may be inferred from general allegations that Cigna or CHLIC promised in the Plans themselves that Plaintiffs "would pay a certain amount for prescription drugs with knowledge and intent that Class members would be charged a higher amount."  Pls.' Opp. at 67 (quoting Compl. ¶ 251).  Though fraudulent intent may be alleged generally, the relaxation of Rule 9(b)'s specificity requirement for scienter "must not be mistaken for [a] license to base claims of fraud on speculation and conclusory allegations," and a plaintiff must still "allege facts that give rise to a strong inference of fraudulent intent."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quotation marks and citations omitted).  A "pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent" is insufficient to "support the inference that the defendants acted recklessly or with fraudulent intent."  Id. at 1129.  Plaintiffs' general allegations are plainly insufficient to plead a scheme to defraud based on fraudulent misrepresentations contained in their respective plans.[26]  Counts VIII and X should be dismissed.

## CONCLUSION

For the reasons proffered in Cigna and CHLIC's Opening Brief and in this Reply Memorandum of Law, Cigna and CHLIC respectfully request that the Court dismiss the Consolidated Complaint with prejudice.

---

[26] Plaintiffs' allegations of mail/wire fraud are also legally insufficient under Rule 9(b).  Because there is no scheme to defraud, any use of the mails or wires by Cigna or CHLIC could not possibly have been "in furtherance of" a scheme to fraud and, by extension, cannot establish mail/wire fraud.  And the communications that Plaintiffs cite as fraudulent per se did not occur at the time of contracting, which Plaintiffs concede is the relevant "temporal requirement" for their mail/wire fraud allegations.  Pls.' Opp. at 64, 65.

Dated:  June 12, 2017                    Respectfully submitted,

                                         /s/ Joseph J. Costello
                                         Joseph J. Costello (ct14917)
                                         Brian W. Shaffer (phv08654)
                                         Eleanor R. Farrell (phv08309)
                                         Matthew D. Klayman (phv08656)
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         1701 Market Street
                                         Philadelphia, PA 19103
                                         Telephone:  215-963-5000
                                         Facsimile:  215-963-5001
                                         joseph.costello@morganlewis.com
                                         brian.shaffer@morganlewis.com
                                         eleanor.farrell@morganlewis.com
                                         matthew.klayman@morganlewis.com


                                         Michael C. D'Agostino (ct7294)
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         One State Street
                                         Hartford, CT 06103
                                         Telephone:  860-240-2731
                                         Facsimile:  860-240-2800
                                         michael.dagostino@morganlewis.com

                                         *Attorneys for Defendants Cigna Corporation and
                                         Cigna Health and Life Insurance Company*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2017, the foregoing document was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.

/s/ Joseph J. Costello
Joseph J. Costello