**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**


IN RE CIGNA CORPORATION PBM             Civil No. 3:16-cv-1702 (WWE)
LITIGATION

                                        CLASS ACTION



**DEFENDANT OPTUMRX, INC.'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**THE CONSOLIDATED COMPLAINT**


**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Page

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I.    PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE EXCUSED FROM EXHAUSTING PLAN REMEDIES ..............................................2

    A.    Plaintiffs' Claim That They Did Not Receive Full Benefits Must be Exhausted ..................................................................................2

    B.    Plaintiffs Cannot Establish Futility Simply by Alleging the "Clawback" Was a "Long Standing Policy" ..........................................4

II.    PLAINTIFFS' ANCILLARY ERISA FIDUICARY CLAIMS ALL FAIL AGAINST OPTUMRX (COUNTS II, III, IV, VI) ..............................5

    A.    Plaintiffs' Ancillary Fiduciary Claims Should Be Dismissed as Duplicative of Their Claim for Benefits ..........................................5

    B.    Plaintiffs Fail to Allege that OptumRx Is an ERISA Fiduciary ..........6

        1.    OptumRx Did Not Have Discretionary Control over Plan Claims Administration ..........................................................7

        2.    OptumRx Did Not Become an ERISA Fiduciary by Allegedly Managing the Purported "Clawbacks" ..................8

        3.    OptumRx Did Not Become an ERISA Fiduciary by Purportedly Controlling Plan Assets ..........................................10

        4.    OptumRx Did Not Become an ERISA Fiduciary by "Setting its Own Compensation" ..........................................11

    B.    Plaintiffs Fail to Allege that OptumRx Breached Any ERISA Fiduciary or Prohibited Transaction Rule ..........................................12

III.    PLAINTIFFS FAILED TO ALLEGE ANY DISCRIMINATION CLAIM ....................14

IV.    PLAINTIFFS FAIL TO STATE PLAUSIBLE CIVIL RICO CLAIMS ..........................14

    A.    Plaintiffs Fail to Allege Racketeering With Particularity Under Rule 9(b) ..........14

B.   Plaintiffs Fail to Allege Facts Plausibly Demonstrating OptumRx and Wholly Independent Pharmacies Qualify as a RICO Enterprise ..........................15

    1.   Plaintiffs Fail to Plead that OptumRx and the Pharmacies Had a Common Illegal Purpose...........................................................................15

    2.   Plaintiffs Fail to Plead that the Enterprise Functioned as a Continuing Unit ..............................................................................17

C.   Plaintiffs Fail to Plead that OptumRx Had "Control" over the Alleged Enterprise ...................................................................................19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ally Bank v. Castle,*
  2012 U.S. Dist. LEXIS, 118452 (N.D. Cal. Aug. 20, 2012)....................................................19

*Alves v. Harvard Pilgrim Health Care, Inc.,*
  204 F. Supp. 2d 198 (D. Mass. 2002) ...........................................................................8, 9, 12

*AMA v. United Healthcare Corp.,*
  588 F. Supp. 2d 432 (S.D.N.Y. 2008)..................................................................................19

*Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.,*
  171 F. Supp. 3d 1092 (D. Colo. 2016)....................................................................................4

*Bell v. Pfizer, Inc.,*
  626 F.3d 66 (2d Cir. 2010)......................................................................................................7

*Bickley v. Caremark Rx., Inc.,*
  361 F. Supp. 2d 1317 (N.D. Ala. 2004) ...............................................................................8, 9

*Blue Cross & Blue Shield of Ala. v. Caremark, Inc.,*
  1999 U.S. Dist. LEXIS 16230 (N.D. Ill. 1999) ...................................................................18

*Blue Cross v. SmithKline Beecham Clinical Labs., Inc.,*
  108 F. Supp. 2d 84 (D. Conn. 1999)................................................................................15, 19

*In re Blue Cross of W. Pa.,*
  942 F. Supp. 1061 (W.D. Pa. 1996).......................................................................................3

*Boyle v. United States,*
  556 U.S. 938 (2009)...............................................................................................................16

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,*
  474 F.3d 463 (7th Cir. 2007) ........................................................................................ *passim*

*Corsini v. United Healthcare Corp.,*
  965 F. Supp. 265 (D.R.I. 1997)...............................................................................................3

*Davenport v. Abrams,*
  249 F.3d 130 (2d Cir. 2001).................................................................................................2, 3

*Deluca v. Blue Cross Blue Shield of Mich.,*
  2007 WL 1500331 (E.D. Mich. May 23, 2007)....................................................................10

*Devlin v. Empire Blue Cross & Blue Shield*,
   274 F.3d 76 (2d Cir. 2001)..............................................................................6

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
   217 F. Supp. 608 (N.D.N.Y. 2016)....................................................2, 5, 13

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013)...........................................................................12

*Everson v. Blue Cross & Blue Shield of Ohio*,
   898 F. Supp. 532 (N.D. Ohio 1994)................................................................9

*Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*,
   2013 U.S. Dist. LEXIS 190701 (C.D. Cal. Dec. 13, 2013) ..........................20

*Frommert v. Conkright*,
   433 F.3d 254 (2d Cir. 2006)............................................................................5

*Haddock v. Nat'l Fin. Srvs., Inc.*,
   262 F.R.D. 97 (D. Conn. Nov. 6, 2009)......................................................5, 10

*Haddock v. Nationwide Financial Services, Inc.*,
   419 F. Supp. 2d 156 (D. Conn. 2006)...........................................................10

*Hemmerdinger Corp. v. Ruocco*,
   976 F. Supp. 2d 401 (E.D.N.Y. 2013) ..........................................................16

*Hoffman v. Empire Blue Cross & Blue Shield*,
   1999 U.S. Dist. LEXIS 15365 (S.D.N.Y. Sept. 28, 1999).............................5

*In Allstate Insurance Co. v. Seigel*,
   312 F. Supp. 2d 260 (D. Conn. 2004)...........................................................20

*In re Ins. Brokerage Antitrust Litig.*,
   2007 U.S. Dist. LEXIS 73220 (D.N.J. Sep. 28, 2007), *aff'd*, 618 F.3d 300 (3d
   Cir. 2010) ......................................................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).........................................................................18

*Jacobson v. Cooper*,
   882 F.2d 717 (2d Cir. 1989).........................................................................16

*Kennedy v. Empire Blue Cross & Blue Shield*,
   989 F.2d 588 (2d Cir. 1993)...........................................................................4

*Kirkendall v. Halliburton Inc.*,
   707 F.3d 173 (2d Cir. 2013)...........................................................................3

*Klosterman v. W. Gen. Mgmt., Inc.*,
   32 F.3d 1119 (7th Cir. 1994) .......................................................................7

*Kosswig v. Timken Co.*,
   2007 U.S. Dist. LEXIS 58718 (D. Conn. Aug. 7, 2007) ............................3

*Kyle Railings, Inc. v. Pacific Adm. Serv. Inc.*,
   990 F.2d 513 (9th Cir 1993) ........................................................................7

