UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE CIGNA CORPORATION PBM LITIGATION | Case No. 3:16-cv-1702-WWE (Consolidated)<br><br>July 10, 2017 |

**PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

— ORAL ARGUMENT REQUESTED —

TABLE OF CONTENTS

I.     THE COMPLAINT ALLEGES VIOLATIONS OF ERISA ........................................... 1

       A.    Plaintiffs are not required to exhaust administrative remedies ................................. 1

       B.    Defendants are fiduciaries ........................................................................................ 5

       C.    Defendants engaged in prohibited transactions ........................................................ 8

       D.    ERISA permits Plaintiffs to seek individual relief pursuant to
             ERISA § 502(a)(3) alongside their claims under § 502(a)(1)(B) ............................ 9

II.    PLAINTIFFS STATE VALID CLAIMS UNDER RICO § 1962(C) .............................. 12

       A.    Defendants conducted the affairs of an enterprise .................................................. 12

       B.    The Optum Pharmacy Enterprise is an association-in-fact enterprise .................... 14

             1.    An association-in-fact enterprise's common purpose need
                   not be fraudulent ........................................................................................... 15

             2.    The Optum Pharmacy Enterprise's symbiotic interdependence
                   provides a rim around the pharmacy network ................................................ 16

       C.    Defendants engaged in acts indictable as mail and wire fraud ............................... 17

       D.    Plaintiffs' allegations satisfy Rule 9(b) ................................................................... 20

III.   CONCLUSION .................................................................................................................... 20

TABLE OF AUTHORITIES

**CASES**

*Acosta v. Pac. Enterprises*, 950 F.2d 611 (9th Cir. 1991),
    *as amended on reh'g* (Jan. 23, 1992) ................................................................7

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370
    (E.D.N.Y. Feb. 22, 2005) ................................................................16

*Almanza v. United Airlines, Inc.*, 2017 WL 957191 (11th Cir. Mar. 13, 2017) ..........16

*Am. Med. Ass'n v. United Healthcare Corp.*, 2002 WL 31413668
    (S.D.N.Y. Oct. 23, 2002) ................................................................9

*Arapohoe Surgery Center, LLC et al. v. Cigna Healthcare, Inc.*,
    No. 1:13-cv-03422-WJM-CBS (D. Colo.) ........................................1, 7, 12, 19

*Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308 (2d Cir. 1985) ............................15, 16

*Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633 (7th Cir. 2015),
    *cert. denied*, 136 S. Ct. 1607 (2016) ................................................13, 14

*Bilello v. JPMorgan Chase Ret. Plan*, 649 F. Supp. 2d 142 (S.D.N.Y. 2009) ............11

*Boyle v. United States*, 556 U.S. 938 (2009) ................................................14, 15, 16

*Burke v. Kodak Retirement Income Plan*, 336 F.3d 103 (2d Cir. 2003) ......................4

*Burris v. IASD Health Srvc's Corp.*, 1995 WL 843859 (S.D. Iowa. Oct. 2, 1995) .......2

*Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444 (S.D.N.Y. 2007) .........16

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ................................15

*Cigna Corp. v. Amara*, 563 U.S. 421 (2011) ................................................11

*Cigna Health and Life Insurance Co. v. Texas Spine and Joint Hospital, Ltd.*,
    6:14-CV-00765 (E.D. Tex.) ................................................................5

*Cigna Health and Life Insurance Company v. Northwest Regional Surgery Center*,
    Case No. 2:15-CV-00253-JD-PRC (N.D. Ind.) ........................................1, 19

*Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64 (E.D.N.Y.
    2011) ................................................................14

*Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001) ............................3, 4

*Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475 (S.D.N.Y. 2004) ................................3

*Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir. 2001) .........9, 11 ,12

*Engler v. Cendant Corp.*, 434 F. Supp. 2d 119 (E.D.N.Y. 2006) ..................................4

*First Capital Asset Mgt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ....12, 15

*Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008) ........15

*Fustok v. UnitedHealth Group, Inc.* 2013 WL 2189874 (S.D. Tex. May 20, 2013) ...20

*George v. Urban Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016) .........................13

*Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156
(D. Conn. 2006) ....................................................................................6, 7

*In re Blue Cross of Western Pa. Litig.*, 942 F. Supp. 1061 (W.D. Pa. 1996) ...............2

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010) ...........................17

*In re Managed Care*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002) ....................................16

*In re Neurontin Mktg., Sales Practices & Prod.*'s, 433 F. Supp. 2d 172
(D. Mass. 2006) ....................................................................................16

*In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:06 CV 1657 CFD,
2009 WL 5064468 (D. Conn. Dec. 15, 2009) ..................................................13

*Jacobson v. Cooper*, 882 F.2d 717 (2d Cir. 1989) ................................................15, 16

*Johnson v. KB Home*, 720 F. Supp. 2d 1109 (D. Ariz. 2010) ....................................15

*Jones v. Aetna Life Ins. Co.*, 856 F.3d 541 (8th Cir. 2017) .............................9, 10, 11

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .........................................................18

*Kennedy v. Empire Blue Cross and Blue Shield*, 989 F. 2d 588 (2d Cir. 1993) ............5

*Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300 (S.D.N.Y. 2009) .........................12

*Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011) .................................................12

*Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432 (E.D. Pa. 1999) ....................8

*Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*,
2016 WL 4382709 (S.D.N.Y. Aug. 16, 2016) ..................................................9

*McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439
(E.D.N.Y. July 10, 2009) ..........................................................................16

*Mertz v. Teamsters Local 346 Health Fund & BCBSM*, 1996 U.S. Dist. LEXIS 21701 (D. Minn. Dec. 6, 1996) .................................................................................2

*Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948 (9th Cir. 2016) ....................10

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125 (2d Cir. 2015)...9, 10

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) ...........................................15

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)......................................................12, 14

*Reynolds v. Condon*, 908 F. Supp. 1494 (N.D. Iowa 1995)........................................15

*Shepard v. DineEquity, Inc.*, 2009 WL 8518288 (D. Kan. Sept. 25, 2009)..........12, 13

*Sibley-Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F. Supp. 2d 979 (E.D.N.Y. 1999).................................................................................................3

*Smith v. United Healthcare Services, Inc.*, 2000 WL 1198418 (D. Minn. Aug. 18, 2000) ...............................................................................2

*Strom v. Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999) .......................9, 10, 11

*U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ..............................20

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir. 2016) ...................................................................................................18

*United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ....................................13

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432 (S.D.N.Y. 2004)....................................................................................13, 14

*United States v. Allen*, 155 F.3d 35 (2d Cir. 1998).....................................................12

*United States v. Cianci*, 378 F.3d 71 (1st Cir. 2004) .................................................15

*United States v. Finazzo*, 850 F.3d 94 (2d Cir. 2017)................................................18

*United States v. Goldin Indus., Inc.*, 219 F.3d 1271 (11th Cir. 2000) ........................16

