UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, Individually and on Behalf of All Others Similarly Situated, DANIEL PERRY, Individually and on Behalf of All Others Similarly Situated, COURTNEY GALLAGHER, Individually and on Behalf of All Others Similarly Situated, NINA CUROL, Individually and on Behalf of All Others Similarly Situated, and ROGER CUROL, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>  v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>                Defendants. | Civil No. 3:16-cv-1702 (WWE)<br><br>October 5, 2017 |

**DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
POST-HEARING MEMORANDUM OF LAW IN SUPPORT
<u>OF ITS MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT</u>**

## INTRODUCTION

At the September 14, 2017 hearing on Defendants' motions to dismiss, this Court emphasized the importance of controlling the expense associated with the litigation of an ERISA case. The Court has an opportunity to do so here without denying Plaintiffs access to a make-whole remedy if they are able to demonstrate that the amounts they paid for prescription drugs exceeded what they should have under the terms of their respective Plans. Plaintiffs attempt to embellish what they repeatedly have acknowledged are plan language-based claims by re-characterizing them as breaches of fiduciary duty, prohibited transactions, and RICO violations. But Plaintiffs have failed to present a plausible, independent basis for allowing these additional claims to proceed. Deferring dismissal of these claims will inevitably open the door to broad, unnecessary discovery, imposing additional costs that simply cannot be justified in a dispute over the terms of a plan.

Defendant Cigna Health and Life Insurance Company ("CHLIC")[1] respectfully requests that the Court (1) order Plaintiffs to exhaust their Plans' administrative remedies in pursuing their claims under Count I of the Consolidated Complaint, (2) stay the litigation of Count I pending exhaustion, and (3) dismiss with prejudice Counts II-X.[2]

---

[1] Plaintiffs have agreed to dismiss Cigna Corporation as a defendant in this action. A notice dismissing Cigna Corporation without prejudice has been filed with the Court. Dkt. 119. The Court therefore does not need to address whether Cigna Corporation is a proper defendant.

[2] As discussed at the September 14, 2017 oral argument, Plaintiffs and CHLIC subsequently discussed, but were unable to agree on, a process for Plaintiffs to exhaust their administrative remedies that was consistent with the terms of the Plans and resulted in what the parties believed would be an adequate administrative record for the Court to ultimately review. Should the Court determine that exhaustion is required, CHLIC remains willing to work with Plaintiffs to ensure that the administrative process results in a prompt response to their claims and does not unreasonably delay the progress of this case.

## ARGUMENT

**I.   None Of The Arguments Raised By Plaintiffs Excuse Administrative Exhaustion Of Their ERISA 502(a)(1)(B) Claim (Count I)**

   **A.   The Plans Require Exhaustion Of Administrative Remedies Before Pursuing Plan Violation Claims In Federal Court**

Plaintiffs claim that they are not required to exhaust their Plans' respective administrative remedies because – in their view – the Plans' claim and appeal procedures are voluntary.  Pls.' Sur-reply at 1-2.  They point to language in some of the Plans that states that a participant "may" call or write to Customer Service to express a concern about contractual benefits, among other things, and that a participant "may" appeal a claim decision.  Plaintiffs reason that the word "may" makes the claim and appeal procedures optional.  Plaintiffs ignore, however, that the Second Circuit directly rejected this argument in Greifenberger v. Hartford Life Ins. Co., 131 F. App'x. 756 (2d Cir. 2005).  In Greifenberger, the Second Circuit held that the inclusion of the term "may" in the plan's administrative procedures did not excuse the plaintiff from her duty to exhaust before filing suit under ERISA.[3]  Id. at 758.  Thus, Plaintiffs' argument that the use of the word "may" makes the administrative complaint and appeal procedure optional is directly contrary to Second Circuit law and should be rejected.

Plaintiffs also seek to circumvent the exhaustion requirement by relying on the following language in the Plans:  "In most instances, you may not initiate a legal action against [CHLIC] until you have completed the appeal process."  Pls.' Sur-reply at 2-3.  They argue that exhaustion is not required in *this instance*.  But this language reflects the reality that not all ERISA claims need to go through administrative exhaustion before a lawsuit can be filed.  There are statutory ERISA claims that are not based on the interpretation of a plan that do not need to be exhausted,

---

[3] See also  Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund, 27 F. Supp. 3d 346, 352 (E.D.N.Y. 2014) (same); Moore v. Fox Chevrolet, Oldsmobile, Cadillac, Inc., No. 5:06-42, 2007 WL 925721, at *3-4 (N.D.N.Y. Mar. 26, 2007) (same).

