UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE CIGNA CORPORATION<br>PBM LITIGATION | Case No. 3:16-cv-1702-WWE<br>(Consolidated)<br><br>January 18, 2018 |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO THE COURT'S ORDER CONCERNING BRIEFING ON ERISA AND RICO ISSUES**

In response to the Court's January 5, 2018 Order (ECF 130), Plaintiffs respectfully submit this supplemental memorandum concerning ERISA and RICO issues as they relate to the decision in *In re: UnitedHealth Group PBM Litigation* ("*United*").[1] The analysis in the *United* decision supports Plaintiffs' claims in this case on some issues and is inapplicable to others.

Plaintiffs also bring to the Court's attention the recent ruling on a motion to dismiss in *In re Express Scripts/Anthem ERISA Litigation*, 16-cv-3399 (ER), 2018 WL 339946 (S.D.N.Y. Jan. 5, 2018), the reasoning of which shows that Plaintiffs' allegations here state a claim. The Court should also consider the similar overcharge case involving Optum (but with Aetna as the insurer) *Peters v. Aetna, Inc., et al*, No. 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016). The *Peters* court's reasoning upholding the ERISA allegations in the "Aetna-Optum" overcharge case is more on point to the "Cigna-Optum" overcharge allegations here than the "United-Optum" allegations.

---

[1] The *United* court dismissed the case without prejudice. Although Plaintiffs believe that none of the claims as alleged should be dismissed, to the extent the Court questions the sufficiency of Plaintiffs' allegations, they respectfully request leave to amend.

1

## I. *United* Supports Plaintiffs' ERISA Claims

### A. The Court Should Consider All ERISA Claims on Their Merits

Contrary to Defendants' argument that Plaintiffs cannot proceed under ERISA § 502(a)(3) when they also assert claims under ERISA § 502(a)(1)(B), the *United* court considered all of the plaintiffs' fiduciary duty claims on their merits. Although it ultimately dismissed these claims (for reasons that either do not apply or that this Court should reject, as discussed below), the fact that the court addressed them at all supports Plaintiffs' position that their claims are *not* exclusively claims for benefits. This matters because there is no exhaustion requirement for claims under ERISA § 502(a)(3). In *Peters*, for example, plaintiffs who were overcharged for medical services were not asserting claims for denied benefits that were subject to exhaustion; thus, their other ERISA claims could proceed. *See Peters,* 2016 WL 4547151 at *11[2]; *see also* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("P. Mem.") [ECF 96] at 43-47; Plaintiffs' Sur-Reply Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("P. Sur-Reply") [ECF 109] at 9-12; Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("P. Sup. Mem.") [ECF 123] at 15-16. This court also should reject the argument that Plaintiffs' fiduciary duty claims are claims for benefits or that they require administrative exhaustion.

### B. *United* Supports Plaintiffs' Breach of Fiduciary Duty Claims

A person can become a fiduciary in numerous ways. One way is to be granted fiduciary authority under the Plan documents. That is what happened in this case. *See* P. Mem. at 20-21;

---

[2] *Peters* also supports Plaintiffs' argument that exhaustion is an affirmative defense that Plaintiffs are not required to plead around on a Motion to Dismiss. *Peters* at *11.

2

Exhibit A; Transcript of Sept. 14, 2017 Hearing re Motion to Dismiss ("Tr.") at 44-45.[3] In contrast, the *United* plans did not expressly grant defendants' fiduciary authority. Because the *United* court did not address this issue at all, its reasoning is not relevant here. Instead, this case is like *Peters*, where the court found sufficient allegations that the insurer was a fiduciary under the plans and that the insurer delegated certain of its responsibilities to Optum. Accordingly, the court found that the Optum was a fiduciary. *Peters,* 2016 WL 4547151 at *10. That is precisely what Plaintiffs allege here. Consolidated Complaint ¶ 58 (c), ¶¶ 114-115; P. Mem. at 20; Tr. at 44.

Separately, *United* did address whether the defendants in that case were fiduciaries because they either (1) exercised any discretionary authority or control respecting management of the plans or (2) exercised any authority or control respecting management or disposition of plan assets. P. Mem. at 19. The *United* rationale supports Plaintiffs' position here with respect to the first test. As to the second test, the *United* court did not apply the test for plan assets applicable in this District and, therefore, should not be followed.

