UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE CIGNA CORPORATION PBM LITIGATION | : CIVIL NO. 3:16-CV-1702 (WWE) <br> : <br> : CLASS ACTION <br> : <br> : <br> : FEBRUARY 1, 2018 |

**DEFENDANT OPTUMRX, INC.'S MEMORANDUM OF LAW IN REPLY TO COURT'S ORDER CONCERNING BRIEFING ON ERISA AND RICO ISSUES**

Contrary to Plaintiffs' arguments, the court's decision in *In re UnitedHealth Group PBM Litig.*, No. 16-cv-3352 (JNE/BRT), 2017 WL 651222 (D. Minn. Dec. 19, 2017) ("*UnitedHealth*"), correctly identifies the deficiencies in Plaintiffs' ERISA and RICO claims. The complaint in *UnitedHealth* is essentially the same as the complaint in this case. Just as Plaintiffs allege here, the *UnitedHealth* plaintiffs alleged that their plan terms were violated because their plans entitled them to pay for prescription drugs no more than any discounted rate the pharmacy was paid. *UnitedHealth*, 2017 WL 6512222, at *3. And just as Plaintiffs allege here, the *UnitedHealth* complaint asserted ERISA and RICO causes of action and legal theories based upon those same factual allegations. The *UnitedHealth* decision bears directly on Plaintiffs' claims in this case and supports dismissal of all of Plaintiffs' claims against OptumRx.

I.  **PLAINTIFFS SHOULD BE REQUIRED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES JUST AS THE COURT HELD IN *UNITEDHEALTH***

*UnitedHealth* directly supports Defendants' arguments that Plaintiffs are required to exhaust their administrative remedies prior to proceeding in federal court. As the *UnitedHealth* court found, exhaustion of Plaintiffs' claims through the administrative process will serve "many important purposes" including "giving claims administrators an opportunity to correct errors,

promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, [and] assembling a fact record that will assist the court if judicial review is necessary." *UnitedHealth*, 2017 WL 6512222, at *6 (quotation omitted).  Those same principles apply here, and nothing raised by Plaintiffs in their supplemental memoranda distinguishes the ERISA Section 502(a)(1)(B) claims brought in this case from those raised and dismissed by the *UnitedHealth* court on the basis of a failure to exhaust.

In opposing the application of *UnitedHealth* to this case, Plaintiffs rely on *Peters v. Aetna, Inc.*, No. 1:15-cv-00109-MR, 2016 WL 4547151 (W.D.N.C. Aug. 31, 2016), a 2016 decision that was available to Plaintiffs when they originally briefed the motion to dismiss yet failed to cite.  In any event, *Peters* is distinguishable because there the claims related to alleged misrepresentation of fees that did not rely on specific plan terms.  *Id.* at *11.  By contrast, the claims here—*i.e.*, whether Plaintiffs paid a higher copayment or coinsurance amount than they should have—specifically depend on the terms of each individual's plan.  Cigna Mem. (ECF No. 70-1) at 1, 9-12.  Further, although failure to exhaust administrative remedies is an affirmative defense, courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies.  *Abe v. New York Univ.*, No. 14-9323, 2016 WL 1275661, at *5 (S.D.N.Y. Mar. 30, 2015) (citing cases).  Plaintiffs should be required to exhaust their administrative remedies.[1]

---

[1] As noted in OptumRx's supplemental brief (ECF No. 120), Count I should be dismissed as against OptumRx because it is not the claims administrator and has no role in the administrative appeal process.

## II. *UNITEDHEALTH* SUPPORTS THE DISMISSAL OF PLAINTIFFS' ERISA BREACH OF FIDUCIARY DUTY, PROHIBITED TRANSACTION, AND DISCRIMINATION CLAIMS

### A. Plaintiffs' ERISA Section 502(a)(3) Claims Should Be Dismissed as Duplicative of the ERISA Section 502(a)(1)(B) Claims

Contrary to Plaintiffs' argument, nothing in *UnitedHealth* suggests that Plaintiffs' ERISA Section 502(a)(3) claims should be allowed to go forward alongside their ERISA Section 502(a)(1)(B) claims. *See* OptumRx Mem. (ECF No. 69) at 20-22; OptumRx Reply (ECF No. 104) at 5-6. Indeed, that issue was not raised in *UnitedHealth*, nor would the court there have found it necessary to address it, because the court found that United was *not* acting as a fiduciary when it engaged in the conduct at issue.

