# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **KIMBERLY NEGRON, individually and on behalf of all others similarly situated DANIEL PERRY, individually and on behalf of all others similarly situated COURTNEY GALLAGHER, individually and on behalf of all others similarly situated NINA CUROL, individually and on behalf of all others similarly situated, and ROGER CUROL, individually and on behalf of all others similarly situated,** | **3:16cv1702 (WWE) consolidated with 16cv1904 (WWE)** |

       **Plaintiffs,**

       **v.**

**CIGNA HEALTH AND LIFE INSURANCE and OPTUMRX, INC.,**

       **Defendants.**

## <u>MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS</u>

In this putative class action, plaintiffs Kimberly Negron, Daniel Perry, Courtney Gallagher,

Nina Curol and Roger Curol allege that defendants Cigna Health and Life Insurance Company

("CIGNA") and OptumRx, Inc., have violated the Employee Retirement Income Security Act

("ERISA") and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs allege

that defendants have artificially inflated prescription drug costs in violation of the terms of their health

insurance policies.

In count one, plaintiffs assert their action against defendants pursuant to ERISA §

502(a)(1)(B), which provides that a participant or beneficiary may bring an action to enforce rights

under the terms of the plan.  In counts two and three, plaintiffs assert violations of ERISA's

prohibited transactions enumerated in ERISA § 406(a) and (b).  In count four, plaintiffs allege that

defendants have breached their fiduciary duties of loyalty and prudence in violation of ERISA §

404(a)(1).  In count five, plaintiffs allege that defendants violated ERISA's antidiscrimination

provision of ERISA § 702(b).  In counts six and seven, plaintiffs allege that defendants are liable as

co-fiduciaries or non-fiduciaries based on knowing participation in the asserted breaches of fiduciary

duty.  In counts eight through ten, plaintiffs assert RICO claims against defendants.

Defendants now move to dismiss this complaint for failure to state plausible claims for relief.

For the following reasons, the motion to dismiss will be granted in part and denied in part.1

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the

---

1 At the hearing, the Court had indicated it would rule on only the issue of exhaustion.  However, the
Court finds that judicial economy is served by consideration of all of the issues in this ruling.

complaint as true.  The Court assumes familiarity with the allegations of the complaint.  However, the Court will include this brief factual background.

Plaintiffs receive prescription drug benefits through individual or group health plans issued or administered by defendants.  Cigna offers both administrative services only ("ASO") plans and insured plans.  Both types of plan offer the same range of administrative services.

Cigna has an in-house pharmacy benefit manager known as Cigna Pharmacy Management that provides and administers health and pharmacy benefits to patients.  Cigna Pharmacy Management outsources certain functions to other providers, including defendant OptumRx and another entity known as Argus Health Systems Inc.  Cigna utilizes OptumRx's technology and service platforms, retail network contracting and claims processing services.  Argus was the primary pharmacy benefit manager prior to 2013, and it remains part of Cigna's pharmacy benefits delivery system.  Plaintiffs allege that Argus and OptumRx have been directed by Cigna and are involved in administering pharmacy benefits for the relevant plans.

Plaintiffs assert that defendants and other co-conspirators engaged in a scheme to defraud patients by overcharging for the cost of medically necessary prescription drugs.  Patients allegedly pay excess charges to participating pharmacies in exchange for receiving their prescription drugs.

Defendants allegedly misrepresent the costs of the prescription drugs in the form of increased charges to patients and then "clawback" from the pharmacies a large portion of the patients' payments.

In their complaint, plaintiffs have included an example of the asserted Clawback scheme applied to a prescription Vitamin D that a pharmacy purchased from the manufacturer or wholesaler for $0.60. Pursuant to the Phamacy Benefit Manager Pharmacy Agreement (PBM Pharmacy Agreement), defendants' pharmacy benefit manager paid the pharmacy 0.96 for the Vitamin D, a fulfillment fee of $1.40, and $0.21 in tax. Thus, in accordance with the PBM Pharmacy Agreement, the contracted charge made by the pharmacy was $2.57. The PBM Pharmacy Agreement required the pharmacy to charge the patient a $7.68 "copayment" for the prescription Vitamin D, which represents almost 300% of an overcharge. The PBM-Pharmacy Agreement then required the pharmacy to pay the PBM or insurer the "Spread" between the contracted fee and the "copayment" amount collected from the patient. Thus, plaintiffs allege that defendants received a $5.11 Clawback. The PBM Pharmacy Agreement prohibited the pharmacy from disclosing to the patient the amount paid to the pharmacy or the Clawback.

Plaintiffs allege that the relevant plans provide that "[i]n no event will" a copayment or

coinsurance amount paid by an insured exceed the amount paid by the plan to the pharmacy.[2]

However, plaintiffs assert that contrary to the plan provisions, defendants have forced network

pharmacies to charge patients unauthorized and excessive amounts for prescription drugs that far

exceed the charges made by the pharmacy under their agreements; and that defendants have

"clawed back" some or all of the excessive charges by forcing the pharmacies to pay the

unauthorized charges to defendants after collecting them from the patients.

Plaintiffs' plans provide for (1) a claim determination and appeal process relative to coverage

claims; and (2) a customer or member service for complaints if the insured has, inter alia, "a concern

regarding a person, a service, the quality of care, [or] contractual benefits."  The customer or

member service provision instructs that an insured who is not satisfied with the results of a coverage

decision "may start the appeals procedure."

The plan provisions relevant to filing a reimbursement or filing a claim for prescription drugs

provide that upon purchase of a drug at a retail participating pharmacy, an insured or beneficiary

---

[2] Plaintiffs quote the following relevant language from the plans:  "In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy," and "In no event will the applicable copay or coinsurance paid by you and your covered Dependent(s) for the Prescription Drug or Related Supply exceed the amount paid by the Plan…."

pays an applicable Copayment, Coinsurance or Deductible and does not need to file a claim form.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

With regard to allegations of fraud or fraudulent conduct, a plaintiff must comply with the higher pleading standard required by Federal Rule of Civil Procedure 9. In order to satisfy Rule 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements or omissions were made; and (4) explain why

the statements or omissions were fraudulent.  <u>Antian v. Coutts Bank (Switzerland) Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999).  A plaintiff may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent.  <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994).  The purpose of the specificity requirement is:  (1) to ensure that a complaint provides a defendant with fair notice of plaintiff's claim; (2) to safeguard a defendant's reputation from improvident charges; and (3) to protect defendant from a strike suit.  <u>O'Brien v. Nat'l Prop. Analysts Partners</u>, 936 F.2d 674, 676 (2d Cir. 1991).

