UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE CIGNA CORPORATION PBM LITIGATION | No. 3:16-cv-1702-WWE-WIG (Consolidated)<br><br>May 24, 2018 |

**PLAINTIFFS' CASE MANAGEMENT SUBMISSION**

Plaintiffs submit this case management statement pursuant to the Court's Scheduling Order.  ECF 148.

### Background

This is a class action.  Plaintiffs are individuals who received prescription drug benefits through individual or group health plans issued or administered by defendants Cigna and Optum.  For many years defendants have been systemically overcharging plaintiffs for their cost-share payments:  copayments and coinsurance and deductible payments.  These overcharges occur when a plan participant's copayment or deductible payment exceeds, or coinsurance payment is not based on, the amount paid by the defendants to the pharmacies for dispensing the drug.  This is known as "Spread."  Plaintiffs seek to recover these overpayments.

Defendants' scheme is frequently described as a "clawback" scheme.  One commentator has described it as follows:

> The term "copayment" suggests that the patient and insurer are sharing the total cost of the drug – the patient pays the copayment, and the insurer pays the remaining cost.  But recent investigations have shown that on some prescription claims, the total cost of the drug is less than the patient's copayment, and the insurer or pharmacy benefit manager (PBM) keeps the difference in what is known as a "clawback."  Some pharmacists have expressed frustration that they are bound by "gag clauses" in their contracts with insurers and PBMs not to disclose to patients when they could save money by not using their insurance because of such practices.

Karen Van Nuys, Ph.D, et al., *Overpaying for Prescriptions Drugs: The Copay Clawback Phenomenon* 1 (Leonard D. Schaeffer Center for Health Policy & Economics) (March 2018).[1]

## Proceedings To Date

This action was filed on October 13, 2016. A Consolidated Complaint was filed on January 19, 2017. The defendants moved to dismiss the complaint in its entirety. On March 13, 2018, the Court denied the motion to dismiss as to as all but two of the ten counts. ECF 137. Both defendants have answered the Consolidated Complaint. ECF 145, 146. A protective order and ESI protocol have been entered. ECF 90, 91. Discovery requests have been served. Defendants produced minimal documents solely relating to the named plaintiffs' claims while the motion to dismiss was pending. After the Court denied the motion, defendants agreed to supplement their discovery, but then reversed course and stated that they would not supplement before this status conference. Yesterday, defendants advised that they would supplement before the status conference. It is unclear what the supplementation will entail.

As part of its motion-to-dismiss order, ECF 137 at 46, the court requested that the parties submit a joint case management plan and directed that the parties file a motion for summary judgment prior to any motion for class certification. The parties submitted a Stipulated Joint Case Management Plan on April 4, 2018. ECF 140. It did not include a provision for a summary-judgment motion because defendants objected to a merits determination before a ruling on class certification. For this reason, the parties separately filed memoranda addressing the Plan. ECF 141 and 144. Plaintiffs believe that it would be helpful for the Magistrate Judge to read ECF 140, 141 and 144 prior to the conference. The court has not yet entered the Stipulated Joint Case Management Plan submitted by the parties. Plaintiffs believe that the conference with

---

[1] Available at http://healthpolicy.usc.edu/documents/2018.03_Overpaying%20for%20Prescription%20Drugs_White%20Paper_v.1.pdf.

the Court should result in (1) the entry of a case management order; (2) the establishment of a process for regular supervision of discovery by the Court; and (3) a process to streamline any discovery disputes.

## Issues for Case Management Conference

In broad terms, this case raises three overarching issues.  <u>First</u>, are the defendants charging copayments/deducible payments exceeding the amount paid to the pharmacy or coinsurance payments that are not based on the amount paid to the pharmacy?  We do not understand this issue to be disputed: they are charging Spread.  <u>Second</u>, are these cost-share charges permitted under the governing plan documents?  Plaintiffs say no; defendants say yes but have not explained why.  <u>Third</u>, if plaintiffs are correct in their reading of the plan documents, which plan participants are affected and in what amounts?

Because plaintiffs' case is entirely dependent on their reading of the language in the plan documents governing copayments and coinsurance and deductible payments, we believe early adjudication of the plan language issue may be the most efficient way to proceed.  A typical plan provision provides that Cigna patients "may be required to pay a portion of Covered Expenses for Prescription Drugs." "That portion includes any applicable Copayment, Deductible and/or Coinsurance." Since "Covered Expenses" are "expenses for charges made by a Pharmacy," and a "portion" is a "part of a whole," the plans provide that a Copayment, Deductible and/or Coinsurance payment can be no more than the "charges made by a Pharmacy" pursuant to the plans. Further buttressing this interpretation, the typical plan provides: "In no event will the Copayment or Coinsurance for the Prescription Drug . . . exceed the cost paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary Charge." ECF 137 at 4-5 & n. 2.  We read these provisions to say that when the amount paid to the pharmacy is less than the maximum

copayment amount stated in the plan, for example $15, the copayment amount must be the lower amount paid to the pharmacy.[2]

Defendants apparently disagree, although they have never explained why. As reflected in our previous submission on the case management plan (ECF 141), plaintiffs believe that early resolution of the parties' dispute over the proper interpretation of the governing plan language would materially advance this litigation. Defendants do not want to address plan language until after class certification, due to one-way intervention concerns. Plaintiffs would like to explore with the Court whether there is a path to early adjudication of the plan language issues that accommodates defendants' one-way intervention concerns. ECF 144. We will be prepared to discuss various options at our May 29 conference.

