# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, Individually and on Behalf of All Others Similarly Situated, DANIEL PERRY, Individually and on Behalf of All Others Similarly Situated, COURTNEY GALLAGHER, Individually and on Behalf of All Others Similarly Situated, NINA CUROL, Individually and on Behalf of All Others Similarly Situated, and ROGER CUROL, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>　　　　　　　　　　Defendants. | Civil No. 3:16-cv-1702 (WWE)<br><br>May 24, 2018 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S PRE-CONFERENCE SUBMISSION TO MAGISTRATE JUDGE GARFINKEL REGARDING CASE MANAGEMENT

On April 4, 2018, after extensive negotiations, Plaintiffs and Defendants Cigna Health and Life Insurance Company ("CHLIC") and OptumRx, Inc. ("Optum") filed a Stipulated Joint Case Management Plan ("JCMP") that includes aggressive fact and expert discovery deadlines, prioritizes class certification briefing, and contemplates that summary judgment motions will be filed after Plaintiffs' class certification motion is decided.  (Dkt. 140).  Plaintiffs pressed for approval of the JCMP in a separate submission "so that they may commence discovery," but in the same breath asked the Court to refer this case to a magistrate judge to help the parties develop "a more efficient case management plan."  (Dkt. 141 at 3).  The end result was a referral to Magistrate Judge Garfinkel, but no Court-approved JCMP.

CHLIC stands ready to discuss with Plaintiffs how the parties might modify the JCMP to facilitate the adjudication of Plaintiffs' claims, and will be prepared to do so under Magistrate Judge Garfinkel's supervision at the parties' May 29 conference.  But Plaintiffs seem more interested in using the case management planning process as a vehicle for taking potshots at Defendants.  Plaintiffs have criticized CHLIC's position that a decision on class certification should come before summary judgment, even while acknowledging CHLIC's constitutional right to proceed in that manner under the rule against one-way intervention.[1]  (Dkt. 141).  Plaintiffs have also accused CHLIC of delay, expressing frustration with the pace of the litigation to date and the extended schedule reflected in the JCMP.

The sequence and timing of this litigation are the product of Plaintiffs' decisions to forego the exhaustion of plan remedies and to seek to represent a massive class under Federal Rule of Civil Procedure 23(b)(3),[2] which provides putative class members with the opportunity to opt out.  Setting aside the obvious deficiencies in Plaintiffs' class definition,[3] the alleged nationwide class of participants in prescription drug plans that CHLIC has insured and/or administered will involve thousands of different benefit plans and millions of participants – each of whom has his or her own unique prescription drug use history, or none at all.[4]

---

[1] *See, e.g. Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1057-58 (7th Cir. 2016) ("The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim . . . The rule exists because it is 'unfair [to the defendant] to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)); *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009) (explaining that the rule against one-way intervention gives defendants "the right – should they choose to exercise it – to have class certification issues decided first, before any decision on the merits of the plaintiffs' claims").
[2] Plaintiffs also seek certification under Rule 23(b)(2).  Compl. ¶¶ 146-47.
[3] Compl. ¶¶ 135-36.  Plaintiffs have proposed an impermissible "fail-safe" class, which is '"defined in a way that precludes membership unless the liability of the defendant is established"' and is "unmanageable because the members of the class could only be known after a determination of liability."  *Mazzei v. Money Store,* 288 F.R.D. 45, 55 (S.D.N.Y. 2012).
[4] Plaintiffs exacerbate the problem by asserting claims relating to both ERISA and non-ERISA plans and policies. Compl. ¶¶ 135-36.  It is also unclear whether Plaintiffs are asserting claims prior to 2014, when the changes about which they now complain were implemented.  Compl. ¶ 138.

Plaintiffs now bear the burden of satisfying the requirements of Rules 23(a) and (b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  In similar circumstances, courts have found no commonality and typicality when different iterations of plan or contract language must be identified, reviewed and interpreted to decide liability.  *See, e.g.*, *Wood v. Prudential Retirement Insurance and Annuity Co.*, No. 3:15-1785 (VLB), 2017 WL 338107, at *3-4 (D. Conn. Aug. 4, 2017) (finding no commonality or typicality because "variables among plans render unmanageable any attempt to reach classwide conclusions regarding the reasonableness of the spread"); *Corcoran v. CVS Health*, No. 15-03504 (YGR), 2017 WL 1065135, at *6 (N.D. Cal. Mar. 21, 2017) (finding no commonality in light of "significant variation with how the different contracts define U&C").  Such circumstances also would foreclose a finding of predominance under Rule 23(b)(3).  *See Huffman v. Prudential Ins. Co. of America,* No. 2:10-05135 (JFL), 2018 WL 583046, at *3-4 (E.D. Pa. Jan. 29, 2018) (holding that proposed class requiring court to analyze 2,200 different ERISA plans fails for lack of predominance).

Answering the question of whether CHLIC violated the plan terms necessarily requires the identification, collection and review of the plan documents applicable to the named Plaintiffs and putative class members.  Plaintiffs have challenged, among other things, how copayments, coinsurance, and deductibles are calculated, as well as the determination of "covered expenses" and "Usual and Customary charges."  There are substantial variations in plan language defining these terms.  Just among the five named Plaintiffs themselves, there are three different versions of the cost-sharing language that is the focus of Plaintiffs' allegations.[5]  And even determining which standard of review – arbitrary and capricious or *de novo* – to apply requires a review of whether each plan delegates discretion to CHLIC to interpret the plan terms.  *See, e.g.*, *Sigal v.*

---

[5] Notably, Plaintiffs have admitted in their Opposition to Defendants' Motions to Dismiss that their self-serving interpretation of the Plan language – excised out of context – "technically" makes no sense.  (Dkt. 97 at 5 n.4).

*Metro. Life Ins. Co.*, No. 16-3397 (JPO), 2018 WL 1229845, at *6 (S.D.N.Y. Mar. 5, 2018) (analyzing plan document and summary plan description to determine whether plan afforded defendant discretionary authority).

For all of these reasons, CHLIC believes that the parties and Magistrate Judge Garfinkel should devote their time on May 29 to addressing the challenges associated with identifying and collecting the applicable plan documents and related materials, and how those challenges could affect the timing of discovery and class certification briefing. Despite the Court's pronouncement that there would be no formal discovery while Defendants' motions to dismiss were pending and the absence of a Court-approved JCMP, CHLIC has already produced relevant plan documents, policies, administrative services agreements, and prescription drug transaction records for the named Plaintiffs, has responded to requests for admissions, and will be supplementing its original responses to Plaintiffs' requests for production. The parties have also started the process of identifying search terms and custodians for electronically stored information. It would be worthwhile to explore whether it makes sense to establish discovery priorities with the plan documents in mind, and to incorporate those priorities into the JCMP. At CHLIC's suggestion, the parties have scheduled a 90-minute face-to-face meeting immediately prior to the May 29 conference to discuss these issues.

Dated:  May 24, 2018

Respectfully submitted,

/s/ Joseph J. Costello
Joseph J. Costello (ct14917)
Brian W. Shaffer (phv08654)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
joseph.costello@morganlewis.com
brian.shaffer@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com

Michael D. Blanchard
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2731
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2018, the foregoing document was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system.  Parties may access this filing through the Court's system.


/s/ Joseph J. Costello
Joseph J. Costello