UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) (Consolidated)  CLASS ACTION |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC., | MARCH 2, 2020 |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND ................................................................... 2

III.  STANDARD ................................................................................................................... 7

IV.  THE ERISA CLASSES ................................................................................................. 7

    A.  The ERISA Classes Satisfy the Threshold Requirements of Rule 23(a) .............. 7

    1.  Rule 23(a)(1): Numerosity ................................................................................... 7

    2.  Rule 23(a)(2): Commonality ............................................................................... 8

    3.  Rule 23(a)(3): Typicality ..................................................................................... 9

    4.  Rule 23(a)(4): Adequacy ................................................................................... 10

    B.  The ERISA Classes Satisfy the Requirements of Rule 23(b) ............................. 12

    1.  The ERISA Classes May Each Be Certified Under Rule 23(b)(2) .................. 12

    2.  The ERISA Classes May Each Be Certified Under Rule 23(b)(3) .................. 15

V.  THE STATE LAW CLASSES .................................................................................... 19

VI.  THE RICO CLASSES ................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Amara v. Cigna Corp.*,
　　775 F.3d 510 (2d Cir. 2014) ................................................................. 13, 15

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997) ................................................................................ 11

*Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*,
　　568 U.S. 455 (2013) .................................................................................. 8

*Anderson v. Mt. Clemens Pottery Co.*,
　　328 U.S. 680 (1946) ................................................................................ 17

*Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.*,
　　839 F.2d 1333 (9th Cir. 1988) ................................................................ 17

*Bridge v. Phoenix Bond. & Indem. Co.*,
　　553 U.S 639 (2008) ................................................................................. 20

*Consol. Rail Corp. v. Town of Hyde Park*,
　　47 F.3d 473 (2d Cir. 1995) ....................................................................... 7

*DeMaria v. Horizon Healthcare Servs., Inc.*,
　　No. 11-7298 (WJM), 2015 WL 3460997 (D.N.J. June 1, 2015) ............................ 18

*Des Roches v. Cal. Physicians' Serv.*,
　　320 F.R.D. 486 (N.D. Cal. 2017) .............................................................. 13

*Donovan v. Bierworth*,
　　754 F.2d 1049 (2d Cir. 1985) .................................................................. 17

*Duling v. Gristede's Operating Corp.*,
　　267 F.R.D. 86 (S.D.N.Y. 2010) ................................................................. 9

*Estate of Barton v. ADT Sec. Servs. Pension Plan*,
　　820 F.3d 1060 (9th Cir. 2016) ............................................................ 14, 17

*Hanks v. Lincoln Life & Annuity Co of N.Y.*,
　　330 F.R.D. 374 (S.D.N.Y. 2019) ...................................................... 8, 10, 16, 19

*Hill v. City of New York*,
　　No. 13-cv-6147 (PKC) (JO), 2019 WL 1900503 (E.D.N.Y. April 29, 2019) ............ 15

*In re Drexel Burnham Lambert Grp.*,
　　960 F.2d 285 (2d Cir. 1992) .................................................................... 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ........................................................................ 10

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ............................................................. 7, 16, 19, 20

*Johnson v. Nextel Commcn's Inc.*,
    780 F.3d 128 (2d Cir. 2015) .......................................................................... 8

*LaFlamme v. Carpenters Local No. 370 Pension Plan*,
    212 F.R.D. 448 (N.D.N.Y. 2003) .......................................................... 11, 13, 15, 18

*Lassen v. Hoyt Livery Inc.*,
    No. 3:13-cv-01529 (JAM), 2014 WL 4638860 (D. Conn. Sept. 17, 2014) ........................... 8, 9

*Laurent v PriceWaterhouseCoopers, LLP*,
    No. 06-CV-2280 (JPO), 2014 WL 2893303 (S.D.N.Y. June 26, 2014) ................................ 13

*Laurent v. PriceWaterhouseCoopers LLP*,
    945 F.3d 739 (2d Cir. 2019) ......................................................................... 13

*Mahon v. Chicago Title Ins. Co.*,
    296 F.R.D. 63 (D. Conn. 2013) ........................................................................ 8

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) .......................................................................... 9

*Med. Soc'y of N.Y. v. UnitedHealth Grp.*,
    332 F.R.D. 138 (S.D.N.Y. 2019) ...................................................................... 10

*Meidl v. Aetna Inc.*,
    15-cv-1319 (JHC), 2017 WL 1831916 (May 4, 2017) .............................................. 9, 13, 15

*Miles v. Principal Life Ins. Co.*,
    720 F.3d 472 (2d Cir. 2013) ......................................................................... 13

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ......................................................................... 16

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ....................................................................... 9, 10

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ......................................................................... 12

*Scott v. N.Y. Dist. Council of Carpenters Pension Plan*,
    224 F.R.D. 353 (S.D.N.Y. 2004) ...................................................................... 10

*Sherman v. Burwell*,
    No. 3:15-cv-01468 (JAM), 2016 WL 4197575 (D. Conn. Aug. 8, 2016) ........................ 10, 11

*Smith v. UnitedHealth Servs., Inc.*,
    No. Civ. 00-1163 ADM/AJB, 2002 WL 192565 (D. Minn. Feb. 5, 2002) ......................... 8, 10

