UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>Defendants. | No. 16-cv-1702 (JAM)<br>(Consolidated)<br><br>CLASS ACTION<br><br>April 13, 2020 |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DE-DESIGNATE AND UNSEAL CLAIMED "CONFIDENTIAL" DOCUMENTS**

Cigna's attempt to cast as "confidential" its years-old documents about legacy plan language and its unlawful adjudication practices is improper. As set forth in Plaintiffs' opening memorandum, documents may ***only*** be sealed if such sealing "is ***essential*** to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006) (emphasis added); *see generally* [ECF No. 212-1] at 3. Cigna's "desire to avoid embarrassment or reputational harm certainly is not a compelling reason to grant a confidentiality order." *Lobato v. Ford,* No. 05-cv-01437-LTB-CBS, 2007 WL 3342598, at *11 (D. Colo. Nov. 9, 2007) (citation and quotation marks omitted); *see generally* [ECF 212-1] at 5-6. Moreover, although Plaintiffs filed the motion to de-designate, the burden is on ***Defendants***, as the party seeking to maintain confidentiality, to justify the designations. Protective Order [ECF No. 92] at ¶ 14 ("the burden shall be on the Designating Person to show why the designation is proper").

Defendants do ***not*** dispute the high standard for sealing the public Court record, or that they bear the burden of proof. *See generally* Defendants' Opposition to Plaintiffs' Motion to De-Designate ("Def. Opp.") [ECF No. 224] at 7-9 (discussing standard of review); Declaration of Tyler Lester in support of Defendants' opposition ("Lester Decl.") [ECF No. 226]. As discussed below, Defendants have wholly failed to meet that burden.[1]

## I. The Meet and Confer Process

Defendants' discussion of the meet-and-confer process (Def. Mem. at 3-4) is inaccurate and designed to mask its months of corporate delay and avoidance. Plaintiffs began the meet-and-confer process to de-designate the documents at issue on December 16, 2019. *See* Declaration of Craig A. Raabe ("Raabe Decl.") at ¶ 2. Plaintiffs sought to ensure that the public's first amendment right to examine the judicial record of Cigna's "clawback" scheme was not hampered and they sought to avoid the administrative hassle of filing outdated, non-confidential documents under seal. Of the millions of pages of documents that Plaintiffs reviewed, they narrowly selected approximately twenty supposed "confidential" documents for de-designation. *Id.* at ¶ 3. The documents fit into a one-inch binder and the majority of them are from 2013 and 2014, when Cigna hatched its "clawback" scheme. *Id.*

In the four months since approaching Defendants, Plaintiffs have repeatedly requested that Cigna meet its obligation to specifically identify any supposed confidential information in the subject documents (*Id.* at ¶ 4) – a process that reasonably would take just a few hours. Plaintiffs twice requested that Cigna create highlighted pdfs showing Plaintiffs what material

---

[1] In this Reply, for the sake of efficiency, Plaintiffs highlight some of the most significant flaws in Defendants' arguments. However, Plaintiffs disagree with all of Defendants' assertions whether specifically addressed or not, and, except where otherwise noted, respectfully submit that Defendants have not established good cause for sealing any of the disputed documents.

Cigna baldly claimed as "confidential." Cigna refused. *Id.* at ¶ 5. Despite multiple meet and confer sessions, Cigna's opposition memorandum is the first time that it has identified a single word or phrase that it claims reveals confidential information by preparing for the court precisely what Plaintiffs asked it to do for them: create highlighted pdfs specifying its claims of supposed confidentiality. *Id.* at ¶ 6. Accordingly, Cigna's suggestion that Plaintiffs could have engaged in a "more meaningful meet-and-confer" (Def. Mem. at 4) is baseless.

## II. The Court Should Unseal the Contested Documents

Cigna's attempt to prevent public access to most of the materials that support class certification is an affront to the public's right of access to the judicial process.[2] It is unjustly designed to prevent the public from seeing and understanding the details of Cigna's pernicious "clawback" scheme at the heart of this case. Throughout its memorandum, Cigna presents just one fundamental justification for maintaining confidentiality of the disputed documents: that they constitute "commercially sensitive business information [that] would cause significant competitive harm" to Cigna if disclosed. Def. Mem. at 7; *see also id.* at 7-8, 9, 10, 13; Lester Decl. at ¶ 4. But that exception to the principle of open courts is narrowly and strictly tailored, requiring "***clearly defined*** and ***serious*** injury resulting from disclosure." *In re Martinzez Sampedro,* No. 3:18-mc-47 (JBA), 2019 WL 3423568 at *4 (D. Conn. July 30, 2019) (emphasis added); *see generally* [ECF No. 212-1] at 3-7. As set forth below, Defendants wholly fail to meet this high standard.

---

[2] Defendants have agreed that Exhibits L and N to Plaintiffs' Motion for Class Certification and Exhibit 1 to Plaintiffs' Memorandum of Law in Opposition to Cigna's Motion to Dismiss Counts IX and X may be unsealed. Tyler Decl. at ¶ 9 and n.3. Likewise, Plaintiffs do ***not*** object to Cigna's proposal to redact transaction identifiers or personally identifiable information relating to Cigna customers or policyholders in Exhibits O, Q (subject to the limitations discussed in Part II.B below) and V. *See* Tyler Decl. at ¶ 18.

### A. Exhibits C, M and J

Cigna and Mr. Lester argue that two portions of these three Exhibits (which are all alternate versions of the same internal Cigna email thread) constitute business records of the type that warrant protection. *See, e.g.,* Def. Mem. at 5 (claiming that these documents contain "details of a commercially sensitive, strategic pharmacy business project"); Lester Decl. at ¶ 11 (same). First, Cigna seeks to hide from public disclosure its frank contemporaneous admission in 2013 that it was engaging in precisely the misconduct that Plaintiffs now allege:

> **Overview**
> Customers occasionally pay the pharmacy more than the cost of the drug because of spread. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Today Argus inflates the ingredient cost paid and reports the dollars as $0 due rather than a negative, which does not provide an avenue for automatically collecting from the pharmacies.

*See* Ex. C to the Lester Decl. at CIGNA00054924 (Defendants have placed a "box" around the specific sentence they propose to redact).³ But this is not the type of specific, proprietary business information that warrants protection to preserve sensitive commercial interests. Rather, it is a general discussion of (and admission to) the very "clawback" scheme that is already alleged in detail in Plaintiffs' complaint, and thus is *already* public. *See generally* Second Amended Consolidated Complaint ("SACC"). Indeed, Plaintiffs, **with Cigna's consent,** have already quoted similar language from other portions of these *same emails* in the SACC. *See, e.g.,* SACC at ¶¶ 3 and 35 (quoting Ex. C), 112 ("To me that is no longer a 'co'pay, but more of a single (over)payment by the customer") (quoting Ex. J), 124 (quoting Ex. M).

Accordingly, Cigna's proposed redaction does not keep secret any sensitive business information. Rather, Cigna is seeking to avoid the embarrassment of having even more of its

---

³ The same language and proposed redaction appear in Ex. J at CIGNA00054927 and Ex. M at CIGNA00055862.

own damning words out in public view. It seeks to avoid the reputational hit that would arise from letting the public read Cigna's own words in the context of Cigna's own documents. But these concerns do not warrant depriving the Class and the public of their essential right of access to the full Court record.

Cigna also seeks to redact from the same documents a chart giving an illustrative numerical example of Cigna's 'clawback" scheme. Ex. C to the Lester Decl. at CIGNA00054924; Ex. J at CIGNA00054928; Ex. M. at CIGNA00055862-63. However, this chart also does not disclose sensitive business information. No specific product is mentioned; there is no cost or pricing information for any particular transaction or category of pharmaceutical. Rather, the chart provides a hypothetical example of the "clawback" scheme and its value to Cigna in an unspecified transaction. This is not the type of sensitive commercial information that confidentiality orders are meant to protect. Indeed, Defendants themselves do ***not*** seek to redact from elsewhere in the email chain a discussion (including the exact same numbers) of the ***exact same*** example that is used in the chart. *See* Ex. M to the Lester Decl. at CIGNA00055858. Moreover, the SACC already, with Defendants' consent, made public several real-world numerical examples of Defendants' "clawback" scheme. *See* SACC at ¶ 6, 31.

### B. Exhibits O, Q and R

Defendants seek to redact from Exhibits O, Q and R the specific numerical discussions among Cigna employees of the financial value of Cigna's "clawbacks." *See* Lester Decl. at ¶¶ 16, 17. However, neither Exhibit O nor R includes specific drug names or any personal identifiers. Accordingly, and for the same reason as discussed above in Part II.A., these Exhibits do not disclose sensitive commercial information and therefore should not be sealed. Exhibit Q (at CIGNA07504939) includes both "clawback" figures and what appears to be personal account

identifiers. Plaintiffs do not object to redaction of the account identifiers but believe that the numerical examples should be unsealed for the reasons discussed above.

### C. Exhibit K

Exhibit K includes both numerical "clawback" discussions that do *not* reference specific drugs (*see, e.g.,* CIGNA00491618), as above, and charts setting forth the "clawback" amounts (and underlying related figures) that are matched to specific pharmaceuticals (*see, e.g.,* CIGNA00491618-19). Cigna seeks to redact both types of discussion as "sensitive business information." Lester Decl. at ¶ 16.

Cigna's argument is unavailing. First, the generic discussions of "clawback" amounts should not be redacted for the reasons set forth above. Second, the discussions matching "clawbacks" to specific drugs likewise should not be redacted. As an initial matter, it is unlikely that information concerning the "clawbacks" Cigna received on specific drugs still has commercial value nearly four years after the date of the Exhibit, especially since "clawbacks" are now outlawed in many states, including Connecticut. But even if marginal commercial relevance remains after all that time, any such concern is overridden by the public interest that Class Members who purchased those specific drugs through a Cigna Plan have in knowing how much they were overcharged. For example, in *Grayson v. General Electric,* No. 13-cv-1799 (WWE), 2017 WL 923907 (D. Conn. March 7, 2017), the defendant sought to seal information concerning the repair costs that the defendant charged as confidential commercial information. *Id.* at *4. This Court denied the motion, holding that the information "pertains to the amount that consumers themselves have paid" and so the "public's interest in access" to complete information "outweighs" the defendant's "interest in confidentiality." *Id.* Likewise, Class Members here have a substantial interest in knowing how much they lost to Cigna in illegal

"clawbacks," especially if they purchased one of the specific drugs discussed in Exhibit K. This interest outweighs any confidentiality interest Cigna has in continuing to hide this four-year-old data from the very consumers they wrongfully overcharged.

Cigna also seeks to redact a portion of Exhibit K in which a Cigna employee admits, *inter alia,* that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ because ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. K of Lester Decl. at CIGNA 00491621. This is not specific, sensitive business information that needs to be hidden from the public competitors. Rather, once again, it is simply an admission of the pernicious nature of Cigna's clawback practices as already alleged in the SACC. Cigna may (justifiably) be *embarrassed* by its employees' discussions of the company's improper practices, but that is not enough warrant sealing from the public.[4]

### D. Exhibit P

This entire Exhibit (from 2015) addresses a single specific customer complaint about "clawbacks" and includes details of the specific "clawback" in that customer transaction. As discussed in Part II.C. above, Class Members have a substantial interest in accessing and understanding Cigna's "clawbacks" and overcharges for specific drugs that those consumers may themselves have purchased, which strong interest overcomes any marginal concern Cigna may have in preserving the confidentiality of this five-year-old pricing data.

### E. Exhibit T

Cigna's request to maintain the entirety of one of its substantive interrogatory responses under seal (Lester Decl. at ¶ 14; Def. Mem. at 10) is without merit. The interrogatory at issue

---

[4] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

asks Cigna to match claims with the particular Plans (and Plan language) under which they arose. *See* Ex. T at p. 5.  Insofar as Cigna's ability to match claims to Plan language and perform reprocessing may be a significant issue in this case (*see* SACC at ¶¶ 129-31) and could affect Class Member damages and recovery, Class Members and the public have a significant interest in exercising their right of access to the courts and reviewing Cigna's response to this straightforward question.

Moreover, contrary to Mr. Lester's assertion, the response does not provide a "detailed" overview of "sensitive" claims processes.  Rather, the one-page response (once boilerplate objections are removed) provides only a very high-level review of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. T at pp. 6-7.  Cigna's generalized discussion of how it discharges the duties at issue in this litigation are a matter of great public interest to Class Members, and do not constitute the type of specific, sensitive business information disclosure of which could place Cigna at a competitive disadvantage and so warrants being sealed.

      **F.**      **Exhibits D, E, F, G, H, I, U and W**

Defendants wrongfully seek to maintain the entirety of each of these multi-page documents under seal, with little more than blanket assertions that each contains allegedly "proprietary" or "confidential" information.[5]  *See generally* Lester Decl. at ¶¶ 12, 15, 16; Def. Mem. 10.  This does not come close to satisfying the particularized showing and "narrow tailor[ing]" required in the Second Circuit to deprive the public of access to a court document. *Lugosch*, 435 F.3d at 119.  Oddly, Defendants accuse Plaintiffs of being overbroad in their de-

---

[5] Contrary to the index chart included in ¶ 9 of the Lester Declaration and as demonstrated by a review of the Exhibits attached thereto, Defendants are seeking to maintain the seal on Exhibit F in *full*, not merely in part.  Likewise, although Defendants do not seek to maintain the *entirety* of Exhibit E under seal, they seek to seal most of that Exhibit, as discussed below.

designation requests.  Def. Mem. at 11-12.  In doing so, Defendants are wrongly attempting to shift *their* burden, essentially asking Plaintiffs explain why these exhibits should *not* be maintained under seal.  But as discussed above, it is **Defendants'** responsibility to justify the sealing of a document once a confidentiality designation is challenged.  They cannot simply assert the confidentiality of several entire Exhibits, and then require Plaintiffs to prove otherwise.

Moreover, even a facial review of each of these Exhibits demonstrates that at least portions (if not the entirety) thereof contain information relevant to this litigation that Class Members have a First Amendment right to access and review and that are not the type of narrow, sensitive business information that warrants being sealed.

- *Exhibit D*:  This exhibit includes discussion of the fact that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  Cigna allowed Plaintiffs to publicly quote one passage from this document in their motion for class certification.  *See* [ECF No. 209] at 4.  Nonetheless, Cigna now seeks to prevent Class Members from actually seeing the quoted email itself, or any of the surrounding discussion.

- *Exhibit E*: Cigna allowed Plaintiffs to publicly quote in their motion for class certification the second-to-most-recent email in this chain, in which "clawbacks" were identified as a "top priority" at Cigna.  *See* [ECF No. 209] at 4; CIGNA00248002.  However, although Cigna has not sought to redact that specific email, Defendants seek to redact (and so bar Class Members from seeing) the earlier emails in the chain leading to that admission.  The public is entitled to see the full context.

- *Exhibit F:* As Cigna acknowledges (Lester Decl. at ¶ 12.f), this 2014 document discusses at length (including with generic numerical examples) the mechanics of Cigna's "clawback" scheme.  No actual drug or customer account is discussed.  Exposing Cigna's

internal discussions regarding the company's improper "clawbacks" may well be embarrassing to Cigna, but such discussions do not constitute commercially sensitive information such as to warrant sealing.

- *Exhibit G:* This Exhibit is a slideshow presentation regarding an internal review of Cigna's Plan language. Insofar as Cigna's failure to adhere to Plan language is a critical element of this case (*see* SACC at ¶¶ 41-45), Class Members have a substantial interest in having access to this information and understanding Cigna's processes.

- *Exhibits H and I:* In connection with Plaintiffs' allegations that Cigna failed to adhere to Plan language, Cigna allowed Plaintiffs to publicly quote in their motion for class certification language from Exhibit H that Cigna faced "risks due to inconsistencies between plan language and how we administer claims," and from Exhibit I that those risks included "a class action by many customers." [ECF No. 209] at 4. However, Cigna now impermissibly seeks to prevent Class Members from actually seeing the quoted passages, or any of the surrounding discussion or context.

- *Exhibits U and W:* As Cigna acknowledges (Lester Decl. at ¶ 15), these Exhibits concern Cigna's ability to reprocess claims. As discussed in Part II.E above, Cigna's ability to match claims to Plan language and perform reprocessing may be a significant issue in this case and could affect Class Member damages and recovery, and Class Members are entitled to access documents relevant to the issue.

### III. CONCLUSION

For the foregoing reasons, Cigna should be ordered to remove the confidentiality designations from the documents attached to the Raabe Declaration [ECF 210] as set forth in Plaintiffs' Motion to De-Designate [ECF No. 212] and above and they should be unsealed.

Dated: April 13, 2020                                      Respectfully submitted,

                                                  *s/ Craig A. Raabe*
                                    Robert A. Izard (ct01601)
*Plaintiffs' Interim Co-Lead Class Counsel*
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone:  860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
*Plaintiffs' Interim Co-Lead Class Counsel*
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com


Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:   516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:   866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN, P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:   612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com
Brad J. Moore
STRITMATTER KESSLER WHELAN KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000

Facsimile: 919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs