UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                 :
KIMBERLY A. NEGRON, DANIEL       :  No. 3:16CV1702(JAM)
PERRY, COURTNEY GALLAGHER,       :
NINA CUROL, ROBER CUROL, and     :
BILLY RAY BLOCKER, JR.,          :
Individually and on Behalf of    :
All Others Similarly Situated,   :
                                 :
               Plaintiffs         :
                                 :
        v.                       :
                                 :
CIGNA CORPORATION, CIGNA HEALTH  :
AND LIFE INSURANCE COMPANY and   :
OPTUMRX, INC.,                   :
                                 :  New Haven, Connecticut
               Defendants        :  April 23, 2020
                                 :
- - - - - - - - - - - - - - - - x


VIDEO MOTION HEARING


B E F O R E:

        THE HONORABLE JEFFREY ALKER MEYER, U.S.D.J.


                              Diana Huntington, RDR, CRR
                              Official Court Reporter

1  A P P E A R A N C E S:

2

3      FOR THE PLAINTIFFS:

4          IZZARD KINDALL & RAABE LLP
               29 South Main Street, Suite 305
               West Hartford, Connecticut 06107

5          BY:  SETH R. KLEIN, ESQ.
               ROBERT A. IZARD, JR., ESQ.

6

7      FOR DEFENDANT CIGNA HEALTH AND LIFE INSURANCE
       COMPANY:

8
           MORGAN LEWIS & BOCKIUS LLP
9              1701 Market Street
               Philadelphia, Pennsylvania 19103

10         BY:  JEREMY P. BLUMENFELD, ESQ.
               BRIAN W. SHAFFER, ESQ.

11             ELEANOR R. FARRELL,ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                        3:00 P.M.

2              THE COURT:  Good afternoon, everybody.  This is

3    Judge Jeffrey Meyer.  We're here for argument on the

4    motion to dismiss in Negron v. Cigna Health and Life

5    Insurance Company.

6              May I have appearance of counsel, please, for

7    plaintiffs.

8              MR. KLEIN:  Seth Klein, Izard Kindall & Raabe,

9    for plaintiffs.

10             MR. IZARD:  Robert Izard, Izard Kindall & Raabe,

11   for plaintiffs.

12             THE COURT:  Okay.  And who do we have here for

13   Cigna?

14             MR. BLUMENFELD:  Good afternoon, Your Honor.

15   This is Jeremy Blumenfeld from Morgan Lewis.

16             THE COURT:  Okay.

17             MR. SHAFFER:  Good afternoon, Your Honor.  Brian

18   Shaffer, also from Morgan Lewis, for Cigna.

19             THE COURT:  All right.

20             MS. FARRELL:  Eleanor Farrell for defendant

21   Cigna.

22             THE COURT:  All right.  Great.  I think we have

23   everybody covered, and I see we have our court reporter as

24   well.  So if we'd like to go ahead, then, and proceed with

25   respect to defendant's motion.  Who will be presenting
```

1    argument?

2           MR. BLUMENFELD:  Your Honor, that would be me,

3    Jeremy Blumenfeld.

4           THE COURT:  Please proceed.

5           MR. BLUMENFELD:  Thank you very much,

6    Your Honor, and thank you for hearing us in these unusual

7    circumstances.  We all very much appreciate it.

8           As mentioned, my name is Jeremy Blumenfeld and

9    I'm counsel for Cigna Health and Life Insurance Company.

10   With the Court's permission, I'll refer to that entity as

11   "Cigna" during the course of my presentation today.

12          THE COURT:  Okay.

13          MR. BLUMENFELD:  We are here on our motion to

14   dismiss Counts IX and X of the Second Amended Consolidated

15   Complaint which is the state law breach of contract and

16   the state law claim for breach of the implied covenant of

17   good faith and fair dealing both brought by plaintiff

18   Mr. Blocker.

19          THE COURT:  And I take it there's no dispute

20   that it's governed by Georgia law.

21          MR. BLUMENFELD:  I believe that's correct,

22   Your Honor.  That seems to be what the parties have agreed

23   upon, yes.

24          THE COURT:  Okay.

25          UNIDENTIFIED COUNSEL:  Yes, Your Honor.

1          THE COURT REPORTER:  I'm sorry, who was that?

2          MR. BLUMENFELD:  Before I delve into the

3  argument, Your Honor --

4          THE COURT REPORTER:  Excuse me.  I didn't get

5  who piped up.

6          MR. KLEIN:  I'm sorry, that was Seth Klein for

7  plaintiffs agreeing that Georgia law applied here.

8          THE COURT:  Great.

9          So as you can see, our court reporter needs to

10  have a very clear identification of whomever has added or

11  said anything on the record.

12          Mr. Blumenfeld, please proceed.

13          MR. BLUMENFELD:  Thank you very much.

14          This is a putative class action involving

15  employer-sponsored health care benefits, specifically

16  prescription drug coverage.  As Your Honor likely is

17  aware, most employer-provided health care benefits are

18  governed by ERISA, the Employee Retirement Income Security

19  Act.  Some employer-provided health care benefits are in

20  fact governed by state law, though.  And that's because

21  there are generally two exceptions in ERISA to ERISA's

22  coverage: one, for plans known as church plans, that is

23  plans associated with a religious institution; and two,

24  for governmental plans, that is plans that are associated

25  with a governmental body like the one that's at issue here

1     for Cobb County, Georgia.  Regardless of whether state law

2     applies or the plan is governed by ERISA, there are some

3     basic circumstances that lead to the adoption and

4     administration of a plan, and I'd like to talk briefly

5     about what those are.

6          The starting point, Your Honor, is the plan

7     sponsor; that is, the employer.  The first thing an

8     employer has to do is decide that it wants to offer an

9     employee benefit plan in the first place.  And assuming

10    that it does so, it has to decide how it wants to fund

11    those benefits.  Some employers actually purchase

12    insurance to cover the benefits that are owed.  Other

13    employers, particularly middle size and larger employers,

14    generally decide to self-fund their insurance; that is to

15    self insure, which means there's no insurance company

16    involved.  Although it's often referred to as insurance,

17    that's a misnomer in that circumstance because there's not

18    actually any insurance involved.

19         The employer also has to decide what benefits it

20    wants to provide to employees.  And in that capacity, and

21    in deciding how it's going to fund those benefits, it acts

22    as the plan sponsor.  So sometimes the terminology is

23    "Employer," sometimes the terminology is "Plan Sponsor,"

24    but that's really referring to the same thing.

25         When it comes to how plans are going to be

1    administered, it really depends on whether the plan is an

2    insured plan, as I mentioned before, or a self-insured or

3    self-funded plan.  If the plan is insured, typically the

4    insurance company that insures the benefits and is

5    responsible for paying the benefits also handles

6    administration of the plan.  If the plan is self-insured

7    or self-funded, then the employer, of course, can handle

8    that administration itself if it wanted to, much like an

9    employer handles other aspects of the employment

10   relationship.  But in that circumstance, many, maybe most,

11   maybe the vast majority of employers hire a third party,

12   they subcontract out that administration work to an

13   administrative services organization that is going to

14   handle the administration of that plan.  But even in that

15   circumstance, Your Honor, it is the plan sponsor that is

16   responsible for paying the benefits because they're not

17   insured; that is, they're not insured by a third party,

18   they are self-insured or self-funded.

19           And that, Your Honor, brings us to the

20   circumstances regarding Mr. Blocker.  He was a participant

21   in the Cobb County, Georgia, medical plan.  That's

22   reflected in paragraph 65 of the complaint.  And that plan

23   was exempt from ERISA because it's a governmental body and

24   so it's governed by state law, in particular Georgia state

25   law.  Cobb County decided it was not going to purchase

1    insurance for those benefits but was going to self-fund or

2    self-insure those benefits.  That's reflected, Your Honor,

3    in two important places: one, is again paragraph 65 of the

4    complaint; and two, is in the terms of the actual Plan

5    itself.

6            And Your Honor, it was I who had asked yesterday

7    about the possibility of using an exhibit or two, and I

8    know we got word back that you have copies of the exhibits

9    handy.

10           THE COURT:  I'll pull them up if need be, okay?

11           MR. BLUMENFELD:  That would be great.  The Plan

12   is Exhibit A and Exhibit B to our motion to dismiss.

13           THE COURT:  Okay.  If you hold on just a moment,

14   let me see if we can --

15           MR. BLUMENFELD:  Understood.  If it's helpful,

16   Your Honor, it's Docket 202-2.  And in particular, page 5

17   of 30 of the PDF.

18           THE COURT:  All right.  Hold on a moment, I'm

19   almost there.  It's Exhibit A, did you say?

20           MR. BLUMENFELD:  It is, yes.

21           THE COURT:  Okay.  Page 25?

22           MR. BLUMENFELD:  Page 5.

23           THE COURT:  5, pardon me.

24           MR. BLUMENFELD:  Which says at the top

25   "Important Information."

1                    THE COURT:  Got it.

2                    MR. BLUMENFELD:  Great.

3                    And just so the record is clear, Exhibit B is a

4    copy of the Plan from 2016, Exhibit A is from 2014.  The

5    relevant language for today's purposes is the same.

6                    THE COURT:  Okay.

7                    MR. BLUMENFELD:  That first page of the text

8    under the Important Information section describes the Plan

9    and contains, as the heading suggests, important

10   information about the Plan, first saying "This is not an

11   insured benefit plan," and then saying "The benefits

12   described in this booklet or any rider attached hereto are

13   self-insured by Cobb County Government which is

14   responsible for their payment."

15                   The next sentence is a sentence that plaintiffs

16   focus on in their opposition brief which says that

17   "Cigna," and goes through the whole name, "provides claims

18   administration services to the plan, but Cigna does not

19   insure the benefits described."

20                   The second paragraph of this document also

21   contains important information, specifically "This

22   document may use words that describe a plan insured by

23   Cigna.  Because the plan is not insured by Cigna, all

24   references to insurance shall be read to indicate that the

25   plan is self-insured.  For example, references to 'Cigna,'

1   'insurance company,' and 'policyholder' shall be deemed to

2   mean your employer."  That's the first document that is an

3   important one for consideration of the present motion.

4          The second document is what I referred to

5   earlier, which is the subcontract between Cigna and Cobb

6   County, Georgia.

7          THE COURT:  Before you get to that, I have a

8   question for you.

9          MR. BLUMENFELD:  Sure.

10          THE COURT:  It strikes me that essentially your

11   major argument here is that for the Plan itself, whichever

12   version, A or B, Exhibit A or B, your argument is that

13   Cigna, specifically CHLIC, is simply not a party to that

14   contractual document; is that right?

15          MR. BLUMENFELD:  That's correct, Your Honor.

16          THE COURT:  And so I take it, then, that party

17   status is not dependent on Cigna's function as insurer or

18   administrator, necessarily, right?

19          MR. BLUMENFELD:  It would not be, to the extent

20   that what you are talking about was a state law breach of

21   contract claim.  However, for an insured benefit plan, the

22   insurance company would be a signatory or a party to that

23   contract in that circumstance.

24          THE COURT:  Almost invariably it would end up

25   being that way.  Your argument is this is not an insured

1    benefit plan and, consistent with that, if we go to the

2    end of the Plan document and we look at who is described

3    as the parties to the Plan, Cigna is not one of them.

4               MR. BLUMENFELD:  Cigna is not a signatory to it,

5    correct.

6               THE COURT:  All right.

7               MR. BLUMENFELD:  This is confirmed in the

8    Administrative Services Agreement, Your Honor, that

9    plaintiffs attach to their opposition brief.  They attach

10   it as Exhibit 1 to their opposition brief, and there are a

11   few portions of that document as well that I think bear on

12   Mr. Blocker's claims.

13              THE COURT:  Okay.

14              MR. BLUMENFELD:  That document, Your Honor, does

15   not have an ECF heading on it because it was filed under

16   seal.

17              THE COURT:  All right.  So just tell me what

18   docket number that is that you want me to look at.

19              MR. BLUMENFELD:  I believe it's 216, Your Honor.

20              THE COURT:  Okay.  Exhibit 1?

21              MR. BLUMENFELD:  Exhibit 1, correct.

22              THE COURT:  Okay.

23              MR. BLUMENFELD:  So the first thing, Your Honor,

24   is both we and plaintiffs agree that you have to look at

25   the Administrative Services Agreement, the subcontract, in

1    order to evaluate Mr. Blocker's claims.  Obviously they

2    attach it to their opposition brief because they believe

3    it bears on their claims.  We agree.

4         The second, plaintiffs note that the

5    Administrative Services Agreement actually incorporates

6    the Plan as an exhibit to that agreement; that is, the

7    Administrative Services Agreement has a lot more beyond

8    just the Plan, but it does say that the Plan is

9    incorporated into and is an attachment to that

10   Administrative Services Agreement.

11        Third, plaintiffs note in their opposition

12   brief, Footnote 5, that the Administrative Services

13   Agreement defines the term "Plan Benefits" -- and

14   specifically it's a capital P, capital B Plan Benefits --

15   and defines it as the "Amounts payable for covered health

16   services and products under the terms of the Plan."

17        Four -- and this is something that plaintiffs

18   don't address in their opposition brief -- the

19   Administrative Services Agreement says "Employer is

20   responsible for all Plan Benefits, including Plan Benefits

21   paid as a result of any legal action."  And Your Honor,

22   that's in Section 7a of the Administrative Services

23   Agreement which appears on internal page 8 of that

24   document.

25             THE COURT:  I think it's -- yes, I see.  Okay.

1    I have it, thank you.

2              MR. BLUMENFELD:   Sure.

3              Fifth, Your Honor, as we note in our reply

4    brief, the Administrative Services Agreement says in

5    Section 13, which is on internal page 9, regarding third

6    party beneficiaries, "This Agreement is solely for the

7    benefit of Employer and Cigna Health and Life Insurance

8    Company.  It shall not be construed to create any legal

9    relationship between Cigna and any other party."  Again,

10   no third party beneficiary provision.

11             So where does that leave us, Your Honor?  There

12   are two documents.  The Plan, as a stand-alone thing, to

13   which Cigna is not a party with Mr. Blocker, it didn't

14   agree to the terms of that document as a stand-alone

15   contract, it certainly did not agree to enter into any

16   contract with Mr. Blocker.  And you have the

17   Administrative Services Agreement.  And the Administrative

18   Services Agreement says no third party beneficiaries and

19   makes clear what is reflected in the Plan, which is that

20   the employer, Cobb County Government, is responsible for

21   the payment of any benefits that are due, including

22   benefits due as a result of any legal action.

23             Now, plaintiffs refer to provisions of the Plan

24   that talk about Cigna agreeing to cover certain things.

25   And that's on page 4 of their opposition brief,

1    Your Honor.  They quote and they use the actual cutout of

2    the image from the document Prescription Drug Benefits, a

3    provision that they highlight which says "Cigna will

4    provide coverage for those expanses as shown in the

5    Schedule."  And then a little bit later on in the same

6    block they quote the provision which says "the

7    prescription will be covered by Cigna."  But that ignores

8    that beginning phrase on the Important Information section

9    of the Plan way at the beginning, page 5 of that PDF,

10   where it says that references to Cigna shall be deemed to

11   mean your employer.  In other words, where they quote the

12   language saying Cigna will provide coverage, that's

13   deemed, under the terms of the contract that they say

14   exist, to mean your employer will provide coverage for

15   those expenses as shown in the schedule.  And where it

16   says the prescriptions will be covered by Cigna, that is

17   deemed to mean the prescriptions will be covered by your

18   employer, i.e., Cobb County, Georgia.  And that makes

19   perfect sense, Your Honor.

20           THE COURT:  Help me understand a little bit in

21   terms of, what's the function?  Why have this very odd

22   language in which the Plan is supposedly saying Cigna will

23   do such and such but, by the way, when we say Cigna, we

24   don't mean Cigna?  That's a bit odd and maybe misleading,

25   isn't it?

1    MR. BLUMENFELD:  I don't think so, Your Honor,

2  because this is a document that is intended to apply to

3  both insured benefits and self-insured benefits.  Cobb

4  County, Georgia, could have changed the language of the

5  Plan if they wanted to.  There's actually a provision in

6  the Administrative Services Agreement, they could write it

7  differently if they wanted to, give Cigna certain notice,

8  and then the new Plan terms would be applicable.  This is

9  a way to cut through some of that.  Frankly, it gets back

10  to the point I raised earlier, Your Honor, that it is a

11  misnomer to refer to this as insurance when it isn't

12  insurance, there's no insurance company role or insurance

13  policy.  Cigna, although it is an insurance company, is

14  not acting in that capacity in the context of a plan like

15  this.

16    THE COURT:  It's just doing the administration.

17    MR. BLUMENFELD:  It's handling certain aspects

18  of the administration of the Plan.  Not all of them, but

19  certain aspects.

20    THE COURT:  I see.  Okay.

21    MR. BLUMENFELD:  And it's doing so,

22  Your Honor -- and this is really the important piece --

23  it's doing so pursuant to the Administrative Services

24  Agreement which is an agreement only between Cobb County

25  and Cigna and which has no third party beneficiaries.  And

1   which makes clear that it's the employer, the same entity

2   that's designated as the Employer in the Plan responsible

3   for the benefits, it's the employer responsible for those

4   benefits whether as a result of a legal action or

5   otherwise.

6              THE COURT:  Okay.

7              MR. BLUMENFELD:  Because there's no breach of

8   contract claim by Mr. Blocker against Cigna, there can't

9   be a breach of the duty of good faith and fair dealing

10  claim.  The case law on that is clear.  We cite a couple

11  of cases, the *Bankston* case from 2015 from the Georgia

12  Court of Appeals, and the *Caesar v. Wells Fargo* case from

13  the Georgia Court of Appeals from 2013.  I don't think

14  that issue is disputed by plaintiffs.  Because Mr. Blocker

15  and Cigna have no contractual relationship between them,

16  there can't be a breach of the duty of good faith and fair

17  dealing between them.

18              Now, just a couple of last points, Your Honor.

19              First, plaintiffs talk in their brief about the

20  *Monroe v. Board of Regents* case.  And that decision and

21  that opinion is distinguishable on the precise issue that

22  you raised a few moments ago in your question.  In *Monroe*,

23  the Georgia Court of Appeals noted twice in the opinion

24  that Blue Cross had specifically signed that plan document

25  and agreed, as a signatory, to certain provisions of it,

1   including a provision which said "The Claims Administrator

2   hereby agrees to administer for the employees of the Plan

3   Sponsor, the benefits described herein."  In other words,

4   that was the contractual commitment from Blue Cross which

5   it signed right in that spot to the employees.  Here, you

6   have some slightly similar language, but it's important

7   and different in a couple of material ways.  One, in that

8   Important Information section where it says Cigna is going

9   to administer the benefits, it says "Cigna Health and Life

10  Insurance Company provides claim administration services

11  to the Plan."  Not to the employees, not for the

12  employees, but to the Plan.  And that's because Cigna's

13  contractual relationship is with the Plan, the Plan

14  Sponsor, Cobb County, Georgia.

15          It wouldn't have been noted twice in the Georgia

16  Court of Appeals' opinion in the *Monroe* case that

17  Blue Cross actually signed that document if that wasn't

18  the key aspect of the holding of that case.  And we don't

19  have those facts here.  They don't allege those facts

20  here.  And that case therefore doesn't support plaintiffs'

21  argument here.

22          Lastly, Your Honor, I'd like to turn to the

23  Legal Action section of the Plan, which is another

24  argument that plaintiffs made.  They point out that the

25  Plan says that you can't file suit against Cigna until you

1    exhaust the Step One and Step Two appeal process.

2    Your Honor, that's contained --

3            THE COURT:  I'm familiar with that provision.

4            MR. BLUMENFELD:  Thank you.

5            So the first part of that provision, Your Honor,

6    starts with "If your Plan is governed by ERISA."  Of

7    course, we're not dealing with a plan governed by ERISA,

8    and therefore the Legal Action section really is

9    irrelevant to Mr. Blocker's claims here.  But maybe more

10   importantly, getting back to where we started on that

11   Important Information provision, what that says right at

12   the front of the Plan is that where it says you may not

13   initiate a legal action against Cigna until you have

14   exhausted these appeal procedures, that is deemed to mean

15   you cannot initiate a legal action against Cobb County,

16   Georgia, until you have completed the Level-One and

17   Level-Two appeal procedures.

18           THE COURT:  And I take it as well that that

19   entire provision doesn't speak to what kind of legal

20   action.  So, in other words, even if there were a legal

21   action to be taken, it doesn't say they're somehow

22   authorized that it be a contract action as opposed to some

23   form of tort action.

24           MR. BLUMENFELD:  That's certainly true,

25   Your Honor, it doesn't reference the contract action.  The

1    beginning of the section does talk about bringing a civil

2    action under Section 502 of ERISA, though, which obviously

3    Mr. Blocker is not doing here.

4              THE COURT:  Anything else?

5              MR. BLUMENFELD:  I don't have anything else,

6    unless you have other questions for me, Your Honor.

7              THE COURT:  No.  Thank you.

8              We'll hear from plaintiffs.

9              MR. KLEIN:  Thank you, Your Honor.  This is Seth

10   Klein.

11             THE COURT:  Hold on just a second.  I'm going to

12   slow you down and make sure our court reporter is doing

13   okay.  Give us a nod.  Great.

14             Please proceed, Mr. Klein.

15             MR. KLEIN:  We certainly agree with some of the

16   preliminary points they made.  Clearly they are an

17   administrator here in the context of Mr. Blocker's plan.

18   We don't deny that, we don't claim that they're insuring

19   the benefits.  But they are the administrator.  And the

20   administration is really what this entire case is about,

21   both in the ERISA context and for Mr. Blocker.  We're not

22   saying that Cobb County failed to pay amounts that were

23   due; we're saying that Cigna, in its role as

24   administrator, improperly calculated the amounts that

25   Mr. Blocker and other plaintiffs had to pay to the

1    pharmacy and that Cigna properly clawed that back.  So the

2    allegation of wrongdoing here really does not involve

3    Cobb County; they just did and paid whatever Cigna told

4    them to pay.  The issue is that Cigna improperly and in

5    violation of a plan miscalculated what was due to them

6    from the plaintiffs, and that is why Cigna is here and not

7    Cobb County.

8              THE COURT:  So I get that.  I understand you're

9    not happy with Cigna.  But really the issue here is the

10   form of wrongdoing that you believe happened here, is it

11   cognizable under a contract theory -- right? -- under

12   whether it's direct contract or breach of the covenant of

13   good faith and fair dealing.  And I take it you don't

14   dispute that if the contract claim fails, the covenant

15   claim fails, right?

16             MR. KLEIN:  We do not dispute that, but the

17   terms of the contract claim --

18             THE COURT:  Right, I know you want to defend the

19   contract claim.  I'm having a hard time understanding -- I

20   don't think -- I don't know that I've ever held a party

21   liable for a contract that they themselves didn't sign or

22   didn't agree, there wasn't a meeting of minds, I guess,

23   between the two parties there.  I know sometimes you have

24   third party beneficiary arguments to be made, but you're

25   not even really making that here, it seems.  Maybe you're

1    making it in part, but at least as to the Plan document

2    itself, you're essentially saying there's a third party

3    not beneficiary but a third party obligee, essentially

4    somebody who didn't sign the contract at issue that you're

5    seeking to enforce should be on the hook.

6         MR. KLEIN:  I would disagree a little bit,

7    actually, with your characterization of what I would say.

8    I would agree that there is no direct contract claim here.

9    There's no contract directly between Cigna and

10   Mr. Blocker.  And we've never argued that.  I know that

11   defendants repeatedly say that in their briefs, but that's

12   not something we've actually argued.

13        Where I'm going to disagree with your

14   characterization of our argument is we very much believe

15   there's a third party beneficiary situation here.  And we

16   understand the defendants' opposition to our citation to

17   the *Monroe* case.  And upon reading their reply, I think it

18   probably still applies, but we went to look to see if we

19   could find a more on-point case that might overcome their

20   objection.  And so I'd like to refer the Court to -- and

21   this was not in our briefs, but I'd like to refer the

22   Court to a case called *Versico v. Engineered Fabrics*, and

23   that's a Georgia Court of Appeals case.  The citation is

24   238 Ga.App. 837.  It's a 1999 case.  And I'll specifically

25   direct the Court to pages 840 and 841 of that decision.

1              And in *Versico* it was a situation where the

2      eventual defendant in the lawsuit was delegated warranty

3      responsibility for some roofing products by another

4      company.  A customer of the original company chose to sue

5      Versico directly -- I'm sorry, chose to sue the defendant

6      Engineered Fabrics directly --

7              THE COURT:  I'm going to just stop you for a

8      second, Mr. Klein.  It's pretty unusual for me to hear

9      about a case for the very first time at argument.  Have

10     you shared this case with defense before the argument

11     today?

12             MR. KLEIN:  No.  It's something we've come up in

13     researching just the past couple of days.

14             THE COURT:  Did you think maybe you might want

15     to just file a docket notice so that I would have had the

16     benefit of looking at the case and the other side would

17     have had the benefit of being able to look at it?  I know

18     you could tell me what the case says.  Frankly, I'd have

19     to take a recess right now and take time to read it and

20     give defense time to read it.  So I'm happy to look at

21     this case, but I don't know much -- I'm not sure what

22     you -- especially if you found out about it two days ago

23     and to kind of spring it right now on me, I'm not sure

24     what I can do about that.  I'm just not sure why it

25     wouldn't have been -- it seems like it would be clear you

1   would just give it to the other side and say we want to

2   talk about it and file a simple thing on the docket or

3   send an email to my law clerk saying I want to talk about

4   this case.

5            MR. KLEIN:  I apologize, Your Honor.  We've been

6   involved -- or I've been involved in other arguments where

7   I've come in with cases and obviously the Court would look

8   at them afterwards and come to it's own conclusion, but if

9   you prefer to --

10           THE COURT:  But that's one of the reasons why we

11   ask parties to file briefings before the argument.  So we

12   don't have an argument and then have all the briefings of

13   the cases happen at the argument, especially if they think

14   it's a really important case that makes a difference to

15   defendant's reliance on the *Monroe* case.  Go ahead and

16   tell me about the case if you'd like, but I will not be

17   able to do anything about it because I haven't had a

18   chance to look at it.

19           MR. KLEIN:  Very well.  Clearly this is a

20   valuable lesson for us going forward that that's your

21   preference, which makes a lot of sense.  We will certainly

22   be doing that in the future.

23           THE COURT:  I would say it's probably most

24   judges' preference to get sort of some advance notice of

25   some case before an attorney is going to start arguing

1    about the case.  It seems like it's just kind of a matter

2    of common sense to let people know that these are cases we

3    want to talk about.

4              MR. KLEIN:  I do apologize, Your Honor.  I won't

5    belabor my description of the case because clearly you're

6    going to read it for yourself, and I'm not going to spend

7    time on it excessively.

8              THE COURT:  I hate to sound so idiosyncratic,

9    but does that not make a little bit of sense to you?

10             MR. KLEIN:  It absolutely makes sense.  I'm just

11   saying I've experienced the other way as well.  But I

12   certainly -- I'm not saying it does not make sense.

13             THE COURT:  Probably with judges much, much

14   brighter and much quicker studies than me.  I just like to

15   somehow be able to read a case beforehand.

16             MR. KLEIN:  Or maybe ones that are less prepared

17   anyway and so don't bother reading in advance, I do not

18   know the answer to that.

19             I will run through the description of the case

20   quickly, then; it goes to the facts of the case that I

21   think will justify it.  Essentially it was a case with a

22   no third party beneficiary clause, as I hope you'll agree

23   when you read it.  And the court ultimately said that the

24   plaintiff would be allowed to sue directly against the

25   delegee notwithstanding the third party beneficiary clause

1    because the contract also provided that the delegee was

2    going to assume all warranty responsibilities, and in fact

3    in its communications with clients had assumed those

4    responsibilities, had them contact us with regard to any

5    warranty issues you have.  And therefore the court said

6    the more specific clause trumps the more general no

7    beneficiary clause.  I think that's not a wholly unusual

8    situation for rejecting a third party beneficiary clause.

9            I could cite another case too, but I'm not going

10   to tempt my fate here and go further down that line.  It

11   certainly is a doctrine I think is somewhat widespread.

12   If the Court wants further briefing, we obviously could.

13           Assuming the Court, when you review the case,

14   agrees with our interpretation of it, I would like to turn

15   to some of the specifics in the documents that are

16   indisputably before the Court.

17           THE COURT:  All right.

18           MR. KLEIN:  Starting with the ASO agreement,

19   which was Exhibit 216, as defense counsel mentioned --

20           THE COURT:  Yes.

21           MR. KLEIN:  -- we certainly agree with what

22   defendant said, that the language itself is incorporated

23   into the agreement.  And I'll turn to some stuff from the

24   Plan in a moment.  I would just point out in the ASO

25   agreement itself, Exhibit 216, that on page 5 which is

```
 1   Section 2c --
 2              THE COURT:  I have it right here.  Go ahead.
 3              MR. KLEIN:  We cite this in our brief.  It makes
 4   clear what I said before, which is that Cigna is the
 5   entity that has the authority, the responsibility, the
 6   discretion to make factual determinations about coverage
 7   determinations, and that all summary plan description
 8   material provided to members will reflect this delegation.
 9   That's the last highlighted portion.  So that just
10   reinforces our fundamental theory here that Cigna is the
11   ones who are doing the miscalculations and are on the hook
12   here.
13              But then turning to the Plan language itself,
14   which again is incorporated herein, in the first instance,
15   defendant was highlighting the Important Information
16   portion of Exhibit A to the Plan.
17              THE COURT:  Okay.
18              MR. KLEIN:  And, again, that reinforces, as
19   defendant has said, this is not an insured benefit plan.
20   That's what they were focusing on.  We agree with that.
21   But the highlighted portion that we have here goes on to
22   say "Cigna Health and Life Insurance Company provides paid
23   administrative services to the plan."  The fact that it's
24   not them doing the actual insuring, paying the benefits,
25   to our view, is not relevant.
```

1          Defense counsel went on to discuss -- if you'll

2   excuse me one moment.

3          The remainder of that Important Information

4   section talks about this document may use words that

5   describe a plan insured by Cigna.  Because the plan is not

6   insured by Cigna, all references to Cigna mean the

7   employer.  But again, we think that is somewhat of a red

8   herring because we're not talking about the payment of the

9   insurance; we're talking about the calculation, what Cigna

10  was responsible for.

11          I would then -- in terms of the appeal process,

12  which Cigna was discussing a moment ago, we agree

13  obviously that this is not an ERISA plan, but we disagree

14  with the fact that this entire provision, legal action

15  provision, does not apply to Cigna.  As defendant said,

16  this is not an ERISA plan.  Yet this provision is in here.

17  It has to have some meaning, it has to have some force.

18  The first sentence says, "If your Plan is covered by

19  ERISA, you have the right to bring a civil action."

20  Clearly this Plan is not covered by ERISA.  But then the

21  second paragraph -- or second sentence, rather, says in

22  most instances you may not initiate a legal action against

23  Cigna until you have completed the appeal process.  Any

24  reasonable person reading this, given this is not an ERISA

25  plan, would have to take it as an indication that Cigna,

1    in fact, can't be sued.  Otherwise, this whole paragraph

2    makes no sense for being here in the first instance.

3            THE COURT:  If you're right about that, if

4    you're right that somehow Cigna is agreeing it could be

5    sued, why does that mean Cigna is agreeing it can be sued

6    under a contract theory as opposed to any other theory?

7    I'm not sure that essentially a right to sue really

8    bolsters a substantive contract claim.

9            MR. KLEIN:  I would respectfully disagree,

10   Your Honor.  I mean, it doesn't specify what the theory

11   is.  I don't know what other theory it might have.  It

12   simply says you may sue us.

13           Now, if you ultimately agree with us that there

14   is a valid third party beneficiary delegation here, I see

15   no reason why that could not be included.

16           THE COURT:  Suppose you brought a wrongful death

17   action against Cigna and it wasn't even a death, and Cigna

18   came back and said, "Well, there hasn't been a death; you

19   can't sue us for wrongful death."  Would you be relying on

20   this language and saying "no, no, no, no, in your contract

21   you say, you know, you can sue us"?  You have to say sue

22   us for what, right?  You have to look at what's the

23   grounds for the suit.  Otherwise you're speaking, I think,

24   and referring to a very general provision that

25   contemplates some kind of lawsuit against Cigna but

1    doesn't speak to whether it can be a breach of contract

2    lawsuit against it.

3            MR. KLEIN:  I guess I apologize if I'm

4    misunderstanding.  From my perspective -- and correct me

5    if I'm misunderstanding your question -- because it does

6    not specify what legal theory one would use, I'm having

7    trouble understanding why a contract claim, which is a

8    perfectly ordinarily claim, would not be within the ambit

9    of the permission to sue.  I understand there is not a

10   direct contract between Cigna and Mr. Blocker, and we

11   don't dispute that.  But if you agree with us that there's

12   a valid third party beneficiary plan, there's a valid

13   delegation giving right to third party beneficiary --

14           THE COURT:  If I agreed with you on that -- and

15   maybe I do, I'll have to especially look at your new

16   cases -- but it doesn't seem to me to point to this

17   particular provision that contemplates some kind of action

18   against Cigna as anything.  You have to win in terms of

19   showing that there is a basis not just for general legal

20   liability under who knows what theory, but actually under

21   some sort of contract theory.

22           MR. KLEIN:  I guess I would respond under a

23   third party beneficiary claim, we acknowledge that the law

24   is that you have to show that the parties intended for

25   there to be a third party beneficiary, and the third party

1    beneficiary has the right to sue.  I agree with you that

2    you're accepting of the business of the third party claim

3    is a prerequisite here, but I think this just bolsters

4    that because it shows that Cigna did contemplate being

5    sued.  That when they allowed for third party

6    beneficiaries in the ASO agreement, this shows it wasn't

7    just some random lark; it was something that they

8    contemplated that they could be sued, and it further

9    demonstrates Cigna's intent that they were on the hook for

10   this.

11            THE COURT:  Maybe I misunderstood the ASO

12   agreement, but I thought that they had said in, what is

13   it, paragraph 13, that they were not allowing for third

14   party beneficiaries.

15            MR. KLEIN:  I agree that is what paragraph 13

16   says.  And that's where the case that we were discussing

17   before that I should have submitted earlier comes into

18   play.  I apologize for going back to it, but it discusses

19   how that even if you have a no third party beneficiary

20   clause, as one does here, that if there are other indicia

21   that the parties made a carve-out of that for a specific

22   group of beneficiaries, that the more specific will trump

23   the more general third party beneficiary.  I think this

24   consent-to-suit clause shows some of that specificity that

25   will allow us to get out of that clause.

1           THE COURT:  All right.  I understand the

2    argument.

3           MR. KLEIN:  I suppose beyond that, it's just

4    more of the same provisions that we highlight in our

5    brief, and I don't want to just recite what we have in our

6    brief over and over but we talk about the Covered Expenses

7    section which talks about, you know, Cigna will provide

8    certain benefits and we will -- Cigna will provide

9    coverage for those expenses shown in the schedule.  Again,

10   nobody is saying that Cigna was actually paying out of

11   pocket, but it's further indication to class members of a

12   further clause that's incorporated into the ASO agreement

13   that Cigna is in on the hook for their administration

14   here.  It's not just everything pushed off on Cobb County

15   even though they're the ones who messed up.

16           Beyond that, I would also just point out that

17   because this isn't an ERISA plan, the normal discretion

18   granted to administrators to have discretion over what

19   terms mean, that doesn't apply here.  We all agree this is

20   not an ERISA plan, therefore the plain language of the ASO

21   agreement and the Plan document will control.  We submit,

22   obviously, that it would indicate to any reasonable

23   policyholder like Mr. Blocker that they do have a direct

24   right of action against Cigna.  I understand defendants

25   would disagree, but we, respectfully, believe our

1   interpretation is correct.

2           And beyond that, I guess the last point that I

3   would like to make is that we do -- regardless of what

4   happens here today, we have a RICO claim, Mr. Blocker has

5   a RICO claim that will proceed against Cigna.  The factual

6   basis for that claim involves alleged fraud, alleged

7   wrongdoing by Cigna.  We believe that those same facts

8   would support not just the RICO claim and perhaps the

9   contract claim, but as you were saying before, aren't

10  there any other number of claims out there that could be

11  brought, a common law state fraud claim.  We believe that

12  we don't actually have to amend to plead those because we

13  have the facts in there.  I don't want to cite another

14  case to you that we didn't have in our brief, but it's

15  about how we have the right to plead claims -- as long as

16  the facts are there, we don't need to amend to pursue

17  those in the case, in the course of litigation.

18          And so we would ask that if you do find for the

19  defendant here, that you give us the right to replead.

20  But even if not, we will respectfully request a right to

21  pursue state law fraud claims under the same factor

22  already alleged under the RICO cause of action.

23          THE COURT:  So basically unalleged state law

24  fraud claims?

25          MR. KLEIN:  Correct, but under the same facts

1   that are raised here.  And again, I can cite a decision or

2   two or I can give you supplemental briefing, but yes,

3   that's correct.

4          THE COURT:  So the way I usually handle those

5   kinds of arguments is I try to -- I ask counsel to try to

6   file a motion to amend the complaint, and this would be

7   separate from a motion to dismiss in this case.  To the

8   extent that it sounds like you're raising the possibility

9   of state law fraud claims at this point that have not been

10  expressly alleged, you think there are facts that support

11  it, it might be safer for you to try to make a motion to

12  amend the complaint, and then I would evaluate that in

13  that context rather than in the unrelated context of if

14  I'm considering the validity of the contract claims

15  because they don't seem to be related.  Do you see the

16  distinction there?

17         MR. KLEIN:  Understood, Your Honor.  I just

18  wanted to raise the issue.  I certainly understand what

19  you're saying.

20         THE COURT:  The best way to raise that is to

21  file a motion, Federal Rule 15 governs that, and I get

22  these all the time where plaintiff will file a motion to

23  amend the complaint, and I allow the defendant an

24  opportunity to respond and make arguments about why or why

25  not the complaint should be amended.  Or you could just

1    say that it's implicit, I suppose, and then we would have

2    to deal at some later point in the litigation with

3    arguments from defendant about why they're not so implicit

4    or why, if they're not explicit, they shouldn't be allowed

5    to go to the fact finder in the case.  I'm not sure I've

6    ever -- I've done a lot of trials, I'm not sure I've ever

7    instructed the jury on a claim that wasn't actually

8    alleged in the complaint but that was just somehow

9    deducible from the facts of the complaint.  So I just

10   haven't dealt with that kind of situation.  I've never had

11   an attorney or a party, I think, try to press that theory.

12   Usually they try to allege the claim itself and try to

13   allege each of the elements, the required elements, rather

14   than kind of trying to fly under the radar with it.  But I

15   guess you have to decide what you want to do there.

16             MR. KLEIN:  Understood, Your Honor.  I don't

17   want to get sidetracked today with what is a sideshow.

18   We're here for the contract claim.

19             THE COURT:  All right.  Great.

20             Let me hear from defendant, if we can, from

21   Cigna again.

22             MR. BLUMENFELD:  Thank you very much,

23   Your Honor.  Can everybody hear me okay?  Thank you.

24             Just briefly, Your Honor.  I won't address the

25   amendment issue.  We'll deal with that in the context in

1   which a motion is raised or it's asked to be implied and

2   deal with it in that context.

3         I know a little bit of the law in a lot of

4   different locations, but I'm not familiar with the *Versico*

5   case.  So if we feel it's appropriate to submit some sort

6   of supplemental briefing on that, Your Honor, I would ask

7   the Court's permission to do so.  But having not read the

8   opinion, I don't know if it's helpful or if there's

9   anything to say.

10        THE COURT:  My intent is to have plaintiff

11  submit a supplemental memo on that.  And if there's any

12  other kind of surprise cases lurking out there, to file a

13  supplemental memo tomorrow on that.  And then to allow

14  defendant to respond, I would suppose, by next Tuesday,

15  perhaps.

16        MR. BLUMENFELD:  That should be fine.  Thank

17  you, Your Honor.

18        THE COURT:  If it's only dealing with a case or

19  two, or I don't know how many --

20        MR. KLEIN:  One.

21        THE COURT:  -- are out there.  But I would think

22  that would be enough, just file letters on that, if you

23  can.

24        MR. BLUMENFELD:  Thank you very much,

25  Your Honor.  I will.

1            The last thing I will say, Counsel said

2    something toward the end of his remarks about the plain

3    language controlling.  There certainly can be ambiguity

4    and is ambiguity in some of these terms, not typically the

5    ones we've been talking about today, though.  In

6    particular, Section 13 on no third party beneficiaries,

7    that plain language is very clear and makes clear that the

8    contractual relationship that Cigna has is only between it

9    and Cobb County, Georgia.  Certainly if somebody believes

10   that Cigna did something wrong and violated the terms of

11   this Administrative Services Agreement, Cobb County,

12   Georgia, could do what it deem appropriate under the

13   circumstances as the other party to that contract, but

14   that doesn't give Mr. Blocker or participants in the Plan

15   the right to do so because our obligation, the contractual

16   obligation we undertook, was to the County.

17            THE COURT:  I see.  Okay.

18            MR. BLUMENFELD:  Thank you very much for your

19   time, Your Honor.

20            THE COURT:  Is there anything else counsel want

21   to add at this point?

22            MR. KLEIN:  No, Your Honor.

23            THE COURT:  Okay.  Well, thank you for your

24   participation in this video hearing.  I'm going to take

25   the motion under advisement and look forward to your

1    supplemental letters.

2             We will stand in recess.  Thank you.

3                  (Proceedings adjourned at 3:47 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                            C E R T I F I C A T E

4

5      RE: KIMBERLY A. NEGRON, ET AL. v. CIGNA CORPORATION,
                  ET AL., No. 3:16CV1702(JAM)

6

7              I, Diana Huntington, RDR, CRR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages 1 through 37 are a true and accurate

11   transcription of my shorthand notes taken in the

12   aforementioned matter to the best of my skill and ability.

13

14

15

16

17                      _____/s/_____

18                      DIANA HUNTINGTON, RDR, CRR
                            Official Court Reporter
19                      United States District Court
                         141 Church Street, Room 147
20                      New Haven, Connecticut 06510
                             (860) 463-3180
21

22

23

24

25