UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIMBERLY A. NEGRON, et al,

     Plaintiff,

        v.                     Civ. No. 3:16-cv-01702 (JAM)

CIGNA CORPORATION, CIGNA
HEALTH AND LIFE INSURANCE
COMPANY, and OPTUMRX, INC.

     Defendants.

## RULING ON  PLAINTIFFS' MOTION TO DE-DESIGNATE AND UNSEAL CLAIMED "CONFIDENTIAL" DOCUMENTS [Doc. #212]

     Plaintiffs seek an order de-designating and unsealing certain documents that Defendants produced as "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEY'S EYES ONLY" attached as sealed Exhibits C-K, M, O-R and T-W to the Raabe Declaration [Doc. #207 *SEALED*] filed in support of class certification.[1] [Doc. #205].

## I.    BACKGROUND

     The following background is a brief summary of allegations contained in Plaintiffs' Second Amended Consolidated Complaint ("SACC"). [Doc. #198].

     This is a class action brought by Plaintiffs Kimberly A. Negron, Courtney Gallagher, Daniel Perry, Nina Curol, Robert Curol (collectively, the "ERISA Plaintiffs"), and Billy Ray Blocker, Jr. (collectively with the ERISA Plaintiffs, the "Plaintiffs") against Cigna Corporation,

---

[1] Since the filing of this motion, Defendants agreed to de-designate Exhibits L and N. [Doc. #226 at 4-5].

Cigna Health and Life Insurance Company (collectively "Cigna") and OptumRx, Inc.

("OptumRx"). *Id.* at 4. Plaintiffs are individuals who received prescription drug benefits through

individual or group health plans issued or administered by defendants Cigna and OptumRx.

> [Plaintiffs] bring this action on behalf of themselves and a Class and Subclasses
> of similarly situated persons alleging (a) violations of the Employee Retirement
> Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, (b) violations
> of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18
> U.S.C. §1961, *et seq.*, and (c) state law claims for breach of contract and the
> implied covenant of good faith and fair dealing, resulting from Defendants'
> common fraudulent and deceptive scheme to artificially inflate prescriptions costs
> causing consumers to pay more than they otherwise should have paid for
> medically necessary prescription drugs.

*Id. ¶17.*

Beginning in 2013, Cigna changed its in-network pharmacy business model. *Id.* ¶1.

Under its new model, Cigna outsourced the pharmacy network management to a Pharmacy

Benefit Manager ("PBM") called Catamaran, which had its own contracts with participating

pharmacies pursuant to which Catamaran operated a Catamaran pharmacy network. OptumRx

acquired Catamaran in 2015.[2] *Id.* ¶20

> Plaintiffs allege that,
>
> 2. In making this switch, Cigna's "management" saw a huge opportunity to make
> more money. Under Catamaran's contracts with participating pharmacies, Cigna
> was able to collect "spread" (Cigna's term), which was the dollar difference
> between the amount that it required members to pay for copayments or deductible
> payments and the amount that Cigna, through Catamaran, actually paid the
> pharmacy for prescriptions drugs. Importantly, unlike its legacy system, Cigna
> also could also secretly take or "claw back" (Cigna's term) from the pharmacies
> this "spread," or member's "overpayment" (Cigna's term), from the pharmacy for
> Cigna's own benefit.
>
> 3. Very early in this transition, "senior management" determined that the
> "overpayments" were "a $100M+ issue for us" and they issued an "urgent
> request" to capture the member's "overpayments" through "clawbacks." Indeed,

---

[2] Defendants state that, "OptumRx is owned by UnitedHealth Group, which includes one of the
largest healthcare companies in the world (and direct competitor to CHLIC), UnitedHealthcare."
For this reason, there is a category of documents that CHLIC has designated
"CONFIDENTIAL-ATTORNEY'S EYES ONLY." [Doc. #226 at n.2].

Cigna made the $100,000,000 per year "clawback" issue a "top priority among our group and leadership." To capture the new-found "clawback" revenue from the members and pharmacies, Cigna created the "Pharmacy Over Payment" project, which was sponsored by David Cordiani, the CEO. The project succeeded, allowing Cigna to "clawback" almost $280,000,000 in member overpayments during the class period.

*Id.* ¶¶2-3. The Class Member Plan "unambiguously stated that a member's copayment would be for a 'portion' of 'Covered Expenses.' And because 'Covered Expenses' are 'expenses for charges made by a Pharmacy,' Class Members should never have paid a copayment 'expense' that was more than the 'charges made by a pharmacy.'" *Id.* ¶25(c). The Class Members' Plan further provided: "in no event will the Copayment…for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge." *Id.* ¶25(d). "By forcing Plan participants and beneficiaries, also known as members, to pay more than the pharmacy charge, often much more, Cigna and OptumRx violated the unambiguous Plan language." *Id.* ¶4.

## II.    LEGAL STANDARD

The Supreme Court and the Second Circuit have recognized the public's right to access court records and proceedings, which is rooted in both the common law and the First Amendment. *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597–98, 98 S. Ct. 1306, 55 L. Ed.2d 570 (1978); *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119–120 (2d Cir. 2006). Consequently, there is a strong presumption against sealing court records from public inspection.

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.,* No. 3:11-CV-1209 CSH, 2013 WL 4012772, at *2 (D. Conn. Aug. 5, 2013). The public's right to access is not absolute and may be surmounted on a showing of compelling need. *Id.* (citing cases). "In most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *In re Orion Pictures Corp.,* 21 F.3d 24, 27 (2d Cir. 1994).

> For good cause shown, a court may "requir[e] that a trade secret or other
> confidential research, development, or commercial information not be revealed or
> be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Rule 26(c) "is
> not a blanket authorization for the court to prohibit disclosure of information
> whenever it deems it advisable to do so...." *Bridge C.A.T. Scan Assocs. v.
> Technicare Corp.,* 710 F.2d 940, 944–45 (2d Cir. 1983). Rather, the "court may
> issue a protective order only after the moving party demonstrates that 'good
> cause' exists for the protection of the material." *Burgess v. Town of Wallingford,*
> No. 3:11cv1129(CSH), 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012).
> "Good cause is established by demonstrating a clearly defined and serious injury
> resulting from disclosure.... Broad allegations of harm will not establish good
> cause, rather to establish good cause under Rule 26(c), courts require a particular
> and specific demonstration of fact, as distinguished from stereotyped and
> conclusory statements." *Hansen v. U.S. Airports Air Cargo, LLC,* No
> 3:07cv353(JCH)(HBF), 2008 WL 4426909, at *1 (D. Conn. Sept. 26, 2008). *See
> also Burgess,* 2012 WL 4344194, at *6 ("Broad allegations of harm,
> unsubstantiated by specific examples or articulated reasoning, do not satisfy the
> Rule 26(c) test."); *Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection,* 224
> F.R.D. 53, 56 (D. Conn. 2004)(same). The court has "broad discretion" to "decide
> when a protective order is appropriate and what degree of protection is required."
> *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed.2d 17
> (1984).

*Charter Practices Int'l v. Robb*, No. 3:12CV1768RNC, 2015 WL 1268295, at *4 (D. Conn. Mar.

19, 2015).

In this District, Local Rule 5(e)(3), states that a Court order to seal, "shall include

particularized findings demonstrating that sealing is supported by clear and compelling reasons

and is narrowly tailored to serve those reasons." D. Conn. L. Civ. R. 5(e)(3). "A confidentiality

order or protective order entered by the Court to govern discovery shall not qualify as an order to

seal documents for purposes of this rule." *Id.* "In addition, the blanket sealing of entire

documents or all documents within a case is also generally disfavored." *CSL Silicones, Inc. v.

Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *1 (D. Conn. July 12,

2017)(citing, *Doctor's Assoc. Inc. v. QIP Holders LLC*, Civil Action No. 3:06-cv-1710(VLB),

2007 WL 2782516, at *1 (D. Conn. Sept. 24, 2007) ("The presumption that documents should

not be sealed necessitates the court's watchful eye when blanket sealing provisions are proposed." (collecting cases))).

## III.   DISCUSSION

With this legal framework in mind the Court will address whether Defendants have met their burden of proof.

Defendants assert that "[t]he Exhibits that CHLIC proposes to seal in part or in full contain confidential, proprietary, and commercially sensitive information that would cause significant competitive harm to CHLIC if publicly disclosed." [Doc. #227 at 5]. They have divided the exhibits into two categories. First, they identified eleven exhibits, C, E, F, J, K, M, O, Q, R and V, which "can be filed in the public record with narrowly tailored redactions of specific, commercially sensitive information." [Doc. #227 at 4]. The second category, consists of the remaining seven exhibits, D, G, H, I, P, T, U and W, which "should be filed fully under seal because they reflect proprietary and sensitive non-public business information regarding CHLICs pharmacy management practices and operations." *Id.*

### A.   "Narrowly Tailored" Redactions

"CHLIC proposes to seal only the specific confidential, proprietary, and commercially sensitive business information that appears in each Exhibit because disclosure of such information will result in competitive injury to CHLIC." [Doc. #227 at 9]. Specifically,

- CHLIC proposes sealing in part or in full the confidential business information in Exhibits C, D, E, G, H, I, J, K, M, T, U, and W that relates to strategic CHLIC pharmacy business projects and internal CHLIC policies and practices. *See Lester Decl.* ¶¶11-15.

- CHLIC proposes sealing in part or in full the confidential business information in Exhibits K, P, O, and R that reflect specific pharmacy prescription drug pricing information and amounts that CHLIC's clients have agreed to pay CHLIC for its prescription benefit services. *See id.* ¶16.

- CHLIC proposes sealing certain third party personal identifying information in Exhibits , Q, V that Plaintiffs failed to redact. *See id.*¶17.

Doc. #227 at 10.

1. Exhibits C, J and M

These three exhibits are different versions of the same internal CHLIC email thread dated November 1, 2013. CHLIC argue that two portions, a sentence in the "overview" paragraph and a chart, in Exhibits C, J and M should be redacted] . [Lester Decl. Ex. C at CIGNA00054924; Ex. J at CIGNA00054927; Ex. M at CIGNA00055862].

Plaintiffs' Motion to De-Designate and Unseal the sentence in the "overview" paragraph of Exhibits C, J and M is GRANTED. Plaintiffs correctly point out that the general content of this sentence is already alleged in detail in the Second Amended Consolidated Complaint  ("SACC") and/or quoted similar language from other portions of the same emails in the SACC. *See*  Ex C ¶¶3, 35; Ex J ¶112; Ex. M ¶124. CHLIC has not met its burden for sealing.

CHLIC also seek to redact from the same exhibits, same page, a chart illustrating a "proposed solution" for then Pharmacy Benefit Manager Argus "to make a change to reflect the overpayment by the customer as a negative amount owed to the pharmacy…." [Lester Decl. Ex. C at CIGNA00054924; Ex. J at CIGNA00054927; Ex. M at CIGNA00055862]. This chart does not disclose sensitive business information. No specific product, pharmacy or insured is identified and there is no cost or pricing information for any particular transaction or category of pharmaceutical. Rather, the chart is a "proposed solution" and provides a hypothetical "clawback" approach. Moreover, as Plaintiffs point out, Defendants "do not seek to redact from elsewhere in the email chain a discussion (including the exact same numbers) of the exact same example that is used in the chart." [Doc. #232 at 5 citing Lester Decl. Ex M CIGNA00055858]. Plaintiffs correctly state that the SACC contains, "with Defendants' consent, several real-world

numerical examples of Defendants' "clawback" scheme." [Doc. #232 at 5 citing SACC ¶¶6, 31]. CHLIC has not met its burden for sealing. For these reasons, Plaintiffs' Motion to De-Designate and Unseal the "proposed solution" chart in Exhibits C, J and M is GRANTED. Lester Decl. Ex. C at CIGNA00054924; Ex. J at CIGNA00054927; Ex. M at CIGNA00055862.

### 2. Exhibit Q

CHLIC requests that "a variety of personal identifying information related to a series of customer claims for both pharmacy and medical benefits" remain under seal because it "likely contains identification codes for specific benefit claims, provider and/or customer identification numbers and the amounts to be reimbursed from each claim. [Lester Decl. ¶17(b) Ex. Q at CIGNA070504939]. "Plaintiffs do not object to redaction of the [personal] account identifiers but believe that the numerical examples should be unsealed…." [Doc. #232 at5- 6]. The Court agrees. Plaintiffs' Motion to De-Designate and Unseal is GRANTED in part as to the "clawback" figures contained in Exhibit Q and WITHDRAWN in part consistent with Plaintiffs' agreement to permit sealing of personal account identifiers.

### 3. Exhibits K, P, O, and R

CHLIC seeks a partial sealing of Exhibits K, O and R and requests that Exhibit P remain fully sealed. CHLIC contends that these exhibits reflect "specific pharmacy prescription drug pricing information, including the specific amounts that CHLIC has agreed to pay network retail pharmacies through its arrangements with Catamaran" and that public disclosure of this information "would cause significant competitive harm to CHLIC by allowing competitors to see CHLIC's historical pricing structures and potentially extrapolate current pricing agreements."[3]

---

[3] Exhibit K is an internal CHLIC email thread from August 2016. Exhibit P is an internal CHLIC email thread from February 2015. Exhibit O is an CHLIC/Catamaran email thread from April 2014. Exhibit R is an internal CHLIC email thread from October 2014.

[Doc. #226 at 4, 7; Lester Decl. ¶16]. As a preliminary matter, these emails and the prescription drug pricing information contained in Exhibits K, O, P and R date from four to six years ago and involves a past business practice.

Exhibit K

CHLIC asserts that Exhibit K contains a "high-level" discussion amongst CHLIC's management team "regarding its strategic approach to CHLIC customer concerns about prescription drug benefits." [Doc. #226 at 9-10]. While the exhibit contains prescription drug pricing, it does not identify the pharmacy, client, or customer by name. This exhibit dates from August 2016 and discusses the "clawback" amounts that are at issue in this litigation. Plaintiffs argue that "it is unlikely that information concerning 'clawbacks' Cigna received on specific drugs still has commercial value nearly four years after the date of the Exhibit, especially since 'clawbacks' are now outlawed in many states, including Connecticut." [Doc. #232 at 6]. The Court agrees. CHLIC does not address how this prescription drugs pricing information is relevant in 2020, or how it remains confidential commercial information.

The charts on CIGNA00491618 and CIGNA00491618 are "claims example[s]" that generally list prescription drugs pricing with a breakdown of that cost to the consumer, the plan, and pharmacy. The charts were provided as a "breakout of costs" along with a request for a few "talking points" to help explain a retail claim dispute in "layman's terms." [Ex. K at CIGNA00491618- CIGNA00491619]. The chart is an internal compilation of information and does not identify a pharmacy, client, or customer by name. CHLIC provides no explanation or argument to explain how this information is "highly proprietary" or contains "sensitive business information" or how "disclosure would cause significant competitive harm." *Charter Practices Int'l.,* 2015 WL 1268295, at *5.

The designated paragraph in Exhibit K at CIGNA00491621, does not appear to be a discussion based on legal advice. Rather, it is a statement that the writer "needs to go to Legal" for advice on how to proceed from a "legal standpoint" to fund a return back to a member. CHLIC offers no specific assertion of privilege as to this paragraph. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit K is GRANTED.

Exhibit O

Exhibits O and R are internal email threads from April 2014 and October 2014 respectively. Here the prescription drug pricing CHLIC requests remain under seal is over six years old. With regard to specific prescription drug pricing contained in Exhibit O, the Court is unable to identify what information CHLIC seeks to seal as there is no specific information highlighted or referenced in the exhibit or in the Lester Declaration. *See* Lester Decl. ¶16. Beyond its general statement requesting sealing of pharmacy prescription drug pricing information contained in Exhibit O, CHLIC does not identify the specific language it contends should remain under seal and has not identified the pages by Bates stamp number. While the exhibit contains prescription drug pricing, it does not identify the pharmacy, client, or customer by name. CHLIC provides no explanation or argument to explain how this information is "highly proprietary" or contains "sensitive business information" or how "disclosure would cause significant competitive harm." *Charter Practices Int'l.,* 2015 WL 1268295, at \*5. Plaintiffs' Motion to De-Designate and Unseal prescription drug pricing contained in Exhibit O is GRANTED.

Defendants also contend that Exhibit O "identifies by name specific third parties, N IGNA00180956-CIGNA00180957]. CHLIC also seeks to redact identifying information contained in an email signature line along with the directions on how to discontinue receipt of the emails. However, CHLIC provides no explanation how this information is "highly

proprietary" or contains "sensitive business information" or how "disclosure would cause significant competitive harm." *Charter Practices Int'l. v. Robb,* No. 3:12CV1768 (RNC), 2015 WL 1268295, at *5 (D. Conn. Mar. 19, 2015) ("[Defendants] have not met their burden of showing that they will suffer a 'clearly defined and very serious injury' in the absence of a protective order.")(citing *Uniroyal Chem. Co. v. Syngenta Crop Protection*, 224 F.R.D. 53, 56 (D. Conn. 2004)). Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit O at CIGNA00180956-CIGNA00180957 is GRANTED in part and DENIED in part. Customer account identifiers, including customer number, identification number and customer claim number contained in Exhibit O at CIGN00180953, will remain under seal consistent with Plaintiffs' agreement to seal similar information contained in Exhibit Q. [Doc. #232 at 5-6].

    Exhibit R

    The same reasoning set forth above applies to the specific prescription drug pricing contained in Exhibit R, from October 2014. Beyond CHLIC's general statement requesting sealing of pharmacy prescription drug pricing information, CHLIC does not identify the specific language it contends should remain under seal and has not identified the pages in the exhibit by Bates stamp number. *See* Lester Decl. ¶16. While the exhibit contains prescription drug pricing, it does not identify the pharmacy, client, or customer by name. CHLIC provides no explanation how this information is "highly proprietary" or contains "sensitive business information" in 2020 or how "disclosure would cause significant competitive harm." *Charter Practices Int'l.,* 2015 WL 1268295, at *5. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit R is GRANTED.

Exhibit P

CHLIC moves to seal in full Exhibit P, an internal CHLIC email thread from February 2015, because it contains "pricing information [] incorporated within a detailed internal CHLIC discussion regarding prescription drug benefit processing, which includes screenshots of claims reflecting client plan and pharmacy pricing rates." [Doc. #226 at 13 (citing Ex. P CIGNA003090578-CIGNA003090579)]. CHLIC contends that the exhibit contains proprietary and sensitive non-public business information regarding their pharmacy pricing practices. The exhibit addresses a single customer complaint in an email exchange between CIGNA employees in formulating a response to a pharmacist's inquiry seeking an explanation for charging an insured/member an amount above the actual cost for the drug. The pharmacy and member ID are redacted. CHLIC has not met its burden of proof. As set forth above, the prescription drug pricing is over five years old and the plan is no longer in effect. Moreover, the information contained in the exhibit goes to the core of the allegations in this litigation; excessive drug pricing and overcharging members for prescription drugs. Even if the information contained in Exhibit P was competitively sensitive when it was created, CHLIC has not shown how it remains competitively sensitive in 2020 and has not made a sufficient showing of potential harm. *See Pearlstein v. BlackBerry Ltd.,* 332 F.R.D. 117, 122 (S.D.N.Y. 2019), *on reconsideration in part,* No. 13CV07060CMKHP, 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019) ("The documents and testimony involve events that are six years in the past and involve a line of business in which BlackBerry no longer participates."). Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit P is GRANTED.

4.  <u>Exhibit V</u>

Exhibit V is an email thread between CIGNA and Catamaranrx employees from October 2014, containing "more than one hundred" claim numbers/identification codes for "individual customer prescription drug transactions." Lester Decl. ¶17(c). The claims numbers/identification codes will remain under seal consistent with Plaintiffs' agreement to seal similar information contained in Exhibit Q. [Doc. #232 at 5-6]. Accordingly, Plaintiffs' Motion to De-Designate and Unseal the claim numbers/identification codes contained in Exhibit V is DENIED.

5.  <u>Exhibit E</u>

Exhibit E is an email thread from December 2013 between CIGNA employees entitled "Daily Update-Network Issues." There are two categories of information discussed in the email. One category is the "90-day Network" project permitting customers to fill daily medication through a 90-day supply to minimize missed doses.  Plaintiffs do not state why the information regarding the 90-day Network is relevant to the claims at issue in this lawsuit and may remain under seal. However, the second category, "Pharmacy Over Payment," addresses the "clawbacks" at issue in this litigation. While Exhibit E discusses pharmacy over payments, it does not identify the pharmacy, client, or customer by name. Exhibits J and M are similar email threads from November 2013, and December 6, 2013, that also address the urgency and priority to be given this project. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit E is GRANTED as to the information addressing the Pharmacy Over Payments/Zero Balance Claims and DENIED as to the information addressing the 90 Day Network.

B.     Seal in Full

1.   Exhibit D

CHLIC seeks to seal in full Exhibit D, an internal CHLIC email thread from November

through December 2013, that Defendants contend discusses "two strategic pharmacy benefits

projects then in development…." [Doc. #227 at 5 (citing Lester Decl. at ¶12(a)]. CHLIC asserts

that Exhibit D contains "detailed internal and proprietary information regarding projects,

including adjustments to be made to the claims processing system and confidential financial

information regarding estimated project costs." *Id.* There is discussion regarding a "release" of

Argus's design and the upcoming migration of data to Catamaran that appears to have no relation

to the claims at issue in this lawsuit. Nor have Plaintiffs identified the value of this discussion to

proving its claims. The discussions regarding the Pharmacy Overpayment/Zero Balance Claims

at CIGNA00056018-CIGNA00056019, and any passages previously approved by Defendants for

unsealing, are clearly related to the allegations contained in the complaint and should be

dedesignated/unsealed. *See* Doc. #232 at 9 (citing ECF No. 209 at 4). Accordingly, Plaintiffs'

Motion to De-Designate and Unseal Exhibit D is GRANTED in part and DENIED in part.

2.   Exhibit F

CHLIC seeks to seal in full Exhibit F, a CIGNA document entitled "Argus Transition:

Pharmacy Over Payments HRA Claims" "Pharmacy Business Requirements," dated March 17,

2014, regarding the "Pharmacy Over Payment Health Reimbursement Accounts Claims" project.

CHLIC contends that the document is confidential and "sets forth proprietary information

regarding the project, including identification of its strategic business goals and a highly detailed

description of the specific issues related to the project's development." [Lester Decl. ¶12(c)].

While the exhibit discusses pharmacy pricing and assignment of costs to the pharmacy, client

and HRA, it does not identify any pharmacy, client, or customer by name. Plaintiffs accurately point out that the "2014 document discusses at length (including with generic numerical examples) the mechanics of Cigna's 'clawback' scheme." [Doc. #226 at 9]. Moreover, CHLIC no longer does business with Argus, the document is clearly dated and the business practices are no longer in effect.  CHLIC does not address how this information remains "confidential" or contains "sensitive business information" in 2020 or how "disclosure would cause significant competitive harm." *Charter Practices Int'l.,* 2015 WL 1268295, at *5. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit F is GRANTED.

3. Exhibit G

CLIC moves to seal in full Exhibit G, which is a slide show presentation from November 2015, entitled "Certificate of Coverage (COC) Project," regarding an internal review of Cigna's Plan language. Plaintiffs argue that "[i]nsofar as Cigna's failure to adhere to Plan language is a critical element of this case, *see* SACC at ¶¶41-45, Class Members have a substantial interest in having access to his information and understanding Cigna's processes." [Doc. #232 at 10]. CHLIC contends that this internal presentation is

> an internal project involving a comprehensive review and revision of CHLIC's pharmacy product language. []. The confidential document sets forth detailed, proprietary information regarding the project, including identification of its strategic business goals (CIGNA00469402), scope and focus of the project (CIGNA00469403-CIGNA00469404), and a description of internal project stakeholders. (CIGNA00469405).

[Doc. #227 at 6 (citing Lester Decl. ¶12(d))]. After careful review, the Court agrees with Defendants. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit G is DENIED.

4. Exhibits H and I

CHLIC moves to seal in full Exhibits H and I, both exhibits relate to the "Certificate of Coverage" project and internal deliberations. As with Exhibit G, Plaintiffs argue that Cigna's

14

failure to adhere to Plan language is a critical element of the case. The parties have already

reached an agreement to permit Plaintiffs to quote from both exhibits in the SACC and motion

for class certification. [Doc. #198 ¶¶42, 43; Doc. #209].  After careful review, the Court finds

that the exhibits contain strategic business goals, analysis of the "competitive landscape," and

other discussions of commercially sensitive internal business information. Accordingly,

Plaintiffs' Motion to De-Designate and Unseal Exhibits H and I is GRANTED as to the parties'

prior agreements to unseal and DENIED as to the remaining portions of the exhibits.

    5.  <u>Exhibits U and W</u>

    CHLIC moves to seal in full Exhibits U and W, as containing proprietary business relating to

CHLIC claims reprocessing and remediation practices and procedures. CHLIC has redacted

client names in Exhibit U, but has not redacted the names of pharmacy chains, account numbers

and member IDs. Exhibit U was created in October 2013, and addresses Cigna's ability to

reprocess claims and is clearly relevant to the claims in this case.  The exhibit is unlikely to

reveal commercially sensitive information in 2020. Accordingly, Plaintiffs' Motion to De-

Designate and Unseal Exhibit U is GRANTED in part and DENIED in part. Defendants will

redact information identifying client accounts, pharmacy chains and member IDs.

    Exhibit W is an email thread between CHLIC and CatamaranRx from July-August 2014, also

discussing their ability to reprocess claims. Although CHLIC asserts that the exhibit contains

commercially sensitive information regarding their remediation process, it does not identify a

pharmacy, client, or customer by name. The information contained in the email thread is nearly

six years old. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit W is

GRANTED.

6. Exhibit T

Finally, CHLIC moves to seal Exhibit T in full, which is a supplementary response to Interrogatory No. 2 in Plaintiffs' Fourth Set of Interrogatories. CHLIC asserts that the interrogatory response "includes specific information outlining CHLIC's internal business practices and how, specifically, CHLIC implements the specific prescription drug benefits that individual clients have decided to offer their plan participants." [Lester Decl. ¶14].  CHLIC contends that this interrogatory response provides a detailed overview of CHLIC's internal business practices, how client information is internally processed, CHLIC's proprietary prescription drug data systems and the transmission of data to its outside vendor Argus, for use in its claims adjudication systems. Plaintiffs argue that "contrary to Mr. Lester's assertion, the response does not provide a "detailed" overview of "sensitive" claims processes." [Doc. #232 at 8]. After a careful review the Court agrees. Indeed, CHLIC's interrogatory response includes the term "in general" and provides an overview of the process for how Plan booklets are generated and claims are adjudicated. [Lester Decl. Ex. T at 6-8]. CHLIC has not met its burden of showing how this information is "highly proprietary" or contains "sensitive business information" or how "disclosure would cause significant competitive harm." *Charter Practices Int'l.,* 2015 WL 1268295, at *5. Accordingly, Plaintiffs' Motion to De-Designate and Unseal Exhibit T is GRANTED.

## IV.    CONCLUSION

Accordingly, Plaintiffs' Motion to De-Designate and Unseal Claimed "Confidential"

Documents **[Doc. #212]** is **GRANTED in part and DENIED in part** consistent with this

ruling.

This is not a recommended ruling. This is a non-dispositive ruling and order which is

reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C.

§636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the

Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED, this 29th day of May, 2020, at Bridgeport, Connecticut.

_/s/ William I. Garfinkel_
WILLIAM I. GARFINKEL
United States Magistrate Judge