UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br>  vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>          Defendants. | No. 16-cv-1702 (JAM) (Consolidated)<br><br>CLASS ACTION<br><br><br>July 6, 2020 |

**DEFENDANT OPTUMRX, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**ORAL ARGUMENT REQUESTED**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

I.  FACTUAL BACKGROUND ........................................................................... 4

    A.  CHLIC Administers Group Health Plans Sponsored by Plaintiffs' Employers ...... 5

    B.  CHLIC Outsourced Certain PBM functions to OptumRx and Argus .................... 5

    C.  Discovery Confirms That OptumRx Played No Role in Interpreting Plaintiffs' Plans or Computing Cost-Sharing Payments ........................................... 6

STANDARD OF REVIEW ...................................................................................... 10

ARGUMENT ........................................................................................................... 12

I.  No Class Can be Certified under Rule 23 Against CHLIC or OptumRx .......................... 12

II.  Because Plaintiffs Do Not Have Standing to Raise Their Claims Against OptumRx, No Class Can Be Certified Against It ................................................................. 13

    A.  Plaintiffs Lack Standing to Pursue Their ERISA Claims for Benefits Against OptumRx ................................................................................................. 15

    B.  The ERISA Plaintiffs Lack Standing to Pursue Their ERISA Fiduciary Claims Against OptumRx ...................................................................... 18

    C.  The ERISA Plaintiffs Lack Standing to Raise Count VI's Non-Fiduciary ERISA Claims ............................................................................................. 21

    D.  As to Their RICO Conspiracy Claim, Plaintiffs Lack Evidence to Establish OptumRx Made the Alleged Misrepresentations or That They Were Injured by OptumRx's Alleged Conduct ............................................. 22

III.  Plaintiffs' ERISA and RICO Claims Against OptumRx Do Not Satisfy Rule 23 ............ 24

    A.  Plaintiffs Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement ................ 25

        1.  The ERISA Plaintiffs Do Not and Cannot Present Common Proof of OptumRx's Fiduciary Status ............................................. 25

        2.  Plaintiffs Do Not and Cannot Present Common Evidence of OptumRx's RICO Liability, Injury, or Causation ..................................... 28

    B.  Plaintiffs' Cannot Certify a Class Under Rule 23(b)(2) Against OptumRx .......... 30

    C.  Plaintiffs Cannot Certify a Class Under Rle 23(b)(3) Against OptumRx ............ 30

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................................... 30

*Banyai v. Mazur*,
No. 00 CIV. 9806 (SHS), 2007 WL 959066 (S.D.N.Y. March 29, 2007) ................................ 28

*Bowman v. Cont'l Cas. Co.*,
Civ. No. 3-93-cv-1060 (WWE), 1999 WL 118001 (D. Conn. Mar. 4, 1999)
(Eginton, J.) ...................................................................................................................... 17

*Buffalo Laborers Sec. Fund. v. J.P. Jeanneret Assocs. (In re Beacon Assocs. Litig.)*,
No. 09 Civ. 8362 (LBS)(AJP), 2012 WL 1372145 (S.D.N.Y. Mar. 19, 2012) ....................... 14

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ........................................................................................... 20

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ................................................................................................... 16, 26

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ............................................................................................ 28

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999) ............................................................................................ 22

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......................................................................................................... 11

*Dobson v. Hartford Fin. Servs. Grp., Inc.*,
389 F.3d 386 (2d Cir. 2004) ............................................................................................ 13

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan*,
217 F. Supp. 3d 608 (N.D.N.Y. 2016) .............................................................................. 16

*In re Express Scripts, Inc.*,
No. 4:05-MD-01672 SNL, 2008 WL 2952787 (E.D. Mo. July 30, 2008) .............................. 26

*Fay v. Oxford Health Plan*,
287 F.3d 96 (2d Cir. 2002) .............................................................................................. 13

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
530 U.S. 238 (2000) ................................................................................................... 21, 27

ii

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d. Cir. 1990) ........................................................................... 23

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013) ....................................................................................... 16

*Johnson v. Nextel Communs. Inc.*,
    780 F.3d 128 (2d Cir. 2015) .......................................................................... 25

*Lee v. Burkhart*,
    991 F.2d 1004 (2d Cir. 1993) ................................................................... 16, 28

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........................................................... 14

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
    354 F. Supp. 2d 293 (S.D.N.Y. 2004) ........................................................... 22

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012) ............................................................................ 14

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d. Cir. 2008), *abrogated on other grounds* by *Bridge v. Phoenix
    & Indem. Co.,* 553 U.S. 639 (2008) ............................................................... 14

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ...................................................................................... 21

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.) ("IPO")*,
    471 F.3d 24 (2d Cir. 2006) ............................................................................ 11

*Moeckel v. Caremark, Inc.*,
    622 F. Supp. 2d 663 (M.D. Tenn. 2007) ........................................................ 20

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*,
    136 S. Ct. 651 (2016) .................................................................................... 27

*N.Y. State Psychiatric Ass'n v. UnitedHealth Grp. ("NYSPA")*,
    798 F.3d 125 (2d Cir. 2015) ..................................................................... 16, 17

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ................................................................................. 18, 19

*Pender v. Bank of Am. Corp.*,
    788 F.3d 354 (4th Cir. 2015) ......................................................................... 21

*Pharm. Care Mgmt. Ass'n v. Rowe*,
    429 F.3d 294 (1st Cir. 2005) ......................................................................... 20

*Popoola v. MD-Individual Practice Ass'n*,
  230 F.R.D. 424 (D. Md. 2005) ................................................................. 15

*Rapcinsky v. Skinnygirl Cocktails, L.L.C.*,
  No. 11 Civ. 6546 (JPO), 2013 WL 93636 (S.D.N.Y. Jan. 9, 2013) ......................................... 12

*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*,
  319 F.3d 205 (5th Cir. 2003) ................................................................. 12

*In re Smart Techs., Inc.*,
  295 F.R.D. 50 (S.D.N.Y. 2013) ................................................................. 14

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) ................................................................. 27

*Tythcott v. Aetna Life Ins.*,
  No. 3:03CV1732 (WWE), 2004 WL 2269704 (D. Conn. Sept. 21, 2004)
  (Eginton, J.) ................................................................. 17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
  454 U.S. 464 (1982) ................................................................. 15

*Wal-Mart, Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................. 10, 11, 12, 25

*Weiner v. Snapple Bev. Corp.*,
  No. 07 Civ. 8742 (DLC), 2010 WL 3119452 (S.D.N.Y. Aug. 3, 2010) ................................... 14

*Yurevich v. Sikorsky Aircraft Div.*,
  51 F. Supp. 2d 144 (D. Conn. 1999) (Eginton, J.) ................................................ 19

**Statutes**

29 U.S.C. § 1002(21)(A) ................................................................. 18, 19

ERISA § 405(a), 29 U.S.C. § 1105(a) ................................................................. 20

ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ................................................................. 15, 16, 17

ERISA Section 502(a)(2) ................................................................. 26, 28

ERISA Section 502(a)(3) ................................................................. 21, 22, 26, 27

**Other Authorities**

Fed. R. Civ. P. 23.............................................................................................*passim*

Fed. R. Civ. P. 23(a) .............................................................................. 2, 11, 12, 30

Fed. R. Civ. P. 23(a)(2) ................................................................................... 25, 30

Fed. R. Civ. P. 23(b) ...................................................................... 4, 11, 12, 30, 31

Fed. R. Civ. P. 23(b)(2) ............................................................................... 4, 30

Fed. R. Civ. P. 23(b)(3) ........................................................................... 4, 30, 31

# INTRODUCTION

Kimberly A. Negron, Daniel Perry (collectively, the "ERISA Plaintiffs") and Billy Ray

Blocker, Jr. (collectively with the ERISA Plaintiffs, the "Plaintiffs") seek to certify enormous

and unmanageable ERISA and RICO classes against OptumRx, Inc. ("OptumRx") based on

theories that courts have repeatedly rejected.[1]  As noted in Cigna Health and Life Insurance

Company's ("CHLIC") (together with OptumRx, "Defendants") opposition, the three proposed

classes encompass millions of participants from ***tens of thousands of*** different group health

benefit plans—maintained by tens of thousands of different plan sponsors.  Each of those health

plans has its own individually negotiated agreement with CHLIC.  ***None*** have contracts with

OptumRx.  Rather, CHLIC contracted with OptumRx to allow CHLIC plan participants access

to OptumRx's network of over 70,000 pharmacies.  The contract between CHLIC and OptumRx

dictated the terms of CHLIC's (and its plan participants') access to OptumRx's network,

including the rates that CHLIC agreed to pay OptumRx for the prescription drugs that

OptumRx's network pharmacies provided to participants in CHLIC's plans.  OptumRx, in turn,

contracted with retail pharmacies in its network.  Each contract with individual or group of

pharmacies provided the terms and rates that OptumRx agreed to pay and the retail pharmacies

agreed to accept to participate in the network.  OptumRx's sole role was providing access to the

network of pharmacies.  OptumRx was ***not*** the plan or claims administrator for Plaintiffs'

prescription drug benefits and did ***not*** interpret or apply the terms of the applicable plans in

adjudicating prescription drug transactions for the putative class.

The crux of Plaintiffs' claims is that they overpaid for certain prescription drugs based

on their interpretation of snippets of their plan documents.  Plaintiffs claim that the language "in

---

[1]     Plaintiffs also seek to certify a state law class and subclass, but the state law claims are not raised against OptumRx.  (Second Amended Consolidated Complaint ("SACC") ¶ 179, Counts IX-X).

Cigna's Plans" provided that their copayments and deductible payments for prescription drugs should never have been more than the reimbursement actually retained by the pharmacy in connection with the transaction pursuant to the pharmacy's separate contract with OptumRx (the "Pharmacy Reimbursement Rate").  Plaintiffs do not cite to any evidence that OptumRx had any role in drafting any language in the plan documents or was even aware of the language in the plans that they allege was violated.  Nor do Plaintiffs cite to any evidence—much less common evidence as to the putative class—that OptumRx played any role in determining or computing copayments or deductibles for the putative class members, much less that OptumRx was aware that such copayments or deductibles allegedly violated the terms in "Cigna's Plans."

Viewed from any angle, Plaintiffs have not met their burden under Rule 23 to show—by evidence that can withstand rigorous analysis—that their claims against OptumRx can be resolved on a classwide basis.  Plaintiffs cannot make that showing for many reasons.

*First,* for all the reasons stated in CHLIC's memorandum in opposition (incorporated herein), Plaintiffs have not satisfied Rule 23(a) or (b) because the core questions about liability under ERISA and RICO are not susceptible to common proof.  Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement.  Plaintiffs' core claim—that snippets of language from prescription drug benefit plans entitled them to a particular cap on their prescription drug benefit claims—is not capable of classwide resolution without regard to variations in individual plans, plan practices, and participant circumstances.  Nor can Plaintiffs adequately represent the class because of significant conflicts of interests between them and other putative class members.  Because Plaintiffs' claims against CHLIC and OptumRx are premised on their same theory of liability based on snippets in plan language, their claims against OptumRx likewise fail to satisfy the applicable Rule 23(a) requirements.

*Second*, Plaintiffs fail to demonstrate standing for their ERISA and RICO claims against OptumRx.  The Second Circuit has held that if a claim cannot succeed as a matter of law, then the court should not certify a class on that issue.  Here, Plaintiffs' ERISA claims fail as a matter of law.  Plaintiffs have no standing to pursue their claim for benefits against OptumRx as it was not the plan administrator or claims administrator, and it had no control—much less "total control"—over the plans' claims process.  Plaintiffs' breach of fiduciary duty claims likewise fail because they have provided no evidence that OptumRx was a fiduciary for their plans.  The Court allowed Plaintiffs' claims to proceed past the motion to dismiss based on allegations that CHLIC delegated authority to OptumRx to compute and determine Plaintiffs' cost-sharing payments in violation of plan terms.  Discovery, however, has uniformly shown OptumRx played no such role.  As to their RICO conspiracy claim, Plaintiffs fail to provide any evidence that OptumRx made the alleged misrepresentations at issue, much less that there was any agreement between CHLIC and OptumRx to facilitate the operation of a RICO enterprise or that OptumRx's alleged conduct caused Plaintiffs' injuries.

*Third*, for the same reasons Plaintiffs' claims against OptumRx fail for lack of standing or evidence, Plaintiffs also cannot satisfy Rule 23's commonality, predominance, or typicality requirements with respect to their claims against OptumRx.  Plaintiffs have not provided evidence that OptumRx is a proper defendant to their claim for benefits for their plans, much less that it has "total control" over the claims process for tens of thousands of group benefit plans to which OptumRx had no contract with.  Nor have Plaintiffs presented evidence of OptumRx's alleged fiduciary status as to tens of thousands of different group benefit plans or that, as a non-fiduciary, OptumRx assisted CHLIC in any breach.  For their RICO claim, Plaintiffs do not provide:  (1) any evidence that OptumRx made any misrepresentations to them,

3

much less that there is common evidence of such misrepresentations as to the putative class; (2) any evidence of common proof as to any agreement with CHLIC to engage in such alleged misrepresentations; or (3) classwide evidence that all proposed class members were injured by OptumRx's alleged conduct and how such injury would be calculated as against OptumRx.

*Fourth*, the proposed classes do not satisfy Rule 23(b). Plaintiffs argue that the ERISA classes may be certified under Rule 23(b)(2) because they seek reprocessing of all affected prescription drug claims and recalculation of all class member benefits. The Court, however, cannot remedy the alleged injury through an injunction against OptumRx. Plaintiffs do not and cannot argue that OptumRx—which is ***not*** the claims administrator—has any such ability to reprocess claims. As to Rule 23(b)(3), Plaintiffs argue that the alleged losses are the amount of the "clawbacks" and can be determined on a classwide basis. For the reasons stated in CHLIC's opposition, Plaintiffs' methodology fails. In addition, Plaintiffs fail to provide classwide evidence that OptumRx received any such "clawbacks" or any methodology for calculating OptumRx's alleged liability to the class.

## I.   FACTUAL BACKGROUND

The parties have spent over two years in discovery, and tellingly Plaintiffs barely cite to any specific facts regarding OptumRx's role (or lack thereof) in administering Plaintiffs' prescription drug benefits. Indeed, Plaintiffs' motion only mentions OptumRx five times. Instead, Plaintiffs lump both Defendants together without addressing the different roles that CHLIC and OptumRx had with respect to Plaintiffs' prescription drug benefits issued or administered by CHLIC.

4

### A.    CHLIC Administers Group Health Plans Sponsored by Plaintiffs' Employers

The three named Plaintiffs who are proposed as putative class representatives are participants in three distinct group health plans sponsored by their employers (collectively, the "Plans").  Each of these Plaintiffs were participants in an "Administrative Services Only" ("ASO") plan pursuant to which the plan sponsor (or employer) paid for covered medical services with its own funds.

The Plaintiffs' employers engaged CHLIC to provide administrative services for these Plans.  (Decl. of Michelle S. Grant in Supp. of OptumRx's Opp. to Pls.' Mot. for Class Certification ("Grant Decl.") Ex. 1, Plaintiff Perry's 2015 Summary Plan Description at CIGNA00000141; Grant Decl. Ex. 2, Plaintiff Negron's 2015 Summary Plan Description at CIGNA00001750; Grant Decl. Ex. 3, Plaintiff Blocker's 2016 Summary Plan Description at CIGNA00024199).  Pursuant to the ASO Agreements, CHLIC acted as what is known as a "claims administrator."  (*Id.*).  In its role as claims administrator, CHLIC interprets and applies the terms of the applicable Plans in adjudicating prescription drug transactions.  (Grant Decl. Ex. 4, CHLIC's Suppl. Resp. to Interrog. No. 1 in Pls.' Fifth Set of Interrogs. to CHLIC).

### B.    CHLIC Outsourced Certain PBM functions to OptumRx and Argus

OptumRx did not sponsor, insure, or act as the Plan Administrator or claims administrator for any of Plaintiffs' Plans.  (Grant Decl. Exs. 1–3).  OptumRx instead acted under a contract with CHLIC to perform certain designated pharmacy benefit services.  (SACC ¶¶ 20, 67–68, 73; Decl. of Danielle Wefelmeyer ("Wefelmeyer Decl.") ¶ 3).  In sum, OptumRx merely gave CHLIC access to its independent network of pharmacies.  (Grant Decl. Ex. 5, Tr. of June 23, 2020 Dep. of Tyler Lester ("Lester Tr."), at 333:14–334:18).  Because CHLIC did not have its own network of retail pharmacies for commercial medical plans, CHLIC contracted

5

with Catamaran of Illinois, Inc. in 2013 to allow plan participants access to its network of over 70,000 retail pharmacies (the "CHLIC-OptumRx Contract").[2]  (Wefelmeyer Decl. ¶ 3).  The CHLIC-OptumRx Contract dictated the terms of CHLIC's access to OptumRx's network, including rates that CHLIC must pay OptumRx for the prescription drugs that OptumRx's network pharmacies provided to participants in CHLIC's clients' Plans.  (*Id.* ¶ 3.)  Under the CHLIC-OptumRx contract, OptumRx passed through its rates with the retail pharmacies to CHLIC.  (*Id.*).

An affiliate of CHLIC also contracted with Argus Health Systems, Inc. (now known as DST Pharmacy Solutions) ("Argus"), which Plaintiffs have not named as a party.  Argus processes claims for certain of CHLIC's pharmacy benefit management plan sponsors and plan participants.  When an in-network retail pharmacy services a participant, the pharmacy will submit the claim at the point of sale (*i.e.*, at the pharmacy or point of sale ("POS")).  The amount that a plan participant pays for his or her copayment or deductible is determined in "real-time" at the POS based on data provided by CHLIC to Argus regarding coverage and plan terms.  (*See* Grant Decl. Ex. 4, CHLIC's Suppl. Resp. to Interrog. No. 1 in Pls.' Fifth Set of Interrogs. to CHLIC).  The communication and transmittal of information to the pharmacy is made by Argus, not OptumRx.  (*Id.*)[3]

### C.   Discovery Confirms That OptumRx Played No Role in Interpreting Plaintiffs' Plans or Computing Cost-Sharing Payments

Plaintiffs survived a motion to dismiss based on their allegations that

---

[2] Catamaran was acquired by OptumRx in 2015.  (Wefelmeyer Decl. ¶ 2).
[3] While the original CHLIC-OptumRx contract contemplated transferring the claims processing from Argus to Catamaran (SACC ¶ 68, n. 5), that never occurred.  Catamaran only provided claims processing services on a trial basis for certain limited claims for a brief period of time.  (Wefelmeyer Decl. ¶ 4; Grant Decl. Ex. 5, Lester Tr., at 313:13–314:3).  Otherwise, the actual claims processing for commercial plans at retail network pharmacies remained with Argus.  (*Id.*)

Defendants knowingly inflated Plaintiffs' cost-sharing payments in violation of plan terms. (*See, e.g.*, ECF No. 137 at 1, 17 (noting that Plaintiffs have asserted that OptumRx had "discretion to compute 'any and all benefit payments' allow[ing] them to determine the insureds' cost-sharing payments"), 26 ("[P]laintiffs maintain that defendants acted as fiduciaries by setting inflated cost-sharing payments that violated the plan terms.")).

Since the Court's motion to dismiss decision more than two years ago, the parties have produced hundreds of thousands of documents, exchanged numerous sets of interrogatories, and completed several depositions, including depositions of Plaintiffs' class certification expert and named Plaintiffs. This discovery has shown that, contrary to the vague allegations in Plaintiffs' complaint, ███████████████████████████████████████████████████ ███████████████████████. (Grant Decl., Ex. 6, Tr. of Apr. 21, 2020, Dep. of Kimberly A. Negron ("Negron Tr."), at 156:5-10, 191:13-20, and 193:14-20 (testifying that she could not recall any dealings or interactions with OptumRx, or receiving any written materials from OptumRx, with respect to pharmacy benefits, and that OptumRx did not make any specific statements to her regarding prescription drug benefits), and 194:6-195:7 (testifying that she cannot point to any evidence that OptumRx had knowledge regarding the specific provisions of her plan at issue in the litigation); Grant Decl. Ex. 7, Tr. of Apr. 24, 2020, Dep. of Daniel Perry ("Perry Tr."), at 235:17-236:23 (█████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████) and 239:9-18 (███████████████████████ ██████████████████████████████████████████████████████████); Grant Decl. Ex. 8, Tr. of May 12, 2020, Dep. of Billy Ray Blocker, Jr. ("Blocker Tr."), at 66:23-

67:13 and 158:7-13 (testifying that he had never heard of OptumRx outside of the lawsuit, and never communicated with OptumRx in any manner)).

Plaintiffs know this:  in the SACC filed two years after discovery began and just before the motion for class certification was brought, Plaintiffs make no specific allegations as to OptumRx's role in such determinations or benefit calculations or even that OptumRx had knowledge regarding the plan terms at issue.  And in response to OptumRx's recent First Set of Interrogatories seeking facts that Plaintiffs purport establish OptumRx's liability, Plaintiffs refused to answer nearly all of OptumRx's interrogatories, claiming that such "contention interrogatories" are "premature," despite the extensive discovery that has taken place in this case to date.  (Grant Decl. Ex. 9, Pls.' Objs. & Resps. to OptumRx's 1st Set of Interrogs.).  In one of two interrogatories Plaintiffs answered—Interrogatory No. 8, seeking identification of "each and every provision of the Plan which you allege OptumRx specifically violated"— Plaintiffs list various provisions of plan documents having nothing to do with OptumRx that concern CHLIC's claims administration, and in many cases, provisions from plan documents that predate OptumRx's relationship with CHLIC.  (*Id*.).

The ERISA Plaintiffs' Plans as well as the ASO Agreements between Plaintiffs' employers and CHLIC likewise make clear that CHLIC was the claims administrator.  For example, Plaintiff Perry's Plan provides as follows:  CIGNA has a two-step appeals procedure for coverage decisions that is initiated by filing a claim with CIGNA, and if that is denied, by filing a "request for an appeal in writing to CIGNA."  (Grant Decl. Ex. 1, Plaintiff Perry's 2015 Summary Plan Description at 48-49).  The final appeal will be decided by an appeals committee established by CIGNA.  (*Id*.)  The Plans for all of the remaining ERISA Named Plaintiffs likewise include language making CHLIC, not OptumRx, responsible for all benefits

8

determinations.  (Grant Decl. Ex. 2, Plaintiff Negron's 2015 Summary Plan Description at 52; Grant Decl. Ex. 3, Plaintiff Blocker's 2016 Summary Plan Description at 19).

CHLIC's own interrogatory responses confirm that the calculation of plan benefits and communications about Plaintiffs' copayments and deductibles to pharmacies were handled by CHLIC and third party Argus.  As CHLIC acknowledged, when each Plaintiff purchased prescription drugs from their local pharmacy, CHLIC, as Claims Administrator, or Argus, acting on CHLIC's behalf, communicated to the pharmacies each of the Plaintiffs' Plans Copay amounts.  CHLIC acknowledges that "[i]n its role as claims administrator, CHLIC interprets and applies the terms of the applicable plans in adjudicating prescription drug transactions." (Grant Decl. Ex. 4, CHLIC's Suppl. Resp. to Interrog. No. 1 in Pls.' Fifth Set of Interrogs. to CHLIC).

Discovery also confirmed that the amount of any "clawback" was credited to CHLIC. For any given transaction, a participant's payment at the pharmacy may be less than, the same as, or greater than the Pharmacy Reimbursement Rate or the rate CHLIC agreed to pay OptumRx in connection with the transaction.   (CHLIC Mem. at 6-7; Grant Decl. Ex. 5, Lester Tr. at 88:13-89:20).  This differential is recorded by CHLIC as a credit toward future payments that CHLIC would owe OptumRx.  (Grant Decl. Ex. 2, Lester Tr. 226:7–227:7).  According to CHLIC:  "In and around the February-May 2014 time period, Argus Health Systems, Inc., the vendor that provided CHLIC's retail pharmacy claim processing platform, implemented the operational capability for CHLIC to track and reconcile the differential in instances where a participant's payment to a Catamaran network pharmacy exceeded the Catamaran Rate, and Catamaran credited CHLIC with that differential as part of Catamaran's contractual payment reconciliation process with CHLIC.  That arrangement has continued since Optum, Inc.

acquired Catamaran in 2015."  (Grant Decl. Ex. 10, CHLIC's Resp. to Interrog. No. 1 in Pls.'

First Set of Interrogs. to CHLIC).  These credits—sometimes called "negative

reimbursements"—are what Plaintiffs refer to as "clawbacks."  Whether there is such a "credit"

in the transaction between OptumRx and CHLIC has no bearing on how much a participant

pays for prescription drugs at point of sale—it is only a question of whether certain amounts are

retained by the pharmacy or credited to CHLIC.  (Grant Decl. Ex. 5, Lester Tr. at 370:2-371:4).

Indeed, Plaintiffs' Memorandum of Law in Support of Motion for Class Certification

(ECF No. 209, "Pls.' Mem.") recognizes that the plan benefits they seek were not adjudicated

by OptumRx.  Plaintiffs acknowledge that their classes "seek the reprocessing of all affected

prescription drug claims and recalculation of all class member benefits. . . . Because Cigna had

this primary duty and did it wrong the first time, it should be ordered to do it again – correctly

this time."  (Pls.' Mem. at 12).  Likewise, Plaintiffs' purported calculation of the "clawbacks,"

which they claim should be returned and supports class treatment, relies exclusively on CHLIC

data.  (*See* Ex. A to Pls.' Mem., Decl. of Launce B. Mustoe, R.Ph., in Supp. of Pls.' Mot. for

Class Certification).  Plaintiffs present no evidence that OptumRx retained any portion of the

"clawbacks" during the class period, and their expert Launce Mustoe admitted that he was

unaware of OptumRx's role with respect to the transaction data his opinions rely upon and did

not consider OptumRx's role, if any, as part of his methodology or in forming his opinions.

(Grant Decl. Ex. 11, Tr. of April 17, 2020, Dep. of Launce B. Mustoe ("Mustoe Tr.") at 129:12-

130:4).

## STANDARD OF REVIEW

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.'"  *Wal-Mart, Stores, Inc. v. Dukes*, 564 U.S. 338,

348 (2011) (quoting *Califano v. Yamaski*, 442 U.S. 682, 700-01 (1979)).  In order to justify a

departure from that rule, Plaintiffs bear the burden of showing that each proposed class and

subclass satisfies the requirements of Fed. R. Civ. P. 23(a) and (b).  To come within the

exception, Plaintiffs "must affirmatively demonstrate [their] compliance" with Rule 23.  *Dukes*,

564 U.S. at 350.  And they must do so with evidence: Rule 23 "does not set forth a mere

pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation

marks omitted).  Plaintiffs "must not only 'be prepared to prove that there are *in fact* sufficiently

numerous parties, common questions of law or fact,' typicality of claims or defenses, and

adequacy of representation, as required by Rule 23(a)," but "must also satisfy through

evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (quoting *Dukes*, 564 U.S. at

350).

The Court must conduct a "rigorous analysis" to determine whether the above-described

Rule 23 prerequisites have been satisfied.  *See Dukes*, 564 U.S. at 531; *Miles v. Merrill Lynch &

Co. (In re Initial Pub. Offering Sec. Litig.) ("IPO"),* 471 F.3d 24, 33 (2d Cir. 2006).  This

rigorous analysis frequently "will entail some overlap with the merits of the plaintiff's

underlying claim" because "the class determination generally involves considerations that are

enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 564

U.S. at 351 (citations and quotations omitted).  Thus, the Second Circuit recognizes that

plaintiffs cannot satisfy this standard solely through allegations in the Complaint.  Rather, the

party seeking class certification must actually establish its requirements by a preponderance of

the evidence." *In re IPO*, 471 F.3d at 34, 37-38 (citation omitted).  Accordingly, the Court is

required to weigh the evidence and make factual determinations where appropriate—even if it

overlaps with the merits.  *Dukes,* 564 U.S. at 351; *In re IPO*, 471 F.3d at 40 (asserting that, in

determining whether the Rule 23 requirements for class certification have been met, it is appropriate for the judge to "resolve[] underlying factual disputes" and that "as to these disputes, the judge must be persuaded that the fact at issue has been established"); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.,* No. 11 Civ. 6546 (JPO), 2013 WL 93636, at *3–4 (S.D.N.Y. Jan. 9, 2013).

Plaintiffs argue that Rule 23(a)'s commonality requirement "is a low hurdle" and proceed accordingly by rattling off generic "contentions" supposedly common to the proposed classes without citation to any actual evidence. (Pls.' Mem. at 8–9. But that is precisely the error that the Supreme Court rejected in *Dukes*. 564 U.S. at 350. In fact, Plaintiffs never mention the elements of their ERISA or RICO claims—let alone explain how they would prove them against OptumRx through common evidence at a classwide trial. *See, e.g.*, *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 220 (5th Cir. 2003) (to "make a meaningful determination of the certification issues," court must "understand the claims, defenses, relevant facts, and applicable substantive law").

## ARGUMENT

## I.      No Class Can be Certified under Rule 23 Against CHLIC or OptumRx

Initially, for the reasons expressed in CHLIC's brief (incorporated herein) no class can be certified against Defendants generally. Plaintiffs have failed to make the required factual showing that the four conditions of Rule 23(a) or any of the conditions of Rule 23(b) or 23(b)(3) have been satisfied. As CHLIC argues, Plaintiffs' questions are not "capable of classwide resolution." (CHLIC Mem. at 13). Plaintiffs rely on the flawed premise that words or phrases in a plan must be read ***without*** reference to any other plan language or extrinsic evidence. But it is black letter law that snippets of language should ***not*** be interpreted in isolation. Rather,

12

benefit plans—whether or not subject to ERISA—must be interpreted "as a whole," with individual provisions—especially in the case of ambiguity—viewed in "the context of the entire . . . agreement." *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *Dobson v. Hartford Fin. Servs. Grp., Inc.*, 389 F.3d 386, 399 (2d Cir. 2004).  Plaintiffs' singular focus on a few snippets of language ignores material differences in other plan provisions and extrinsic evidence bearing on how much class members must pay for prescription drugs and how the Court will interpret each plan.  Because the plans are not uniform, such interpretation cannot be accomplished on a classwide basis.

These same deficiencies in Plaintiffs' arguments for class certification against CHLIC apply with equal, and even greater, force to OptumRx.  Plaintiffs provide no reason that their claims against OptumRx are somehow better-suited for class treatment than their claims against CHLIC.  And according to Plaintiffs, OptumRx cannot be liable on Plaintiffs' proposed class claims absent a finding that CHLIC erroneously interpreted and administered its Plans.  (*See* Pls.' Mem. at 1 (arguing that CHLIC allegedly violated the plan terms by causing "overpayments," and that CHLIC and OptumRx allegedly employed a scheme to "clawback" the alleged overpayments)).  Because questions concerning CHLIC's plan interpretation and administration cannot be adjudicated on a classwide basis, Plaintiffs' claims against OptumRx likewise fail to satisfy the applicable Rule 23 requirements and Plaintiffs' motion for class certification should be denied.

## II.     Because Plaintiffs Do Not Have Standing to Raise Their Claims Against OptumRx, No Class Can Be Certified Against It

Even if Plaintiffs were to establish Rule 23's requirements against CHLIC, Plaintiffs cannot certify a class against OptumRx because, looking past the SACC, Plaintiffs have no

Article III standing to raise their claims against OptumRx.  Rather, all of their claims fail as a matter of law.  Under Second Circuit precedent, this is fatal to their motion.

In order to satisfy their class certification burden, Plaintiffs must present evidence that they have Article III standing "as against each defendant."  *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018).  As the Second Circuit has recognized, if the plaintiff is unable to establish standing "as a matter of law, the Court should not certify a class on that issue."  *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d. Cir. 2008), *abrogated on other grounds* by *Bridge v. Phoenix & Indem. Co.,* 553 U.S. 639 (2008) (internal quotations and citation omitted).[4]  Consistent with this rule, courts in this circuit have consistently rejected motions for class certification where the plaintiff has failed to demonstrate Article III standing against a particular defendant in their class certification motion.  *See Buffalo Laborers Sec. Fund. v. J.P. Jeanneret Assocs. (In re Beacon Assocs. Litig.)*, No. 09 Civ. 8362 (LBS)(AJP), 2012 WL 1372145, at *2 (S.D.N.Y. Mar. 19, 2012) ("One of the ways in which a claim for class certification can fail as a matter of law is when the members of the proposed class lack standing to raise the asserted claims.") (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982));; *see also Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-66 (2d Cir. 2012) (holding that Article III standing should be addressed before class certification, and requiring that named plaintiff show she was injured by the conduct of each defendant).

In order to have Article III standing, a plaintiff must demonstrate some actual or threatened injury as a result of the defendant's illegal actions, that their injuries can be fairly traced to the challenged actions, and that their injuries are likely to be redressed by a favorable

---

[4]     *In re Smart Techs., Inc.,* 295 F.R.D. 50, 55 (S.D.N.Y. 2013) (excluding from class individuals whose claims would be legally insufficient under prevailing standards); *Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742 (DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 3, 2010) (denying class certification on claims that were legally insufficient as a matter of law) (internal citations omitted).

decision.  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454

U.S. 464, 472 (1982) (citations omitted).  This inquiry is defendant-specific, meaning that in

multi-defendant or class actions, each named plaintiff must establish that they have been harmed

by each defendant.  *See Popoola v. MD-Individual Practice Ass'n*, 230 F.R.D. 424, 431 (D. Md.

2005) (citation omitted).

In *Thole v. U.S. Bank N.A.*, the Supreme Court again confirmed that to have Article III

standing to bring ERISA claims against a plan fiduciary, the participant must have suffered a

personal injury traceable to the individual defendants' conduct.  207 L. Ed. 2d 85, 91–92 (2020).

In *Thole,* the Court confirmed the dismissal of ERISA claims for lack of Article III standing

because the plaintiffs had failed to allege that the defendants caused them any injury.  *Id.* at 90-

92.  Absent any personal monetary injury to themselves stemming from a defendants' actions,

Plaintiffs have no Article III standing to raise claims under ERISA.  *Id.*

Here, for each of the claims remaining against OptumRx—the ERISA claim for benefits

(Count I), the ERISA fiduciary claims (Counts II-VI), and the RICO conspiracy claim (Count

X)—Plaintiffs have wholly failed to demonstrate that OptumRx caused any of their alleged

injuries or that OptumRx may be held liable for such claims.  Plaintiffs' inability to establish

Article III standing—or the substantive elements of their claims—as a matter of law requires

denial of Plaintiffs' class certification motion against OptumRx.

## A.    Plaintiffs Lack Standing to Pursue Their ERISA Claims for Benefits Against OptumRx

Initially, the ERISA Plaintiffs fail to demonstrate they have standing to pursue their

ERISA Section 502(a)(1)(B) claim for benefits (Count I), which seeks the payment of benefits

under the terms of the ERISA Plaintiffs' Plans, against OptumRx.  (SACC ¶¶ 208-12).  The

evidence in this case uniformly shows that OptumRx had nothing to do with the administration

of plan benefits or communications about copay or deductible information.  (*Supra* at pp. 6-10).

The evidence also shows, and the ERISA Plaintiffs concede, that OptumRx has no ability to

redress Plaintiffs' purported injury.  (*See, e.g.*, Pls.' Mem. at 12 ("If Plaintiffs in the ERISA

Classes prove liability, they seek the reprocessing of all affected prescription drug claims and

recalculation of all class member benefits. . . .  Because *Cigna* had this primary duty and did it

wrong the first time, it should be ordered to do it again – correctly this time.") (emphasis

added)).  OptumRx is not the plan administrator or claims administrator, has no contract with

the group benefit plans under which Plaintiffs or the putative class are or were participants in,

did not adjudicate the prescription drug benefit claims in the first instance, and has no authority

to "readjudicate" such claims.

ERISA Section 502(a)(1)(B) allows a "participant" to raise a claim to recover "benefits

due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  The terms of ERISA plans

are characterized as "contracts," *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011), and a claim

for benefits is therefore "bound up with the written instrument."  *Heimeshoff v. Hartford Life &*

*Accident Ins. Co.*, 571 U.S. 99, 108 (2013).  As with all contracts, claims seeking plan benefits

are typically raised against the obligor—the ERISA plan itself.  *See Lee v. Burkhart*, 991 F.2d

1004, 1009 (2d Cir. 1993).  The Second Circuit has, however, created a narrow exception to this

rule that allows ERISA Section 502(a)(1)(B) claims to be raised against third-party claims

administrators who exercise "total control" over the plan's claims process.  *N.Y. State*

*Psychiatric Ass'n v. UnitedHealth Grp. ("NYSPA")*, 798 F.3d 125, 132-33 (2d Cir. 2015).  By

contrast, a third party who does not exercise "total control" over the administrative process is

*not* a proper defendant to an ERISA Section 502(a)(1)(B) claim.  *See Easter v. Cayuga Med.*

*Ctr. at Ithaca Prepaid Health Plan*, 217 F. Supp. 3d 608, 630-31 (N.D.N.Y. 2016); *see also*

16

*Tythcott v. Aetna Life Ins.*, No. 3:03CV1732 (WWE), 2004 WL 2269704, at *4 (D. Conn. Sept. 21, 2004) (granting summary judgment to defendant where "defendant is not a designated plan administrator for purposes of ERISA and does not ultimately control the distribution of funds or benefit determinations") (Eginton, J.); *Bowman v. Cont'l Cas. Co.*, Civ. No. 3-93-cv-1060 (WWE), 1999 WL 118001, at *3–4 (D. Conn. Mar. 4, 1999) (Eginton, J.).  As the Second Circuit noted in *NYSPA*, when "a claims administrator exercises total control over claims for benefits under the terms of the plan. . . .[it] is the only entity capable of providing direct relief" to the plaintiff.  *NYSPA*, 798 F.3d at 132.

Under *NYSPA* and its progeny, the ERISA Plaintiffs lack standing to prosecute their ERISA Section 502(a)(1)(B) claims against OptumRx.  OptumRx is neither the Plan of any ERISA Plaintiff nor is it the claims administrator.  (*See* Grant Decl. Exs. 1–3.)  While the ERISA Plaintiffs allege that their self-funded benefit plans provided discretionary authority to CHLIC (SACC ¶ 129), they do not even attempt to provide evidence that OptumRx has any control over the distribution of funds from or benefit determinations of the ERISA Plaintiffs' Plans (much less that of the entire putative class).

The ERISA Plaintiffs thus do not, and cannot, show that OptumRx caused the ERISA Plaintiffs' alleged loss of plan benefits or that OputmRx is empowered to remediate their alleged losses by using its administrative authority to provide Plaintiffs the plan benefits they seek.  They lack Article III standing to pursue their ERISA benefits claim against OptumRx (Count I), and their motion to certify such a claim on behalf of the ERISA Class and ERISA Subclass should be denied.

17

**B.      The ERISA Plaintiffs Lack Standing to Pursue Their ERISA Fiduciary Claims Against OptumRx**

Similarly, the ERISA Plaintiffs' ERISA fiduciary claims (Counts II-V[5]) fail as a matter of law because they lack Article III standing to pursue these claims against OptumRx.  Plaintiffs cannot show, as they must, that OptumRx had any fiduciary responsibility over their group benefit plans, which is fatal to their claims.

To succeed on their ERISA fiduciary claims against OptumRx, the ERISA Plaintiffs must demonstrate, *inter alia*, that OptumRx was:  (1) a fiduciary under ERISA and (2) acted in its fiduciary capacity when taking the complained-of action.  *See* 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 222 (2000).  Plaintiffs' ERISA fiduciary claims against OptumRx survived the pleading stage because the Court found that the Plaintiffs had sufficiently alleged that OptumRx (and CHLIC) had "discretion to…determine the insureds' cost-sharing payments," "dictat[ed] the amount of Spread to charge that would ultimately represent a Clawback to compensate defendants," and did so in violation of plan terms.  (ECF No. 137 at 17-26).

After more than two years of discovery, it is clear that OptumRx had nothing to do with these tasks.  Plaintiffs provide no evidence that OptumRx had discretion to determine their cost-sharing amounts or that the alleged "clawbacks" represented additional compensation to OptumRx.  *First*, Plaintiffs argue that the alleged misrepresentations were in the plan language, but they provide no evidence that OptumRx played any role in drafting such language or even knew of the terms.  (Grant Decl. Ex. 5, Lester Tr. at 314:4–9; Wefelmeyer Decl. ¶ 5).  *Second*,

---

[5]      Specifically, Counts II-IV allege breach of fiduciary duty and prohibited transaction claims against OptumRx.  (SACC ¶¶ 213-46).  Count V alleges that OptumRx breached its co-fiduciary duties because OptumRx was a fiduciary that allegedly knew or should have known that CHLIC was breaching its fiduciary duties to the participants.  (SACC ¶¶ 247–55).

18

██████████████████████████████████████████████████

██████████████████████████████████████████████. (Grant

Decl. Ex. 6, Negron Tr. at 156-5-10, 191:13-20, and 193:14-20; Grant Decl. Ex. 7, Perry Tr. at

235:17-236:23; Grant Decl. Ex. 8, Blocker Tr. at 66:23-67:13 and 158:7-13).  And when each

Plaintiff purchased prescription drugs from their local pharmacy, ***CHLIC***, as "Claims

Administrator," or Argus acting on its behalf, advised the pharmacy of the copay required by

each Plaintiff's plan.  (*See* Grant Decl. Ex. 4, CHLIC's Suppl. Resp. to Interrog. No. 1 in Pls.'

Fifth Set of Interrogs. to CHLIC; Grant Decl. Ex. 5, Lester Tr. 313:13–314:3).  Finally, in the

event the copay or deductible exceeded the amount the pharmacy was allowed to keep and there

were any "clawbacks," such amount was credited back to CHLIC, not OptumRx.  (*See* Grant

Decl. Ex. 10, CHLIC's Resp. to Interrog. No. 1 in Pls.' First Set of Interrogs. to CHLIC).

Plaintiffs provide no evidence connecting OptumRx to these activities or the ERISA Plaintiffs'

alleged injuries and, as such, the ERISA Plaintiffs lack Article III standing to pursue their

ERISA fiduciary claims against OptumRx.

Although OptumRx did provide services to CHLIC by allowing participants in plans

insured or administered by CHLIC to access OptumRx's network of pharmacies, that alone does

not make it a fiduciary.  To become an ERISA fiduciary, OptumRx must exercise

"***discretionary*** authority or ***discretionary*** control" over the "assets" of or "the administration of"

the plan.  29 U.S.C. § 1002(21)(A) (emphasis added); *Pegram v. Herdrich*, 530 U.S. 211, 222

(2000); *Yurevich v. Sikorsky Aircraft Div.*, 51 F. Supp. 2d 144, 151 (D. Conn. 1999) (holding

person performing ministerial function was not ERISA fiduciary) (Eginton, J.).  Plaintiffs do not

even attempt to argue that OptumRx had such discretionary authority for their plans or that of

the putative class as a whole.

In fact, courts have uniformly recognized that a party that provides the services that OptumRx provided—offering access to its network of pharmacies—is ***not*** an ERISA fiduciary. For example, in *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.,* 474 F.3d 463 (7th Cir. 2007), the Seventh Circuit rejected allegations that a PBM becomes a fiduciary by entering into contracts with pharmacies and allowing an ERISA plan access to the benefits of those contracts. *Id*. at 472-76. Consistent with *Caremark*, courts have uniformly held that offering group health plans a network of pharmacies is not a fiduciary act under ERISA. *E.g., Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 300-01 (1st Cir. 2005) (rejecting claim that PBM was ERISA fiduciary because plan administrative tasks were all non-discretionary); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 676-78 (M.D. Tenn. 2007) (same).

For these same reasons the ERISA Plaintiffs do not have standing to raise Count V's co-fiduciary claims against OptumRx. To have standing to raise a co-fiduciary claim against OptumRx, Plaintiffs must initially demonstrate that OptumRx was a fiduciary. *See* ERISA § 405(a), 29 U.S.C. § 1105(a) (noting that a "fiduciary with respect to a plan" can be held liable for breach of their co-fiduciary duties). Once again, the ERISA Plaintiffs do not even attempt to argue that OptumRx had any fiduciary role with respect to the ERISA Plaintiffs (or absent class members') Plans. Nor can they—OptumRx' role was exclusively the exact sort of non-discretionary role that does not make it a fiduciary under ERISA.

The ERISA Plaintiffs present no evidence that OptumRx engaged in ERISA fiduciary breaches that caused them any injury-in-fact or that OptumRx acted as a fiduciary with respect to their Plans. Accordingly, they lack standing to raise their claims against OptumRx and their motion for class certification should be denied.

20

**C.**     **The ERISA Plaintiffs Lack Standing to Raise Count VI's Non-Fiduciary ERISA Claims**

Because Plaintiffs present no proof that OptumRx "knowingly participated" in CHLIC's alleged breaches of fiduciary duty, they also lack standing to raise a non-fiduciary claim for equitable restitution under ERISA Section 502(a)(3).

To raise a claim under ERISA Section 502(a)(3) against OptumRx based upon actions taken in a non-fiduciary capacity, Plaintiffs must demonstrate that OptumRx "knowingly participated" in CHLIC's alleged breaches of fiduciary duty.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993).  *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 245 (2000) (noting that ERISA Section 502(a)(3)'s remedies against non-fiduciaries are limited to equitable restitution when the defendants knowingly participated in a breach of trust); *see also Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015).  Just as above, Plaintiffs present no evidence of any kind suggesting that OptumRx had any knowledge of the alleged wrongful acts they allege occurred in this case.  Plaintiffs only mention of "fiduciary" in their motion is CHLIC breached its fiduciary duty by failing to establish and maintain a proper claims processing system.  (Pls.' Mem. at 14).  Plaintiffs present no evidence that OptumRx had any knowledge of such alleged failure.  Nor do Plaintiffs present any evidence that OptumRx had knowledge regarding any of the other breaches of fiduciary duty alleged in the SACC.  Plaintiffs present no evidence, for example, that OptumRx had any knowledge of the terms of the group benefit plans that CHLIC administered.  They do not even present any evidence that OptumRx had access to or copies of the "Cigna Plans" that contain the alleged misrepresentations.  (Grant Decl. Ex. 5, Lester Tr. at 314:4–9 (Cigna's representative noting that he did not believe OptumRx had access "to the plan or plan documents"); *see also* Wefelmeyer

21

Decl. ¶ 5).  Nor do Plaintiffs present any evidence that OptumRx had knowledge that CHLIC

was allegedly misinterpreting the group health plans in computing plan benefits.

Absent any such evidence, Plaintiffs do not have Article III standing to bring claims

under ERISA Section 502(a)(3) against OptumRx.

     **D.**     **As to Their RICO Conspiracy Claim, Plaintiffs Lack Evidence to Establish OptumRx Made the Alleged Misrepresentations or That They Were Injured by OptumRx's Alleged Conduct**

Plaintiffs have not provided any evidence that OptumRx made the alleged

misrepresentations that form the basis of their RICO claim or that they were injured by

OptumRx's alleged conduct.  As the Court's order on the Motion to Dismiss recognized, to

establish the existence of a RICO conspiracy, a plaintiff must prove "'the existence of an

agreement to violate RICO's substantive provisions.'"  *Cofacredit, S.A. v. Windsor Plumbing*

*Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999) (internal quotations omitted).  Thus, Plaintiffs

must establish that OptumRx and CHLIC *agreed to* form and associate themselves with a RICO

enterprise and that they *agreed to* commit two predicate acts in furtherance of a pattern of

racketeering activity in connection with the enterprise.  *Id.*  Additionally, Plaintiffs must prove

that if the agreed-upon predicate acts had been carried out, they would have constituted a pattern

of racketeering activity.  *Id.* at 244–45; *see also Maddaloni Jewelers, Inc. v. Rolex Watch*

*U.S.A., Inc.,* 354 F. Supp. 2d 293, 300 (S.D.N.Y. 2004) ("A conspirator must intend to further

an endeavor which, if completed, would satisfy all of the elements of a substantive criminal

offense.").

Because Plaintiffs do not and cannot present any evidence whatsoever of any RICO

conspiracy claim against OptumRx, this claim fails as a matter of law and class certification is

inappropriate.  Plaintiffs argue that their RICO claims are based on "Defendants'" alleged

misrepresentations "that copayments and deductibles would only be a 'portion' of Covered

Expenses and, for Subclass members, that 'in no event' would copayments 'exceed the amount

paid by the plan to the Pharmacy—were uniform and are susceptible to class-wide proof[,]"

(Pls.' Mem. at 20), but these alleged "misrepresentations" refer to statements in plan documents

provided by the plan sponsors for Plaintiffs' group health benefit plans themselves, not CHLIC

nor OptumRx.  (*Id.* (citing Raabe Decl. Ex. A)).  Plaintiffs present no evidence that OptumRx

even possessed these documents or was aware of their terms, let alone that it knew that CHLIC

was (allegedly) breaching such terms.  Plaintiff themselves have testified, in fact, that ███████

███████████████████████████████████████████████████████████████

███████.  (Grant Decl. Ex. 6, Negron Tr. at 156:5-10, 191:13-20, 193:14-20, 194:6-195:7;

Grant Decl. Ex. 7, Perry Tr. at 235:17-236:23, 239:9-18; Grant Decl. Ex. 8, Blocker Tr. at

66:23-67:13, 158:7-13).

  The "gag clauses" that Plaintiffs reference also do not establish any RICO liability of

OptumRx or injury to Plaintiffs.  These so-called "gag clauses" are standard confidentiality

provisions in OptumRx's contracts with its network pharmacies that preclude the pharmacies

from disclosing confidential, proprietary information.  (*See* Raabe Decl. Ex. N. at 00177316 (¶

3.3)).  As noted, for Plaintiffs' to prove their RICO claim against OptumRx, they must establish

"an agreement" to engage in fraudulent, racketeering activity—here, the alleged

misrepresentations to participants in the plan documents.  *Sessa*, 125 F.3d at 71.[6]  Plaintiffs

cannot (and do not) contest that the confidentiality provisions in the pharmacy contracts are a

common contractual provision designed to limit a pharmacist's ability to disclose confidential

---

[6]     *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d. Cir. 1990) ("Because the core of a RICO
civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least,
must allege specifically such an agreement.").

23

information about the proprietary contracted rates between the pharmacy and OptumRx.

Plaintiffs present no evidence that OptumRx included these alleged "gag clauses" in its

contracts with the pharmacies to further CHLIC's alleged misrepresentations to Plaintiffs about

the terms of their coverage.  They in no way evidence any agreement between ***OptumRx and***

***CHLIC*** to perpetrate a fraudulent scheme to misrepresent to Plaintiffs and the putative class

how their copayments would be calculated based on the language in plan documents.  In fact,

██████████████████████████████████████████████████

██████████████████████████████████.  (Grant Decl. Ex. 6, Negron Tr. at

188:20–189:21, 190:24–191:4; Grant Decl. Ex. 7, Perry Tr. at 237:11–238:6; Grant Decl. Ex. 8,

Blocker Tr. at 159:4–11).  And, as noted above, Plaintiffs have provided no evidence that

OptumRx knew of, much less ***agreed with*** CHLIC to conceal the alleged "fraudulent" billing

practices.

Simply put, Plaintiffs have provided no evidence that OptumRx made a

misrepresentation to them forming the basis of their RICO claim—much less that it ***caused***

them to suffer any injury.  Nor do they provide evidence that OptumRx agreed with CHLIC to

facilitate the operation of a RICO enterprise through a pattern of racketeering activity and that

OptumRx agreed to commit the requisite predicate acts in furtherance of a pattern of

racketeering activity in connection with the enterprise.  Plaintiffs' RICO claims against

OptumRx fail as matter of law and such claims should not be certified for class treatment.

### III.   Plaintiffs' ERISA and RICO Claims Against OptumRx Do Not Satisfy Rule 23

Even if Plaintiffs themselves had standing to raise any of their claims against OptumRx,

they cannot satisfy Rule 23's commonality, predominance, or typicality requirements because

they cannot show that the elements of the putative class members' claims are susceptible to classwide proof.

### A.   Plaintiffs Cannot Satisfy Rule 23(a)(2)'s Commonality Requirement

To satisfy Rule 23(a)(2)'s commonality requirement, Plaintiffs must present a question of fact or law that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  "[T]he Supreme Court has cautioned that 'any competently crafted class complaint literally raises common questions.'  Accordingly, a court must 'probe behind the pleadings before coming to rest on the certification question,' satisfying itself that Rule 23 compliance may be demonstrated through 'evidentiary proof.'"  *Johnson v. Nextel Communs. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (quoting *Dukes*, 564 U.S. at 351 (alteration and internal quotation marks omitted) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted)).

### 1.   The ERISA Plaintiffs Do Not and Cannot Present Common Proof of OptumRx's Fiduciary Status

The ERISA Plaintiffs do not and cannot present common proof that would establish OptumRx's ERISA liability on a classwide basis.  While the ERISA Plaintiffs argue that Rule 23(a)(2)'s commonality requirement is met because they allege "conduct by an insurer that violated standard policy or plan language[,]]" (Pls.' Mem. at 8 (citations omitted)) and that "the common question of whether class members paid too much in violation of the uniform language of their Plans will determine liability on a class-wide basis" (*id*. at 15), this purported "common question" will in no way resolve—and does not even purport to resolve—OptumRx's liability. Notably, the ERISA Plaintiffs do not and cannot point to any common evidence with respect to OptumRx, such as uniform contracts or policies involving OptumRx, that could be used to

25

adjudicate ***OptumRx's*** liability.  Court after court has held that determining whether a pharmacy benefit manager ("PBM") owed ERISA fiduciary duties to a plan, and whether it breached those duties, requires examining the plan documents and the contracts between the PBM and the plan sponsor.  *See, e.g., In re Express Scripts, Inc.*, No. 4:05-MD-01672 SNL, 2008 WL 2952787, at *11–13 (E.D. Mo. July 30, 2008); Here it is even more attenuated in that OptumRx has no contracts with any of the plan sponsors for the plans at issue.  And as discussed above, discovery in the case confirms that OptumRx did not engage in any of the plan administration, interpretation, or prohibited transaction conduct that forms the bases for Plaintiffs' purported "common questions."  (*See supra* at pp. 6-10).

Additionally, the ERISA Plaintiffs do not and cannot point to any uniform evidence that could be used to adjudicate OptumRx's liability under ERISA's remedial provisions (ERISA Section 502(a)(2) or (a)(3)).  The ERISA Plaintiffs primarily seek a so-called "surcharge" remedy against Defendants—a remedy that allows a court to issue an award of damages against a breaching fiduciary.  *Amara*, 563 U.S. 421 at 444.  But as the Supreme Court explained in *Amara*, "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm . . . by a preponderance of the evidence."  *Id.*  Plaintiffs have not only failed to demonstrate that OptumRx is a fiduciary (a predicate to such relief) (*see supra* at pp. 18-20), but they also have failed to present any common evidence that would "show" what "harm" OptumRx had caused the ERISA Plaintiffs or the absent class members.  (*Id.*).  They offer no mechanism for making this determination.  As their own expert testified, he was unaware of OptumRx's role with respect to the transaction data his opinions rely upon and did not consider OptumRx's role, if any, as part of his methodology or in forming his opinions.  (Grant Decl. Ex. 11, Mustoe Tr. at 129:12-130:4).  And, as explained by CHLIC, the recoupment process that Plaintiffs' refer to as

"clawbacks" did *not* change the amount of the participants' copay, coinsurance, or deductible they were paying at the pharmacy.  (Grant Decl. Ex. 5, Lester Tr. at 370:2-371:4).

Nor have the ERISA Plaintiffs demonstrated how they would establish the narrow relief ERISA Section 502(a)(3) offers against non-fiduciaries on a classwide basis.  Under the Supreme Court's decision in *Harris Trust*, to obtain relief against a non-fiduciary, the ERISA Plaintiffs must demonstrate that OptumRx "knowingly participated" in CHLIC's breach of duty.  (*See supra* at p. 21).  The ERISA Plaintiffs offer no evidence that OptumRx had knowledge of CHLIC's purported breach of any duty to plan participants, let alone evidence suggesting that a determination of OptumRx's knowledge could be made on a classwide basis.  Further, relief against OptumRx in its non-fiduciary capacity under ERISA Section 502(a)(3) would require that the ERISA Plaintiffs demonstrate that it would be "unconscientious" for OptumRx to "retain and enjoy" a particular piece of property.  *See Harris Trust*, 530 U.S. at 250.  To satisfy this standard, the ERISA Plaintiffs must "trace" assets in OptumRx's possession that were wrongfully taken from the ERISA Plaintiffs.  *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 332 (4th Cir. 2006) (proposed class could not seek equitable restitution because it had failed to show that alleged "premium overcharges [were] traceable"); *see also Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*, 136 S. Ct. 651, 658 (2016) (same reasoning).  And once again, the ERISA Plaintiffs do not even attempt to make this showing—they offer no evidence, for example, that OptumRx possesses any of the "clawbacks" that they argue are the basis for their damages claim.  (Pls.' Mem. at 16).  In fact, Plaintiffs' expert admitted that he was unaware of OptumRx's role with respect to the transaction data his opinions rely upon and did not consider OptumRx's role, if any, as part of his methodology or in forming his opinions.  (Grant Decl. Ex. 11, Mustoe Tr. at 129:12-130:4).

Finally, the ERISA Plaintiffs have failed to demonstrate that classwide relief would be appropriate under ERISA Section 502(a)(2).  In *Thole*, the Supreme Court recognized that a participant must have Article III standing in their own personal capacity to raise a claim under § 502(a)(2).  207 L.Ed.2d at 90-92.  Thus, for the same reasons as above, the ERISA Plaintiffs have failed to demonstrate that OptumRx caused them any individual harm, leaving them without Article III standing to seek relief under this section.  Additionally, relief under ERISA Section 502(a)(2) can only be recovered "in a representative capacity *on behalf of the plan*." *Coan v. Kaufman,* 457 F.3d 250, 257 (2d Cir. 2006) (emphasis added).  *See also Lee v. Burkhart*, 991 F.2d at 1007.  ERISA Section 502(a)(2) claims require the participant to allege an injury to the plan, not just individual relief.  *Banyai v. Mazur,* No. 00 CIV. 9806 (SHS), 2007 WL 959066, at *2 (S.D.N.Y. March 29, 2007).  Thus, because the ERISA Plaintiffs only allege that they themselves have suffered damages when they did not receive the benefits they claim they were entitled to receive, their claim under ERISA Section 502(a)(2) cannot proceed.  *See id*.

### 2.   Plaintiffs Do Not and Cannot Present Common Evidence of OptumRx's RICO Liability, Injury, or Causation

Plaintiffs' purported "common questions" supporting their RICO claims likewise concern plan administration and alleged communications in the plan documents that OptumRx had no involvement in, and Plaintiffs similarly lack any uniform evidence that could be used to adjudicate OptumRx's RICO liability.  (*See supra* at pp. 22-24; Pls' Mem. at 19-20).  For all of the reasons in CHLIC's opposition, Plaintiffs' motion should be denied.  And, in any event, purported common evidence of alleged misrepresentations in the plan language has no relevance to OptumRx's RICO liability.  Plaintiffs point to no alleged misrepresentations *by OptumRx*, much less evidence that such misrepresentations caused their injury.

Plaintiffs argue that the "key inquiry" in determining RICO damages is the amount of the "clawbacks."  (Pls.' Mem. at 20).  In addition to all of the reasons cited in CHLIC's opposition as to how this fails to show common proof of injury, Plaintiffs never explain what if any of that amount they assert is OptumRx's liability and how they would calculate it on a classwide basis.  Plaintiffs' amended class definition purports to include only those participants (1) with certain snippets of language in their plan documents, (2) where, according to the transaction data produced by CHLIC the "copayment or deductible exceeds the amount the pharmacy agreed with [CHLIC] or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis," and (3) where the alleged "excess amount is credited or transferred to [CHLIC] or the pharmacy benefit manager," (ECF No. 253 at 4), but it does not identify which pharmacy benefit manager or cite to any evidence that any such amount was in fact "credited or transferred" to OptumRx.  Indeed, the evidence shows otherwise.  (*See* Grant Decl. Ex. 10, CHLIC's Resp. to Interrog. No. 1 in Pls.' First Set of Interrogs. to CHLIC; Grant Decl. Ex. 5, Lester Tr. at 226:7–227:7).  According to CHLIC:  "In and around the February-May 2014 time period, Argus Health Systems, Inc., the vendor that provided CHLIC's retail pharmacy claim processing platform, implemented the operational capability for CHLIC to track and reconcile the differential in instances where a participant's payment to a Catamaran network pharmacy exceeded the Catamaran Rate, ***and Catamaran credited CHLIC with that differential as part of Catamaran's contractual payment reconciliation process with CHLIC. That arrangement has continued since Optum, Inc. acquired Catamaran in 2015***."  (*Id.* (emphasis added)).

**B.      Plaintiffs' Cannot Certify a Class Under Rule 23(b)(2) Against OptumRx**

Plaintiffs do not dispute that Rule 23(b)(2) certification is not available to them for their RICO conspiracy claim against OptumRx, but Plaintiffs argue that their ERISA classes can be certified under Rule 23(b)(2) because they seek reprocessing of all affected claims.  (Pls.' Mem. at 18–21.)  In their entire argument, however, Plaintiffs fail to mention OptumRx at all and, as discussed above, OptumRx played no role in adjudicating the claims in the first instance and has no ability to readjudicate them.  Thus, an injunction against OptumRx is unavailable and the requirements of Rule 23(b)(2) are not met.

**C.      Plaintiffs Cannot Certify a Class Under Rule 23(b)(3) Against OptumRx**

In the absence of common evidence showing OptumRx's ERISA and RICO liability, Plaintiffs' proposed classes against OptumRx fail to satisfy Rule 23(a)(2)'s commonality requirement and should be rejected.  For the same reasons, Plaintiffs' proposed classes also fail to satisfy Rule 23(b)'s predominance requirement, which demands that Plaintiffs show that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding.").  As noted in CHLIC's opposition, Plaintiffs fail to satisfy Rule 23's predominance requirement because they have not offered a method for calculating damages that matches their liability theory, their method of calculating damages is flawed, and individualized issues specific to both the ERISA and RICO claims defeat predominance as against both CHLIC and OptumRx.  In addition, Plaintiffs' attempt to certify ERISA and RICO classes against OptumRx fail for additional reasons.

30

*First*, the ERISA Plaintiffs' predominance argument is based on snippets of plan language that OptumRx had no role in drafting, administering, adjudicating, or even knowledge of.  Plaintiffs argue that the "predominant issue for the ERISA Classes is whether Defendants violated ERISA by 'clawing back' the excessive copayments and deductibles in breach of the clear Plan language."  (Pls.' Mem. at 16.)  However, Plaintiffs do not explain how these so-called "common questions" will adjudicate liability of **OptumRx** which is not the plan, plan administrator, or claims administrator.

*Second*, for the RICO classes, Plaintiffs argue that the misrepresentations in the plan documents and reliance on such alleged misrepresentations can be established on a classwide basis.  (Pls.' Mem. at 19-20).  But, again, the snippets of language in plan documents are **not** representations by OptumRx.

*Third*, for both the ERISA Classes and RICO classes, Plaintiffs argue that the alleged damages are the "clawbacks" that can be calculated based on data produced by CHLIC.  Moreover, Plaintiffs, however, do not suggest that any of the CHLIC data could be used to establish whether OptumRx received any of the so-called "clawbacks."  In fact, their expert has not even considered OptumRx's liability or calculation of damages against it.  (Grant Decl. Ex. 11, Mustoe Tr. at 129:12–130:4; *see also* Pls.' Mem. Ex. A, Decl. of Launce B. Mustoe, R.Ph., in Supp. of Pls.' Mot. for Class Certification at 1).  In addition, Plaintiffs themselves recognize that damages under RICO should place the injured parties "in the same position they would have been in but for the illegal conduct" (Pls.' Mem. at 20), but the amount of "clawbacks" are not an appropriate measure of RICO injury.  Allocations of credits between retail pharmacies, OptumRx, and CHLIC represent a contractual arrangement, not injuries to a class member's "business or property" caused by any misrepresentations.  Nor do Plaintiffs attempt to tie the

amount of "clawbacks" to any illegal conduct by OptumRx.  In the complete absence of any common questions or evidence of OptumRx's liability (or any evidence of OptumRx's liability at all), Plaintiff's cannot possibly satisfy Rule 23(b)(3)'s predominance requirement.

## <u>CONCLUSION</u>

The Court should deny Plaintiffs' motion for class certification in full.  At a minimum, however, no class should be certified as against OptumRx.

Dated:  July 6, 2020

By /s/ *Michelle S. Grant*
Theodore J. Tucci (ct05249)
Ivana Greco (ct29635)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299
ttucci@rc.com
igreco@rc.com

Michelle S. Grant (*Pro Hac Vice – phv08827*)
Andrew Holly (*Pro Hac Vice – phv08826)*
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868
grant.michelle@dorsey.com
holly.andrew@dorsey.com

*Attorneys for Defendant OptumRx, Inc.*