# EXHIBIT 26

PUTNAM INVESTMENTS

WELFARE PLAN

Amended and Restated as of January 1, 2015

{B1827646, 5}

CIGNA00001606

PUTNAM INVESTMENTS

WELFARE PLAN

Amended and Restated as of January 1, 2015

## ARTICLE 1

## THE PLAN

1.1     Establishment.  Putnam Investments, LLC (the "Company") hereby amends and restates, effective as of January 1, 2015, this welfare benefit plan for the benefit of its eligible employees, which shall be known as the Putnam Investments Welfare Plan (the "Welfare Plan"). While benefits may, for convenience, be described in documents separate from this one, the Welfare Plan, together with all Contracts set forth in Schedule A, shall be considered a single employee welfare benefit plan for all Participants and Covered Dependents.

1.2     Purpose.  The purpose of the Welfare Plan is to provide eligible Employees with the opportunity to participate in the group benefits provided under the Welfare Plan and to pay certain costs on a before-tax or after-tax basis.  The Welfare Plan is intended to qualify as an accident and health benefits plan under Sections 105 and 106 of the Code, a group life insurance plan under Section 79 of the Code, a dependent care plan under Section 129 of the Code and a disability plan under Sections 105 and 106 of the Code, and will be construed and administered in a manner consistent with those rules.  The Welfare Plan is also intended to comply with the provisions of Section 125 of the Code and all regulations and rulings thereunder (collectively, the "Cafeteria Plan Rules") and will be construed and administered in a manner consistent with those rules.

## ARTICLE 2

## DEFINITIONS

Whenever used in the Welfare Plan, the following words and phrases have the meanings set forth below unless the context plainly requires a different meaning, and when the defined meaning is intended, the term is capitalized.

2.1     "Administrator" means the Administrator of the Welfare Plan designated in Section 11.1.  For purposes of Article 12 and 13, "Administrator" means the Administrator and any person to whom the Administrator has delegated authority with respect to any claims matter that is subject to Article 12 or 13, including a person designated in accordance with a particular Contract.

2.2     "Adverse Benefit Determination" means any denial, reduction or termination of, or failure to provide or make payment (in whole or in part) for, a benefit, including any such action that is based on a determination of a person's eligibility to participate in the Welfare Plan or a Contract or any such action resulting from the application of any utilization review as well

{B1827646. 5}

CIGNA00001607

as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational and not medically necessary or appropriate.  In the case of any Health Benefits Contract that is not "grandfathered" within the meaning of 29 C.F.R. § 2590.715-1251 and is not an "excepted benefit" under Section 2722 of the Public Health Service Act, Adverse Benefit Determination shall include any rescission of coverage as described in 29 C.F.R. § 2590.715-2712(a)(2).

2.3     "Affiliated Employer" means any corporation, partnership, trade or business (whether or not incorporated) that constitutes a controlled group of corporations with the Company, a group of trades or businesses under common control with the Company or an affiliated service group within the meaning of Section 414(b), Section 414(c) or Section 414(m) of the Code, respectively except to the extent such treatment is not recognized under ERISA.  A business entity that is a predecessor to the Company will be treated as an Affiliated Employer, if the Company maintains a plan of the predecessor business entity or if such treatment is otherwise required.  A business entity will also be treated as an Affiliated Employer if and to the extent that such treatment is required by regulations promulgated pursuant to Section 414(o) of the Code.

2.4     "Anniversary Date" means the Effective Date and each January 1 thereafter.

2.5     "Benefiting Individual" has the meaning set forth in Section 6.2.

2.6     "Breach" has the same meaning as the term "breach" in 45 C.F.R. § 164.402.

2.7     "Business Associate" means a person or entity that (a) creates, receives, maintains or transmits PHI on behalf of a Health Benefit Contract (including for claims processing or administration, data analysis and underwriting) or (b) provides legal, accounting, actuarial, consulting, data aggregation, management, accreditation or financial services, where the performance of such services involves giving the person or entity access to Protected Health Information.

2.8     "Cafeteria Plan Rules" has the meaning set forth in Section 1.2.

2.9     "Change in Status," unless otherwise specified in a particular Contract, means any of the following:

(a)     Participant's marriage, divorce, legal separation or annulment;

(b)     Birth, adoption or placement for adoption of a Dependent (other than the Participant's spouse);

(c)     Death of a Dependent;

(d)     A Dependent first satisfying or ceasing to satisfy the requirements for coverage due to attainment of age, student status or any similar circumstance, as provided in the Contract under which the Participant receives coverage;

CIGNA00001608

(e)     Any change in the employment status of the Participant or the Participant's Dependent that affects eligibility to participate in the Flexible Benefits Plan or any Optional Benefit (as defined in the Flexible Benefits Plan), including commencement or termination of employment, an increase or decrease in hours of employment, a switch between full-time and part-time status, a strike or lockout, a commencement of, or return from, an unpaid leave of absence or a change in worksite;

(f)     Except in the case of any Health Care Reimbursement Plan or Dependent Care Reimbursement Plan, any change in the place of residence or place of work of the Participant or the Participant's Dependent; and

(g)     The commencement or termination of an adoption proceeding, if adoption assistance is offered under the Flexible Benefits Plan.

Effective September 18, 2014, a Change in Status for the Flexible Benefits Plan (and not for purposes of any Health Care Reimbursement Plan or any Dependent Care Reimbursement Plan) will include, as provided in Notice 2014-55:

(i)     A revocation of accident and health benefits Contract coverage related to the Participant's change in employment status that reduces a Participant's reasonably expected average hours of service per week to below 30 hours, even if that reduction does not affect eligibility to participate in an accident and health benefits Contract, provided that the Participant reasonably represents to the Administrator that the revocation of coverage under the accident and health benefits Contract corresponds to the enrollment of the Participant and any Covered Dependents in another health plan that provides minimum essential coverage, effective no later than the first day of the second month following the month that includes the date the original coverage was revoked; and

(ii)    A revocation of accident and health benefits Contract coverage related to the Participant becoming eligible to enroll in a qualified health plan through HealthCare.gov, pursuant to guidance issued by the Department of Health and Human Services (and whether as part of an annual open enrollment period or otherwise), provided that the Participant reasonably represents to the Administrator that the revocation of coverage under the accident and health benefits Contract corresponds to the enrollment of the Participant and any Covered Dependents in a qualified health plan offered through HealthCare.gov effective no later than the day immediately following the day the coverage was revoked.

In the case of an Optional Benefit Plan that provides accident and health benefits or group-term life insurance, a Change in Status includes an increase or decrease in the number of Dependents who may benefit from coverage under an Optional Benefit Plan if the change affects

CIGNA00001609

eligibility under the Optional Benefit Plan.  Change in Status for purposes of any accident and health benefits Contract, including any Health Care Reimbursement Plan, includes events affecting children under age 27 who are not dependents within the meaning of Section 152(a) of the Code to the extent permitted under applicable guidance.

2.10    "Claim" has the meaning set forth in Section 12.1 or 13.1.

2.11    "Claimant" means a Participant, Covered Dependent or beneficiary or the authorized representative, which in the case of an Urgent Care Claim may be a health care professional, of any of the foregoing, who asserts a right to a benefit under the Welfare Plan in accordance with the procedures set forth in Article 12 or 13.

2.12    "COBRA Continuation Coverage" means coverage pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended from time to time, or other statute of similar import, including any applicable state statute.  Any reference in this Welfare Plan to a section of such a statute will be considered to mean and refer to applicable regulations as well as any amendment or successor to that section.

2.13    "Code" means the Internal Revenue Code of 1986, as amended from time to time, or other statute of similar import.  Any reference in this Welfare Plan to a section of the Code will be considered to mean and refer to applicable regulations as well as any amendment or successor to that section.

2.14    "Code of Federal Regulations" or "C.F.R." means the Code of Federal Regulations, as amended from time to time.

2.15    "Company" means Putnam Investments, LLC.

2.16    "Compensation" means an Employee's total salary, wages, bonuses, pay for overtime, vacation pay, sick pay, pay for shift differentials and other compensation paid by the Employer to an Employee (without regard to any elective contributions within the meaning of Section 402(g)(3) of the Code or any salary reductions pursuant to Section 125 or 132(f) of the Code), but excluding reimbursed expenses, credits or benefits under any plan of deferred compensation to which the Employer contributes and any additional compensation payable in a form other than cash.

2.17    "Concurrent Care Decision" means a decision concerning whether or not the Welfare Plan will reduce or terminate (other than by plan amendment or termination) a benefit that involves an ongoing course of treatment to be provided over a period of time or a number of treatments.

2.18    "Contract" means the contracts or policies that the Company adopts, obtains or enters into from time to time for the payment of the benefits set forth in Schedule A.  The Contracts specify the terms of available benefits, including, where applicable, eligibility requirements, conditions for benefit payments, funding methods and procedures for amending or terminating the Contracts.  The Administrator will maintain at its principal office a copy of each Contract.

CIGNA00001610

2.19    "Covered Dependent" means a Dependent who is otherwise eligible under the terms of a Contract and who is enrolled by a Participant in one or more Contracts. Notwithstanding any provision of the Welfare Plan or of any Contract, enrollment in one contract shall not constitute enrollment in any other Contract.

2.20    "Covered Electronic Transaction" has the same meaning as the term "transaction" in 45 C.F.R. § 160.103.

2.21    "Dependent" means: (a) for purposes of a Participant's use of before-tax dollars to pay for accident and health benefits Contract costs or under any Health Care Reimbursement Plan, an Employee's spouse, and any individual who qualifies as a child or dependent within the meaning of Section 105(b) of the Code; and (b) for all other purposes an Employee's spouse and any individual who qualifies, within the meaning of Section 152 of the Code, as a dependent of the Employee. To the extent the terms of any Contract are less restrictive, the terms of such Contract shall define dependent for the purpose of that Contract only.

2.22    "Dependent Care Reimbursement Plan" means the Putnam Investments Dependent Care Reimbursement Plan, as amended from time to time.

2.23    "Disability Benefits" mean benefits provided under a salary continuation pay practice program for absences resulting from disability or benefits provided under a disability income Contract.

2.24    "Effective Date" means January 1, 2015.

2.25    "Electronic Protected Health Information" or "ePHI" has the same meaning as the term "electronic protected health information" in 45 C.F.R. § 160.103.

2.26    "Employee," unless otherwise specified in Schedule A or a particular Contract, and except as provided in the following paragraph, means an individual who is a common law employee of the Employer; provided, however, that the term Employee does not include: (a) contingent employees; (b) temporary or irregular employees, including student interns and seasonal employees, or contractors; (c) independent contractors; (d) leased employees within the meaning of Section 414(n) of the Code; and (e) except to the extent specifically bargained for, members of a collective bargaining unit; and provided, further, that any individual described in subparagraphs (c) or (d) of this Section shall remain ineligible to participate in the Welfare Plan, notwithstanding any recharacterization of the individual as an employee for any federal, state or local law purpose. Notwithstanding anything in the Welfare Plan to the contrary, the Administrator may, in its discretion, declare that a recharacterized individual will be classified as an eligible Employee, either retroactively or prospectively.

Any uncertainty concerning an individual's classification shall be resolved, absent a decision by the Administrator, by determining that the individual is not an eligible Employee.

2.27    "Employer" means the Company and any Affiliated Employer that is designated by the Company as a participating company. As of the Effective Date the following Affiliated Employers participate in the Plan: the Company, its directly and indirectly wholly owned domestic subsidiaries, PanAgora Holdings, Inc. and PanAgora Asset Management, Inc.

CIGNA00001611

2.28     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, or other statute of similar import.  Any reference in this Welfare Plan to a section of ERISA will be considered to mean and refer to applicable regulations as well as any amendment or successor to that section.

2.29     "Flexible Benefits Plan" means the Putnam Investments Flexible Benefits Plan, as amended from time to time.

2.30     "FMLA Leave" means a leave of absence pursuant to the Family and Medical Leave Act, as amended from time to time, or other statute of similar import, including any applicable state statute.  Any reference in this Welfare Plan to a section of such a statute will be considered to mean and refer to applicable regulations as well as any amendment or successor to that section.

2.31     "GINA" has the meaning set forth in Section 5.11.

2.32     "Health Benefits" means group health plan benefits provided under an accident and health benefits Contract.

2.33     "Health Benefits Contract" means a Contract providing Health Benefits.

2.34     "Health Care Reimbursement Plan" means the Putnam Investments Health Care Reimbursement Plan, as amended from time to time.

2.35     "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, as amended from time to time, or other statute of similar import.

2.36     "IRO" means an accredited, independent review organization that conducts external reviews of Adverse Benefit Determinations in accordance with 29 C.F.R. § 2590.715-2719.

2.37     "Law" has the meaning set forth in Section 5.1.

2.38     "Medicaid" has the meaning set forth in Section 3.4(d) or 5.4, as applicable.

2.39     "Medical Child Support Order" means any judgment, decree or order (including approval of a settlement agreement) issued by a court of competent jurisdiction or issued through an administrative process established under state law that has the force and effect of law under applicable state law that (a) provides for child support with respect to a child (or foster child) of a Participant who is a Dependent under an accident and health benefits Contract or provides for health benefits coverage to such a child, is made pursuant to a state domestic relations law (including a community property law) and relates to benefits under the Contract or (b) enforces a law relating to medical child support described in Section 1908 of the Social Security Act, as amended from time to time, with respect to an accident and health benefits Contract.

2.40     "Michelle's Law" has the meaning set forth in Section 3.5(d).

CIGNA00001612

2.41    "Organization" means the entity obligated to provide payments or administrative or other services to or on behalf of a Participant or Covered Dependent under a Contract. With respect to any benefit that the Employer elects to provide from its general assets, the Employer will be deemed to be the Organization providing payments.

2.42    "Participant" means an Employee or former Employee who is eligible to participate in the Welfare Plan and enrolls in accordance with Article 3.

2.43    "Plan Year" means the 12-month period beginning January 1 and ending December 31.

2.44    "Post-Service Claim" means any Claim for Health Benefits that is not a Pre-Service Claim, an Urgent Care Claim or a Concurrent Care Decision.

2.45    "Pre-Service Claim" means any Claim for Health Benefits with respect to which the Welfare Plan (including any relevant Contract) conditions receipt of the benefit, in whole or in part, on approval by the Administrator in advance of obtaining medical care, unless the Claim is an Urgent Care Claim.

2.46    "Privacy Official" means the individual appointed by the Administrator who is responsible for the development and implementation of policies and procedures relating to the privacy of Protected Health Information for the Welfare Plan, the Company and Affiliated Employers.

2.47    "Privacy Rule" means the Standards for Privacy of Individually Identifiable Health Information at 45 C.F.R. Part 160 and Part 164, Subparts A and E, as amended and in effect from time to time.

2.48    "Protected Health Information" or "PHI" means information that is created or received by the Welfare Plan and relates to the past, present or future physical or mental health or condition of a Participant or Covered Dependent, the provision of "health care" (as defined in the Privacy Rule) to a Participant or Covered Dependent or the past, present or future payment for the provision of "health care" to a Participant or Covered Dependent and that identifies the Participant or Covered Dependent or for which there is a reasonable basis to believe that the information can be used to identify the Participant or Covered Dependent.

2.49    "PBAC" means the Putnam Benefits Administration Committee.

2.50    "Required By Law" has the same meaning as the term "required by law" in 45 C.F.R. § 164.103.

2.51    "Retiree Medical Plan" means the Putnam Investments Retiree Medical Plan, as amended from time to time.

2.52    "Schedule A" means the schedule to this Welfare Plan that identifies the various Contracts available under the Welfare Plan and identifies the Organization relevant to each Contract.

CIGNA00001613

2.53    "Schedule B" means the schedule to this Welfare Plan that identifies procedures for processing Medical Child Support Orders.

2.54    "Schedule C" means the schedule to this Welfare Plan that identifies the participation period for disabled Participants.

2.55    "SCHIP" has the meaning set forth in Section 3.4(d).

2.56    "Security Incident" has the same meaning as the term "security incident" in 45 C.F.R. § 164.304.

2.57    "Security Rule" means the Security Standards and Implementation Specifications at 45 C.F.R. Part 160 and Part 164, subpart C, as amended and in effect from time to time.

2.58    "Standards for Electronic Transactions Rule" means the final regulations issued by the Department of Health and Human Services concerning standard transactions and code sets under the Administrative Simplification provisions of HIPAA at 45 C.F.R. Part 160 and Part 162.

2.59    "Summary Health Information" has the same meaning as the term "summary health information" in 45 C.F.R. § 164.504.

2.60    "Unsecured Protected Health Information" means any Protected Health Information that is not rendered unusable, unreadable or indecipherable, as described in 45 C.F.R. § 164.402.

2.61    "Urgent Care Claim" means any Claim for Health Benefits with respect to which the application of the time periods otherwise relevant for making a Claim determination could seriously jeopardize the life or health of the Claimant or the Claimant's ability to regain maximum function or, in the opinion of a physician with knowledge of the Claimant's medical condition, would subject the Claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the Claim. If a physician with knowledge of the Claimant's medical condition determines that the Claim is an Urgent Care Claim, such determination shall be determinative for purposes of this Welfare Plan. In any other case, the determination of whether a Claim is an Urgent Care Claim is to be made by the Administrator or a person acting on the Administrator's behalf, but in any case by an individual applying the judgment of a prudent lay person who possesses an average knowledge of health and medicine.

2.62    "USERRA" has the meaning set forth in Section 3.5(b).

2.63    "Welfare Plan" means the Putnam Investments Welfare Plan, as amended from time to time.

## ARTICLE 3

## ELIGIBILITY AND PARTICIPATION

3.1    Eligibility.

CIGNA00001614

(a)     <u>In General</u>.  Unless otherwise specified in Schedule A or a particular Contract, each Employee and Covered Dependent who is eligible to participate in the Welfare Plan as of the Effective Date will remain eligible to participate under this amended and restated Welfare Plan.  New Employees hired after the Effective Date will be eligible to participate and shall to the extent permitted be eligible to enroll one or more Dependents in the Welfare Plan and shall be eligible to receive benefits according to the terms of the applicable Contract(s) as of the later of the date their employment commences or the date on which they meet the eligibility requirements of an applicable Contract; provided, however, that:

    (i)     The Employee is regularly scheduled to work at least 20 hours per week or, in the discretion of the Administrator, is determined  to be a "full-time employee" that is eligible for coverage for purposes of any Health Benefits Contract; and

    (ii)     To the extent that any Contract states more restrictive eligibility requirements for a specified benefit, those eligibility requirements will apply.

(b)     <u>Special Post-Employment Coverage Benefits</u>.  A Participant (and certain Covered Dependents) will be eligible to participate in the Retiree Medical Plan if, at termination, the Participant is at least 55 years of age but less than 65 years of age and has completed at least ten years of service with the Employer.  A Participant who became eligible for long term Disability Benefits prior to January 1, 2010 will be eligible to participate in the Health Benefits Contracts and certain life insurance Contracts until the earlier of the end of the time period specified in Schedule C or the date of their termination of employment.  Notwithstanding any provision of the Welfare Plan or any Contract to the contrary, a Participant or a Covered Dependent shall not be eligible for retiree welfare benefits other than those prescribed by law or as described in this Section.

3.2     <u>Cessation of Participation</u>.  A Participant or a Covered Dependent shall cease to participate in a particular Contract as of the date the Participant or Covered Dependent, as applicable, ceases to be eligible, for whatever reason, under such Contract.  Unless otherwise specified in a particular Contract, an individual will cease to participate in the Welfare Plan as of the earlier of:  (a) the date the Welfare Plan terminates; (b) the date the Participant or Covered Dependent fails to pay the required cost of benefits, if any; (c) the date the Participant's or Covered Dependent's right to receive benefits under all Contracts terminates; or (d) the date the Participant's or Covered Dependent's right to receive benefits pursuant to any applicable federal or state law expires.

3.3     <u>Enrollment</u>.  Each Employee who is or will become eligible to participate in the Welfare Plan and who desires to enroll as a Participant and, if applicable, to enroll one or more Dependents, will (unless enrollment is automatic, as provided by the Administrator) and as a condition of participation in a Contract, complete and deliver to the Administrator one or more forms in accordance with the procedures set forth in the applicable Contract.  Enrollment in one Contract will not constitute enrollment in any other Contract.

CIGNA00001615

3.4    Special Enrollment Rights for Accident and Health Benefits Contracts.

(a)    In General.  An Employee or a Dependent who is otherwise eligible to participate in the Welfare Plan, but who did not enroll under any accident and health benefits Contract when first eligible, will be afforded special enrollment rights permitting enrollment in an accident and health benefits Contract if the requirements of either Section 3.4(b), Section 3.4(c) or Section 3.4(d) are satisfied.  The individual enrolling pursuant to the special enrollment rights set forth in this Section will be subject to the same enrollment and eligibility requirements imposed on Employees and Dependents enrolling under normal enrollment circumstances pursuant to the terms of the applicable Contract.  The Special Enrollment Right provisions described below shall not apply to any Contract providing an "excepted benefit" as defined under Section 2722 of the Public Health Service Act.

(b)    Special Enrollment for Individuals Losing Coverage.  An Employee or a Dependent will be entitled to special enrollment rights under an accident and health benefits Contract if the following requirements are satisfied:

(i)    The individual declined coverage under all of the accident and health benefits Contracts when the individual was previously eligible because the individual was covered under another group health plan or health insurance arrangement; provided, however, that the Administrator may, by adoption of uniform rules, require the individual to affirmatively state this reason for declining coverage in order to be eligible for special enrollment pursuant to this Section 3.4(b);

(ii)    The individual lost the other coverage and the coverage loss was due to one of the following reasons:

(A)    With respect to COBRA Continuation Coverage, the COBRA Continuation Coverage was exhausted; or

(B)    With respect to coverage other than COBRA Continuation Coverage, the loss of coverage was a result of either (1) a loss of eligibility, including legal separation, divorce, death, termination of employment or reduction in the number of hours of employment or (2) a termination of the employer's contribution;

(iii)    The loss of coverage was not due to a failure to pay premiums or due to cause, such as making fraudulent claims or intentional misrepresentations; and

(iv)    The individual requests special enrollment within 30 days of losing coverage under the other group health plan or health insurance arrangement.

CIGNA00001616

Unless otherwise specified in an applicable Contract, a new enrollment request that is filed in connection with a special enrollment under this Section 3.4(b) will be effective as of the first day of the first calendar month following the date the request for enrollment is received by the Administrator.

(c)     Special Enrollment for New Dependent.  The following individuals are entitled to special enrollment rights if a new Dependent is gained:

| Event | Individuals with Special Enrollment Rights |
|---|---|
| Birth, adoption, placement for adoption of a child | An eligible Employee, if not already enrolled<br><br>The spouse of a Participant or of an eligible Employee who enrolls<br><br>An individual who becomes a Dependent of a Participant (other than a spouse) or of an eligible Employee who enrolls |
| Marriage | An eligible Employee, if not already enrolled<br><br>The individual who becomes the spouse of a Participant or of an eligible Employee who enrolls<br><br>An individual who becomes a Dependent of a Participant (other than a spouse) or of an eligible Employee who enrolls |

An eligible Employee is entitled to special enrollment rights regardless of whether the eligible Employee is enrolled in an accident and health benefits Contract at the time of gaining a Dependent.  The request for special enrollment must be made within 30 days of the date of the marriage, birth, adoption or placement for adoption.

Unless otherwise specified in an applicable Contract, a new enrollment request that is filed in connection with a special enrollment under this Section 3.4(c) will be effective retroactively to the date of the event.

(d)     Termination of Medicaid or SCHIP Coverage and Eligibility for Assistance under Medicaid or SCHIP.  An Employee or a Dependent will be entitled to special enrollment rights under an accident and health benefits Contract if the following requirements are satisfied:

(i)     The Employee or Dependent becomes eligible for Medicaid or SCHIP assistance with respect to coverage under the Welfare Plan

CIGNA00001617

and requests special enrollment within 60 days after the date the individual is determined to be eligible for such assistance; or

(ii)   The Employee or Dependent loses coverage as a result of loss of eligibility under a Medicaid or SCHIP plan and requests special enrollment within 60 days after the date of termination of such coverage.

Unless otherwise specified in an applicable Contract, a new enrollment request that is filed in connection with a special enrollment under this Section 3.4(d) will be effective retroactively to the date of the event.

For purposes of this Section 3.4(d), the term "Medicaid" means a program for medical assistance established under Title XIX of the Social Security Act, as amended from time to time, and the term "SCHIP" means the State Children's Health Insurance Program established under Title XXI of the Social Security Act, as amended from time to time.

3.5   <u>Statutory Continuation Rights</u>.  Notwithstanding any provision in the Contracts or elsewhere in the Welfare Plan to the contrary, an eligible Employee who is a Participant or a Covered Dependent shall have the right to continue coverage under the following statutory provisions, to the extent that the statutory provision relied upon is applicable to the Contract in question.

(a)   <u>FMLA Continuation Coverage</u>.  Coverage for a Participant on FMLA Leave will be administered pursuant to the rules set out in the Flexible Benefits Plan.

(b)   <u>USERRA Continuation Coverage</u>.  Coverage during a leave of absence for qualified military service, and upon the Participant's return to employment following the leave, will be administered pursuant to the rules set out in the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended from time to time ("USERRA"), including applicable regulations promulgated thereunder.

(c)   <u>COBRA Continuation Coverage</u>.  Upon the loss of eligibility for benefits under an accident and health benefits Contract, continuation coverage, if any, will be administered pursuant to the COBRA Continuation Coverage rules.

(d)   <u>Michelle's Law Continuation Coverage</u>.  Coverage for a Participant and his or her Covered Dependents shall be administered pursuant to Public Law 110-381, and applicable guidance thereunder ("Michelle's Law").

## ARTICLE 4

## BENEFITS

The benefits provided by the Welfare Plan to any Participant or Covered Dependent will be those provided in accordance with the terms of the Contracts that apply, by their terms, to that

CIGNA00001618

Participant or Covered Dependent, and the availability or amount of benefits in any case shall be subject to the specific terms and conditions of the applicable Contract; provided, however, that:

> (a)     No individual may participate in more than one Contract providing coverage for accident and health benefits, other than dental or vision benefits or the Health Care Reimbursement Plan, if any; and

> (b)     In the event an individual receives any benefits under the Welfare Plan at a time when the individual is ineligible to receive benefits, the individual shall, upon demand by the Administrator, reimburse the Welfare Plan for any such benefits and the Administrator may terminate coverage under the Welfare Plan including, if appropriate, retroactive termination.

The terms of each Contract, as in effect from time to time, are hereby incorporated by this reference into the Welfare Plan.

## ARTICLE 5

## ERISA REQUIREMENTS AS TO GROUP HEALTH PLANS

5.1     <u>Compliance with the Law</u>.  Participation in and eligibility for benefits provided under any Contract will comply with Section 609 and Sections 701 through 734 of ERISA, to the extent that such sections apply to the Contract, and the Administrator will apply the provisions of this Article in a manner that complies with those sections of ERISA.  In the event that ERISA or any other applicable legal requirements (collectively referred to as the "Law") are amended or enacted in the future in such a way that any provision of this Article or any other provision of this Welfare Plan would fail to comply with the Law, the Welfare Plan shall be administered, with respect to the subject matter of the provision, in a manner that complies with the Law, as amended or enacted.

5.2     <u>Scope</u>.  The provisions of this Article apply only to Contracts that provide accident and health benefits to Participants or Covered Dependents, and only to the extent that the Law applies to the Contract.  Additionally, the provisions of this Article apply to a Contract only if:

> (a)     The Contract lacks provisions regarding the subject matter addressed in this Article; or

> (b)     The Contract includes a provision regarding the subject matter addressed in this Article, but the Administrator determines that such provision does not comply with the applicable requirements of the Law.

5.3     <u>Qualified Medical Child Support Orders</u>.  Notwithstanding any provisions to the contrary, accident and health benefits Contracts of the Welfare Plan will comply with Section 609(a) of ERISA to the extent that that provision applies to the Contracts, as determined by the Administrator.  Attached as Schedule B are the rules that the Administrator shall apply in determining whether a Medical Child Support Order is a "qualified medical child support order"

CIGNA00001619

within the meaning of Section 609(a)(2) of ERISA.  Notwithstanding Article 10, the Administrator may from time to time amend the rules set forth in Schedule B.

5.4    Medicaid Benefits.  Payment for benefits under accident and health benefits Contracts will be made in accordance with any assignment of rights made by or on behalf of a Participant to the extent required by a state plan for medical assistance approved under Title XIX, Section 1912(a)(1)(A) of the Social Security Act, as amended and in effect on August 1, 1993 ("Medicaid").  The fact that an individual is eligible for or is provided Medicaid will not be taken into account by the Welfare Plan in enrolling an individual as a Participant or Covered Dependent or in determining or making payments for benefits.  To the extent that payment has been made under Medicaid, payment for benefits under the accident and health benefits Contracts will be made in accordance with any state law that provides that the state has acquired the rights with respect to a Participant or Covered Dependent to such payment for such items or services in any case in which the Welfare Plan has a legal liability to make payments for the items or services.

5.5    Adoption.  To the extent an accident and health benefits Contract provides coverage for dependent children of Participants and Covered Dependents, the accident and health benefits Contract shall provide benefits to dependent children placed with Participants or, if applicable, Covered Dependents for adoption under the same terms and conditions as apply in the case of dependent children who are natural children of Participants and Covered Dependents under the Welfare Plan, irrespective of whether the adoption has become final.  An accident and health benefits Contract shall not restrict coverage of any dependent child adopted by or placed for adoption with a Participant or Covered Dependent, solely on the basis of a preexisting condition at the time that the child would otherwise become eligible for coverage under the accident and health benefits Contract if the adoption or placement for adoption occurs while the Participant or Covered Dependent is eligible for coverage under the accident and health benefits Contract.

For purposes of this Section 5.5, the term "child" means an individual who has not attained age 18 as of the date of any adoption or placement for adoption, and the phrase "placement for adoption" means the assumption and retention by a person of a legal obligation for total or partial support of a child in anticipation of adoption of the child.  A child's placement for adoption terminates upon the termination of the legal obligation.

5.6    Pediatric Vaccine.  If applicable, an accident and health benefits Contract shall not reduce coverage for the costs of pediatric vaccines, as defined under Section 1928(h)(6) of the Social Security Act, as amended from time to time, below the coverage provided as of May 1, 1993.

5.7    Newborns' and Mothers' Health Protection Act.  Upon the birth of a child by a Participant or Covered Dependent, no accident and health benefits Contract shall restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery or less than 96 hours following a cesarean section.  All accident and health benefits Contracts shall, to the extent applicable, be administered pursuant to all other requirements or restrictions set forth in the Newborns' and

CIGNA00001620

Mothers' Health Protection Act of 1996, as amended from time to time, including all applicable regulations promulgated thereunder.

5.8    Mental Health Parity.  An accident and health benefits Contract shall, to the extent applicable, comply with the rules set forth in the Mental Health Parity Act of 1996 and the Mental Health Parity and Addiction Equity Act of 2008, each as amended from time to time, including all applicable regulations promulgated thereunder and shall not distinguish between mental health benefits, substance use disorder benefits and other medical and surgical benefits to the extent prohibited by such Acts.

5.9    HIPAA Portability Provisions.  An accident and health benefits Contract shall comply with the portability requirements of HIPAA, including all applicable regulations promulgated thereunder.

(a)    Certificates of Creditable Coverage.  Prior to December 31, 2014, Participants shall receive within a reasonable time after termination of employment or other event or upon request a "certificate of creditable coverage" as required by Section 701 of ERISA.

(b)    Nondiscrimination.  An accident and health benefits Contract will not discriminate against individuals based on their health status in determining eligibility to participate in the accident and health benefits Contract.

(c)    Pre-existing Conditions.  To the extent an accident and health benefits Contract contains pre-existing condition exclusions, the pre-existing condition exclusions will comply with Section 701 of ERISA.  Effective for plan years beginning on or after January 1, 2014, an accident and health benefits Contract shall not impose a pre-existing condition exclusion.

5.10    Women's Health and Cancer Rights Act.  An accident and health benefits Contract shall, to the extent applicable, comply with the requirements of the Women's Health and Cancer Right Act of 1998, as amended from time to time, including all applicable regulations promulgated thereunder.

5.11    Genetic Information Nondiscrimination Act of 2008.  An accident and health benefits Contract shall, to the extent applicable, comply with the rules set forth in Title I of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), as amended from time to time, including all applicable regulations promulgated thereunder.  In accordance with GINA, in no event shall an accident and health benefits Contract discriminate against any Participant on the basis of genetic information with respect to eligibility, premiums or contributions.

## ARTICLE 6

## SPECIAL PROVISIONS FOR ACCIDENT AND HEALTH BENEFITS CONTRACTS

6.1    Applicability.  Unless otherwise specified in a Contract, the subrogation rules set forth in this Article shall be followed by the Welfare Plan.

CIGNA00001621

6.2    Right to Reimbursement.  The Welfare Plan shall be subrogated to the full extent of the Welfare Plan's payments to or on behalf of each Participant or Covered Dependent (the "Benefiting Individual"), and the Welfare Plan shall be reimbursed immediately from any full or partial recovery, whether by suit, judgment, settlement, compromise or otherwise, by or on behalf of the Benefiting Individual from or against any third party, insurer or other plan, whether or not determined to be liable, for (a) the accident, injury, sickness or condition that resulted in benefits being paid under the Welfare Plan and/or (b) the medical or other expenses incurred by or on behalf of the Benefiting Individual as a result of the accident, injury, sickness or condition.

Notwithstanding whether payments from third parties, insurers or other plans are characterized as reimbursement for medical expenses, disability, pain and suffering or for some other loss, the Welfare Plan's subrogation and reimbursement rights shall be a first priority claim against any third party, insurer or other plan, and the Welfare Plan shall be entitled to be reimbursed for all amounts expended or paid under the Welfare Plan before the Benefiting Individual and/or the Benefiting Individual's beneficiary or attorney are entitled to keep any amounts received from the third party, insurer or other plan.  Any such amounts shall be held in trust for the benefit of the Welfare Plan and repaid to the Welfare Plan in accordance with this Article.  If any balance remains after the Welfare Plan is reimbursed, those amounts may be retained by the Benefiting Individual and/or the Benefiting Individual's beneficiary or attorney.

If the Benefiting Individual incurs medical or other expenses that would entitle the Welfare Plan to subrogation or reimbursement except for the fact that the Benefiting Individual and/or the Benefiting Individual's representative released, discharged or signed a covenant not to sue a third party, insurer or other plan without the consent of the Administrator, the Welfare Plan shall pay benefits for these expenses only to the extent they exceed the amount that may have been recovered from such third party, insurer or other plan.

If, for any reason, any benefit under the Welfare Plan is erroneously paid or exceeds the amount properly payable under the Welfare Plan, the Benefitting Individual shall be responsible for refunding the erroneous payment to the Welfare Plan.  The Welfare Plan may recover that incorrect payment, whether or not it resulted from an error by the Welfare Plan, the Employer, the Administrator or another party, in any method determined by the Administrator, in its sole discretion, including in the form of a single lump-sum payment, as a reduction in future benefits under the Welfare Plan or as an automatic deduction from pay.  The Welfare Plan may also seek recovery of the erroneous payment from any third party to the fullest extent permitted by applicable law.

6.3    Post-Recovery Expenses.  If the Benefiting Individual incurs medical or other expenses after the date of recovery from any third party, insurer or other plan, and if the third party, insurer or other plan would or may have been liable for these expenses but for a release, discharge, covenant not to sue or waiver of any kind by the Benefiting Individual and/or the Benefiting Individual's representative and entered into without the consent of the Administrator, the Welfare Plan shall pay benefits for these post-recovery expenses only to the extent they exceed the amount of any recovery retained by the Benefiting Individual and/or the Benefiting Individual's beneficiary or attorney from payments by the third party, insurer or other plan, and only to the extent they are otherwise covered under the Welfare Plan.

CIGNA00001622

6.4     Enforcement of the Welfare Plan's Right.  The Welfare Plan may file a lien to secure reimbursement under this Article.  The Welfare Plan may also make a claim in the name of a Benefiting Individual to secure its subrogation and reimbursement rights under this Article. If requested, the Benefiting Individual and/or the Benefiting Individual's representative must complete all documentation necessary to secure the subrogation and reimbursement rights of the Welfare Plan.  The Benefiting Individual is obligated to inform the Welfare Plan of potential or actual claims that the Benefiting Individual and/or the Benefiting Individual's agents and successors have or may have against third parties, insurers or other plans.  Identification of any and all third parties, insurers and other plans, date of accident, injury, sickness or condition and any other necessary information required by the Administrator shall be provided as soon as possible, and in all cases before the Benefiting Individual agrees to any settlement or compromise with any such third party, insurer or other plan.  The Benefiting Individual must cooperate to secure enforcement of the Welfare Plan's subrogation and reimbursement rights. The Benefiting Individual must take no action, including but not limited to settlement of any claim, that prejudices or may prejudice the subrogation and reimbursement rights of the Welfare Plan.  If the Administrator, in the exercise of its sole discretion, determines that the Benefiting Individual has failed to cooperate as required by this paragraph, that failure to cooperate shall relieve the Welfare Plan of its obligation to pay future benefits to the Benefiting Individual for expenses that are incurred as a result of the accident, injury, sickness or condition at issue.

6.5     Attorneys' Fees and Costs.  The Welfare Plan shall not be responsible for any attorneys' fees or costs incurred by or on behalf of a Benefiting Individual in connection with any claim or lawsuit against any third party, insurer or other plan, unless prior to incurring the fees or costs, the Administrator, in the exercise of its sole discretion, has agreed in writing to pay all or some portion of the fees or costs.

6.6     Application of Certain Doctrines.  The provisions of this Article shall be enforceable against the Benefiting Individual (or his or her beneficiary), even if the Benefiting Individual (or his or her beneficiary) is only partially compensated for his or her injuries.  The common law "make-whole" doctrine and the common law "common fund" doctrine shall be inapplicable for purposes of this Article 6.

6.7     Rescission.  Nothing herein shall be construed to limit the Administrator's authority to rescind any benefit provided by the Welfare Plan to any Participant or Covered Dependent as permitted under applicable law.  The Administrator may rescind any accident and health benefits Contract provided to any Participant or Covered Dependent upon a showing of fraud or intentional misrepresentation of material fact to the full extent permitted by 45 C.F.R. § 2590.715-2712(a)(1).

## ARTICLE 7

## CLAIMS

All claims for benefits shall be submitted to the relevant Organization, which may be an Organization appointed by the Company to process claims under that Contract and announced to Participants and Covered Dependents.  If a claim for benefits is denied, the Participant or

CIGNA00001623

Covered Dependent whose claim is denied shall be entitled to an explanation from the Organization of the reasons for the denial and to a full review of the claim by the Organization. To the extent that the Administrator does not announce to Participants and Covered Dependents a different claims procedure with respect to any Contract, the claims procedure set forth in Article 12 or Article 13, as applicable, shall apply.

## ARTICLE 8

## FUNDING

The Employer shall pay to the Organization or Organizations from time to time during the Plan Year from its general assets such amounts as are necessary to keep in force the Contract or Contracts for coverage of Participants and Covered Dependents.  Payments pursuant to a Contract shall be derived from any combination of the following sources:  (a) the Employer's general assets; (b) contributions made by Participants on a before-tax or after-tax basis pursuant to the Flexible Benefits Plan; or (c) contributions made by Participants or Covered Dependents on an after-tax basis.

The Employer shall announce from time to time the cost to a Participant and Covered Dependent of participation in specified benefits under this Welfare Plan, and the amount of the cost that may be supplied by before-tax or after-tax contributions pursuant to the Flexible Benefits Plan.  This Welfare Plan shall not be construed to require the Employer to create or maintain any separate fund, account or reserve with respect to its obligations hereunder.

To the extent a rebate is paid under the rules governing medical loss ratios, with respect to an accident and health benefits Contract, the rebate will be apportioned as appropriate in the discretion of the Administrator in accordance with the principles set out in Department of Labor Technical Release 2011-04 and any similar subsequent guidance.  Any refund, rebate, dividend, expense adjustment or other similar payment under a Contract shall be allocated consistent with applicable fiduciary obligations under ERISA, to the extent applicable.

## ARTICLE 9

## OBLIGATIONS OF THE EMPLOYER

All benefits under the Welfare Plan shall be paid or provided solely under the terms of the Contracts, and no Employer assumes any liability or responsibility therefor except in accordance with Article 8.  In all events, the liability of an Employer under this Welfare Plan to any Participant or Covered Dependent shall be limited to the amount of premium payments necessary to secure coverage for the Participant or Covered Dependent in accordance with the terms of the applicable Contract or Contracts.

## ARTICLE 10

## AMENDMENT AND TERMINATION

This Welfare Plan as a whole, or any part of it, or any Contract may be amended or terminated by the Company at any time by action of the Chief Executive Officer of the

CIGNA00001624

Company; provided, however, that the amendment or termination shall not affect any Participant's or Covered Dependent's right to payment of benefits for claims incurred prior to the amendment or termination, or within any carryover period specified in an applicable Contract.

## ARTICLE 11

## ADMINISTRATION

11.1   Administration.  As of the Effective Date, the PBAC is designated as the "Named Fiduciary" and "Plan Administrator," as those terms are defined in ERISA, of the Welfare Plan (the "Administrator").

11.2   Powers of the Administrator.  Except as provided in the next sentence, the Administrator shall have discretionary authority to make factual determinations, to construe, administer and apply the Welfare Plan, to interpret any ambiguities and to resolve any and all issues, including without limitation eligibility to participate and the right to any benefits hereunder and the authorization or denial of payment or reimbursement of benefits, that may arise with respect to the Welfare Plan.  The Company or the Administrator may, however, agree that another entity shall have fiduciary responsibility with respect to one or more aspects of the administration of the Welfare Plan.

The powers of the Administrator shall include, without limitation, the power:

(a)   To interpret and enforce the provisions of the Welfare Plan for the exclusive benefit of the Participants and Covered Dependents and, to the extent required by applicable law, without discrimination among similarly situated Participants and Covered Dependents;

(b)   To establish rules for the administration of the Welfare Plan and to prescribe any forms required to administer the Welfare Plan; and

(c)   To employ agents, attorneys, accountants or other persons (who may also be employed by or represent any Employer) for such purposes as the Administrator considers necessary or desirable in connection with its duties hereunder.

The Administrator may from time to time announce to Participants and Covered Dependents reasonable rules and regulations, not inconsistent with the terms of this document or the applicable Contract or Contracts, as the Administrator deems necessary or desirable to carry out the objectives of the Welfare Plan, and all such rules and regulations shall be binding upon the Employer, Participants, Covered Dependents and any other person claiming benefits pursuant to the Welfare Plan.

11.3   Actions of the Administrator.  All determinations, interpretations, rules and decisions of the Administrator shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Welfare Plan.

11.4   Indemnification of the Administrator.  The Company agrees to indemnify and to defend to the fullest extent permitted by law any individual serving as a member of a committee

{B1827646; 5}                                         - 19 -

CIGNA00001625

serving as the Administrator (including any person who formerly served as a member of a committee serving as Administrator) against all liabilities, damages, cost and expenses (including attorneys' fees and amounts paid in settlement of any claims approved by the Company) occasioned by any act or omission to act in connection with the Welfare Plan if the act or omission is in good faith.

11.5    Responsibilities of Participants.  Each Participant is responsible for providing the Administrator or its designee a current address and, if necessary, the address of any Covered Dependent.  Any notices provided under the Welfare Plan shall be deemed given if directed to the address most recently provided by the Participant and mailed by first-class United States mail unless delivered electronically.  The Welfare Plan shall have no obligation or responsibility to locate a Participant or Covered Dependent.

ARTICLE 12

CLAIMS PROCEDURE

The provisions of this Article 12 shall be effective with respect to Claims submitted on or after January 1, 2008, but prior to January 1, 2011 except to the extent a Contract includes a specific Claims Procedure that is intended to satisfy the requirements of ERISA.

12.1    Filing of Benefit Claims.

    (a)    Provisions Applicable to All Benefits Under the Welfare Plan.

        (i)    A Claimant must file a written claim (a "Claim") with the Administrator in order for the Administrator to approve any request by such person for a benefit under the Welfare Plan.  No inquiry will be deemed to be a Claim or a request for review of a denied Claim unless made in accordance with the procedures set forth in this Article 12.

        (ii)    No fee or cost shall be imposed on any Claimant by the Welfare Plan, the Administrator or under any Contract in connection with a Claim.

        (iii)    Claimants may be represented by a lawyer or other representative at their own expense, but the Administrator reserves the right to require the Claimant to furnish written authorization of representation.  A Claimant's representative is entitled to copies of all notices given to the Claimant.

        (iv)    Prior to filing a Claim or requesting a review of a denied Claim, the Claimant or the Claimant's representative shall have a reasonable opportunity to review a copy of the Welfare Plan and all other pertinent documents in the possession of the Employer or the Administrator.

CIGNA00001626

  (v)  The Administrator may specify from time to time, in a manner that has been clearly communicated to a Claimant in writing or by electronic notification, the information required in order to process a particular Claim and may prescribe the use of forms for such purposes. Any electronic notification under this Article 12 shall comply with standards imposed in applicable Department of Labor regulations.

  (vi)  The Administrator shall have discretionary authority to interpret and apply the provisions of the Welfare Plan with respect to, and to make any factual determinations in connection with, any benefit claim.

  (b)  <u>Additional Provisions Applicable to Health Benefits</u>. If a Claimant fails to follow the procedures applicable for a Pre-Service Claim, the Claimant shall be notified of such failure as soon as possible, but in no case later than five days following the failure (24 hours in the case of an Urgent Care Claim).

Notification may be oral unless the Claimant requests written notification. The procedures set forth in this Section 12.1(b) need only be followed in the case of: a communication that is made by a Claimant and that names a specific Claimant (other than an authorized representative); a specific medical condition or symptom; and a specific treatment, service or product for which approval is requested, and such communication must be received by a person or organizational unit customarily responsible for handling Health Benefits matters.

12.2  <u>Timing of Notice of Benefit Claim Determinations</u>.

  (a)  <u>Provisions Applicable to All Benefits Under the Welfare Plan</u>.

  (i)  The various time periods set forth in this Section 12.2 within which benefit determinations must be made each shall begin at the time a Claim is filed in accordance with the Welfare Plan's procedures, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

  (ii)  If any period of time set forth in this Section 12.2 is extended because of a Claimant's failure to submit information necessary to decide a Claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

  (b)  <u>Additional Provisions Applicable to Health Benefits</u>.

  (i)  <u>Urgent Care Claims</u>. In the case of an Urgent Care Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) as soon as possible, taking

CIGNA00001627

into account the medical exigencies, but not later than 72 hours after receipt of the Claim by the Administrator, unless the Claimant fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Welfare Plan. In the case of such a failure, the Administrator shall notify the Claimant as soon as possible, but not later than 24 hours after receipt of the Claim by the Administrator, of the specific information necessary to complete the Claim. The Claimant shall be afforded a reasonable amount of time, taking into account the circumstances, but in any event not less than 48 hours, to provide the specified information. The Claimant shall be notified of the Administrator's benefit determination as soon as possible, but in no case later than 48 hours after the earlier of:

    (A)    The Administrator's receipt of the specified information; or

    (B)    The end of the period afforded the Claimant to provide the specified additional information.

(ii)    <u>Concurrent Care Decisions</u>. A Claimant shall be notified of any adverse Concurrent Care Decision at a time sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a determination on review of that Adverse Benefit Determination before the benefit is reduced or terminated.

    Any request by a Claimant in connection with a Concurrent Care Decision that is an Urgent Care Claim shall be decided as soon as possible, taking into account the medical exigencies, and the Claimant shall be notified of the determination (whether adverse or not) within 24 hours after receipt of the Claim by the Administrator, provided that any such Claim is made to the Administrator at least 24 hours prior to the expiration of the prescribed period of time or number of treatments.

(iii)    <u>Pre-Service Claims</u>. In the case of a Pre-Service Claim other than an Urgent Care Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after the receipt of the claim by the Administrator. The Administrator may extend such time for up to 15 days upon determining that such an extension is necessary due to matters beyond the control of the Administrator, provided the Claimant is notified prior to the expiration of the initial 15-day period of the circumstances requiring the extension of time and the date by which the Administrator expects to render a decision. If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim,

CIGNA00001628

the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(iv)    <u>Post-Service Claims</u>.  In the case of a Post-Service Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 30 days after the receipt of the Claim by the Administrator.  The Administrator may extend such time for up to 15 days upon determining that such an extension is necessary due to matters beyond the control of the Administrator, provided the Claimant is notified prior to the expiration of the initial 30-day period of the circumstances requiring the extension of time and the date by which the Administrator expects to render a decision.  If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(c)    <u>Additional Provisions Applicable to Disability Benefits</u>.  In the case of a Claim for Disability Benefits, the Claimant shall be notified of the Administrator's Adverse Benefit Determination within a reasonable period of time, but not later than 45 days after receipt of the Claim by the Administrator.  This period may be extended by the Administrator for up to 30 days, provided that the Administrator both determines that such an extension is necessary due to matters beyond the control of the Administrator and notifies the Claimant, prior to the expiration of the initial 45-day period, of the circumstances requiring the extension and the date by which the Administrator expects to render a decision.  If, prior to the end of such extension period, the Administrator determines that, due to matters beyond the control of the Administrator, a decision cannot be rendered within such period, the period for making the determination may be extended for up to an additional 30 days, provided that the Administrator notifies the Claimant, prior to the expiration of the initial extension period, of the circumstances requiring a second extension and the date as to which the Administrator expects to render a decision. The notice of any extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that have delayed a decision on the Claim, and the additional information needed to resolve those issues.  The Claimant shall be afforded a minimum of 45 days within which to provide any additional information the Administrator may request in such notice.

(d)    <u>Additional Provisions Applicable to Benefits Other Than Health Benefits and Disability Benefits</u>.  If a Claim for benefits other than Health Benefits or Disability Benefits is wholly or partially denied, the Administrator shall notify the Claimant of the Adverse Benefit Determination within a reasonable period of time not to exceed 90 days after receipt of the Claim by the Administrator, unless the Administrator determines that

CIGNA00001629

special circumstances require an extension of time for processing the Claim.  If the Administrator determines that such an extension is required, written notice of the extension shall be provided to the Claimant prior to the termination of the initial 90-day period.  In no event shall such extension exceed a period of 90 days from the end of the initial 90-day period.  The notice of the extension provided to the Claimant shall indicate the circumstances requiring an extension and the date by which the Administrator expects to render the benefit determination.

12.3    Content of Notifications Concerning Benefit Claims.

(a)    Provisions Applicable to All Benefits Under the Welfare Plan.  The Administrator shall provide a Claimant with written or electronic notification of any determination of a Claim.  In the case of an Adverse Benefit Determination, the notification shall set forth in a manner calculated to be understood by the Claimant:

(i)    The specific reasons for the determination;

(ii)    Reference to the specific Welfare Plan provisions on which the determination is based;

(iii)    A description of additional material or information necessary for the Claimant to perfect the Claim and an explanation of why such material or information is necessary; and

(iv)    A description of the Welfare Plan's review procedures and associated time limits, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse determination on review.

(b)    Additional Provisions Applicable to Health Benefits and Disability Benefits.

(i)    In the case of an Adverse Benefit Determination concerning Health Benefits or Disability Benefits, the notification shall also set forth in a manner calculated to be understood by the Claimant:

(A)    If an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol or other criterion will be provided free of charge to the Claimant upon request;

(B)    If the Adverse Benefit Determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical

CIGNA00001630

judgment for the determination, applying the terms of the Welfare Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and

(C) In the case of an Adverse Benefit Determination concerning an Urgent Care Claim, a description of the expedited review process applicable to such claim.

(ii) In the case of an Adverse Benefit Determination concerning an Urgent Care Claim, the information described above in this Section 12.3 may be provided to the Claimant orally, provided that a written or electronic notification is furnished to the Claimant not later than three days after the oral notification.

12.4    Appeal of Adverse Benefit Determinations.

(a)    Provisions Applicable to All Benefits Under the Welfare Plan.

(i) Each Claimant shall be afforded a full and fair review of any Adverse Benefit Determination.

(ii) Each Claimant may appeal an Adverse Benefit Determination within 180 days (60 days in the case of an Adverse Benefit Determination relating to benefits other than Health Benefits or Disability Benefits) following receipt of notification of the Adverse Benefit Determination.

(iii) In connection with such review, the Claimant shall have the opportunity to submit any written comments, documents, records or other information the Claimant believes relevant.

(iv) In connection with such review, the Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's appeal.

(v) The review of the Adverse Benefit Determination shall take into account all comments, documents, records and other information submitted by the Claimant that relate to the Claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(b)    Additional Provisions Applicable to Health Benefits and Disability Benefits.

(i) The review shall not afford deference to the initial Adverse Benefit Determination.

CIGNA00001631

(ii)   The review shall be conducted by an appropriate named fiduciary of the Welfare Plan who is neither the individual (nor one of the group of individuals) who made the Adverse Benefit Determination that is the subject of the review, nor a subordinate of such an individual.

(iii)   In reviewing an Adverse Benefit Determination that is based in whole or in part on a medical judgment (including determinations with regard to whether a particular treatment, drug or other items are experimental, investigational or not medically necessary or appropriate), the person conducting the review shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. The health care professional engaged for consultation in connection with a review shall be an individual who was neither consulted in connection with the Adverse Benefit Determination being reviewed nor the subordinate of any such individual.

(iv)   The Claimant shall be entitled to the identification of medical or vocational experts whose advice was obtained in connection with the Adverse Benefit Determination, without regard to whether such advice was relied upon in making such Adverse Benefit Determination.

(v)   In the case of an Urgent Care Claim, a Claimant may request an expedited appeal either orally or in writing, and all information necessary to be communicated to the Claimant in connection with such appeal, including the Welfare Plan's benefit determination on review, shall be transmitted to the Claimant by telephone, facsimile or other similarly expeditious method.

(vi)   Each Claimant has the right to two levels of appeal of an Adverse Benefit Determination under an accident and health benefits Contract administered by Blue Cross Blue Shield of Massachusetts, Inc. (prior to 2012) and CIGNA, effective January 1, 2012. The first appeal shall be made to Blue Cross Blue Shield of Massachusetts, Inc. or CIGNA, as applicable, or its successors or assigns. The second shall be made to MCMC LLC or its successors or assigns and MCMC LLC (or its successors or assigns) shall be the named fiduciary for the Welfare Plan in connection with such appeal.

12.5   Timing of Notice of Benefit Determinations Following Review.

(a)   Provisions Applicable to All Benefits Under the Welfare Plan.

CIGNA00001632

(i)   The various time periods set forth in this Section 12.5 within which review of an Adverse Benefit Determination must be completed each shall begin at the time an appeal is filed in accordance with the procedures of the Welfare Plan, without regard to whether all the information necessary to make a determination on review accompanies the filing.

(ii)  If any time period set forth in this Section 12.5 is extended as permitted herein due to a Claimant's failure to submit information necessary to decide a Claim, the period for making the determination on review shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(b)   Additional Provisions Applicable to Health Benefits.

(i)   Urgent Care Claims.  In the case of an Urgent Care Claim, the Administrator shall notify the Claimant of the benefit determination on review as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the Claimant's request for review.

(ii)  Pre-Service Claims.  In the case of a Pre-Service Claim other than an Urgent Care Claim, the Administrator will notify the Claimant of the benefit determination on review within a reasonable period of time appropriate to the medical circumstances.  If the Welfare Plan or a relevant Contract provides for one appeal of an Adverse Benefit Determination, such notification shall be provided not later than 30 days after receipt by the Administrator of the Claimant's request for review.  If the Welfare Plan or a relevant Contract provides for two appeals of an adverse determination, such notification shall be provided, with respect to any one of such two appeals, not later than 15 days after receipt by the Administrator of the Claimant's request for review of the adverse determination.

(iii) Post-Service Claims.  In the case of a Post-Service Claim, the Administrator shall notify the Claimant of the benefit determination on review within a reasonable period of time.  If the Welfare Plan or a relevant Contract provides for one appeal of an Adverse Benefit Determination, such notification shall be provided not later than 60 days after receipt by the Administrator of the Claimant's request for review.  If the Welfare Plan or a relevant Contract provides for two appeals of an adverse determination, such notification shall be provided, with respect to any one of such two appeals, not later than 30 days after receipt by the Administrator of the Claimant's request for review.

CIGNA00001633

(c)    Additional Provisions Applicable to Benefits Other Than Health Benefits. In the case of an appeal of an Adverse Benefit Determination other than one relating to Health Benefits, the Administrator shall notify the Claimant of the benefit determination on review within a reasonable period of time, but not later than 60 days (45 days in the case of a Disability Benefit) after receipt of the Claimant's request for review, unless the Administrator determines that special circumstances such as the need to hold a hearing require an extension of time for processing the Claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Claimant prior to the termination of the initial period. In no event shall such extension exceed a period of 60 days (45 days in the case of Disability Benefits) from the end of the initial period, and the extension notice shall indicate the special circumstances requiring such extension and the date by which the Administrator expects to render the determination on review.

12.6    Content of Notifications Concerning Benefit Determinations on Review.

(a)    Provisions Applicable to All Benefits Under the Welfare Plan. The Administrator shall provide a Claimant with a written or electronic notification of the benefit determination on review. In the case of an Adverse Benefit Determination on review, such notification shall set forth, in a manner calculated to be understood by the Claimant:

(i)    The specific reasons for the adverse determination;

(ii)    Reference to the specific Welfare Plan provisions on which the determination is based;

(iii)    A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claim involved; and

(iv)    A statement describing any voluntary appeal procedures offered by the Welfare Plan and the Claimant's right to obtain information about such procedures, and a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA.

(b)    Provisions Applicable to Health Benefits and Disability Benefits. In the case of an adverse determination on review concerning Health Benefits or Disability Benefits, the notification shall also set forth, in a manner calculated to be understood by the Claimant:

(i)    If an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of

CIGNA00001634

such rule, guideline, protocol or other criterion will be provided free of charge to the Claimant upon request;

(ii)     If the Adverse Benefit Determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Welfare Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and

(iii)    The notification shall contain the following statement:

"You and your Welfare Plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

## ARTICLE 13

## CLAIMS PROCEDURE

The provisions of this Article 13 shall be effective with respect to Claims submitted on or after January 1, 2011, except to the extent a Contract includes a specific Claims Procedure that is intended to satisfy the requirements of ERISA or to the extent the effective date has been postponed under an enforcement grace period in effect under applicable guidance.  The additional claims procedure provisions described below that are required under Section 2719 of the Public Health Service Act shall not apply to any Contract providing an "excepted benefit" as defined under Section 2722 of the Public Health Service Act.

13.1   Filing of Benefit Claims.

(a)     Provisions Applicable to All Benefits Under the Welfare Plan.

(i)      A Claimant must file a written claim (a "Claim") with the Administrator in order for the Administrator to approve any request by such person for a benefit under the Welfare Plan.  No inquiry will be deemed to be a Claim or a request for review of a denied Claim unless made in accordance with the procedures set forth in this Article 13.

(ii)     No fee or cost shall be imposed on any Claimant by the Welfare Plan, the Administrator or under any Contract in connection with a Claim.

(iii)    Claimants may be represented by a lawyer or other representative at their own expense, but the Administrator reserves the right to require the Claimant to furnish written authorization of representation.  In the case of an Urgent Care Claim, the

CIGNA00001635

Administrator shall, even in the absence of a written authorization, recognize a health care professional with knowledge of the Claimant's medical condition as the authorized representative, unless the Claimant provides direction otherwise.  A Claimant's representative is entitled to copies of all notices given to the Claimant.

(iv)   Prior to filing a Claim or requesting a review of a denied Claim, the Claimant or the Claimant's representative shall have a reasonable opportunity to review a copy of the Welfare Plan and all other pertinent documents in the possession of the Employer or the Administrator.

(v)   The Administrator may specify from time to time, in a manner that has been clearly communicated to a Claimant in writing or by electronic notification, the information required in order to process a particular Claim and may prescribe the use of forms for such purposes.  Any electronic notification under this Article 13 shall comply with standards imposed in applicable Department of Labor regulations.

(vi)   The Administrator shall have discretionary authority to interpret and apply the provisions of the Welfare Plan with respect to, and to make any factual determinations in connection with, any benefit claim.

(vii)   A Claim will be treated as having been received for purposes of this Article 13 when delivered by hand to the Administrator or its designee or on the date deposited in the U.S. mail for first class delivery in a properly stamped envelope containing the appropriate name and address.

(b)   Additional Provisions Applicable to Health Benefits.  If a Claimant fails to follow the procedures applicable for a Pre-Service Claim, the Claimant shall be notified of such failure as soon as possible, but in no case later than five days following the failure (24 hours in the case of an Urgent Care Claim).

Notification may be oral unless the Claimant requests written notification.  The procedures set forth in this Section 13.1(b) need only be followed in the case of:  a communication that is made by a Claimant and that names a specific Claimant (other than an authorized representative); a specific medical condition or symptom; and a specific treatment, service or product for which approval is requested, and such communication must be received by a person or organizational unit customarily responsible for handling Health Benefits matters.

13.2   Timing of Notice of Benefit Claim Determinations.

(a)   Provisions Applicable to All Benefits Under the Welfare Plan.

CIGNA00001636

(i) The various time periods set forth in this Section 13.2 within which benefit determinations must be made each shall begin at the time a Claim is filed in accordance with the Welfare Plan's procedures, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

(ii) If any period of time set forth in this Section 13.2 is extended because of a Claimant's failure to submit information necessary to decide a Claim, the period for making the benefit determination shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(b) <u>Additional Provisions Applicable to Health Benefits</u>.

(i) <u>Urgent Care Claims</u>. In the case of an Urgent Care Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the Claim by the Administrator, unless the Claimant fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Welfare Plan. In the case of such a failure, the Administrator shall notify the Claimant as soon as possible, but not later than 24 hours after receipt of the Claim by the Administrator, of the specific information necessary to complete the Claim. The Claimant shall be afforded a reasonable amount of time, taking into account the circumstances, but in any event not less than 48 hours, to provide the specified information. The Claimant shall be notified of the Administrator's benefit determination as soon as possible, but in no case later than 48 hours after the earlier of:

(A) The Administrator's receipt of the specified information; or

(B) The end of the period afforded the Claimant to provide the specified additional information.

(ii) <u>Concurrent Care Decisions</u>. A Claimant shall be notified of any adverse Concurrent Care Decision at a time sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a determination on review of that Adverse Benefit Determination before the benefit is reduced or terminated.

Any request by a Claimant in connection with a Concurrent Care Decision that is an Urgent Care Claim shall be decided as soon as possible, taking into account the medical exigencies, and the Claimant shall be notified of the determination (whether

CIGNA00001637

adverse or not) within 24 hours after receipt of the Claim by the Administrator, provided that any such Claim is made to the Administrator at least 24 hours prior to the expiration of the prescribed period of time or number of treatments.

(iii)  <u>Pre-Service Claims</u>.  In the case of a Pre-Service Claim other than an Urgent Care Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after the receipt of the claim by the Administrator.  The Administrator may extend such time for up to 15 days upon determining that such an extension is necessary due to matters beyond the control of the Administrator, provided the Claimant is notified prior to the expiration of the initial 15-day period of the circumstances requiring the extension of time and the date by which the Administrator expects to render a decision.  If such an extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(iv)  <u>Post-Service Claims</u>.  In the case of a Post-Service Claim, the Claimant shall be notified of the Administrator's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 30 days after the receipt of the Claim by the Administrator.  The Administrator may extend such time for up to 15 days upon determining that such an extension is necessary due to matters beyond the control of the Administrator, provided the Claimant is notified prior to the expiration of the initial 30-day period of the circumstances requiring the extension of time and the date by which the Administrator expects to render a decision.  If such extension is necessary due to a failure of the Claimant to submit the information necessary to decide the Claim, the notice of extension shall specifically describe the required information, and the Claimant shall be afforded at least 45 days from receipt of the notice within which to provide the specified information.

(c)  <u>Additional Provisions Applicable to Disability Benefits</u>.  In the case of a Claim for Disability Benefits, the Claimant shall be notified of the Administrator's Adverse Benefit Determination within a reasonable period of time, but not later than 45 days after receipt of the Claim by the Administrator.  This period may be extended by the Administrator for up to 30 days, provided that the Administrator both determines that such an extension is necessary due to matters beyond the control of the Administrator and notifies the Claimant, prior to the expiration of the initial 45-day period, of the

CIGNA00001638

circumstances requiring the extension and the date by which the Administrator expects to render a decision. If, prior to the end of such extension period, the Administrator determines that, due to matters beyond the control of the Administrator, a decision cannot be rendered within such period, the period for making the determination may be extended for up to an additional 30 days, provided that the Administrator notifies the Claimant, prior to the expiration of the initial extension period, of the circumstances requiring a second extension and the date as to which the Administrator expects to render a decision. The notice of any extension shall specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that have delayed a decision on the Claim, and the additional information needed to resolve those issues. The Claimant shall be afforded a minimum of 45 days within which to provide any additional information the Administrator may request in such notice.

(d)     Additional Provisions Applicable to Benefits Other Than Health Benefits and Disability Benefits. If a Claim for benefits other than Health Benefits or Disability Benefits is wholly or partially denied, the Administrator shall notify the Claimant of the Adverse Benefit Determination within a reasonable period of time not to exceed 90 days after receipt of the Claim by the Administrator, unless the Administrator determines that special circumstances require an extension of time for processing the Claim. If the Administrator determines that such an extension is required, written notice of the extension shall be provided to the Claimant prior to the termination of the initial 90-day period. In no event shall such extension exceed a period of 90 days from the end of the initial 90-day period. The notice of the extension provided to the Claimant shall indicate the circumstances requiring an extension and the date by which the Administrator expects to render the benefit determination.

13.3    Content of Notifications Concerning Benefit Claims.

(a)     Provisions Applicable to All Benefits Under the Welfare Plan. The Administrator shall provide a Claimant with written or electronic notification of any determination of a Claim. In the case of an Adverse Benefit Determination, the notification shall set forth in a manner calculated to be understood by the Claimant:

(i)      The specific reasons for the determination;

(ii)     Reference to the specific Welfare Plan provisions on which the determination is based;

(iii)    A description of additional material or information necessary for the Claimant to perfect the Claim and an explanation of why such material or information is necessary; and

(iv)     A description of the Welfare Plan's review procedures and associated time limits, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse determination on review.

{B1827646.5}                                     - 33 -

CIGNA00001639

(b)    Additional Provisions Applicable to Health Benefits and Disability Benefits.

    (i)    In the case of an Adverse Benefit Determination concerning Health Benefits or Disability Benefits, the notification shall also set forth in a manner calculated to be understood by the Claimant:

        (A)    If an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol or other criterion will be provided free of charge to the Claimant upon request;

        (B)    If the Adverse Benefit Determination involves scientific or clinical judgment or is based on Welfare Plan standard (such as medical necessity), either an explanation of the scientific or clinical judgment for the determination (or, in the case of a Welfare Plan standard, a description of that standard), applying the terms of the Welfare Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and

        (C)    In the case of an Adverse Benefit Determination concerning an Urgent Care Claim, a description of the expedited review process applicable to such claim.

    (ii)    In the case of an Adverse Benefit Determination concerning an Urgent Care Claim, the information described above in this Section 13.3 may be provided to the Claimant orally, provided that a written or electronic notification is furnished to the Claimant not later than three days after the oral notification.

13.4    Appeal of Adverse Benefit Determinations.

    (a)    Provisions Applicable to All Benefits Under the Welfare Plan.

        (i)    Each Claimant shall be afforded a full and fair review of any Adverse Benefit Determination.

        (ii)    Each Claimant may appeal an Adverse Benefit Determination within 180 days (60 days in the case of an Adverse Benefit Determination relating to benefits other than Health Benefits or Disability Benefits) following receipt of notification of the Adverse Benefit Determination.

CIGNA00001640

(iii)    In connection with such review, the Claimant shall have the opportunity to submit any written comments, documents, records or other information the Claimant believes relevant.

(iv)    In connection with such review, the Claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's appeal.

(v)    The review of the Adverse Benefit Determination shall take into account all comments, documents, records and other information submitted by the Claimant that relate to the Claim, without regard to whether such information was submitted or considered in the initial benefit determination.

(b)    <u>Additional Provisions Applicable to Health Benefits and Disability Benefits</u>.

(i)    The review shall not afford deference to the initial Adverse Benefit Determination and shall take into account all information submitted by the Claimant, whether or not presented or available at the initial benefit decision.

(ii)    The review shall be conducted by an appropriate named fiduciary of the Welfare Plan who is neither the individual (nor one of the group of individuals) who made the Adverse Benefit Determination that is the subject of the review, nor a subordinate of such an individual.

(iii)    In reviewing an Adverse Benefit Determination that is based in whole or in part on a medical judgment (including determinations with regard to whether a particular treatment, drug or other items are experimental, investigational or not medically necessary or appropriate), the person conducting the review shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment. The health care professional engaged for consultation in connection with a review shall be an individual who was neither consulted in connection with the Adverse Benefit Determination being reviewed nor the subordinate of any such individual.

(iv)    The Claimant shall be entitled to the identification of medical or vocational experts whose advice was obtained in connection with the Adverse Benefit Determination, without regard to whether such advice was relied upon in making such Adverse Benefit Determination.

{B1827646, 5}    - 35 -

CIGNA00001641

(v)    In the case of an Urgent Care Claim, a Claimant may request an expedited appeal either orally or in writing, and all information necessary to be communicated to the Claimant in connection with such appeal, including the Welfare Plan's benefit determination on review, shall be transmitted to the Claimant by telephone, facsimile or other similarly expeditious method.

(c)    <u>Additional Provisions Applicable to Benefits under Health Benefits Contracts Only</u>.  With respect to any Claim arising under any Health Benefits Contract that is not "grandfathered" within the meaning of 29 C.F.R. § 2590.715-1251:

(i)    The Claimant shall have the opportunity to review the Claim file and to present evidence and testimony;

(ii)    The Claimant shall be provided, free of charge, with any new or additional evidence considered, relied upon or generated in connection with the Claim as soon as possible and sufficiently in advance of the notice of a final Adverse Benefit Determination to give the Claimant opportunity to respond;

(iii)    Prior to issuing a final Adverse Benefit Determination, the Claimant will be provided, free of charge, with the rationale for the determination, if based on a new or additional rationale, as soon as possible and sufficiently in advance of the notice of the Adverse Benefit Determination to give the Claimant opportunity to respond;

(iv)    All Claims and appeals will be adjudicated in a manner designed to ensure the independence and impartiality of persons involved in the decision; and

(v)    Each Claimant has the right, other than with respect to eligibility matters, to an external appeal of an Adverse Benefit Determination in accordance with the external review procedures and requirements described in 29 C.F.R. § 2590.715-2719(c) and (d) and guidance issued thereunder.

13.5    <u>Timing of Notice of Benefit Determinations Following Review</u>.

(a)    <u>Provisions Applicable to All Benefits Under the Welfare Plan</u>.

(i)    The various time periods set forth in this Section 13.5 within which review of an Adverse Benefit Determination must be completed each shall begin at the time an appeal is filed in accordance with the procedures of the Welfare Plan, without regard to whether all the information necessary to make a determination on review accompanies the filing.

CIGNA00001642

(ii)    If any time period set forth in this Section 13.5 is extended as permitted herein due to a Claimant's failure to submit information necessary to decide a Claim, the period for making the determination on review shall be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

(b)    <u>Additional Provisions Applicable to Health Benefits</u>.

(i)    <u>Urgent Care Claims</u>.  In the case of an Urgent Care Claim, the Administrator shall notify the Claimant of the benefit determination on review as soon as possible, taking into account the medical exigencies, but not later than 72 hours after receipt of the Claimant's request for review.

(ii)    <u>Pre-Service Claims</u>.  In the case of a Pre-Service Claim other than an Urgent Care Claim, the Administrator will notify the Claimant of the benefit determination on review within a reasonable period of time appropriate to the medical circumstances.  If the Welfare Plan or a relevant Contract provides for one internal appeal of an Adverse Benefit Determination, such notification shall be provided not later than 30 days after receipt by the Administrator of the Claimant's request for review.  If the Welfare Plan or a relevant Contract provides for two internal appeals of an adverse determination, such notification shall be provided, with respect to any one of such two appeals, not later than 15 days after receipt by the Administrator of the Claimant's request for review of the adverse determination.

(iii)    <u>Post-Service Claims</u>.  In the case of a Post-Service Claim, the Administrator shall notify the Claimant of the benefit determination on review within a reasonable period of time.  If the Welfare Plan or a relevant Contract provides for one internal appeal of an Adverse Benefit Determination, such notification shall be provided not later than 60 days after receipt by the Administrator of the Claimant's request for review.  If the Welfare Plan or a relevant Contract provides for two internal appeals of an adverse determination, such notification shall be provided, with respect to any one of such two appeals, not later than 30 days after receipt by the Administrator of the Claimant's request for review.

(c)    <u>Additional Provisions Applicable to Benefits Other Than Health Benefits</u>.  In the case of an appeal of an Adverse Benefit Determination other than one relating to Health Benefits, the Administrator shall notify the Claimant of the benefit determination on review within a reasonable period of time, but not later than 60 days (45 days in the case of a Disability Benefit) after receipt of the Claimant's request for review, unless the

CIGNA00001643

Administrator determines that special circumstances such as the need to hold a hearing require an extension of time for processing the Claim. If the Administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the Claimant prior to the termination of the initial period. In no event shall such extension exceed a period of 60 days (45 days in the case of Disability Benefits) from the end of the initial period, and the extension notice shall indicate the special circumstances requiring such extension and the date by which the Administrator expects to render the determination on review.

13.6    <u>Content of Notifications Concerning Benefit Determinations on Review</u>.

(a)    <u>Provisions Applicable to All Benefits Under the Welfare Plan</u>. The Administrator shall provide a Claimant with a written or electronic notification of the benefit determination on review. In the case of an Adverse Benefit Determination on review, such notification shall set forth, in a manner calculated to be understood by the Claimant:

(i)    The specific reasons for the adverse determination;

(ii)    Reference to the specific Welfare Plan provisions on which the determination is based;

(iii)    A statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claim involved; and

(iv)    A statement describing any voluntary appeal procedures offered by the Welfare Plan and the Claimant's right to obtain information about such procedures, and a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA.

(b)    <u>Provisions Applicable to Health Benefits and Disability Benefits</u>. In the case of an adverse determination on review concerning Health Benefits or Disability Benefits, the notification shall also set forth, in a manner calculated to be understood by the Claimant:

(i)    If an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol or other similar criterion, or a statement that such a rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol or other criterion will be provided free of charge to the Claimant upon request;

(ii)    If the Adverse Benefit Determination involves scientific or clinical judgment or is based on Welfare Plan standard (such as medical necessity), either an explanation of the scientific or clinical

CIGNA00001644

judgment for the determination (or, in the case of a Welfare Plan standard, a description of that standard), applying the terms of the Welfare Plan to the Claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request; and

(iii)   The notification shall contain the following statement:

"You and your Welfare Plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

13.7   <u>Content of Notifications under Health Benefits Contracts</u>.  Any notification provided pursuant to Sections 13.3 or 13.6 concerning a Claim arising under any Health Benefits Contract that is not "grandfathered" within the meaning of 29 C.F.R. § 2590.715-1251 shall be provided in a culturally and linguistically appropriate manner in accordance with 29 C.F.R. § 2590.715-2719(e) and shall include the following information:

(a)   Information sufficient to identify the Claim involved, including to the extent applicable, the date of service, the health care provider, the Claim amount and a statement regarding the availability, upon request, of the diagnosis code and its corresponding meaning and the treatment code and its corresponding meaning;

(b)   An explanation of the reason for any adverse determination, including the denial code and corresponding meaning, as well as a description of the standard, if any, used in denying the Claim (and, in the case of any final internal Adverse Benefit Determination, a discussion of the decision);

(c)   A description of available internal and external review processes, including information regarding how to initiate an appeal; and

(d)   A disclosure of the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman established under Section 2793 of the Public Health Service Act to assist individuals with internal claims and appeals and external review processes.

13.8   <u>External Review of Health Benefits Claims</u>.  With respect to any Claim arising under any Health Benefits Contract that is not "grandfathered" within the meaning of 29 C.F.R. § 2590.715-1251, and except to the extent a Health Benefits Contract is subject to a State external review process under 29 C.F.R. § 2590.715-2719, the following procedures shall apply.

(a)   <u>Requesting External Review</u>. The Claimant may request external review by an IRO of a final Adverse Benefit Determination by filing a request for external review within the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, within four months after the date of receipt of a notice of a final Adverse Benefit Determination on review).

CIGNA00001645

(b)    <u>Eligibility for External Review</u>.  Unless otherwise provided by guidance issued under 29 C.F.R. § 2590.715-2719, Claims eligible for external review are only those that involve:  (i) medical judgment (excluding those that involve only contractual or legal interpretation without any use of medical judgment) as determined by the IRO; or (ii) rescission of coverage (whether or not the rescission has any effect on any particular benefit at the time).  Under current guidance, a Claim is not eligible for external review if:  (A) the Claimant is (or was) not covered under the Health Benefits Contract at the time the health care item or service was requested or, in the case of a retrospective review, the Claimant was not covered under the Health Benefits Contract at the time the health care item or service was provided; (B) the final Adverse Benefit Determination is based on a conclusion that the Claimant was not eligible for coverage under the Health Benefits Contract (except where the Claim relates to a rescission of coverage); (C) the Claimant has not exhausted or has not deemed to have exhausted the Welfare Plan's internal appeal process; or (D) the Claimant has not provided all the information and forms required to process an external review.

(c)    <u>Standard Timing of External Review</u>.  The Administrator or its delegate shall preliminarily review the request for external review within the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, within five business days following the date of receipt of the external review request) to determine whether the Claim is eligible for external review.  The Claimant shall be notified of the results of the preliminary review within the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, one business day after completion of the preliminary review).  The notice must describe the information required by guidance issued under 29 C.F.R. § 2590.715-2719, which currently includes the reason for the ineligibility for external review and contact information for the Department of Labor's Employee Benefits Security Administration, or, if the request is not complete, material necessary for the Claimant to perfect the Claim and the time limit for the Claimant to provide the additional information needed.  Information or materials necessary to perfect the external review of the Claim must be provided by the Claimant within the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, the longer of the initial four-month period within which to request an external review or, if later, 48 hours after the receipt of the notice).  If the Administrator determines that the request for external review meets the eligibility requirements for external review, the Administrator shall assign an IRO to conduct the external review.

(d)    <u>Expedited External Review</u>.

(i)    A request for external review shall be considered on an expedited basis if:

(A)    The non-final Adverse Benefit Determination for which a request for expedited internal appeal has been properly filed in accordance with this Article 13 involves a medical condition where the timeframe for completing an expedited

CIGNA00001646

internal appeal would seriously jeopardize the Claimant's life, health or ability to regain maximum function; or

    (B)    A final Adverse Benefit Determination involves a medical condition where the timeframe for completion of a standard external review pursuant to Section 13.8(c) would seriously jeopardize the Claimant's life, health or ability to regain maximum function, or involves an admission, availability of care, continued stay or health care item or service for which the Claimant received emergency services, but has not been discharged from a facility.

    (ii)    The Administrator shall consider a request for expedited external review immediately upon receipt of the request to determine whether the request is eligible for external review.

(e)    <u>External Review by IRO</u>.

    (i)    The Administrator shall select an IRO in accordance with guidance issued pursuant to 29 C.F.R. § 2590.715-2719, and the external review by an IRO shall follow standards that are adopted in accordance with such guidance.

    (ii)    The Administrator shall timely (in the case of an expedited external review, expeditiously) provide to the IRO documents and any information considered in making the Adverse Benefit Determination. The Claimant may submit additional information in writing to the IRO within the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, within ten business days of the IRO's notification to the Claimant that it has been assigned the request for external review).

    (iii)    The IRO shall review all of the information and documents timely received. In making its decision, the IRO is not bound by any prior determination with respect to the Claim. To the extent additional information or documents are available and the IRO considers them appropriate, the IRO may also consider any information permitted under applicable guidance, which currently includes: (A) the Claimant's medical records; (B) the attending health care professional's recommendation; (C) reports from appropriate health care professionals and other documents submitted by the Administrator, the Claimant or the Claimant's treating health care provider; (D) the terms of the Health Benefits Contract; (E) appropriate practice guidelines; (F) any applicable clinical review criteria developed and used by the Health Benefits Contract; and (G) the opinion of the IRO's clinical reviewer or

CIGNA00001647

reviewers after considering information noted above, as appropriate.

(iv)    The IRO shall provide written notice of the final external review decision to the Claimant and the Administrator in a culturally and linguistically appropriate manner, in accordance with applicable guidance issued under 29 C.F.R. § 2590.715-2719. Currently, such notice shall be provided within 45 days after the IRO receives the request for external review, and shall contain:

    (A)    A general description of the reason for the request for external review, including information sufficient to identify the Claim;

    (B)    The date the IRO received the assignment to conduct the external review and the date of the IRO's decision;

    (C)    References to evidence or documentation considered in reaching the decision;

    (D)    A discussion of the principal reason or reasons for the IRO's decision, including the rationale for its decision and any evidence-based standards that were relied on in making its decision;

    (E)    A statement that the IRO's determination is binding, unless other remedies are available under state or federal law;

    (F)    A statement that judicial review may be available to the Claimant; and

    (G)    The contact information for any applicable office of health insurance consumer assistance or ombudsman established under Section 2793 of the Public Health Service Act.

(v)    To the extent the final external review decision reverses the Administrator's decision (as reflected in the notice of Adverse Benefit Determination), the Health Benefits Contract shall immediately follow the final external review decision of the IRO.

(vi)    In the case of an expedited external review, the IRO shall provide the notice of the final external review decision as expeditiously as the Claimant's medical condition or circumstances require, but in no event more than the timeframe established pursuant to applicable guidance issued under 29 C.F.R. § 2590.715-2719 (currently, 72 hours after the IRO receives the request for an expedited external review and, if the IRO's notice of decision is not in writing, confirmation of the decision within 48 hours).

CIGNA00001648

13.9    Claims Deadline.  Except to the extent otherwise provided in a Contract or pursuant to applicable law, a Claim under this Welfare Plan must be made within one year after the date the expense was incurred that gives rise to the Claim.  It is the responsibility of the Claimant or his or her designee to ensure that this requirement is met.

13.10   Limitations Period.  Except to the extent otherwise provided in a Contract or pursuant to applicable law, a suit for benefits under the Welfare Plan must be brought within one year after the date of a final decision on the Claim.

ARTICLE 14

USES AND DISCLOSURES OF HEALTH INFORMATION

The purpose of this Article is to comply with the privacy and security provisions of HIPAA.

14.1    Use and Disclosure of PHI.

(a)     Restrictions on Use.  The Employer shall not use or disclose PHI except for plan administrative functions or as Required By Law.  Additionally, the Employer shall:

(i)     Not use or further disclose PHI other than as permitted or required by the Welfare Plan documents or as Required By Law;

(ii)    Ensure that any agents or subcontractors to whom it provides PHI or ePHI received from the Welfare Plan agree to the same restrictions and conditions that apply to the Employer;

(iii)   Not use or disclose PHI for employment-related actions and decisions or in connection with any other benefit or employee benefit plan;

(iv)    Report to the Privacy Official any use or disclosure of PHI or ePHI that is inconsistent with the permitted uses or disclosures;

(v)     Make PHI available to Participants or Covered Dependents (as appropriate);

(vi)    Make PHI available for amendment to Participants or Covered Dependents (as appropriate) and, if applicable, incorporate any amendments in accordance with 45 C.F.R. § 164.526;

(vii)   Provide Participants or Covered Dependents (as appropriate) an accounting of PHI disclosures upon request;

(viii)  Make the Employer's internal practices and records relating to the use and disclosure of PHI received from the Welfare Plan available

CIGNA00001649

to the Secretary of the Department of Health and Human Services or his or her designee upon request;

(ix) If feasible, return or destroy all PHI received from the Welfare Plan that the Employer still maintains in any form and retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that if such return or destruction is not feasible, the Employer shall limit further uses and disclosures to those purposes that make the return or destruction of the information not feasible;

(x) Implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of the ePHI that it creates, receives, maintains or transmits on behalf of the Welfare Plan;

(xi) Provide for adequate separation between the Welfare Plan and the Employer and ensure that such separation is supported by appropriate and reasonable security measures; and

(xii) Report any Breach of Unsecured Protected Health Information to individuals, the media and Secretary of Heath and Human Services, each as required by 45 C.F.R. §164.400 *et seq.*

(b) Certification by the Employer. The Welfare Plan shall not disclose PHI to the Employer unless the Employer certifies to the Welfare Plan in writing that the Welfare Plan documents have been amended to incorporate the restrictions listed in this Section and that the Employer agrees to such restrictions.

14.2 Disclosure of PHI to Business Associates. The Welfare Plan shall not disclose PHI to a Business Associate unless the Business Associate agrees to the same restrictions and conditions on use and disclosure of PHI that apply to the Welfare Plan.

14.3 Firewall Obligations.

(a) Access to PHI. Access to PHI shall be limited to the following employees:

(i) Director of Benefits, Sr. Manager of Health and Welfare Plans, Benefit Operations Analyst, Service Center Manager Benefits, Benefit Service Center Representatives, Disability Specialist, Administrative Assistant to Director of Benefits and Administrative Assistant to Manager of Health and Welfare Plan, each of whom performs functions directly on behalf of the Welfare Plan; and

CIGNA00001650

        (ii)     ERISA Counsel, Treasurer and HRIT Manager, each of whom has access to PHI on behalf of the Company for its use in plan administrative functions.

    (b)    <u>Limitations on Use</u>.  Any employee described in Section 14.3(a) who receives PHI shall use PHI solely for purposes of plan administrative functions that the Company performs for the Welfare Plan.

    (c)    <u>Noncompliance</u>.  Any employee who does not comply with any of the terms of the Welfare Plan regarding the use and disclosure of PHI shall be disciplined in accordance with Company policy.

14.4    <u>Additional Obligations and Activities of the Business Associate</u>.  Each Business Associate shall agree as follows:

    (a)    To implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity and availability of the Electronic Protected Health Information that it creates, receives, maintains or transmits on behalf of the Welfare Plan, as required by the Security Rule;

    (b)    To ensure that any agent, including a subcontractor, to whom it provides Electronic Protected Health Information on behalf of, the Welfare Plan agrees to implement reasonable and appropriate safeguards to protect it;

    (c)    In the event that the Business Associate transmits or receives any Covered Electronic Transaction on behalf of the Welfare Plan, to comply with all applicable provisions of the Standards for Electronic Transactions Rule to the extent required by law, and agrees to ensure that any agents that assist the Business Associate in conducting Covered Electronic Transactions on behalf of the Welfare Plan agree in writing to comply with the Standards for Electronic Transactions Rule to the extent required by law;

    (d)    To report to the Welfare Plan any Security Incident of which it becomes aware;

    (e)    To report any Breach of Unsecured Protected Health Information to the Welfare Plan as required under 45 C.F.R. § 164.410 and as provided in any agreement between the Welfare Plan and the Business Associate;

    (f)    To comply with the Security Rule and the Privacy Rule to the extent required under the HITECH Act, and any guidance issued thereunder; and

    (g)    To enter into any contracts or agreements with subcontractors in accordance with the HITECH Act and guidance issued thereunder.

**ARTICLE 15**

<u>MISCELLANEOUS PROVISIONS</u>

CIGNA00001651

15.1     Applicable Law.  The Welfare Plan and all rights hereunder shall be governed by and construed according to the laws of the Commonwealth of Massachusetts, except to the extent such laws are preempted by the laws of the United States of America.

15.2     Title, Gender and Number.  The titles given to the various sections of the Welfare Plan are inserted for convenience and are not part of the Welfare Plan.  Except as otherwise indicated by context, masculine terminology used herein also includes the feminine and neuter, and terms used in the singular may also include the plural.

15.3     Limitation of Rights.  Neither the establishment of the Welfare Plan nor any amendment thereof nor the payment of any benefits shall be construed as giving a Participant, Covered Dependent or any other person any legal or equitable right against any Employer or the Administrator, except as provided herein.

15.4     No Guarantee of Tax Consequences.  Neither the Administrator nor any Employer makes any commitment or guarantee that any amounts contributed to or paid to or for the benefit of a Participant under the Welfare Plan will be excludable from the Participant's gross income for federal, state or local income tax purposes, or wages for Social Security tax purposes, or that any other federal, state or local income tax treatment will apply to or be available to any Participant.

15.5     Information Furnished by Participants.  Neither the Employer nor the Administrator shall be liable or responsible for any error in the computation of the benefits of a Participant or Covered Dependent resulting from any misstatement of fact or law made by the Participant or Covered Dependent, directly or indirectly, to the Employer and used by it or the Administrator in determining the Participant's or Covered Dependent's benefits.  Neither the Employer nor the Administrator shall be obligated or required to increase the benefits of the Participant or Covered Dependent if, on discovery of the misstatement, it is found that benefits were understated as a result of the Participant's or Covered Dependent's misstatement.  However, the benefits of any Participant or Covered Dependent that are overstated by reason of any misstatement shall be reduced to the amount to which the Participant or Covered Dependent would have been entitled had the facts and law been stated accurately.

15.6     Facility of Payment.  In the case of the legal disability, including minority, of a Participant or Covered Dependent entitled to receive any direct payment under the Welfare Plan, payment shall be made, if the Administrator is advised of the existence of the condition:

(a)     To the duly appointed guardian, conservator or other legal representative of the Participant or Covered Dependent; or

(b)     To a person or institution entrusted with the care or maintenance of the Participant or Covered Dependent; provided, however, that the person or institution has satisfied the Administrator that the payment will be used for the best interest of the Participant or Covered Dependent; and provided, further, that no prior claim for the payment has been made by a duly appointed guardian, conservator or other legal representative of the Participant or Covered Dependent.

CIGNA00001652

Any payment made in accordance with this Section shall constitute a complete discharge of any liability or obligation of the Employer, the Administrator and the Welfare Plan.  In the event of the death of the Participant or Covered Dependent, claims for expenses incurred prior to the Participant's or Covered Dependent's death may be presented by the executor, administrator or personal representative of the Participant's or Covered Dependent's estate and reimbursement not completed at death shall be made to such person.

15.7    <u>Severability</u>.  If any provision of this Welfare Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision, and this Welfare Plan shall be construed and enforced as if such provision had not been included.

15.8    <u>Regulatory References</u>.  Any reference to a statute or regulation means that statute or regulation, as currently in effect and as amended, or its successor.

PUTNAM INVESTMENTS, LLC on its behalf and
on behalf of participating employers

By: _____

Date:  5/9/2016

Rev 1/2015

CIGNA00001653

PUTNAM INVESTMENTS
WELFARE PLAN

Schedule A
Effective as of January 1, 2015

| Contract/Organization | Employer Cost | Participant Cost[1] |
|---|---|---|
| **1. Health Care Contracts/Organizations** | | |
| Health – CDHP (Cigna)[2] | | |
|     Individual | 86% | 14% |
|     Employee plus Child(ren) | 86% | 14% |
|     Employee plus Spouse | 86% | 14% |
|     Family | 86% | 14% |
| Health – PPO (Cigna)[2] | | |
|     Individual | 77% | 23% |
|     Employee plus Child(ren) | 77% | 23% |
|     Employee plus Spouse | 76% | 24% |
|     Family | 76% | 24% |
| Dental – High Option (Delta Dental) | | |
|     Individual | 58% | 42% |
|     Employee plus Child(ren) | 58% | 42% |
|     Employee plus Spouse | 58% | 42% |
|     Family | 58% | 42% |
| Dental – Low Option (Delta Dental) | | |
|     Individual | 67% | 33% |
|     Employee plus Child(ren) | 67% | 33% |
|     Employee plus Spouse | 67% | 33% |
|     Family | 67% | 33% |
| Health – Expatriate Option (Cigna Global Benefits) | 77% | 23% |
| Health Care Reimbursement Plan | 0% | 100% |
| Retiree Medical Plan | 0% - 64% | 36% - 100% |

---

[1] Participants may elect, in the case of Health Care Contracts and Dependent Care Contracts, to have their costs paid on a before-tax basis pursuant to the Flexible Benefits Plan.

[2] The Employer will pay more of the cost of coverage for employees who complete a personal health assessment.

{B1827646. 5}

CIGNA00001654

| Contract/Organization | Employer Cost | Participant Cost[3] |
|---|---|---|
| **2. Life Insurance Contracts/Organizations** | | |
| Term Life Insurance – Life Insurance Company of North America | 100% | 0% |
| Supplemental Life Insurance – Life Insurance Company of North America | 0% | 100% |
| Group Variable Universal Life – Metropolitan Life Insurance Company | 0% | 100% |
| Personal Accident Insurance – American International Life Assurance Company of New York | 0% | 100% |
| Business Travel Accident – AIG | 100% | 0% |
| Long Term Care – Genworth | 0% | 100% |
| **3. Disability Income Contracts** | | |
| Short Term Disability – Life Insurance Company of North America | 100% | 0% |
| Long Term Disability – Life Insurance Company of North America | 100% | 0% |
| Optional Long Term Disability – Life Insurance Company of North America | 0% | 100% |
| **4. Dependent Care Contracts** (Not Subject to ERISA) | | |
| Dependent Care Reimbursement Plan | 0% | 100% |
| **5. Employee Assistance Plan** (Not Subject to ERISA) | | |
| Employee Assistance Plan – CIGNA | 100% | 0% |
| **6. Special Death Benefit** (Not Subject to ERISA)[4] | | |
| Equal to 1 month salary up to a maximum of $5,000 payable to a surviving spouse or estate upon death while actively employed or on an approved medical leave of absence. | 100% | 0% |

---

[3] Participants may elect to have their costs paid on a before-tax basis pursuant to the Flexible Benefits Plan.

[4] Employees who are regularly scheduled to work at least 20 hours a week with at least one year of service are eligible for the Special Death Benefit.

CIGNA00001655

PUTNAM INVESTMENTS
WELFARE PLAN

Schedule B

PROCEDURES FOR PROCESSING MEDICAL CHILD SUPPORT ORDERS

1.   _Definitions_.  The following terms have the meanings set forth below unless the context plainly requires a different meaning.

   (a)   "Alternate Recipient" means any child of a Participant who is recognized under a Medical Child Support Order as having a right to enrollment under a group health plan, as that term is used in Section 609 of ERISA, with respect to the Participant.  An individual who is an Alternate Recipient under a Qualified Medical Child Support Order will be considered a Participant under the Welfare Plan for purposes of the reporting and disclosure rules under ERISA and as a Covered Dependent for all other purposes.

   (b)   "Qualified Medical Child Support Order" means a Medical Child Support Order that creates or recognizes the existence of an Alternate Recipient's right to, or assigns to an Alternate Recipient the right to, receive benefits for which a Participant is eligible under a Contract and that satisfies all of the following requirements:

      (i)   It clearly specifies the name and last known mailing address (if any) of the Participant and the name and mailing address of each Alternate Recipient covered by the order; provided, however, that the name and mailing address of an official of a state or political subdivision thereof may be substituted for the mailing address of an Alternate Recipient;

      (ii)   It clearly specifies a reasonable description of the type of coverage to be provided by the Welfare Plan to each Alternate Recipient or the manner in which the type of coverage is to be determined;

      (iii)   It clearly specifies the period to which the order applies; and

      (iv)   It does not require the Welfare Plan to provide any type or form of benefit or any option not otherwise provided under the Welfare Plan, except to the extent necessary to meet the requirements of a law relating to medical child support described in Section 1908 of the Social Security Act, as amended from time to time.

2.   _Medical Child Support Orders_.

   (a)   _In General_.  The Welfare Plan will provide benefits in accordance with the applicable requirements of any Qualified Medical Child Support Order.  Any payment for benefits made by the Welfare Plan pursuant to a Qualified Medical Child Support Order in reimbursement for expenses paid by an Alternate Recipient or an Alternate Recipient's custodial parent or legal guardian will be made to the Alternate Recipient or the Alternate Recipient's custodial parent or legal guardian, as the case may be.

{B1827646; 5}

CIGNA00001656

(b)     Procedures for Reviewing and Implementing Medical Child Support Orders.

    (i)     Benefits Pending Review.  No benefits will be provided by the Welfare Plan pursuant to a Medical Child Support Order prior to a determination by the Administrator that the order is a Qualified Medical Child Support Order.  If a Medical Child Support Order is determined to be a Qualified Medical Child Support Order and the child is not covered under an accident and health benefits Contract at the time the Medical Child Support Order is submitted to the Welfare Plan, coverage shall commence effective as of the later of:

        (A)     The date the Medical Child Support Order specified that coverage will commence;

        (B)     The date the Medical Child Support Order is received by the Welfare Plan; or

        (C)     The earliest date that coverage would commence for a child born to the Participant on the date the order is received by the Welfare Plan.

    (ii)     Reviewing Medical Child Support Orders.  Upon the receipt of a Medical Child Support Order, the Administrator will notify the Participant, each person claiming to be an Alternate Recipient and the person or entity submitting the order of receipt of the Medical Child Support Order and the Welfare Plan's procedures for determining whether Medical Child Support Orders are Qualified Medical Child Support Orders.  An Alternate Recipient may designate a representative for receipt of copies of notices that are sent to the Alternate Recipient with respect to a Medical Child Support Order.

    (iii)     Notice to Parties.  Within a reasonable period of time after receipt, the Administrator will determine whether the order is a Qualified Medical Child Support Order.  Upon making its determination, the Administrator shall provide written notice to the Participant and all persons claiming to be Alternate Recipients of its decision.  If the Administrator determines that the order is not a Qualified Medical Child Support Order the Administrator will include in its written notice:

        (A)     The specific reasons for its decision;

        (B)     The specific reference to the pertinent provisions of the Welfare Plan upon which its decision is based;

        (C)     A description of additional material or information, if any, that would cause the Administrator to reach a different conclusion; and

CIGNA00001657

(D)    An explanation of the procedures for reviewing the determination of the Administrator.

CIGNA00001658

PUTNAM INVESTMENTS
WELFARE PLAN

Schedule C

TIME PERIOD FOR BENEFITS PROVIDED TO PARTICIPANTS WHO BECOME
DISABLED PRIOR TO JANUARY 1, 2010

| Participant's age at disability | Time period |
| --- | --- |
| 61 or younger | until age 65 or termination, if earlier |
| 62 | 3½ years or termination, if earlier |
| 63 | 3 years or termination, if earlier |
| 64 | 2½ years or termination, if earlier |
| 65 | 2 years or termination, if earlier |
| 66 | 1¾ years or termination, if earlier |
| 67 | 1½ years or termination, if earlier |
| 68 | 1¼ years or termination, if earlier |
| 69 or older | 1 year or termination, if earlier |

{B1827646, 5}

CIGNA00001659

PUTNAM INVESTMENTS

WELFARE PLAN

Amended and Restated as of January 1, 2015

Table of Contents

Page

<to be generated>

Schedule A
Schedule B

{B1827646; 5}

CIGNA00001660