# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON *et al.*,<br>    *Plaintiffs*,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE<br>COMPANY and OPTUMRX, INC.,<br>    *Defendants*. | No. 3:16-cv-01702 (JAM) |

## ORDER GRANTING PARTIAL MOTION TO DISMISS

In this putative class action, plaintiffs allege that defendants Cigna Health and Life

Insurance Company ("Cigna") and OptumRx, Inc. schemed to overcharge them for prescription

drugs in violation of the terms of their health plans.[1] Cigna now moves to dismiss two of plaintiff

Billy Ray Blocker, Jr.'s common law claims for breach of contract and breach of the implied

covenant of good faith and fair dealing on behalf of the Georgia sub-class. I will grant the

motion.

### BACKGROUND

The following facts as alleged in the second amended complaint are accepted as true only

for purposes of this motion to dismiss. The prescription drug transactions at issue here implicate

four contractual relationships between: (1) an employee and his or her employer that provides

prescription drug benefits under a health plan; (2) the employer and a health insurance company

that underwrites and/or administers those benefits; (3) the health insurance company and a

---

[1] On October 5, 2017, defendant Cigna Corporation was voluntarily dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). Doc. #119. Accordingly, the Clerk of Court shall terminate defendant Cigna Corporation from the docket.

pharmacy benefit manager ("PBM") that assists in administering the benefits; and (4) the PBM and the pharmacy that fills prescriptions covered under the plan. Doc. #198 at 31 (¶ 70).

Plaintiffs' health plans describe what they must pay for prescription drugs in copayments and deductibles, *id.* at 32 (¶ 71), while the PBM-pharmacy contracts at issue in this case state what a pharmacy must charge patients, the fee that the PBM will pay the pharmacy for filling a prescription, and the difference or "spread" between the patient charge and the pharmacy fee that the PBM will "claw back" for remittance to the health insurance company. *Id.* at 32-34 (¶¶ 73, 80). Plaintiffs characterize these "clawbacks" as illegal "overcharges" because their pharmacies charged them drastically more for prescription drugs than they were required to pay under their health plans, which capped their copayments and deductibles at the pharmacies' transaction fee. *Id.* 10-17 (¶¶ 22-31). They say defendant health insurance company Cigna and its PBMs, including defendant OptumRx, conspired to leverage their market power to contractually require pharmacies to charge these exorbitant and unauthorized amounts, in part by threatening to cut them out of Cigna's network if they refused. *Id.* at 43-46 (¶¶ 116-28).

Plaintiff Blocker is a Georgia resident who received prescription drug benefits through his employer Cobb County's self-funded group health plans. *Id.* at 28 (¶ 65). Cobb County in turn contracted with defendant Cigna to administer the plans' prescription drug benefits. *Ibid.* Blocker had no direct contractual relationship with Cigna.

The health plans were drafted by Cigna to include boilerplate terms that are substantially the same as the other plaintiffs' health plans. *Id.* at (¶ 22). One such term was that copayments and deductibles for prescription drugs may not exceed the pharmacy's fee from a transaction. *Id.* at 11-12 (¶¶ 25-26). Nevertheless, Blocker was charged a $3.89 copayment for a prescription drug—a 122% premium over the pharmacy's $1.75 fee—resulting in a $2.14 overcharge, which

defendants clawed back. *Id.* at 16-17 (¶ 31(s)). He was similarly overcharged for prescription drugs a number of times in 2015 and 2016. *Id.* at 65 (¶ 177). Blocker says these overcharges were caused by defendants' illegal clawback scheme. *Id.* at 29 (¶ 65).

In Counts IX and X of the second amended complaint, Blocker alleges on behalf of the Georgia sub-class members that Cigna's conduct breached the express terms of their health plans and breached the implied covenant of good faith and fair dealing under Georgia's common law. *Id.* at 101-03 (¶¶ 302-17). Pursuant to Fed. R. Civ. P. 12(b)(6), Cigna has moved to dismiss Counts IX and X on the ground that Cigna was not a party to Blocker's health plans and therefore cannot be held liable for breaching the plans' terms, express or implied. Doc. #202.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless it recites enough non-conclusory facts to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019). Further, the Court may consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).[2]

To prove a breach of contract under Georgia law, a plaintiff must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Roberts v. DuPont Pine Prod., LLC*, 352 Ga. App. 659, 662 (2019) (internal quotations and citation omitted). If a contract's language is "clear and unambiguous," then a court "simply enforces the contract according to its clear terms." *City of Baldwin v. Woodard & Curran, Inc.*,

---

[2] Cigna attaches to its briefing the two health plans at issue. *See* Doc. #202-2 (Cobb County Government Prescription Drug Benefits Plan, eff. Jan. 1, 2014); Doc. #202-3 (Cobb County Government Prescription Drug Benefits Plan, eff. Jan. 1, 2016). I also refer to the administrative services agreement that was filed by plaintiffs under seal. *See* Doc. #216-1 (Administrative Services Only Agreement, eff. Jan. 1, 2014).

293 Ga. 19, 30 (2013) (internal quotations and citation omitted). If its terms are ambiguous, then the court must "apply the rules of contract construction to resolve the ambiguity." *Ibid.*

Georgia law also implies in every contract "a duty of good faith and fair dealing in its performance and enforcement." *Davis v. VCP S., LLC*, 297 Ga. 616, 625 (2015). But this implied covenant "cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." *Oconee Fed. Sav. & Loan Ass'n v. Brown*, 351 Ga. App. 561, 570 (2019). In other words, if there is no viable breach of contract claim, then a claim for breach of the implied covenant of good faith and fair dealing must also fail. *Id.* at 570-71.

Cigna argues it cannot be liable for breaching the health plans because it was not a party to them. Doc. #202-1 at 8-11. It further argues that, because it cannot be liable for breaching the plans' express terms, it also cannot be liable for breaching their implied terms, including the implied covenant of good faith and fair dealing. *Id.* at 11-13.

Blocker does not dispute the general proposition under Georgia law that a person may not be liable for breaching a contract if the person was not a party to the contract. "It is . . . fundamental that a person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms." *Plaza Properties, Ltd. v. Prime Bus. Investments, Inc.*, 240 Ga. App. 639, 642 (1999) (cleaned up), *aff'd*, 273 Ga. 97 (2000). Nor does Blocker dispute that Cigna was not a party to the health plans or that a claim for breach of the implied covenant of good faith and fair dealing cannot survive apart from a viable breach of contract claim.

Instead, Blocker argues that Cigna "expressly agreed to be sued for failure to properly administer prescription drug benefits," which shows that it "intended that it could be liable under the Plan." Doc. #215 at 8-9. He relies on a clause in the plans entitled "Legal Action" that states:

"In most instances, you may not initiate a legal action *against Cigna* until you have completed the Level-One and Level-Two appeal processes. If your appeal is expedited, there is no need to complete the Level-Two process prior to bringing legal action." Doc. #215 at 8-9 (emphasis added by Blocker). But Blocker omits the prefatory sentence: "If your plan is governed by ERISA, you have the right to bring a civil action under section 502(a) of ERISA if you are not satisfied with the outcome of the Appeals Procedure." Doc. #202-2 at 24 (emphasis added); Doc. #202-3 at 21 (same). Viewed in context, the language that Blocker relies on makes clear that "Cigna" acknowledged only that it could be sued under ERISA (not Georgia common law), and even then only if it applies to the plan in question.[3] Blocker did not bring an ERISA claim because he could not; as he concedes, his health plans were "governmental plans" as defined by 29 U.S.C. § 1002(32), Doc. #198 at 28 (¶ 65), and they are therefore exempt from ERISA, *see* 29 U.S.C. § 1003(b)(1). Blocker does not cite any authority to support his argument that contracting parties can write in a non-party's willingness to be sued, and that such a term would be enforceable in Georgia, let alone any other State.

Blocker further argues that Cobb County delegated to Cigna its obligations to administer the plans in accordance with their terms and that, as the plans' primary obligor, Cigna is liable to

---

[3] In what is likely a byproduct of Cigna's use of the same stock contract for both its underwriting and administrative services agreements with employers, there is some confusion between the parties about the use of the word "Cigna" in the health plans. Specifically, the plans state in a clause entitled "Important Information" that "REFERENCES TO 'CIGNA' . . . SHALL BE DEEMED TO MEAN YOUR 'EMPLOYER,'" Doc. #202-2 at 5; Doc. #202-3 at 5, *i.e.*, the plans' sponsor Cobb County, Doc. #202-2 at 28; Doc. #202-3 at 25. But the surrounding text clarifies that this interpretive rule only applies to "REFERENCES TO INSURANCE" when necessary "TO INDICATE THAT THE PLAN IS SELF-INSURED." Absent this clarification, parts of the plans simply make no sense. Thus, for example, "Cigna" best means "Cobb County" when the plans discuss what coverage "Cigna" will provide for prescription drug expenses. Doc. #202-2 at 10; Doc. #203-2 at 10. But "Cigna" best means the defendant Cigna when the plans discuss "Cigna's" claims processing procedures. Doc. #202-2 at 21; Doc. #203-2 at 19. Interpreting these provisions in this way is truest to the plans' explication that "THE BENEFITS DESCRIBED IN THIS BOOKLET OR ANY RIDER ATTACHED HERETO ARE SELF-INSURED BY COBB COUNTY GOVERNMENT WHICH IS RESPONSIBLE FOR THEIR PAYMENT," whereas the defendant Cigna "PROVIDES CLAIM ADMINISTRATION SERVICES TO THE PLAN, BUT CIGNA DOES NOT INSURE THE BENEFITS DESCRIBED." Doc. #202-2 at 5; Doc. #202-3 at 5.

plan obligees like Blocker. Doc. #215 at 4-8. But the record does not show that Cigna assumed

any obligations under the health plans between Blocker and Cobb County, to which it was not

privy.[4]

Blocker misplaces his reliance on *Monroe v. Bd. of Regents of Univ. Sys. of Georgia*, 268

Ga. App. 659 (2004), a case in which the Georgia Court of Appeals held that because the claims

administrator Blue Cross & Blue Shield of Georgia, Inc. "signed the Health Plan Document

under language reading, 'The Claims Administrator hereby agrees to administer *for the

employees* of the Plan Sponsor,'" it "expressly undertook certain obligations 'for the

employees.'" *Id.* at 666. In other words, "Blue Cross directly obligated itself to the Plan

beneficiaries by signing the Health Plan Document." *Id.* at 667 n.5. The *Monroe* decision is

distinguishable because Blocker cannot show that Cigna signed his health plans, and a review of

the plans does not reveal any such signature by Cigna.

Nor do the other cases cited by Blocker support him. In *Directory v. William Muhr, LLC*,

2006 WL 8434072 (C.D. Cal. 2006), the court noted that a delegate assumes a delegating party's

duties "if the delegate *expressly promises* the delegating party to perform that party's duties"

under an "assumption agreement." *Id.* at *4 (internal quotations and citation omitted; emphasis

added). Similarly, in *Sterling v. Redevelopment Auth. of City of Philadelphia*, 836 F. Supp. 2d

251 (E.D. Pa. 2011), *aff'd*, 511 F. App'x 225 (3d Cir. 2013), the court found that a delegate was

contractually liable to an obligee by "entering into [an agreement] with the [obligee] and

[delegating party] and thereby agreeing to assume, as [the delegating party]'s assignee, [the

delegating party]'s obligations . . . ." *Id.* at 266. And in *Holland v. Fahnestock & Co.*, 210 F.R.D.

---

[4] Blocker notes that Cigna's logo is plastered all over the health plans and has alleged that it drafted the plans. Doc. #215 at 5. But again he cites no law to support the suggestion that an entity that drafts a contract thereby becomes a party to it or even assumes any obligations under it.

487 (S.D.N.Y. 2002), there were questions whether an initially oral delegation was valid, but it was alleged that the delegating party subsequently "'formalized' its . . . assignment by assigning in writing to [the delegate] . . . all of [the delegating party]'s rights and 'any and all related duties and obligations' in [certain agreements]." *Id.* at 497. All these cases are distinguishable because Blocker cannot show that Cigna expressly agreed to assume Cobb County's obligations to Blocker pursuant to health plans that Cigna was not a party to.

Blocker's only remaining argument is that Cigna is liable to Blocker for violation of the obligations it assumed under its administrative services agreement with Cobb County, which Blocker concedes he was not a party to. Doc. #215 at 7 (referencing the agreement "between Cigna and Cobb Count[ ]y"). As Cigna asserts, this is little more than a third-party beneficiary argument in disguise. Doc. #220 at 9-10; *see also* Ga. Code Ann. § 9-2-20(b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."). This third-party beneficiary argument fails for several reasons.

First, although the second amended complaint states that "Plaintiff Blocker and the State Law Subclass members are . . . either parties to or third-party beneficiaries of [the] Plans," Doc. #198 at 306 (¶ 102), Blocker has abandoned any third-party beneficiary claim he might have had, Doc. #215 at 8 n.6 (noting that "Plaintiff doesn't allege" any "third-party beneficiary claim in this case"). Second, Blocker alleged in the second amended complaint that Cigna breached the *health plans*, not that it breached its *administrative services agreement* with Cobb County. *See, e.g.*, Doc. #198 at 102 (¶ 307) ("Defendant [Cigna] breached the Plans in each of the fifty states by requiring participants and beneficiaries to pay amounts for prescription drugs in excess of the amounts authorized in the Plans, including 'spread' and 'clawbacks.'"), 103 (¶ 315) ("Defendant [Cigna] has breached the covenant of good faith and fair dealing in the Plans as alleged herein.");

*see also id.* at 8 n.1 (distinguishing the health "Plans" from the "'administrative-services-only' [ ] contracts"). Therefore, to the extent Cigna owed any obligations to Blocker by virtue of the administrative services agreement, Blocker has not alleged that Cigna violated any of them.

Third, the administrative services agreement provides: "This Agreement is solely for the benefit of Employer and [Cigna]. It shall not be construed to create any legal relationship between [Cigna] and any other party." Doc. #216-1 at 10 (§ 13). In the *Monroe* case that Blocker cites, the court found that similar language was sufficient to preclude third-party standing. *See* 268 Ga. App. at 665-66. The additional cases cited by Blocker explain why: a delegate's duty to an obligee is by virtue of the obligee's status "as an *intended beneficiary* of the assumption agreement." *Directory*, 2006 WL 8434072, at *4 (emphasis added); *Sterling*, 836 F. Supp. 2d at 266 (same). Blocker cannot claim to be an intended beneficiary of the administrative services agreement which expressly disclaims that it is for the benefit of third parties like him.

In arguing that this express disclaimer does not defeat his third-party beneficiary claims, Blocker relies on *Versico, Inc. v. Engineered Fabrics Corp.*, 238 Ga. App. 837 (1999). In *Versico*, Engineered Fabrics Corporation ("EFC") sued Versico, Inc. ("Versico") for failing to repair a roofing system that had been sold and warranted by Goodyear Tire & Rubber Company ("Goodyear"). *Id.* at 837-38. In an agreement between Goodyear and Versico, Goodyear sold its roofing systems business, and Versico agreed to "perform all warranty service obligations of [Goodyear] relating to roofing products . . . sold by [Goodyear] prior to the closing date." *Id.* at 840. Despite informing warranty holders to direct their repair requests to it and despite even performing some repairs for EFC, Versico argued that it was not liable to EFC under the agreement's no-third-party-beneficiaries clause. *Ibid.* But the Georgia Court of Appeals found that the trial court did not err in allowing EFC's claim to proceed by construing the clause that

barred third-party beneficiaries to exclude existing warranty holders—a construction that was necessary to avoid an apparent conflict between the no-third-party-beneficiary clause and the assumption-of-existing-obligations provision. *Id.* at 840-41.

Blocker's reliance on *Versico* fails because he cannot point to any similar provision in the *administrative services agreement* in which Cigna expressly agreed to assume any obligations to third parties. *See* Doc. #247 at 2-3 (principally quoting from provisions in the health plans). The only two provisions he cites in the administrative services agreement are unavailing. The first states that Cobb County delegates to Cigna "the authority, responsibility, and discretion to determine coverage under the Plan . . . ." Doc. #216-1 at 6 (§ 2(c)). But it is not clear how that language creates any obligation between Cigna and members of the health plans such as Blocker, and he has cited no factually analogous case law that holds as much. The second provision incorporates in the definition of "Agreement" all "Exhibits," which include the health plans. *Id.* at 4. Again, however, it is counterintuitive to conclude that a party to an agreement assumes the obligations of a second agreement simply because the first agreement incorporates the second, and Blocker has failed to cite any case law suggesting as much.

### CONCLUSION

For the reasons stated above, the Court GRANTS the partial motion to dismiss Count IX (breach of contract) and Count X (breach of the implied covenant of good faith and fair dealing) of the second amended complaint. Doc. #202.

It is so ordered.

Dated at New Haven this 31st day of August 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9