# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | September 3, 2020 |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE CERTAIN ARGUMENTS AND EVIDENCE
SUBMITTED BY CIGNA IN OPPOSING CLASS CERTIFICATION, OR,
ALTERNATIVELY, TO REMEDY CIGNA'S DISCOVERY ABUSES**

# TABLE OF CONTENTS

I.  BACKGROUND ...................................................................................................1

II.  DISCUSSION ...................................................................................................3

    A.  Cigna's Hidden Scheme to Overcharge Members................................................. 3

    B.  Plaintiffs' Discovery Requests and Cigna's Responses........................................... 4

        1.  Plaintiffs Request Claims Data to Ascertain "Clawbacks" and "Spread" ............................................................................................ 4

        2.  Plaintiffs Requested that Cigna Tie Claims to the Relevant Plans ............. 5

            a.  Cigna Proposed Using DST Reports to Distinguish Relevant Claims from Irrelevant Claims in its Claims Data.......................... 5

            b.  Cigna's Repeated Incomplete Production of DST Data ................ 7

                i.  Plaintiffs Pressed Cigna To Tie Claims to Plans; Cigna Refused.................................................................... 8

                ii.  Cigna Belatedly Produced Benefit Option Information and Finally Admitted That It Can Be Used to Tie Claims to Plans.............................................. 12

                iii.  Plaintiffs Again Challenged Cigna's Responses; Cigna Supplemented Again and Disclosed An Additional, Relevant Database To Tie Claims to Plans ................................................................................... 13

            c.  Cigna Represented That It Produced All Relevant Claims Data ...................................................................................... 17

    C.  Cigna Now Objects to Class Certification and Plaintiffs' Expert Based on Supposed DST Reports Shortcomings and Deductible and Out-of-Pocket Maximum Data That It Did Not Produce ............................................................ 18

        1.  The DST Reports ..................................................................................... 18

        2.  Accumulator Data .................................................................................. 19

III.  ARGUMENT....................................................................................................20

    A.  The Court's Inherent Authority to Remedy Discovery Abuses............................ 20

    B.  Consequences for Inadequate and Misleading Interrogatory Responses.............. 21

C.     The Court Should Strike Cigna's Evidence and Arguments Concerning
       DST Reports and Accumulator Data, or, Alternatively, Provide Complete
       Interrogatory Answers Rather Than Invoke Rule 33(d) ...................................... 21

       1.     The DST Reports ...................................................................................... 21

       2.     The Accumulator Data .............................................................................. 28

IV.   CONCLUSION ............................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Allen v. Sears, Roebuck & Co.*,
    No. 07-CV-11706-DT, 2009 WL 36472 (E.D. Mich. Jan. 6, 2009) ................................ 22

*Britton v. Dallas Airmotive, Inc.*,
    No. 1:07-CV-00547-EJL, 2011 WL 13196562 (D. Idaho June 16, 2011) ...................... 25

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004)) ................................................................................... 22

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .......................................................................................................... 20

*DLC Management Corp. v. Town of Hyde Park*,
    163 F.3d 124 (2d Cir.1998) ............................................................................................ 20

*Galuszka v. Reliance Standard Life Ins. Co.*,
    No. 2:15-CV-241, 2017 WL 78889 (D. Vt. Jan. 9, 2017) .................................................. 8

*Glover v. Costco Wholesale Corp.*,
    153 Fed. Appx. 774 (2d Cir. 2005) ................................................................................ 20

*Hogan v. General Electric Co.*,
    109 F. Supp. 2d 99 (N.D.N.Y. 2000) .............................................................................. 25

*In re MasterKey Litig.*,
    53 F.R.D. 87 (D. Conn. 1971) ......................................................................................... 23

*Kleiner v. First Nat. Bank of Atlanta*,
    751 F.2d 1193 (11th Cir. 1985) ...................................................................................... 20

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
    2016 WL 5080034 (N.D. Ill. Sept. 20, 2016) ................................................................. 24

*McCullough v. World Wrestling Ent., Inc.*,
    No. 3:15-cv-1074 (VLB), 2018 WL 2932354 (D. Conn. Feb. 22, 2018) ........................ 15

*Metro. Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008) .......................................................................................................... 8

*Mullins v. Prudential Ins. Co. of Am.*,
    267 F.R.D. 504 (W.D. Ky. 2010) .................................................................................... 22

*R & R Sails Inc. v. Insurance Company of Pennsylvania*,
    251 F.R.D. 520 (S.D. Cal. 2008) .................................................................................... 26

*Residential Funding Corp. v. DeGeorge Financial Corp.,*
306 F.3d 99 (2002) ............................................................................................. 20

*Riley v. United Air Lines, Inc.,*
*32 F.R.D. 230 (S.D.N.Y. 1962)* ......................................................................... 23

*Rowell v. NCO Fin. Sys., Inc.,*
No. 13-2514-CM, 2014 WL 2154422 (D. Kan. May 22, 2014) ................................. 22, 23

*Sandvik Intell. Prop. AB ("SIPAB") v. Kennametal, Inc.,*
2:10-CV-00654, 2012 WL 4378205 (W.D. Pa. Sept. 25, 2012) ...................................... 26

*This, LLC v. Jaccard Corp.,*
Civ. No. 3:15-cv-1606 (JBA), 2017 WL 547902 (D. Conn. Feb. 9, 2017) ..................... 15

*Zuniga v. Bernalillo Cty.,*
Civ No. 11-877 RHS-ACT, 2013 WL 3328692 (D.N.M. Mar. 21, 2013) ...................... 22

## RULES

Fed. R. Civ. P. 26 ................................................................................................... 21, 24

Fed. R. Civ. P. 26(e)(1)(A) .................................................................................... 21

Fed. R. Civ. P. 33(c) ............................................................................................... 23

Fed. R. Civ. P. 33(d) ................. 1, 2, 3, 8, 9, 10, 11, 12, 13, 15, 16, 18, 21, 22, 23, 24, 27, 28, 29

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi) ........................................................................ 21

Fed. R. Civ. P. 37(c)(1) .......................................................................................... 21

## REGULATIONS

29 C.F.R. § 2560.503-1 ............................................................................................. 8

29 C.F.R. § 2560.503-1(b)(5) ............................................................................... 1, 8

## OTHER AUTHORITIES

4 J. Moore, Federal Practice (2d ed. 1970) ........................................................... 23

## I.        BACKGROUND

A key issue in this case is the analysis of overcharges and "clawbacks" in prescription drug claims by Cigna Health and Life Insurance Company ("Cigna").  That analysis requires tying prescription drug claims to Cigna's applicable prescription drug plans that prohibited the overcharges.

In interrogatories, Plaintiffs asked Cigna to identify by claim number each prescription drug transaction that was associated with the plans that contained the language that Plaintiffs maintain prohibited the overcharges.  To Plaintiffs' surprise, ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████[2]  Instead, Cigna told Plaintiffs that, under Federal Rule of Civil Procedure 33(d), Plaintiffs could sort through the hundreds of millions of claims and thousands of Plan documents as easily as Cigna to calculate the overcharges associated with Cigna's hidden "clawback" scheme. *Id.*

In responding to the Interrogatories, Cigna told Plaintiffs to use "Document Source Tool Reports" ("DST Reports"), which Cigna generated from searching its database of stored plans to identify those plans that contained the phrases at issue in the case.  Specifically, in response to interrogatories asking Cigna to tie claims to the plan language at issue, Cigna repeatedly "direct[ed] Plaintiffs" to (1) the claims data, (2) the DST Reports and (3) the plan documents.  *Id.* Cigna provided no further guidance and told Plaintiffs to figure it out for themselves "pursuant to Fed. R. Civ. P. Rule 33(d)." *Id.*

---

[1] Federal Regulations governing health benefit claim procedures provide that Cigna's claim procedures must " contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5).

[2] Unless otherwise states, all references to "Ex. __" are to exhibits to the declaration of Meghan S. B. Oliver.

- 1 -

Beginning in early 2019, Cigna produced DST Reports that contained only six pieces of information when Cigna's searches "hit" on the plan language at issue:  (1) *employer* account number, (2) *employer* account name, (3) document type, (4) CN number, an *employer* specific number identifying the plan certificate, (5) funding arrangement, and (6) plan effective date.[3] Because DST Reports only drilled down to the employer level, rather than the member level, if an employer had more than one plan (as many large employers do), the Reports did not allow Plaintiffs to tie members' claims to plans.  In other words, the DST Reports only allowed Plaintiffs to identify which *employers* had plans with the language at issue, not which *employees* had prescription drug claims under those plans.  When Plaintiffs continued to push back in the meet and confer process due to their incredulity ███████████████████████████████ ██████████████████████████████████, Cigna was emphatic that it had produced "*all of the relevant fields*" in the DST Reports and that Plaintiffs should tie the claims to plans under Rule 33(d) using the Reports, the claims data and the plans.

Plaintiffs engaged an expert in support of class certification, Launce B. Mustoe, Jr., who prepared a damage model based on the (1) claims data, (2) the plans and (3) "all of the relevant fields" in the DST Reports, just as Cigna "direct[ed]" under Rule 33(d).  Then, *after Plaintiffs filed their class certification motion*, Cigna produced substantial amounts of *contradictory and inconsistent* information in "supplemental" answers to interrogatories and deposition testimony, which demonstrated that Cigna's prior answers were false and its reliance on Rule 33(d) was a misleading. Cigna stated in this untimely "supplemental" discovery ████████████████████ █████████████████████████████████████████████ ██████████████████████████ Cigna's Second Suppl. Objs. & Resps. to Interrog. No. 2

---

[3] An exemplar of part of a DST Report is attached as Ex. J.

from Pls.' Fourth Set of Interrogs. ("Second Supplement to Fourth Set") [ECF 275-12] at 3; Ex. B ("Supplement to Fifth Set") at 3, 8, 12, 17, 21 & 26.

Cigna's sharp tactics are not limited to its misdirection in discovery. Incredibly, Cigna now objects to class certification and Mr. Mustoe's report based on Plaintiffs' use of the very DST Reports that Cigna had specifically "direct[ed] Plaintiffs" to use "pursuant to Fed. R. Civ. P. Rule 33(d)." Further, Cigna also now argues that Mr. Mustoe should have considered deductible and out of pocket maximum accumulator data that Cigna ***never*** produced, despite specifically representing in the meet and confer process that it had produced ***all*** relevant data, and that deductible accumulator data ***did not exist***.

Cigna's discovery tactics flout the Federal Rules of Civil Procedure and basic principles of fairness.  Cigna should be precluded from making arguments and submitting evidence, including the report of its expert, Sean May, that challenge Plaintiffs' use of the DST Reports or that are based on information that it refused to produce such as deductible and out of pocket maximum accumulator data.  Alternatively, Cigna should be compelled to answer Plaintiffs' discovery requests and tie members' claims to the plan language at issue, rather than misdirect Plaintiffs and impermissibly invoke Rule 33(d).

## II.  DISCUSSION

### A.  Cigna's Hidden Scheme to Overcharge Members

As set forth in Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl. Opening Memo") [ECF 209] at  2-6, Cigna engaged in a massive, hidden scheme to defraud health Plan members by overcharging them for copayments and deductibles paid for prescription drugs and "clawing back" these overcharges. When Plaintiffs uncovered the scheme and brought this class action, Cigna expressed surprise that Plaintiffs were able to detect

the hidden "spread" that Cigna was "clawing back" and declared, "members are not as uneducated as we thought."

  Further discovery has only buttressed the scope of the unlawful scheme and Cigna's state of mind. For example, Cigna's records demonstrate that it was defrauding ████████ ██████ in addition to its members. Although Cigna impermissibly shut down deposition testimony on the topic, an email exchange shows that Cigna continued to improperly charge members of ██████████ "clawbacks," and, when an employee pointed out the illegal conduct, management continued the illegal "clawbacks" until it could determine how much money it would lose if stopped.   One email advised management, "we can't be clawing back dollars from ████████████. Apparently they don't like it! ☺" Ex. I at CIGNA00321339.  Management responded ██████████████████████████ ████████████████████████████████████████ *Id*. at CIGNA00321337.  During the deposition of Tyler Lester, who wrote the last email, Plaintiffs asked him, "So my question is why did you want to see the impact analysis before you stopped collecting spread from claims at Veterans and DoD pharmacies?"  Cigna's counsel interrupted and, without reliance on any privilege or right (presumably it was based on the 5th Amendment privilege against self-incrimination), declared, "I instruct him not to answer. Let's take a break." Ex. K at 311:18-312:10 Cigna's pattern of obstruction has pervaded the discovery process.

   **B.** **Plaintiffs' Discovery Requests and Cigna's Responses**

    **1.** **Plaintiffs Request Claims Data to Ascertain "Clawbacks" and "Spread"**

  In Plaintiffs' First Set of Request for Production of Documents ("RFPs"), served February 6, 2017, Plaintiffs requested, among other things, "Documents sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated" (RFP 7) and

"Documents sufficient to show the monthly revenues, profits, and other consideration received or credited from prescription drug premiums, Clawbacks, and Spread" (RFP 8). After the Court denied Cigna's motion to dismiss, Cigna filed its Supplemental Responses in which it responded that it would "produce, based on information available to it, prescription drug transaction records containing the prescription drug transactions of the Named Plaintiffs and the putative class members from January 1, 2014 through January 19, 2017, the date of filing of the Consolidated Complaint." Cigna then produced data for hundreds of millions of prescription drug claims ("Prescription Drug Transaction Data"). But, rather than producing data only for the claims under the relevant plans, Cigna produced millions of claims under non-relevant plans as well. Consequently, the parties would need to identify the relevant claims in the Prescription Drug Transaction Data.  This would require two steps: (1) identifying the plans that are in the Class and Subclass; and (2) tying those plans to the claims that were adjudicated pursuant them.

### 2. Plaintiffs Requested that Cigna Tie Claims to the Relevant Plans

In the meet and confer process, Plaintiffs asked Cigna "to produce all claims data that is relevant to proving liability and calculating damages for the Plaintiffs and Classes."   More specifically, Plaintiffs asked Cigna to produce all data necessary to "tie *transactions* to employers *and plans*."  Ex. F at 4.

### a. Cigna Proposed Using DST Reports to Distinguish Relevant Claims from Irrelevant Claims in its Claims Data

To separate the irrelevant data from the relevant, Cigna proposed on July 17, 2018 using its DST system to (1) identify the relevant plan language (2) search Cigna's plans for that language and (3) generate a list of the plans that "hit" on the relevant language.  Cigna uses its DST system to create plan documents using boilerplate provisions.  *See* Plaintiffs' Opposition to Defendants' Motion to Exclude the Declaration and Testimony of Launce B. Mustoe, Jr. filed

herewith ("Opp. to Mot. to Exclude") at Parts I.A and I.B. ████████████████████

██████████████████████████████████

On February 7, 2019, Cigna produced the first DST Report that listed all Cigna-generated plan documents that contained the relevant phrase "exceed the amount paid by the plan to the pharmacy." The Report provided ***only*** the following six pieces of information about those plans:

1. "Account Number"

2. "Account Name"

3. "Document Type"

4. "CN Number"

5. "Funding Arrangement"

6. Effective Date"

Cigna did not inform Plaintiffs at the time what other information was searchable and could be included the DST Reports. Cigna also did not provide any explanation of the fields. Instead, Plaintiffs had to discern the meaning of the fields through depositions, and in that process learned that the only plan identifying information in the DST Report is the CN Number. However, that information is not included in the claims data and therefore could not be used to tie claims to plans.

The "Account Number" of the employer does appear in both the DST Report and the claims data. Accordingly, it is possible to use this DST Report to determine if a particular member had an employer that had a plan with the relevant language. But, many employers offer multiple plans, some of which may include the relevant language, some of which may not. Because this first DST Report and claims data have no plan-identifying information in common,

when an employer sponsored multiple plans with potentially different relevant language, the

DST Report could not link a member's transactions to the matching plan.

Cigna then provided DST Reports for its plans that included the following phrases:

(1)  "incurs expenses for charges made by a pharmacy";

(2)  "required to pay a portion of the covered expenses for prescription drugs and
     related supplies";

(3)  "prescription drug charge"; and

(4)  "may be required to pay a Deductible, Copayment or Coinsurance requirement
     for Covered Expenses for Prescription Drug Products."

All of these reports included only the same six pieces of information that that tied claims to the

employers, but not to the members' claims.

### b.      Cigna's Repeated Incomplete Production of DST Data

On April 5, 2019, Plaintiffs requested that Cigna "confirm that the reports contain all data

concerning the plans available on the DST system."[4] On April 24, 2019, Cigna falsely

represented that it had produced "***all of the relevant data fields***" and that the only fields that

were withheld were "administrative fields":

> [Y]ou have asked that Cigna confirm "that the reports contain all data concerning
> the plans available on the DST system."  We are not sure what you mean by all data
> concerning the plans.  However, with regard to the DST reports, we have provided
> you with **all of the relevant data fields** available for the report and which are
> necessary for the parties to review the client information, the document type, the
> plan identifier, the funding arrangement, and the effective date of the document.
> **Certain administrative fields have not been produced**.[5]

---

4   April 5, 2019 email from Plaintiffs' counsel to Cigna's outside counsel.  Plaintiffs have not burdened the Court
    with the emails referenced in this memorandum, but will readily do so if the Court believes they would be helpful.

5   April 24, 2019 email from Cigna's outside counsel to Plaintiffs' counsel (emphasis added).

i.       **Plaintiffs Pressed Cigna To Tie Claims to Plans; Cigna Refused**

Because the DST Reports did not contain a field that allowed Plaintiffs to tie a member's claims to his or her Plan, Plaintiffs questioned for themselves how Cigna could meet its obligation under Department of Labor Regulations to "establish and maintain reasonable claims procedures," 29 C.F.R. § 2560.503-1, including "administrative processes and safeguards designed *to ensure and to verify* that benefit claim determinations are made in accordance with governing plan documents," *id*. at § 503-1(b)(5)(emphasis added); *see also Galuszka v. Reliance Standard Life Ins. Co*., No. 2:15-CV-241, 2017 WL 78889, at *4 (D. Vt. Jan. 9, 2017) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008)) (there is an "independent burden to ensure accurate claims assessment"). Accordingly, Plaintiffs served Cigna with interrogatories specifically asking it to tie members' claims to the relevant plan language.  For instance, on May 3, 2019, Plaintiffs served their Fourth Set of Interrogatories.  Interrogatory 2 of the Fourth Set asked:

> Identify, by claim number (i.e., CLM_NUM), each transaction in the prescription drug transaction data produced by Cigna on January 20, 2019 that was pursuant to a plan containing the sentence: "**In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge**."

In response, ███████████████████████████████████████████████████████████
███████████████████████████████████████████ and it "direct[ed] Plaintiffs . . . pursuant to Fed. R. Civ. P 33(d)" to analyze (1) the claims data, (2) the DST Reports and (3) the plans in order to answer the interrogatory themselves. Cigna's response was as follows:

> Subject to and without waiving these objections and the above General Objections, CHLIC responds as follows: After reasonable investigation, ██████████████████████████████████████████████████████████████

Further, to the extent that the information sought by this Interrogatory may be

able to be ascertained from the prescription drug transaction data, DST language search results [DST Reports], and plan-related documents that CHLIC has produced in this Action, the burden on locating and identifying such information is the same for Plaintiffs as CHLIC and CHLIC **directs Plaintiffs to those data and documents pursuant to Fed. R. Civ. P. 33(d)**.

Ex. A at 9.

As set forth above, this was a nonresponsive answer because the documents Cigna referenced could not be used alone to tie a member's claims to his or her Plan. Cigna knew it had information in its possession that ***would*** tie claims to plans. Cigna disclosed none of this and instead misdirected Plaintiffs by asserting that what it had already produced "***may***" enable Plaintiffs to answer the Interrogatory.

Rule 33(d) permits a party to respond to an interrogatory without providing a substantive answer if the answer is as readily available to the requesting party as it is to the responding party by reviewing business records to which both parties have equal access. The responding party can avoid providing a substantive answer only by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d). Importantly, in order to rely on this rule, "the burden of deriving or ascertaining the answer" must be "substantially the same for either party." Fed. R. Civ. P. 33(d) (emphasis added). Rule 33(d) assumes the necessary information is actually in the requesting party's possession, or at least obtainable with the same amount of effort as it would take the responding party. Here, it was neither.

On July 19, 2019, Plaintiffs served a Fifth Set of Interrogatories, including six interrogatories asking Cigna to tie claims to plans with the following respective phrases:

- "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies." (Interrogatory 1, Fifth Set.)

- 9 -

- "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drug Products." (Interrogatory 2, Fifth Set.)

- "As applicable, your Deductible or Coinsurance payment will be based on the Plan's Prescription Drug Charge when the Pharmacy is a Network Pharmacy[, and the Usual and Customary Charge when the Pharmacy is a non-Network Pharmacy]." (Interrogatory 3, Fifth Set.)

- "To receive Prescription Drug Benefits, you and your Dependents may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products." (Interrogatory 4, Fifth Set.)

- "After satisfying the plan Deductible, if any, your responsibility for a covered Prescription Drug Product will always be the lowest of: the Copayment or Coinsurance for the Prescription Drug Product; or the Prescription Drug Charge for the Prescription Drug Product; or the Pharmacy's Usual and Customary (U&C) charge for the Prescription Drug Product." (Interrogatory 5, Fifth Set.)

- "You are not entitled to the difference between the rate Cigna charges to the Plan and the rate Cigna pays to the Pharmacy for a Prescription Drug Product. For the purposes of Prescription Drug benefit payments, the "Plan" is the entity or business unit responsible for funding benefits in accordance with the terms and conditions outlined in this booklet/certificate." (Interrogatory 6, Fifth Set.)

On July 31, 2019, Plaintiffs continued to press Cigna to provide more information about its "ability to match claims to specific plan language."[6] Almost seven weeks later, Cigna filed the first of two "supplemental" responses, but this first "supplemental" response did not cure the deficiencies. While Cigna finally stated that it "*is* able to trace a particular participant's benefit plan selection to the specific benefit plan," Cigna did not produce any new data or explain, as required under Rule 33(d), how Plaintiffs could do so. *See* Supp. Objs. & Resps of Def. [CIGNA] to Pl.'s Fourth Set of Interrogs. [ECF 210-20].

---

[6] July 31, 2019 email from Plaintiffs' counsel to Cigna's outside counsel.

On December 12, 2019, Plaintiffs requested that Cigna run two additional DST Reports for phrases that were relevant to Plaintiffs' claims. After Cigna refused to run the reports, Plaintiffs served their Sixth Set of Interrogatories consisting of the following interrogatory:

> For the period beginning on October 13, 2010 and continuing to the present, identify each plan and certificate that contain both of the following clauses: (1) "Charges means the discounted amount that the pharmacy benefits manager makes available" and (2) "Coinsurance means the percentage of Charges for covered Prescription Drugs"; and for each identified plan/certificate provide the account number, account name, document type, CN Number (as used in the previously produced "DST Reports"), funding arrangement, date plan/certificate went into effect, date plan/certificate came out of effect, and Group ID (which should include the Benefit Option/Plan of Benefit).

This interrogatory asked that Cigna provide the information that was produced in the previous DST Reports, plus ***two additional pieces of information*** that had not previously been disclosed by Cigna, but which Plaintiffs surmised might exist — the date the plan/certificate came out of effect and Group ID (which Plaintiffs believed might include the "specific benefit plan" that Cigna referenced in its first "supplemental" response). Because Cigna had previously represented that "all of the relevant fields" in the DST Reports were produced, Plaintiffs did not know whether, how, or in what form Cigna could or would provide the additional information. Rather than provide the requested new information, Cigna again referred to a prior DST Report (that did not contain the "specific benefit plan" information) and plan documents and again relied on Rule 33(d). Ex. C at 3-4.

The foregoing is the sum total of responsive information that Cigna had produced concerning tying transactions to plans prior to the filing of Plaintiffs' Motion for Class Certification and Expert of Launce B. Mustoe in support thereof.

ii.     **Cigna Belatedly Produced Benefit Option Information
and Finally Admitted That It Can Be Used to Tie
Claims to Plans**

On February 25, 2020, Plaintiffs served their Eighth Set of Interrogatories, which sought

DST Reports for plans with two additional phrases: (1) "may be required to pay a Deductible,

Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products";

and (2) "discretionary authority to interpret and apply plan terms." In addition to the fields

provided in the initial DST Reports, Plaintiffs once again requested "the date period the

plan/certificate was in effect, Group ID (which should include the Benefit Option/Plan of

Benefit), and the BRANCH_POLICY_CDES."

On March 26, 2020, Cigna served a response, and although it again cited to Rule 33(d), it

agreed to produce at a later date a DST Report in response to each of these two interrogatories

with the requested information, except it would not provide "the 'Group ID' and the

'BRANCH_POLICY_CDES' as those fields are not available in the DST system." Ex. D at 4-5.

On May 12, 2020, in response to this Eighth Set, Cigna finally began to produce the

information Plaintiffs had been looking for all along—information sufficient to tie a claim to a

specific plan.  Two months after Plaintiffs had submitted their class certification materials, and

over a year after it produced the first DST Report, Cigna produced a DST Report with two

additional, previously undisclosed fields: "Contract State" and "Ben Opt Code."  Plaintiffs

learned through depositions that the Benefit Option ("Ben Opt") Code can be used in

combination with an Account Number (also included in the DST Reports) to tie a member's

claims to his or her specific Plan. However, Cigna still did not explain how Plaintiffs could use

this information in its interrogatory response as required under Rule 33(d).

### iii. Plaintiffs Again Challenged Cigna's Responses; Cigna Supplemented Again and Disclosed An Additional, Relevant Database To Tie Claims to Plans

On April 22, 2020, Plaintiffs wrote to Cigna, highlighting again the inappropriateness of Cigna's reliance on Rule 33(d). Ex. G.  On May 1, Cigna responded that it would again supplement its prior answers to the Fourth and Fifth Sets of Interrogatories to "clarify" them. Ex. O.

On June 18, 2020, Cigna served the Second Supplement to Fourth Set [ECF 275-12], its Supplement to Fifth Set, Ex. B. Contrary to Cigna's assertion in its May 1, 2020 letter, these "supplemental" responses did not merely "clarify" the previous responses; they included wholesale contradictions and changes demonstrating that Cigna's earlier responses were false. Contrary to Cigna's prior, repeated denial that its "ordinary course of business" records permitted claims to be tied to plans, Cigna stated that it can "link specific prescription drug transactions to specific plan language."  Second Supplement to Fourth Set [ECF 275-12] at 3; Ex. B at 3, 8, 12, 17, 21 & 26. Specifically, *for the first time*, Cigna conceded that by using the "PLAN_OF_BEN" field, a member's claims *could be* tied to his or her Plan. Second Supplement to Fourth Set at pp. 5-7; Supplement to Fifth Set at pp. 3-30.  The "PLAN_OF_BEN" field in the claims data is the same as the "Ben Opt Code" that can be, but was not, included in the DST Reports.  *See Ex. K* at 190:15-22

Cigna's contradictory, "supplemental" response provided, in relevant part: "CHLIC's prescription drug transaction data includes a field ("PLAN_OF_BEN") that is associated with the benefit options reflected in the CED [Central Eligibility Database] for the participant and Member Materials [database] for the plan sponsor."  Second Supplement to Fourth Set [ECF 275-12] at 5; Ex. B.  at 5, 10, 14, 19, 23-24, 28. Cigna's "supplemental" interrogatory response continued, "CHLIC *is able* to confirm whether a particular transaction – *by claim number (i.e.,*

CLM_NUM) – in the prescription drug transaction data produced by CHLIC was pursuant to a plan containing the particular sentence Plaintiffs quote in this Interrogatory." Second Supplement to Fourth Set [ECF 275-12] at 5-6; Ex. B. at 6, 10, 15, 19, 24, 28. (emphasis added)

This new information is *precisely* what Plaintiffs had been requesting in their interrogatories and their many meet and confer sessions for more than a year.[7]   In its previous, obfuscating responses, Cigna did not advise Plaintiffs that the "PLAN_OF_BEN" field could be used to tie a claim to a plan.  Moreover, Cigna still has not provided the corresponding "Ben Opt Code" field for the numerous DST Reports to enable Plaintiffs to tie claims to plans in the manner that Cigna untimely described.[8] These updated Reports are allegedly forthcoming, but who knows when (if ever.)

It is noteworthy that in its first "supplemental" interrogatory response on September 18, 2019, Cigna generically referred to "benefit plan option[s]," but it did not disclose the importance of the "PLAN_OF BEN" field or the existence of the "Ben Opt Code" field or the fact that they can be used to tie a member's claims to his or her Plan.  This information could and should have been disclosed in Cigna's *first* interrogatory response on June 17, 2019, when Cigna falsely asserted that it did not maintain records "in the ordinary course of business" that could be

---

[7] As a reminder, Plaintiffs' interrogatories to tie claims to plan language were in the following form, which requested the same information that Cigna finally admitted it could have provided all along:

> Identify, by claim number (i.e., CLM_NUM), each transaction in the prescription drug transaction data produced by Cigna on January 20, 2019 that was pursuant to a plan containing the sentence: "In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge."

[8] Because it had to finally admit that the "PLAN_OF_BEN" field existed and could be used to tie a member's claims to that member's plan, Cigna had to reverse course on the utility of the DST Reports. In its initial and first "supplemental" interrogatory responses, Cigna prominently cited the "DST language search results" as business records that Plaintiffs should rely on under Rule 33(d).  In sharp contrast, the June 18, 2020 "supplemental" responses only make a passing reference to the DST Reports in footnotes.

used to tie claims to plans. ***None of this information is new, nor has Cigna explained why it did not disclose it earlier.*** Cigna's failure to disclose this indisputably relevant, responsive information and its misleading discovery responses prejudiced Plaintiffs and their expert.

Even Cigna's "supplemental" answers to interrogatories were deficient in that Cigna continued to rely on Rule 33(d), but did not sufficiently explain how to use the underlying information as required under the Rule, nor did it nor has it provided ***all*** of the required data to Plaintiffs. Rule 33(d) and the case law are clear that a responding party cannot avoid responding to an interrogatory by pointing to a "mass of business records" and telling the interrogating party to figure it out themselves. *See, e.g., This, LLC v. Jaccard Corp.*, Civ. No. 3:15-cv-1606 (JBA), 2017 WL 547902 at *3-4 (D. Conn. Feb. 9, 2017) (citing Fed. R. Civ. P. 33(d) advisory committee notes to 1980 Amendment); *McCullough v. World Wrestling Ent., Inc.*, No. 3:15-cv-1074 (VLB), 2018 WL 2932354 at *5 (D. Conn. Feb. 22, 2018). Because Cigna failed to meet its obligations under Rule 33 (d), Plaintiffs had to obtain the "how to" information through multiple depositions. For example, Tyler Lester, who verified Cigna's interrogatory responses, admitted that the Ben Opt Code is synonymous with the "PLAN_OF_BEN" field found in the claims data. Ex. K at 154:10-15  Accordingly, by linking the Ben Opt Code and employer Account Number in the DST Reports to the "PLAN_OF_BEN" field and employer Account Number in the claims data, Cigna always was able, using its "ordinary course of business" records, to tie the claims data to specific plan language.

Cigna's Damon Hellandbrand (corporate designee for topics relating to DST) ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

Even Cigna's own expert, Sean May, ████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████.[9]

Cigna's "supplemental" discovery responses and deposition testimony confirm that Cigna's prior answers were not true and its reliance on Rule 33(d) was inappropriate because the information that is necessary to tie claims to plans was not identified or produced and it ***was not*** equally accessible to Plaintiffs as Rule 33(d) requires. Cigna's invocation of Rule 33(d) in this litigation is a discovery abuse.

---

[9] ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████
Opp. to Mot. to Exclude at Part I.B.

### c.    Cigna Represented That It Produced All Relevant Claims Data

Cigna's abusive discovery tactics are not limited to tying member prescription drug claims to the plans pursuant to which those claims were made. It also extends to data that Cigna ***now*** contends undermines Plaintiffs' damages calculations, but which it never produced. In response to Plaintiffs' requests for production, Cigna represented on May 25, 2018 that it would produce the "prescription drug transaction records containing the prescription drug transactions of the Named Plaintiffs and the putative class members January 1, 2014 through January 19, 2017." Ex. E at 21. Knowing that such records would contain hundreds of data fields, many of which were likely irrelevant to the case, Plaintiffs asked Cigna in meet and confer sessions in the summer of 2018 to produce a full list of the data fields so Plaintiffs could select the relevant fields.

After Cigna delayed for more than five months, Plaintiffs demanded that Cigna produce all claims data fields that would be "relevant to proving liability and calculating damages for the Plaintiffs and the Classes."  Ex. F at 4.  In particular, Plaintiffs explained that Cigna should produce, for example "all claims data . . . to the extent it can be used to identify and calculate overcharges, ***calculate deductible payment balances***, . . . tie transactions to employers and plans, identify cost-share logic, identify and provide the pricing logic or algorithms used to calculate cost share payments, identify reversed transactions, and understand whether any amounts or other data were inflated or changed by, for example, Argus or Catamaran." *Id*. Lastly, Plaintiffs advised that, "[t]o the extent Plaintiffs discover that relevant data possessed or controlled by Cigna was not produced, Plaintiffs reserve all rights." *Id*.

In its February 7 response to Plaintiffs' letter, Cigna represented that the it had "produced the prescription drug transaction data for the putative class" and that this "data included ***all available fields that are relevant for purposes of this case***." Ex. H. at 2.  Moreover, Cigna

specifically stated that .

*Id*.

Cigna's position was confirmed during the deposition of Tyler Lester, who verified the answers to Cigna's discovery responses. Mr. Lester testified that in producing data, Cigna was "looking for all fields that represented the financial information of how a pharmacy transaction was processed and through that we identified all of these fields that impact that financial picture of a transaction." Ex. K at 40:2-41:3.He further testified that he did not think anything was missing. *Id*. at 41:16-19. Accordingly, Cigna represented in discovery and the meet and confer process that information concerning the accumulation of member cost share payments towards annual deductibles or out of pocket maximums was not relevant and/or did not exist.

**C.**   **Cigna Now Objects to Class Certification and Plaintiffs' Expert Based on Supposed DST Reports Shortcomings and Deductible and Out-of-Pocket Maximum Data That It Did Not Produce**

**1.**   **The DST Reports**

After Cigna ***"direct[ed] Plaintiffs"*** to use the DST Reports under Rule 33(d) in order to weed through its data dump, it now challenges the usefulness the DST Reports for that very task. Cigna's Class Certification Opposition, Daubert Memorandum, and May Declaration, include the following arguments:

- "Plaintiffs claim that Mustoe can use the DST Reports "to match transactions from the first date [an] employer had any Plan with the relevant language to the last date the employer had a Plan with the relevant language." . . . But Mustoe's use of the DST Reports is flawed in three respects: . . . the DST Reports do not reliably identify when (if ever) a plan

document was operative . . . ." Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") [ECF No. 274] at 42.

- "Mr. Mustoe's methodology mistakenly assumes that just because a plan document is listed on a DST Report, it necessarily became operative." Defendant's Memorandum of Law in Support of Defendant's Motion to Exclude Launce B. Mustoe, JR. ("*Daubert* Mem.") [ECF No. 279] at 27.

- "The DST Reports do not indicate when (if ever) a document listed on a DST Report stopped being operative. ECF 206-1 at 10-11. This is an important limitation that Mr. Mustoe acknowledges but ineffectively tries to solve for by saying that he can determine the "end dates" for plan documents with actionable language by applying DST Reports 4 and 5 that include plan and plan-related documents with other language." *Id.* at 28.

- Part V(B) of the May Declaration argues that "Mr. Mustoe's Method Does Not Identify when Plan and Plan-Related Documents Stopped Using the 'Actionable' Language" May Decl. [ECF 275-4].

## 2.  Accumulator Data

Similarly, Cigna now argues that Plaintiffs' damages methodology should have considered accumulator information that Cigna did not produce, despite assuring Plaintiffs that it had produced all data that was "relevant for purposes of this case."  Worse, Cigna contends that Mr. Mustoe should have considered deductible accumulator data after Cigna specifically told Plaintiffs that the data did not exist.  Cigna's arguments include the following:

- "Mustoe's methodology ignores plan-specific deductibles and out of pocket maximums, which affect whether the plan will help pay for a given prescription drug transaction (deductible) or pay the full amount (out of pocket maximum)." Def. Mem. [ECF No. 274] at 40-41.

- "Mustoe did not perform any such analysis of deductibles or out-of-pocket maximums. Nor did he purport to apply those benefit designs to each class member's transaction history to determine how much each class member should have paid had the benefits been calculated using Plaintiffs' theory as opposed to CHLIC's theory." *Id.* at 41.

- "He did not consider any plan-specific terms regarding out-of-pocket spending, such as deductible amounts, out-of-pocket maximum amounts, . . . , or differences in cross-accumulation rules, or analyze participants'

- 19 -

medical claims data[10] for those with both types of benefits under their plans." *Daubert* Mem.[ECF No. 279] at 18.

- Part I(B)(1)(a) argues that "Mr. Mustoe Ignores the Effects of Deductible Shifting" *Id*. at 19.

- Part I(B)(1)(b) argues that "Mr. Mustoe Ignores The Effects Of Accounting For Out-Of-Pocket Maximums" *Id*. at 20.

- Part IX of the May Declaration argues that "Mr. Mustoe Does Not Consider the Effect of Deductibles on Participants' Payments" May Decl.[ECF 275-4] at 50-57.

- Part X of the May Declaration argues that "Mr. Mustoe Does Not Consider the Effect of Out-of-Pocket Maximums on Participants' Payments" *Id*. at 57-63.

## III.     ARGUMENT

### A.     The Court's Inherent Authority to Remedy Discovery Abuses

"[W]here the breach of a discovery obligation is the non-production of evidence, a court has broad discretion to determine the appropriate sanction." *Glover v. Costco Wholesale Corp*., 153 Fed. Appx. 774, 776 (2d Cir. 2005) (unpublished). "Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal." *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Financial Corp*., 306 F.3d 99, 106-07 (2002) (citing *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 135–36 (2d Cir.1998); *also citing Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts

---

[10] Defendants have never during this litigation discussed the need for Plaintiffs to review medical claims; and more to the point, Cigna has not produced the medical benefits claims for the Classes in this action and thus must not consider it "relevant for purposes of this case," because it assured Plaintiffs that it produced all "relevant" data. Ex. H at 2.

of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'").

### B.   Consequences for Inadequate and Misleading Interrogatory Responses

"A party who . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information . . .  as required by Rule 26 . . . (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." *Id.*

### C.   The Court Should Strike Cigna's Evidence and Arguments Concerning DST Reports and Accumulator Data, or, Alternatively, Provide Complete Interrogatory Answers Rather Than Invoke Rule 33(d)

#### 1.   The DST Reports

There are at least two problems with Cigna's discovery tactics related to the DST Reports.  First, because Cigna refused substantively to answer the interrogatories that requested it to tie claims to the relevant plan language, and instead "direct[ed] Plaintiffs" to use the DST Reports pursuant to Rule 33(d), it cannot now argue that the DST Reports are deficient for that purpose.  Second, all but two of the DST Reports that Cigna produced do not contain the Ben Opt Code, which is critical to tying claims to plan language.

While Cigna has represented that it will reproduce the DST Reports with the Benefit Option Code (although who knows when), Plaintiffs have already filed their Class Certification Motion and the Mustoe Declaration and served the Mustoe Merits Expert Report. Mr. Mustoe and his team already spent many hours developing, analyzing, and running the methodology based on Cigna's repeated representations that it had produced "all of the relevant fields" in the DST Reports.

When Cigna relied on Rule 33(d), it affirmed that the DST Reports were sufficient to answer the interrogatories requesting that Cigna tie claims to relevant plan language. *See* Fed. R. Civ. P. 33(d)(to invoke Rule 33(d), the responding party is asserting "the answer to [the] interrogatory may be determined" by examining the referenced records); *Allen v. Sears, Roebuck & Co.*, No. 07-CV-11706-DT, 2009 WL 36472, at *1 (E.D. Mich. Jan. 6, 2009)("Courts require that the party properly invoking Rule 33(d) to answer an interrogatory be able to state that the party ***will be able to secure the information*** that is sought by the interrogatory in the records.")(emphasis added); *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514 (W.D. Ky. 2010)(citing *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 322-23 (C.D. Cal. 2004))("A party who seeks to rely upon [Rule 33(d)] must not only ***certify that the answer may be found in the records referenced by it***, but also 'must specify where in the records the answers [can] be found.'")(emphasis added); *Zuniga v. Bernalillo Cty.*, Civ No. 11-877 RHS-ACT, 2013 WL 3328692, at *6 n.3 (D.N.M. Mar. 21, 2013)("To comply with [Rule 33(d)], the respondent must specifically designate what business records answer each interrogatory; ***such records must contain the information sought by the interrogatory***; and the burden of deriving the answer from them must be substantially the same for the party seeking the information as for the respondent."); *Rowell v. NCO Fin. Sys., Inc.*, No. 13-2514-CM, 2014 WL 2154422, at *9 (D.

- 22 -

Kan. May 22, 2014) ("[P]laintiff may not rely on Rule 33(d) because as she cites, this rule only applies if an answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records. Here, it appears that all of the information defendant requested in Interrogatory No. 3 cannot be determined by referencing the cited business records.").  Otherwise, Cigna's response was no answer at all.  Necessarily, in affirming that DST Reports could be used under Rule 33(d) to tie claims to plans, Cigna waived any ability to later claim that the DST Reports could not be used effectively for that very purpose.

If Cigna argues that it attempted to qualify its interrogatory response by inserting the phrase "to the extent that the information sought by this interrogatory may be able to be ascertained . . ." before "direct[ing] Plaintiffs" to the claims data, DST Reports and Plan documents and invoking Rule 33(d), the Court should reject that argument.  In *In re MasterKey Litig*., 53 F.R.D. 87 (D. Conn. 1971), defendants invoked Rule 33(d) and attempted to qualify their answer with the phrase, "[i]f and to the extent . . ." just like Cigna tried here.  *Id*. at 89. The court rejected the non-answer under Rule 33(d) (which then was Rule 33(c)):

> It would be antipathetic to the spirit of the discovery rules to assume that the newly added Rule 33(c) was intended to diminish the duty of the parties to provide all information requested. Since a respondent is required to answer proper interrogatories, it is not plausible to assume that a response that an answer may (or may not) be found in its records, accompanied by an offer to permit their inspection is sufficient. This is little more than an offer to play the discredited game of blindman's buff at the threshold level of discovery. The challenged answers furnish no information whatever. Nor can the responses be read as stating that the defendants do not have or cannot obtain the information necessary to answer the interrogatories. If a party cannot furnish information and details it may so state, under oath. *See Riley v. United Air Lines, Inc.,* 32 F.R.D. 230, 233-34 (S.D.N.Y. 1962*)* and *see generally*, 4 J. Moore, Federal Practice, ¶33.26, at 33–140–33–146 (2d ed. 1970).

*Id.* at 90.

Permitting Cigna's hedging would eviscerate the purpose of Rule 33(d).  That is especially the case here, where Cigna specifically "direct[ed] Plaintiffs" under Rule 33(d) to DST Reports that Cigna knew were materially incomplete because they did not contain "Ben Opt Codes."

For these reasons, Plaintiffs request that the Court

- strike all of Cigna's arguments and evidence, including the Report of Cigna's expert, Dr. May, now and for all future proceedings, related to Plaintiffs' use of the DST Reports and supposed shortcomings of the DST Reports;

- or alternatively, order Cigna to answer the previously propounded interrogatories requesting it to link claims to specific plans, rather than place that burden on Plaintiffs under Rule 33(d).[11]

Any of these remedies is well within the Court's discretion.  For instance, in *Loggerhead Tools, LLC v. Sears Holdings Corp.*, 2016 WL 5080034 (N.D. Ill. Sept. 20, 2016), Sears produced a significant amount of discovery ***after*** the plaintiff filed its opening expert report. *Id.* at *1. Plaintiff moved to exclude certain documents produced by Sears and strike all references to and reliance on those documents in the defendant's expert report. *Id.* In granting the motion, the court first noted that Sears had a duty to disclose because, under Rule 26, "[a] party . . . who has responded to an interrogatory, *request for production*, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." *Id.* at *2 (emphasis in original)   Next, the court found that "[a]ltering the financial information on which [plaintiff's] expert's opinions rest at this late stage in the litigation would undoubtedly prejudice

---

[11] For convenience, the relevant interrogatories are compiled in Ex. N.

[plaintiff]" and that the ability to cure the prejudice was limited because, among other reasons, the deadlines for expert discovery had already passed.  *Id.*

In *Britton v. Dallas Airmotive, Inc.*, No. 1:07-CV-00547-EJL, 2011 WL 13196562 (D. Idaho June 16, 2011), when plaintiffs produced requested information months after the discovery deadline, the magistrate judge rejected the plaintiff's position that this was a "supplemental" production and held that "the materials could have been identified and provided much earlier in this case." *Id.* at *2. Accordingly, the Court "precluded [plaintiff] from using any documents, testimony, or expert witness testimony which relies on such materials that were produced by plaintiffs in December of 2010."

In *Hogan v. General Electric Co.*, 109 F. Supp. 2d 99 (N.D.N.Y. 2000), the plaintiffs' expert relied on GE's "often confusing and contradictory" interrogatory responses. *Id.* at 102. After the expert completed his analysis, GE submitted three affidavits correcting its earlier responses. GE then sought to exclude the plaintiffs' expert report. The court rejected GE's request, concluding that "a plaintiff should not be penalized for relying on information provided by opposing counsel" and where — as is the case here — "[t]he answers to interrogatories given by the defendants were often confusing and contradictory." *Id.*  The court explained that "the information needed to conduct the proper [analysis] is completely controlled by [the defendant]" and the expert's "ability to include [relevant factors] was precluded by the defendants" *Id.* at 103. The court further explained that the relevant information "should have been turned over to [plaintiffs' expert], or if these items truly do not exist, the plaintiffs' expert could not be expected to include these factors in his report."  *Id.* Finally, the court stated that "[plaintiffs' expert] completed the proper analysis with the information he had, and the plaintiffs should not be punished for the defendants' lack of record keeping." *Id.*

*Sandvik Intell. Prop. AB ("SIPAB") v. Kennametal, Inc.*, 2:10-CV-00654, 2012 WL 4378205 (W.D. Pa. Sept. 25, 2012), also concerned improper interrogatory responses like those here. Kennametal served an interrogatory on SIPAB, to which SIPAB objected, and "Kennametal informed SIPAB that it considered SIPAB's response deficient." *Id*. at * 1. The court noted that "SIPAB's position has been best described as a 'moving target' and although it has twice supplemented its response to [the relevant interrogatory], the responses continue to be less than complete." *Id*. The court ordered SIPAB to provide "a complete, accurate and verified, supplemental answer to [the relevant interrogatory]" and also ordered Kenematal to file a petition seeking reasonable attorney fees incurred as a direct result of SIPAB's discovery misconduct. *Id*. at *5.[12]

The discovery misconduct in all of these cases was less egregious than Cigna's complete reversal after Plaintiffs moved for class certification.  In summary:

1. In early 2019, Cigna stated that it had no "ordinary course of business" records to tie claims to plan language, when it knew that it had such records;

2. Since early 2019, Cigna provided Plaintiffs with several DST Reports that could not be used to tie plans to members' claims as requested, all while knowing that the Ben Opt Code field should have been included, which would permit tying members' claims to plans;

---

[12] In *R & R Sails Inc. v. Insurance Company of Pennsylvania*, 251 F.R.D. 520 (S.D. Cal. 2008), the plaintiff requested daily activity logs from defendant as part of discovery. Defendant represented to plaintiff on numerous occasions that no such logs existed. *Id*. at 524-25. Those records were subsequently provided to plaintiffs the day before a deposition. The magistrate ordered defendant to pay monetary sanctions and recommended that defendant should be precluded from "relying on or introducing any documents, testimony, or expert witness' testimony which relies on documents or electronically-stored information that was requested by Plaintiff, but was not produced [at that point]." *Id*. at 528-529.

3. On September 18, 2019, Cigna initially "supplemented" its earlier, false interrogatory responses and generically referenced "benefit plan options," but *still* did not disclose that the "PLAN_OF_BEN" field in the claims data could be linked to the Ben Opt Code in DST Reports and Cigna *still* "direct[ed] Plaintiffs" under Rule 33(d) to use the allegedly defective DST Reports without the Ben Opt Codes;

4. Despite repeated discovery requests and many meet and confer sessions, Cigna continually maintained that it had produced "all of the relevant data fields" in the DST Reports and that the claims data "included all available fields that are relevant for purposes of this case," and it continued to rely on Rule 33(d) and the materially defective DST Reports;

5. During all of this, Cigna sat and waited for Plaintiffs to file their class certification materials;

6. *After* Plaintiffs filed their class certification materials, Cigna finally revealed the truth in a "supplemental" interrogatory response and in deposition testimony.  As Plaintiffs had believed all along, Cigna admitted that it "can determine whether each prescription drug transaction made by a participant in a plan insured or administered by [Cigna] was adjudicated to a particular benefit plan."

7. After "direct[ing] Plaintiffs" to use the DST Reports under Rule 33(d) to tie claims to plans since early 2019, Cigna now argues that the Reports are materially deficient for that very purpose and its seeks to defeat class certification and exclude Plaintiffs' expert because he relied on the DST Reports in tying claims to plans.

Cigna's conduct is an affront to federal civil procedure.  Federal civil discovery is not a game of cat-and-mouse wherein a party can stake out a position for purposes of discovery and

then, after the other party moves for class certification, abruptly reverse course. Cigna cannot in good faith refuse to answer interrogatories substantively, but instead invoke Rule 33(d) and "direct[] Plaintiffs" to DST Reports to tie claims to plan language and then defeat class certification by arguing that the DST Reports are deficient for that very purpose.

### 2.    The Accumulator Data

The same holds true with regard to accumulator data. In February 2019, Cigna represented: (1) that it had produced "***all available fields that are relevant for the purpose of this case***" and (2) that it did not possess data tracking deductible accumulations. Cigna cannot now in good faith argue that a class cannot be certified or that Mr. Mustoe should be excluded because he did not use in his methodology accumulator data that Cigna represented was not relevant, denied existed, and did not produce.[13]

For these reasons, Plaintiffs request that the Court

- strike Cigna's arguments and evidence, including the Report of Cigna's expert Dr. May, now and for all future proceedings, that Plaintiffs should have considered deductibles and out-of-pocket maximums.

## IV.    CONCLUSION

For the foregoing reasons, the Court should :

With regard to DST Reports:

- strike all of Cigna's arguments and evidence, including the Report of Cigna's expert, Dr. May, now and for all future proceedings, related to Plaintiffs' use of the DST Reports and supposed shortcomings of the DST Reports;

---

[13] Plaintiffs maintain that this data is irrelevant given that Plaintiffs calculate damages on a transaction-by-transaction basis. *See* Plaintiffs' Reply Memorandum in Further Support of Class Certification filed herewith at Part II.G.1. Cigna presumably agreed throughout the early part of this case as well, which is why it said that it had produced all relevant information. Indeed, at least with respect to damages data, it appears that Cigna told the truth in discovery. But, perhaps forgetting what it told Plaintiffs earlier in the case, Cigna changed course when it presumably figured out that with the absence of accumulator information, there was an argument it could gin up to oppose class certification.

- •    or alternatively, order Cigna to answer the previously propounded interrogatories requesting it to link claims to specific plans, rather than place that burden on Plaintiffs under Rule 33(d).

With Regard to Accumulator Data:

- •    strike Cigna's arguments and evidence, including the Report of Cigna's expert, Dr. May, now and for all future proceedings, that Plaintiffs should have considered deductibles and out-of-pocket maximums.

Dated: September 3, 2020          Respectfully submitted,

            *s/ Robert A. Izard*

         Robert A. Izard (ct01601)
         *Plaintiffs' Interim Co-Lead Class Counsel*
         Craig A. Raabe (ct04116)
         Seth R. Klein (ct18121)
         Christopher M. Barrett (ct30151)
         IZARD, KINDALL & RAABE, LLP
         29 South Main Street, Suite 305
         West Hartford, CT 06107
         Telephone:  860-493-6292
         Facsimile: 860-493-6290
         rizard@ikrlaw.com
         craabe@ikrlaw.com
         sklein@ikrlaw.com
         cbarrett@ikrlaw.com

         William H. Narwold (ct00133)
         *Plaintiffs' Interim Co-Lead Class Counsel*
         Mathew Jasinski, (ct27520)
         MOTLEY RICE LLC
         One Corporate Center
         20 Church Street, 17th Floor
         Hartford, CT 06103
         Telephone:  860-882-1681
         Facsimile:   860-882-1682
         bnarwold@motleyrice.com
         mjasinski@motleyrice.com

         Meghan S. Oliver, *pro hac vice*
         Charlotte Loper, *pro hac vice*
         MOTLEY RICE LLC

28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com

Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402

- 30 -

Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:  516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200

- 31 -

Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:   612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs