# EXHIBIT L

**Filed Under Seal**

# EXHIBIT M

**Filed Under Seal**

# EXHIBIT N

**Interrogatories Relating to Plaintiffs' Alternative Request for Relief**

| Interrogatory Number | Interrogatory Request |
|---|---|
| Plaintiff's Fourth Set of Interrogatories: Interrogatory No. 2 | Identify, by claim number (i.e., CLM_NUM), each transaction in the prescription drug transaction data produced by Cigna on January 20, 2019 that was pursuant to a plan containing the sentence: "In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge." |
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 1 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies." |
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 2 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drug Products." |
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 3 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "As applicable, your Deductible or Coinsurance payment will be based on the Plan's Prescription Drug Charge when the Pharmacy is a Network Pharmacy[, and the Usual and Customary Charge when the Pharmacy is a non-Network Pharmacy]." |

| | |
|---|---|
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 4 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "To receive Prescription Drug Benefits, you and your Dependents may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products." |
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 5 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "After satisfying the plan Deductible, if any, your responsibility for a covered Prescription Drug Product will always be the lowest of: <br><br> the Copayment or Coinsurance for the Prescription Drug Product; <br><br> or the Prescription Drug Charge for the Prescription Drug Product; <br><br> or the Pharmacy's Usual and Customary (U&C) charge for the Prescription Drug Product." |
| Plaintiffs' Fifth Set of Interrogatories: Interrogatory No. 6 | Identify, by claim number (i.e., CLM_NUM), each copayment and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing the following provision: "You are not entitled to the difference between the rate Cigna charges to the Plan and the rate Cigna pays to the Pharmacy for a Prescription Drug Product. For the purposes of Prescription Drug benefit payments, the "Plan" is the entity or business unit responsible for funding benefits in accordance with the terms and conditions outlined in this booklet/certificate." |
| Plaintiffs' Ninth Set of Interrogatories: Interrogatory No. 1 | "Identify, by claim number (i.e., CLM-NUM), each transaction in the prescription drug transaction data produced by Cigna pursuant to a plan document in which the |

| | language quoted in Requests 1-5 of Plaintiffs' Fifth Request for Production of Documents was removed or changed. In other words, identify the claims where the language quoted in Requests 1-5 of the Fifth Request was no longer in force." |
|---|---|

# EXHIBIT O

# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

May 1, 2020

**VIA ELECTRONIC MAIL**

Robert A. Izard, Esq.
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
rizard@ikrlaw.com

Re:     _Negron, et al. v. Cigna Corporation, et al._, No. 3:16-cv-1702 (JAM)

Dear Bob:

I write in response to your April 22, 2020 letter, in which Plaintiffs assert alleged deficiencies in certain of Cigna's discovery responses which were served more than six months ago, back in September 2019.  Plaintiffs take issue with both the content of Cigna's answers as well as Cigna's invocation of Rule 33(d) in those answers as a further source of information apparently sought by the interrogatories.

We note that Plaintiffs have repeatedly misrepresented the content and import of Cigna's answers to these interrogatories throughout the past several months, including in Plaintiffs' motion for class certification, the declaration of Plaintiffs' expert Launce Mustoe, and in your April 22nd letter, among others.  Cigna believes that its prior responses to the interrogatories in question (Interrogatory 2 of Plaintiffs' 4th Set and Interrogatories 1 through 6 of Plaintiffs' 5th Set) were appropriate.  Plaintiffs' dissatisfaction with Cigna's answers stems primarily from (1) flaws in the way the interrogatories were drafted, or in assumptions you made in drafting them; and (2) the fact that the answers Cigna properly gave do not support the flawed fiduciary duty theories Plaintiffs want to advance.

That being said, and given that Plaintiffs continue to struggle with understanding Cigna's answers to these Interrogatories, we are willing to further supplement our response to Interrogatory 2 of Plaintiffs' 4th Set and Interrogatories 1 through 6 of Plaintiffs' 5th Set in an effort further clarify them.  We will endeavor to do so within two weeks.  Given that Plaintiffs have had Cigna's responses since September, and due to the continuing challenges of stay-at-home orders and the COVID-19 pandemic, we believe that timing is more than reasonable under the circumstances.

In light of our willingness to further supplement our responses, I will not bother debating the legal positions or correcting the factual and other misstatements in your April 22nd letter.  To be clear, Cigna does not agree with Plaintiffs' positions.  Should our supplemental responses not resolve or

**Morgan, Lewis & Bockius** LLP

1701 Market Street
Philadelphia, PA  19103-2921
United States

☎ +1.215.963.5000
🖶 +1.215.963.5001

Robert A. Izard, Esq.
May 1, 2020
Page 2

significantly narrow the parties' disagreements, we will be prepared to discuss the applicable legal principles regarding Plaintiffs' discovery requests in the context of those supplemental responses.

Sincerely,

Brian W. Shaffer

BWS/hs

# EXHIBIT P

**Filed Under Seal**

# EXHIBIT Q

**Filed Under Seal**

# EXHIBIT R

**Filed Under Seal**

# EXHIBIT S

## Filed Under Seal

# EXHIBIT T

**Filed Under Seal**

# EXHIBIT U

**Filed Under Seal**

# EXHIBIT V

**Filed Under Seal**

# EXHIBIT W

**Filed Under Seal**

# EXHIBIT X

**Filed Under Seal**

# EXHIBIT Y

**Filed Under Seal**

# EXHIBIT Z

## Filed Under Seal

# EXHIBIT AA

## Your Payments

Coverage for Prescription Drugs and Related Supplies purchased at a Pharmacy is subject to the Copayment or Coinsurance shown in the Schedule, after you have satisfied your Prescription Drug Deductible, if applicable. Please refer to the Schedule for any required Copayments, Coinsurance, Deductibles or Maximums if applicable.

When a treatment regimen contains more than one type of Prescription Drugs which are packaged together for your, or your Dependent's convenience, a Copayment will apply to each Prescription Drug.

When a treatment regimen contains more than one type of Prescription Drugs which are packaged together for your convenience, a Copayment will apply to each Prescription Drug.

In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge. Usual & Customary (U&C) means the established Pharmacy retail cash price, less all applicable customer discounts that Pharmacy usually applies to its customers regardless of the customer's payment source.

HC-PHR3                                                        04-10
                                                               V4

EXHIBIT

0167

# EXHIBIT AB

## Your Payments

Covered Prescription Drug Products purchased at a Pharmacy are subject to any applicable Deductible, Copayments or Coinsurance shown in The Schedule. Please refer to The Schedule for any required Copayments, Coinsurance, Deductibles or Out-of-Pocket Maximums.

After satisfying the plan Deductible, if any, your responsibility for a covered Prescription Drug Product will always be the lowest of:

- the Copayment or Coinsurance for the Prescription Drug Product; or

- the Prescription Drug Charge for the Prescription Drug Product; or

- the Pharmacy's Usual and Customary (U&C) Charge for the Prescription Drug Product.

HC-PHR138                                     10-16
                                              ET

EXHIBIT

0168

# EXHIBIT AC

**Filed Under Seal**

# EXHIBIT AD

**Filed Under Seal**

# EXHIBIT AE

This document produced in native format only

HC-PHR3V4c.doc



CIGNA00006943

## Your Payments

Coverage for Prescription Drugs and Related Supplies purchased at a Pharmacy is subject to the Copayment or Coinsurance shown in the Schedule, after you have satisfied your Prescription Drug Deductible, if applicable. Please refer to the Schedule for any required Copayments, Coinsurance, Deductibles or Maximums if applicable.

When a treatment regimen contains more than one type of Prescription Drugs which are packaged together for your, or your Dependent's convenience, a Copayment will apply to each Prescription Drug.

In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge. Usual & Customary (U&C) means the established Pharmacy retail cash price, less all applicable customer discounts that Pharmacy usually applies to its customers regardless of the customer's payment source.

# EXHIBIT AF

**Filed Under Seal**

# EXHIBIT AG

## Filed Under Seal

# EXHIBIT AH

**Filed Under Seal**

# EXHIBIT AI

**Filed Under Seal**

# EXHIBIT AJ

**Filed Under Seal**

# EXHIBIT AK

**Filed Under Seal**

# EXHIBIT AL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al.,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                              Plaintiffs,<br><br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE<br>COMPANY, et al.<br><br>                              Defendants. | Civil No. 16-cv-1702 (JAM) |

**OBJECTIONS AND RESPONSES OF DEFENDANT CIGNA HEALTH AND
LIFE INSURANCE COMPANY TO PLAINTIFFS' NINTH SET OF
INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules

of the District of Connecticut, Defendant Cigna Health and Life Insurance Company ("CHLIC"),

by and through its undersigned counsel, hereby provides its objections and responses to

Interrogatory No. 1 of Plaintiffs' Ninth Set of Interrogatories (the "Interrogatories").[1]  CHLIC

reserves the right to supplement or amend its objections and these responses (the "Responses")

as may be necessary or appropriate in the future in accordance with Rule 26 of the Federal Rules

of Civil Procedure.

**PRELIMINARY STATEMENT**

1.      The Responses are made solely for the purpose of the Action and are not to be

used in connection with any other action.

---

[1] Cigna Corporation has been dismissed from the Action, so these Responses are made by and on behalf of CHLIC only.

2.      The Responses reflect CHLIC's knowledge, information, and belief as of this date. CHLIC may engage in further investigation, discovery, and analysis, which may lead to changes in CHLIC's Responses herein.  Such investigation and discovery are continuing, and CHLIC specifically reserves the right to supplement its Responses as necessary.

3.      No Response made herein, or lack thereof, is an admission as to the existence or non-existence of any documents, information, or the truth of any "facts" set forth or assumed in any Interrogatory and/or Request.

4.      CHLIC will make reasonable efforts to respond to every Interrogatory, to the extent the Interrogatory has not been objected to, as CHLIC understands and interprets the Interrogatory.  In the event that Plaintiffs subsequently assert an interpretation of an Interrogatory that differs from that of CHLIC, CHLIC reserves the right to amend and/or supplement its Response, but undertakes no obligation to do so.

5.      In responding to Plaintiffs' Interrogatories, CHLIC does not waive, and hereby expressly reserves, (a) its right to assert any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any information provided in response to Plaintiffs' Interrogatories; (b) its right to object on any ground to the use of the information provided in response to Plaintiffs' Interrogatories at any hearing, trial, or other point during the litigation; and (c) its right to object on any ground at any time to a demand for further responses to Plaintiffs' Interrogatories.  The objections set forth by CHLIC are without prejudice to CHLIC's right to assert additional grounds for objection, or otherwise amend its objections, should CHLIC discover additional grounds for objections.

2

## OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS

1.      CHLIC objects to Plaintiffs' instructions and definitions to the extent that they

seek to impose obligations that are inconsistent with or greater than those imposed by the Federal

Rules of Civil Procedure or the Local Rules of the District of Connecticut.

## OBJECTIONS AND RESPONSES TO
## PLAINTIFFS' NINTH SET OF INTERROGATORIES

**INTERROGATORY NO. 1:** Identify, by claim number (i.e., CLM_NUM), each transaction in
the prescription drug transaction data produced by Cigna pursuant to a plan document in which
the language quoted in Requests 1-5 of Plaintiffs' Fifth Request for Production of Documents
was removed or changed. In other words, identify the claims where the language quoted in
Requests 1-5 of the Fifth Request was no longer in force.

**RESPONSE:**

CHLIC reasserts and incorporates its Preliminary Statement as set forth above.  CHLIC

objects to this Interrogatory because Plaintiffs have already exceeded the 40 interrogatories

permitted by the Amended Stipulated Joint Case Management Plan [Docket No. 258] entered by

the Court.  Moreover, this Interrogatory references and incorporates five Requests for Production

of Documents, which themselves reference multiple plan language variations (many

unidentified), making this Interrogatory even more compound and unreasonably burdensome,

especially given that Plaintiffs have already exceeded the 40 interrogatories permitted.  CHLIC

further objects to this Interrogatory on the grounds that it is unduly burdensome, overly broad,

and seeks information that is irrelevant and not proportional to the needs of the case in the form

and format requested by Plaintiffs.  CHLIC further objects to this Interrogatory to the extent that

it seeks discovery that is equally available to Plaintiffs – in particular, CHLIC has already

produced plan and related documents and other information from a review of which certain

information sought by this Interrogatory can be ascertained.  CHLIC further objects to this

Interrogatory because the Requests that it incorporates fail to describe with reasonable

3

particularity the plan language and includes terms that are vague, ambiguous, and lack particularity, such as "any variant or portion of the language," which could be construed to encompass documents containing any of the words, terms, or phrases that are part of the identified language, and which could also be construed to encompass documents containing any "variant" of the identified language, however different from the identified language itself.  The Requests that are incorporated in this Interrogatory could therefore be interpreted in multiple and inconsistent ways.  This Interrogatory is also vague, unintelligible, and nonsensical in referring in particular to Request No. 3 of the Fifth Set of Requests for Production of Documents because that Request identifies the entire "Your Payments" section of plan documents and not any specific plan language other than by reference to plan provision codes.  CHLIC objects to this Request to the extent that it seeks discovery relating to a period of time that is overly broad and/or encompasses dates irrelevant to this action as it does not identify any specific time period.

Subject to and without waiving these objections, CHLIC responds as follows:  After reasonable investigation, CHLIC does not maintain the information requested in this Interrogatory in the form and format requested by Plaintiffs, i.e., a listing or other compilation by "claim number (i.e., CLM_NUM), each transaction in the prescription drug transaction data produced by Cigna" where the participant's plan no longer contains the particular part of a sentence in plan provisions, or the entirety of a plan section (e.g., the "Your Payments" provision), and variations thereof, that Plaintiffs quote or reference in Requests 1-5 of Plaintiffs' Fifth Request for Production of Documents.  CHLIC can, however, link specific prescription drug transactions to specific plan language.  In other words, CHLIC can identify which plan document governs a particular prescription drug transaction using various data sources and

documents in order to determine as to particular participants' transactions whether specific plan language was or was not "in force."

Certain information sought by this Interrogatory – namely prescription drug transactions for plan participants on group plans insured or administered by CHLIC – can be found in the prescription drug transaction data produced by CHLIC, including, but not limited to, the fields MBR_NO (Member number), CLM_NUM (Claim Number), RX_ACCT_NUM (Cigna account number), FILL_DT (Date the pharmacy filled the prescription), PLAN_OF_BEN (Plan of benefit). The burden of locating and identifying such information is the same for Plaintiffs as CHLIC, and CHLIC thus directs Plaintiffs to this transaction data pursuant to Federal Rule of Civil Procedure 33(d).

Certain other information sought by this Interrogatory – namely which plan documents do not contain the phrase selected by Plaintiffs in the Requests incorporated in this Interrogatory – can be ascertained from the plan documents produced by CHLIC. The burden of locating and identifying such information is the same for Plaintiffs as CHLIC, and CHLIC thus directs Plaintiffs to the plan documents pursuant to Federal Rule of Civil Procedure 33(d).

By way of further response, and for purposes of clarification, CHLIC can determine whether each prescription drug transaction made by a participant in a plan insured or administered by CHLIC was adjudicated pursuant to a particular benefit plan. In general, a CHLIC client (i.e., benefit plan sponsor) selects the prescription drug benefits it chooses to offer its plan participants, including but not limited to plan features such as cost-share logic, copayment amounts, coinsurance amounts, deductible amounts, and many more. CHLIC's sales and business implementation teams interact with the client to confirm the client's intent regarding the benefits that the client selected, to obtain the client's approval that the selected

5

benefits are correct, and to complete the process to load the client's benefit selections into CHLIC's systems.

For clients on Proclaim, once CHLIC obtains client approval (i.e., the client verifies that the selected benefits are correct), the client's benefit selections are loaded into CHLIC's ePro system. CHLIC uses the benefit information in ePro to generate a sample plan booklet for each benefit plan option the client intends to offer to its participants. The sample plan booklet therefore contains plan language based on the client's benefit selections. The ultimate decision whether to use the sample plan booklet with its beneficiaries is the client's choice, not CHLIC's. Certain identifying information – namely plan benefit options, certificate IDs, and finalized plan documents – is then available in a Member Materials database for each benefit plan option for the particular client.

CHLIC's installation team configures the ePro information with the client's selected plan design, which CHLIC's quality team then reviews. CHLIC takes the information from ePro and configures coding so that prescription drug transactions for that plan will be adjudicated according to the plan terms and associated adjudication logic. CHLIC then sends the configuration to its vendor, DST Pharmacy Solutions (formerly Argus Health Systems, Inc. or "Argus."). In its role as claims administrator, CHLIC interprets and applies the terms of the applicable plans in adjudicating prescription drug transactions.

With respect to the part of this Interrogatory that asks about a particular sentence in plan documents, CHLIC responds that the benefit design and related plan document information for a particular participant are input into CHLIC's Central Eligibility Database ("CED"). Using that identifying information, along with the information in Member Materials, CHLIC is able to trace a particular participant's benefit plan selection to the specific benefit plan and, in turn, plan

documents that govern the prescription drug benefit for any particular transaction. CHLIC's prescription drug transaction data includes a field ("PLAN_OF_BEN") that is associated with the benefit options reflected in the CED for the participant and Member Materials for the plan sponsor.

Thus, CHLIC is able to confirm whether a particular transaction – by claim number (i.e., CLM_NUM) – in the prescription drug transaction data produced by CHLIC was pursuant to a plan and all of its plan terms in effect, or not, at the time of the particular transaction. However, this is a manual process to review information across several data sources and documents. It has not been performed, and it would be unduly burdensome, costly and time-consuming to perform, for each of the millions of prescription drug transactions in the data produced by CHLIC to confirm which ones were adjudicated pursuant to plan language that is identified or referenced in Plaintiffs' Fifth Set of Requests and then are different from the language referenced in those Requests, especially given that the language identified or referenced the Requests are not uniformly updated to different plan language. Stated otherwise, this requires a manual review of plan documents for each client and related information from these data sources to be able to identify which "CLM_NUMs" in the transaction data were pursuant to plan language that is different than the sentence(s) identified or referenced in the Requests.[2]

To see how this confirmation process can be accomplished for specific language, one could select an account number from the transaction data that CHLIC produced. For example, CHLIC can search the Member Materials database using Hampton Affiliates' account number (3335031). This information shows the plan and plan-related documents for Hampton, including

---

[2] With respect to Request No. 3 of the Fifth Request for Production of Documents that asks about the "Your Payments" provision, some plans have not removed this provision even though the content of that provision has changed over time.

7

the document identifier (e.g., "Certificate ID") including the effective dates. CHLIC could select the 2017 Hampton plan, for instance, which has a Certificate ID of ASO4. The "Details" tab for each plan and plan-related document shows which "Certificate ID" (or other document identifier) corresponds to which benefit option ("Benopt/Policy Codes"). Using the "Details" tab for ASO4, the benefit option code for this plan booklet is "OAP1." From the "Details" tab and the main view of Member Materials, CHLIC can view the plan document ("ViewPDF").

This is the Hampton Affiliates (Account Number 3335031) ASO4 plan document effective January 1, 2017. This plan document was produced at CIGNA02987206. In reviewing this document, one can confirm that it has one of the excerpted phrases that Plaintiffs included in Document Request No. 1 of Plaintiffs' Fifth Set of Document Requests: "[Y]ou or your Dependents may be required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies." (*See* CIGNA02987239).

Next, CHLIC can select the Hampton Affiliates (Account Number 3335031) ASO5 plan document effective January 1, 2018. Using the "Details" tab for ASO5, the benefit option code for this plan booklet is "OAP1," which is the same as ASO4. From the "Details" tab and the main view of Member Materials, CHLIC can view the plan document ("ViewPDF"). This is the Hampton Affiliates (Account Number 3335031) ASO5 plan document effective January 1, 2018. This plan document was produced at CIGNA02986856. In reviewing this plan document, one can confirm that the excerpted phrases that Plaintiffs included in Document Request No. 1 of Plaintiffs' Fifth Set of Document Requests is not in this Hampton plan with the same benefit option code. One can then use the RX_ACCT_NUM (Cigna account number), FILL_DT (Date the pharmacy filled the prescription), PLAN_OF_BEN (Plan of benefit) fields to identify

8

"CLM_NUMs" in the data produced by CHLIC for this plan year (2018) that did not have the

phrase identified in Request No. 1.

Dated:  June 18, 2020

/s/ Eleanor R. Farrell

Michael D. Blanchard (ct25891)
Morgan, Lewis & Bockius LLP
One State Street
Hartford, CT  06103
Telephone:  +1.860.240.2731
Facsimile:  +1.860.240.2800
michael.blanchard@morganlewis.com

Brian W. Shaffer (*pro hac vice*)
Eleanor R. Farrell (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  +1.215.963.5000
Facsimile: +1.215.963.5001
brian.shaffer@morganlewis.com
eleanor.farrell@morganlewis.com

*Attorneys for Defendant Cigna Health
and Life Insurance Company*

## <u>VERIFICATION</u>

I, _____Tyler Lester_____, am authorized to make this verification on behalf of Cigna Health and Life Insurance Company and hereby verify under penalty of perjury that the factual statements set forth in Defendant Cigna Health and Life Insurance Company's Responses to Plaintiffs' Ninth Set of Interrogatories are true and correct to the best of my knowledge, information, and belief, or based on information or documents provided to and/or obtained by me in the performance of my duties.

Dated: ____June 18_____, 2020                    _____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2020, a copy of the foregoing Objections and Responses of Defendant Cigna Health and Life Insurance Company to Plaintiffs' Ninth Set of Interrogatories was served via electronic mail on all counsel of record.

*/s/ Eleanor R. Farrell*
Eleanor R. Farrell

# EXHIBIT AM

## Filed Under Seal

# EXHIBIT AN

**Filed Under Seal**

# EXHIBIT AO

**Filed Under Seal**

# EXHIBIT AP

**Filed Under Seal**

# EXHIBIT AQ

**Unknown**

**From:** NCPA Executive Update <executive.update@ncpanet.org>
**Sent:** Friday, May 13, 2016 1:11 PM
**To:** wayne.boese@rxaap.com
**Subject:** Just When I Thought I Had Seen It All... | NCPA Executive Update | May 13, 2016



**May 13, 2016**

## Just When I Thought I Had Seen It All...

Dear Colleague,

Each year in May, I think about the thousands of pharmacy students graduating this month and that reminds me of my own graduation—now 24 years ago. I've been in and around pharmacy for almost 35 years and just when I thought I had seen everything, a New Orleans investigative reporter has shown me—nope, you can still be shocked.



Lee Zurik, an award-winning investigative reporter for Fox 8 TV news in New Orleans has done a series of stories over the past week on PBM consumer copay clawbacks. Be more specific, you might say, since PBMs claw back money from pharmacies in a variety of ways. Zurik's investigation has focused on the practices of the PBM charging the patient a copay, paying the pharmacy a miserly low fee, and then clawing back the rest of the copay the patient paid. Here's the math using an example from the segment:

Medication cost   $4.92

Pharmacy fee   $1.75

Patent copay   $11.67

Amount paid   ($5.00)

The PBM "clawed back" $5 by charging a copay $5 higher than what the PBM paid the pharmacy and later, taking the $5 back from the pharmacy. Another way of looking at it is that the consumer is charged more than what the pharmacy is paid. The pharmacy is used as a collection agency for the PBM.

It's outrageous PBM behavior and it's not new. It has become more prominent though in recent years. We sent letters to Optum and Catamaran complaining about the copay

1

clawbacks and their MAC lists which were resulting in below pharmacy cost payments at a much higher rate than other PBMs. We also talked with CMS and members of Congress. However, the vast majority of examples of consumer copay clawbacks have taken place outside of government programs.

The news segments from Fox 8 New Orleans have been excellent in the way they have plainly described the practice and how patients and pharmacists are affected. Note that the identity of the pharmacist is obscured and his voice altered—like a "60 Minutes" interview with an undercover agent—to shield his identity because of fear of PBM retaliation. Sad.

Zurik, the investigative reporter, has a long list of awards recognizing his work. They include: two Peabody Awards, three DuPont Silver Batons, five National Edward R. Murrow Awards, the IRE Medal, two IRE Certificates, three Sigma Delta Chi Awards, a National Headliner, and the Gannett Award for Digital Innovation in Watchdog Journalism.

Most of the content from the segments won't surprise community pharmacists, but one statement from an Optum spokesman made my jaw drop.

"OptumRx's Pharmacy Reimbursement Overpayment Program helps ensure the millions of people we serve have affordable access to the drugs they need."

Let's dissect the absurdity of this statement a little more. In the example mentioned above, out of the $11.67 that the patient paid, the pharmacist was paid $4.92 to cover the cost of the medication plus a $1.75 dispensing fee. Where did any "overpayment" occur? In the buck seventy-five dispensing fee? UnitedHealth, the parent of OptumRx, paid $12.8 billion for Catamaran just last year, which is probably a better indicator of where Optum's pharmacy "overpayments" are really going.

So what could fix this problem? One of the segments includes an interview with Sen. Bill Cassidy (R-La.), a physician who expresses shock over the practice. See for yourself. Normally, I prefer the government stay out of legitimate business relationships but, unfortunately, the relationship between PBMs and retail pharmacies is a one-sided power grab. Federal legislation such as H.R. 244, the MAC Transparency bill, is needed. On the DIR front, NCPA continues to lead community pharmacy's advocacy in urging CMS to finalize the DIR Rule and enforce the new MAC regulations in Part D.

Louisiana's state insurance commissioner, Jim Donelon, is also interviewed in one of the segments and expresses his concern over this practice. NCPA recently submitted comments and testified to the National Association of Insurance Commissioners on its Health Carrier Prescription Drug Benefit Management Model Act.

Kudos to the Louisiana Independent Pharmacies Association (LIPA) for its work in the series. LIPA's Executive Director, Randal Johnson, is interviewed in the first segment.

These segments are part of a busy week for community pharmacy in trying to level the playing field. In Oklahoma, Gov. Mary Fallin signed a bill that improves transparency legislation passed two years ago. Judging by how hard the PBMs fought against the legislation, it must have hit a nerve. Missouri also passed MAC legislation which, considering Express Scripts is one of the largest corporations in the state, is noteworthy.

The WVUE Fox 8 series on consumer copay clawbacks is one to remember. In the opening, Zurik asks an 11-year old what is the definition of a "copay". She did a good

2

AAP0050

job defining what it *should* mean. Unfortunately, in the PBM's dictionary, copay sometimes means "*full* pay—and then some".

Best,



P.S. - Consider sharing these stories on your social media accounts to spread the word about these PBM abuses. We've added the first and second stories on our Facebook page, Twitter account, and Google+ page.

---

**STAY CONNECTED**

   

**Note: This message was distributed from an email account used for sending messages only. The inbox associated with this email account is unattended. Please do not reply to this message.**

*NCPA Executive Update delivers insights on legislative, regulatory, policy, and industry developments from NCPA CEO B. Douglas Hoey, Pharmacist, MBA, to NCPA members and pharmacy leaders every Friday. We welcome your comments at* info@ncpanet.org.

To unsubscribe from promotional emails and surveys but continue to receive important updates about community pharmacy issues, click here to manage your subscription preferences.

To unsubscribe from all NCPA emails, including alerts on developments impacting community pharmacies, click here.

Copyright © National Community Pharmacists Association. All Rights Reserved.

AAP0051

# EXHIBIT AR

## Filed Under Seal

# EXHIBIT AS

**Filed Under Seal**

# EXHIBIT AT

**Filed Under Seal**

# EXHIBIT AU

**Filed Under Seal**

# EXHIBIT AV

**Filed Under Seal**

# EXHIBIT AW



Deposition of:

# Roger Curol

*May 12, 2020*

In the Matter of:

# Negron, Kimberly et al.v. Cigna Corporation et al.

Veritext Legal Solutions

888.777.6690 | cs-midatlantic@veritext.com | 215-241-1000

Page 114

1          A.   Yes, ma'am.  I had a -- I had a

2     coupon for that medication at that time that

3     the doctor gave me a coupon to present to the

4     pharmacy.  And it's like some of the medicine

5     that I got now, I got a zero co-pay.

6          Q.   Now, there are several transactions

7     on this document that are earlier on in the

8     year that are for the same drug, primarily

9     where you paid zero dollars for the co-pay.

10              Is that because you were using a

11    coupon in those instances, as well?

12         A.   Yes, ma'am.

13         Q.   And so you did not pay anything for

14    those prescriptions; right?

15         A.   No, ma'am, not to my knowledge, I

16    don't recall.  But I do remember taking the

17    medication and having a card through that

18    medication through the pharmac -- through the

19    provider, whoever made the prescription, the

20    medication, they gave a little coupon and we

21    did the survey and they asked you if you had

22    insurance, yes.

23              If you have Medicaid or anything

24    like that, no.  And then it tells you if you

# EXHIBIT AX



Deposition of:
# Billy Ray Blocker , Jr.

*May 12, 2020*

In the Matter of:

# Negron, Kimberly et al.v. Cigna Corporation et al.

Veritext Legal Solutions
888.777.6690 | cs-midatlantic@veritext.com  | 215-241-1000

BILLY RAY BLOCKER

Page 106

1          A.     Yes.

2          Q.     -- for November 5 of 2014, that

3    shows that the pharmacist didn't put that

4    through on your insurance.  Correct?

5          A.     It seems like there would be

6    zero amount under insurance allowance, yes.

7          Q.     Well, it also says under

8    "Insurer(s) 1st/2nd" it shows "CASH."

9    Correct?

10         A.     I'm not sure where you're

11   saying, I'm sorry, sir.

12         Q.     That's okay.  You're looking at

13   November 5, 2014.  Right?

14         A.     Yes, sir.

15         Q.     If you look across, you see the

16   lisinopril?

17         A.     Yes.

18         Q.     And then you see an NDC number

19   that starts with 681?

20         A.     Okay.  90-day supply on, okay,

21   the 5th, November 5, 2014.

22         Q.     Yes.

23         A.     681.  Yes, I see it.

24         Q.     And then after that you see

BILLY RAY BLOCKER

Page 107

1    quantity 90.  Right?

2              A.    Correct.

3              Q.    And then next to that you see

4    days supply 90?

5              A.    Yes.

6              Q.    And then it says Samuel Gilbert?

7              A.    Yes, he's my physician.

8              Q.    And right next to that it says

9    cash?

10             A.    Right.  I see that.

11             Q.    And that indicates to you that

12   the pharmacist didn't put this through on your

13   insurance.  Correct?

14             A.    Yes.

15             Q.    And then it says patient

16   responsibility over on the side $10.  Correct?

17             A.    Yes.

18             Q.    And do you know who is the one

19   who communicated to you that you needed to pay

20   $10 for that prescription?

21             A.    It would have been the

22   pharmacist there, I would have paid him.

23             Q.    Do you know how the pharmacist

24   determined that the price for that

BILLY RAY BLOCKER

Page 143

1     some of these claims?

2          A.    Okay. I see two there, yes,

3     right in the middle. Two.

4          Q.    Two in the middle and then if

5     you look further down there is even more?

6          A.    Okay. Yes, sir, I see them.

7          Q.    Do you know what United Networks

8     of America is?

9          A.    No, sir.

10          Q.    Did you have a conversation with

11     the pharmacist about putting your claims in

12     through under United Networks of America?

13          A.    They may have told me at one

14     time, this might be or this is what I assumed

15     it was, was a card that gave discounts that

16     was available. I do remember asking if that

17     was okay to do. They said it was. I do

18     believe that is one of the cards they had on

19     file, like the temporary -- somehow like an Rx

20     coupon or something like that.

21          Q.    Got it. Another kind of

22     discount card?

23          A.    That's what I understood it to

24     be.

BILLY RAY BLOCKER

Page 144

1          Q.      What about MedImpact?  That
2     appears five or six up from the bottom.
3          A.      No, I don't know for sure what
4     that is.
5          Q.      Do you have any idea what it is?
6          A.      My guess is that it's another
7     card they ran it through to get a discount.
8          Q.      Now, the last charge on here is
9     the March 3, 2018, lisinopril.
10          A.      On page 3?
11          Q.      Correct.
12          A.      March.
13          Q.      Three.
14          A.      Yes, '18.  Yes.  I got it here,
15     yes.
16          Q.      And that lisinopril, again,
17     shows up as cash.  Correct?
18          A.      Yes.
19          Q.      So the pharmacist decided not to
20     put that through on the Cigna insurance?
21          A.      Yes, sir.
22          Q.      They decided not to do that one
23     through United Networks of America?
24          A.      Evidently, yes.

# EXHIBIT AY

**Filed Under Seal**

# EXHIBIT AZ

**Filed Under Seal**

# EXHIBIT BA

**Filed Under Seal**

# EXHIBIT BB

**Filed Under Seal**

# EXHIBIT BC

**Filed Under Seal**

# EXHIBIT BD

**Filed Under Seal**

# EXHIBIT BE

**Filed Under Seal**

# EXHIBIT BF



IZARD
KINDALL
&RAABE
LLP

Robert A. Izard
rizard@ikrlaw.com

May 11, 2020

*Via email*
Brian Shaffer
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103-2921

Re:  *Negron v. Cigna Health & Life Insurance*, No. 3:16-cv-1702 (D. Conn.)

Dear Brian,

I write to advise you that Plaintiffs intend to revise their class definitions to be consistent with
their positions that they are not pursuing claims for plans on Facets and are not pursuing certain
claims for plans that have a definition for the term "prescription drug charge."

First, Plaintiffs notified Defendants in 2019 that they are not pursuing claims for plans on Facets
(*see* Shaffer July 22, 2019 Letter) and thus are not looking to certify any classes of participants in
plans on Facets. Although the Classes (*i.e.*, ERISA Class, State Law Class, and RICO Class)
were intended to comprise only participants in plans on Proclaim, we now realize that the
definitions technically include some plans on Facets. *See, e.g.*, the Curols 2016 plan.
Specifically, the Classes are defined, in relevant part, as individuals "who purchased prescription
drugs pursuant to such plans or policies that provided that a member 'may be required to pay a
portion of Covered Expenses.'" Because this phrase is found in both Proclaim and Facets plans,
Plaintiffs intend to revise the definitions to also include the relevant language from the Covered
Expenses section that is found in the Proclaim plans but not the Facets plans. The relevant
"Covered Expenses" language describes such expenses as "expenses for charges made by a
Pharmacy."

Second, as explained in Plaintiffs' motion for class certification, participants with plans that
contain a definition for the term "prescription drug charge" are not part of the Classes (with
respect to deductible payments) or the Subclasses. Plaintiffs intend to revise the definitions to
further specify this limitation on the Classes.

Sincerely,

s/ Robert A. Izard

# EXHIBIT BG

**Filed Under Seal**

# EXHIBIT BH

**Filed Under Seal**

# EXHIBIT BI

**Filed Under Seal**

# EXHIBIT BJ

**Filed Under Seal**

# EXHIBIT BK

**Filed Under Seal**

# EXHIBIT BL

**Filed Under Seal**

# EXHIBIT BM

**Filed Under Seal**

# EXHIBIT BN

## Your Payments

Coverage for Prescription Drugs and Related Supplies purchased at a Pharmacy is subject to the Copayment or Coinsurance shown in the Schedule, after you have satisfied your Prescription Drug Deductible, if applicable. Please refer to the Schedule for any required Copayments, Coinsurance, Deductibles or Maximums if applicable.

When a treatment regimen contains more than one type of Prescription Drugs which are packaged together for your, or your Dependent's convenience, a Copayment will apply to each Prescription Drug.

In no event will the Copayment (and any additional costs required by this plan for the Prescription Drug or Related Supply) or the Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan or the Pharmacy's Usual and Customary (U&C) charge. Usual & Customary (U&C) means the established Pharmacy retail cash price, less all applicable customer discounts that Pharmacy usually applies to its customers, regardless of the customer's payment source.

EXHIBIT

0155

# EXHIBIT BO

**Filed Under Seal**

# EXHIBIT BP

**Filed Under Seal**

# EXHIBIT BQ

**Filed Under Seal**

# EXHIBIT BR

**Filed Under Seal**

# EXHIBIT BS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | Civil No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | February 27, 2020 |
| Defendants. | |

## OBJECTIONS AND RESPONSES OF DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY TO PLAINTIFFS' SEVENTH SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Connecticut, Defendant Cigna Health and Life Insurance Company ("CHLIC"), by and through its undersigned counsel, hereby provides its objections and responses to Interrogatory No. 1 of Plaintiffs' Seventh Set of Interrogatories (the "Interrogatories").[1] CHLIC reserves the right to supplement or amend its objections and these responses (the "Responses") as may be necessary or appropriate in the future in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

1.    The Responses are made solely for the purpose of the Action and are not to be used in connection with any other action.

---

[1] Cigna Corporation has been dismissed from the Action, so these Responses are made by and on behalf of CHLIC only.

2.      The Responses reflect CHLIC's knowledge, information, and belief as of this date. CHLIC may engage in further investigation, discovery, and analysis, which may lead to changes in CHLIC's Responses herein. Such investigation and discovery are continuing, and CHLIC specifically reserves the right to supplement its Responses as necessary.

3.      No Response made herein, or lack thereof, is an admission as to the existence or non-existence of any documents, information, or the truth of any "facts" set forth or assumed in any Interrogatory and/or Request.

4.      CHLIC will make reasonable efforts to respond to every Interrogatory, to the extent the Interrogatory has not been objected to, as CHLIC understands and interprets the Interrogatory. In the event that Plaintiffs subsequently assert an interpretation of an Interrogatory that differs from that of CHLIC, CHLIC reserves the right to amend and/or supplement its Response, but undertakes no obligation to do so.

5.      In responding to Plaintiffs' Interrogatories, CHLIC does not waive, and hereby expressly reserves, (a) its right to assert any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any information provided in response to Plaintiffs' Interrogatories; (b) its right to object on any ground to the use of the information provided in response to Plaintiffs' Interrogatories at any hearing, trial, or other point during the litigation; and (c) its right to object on any ground at any time to a demand for further responses to Plaintiffs' Interrogatories. The objections set forth by CHLIC are without prejudice to CHLIC's right to assert additional grounds for objection, or otherwise amend its objections, should CHLIC discover additional grounds for objections.

**OBJECTIONS AND RESPONSES TO**
**PLAINTIFFS' SEVENTH SET OF INTERROGATORIES**

**Interrogatory No. 1:** For each item listed in the three DST reports listing documents containing the phrases "exceed the amount paid by the plan to the pharmacy," "incurs expenses for charges made by a Pharmacy," and "required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies" that has a "T/FI" funding arrangement: disclose whether or not the respective plan is subject to the Employee Retirement Income Security Act of 1974.

**RESPONSE:**

CHLIC reasserts and incorporates its Preliminary Statement as set forth above. CHLIC objects to this Interrogatory because Plaintiffs have already exceeded the 40 interrogatories permitted by the Amended Stipulated Joint Case Management Plan [Docket No. 192] entered by the Court. CHLIC further objects to this Interrogatory on the ground that it is unduly burdensome and seeks information that is not proportional to the needs of the case in the form and format requested by Plaintiffs.

Subject to and without waiving these objections, CHLIC responds as follows: After reasonable investigation, CHLIC does not maintain the information requested in this Interrogatory in the ordinary course of business for tens of thousands of documents in the form and format requested by Plaintiffs. Further, to the extent that the information sought by this Interrogatory may be able to be ascertained from the prescription drug transaction data and plan-related documents that CHLIC has produced in this Action, the burden of locating and identifying such information is the same for Plaintiffs as CHLIC, and CHLIC directs Plaintiffs to those data and documents pursuant to Federal Rule of Civil Procedure 33(d). By way of further response, CHLIC maintains data that identifies whether a prescription drug transaction under a participant's plan is subject to the Employee Retirement Income Security Act of 1974. CHLIC will produce this supplemental file to use in addition to the aforementioned documents.

3

Dated:  February 27, 2020

*/s/ Eleanor R. Farrell*

Michael D. Blanchard (ct25891)
Morgan, Lewis & Bockius LLP
One State Street
Hartford, CT  06103
Telephone:  +1.860.240.2731
Facsimile:  +1.860.240.2800
michael.blanchard@morganlewis.com

Joseph J. Costello (*pro hac vice*)
Brian W. Shaffer (*pro hac vice*)
Eleanor R. Farrell (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  +1.215.963.5000
Facsimile: +1.215.963.5001
joseph.costello@morganlewis.com
brian.shaffer@morganlewis.com
eleanor.farrell@morganlewis.com

*Attorneys for Defendant Cigna Health
and Life Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2020, a copy of the foregoing Objections and Responses of Defendant Cigna Health and Life Insurance Company to Plaintiffs' Seventh Set of Interrogatories was served via electronic mail on all counsel of record.

*/s/ Eleanor R. Farrell*
Eleanor R. Farrell

**<u>VERIFICATION FORTHCOMING</u>**

# EXHIBIT BT

## Filed Under Seal

# EXHIBIT BU

**Filed Under Seal**