# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>                    Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 17, 2020 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO PLAINTIFFS' MOTION TO SEAL DOCUMENTS (ECF 316)

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

    I.      STANDARD OF REVIEW ................................................................................. 4

    II.    THE SUBJECT DOCUMENTS CONTAIN SENSITIVE AND CONFIDENTIAL INFORMATION APPROPRIATE FOR SEALING IN LIGHT OF THE COURT'S PRIOR SEALING ORDERS. ................................................................ 5

          A.    CHLIC Maintains the Confidentiality of the Subject Documents. ............. 5

          B.    The Court Should Seal in Full Materials Containing Sensitive Financial and Pricing Information (Exhibits BK and BJ). ........................................... 5

          C.    The Court Should Seal in Full Additional Administrative Agreements Between CHLIC and Plan Sponsor Clients (Exhibits AM and BT). .......... 8

          D.    The Court Should Also Seal Portions of Plaintiffs' Expert's Written Report That Relies Upon Confidential CHLIC Documents and Data, Including Individual Participant Prescription Drug Data (Exhibit AY). .. 10

          E.    The Court Should Seal Internal CHLIC Documents Reflecting Commercially-Sensitive Strategic Analyses and Financial Assessments (Exhibits K, U, BR, and BU). ................................................................... 11

          F.    The Court Should Seal in Part Internal CHLIC Documents Reflecting Commercially-Sensitive Sales Strategy and Pharmacy Benefit Analysis (Exhibits T, AD, AJ, AZ, BA, BC, and BD). ........................................... 14

          G.    The Court Should Seal Commercially-Sensitive and Non-Relevant Portions of Internal CHLIC Documents That Do Not Relate to Plaintiffs' Claims in this Action and Reveal Sensitive Internal Processes and Analyses (Exhibits I, Y, and AY). ..................................... 16

          H.    The Court Should Seal PHI and Other Personal Identifying Information (Exhibits B, J, I, K, S, AG, AP, AY, BI, BI, and BO). ............................. 18

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bright v. Asset Acceptance, LLC*,
  292 F.R.D. 190 (D.N.J. 2013)...................................................................................10

*Chapco, Inc. v. Woodway USA, Inc.*,
  No. 3:15-CV-1665 (JCH), 2018 WL 3581694 (D. Conn. July 24, 2018) .............10

*China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*,
  No. 15-6210, 2017 WL 3718108 (D.N.J. Aug. 29, 2017) ..................................7, 13

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
  26 F. Supp. 2d 606 (S.D.N.Y. 1998)........................................................................15

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
  769 F. Supp. 2d 630 (S.D.N.Y. 2011)......................................................................15

*Grayson v. Gen. Elec. Co.*,
  No. 3:13CV1799 (WWE), 2017 WL 923907 (D. Conn. Mar. 7, 2017) .................18

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006).......................................................................................4

*Mars, Inc. v. JCM Am. Corp.*,
  No. 05-3165, 2007 WL 496816 (D.N.J. Feb. 13, 2007) .....................................8, 13

*Offor v. Ctr.*,
  No. 15CV2219ADSSIL, 2016 WL 3566217 (E.D.N.Y. June 25, 2016), *aff'd
  sub nom. Offor v. Mercy Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017)......................18

*In re Parmalat Secs. Litig.*,
  258 F.R.D. 236 (S.D.N.Y. 2009) ...............................................................................4

*Peters v. Aetna Inc.*,
  No. 1:15-00109, 2019 WL 2881615 (W.D.N.C. July 2, 2019) ...............................10

*Reed v. AMCO Ins. Co.*,
  No. 3:09-CV-0328-LRH-RAM, 2012 WL 1964094 (D. Nev. May 31, 2012).......18

*In re Zyprexa Injunction*,
  474 F. Supp. 2d 385 (E.D.N.Y. 2007) ........................................................................4

## INTRODUCTION

Pursuant to Local Civil Rule 5(e) and 7(a), and as directed by the Court in its September 8, 2020, order (ECF 324), Defendant Cigna Health and Life Insurance Company ("CHLIC"),[1] by and through its undersigned counsel, hereby files this response to Plaintiffs' Motion to Seal dated September 3, 2020, providing the grounds on which to seal in part or in whole Exhibits B, I, J, P, S, T, U, Y, AD, AF, AG, AJ, AM, AP, AY, AZ, BA, BC, BD, BI, BJ, BK, BM, BO, BR, BT, and BU to the Declaration of Meghan S.B. Oliver ("Oliver Decl.") (ECF 314), as well as those portions of Plaintiffs' related filings[2] that quote from, and reply upon, detailed information in those exhibits (together, the "Subject Documents").[3]  CHLIC has reviewed the fifty-seven (57) exhibits Plaintiffs filed under seal as part of the Oliver Declaration (ECF 314) and seeks to seal in full six (6) documents and seal in part (redact) twelve (12) documents, as well as any related

---

[1] Cigna Corporation has been dismissed from the Action, so this motion is made on behalf of Defendant CHLIC only.

[2] *See* Plaintiffs' Reply Memorandum in Further Support of Class Certification (ECF 308); Plaintiffs' Opposition to Defendants' Motion to Exclude the Declaration and Testimony of Launce B. Mustoe, Jr. (ECF 310); and Plaintiffs' Memorandum of Law in Support of Motion to Strike Certain Arguments and Evidence Submitted by Cigna in Opposing Class Certification, or, Alternately, to Remedy Cigna's Discovery Abuses (ECF 313).

[3] Appendix A, attached to this Motion, identifies each of the Subject Documents and provides relevant information for the Court's convenience, including whether Plaintiffs object to the proposed sealing of each document.  A copy of each of the Subject Documents that CHLIC seeks to seal is being filed as an attachment to this Response for the Court's review.  Documents that CHLIC seeks to seal in full state, on the first page in red, "Seal in Full."  Documents that CHLIC seeks to seal in part will identify those portions to be redacted through yellow highlighting, yellow boxes, or in some cases yellow boxes with red borders (to distinguish them from other highlighting in the document).  For Exhibits AZ, BA, BC, and BD, CHLIC seeks to seal the internal instructions in the document, which are already identified through grey shading.  For these four Exhibits, we have not added further highlighting, which might make the document confusing and difficult to read.

briefing summarizing or quoting therefrom, based on the presence of commercially-sensitive

confidential information.[4]

Specifically, CHLIC seeks an order sealing documents containing the following types of

confidential and competitively-sensitive information:[5]

- highly propriety financial and pricing information, including CHLIC's administrative services agreements with specific plan sponsor clients and CHLIC's pharmacy benefits management agreement executed with Catamaran in 2013 (Exhibits AM , BJ, BK, and BT);

- portions of the written report of Plaintiffs' expert, Mr. Launce Mustoe, which discusses and analyzes confidential documents and data, including pharmacy transaction data (Exhibit AY);

- internal CHLIC documents containing sensitive and proprietary information regarding pharmacy management projects, including materials reflecting strategic business goals, analysis of competitors, and assessments of potential financial risk (Exhibits K, U, BR, and BU);

- internal CHLIC documents reflecting commercially-sensitive sales strategy and pharmacy benefit analysis (Exhibits T, AD, AJ, AZ, BA, BC, and BD);

- sensitive internal CHLIC strategic discussions of pharmacy projects that are not relevant to the claims or defenses of the parties in this action and that would reveal sensitive internal process and analysis if disclosed (Exhibits I, Y, and AY); and

---

[4] CHLIC also seeks to seal in part (redact) protected health information and/or personal identifying information in nine (9) additional documents and takes no position on two other documents produced by Argus.  Accordingly, CHLIC agrees to unseal twenty-eight (28) documents that it had designated as "Confidential" or "Confidential—Attorney's Eyes Only" (and agrees to partially unseal seventeen (17) others).

[5] This Response provides the bases for sealing certain documents that CHLIC designated as "Confidential" or "Confidential—Attorney's Eyes Only" under the terms of the Protective Order. *See* ECF 92.  Other exhibits that were the subject of Plaintiffs' Motion to Seal were produced by and/or designated as "Confidential" or "Confidential—Attorney's Eyes Only" by Plaintiffs or third parties to this litigation.  *See* Appendix A (listing all Subject Documents, including those designated by Plaintiffs or third parties).  While CHLIC continues to have an independent obligation to seal protected health information and similar personal identifying information, CHLIC takes no position on whether the materials designated as "Confidential" by others merit sealing under Local Rule 5(e), the Court's prior rulings on sealing confidential material, and relevant case law.

- protected health information ("PHI") and person identifying information, including CHLIC customer names, dates of birth, and customer account identifiers, pharmacy names and member identification numbers, and customer prescription drug transaction information (Exhibits B, J, K, S, AG, AP, BI, BI, and BO).

The Court has previously ordered similar types of information to be sealed and should do so again. *See* March 13, 2017 Order (ECF 72) ("2017 Sealing Order") and ECF 71 at 2-3 (sealing ASO agreements); May 7, 2020 Order (ECF 250) and ECF 207-01 at 2 (sealing the declaration of Plaintiffs' expert, Mr. Mustoe, based on his reliance on confidential CHLIC documents and data, including pharmacy transaction data); *see* May 29, 2020 Order (ECF 259) at 10-12 ("May 2020 Sealing Order") (sealing PHI and other private personal and pharmacy information, documents discussing internal CHLIC projects, policies, and practices that are not relevant, and documents discussing highly sensitive, strategic CHLIC projects that could cause commercial harm to CHLIC if disclosed); *see* July 7, 2020 order (ECF 281) ("July 2020 Sealing Order") and ECF 276-1 at 1-2 (sealing documents reflecting proprietary financial and pricing information such as RFP responses and CHLIC agreements with plan sponsor clients; expert testimony relying upon and discussing confidential CHLIC documents and pharmacy prescription transaction data; and PHI and personal identifying information).

The Court should seal the Subject Documents here for the same reasons.[6] Certain of this information could cause CHLIC (and its clients) significant competitive harm if publicly disclosed (such as proprietary pricing and financial information, as well as internal discussions of strategic CHLIC pharmacy projects), and CHLIC maintains such information in a confidential

---

[6] The Court has now considered numerous motions to seal, which included detailed descriptions of the documents at issue and declarations attesting to the confidentiality, proprietary, and commercial sensitivity of specific categories of documents. *See generally* ECF 71, 212, 276-1 (motions to seal). To conserve the Court's time and resources, as well as that of the parties, CHLIC refers, where appropriate, to previously submitted declarations regarding the confidential and proprietary nature of specific types of sealed materials.

manner.  Similarly, internal CHLIC discussions of ongoing Cigna pharmacy projects reflect confidential information that has no bearing on the claims at issue in this action and whose public disclosure would serve no purpose but to reveal those discussions to competitors.  Finally, the parties and the Court have previously agreed to seal personal identifying customer and client information, including member and pharmacy identification numbers, client names, participant names, and individual prescription drug transaction data.  *See* ECF 232 at 5-6 (agreeing to redact account identifiers); ECF 259 at 7, 10, 11, 12, 15 (ordering sealed "customer account identifiers," "pharmacy name and member ID," and "claim numbers/identification codes" for customer prescription drug transactions).  Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104–191 (1996), PHI is to be kept confidential and exempt from disclosure, and its sealing here is appropriate.  *See id.*

For these reasons, and as discussed below, the interests of the parties in maintaining the confidentiality of this information overrides the public's interest in viewing it.  CHLIC respectfully requests that the Court grant the motion and seal the Subject Documents.

## ARGUMENT

## I.      STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.  *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).  In assessing a motion to seal, courts balance the public right to access to judicial records against "competing considerations," including the potential competitive harm disclosure of confidential business information might cause.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009).  "Notwithstanding the presumption of public access to judicial

records, courts may deny access to records that are 'sources of business information that might

harm a litigant's competitive standing.'" *In re Parmalat Secs. Litig.*, 258 F.R.D. at 244 (quoting

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  In this District, Local Rule 5(e)

sets forth the specific requirement that an order to seal be based on "particularized findings

demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored

to serve those reasons."  Local Civ. R. 5(e)(3).

## II.   THE SUBJECT DOCUMENTS CONTAIN SENSITIVE AND CONFIDENTIAL INFORMATION APPROPRIATE FOR SEALING IN LIGHT OF THE COURT'S PRIOR SEALING ORDERS.

### A.   CHLIC Maintains the Confidentiality of the Subject Documents.

CHLIC requires its employees to handle all confidential information, including the type

in the Subject Documents, with care and limits access to the confidential information on a need-

to-know basis.  *See* ECF 275-7 (Declaration of David Kasper ("Kasper Decl.") ¶ 13); *see also*

ECF 226 (Declaration of Tyler Lester) ("Lester Decl.") ¶ 4.  CHLIC requires its employees to

maintain the confidentiality of proprietary and sensitive business information.  *Id*.  Such

information cannot be disclosed without appropriate prior authorization, and employees are

instructed not to transmit confidential information to persons not entitled to it, or who have no

reason to know the confidential information.  *Id*.

### B.   The Court Should Seal in Full Materials Containing Sensitive Financial and Pricing Information (Exhibits BK and BJ).

CHLIC seeks to seal in full two documents containing confidential highly sensitive and

proprietary financial and pricing information that would cause significant competitive harm if

disclosed.  Those documents include the following:

- **Exhibit BK** is an excerpt of Article 8 to the Pharmacy Benefit Management Agreement executed between CHLIC and Catamaran.  The excerpt is marked confidential contains detailed and highly proprietary contract provisions related to pricing terms for Catamaran's provision of pharmacy benefit management ("PBM")

services to CHLIC.  In addition to the pricing agreement for Catamaran's PBM services, the document contains, among other things, related pricing guarantees, pricing terms for specific prescription drugs; annual market-based adjustments to drug pricing; the terms of payment; the handling of pricing disputes; payment adjustments; and the handling of payment undercharges.  Although CHLIC ceased using Catamaran (now, OptumRx) as its Pharmacy Benefits Manager for certain functions, including retail network contracting, approximately one year ago, the PBM agreement is a 10-year agreement.  *See* Declaration of Kevin Cummings ("Cummings Decl.") (attached hereto) ¶¶ 11, 13.

- **Exhibit BJ** is an internal Cigna interoffice memo from July 2013 that provides a detailed summary of the CHLIC/Catamaran PBM agreement and identifies key accounting issues related to its monitoring and implementation.  The memorandum includes a detailed recitation of the agreement's "Key Contract Terms" (pages 2 to 3); the provisions on transition costs (page 3); a discussion of "Performance Standards" (including maximum annual guarantee amount) (page 3); and a summary of pricing terms (pages 3 to 4).  Exhibit 1 to the document is a chart of contract terms with internal Cigna notes on each term, discussing PBM services, fees, guarantees, and "other."  (CIGNA00149596 – 00149598.)  Exhibit 2 provides a "Summary of Accounting Issues and Conclusions" related to those contract provisions, for instance, regarding how financial terms will be handled under GAAP and what "P&L classifications" will be used for contractual pricing components.  (CIGNA00149599 – 00149601.)  *See* Cummings Decl. ¶ 12.

The information in both documents reflects highly sensitive contractual terms between CHLIC and Catamaran, including proprietary, non-public financial and pricing information that resulted from lengthy and in-depth individual negotiations between CHLIC and Catamaran.  *See* Cummings Decl. ¶¶ 11-13.  Exhibit BK contains the section-by-section pricing provisions in the PBM agreement, while Exhibit BJ provides detailed summaries of other key provisions, as well as internal CHLIC analysis of how those terms will be addressed under applicable accounting standards.  *Id*.  Those materials are highly confidential and proprietary to CHLIC, and CHLIC maintains their confidentially and limits disclosure.  *Id*.

The specific pricing and financial terms reflected in these documents were heavily negotiated, and public disclosure would result in significant, irreparable economic injury.  *Id*.  For example, if made available to CHLIC's competitors or other PBMs with whom CHLIC could do business, they could use that information to the disadvantage of CHLIC and Catamaran

(now, OptumRx) by negotiating superior PBM agreements within the industry that would undercut the terms CHLIC and/or Catamaran were able to negotiate.  Additionally, public disclosure would allow others to leverage this information in future negotiations with either CHLIC and/or OptumRx, making it difficult for either party to secure more favorable terms, which it otherwise could have had the opportunity to do.  Disclosure to CHLIC plan sponsor clients of the pricing terms that CHLIC negotiates with retail pharmacies via Catamaran could also impact CHLIC's ability to negotiate terms of its agreements with its clients.  And, finally, making this pricing information available to retail pharmacies (who contract with OptumRx) could impact OptumRx's future negotiations with those pharmacies.  *Id.*  The fact that CHLIC ceased using OptumRx as its Pharmacy Benefits Manager for certain functions, including retail network contracting, does not relieve the risk that disclosure of such highly competitive information would cause serious commercial injury to CHLIC and OptumRx because the confidential, highly negotiated terms in these documents did govern those entities' relationship very recently, just last year.  *Id.*

The Court has previously sealed similar confidential financial and pricing information that would competitively harm CHLIC if publicly disclosed.  *See* 2017 Sealing Order (sealing financial and pricing terms in CHLIC agreements with plan sponsor clients); *see* July 2020 Sealing Order (sealing CHLIC agreements with client based on sensitive financial and pricing information, and sealing CHLIC responses to client Requests for Proposals containing annual pricing commitments and other sensitive financial information); *see also* ECF 276-1 at 5-7.  This Court's prior rulings sealing such information are in line with other courts' similar orders.  *See China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, No. 15-6210, 2017 WL 3718108, at *2 (D.N.J. Aug. 29, 2017) (sealing "detailed pricing information" because public disclosure could

cause competitive injury by allowing other prospective clients to negotiate more favorable terms and allow competitors to "use that pricing information to gain a competitive edge over Defendant in the marketplace by offering Defendant's customers more favorable sale prices and terms and conditions" for similar products); *Mars, Inc. v. JCM Am. Corp.*, No. 05-3165, 2007 WL 496816, *2 (D.N.J. Feb. 13, 2007) (sealing a "confidential business agreement not otherwise available to the public" because public disclosure could negatively affect the party's "negotiating position in its business").  The Court should order sealing of Exhibits BK and BJ to the Oliver Declaration.

    **C.**    <u>**The Court Should Seal in Full Additional Administrative Agreements**</u>
                <u>**Between CHLIC and Plan Sponsor Clients (Exhibits AM and BT).**</u>

       Consistent with its prior ruling sealing the Administrative Services Only ("ASO") Agreements between CHLIC and plan sponsor clients because those agreements contain confidential and negotiated financial and pricing terms in those contracts, the Court should likewise seal **Exhibits AM and BT**.  *See* 2017 Sealing Order (sealing plan sponsor Administrative Services Agreements); *see* July 2020 Order (sealing ASO agreement with Putnam Investments); *id.* (sealing ASO agreement with Hampton Affiliates); *see also* ECF 276-1 at 7-9 (describing Exs. 21 and 22, as well as the legal grounds for sealing).  Like the ASO agreements the Court ordered sealed before, Exhibits AM (2014 amendment to Putnam Investments ASO agreement) and Exhibit BT (2017 summary of changes in services and charges in the Hampton Resources, Inc. ASO agreement) are the result of non-public, extensive negotiations (and occasionally an RFP process) between CHLIC and individual plan sponsor clients, and contain terms and information that CHLIC does not share with competitors or other prospective clients.  Among other things, they include extremely sensitive financial and pricing terms that dictate the rates that Putnam and Hampton Affiliates agreed to pay CHLIC for the provision of prescription drug benefit administrative services.

In particular, CHLIC's amendment to the Putnam Investments ASO agreement (Ex. AM) references changes to the existing contract provisions related to the scope of services, the process for bank account payments, the funding and payment of claims, and the resolution of disputes. (*See* CIGNA00001525–26.)  It also provides a revised "Schedule of Financial Charges" regarding certain administrative fees, PBM service charges, pharmacy administration fees and drug charges, drug manufacturing payment sharing terms, claims processing fees.  (*Id.* at CIGNA00001528-30, CIGNA00001532-36, CIGNA00001538, respectively).  In addition, it contains a Specialty Drug List, identifying each prescription drug that will receive a specified discount when dispensed by Cigna Home Delivery Pharmacy.  (CIGNA00001541 – 00001556.)

The CHLIC amendment to the Hampton Resources, Inc. ASO Agreement reflects the same type of confidential pricing rates and financial terms.  *See, e.g.*, Exhibit BT at CIGN00382898 (changes to provisions regarding bank account processing); CIGNA00382899-912 ("Schedule of Financial Charges"); CIGNA00382900 (administration fees and charges for covered drugs); CIGNA00382903 (drug manufacturer-payment sharing); CIGNA00382904 (fees for run-out claims); CIGNA00382906-08 (cost containment fees); and CIGNA00382910-12 (charges for additional services).

CHLIC maintains the information in both these ASO agreement amendments as strictly confidential.[7]  *See* Kasper Decl. ¶ 13.  Public disclosure of such pricing and other negotiated terms between CHLIC and its plan sponsor clients would cause CHLIC competitive injury.  *Id*.

---

[7] For instance, the Cigna Home Delivery Specialty Drug List contains the following statement at the start of the document: "**THIS SPECIALTY DRUG LIST IS CONFIDENTIAL, PROPRIETARY INFORMATION OF CIGNA.  IT IS PROVIDED SOLELY FOR EMPLOYER'S PLAN ADMINISTRATION PURPOSES. REDISCLOSURE IS STRICTLY PROHIBITED. CIGNA RESERVES ALL LEGAL RIGHTS AND REMEDIES TO ENFORCE THESE PROHIBITIONS ON USE AND DISCLOSURE.**"

Among other things, CHLIC's competitors—i.e., other PBMs—could use that information to offer superior contractual terms to prospective clients, while prospective plan sponsor clients of CHLIC could use this information as part of contractual negotiations with CHLIC. *Id*.

Other courts routinely seal similar agreements. *See Peters v. Aetna Inc.,* No. 1:15-00109, 2019 WL 2881615, at *1 (W.D.N.C. July 2, 2019) (sealing materials related to "an Administrative Services Agreement, which the court has allowed to be filed under seal due to the commercially sensitive information contained therein"); *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 203 (D.N.J. 2013) (sealing business agreement between defendant and non-party based on the "legitimate private interests at stake" if the agreement were disclosed and the potential "harm to [defendant]'s competitive standing in the market place"). As this Court and others have done before, the Court should seal Exhibits AM and BT.

### D.     The Court Should Also Seal Portions of Plaintiffs' Expert's Written Report That Relies Upon Confidential CHLIC Documents and Data, Including Individual Participant Prescription Drug Data (Exhibit AY).

CHLIC also moves to seal only portions of **Exhibit AY** (ECF 315-2), which is the written report of Plaintiffs' expert, Mr. Launce B. Mustoe. His expert testimony relies extensively upon confidential CHLIC documents and data, including a data set of more than 514 million prescription drug transactions covering a nearly 10 year period. *See* Ex. AY at 5. For this reason, the Court previously sealed the expert reports and related expert testimony, including Mr. Mustoe's prior declaration (*see* ECF 207-01 and ECF 250); excerpts from Mr. Mustoe's deposition transcript (*see* ECF 276-1 at 4 n.1 and ECF 281); and the declaration of CHLIC's expert, Dr. Sean May (*see id*.). Portions of Exhibit AY also warrant sealing because they consist of further detailed discussions similar to those that the Court has previously ordered sealed, including discussions of confidential pharmacy prescription data, and related data systems, that the Court has also sealed before. *See* May 2020 Sealing Order at 12 (sealing "prescription drug

transaction" data and identifiers).  Additionally, other courts have sealed similar expert materials

based on confidential documents.  *See Chapco, Inc. v. Woodway USA, Inc.*, No. 3:15-CV-1665

(JCH), 2018 WL 3581694, at *11 (D. Conn. July 24, 2018) (sealing expert materials).

**E.**     **The Court Should Seal Internal CHLIC Documents Reflecting Commercially-Sensitive Strategic Analyses and Financial Assessments (Exhibits K, U, BR, and BU).**

CHLIC also seeks to seal internal CHLIC materials that reflect commercially-sensitive,

strategic analyses of Cigna Pharmacy Management ("CPM") projects and issues.  These

documents contain significant, detailed descriptions of internal CHLIC policies and practices

related to these projects, identification of issues needing attention, and financial impact

assessments, all of which would cause CHLIC competitive harm if publicly disclosed.

CHLIC seeks to seal in part the attachment to the email in **Exhibit U** and **Exhibit BU**,

which are internal CHLIC presentations that the Court has previously ordered sealed because

they contain "strategic business goals, analysis of the 'competitive landscape,' and other

discussions of commercially sensitive internal business information."  *See* May 2020 Sealing

Order at 14.[8]  The Court should again order these documents sealed for the same reasons.

- **Exhibit U** is an internal CHLIC email (which CHLIC does not seek to seal) that attaches an internal CHLIC presentation (which CHLIC seeks to seal) regarding the "Benefit Language Update" pharmacy project.  It contains detailed internal analysis of the underlying "business problem" and project "goal" (slide 2 of presentation), the proposed project "solution" and assessment of the "competitive landscape" analyzing how CHLIC's competitors address the same issue (slide 3), an analysis of "project risks" (slide 4), an assessment of how the project will potentially impact different CHLIC groups (slides 5 to 6), customers (slides 8) and health care professionals (slide 9).  CHLIC does not seek to seal portions of the document that Plaintiffs quote in the publicly filed Second Amended and Consolidated Complaint.

- **Exhibit BU** is an internal CHLIC "Pharmacy Extended Leadership Touchpoint" presentation from August 2016, intended to provide CHLIC's senior management with an overview of various key business initiatives, including the "Certificate of

---

[8] In the May 2020 Sealing Order, Exhibit U was discussed as Exhibit H, and Exhibit BU was discussed as Exhibit I, to Plaintiff's Motion for Class Certification.

Coverage" and "Benefits Language Updates" projects. This presentation contains detailed discussions of commercially sensitive internal business information, including internal financial data regarding the allocation of CHLIC's "portfolio business funding" (CIGNA00491449); a summary of current pharmacy business projects with their respective estimated funding requirements (CIGNA00491450); a detailed discussion of ongoing CHLIC pharmacy projects and their statuses (CIGNA00491452-57); and an appendix containing detailed project financial data, an analysis of business risks and opportunities, and project priorities (CIGNA00491459-64). CHLIC does not seek to seal portions of the document that Plaintiffs quote in the publicly filed Second Amended and Consolidated Complaint.

CHLIC seeks to seal in full **Exhibit BR** because it contains similar confidential commercially sensitive internal business information that the Court previously ordered sealed.

- **Exhibit BR** tracks financial impacts and exposure related to CHLIC's internal prescription drug pharmacy practices and client accounts. The tab of the document entitled "Issues List – Potential Exposure" describes current issues in CPM practices, assigns a dollar amount to its potential financial impact, discusses the "Status/Controls in Place," and finally the "Resolution and Remediation Status." (CIGNA00608548.) The second tab is a financial analysis of the impact of claims processing errors in eight CHLIC clients accounts, identifying each client by name and providing the terms of their benefit selections, the associated dollar amounts of the "Potential Financial Risk" and the "Total Financial Risk," the "Total Profit – 3 Year," and the estimated dollar amount of the "Net Profit/Loss – 3 year view." (CIGNA00608549.)

These exhibits reflect highly detailed and sensitive internal CHLIC assessments, including financial analyses, of internal pharmacy and client account issues whose disclosure would cause CHLIC commercial injury. *See* Cummings Decl. ¶¶ 14-15. The Court's prior ruling already addresses and orders sealed the commercially-sensitive contents of Exhibits U and BU (*see* May 2020 Sealing Order at 14), and Exhibit BR reflects the same type of detailed, internal analysis, linked to specific practices and individual CHLIC clients and pharmacies, that again and additionally merit sealing. In particular, Exhibit BR discusses non-public CHLIC pharmacy practices linked with specific retail pharmacies and clients, and financial analysis that assigns specific dollar amounts to CHLIC's financial risk. *Id.* Those materials are highly confidential and proprietary to CHLIC, and CHLIC maintains their confidentially and limits

disclosure because, if disclosed to CHLIC's competitors and clients, significant, irreparable economic injury would result. *Id*. For instance, those competitors could use CHLIC's assessment of pharmacy benefit issues and their financial impact on the company to CHLIC's disadvantage in future negotiations regarding pharmacy benefits administration. *Id*. Disclosure of prior prescription drug benefit issues could also be used by CHLIC's competitors to lure away clients. *Id*.

For the same reasons the Court previously determined that disclosure of internal CHLIC project discussions and financial assessments in Exhibits U and BU would competitively harm CHLIC, the same decision is warranted again and as to Exhibit BR. *See* May 2020 Sealing Order at 14. Further, the Court has previously sealed documents reflecting sensitive non-public financial information, such as pricing terms in customer agreements. *See* 2017 Sealing Order (sealing financial and pricing terms in CHLIC agreements with plan sponsor clients); *see* July 2020 Sealing Order (sealing CHLIC agreements with client based on sensitive financial and pricing information, and sealing CHLIC responses to client Requests for Proposals containing annual pricing commitments); *see also* ECF 276-1 at 5-7. Like those previously sealed documents, Exhibit BR, contains financial analysis regarding customer accounts and detailed assessments of CHLIC's potential exposure. Other courts have sealed similar kinds of documents based on the significant competitive injury that could result from their public disclosure. *See China Falcon Flying Ltd.*, 2017 WL 3718108, at *2 (sealing "detailed pricing information"); *Mars*, 2007 WL 496816, *2 (sealing confidential documents not publicly available on the grounds that public disclosure could have negatively affected the party's "negotiating position in its business"). Thus, the Court should seal Exhibits U, BR, and BU.

F. **The Court Should Seal in Part Internal CHLIC Documents Reflecting Commercially-Sensitive Sales Strategy and Pharmacy Benefit Analysis (Exhibits T, AD, AJ, AZ, BA, BC, and BD).**

CHLIC seeks to partially seal internal CHLIC materials that reflect commercially-sensitive, internal analysis of prescription drug benefits, including information intended for CHLIC's sales force and preparing certain clients' plan booklets, including the following:

- **Exhibit T** is an internal Pharmacy Product Standards manual that provides detailed information on CPM prescription drug benefits options. CHLIC proposes to seal individual internal comments throughout the manual describing CHLIC sales strategy and benefit requirements that are not shared with clients.

- **Exhibit AD** is an internal pharmacy benefits summary template reflecting, among other things, CHLIC's proprietary process for plan sponsor selection of prescription drug benefits during the client in-take process.

- **Exhibits AJ, AZ, BA, BC, and BD** are internal templates for plan booklet language related to various prescription drug provisions. CHLIC seeks to seal in part internal instructions and directions included throughout each of these documents, instructing CHLIC employees when to apply different variations of benefit language to different groups of clients.

These exhibits reflect sensitive and propriety internal comments whose disclosure would cause significant commercial injury to CHLIC. *See* Cummings Decl. ¶¶ 5-6, 9-10. For instance, internal instructions in the Cigna Pharmacy Product Standards manual (Exhibit T) discuss certain client preferences regarding retail pharmacy networks (CIGNA00142277), limitations in integration with other PBMs (CIGNA00142280), modifying drug lists (CIGNA00132281), and offering client-specific drug lists (CIGNA00142282). Publicly disclosing such information to CHLIC's competitors, as well as to current and prospective clients, would allow them to gain details regarding CHLIC's pharmacy benefit sales process, and insight into CHLIC's relation with clients and efforts to solicit and retain their business, which would allow competitors to offer clients superior benefits. *Id.* ¶ 5. Likewise, public disclosure of the information in Exhibit AD could cause competitive injury to CHLIC by revealing to competitors the specific details of

CHLIC's proprietary process and variations on draft language offered in products and product related documents, a design they could copy or improve upon in order to lure clients away from CHLIC.  *Id.* ¶ 6.

Similarly, Exhibits AJ, AZ, BA, BC, and BD are internal draft product language and certain required variations for a few prescription drug provisions for draft plan booklets that plan sponsor clients may consider and offer.  (*See*, *e.g.*, Ex. AZ at CIGNA00173345-46.)  Internal instructions and directions are included throughout each of these documents, instructing CHLIC employees when to apply different variations of product language to different clients based on whether the client is self-funded or insured, and applicable state requirements.  While the plan language itself is disclosed to customers (and CHLIC does not seek to seal that portion of these documents), disclosing CHLIC's internal instructions on possible draft language for prescription drug benefit provisions would reveal in detail CHLIC's analysis of those product features and the situations when product features are available (for instance, based on state insurance regulations, differences among CHLIC's client services being provided, and different client plan offerings to employees).  *See* Cummings Decl. ¶¶ 9-10.  CHLIC maintains the confidentially of this information and limits disclosure.  *Id.* ¶ 10.

Other courts have sealed similar kinds of documents based on the significant competitive injury that could result from their public disclosure.  *See GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (noting that "material concerning the defendants' marketing strategies" and "product development" contain "highly proprietary material" and therefore may remain under seal); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 609, 614 (S.D.N.Y. 1998) (sealing defendants' "[c]onfidential business information" because they "provide valuable insights into a company's current business

practices that a competitor would seek to exploit," including their "marketing strategies").

Accordingly, the Court should order sealing of Exhibits T, AD, AJ, AZ, BA, BC, and BD to the

Oliver Declaration.

> **G.    The Court Should Seal Commercially-Sensitive and Non-Relevant Portions of Internal CHLIC Documents That Do Not Relate to Plaintiffs' Claims in this Action and Reveal Sensitive Internal Processes and Analyses (Exhibits I, Y, and AY).**

Documents, and portions of documents, that contain both commercially-sensitive,

internal discussions of CPM projects and practices, as well as discussions of internal practices

that are not relevant to this action should also be sealed, as the disclosure of such information

would cause CHLIC commercial harm.  Those documents include the following:

- **Exhibit I** is an internal email regarding CHLIC's processing of prescription drug claims at Department of Defense ("DOD") pharmacies.  The issues discussed in the email are not relevant to the claims at issue in this litigation because they relate to a specific pharmacy agreement between CHLIC and the DOD, a pharmacy contract that was not part of Catamaran's (now Optum's) retail pharmacy network, which are the types of pharmacies from which CHLIC receives negative reimbursement.  Because the information in Exhibit I is not relevant to Plaintiffs' claims in this case, publicly disclosing the information in that document would needlessly cause CHLIC competitive injury by unnecessarily disclosing confidential internal client discussions to the public.  *See* Declaration of Justin Pitt (attached hereto) ¶ 5.

- **Exhibit Y** is an internal "eCharting" Checklist from August 2016 that documents revisions to draft plan booklets for CHLIC's ASO plan sponsor clients.  The document includes a comprehensive survey of the 2016 revisions to draft booklet provisions offered to self-funded clients for consideration.  CHLIC does not seek to seal parts of the document that describe the specific provisions that Plaintiffs challenge in this litigation.  But there are also internal discussions regarding revising other plan booklet provisions that are not relevant to this action, such as those concerning other products such as medical, dental, and vision benefits.  *See, e.g.*, CIGNA07715789 (discussing "Vision Care" coverage).  *See* Cummings Decl. ¶ 18.

- **Exhibit AF** provides CHLIC "Pharmacy PBAB Guidance," including 26 pages detailing the prescription drug "non-standard benefits" clients might request, the conditions under which such benefits would be approved or denied, and any "group size limitations" on eligibility for certain benefits.  CHLIC does not seek to seal certain provisions regarding Copay G and Copay K adjudication logics (see pages 7 to 8).  But it does seek to seal other commercially-sensitive information regarding prescription drug benefits, as well as additional pharmacy benefit information that has

no bearing on the issues in this case—i.e., among others, "Anglomax Covered Under the Pharmacy Benefit" (page 3), "Anti-Malarial Drug Coverage under the Pharmacy Benefit" (page 4), "Blister Packs" (page 4), "Cleviprex" (page 5), "Contraceptives – Nuaring and Ortho Evra at 100%" (page 6), "Diabetic Benefit" (page 11), "Fluoride Vitamins" (page 13), and "Growth Hormone Exclusion" (page 15).

CHLIC seeks to seal Exhibit I in full and seal Exhibits Y and AF in part because these documents reflect, among other things, sensitive discussions of internal CPM policies and practices that have no bearing on Plaintiffs' allegations in this matter and whose public disclosure would serve no purpose except to harm CHLIC by releasing such internal documents to the public. The Court has previously sealed portions of internal CHLIC documents that also discussed CHLIC projects and analysis that did not relate to Plaintiffs' claims. *See* May 2020 Sealing Order at 12 (sealing internal discussion of "90-day Network" project that do not appear "relevant to the claims at issue in this lawsuit"); *id*. at 13 (sealing internal discussions of data migration and Argus design release "that appear[] to have no relation to the claims at issue in this lawsuit"). Like those previously sealed documents, Exhibits I, Y, and AF contain proprietary internal CHLIC procedures on prescription drug benefits and analysis of individual client accounts that have no relation to the claims and issues in this litigation. *See* Cummings Decl. ¶¶ 17-20. If this internal information were publicly disclosed, it could competitively harm CHLIC, as these exhibits reflect proprietary internal analysis of prescription drug benefits and CHLIC procedures that would provide health service competitors with proprietary, non-public information on CHLIC's policies. *Id*. Accordingly, the Court should order sealing of Exhibits I, Y, and AF.

17

**H.** **The Court Should Seal PHI and Other Personal Identifying Information
(Exhibits B, J, I, K, S, AG, AP, AY, BI, BI, and BO).**

Lastly, CHLIC seeks to seal in part documents containing PHI, including plan participant

prescription drug transaction data, and personal identifying information the Court has previously

sealed.  Specifically, CHLIC seeks an order sealing the following portions of these documents:

- References to individual prescription drug transaction information for CHLIC
  customers in **Exhibits B and BM**.  Exhibit B contains prescription drug transaction
  information for certain Plaintiffs, and Exhibit BM is a series of screenshots of CHLIC
  prescription drug claims processing systems showing actual pharmacy claims for
  individual customers, as well as their personal identifiable information (e.g., dates of
  birth).

- **Exhibits I, J, K, S, AG, AP, AY, BI, BM, and BO** include the names and other
  identifying information of CHLIC clients, often in the context of internal CHLIC
  discussions of those client accounts and specific client issues.

CHLIC has an independent legal obligation under HIPAA and other state and federal

privacy laws to seal PHI, including the name, address, Social Security Number, and medical

information related to an individual.  *See generally* 45 C.F.R. Parts 160, 162, and 164.[9]  Courts

frequently order such information to be sealed and have even sanctioned attorneys who failed to

redact such information.  *See, e.g.*, *Grayson v. Gen. Elec. Co.*, No. 3:13CV1799 (WWE), 2017

WL 923907, at *3 (D. Conn. Mar. 7, 2017) (sealing consumer personal identifying information);

*Offor v. Ctr.*, No. 15CV2219ADSSIL, 2016 WL 3566217, at *4 (E.D.N.Y. June 25, 2016), *aff'd

sub nom. Offor v. Mercy Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017) (sanctioning lawyers for

publicly filing "unredacted medical records" in violation of HIPAA).[10]  For these same reasons,

---

[9] *See also* U.S. District Court for the District of Connecticut, *Electronic Policies and Procedures*
(rev. Oct. 11, 2018) § III.C (requiring parties to file certain personal data identifiers under seal
pursuant to the E-Government Act of 2002, including "personal identifying number[s]" and
"medical records, treatment and diagnosis").

[10] *See also Reed v. AMCO Ins. Co.,* No. 3:09-CV-0328-LRH-RAM, 2012 WL 1964094, at *1 (D.
Nev. May 31, 2012) (awarding attorneys' fees because opposing counsel filed "several
documents with improper confidential information"); *Weakley v. Redline Recovery Servs., LLC,*

CHLIC now requests that the Court seal the personal identifying information and PHI identified in Exhibit B and BM as reflected in the redactions CHLIC proposes be made to those documents.

Exhibits J, K, S, AG, AP, BI, BM, and BO include the names and related identifying information of CHLIC clients, often as part of internal CHLIC discussions regarding issues related to those client accounts or in formulating responses to questions raised by those clients. For instance, Exhibit AG is an email thread regarding a plan sponsor client question about the pharmacy benefit of a specific, named participant. *See* CIGNA07497856-57. CHLIC seeks an order sealing only the individual names and related identifiers associated with these clients and their health plan participants, as well as similar third-party identifying information, which is not relevant to the claims at issue in this case, as reflected in CHLIC's proposed redactions. This Court has previously ordered similar third-party personal identifying information and PHI to be sealed, including client names and account numbers, customer transaction claim numbers, pharmacy claim transaction number, and health plan member identification numbers. *See* 2020 Sealing Order at 7 (sealing of "personal account identifiers"); *id*. at 10 (sealing "[c]ustomer account identifiers, including customs number, identification number and customer claim number"); *id*. at 12 (sealing "claims numbers/identification codes for 'individual customer prescription drug transactions'"); *id*. at 15 (sealing "information identifying client accounts, pharmacy chains and member IDs").

For the same reasons the Court previously sealed this type of personal information, the Court should now seal the personal identifying information, third-party identifiers, and PHI contained in Exhibits B, J, I, K, S, AG, AP, AY, BI, BI, and BO.

---

No. 09-CV-1423 (BEN) (WMC), at *2 (S.D. Cal. Apr. 20, 2011) (imposing a $900 sanction on defendant's counsel because counsel publicly filed documents containing the plaintiff's social security number, without redaction, in violation of Federal Rule of Civil Procedure 5.2).

## **CONCLUSION**

For the above reasons, the Court should grant CHLIC's motion to seal the Subject

Documents.

Dated:  September 17, 2020                    Respectfully submitted,

<div style="margin-left:4em">

/s/ Brian W. Shaffer
  Brian W. Shaffer (phv08654)
  Jeremy P. Blumenfeld (phv23943)
  Eleanor R. Farrell (phv08309)
  Matthew D. Klayman (phv08656)
  MORGAN, LEWIS & BOCKIUS LLP
  1701 Market Street
  Philadelphia, PA 19103
  Telephone:  +1.215.963.5000
  Facsimile:  +1.215.963.5001
  brian.shaffer@morganlewis.com
  jeremy.blumenfeld@morganlewis.com
  eleanor.farrell@morganlewis.com
  matthew.klayman@morganlewis.com

  Lisa R. Weddle (phv08957)
  MORGAN, LEWIS & BOCKIUS LLP
  300 South Grand Avenue
  Twenty-Second Floor
  Los Angeles, CA 90071-3132
  Telephone: +1.213.612.2500
  Facsimile: +1.213.612.2501
  lisa.weddle@morganlewis.com

  Michael Blanchard (ct25891)
  MORGAN, LEWIS & BOCKIUS LLP
  One State Street
  Hartford, CT 06103
  Telephone:  +1.860.240.2945
  Facsimile:  +1.860.240.2800
  michael.blanchard@morganlewis.com

  *Attorneys for Defendant Cigna Health and Life
  Insurance Company*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2020, the foregoing document and all attachments thereto were filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Brian Shaffer
Brian Shaffer

## Appendix A – List of Subject Documents

| Document | CHLIC's Proposed Treatment | Plaintiffs' Object to CHLIC's Proposed Treatment? (Y/N) |
|---|---|---|
| Ex. B | seal in part | N |
| Ex. E | unseal | N |
| Ex. F | unseal | N |
| Ex. H | unseal | N |
| Ex. I | seal in full | Y |
| Ex. J | seal in part | N |
| Ex. K | unseal | N |
| Ex. L | unseal | N |
| Ex. M | unseal | N |
| Ex. P | seal in part | N |
| Ex. Q | unseal | N |
| Ex. R | unseal | N |
| Ex. S | seal in part | N |
| Ex. T | seal in part | Y |
| Ex. U | seal in part | N |
| Ex. V | unseal | N |
| Ex. W | unseal | N |
| Ex. X | unseal | N |
| Ex. Y | seal in part | N |
| Ex. Z | unseal | N |
| Ex. AC | unseal | N |
| Ex. AD | seal in part | N |
| Ex. AF | seal in part | N |
| Ex. AG | seal in part | N |
| Ex. AH | unseal | N |
| Ex. AI | unseal | N |
| Ex. AJ | seal in part | Y |
| Ex. AK | unseal | N |
| Ex. AM | seal in full | N |

| Document | CHLIC's Proposed Treatment | Plaintiffs' Object to CHLIC's Proposed Treatment? (Y/N) |
|---|---|---|
| Ex. AN | no position (Argus document) | n/a |
| Ex. AO | no position (Argus document) | n/a |
| Ex. AP | seal in part | N |
| Ex. AR | unseal | N |
| Ex. AS | unseal | N |
| Ex. AT | unseal | N |
| Ex. AU | unseal | N |
| Ex. AV | unseal | N |
| Ex. AY | seal in part | N |
| Ex. AZ | seal in part | Y |
| Ex. BA | seal in part | Y |
| Ex. BB | unseal | N |
| Ex. BC | seal in part | Y |
| Ex. BD | seal in part | Y |
| Ex. BE | unseal | N |
| Ex. BG | unseal | N |
| Ex. BH | unseal | N |
| Ex. BI | seal in part | N |
| Ex. BJ | seal in full | Y |
| Ex. BK | seal in full | Y |
| Ex. BL | unseal | N |
| Ex. BM | seal in part | N |
| Ex. BO | seal in part | N |
| Ex. BP | unseal | N |
| Ex. BQ | unseal | N |
| Ex. BR | seal in full | Y |
| Ex. BT | seal in full | N |
| Ex. BU | seal in part | N |