UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br>        Plaintiffs,<br><br>vs.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br>        Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 17, 2020 |

**DECLARATION OF KEVIN CUMMINGS IN SUPPORT OF DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S RESPONSE TO <u>PLAINTIFFS' MOTION TO SEAL DOCUMENTS (ECF 316)</u>**

I, Kevin Cummings, declare as follows:

1. I am over 18 years of age and have personal knowledge of the matters set forth herein based on my experience and review of documents produced in this case. If called upon, I could testify competently and truthfully to the matters discussed below.

2. I submit this declaration in support of Defendant CHLIC's Response to Plaintiffs' Motion to Seal (ECF 316).

3. I am Supervising Counsel at Cigna Corporation ("Cigna"), the parent company of Defendant Cigna Health and Life Insurance Company ("CHLIC"). I joined Cigna as a full-time employee of Cigna's Legal department in 2013, providing support to various Cigna in-house lawyers for several months before becoming legal counsel in 2014. From 2014 forward, I served in various capacities within the Legal department, including, from 2015 through 2019 and as is

relevant here, acting as legal counsel to, among other areas, Cigna Pharmacy Management's prescription drug product and sales/client contracting operations. As a result of these roles within Cigna, I have an extensive understanding of CHLIC's pharmacy benefit management business and services and am able to speak to the confidential business information contained in the documents below.

4. I have reviewed each of the specific documents discussed in the paragraph below, which are exhibits to the Declaration of Meghan S.B. Oliver ("Oliver Decl.") (together, the "Exhibits").

5. **Exhibit T** is an internal CHLIC Pharmacy Product Standards manual, which provides CHLIC client representative and others with detailed information on Cigna Pharmacy Management prescription drug product options for plan sponsor clients. CHLIC proposes to seal individual internal comments that appear periodically throughout the manual describing CHLIC sales strategy and product requirements that are not shared as such with clients and, if disclosed, would give CHLIC's competitors and prospective clients' insight into CHLIC's relation with clients and efforts to solicit and retain their business.

6. **Exhibit AD** is a sample of Cigna prescription drug benefits summary language – the benefit summary is a truncated, informational description of certain features of the plan elected by the client – and certain required variations that reflects Cigna's proprietary internal process for plan sponsor selections for prescription drug benefits during the client in-take process. Public disclosure of this information could cause competitive injury to CHLIC by revealing to competitors the specific details of CHLIC's proprietary process and variations on draft language offered in products and product related documents, a design they could copy or improve upon in order to lure clients away from CHLIC.

7.     **Exhibit Y** is a 40-page CHLIC internal "eCharting" Checklist from August 2016 that documents revisions to draft plan booklets for CHLIC's "Administrative Services Only"- plan sponsor clients.  The document includes a comprehensive survey of the 2016 revisions to draft booklet provisions offered to self-funded clients for consideration.  This document reflects detailed internal discussions within CHLIC regarding booklet revisions and their potential impact on Cigna products and clients.  If this information were disclosed, it would give CHLIC's competitors and prospective clients' insight into CHLIC's internal products and their development that might adversely impact CHLIC's relation with clients and its efforts to solicit and retain their business and allow competitors insight into CHLIC's product development process.

8.     **Exhibit AF** is a 26-page Cigna "Pharmacy PBAB Guidance" document that includes a detailed chart of the prescription drug "non-standard benefits" that might be requested by clients, the specific conditions under which Cigna's administration of those benefits would be approved or denied, any "group size limitations" on the number of participants eligible for which Cigna will administer the client benefit, and any "additional considerations" informing Cigna's decision to administer, or not, the potential client-elected benefit.  This information reflects highly proprietary and internal discussions that are not shared as such with CHLIC's clients and would competitively injury CHLIC, if disclosed, because it would provide specific information to CHLIC's competitors and clients regarding Cigna's pharmacy products, internal criteria regarding those products, and specific information on service charges associated with those benefits.

9.     **Exhibits AJ, AZ, BA, BC, and BD** are internal draft product language and certain required variations for a few prescription drug provisions for draft plan booklets that plan

3

sponsor clients may consider and offer. CHLIC seeks to seal in part internal instructions and directions included throughout each of these documents, instructing CHLIC employees when to apply different variations of product language to different clients based on whether the client is self-funded or insured, and applicable state requirements. Disclosing CHLIC's internal instructions on possible draft language for prescription drug benefit provisions would reveal in detail CHLIC's analysis of those product features and the situations when product features are available (for instance, based on state insurance regulations, differences among CHLIC's client services being provided, and different client plan offerings to employees).

10. The information in **Exhibits AJ, AZ, BA, BC, and BD** is highly confidential and proprietary to CHLIC, and CHLIC maintains their confidentially and limits disclosure. Public disclosure of that sensitive information would result in significant, irreparable economic injury if provided to CHLIC's competitors. Disclosure of this information could commercially injure CHLIC, for instance, by providing competitors with CHLIC's own detailed analysis of those product features and the situations when potential client-elected benefits are available (for instance, based on client plan design features, state regulations, and kinds of CHLIC's services). Such information is highly competitive and would result in significant commercial harm to CHLIC if disclosed. For example, public disclosure of this information could cause competitive injury to CHLIC by revealing to competitors the specific details of CHLIC's proprietary process and variations on draft language offered in products and product-related documents, a design they could copy or improve upon in order to lure clients away from CHLIC.

11. **Exhibit BK** is the "Pricing" section of the Pharmacy Benefit Management Agreement executed between CHLIC and Catamaran (now, OptumRx). This section contains detailed and highly proprietary contract provisions related to pricing terms for Catamaran's

provision of pharmacy benefit management ("PBM") services to CHLIC. Among other things, that section contains the pricing agreement for Catamaran's PBM services; pricing guarantees provided by Catamaran for those services; pricing terms related to specific covered prescription drugs; annual market-based adjustments to drug pricing; the terms of payment; the handling of pricing disputes; payment adjustments; and the handling of payment undercharges.

12. A closely related document is **Exhibit BJ**, which is an internal Cigna interoffice memorandum from July 2013 that provides a detailed summary of the CHLIC/Catamaran PBM agreement and identifies key accounting issues related to its monitoring and implementation. Among other things, the memorandum includes a detailed recitation of the agreement's "Key Contract Terms" (pages 2 to 3); the provisions on transition costs, including specific numerical amounts that the parties agree to reimburse one another for (page 3); a discussion of the "Performance Standards" that includes the specific dollar amount of the maximum annual guarantee amount (page 3); and a summary of specific pricing terms (pages 3 to 4). Exhibit 1 to the document is a chart of contract terms with internal Cigna notes on each term, discussing PBM services, fees, guarantees, and "other." (CIGNA00149596 – 00149598.) Exhibit 2 to the memorandum provides a "Summary of Accounting Issues and Conclusions" related to those contract provisions, for instance, regarding how financial terms will be handled under GAAP and what "P&L classifications" will be used for contractual pricing components. (CIGNA00149599 – 00149601.)

13. The information in both **Exhibit BK and BJ** reflects highly sensitive contractual terms between CHLIC and Catamaran, including proprietary, non-public financial and pricing information that resulted from individual negotiations between CHLIC and Catamaran. Those materials are highly confidential and proprietary to CHLIC, and CHLIC maintains their

confidentially and limits disclosure. As I described above, these documents contain detailed information about the specific pricing and financial terms that CHLIC and Catamaran negotiated. Although CHLIC ceased using Catamaran (now, OptumRx) as its Pharmacy Benefits Manager for certain functions, including retail network contracting, approximately a year ago, the PBM agreement itself is a 10-year agreement, and the disclosure of its closely negotiated terms would, in any event, result in significant, irreparable economic injury if provided to CHLIC's competitors or other PBMs with whom CHLIC could do business. Those competitors and other PBMs could use that information to the disadvantage of CHLIC and OptumRx in multiple ways, such as by allowing competitors to negotiate superior PBM agreements within the industry that undercut the terms CHLIC and/or OptumRx were able to negotiate; allowing others to leverage this information in future negotiations with either CHLIC and/or OptumRx; disclosing to CHLIC plan sponsor clients the retail pharmacy pricing terms that CHLIC negotiated via OptumRx; and disclosing to retail pharmacies (who may continue to contract with OptumRx to the present) the pricing terms under which OptumRx was compensated by CHLIC. Such information is highly competitive and would result in significant commercial harm to CHLIC and OptumRx if disclosed.

14. **Exhibit BR** is an internal document that CHLIC used to track the financial impacts and potential exposure related to internal prescription drug pharmacy practices and client accounts. The tab of the document entitled "Issues List – Potential Exposure" identifies current issues within Cigna Pharmacy Management, provides a description of the issue, discusses its cause, assigns a dollar amount to the potential financial impact of the issue (in millions), identifies the potential "P&L Impact" of the issue, discusses the "Status/Controls in Place," and finally the "Resolution and Remediation Status" of the issue. (CIGNA00608548.)

The second tab of the document appears to be a financial analysis of the impact of claims processing errors in eight CHLIC client accounts, identifying each client by name, describing the claims adjudication logic applied to that account, listing the dollar amount of the "Copay Error" in 2010 and 2011, the dollar amount of the "Potential Financial Risk" and the "Total Financial Risk," the "Total Profit – 3 Year," and the estimated dollar amount of the "Net Profit/Loss – 3 year view," with a description of the current status of each issue. (CIGNA00608549.) Both tabs of this document reflect highly sensitive internal CHLIC financial analyses of specific pharmacy and client account issues whose disclosure would cause CHLIC commercial injury.

15. **Exhibit BR** should also be sealed because it contains extensive discussions of Cigna Pharmacy Management projects that are not relevant to Plaintiffs' claims and whose public disclosure would cause CHLIC competitive harm for no reason. In particular, the list of issues on the first tab of Exhibit BR identifies seventeen separate pharmacy issues, none of which relate to Plaintiffs claim in this matter. For example, the second issue relates to issues with processing generic specialty drugs for an individual client; the third relates to "client dispense fees"; and the fourth concerns "flat discount for retail generics logic." (CIGNA00608548.) None of these issues are relevant to Plaintiff's allegations.

16. The information in **Exhibit BR** is highly confidential and proprietary to CHLIC, and CHLIC maintains its confidentially and limits disclosure. The public disclosure of that sensitive information would result in significant, irreparable economic injury if provided to CHLIC's competitors and clients. Disclosure of this information could commercially injure CHLIC in several ways, for instance, by providing those competitors with Cigna's own self-assessment regarding pharmacy benefit problems and their financial impact on the company.

Disclosure of prescription drug issues could also harm CHLIC by making current and potential clients more aware of prior prescription drug benefit issues, which could be used by CHLIC's competitors to lure away those clients. Such information is highly competitive and would result in significant commercial harm to CHLIC and Catamaran if disclosed.

17. I have been involved in various aspects of this litigation, including being deposed by Plaintiffs' counsel on August 11, 2020 as a corporate representative of CHLIC to address various Rule 30(b)(6) topics identified by Plaintiffs' counsel. Accordingly, I have an understanding of Plaintiffs' claims in this litigation. In addition to the commercially-sensitive and proprietary information described above, **Exhibits Y and AF** contain confidential information that does <u>not</u> relate to the issues raised in this litigation at all and whose disclosure would unnecessarily harm CHLIC.

18. **Exhibit Y** includes a comprehensive survey of the 2016 revisions to draft booklet provisions offered to self-funded clients for consideration. Many of those revisions concern provisions that are unrelated to those at issue in this case. I understand that CHLIC is not seeking to seal those parts of the document that describe certain of those provisions that Plaintiffs challenge in this litigation. But there are also internal discussions regarding the revision of other plan booklet provisions, such as those concerning other products such as medical, dental, and vision benefits. *See*, *e.g.*, CIGNA07715789 (discussing "Vision Care" coverage).

19. Similarly, **Exhibit AF** includes extensive discussions of individual "benefits" that do not relate to the claims of Plaintiffs as I understand them, including, among others, "Anglomax Covered Under the Pharmacy Benefit" (page 3), "Anti-Malarial Drug Coverage under the Pharmacy Benefit" (page 4), "Blister Packs" (page 4), "Cleviprex" (page 5),

"Contraceptives – Nuaring and Ortho Evra at 100%" (page 6), "Diabetic Benefit" (page 11), "Fluoride Vitamins" (page 13), and "Growth Hormone Exclusion" (page 15), to provide only some examples.

20. If the internal information in **Exhibits Y and AF** that CHLIC seeks to seal were publicly disclosed, it could cause CHLIC unnecessary competitively harm, as these exhibits reflect proprietary internal analysis of prescription drug benefits and CHLIC procedures that would provide health service competitors with proprietary, non-public information on CHLIC's policies.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17th day of September, 2020, in Hartford, Connecticut.

*Kevin Cummings*
Kevin Cummings