# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

September 18, 2020

**VIA ECF**

The Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

Re:     *Negron, et al. v. Cigna Corp., et al.*, No. 3:16-cv-1702 (JAM)

Dear Judge Meyer:

We represent Defendant Cigna Health & Life Insurance Company ("CHLIC") and submit this letter as directed by the Court's September 16, 2020 order. ECF 319. CHLIC and Plaintiffs have been unable to resolve a discovery dispute regarding Plaintiffs' demand for the deposition of David Cordani, the President and CEO of Cigna Corporation ("Cigna"), the publicly-traded parent company of CHLIC. In his roles, Mr. Cordani is ultimately responsible for leading approximately 74,000 employees across all of Cigna's businesses, and overseeing more than 180 million customer and patient relationships in more than 30 countries and jurisdictions, and guiding Cigna, a global health service company, through the current pandemic. Mr. Cordani is the quintessential high-ranking executive contemplated and protected by the apex doctrine. *See Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985). The Court should preclude his deposition.

Plaintiffs' demand for Mr. Cordani's deposition warrants special scrutiny. As explained below, Plaintiffs have made no showing that Mr. Cordani's deposition is essential to their case. Tellingly, the fact that Plaintiffs have not even sought to depose other senior leaders who reported up to Mr. Cordani, such as Tom McCarthy (former Cigna CFO), Eric Palmer (former Cigna deputy CFO and current CFO), and most glaringly Matt Manders (President of CHLIC at the relevant time), strongly suggests that Plaintiffs desire Mr. Cordani's deposition because of his title and not any crucial and unique knowledge they claim he has. Further, other lower-level CHLIC executives, corporate representatives and fact witnesses remain to be deposed, including the former Senior Vice President, Pharmacy (Paul Urick) and Senior Vice President – Go To Market, Cigna Pharmacy Management (Michelle Vancura), providing more pertinent sources for any information Plaintiffs may seek from Mr. Cordani. Among other things, those witnesses and previous deponents are able to speak to documents which Plaintiffs may reference that include Mr. Cordani's name.

**Morgan, Lewis & Bockius LLP**

1701 Market Street
Philadelphia, PA 19103-2921     ☎ +1.215.963.5103
United States                                 📠 +1.215.963.5001

The Honorable Jeffrey A. Meyer
September 18, 2020
Page 2

Pursuant to Rule 26(b) and (c) of the Federal Rules of Civil Procedure, CHLIC respectfully requests that the Court grant a protective order against Plaintiffs' deposition demand or, alternatively, because fact discovery does not close until October 12, defer resolution of Plaintiffs' demand for Mr. Cordani's deposition until the conclusion of all other fact and 30(b)(6) depositions.

**Legal Standard**

The Court must limit discovery if it determines that the "burden or expense of the proposed discovery outweighs its likely benefit," considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C). The Court also has broad discretion to limit discovery by issuing a protective order on a showing of good cause to protect any party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). This broad discretion applies with acute force to requests for protective orders in connection with depositions of high-ranking corporate executives, or "apex depositions." *See Roberts v. Los Alamos Nat'l Security, LLC*, No. 11-6206, 2015 WL 7444636, at *2 (W.D.N.Y. Nov. 23, 2015) (discussing broad discretion conferred by Rule 26(c) in the context of request for apex deposition).

An "apex" deposition is one in which the party "seeks to depose the highest level, or apex, of the corporate opponent, whether that officer has personal knowledge of the matters at issue in the case or not." *Alliance Industries, Inc. v. Longyear Holding, Inc.*, No. 08-490S, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010). While "high-ranking corporate executives are not automatically given special treatment which excuses them from being deposed," courts recognize that discovery of corporate executives can be highly disruptive and a tool for harassment. *Treppel v. Biovail Corp.*, No. 03-3002, 2006 WL 468314, at *1 (S.D.N.Y. Feb. 28, 2006).[1]

Apex depositions are generally improper within the Second Circuit "unless [the senior executives] have personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *In re Ski Train Fire of November 11, 2000 Kaprun Austria*, No. MDL 1428, 2006 WL 1328259, at *9 (S.D.N.Y. May 16, 2006); *accord Alliance Industries*, 2010 WL 4323071, at *4 (granting protective order where party seeking apex deposition failed to show that executive had "unique knowledge about the major areas in dispute"). As a result, courts in this Circuit "routinely grant protective orders to bar depositions of high-ranking officials (known as 'Apex' depositions) with no personal or unique knowledge of the relevant facts." *Roberts*, 2015 WL 7444636, at *2. Absent some "unique personal knowledge," unnecessary and often redundant depositions of apex witnesses should be avoided.

Courts accordingly consider the likelihood that the corporate executive possesses relevant knowledge and whether another source could provide identical information. *See Treppel*, 2006 WL 468314, at *2 ("The plaintiff has not explained why the noticed individuals are believed to have personal

---

[1] *See also Roberts*, 2015 WL 7444636, at *3 (describing request for deposition of high-level executive based on speculation that executive "must know something" as "precisely the sort of deposition that the 'Apex' deposition rule is designed to prohibit: one used 'as a form of leverage or harassment [that forces] senior officials to spend time in preparing for and attending a deposition when they have little or no pertinent testimony to offer"); *Burns v. Bank of America*, No. 03-1685, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007) ("Likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives.").

knowledge of the underlying events, nor why that knowledge is believed to be unique. The plaintiff has made no attempt to depose any lower level executives, and, at the time he noticed the depositions, document discovery had not been completed."). Unless the executive has some "unique knowledge," "it may be appropriate to preclude a redundant deposition of that individual." *Id.* (quoting *Consol. Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4927 & 92 Civ. 6313, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993)); *Diesel Props S.r.L. v. Greystone Business Credit II, LLC*, No. 07-9580, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008) ("[R]edundant depositions should be avoided, and senior executives should be deposed only if they possess unique personal knowledge related to the relevant issues in the case."); *Harris v. Computer Associates Int'l, Inc.*, 204 F.R.D. 44, 46 (E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown not to take the deposition.").

**Plaintiffs Have Failed to Provide Sufficient Grounds to Justify Mr. Cordani's Deposition**

Plaintiffs have failed to justify Mr. Cordani's deposition because they have not even sought to obtain information from pertinent lower-level executives or other company witnesses before attempting to "leap frog" directly to Mr. Cordani. Those witnesses, who are referenced on reports or other messages that may also have been communicated to Mr. Cordani, include Matt Manders, to whom Cigna's prescription drug benefit operations reported up to 2010 to 2017. They also include Tom McCarthy and Eric Palmer, CFOs of Cigna with knowledge of any financial issues Plaintiffs seek to explore. In addition, fact and corporate representative depositions of Paul Urick, the former Senior Vice President, Pharmacy who reported to Chris Hocevar, then-President of Cigna's Strategy, Segments & Solutions; and Michelle Vancura, a Senior Vice President in Cigna's Go To Market pharmacy business area, and potentially other witnesses, are still to take place. Further, document discovery and depositions to date have not established that Mr. Cordani has unique personal knowledge of the spread pricing, negative reimbursement, or zero balance logic issues at the center of Plaintiffs' allegations.

The course of discovery in this matter confirms that requiring a deposition of Mr. Cordani at this juncture would be improper. At Plaintiffs' insistence, years ago CHLIC agreed to collect and produce custodial data for thirty-four current and former CHLIC employees. When Plaintiffs proposed, in early 2019, to collect additional custodial data from Mr. Cordani as well as senior Cigna executives Tom McCarthy (former Cigna CFO), Chris Hocevar (former President of Cigna's Strategy, Segments & Solutions group), and Matt Manders (President of Cigna's Strategy and Solutions, and President of CHLIC from 2010-2017), CHLIC objected on the grounds that these individuals had minimal first-hand knowledge of the prescription drug practices challenged by Plaintiffs and that any relevant materials these senior executives might possess would likely be duplicative of materials collected from existing custodians as well as from each other (given their executive leadership roles at Cigna). Based on these discussions, Plaintiffs agreed to CHLIC's proposal to collect custodial data from Messrs. McCarthy, Manders, and Hocevar, but not Mr. Cordani. As CHLIC predicted, these senior executives contributed little material to the more than 12.3 million pages produced in this matter; Matt Manders, for instance, had only 50 unique responsive, non-privileged documents, while Tom McCarthy had only 21 such documents.

Despite those 12.3 million produced pages and the depositions of sixteen witnesses, Plaintiffs still cannot support their claim that Mr. Cordani has any unique personal knowledge necessary to their claims. At most, Mr. Cordani would have a high-level supervisory understanding of the customer prescription drug cost-sharing policies and practices that Plaintiffs have challenged. Key strategic discussions and operational decisions connected with negative reimbursements would have been

The Honorable Jeffrey A. Meyer
September 18, 2020
Page 4

made by others within CHLIC (and by members of Cigna Pharmacy Management, in particular), such as Mr. Manders. The information that Mr. Cordani received regarding these prescription drug reimbursement practices would have been provided by other employees and Cigna executives with more detailed first-hand knowledge of those issues.[2] Plaintiffs have failed to provide sufficient evidence of any unique knowledge that might justify Mr. Cordani's deposition.

Plaintiffs have insisted on deposing Mr. Cordani on September 18, 2020, despite the fact that depositions in this matter continue and fact discovery does not close until October 12, 2020. As of today, Plaintiffs have deposed sixteen witnesses (either personally or as Rule 30(b)(6) representatives), and indicated their intention to take the depositions of at least four other fact or 30(b)(6) witnesses besides Mr. Cordani. Moreover, there are more than three weeks remaining in fact discovery, and Plaintiffs have reserved the right to seek additional depositions beyond these individuals. Plaintiffs cannot, as a logical matter, show that Mr. Cordani has unique personal knowledge of relevant facts when the deposition of lower-level employees have not yet been taken. Messrs. McCarthy, Palmer, and Manders—as well as others—were included on reports and other communications that may have also made their way to Mr. Cordani, and as the sources of that information, are better positioned to testify both to the underlying facts Plaintiffs seek (to the extent it exists) and whatever limited information Mr. Cordani might have received. Yet Plaintiffs have done none of this. Accordingly, the demand to depose Mr. Cordani appears less calculated at uncovering relevant factual testimony and more a means of harassing Mr. Cordani personally and Cigna institutionally. Such pressure tactics are routinely rejected by courts and should be rejected here. *See Roberts*, 2015 WL 7444636, at *3 (rejecting apex deposition used as "leverage or harassment").

**The Reference to Mr. Cordani on a Document as a "Project Sponsor" Does Not Indicate Any Unique, Personal Knowledge Relevant to this Matter**

Plaintiffs have claimed that Mr. Cordani has unique personal knowledge of negative reimbursements based on documents that describe him as the "Project Sponsor" of the "Pharmacy Over Payment" project. This is wrong. As Cigna's 30(b)(6) representative witness Stephanie Byrne testified in her deposition, the "project sponsor" listed on Pharmacy Business Requirement documents did not have "a role per se" in those individual projects. *See* Exhibit A (attached to this letter), Deposition Transcript of Stephanie Byrne dated August 12, 2020, at 32:20. Rather, as Julie Burns-McAvoy testified, Mr. Cordani is listed as "project sponsor" on these documents not because of his involvement or knowledge of specific projects, but because these projects were related to the overarching adoption of Catamaran as Cigna's Pharmacy Benefits Manager, making each of these pharmacy projects organizationally "sponsored" by Cigna's senior executive leadership (and, ultimately, Mr. Cordani as the head of Cigna). *See* Exhibit B (attached to this letter), Deposition Transcript of Julie Burns-McAvoy dated August 13, 2020 ("Burns-McAvoy Dep."), at 51:6-15. Ms. Burns-McAvoy's statements are borne out by similar Pharmacy Business Requirement documents related to the "Argus Transition," which repeatedly identify Mr. Cordani as "project sponsor," but explicitly state that actual management,

---

[2] In prior discussions with CHLIC, Plaintiffs have argued that the lack of emails or other documents showing Mr. Cordani's involvement in the negative reimbursement practices proved nothing, as Mr. Cordani was not a document custodian. But this argument misses the point. CHLIC agreed to collect data from the three senior Cigna executives under Mr. Cordani that Plaintiffs identified as most directly relevant to their claims (in addition to thirty other custodians). Relevant documents from those senior executives were produced and reviewed by Plaintiffs. Yet Plaintiffs still cannot demonstrate Mr. Cordani's unique personal knowledge related to negative reimbursements.

The Honorable Jeffrey A. Meyer
September 18, 2020
Page 5

oversight, and implementation of these pharmacy projects would be handled by other CHLIC management-level employees like Julie Burns-McAvoy, Stephanie Byrne, and others. *See, e.g.*, Exhibit C (attached to this letter) at CIGNA00054304 - 305 (Pharmacy Business Requirements for "Argus Transition: 33 Day Supply," identifying Mr. Cordani as "Project Sponsor," but Sue Sullivan as "Enterprise Project Manager" and Julie Burns-McAvoy as "Business Project Manager"). At his deposition, Mr. Hocevar was shown a similar project document where he was listed as the "sponsor." He explained that the sponsor was "the most senior person in the control [of] funding" and that given his leadership role at Cigna Pharmacy "I'm sure you can probably find thousands and hundreds of documents with me as the business sponsor on it over my tenure at Cigna." See Exhibit E (attached to this letter), Deposition Transcript of Chris Hocevar dated September 17, 2020, at 84:20-85:5 (stating that the "sponsor" was "the most senior person in the control [of] funding" and that he is listed as the sponsor on "thousands and hundreds of documents").

Further, despite Plaintiffs' supposed need for information on Mr. Cordani's role in these projects, Plaintiffs' counsel has repeatedly failed to ask CHLIC 30(b)(6) and fact witnesses what, if any, substantive or unique information Mr. Cordani would likely have about those projects. *See, e.g.*, Exhibit D (attached to this letter), Deposition Transcript of Justin Pitt dated July 22, 2020, at 29:16-38:3 (discussing Pharmacy Business Requirements for "Argus Transition: Claim Files," including the roles of David Despard and Julie Burns-McAvoy in that project, but not asking about Mr. Cordani's role as "Project Sponsor"); *id*. at 40:16-45:6 (discussing Pharmacy Business Requirements for "Argus Transition: Network Event," including the roles of Kellie Turley, Stephanie Byrne, Mary Anne Grant, and Saianne Webster, but not Mr. Cordani's role as "Project Sponsor"); Burns-McAvoy Dep. at 47:14-24 (asking why Mr. Cordani is listed as "project sponsor," but failing to inquire into any actual involvement by Mr. Cordani in that project). As a result, any claim by Plaintiffs that Mr. Cordani has "unique" knowledge relevant to the central issues in this case is speculative and unconvincing.

Likewise, Plaintiffs have suggested that documents describing the importance of the "Pharmacy Over Payment" project as a "high priority" and supported by "management" warrant Mr. Cordani's deposition. But Plaintiffs either ignore testimony from witnesses stating that "management" referred to individuals other than Mr. Cordani, or they failed to ask witnesses who authored the documents about Mr. Cordani's role in the project. *See, e.g.*, Burns-McAvoy Dep. at 60:3-61:15 (testifying she wrote that "[t]he overpayment request is currently a HIGH priority . . . Given the financial implications upper management is looking for quick action" because Paul Urick and Ed Stacey told her that it was a "high priority," and that "upper management" also referred to Mr. Urick and Mr. Stacey).

\* \* \*

For these reasons, CHLIC respectfully requests that a protective order be granted against Plaintiffs' request for any deposition of Mr. Cordani. Alternatively, the Court should order that the matter be deferred until after the remaining CHLIC witnesses are deposed, at which point the Court can make an informed assessment of what, if any, unique information Mr. Cordani possesses and whether a deposition of Mr. Cordani would be an exercise in redundancy.

The Honorable Jeffrey A. Meyer
September 18, 2020
Page 6

Respectfully submitted,

*/s/ Brian W. Shaffer*
Brian W. Shaffer

Enclosures
c:  All counsel of record (via ECF)