# EXHIBIT B

```
                                                              Page 1
 1
 2   UNITED STATES DISTRICT COURT
     DISTRICT OF CONNECTICUT
 3   Case No. 16-cv-1702
     - - - - - - - - - - - - - - - - - - -x
 4   KIMBERLY A. NEGRON, Individually    :
     and on Behalf of All Others         :
 5   Similarly Situated,                 :
                                         :
 6                     Plaintiffs,       :
                                         :
 7          - vs -                       :
                                         :
 8   CIGNA CORPORATION and CIGNA HEALTH  :
     AND LIFE INSURANCE COMPANY, et al., :
 9                                       :
                       Defendants.       :
10   - - - - - - - - - - - - - - - - - - -x
11
12                              August 13, 2020
                                9:01 a.m.
13                              397 Somers Road
                                Ellington, Connecticut
14
15
16
17
18
19
20         VIDEOTAPED VIRTUAL DEPOSITION UPON
21   ORAL EXAMINATION OF JULIE BURNS-McAVOY, held at
22   the above-mentioned time and place, before Randi
23   Friedman, a Registered Professional Reporter,
24   within and for the State of New York.
25
```

| Page 46 | Page 48 |
|---|---|
| 1           J. Burns-McAvoy | 1           J. Burns-McAvoy |
| 2     Q     And who do you believe the subject | 2     Q     And the next sub-bullet point, the |
| 3   matter experts would have been who would have | 3   second sentence says, "This method guarantees the |
| 4   helped you with this? | 4   customer will pay the lowest possible price." |
| 5           MS. FARRELL:  Objection. | 5           Do you see that? |
| 6           THE WITNESS:  Yeah, I don't | 6     A     Yeah. |
| 7     recall. | 7     Q     With regard to retail pharmacy |
| 8   BY MR. RAABE: | 8   transactions for Cigna under Co-Pay G, is the |
| 9     Q     Do you recall any of them that you | 9   client cost always the lowest possible price? |
| 10  were working with on this? | 10          MS. FARRELL:  Objection. |
| 11          MS. FARRELL:  Objection. | 11          THE WITNESS:  Yeah, I don't know. |
| 12          THE WITNESS:  Yeah, no.  It's too | 12          MR. RAABE:  All right, Chris, |
| 13    far ago. | 13    let's mark CIGNA 516751.  That's Exhibit |
| 14  BY MR. RAABE: | 14    185. |
| 15    Q     On Exhibit 171 that we looked at | 15          MR. BARRETT:  This document was |
| 16  earlier, it listed two pharmacy subject matter | 16    previously marked Exhibit 84, and it should |
| 17  experts, Doug Hedman and Victoria Atkinson.  Does | 17    be up there. |
| 18  that refresh your recollection as to who might | 18          MR. RAABE:  I take it back.  This |
| 19  have helped you with this document? | 19    will be Exhibit 84. |
| 20          MS. FARRELL:  Objection. | 20          THE WITNESS:  And I'm looking at |
| 21          THE WITNESS:  I know who they are. | 21    184. |
| 22    I don't know whether they particularly were | 22  BY MR. RAABE: |
| 23    the subject matter experts that I worked | 23    Q     It's 84.  I misspoke. |
| 24    with. | 24    A     Sorry, 84, okay. |
| 25   | 25    Q     In your list there, it might be the |

| Page 47 | Page 49 |
|---|---|
| 1           J. Burns-McAvoy | 1           J. Burns-McAvoy |
| 2   BY MR. RAABE: | 2   first one, because I think they populate in |
| 3     Q     Under Key Functionality Being | 3   order. |
| 4   Delivered, the second bullet point says, | 4     A     It went to the second one, but I think |
| 5   "Customers will experience lower out-of-pocket | 5   I found it. |
| 6   costs for prescription medications when the | 6           It's blank.  Hold on.  Maybe it's |
| 7   overall cost of the drug is less than their | 7   populating.  It says, Argus Transition Claim |
| 8   co-pays." | 8   Files? |
| 9           Do you see that? | 9     Q     That's the one, yeah. |
| 10    A     Yes. | 10    A     Business Requirements. |
| 11    Q     Which cost is that referring to? | 11    Q     Right. |
| 12    A     Their cost share, is that where it | 12    A     The rest is -- |
| 13  says "lower out-of-pocket costs"? | 13          MS. FARRELL:  Take a second.  It's |
| 14    Q     Sorry.  I'm referring to where it says | 14    still loading. |
| 15  "overall cost." | 15          THE WITNESS:  Okay.  Now it |
| 16    A     Oh, sorry.  Let me go back and read | 16    populated. |
| 17  it. | 17  BY MR. RAABE: |
| 18    Q     That was my bad.  So let me ask the | 18    Q     Okay.  Once it's fully downloaded for |
| 19  question again. | 19  you, take a quick look through, let me know when |
| 20          In that bullet point, where it says | 20  you're done and I'll ask you some questions. |
| 21  "overall costs," what cost is this document | 21    A     Okay.  I'm familiar with it. |
| 22  referring to, to your knowledge? | 22    Q     Do you recall this document? |
| 23    A     As it relates to the three points in | 23    A     I do. |
| 24  the Co-Pay G logic.  The lesser of logic.  So | 24    Q     What was the purpose of this document? |
| 25  co-pay, the U&C or the Cigna allowed cost. | 25    A     This was part of a larger project with |

Page 50

J. Burns-McAvoy

Catamaran to introduce our new pharmacy benefit manager, and this was just one piece of work that was underneath that, to share claims that were processed at Argus at the time with Catamaran.

Q   The first substantive page, so Page 51672, it lists you as the business project manager; see that?

A   Yes.

Q   And here the pharmacy subject matter experts are Justin Pitt and Dave Despard. Do you see that?

A   Yes.

Q   Did you work with Mr. Pitt and Mr. Despard on this project?

A   Yes.

Q   What were their respective areas of expertise?

A   Dave was in pharmacy IT and assisted with the claim file that needed to go from Argus into Cigna and then over to Catamaran.

Justin was in pharmacy -- I don't know what they would have called them at that time, but it would have been overseeing the exact pharmacies. So we were in the pharmacy contract,

Page 51

J. Burns-McAvoy

so we were only sending data that was pertinent to claims that were under the pharmacy contracts for Catamaran. So he would have been assisting with that.

Q   This document lists the project sponsor as David Cordani. Do you know why Mr. Cordani was the project sponsor for this project?

A   Yes, this would have been an executive program. It would have been outside of Cigna pharmacy management because it was part of a larger merger, acquisition type, when we were moving from Argus over to Catamaran. So he would have been seen as the executive sponsor for the -- you know, for overall strategy to align.

Q   Okay. So let's turn to Page 51674.

A   Okay.

Q   And under Section 4, Questions/Open Issues, No. 2, it says down at the bottom, "The concern is the amount contained in the pharmacy ingredient cost field on the claim is not correct."

You see that?

A   I see it.

Q   What is your recollection of to what

Page 52

J. Burns-McAvoy

that is referring?

A   Yeah, I don't know. I'd have to look at the other pieces, but nothing looks familiar.

Q   Yeah. Why don't you go ahead and read more to get yourself into context, and perhaps if you read through the general assumptions that begin on the prior page, it will give you --

A   Yeah. Let me go back to the business requirement first. Hold on a second.

I've read it.

Q   Okay. So having read the other parts of the document, do you have an understanding about what is being expressed as "The concern is the amount contained in the pharmacy ingredient cost field on the claim is not correct"?

A   No, I don't.

Q   It continues, "This field was added for D.O requirements such that the claim amounts balanced."

Do you know what D.O requirements is?

A   D.O was another project, but I don't have any -- I wasn't on it and I don't have any familiarity with it.

Q   Is that D.O, D.0? What is that?

Page 53

J. Burns-McAvoy

A   D.O.

Q   Do you understand what that abbreviation was for?

A   No. It outlined the way claims were to be paid, but I don't have anything beyond that. It wasn't mine, so I don't know.

Q   Okay.

MR. RAABE: Okay, Chris, let's put up Exhibit 176.

MR. BARRETT: It's up there.

BY MR. RAABE:

Q   Let us know when you have that one up.

MS. FARRELL: Craig, which number was this?

MR. RAABE: It's Exhibit 176.

MS. FARRELL: Thank you.

THE WITNESS: Scope and Assessment Request?

BY MR. RAABE:

Q   Yes.

A   I have it up.

Q   Is this a form document that you're familiar with?

A   Yes.

14 (Pages 50 - 53)

| Page 58 | Page 60 |
|---|---|
| 1         J. Burns-McAvoy<br>2  that all financials balance and reconcile<br>3  appropriately."<br>4         Do you see that?<br>5             MS. FARRELL:  Objection.<br>6  BY MR. RAABE:<br>7   Q   Do you see that?<br>8   A   Uh-huh.<br>9   Q   Is that a yes?<br>10  A   Yes.<br>11            MR. RAABE:  Am I missing<br>12  something?<br>13            MS. FARRELL:  I thought you said<br>14  "by the pharmacy," not "to the pharmacy."<br>15            MR. RAABE:  Okay.<br>16  BY MR. RAABE:<br>17  Q   You see the sentence I'm reading from?<br>18  A   Yes, the second paragraph under<br>19  Clarification of Concepts.<br>20  Q   Yes.  Did you communicate that to<br>21  Argus?<br>22  A   I don't recall.<br>23  Q   Do you know whether Cigna communicated<br>24  that to Argus through someone else?<br>25  A   I don't know. | 1         J. Burns-McAvoy<br>2  BY MR. RAABE:<br>3   Q   Yeah, Exhibit 11.<br>4   A   Okay.  I have it.<br>5   Q   Okay.  I'd like to first focus your<br>6  attention on the first email in the chain.  Your<br>7  email on October 31st at 4:54 p.m.<br>8   A   Okay.  I found it.<br>9   Q   So here you're writing to Lynn Sterns<br>10 and Elizabeth Hancock.  Can you tell us who they<br>11 are and what their roles were?<br>12  A   I don't recall Lynn's role.  Liz I<br>13 worked -- she was a business analyst when I<br>14 worked with her.<br>15  Q   What's that mean?  What's the role of<br>16 a business analyst?<br>17  A   They would help to gather business<br>18 requirements for the project that I was working<br>19 on.<br>20  Q   What's that mean, to gather business<br>21 requirements?<br>22  A   Document the requirements to -- for<br>23 the project.<br>24  Q   You write to them, "The overpayment<br>25 request is currently HIGH priority since there is |

| Page 59 | Page 61 |
|---|---|
| 1         J. Burns-McAvoy<br>2   Q   Did you understand at the time of the<br>3  pharmacy overpayment project that that's what<br>4  Cigna was asking of Argus?<br>5   A   What I understood at the time was that<br>6  Cigna contracted a rate with the pharmacy.  If<br>7  the pharmacy collected more than that, the<br>8  difference was what that -- Cigna got.<br>9             MR. RAABE:  I'm going to move on<br>10  to a different packet of documents.  Why<br>11  don't we take a short break.  We've been<br>12  going for an hour and 15 minutes.  Let's<br>13  come back at 10:30; okay?<br>14            THE WITNESS:  Okay.<br>15            MR. VIDEOGRAPHER:  The time is<br>16  10:16.  We're off the record.<br>17            (Whereupon there was a brief<br>18  recess.)<br>19            MR. VIDEOGRAPHER:  And the time is<br>20  10:30.  We're on the record.<br>21            MR. RAABE:  Chris, let's put up<br>22  Exhibit 11, please.<br>23            MR. BARRETT:  It should be<br>24  uploaded.<br>25            THE WITNESS:  No. 11? | 1         J. Burns-McAvoy<br>2  a lot of money tied to it."<br>3         Why did you type that?<br>4   A   Because it was a high priority as part<br>5  of the Catamaran overall project.<br>6   Q   Who told you it was a high priority?<br>7   A   That came from Paul Urick and Ed<br>8  Stacey.<br>9   Q   In the final paragraph of that email<br>10 you say, "Given the financial implications, upper<br>11 management is looking for quick action."<br>12        Who were you referring to when you<br>13 used the phrase "upper management"?<br>14  A   My understanding, that would have been<br>15 Paul and Ed.<br>16  Q   What were their titles at the time; do<br>17 you know?<br>18  A   I don't recall.<br>19            MR. RAABE:  Chris, let's do<br>20  Document 54926.<br>21            MR. BARRETT:  It has been marked<br>22  as Exhibit 187.<br>23            (Exhibit 187 was marked.)<br>24            THE WITNESS:  Okay.<br>25 |