# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

September 21, 2020

**VIA ECF**

The Honorable Jeffrey Alker Meyer
United States District Court for the District of Connecticut
Richard C. Lee United States Courthouse
141 Church Street
New Haven, Connecticut 06510

Re: *Negron, et al. v. Cigna Health and Life Insurance Co.,* No. 3:16-cv-1702-JAM

Dear Judge Meyer:

In their September 18, 2020 letter (ECF 324 & 325 ("Ltr.")), Plaintiffs argue that Mr. Cordani possesses sufficient unique, non-cumulative knowledge to justify his deposition. Plaintiffs cite to no fewer than 26 documents cherry-picked from the more than 12.3 million pages produced by CHLIC to support their position that the apex doctrine should not protect Mr. Cordani from being deposed in this case. But, with the exception of two documents (discussed below), none of those 26 documents were written by Mr. Cordani, provided to Mr. Cordani, refer to Mr. Cordani or suggest his direct participation in those matters. *See* Attachment 1 (identifying each document cited by Plaintiffs and Mr. Cordani's involvement in each). The only link Plaintiffs can draw between these documents and Mr. Cordani is to claim that, as CEO, Mr. Cordani *must* have been aware of the specific issues discussed in these documents and, because of his "state of mind," *must* have unique, non-cumulative and relevant knowledge of these facts. *See* Ltr. at 3 ("Moreover, as CEO, Cordani was (and is) the highest level Cigna management. He was the driving force behind the clawback scheme."). But this argument is routinely deployed to justify apex depositions, and it is an argument that courts routinely reject. *See Roberts v. Los Alamos Nat'l Security, LLC,* No. 11-6206, 2015 WL 7444636, at *3 (W.D.N.Y. Nov. 23, 2015) ("Indeed, it seems apparent that a primary reason for seeking to depose Dr. McCrory is born out of Dr. McCrory's high-level positions . . . and plaintiff's belief that, by virtue of those positions, Dr. McCrory must know something. This is precisely the sort of deposition that the 'Apex' deposition rule is designed to prohibit.").

**Plaintiffs' Two Documents Referencing Mr. Cordani Do Not Warrant a Deposition.**

Plaintiffs identify only two documents that actually involve Mr. Cordani at all. The first document is the Pharmacy Business Requirements document (cited by Plaintiffs as Dep. Ex. 185) that Plaintiffs claim, without factual basis, shows that "Cordani was responsible for 'lead[ing] the overall direction of the project'" related to the zero balance logic aspect of CHLIC's reconciliation process with Catamaran. Ltr. at 3. CHLIC has

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 2

already explained why this document does not show that Mr. Cordani had any actual (let alone unique) knowledge of negative reimbursements. *See* ECF 326 at 4-5. To briefly summarize, the "Pharmacy Over Payments" project was a component of CHLIC's Pharmacy Benefit Management ("PBM") relationship with Catamaran—a project institutionally "sponsored" by Cigna as the parent of CHLIC—so all of the PBM-related projects were noted to be "sponsored" by Mr. Cordani without implying that he had any actual personal knowledge of them. *Id*. at 4-5. Indeed, Mr. Hocevar testified that he himself was listed as "sponsor" on "thousands and hundreds" of similar documents and that such a role merely indicated "the most senior person in the control [of] funding." *Id*. at 5. Plaintiffs mischaracterize the document in their letter by quoting misleadingly from a general description of the Pharmacy Business Requirements form that was generated by a third-party eleven years earlier (*see* Ltr. at 3 (citing Dep. Ex. 73)) and that contradicts the testimony of the actual CHLIC employees who drafted those documents and who noted Mr. Cordani's lack of direct involvement in the project.[1]

Furthermore, Plaintiffs fail to identify any substantive, non-cumulative knowledge that Mr. Cordani would be likely to possess about this document or his role as "Project Sponsor."[2] Plaintiffs have already deposed key CHLIC witnesses regarding this document—including Julie Burns-McAvoy and Stephanie Byrne—who offered substantive testimony about the document and the project it describes. Ms. Burns-McAvoy explained that she drafted the document herself, that she never spoke with Mr. Cordani about the project, and that the highest level CHLIC managers she discussed the project with were Ed Stacey (whom Plaintiffs have not sought to depose) and Paul Urick (whose deposition has been noticed but not yet taken). *See* Ex. F (attached), Burns-McAvoy Dep. at 55:25-56:18. Further, this document explicitly assigns actual management, oversight, and implementation of the project to Julie Burns-McAvoy as the "Business Project Manager" and Stephanie Byrne as "Pharmacy SME [Subject Matter Expert]" (both deposed). *See* Ex. 185 at CIGNA00149490.

The second document Plaintiffs cite as evidence of Mr. Cordani's unique, personal knowledge is a 3-page "September Pharmacy MOR [Monthly Operating Report]" that Chris Hocevar sent Matt Manders, Tom McCarthy, and David Cordani in 2013. The only reference in that memo to "clawbacks" is a single bullet point mentioning "claw back mechanism currently being assessed." Ltr. at 1. The document was not written by Mr. Cordani and does not purport to describe any statements by Mr. Cordani. In fact, Mr. Hocevar testified that these monthly reports were typically prepared by a "range of people" working under him, suggesting Mr. Hocevar was not even the source of this comment. *See* Ex. G (attached), Hocevar Dep. at 23:21-24:5.

Without documentary support for Mr. Cordani's "unique" knowledge, Plaintiffs instead mischaracterize prior testimony. They claim that Mr. Cordani's deposition is warranted by Mr. Hocevar's inability to recall "the details of his discussions with Mr. Cordani about clawbacks," so only Mr. Cordani could provide details of those conversations. Ltr. at 1. But, in truth, Mr. Hocevar repeatedly testified that he did not recall any conversations with Mr. Cordani regarding "the clawback mechanism" or "the ZBL [zero balance logic] issue."

---

[1] *See* Ex. F (attached), Burns-McAvoy Dep. at 16:6-10 ("Q: Is it your understanding that the project sponsor was the person with ultimate responsibility for the project listed in the document like this? A: No.").

[2] Plaintiffs respond that even if "Mr. Cordani was not involved in the 'day-to-day' details of the Pharmacy Payments project," it "does not mean he has no relevant, non-cumulative information." Ltr. at 5. Yet they identify no such unique substantive information, instead vaguely claiming Mr. Cordani could perhaps provide "non-cumulative information about the 'overall direction' or purpose of the clawback scheme." *Id*. A fishing expedition involving the CEO of a Fortune 15 Company is precisely the type of consideration the apex doctrine is intended to address.

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 3

*See* Ex. G (attached), Hocevar Dep. at 37:3-7 ("Q: Do you call having any discussion with Mr. Cordani about clawback mechanisms? A: Not that I remember."); *id*. at 129:5-13 ("Q: Do you recall in any of those meetings, was there a discussion of the ZBL process? A: Not that I remember this."); *id.* at 142:16-18 ("Q: Do you recall discussing the ZBL issue in any of those ops reviews with Mr. Cordani? A: I don't, sorry.").[3]  At most, Plaintiffs assert that Mr. Cordani was provided one document that referred generally to "claw back." Clearly, if anyone could offer relevant admissible evidence as to that item, it would be the members of Mr. Hocevar's team that drafted it and not one of its several recipients.[4]

**Other Employees and Senior Leaders Might Have Relevant Knowledge.**

In any event, Mr. Cordani's deposition is at best premature, given that depositions of lower-lower CHLIC employees continue.  Plaintiffs have noticed the future deposition of at least two other employees (Paul Urick and Michelle Vancura), they have asked for 30(b)(6) depositions on remaining topics, and as fact discovery does not close until October 12, 2020, Plaintiffs reserve the right to notice additional depositions for more than three weeks.  And Plaintiffs have already taken extensive 30(b)(6) testimony from multiple witnesses addressing topics referenced in their letter.  In particular, CHLIC offered Tyler Lester to provide 30(b)(6) testimony regarding several subjects that Plaintiffs now suggest Mr. Cordani may have relevant knowledge of, including (i) the decision to implement negative reimbursements, (ii) processing changes made as part of that implementation (e.g., the Pharmacy Over Payment project), (iii) financial analysis related to negative reimbursements, and (iv) the decision to switch to Catamaran's network of pharmacies by entering into the Pharmacy Benefit Management agreement.[5]  Plaintiffs requested to designate Mr. Lester's prior testimony in an individual capacity as 30(b)(6) testimony rather than seek additional testimony from Mr. Lester on these topics.  Plaintiffs should not be permitted to use these topics to justify Mr. Cordani's deposition.  As these facts show, it is logically impossible to establish at this point in discovery whether Mr. Cordani has "unique" knowledge that cannot be provided from other sources.  Plaintiffs cannot dispute this requirement, nor their failure to satisfy it, so their letter remains silent and leaves the issue unaddressed.

Plaintiffs' letter does not dispute that there are other senior managers at CHLIC and Cigna who are more likely to have relevant personal knowledge than Mr. Cordani.  In his recent deposition, Mr. Hocevar (who was the head of Cigna Pharmacy Management during the relevant period) described a number of senior

---

[3] Mr. Hocevar did recall high-level discussions with Mr. Cordani regarding the status of CHLIC's relationship with Catamaran following the execution of the Pharmacy Benefit Management agreement around October 2013, as CHLIC was trying to reconcile the anticipated and actual impacts of that relationship.  Ex. G at 137:6-138:19.  But, as Mr. Hocevar explained, like "most of my updates," those discussions occurred "through Matt Manders and Eric Palmer."  *Id*.  Accordingly, it is doubtful those discussions are relevant, and to the extent they are, such information could be provided by Manders and Palmer.

[4] Moreover, the apex doctrine clearly requires unique, non-cumulative knowledge that cannot be obtained through less intrusive means, such as through the deposition of other employees.  To the extent Plaintiffs seek information regarding Mr. Hocevar's operating report, it could presumably be provided either by the original drafters (who provided it to Mr. Hocevar) or by Matt Manders and Tom McCarthy who also received the report.  This point applies equally to other materials and discussions involving Mr. Hocevar and Mr. Cordani, which involved lower-level Cigna executives like Manders.  Plaintiffs have not sought the depositions of these individuals, demonstrating they are not, in fact, seeking information about this document, but using it as a pretext to harass Mr. Cordani.

[5] Plaintiffs served their 30(b)(6) Notice after Mr. Lester had been deposed in his individual capacity.

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 4

Cigna executives whose positions and responsibilities within Cigna make them more likely to possess relevant personal knowledge related to Plaintiffs' claims than Mr. Cordani, including Matt Manders (President of CHLIC at that time, to whom Mr. Hocevar reported until 2017), Tom McCarthy (Cigna CFO during the relevant period), and Eric Palmer ("CFO of the healthcare business in the U.S."). *See* Ex. G (attached), Hocevar Dep. at 7:21-8:8, 21:23-22:20. But Plaintiffs have not sought to depose any of these individuals.[6] Hence, at a minimum, the issues of Mr. Cordani's deposition should be deferred until the close of fact discovery when it will be possible to assess if he has any relevant non-cumulative knowledge. *See Keebaugh v. Int'l Business Machines Corp.*, 18-12126, 2020 WL 774238, at *3 (S.D.N.Y. Feb. 18, 2020) (granting defendant's motion to delay deposition of its chief executive officer pending plaintiff's development of "a record sufficient to demonstrate that [defendant's chief executive officer] has non-duplicative information").

**RICO's Scienter Requirement Does Not Warrant Mr. Cordani's Deposition.**

Plaintiffs try to side-step these deficiencies by claiming that, because their RICO claims require proof of corporate scienter, they are entitled to examine Mr. Cordani's "personal knowledge and state of mind" regardless of whether he has any actual, substantive knowledge of relevant facts. Ltr. at 5. Plaintiffs say CHLIC's scienter is the same as Mr. Cordani's state of mind and there is no one that can testify on his behalf, so it is by necessity "unique." Based on their letter and the documents cited, Plaintiffs apparently want to examine Mr. Cordani with documents—not written by him but by some of the 74,000 employees at Cigna— and ask his "state of mind" about such documents. This is not and cannot be proper grounds for the deposition of an apex witness.

Indeed, Plaintiffs' argument would do away with apex doctrine entirely for civil RICO and certain Exchange Act claims, where plaintiffs would always be entitled to depose top corporate executives to establish their "state of mind." And, as Plaintiffs admit, scienter does not depend on the "state of mind" of any particular corporate officer—let alone the president or CEO—but has been "readily attributed" by courts to "management-level employees." Ltr. at 4 (citing *In re Marsh & McClennan,* 501 F. Supp. 2d, 452, 481 (S.D.N.Y. 2006)). Here, Plaintiffs have not asked for the deposition of the President of CHLIC during the relevant time period (Matt Manders). Moreover, Plaintiffs have or will depose numerous "management-level employees," including the head of Cigna Pharmacy Management (Chris Hocevar), the former Senior Vice President, Pharmacy (Paul Urick), and Senior Vice President – Go to Market, Cigna Pharmacy Management (Michelle Vancura). They also have taken more than a half-dozen corporate representative 30(b)(6) depositions on more than a dozen topics, and have expressed an intention to take even more. Accordingly, the testimony of these witnesses readily provides Plaintiffs with the opportunity to obtain evidence of scienter—and to do so in a manner consistent with the apex doctrine's avoidance of redundant and cumulative depositions. Plaintiffs provide no legal authority or factual grounds to dispute the point that other CHLIC managers and representatives could provide testimony on the subjects Plaintiffs say they need.[7]

---

[6] Likewise, Mr. Hocevar identified additional CHLIC employees who reported to him in the relevant period who are likely to have relevant personal knowledge, including Lance Wilkes (the "chief financial officer for pharmacy") and Catherine (Kitty) Riley (whom Mr. Hocevar describes as his "overall program manager" and who, he believed, was likely to have handled the high-level management of the negative reimbursement process on behalf of his office). *See* Ex. G (attached), Hocevar Dep. at 21:19-20, 43:14-19. Yet Plaintiffs have sought to depose neither Mr. Wilkes nor Ms. Riley (although Plaintiffs recognized Ms. Riley's importance by demanding she be a document custodian).

[7] Plaintiffs' reference to an internal email regarding CHLIC's processing of certain prescription drug claims from a particular pharmacy is misleading and an attempt to cast bold, unfounded aspersions on Cigna to

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 5

**Mere Awareness Of A Legitimate Business Practice Does Not Satisfy The Apex Doctrine.**

Finally, the central premise behind all of Plaintiffs' arguments—that Mr. Cordani has relevant unique knowledge of CHLIC's negative reimbursement process (Plaintiffs' supposed "clawback scheme")—rests on a profound mischaracterization of Plaintiffs' own claims in this action. It is important to remember that all of Plaintiffs' claims—including the RICO claims—center on whether CHLIC properly calculated Plaintiffs' cost-share payments for retail prescription drugs in accordance with the terms of myriad plan documents, *i.e.*, whether Plaintiffs paid more than what their benefit plans required. Plaintiffs do not contend that "clawbacks" from retail pharmacies are *per se* unlawful. ECF 308 at 4 ("The 'clawback' is not the harm, the overcharge is.").[8] Nor do they challenge CHLIC's overall compensation, which is set forth in insurance policies and ASO agreements that Plaintiffs do not allege to have been violated. Yet, Plaintiffs attempt to depose CHLIC's President and CEO based on his alleged general awareness of "clawbacks" from pharmacies,[9] not any awareness of whether participants were overcharged, what the myriad of relevant plan terms said, how CHLIC interpreted those terms, or how CHLIC calculated each participant's cost-share payments. Indeed, the plan language that Plaintiffs challenge was drafted years before the introduction of "clawbacks" in 2014. Mr. Cordani's understanding of negative reimbursements therefore would not translate into any insight into alleged "overcharges." To the extent Plaintiffs want to explore whether CHLIC overcharged participants either intentionally or with reckless indifference to their rights under their respective benefit plans, Plaintiffs can obtain any relevant factual information from lower level employees.

In sum, Plaintiffs demand to depose Cigna's President and CEO based on his general familiarity with a legitimate business practice that was indisputably applied appropriately to a great number of plans and participants, simply because Plaintiffs allege it was sometimes applied to participants who purportedly overpaid for prescription drugs. Allowing Plaintiffs to depose Mr. Cordani on this record would reduce the apex doctrine to a nullity.

---

cloud the issues currently before the Court. *See* Ltr. at 4 (claiming, without support, that they have developed evidence that Cigna "knowingly defrauded" a pharmacy). The referenced email involves a separate pharmacy contract between CHLIC and a particular pharmacy, not a contract that was part of Catamaran's (now Optum's) retail pharmacy network and the "Pharmacy Overpayment Project" about which Plaintiffs supposedly want to question Mr. Cordani. ECF 323 at 2. The subject of that email has nothing to do with this case. In addition, Plaintiffs suggestion that CHLIC "refused to permit the witness" (Tyler Lester) from testifying about this document omits any reference to the preceding questions and answers. Ltr. at 4. Instead, Plaintiffs cite only the last question in a series of questions about this email, which counsel for CHLIC was forced to end after Plaintiffs' continued badgering of Mr. Lester - even after he answered questions numerous times about this document. ECF 315-02 at 311:2-312:25.

[8] A "clawback" occurs when a retail pharmacy credits a PBM or insurer for a difference between the amount a participant pays the pharmacy for his or her cost-share (calculated pursuant to that participant's benefit plan) and the amount that the retail pharmacy's contract with the PBM or insurer sets as reimbursement. "Clawbacks" do not affect how participants' cost-share payments are calculated, and paying the retail pharmacy the amount it agreed to accept is certainly not unlawful.

[9] Plaintiffs rely on that general awareness to mischaracterize Mr. Cordani as being the "driving force" behind an illegal "clawback scheme," even though CHLIC administers many benefit plans for which "clawbacks" are undisputedly permitted. Ltr. at 2-3.

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 2

Respectfully submitted,

*/s/ Brian W. Shaffer*
Brian W. Shaffer

Enclosures
c:  All counsel of record (via ECF)

**Attachment 1 – Documents Cited In Plaintiffs' Letter (ECF 325)**

| Document | Mr. Cordani Wrote Document? (Y/N) | Mr. Cordani Received Document? (Y/N) | Mr. Cordani Mentioned in Document? (Y/N) | Description of Mr. Cordani's Involvement in Document |
|---|---|---|---|---|
| CIGNA00002860 | N | N | N | No involvement. |
| CIGNA00056016 | N | N | N | No involvement. |
| CIGNA07424525 | N | N | N | No involvement. |
| CIGNA07777049 | N | N | N | No involvement. |
| CIGNA07777080 | N | N | N | No involvement. |
| CIGNA12371054 | N | N | N | No involvement. |
| Class Cert. Memo (ECF 209), pp. 4-5 | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. J | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. K | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. L | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. M | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. N | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. O | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. P | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. Q | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. R | N | N | N | No involvement. |
| Class Cert. Memo. (ECF 209), Ex. S | N | N | N | No involvement. |
| Deposition Exhibit 011 | N | N | N | No involvement. |
| Deposition Exhibit 073 | N | N | N | No involvement. |
| Deposition Exhibit 109 | N | N | N | No involvement. |

The Honorable Jeffrey A. Meyer
September 21, 2020
Page 2

| Document | Mr. Cordani Wrote Document? (Y/N) | Mr. Cordani Received Document? (Y/N) | Mr. Cordani Mentioned in Document? (Y/N) | Description of Mr. Cordani's Involvement in Document |
|---|---|---|---|---|
| Deposition Exhibit 185 | N | N | Y | Pharmacy Business Requirements document identifying Mr. Cordani as "Project Sponsor" of "Argus Transition: Pharmacy Over Payments." CHLIC witnesses testified that the "project sponsor" had "no role per se," but was the organizational sponsor of the project. ECF 326, Ex. A at 32:20; Ex. B at 51:6-15. Mr. Hocevar testified that he was listed as "sponsor" on "thousands and hundreds" of similar documents. Ex. G (attached), Hocevar Dep. at 84:20-85:5. |
| Deposition Exhibit 187 | N | N | N | No involvement. |
| Deposition Exhibit 189 | N | N | N | No involvement. |
| Deposition Exhibit 190 | N | N | N | No involvement. |
| Deposition Exhibit 221 | N | Y | Y | "September Pharmacy MOR [Monthly Operating Report]" sent by Chris Hocevar to Matt Manders, Tom McCarthy, and David Cordani dated September 19, 2013, including a bullet stating, in part, that "claw back mechanism currently being assessed." Mr. Hocevar testified that he did not recall what the phrase specifically referred to, and that he did not recall ever discussing "clawbacks" or similar topics with Messrs. Cordani, McCarthy, or Manders. See Ex. G (attached), Hocevar Dep. at 37:3-7, 129:5-13, 142:16-18. Plaintiffs have not sought the depositions of Mr. McCarthy or Mr. Manders, who was Mr. Hocevar's supervisor during this period. |
| Deposition Exhibit 230 | N | N | N | No involvement. |
| Motion to Strike Memo. [ECF 312] at 4 (citing Ex. I) | N | N | N | No involvement. |