*Libby-Owens-Ford Co. v. Blue Cross Blue Shield Mut. of Ohio*,
   982 F.2d 1031 (6th Cir. 1993) .....................................................................9

*MacLeannan v. Provident Life & Accident Ins. Co.*,
   676 F. Supp. 2d 57 (D. Conn. 2009)............................................................4

*In re Managed Care Litig.*,
   185 F. Supp. 2d 1310 (S.D. Fla. 2002) ...............................................18, 19

*Moeckel v. Caremark RX Inc.*,
   622 F. Supp. 2d 663 (M.D. Tenn. 2007) .....................................................8

*Mulder v. PCS Health Sys.*,
   432 F. Supp. 2d 450 (D.N.J. 2006) ..............................................................7

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*,
   798 F.3d 125 (2d Cir. 2015)........................................................................6

*Nechis v. Oxford Health Plans, Inc.*,
   421 F.3d 96 (2d Cir. 2005)......................................................................6, 9

*New Eng. Carpenters Health & Welfare Fund v. Abbott Labs.*,
   2014 U.S. Dist. LEXIS 134857 (N.D. Ill. Sep. 25, 2014) ............4, 18, 19

*Novak v. TRW, Inc.*,
   822 F. Supp. 963 (E.D.N.Y. 1993) ..............................................................5

*Novella v. Empire State Carpenters Pension Fund*,
   2007 U.S. Dist. LEXIS 63540 (S.D.N.Y. Aug. 28, 2007)....................4, 5

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
   822 F.3d 650 (2d Cir. 2016).......................................................................14

*Pegram v. Herdrich*,
   530 U.S. 211 (2000).....................................................................................11

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).....................................................................................19

*Schmidt v. Fleet Bank,*
    16 F. Supp. 340 S.D.N.Y. 1998 ..................................................................................19

*Schulist v. Blue Cross of Iowa,*
    717 F.2d 1127 (7th Cir. 1983) .................................................................................12

*Seaway Food Town, Inc. v. Med. Mut. of Ohio,*
    347 F.3d 610 (6th Cir. 2003) .............................................................................11, 12

*Serrapica v. Long-Term Disability Plan of the Chase Manhattan Bank,*
    2007 U.S. Dist. LEXIS 56869 (E.D.N.Y. Aug. 3, 2007)......................................4, 5

*Sibley-Schreiber v. Oxford Health Plans, Inc.,*
    62 F. Supp. 2d 979 (E.D.N.Y. 1999) ........................................................................4

*Sitte v. Citibank,*
    2015 WL 75237 (N.D. Cal. Jan. 6, 2015) ...............................................................17

*In re Sumitomo Copper Litig.,*
    995 F. Supp. 451 (S.D.N.Y. 1998) .........................................................................15

*Teitel v. Deloitte & Touche Pension Plan,*
    420 F. App'x 116 (2d Cir. 2011) ...........................................................................3, 4

*In re Trilegiant Corp.,*
    11 F. Supp. 3d 82 (D. Conn. 2014) .........................................................................17

*United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund*
    *v. Walgreen Co.,*
    719 F.3d 849 (7th Cir. 2013) ............................................................................18, 20

*United States v. Cianci,*
    378 F.3d 71 (1st Cir. 2004)................................................................................16, 17

*United States v. Ragosta,*
    970 F.2d 1085 (2d Cir. 1992).................................................................................15

*United States v. Turkette,*
    452 U.S. 576 (1981)...........................................................................................16, 17

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996)...................................................................................................9

*Walter v. Drayson,*
    538 F.3d 1244 (9th Cir. 2008) .................................................................................19

*Zaro Licensing, Inc. v. Cinmar, Inc.,*
    779 F. Supp. 276 (S.D.N.Y. 1991) .........................................................................15

*Zupa v. Gen. Electric Co.*,
    2016 WL 3976544 (D. Conn. July 22, 2016) ........................................................................3

**Statutes**

ERISA § 3(21) .................................................................................................................7

ERISA § 406(a)(1)(C) .....................................................................................................13

ERISA § 406(a)(1)(D) .....................................................................................................13

ERISA § 406(b) ...............................................................................................................13

ERISA § 502(a)(1)(B).............................................................................................. *passim*

ERISA § 502(a)(2) .............................................................................................................5

ERISA § 502(a)(3) ..........................................................................................................5, 6

ERISA § 510 .......................................................................................................................5

ERISA § 702 ....................................................................................................................14

**Other Authorities**

29 C.F.R. § 2509.75—8(D-2) ...........................................................................................7

29 C.F.R. § 2560.503-1(m)(4)(i) ......................................................................................2

Fed. R. Civ. P. 9(b) .........................................................................................................14

## INTRODUCTION

Plaintiffs agree that this entire dispute hinges on the terms of their individual ERISA plans.[1]  They assert—erroneously—that the relevant terms of these plans do not allow Defendants to recoup (the action Plaintiffs refer to as "clawback") the "spread"[2] between the member's copayment or coinsurance and the negotiated rate between Defendants and the pharmacies.  But such disputes over the meaning of plan terms must be exhausted under ERISA's procedures.  Plaintiffs cannot avoid those procedures by claiming there has been no denial of benefits.  They allege that they paid more than they should have, which is precisely the sort of claim DOL regulations say must be exhausted.  Nor can they avoid exhaustion by arguing that they were unaware that they were overcharged.  As the Second Circuit has held, even if Plaintiffs were not previously aware of their claim, they plainly are now and therefore must exhaust their remedies.

Plaintiffs likewise may not circumvent ERISA's exhaustion requirements by raising duplicative ERISA fiduciary and prohibited transaction claims.  Disputes over plan terms and benefits must be raised under ERISA's claims procedures, and in any event, nothing in ERISA's fiduciary rules precludes a pharmacy benefits manager ("PBM") from receiving compensation under its contracts with network pharmacies.  This is doubly true of Plaintiffs' RICO claims.  Plaintiffs may not prosecute a contract dispute through a statute meant to control organized criminal behavior.  Plaintiffs also have failed plausibly to allege the predicate legal requirements for such a claim.  The Court should dismiss Plaintiffs' Complaint in its entirety.

---

[1] Plaintiffs acknowledged as much in their comments during the parties May 16, 2017 scheduling conference with the Court, calling it the "$64,000 question."

[2] Plaintiffs define "spread" as the "difference between the amount Defendants paid the pharmacy and the amount that the participant paid to the pharmacy."  Pls.' Mem. at 1, 5.

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS HAVE FAILED TO SHOW THAT THEY ARE EXCUSED FROM EXHAUSTING PLAN REMEDIES**

Plaintiffs fail to meet the heavy burden required to avoid ERISA's administrative remedies.  *See Davenport v. Abrams*, 249 F.3d 130, 133 (2d Cir. 2001).

**A.    Plaintiffs' Claim That They Did Not Receive Full Benefits Must be Exhausted**

Plaintiffs do not dispute that the ERISA plans in question include mandatory exhaustion provisions.  Nor do they dispute that the Second Circuit presumptively requires plan members to follow those provisions.[3]  Plaintiffs attempt to avoid exhaustion by arguing, first, that this dispute does not invoke ERISA's administrative review procedures and, second, that they were unaware of their obligation to do so.  Neither argument excuses exhaustion.

As to Plaintiffs' first argument, there is no dispute that Plaintiffs have alleged a claim that should be exhausted.  A participant has the right, and duty, to invoke ERISA's claims procedures any time the participant pays more than he or she believes should have been paid under the terms of the plan.  *See* 29 C.F.R. § 2560.503-1(m)(4)(i) (ERISA's claims procedures include a "failure to make payment (in whole or in part)" of benefits allegedly due under the plan); *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 608, 627 (N.D.N.Y. 2016).  Here, Plaintiffs believe they should have paid less for their prescription drugs—the essence of a claim that requires exhaustion.  *Id.*

Plaintiffs' second argument fares no better than their first.  Plan members may not avoid exhaustion by asserting in court that they never received notice that they experienced a reduction in benefits.  Courts in this Circuit and elsewhere have repeatedly held that participants must

---

[3] Plaintiffs apparently have abandoned their argument that exhaustion should not apply to claims that purport to "clarify future rights."  Compl. ¶ 148.

exhaust their ERISA administrative claims procedures once they believe they did not receive all their benefits. *E.g.*, *Davenport,* 249 F.3d at 134; *Zupa v. Gen. Electric Co.*, 2016 WL 3976544, at *4 (D. Conn. July 22, 2016). "Even if plaintiff was unaware of her remedies under the plan prior to the institution of this action, she became aware of them now and yet inexcusably has failed to avail herself of them." *Davenport*, 249 F.3d at 134; *see also Kosswig v. Timken Co.*, 2007 U.S. Dist. LEXIS 58718, at *34-36 (D. Conn. Aug. 7, 2007) (same); *Zupa*, 2016 WL 3976544, at *4 (same).

The cases Plaintiffs cite in their opposition are readily distinguishable. In *Kirkendall v. Halliburton Inc.*, for example, the plan document in question did not even provide a remedy for the plaintiff's claim for benefits. *See* 707 F.3d 173, 180-81 (2d Cir. 2013). Here, in contrast, as Cigna notes, its plans specifically provide participants with the opportunity to submit a claim if they feel they have not received their benefits. *See* Cigna Mem. at 12, 14.[4] Nor are there any allegations that, as in *Kirkendall*, Plaintiffs made any pre-suit inquiry or were confused about plan terms or reasonably interpreted them not to require exhaustion. *Kirkendall*, 707 F.3d at 180-81. Here, Plaintiffs have simply failed to make any effort to resolve their benefit disputes with Cigna.

The out-of-circuit decisions in *Corsini v. United Healthcare Corp.*, 965 F. Supp. 265 (D.R.I. 1997) and *In re Blue Cross of W. Pa.*, 942 F. Supp. 1061 (W.D. Pa. 1996) likewise do not support Plaintiffs' position. To the extent that *Corsini* holds that exhaustion is not required where plaintiffs did not receive notice of a benefits denial, or where defendants are actively litigating the case, that decision contradicts *Davenport*. *See Davenport*, 249 F.3d at 134; *Teitel v. Deloitte & Touche Pension Plan*, 420 F. App'x 116, 117 (2d Cir. 2011). Similarly, *In re Blue*

---

[4] OptumRx incorporates, as if fully set forth herein, the arguments in Cigna's Reply Memorandum.

*Cross of W. Pa.*, 942 F. Supp. 1061 (W.D. Pa. 1996) is inconsistent with decisions in this Circuit requiring exhaustion once a participant believes she is entitled to greater benefits than received. Plaintiffs must, therefore, exhaust their ERISA remedies.

**B.      Plaintiffs Cannot Establish Futility Simply by Alleging the "Clawback" Was a "Long Standing Policy"**

Plaintiffs also fail to establish futility—that it is "certain that [their] claim" would have been denied—by alleging that the alleged "clawbacks" were an established policy. *See MacLeannan v. Provident Life & Accident Ins. Co.*, 676 F. Supp. 2d 57, 66 (D. Conn. 2009). Exhaustion would allow Cigna to address and resolve Plaintiffs' concerns exactly as the statute and regulations contemplate.  As courts in this Circuit have recognized, exhaustion is required even where the dispute is over a long-standing policy or procedure.  *See, e.g.*, *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594-95 (2d Cir. 1993); *Novella v. Empire State Carpenters Pension Fund*, 2007 U.S. Dist. LEXIS 63540, at *10-11 (S.D.N.Y. Aug. 28, 2007). And, notwithstanding the district court cases cited by Plaintiffs, the Second Circuit has concluded that exhaustion also is required for litigated class actions.  *Teitel*, 420 F. App'x at 117; *Kennedy*, 989 F.2d at 595.

Although Plaintiffs cite a number of cases that purportedly excused exhaustion in similar situations, all are distinguishable.  In *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1110 (D. Colo. 2016), the court found futility only after several of plaintiffs' claims had gone through administrative review, and the company then imposed a *new* policy making clear that review of *new* claims would be futile.  Similarly, in *Sibley-Schreiber v. Oxford Health Plans, Inc.*, 62 F. Supp. 2d 979, 988-89 (E.D.N.Y. 1999) and *Serrapica v. Long-Term Disability Plan of the Chase Manhattan Bank*, 2007 U.S. Dist. LEXIS 56869 (E.D.N.Y. Aug. 3,

4

2007), the plaintiffs' attempt to invoke the claims procedures were ignored.  *Id.* at *8.[5]  None of those facts occurred here.

Plaintiffs' dispute over the interpretation of their plans must be exhausted.  *Novella*, 2007 U.S. Dist. LEXIS 63540, at *15 (exhaustion allows fiduciaries to use their expertise to interpret plan documents and resolve disputes).  Count I should be dismissed for failure to exhaust.

## II.     PLAINTIFFS' ANCILLARY ERISA FIDUCIARY CLAIMS ALL FAIL AGAINST OPTUMRX (COUNTS II, III, IV, VI)

### A.     Plaintiffs' Ancillary Fiduciary Claims Should Be Dismissed as Duplicative of Their Claim for Benefits

Plaintiffs' ERISA fiduciary and prohibited transaction claims should be dismissed because this dispute over ERISA plan benefits must be decided under Section 502(a)(1)(B)'s rules.  Plaintiffs may not avoid those rules by asserting duplicative fiduciary claims.

Plaintiffs do not dispute that their fiduciary claims, which rely for relief on ERISA Section 502(a)(3), may only proceed if they seek "adequate" relief.  OptumRx Mem. at 20-22.[6]  To constitute adequate relief under ERISA Section 502(a)(3), the claim must allege an injury that is separate and distinct from the injury at issue in the ERISA Section 502(a)(1)(B) plan benefits claim.  *See Frommert v. Conkright*, 433 F.3d 254, 269-70 (2d Cir. 2006).  Although Plaintiffs

---

[5]  In *Hoffman v. Empire Blue Cross & Blue Shield*, 1999 U.S. Dist. LEXIS 15365 (S.D.N.Y. Sept. 28, 1999), far from finding that exhaustion was excused because of futility, the court held that it was unclear whether plaintiffs had adequately pled that it was excused, depending on the types of claims being pursued, and directed plaintiff to further brief the issue.  *Id.* at *42.  And in *Novak v. TRW, Inc.*, 822 F. Supp. 963 (E.D.N.Y. 1993), the court dealt with an entirely different claim—one for unlawful termination from the plan under ERISA Section 510.  *Id.* at 967-68.

[6]  Although Plaintiffs superficially seek relief under ERISA Section 502(a)(2), such relief is not available to them.  They acknowledge that any relief awarded under ERISA Section 502(a)(2) must benefit the Plan.  But the only monetary relief Plaintiffs seek is "to restore *Plaintiffs'* losses" and to "put *Plaintiffs* in the position they would have been in" if they had not been subject to the "clawback."  Compl. § J (emphases added).  This is the prototypical individual relief not available under ERISA Section 502(a)(2).  OptumRx Mem. at 20-22.  Plaintiffs' reliance on cases involving 401(k) plans where each participant had a separate *plan* account into which damages would be contributed cannot save this claim.  *Haddock v. Nat'l Fin. Srvs., Inc.*, 262 F.R.D. 97, 128 (D. Conn. Nov. 6, 2009).  In contrast, here Plaintiffs seek only relief that would be paid to them, rather than deposited into a plan account.

vaguely assert that they "raise separate claims" and "seek separate relief" in their fiduciary

claims, their Complaint makes clear that all of their fiduciary/prohibited transaction claims seek

one remedy:  the "spread."  Compl. ¶¶ 168-70, 181, 191, 201.  And Plaintiffs do not dispute that

these claims depend (among other things) on an alleged failure to follow plan terms.  *See, e.g.*,

Pls.' Mem. at 32 ("Since Defendants have breached rather than followed the terms of the plans,

they have breached their fiduciary duties.").  Relief under ERISA Section 502(a)(1)(B) is

therefore "adequate."

Both *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) and *N.Y.

State Psychiatric Ass'n v. UnitedHealth Grp.* ("*NYSPA*"), 798 F.3d 125 (2d Cir. 2015) are

distinguishable.  In *NYSPA*, the Second Circuit allowed an ERISA Section 502(a)(3) claim to go

forward alongside an ERISA Section 502(a)(1)(B) claim because it was not "clear" from the

pleadings that the damages in both claims would be the same.  798 F.3d at 134.  Here, Plaintiffs'

Complaint demonstrates the relief sought in both claims is identical—the spread.  Compl. ¶¶

168-70, 181, 191, 201.  Further, in both *NYPSA* and *Devlin*, the alleged fiduciary wrongdoing

was distinct from the benefits claim.  In *Devlin*, the plaintiffs' Section 502(a)(3) claim was based

upon alleged misrepresentations, not plan terms, 274 F.3d at 89, while in *NYSPA* the alleged

fiduciary wrongdoing was a failure to comply with the federal Mental Health Parity Act, not plan

terms.  789 F.3d at 134; *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005).

## B.    Plaintiffs Fail to Allege that OptumRx Is an ERISA Fiduciary

Even if Plaintiffs' fiduciary claims were not otherwise improperly duplicative of their

claim for benefits, Plaintiffs still have failed to allege that OptumRx (or any of the Defendants) is

a fiduciary, a predicate to these claims.

Not all parties who perform services for ERISA plans are ERISA fiduciaries.  OptumRx

Mem. at 15-17.  Rather, only those service providers who have *discretionary* authority, or

*discretionary* control, over the administration of a group health plan become ERISA fiduciaries. *Id.* Here, despite their repeated use of the term "discretionary," Plaintiffs fail to point to any facts establishing that OptumRx had this authority, or that it otherwise became a fiduciary under ERISA.[7]  This is fatal to Counts II, III, IV, and VI.

                1.    <u>OptumRx Did Not Have Discretionary Control over Plan Claims Administration</u>

Plaintiffs have not alleged that OptumRx had sufficient control over plan benefits determinations to make it a fiduciary.

Courts recognize that a party does not become a fiduciary to a group health plan simply because it engages in ministerial claims processing activities—such as determining and communicating member responsibility amounts to providers.  *E.g.*, *Bell v. Pfizer, Inc.*, 626 F.3d 66 (2d Cir. 2010) (party that engages in the ministerial "calculation of benefits" is not an ERISA fiduciary); *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, ("*Caremark*") 474 F.3d 463, 473-75 (7th Cir. 2007).  Instead, courts and the DOL recognize that a party who reviews claims only becomes an ERISA fiduciary if it has the authority to make the final decision on appeal regarding a claim for benefits.  *Klosterman v. W. Gen. Mgmt., Inc.*, 32 F.3d 1119, 1124-25 (7th Cir. 1994) (claim administrator was not a fiduciary because it did not have the "ultimate decision" over a claim for benefits); 29 C.F.R. § 2509.75—8(D-2); *Bell*, 626 F.3d at 74; *Mulder v. PCS Health Sys.*, 432 F. Supp. 2d 450, 456 (D.N.J. 2006).[8]

Under this standard, Plaintiffs have failed to allege that OptumRx is a fiduciary.  Despite their arguments, Plaintiffs fail to allege that OptumRx had *any* authority to make benefits

---

[7] As Plaintiffs note (Pls.' Mem. at 19), a party without discretion can become an ERISA fiduciary to the extent it controls plan assets, *see* ERISA § 3(21), however, OptumRx never controlled plan assets and Plaintiffs do not allege facts demonstrating otherwise.  *See infra* at 10-12.

[8] *See also Kyle Railings, Inc. v. Pacific Adm. Serv. Inc.*, 990 F.2d 513 (9th Cir 1993) (concluding that claims administrator was not a fiduciary because the employer made the "final decision").

determinations.  Instead, the Complaint simply lumps Argus, Cigna, and OptumRx together without plainly establishing who had responsibility for deciding claims.  Compl. ¶¶ 111, 114, 115, 133.  Regardless, the Complaint certainly does not allege that OptumRx had the "final" discretionary authority to decide participant's final claims appeals, and the Plan documents make no reference to OptumRx.

Cigna's brief says nothing to the contrary.  *See* Pls.' Mem. at 22-23.  Cigna merely states that OptumRx operates a network of pharmacies and negotiates drug prices with those pharmacies.  Cigna Mem. at 6-7.  It then states that Argus, not OptumRx, is responsible for communicating copay amounts to the individual pharmacies.  *Id.* at 7.  It never suggests that OptumRx had any claims adjudication authority—let alone final authority.

2.  <u>OptumRx Did Not Become an ERISA Fiduciary by Allegedly Managing the Purported "Clawbacks"</u>

Next, Plaintiffs attempt to attribute fiduciary status to OptumRx through a laundry list of tasks that they allege establish OptumRx had discretionary authority over the "management" of the plans.  All six allegations, however, amount to only one claim:  that OptumRx became a fiduciary when it allegedly administered the "clawback" scheme.  *See* Pls.' Mem. at 21 (listing six component parts of the "clawback scheme").  This does not turn OptumRx into a fiduciary.

Specifically, in similar cases, courts recognize that a PBM does not become an ERISA fiduciary by collecting a "pricing spread" from a party with whom it contracts.  *See, e.g.*, *Caremark*, 474 F.3d at 466-67; *Moeckel v. Caremark RX Inc.*, 622 F. Supp. 2d 663, 677 (M.D. Tenn. 2007) (rejecting fiduciary claims based upon the collection of a "spread" by a PBM); *Bickley v. Caremark Rx., Inc.*, 361 F. Supp. 2d 1317, 1332 (N.D. Ala. 2004) (a party who is not otherwise a fiduciary does not become one when it collects a spread); *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 210-11 (D. Mass. 2002).  Just as in those cases, all the

8

steps allegedly taken to recoup the "spread," are either part of Defendants' business affairs (such as negotiating pharmacy drug prices and collecting the spread) or are ministerial activities that do not give rise to fiduciary status (communication of copay amounts).  Just as in *Moeckel*, *Bickley*, and *Caremark*, the mere fact that Defendants allegedly recouped the "spread" as allowed by the pharmacy contracts does not make OptumRx a fiduciary.  Nor should it, since ERISA does not prevent health plans and PBMs from negotiating lower administrative costs by allowing a PBM to recover a pricing spread.  *Cf. Caremark*, 474 F.3d at 473; *Alves*, 204 F. Supp. 2d at 210 n.6 (D. Mass. 2002).

All that is left, then, is Plaintiffs' allegation that OptumRx became a fiduciary by "misrepresenting" patients "cost-sharing amounts."  Pls.' Mem. at 21, Nos. (2), (6).  Plaintiffs do not cite any cases holding that a PBM becomes a fiduciary simply because a member disputes the cost-sharing information communicated to a pharmacy.[9]  *See supra* at 6-7.   Nor can they, as any fiduciary breaches related to the failure to pay claims must be resolved under ERISA Section 502(a)(1)(B).  *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996) (Section 502(a)(1)(B) provides a remedy for "fiduciary breaches" related to alleged failures to pay plan benefits)*; Nechis,* 421 F.3d at 103 (disputes over failure to pay plan benefits resolved under ERISA 502(a)(1)(B)).

Just as critically, Plaintiffs have failed to allege sufficiently that the communications made to the pharmacies were incorrect.  Negron, Perry, and Gallagher fail to allege the amounts that they claim they should have been charged or even the amounts they were actually charged.  While the Curols do allege specific dollar amounts, their Plan requires them to pay the *greater of* a $10-$40 copayment (except for preventive care medications) or "30% of the cost" for a retail

---

[9] The court's decision in *Everson v. Blue Cross & Blue Shield of Ohio*, 898 F. Supp. 532 (N.D. Ohio 1994) has no application to this case.  In *Everson* (and the remaining cases Plaintiffs cite), the defendant unambiguously had the discretionary authority to resolve all claims for benefits.  *Id*. at 539.  *See also Libby-Owens-Ford Co. v. Blue Cross Blue Shield Mut. of Ohio,* 982 F.2d 1031, 1035 (6th Cir. 1993).  No such allegations exist here.

network pharmacy prescription.  Cigna's Ex. 1 at Appx. 0018.  While the Plan states that the copayment or coinsurance will not exceed the amount paid by the Plan or the pharmacy's "usual and customary" charge, Plaintiffs make no allegations that the Curols' copayment exceed the amount paid by the Plan to Cigna (which Plaintiffs recognize is based on a different schedule and contract)[10] or the pharmacy's "usual and customary" charge.  Compl. ¶ 287(a)-(r).  Indeed, the Curols allege that on a number of occasions, they paid less than a $10 copayment.  *Id.*

3.     OptumRx Did Not Become an ERISA Fiduciary by Purportedly Controlling Plan Assets

As to Plaintiffs' third argument, any "clawback" sums collected by OptumRx are simply not plan assets under ERISA.  Plaintiffs admit that ERISA's definition of "plan assets" relies on common law property principles.  Pls.' Mem. at 25.  And their Complaint acknowledges that the sums "clawed back" came from the contracting pharmacies, and thus are not plan property.  *See Deluca v. Blue Cross Blue Shield of Mich.*, 2007 WL 1500331, at *3 (E.D. Mich. May 23, 2007) (copays are the "profits belonging" to the medical provider, and not plan assets); *Caremark*, 474 F.3d at 476 n.6.  Similarly, although Plaintiffs allege that the amounts "clawed back" ultimately come from member contributions, these sums indisputably come from the individual participants and therefore cannot possibly be plan property.  *See Deluca*, 2007 WL 1500331, at *3.[11]  This is not surprising; member contributions are by definition participant money covering sums the plan

---

[10] *See* Pls.' Mem. at 5 (referencing Cigna Appx. 193, 335, 530 (noting amounts Cigna will charge the employer/plan for prescription drugs provided to its members and that "[t]he amount paid to the Retail Pharmacy for . . . Drug Claims may or may not be equal to the amount charged to Employer, and CHLIC will absorb or retain any difference.")).

[11] The only case Plaintiffs cite to support their claim that member contributions are plan assets—*Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006)—is a case involving pension plan assets, not copayments under a health plan.  Further, the *Haddock* court merely concluded that a fiduciary who used its discretionary authority to take money at the expense of plan participants controlled plan assets.  Here, the facts are entirely different, as Plaintiffs seek to impose fiduciary status on OptumRx in the first instance.

10

does not pay.  And under ERISA, disputes over member contributions—like all benefits disputes—are subject to ERISA's claims regulations.

Nor can Plaintiffs alternatively allege that the "insurance policies and ASO agreements between Cigna and the Plans" are plan assets.  There is no allegation that OptumRx had any control over those policies or agreements.[12]  There also is no allegation that the "clawback" violated or involved fiduciary duties from these documents.  *See Pegram v. Herdrich*, 530 U.S. 211 (2000) (fiduciary breach claims must be based upon actions taken in a fiduciary capacity).

4.    OptumRx Did Not Become an ERISA Fiduciary by "Setting its Own Compensation"

Plaintiffs also have not demonstrated that OptumRx had the discretion to manipulate its own compensation.  A party can receive compensation for its services without becoming an ERISA fiduciary.  *See Caremark*, 474 F.3d at 473; *Seaway Food Town, Inc. v. Med. Mut. of Ohio,* 347 F.3d 610, 619 (6th Cir. 2003).  Recognizing this, Plaintiffs instead allege that OptumRx had the ability to manipulate plan assets in a way that increased its own compensation.  But, they fail to allege any facts supporting this legal conclusion.

Initially, while the Complaint vaguely alleges that OptumRx kept a "portion" of the "spread" that was "clawed back," there are no well-plead factual allegations to support this.  Compl. ¶¶ 242, 282.

In any event, there are no allegations in the Complaint that collection of the "spread" involved the sort of discretionary power to use plan administrative authority to manipulate higher compensation.  Plaintiffs acknowledge that the two steps that *create* the spread—negotiating pharmacy contracts and setting copays—are both non-fiduciary acts.  And although Defendants

---

[12] Plaintiffs have abandoned their argument that the contracts between OptumRx and its network of pharmacies are plan assets.  Pls.' Mem. at 26.

may collect the difference between these two sums—the actual transactions that result in the "clawback" occur when members decide to purchase prescription drugs.  Because *participants* initiate these transactions, Defendants do not have any ability to increase the amount of compensation they earn from participant transactions.  Thus, OptumRx's plan administrative tasks do not give it the discretion to manipulate higher revenue for itself.  *Seaway Food Town*, 347 F.3d at 619 (group health plan administrator that collects rebates from medical providers does not exercise discretion in determining its compensation); *Caremark*, 474 F.3d at 473.

### B.   Plaintiffs Fail to Allege that OptumRx Breached Any ERISA Fiduciary or Prohibited Transaction Rule

Plaintiffs also have failed to allege facts demonstrating that it (or any Defendant) breached any of ERISA's fiduciary or prohibited transaction rules.

Initially, Plaintiffs cannot raise a breach of fiduciary duty claim based upon allegations that Defendants did not pay benefits due under the terms of the plan.  As noted above, such claims are decided under Section 502(a)(1)(B) of ERISA.  *See supra* at 5-6.

Further, Plaintiffs have not alleged facts demonstrating that OptumRx violated ERISA's duty of loyalty when it allegedly collected the "spread."  Even if Plaintiffs had alleged that OptumRx kept the "spread," a fiduciary does not violate ERISA when it receives negotiated compensation for its services, as Defendants did here.  *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983).  There is nothing wrong with a PBM like OptumRx effectively acting as a middleman between the pharmacies that sell drugs and the plans that purchase them (and then collecting the difference as compensation).  *See Alves*, 204 F. Supp. 2d at 210 n.6.[13]

---

[13] All of the cases cited by Plaintiffs involve situations where a fiduciary used its fiduciary authority or plan assets to generate revenue for itself at the expense of the plan participants.  *E.g.*, *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) (recognizing breach of fiduciary duty could occur when a fiduciary used plan assets for

Similarly, Plaintiffs have failed to allege a prohibited transaction.[14]  Despite Plaintiffs'

demonstrable manipulation of the actual terms of these provisions,[15] the prohibited transaction

rules in Sections 406(a)(1)(C) and (a)(1)(D) of ERISA apply only to transactions involving the

ERISA plan itself.[16]  Apart from entirely conclusory allegations, Plaintiffs do not allege any facts

to demonstrate that the "spread"—which they acknowledge comes from the "pharmac[ies]"

(Pls.' Mem. at 37)—involves the assets or rights of the plan.  *See supra* at 8-11; *Carpenters*, 474

F.3d at 476 n.6.

Plaintiffs have also failed to plead a violation of Section 406(b) of ERISA.  Just as with

the other prohibited transaction rules, all of the Section 406(b) provisions require an allegation

that the fiduciaries either took plan assets or interfered with plan rights.[17]  Under Section

406(b)(2), Plaintiffs have failed to point to any party "represented" by OptumRx or Cigna who

was "adverse to the plan," let alone demonstrate how the participants' payment of a copay

involves a "transaction involving the plan."  And Plaintiffs fail to explain, as they must under

ERISA Sections 406(b)(1) and (b)(3), how the receipt of a payment from a pharmacy, or a

participants' payment of a copay, involves plan assets.  *See supra* at 10-11.

---

its own benefit).  Here, for the reasons discussed *supra*, the sums OptumRx allegedly collects from the pharmacies are not plan assets.

[14] Plaintiffs incorrectly claim that OptumRx did not make this argument in its opening memorandum.  *See* OptumRx Mem. at 18-19.

[15] Plaintiffs argue that the prohibited transaction rules in ERISA Section 406(a)(1)(C) prohibit transactions that "constitute[] the payment of direct or indirect compensation in the furnishing of services by a party in interest." Pls.' Mem. at 36.  To the contrary, this section is much narrower—it merely prohibits the exchange of goods and services "between a plan and a party in interest."  ERISA § 406(a)(1)(C).

[16] *See* ERISA § 406(a)(1)(C) (prohibiting transactions "between the plan and a party in interest"); § 406(a)(1)(D) (prohibiting a party in interest from using "assets of the plan" for their own benefit); *see also* Pls.' Mem. at 36 (recognizing that the prohibited transaction rules merely prohibit "transactions likely to injure the . . . *plan*") (emphasis added).

[17] *See* ERISA § 406(b)(1) (prohibiting a fiduciary from "dealing with the assets of the plan in his own interest"); § 406(b)(2) (prohibiting a fiduciary from "representing a party" who is "adverse to the plan" in "any transaction involving the plan"); § 406(b)(3) (prohibited a fiduciary from receiving consideration "in connection with a transaction involving the assets of the plan").

## III.   PLAINTIFFS FAILED TO ALLEGE ANY DISCRIMINATION CLAIM

Plaintiffs admit that they have not even attempted to allege exactly how they were discriminated against based upon a "health status-related factor."  Pls.' Mem. at 42 (noting that "[d]iscovery will show which particular medical conditions" are at issue).  Nor do they dispute that all members under the same Plan who purchased any particular drug would pay the exact same member contribution amount, regardless of the member's "health status."  *Id.* at 41-42. That some drugs may be more or less expensive than a plan's member contribution does not amount to discrimination.  *See* OptumRx Mem. at 13-14; Cigna Mem. at 31.  Plaintiffs' claim of discrimination under Section 702 of ERISA therefore should be dismissed.

## IV.   PLAINTIFFS FAIL TO STATE PLAUSIBLE CIVIL RICO CLAIMS

### A.   Plaintiffs Fail to Allege Racketeering With Particularity Under Rule 9(b)

Plaintiffs' RICO claims are premised on their claim that they paid higher member contribution amounts for certain prescription drugs than required under the terms of their plan. Pls.' Mem. at 66.  Defendants dispute this.  At best, this dispute gives rise to a breach of contract claim for benefits under ERISA Section 502(a)(1)(B).  It is not fraud or a RICO claim.  *See United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 660 (2d Cir. 2016) ("[a] breach of contract does not amount to mail [or wire] fraud") (quotation omitted).

Further, the Complaint fails to allege that OptumRx actually made any false communications to any pharmacy.  For a number of unnamed class members, Plaintiffs allege that Cigna directed *either* "Argus or OptumRx" to direct a pharmacy to collect a copayment that was inconsistent with the class member's plan.  Compl. ¶ 255(a)-(f).  Even further, Plaintiffs also fail to allege the actual terms of that member's plan, the name of the class member (thus prohibiting Defendants from even identifying the correct plan terms), or any facts to support their vague allegation of a purportedly false communication.  *Id.*  As is clear from the terms of

named Plaintiffs' own plans, a member's contribution may or may not be based on the pharmacies' contracted rates.  *Compare* Ex. 3 at 30-33, *with* Ex. 4 at 13-14.  As to the named Plaintiffs themselves, they make no allegations that OptumRx made *any* communications to any pharmacies—whether false or not—in relation to prescription drug purchases for Perry, Negron or Gallagher.  *See* Compl. ¶¶ 255, 287.  As to the Curols, the Complaint alleges only that OptumRx communicated copay amounts to the pharmacy; it does not allege that the information communicated was inaccurate, let alone fraudulent.  *Id.* ¶ 287(a)-(r); *supra* at 9-10.[18]

### B. Plaintiffs Fail to Allege Facts Plausibly Demonstrating OptumRx and Wholly Independent Pharmacies Qualify as a RICO Enterprise

Plaintiffs also fail to plausibly allege that OptumRx perpetrated any racketeering activity through an "association in fact" enterprise.

#### 1. Plaintiffs Fail to Plead that OptumRx and the Pharmacies Had a Common Illegal Purpose

Plaintiffs concede that OptumRx and the pharmacies lack any "shared illegal purpose to defraud," Pls.' Mem. at 53, which is required in this Circuit to state a viable RICO claim.  *See* OptumRx Mem. at 25-27.[19]

---

[18] Neither *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 455 (S.D.N.Y. 1998), nor *United States v. Ragosta*, 970 F.2d 1085, 1090 (2d Cir. 1992), on which Plaintiffs rely change this outcome.  *Sumitomo* involved a "master plan" to "manipulate and artificially inflate the prices of copper and its derivatives."  995 F. Supp. at 455.  It had nothing to do with a dispute over plan terms and their meaning.  Likewise, *Ragosta* involved a defendant accused of withdrawing more than twenty times his known account balance from an ATM due to a machine error.  970 F.2d at 1090.  The court found that this knowing cheating of funds could support a jury verdict finding a departure "from fundamental honesty, moral uprightness, fair play and candid dealings."  *Id.*  The facts bear no resemblance to the present case involving business relationships governed by contracts.  *See Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F. Supp. 276, 282 (S.D.N.Y. 1991) (dismissing RICO claim where, "at best the allegations centered around a business dispute involving a breach of contract").

[19] Plaintiffs reliance on a subsequent decision in the *SmithKline* case, *Blue Cross v. SmithKline Beecham Clinical Labs., Inc.*, 108 F. Supp. 2d 84, 100 (D. Conn. 1999) (*SmithKline II*) is without merit.  First, the plaintiff in that case had abandoned a billing network enterprise theory with a central defendant because of the obvious lack of a common purpose.  Second, the alternative "laboratory network" put forward by plaintiffs, roughly analogous to an enterprise consisting of solely the pharmacies, had a common purpose only based on allegations of shared incentives and interests among the members, allegations that are lacking here.  Third, and most importantly, the laboratory

Plaintiffs try to overcome this admission by alleging that OptumRx and the pharmacies had a common *legal* purpose—that is, to provide "Plaintiffs and Class members medically necessary prescription drugs in accordance with the terms of their Plans."  Compl. ¶ 275. However, neither *United States v. Turkette*, 452 U.S. 576 (1981), nor *Boyle v. United States*, 556 U.S. 938 (2009), stand for the proposition that a RICO enterprise can consist of members who share a purely legitimate purpose.  *Boyle* recognized that RICO's definition of "enterprise" was expansive, but nothing in the case suggests that it can include purely legitimate enterprises—nor could it since the enterprise at issue (bank theft) was criminal.  556 U.S. at 944.  Likewise, Plaintiffs egregiously misapply *Turkette*, which holds only that an enterprise must be distinct from the fraudulent behavior itself—it does not stand for the proposition that a shared common legal purpose is enough to state a RICO claim.  And like *Boyle*, the *Turkette* defendants were involved in a criminal conspiracy.  452 U.S. at 580.

Further, none of the Second Circuit cases Plaintiffs cite support their claim that RICO enterprise participants need only have a shared legal purpose.  For example, in *Jacobson v. Cooper*, 882 F.2d 717, 719 (2d Cir. 1989), the defendants had a shared illegal purpose to "control and wrongfully appropriate" the plaintiffs' real estate.  Similarly, in *Hemmerdinger Corp. v. Ruocco*, 976 F. Supp. 2d 401, 414 (E.D.N.Y. 2013), in addition to the enterprise's "stated purpose . . . to provide customers with soil remediation and site redevelopment services," *all* members of the enterprise (all defendants) "conspired to inflate and inflated direct cost invoices" on a construction project.  *Id.*[20]

---

network enterprise clearly failed as a matter of law for a complete lack of allegations of continuity among the members—with similar continuity lacking among the pharmacies here.

[20]  Plaintiffs' out-of -circuit authority does not compel a different result.  Cases such as *United States v. Cianci*, 378 F.3d 71, 88 n. 9 (1st Cir. 2004) merely stand for the proposition that for a corporate entity (or other legitimate organization) to serve in an enterprise, not every single employee need have a criminal intent.  Nevertheless, the

Requiring participants in an enterprise to share a common *illegal* purpose is consistent with the purpose and goals of RICO generally.  RICO does not seek to punish fraudulent behavior of any kind—rather it exists to punish individuals who coordinate their actions to perpetrate an ongoing fraud.  *See Turkette*, 452 U.S. at 580.  To punish parties to an "association in fact" enterprise who have no purpose other than purely legitimate ones would extend RICO far beyond its intended goal of prohibiting coordinated criminal activity.

>    2.    <u>Plaintiffs Fail to Plead that the Enterprise Functioned as a Continuing Unit</u>

To state a RICO enterprise, the individual members of the enterprise-in-fact must all work together to perpetrate the alleged racketeering activity.  *See* OptumRx Mem. at 27-29.  Thus, so called "hub and spoke" enterprises—where the individual members of the enterprise (here, the pharmacies) have a connection with the hub (OptumRx) but not each other—cannot constitute a RICO enterprise.  *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 99 (D. Conn. 2014).

Plaintiffs admit that such a "rimless" hub and spokes enterprise cannot constitute a RICO enterprise in this Circuit.  Pls.' Mem. at 53-56.  Instead, they now claim, contrary to the facts alleged in the Complaint, that the individual pharmacies had a connection to one another.  *Id.* at 54.  This argument fails.  Plaintiffs allege only that the individual pharmacies each participated in OptumRx's network.  *See* Compl. ¶ 265.  This only demonstrates they had a relationship with *OptumRx*, not each other.  That each pharmacy separately negotiated contracts and rates with OptumRx or adhered to OptumRx's provider manual does not plausibly show that the pharmacies have a relationship with *each other*.

---

Court recognized that the "members of an association-in-fact enterprise, such as is now charged, must be connected by a common thread of purpose."  *Id.*; *see also Sitte v. Citibank*, 2015 WL 75237, at *4 (N.D. Cal. Jan. 6, 2015) (participants all had a common fraudulent scheme).  In any event, the legal precedent in this District and Circuit is simply different.

Courts have rejected enterprise claims based upon strikingly similar allegations.  In *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010), the Third Circuit ruled that plaintiffs failed to plead an enterprise consisting of various insurers, despite the fact that each insurer had contracted with one central "hub" insurance broker to become a "strategic partner," knew the identity of the other strategic partners, agreed not to disclose the details of their own agreements with the "hub," and shared other similarities with each insurer.  *Id*. at 374-75.  As here, the enterprise claims failed because plaintiffs failed to allege any cooperation between the insurance providers; the plaintiffs only described a pattern of uncoordinated parallel conduct by the insurers, not a unified enterprise.[21]  *See also United Food & Commer. Worker Unions & Emplrs. Midwest Health Bens. Fund v. Walgreen Co*., 719 F.3d 849, 854 (7th Cir. 2013) (dismissing RICO claims pharmacy and drug manufacture because mere allegations that they had a "business relationship" were not sufficient).

Plaintiffs' sole authority, *In re Managed Care Litig.*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002), is not controlling and its reasoning as to the RICO enterprise requirements and health insurance networks has been sharply criticized and rejected by a number of other courts.  *See, e.g.*, *New Eng. Carpenters Health & Welfare Fund*, 2014 U.S. Dist. LEXIS 134857, at *18-20 (rejecting *In Re Managed Care*); *In re Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 73220, at *125-26 (D.N.J. Sep. 28, 2007), *aff'd*, 618 F.3d 300 (3d Cir. 2010) (same).  *In re Managed Care* "was based on the Eleventh Circuit's relaxed structural standard for RICO

---

[21] *See also New Eng. Carpenters Health & Welfare Fund v. Abbott Labs.*, 2014 U.S. Dist. LEXIS 134857, at *18-20 (N.D. Ill. Sep. 25, 2014) ("While Plaintiff alleges that [defendants] boast on their websites that they have 'networks' of pharmacies generally, [] there are no allegations that the pharmacies at issue here are linked in a way that suggests the type of structure that RICO requires."); *Blue Cross & Blue Shield of Ala. v. Caremark, Inc.*,  1999 U.S. Dist. LEXIS 16230, at *26 (N.D. Ill. 1999) ("Plaintiffs fail to allege how this large and geographically diverse group of almost 3,000 independent physicians and entities acted in concert with one another . . . . [T]here is no indication that the individual [providers] were even aware of each other's existence.").

enterprises" which is not the law in this Circuit.  *New Eng. Carpenters Health & Welfare Fund*,

2014 U.S. Dist. LEXIS 134857, at *19.  As other courts in this Circuit have held, *In re Managed

Care* "is not controlling within this jurisdiction," and cannot outweigh the vast majority of

Second (and other) Circuit cases to the contrary.  *AMA v. United Healthcare Corp.*, 588 F. Supp.

2d 432, 440 (S.D.N.Y. 2008).

### C.    Plaintiffs Fail to Plead that OptumRx Had "Control" over the Alleged Enterprise

Finally, Plaintiffs' RICO claim fails because Plaintiffs fail to allege that OptumRx

"conducted" the affairs of the "enterprise."  Liability for participating in a RICO enterprise exists

only to those who "conduct" the enterprise—that is, "have some part in directing the enterprise's

affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  To satisfy this test, more is

required than simply being involved in the enterprise, or simply "performing services for the

enterprise."  *Walter v. Drayson,* 538 F.3d 1244, 1249 (9th Cir. 2008).  Rather, a "proper RICO

defendant must have exerted managerial control over the enterprise."  *Ally Bank v. Castle*, 2012

U.S. Dist. LEXIS, 118452, at *40-41 (N.D. Cal. Aug. 20, 2012).  It is not enough for plaintiff to

simply allege that the RICO defendant was "involved" with the enterprise—actual control is

needed.  *In re Smithklein Beecham Clinical Lab Litig.*, 108 F. Supp. 2d 84, 100 (D. Conn. 1999).

This is a "very difficult test to satisfy."  *Schmidt v. Fleet Bank,* 16 F. Supp. 340, 346-47 S.D.N.Y.

1998).

Here, the Complaint does not allege that OptumRx exerted managerial control over the

enterprise.  Rather, all it alleges is that—pursuant to agreements negotiated at arms length—

OputmRx communicated copay information to the pharmacies and then enforced contractual

provisions requiring the pharmacies to return the "spread" between the contract price and the

copay amount.  The enforcement of contracts between OptumRx and the individual

19

pharmacies—where the individual pharmacies are supposed victims of the alleged wrongdoing (Compl. ¶ 291)—are exactly the sorts of "business relationships" that do not "without more" demonstrate that OptumRx "conducted" the affairs of an "enterprise." *Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, 2013 U.S. Dist. LEXIS 190701, at *18 (C.D. Cal. Dec. 13, 2013) (quotation omitted).  OptumRx's enforcement of its own contractual rights merely demonstrates that it was merely "advance[ing] its own self-interest," rather than conducting the affairs of an enterprise.  *United Food,* 719 F.3d at 854.

Plaintiffs cannot avoid this conclusion by arguing that OptumRx misrepresented the amount of the copay to the pharmacies.  Pls.' Mem. at 58.  For one thing, Plaintiffs have failed to plead OptumRx made any misrepresentations, much less intentional, fraudulent misrepresentations.  *Supra* at 15.  For another, even if Plaintiffs had alleged that OptumRx made actual fraudulent misrepresentations to the pharmacies (which they have not), that does not constitute "control."  *United Food,* 719 F. 3d at 856 (rejecting RICO claim based upon allegations of corporate misrepresentations); *In Allstate Insurance Co. v. Seigel*, 312 F. Supp. 2d 260, 275 (D. Conn. 2004).  Further, although Plaintiffs make incendiary references to OptumRx's alleged "gag" clauses, there is nothing unusual or inappropriate with a contract including confidentiality provisions to protect proprietary business practices and commercially sensitive negotiated drug prices.  And just as with all contracts, OptumRx's enforcement of its contractual rights does not amount to control over the allegedly victimized pharmacies.

## CONCLUSION

The Consolidated Complaint fails to state claims against OptumRx as a matter of law and should be dismissed with prejudice.

Dated:  June 12, 2017

Respectfully submitted,

By*:      /s/ Kelly Frye Barnett*
Theodore J. Tucci (ct05249)
Kelly Frye Barnett (ct29817)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8206
E-mail: ttucci@rc.com
E-mail: kbarnett@rc.com

William R. Stoeri (*Pro Hac Vice – ct14744*)
Michelle S. Grant (*Pro Hac Vice – phv08827*)
Andrew Holly (*Pro Hac Vice – phv08826*)
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, MN  55402-1498
Telephone:     (612) 340-2600
Facsimile:     (612) 340-2868
stoeri.bill@dorsey.com
grant.michelle@dorsey.com
holly.andrew@dorsey.com

*Attorneys for Defendant OptumRx, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2017, I electronically filed the foregoing with the Clerk of Court, using CM/ECF.  I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if requested.

_____ */s/ Kelly Frye Barnett* _____