*United States v. Pierce,* 785 F.3d 832 (2d Cir. 2015)...........................................16, 17

*United States v. Ramirez*, 146 F. Appx 518 (2d Cir. 2005) ........................................18

*United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970).................18

*United States v. Turkette*, 452 U.S. 576 (1981) .........................................14, 15, 16, 17

*Varity Corp v. Howe*, 516 U.S. 489 (1996)] ..............................................................10

*Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004) ......................4

*Vickers Stock Research Corp. v. Quotron Sys., Inc.*, 1997 WL 420265
    (S.D.N.Y. July 25, 1997) ..........................................................................................14

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*,
    913 F.2d 948 (D.C. Cir. 1990) ..............................................................................14

**STATUTES**

29 U.S.C. § 1132(a)(1)(B) .............................................................................................10

29 U.S.C. § 1133(1) ........................................................................................................4

ERISA § 406 (a) ..............................................................................................................8

ERISA § 406 (a)(1)(C) .....................................................................................................8

ERISA § 406 (b) ..............................................................................................................9

ERISA § 502 (a)(1)(B) .............................................................................8, 9, 10, 11, 12

ERISA § 502(a) ...............................................................................................................9

ERISA § 502(a)(2) .....................................................................................................9, 10

ERISA § 502(a)(3) .........................................................................................9, 10, 11, 12

RICO § 1962(c) .............................................................................................................12

**RULES AND REGULATIONS**

29 C.F.R. § 2560.503-1(j)(4)-(5) ....................................................................................4

Fed. R. Civ. P. § 8 .........................................................................................................12

Fed. R. Civ. P. § 9(b) ...............................................................................................18, 20

**EXHIBITS**

**Exhibit A**    Cigna's Counterclaims
*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
No. 1:13-cv-03422 (D. Colo.), ECF No. 17

**Exhibit B**    Cigna's Complaint,
*Cigna Health & Life Insurance Company v. Nw. Regional Surgery Center*,
No. 2:15-cv-00253 (N.D. Ind.), ECF No. 1

**Exhibit C**    Cigna's Motion to Dismiss,
*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
No. 1:13-cv-03422 (D. Colo.), ECF No. 15

**Exhibit D**    Cigna's Response to Motion to Dismiss,
*Cigna Health and Life Insurance Co. v. Texas Spine & Joint Hospital, Ltd.*,
No. 6:14-cv-00765 (E.D. Tex.), ECF No. 10

**Exhibit E**    Cigna's Opp. to Motion to Dismiss,
*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
No. 1:13-cv-03422 (D. Colo.), ECF No. 45

**Exhibit F**    Cigna's Summ. Judgment Mem.,
*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
No. 1:13-cv-03422 (D. Colo.), ECF No. 135

Defendants do not dispute that Cigna's plan language expressly provides that "in no event" will the cost-sharing payment "exceed the amount paid by the plan to the pharmacy." Nor do they dispute that Defendants secretly claw back the unlawful Spread between "the amount paid by the plan to the pharmacy" and the higher cost-sharing amounts that Plaintiffs pay. Instead, they argue that Plaintiffs have ***absolutely no judicial remedy*** for this massive, hidden, unlawful scheme. Yet, Cigna itself previously brought materially similar claims under ERISA and RICO to recover "inflated' charges" from medical benefits providers that imposed "grossly inflated, phantom 'charges'" that "do not reflect the ***actual amount***" that the provider charges.[1]

In *Arapahoe*, Cigna's fundamental premise for its ERISA and RICO overcharge claims was that in order to "help manage health care costs," "in-network providers have agreed to accept discounted rates for their services in exchange for receiving access to Cigna's customers"—just as the network pharmacies do in this case.[2]  Now that Plaintiffs, trying to manage their own health care costs, sued Defendants because they secretly overcharged Plaintiffs ***more*** than the "discounted prices" "paid by the plan to the pharmacy," Defendants hypocritically claim that Plaintiffs' ERISA and RICO claims should be dismissed. These arguments should be rejected.

## I.   The Complaint Alleges Violations of ERISA

### A.   Plaintiffs are not required to exhaust administrative remedies

The plans do not require exhaustion of the claims alleged in this case, nor should

---

[1] *See, e.g.*, Cigna's Counterclaims ¶¶ 5, 10, 55 Counts I & II, *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.* ("*Arapahoe*"), No. 1:13-cv-03422 (D. Colo.), ECF No. 17("Arapahoe Counterclaims") (emphasis added), attached as Exhibit A; Cigna's Complaint ¶ 70, *Cigna Health & Life Insurance Company v. Nw. Regional Surgery Center,* No. 2:15-cv-00253 (N.D. Ind.), ECF No. 1, attached as Exhibit B.

[2] Cigna's Motion to Dismiss at 3, *Arapahoe*, No. 1:13-cv-03422 (D. Colo.), ECF No. 15, attached as Exhibit C; Cigna Opening Br. at 7; Optum Opening Br. at 4 (network pharmacies "agreed to discounted prices in exchange for the benefit of being included in the plan's network").

Plaintiffs have made a "claim" to "Customer Service." Cigna Reply at 2-3. Cigna's plans provide that participants "do not need to file a claim" for in-network drugs.[3] The plans provide that a patient "***may***" call or write "Customer Service" to express a concern. ECF 70-2 at App. 0044 (Curols), ECF 69-4 at 44 (Curol); ECF No. 69-2 at 52 (Negron); ECF No. 69-3 at 47 (Perry) (emphasis added). This process is optional, and Customer Service is only "here to listen and help," not to receive or adjudicate drug claims.[4] There is no mandatory claim or complaint process to recover hidden, excessive cost-sharing payments.[5]

The appeals procedure is also optional: "If you disagree with a coverage decision, you ***may*** appeal that decision in accordance with the provisions of the policy . . . ."[6] This voluntary appeal process only applies to a "***coverage decision***," which excessive cost-sharing payments are not. Pls. Opp. at 12-13.[7] Even when the appeals process is implicated, the plans do not always require exhaustion before bringing a legal action. Instead, they say only: "***In most instances***, you may not initiate a legal action against Cigna until you have completed the appeal processes, ***as applicable.***" Here, because the optional appeals procedure is implicated only "[i]f you are not satisfied with the results of a ***coverage decision***," and Plaintiffs are not challenging a coverage

---

[3] ECF No. 70-2 at App. 0140 (Gallagher), ECF No. 69-1 at 39 (Gallagher); ECF No. 70-2 at App. 0304 (Negron), ECF No. 69-2 at 39 (Negron); ECF No. 70-3 at App. 0438 (Perry), ECF No. 69-3 at 34 (Perry); ECF No. 70-2 at App. 0017 (Curol), ECF No. 69-4 at CUROL000017 (Curol); *accord* ECF No. 70-3 at App. 0499 (Perry) ("You do not need to file a claim form unless you are unable to purchase Prescription Drugs at a Participating Pharmacy for Emergency Services.").

[4] ECF 70-2 at App. 0163, ECF 69-1 at 62 (Gallagher); ECF No. 70-2 at App. 0318, ECF 69-2 at 53 of 66 (Negron); ECF 70-2 at App. 0513, ECF 69-3 at 48 of 62 (Perry).

[5] Other provisions which are not relevant here apply to medically necessary determinations.

[6] ECF 70-3 at App. 0498, ECF 69-3 at 33 of 62 (Perry); ECF 70-2 at App. 0303, ECF 69-2 at 38 of 66 (Negron); ECF 70-2 at App. 0036, ECF 69-4 at 37 of 65 (Curol); ECF 70-2 at App. 0139, ECF 69-1 at 39 of 74 (Gallagher). (emphasis added).

[7] *See Smith v. United Healthcare Services, Inc.*, 2000 WL 1198418 *4 (D. Minn. Aug. 18, 2000) ("exhaustion does not apply because plaintiff was never denied a benefit because he was given his prescription medications upon request, just not at the promised cost."); *Mertz v. Teamsters Local 346 Health Fund* & BCBSM, 1996 U.S. Dist. LEXIS 21701, at *7 (D. Minn. Dec. 6, 1996); *Burris v. IASD Health Srvc's Corp.*, 1995 WL 843859, at *3-4 (S.D. Iowa. Oct. 2, 1995); *see also In re Blue Cross of Western Pa. Litig.*, 942 F. Supp. 1061, 1064 (W.D. Pa. 1996).

decision, Plaintiffs reasonably concluded that this was one of the "instances" in which the optional appeals process was not "applicable." Pls. Opp. at 14.[8] At the very least, the language is ambiguous and should be construed against Cigna. Pls. Opp. at 32 n.28.[9]

Also, the optional appeals process is available only after a patient received a notice of denial: "To initiate an appeal, you must submit a request for an appeal in writing to Cigna within 180 days of the date the notice of denial is received."[10] How can a participant bring an appeal without a notice of denial? The plans do not say and neither do Defendants, despite insisting that Plaintiffs should have appealed. *See Sibley-Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F. Supp. 2d 979, 989 (E.D.N.Y. 1999)("scenario" in which insureds are "instructed that they *should* use the grievance procedure and *may* file a claim or *may* appeal, as the exhaustion requirement lurks in the background waiting to be deployed should a frustrated policyholder seek to initiate judicial proceedings . . . offends notions of fairness and common sense" (emphasis in original)).

Cigna suggests that a call to "Customer Service" would trigger the administrative process. Cigna Reply at 2. Even aside from the fact that this claim would never be subject to administrative appeal, if it was, the triggering event would be the pharmacy's electronic submission of the prescription drug claim and Cigna's subsequent written denial of that claim, which never occurred. *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001), does

---

[8] *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475 (S.D.N.Y. 2004), does not support Cigna because it concerned whether the plaintiff was receiving the correct level or tier of coverage for generic and branded drugs, not secret overcharges that have nothing to do with coverage. *Id.* at 485. Moreover, the plan there had a much broader appeal procedure in that it provided that if a claim was denied, in full or in part, a request for review *must* be made. Here, only coverage decisions are subject to appeal. Finally, the *Del Greco* plan provided that "[n]o legal action or suit to recover benefits may be started before exhaustion of the pre-authorization/claims review process." *Id.* at 484-85. Cigna's plans, on the other hand, do not contain this mandatory pre-suit exhaustion requirement. Indeed, at most, Cigna's plans are ambiguous as to what types of claims the pre-suit exhaustion requirement applies to.

[9] As Cigna notes, this language is not alleged in the Complaint because it concerns an affirmative defense that should not be considered on a motion to dismiss. Exhaustion has been well-pled. Cigna Reply at 2; Pls. Opp. at 12 n.9.

[10] ECF 70-3 at App. 0498, ECF 69-3 at 33 of 62 (Perry); ECF 70-2 at App. 0303, ECF 69-2 at 38 of 66 (Negron); ECF 70-2 at App. 0036, ECF 69-4 at 37 of 65 (Curol); ECF 70-2 at App. 0139, ECF 69-1 at 39 of 74 (Gallagher).

not apply because the participant did not file a claim that would have been the triggering event in the administrative process. Moreover, *Davenport* does not even discuss, much less overrule, Cigna's mandatory notice requirements under ERISA.

Cigna also erroneously claims that it gave proper notice of the administrative procedures because Plaintiffs could have scoured through the voluminous plan documents. Cigna Reply at 3-4. This argument flaunts ERISA's notice requirements. ERISA requires "notice in writing" that a "claim for benefits under the plan has been denied," 29 U.S.C. § 1133(1), which Cigna admits never occurred. Cigna Reply at 3. The written denial notice must "set[] forth the specific reasons for such denial[]," which never occurred. 29 U.S.C. § 1133(1). The written "denial notice" also must notify the participant of the internal administrative processes, which never occurred. *See* 29 C.F.R. § 2560.503-1(j)(4)-(5). Indeed, given that the plans only provide that a participant must administratively appeal before bringing suit in "most instances," even the plans fail to notify participants of the consequences of a failure to exhaust. *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003) (notice must explain adverse consequences of failure to appeal.)

 At the end of the day, Cigna cannot have it both ways. If Defendants' Clawback scheme does not involve a "coverage decision," then administrative appeal procedures do not apply. If Defendants' scheme concerns a "coverage decision," then Defendants failed to give proper notice under ERISA that they denied the claims. "Defendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded from . . . asserting failure to exhaust administrative remedies as a defense." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir. 2004); *see also Engler v. Cendant Corp.*, 434 F. Supp. 2d 119, 128-29 (E.D.N.Y. 2006) (finding futility where plaintiff "did not receive any written notice of the denial"). Defendants' gross overstatement that not requiring exhaustion would render virtually

all claims as "exempt from exhaustion," Cigna Reply at 3, cannot change the fact that participants are required to exhaust ***only*** those procedures contained in their plans, *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F. 2d 588, 594 (2d Cir. 1993) (insured is only required to exhaust appeals provided for in the plans).

In addition to the many separate reasons demonstrating that the alleged exhaustion provisions do not apply, Plaintiffs have made a clear and positive showing that exhaustion would be futile. Defendants have engaged in a broad and pervasive racketeering scheme dependent on secrecy through various means including onerous gag clauses imposed on pharmacies. The notion that Cigna would abandon this secret scheme on an administrative appeal or specifically describe the scheme in a written denial notice as required under ERISA (when it goes to great lengths to punish pharmacies who disclose the scheme) is laughable. Defendants did not even address Plaintiffs' arguments about the impact of their secrecy on Plaintiffs' purported exhaustion obligations, and cited no cases involving secret overcharge schemes. Nor could they. Courts that have confronted similar, secret overcharge schemes have not required exhaustion. *See supra* note 7.

## B.   Defendants are fiduciaries

Defendants' arguments that they are not fiduciaries is directly contradicted by arguments Cigna asserted successfully when ***it*** has brought ERISA claims. For example, Defendants argue here that they do not have fiduciary liability for "routine claim processing functions," Cigna Reply at 8; Optum Reply at 7, but where Cigna seeks to take advantage of ERISA, it repeatedly proclaims that it acts as an ERISA fiduciary in "processing claims for payments submitted by healthcare providers." *See, e.g.*, Cigna's Response to Motion to Dismiss at 9, *Cigna Health & Life Ins. Co. v. Tex. Spine & Joint Hospital, Ltd.*, 6:14-cv-00765 (E.D. Tex.), ECF No. 10, attached as Exhibit D. Defendants argue that they were simply applying the plan cost-sharing

terms as written, but in fact they disregarded plan terms and exercised discretion to charge

excessive cost-sharing amounts in an exercise of fiduciary authority. Cigna Reply at 8-9.

Similarly, in overcharging participants in managing the plans' prescription drug transactions,

Defendants were not managing the PBM business, they were managing health plans that were

supposed to benefit participants. *Id*. And, charging Spread does not concern drug prices or

pharmacy contracts, it concerns overcharging participants in violation of the plans. *Id*.

      Regardless of whether Optum "had" any authority to make benefits determinations,

Optum Reply at 7-8,[11] it is a fiduciary because it ***exercised*** that authority by dictating the amount

pharmacies charged participants. Pls. Opp. at 21-23. Accordingly, it did not just engage in a

ministerial act. Moreover, Optum is a fiduciary not because it collected Spread *allowed* by a

plan, negotiated pharmacy contracts that *provided for* Spread, or communicated copayment

amounts that were allowed *by pharmacy contracts*, Optum Reply at 8-9, but rather because it

exercised fiduciary authority and control over management of the plans to charge these excessive

cost-sharing payments. Likewise, because Optum took Clawbacks as additional compensation, it

exercised discretion to set its compensation. *Id.* at 11-12.[12] The apparent argument that Optum

could not set its compensation because participants decided to purchase drugs makes no sense.

*Id.* at 12. Optum unilaterally determined how much participants would pay for those drugs and

unilaterally took that Spread as Clawback compensation. *Id.* at 12.

      In arguing that cost-sharing payments are not plan assets, Cigna tries to run away from

Judge Underhill's well-reasoned opinion in *Haddock v. Nationwide Financial Services, Inc.*, 419

---

[11] Whether Optum had final discretionary authority to decide final claims appeals, Optum Reply at 8, is irrelevant. And, concerning the scope of its fiduciary authority, Optum raises factual disputes that should not be resolved on a motion to dismiss.

[12] Whether Optum controlled plan assets is irrelevant to the claim that Optum exercised discretion to set its own compensation. Optum Reply at 11.

F. Supp. 2d 156 (D. Conn. 2006), and the widely applied circuit court precedent on which he relied, *Acosta v. Pac. Enterprises*, 950 F.2d 611, 620 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992). Cigna Reply at 10-11. Contrary to Cigna's argument, neither the Department of Labor nor the Second Circuit has rejected this analysis. Moreover, Cigna ignores that the plans provide coverage for prescription drug benefits. In providing these benefits, the plans pay for prescription drugs. Since participants pay for a portion of the drugs through cost-sharing payments, the plans have a beneficial ownership interest in participant cost-sharing payments, which renders them plan assets under a property rights analysis. Cigna all but admitted as much in *Arapahoe*, where it alleged that it overpaid for its share of surgical benefits, and that those payments in good conscience belong to the plans because the plans provided the surgical benefits. *Arapahoe* Counterclaims ¶¶ 189, 194-198 (Exhibit A). The same is true here, except the participants, not Cigna, made the overpayments for plan benefits.

A similar analysis applies to Defendants' arguments that the insurance policies and ASO agreements are not plan assets. Cigna Reply at 11-12; Optum Reply at 10-11. The plans provide prescription drug benefits to employees. Plan sponsors retained Defendants to manage and administer these benefits pursuant to the ASO agreements and insurance policies on behalf of the plans. *See, e.g.*, Cigna Ex. 2 at Appx. 0070 (ASO agreement to "support the pharmacy expense benefit provided under the Client's Plan"). The fact that a sponsor signed the agreements on behalf of the plan does not change the fact that the agreements are core plan assets through which the plans operate and provide benefits. Cigna's admission in *Arapahoe* that the payments it made pursuant to the ASO agreements and insurance policies were plan assets compels the conclusion that the ASO agreements and insurance policies that gave rise to those payments were

also plan assets.[13] Moreover, ERISA plan assets such as insurance policies and ASO contracts do not manage themselves — and Defendants' management of those plan assets squarely establishes their fiduciary status.[14]

Defendants' argument that charging Spread and taking Clawbacks do not arise from its authority or control over these agreements is nonsensical. Cigna Reply at 12; Optum Reply at 11. Indeed, but for these agreements that are the foundation of the prescription drug plans, Defendants would not be implementing the pharmacy benefit system and would have no ability to charge Spread or take Clawbacks.[15] Moreover, because Defendants clearly "unilaterally change the terms of [their] arrangement" in charging Spread, Cigna Reply at 11, they are liable for their control over plan assets.

### C.  Defendants engaged in prohibited transactions

Cigna continues to focus on the contracts between Optum and the pharmacies despite knowing that these contracts are not the subject of the prohibited transaction claims. *See* Cigna Reply at 14; Pls. Opp. at 36-40. Plaintiffs' § 406(a) claims concern transactions "involving" the plans, which the prescription drug transactions (pursuant to which the plans provide prescription drug benefits) clearly do. By charging Spread and taking Clawbacks, Defendants violated the plans' and participants' rights to have Defendants abide by the plans' terms. Optum Reply at 13. Optum's argument that § 406(a)(1)(C) does not concern the "payment of direct or indirect

---

[13] *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432,435 (E.D. Pa. 1999), concerned an insured plan, not an ASO agreement. The court held that because the insurer bore the obligation to pay medical providers, payments to those providers were not plan assets. It did not consider whether the insurance policy itself, which Plaintiffs allege here, was a plan asset.

[14] Cigna's repeated statements that Plaintiffs are bringing a "new" plan asset theory by focusing on the participant prescription drug transactions, insurance policies and ASO agreements are incorrect. *Cigna* first focused on the pharmacy contracts in an apparent attempt to avoid analysis of the relevant transactions.

[15] Cigna argues that Plaintiffs' prohibited transaction claim is duplicative of their claim under § 502 (a)(1)(B). Cigna Reply at 14. Whether two provisions of the ERISA statute relate to the same conduct does not mean that there are not separate statutory violations. For example, prohibited transaction claims typically overlap with statutory breach of fiduciary duty claims.

compensation," *id.* at 13 n.15, is contrary to the plain language of the statute. As to the § 406(b)

claim, the only new argument is that Optum did not represent anyone adverse to the plans. *Id.*

But Optum represented Cigna (and Cigna represented Optum), and each were adverse to the

plans and participants in charging Spread.

### D.   ERISA permits Plaintiffs to seek individual relief pursuant to ERISA § 502(a)(3) alongside their claims under § 502(a)(1)(B)

Defendants repeat their argument — rejected by numerous courts in this Circuit[16] — that

Plaintiffs cannot proceed under ERISA § 502(a)(3) when they also assert claims under ERISA §

502(a)(1)(B). *See* Cigna Reply at 5-8; Optum Reply at 5-6. As recently reconfirmed in *Jones v.

Aetna Life Ins. Co.*, 856 F.3d 541, 546-47 (8th Cir. 2017), Plaintiffs can simultaneously pursue

multiple types of claims under ERISA § 502(a), particularly at the pleading stage. The

differences between Plaintiffs' various ***theories of liability*** is the touchstone of the analysis, and

any overlap in the underlying misconduct, injury, or relief sought does not make the claims

coextensive. Here, in addition to the claim under ERISA § 502(a)(1)(B), Plaintiffs allege eleven

separate theories of fiduciary liability, including misrepresentation, breach of plan documents,

breach of the duty of loyalty, and various prohibited transactions. Pls. Opp. at 31-43. *All* avenues

to individual relief are available, particularly at the pleading stage. For example, in addition to

asserting essentially a "contractual right under a benefit plan" pursuant to § 502(a)(1)(B), ERISA

Plaintiffs can *also* bring claims for fiduciary duty violations and/or prohibited transactions under

ERISA §§ 502(a)(2) and/or 502(a)(3). *Devlin*, 274 F.3d at 82 (citing *Strom v. Goldman, Sachs &*

---

[16] *See, e.g.*, *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001); *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*("*NYSPA*"), 798 F.3d 125, 134 (2d Cir. 2015). *See also Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, 2016 WL 4382709, at *9 (S.D.N.Y. Aug. 16, 2016); *Am. Med. Ass'n v. United Healthcare Corp.*, 2002 WL 31413668, at *7 (S.D.N.Y. Oct. 23, 2002).

*Co.*, 202 F.3d 138, 142 (2d Cir. 1999)); *see also id.* at 89.[17] Recognizing the distinction between the different *routes* to relief under ERISA, the Second Circuit stated that "[t]he Supreme Court in *Varity Corp* [*v. Howe*, 516 U.S. 489 (1996)] did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty," and noted that "should plaintiffs' claim under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary duty claim is their only remaining remedy." *Id. See also NYSPA*, 798 F.3d at 134; *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 962 (9th Cir. 2016).

While Plaintiffs' claims arise from the same core nucleus of facts, they are not fungible. For example, contrary to Optum's argument, Optum Reply at 9, the elements of a misrepresentation based breach of fiduciary duty claim are different from a claim under § 502(a)(1)(B). And, disloyalty is not required for a § 502(a)(1)(B) claim, but is an essential element of certain other claims. While Defendants attempt to lump all claims together as challenging "the interpretation of the plan documents," Cigna Reply at 6, Plaintiffs' self-dealing and prohibited transaction claims are on their face broader than *any* issues of plan interpretation implicated by their § 502(a)(1)(B) claims.[18] Plaintiffs' §§ 502(a)(1)(B) and 502(a)(3) theories are vastly different — one is borne of contract while the other is borne of trust law, and both types of claims may be asserted. *See, e.g.*, *Varity Corp*, 516 U.S. at 496-97; *Jones*, 856 F.3d at 546-47;

---

[17] Defendants' half-hearted challenge to Plaintiffs' § 502(a)(2) claims on behalf of the plans, *e.g.*, Cigna Reply at 6, 8, is ultimately not implicated by their "duplication" challenge to Plaintiffs' § 502(a)(3) claims, because there is no dispute that 502(a)(1)(B) claims can proceed alongside 502(a)(2) claims. Indeed, their argument is not duplication; it is the erroneous argument that the plans have no claim at all. *See* Pls. Opp. at 46-47.

[18] *See, e.g.*, ¶¶ 175-180 (engaging in prohibited transactions with parties in interest and/or misusing plan assets); 188-190 (engaging in prohibited transactions by setting and collecting compensation for their own account, engaging in conflicted transactions on behalf of parties with interests adverse to those of the participants, and receiving consideration for their own personal accounts from other parties in connection with transactions involving plan assets); 196-200 (breaches of duties of loyalty and prudence); 208-209 (discriminating against certain plan participants based on health status); 216-218 (co-fiduciary breaches); and 224-225 (non-fiduciary participation in alleged fiduciary breaches and prohibited transactions).

*Strom*, 202 F.3d at 142; *see also Cigna Corp. v. Amara*, 563 U.S. 421, 436-40 (2011).

Just recently in *Jones*, the court held that "so long as two claims 'assert different theories of liability,' plan beneficiaries 'may plead both.'" 856 F.3d at 547. The court noted that "[d]espite Aetna's attempts to characterize the two claims as duplicative because both allege 'improper claims processing,' the two claims assert different theories of liability." *Id*.

> [The *Jones* plaintiff's] Count II theory of liability is that Aetna used a claims-handling process that breached its fiduciary duties, not that Aetna denied her benefits due. True, Jones argues that this process caused her to be denied benefits she was due. But Aetna's alleged liability under (a)(3) flows from the process, not the denial of benefits itself. A plan administrator ***is not liable*** under (a)(1)(B) for administering a claims process contrary to its fiduciary obligation to carry out its duties solely for participants and beneficiaries.

856 F.3d 547 (emphasis added). Likewise, Plaintiffs' claims under ERISA § 502(a)(1)(B) and 502(a)(3), respectively, "allege distinct theories of liability."

Unable to dispute that Plaintiffs allege *distinct theories of liability*, Defendants merely submit that Plaintiffs' claims grounded in fiduciary duty breaches and prohibited transactions are "directed at the same conduct and relief as their Section 502(a)(1)(B) claim." Cigna Reply at 7. But, whether Plaintiffs' claims may proceed together concerns whether they assert different theories of liability, *not* the underlying conduct or injury or the form or amount of relief sought. *Bilello v. JPMorgan Chase Ret. Plan*, 649 F. Supp. 2d 142, 166 (S.D.N.Y. 2009) (citing *Devlin*, 274 F.3d at 89); *Jones*, 856 F.3d at 547. Likewise, regardless of whether some of the relief sought by Plaintiffs may overlap, certain relief, such as disgorgement of profits is unavailable under § 502(a)(1)(B), and the measure of losses or other monetary relief may differ, even though money is the core component. Pls. Opp. at 44-47. Additionally, Plaintiffs charge Defendants with breaching their fiduciary duty of loyalty by making misrepresentations and seek, *inter alia*,

equitable relief, such as proper disclosure. Pls. Opp. at 47.[19] This relief does not flow from § 502(a)(1)(B), and must be obtained via § 502(a)(3). Accordingly, Plaintiffs' claims under ERISA § 502(a)(3) should be permitted to proceed alongside their § 502(a)(1)(B) claim.

## II.  Plaintiffs State Valid Claims Under RICO § 1962(c)

### A.  Defendants conducted the affairs of an enterprise

Defendants erroneously argue that the operation or management test is a "very difficult test to satisfy." Optum Reply at 19. First, Rule 8 applies and only requires a "short, plain" allegation, which Plaintiffs have provided. ¶¶ 237-38, 270-71. Second, "the 'operation or management' test is a low hurdle to clear *at the pleading stage*." *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 335 (S.D.N.Y. 2009)(emphasis added), aff'd sub nom. *Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011); *First Capital Asset Mgt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004).

RICO liability extends to anyone who "directly or indirectly" plays "*some* part in directing" the enterprise's affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *see also United States v. Allen*, 155 F.3d 35, 41 (2d Cir. 1998). This includes outsiders who are "associated with" the enterprise and "exert control over it." *Reves*, 507 U.S. at 183. Cigna chides Plaintiffs for not citing "a single case" in which a defendant controlled an enterprise through a "bona fide contract." Cigna Reply at 15. But Cigna itself has argued that a healthcare provider operated and managed a RICO enterprise of for-profit medical centers *by contract*. *See Arapahoe* Cigna's Counterclaims (Exhibit A) at ¶¶ 200-216; Cigna's Opp. to Motion to Dismiss at 8, *Arapahoe*, No. 1:13-cv-03422 (D. Colo.), ECF No. 45, attached as Exhibit E (citing *Shepard v. DineEquity, Inc.*, 2009 WL 8518288, at *8 (D. Kan. Sept. 25, 2009) (enterprise established by

---

[19] Defendants themselves note that in *Devlin* the Second Circuit permitted an ERISA § 502(a)(3) claim based on misrepresentations in conjunction with a § 502(a)(1)(B) claim. *See* Cigna Reply at 6 (discussing *Devlin*).

"marketing contract")).[20]

Plaintiffs meet the operation or management test. Optum was an insider in the Optum Pharmacy Enterprise. ¶ 265. Optum directed and controlled the Optum Pharmacy Enterprise through the use of gag clauses and required pharmacies to charge and collect the Spreads and Clawbacks and managed the Optum Pharmacy Enterprise through the use of penalties and the threat of termination. ¶ 271.

Cigna, too, exerted sufficient control over Argus and Optum. Cigna served as the mastermind of its Clawback Scheme, ¶ 242, and orchestrated its PBMs and participating pharmacies in implementing the scheme. Cigna bought Argus and Optum's compliance, in part, by allowing them to keep a portion of the Clawback scheme's illicit proceeds. ¶¶ 71, 242, 250. These allegations satisfy the operation or management test at the pleading stage. *See, e.g.*, *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453 (S.D.N.Y. 2004).

Defendants' out-of-circuit authority does not compel a different result. *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013), is not on point. In that case a pharmaceutical company supposedly induced the chain to act by way of a "marketing pitch," *id.* at 852, and the plaintiff's allegation of control established only that the two companies "regularly communicated with one another." *Id.* at 855. The Seventh Circuit distinguished such allegations, "where each entity acts in its individual capacity to pursue its individual self-interest," from the situation here, where "each individual entity acts in concert with the others to pursue a common interest." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 657 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607

---

[20] Many RICO cases are based on contractual control of the enterprise. *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:06 CV 1657 CFD, 2009 WL 5064468, at *5-6, 15 – 16 (D. Conn. Dec. 15, 2009) (enterprise bound together by contracts); *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1251-52 (10th Cir. 2016).

(2016). Here, Defendants and members of the enterprise share a degree of "economic interdependence" and have taken steps to integrate their operations. Indeed, Argus depends on Cigna for more than half of its revenues and Cigna and its PBMs and network pharmacies worked together to implement the Clawback scheme. (¶ 42 nn.6-7, ¶ 43 n.10, ¶¶ 237-42, 250.)

Defendants erroneously rely on *Vickers Stock Research Corp. v. Quotron Sys., Inc.*, 1997 WL 420265, at *4 (S.D.N.Y. July 25, 1997)[21] and *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 75 (E.D.N.Y. 2011). *Crabhouse* holds that merely "mailing fraudulent circulation numbers" did not constitute controlling a third-party as an enterprise. 801 F. Supp. 2d at 74. By contrast here, Plaintiffs well-plead that Cigna was the "key participant[]" in the Clawback Scheme, which it managed not only "by making critical misrepresentations," *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453 (S.D.N.Y. 2004), but by managing the scheme and sharing the proceeds with Argus and Optum. ¶¶ 71, 242, 250. These allegations establish that Defendants plausibly conducted the affairs of an enterprise.

### B.  The Optum Pharmacy Enterprise is an association-in-fact enterprise

Optum's restrictive arguments against the existence of the Optum Pharmacy Enterprise are inconsistent with Cigna's judicial representations in its own RICO cases where Cigna confirmed that our Supreme Court "noted that 'the very concept of an association in fact *is expansive*' and that RICO *broadly defines* 'enterprise.'"[22] RICO's enterprise requirement, and *Turkette* and *Boyle*'s requirement that an association-in-fact enterprise exist as a "continuing

---

[21] *Vickers* was decided on summary judgment because there was no "genuine issue *of fact*." 1997 WL 420265, at *5 (emphasis added). *Vickers* also relies upon *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 913 F.2d 948 (D.C. Cir. 1990), which the Supreme Court specifically distinguished in *Reves*. 507 U.S. at 179 n.4 ("we disagree with the suggestion of the Court of Appeals for the District of Columbia Circuit that § 1962(c) requires '*significant* control over or within an enterprise.'").

[22] Cigna's Opp. to Motion to Dismiss (Exhibit E), at 7 (emphasis added) (citing *Boyle v. United States*, 556 U.S. 938, 944 (2009)).

unit," are met by a group whose affairs can be conducted in violation of RICO. *See* Turkette, 452 U.S. at 583; Boyle, 556 U.S. at 944-45; *United States v. Cianci*, 378 F.3d 71, 88 n.9 (1st Cir. 2004). The Optum Pharmacy Enterprise meets this test.

### 1. An association-in-fact enterprise's common purpose need not be fraudulent

An enterprise "need only have a common or shared purpose, which may be legal or otherwise." *Reynolds v. Condon*, 908 F. Supp. 1494, 1510 (N.D. Iowa 1995); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1120 (D. Ariz. 2010). Optum wrongly claims that the law "is simply different" here. Optum Reply at 16 n.20. The Second Circuit has not so held. Indeed, Defendants' argument is based on non-binding *dicta* from *Satinwood*, 385 F.3d at 174. *Satinwood* "did not explain its passing reference to such a requirement," nor is it possible to "discern the reasoning in the Southern District of New York line of cases to which the Second Circuit cited." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 991 n.2 (C.D. Cal. 2008). Courts are not free to add their own requirements to RICO. *See, e.g., Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007); *United States v. Turkette*, 452 U.S. 576, 587 (1981).

Optum's argument also fails to recognize the distinction between a legitimate enterprise and the culpable RICO person. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *Turkette*, 452 U.S. at 578. As a result, Optum incorrectly claims that *Jacobson v. Cooper*, 882 F.2d 717, 719 (2d Cir. 1989), is inapposite because "***defendants*** [the RICO person] had a shared illegal purpose to 'control and wrongfully appropriate'" the plaintiffs' legitimate real estate business. Optum Reply at 16 (emphasis added). Optum, however, ignores that the enterprise approved in *Jacobson* was a "legitimate business" with a lawful purpose and included ***the plaintiff***, who "voluntarily associated himself with one or both of the defendants to constitute a ***legitimate*** enterprise." 882 F.2d at 718-20; *see Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308,

315 (2d Cir. 1985) (enterprise can be "passive instrument or victim").

Optum's attempt to blur the distinction between an enterprise whose members have a legitimate common purpose and the underlying pattern of racketeering activity, *see Turkette*, 452 U.S. at 578, is highlighted by *In re Neurontin Mktg., Sales Practices & Prod.*'s, where the court noted that to inappropriately require a common fraudulent purpose "comes dangerously close to conflating the elements of a pattern of racketeering activity and the existence of an enterprise." 433 F. Supp. 2d 172, 181 (D. Mass. 2006).[23]

## 2. The Optum Pharmacy Enterprise's symbiotic interdependence provides a rim around the pharmacy network

The members of the Optum Pharmacy Enterprise have sufficient relationships with one another as network participants that they function as a continuing unit. *See In re Managed Care*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002). Defendants' argument that *In re Managed Care* was decided under a divergent standard for identifying an enterprise fails.[24] First, *Boyle* confirmed that "a low threshold for pleading such an enterprise." *McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439, at *4 (E.D.N.Y. July 10, 2009). Second, *In re Managed Care* cited *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000), for the operative standards. *Goldin* remains good law in the Eleventh Circuit and is in harmony both with applicable Supreme Court and Second Circuit precedent. *See, e.g., Almanza v. United Airlines, Inc.*, 2017 WL 957191, at *5 (11th Cir. Mar. 13, 2017); *accord United States v. Pierce,* 785 F.3d 832, 838

---

[23] Even if this Court were to stray from the majority of courts and require a common, unlawful purpose, which it should not, the pharmacies agreed to Defendants' gag clauses, even if reluctantly, and thereby joined in the common purpose of concealing the fraudulent scheme. (¶¶ 17, 150, 276.) *See Bennett*, 770 F.2d at 315 (enterprise can be "passive instrument or victim").

[24] Optum characterizes this as Plaintiffs' "sole authority," ignoring Plaintiffs' citation to authorities showing that *In re Managed Care* reflects the principle embraced by courts within the Second Circuit that, at the pleading stage, allegations that members of an enterprise "operated symbiotically and played necessary roles in the achievement of a common purpose" is sufficient to satisfy *Boyle*'s requirement that sufficient relationships exist among the enterprise's members. *Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 451 (S.D.N.Y. 2007); *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *7 (E.D.N.Y. Feb. 22, 2005).

(2d Cir. 2015).

Optum cites *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010), for the proposition that its Clawback scheme constituted a series of parallel and independent frauds. Plaintiffs' allegations are entirely different from those in *Insurance Brokerage*. Optum and the network pharmacies symbiotically depend on one another. Without the existence of the pharmacy network, Optum would not be able to carry out its core function of providing and managing pharmaceutical benefits for health insurers, ¶¶ 48-51, and participating pharmacies depend on the network's existence and each other's participation to attract Cigna customers. ¶¶ 18-19, 44-47, 57-61. The pharmacies are further connected in that they symbiotically acquiesced to charge cost-sharing as directed through the network and they collectively agreed to the gag clauses, even if reluctantly, which allowed the scheme to continue for all of their economic benefit. ¶¶ 17, 150. Indeed, the importance of collective pharmacy acquiescence is demonstrated by the impact of some pharmacies standing up and exposing the Clawback scheme, which is one of the events precipitating this action and the unraveling of the scheme. This symbiotic dependency demonstrates that the members of the Optum Pharmacy Enterprise "function as a continuing unit," which is all that RICO requires. *Turkette*, 452 U.S. at 583.

**C.   Defendants engaged in acts indictable as mail and wire fraud**

Plaintiffs' allegations regarding Cigna's scheme to defraud are broader than Cigna suggests and include two distinct sets of fraudulent statements: (1) those made to Plaintiffs; ***and also*** (2) those made to pharmacies. ¶¶ 250-55. By focusing exclusively on the former, Cigna has waived any argument that its statements to the pharmacies do not constitute an actionable scheme to defraud, and Plaintiffs claims on that basis cannot be dismissed.

Cigna's argument is also wrong as to its misrepresentations to Plaintiffs. Cigna contends that its fraudulent statements "could not possibly have been in 'in furtherance of' a scheme to

– 17 –

[de]fraud" [sic] because they "did not occur at the time of contracting." Cigna Reply at 20 n.26.

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.* held that it was "proof of fraudulent

intent not to perform" that must exist "at the time of contract execution." 822 F.3d 650, 662 (2d

Cir. 2016). Plaintiffs have well-pled such fraudulent intent at the time of contract execution. ¶¶

250-252. Cigna also fails to recognize Plaintiffs' allegation that the Clawback scheme has been

ongoing for years, ¶¶ 69, 255, 287, and that *each year*, Plaintiffs were required to sign a new

contract with Cigna. (*See, e.g.*, ¶ 46).

Cigna also claims that fraud cannot be inferred from its gag clauses because they are a

"reasonable measure[]" to protect proprietary information. Cigna Reply at 19. While that may be

*one* inference, Plaintiffs allege a different, reasonable inference that preventing pharmacists from

telling Class members that they are being overcharged and could save money *by not using*

*insurance* has nothing to do with protecting proprietary information. ¶¶ 17, 250-52, 282-284.

Moreover, Defendant's "intent to cause injury may be inferred when the scheme has such

effect as a necessary result of carrying it out." *United States v. Ramirez*, 146 F. Appx 518, 520

(2d Cir. 2005); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970).

Cigna does nothing to distinguish Plaintiffs' authority, which shows that intent is established

when a defendant injures a plaintiff by depriving them of "potentially valuable economic

information." *United States v. Finazzo*, 850 F.3d 94, 107 & n.15 (2d Cir. 2017).

In addition, unlike fraud, scienter "may be alleged generally." Fed. R. Civ. P. 9(b). While

a generalized "profit motive *without more* is insufficient" to establish motive, (Cigna Reply at

19), Plaintiffs do not allege that Cigna sought profit in the abstract. Rather, the Clawback scheme

produces "concrete benefits" that are "realized by" Defendants' "false statements and wrongful

nondisclosures." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); ¶¶ 19, 65, 255 & 287.

Finally, Defendants' fraudulent intent can be inferred from their prior judicial conduct. Indeed, the Court should question how Defendants can argue with a straight face that RICO cannot be used in this commercial context (*see* Pls. Opp. at 32; Optum Opening Br. at 23) and that fraudulent intent cannot be inferred (Cigna Reply at 17-20; Optum Reply at 14-15) when Cigna ***itself*** has used RICO against providers to recover overcharges, as in *Arapahoe* and *Northwest Regional Surgery*. That is ***exactly*** the basis on which Plaintiffs are suing under RICO.

In *Arapahoe*, Cigna proclaimed that it "reduces costs" by setting up provider networks that "accept discounted rates for their services in exchange for increased access to Cigna's members,"[25] just as both Defendants argue in this case (Cigna Opening Br. at 7; Optum Opening Br. at 4). Cigna has also argued that the "cost reductions from these discounted rates ***are passed on to consumers***, resulting in lower services costs,"[26] which is ***exactly*** what its plans in this case ***require*** in providing that the cost-sharing "in no event" will "exceed the amount paid by the plan to the pharmacy." Cigna Opening Br. at 10-11 (quoting plan language).

There is no dispute that Plaintiffs' copayments "exceed[ed] the amount paid by the plan to the pharmacy," thereby violating the plan language. Cigna Opening Br. at 9 (admitting "cost-share ***may be more*** or less than the amount that the pharmacy has contractually agreed to accept for the drug" (emphasis added)). Defendants' scheme allowed them to secretly pocket the "cost reductions" from the "discounted rates," which ***are not*** "passed on to consumers" — as Plaintiffs' plans explicitly require. Cigna's contrary argument to a federal court ***while the Clawback scheme was in full force*** reveals that Plaintiffs plausibly have alleged knowing, fraudulent conduct — just as Cigna asserted in ***its*** RICO claims against providers.

---

[25] Cigna's Sum. Judgment Mem. at 1, *Arapahoe*, No. 1:13-cv-03422 (D. Colo.), ECF No. 135, attached as Exhibit F.
[26] *Id.* at 4 (emphasis added).

### D.   Plaintiffs' allegations satisfy Rule 9(b)

Optum adheres to its baseless arguments that "the Complaint fails to allege that Optum actually made any false communications to any pharmacy" and that Plaintiffs have not alleged they were defrauded. Optum Reply at 9-10, 14. Optum completely ignores Plaintiffs' well-pled explanation in their Complaint, ¶ 287(a)-(r), and Opposition, Pls. Opp. at 65-66, that they did exactly this. Plaintiffs plead dozens of specific examples of fraudulent Clawbacks from transactions where pharmacists were willing to provide the otherwise "gagged" information. ¶ 255(a)-(dd). As Optum's parent knows from its prior litigation, Rule 9(b) is not a "'straightjacket'" requiring the pleading of every single instance of fraudulent conduct that "extended over a period of time, years in this case." *Fustok v. UnitedHealth Group, Inc*. 2013 WL 2189874, at *5 (S.D. Tex. May 20, 2013)((quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Defendants have particularized notice of how the fraudulent scheme operated and have admitted that the Clawbacks occurred. At best, as Optum admits, it is disputing whether knowingly charging more than drugs actually cost through Spread and Clawbacks is fraud. Optum Reply at 14 ("Defendants dispute this."). Just viewing the allegations on their face (let alone, as Optum fails to do, in the light most favorable to Plaintiffs) establishes that "Optum intentionally and fraudulently directed" pharmacies "to collect from [Plaintiff]" a copayment "over the actual . . . fee paid to the [pharmacy]. Optum's statement was fraudulent because [Plaintiff's] Plan did not require [Plaintiff] to pay that amount and Optum knew the same." (¶ 287; *see also* ¶ 255 (as to Cigna).) These allegations satisfy Rule 9(b).

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss should be denied.

Dated: July 10, 2017

_____
   *s/ Robert A. Izard*

Robert A. Izard (ct01601)
*Plaintiffs' Interim Co-Lead Class Counsel*
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
860-493-6292
860-493-6290 fax
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com


Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, pro hac vice
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
212-223-6444
212-223-6334 fax
jguglielmo@scott-scott.com
calexander@scott-scott.com


Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
860-537-5537
860-537-4432 fax
ecomite@scott-scott.com


Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile
SARRAF GENTILE LLP

William H. Narwold (ct00133)
*Plaintiffs' Interim Co-Lead Class Counsel*
Mathew Jasinski (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
860-882-1681
860-882-1682 fax
bnarwold@motleyrice.com
mjasinski@motleyrice.com


Derek W. Loeser, pro hac vice
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, pro hac vice
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
206- 623-1900
206-623-3384 fax
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com


Brian C. Gudmundson, pro hac vice
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-341-0400
612-341-0844 fax
brian.gudmundson@zimmreed.com


Karen Hanson Riebel, pro hac vice
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, pro hac vice pending
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
612-596-4097
612-339-0981 fax

14 Bond Street, Suite 212
Great Neck, NY 11021
516-699-8890
516-699-8968 fax
ronen@sarrafgentile.com
joseph@sarrafgentile.com


Andrew A. Lemmon
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
985-783-6789
985-783-1333 fax
andrew@lemmonlawfirm.com

- and -

650 Poydras Street, Suite 2335
New Orleans, LA 70130
504-581-5644
504-581-2156 fax

khriebel@locklaw.com
kgmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
206-448-1777
206-728-2131 fax
brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
919-600-5035 fax
dan@wbmllp.com
jeremy@wbmllp.com
*Additional Counsel for Plaintiffs*

E. Kirk Wood
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
205-908-4906
866-747-3905 fax
ekirkwood1@bellsouth.net

CERTIFICATE OF SERVICE

I, Robert A. Izard, certify that, on July, 10, 2017, I caused a true and correct copy of the foregoing document to be served electronically on all counsel of record registered for electronic service for this case.

Executed this 10th day of July 2017 at West Hartford, Connecticut.

*s/ Robert A. Izard*

Robert A. Izard
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
(860) 493-6292
(860) 493-6290 fax
rizard@ikrlaw.com