2

such as alleged violations of ERISA's anti-cutback provision under Section 204(g) or an ERISA interference claim under Section 510. The Second Circuit, however, requires claims brought pursuant to Section 502(a)(1)(B), like Count I here, to be exhausted. Cigna Br. at 13-15; Cigna Reply at 2-5.

### B. The Plans' Administrative Remedy Procedures Apply To Plaintiffs' "Overcharge" Claim

Although the language varies among Plaintiffs' Plans, CHLIC previously explained that the Plans' claim and appeal process for prescription drug benefits commences by a participant contacting Customer Service if she has any concern, including about "contractual benefits" like those at issue here. Cigna Reply at 2. Contrary to Plaintiffs' assertion, this step is not pointless. Pls.' Sur-reply at 2; Tr. 38:12-16 (arguing that calling member services is a "waste of time"). Customer Service will "review or investigate" a participant's concern if necessary, and, by their Plans' terms, the appeals procedure is triggered upon "results of a coverage decision" from Customer Service. Appx. 0044, 0318, 0452, 0513.

Nevertheless, Plaintiffs argue that an administrative remedy was not available for their "claim [] to recover the overcharge in excess of the amount of covered expenses" because that claim is not a "coverage decision" within the scope of the claim and appeals procedures. Tr. 29:2-3; Pls.' Sur-reply at 2. But this interpretation is far too narrow. "Coverage decisions" include more than denials of benefits. See Cigna Reply at 2-3. Reading each Plan's complaint provision as a whole, coverage decisions are the results of any concern raised to Customer Service about their plan benefits including, but not limited to, about "a person, a service, the quality of care, contractual benefits, or a rescission of coverage." Appx. 0044, 0318, 0452, 0513; Cigna Reply at 2-3. Plaintiffs' entire lawsuit stems from a dispute about "contractual benefits" – i.e., what the terms of their Plans mean. It would therefore be illogical to interpret "coverage

3

decision" to mean only a full denial of benefits (i.e., coverage) given the broad scope of issues that that the Plans tell their participants to direct to CHLIC Customer Service.

Plaintiffs' claim that they were "overcharged" for "Covered Expenses" is a "coverage decision" under the terms of their Plans – and even under their interpretation – because it concerns "contractual benefits." See Tr. 29:2-3 (characterizing their claim as one to "recover the overcharge in excess of the amount of the covered expense"). The Plans provide that Plaintiffs may be required to pay a portion of the "Covered Expenses for Prescription Drugs and Related Supplies" to receive prescription drug benefits. Appx. 0017, 0301, 0435, 0496. Plaintiffs claim that they paid more than the portion of the Covered Expenses for Prescription Drugs and Related Supplies than their Plans required. This is a question about "contractual benefits" and therefore a "coverage decision" under the terms of the Plans. Had Plaintiffs contacted Customer Service and raised their claim that they were overcharged, they would have received a "coverage decision" to appeal.

Plaintiffs' blanket assertion that point of sale pharmacy transactions are "claims" for prescription drug benefits under their Plans is not correct. Pls.' Sur-reply at 3-4; Tr. 27:12-28:4. Neither the DOL regulations nor Plaintiffs' Plans support this position. The DOL regulations do not require plans to treat point of sale pharmacy transactions as claims for plan benefits. Under the DOL's interpretation of its own regulation, "neither [ERISA] nor the claims procedure regulation requires that a plan treat interactions between participants and preferred or network providers under such circumstances as a claim for benefits governed by the regulation" found in 29 C.F.R. § 2560.503-1. See U.S. DOL, EBSA, Benefit Claims Procedure Regulation FAQ at A-11.[4] Rather, all that is required is that a plan "maintain a reasonable procedure, in accordance

---

[4] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation

with the [claims procedure] regulation, for processing claims of participants relating to [prescription drug] benefits." Id.; see also id. at A-7. The Plans here include such procedures. Benefit plans can – but do not have to – treat pharmacy transactions as claims for benefits. The terms of Plaintiffs' Plans do not treat the submission of a prescription to a pharmacy as a claim for benefits. Appx. 0042-44, 0318-19, 0452-53, 0513-14.

Plaintiffs admit that they never made an initial claim to Customer Service or otherwise notified CHLIC that they believed that they were overcharged for prescription drugs prior to filing their Complaint. Cigna Reply at 2-3; see also Kennedy, 989 F.2d at 595 (holding that there is no futility where a plaintiff has not "even notified [the plan administrator] of any disputed claim"). Presenting a prescription at the point of sale did not notify CHLIC that Plaintiffs believed that they were overcharged. CHLIC has therefore not had an opportunity to consider Plaintiffs' claims as the claims administrator, which is critical to promoting the purposes of ERISA by enabling CHLIC to perform the function that the Plans delegated to it and that Congress contemplated it would perform as articulated by the Second Circuit in Kennedy. Cigna Reply at 2; Tr. 12:2-23, 48:10-18. Plaintiffs' contention that the absence of an adverse benefit determination should excuse them from exhaustion completely misses the mark.[5]

## II. The Court Should Streamline The Case By Staying The Litigation Of Plaintiffs' Section 502(a)(1)(B) Claim (Count I) Pending Exhaustion Of The Plans' Administrative Remedies And Dismissing Their Remaining Claims With Prejudice

Plaintiffs have failed to make the case that they should be excused from exhausting their Plans' administrative remedies in connection with their Section 502(a)(1)(B) claim in Count I.

---

[5] Burke v. Kodak Ret. Income Plan, 336 F.3d 103, 108 (2d Cir. 2003), which preceded the Second Circuit's decision in Greifenberger, is therefore inapposite. See Pls.' Sur-reply at 4. Moreover, none of the arguments that Plaintiffs have raised about futility of the exhaustion process warrant allowing them to avoid their Plans' administrative remedies. In particular, Plaintiffs made clear at oral argument that they believe that exhaustion is antithetical to "provid[ing] consistent treatment of [class] claims." Tr. 39: 9-13. As CHLIC explained in its briefing, however, the Second Circuit has enforced the exhaustion requirement even in putative class actions. Cigna Reply at 5; Tr. at 12:11-13 (court observing that exhaustion in class actions "may eliminate some of the issues").

5

Cigna Br. at 13-16; Cigna Reply at 2-5. CHLIC agrees that it is within the Court's discretion to stay Plaintiffs' Section 502(a)(1)(B) claim pending the outcome of the administrative process, and that the practical realities in this case weigh in favor of a stay rather than a dismissal of that claim for failure to exhaust. Tr. 16:12-17:13. For the reasons previously set forth by CHLIC, however, Plaintiffs' remaining claims should be dismissed with prejudice now.[6] Cigna Br. at 16-32; Cigna Reply at 5-15.

This procedural path has been blazed before by courts which have ordered a stay of plan benefit claims to allow plaintiffs to comply with their plans' exhaustion procedures while dismissing other claims with prejudice. See, e.g., Guenther v. Lockheed Martin Corp., No. 5:11-00380, 2012 WL 1155647 (N.D. Cal. Mar. 30, 2012) (staying plaintiff's Section 502(a)(1)(B) claim while he pursued internal plan remedies and dismissing with prejudice plaintiff's breach of contract claim as preempted by (and thus duplicative of) his Section 502(a)(1)(B) claim); Pyron v. Sara Lee Bakery, No. 2:05-2041, 2006 WL 2562401 (S.D. Miss. Mar. 27, 2006) (same); Banks v. Jockey Int'l, Inc., 996 F. Supp. 576 (N.D. Miss. 1998) (dismissing plaintiff's ERISA Sections 204(h), 502(c), and 510 claims with prejudice and staying the action pending exhaustion of administrative remedies of the Section 502(a)(1)(B) claims).

---

[6] Plaintiffs' sur-reply arguments regarding CHLIC's fiduciary status cannot save these other ERISA claims. Pls.' Sur-reply at 1, 5-9. Plaintiffs' contend that CHLIC conceded in a prior case, Cigna Health & Life Insurance Company v. Texas Spine & Joint Hospital, Ltd., 6:14-00765 (E.D. Tex.), that it is an ERISA fiduciary in processing claims for payment. Pls.' Sur-reply at 5. But CHLIC does not dispute that it is a limited purpose fiduciary for the claims administration of Plaintiffs' Plans. As in Larson v. United Healthcare Insurance. Co., 723 F.3d 905 (7th Cir. 2013), for example, Plaintiffs' claims here do not attack CHLIC's claims administration functions so CHLIC's fiduciary role as a claims administrator is irrelevant. See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) (holding that the threshold question is "whether that person [employed to provide services under a plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint"); Cigna Br. at 16-22; Cigna Reply at 8-13. Additionally, Plaintiffs attempt to rely on Arapahoe Surgery Center, LLC et al. v. Cigna Corporation, No. 1:13-03422 (D. Colo.), to argue that their claims implicate plan assets thereby transforming CHLIC into a fiduciary. Pls.' Sur-reply at 1, 7. The distinction to Arapahoe could not be clearer. In that case, Cigna was pursuing on behalf of the plans recovery of payments made to out-of-network facilities for health care services provided to plan participants. Dkt. 109-1 at ¶¶ 195, 198. Those overpayment amounts were dollars paid by the plans. Id. Plaintiffs here are trying to get reimbursement on behalf of themselves – plan participants – for money that they paid out-of-pocket. These amounts are not plan assets. Cigna Reply at 9-13.

Not only have other courts taken this procedural approach, but Plaintiffs offer no compelling reason to deviate from the decisions in Larson v. United Healthcare Insurance. Co., 723 F.3d 905 (7th Cir. 2013), Alves v. Harvard Pilgrim Health Care, Inc., 204 F. Supp. 2d 198 (D. Mass. 2002), aff'd, 316 F.3d 290 (1st Cir. 2003), and Moeckel v. Caremark RX Inc., 622 F. Supp. 2d 663 (M.D. Tenn. 2007). Cigna Br. at 18-21, 27; Cigna Reply at 11 n. 19. In all of these cases, the courts dismissed breach of fiduciary duty and/or prohibited transaction claims while acknowledging the possibility that a separate plan violation claim or contract claim could exist. See Larson, 723 F.3d at 916-18; Alves, 204 F. Supp. 2d at 209-210; Moeckel, 622 F. Supp. at 663, 667 n.6, 690. Thus, while Plaintiffs here have asserted a plan violation claim under Section 502(a)(1)(B), that does not foreclose dismissal of their fiduciary breach and prohibited transaction claims. Plaintiffs have not raised any sufficient justification to allow those other ERISA claims to proceed when they plainly fail as a matter of law.[7]

Indeed, dismissal with prejudice of Plaintiffs' claims other than their Section 502(a)(1)(B) claim will properly tailor the scope of the case to this "contract claim" rather than allowing Plaintiffs' attempt to pursue expansive litigation. This approach, coupled with exhaustion of Count I, will avoid unnecessary litigation expense and facilitate an approach to

---

[7] Likewise, Plaintiffs are wrong that they should be able to pursue all of these ERISA claims now and sort out any available relief later. Pls.' Sur-reply 9-12. There is clear precedent for a Rule 12(b)(6) dismissal of breach of fiduciary duty and prohibited transaction claims where those claims exist solely as a second route to relief sought under Section 502(a)(1)(B). Cigna Reply at 6 n.10, 7 n.12. The Eighth Circuit's decision in Jones v. Aetna Life Insurance Company, 856 F.3d 541 (8th Cir. 2017), does not alter this analysis. Pls.' Sur-reply at 9-11. There, the court allowed a breach of fiduciary duty claim seeking relief under Section 502(a)(3) to proceed in parallel with a Section 502(a)(1)(B) claim where the claims alleged distinct theories of liability. Id. at 548. The breach of fiduciary duty claim asserted that the defendant used claims examiners with conflicts of interest and denied short-term benefits to disqualify long-term claims, whereas the claim for benefits under Section 502(a)(1)(B) flowed from a denial of benefits under the terms of the plan. Id. By contrast, Plaintiffs here concede that this case, including their breach of fiduciary duty and prohibited transaction claims, turns on interpreting the terms of their plans. The sole mechanism for resolving their plan violation claim is Section 502(a)(1)(B). Cigna Reply at 5-8. And although Plaintiffs try to cling to the argument that they are also seeking disgorgement of profits and removal of the fiduciary under Section 409(a) on behalf of the *plans* pursuant to Section 502(a)(2), it is clear that the harms they allegedly seek to remedy – the "spread" amounts to which the plans have no entitlement as well as injunctive relief that is explicitly available under Section 502(a)(1)(B) – are not plan-wide but individual. Cigna Reply at 5-8.

discovery that is proportional to the requirements of a plan interpretation dispute. Tr. at 12:11-13 (court commenting that exhaustion in class actions "may eliminate some of the issues"); Tr. at 56:23-57:3 (court explaining that courts "try to use exhaustion of administrative remedies to keep the expense of a federal court case down, and that's the whole point of making sure [a plan violation claim is] completely reviewed administratively"); Tr. at 4:16-19 (court noting that it will "keep the expense to the least we can do it in"). This is consistent with the Supreme Court's directive "that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." Ashcroft v. Iqbal, 556 U.S. 662, 684-85 (2009). Rather, "it is only by taking care to require allegations that reach the level suggesting [a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence" to support a claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559-60 (2007) (citation and internal quotation marks omitted).

     Here, in particular, there is a material difference in the scope of discovery between a Section 502(a)(1)(B) plan-based claim and breach of fiduciary and prohibited transaction claims under Sections 404 and 406, respectively. As the Second Circuit has recognized, where (as in this case), the plan vests the administrator with discretionary authority to interpret the terms of the plan, a district court's review of a Section 502(a)(1)(B) claim "under the arbitrary and capricious standard is limited to the administrative record" created through the exhaustion process. Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 217 n.11 (2d Cir. 2015) (citation and internal quotation marks omitted). With few exceptions, there is no discovery beyond production of the administrative record in a Section 502(a)(1)(B) action. See Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben., 621 F. App'x 70, 73-74 (2d

Cir. 2015) (concluding that the district court did not abuse its discretion in denying plaintiff's request for further discovery to support her claims for benefits because the documents sought "could not have given rise to a genuine issue of material fact: the District Court's review of the Appeals Committee's decision was limited to the administrative record").

By contrast, "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times." Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 719 (2d Cir. 2013). This burden and expense might be appropriate if Plaintiffs had articulated a plausible, independent basis to proceed with their other claims beyond their allegations of a plan violation. But they have not done so. As they admit, their claims are grounded in contract and must be resolved through an interpretation of the Plans' terms – first by CHLIC as the claims administrator and then, if necessary, by the Court under the narrow arbitrary and capricious standard, limited to examining the administrative record.

What's more, the Court's dismissal of Plaintiffs' ancillary claims now will also serve the interests of judicial economy because these claims will have to be resolved at some point, and the fiduciary breach, prohibited transaction, and RICO claims are ripe for dismissal on Defendants' motions to dismiss. See, e.g., Hannan v. Hartford Fin. Servs., Inc., 688 F. App'x 85, 89-92 (2d Cir. 2017); Larson, 723 F.3d at 916-18; Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 473-75 (7th Cir. 2007); Crabhouse of Douglaston Inc. v. Newsday Inc., 801 F. Supp. 2d 64, 76 (E.D.N.Y. 2011).

## CONCLUSION

For the reasons proffered in CHLIC's Opening Brief, Reply Memorandum of Law, this Post-Hearing Memorandum, and at oral argument, CHLIC respectfully requests that the Court (1) order Plaintiffs to exhaust their Plans' administrative remedies in pursuing their claims under Count I, (2) stay the litigation of Count I pending exhaustion, and (3) dismiss with prejudice Counts II-X.

Dated:  October 5, 2017

Respectfully submitted,

/s/ Joseph J. Costello
Joseph J. Costello (ct14917)
Brian W. Shaffer (phv08654)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
joseph.costello@morganlewis.com
brian.shaffer@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com

Michael D. Blanchard
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2731
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2017, the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Joseph J. Costello
Joseph J. Costello