1. **Defendants Exercised Discretionary Authority or Control Respecting Management of the Plans**

The *United* court stated that it could not "reasonably infer that Defendants had discretion to require copayments or coinsurance outside of what was required by the plan documents." *United* at 20. This suggests that the court would have found defendants to be fiduciaries if the complaint had alleged that they had exercised "discretion to require copayments or coinsurance outside of what was required by the plan documents." Likewise, in *Express Scripts*, dismissal

---

[3] Exhibit A is a provision from the Plaintiffs' plans concerning Cigna's discretionary authority, which is also found in the binder Plaintiffs provided to the Court at the Hearing on the Motion to Dismiss, at Tab 6.

3

was required because the insurer merely followed the terms of its contracts, but the court acknowledged that the result would have been different if it were alleged that the insurer used discretion in construing and applying health plan provisions or misconstrued or interpreted the plans in a way that benefitted the insurer to the plaintiffs' detriment. *Express Scripts*, 2018 WL 339946, at *17. Indeed, the *Peters* court found that both the insurer and Optum were functional fiduciaries because "they exercised discretion in making coverage decisions …." *Peters,* 2016 WL 4547151 at *10.

That is **exactly** what Plaintiffs have alleged in this case: "Defendants had and exercised discretion to determine the amount of and require the payment of this additional undisclosed compensation [*i.e.*, the excessive copayments, coinsurance, deductible payments], as well as whether to disclose it—or require its concealment." Consolidated Complaint ¶ 107 [ECF 41]; *see also, e.g.*, ¶¶ 9-15 (describing how Defendants "exercised their unilateral discretion" to charge more than the Plans allowed); 62-68 (generally describing the overcharge scheme and gag clauses); 69 (providing numerous specific examples of the exercise of fiduciary authority and control that resulted in overcharges); 92-95 (describing cost-sharing limitations that Defendants exercised unilateral discretion to violate); 104-09 (describing in detail how Defendants "*exercised* discretionary authority and control" by, among many things, "requir[ing] pharmacies to charge patients more for drugs than they should have been charged pursuant to the terms of the ERISA Plans")(emphasis in original); 111-15 (describing in detail how Cigna delegated fiduciary authority and control to Optum and Argus to overcharge Plan participants).

Indeed, Cigna admits the sufficiency of Plaintiffs' allegations when it argues that a person is "a fiduciary only if it unilaterally changes the terms of its arrangement with the plan sponsor." Cigna Corporation and Cigna Health and Life Insurance Company's Reply

Memorandum in Support of Their Motion to Dismiss Plaintiffs' Consolidated Complaint ("Cigna Reply') [ECF 103] at 12. The Plans allowed Defendants to charge Plaintiffs copayments no greater than the amount paid to the pharmacy, and coinsurance payments were limited to a percentage of the amount paid to the pharmacy. In charging Spread, Defendants secretly exercised discretion to charge Plaintiffs more than the Plans allowed. Accordingly, Plaintiffs have stated a claim. *See* Consolidated Complaint ¶¶ 9-15, 62-69, 92-95, 104-09, 111-15; P. Mem. at 21-22; P. Supp. Mem. at 2-3; P. Sur-Reply at 5-6; Exhibit B[4]; Tr. at 45-46.

The *United* court also found that the plaintiffs alleged that the defendants did nothing more than routine, instantaneous, ministerial claims processing that did not involve any exercise of discretion. *United* at 19-20. In contrast, Plaintiffs here allege in detail that Defendants engaged in discretionary acts. Plaintiffs allege that Defendants exercised discretion ***to violate*** Plan terms when they (a) decided to overcharge Plaintiffs, (b) set up and/or changed the computer processing system to impose a cost-sharing payment greater than the amount paid to the pharmacy (*i.e.*, Spread), and (c) input data (*e.g.*, amount paid to the pharmacy/cost-share amount to be paid by patient) into that system to create "Spread" on some but not all prescription medicines (usually low-cost medicines where they could more easily create "Spread"), which enabled Defendants to overcharge Plaintiffs. *See* Consolidated Complaint, ¶¶ 15-18, 52-67, 106-15, 133-34, 151; P. Mem. at 20 (citing *Sixty-Five Security Plan v. Blue Cross and Blue Shield of Greater New York*, 583 F. Supp. 380, 387-88 (S.D.N.Y. 1984)); P. Sur-Reply at 5-6; Tr. at 45-46.

Plaintiffs do not allege that Defendants made a "mistake" in creating "Spread" and secretly clawing it back. To the contrary, Plaintiffs have alleged with great detail a purposeful,

---

[4] Exhibit B is relevant plan cost-sharing provisions from the Plaintiffs' plans, which is also found in the binder Plaintiffs provided to the Court at the Hearing on the Motion to Dismiss, at Tab 1.

pervasive, and fraudulent scheme in which Defendants exercised discretion to violate their Plans. *See generally* Consolidated Complaint; *see, e.g., id*. ¶ 1 ("Defendants' common fraudulent and deceptive scheme to artificially inflate prescription costs causing consumers to pay more than they otherwise should have paid"); ¶ 9 ("Contrary to the express language of the Plans, Defendants and/or their agents exercised their unilateral discretion to force network pharmacies to charge patients unauthorized and excessive amounts for prescription drugs that far exceed the charges made by the pharmacy under their agreements—**sometimes overcharging patients by more than 1,000%.**").  Accordingly, *United'*s conclusion that "any mistake could transform ministerial conduct into fiduciary act" is not relevant, nor could Cigna argue that their actions here were a mistake, thus this argument should be rejected. *United* at 20.

The court in *United* also dismissed the claim that defendants were fiduciaries with respect to setting their own compensation "because all of these activities involved the performance of contractual terms negotiated with plans or pharmacies." *United* at 19-20. That *is not* what Plaintiffs have alleged in this case. Plaintiffs here have alleged that Defendants exercised discretion in purposeful violation of the Plans, not in "performance" of them. *See* Consolidated Complaint ¶¶ 9-15, 62-69, 92-95, 104-09, 111-15; *see also* ¶ 106(f) (Defendants purposefully "exercised discretionary authority and control" to "determine the amount of and require the collection of *additional* profits and compensation for services provided pursuant to the ERISA Plans" (emphasis added)).[5]

---

[5] The *United* court dismissed other fiduciary claims because they "involved the performance of contractual terms negotiated with plans or pharmacies." *United* at 20-21. But, as discussed above, this case does not involve "the performance" of Plan terms. It involves a purposeful breach of those terms. And this case does not concern pharmacy contracts at all; it concerns the breach of Plans governing the relationship between Plaintiffs and Defendants. P. Sur-Reply at 5-6.

Finally, in finding that there were no allegations that Defendants misrepresented or failed to disclose material information, the *United* court recognized that "persons may act as fiduciaries when communicating plan terms to plan members." *United* at 21-22. *Express Scripts* applied similar reasoning in dismissing the misrepresentation claim because plaintiffs failed to allege that the insurer misrepresented benefits provided to beneficiaries. *Express Scripts*, 2018 WL 339946, at *18.

Here, by contrast, Plaintiffs clearly allege that Defendants misrepresented the Plan terms concerning cost-sharing amounts. *See, e.g.*, Consolidated Complaint ¶¶ 106(j) & (k) (Defendants breach fiduciary duties when they "misrepresent and fail to disclose to patients the manner which they charged for prescription drugs as alleged above" and when they "prohibit pharmacies from disclosing to patients the existence or amount of the "Spread" or "Clawback"); P. Mem. at 21, 34-36. Accordingly, this case is much like *Peters* which sustained comparable misrepresentation claims against Optum. *Peters,* 2016 WL 4547151, at *10.

## 2. Defendants Exercised Authority or Control Respecting Management or Disposition of Plan Assets.

In ruling that plaintiffs did not allege a claim concerning authority or control over plan assets, the *United* court did not rely on or even discuss the law that applies to this case. *United* at 22-24. Rather, *United* applied the law that Defendants erroneously contend should apply. Cigna Reply at 10-13. Whether the cost-sharing payments are plan assets is governed by the *Acosta/Haddock* test that Judge Underhill explained and applied. P. Mem. at 24-26; P. Sur-Reply at 7. Because the *United* court ignored the *Acosta/Haddock* standard, its reasoning is inapposite.

As to whether the insurance contracts and ASO agreements are Plan assets, the *United* court found that plaintiffs did not allege how defendants exercised control over those agreements or how defendants used those agreements to benefit themselves. *United* at 23-24. Here, however,

7

Plaintiffs have alleged that these agreements are the foundation of Defendants' prescription drug Plans. Defendants used their discretionary authority and control under these agreements to implement their pharmacy benefit system and their "Spread" and "Clawback" scheme. Put another way, but for their exercise of control over these agreements, Defendants could not have charged "Spread" and taken "Clawbacks" for their benefit. *See, e.g.*, Consolidated Complaint ¶¶ 22-23, 109-10, 119, 126-27, 171-93; P. Sur-Reply at 7-8. Accordingly, *United* does not apply.

### C. *United* Supports the Prohibited Transaction, Co-fiduciary, and Participation Claims

United dismissed the prohibited transaction claims because defendants were not alleged to be fiduciaries. *United* at 24-25. For the reasons set forth above, *United* does not support Defendants' arguments here. The same is true concerning Counts VI and VII. *United* at 25.

### D. *United* Supports the Section 702 Claims

United found that the anti-discrimination claim should be dismissed because plaintiffs did not allege any facts "showing that any of the relevant plans' terms did not apply uniformly to plan members." *United* at 26. That is precisely what Plaintiffs have alleged in this case. *See* Consolidated Complaint ¶ 208 (Defendants' unlawful overcharge scheme requires plan members who require prescription drugs subject to "Spread" pricing to pay more than members who do not require such drugs); P. Mem. at 40-42. Therefore, the *United* court's reasoning does not apply here.

## II. *United* Does Not Impact the RICO Claims

### A. *United* is Irrelevant to Plaintiffs' "Legal Entity" Enterprise Allegations

The *United* court's decision addressed only the sufficiency of association-in-fact enterprises. Unlike in *United*, Plaintiffs here have pleaded the existence of two distinct legal entity enterprises: (1) In Count VIII, against Cigna and/or CHL, a legal entity enterprise

8

consisting of Argus (the "Argus Enterprise"); and (2) In Count VIII, against Cigna and/or CHL, a legal entity enterprise consisting of OptumRx (the "OptumRx Enterprise").  Consolidated Complaint ¶¶ 228-233; Amended RICO Case Statement at 2 (ECF No. 51).  Cigna does not dispute that both OptumRx and Argus are valid legal entity enterprises under RICO and the *United* decision has no bearing on either alleged enterprise, nor could it. Unlike an association-in-fact enterprise, a legal entity enterprise satisfies RICO's enterprise requirement without the need for further analysis.  18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576, 576 (1981).  Thus, regardless of the holding in *United,* Plaintiffs have adequately pleaded that the Argus Enterprise and OptumRx Enterprise are legal entity enterprises. Consolidated Complaint, ¶¶ 59–61.[6]

### B. Plaintiffs' "Association-in-Fact" Allegations in this Case Are Sufficient

The *United* case also does not impact the different allegations of an association-in-fact enterprise alleged here — namely the OptumRx Pharmacy Enterprise which is defined as an association-in-fact enterprise consisting of either Optum and its pharmacy network or solely of the pharmacy network. *See* Consolidated Complaint ¶¶ 263-279 ("consisting of OptumRx and pharmacies in OptumRx's pharmacy networks," or "consisting solely of such pharmacies"). In *United*, the court found that the alleged enterprise was an impermissible "hub-and-spoke" enterprise because the plaintiffs had failed to allege a "rim" that connected the "spokes." Here, such an argument fails because a jury could reasonably infer from Plaintiffs' allegations that the

---

[6] Moreover, Plaintiffs have adequately pleaded that Defendants conducted the affairs of the Argus Enterprise and the OptumRx Enterprise.  *See* Consolidated Complaint ¶¶ 70-71, 237-42, 250 & 271-72.  As *In re Express Scripts/Anthem Litigation* confirms, the mere existence of arms-length contracts is irrelevant to the question of whether a health insurance company conducted the affairs of a PBM enterprise.  No. 16 Civ. 3399 at * 19 (S.D.N.Y. Jan. 5, 2018) ("By alleging that ESI participated in and controlled Anthem's prescription drug benefit program under the PBM Agreement, Plaintiffs have adequately plead this RICO element.").

9

pharmacies were associated-in-fact through the pharmacy network (*i.e.*, the "rim" connecting the "spokes").

The starting point when analyzing an association-in-fact enterprise is the Supreme Court's admonition in *Boyle v. United States*, 556 U.S. 938, 945 (2009) that "the very concept of an association in fact is expansive," and the terms of the RICO statute "are to be 'liberally construed to effectuate its remedial purposes.'" The OptumRx Pharmacy Enterprise is not a "hub-and-spoke" enterprise in which "several individuals" "independently and without coordination, engaged in a pattern of crimes listed as RICO predicates." *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009). Instead, Plaintiffs have plausibly alleged a "rim" through a highly-coordinated and celebrated pharmacy network that "functions as a continuing, cohesive unit," with its own detailed provider manual, uniform network contract and disciplinary sanctions for any pharmacy that threatens to expose the fraudulent scheme. Consolidated Complaint ¶¶ 271-77.

The existence of the OptumRx Pharmacy Enterprise is confirmed by its multiple businesses purposes that are independent and unrelated to the racketeering activity alleged, all of which depend on the existence of a rim, namely pharmacy members working together "to provide Plaintiffs and the Class medically necessary prescription drugs in accordance with the terms of their health insurance plans." *Id.* at ¶ 275. As the Consolidated Complaint alleges, "[b]y submitting a claim to OptumRx, the pharmacies agree that they are acknowledging their participation ***with one another*** in OptumRx's pharmacy network, and that they accept 'all corresponding terms and conditions, including the rates and reimbursements of Claims, for such network.'" *Id.* at ¶ 271(a).

The OptumRx Pharmacy Enterprise also benefits participating pharmacies as a cohesive group. Optum's Provider Manual confirms that accepting an adjudicated claim from Optum serves as the pharmacy's "acknowledgment of its participation in the applicable network." *Id*. (quoting Optum Provider Manual at 44). Indeed, Optum itself has acknowledged this benefit, recognizing that its "'network' of pharmacies as a group have agreed to discounted prices in exchange for the benefit of being included in the plan's network." Optum Memo. [ECF 69] at 4.

The *United* decision relies on cases holding that "hub-and-spokes" associations cannot be RICO enterprises. The fact that some courts have held that a hub and spoke association did not satisfy the requirement for pleading an enterprise is irrelevant to their allegations here. Indeed, among the cases cited in *United* is *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300 (3d Cir. 2010), where the Third Circuit held that plaintiffs failed to allege association-in-fact enterprises as to some, but not all, of the alleged enterprises. *Id.* at 374. In relying on *In re Insurance Brokerage*, the *United* court ignored the Third Circuit's holding reversing dismissal of the complaint finding that plaintiffs plausibly alleged an association-in-fact enterprise with a "rim" centered around Marsh, one of the defendant insurers. *Id.* at 375-76. In the case of Marsh, there was "an expectation of reciprocity and cooperation" among the participating insurance brokers that created a "rim." *Id.* The same reasoning applies here where, instead of insurance brokers, the participating pharmacies were connected through the highly-structured and advertised Optum pharmacy network wherein each pharmacy had an expectation that the others would abide by the provider manual terms and maintain the network and that they all would engage in the discount "Spread"-pricing that Optum acknowledged in its opening brief.  By doing so, all of the participating pharmacies acted for their mutual benefit and the long-term profits that each of them would obtain by maintaining the network.

As Plaintiffs explained in their opposition brief, there was a "symbiotic dependency" among the pharmacies to implement the "Spread"-pricing and Clawback scheme and to affirmatively conceal it from customers. P. Mem. [ECF 96] at 54.  Without that cooperation among the pharmacies, the scheme would have been exposed. *See* P. Mem. at 54-56 (discussing *City of New York v. Chavez*, 944 F. Supp. 2d 260, 272, 270 (S.D.N.Y. 2013) (A "necessary and symbiotic contribution to the overall scheme" is sufficient evidence of an association-in-fact enterprise, which is "oftentimes more readily proven by what it does, rather than by abstract analysis of its structure."); *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-04-2934, 2005 WL 3710370, at *7 (E.D.N.Y. Feb. 22, 2005) (finding that group of doctors constituted association-in-fact enterprise due to their "common purpose to engage in a fraudulent course of conduct," and "each defendant's necessary and symbiotic contribution to the overall scheme")).[7]

The *United* decision also ignores the well-reasoned *In re Managed Care Litigation* decision, which held Cigna and other health insurers were liable under RICO based on an association in fact enterprise consisting of an insurance network of doctors, labs, hospitals, pharmacies, and home health agencies. 185 F. Supp. 2d 1310, 1324 (S.D. Fla. 2002). Exactly as plaintiffs have alleged here (Consolidated Complaint ¶¶ 271, 274), and discussed in their opposing memoranda (P. Mem. at 55-56 and P. Sur-Reply at 16-17), the *Managed Care* plaintiffs had "not alleged a series of random contractual exchanges, but a *network* of physicians,

---

[7] In its opening brief, Cigna made another overbroad argument that RICO is "primarily a criminal statute." Cigna Opening Memo [ECF 70-1] at 32.  Its argument is wrong (*see Humana v. Forsyth*, 525 U.S. 299 (1999) (apply civil RICO against insurance scheme); *In re Managed Care Litig.,* 185 F. Supp. 2d 1310, 1324 (S.D. Fla. 2002) (sustaining RICO claims against Cigna and other health insurers)), and it also highlights the overbreadth of its association-in-fact argument here based on *United*.  Even with a criminal RICO enterprise like a Mafia family, not every member of the criminal enterprise has to know of or has to agree with every other member of the crime family.

hospitals, pharmacies, and health care professionals through which the Defendants deliver health care," and "which was openly celebrate[d]" by the defendant insurance company, and "use[d] . . . as a public relations vehicle." *Id.*; *see also* 298 F. Supp. 2d 1259, 1273–76 (S.D. Fla. 2003).[8]

Accordingly, the *United* decision, which ignored and failed to distinguish comparable precedent, is an outlier. Plaintiffs have stated a RICO claim.

Dated: January 18, 2018

                    *s/ Robert A. Izard*

| | |
|---|---|
| Robert A. Izard (ct01601) | William H. Narwold (ct00133) |
| *Plaintiffs' Interim Co-Lead Class Counsel* | *Plaintiffs' Interim Co-Lead Class Counsel* |
| Craig A. Raabe (ct04116) | Mathew Jasinski (ct27520) |
| Christopher M. Barrett (ct30151) | MOTLEY RICE LLC |
| IZARD, KINDALL & RAABE, LLP | One Corporate Center |
| 29 South Main Street, Suite 305 | 20 Church Street, 17th Floor |
| West Hartford, CT 06107 | Hartford, CT 06103 |
| 860-493-6292 | 860-882-1681 |
| 860-493-6290 fax | 860-882-1682 fax |
| rizard@ikrlaw.com | bnarwold@motleyrice.com |
| craabe@ikrlaw.com | mjasinski@motleyrice.com |
| cbarrett@ikrlaw.com | |
| | |
| Joseph P. Guglielmo (ct27481) | Derek W. Loeser, pro hac vice |
| *Plaintiffs' Executive Committee Chair* | *Plaintiffs' Executive Committee Member* |
| Carey Alexander, pro hac vice | Gretchen S. Obrist, pro hac vice |

---

[8] To the extent that Cigna files a reply and argues that the *Peters* decision dismissing the RICO claims applies here, such an argument would be misplaced. *See Peters*, 2016 WL 4547151 at *7-9. First, *Peters* did not involve allegations of a formal, structured network (as alleged here) that satisfies the "expansive" *Boyle* standard. Second, the allegations here are not simple allegations of an "ordinary commercial relationship"; they are allegations of an actively-concealed, pervasive fraudulent scheme in direct contravention of Cigna's express promise not to charge plan participants more than the plan paid pharmacies for prescription drugs. In contrast to *Peters*, the well-pled allegations here show significant "'coordination'" and concealment on the part of Cigna, Optum, Argus and the pharmacies to engage in "Spread"-pricing and Clawbacks to funnel ill-gotten gains from plan participants, through the pharmacies and into Optum, Argus and Cigna. *See, e.g.*, Consolidated Complaint ¶¶ 5-20, 242, 245, 250-255, 270-76, 282-288.

SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
212-223-6444
212-223-6334 fax
jguglielmo@scott-scott.com
calexander@scott-scott.com


Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
860-537-5537
860-537-4432 fax
ecomite@scott-scott.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
516-699-8890
516-699-8968 fax
ronen@sarrafgentile.com
joseph@sarrafgentile.com



Andrew A. Lemmon
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
985-783-6789
985-783-1333 fax
andrew@lemmonlawfirm.com

- and -

650 Poydras Street, Suite 2335

KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
206- 623-1900
206-623-3384 fax
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, pro hac vice
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-341-0400
612-341-0844 fax
brian.gudmundson@zimmreed.com




Karen Hanson Riebel, pro hac vice
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, pro hac vice pending
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
612-596-4097
612-339-0981 fax
khriebel@locklaw.com
kgmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
206-448-1777
206-728-2131 fax
brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams

14

New Orleans, LA 70130
504-581-5644
504-581-2156 fax

WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
919-600-5035 fax
dan@wbmllp.com
jeremy@wbmllp.com
*Additional Counsel for Plaintiffs*

E. Kirk Wood
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
205-908-4906
866-747-3905 fax
ekirkwood1@bellsouth.net