Moreover, Plaintiffs continue to ignore relevant authority on this issue from *this* circuit, which conclusively bars Plaintiffs from proceeding with an ERISA Section 502(a)(3) claim that seeks the exact same relief based upon the exact same conduct as their ERISA Section 502(a)(1)(B) claim. *Frommert v. Conkright*, 433 F.3d 254, 269-70 (2d Cir. 2006); *N.Y. State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015). Count II should be dismissed on this basis.

### B. *UnitedHealth* Rejects Plaintiffs' Attempt to Characterize OptumRx as a Fiduciary

Despite Plaintiffs' attempts to state otherwise, Plaintiffs' allegations in this action regarding OptumRx's alleged fiduciary status are identical to those raised in *UnitedHealth*. That decision applies directly here.

All of Plaintiffs' attempts to distinguish *UnitedHealth* boil down to the same argument: that this Complaint alleges that Defendants exercised discretionary plan authority by "secretly exercise[ing] discretion to charge Plaintiffs more than the Plans allowed." Pls.' Second Resp. (ECF No. 132) at 5. Every single paragraph of their argument includes variations on this same

3

theme. Plaintiffs argue that Defendants "exercised discretion to determine the amount of and require the payment of this additional undisclosed compensation" (*id*. at 4); they claim that they have alleged a "scheme in which Defendants exercised discretion to violate their Plans" (*id*. at 6); and that "Plaintiffs here have alleged that Defendants exercised discretion in purposeful violations of the Plans." (*Id*.). In other words, Plaintiffs exclusively attempt to distinguish *UnitedHealth* by arguing that their complaint in this action alleges that Defendants charged more than what the plan documents called for.

This is, however, exactly the argument that *UnitedHealth* rejected. That court rejected the plaintiffs' argument that the *UnitedHealth* defendants exercised discretion "solely on the basis that the [copay] calculations" delivered to the pharmacy "were incorrect." *UnitedHealth*, 2017 WL 6512222, at *9. If that could create fiduciary status, the court noted, then any error "could transform ministerial conduct into fiduciary act." *Id*. And, contrary to Plaintiffs' argument, the complaint in *UnitedHealth* made exactly the same allegations of fraud and misconduct as those alleged here. *Compare* Compl. ¶ 106(j) and (k) *with UnitedHealth,* Civil No. 16-3352 (D. Minn.), ECF No. 52 at ¶ 153(j) and (k) (hereinafter "*UnitedHealth* Compl."). There, just as here, the plaintiffs alleged that the defendants "misrepresented" the fact that it was charging higher copays than allowed in the plans and that the defendants concealed its "scheme" from the plaintiffs.[2] *UnitedHealth*, 2017 WL 6512222, at *8. Yet that court held, as this Court

---

[2] *Peters* is distinguishable because there the plaintiff alleged that the defendants exercised discretion in making coverage determinations with respect to ERISA plans. *Peters v. Aetna Inc.,* No. 1:15-cv-00109-MR, 2016 WL 4547151, at *10 (W.D.N.C. Aug. 31, 2016). No such allegations are present here. Rather, Plaintiffs allege ministerial acts undertaken as part of OptumRx's arms-length business dealings with Cigna and network pharmacies. *See* OptumRx Mem. (ECF No. 69) at 15-17.

should, that the plaintiffs did not allege facts showing that the defendants' actions constituted anything more than ministerial claims processing. *UnitedHealth*, 2017 WL 6512222, at *9.

Just as in *UnitedHealth*, Plaintiffs cannot argue that Defendants became fiduciaries simply because they (allegedly) failed to communicate correct copay information to the pharmacies. Holding otherwise would mark a drastic expansion in the scope of ERISA's fiduciary duties. Suddenly, any time a non-fiduciary service provider makes a benefit calculation error, a plaintiff will be able to claim that this party should be an ERISA fiduciary, subject to all of ERISA's fiduciary responsibilities, including ERISA's prohibited transaction rules. Plaintiffs cite no authority that suggests that this would be proper or appropriate.

      C.      *UnitedHealth* Rejects Plaintiffs' Argument that Defendants Exercised Discretionary Authority Over Plan Assets

The *UnitedHealth* court's conclusion that the cost-sharing payments at issue are not plan assets is also directly on point. As that court recognized, the cost sharing payments "come from plan members, not the plan" and thus are not plan assets. *UnitedHealth*, 2017 WL 6512222, at *10-11*; see also Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463, 476 (7th Cir. 2007). Plaintiffs do not cite a single case holding otherwise. Instead, they once again refer to the "test" supposedly established by the District Court's decision in *Haddock v. Nationwide Financial Services, Inc.,* 419 F. Supp. 2d 156 (D. Conn. 2006). As discussed in OptumRx's and Cigna's reply briefs in support of their motions to dismiss, however, *Haddock* is not only an outlier, but it involves a situation where the defendant allegedly took plan assets away from the plan accounts of the individual plaintiffs. Cigna Reply (ECF No. 103) at 10-11; OptumRx Reply (ECF No. 104) at 10, n. 11. In other words, *Haddock* involves an alleged theft of assets that would otherwise have been contributed to an ERISA plan. There is no dispute that the copays at issue here would never have been plan property.

5

   D. *UnitedHealth* Directly Supports the Dismissal of Plaintiffs' ERISA Section 702 Claim

Finally, Plaintiffs cannot distinguish the ERISA Section 702 claims in this case (Count V) from the Section 702 claims dismissed in *UnitedHealth*.  Just as in this case, the plaintiffs in *UnitedHealth* alleged that the defendants "discriminated" against individual participants because clawbacks applied to some drugs, but not others.  *UnitedHealth,* 2017 WL 6512222, at *12.  But, such allegations do not state a claim for relief because the discrimination alleged is not based upon "any health status-related factor."  *Id*.  So too here.  Although Plaintiffs allege that only certain prescription drugs are subject to the "spread" pricing, they do not dispute that all individuals who purchase the same drugs are affected.  This does not state a claim under ERISA Section 702 and Count V must be dismissed.

**III.** ***UNITEDHEALTH* SUPPORTS THE DISMISSAL OF PLAINTIFFS' RICO CLAIMS AGAINST OPTUMRX**

Plaintiffs' suggestion that *UnitedHealth* has no application to their RICO claims is wrong.  That decision squarely addressed almost identical allegations and properly concluded that the plaintiffs in that case failed to state any RICO claim.  *UnitedHealth,* 2017 WL 6511222, at *12-13.  Applying the *UnitedHealth* court's analysis to Plaintiffs' RICO claims against OptumRx in this action, in addition to the arguments already raised and briefed by Defendants on the motion to dismiss, supports dismissal.

*UnitedHealth* squarely rejects Plaintiffs' "association-in-fact" enterprise alleged in their RICO claims against OptumRx.  There, the plaintiffs similarly alleged that OptumRx served as the "hub" for pharmacies in its network and that the pharmacies were the "spokes."  *Compare* Compl. ¶¶ 275-279 *with UnitedHealth* Compl. ¶¶ 295-305.  The *UnitedHealth* court first acknowledged that "generally speaking, a 'hub-and spokes' enterprise . . .is not sufficiently coherent unless the member[] spokes are connected by a unifying rim."  *UnitedHealth*, 2017 WL

6

651222, at *13 (citing *Target Corp. v. LCH Pavement Consultants, LLC*, 2013 WL 2470148, at *5 (D. Minn. June 7, 2013).  The court then correctly concluded that the plaintiffs failed to allege any "concerted action" among the spokes, a failure fatal to their claims:  the "pleaded structure lacks 'relationships among those associated with the enterprise' showing that they 'associated *together* for a common purpose.'"  *UnitedHealth*, 2017 WL 6512222, at *13 (citing *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009)).  In reaching this conclusion, the *UnitedHealth* court squarely rejected the plaintiffs' arguments that (1) the pleaded enterprise shares a common purpose of providing the plaintiffs and class members with medically necessary prescription drugs in accordance with their plans and that the pharmacies knew about the pharmacy network's collective existence, and (2) that a contractual relationship between individual pharmacies and OptumRx, including an agreement to abide by OptumRx's provider manual, was sufficient to demonstrate a common purpose *among themselves* to further a cognizable RICO enterprise.  *UnitedHealth*, 2017 WL 6512222, at *12-13 ("[t]here are no allegations showing that the pharmacies have relationships between themselves in addition to their individual contractual relationships with OptumRx"); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010); *LCH Pavement*, 2013 WL 2470148, at *5 (D. Minn. June 7, 2013).

Those exact same principles apply to Plaintiffs' allegations here, requiring dismissal.  *See* OptumRx Mem. (ECF No. 69) at 26-28; OptumRx Reply (ECF No. 104) at 17-19.  While Plaintiffs attempt to distinguish their allegations in this case from those in *UnitedHealth* by arguing they have plausibly alleged a "rim," the allegations they point to in paragraphs 271 to 277 of the Complaint are virtually identical to those in *UnitedHealth*.  *Compare with UnitedHealth* Compl. ¶¶ 307-309.  Just as the court held in *UnitedHealth*, here there are no allegations of concerted actions among the "spokes" (the pharmacies), only allegations of

7

parallel conduct through adherence to pharmacy-by-pharmacy network contracts and general network policies.  There are no allegations showing that the pharmacies have relationships between themselves in addition to their individual contractual relationships with OptumRx.  This is not sufficient to plead an association-in-fact enterprise.

Finally, despite the overwhelming authority to the contrary, including *UnitedHealth*, Plaintiffs continue to rehash old arguments based upon the case *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1324 (S.D. Fla. 2002).  Although *UnitedHealth* does not directly address this case, its holding clearly rejects it, just as multiple courts have done over the last 15 years, and *Managed Care* is not controlling here.  *See New Eng. Carpenters Health & Welfare Fund,* 2014 U.S. Dist. LEXIS 134857, at *18-20 (N.D. Ill. Sept. 25, 2014); *Ins. Brokerage Antitrust Litig.*, 2007 U.S. Dist. LEXIS 73220, at *125-26; *AMA v. UnitedHealthCare Corp.* 588 F. Supp. 2d 432, 440 (S.D.N.Y. 2008).  *Managed Care* was wrongly decided and provides no basis to support Plaintiffs' RICO claims here where Plaintiffs failed to plead an enterprise that is a "continuing unit that functions with a common purpose."  *Boyle v. United States,* 556 U.S. at 948.

## IV.   CONCLUSION

The consolidated complaint fails to state a claim against OptumRx as a matter of law and should be dismissed with prejudice.

Respectfully submitted,

By: */s/ Kelly Frye Barnett*_____
Theodore J. Tucci (ct05249)
Kelly Frye Barnett (ct29817)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel.: (860) 275-8200
Fax: (860) 275-8206
E-mail: ttucci@rc.com
E-mail: kbarnett@rc.com

William R. Stoeri (*Pro Hac Vice – ct14744*)
Michelle S. Grant (*Pro Hac Vice – phv08827*)
Andrew Holly (*Pro Hac Vice – phv08826)*
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, MN  55402-1498
Telephone:     (612) 340-2600
Facsimile:     (612) 340-2868
stoeri.bill@dorsey.com
grant.michelle@dorsey.com
holly.andrew@dorsey.com

*Attorneys for Defendant OptumRx, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2018, I electronically filed the foregoing with the Clerk of Court, using CM/ECF. I also certify that the foregoing document was served on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF, or via other means if requested.

*/s/ Kelly Frye Barnett*