<u>Count One</u>

In count one, plaintiffs allege a claim under ERISA § 502(a)(1)(B), asserting that they have been denied their rights under the plans due to defendants' Clawbacks from the inflated prescription drug costs.  Defendants respond that plaintiffs were required to exhaust their administrative remedies by appealing a denial of benefits.  Plaintiffs counter that there were no claim denials to appeal; that imposing the exhaustion requirement would be inequitable; and that pursuing administrative remedies would be futile.

Courts have generally required participants to exhaust the administrative remedies prior to

filing suit to recover benefits.  <u>Heimeschoff v. Hartford Life & Acc. Ins. Co.</u>, 134 S.Ct. 604, 608

(2013).  Administrative exhaustion serves as a safeguard that encourages "employers and others to

undertake the voluntary step of providing medical and retirement benefits to plan participants."  <u>Halo</u>

<u>v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.</u>, 819 F.3d 42, 55 (2d Cir. 2016).  The

primary purposes of ERISA exhaustion are "[to] uphold Congress' desire that ERISA trustees be

responsible for their actions, not the federal courts; [to] provide a sufficiently clear record of

administrative action if litigation should ensue; ... [to] assure that any judicial review of fiduciary

action (or inaction) is made under the arbitrary and capricious standard, not *de novo[;]* ... to help

reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims

for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of

claims settlement for all concerned."  <u>Kennedy v. Empire Blue Cross & Blue Shield</u>, 989 F.2d 588,

594 (2d Cir. 1993).  However, the exhaustion requirement is "judge-made" as "ERISA itself does not

contain an exhaustion requirement."  <u>Kirkendall v. Halliburton, Inc.</u>, 707 F.3d 173, 179 (2d Cir. 2013).

ERISA exhaustion is not a jurisdictional requirement but rather an affirmative defense subject

to waiver, estoppel, futility and other equitable considerations.  <u>Paese v. Hartford Life and Acc. Ins.</u>

<u>Co.</u>, 449 F.3d 435, 444-446 (2d Cir. 2006).  As the Second Circuit observed, "ERISA seeks to avoid

saddling plaintiffs in such circumstances with the burdens and procedural delays imposed by inartfully drafted plan terms." Kirkendall, 707 F.3d at 181 ("We therefore join the Seventh and Eleventh Circuit in holding that plan participants will not be required to exhaust administrative remedies where they reasonably interpret the plan terms not to require exhaustion and do not exhaust their administrative remedies as a result."); see also Woerner v. Fram Group Operations, LLC, 658 Fed.Appx. 90, 96 n.6 (3d Cir. 2016) (Plaintiff should be excused from exhaustion where she believed she was not bound by claims procedure.).

Plaintiffs maintain that they are not barred by ERISA exhaustion because the bases of their claims are not a denial of prescription drug benefits. They have alleged that charges for the prescription drug benefits were paid in full and that plaintiffs have received the prescription drugs. The relevant language of the plans provides that an appeal should be initiated within 180 days of notice of the denial. Plaintiffs submit that they had no notice of a denial to trigger the administrative for procedure for a claim denial.

Defendants submit that Court should follow the holding of UnitedHealth Group PBM Litig., 2017 WL 651222, at *5-8 (D. Minn. Dec. 19, 2017), which found that exhaustion was required for Section 502(a)(a) claims asserting entitlement for discounted prescription drug benefits. However,

the terms of the plans at issue in <u>UnitedHealth</u> are distinguishable from the terms of the instant plaintiffs' plan.   Relevant to prescription drugs, the instant plans provide that, upon purchase of a drug at a retail participating pharmacy, an insured or beneficiary pays an applicable Copayment, Coinsurance or Deductible and does not need to file a claim form.   In <u>UnitedHealth Group</u>, the Court found that two of the relevant plans provided procedures specific to challenging coinsurance or copayment calculations; and that the administrative procedures of the other plans provided adequate administrative procedures applicable to copayment and coinsurance disputes.   <u>UnitedHealth Group</u> noted that the relevant member handbook explained that the "Grievance procedure" applied to both adverse determinations and "for other issues."   In the instant matter, the plans provide (1) a claim determination and appeal process relative to claims for coverage; and (2) a customer or member service for complaints if the insured has, <u>inter alia</u>, "a concern regarding a person, a service, the quality of care, [or] contractual benefits."   Consistent with the following discussion, this Court finds that plaintiffs have plausibly stated that the plan terms do not set forth administrative procedures that unambiguously address plaintiff's claims of being overcharged for prescription drugs.

        Plaintiffs assert that they were not aware that they had been overcharged, and therefore, they could not have filed a claim based on the amount of their copayments or coinsurance.

"Because the exhaustion requirement rests on the assumption that notice of denial has been provided, a fiduciary who has not provided notice of a claim for benefits is foreclosed from insisting upon exhaustion of administrative remedies."  Corsini v. United Healthcare Corp., 965 F. Supp. 265, 269 (D.R.I. 1997) (even assuming alleged claim regarding excessive co-payment could be considered a claim for benefits, plan's exhaustion requirement would not apply because defendant had failed to notify plaintiffs of discounted rates paid for medical services).   "An adverse benefit" is defined as "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate."  29 C.F.R. § 2560.503-1(m)(4)(i).

Construing the complaint most liberally for purposes of ruling on this motion to dismiss, the Court finds that plaintiffs have plausibly stated that they did not sustain an adverse benefit

determination claim for coverage of prescription drugs that would trigger exhaustion.  See Smith v.

United HealthCare Svcs., Inc., 2000 WL 1198418, at *4 (D. Minn. 2000).

Further, defendants have not proved as a matter of law that they maintained standard

reasonable claim procedures that complied with the DOL regulation.  If a plan does not comply with

the minimum set forth by the DOL regulation, the plain is not entitled to the protections of the

exhaustion requirement and the deferential standard of review by the district court, unless the plan

can show that its failure to comply with claims-procedure regulation was inadvertent and harmless.

Halo, 819 F.3d at 56.

In accordance with 29 C.F.R. § 2560.503-1(b), every plan must "establish and maintain

reasonable procedures governing the filing of benefit determinations, and appeal of adverse benefit

determinations."  The regulation provides further:  "In the case of the failure of a plan to establish or

follow claims procedures consistent with the requirements of this section, a claimant shall be

deemed to have exhausted the administrative remedies available under the plan and shall be

entitled to pursue any available remedies under Section 502(a) of the Act on the basis that the plan

has failed to provide a reasonable claims procedure that would yield a decision on the merits of the

claim." 29 C.F.R. § 2560.503-1(1).  The plan bears the burden of proof on this issue.  Halo, 819 F.3d

at 57.

Generally, the DOL regulation defines a claim for benefits as "a request for a plan benefit or

benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit

claims." 29 C.F.R. § 2560.503-1(e).  The regulation "requires notice of an adverse benefit

determination within a reasonable time with a "written or electronic notification" that sets forth the

specific reasons for the adverse determination, references the specific plan provisions, and

describes additional material necessary and the plan's review procedures; further, the regulation

provides that "[e]very employee benefit plan shall establish and maintain a procedure by which a

claimant shall have a reasonable opportunity to appeal an adverse benefit determination" and sets

forth specific provisions regarding timing and opportunities for claimants' comments and access.  29

C.F.R. § 2560.503-1(b)-(j).  Additionally, reasonable claims procedures should "not contain any

provision, and [should not be] administered in a way, that unduly inhibits or hampers the initiation or

processing of claims for benefits." 29 C.F.R. § 2560.503-1(b)(3).

Defendants argue that the plaintiffs should have exhausted their administrative remedies by

calling "Customer Service" to complain about the overcharges.  However, defendants have not

shown how the "Customer Service" process, which applies to complaints about "a person, a service,

the quality of care, choice of or access to providers, provider network adequacy or contractual

benefits," is unambiguously applicable to exhaustion of claims regarding prescription drug

overcharges.  In ruling on this motion to dismiss for failure to exhaust, the Court is mindful that

defendant bears the burden of proof on this affirmative defense.  See Hardaway v. Hartford Public

Works Dep't., 879 F.3d 486, 490-491 (2d Cir. 2018) (defendant bears the burden of proof on

affirmative defense).  Accordingly, the Court should not resolve the ambiguity as to whether plaintiffs'

claims should have been exhausted through the Customer Service procedure.

Plaintiffs have alleged plausible claims that they complied with the claim procedure relevant

to prescription drugs, received their benefit of the prescription drugs, and that the pharmacy received

the payment for the charges.  At a minimum, plaintiffs have plausibly alleged that they did not

receive notice of an adverse benefits determination that complies with the DOL regulation; that

defendants administered the claims procedure in a way that inhibited or hampered plaintiffs' ability to

initiate a claim procedure to recover the inflated cost of the prescription drugs; and that defendants

did not establish a reasonable claims and appeals procedure in compliance with DOL regulations

relevant to their overcharge claims. 3  Defendants have failed to prove as a matter of law that

plaintiffs' claims are barred due to failure to satisfy their administrative remedies. The Court will allow

plaintiffs' claims to proceed beyond the motion to dismiss.  The Courts' consideration of defendants'

affirmative defense of exhaustion is more appropriate on summary judgment.

**ERISA Breach of Fiduciary Duty:  Counts Two, Three, Four, Five, Six and Seven**

Defendants maintain that plaintiffs' counts two through seven--which all assert ERISA breach

of fiduciary duty--should be dismissed for failure to establish any plausible fiduciary duty under

ERISA.  Defendants maintain that neither Cigna nor OptumRx were acting as fiduciaries when

engaging in the plan design decisions and business conduct alleged to be in violation of ERISA.

Congress intended that the term "fiduciary" be broadly construed.  <u>LoPresti v. Terwilliger</u>,

126 F.3d 34, 40 (2d Cir. 1997).  A person or entity is a fiduciary under ERISA if:  (1) that person or

entity exercises any discretionary authority or discretionary control respecting management of such

plan; (2) exercises any authority or control respecting management or disposition of its assets; or (3)

has any discretionary authority or discretionary responsibility in the administration of such plan.  29

U.S.C. § 1002(21)(A).   An entity "may be an ERISA fiduciary with respect to certain matters but not

_____

3 Accordingly, the Court need not consider plaintiffs' argument as to exhaustion futility.

others." <u>Patrico v. Voya Financial, Inc.</u>, 2017 WL 2684065, at *2 (S.D.N.Y. June 20, 2017).

Plaintiffs argue that, pursuant to contracts between Cigna and the employers, defendants exercised discretionary authority concerning computation of payments under the plans; that regardless of any specific grant of fiduciary authority, defendants exercised authority or control over the management of plans by dictating the amount pharmacies charged patients for prescription drugs, and by requiring pharmacies to collect the Spread; that defendants exercised discretion to set and take their own compensation for services performed by dictating Spread and taking Clawbacks; and that defendants exercised authority or control over plan assets.

<u>Discretionary Authority and Control as to Computation of Benefits</u>

The complaint alleges that defendants went beyond any ministerial action by disregarding the plan terms to charge excessive cost-sharing amounts. Defendants counter that the amount of cost-sharing for prescription drugs was calculated by the terms of the plan.

Generally, an entity that has discretion to determine the amount of benefits due and payment of claims is a fiduciary. <u>See</u> <u>Sun Life Assur. Co. of Canada v. Diaz</u>, 2015 WL 1826088, at *3 (D. Conn. April 22, 2015). Courts have found plausible fiduciary allegations of fiduciary status based on a defendant entity's claim administration relative to a discount scheme that caused insureds to pay

more than contemplated by the plan terms.  See Everson v. Blue Cross and Blue Shield of Ohio, 898

F. Supp. 532, 540 (N.D. Oh. 1994) (finding Blue Cross Blue Shield had discretionary authority

regarding claims and negotiation with providers regarding charges that it would pay under terms of

plan); see also In re Express Scripts, Inc., 2008 WL 1766777, at *9 (E.D. Mo. Feb. 6, 2008) (PBM

was hired to assume discretionary aspects relating to management and administration of

prescription drug benefits; PBM directed payment of prescription drug claims, and negotiated for

discounts, kickbacks and rebates.).4

Plaintiffs have asserted that Cigna was granted by contract discretionary authority regarding

"the computation of any and all benefit payments" including prescription drug benefits; that Cigna

delegated to OptumRx exercise of its fiduciary duties concerning prescription drug benefits; and that

defendants' discretion to compute "any and all benefit payments" allows them to determine the

insureds' cost-sharing payments.  Plaintiffs argue that defendants Cigna and OptumRx, as its agent

---

[4] In its brief, Cigna states that it contracts with OptumRx to provide a network of retail pharmacies; that this contract dictates the rates that Cigna must pay to OptumRx for prescription drugs; that OptumRx negotiates with retail pharmacies the terms and rates that it will pay to the retail pharmacies participating in the network; and that the network pharmacies submit the participant claims for processing. Plaintiff maintains that, in accordance with the pharmacy provider manual, OptumRx exercises discretion as to how much pharmacies "must charge" and "shall" collect from patients.

or delegate, exercised discretionary control over the management of the plans by determining the amount pharmacies charged patients for prescription drugs, and by requiring pharmacies to charge more than required under the plan; and that defendants' deviation from the plan terms constituted an exercise of fiduciary discretion related to benefits.

In <u>UnitedHealth Group</u>, the Court found that the defendants did not act as fiduciaries where the complaint "alleged 'instantaneous' calculations, based on plan terms, and relay of those calculation to pharmacies…." 2017 WL 6512222, at *9. <u>UnitedHealth</u> Group went on to explain: "Plaintiffs do not allege facts demonstrating that Defendants had discretion over the instantaneous calculations they were performing, except to the extent that Plaintiffs allege Defendants did not apply the correct calculations. But if calculations may be construed as an exercise of discretion solely on the basis that the calculations were incorrect under the terms of the plan, any mistake could transform ministerial conduct into fiduciary act." <u>Id.</u> In the instant case, plaintiffs do not allege that defendants made incorrect or mistaken calculations. Instead, they have alleged that defendants' exercise of discretion <u>violated</u> the plan terms by instituting the charging of cost-sharing payments greater than the amount paid to the pharmacy.

For purposes of ruling on this motion to dismiss, the Court finds that plaintiffs have asserted

a plausible claim of fiduciary status based on defendants' exercise of discretion as to computation of benefits that violated the plan terms.

Discretion as to Compensation

Plaintiffs argue that defendants are fiduciaries due to their control over factors that determined their own compensation. Specifically, plaintiffs maintain that defendants act as fiduciaries because (1) they determine the amount of Spread and Clawbacks; and (2) defendants were not authorized to charge Spread and to take Clawbacks as additional compensation.

An entity may become a fiduciary where it has discretionary control over factors--such as the processing of claims--that will affect the amount of its compensation. Hannan v. Hartford Financial Servs, Inc., 688 Fed. Appx. 85, 89 (2d Cir. 2017). A service provider that enters into an agreement with a plan that affords the service provider the ability to control the factors determinative of the amount of its compensation is an ERISA fiduciary with respect to that compensation. F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987). By contrast, an agent with a contractually-establish commission rate is generally not a fiduciary. United States v. Glick, 142 F.3d 520, 528 (2d Cir. 1998).

At paragraphs 106-107, the complaint alleges that defendants have (1) discretion to

determine the amount of Spread, and (2) that by taking Clawbacks, they thereby exercised

discretion in setting their compensation. Defendants counter that plaintiffs describe business

operations that are not plan-specific administrative functions. However, for purposes of ruling on a

motion to dismiss, the Court finds that plaintiffs have alleged that defendants acted as fiduciaries by

dictating the amount of Spread to charge that would ultimately represent a Clawback to compensate

defendants. An entity's exercise of authority that is not contemplated by the plan can confer

fiduciary status. See In re Express Scripts, 2018 WL 339946, at *18 (S.D.N.Y. Jan. 5, 2018)

(misinterpretation of plan terms and implementation in violation of plan terms may give rise to

fiduciary status); Peters v. Aetna, Inc., 2016 WL 4547151, at *10 (W.D.N.C. August 31, 2016)

(allegations of false statements related to inflated co-insurances charges were sufficient to state a

claim that defendants breached a fiduciary duty); Mogel v. UNUM LIfe Ins. Co. of America, 547 F.3d

23, 25 (1st Cir. 2008) (finding that defendant's act to deliver funds in manner contrary to policy terms

was not ministerial but an act of fiduciary discretion). Accordingly, the Court finds that plaintiffs have

plausibly alleged that defendants exercised discretion over factors that determined their

compensation.

<u>Discretion as to Plan Assets</u>

Defendants challenge plaintiffs' assertion that defendants have fiduciary status based on exercise of authority and control over plan assets. Defendants maintain that participant cost-sharing payments and Spread amounts recouped by the pharmacies cannot be considered to be plan assets.

Although ERISA does not define plan assets, courts have broadly construed the term. <u>See</u> <u>In re Regions Morgan Keegan ERISA Litig.</u>, 692 F. Supp. 2d 944, 960 (W.D. Tenn. 2010) (citing cases). The Department of Labor has advised that plan assets should be identified based on "ordinary notions of property rights." <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98, 105 (2d Cir. 2011). In an advisory opinion, the DOL indicated that plan assets "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan as well as the actions and representations of the parties involved." <u>See</u> <u>Carver v. Bank of New York Mellon</u>, 2017 WL 1208598, at *6 (S.D.N.Y. March 31, 2017). In <u>Faber</u>, the Second Circuit expressed that the DOL's advisory opinion is entitled to deference. 648 F.3d at 105; <u>Carver</u>, 2017 WL 1208598, at *6.

Plaintiffs advance the "functional approach" articulated by this Court in <u>Haddock v. Nationwide</u>

Financial Services, Inc., 419 F. Supp.2d 156, 170 (D. Conn. 2006) (finding a reasonable trier of fact

could find that defendant received revenue sharing payments from mutual funds as result of its

fiduciary status in controlling the funds available as investment options). Haddock directs that "plan

assets" include "items a defendant holds or receives: (1) as a result of its status as a fiduciary or its

exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or

beneficiaries." Id.

Here, plaintiffs assert that defendants are fiduciaries under the "functional approach"

because they imposed Spread and took Clawbacks due to their authority and control over the

management of the insurances policies, ASO contracts, and the prescription drug process at the

expense and injury to the plan beneficiaries. In light of the Second Circuit's deference to DOL

regulation as expressed in Faber, the Court will consider whether defendants have an ownership

interest—beneficial or otherwise--in the cost-sharing payments pursuant to "ordinary notions of

property rights." A "beneficial owner" has been defined as "1. one recognized in equity as the owner

of something because use and title belong to that person, even though legal title may belong to

someone else; esp., one for whom property is held in trust—Also termed *equitable owner*. 2. A

corporate shareholder who has the power to buy or sell the shares, but who is not registered on the

corporation's books as the owner." <u>Black's Law Dictionary</u> (10th ed. 2014). Insurance plans

"generally have no right to the recoupment of copayments and coinsurance paid to providers," and

thus "such payments do not, absent an arrangement to the contrary, constitute plan assets, but

instead merely the out-of-pocket expenses of plan members." <u>UnitedHealth Group</u>, 2017 WL

6512222, at * 10.

Plaintiffs assert that defendants have a beneficial interest in the participants' cost-sharing

payments, which pay for a portion of the plans' prescription drug benefits. However, plaintiffs have

not alleged that the plan has the right to the recoupment of the copayments or Clawbacks. In fact,

the Spread is alleged to be unauthorized under the plan terms. The Court finds that the cost-sharing

payments do not constitute assets under ordinary notions of property rights. However, as previously

discussed earlier in this decision, fiduciary status can be imposed on an entity that fails to abide by

plan terms. <u>Faber</u>, 648 F.3d at 107.

Plaintiffs also argue that the plan sponsors retained defendants to manage and administer

prescription drug benefits pursuant to the ASO agreements and insurance policies, and that these

agreements are plan assets through which the plans provide benefits. Courts have held that an

insurance policy or contract may also be considered to constitute a plan asset. <u>Fechter v.</u>

Connecticut Gen. Life Ins. Co., 800 F. Supp. 182, 199-200 (E.D. Pa 1992). In UnitedHealth Group, the Court found that plaintiffs had failed to plausibly allege that any agreements constituted plan assets absent allegations that defendants had exercised authority over the agreements or used their control over the agreements for their own benefit at the expense of insureds or the plan. 2017 WL 6512222, at *11. Here, plaintiffs have alleged that defendants used the agreements to institute the Spread and Clawbacks that are allegedly in violation of the plan terms. Thus, construing all inferences most favorably to plaintiffs, the Court finds that plaintiffs have alleged plausible fiduciary status because defendants have exerted their discretionary control, albeit allegedly unauthorized, over the agreements to impose the Spread and Clawbacks that resulted in the inflated prescription drug charges. See Mogel, 547 F.3d at 25.

Plan Design

Defendants contend that decisions about the challenged cost-sharing payments are not fiduciary acts because setting cost-sharing amounts are determined by the plan terms.

ERISA fiduciary requirements do not apply to decisions "regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." Hughes Aircraft v. Jacobson, 525 U.S. 432, 444 (1999). A fiduciary does not

exercise discretion when its conduct adheres to a specific contract term. Hannan v. The Hartford Fin. Serv. Inc., 2016 WL 1254195, at *3 (D. Conn. March 29, 2016); see also Larson v. United Healthcare Ins. Co., 723 F.3d 905, 917 (7th Cir. 2013) (plaintiffs could not challenge as fiduciary breach copayments that were required by allegedly illegal policy terms).

Plaintiffs allege that defendants have inflated cost-sharing payments in contravention of the plan terms, which provide that patients should not pay more than the pharmacy is paid for a drug. Consistent with the foregoing discussion regarding defendants' conduct that was not authorized by the plan terms, the Court finds that plaintiffs have alleged plausible breach of fiduciary duty claims that do not concern plan design. The Court will leave plaintiffs to their proof that defendants have breached their fiduciary duties with respect to the alleged inflated cost-sharing payments.

Negotiation of contracts

OptumRx argues that negotiation of drug prices, payment terms with pharmacies, and communication of copayment information to pharmacies constitute ministerial, non-fiduciary duties. See Chicago District Council of Carpenter Welfare Fund v. Caremark, Inc., 474 F.3d 463, 475 (7th Cir. 2007) (concluding that PBM was not fiduciary for purposes of negotiating prices with drug retailers).

Plaintiffs respond that they do not assert that OptumRx was a fiduciary when it negotiated drug prices to be paid to pharmacies. As previously explained, plaintiffs maintain that defendants acted as fiduciaries by setting inflated cost-sharing payments that violated the plan terms. The Court will leave plaintiffs to their proof.

The Court will deny the motion to dismiss for failure to state plausible claims that defendants exercised any fiduciary duty.

<u>Counts Two and Three</u>

Plaintiff alleges that defendants engaged in prohibited transactions based upon the Spread charged and Clawbacks taken in connection with providing prescription drug coverage services to the plans. Defendants seek dismissal of counts two and three, which assert violations of ERISA's prohibited transactions enumerated in ERISA § 406(a)(1) (C)-(D) and §406(b) respectively. ERISA § 406(a)(1)(C)-(D) prohibits a fiduciary from knowingly causing a benefit plan to engage in a transaction such as furnishing of goods, services or facilities or a transfer of plan assets with a "party in interest." A party in interest is, <u>inter alia</u>, any fiduciary, service provider, or plan sponsor. 29 U.S.C. § 1002(14).

Section 406(b)(1)-(3) prohibits a fiduciary from dealing with plan assets "in his own interest or

for his own account;" and from "receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

Section 406(b) codifies an ERISA duty of loyalty and should be broadly construed. <u>Lowen v. Tower Asset Management</u>, 829 F.2d 1209, 1213 (2d Cir. 1987).

Defendants argue that plaintiffs have failed to identify any prohibited plan transaction; and that plaintiffs cannot rely upon the contractual Clawbacks, because the plans are not parties to the Optum-Retail pharmacy agreement. Plaintiffs point out that the Spread and Clawbacks--rather than the pharmacy agreements--are alleged as the prohibited transactions. Here, plaintiffs assert that defendants received Clawbacks due to their authority and control over the management of the insurances policies, ASO contracts, and the prescription drug process at the expense and injury to the plan beneficiaries.

The Court finds that plaintiffs have stated plausible violations of ERISA § 406(a) and (b). As previously discussed, the Court has found that defendants acted as fiduciaries with regard to the implementation of the Spread and Clawbacks. With regard to count two, plaintiffs have plausibly alleged that defendants are fiduciaries engaged in furnishing prescription drug benefit services that resulted in unauthorized overcharges to insureds with Clawbacks to Cigna in violation of Section

406(a).  As to count three, plaintiffs have plausibly alleged that defendants had an interest adverse

to those of the participants when they charged Spread and took Clawbacks in connection with the

prescription drug transactions in violation of Section 406(b)(1)-(3).  The Court will leave plaintiffs to

their proof on summary judgment.

<u>Count Four</u>

In count four, plaintiffs allege that defendants have breached their fiduciary duties of loyalty

and prudence by setting undisclosed amounts of Spread and taking Clawbacks in violation of ERISA

§ 404(a)(1), which provides that "a fiduciary shall discharge his duties with respect to the plan solely

in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing

benefits to participants and beneficiaries; and (ii) defraying reasonable expenses of administering

the plan…." 29 U.S.C. § 1104(a)(1).

Defendants maintain that this breach of fiduciary duty claim is not plausible because the

alleged cost-sharing arrangement is not illegal; and because defendants have no duty to disclose

the specific financial arrangements concerning defendants' charging of Spread and taking

Clawbacks.

ERISA § 404(a)(1)(B) provides that a fiduciary must act with the "care, skill, prudence and

diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(1)(a)(B). Proper execution of fiduciary duties requires that fiduciary decisions "be made with an eye single to the interests of the participants and beneficiaries." Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982). An ERISA fiduciary has a duty to avoid intentional material misrepresentations in plan administrator communications with beneficiaries about the plan terms. See Varity v. Howe, 516 U.S. 489, 506 (1996); Bell v. Pfizer, 626 F.3d 66, 74 (2d Cir. 2010). A fiduciary must comply with its duty of care by providing accurate and complete written explanations of the benefits that are available to the plan participants and beneficiaries. Osberg v. Foot Locker, Inc., 138 F. Supp. 3d 517, 552 (S.D.N.Y. 2015); Peters, 2016 WL 454151, at *10. Pursuant to ERISA, a fiduciary has a duty to disclose "material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection." Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1182 (3d Cir. 1996). "[A]ny benefit to the plan's fiduciary must be incidental to a decision that is otherwise independently in the best interests of the plan participants." Hugler v. Byrense, 247 F. Supp. 3d 223, 230 (N.D.N.Y. 2017).

As previously stated, the complaint implicates plausible breach of fiduciary duties, including

the duty based on the fiduciary's profiting from imposing Spread and taking Clawbacks.  See

Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 415 (3d Cir. 2013) (duty of loyalty bars

fiduciary from profiting); and the duty not to misrepresent that the actual practices of the cost-sharing

payments for prescription drugs differ from the plan terms.  See McConocha v. Blue Cross and Blue

Shield of Ohio, 898 F. Supp. 545 (N.D. Ohio 1995) (defendant violated duty not to mislead when it

failed to inform insureds about discounts that impacted percentage of copayment obligation.).  The

Court finds that plaintiffs have stated plausible breach of fiduciary duty claims in count four.

Count Five

In count five, plaintiffs allege that defendants violated ERISA § 702(b), which prohibits a

group health plan or insurer from discriminating against an individual by requiring the "individual (as

a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution

which is greater than such premium or contribution for a similarly situated individual enrolled in the

plan on the basis of any health status-related factor," including a "medical condition." 29 U.S.C. §

1182(b)(1).  At paragraph 208 of the complaint, plaintiffs assert that defendants have "required plan

participants and beneficiaries who have medical conditions that require prescription medications that

are subject to defendants' undisclosed excessive 'Spreads' and "Clawbacks" to pay greater

premiums and contributions than those participants and beneficiaries who do not need prescription

medications that are subject to Defendants' undisclosed excessive 'Spreads' and 'Clawback' for their

health benefits."

Defendants counter that their conduct is not proscribed by Section 702, because the cost-

share amount for prescription drugs is calculated in the same manner regardless of medical

condition. According to 29 C.F.R. § 2590.702(b)(2)(1)(B) "benefits provided under a plan… must be

uniformly available to all similarly situated individuals." The regulation specifies that a plan "may

require the satisfaction of a deductible, copayment, coinsurance, or other cost-sharing requirement

in order to obtain a benefit if the limit or cost-sharing requirement applies uniformly to all similarly

situated individuals and is not directed at individual participants or beneficiaries based on any health

factor of the participants or beneficiaries."

At paragraph 86, plaintiffs allege that Spread and Clawbacks apply most frequently on

widely-used low-cost drugs. At paragraph 209, plaintiffs allege that plan participants who need

medications subject to defendants' undisclosed excessive "Spreads" were required to pay hidden

additional premium or contributions in the form of "Clawbacks" in order to use their benefits as

enrollees.  Even construed most liberally, the Court finds that plaintiffs have not alleged that the

cost-sharing provisions are not applied uniformly to all participants or beneficiaries who need widely-

used or low-cost prescription drugs, or that insureds with specific medical conditions have been

targeted.  Accordingly, the Court will grant the motion to dismiss as to count five.

Counts Six and Seven

In counts six and seven, plaintiffs have alleged that defendants are liable as co-fiduciaries or

non-fiduciaries based on the knowing participation in breaches of fiduciary duties.  Consistent with

the prior discussion relative to counts two, three, and four, the Court finds that plaintiffs have

pleaded plausible claims of liability in these counts based on defendants' alleged knowing

participation in conduct by a fiduciary that constituted a breach of fiduciary duty.  See Harris Trust

Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241 (2000).

Relief Available

Defendant OptumRx maintains that counts two through seven should be dismissed because

(1) ERISA § 502(a)(2) claims must be seek relief on behalf of the ERISA plan rather than on behalf

of an individual; and (2) the ERISA § 502(a)(3) claims seek equitable relief that is duplicative of

plaintiff's claim for benefits sought under ERISA § 502(a)(1)(b).

ERISA claims under Section 502(a)(2) do not provide for a remedy to individual injuries, and

any relief sought by plaintiffs inures to the plan. <u>Leber v. Citigroup 401(k) Plan Investment</u>

<u>Committee</u>, 2017 WL 5668450, at *1 (S.D.N.Y. Nov. 27, 2017).  Section 502(a)(2) of ERISA, 29

U.S.C. § 1132(a)(2), authorizes ERISA plan participants to seek "appropriate relief" under ERISA §

409; it provides that plan fiduciaries who breach their duties "shall be personally liable to make good

to such plan any losses to the plan resulting from each such breach," shall "restore to such plan any

profits of such fiduciary," and "shall be subject to such other equitable or remedial relief as the court

may deem appropriate…."  29 U.S.C. § 1109(a).

Here, plaintiffs are not seeking personal relief but seek the remedies of disgorgement of

unjust profits; an injunction to remove defendants and appoint new fiduciaries relevant the ERISA

plans; and disclosures to prevent further misrepresentations.  The Court finds that plaintiffs have

pleaded plausible claims under ERISA § 502(a)(2).

As to defendants' second argument, at the motion to dismiss phase, courts generally allow a

party to pursue claims under both ERISA § 502(a)(1) and § 502(a)(3), because it is not yet clear that

monetary benefits under Section 502(a)(1)(B) will provide plaintiffs with a sufficient remedy.  <u>New</u>

<u>York State Psychiatric Ass'n, v. UnitedHealth Group.</u>, 798 F.3d 125, 134 (2d Cir. 2015).   The Court

will deny the motion to dismiss on this basis.

## C.     RICO Counts Eight , Nine, and Ten

Plaintiffs allege that defendants are liable under the civil RICO statute, 18 U.S.C. § 1962(c), which provides that it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…."

<u>Count Eight</u>

In count eight, plaintiffs allege that Cigna, as a "person" under RICO, was associated with the RICO enterprises consisting of Argus and OptumRx; that CIGNA participated in the conduct of the Argus and OptumRx Enterprises through contracts and agreements; and that Cigna directed OptumRx and Argus Enterprises to misrepresent intentionally the cost-sharing amount that plaintiffs were required to pay to receive prescription drugs and directed them to provide Cigna with the Clawback of the excess charges.  As the predicate acts, plaintiffs allege that Cigna directed the furtherance of its Clawback scheme through mail and wire fraud.  The complaint enumerates several dates on which the Cigna directed the RICO Enterprises to conduct the asserted Clawback scheme.

Plaintiffs allege that the racketeering activities caused injury to business and property due to overpayments for medically necessary prescription drugs.

Cigna asserts that it does not "conduct" the affairs of OptumRx or Argus; that alleged violations of the plan terms do not amount to mail or wire fraud that could constitute predicate acts in support of a RICO claim; and that plaintiffs have failed to meet the threshold particularity standard of Rule 9(b) of the Federal Rules of Civil Procedure.

<u>Conduct of the Affairs of the RICO Enterprises</u>

Cigna argues that plaintiffs have failed to plausibly allege that Cigna conducted or participated in the affairs of the alleged enterprises, OptumRx or Argus.

A RICO "enterprise" must be separate and distinct from both the "person" conducting the racketeering activities of the enterprise. <u>Riverwoods Chappaqua Corp. v. Marine Midland Bank</u>, <u>N.A.</u>, 30 F.3d 339, 244 (2d Cir. 1994). Thus, a corporate entity cannot be the "enterprise" and the "person" engaged in the activity prohibited under RICO. <u>Bennett v. U.S. Trust Co. of N.Y.</u>, 770 F.2d 308, 315 (2d Cir. 1985). A RICO "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 19639(3). "A RICO enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of

individuals associated in fact although not a legal entity." <u>DeFalco v. Bernas</u>, 244 F.3d 286, 306 (2d

Cir. 2001).  The RICO person must "participate in the operation or management" of the enterprise,

although RICO liability is not limited to those with a formal position in the enterprise.  <u>United States</u>

<u>v. Praddy</u>, 725 F.3d 147, 155 (2d Cir. 2013).  The court should focus on the degree of control

exerted over an enterprise rather than the amount of a defendant's involvement in the enterprise.

<u>Vickers Stock Research Corp. v. Quotron Systems, Inc.</u>, 1997 WL 420265, at *4 (S.D.N.Y.).

At the pleading stage, the "operation or management" test is generally a "relatively low

hurdle for plaintiffs to clear…."  <u>First Capital Asset Mgmt v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d

Cir. 2004).  An outsider not involved with daily operation of an enterprise may satisfy the operation

and control test through bribery "because the insider taking the bribes acts under the direction of the

outsider…" <u>Department of Economic Development v. Arthur Anderson</u>, 924 F. Supp. 449, 466-67

(S.D.N.Y.1996).  A defendant who has bribed an official "can rightly be seen as 'participating' in the

operation and management of the company[;]" however, "it is considerably less clear whether that

characterization properly applies when an outsider has merely defrauded a company."  <u>Allstate Ins.</u>

<u>Co. v. Seigel</u>, 312 F. Supp. 2d 260, 275 (D. Conn. 2004).

On a motion to dismiss, a court may be unable to "decide definitively" that a defendant did

not participate in the enterprise's affairs, directly or indirectly, through a pattern of racketeering activity.  See id. at 276.  In Vickers, the district court granted summary judgment on a RICO claim based on lack of operation or control where the parties had worked closely to realize contractual goals but did not have a partnership or joint venture agreement and did not consider sharing profits or losses in any way.  1997 WL 420265, at *4.

Cigna maintains that plaintiffs' allegation that it conducts the affairs of Argus and OptumRx through arm's-length business dealings fails the "operation or management" test.  Cigna contends that its RICO liability depends upon a showing that it conducted or participated in the conduct of OptumRx's or Argus's affairs.  However, plaintiffs have alleged that Cigna designed the Clawback scheme, that it required OptumRx and Argus to misrepresent the cost-sharing amounts, and that it directed OptumRx and Argus to forward the Clawbacks.  Taking the allegations to be true, the Court cannot hold as a matter of law that plaintiffs have failed to allege that Cigna directly or indirectly participated in the alleged enterprises' affairs through racketeering activity.  The motion to dismiss will be denied on this basis.

<u>Predicate Acts</u>

Consistent with Federal Rule of Civil Procedure 9(b), a plaintiff must plead with particularity that defendants knowingly participated in a scheme to defraud and used mail or wire communication in interstate commerce in furtherance of the scheme.  <u>Chanyil v. Gulati</u>, 169 F.3d 168, 170-1 (2d Cir. 1999).  Generally, allegations of predicate mail and wire communication use should specify the asserted fraudulent statements, the identity of the speaker, the state where the statements were made and why the statements were fraudulent.  <u>Id.</u>  However, courts have also applied a different standard for claims alleging that the mail or wire fraud was used in furtherance of a "master plan to defraud" without alleging that the communications contained false or misleading information.  <u>In re Sumitomo Copper Litig.</u>, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).  In such cases, Rule 9(b) requires that the plaintiff delineate with adequate particularity the specific circumstances constituting the overall fraudulent scheme.  <u>Tardibuono-Quigley v. HSBC Mortgage Corp.</u>, 2017 WL 1216925, at *9 (S.D.N.Y. March 30, 2017).

Defendant Cigna maintains that plaintiffs' conclusory allegations plead neither a scheme to defraud nor the requisite scienter or fraudulent intent.  Cigna asserts that plaintiffs' claims of entitlement to prescription drugs at a lower cost is not actionable under RICO; that the cost-sharing

at issue is not unlawful; and that a breach of contract is not a RICO violation.

In the RICO context, the statement upon which the fraud is predicated must be more than a false promise by a party to a contract that the party will fulfill the terms of the agreement. Bridgestone/Firestone, Inc. v. Recovery Credit Servs, Inc., 98 F. 3d 13, 19-20 (2d Cir. 1996).  In U.S. ex rel O'Donnell v. Countrywide Home Loans, Inc., a case relied upon by Cigna, the Second Circuit observed that a fraud claim cannot be based solely upon a breach of contract; further, a party claiming fraud based on fraudulent misrepresentations made in a contract must prove fraudulent intent at the time of the contract execution.  822 F.3d 650, 659 (2d Cir. 2016).

The Court finds that plaintiffs have plausibly alleged more than an entitlement to lower-cost prescription drugs or breach of contract.  Plaintiffs allege that Cigna created a mechanism through which Cigna could obtain additional monies beyond what plaintiffs should have paid under their plan for prescription drugs.  Cigna allegedly designed and entered into the Clawback scheme with the intent to defraud insureds who paid for excessive prescription drug costs.  The complaint plausibly alleges that defendant Cigna acted with scienter by alleging that it intentionally sought to charge excess amounts for prescription drugs and that it required the pharmacies to conceal from the insureds the amounts of the prescription drug costs.

<u>Count Nine Against OptumRx</u>

In count nine, plaintiffs allege that OptumRx, as a RICO "person," was associated with the OptumRx Pharmacy Enterprise, which consists of OptumRx and pharmacies in OptumRx's pharmacy networks or solely of such pharmacies; that OptumRx participated in the conduct of the OptumRx Pharmacy Enterprise's affairs through contracts and agreements to defraud plaintiffs by overcharging for prescription drug costs; and that OptumRx committed RICO predicate acts of "racketeering activity" in furtherance of its Clawback scheme through mail and wire fraud. The complaint enumerates several dates on which OptumRx allegedly directed the OptumRx Pharmacy Enterprise to conduct the asserted Clawback scheme. Plaintiffs allege that the rackeeterring activities caused injury to business and property due to overpayments for medically necessary prescription drugs.

OptumRx argues that the RICO claim fails as a matter of law because plaintiffs have failed to allege any predicate acts of fraud in the conduct of the OptumRx Pharmacy Enterprise; that plaintiffs have failed to plead the predicate acts with particularity; and that plaintiffs have pleaded neither the existence of the OptumRx Pharmacy Enterprise nor OptumRx's control of that enterprise.

<u>RICO Enterprise</u>

OptumRx argues that the plaintiffs have failed to allege that OptumRx and the pharmacies had a common purpose to engage in a particular fraudulent course of conduct and that they worked together to achieve such purposes as required to establish a plausible enterprise.  OptumRx asserts that the allegations indicate that the pharmacies were forced into participating in the Clawback scheme rather than acting with shared a common purpose with OptumRx, and that the allegations fail to establish that the individual pharmacies worked in concert to defraud plan participants. OptumRx characterizes the allegations as describing a "hub and spoke" enterprise, with OptumRx as the hub and the pharmacies as the spokes, which is generally insufficient to constitute a RICO enterprise absent concerted effort or cooperation among the spokes.  <u>See</u> <u>D'Addario v. D'Addario</u>, 2017 WL 1086772, at *19 (D. Conn. March 22, 2017) (citing cases finding insufficient allegations that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant).

Plaintiffs counter that they need only plead a common purpose between OptumRx and the OptumRx Pharmacy Enterprise, and that they need not allege that there was a common fraudulent purpose.  Plaintiffs point out that Supreme Court precedent holds that RICO broadly defines

"enterprise," and that a RICO enterprise includes a group associated for a common purpose of engaging in a course of conduct.  See Boyle v. United States, 556 U.S. 938, 944 (2009).

An association-in-fact enterprise must comprise (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose.  Tooker v. Guerrrera, 2017 WL 3475994, at *8 (E.D.N.Y. Aug. 11, 2017). The complaint must allege both interpersonal relationships and a common interest to establish that the alleged group functions as a continuing unit.  Abbott Labs v. Adelphia Supply USA, 2017 WL 57802, at *3 (E.D.N.Y. Jan 4, 2017).  In determining whether a plaintiff has alleged a plausible association-in-fact enterprise, courts consider the "hierarchy, organization, and activities of the alleged association to determine whether its members functioned as a unit."  Tooker, 2017 WL 3475994, at *7.  The Second Circuit requires that the members of an association must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes" for an association of entities or individuals to constitute an enterprise.  D. Penguin Bros. Ltd v. City Nat. Bank, 587 Fed. Appx. 663, 667 (2d Cir. 2014); Goodman by Goodman v. Bremby, 2017 WL 4169427, at *8 (D. Conn. Sept. 20, 2017).  To establish the second prong regarding relationships, plaintiff must demonstrate the relationships between the various members

and their roles in the alleged RICO scheme.  <u>Abbott Labs</u>, 2017 WL 57802, at *3.  As to the third

prong of longevity, an enterprise must have had "affairs" of sufficient duration to permit an associate

to "participate" in those affairs through "a pattern of racketeering activity."  <u>Boyle</u>, 556 U.S. at 947.

<u>Boyle</u> provided that "existence of an enterprise is an element distinct from the pattern of

racketeering," although "evidence used to prove the pattern of racketeering activity and the evidence

establishing an enterprise may in particular cases coalesce."  <u>Id.</u>

The complaint alleges that the defendants forced network pharmacies to charge patients

unauthorized and excessive amounts and that the pharmacies were prevented from disclosing the

overcharges to the insureds.  However, plaintiffs have not alleged that the individual pharmacies of

the OptumRx Pharmacy Enterprise shared a common fraudulent purpose and worked together as a

continuing unit to achieve such purposes.

Plaintiffs' allegations do not indicate that the pharmacies had a relationship to work as

continuing unit.

If each act of fraud is equally effective without the perpetration if any other act of fraud—even
if perhaps effective to a far lesser or different magnitude—then there is no RICO enterprise.
If each act of fraud is not effective without the other acts of fraud, then a RICO enterprise
exists.

<u>United States v. Chavez</u>, 944 F. Supp. 2d 260, 275 (S.D.N.Y. 2013).

Plaintiffs argue that the pharmacies agreed to discounted prices in exchange for the benefit of being part of the plan network, that they knowingly participated in the network, and that they maintained a "symbiotic dependency" to implement and conceal the Clawback Scheme.  Plaintiffs maintain that they have plausibly alleged that the pharmacy network, which allegedly "functions as a continuing, cohesive unit," constitutes a unifying rim to the hub and spoke enterprise.  Nevertheless, each pharmacy's alleged acts of overcharging and failure to disclose the excessive charge occurred independently from each similar act by the other pharmacies.  The alleged participation in the network and "symbiotic dependency" derives from each pharmacy's agreement or relationship with OptumRx; plaintiffs do not allege that any of the pharmacies had relationships, agreements, or collaborative communications amongst each other.   Within the Second Circuit, courts have found that parallel conduct by separate actors is insufficient to establish an association-in-fact RICO enterprise.  Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017) (citing cases).

The motion to dismiss will be granted for failure to allege a viable association-in-fact.

Count Ten:  RICO Conspiracy

In count ten, plaintiffs allege that defendants conspired with themselves or other unnamed health insurance companies and PBMs to engage in the Clawback scheme in violation of RICO. Defendants argue that plaintiffs have failed to establish allegations of a plausible RICO conspiracy between Cigna and OptumRx pursuant to 18 U.S.C. § 1962(d), which provides that it is "unlawful for any person to conspire to violate any of the provisions of" 18 U.S.C. § 1962(a), (b) or (c). Specifically, defendants assert that plaintiffs' conspiracy count fails because plaintiff has not sufficiently pleaded a RICO claim under Section 1962(c).

Plaintiffs must establish (1) that defendants agreed to facilitate the operation of a RICO enterprise through a pattern of racketeering activity; and (2) that defendants agreed to commit the requisite predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise.  Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999).

In light of the foregoing discussion relevant to the RICO claim against Cigna, the Court finds that plaintiffs have alleged a plausible conspiracy between Cigna and OptumRx or other unnamed health insurance companies and PBMs, to engage in the Clawback scheme in violation of RICO. The Court will deny the motion to dismiss on this count.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS and DENIES the motions to dismiss [docs. 68 and 70] in part.  Counts five and nine are dismissed.

A motion for summary judgment should be filed prior to any motion for class certification. Within twenty-one days of this ruling's filing date, the Court instructs the parties to file a joint case management plan that outlines a schedule for any discovery required prior to the filing of a motion for summary judgment.  The parties should also agree upon a mutually convenient date for a dispositive motion deadline.

Dated at Bridgeport, Connecticut, this 12th day of March 2018

/s/Warren W. Eginton_____
Warren W. Eginton
Senior United States District Judge