Additionally, this case is one and a half years old, and virtually no class discovery has occurred. Plaintiffs have repeatedly requested that defendants produce their forms of plans for prescription drug coverage. To date, defendants have not produced a single plan other than plaintiffs' plans, arguing that plaintiffs' class definition is too broad. They have not articulated why the class definition prohibits them from identifying their forms of prescription drug coverage. They also have refused to identify what percentage of their plans are represented by plaintiffs' forms of plan. While plaintiffs have agreed to convene with defendants before the Court conference to further meet and confer, plaintiffs also look forward to discussing with the

---

[2] The only exception would be where the pharmacy is offering a Usual and Customary charge, "the Pharmacy retail cash price, less all applicable customer discounts," that is below the agreed discounted network reimbursement rate negotiated by defendants with the pharmacy. While we doubt this would regularly or even ever occur, this provision recognizes that it would make no sense for a plan participant to pay more than the retail cash price because the purpose of Cigna's pharmacy network is to reduce the cost of prescription drugs below the retail cost.

Court an appropriate and efficient discovery process that recognizes the substantial delay that has already occurred and the need to have discovery conducted in an efficient manner going forward.

Dated: May 24, 2018

        *s/ Robert A. Izard*

| | |
|---|---|
| Robert A. Izard (ct01601)<br>*Plaintiffs' Interim Co-Lead Class Counsel*<br>Craig A. Raabe (ct04116)<br>Christopher M. Barrett (ct30151)<br>IZARD, KINDALL & RAABE, LLP<br>29 South Main Street, Suite 305<br>West Hartford, CT 06107<br>860-493-6292<br>860-493-6290 fax<br>rizard@ikrlaw.com<br>craabe@ikrlaw.com<br>cbarrett@ikrlaw.com | William H. Narwold (ct00133)<br>*Plaintiffs' Interim Co-Lead Class Counsel*<br>Mathew Jasinski (ct27520)<br>MOTLEY RICE LLC<br>One Corporate Center<br>20 Church Street, 17th Floor<br>Hartford, CT 06103<br>860-882-1681<br>860-882-1682 fax<br>bnarwold@motleyrice.com<br>mjasinski@motleyrice.com |
| Joseph P. Guglielmo (ct27481)<br>*Plaintiffs' Executive Committee Chair*<br>Carey Alexander, pro hac vice<br>SCOTT+SCOTT,<br>ATTORNEYS AT LAW, LLP<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>212-223-6444<br>212-223-6334 fax<br>jguglielmo@scott-scott.com<br>calexander@scott-scott.com | Derek W. Loeser, pro hac vice<br>*Plaintiffs' Executive Committee Member*<br>Gretchen S. Obrist, pro hac vice<br>KELLER ROHRBACK, LLP<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052<br>206- 623-1900<br>206-623-3384 fax<br>dloeser@kellerrohrback.com<br>gobrist@kellerrohrback.com |
| Erin Green Comite (ct24886)<br>SCOTT+SCOTT, ATTORNEYS AT LAW, LLP<br>156 South Main Street<br>P.O. Box 192<br>Colchester, CT 06415<br>860-537-5537<br>860-537-4432 fax | Brian C. Gudmundson, pro hac vice<br>*Plaintiffs' Executive Committee Member*<br>ZIMMERMAN REED, LLP<br>1100 IDS Center<br>80 South 8th Street<br>Minneapolis, MN 55402<br>612-341-0400<br>612-341-0844 fax<br>brian.gudmundson@zimmreed.com |

ecomite@scott-scott.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
516-699-8890
516-699-8968 fax
ronen@sarrafgentile.com
joseph@sarrafgentile.com

Andrew A. Lemmon
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
985-783-6789
985-783-1333 fax
andrew@lemmonlawfirm.com

- and -

650 Poydras Street, Suite 2335
New Orleans, LA 70130
504-581-5644
504-581-2156 fax

Karen Hanson Riebel, pro hac vice
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, pro hac vice pending
LOCKRIDGE GRINDAL NAUEN, P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
612-596-4097
612-339-0981 fax
khriebel@locklaw.com
kgmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
206-448-1777
206-728-2131 fax
brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
919-600-5000
919-600-5035 fax
dan@wbmllp.com
jeremy@wbmllp.com
*Additional Counsel for Plaintiffs*

E. Kirk Wood
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
205-908-4906
866-747-3905 fax
ekirkwood1@bellsouth.net

## CERTIFICATE OF SERVICE

I, Robert A. Izard, certify that, on May 24, 2018, I caused a true and correct copy of the foregoing document to be served electronically on all counsel of record registered for electronic service for this case.

Executed this 24th day of May 2018 at West Hartford, Connecticut.

                                      *s/ Robert A. Izard*
                              Robert A. Izard
                              Christopher M. Barrett
                              IZARD, KINDALL & RAABE, LLP
                              29 S. Main St., Suite 305
                              West Hartford, CT 06107
                              (860) 493-6292
                              (860) 493-6290 fax
                              rizard@ikrlaw.com