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................. 8, 10, 19

*Sykes v. Mel S. Harris and Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .......................................................................................... 15

*Trustees of Local 813 Ins. Trust Fund v. Rogan Bros. Sanitation, Inc.*,
    1:12-cv-6249 (ALC) (HBP), 2018 WL 1587058 (S.D.N.Y. March 28, 2018)..................... 17

*Vellali v. Yale Univ.*,
    Civil No. 3:16-cv-1345 (AWT), 2019 WL 5204456 (D. Conn. Sept. 24, 2019)................... 8

*Wit v. United Behavioral Health*,
    317 F.R.D. 106 (N.D. Cal. 2016) ................................................................................. 18

**Statutes**

42 U.S.C. § 300gg-19b .................................................................................................. 6

Conn. Gen. Stat. § 38a-477cc ........................................................................................ 6

RICO § 1964(c)............................................................................................................. 20

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 7, 19

Fed. R. Civ. P. 23(a) ..................................................................................................... 7, 12, 19

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 7

Fed. R. Civ. P. 23(a)(2)................................................................................................. 8

Fed. R. Civ. P. 23(a)(3)................................................................................................. 9

Fed. R. Civ. P. 23(a)(4)................................................................................................. 10

Fed. R. Civ. P. 23(b) ..................................................................................................... 7, 12

Fed. R. Civ. P. 23(b)(1)-(3)........................................................................................... 7

Fed. R. Civ. P. 23(b)(2)................................................................................. 7, 12, 13, 14, 15, 18

Fed. R. Civ. P. 23(b)(3)........................................................................ 7, 12, 15, 16, 18, 19

Fed. R. Civ. P. 23(g) ................................................................................................. 11

## I.     INTRODUCTION

This case is a quintessential class action.  The uniform "boilerplate" language in Cigna's health Plans[1] expressly provides that copayments and deductible payments for prescription drugs are capped at the amount paid to or charged by a pharmacy (the "Pharmacy Rate").  Yet, Cigna required its members to make hundreds of millions of dollars in "overpayments" (Cigna's word) to pharmacies for prescription drugs.  Cigna forced these "overpayments" by demanding hidden "spread" (Cigna's word) between the Pharmacy Rate and the members' higher deductible payments and copayments.  Cigna and Optum then employed a secret scheme to "claw back" (Cigna's word) many of these "overpayments" from the network pharmacies.  To conceal their scheme, Defendants (1) prohibited pharmacies from telling members about the "clawbacks," (2) prohibited pharmacies from selling the drugs at a cost that would have avoided the "clawbacks" and (3) threatened to terminate any pharmacy that tried to expose the scheme.

The illegal "clawbacks" were prohibited by Cigna's uniform Plan language, which capped copayments and deductibles at the "Pharmacy Rate."  Cigna's uniform language limited member copayments and deductibles to no more than a "portion" of the "charges made by a pharmacy."  In addition, Cigna's uniform Plan language in many plans further guaranteed, "In no event will the copayment . . . exceed the amount paid by the plan to the pharmacy," reinforcing the Pharmacy Rate cap.

Moreover, for the ERISA Plans, Cigna violated its fiduciary duty expressly imposed by its boilerplate Plan language to compute benefits in accordance with Plan terms.  Indeed, because of its flawed claims adjudication system, Cigna did not even attempt to apply the relevant Plan language to Class member benefit calculations.

---

[1] "Plan" and "Plans" refer to all the combined Class and Subclass plans.

Cigna *knew* its failure to comply with its Plan language exposed it to liability. While Cigna's management made it a "top priority" to "claw back" "approximately "$100M a year," it disregarded the fact that its Plans prohibited "clawbacks." Cigna knew that there were "inconsistencies" and "gapped language" between its Plans and how it adjudicated prescription drug claims. As a result, Cigna correctly predicted internally that it would likely face a "class action by many customers" for breaching its fiduciary duty and contracts.

This is the class action that Cigna predicted. To require tens of thousands of members to bring individual actions to recoup their shares of Cigna's "clawbacks" would be unfair and unworkable. To allow Cigna and Optum to keep the "clawbacks" would be unjust. Accordingly, Plaintiffs respectfully move that this Court certify the Classes and Subclasses as set forth in their Motion for Class Certification.

## II.     RELEVANT FACTUAL BACKGROUND[2]

Defendants engaged in a scheme to defraud health Plan members by "clawing back" overcharges paid for medically necessary prescription drugs. Specifically, *all* Cigna Plans uniformly stated that Cigna would provide prescription drug coverage for "Covered Expenses," which are "expenses for charges made by a Pharmacy, for Medically Necessary Prescription Drugs." Declaration of Craig A. Raabe ("Raabe Decl.") at ¶ 5; *see* Ex. B[3] at 00001703. The Plans further uniformly stated that patients "may be required to pay a *portion* of the Covered Expenses," which is expressly defined to include copayments and deductibles. Raabe Decl. at ¶

---

[2] Only facts directly pertinent to class certification are set forth below. A more general recitation of facts, including a description of the structure and workings of Defendants' prescription benefits plans, is set forth in the Second Amended Consolidated Complaint ("SACC") at ¶¶ 18-128. All capitalized terms herein are used as defined in the SACC.

[3] All references to "Ex. __" are to Exhibits to the Raabe Declaration.

6; Ex. B at 00001701 (emphasis added).  Accordingly, all Class Members' Plans uniformly provided that copayment and deductible payments were limited to a "***portion***" of (*i.e.,* no more than the total) "charges made by a Pharmacy."  The "ERISA Class" is comprised of all Plan members in ERISA-governed Plans that had this language; the "State Law Class" is comprised of all individuals in *non*-ERISA Plans that had this language; and the "RICO Class" is comprised of all individuals in either group with this language in their Plans.

In addition, some Plans specifically and uniformly stated that "[i]n no event" will copayments "exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge."  Raabe Decl. at ¶ 5; Ex. B at 00001704.  This language constitutes a second uniform contractual agreement that Class Members would ***never*** pay a copayment more than the amount that Cigna paid to the pharmacy.  The "ERISA Subclass" is comprised of individuals in ERISA-governed Plans whose Plans, in addition to the "portion" language above, also contained this "in no event" language; the "State Law Subclass" is comprised of such individuals who are enrolled in *non*-ERISA Plans; and the "RICO Subclass" is comprised of ***all*** such individuals.[4]

Additionally, for the ERISA Plans, the Plan language uniformly granted Cigna the express "discretionary authority to" "apply plan terms . . . in connection with its review of claims under the plan," including "the computation of any and all benefit payments." Instead of applying "plan terms" in computing benefits, Defendants forced network pharmacies to charge Class Members unauthorized and excessive copayments and deductibles. Optum secretly "clawed back" some or all of these excessive copayments and deductible payments from the

---

[4] The ERISA Class and ERISA Subclass are referred to collectively as the "ERISA Classes." The State Law Class and State Law Subclass are referred to collectively as the "State Law Classes."  The RICO Class and Subclass are referred to collectively as the "RICO Classes."

pharmacies, and Cigna then "clawed back" some or all of these payments from Optum.  All of these "clawbacks" exceeded the Pharmacy Rate.

Defendants have **never disputed** that they took "clawbacks."  Nor could they.  In 2013, a Cigna employee described how the implementation of "clawbacks" was an "urgent request from management" to "react to a missed revenue opportunity."  Ex. C at 00054923-24.   As that employee explained, "[t]he question is not if we should decide to proceed [as] Management has already made the decision to proceed [because] Cigna is losing approximately $100M a year." Ex. D at 00056019.   Indeed, "clawbacks" were a "top priority."  Ex. E at 00248002.   Given its importance, Cigna's CEO David Cordani personally sponsored what Cigna dubbed the "Pharmacy Over Payments" "Project."  Ex. F at 00199867.

Cigna did not even bother to review its contract language before it began its "clawback" scheme.  Cigna had last conducted a review of its plan language in 2010, years before the "clawbacks" began.  Ex. G at 00469402.  When Cigna finally reviewed its Plans in 2016, it acknowledged that "Cigna may experience legal, regulatory, client and customer risks due to **inconsistencies** between plan language and how we administer" claims.  Ex. H at slide 4. (emphasis added).  Cigna recognized that these inconsistencies could lead to "exposure under ERISA – through a regulatory audit or a lawsuit filed by a customer **(or, more likely, a class action by many customers)** for failure to follow the coverage documents or, worse, a breach of fiduciary duty."  Ex. I at 0049453 (emphasis added).

Many Cigna employees recognized the injustice of Cigna's "clawback" scheme.  One employee wrote that  "it seems strange that Cigna would charge a member for a copay that exceeds the ingredient cost + dispensing fee + tax, if applicable [*i.e.,* the Pharmacy Rate].  To me that is no longer a 'co'pay, but more of a single (over)payment by the customer."  Ex. J at

00054926.  In another email, employees described Cigna's clawback practices as "unreasonable"

and "egregious pricing."  Ex. K at 00491619.  Another employee commented that "I don't get

this – this is so unfair to the member.  I can't believe we can live with ourselves charging the

member 172% more than what this drug costs."  *Id.* at 00491623.

Defendants went to great lengths to hide their "clawback" scheme.  Through Optum,

Cigna enforced "gag clauses" against network pharmacies.[5]  For example, one form agreement

provided that the "Pharmacy will not share information concerning the terms of this Agreement

or other proprietary information, including but not limited to, reimbursement rates and pricing as

provided to Pharmacy . . . ."  Ex. N at 00177316 (¶ 3.3).   Cigna considered this "gag clause"

"compulsory" (Ex. O at 00180952) and was ***not*** tolerant of pharmacies that were honest with

members.  When one pharmacist labeled deductible "clawbacks" a "[n]ew ponzi scheme,"

Cigna's "Pharmacy Network Operations" reiterated to Cigna personnel that pharmacists were

prohibited from disclosing the "clawback" scheme to members, stating, "I explained that [the

pharmacist] is not to discuss reimbursement matters with members."  Ex. P at 00309576-577.

After another pharmacy disclosed Cigna's clawback scheme to a customer, a Cigna employee

noted that "our network pharmacies are contractually prohibited from discussing pricing with our

customers. . . .  Should the pharmacy continue to break their contract, Juan advised that they

would be reviewed for possible termination from the network."  Ex. Q at 07504938; *see also* Ex.

---

[5]  Cigna also hid the "clawbacks" from its employer clients (*i.e.,* the entities that contracted with
Cigna to provide pharmacy benefits to Class Members). In an "urgent" email exchange dated November
1, 2013, Cigna employees "worried about what the [clawback] would look like to the Payer" and
suggested that the "clawback" should be buried in the invoice to prevent detection. Ex. L at 00245463.
In fact, Cigna ***did*** hide the "clawbacks" from employers by creating two sets of data:  "one set for the
clients and one set for pharmacies."  Ex. M at 0055857.

R at 00287642  (Cigna expressing surprise that pharmacy could see the "clawback" at the point of sale).

After Plaintiffs filed this action, Cigna management was surprised that Plaintiffs had been able to uncover the massive, hidden scheme.  In an exchange discussing this lawsuit that included the Vice President of Pharmacy Management, an employee remarked, "***members are not as uneducated as we thought!***"  Ex. S at 00367625. (emphasis added)  The Vice President did not reprimand her colleague for her condescending message. Instead, they questioned "how does this person [Plaintiff Negron] know about 'spread'?"  *Id.*  The Vice President ultimately answered, "no clue." *Id.*

Despite Defendants' best efforts, Plaintiffs have revealed Defendants' "clawback" scheme.[6]  Each named Plaintiff has been harmed by Defendants' uniform misconduct.  Raabe Decl. at ¶ 3; SACC at ¶ 31.  Individual Class Member damages range from a few dollars to thousands of dollars per transaction.  For example, in one transaction, Cigna "clawed back" $1,676.78 of a Class Member's $1,684.98 deductible payment where the "charges made by [the] Pharmacy" were only $8.20 (meaning that Cigna "clawed back" ***20,000%*** more than the actual cost of the drug).  Ex. A (expert Declaration of Launce B. Mustoe) ("Mustoe Decl.") at 17.  Although exact calculations are ongoing, Plaintiffs are certain that Cigna's "clawback" scheme caused Class Members aggregate class-wide harm in the hundreds of millions of dollars.  *Id*. at 11-12.

---

[6]  In the wake of the exposure of these pernicious "clawbacks" and "gag clauses" through this action and other litigation against other carriers and PBMs, and the related media coverage, many states have outlawed such practices, including Connecticut.  *See* Conn. Gen. Stat. § 38a-477cc.  The federal government also banned "gag clauses."  42 U.S.C. § 300gg-19b.

### III.    STANDARD

Class certification is appropriate where the plaintiffs can establish "the four threshold requirements of 23(a)" and show "the class satisfies at least one of the three provisions for certification found in Rule 23(b)." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). Rule 23(a) requires (1) the class to be so numerous so as to make joinder impracticable; (2) questions of law or fact common to the class; (3) the named plaintiffs' claims to be typical of the class; and (4) the named plaintiffs to be able to fairly and adequately protect the interests of the absent class members. Fed R. Civ. P. 23(a).

Rule 23(b) requires the plaintiffs to show either: (1) separate actions would create a risk of inconsistent results or leave members unable to protect their interests; (2) final declaratory or injunctive relief is appropriate as to the class as a whole; or (3) common questions of law or fact predominate so as to make a class action the superior method for adjudicating the controversy. Fed. R. Civ. P. 23(b)(1)-(3).  Here, Plaintiffs meet the requirements of 23(a) and of both 23(b)(2) and 23(b)(3) (as an alternate basis for relief), and thus class certification is appropriate.  *U.S. Foodservice,* which similarly alleged contract and RICO claims, is the blueprint for this case and is dispositive on most Rule 23 issues.

### IV.    THE ERISA CLASSES

#### A.  The ERISA Classes Satisfy the Threshold Requirements of Rule 23(a)

##### 1.    Rule 23(a)(1): Numerosity

The Second Circuit presumes numerosity is established when the proposed class consists of at least forty members. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995). Here, there is no dispute that the ERISA Class and Subclass each contain at least tens of thousands of members, and Cigna has produced claims for over 350 million prescription-drug transactions.  Accordingly, numerosity is easily satisfied.

### 2.    Rule 23(a)(2):  Commonality

Rule 23(a)(2)'s commonality requirement is satisfied because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is a "low hurdle," *Hanks v. Lincoln Life & Annuity Co of N.Y.*, 330 F.R.D. 374, 379 (S.D.N.Y. 2019), and simply requires class members to share a "single" common question of law or of fact, *Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860, at *9 (D. Conn. Sept. 17, 2014) (internal quotation marks and citation omitted).  A common question is presented 'where the same conduct or practice by the same defendant gives rise to the same kind of claims from all other class members. . . .'" *Hanks*, 330 F.R.D. at 379-80 (quoting *Johnson v. Nextel Commcn's Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).  For class certification, Plaintiff need only establish that common issues *exist,* not that Plaintiff will ultimately *prevail* on those issues.  *Amgen, Inc. v. Conn. Ret. Plans and Trust Funds,* 568 U.S. 455, 459-60 (2013); *Mahon v. Chicago Title Ins. Co.,* 296 F.R.D. 63, 73 (D. Conn. 2013).

Courts regularly find commonality satisfied where plaintiffs allege conduct by an insurer that violated standard policy or plan language. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *Hanks*, 330 F.R.D. at 380; *see also Vellali v. Yale Univ.*, Civil No. 3:16-cv-1345 (AWT), 2019 WL 5204456, at *3 (D. Conn. Sept. 24, 2019).  This is in part because how plan terms were defined "involve[s] issues of legal construction common to all potential class members." *Smith v. UnitedHealth Servs., Inc.*, No. Civ. 00-1163 ADM/AJB, 2002 WL 192565, at *1 (D. Minn. Feb. 5, 2002); *see also Steinberg*, 224 F.R.D. 67 at 74 (plans with "substantively similar language" can be treated as form contracts and "interpretations of a form contract appear to present the classic case for treatment as a class action"). Even variations in the plan language will not preclude certification when the differences are immaterial to defendant's

improper conduct. *Meidl v. Aetna Inc.*, 15-cv-1319 (JHC), 2017 WL 1831916, at *10 (May 4, 2017).

Here, Defendants incorrectly calculated the cost-share payments of every member of the ERISA Classes by not using the Pharmacy Rate as required by the Plan language. There were no material differences among the relevant boilerplate Plan provisions.  Specifically, all Class Plans contained the "portion" language discussed above, while all Subclass Plans contained the additional "in no event" language.  Accordingly, for both ERISA Classes, a decision on the common question of whether class members paid too much in violation of the uniform language of their Plans will determine liability on a class-wide basis.

### 3.    Rule 23(a)(3):  Typicality

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks and citations omitted). This "does not require that the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Lassen*, 2014 WL 4638860, at *9 (internal quotation marks and citations omitted).

While typicality can be defeated when the named plaintiffs are subject to unique defenses, that rule "is not rigidly applied in this Circuit." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 96 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). Thus, "when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). As with commonality, this is true "irrespective of

9

minor variations in the fact patterns underlying individual claims." *Id.; see also Smith*, 2002 WL 192565, at *4; *Sherman v. Burwell*, No. 3:15-cv-01468 (JAM), 2016 WL 4197575, at *9 (D. Conn. Aug. 8, 2016) (finding typicality when all class members subject to the same "secret policy" of denying claims). Defendants' unlawful scheme of "clawing back" copayments and deductibles in violation of plain Plan language is the sort of unlawful action that routinely satisfies the typicality requirement. *Hanks*, 330 F.R.D. at 380-81; *Steinberg*, 224 F.R.D. at 75; *Smith*, 2002 WL 192565, at *4.

Here, Plaintiffs Negron and Perry are members of both ERISA Classes. The pertinent language for the ERISA Class and Subclass was substantively similar, and the named plaintiffs and Class and Subclass members were uniformly subject to Defendants' clawbacks. Thus, the named plaintiffs' claims are typical of the class.

### 4.    Rule 23(a)(4): Adequacy

To satisfy Rule 23(a)(4)'s adequacy requirement, the representatives must "(1) have an interest in vigorously pursuing the claims of the class, and (2) must have no interests antagonistic to the interests of the other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (internal quotation marks and citation omitted). Additionally, "[they] must demonstrate that plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation." *Med. Soc'y of N.Y. v. UnitedHealth Grp.*, 332 F.R.D. 138, 149 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

The first prong requires the class representatives to have "a minimal degree of knowledge" of the case. *Scott v. N.Y. Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004). A class representative is inadequate only if the deficiencies are "so substantial that they threaten to undermine the plaintiffs' case as a whole." *Id.* (internal quotation marks and citation omitted). Here, the named Plaintiffs have demonstrated their commitment to

10

vigorously pursuing the claims of the class by, *inter alia,* monitoring the case, responding to written discovery and by being willing to be deposed. *See* Raabe Decl. at ¶ 3.

The second prong "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). However, "a conflict between the named parties and the class they seek to represent will be sufficient to defeat class certification only if the conflict is fundamental." *Sherman*, 2016 WL 4197575, at *9 (internal quotation marks and citation omitted). Here, the named plaintiffs and the absent class and subclass members have identical claims, and there are no conflicts between them. For the same reasons Plaintiffs satisfy typicality, they satisfy this prong of adequacy.

The adequacy requirement also seeks to ensure class counsel is "qualified, experienced, and generally able to conduct the litigation." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992). Proposed co-lead class counsel Motley Rice ("MR") and Izard, Kindall, & Raabe ("IKR") have decades of class action experience, and extensive knowledge of the applicable law and facts. The firms have the resources necessary to litigate this action, and have effectively represented the proposed class since being appointed interim co-lead class counsel in 2016 (*see* [ECF No. 20]).[7] Additionally, as this Court determined in granting interim appointment, proposed counsel satisfy the Rule 23(g) factors, and thus are adequate representatives of the class. *Id.* at ¶ 10; *see LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448, 455 (N.D.N.Y. 2003).

---

[7] The following firms have served on the Executive Committee since December 5, 2016 (*see* [ECF Nos. 12, 13]): Scott+Scott, Attorneys at Law, LLP; Zimmerman Reed, LLP; Lemmon Law Firm LLC; Sarraf Gentile LLP; Keller Rohrback, LLP; Lockridge Grindal Nauen PLLP; and Wood Law Firm, LLC. The firms on the Executive Committee will continue to do non-duplicative work as requested by IKR and MR, as they have done to date.

**B.  The ERISA Classes Satisfy the Requirements of Rule 23(b)**

In addition to meeting Rule 23(a)'s criteria, a class must satisfy one of Rule 23(b)'s requirements.  This case meets the requirements of Rules 23(b)(2) and 23(b)(3).

**1.  The ERISA Classes May Each Be Certified Under Rule 23(b)(2)**

Certification under Rule 23(b)(2) is appropriate where, as here, "broad, class-wide injunctive relief is necessary to redress a group-wide injury" that "settles the legality of the behavior with respect to the class as a whole."  *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 162-63 (2d Cir. 2001) (quotation marks and citations omitted).  Rule 23(b)(2) requires only that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Defendants' practice of "clawing back" copayments and deductibles applied in the same manner to all Class Members with the "portion" language (ERISA Class) and to all Subclass Class Members with the "in no event" language (ERISA Subclass).  If Plaintiffs in the ERISA Classes prove liability, they seek the reprocessing of all affected prescription drug claims and recalculation of all class member benefits.

Cigna had the primary duty under the Plans to process and calculate prescription drug benefit claims in accordance with Plan terms. For most Plans, the Plan Administrator expressly delegated to Cigna discretionary fiduciary authority to "apply plan terms" with respect to reviewing claims and "the computation of any and all benefit payments." Raabe Decl. at ¶ 5; *see, e.g.,* Ex. B at 00001723. Because Cigna had this primary duty and did it wrong the first time, it should be ordered to do it again — correctly this time.

Courts have routinely held that such recalculation of benefits is an appropriate classwide remedy and that a "reprocessing injunction" is "the appropriate type of relief" for classes certified under Rule 23(b)(2).  "[I]n an ERISA case, where insurance administrators unlawfully

12

deny benefits, the appropriate remedy is typically to return the claim to the insurance plan administrator for reconsideration." *Meidl v. Aetna, Inc.*, No. 15-cv-1319 (JCH), 2017 WL 1831916, at *22 (D. Conn. May 4, 2017) (quoting *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 490 (2d Cir. 2013)) (internal quotations marks omitted); *see also Laurent v. PriceWaterhouseCoopers LLP,* 945 F.3d 739, 742, 749 (2d Cir. 2019) (holding that recalculation can be a proper ERISA remedy to enforce reformed plan language for the benefit of a class certified under Fed. R. Civ. P. 23(b)(2) because "courts in this Circuit 'follow the Supreme Court's express preference that violations of ERISA should be remedied'").[8]  Accordingly, the Court can order Defendants to reprocess individual claims and determine if each class member is entitled to coverage or compensation." *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 509 (N.D. Cal. 2017) (collecting and discussing cases); *see also LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003) (certifying Rule 23(b)(2) class seeking "recalculation of benefits" pursuant to correct interpretation of plan); *Amara v. Cigna Corp.*, 775 F.3d 510, 523 (2d Cir. 2014) (affirming award of monetary relief and noting "[w]hen the plan is reformed according to the district court's order, monetary benefits flow as a necessary consequence of that injunction").

Here, Cigna established and maintained a claims processing system that cannot track which Plan language applies to which claims, ██████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[8]  *See Laurent v PriceWaterhouseCoopers, LLP,* No. 06-CV-2280 (JPO), 2014 WL 2893303, at *4 (S.D.N.Y. June 26, 2014) (certifying Rule 23(b)(2) class where defendants' "failure to pay the actuarially fair value for Plaintiffs' accounts … applies uniformly to the class and the requested declaration would apply equally to all the class members, notwithstanding the fact that the individual inputs into the remedy calculation would differ.")

██████████████████████████████████████

██████████████████████████████████████ The
Court should order it to do so now for the benefit of the ERISA Classes.

Cigna may argue that the requested remedies are unmanageable due to the inadequacy of
Cigna's own recordkeeping.  That cannot defeat class certification.  "It is illogical and unfair" to
penalize an ERISA plaintiff for not having data that properly should be maintained by the
defendant, as there is "nothing in ERISA that supports such a Kafkaesque regime" where a
defendants' failure to keep its own records "can license a plan administrator to throw up his
hands and say 'not my problem.'"  *Estate of Barton v. ADT Sec. Servs. Pension Plan,* 820 F.3d
1060, 1066 (9th Cir. 2016).  Rather, because Cigna had the primary duty to calculate benefits
pursuant to Plan terms, if Cigna's recordkeeping system is inadequate, Defendants bear the
burden of fixing their system and properly recalculating benefits.  "[W]here a claimant has made
a prima face case that he is entitled to a[n ERISA] benefit but lacks access to the key information
… and the defendant controls such information, the burden shifts to the defendant to produce this
information."  *Id.* at 1068 ("'once [plaintiff] proved the fact of damages and [defendant's] failure
to keep adequate records, the burden shift[s] to [defendant] to come forward with evidence'"
concerning the missing information).  Plaintiffs cannot be charged with the duty to set up a
proper claims processing system that Cigna had a fiduciary duty to establish and maintain, and
where Cigna failed to do so.

The damages that flow from recalculation are "incidental" to the reprocessing injunction,
and so are an allowable remedy for a Rule 23(b)(2) class.  A "reprocessing order is not properly
treated as monetary relief.  Rather than seeking payment, a reprocessing claim simply seeks that
claims be reprocessed via a lawful method, despite the fact that certain class members may

14

receive no payment even after the reprocessing."  *Meidl*, 2017 WL 1831916, at \*20-22

(collecting cases); *Amara v. Cigna Corp.*, 775 F.3d 510, 523 (2d Cir. 2014) (district court

properly ordered monetary relief flowing from recalculation injunction because "[w]hen the plan

is reformed according to the district court's order, monetary benefits flow as a necessary

consequence of that injunction"); *Laflamme*, 212 F.R.D. at 456-57 (damages from recalculation

of benefits "can only be said to be incidental to the declaration that defendants' [] plan is in

violation of the law").

Cigna knows how to reprocess claims and recalculate benefits.  Not only is processing

claims one of Cigna's primary functions, it routinely reprocesses claims to remedy adjudication

errors and to address other problems.  ███████████████████████

████████████████████████████████████████

██████████████████████████████████  The Court should certify

a Rule 23(b)(2) class to require Cigna to reprocess claims here.

### 2. The ERISA Classes May Each Be Certified Under Rule 23(b)(3)

This Court should also certify ERISA Classes under Rule 23(b)(3).[9] Rule 23(b)(3)

requires Plaintiffs to prove that "questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."

Predominance is satisfied "if resolution of some of the legal or factual questions that

qualify each class member's case as a genuine controversy can be achieved through generalized

---

[9] It is proper to certify a class pursuant to both Rule 23(b)(2) and Rule 23(b)(3) as alternative bases for relief, where all elements of each category are satisfied.  *See Sykes v. Mel S. Harris and Assocs. LLC,* 780 F.3d 70 (2d Cir. 2015); *see also Hill v. City of New York,* No. 13-cv-6147 (PKC) (JO), 2019 WL 1900503, at \*1, \*3 n.7 (E.D.N.Y. April 29, 2019).

proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "'Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof,' but rather, requires 'that common questions predominate over any questions affecting only individual class members.'" *U.S. Foodservice*, 729 F.3d at 118 (citations omitted).

The predominant issue for the ERISA Classes is whether Defendants violated ERISA by improperly "clawing back" the excessive copayments and deductibles in breach of the clear Plan language. The language is "uniform and susceptible of generalized proof," circumstances under which courts routinely certify classes. *U.S. Foodservice*, 729 F.3d at 118; *Hanks*, 2019 WL 1167752, at *5 ("The contract language at issue does not vary by individual class member and is not materially different across the eighteen policies.").

As set forth in the Mustoe Declaration (Ex. A to the Raabe Declaration), the amount of individual Class Member "clawbacks" can be calculated based on Defendants' data. Cigna has produced a data set of all prescription drug transactions from October 13, 2010 through August 1, 2019, including identification of Class Members and data sufficient to calculate individual "clawbacks." Ex. A at 6. These calculations are straightforward and can be performed for any time period approved by the Court. *Id.* at 17. A sample calculation of "clawback" losses from one of Plaintiff Negron's transactions is set forth in Mr. Mustoe's report at page 16.

As discussed above, Defendants may argue that Plaintiffs cannot calculate damages with adequate precision due to inadequacies in the data Cigna *itself* maintains. But Cigna created this situation in breach of its fiduciary duty, and so is liable for the maximum damages reasonably calculable under the available information. "[O]nce a breach of trust is established, uncertainties

in fixing damages will be resolved against the wrongdoer." *Donovan v. Bierworth,* 754 F.2d 1049, 1056 (2d Cir. 1985).  When the defendant failed to maintain records to calculate losses with certainty, "[it] consequently was required to pay contributions for *all* hours that non-union masons worked during the time period where they were shown to have performed *some* covered work." *Estate of Barton* at 1068 (quoting *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc.,* 839 F.2d 1333, 1338 (9th Cir. 1988)); *see also Trustees of Local 813 Ins. Trust Fund v. Rogan Bros. Sanitation, Inc.,* 1:12-cv-6249 (ALC) (HBP), 2018 WL 1587058, at *11 (S.D.N.Y. March 28, 2018) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the requirements of ERISA") (citing *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688 (1946)).

In any event, Plaintiffs are able to overcome the deficiencies in Defendants' records to a significant and reasonable degree.  For example, in response to discovery requests, Cigna has provided "DST Reports" that link individual employers to specific Plan language for specified periods (and Plaintiffs have requested an additional such report).  Based on these reports and the available data, Mr. Mustoe can link individual transactions to specific Plan sponsors.  Ex. A (Mustoe Decl.) at 8-10.  Accordingly, where a given employer only had one Plan, Mr. Mustoe will be able to link individual drug claims to actionable Plans with particularity.  *Id.* at 9.  Where a given employer had multiple Plans, Mr. Mustoe expects to match transactions from the first date the employer had any Plan with the relevant language to the last date the employer had a Plan with the relevant language.  *Id.* at 10-11.  This approximation falls well within reasonable bounds given Defendants' failure to maintain its own data.

Nor would a failure to calculate losses with exact precision defeat predominance.  Should the Court decline to certify under Rule 23(b)(2), the reprocessing of claims and recalculation of benefits remedy is an appropriate remedy under (b)(3).  *DeMaria v. Horizon Healthcare Servs., Inc.,* No. 11-7298 (WJM), 2015 WL 3460997, at *6-10 (D.N.J. June 1, 2015) (certifying Rule 23(b)(3) class because "the fairest and most efficient way for the court to address the class members' claims is to consider the legality of" defendant's ERISA plan interpretation "on a class-wide basis and, if illegal, to order reprocessing of the claims"); *Wit v. United Behavioral Health,* 317 F.R.D. 106, 139-41 (N.D. Cal. 2016) (certifying Rule 23(b)(3) reprocessing class); *LaFlamme,* 212 F.R.D. at 457 (same).

With regard to superiority, Rule 23(b)(3) also provides the following nonexclusive factors to guide the Court's analysis:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . a member of the class; (C) the desirability ... of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Here, losses from each individual transaction were often only a few dollars.  Even where transaction losses were larger, litigation costs are such that individual Class Members would almost certainly have little interest in pursuing their own litigation, especially for a case involving a complex statutory scheme such as ERISA.  Indeed, Plaintiffs and their counsel are unaware of any other litigation concerning this controversy.  The District of Connecticut is the most efficient and pragmatic forum, given that Class Members reside nationwide, and Cigna is incorporated and headquartered in this District.  Lastly, the relevant Plan provisions are identical for all members of the Class or Subclass.  As also set forth above and in the Mustoe Report, evidence concerning losses is easily manageable.  Accordingly, Plaintiffs respectfully submit that manageability is not a concern.

## V.    THE STATE LAW CLASSES

Plaintiffs also seek to certify under Rules 23(a) and 23(b)(3) state-law classes for breach of contract.  The proposed state-law classes satisfy Rule 23's requirements for class certification for the same reasons set forth above in Part IV above, and Plaintiff Blocker, whose non-ERISA Plan contains both "portion" and "in no event" language, is an adequate representative for State Law Class and State Law Subclass.

Although state-law classes occasionally raise concerns about whether differences in state law present individualized inquiries, that is not a concern for state law breach of contract claims. As the Second Circuit stated, the "crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues."  *In re U.S. Foodservice*, 729 F.3d at 127.  It concluded that "state contract law defines breach consistently such that the question will usually be the same in all jurisdictions," and so common questions will predominate.  *Id.*; see also *Hanks*, 330 F.R.D. at 383.  To the extent that any variations in state contract law do exist, they can readily be addressed and do not preclude class certification.  *Steinberg*, 224 F.R.D. at 78.  For example, Mr. Mustoe's model can easily account for variances in time periods when calculating state-law damages by plugging in different start dates as relevant. Ex. A (Mustoe Decl.) at 17. Accordingly, any variations in state law will not present individualized inquiries that would defeat class certification.

## VI.   THE RICO CLASSES

Plaintiffs also bring RICO claims on behalf of all Class Members of the RICO Classes. The Second Circuit affirmed certification of a national class just like this one, where the defendant "having entered into contracts that entitled its customers to [Pharmacy Rate] pricing, is

alleged to have systematically deceived them into believing that they were being afforded such pricing when, in fact, they were being overcharged." *U.S. Foodservice*, 729 F.3d at 123.  That case likewise alleged a "centralized conspiracy to defraud," and the Second Circuit recognized that "fraud claims based on uniform misrepresentations to all members of a class 'are appropriate subjects for class certification." *Id.* at 118–19.  Here, Defendants' alleged misrepresentations — that copayments and deductibles would only be a "portion" of Covered Expenses and, for Subclass members, that "in no event" would copayments "exceed the amount paid by the plan to the Pharmacy — were uniform and are susceptible to classwide proof.

Causation, or reliance on this common misrepresentation, can also be established on a class-wide basis.  In the case of fraudulent overbilling, payment "may constitute circumstantial proof of reliance . . . ." *U.S. Foodservice*, 729 F.3d at 119-20 (internal quotation marks omitted).[10]  Generalized proof that Defendants concealed these fraudulent billing practices, such as the pharmacy "gag clauses" and Cigna employees' amazement that a customer would "know about spread" (as discussed above) serve as further class-wide proof of reliance.  *Id.* at 120.

Finally, as explained in relation to Plaintiffs' ERISA claims, losses can be proved on a class-wide basis.  Damages under RICO § 1964(c) must place the injured parties "in the same position they would have been in but for the illegal conduct." *Id*. at 122.  The "key inquiry" in determining RICO damages here is the amount of the "clawbacks." As explained above and in the Mustoe Report, Plaintiffs' expert is able to calculate RICO damages on a class-wide basis using a common methodology.  Ex. A (Mustoe Decl.) at 15. Accordingly, Plaintiffs' RICO claims present no individualized issues that preclude class certification.

---

[10]  Moreover, "[u]sing the mail to execute or attempt to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Bridge v. Phoenix Bond. & Indem. Co.,* 553 U.S 639, 648-49 (2008).

Respectfully submitted,

Dated: March 2, 2020

*s/ Robert A. Izard*

Robert A. Izard (ct01601)
*Plaintiffs' Interim Co-Lead Class*
*Counsel*
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone:  860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
*Plaintiffs' Interim Co-Lead Class*
*Counsel*
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com

21

calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT
LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice
pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice
pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789
Facsimile:  985-783-1333

andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:   504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:   516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:   866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice
pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:   612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN

23

KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs