**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br>Plaintiffs,<br><br>vs.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br>Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 26, 2020 |

**DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
<u>RESPONSE TO PLAINTIFFS' MOTIONS TO SEAL DOCUMENTS (ECF 327 & 331)</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 3

I. STANDARD OF REVIEW ........................................................ 3

II. THE SUBJECT DOCUMENTS CONTAIN SENSITIVE AND CONFIDENTIAL INFORMATION APPROPRIATE FOR SEALING IN LIGHT OF THE COURT'S PRIOR SEALING ORDERS. ........................................................ 4

A. CHLIC Maintains the Confidentiality of the Subject Documents. ............ 4

B. The Court Should Seal in Part Materials Containing Highly Sensitive Financial and Strategic Analysis by the Head of CPM to Cigna's Senior Leadership (Exhibits E and G). ........................................................ 4

C. The Court Should Seal PHI and Other Personal Identifying Information in Exhibits B and D. ........................................................ 10

CONCLUSION ........................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Encap LLC v. Scotts Co. LLC*,
No. 11-685, 2015 WL 12991188 (E.D. Wis. Jan. 8, 2015) ....................9

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
26 F. Supp. 2d 606 (S.D.N.Y. 1998)....................8

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011)....................8

*Grayson v. Gen. Elec. Co.*,
No. 3:13CV1799 (WWE), 2017 WL 923907 (D. Conn. Mar. 7, 2017) ....................10

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006)....................3

*Offor v. Ctr.*,
No. 15CV2219ADSSIL, 2016 WL 3566217 (E.D.N.Y. June 25, 2016), *aff'd sub nom. Offor v. Mercy Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017)....................10

*In re Parmalat Secs. Litig.*,
258 F.R.D. 236 (S.D.N.Y. 2009) ....................3

*Reed v. AMCO Ins. Co.*,
No. 3:09-CV-0328-LRH-RAM, 2012 WL 1964094 (D. Nev. May 31, 2012)....................10

*U.S. ex rel. Scott v. Humana*,
No. 3:18-61, 2019 WL 5964564 (W.D. Ky. Nov. 13, 2019)....................9

*In re Zyprexa Injunction*,
474 F. Supp. 2d 385 (E.D.N.Y. 2007) ....................3

**INTRODUCTION**

Pursuant to Local Civil Rule 5(e) and 7(a), and as directed by the Court in its September 21, 2020, order (ECF 334), Defendant Cigna Health and Life Insurance Company ("CHLIC"),[1] by and through its undersigned counsel, hereby files this response to Plaintiffs' Motions to Seal dated September 18, 2020 (ECF 327) and September 21, 2020 (ECF 331). CHLIC provides the grounds to seal portions of Plaintiffs' letter to the Court dated September 18, 2020 (ECF 325), and Exhibits B, D, F, and G to Plaintiffs' September 21, 2020, reply letter[2] (ECF 329-01 to 329-05) (together, the "Subject Documents").[3]

Specifically, CHLIC seeks an order sealing the following types of information that the Court has previously ordered sealed:[4]

- highly proprietary and sensitive internal financial and strategic analysis of Cigna Pharmacy Management ("CPM") provided by the then head of CPM to Cigna's executive leadership, including Cigna's President and CEO, Cigna's Chief Financial Officer, and the then President of CHLIC (Exhibits E and G); and

[1] Cigna Corporation ("Cigna") has been dismissed from the action, so this motion is made on behalf of Defendant CHLIC only.

[2] Based on CHLIC's agreement to unseal in full or in part Exhibits A to I (as well as CHLIC's prior agreements to unseal materials designated as "Confidential" in this action), the sealed text in Plaintiffs' reply letter to the Court dated September 21, 2020 (ECF 329) can be unsealed.

[3] For the Court's convenience, Appendix A (at the end of this Response) identifies each the Subject Documents and Plaintiffs' position regarding the proposed sealing. A copy of each Subject Document that CHLIC seeks to seal is being filed as an attachment to this Response for the Court's review. Documents that CHLIC seeks to seal in full state, on the first page in red (under the exhibit letter), "Seal in Full." Documents that CHLIC seeks to seal in part reflect proposed redactions through yellow highlighting and/or yellow boxes with red borders (in order to distinguish them from highlighting in the original document).

[4] This Response provides the bases to seal information that CHLIC designated as "Confidential" or "Confidential—Attorney's Eyes Only" under the terms of the Protective Order. *See* ECF 92. As to materials produced by and/or designated as "Confidential" or "Confidential—Attorney's Eyes Only" by Plaintiffs or third parties to this litigation, CHLIC takes no position whether such materials merit sealing.

- protected health information ("PHI") and personal identifying information, including CHLIC customer names, dates of birth, customer account identifiers, pharmacy names, and member identification numbers (Exhibits B and D).

Portions of Exhibits E and G should be sealed for two independent reasons. First, these document contain highly proprietary and commercially-sensitive confidential information regarding CPM's financial and strategy plans that would cause CHLIC competitive injury if disclosed because it would allow its competitors to gain detailed insight into CPM's long-term market strategies and financial drivers, which continue to be relevant today. Second, Exhibits E and G should be sealed because they reflect detailed confidential and proprietary information that does not pertain to participant cost-share arrangements and the negative reimbursement process that underlie Plaintiffs' claims, and so are not relevant to Plaintiffs' claims. Consequently, disclosure of this sensitive financial and strategic information would needlessly cause competitive harm to CHLIC by making public information unrelated to this action.

The Court has previously sealed this type of information and should seal the Subject Documents here for the same reasons.[5] Disclosure of this information could cause CHLIC (and its clients) significant competitive harm if publicly disclosed (such as proprietary pricing and financial information, as well as internal discussions of strategic CHLIC pharmacy projects), and CHLIC maintains such information in a confidential manner. Similarly, internal CHLIC discussions of ongoing Cigna pharmacy projects reflect confidential information that has no

[5] *See* March 13, 2017 Order (ECF 72) ("2017 Sealing Order") and ECF 71 at 2-3 (sealing sensitive financial information); *see* May 29, 2020 Order (ECF 259) at 10-12 ("May 2020 Sealing Order") (sealing PHI, private personal and pharmacy information, irrelevant information, and documents discussing highly sensitive, strategic CHLIC projects); *see* July 7, 2020 order (ECF 281) ("July 2020 Sealing Order") and ECF 276-1 at 1-2 (sealing documents reflecting proprietary financial and pricing information, as well as PHI and personal identifying information). To conserve the Court's time and resources, as well as that of the parties, CHLIC refers, where appropriate, to previously submitted declarations regarding the confidential and proprietary nature of specific types of sealed materials.

bearing on the claims at issue in this action and whose public disclosure would serve no purpose but to reveal those discussions to competitors. Finally, the Court has previously sealed personal identifying customer and client information,[6] and doing so again is necessary to protect those privacy interests, and as required for PHI under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104–191 (1996). *See id.*

For these reasons, and as discussed below, the interests of the parties in maintaining the confidentiality of this information overrides the public's interest in viewing it. CHLIC respectfully requests that the Court grant Plaintiffs' Motion and seal the Subject Documents as specified in this Response.

## ARGUMENT

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required. *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). In assessing a motion to seal, courts balance the public right to access to judicial records against "competing considerations," including the potential competitive harm disclosure of confidential business information might cause. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *In re Parmalat Secs. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). "Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *In re Parmalat Secs. Litig.*, 258 F.R.D. at 244 (quoting

[6] *See* ECF 232 at 5-6 (agreeing to redact account identifiers); ECF 259 at 7, 10, 11, 12, 15 (ordering sealed "customer account identifiers," "pharmacy name and member ID," and "claim numbers/identification codes" for customer prescription drug transactions).

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). In this District, Local Rule 5(e) sets forth the specific requirement that an order to seal be based on "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." Local Civ. R. 5(e)(3).

## II. THE SUBJECT DOCUMENTS CONTAIN SENSITIVE AND CONFIDENTIAL INFORMATION APPROPRIATE FOR SEALING IN LIGHT OF THE COURT'S PRIOR SEALING ORDERS.

### A. CHLIC Maintains the Confidentiality of the Subject Documents.

CHLIC requires its employees to handle all confidential information, including the type in the Subject Documents, with care and limits access to the confidential information on a need-to-know basis. *See* ECF 275-7 (Declaration of David Kasper ("Kasper Decl.") ¶ 13); *see also* ECF 226 (Declaration of Tyler Lester) ("Lester Decl.") ¶ 4. CHLIC requires its employees to maintain the confidentiality of proprietary and sensitive business information. *Id*. Such information cannot be disclosed without appropriate prior authorization, and employees are instructed not to transmit confidential information to persons not entitled to it, or who have no reason to know the confidential information. *Id*.

### B. The Court Should Seal in Part Materials Containing Highly Sensitive Financial and Strategic Analysis by the Head of CPM to Cigna's Senior Leadership (Exhibits E and G).

CHLIC seeks to seal in part two documents containing confidential highly sensitive and proprietary financial and strategic analysis provided by CPM leadership to Cigna and CHLIC's top executives:

- **Exhibit E** is an internal Cigna memorandum from the then head of CPM to the President and CEO of Cigna, Cigna's CFO, and the head of CHLIC, providing a "September Pharmacy MOR [Monthly Operating Result]." The report contains a detailed financial analysis of CPM's past and projected earnings results (with specific dollar amounts) (*see* CIGNA07864278); discussion and analysis of using Catamaran as CHLIC's pharmacy benefits manager, including expected financial benefits (with specific dollar amounts) (*see id.*); discussion of shifts in CPM's operating model (*see*

CIGNA07864279); analysis of overall multi-year market strategy (*see id*.); an assessment of CPM's retail network (*see id*.); discussion of CPM's ability to attract and retain key personnel (*see id*.); and a description of CPM's future outlook (*see id*.). CPM formulated this analysis to provide critical financial and strategic information to CHLIC and Cigna's senior leadership; it therefore reflects proprietary and commercially-sensitive confidential information. *See* Declaration of Kevin Cummings ("Cummings Decl.") (attached hereto) ¶¶ 5, 7-8. Much of that information, however, is unrelated to Plaintiffs claims in this matter. *See* Cummings Decl. ¶ 9.

- **Exhibit G** is a spreadsheet providing CPM's 2014 earnings estimate, which was provided by CPM leadership to Cigna's and CHLIC's top executives. It contains an itemized breakdown of CPM's earnings estimate into specific categories, many of which relate to areas within CPM that have no bearing on this case (i.e., Home Delivery and Rebate segments). It also contains a financial analysis of the impact of the recent Catamaran PBM relationship on CPM's earnings, identifies future risks and opportunities, and provides overall earnings projections. Like Exhibit E, this internal financial analysis was formulated by CPM's senior management and provided to CHLIC and Cigna's highest leadership and, as such, it reflects proprietary and commercially-sensitive confidential information. *See* Cummings Decl. ¶¶ 6-9.[7]

Two separate grounds justify sealing in part this material. First, the information in both documents reflects highly sensitive financial and strategic analysis of CPM that would cause CHLIC significant competitive injury if disclosed. *See* Cummings Decl. ¶¶ 6-9. Exhibit E contains highly proprietary confidential information regarding (a) CPM's financial and strategy plans, including analysis of CPM's earnings and key drivers of over- and under-performance (*see* Ex. E at CIGNA07864278); (b) key areas of risk and opportunity (*id*.); (c) analysis of "Market Forces" including regulatory climate, industry competitors, prescription drug suppliers, and

[7] In addition, CHLIC seeks to seal in part the language on page 4 of Plaintiffs' letter (ECF 325) that refers to Exhibit I to the Meghan S.B. Oliver Declaration (ECF 315-02). As the proposed sealing of that exhibit is already before the Court, CHLIC does not repeat those argument again, but merely incorporates them by reference so that Plaintiffs' letter can be treated consistent with the Court's ruling on Exhibit I. *See* CHLIC's Response in Support of Plaintiffs' Motion to Seal (ECF 320) at 16-19 (proposing to seal Exhibit I in full because it reflects commercially-sensitive information and because it contains discussions of client account issues unrelated to Plaintiffs' claims, as well as to seal Exhibit I in part in order to redact personal identifying information related to CHLIC clients).

feedback from clients (*id*. at CIGNA07864278-79); (d) an overview of "key operating model shifts" within CPM that are expected develop in the future (*id*. at CIGNA07864279); (e) analysis of CPM's "multi-year strategy" and related "strategic pivot points" (*id*.); (f) an internal "retail network update" (including network financial analysis and key sources of pricing variance) (*id*. at CIGNA07864279-80); and (g) a discussion of CPM's prior efforts at attracting exceptional management and future efforts at filling key organization roles (*id*. at CIGNA07864280). *See* Cummings Decl. ¶ 5. Similarly, Exhibit G is a spreadsheet of CPM's 2014 earnings estimates broken down by earnings category across CPM business segments (such as Home Delivery and Core (Retail/Rebate)), with internal financial assessments and commentary, including an analysis of financial "risks & opportunities." (*See* Ex. G at CIGNA07865348.) *See* Cummings Decl. ¶ 6. Disclosure of such sensitive internal information, which would then be available to CHLIC's competitors, would cause CHLIC competitive injury. *See id*. ¶¶ 8.

Furthermore, Exhibits E and G should be sealed for the independent reason that much of the sensitive financial and strategic discussions contained therein are not relevant to Plaintiffs' claims. Both documents contain broad discussions of CPM finances and strategy, including a detailed overview of key CPM operations, performance, market strategy, and personnel decisions. But they only briefly reference negative reimbursements and the participant cost-sharing practices that are the focus of Plaintiffs' claims here. CHLIC does not seek to seal that information. It seeks to seal the remainder of these documents, which reflect commercially-sensitive confidential analysis on aspects of CPM's business that have no bearing on Plaintiff's claims. *See* Cummings Decl. ¶ 7. Exhibit E, for instance, contains extensive discussion of the specialty prescription drug market (*see* CIGNA07864278), CHLIC's "Home Delivery" services (*see id*.), strategic assessment of "Market Forces" (*see id*. at CIGNA07864278-79), and

discussions of CPM's developing operating models and hiring initiatives (*see id.*) These confidential discussions have no relevance to Plaintiffs' claims. *See* Cummings Decl. ¶ 7. Likewise, Exhibit G contains financial analysis of CPM operating expenses, payment settlements with specific pharmacies, and earnings projections that also have no relevance to Plaintiffs' claims and should also be sealed. *See id.*

Because the financial and strategic analyses reflected in Exhibits E and G reflect broader financial projections and long-term market strategies that CPM intended to unfold over a period of years, disclosure of those confidential discussions still risk causing commercial injury to CHLIC today. *See* Cummings Decl. ¶ 9. For instance, Exhibit E reflects a description of CPM's "multi-year strategy for CPM," as well as a discussion of "Strategic Pivot Points" that describes CPM's long-term focus over a three year period. (*See* Ex. E at CIGNA07864279.) Similarly, Exhibit G reflects CPM's long-term financial analysis, including a comparison of 2014 earnings estimates to anticipated earnings under different "projection" scenarios. (*See* Ex. G at CIGNA07865348.) The strategic information and analysis reflected in these documents reflected long-term commitments and multi-year CPM strategy, and public disclosure of those discussions would cause commercial injury to CHLIC. *See* Cummings Decl. ¶ 9.

The information in Exhibits E and G is highly confidential and proprietary to CHLIC, and CHLIC maintains their utmost confidentially and limits disclosure. *See* Cummings Decl. ¶ 8. That is because disclosure would cause significant, irreparable economic injury to CHLIC and Cigna. *See id.* For example, Exhibit E reflects not only specific financial analysis and results, but also CHLIC's internal analysis of the pharmacy benefit marketplace, discussion of competitors, client feedback, description of strategic changes in CPM's operating model, its multi-year strategy, and future outlook. (*See* CIGN07864276-80.) If this information were

publicly disclosed and made available to CHLIC's competitors, they could use that information to the serious disadvantage of CHLIC by gaining insight into CPM's internal processes and strategies. *See* Cummings Decl. ¶ 8. With that upper hand, those competitors could try to reduce CHLIC's ability to freely compete for business in the pharmacy marketplace. *Id*. For instance, competitors would gain insight into CPM's multi-year strategy, the strategic "pivot points" that CPM believed would increase its competitiveness in the prescription drug health care marketplace, details of its financial performance (including internal analysis of the drivers of that performance), and its plans to recruit additional personnel in specific positions. *Id*.

The Court has previously sealed documents on the grounds similar to those described above. *See* 2017 Sealing Order (sealing financial and pricing terms in CHLIC agreements with plan sponsor clients); *see* July 2020 Sealing Order (sealing CHLIC agreements with client based on sensitive financial and pricing information, and sealing CHLIC responses to client Requests for Proposals containing annual pricing commitments and other sensitive financial information); *see also* ECF 276-1 at 5-7. The Court should again order similar information in Exhibits E and G sealed because it reflects sensitive financial analysis of CPM's earnings, performance drivers, and retail network. Other courts have also sealed similar kinds of documents based on the significant competitive injury that could result from their public disclosure. *See China Falcon Flying Ltd.*, 2017 WL 3718108, at *2 (sealing "detailed pricing information"); *Mars*, 2007 WL 496816, *2 (sealing confidential documents not publicly available on the grounds that public disclosure could have negatively affected the party's "negotiating position in its business"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (noting that "material concerning the defendants' marketing strategies" and "product development" contain "highly proprietary material" and therefore may remain under seal);

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 609, 614 (S.D.N.Y. 1998) (sealing defendants' "[c]onfidential business information" because they "provide valuable insights into a company's current business practices that a competitor would seek to exploit").

Courts have ordered documents reflecting similar kinds of commercially-sensitive internal analysis sealed, even when the documents were written years earlier, based on the recognition that historical documents can reflect long-term business strategies and commitments that can cause commercial injury if later disclosed to competitors and clients. *See U.S. ex rel. Scott v. Humana*, No. 3:18-61, 2019 WL 5964564, at *4 (W.D. Ky. Nov. 13, 2019) (ordering information on "bids and profit margins" that was "more than eight years old" sealed because the information, "even if historic, could be used by competitors to undercut [defendant's] marketplace standing"); *Encap LLC v. Scotts Co. LLC*, No. 11-685, 2015 WL 12991188, at *2 (E.D. Wis. Jan. 8, 2015) (granting defendants' motion to seal exhibits related to product development and marketing that were "more than a dozen years old" because "the market research data appears useful and there is no reason to believe it has lost its utility and value to [defendant] or its competitors").

And just as this Court previously sealed non-relevant discussions of internal CHLIC strategic projects and analysis, it should seal that same type of information in Exhibits E and G. *See* May 2020 Sealing Order at 12 (sealing internal discussion of "90-day Network" project that do not appear "relevant to the claims at issue in this lawsuit"); *id*. at 13 (sealing internal discussions of data migration and Argus design release "that appear[] to have no relation to the claims at issue in this lawsuit"). *See* Cummings Decl. ¶ 9.

### C. The Court Should Seal PHI and Other Personal Identifying Information in Exhibits B and D.

CHLIC also seeks to seal in part documents containing PHI, including plan participant prescription drug claims information, and personal identifying information the Court has previously sealed. In particular, CHLIC seeks to seal in part:

- References to a pharmacy transaction for one customer in **Exhibit B**, which contains a screenshot revealing personal identifiable information (e.g., customer name, customer date of birth, and pharmacy name).
- Names and other identifying information of CHLIC clients in **Exhibit D**.

CHLIC has an independent legal obligation under HIPAA and other state and federal privacy laws to seal PHI, including the name, address, Social Security Number, and medical information related to an individual. *See generally* 45 C.F.R. Parts 160, 162, and 164.[8] Courts frequently order such information to be sealed and have even sanctioned attorneys who failed to redact such information. *See, e.g.*, *Grayson v. Gen. Elec. Co.*, No. 3:13CV1799 (WWE), 2017 WL 923907, at *3 (D. Conn. Mar. 7, 2017) (sealing consumer personal identifying information); *Offor v. Ctr.*, No. 15CV2219ADSSIL, 2016 WL 3566217, at *4 (E.D.N.Y. June 25, 2016), *aff'd sub nom. Offor v. Mercy Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017) (sanctioning lawyers for publicly filing "unredacted medical records" in violation of HIPAA).[9] For these same reasons,

---

[8] *See also* U.S. District Court for the District of Connecticut, *Electronic Policies and Procedures* (rev. Oct. 11, 2018) § III.C (requiring parties to file certain personal data identifiers under seal pursuant to the E-Government Act of 2002, including "personal identifying number[s]" and "medical records, treatment and diagnosis").

[9] *See also Reed v. AMCO Ins. Co.,* No. 3:09-CV-0328-LRH-RAM, 2012 WL 1964094, at *1 (D. Nev. May 31, 2012) (awarding attorneys' fees because opposing counsel filed "several documents with improper confidential information"); *Weakley v. Redline Recovery Servs., LLC*, No. 09-CV-1423 (BEN) (WMC), at *2 (S.D. Cal. Apr. 20, 2011) (imposing a $900 sanction on defendant's counsel because counsel publicly filed documents containing the plaintiff's social security number, without redaction, in violation of Federal Rule of Civil Procedure 5.2).

CHLIC now requests that the Court seal the personal identifying information and PHI identified in Exhibit B as reflected in the redactions CHLIC proposes be made to this document.

Exhibit D includes the names and related identifying information of CHLIC clients as part of internal CHLIC discussion formulating a response to questions from that client. CHLIC seeks an order sealing only the individual names and related identifiers associated with these clients and their health plan participants, as well as similar third-party identifying information, which is not relevant to the claims at issue in this case, as reflected in CHLIC's proposed redactions. This Court has previously ordered similar third-party personal identifying information and PHI to be sealed, including client names and account numbers, customer transaction claim numbers, pharmacy claim transaction number, and health plan member identification numbers. *See* 2020 Sealing Order at 7 (sealing of "personal account identifiers"); *id*. at 10 (sealing "[c]ustomer account identifiers, including customs number, identification number and customer claim number"); *id*. at 12 (sealing "claims numbers/identification codes for 'individual customer prescription drug transactions'"); *id*. at 15 (sealing "information identifying client accounts, pharmacy chains and member IDs").

For the same reasons the Court previously sealed this type of personal information, the Court should now seal the personal identifying information, third-party identifiers, and PHI contained in Exhibits B and D.

**CONCLUSION**

For the above reasons, the Court should grant CHLIC's motion to seal the Subject Documents.

Dated: September 26, 2020

Respectfully submitted,

/s/ Brian W. Shaffer
Brian W. Shaffer (phv08654)

Jeremy P. Blumenfeld (phv23943)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com

Lisa R. Weddle (phv08957)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone: +1.213.612.2500
Facsimile: +1.213.612.2501
lisa.weddle@morganlewis.com

Michael Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone: +1.860.240.2945
Facsimile: +1.860.240.2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and Life Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2020, the foregoing document and all attachments thereto were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Brian Shaffer
Brian Shaffer

## Appendix A – List of Subject Documents

| Document | CHLIC's Proposed Treatment | Plaintiffs Object to CHLIC's Proposed Treatment? (Y/N) |
|---|---|---|
| **CHLIC's Proposed Treatment of Sealed Portions of Plaintiffs' September 18, 2020 Letter (ECF 325)** | | |
| pp. 1-3 | unseal | n/a |
| p. 4 | seal[10] | Y |
| **CHLIC's Proposed Treatment of Sealed Portions of Plaintiffs' September 21, 2020 Letter (ECF 329)** | | |
| pp. 1-5 | unseal | n/a |
| **CHLIC's Proposed Treatment of Sealed Exhibits Attached to Plaintiffs' September 21, 2020 Letter (ECF 329-01 to 329-05)** | | |
| Ex. A | unseal | n/a |
| Ex. B | seal in part | N |
| Ex. C | unseal | n/a |
| Ex. D | seal in part | N |
| Ex. E | seal in part | Y |
| Ex. F | unseal | n/a |
| Ex. G | seal in part | Y |
| Ex. H | unseal | n/a |

[10] The sealed language on page 4 of Plaintiffs' letter (ECF 325) quotes Exhibit I to the Meghan S. B. Oliver Declaration (ECF 315-02). The sealing of that exhibit is already before the Court. *See* CHLIC's Response in Support of Plaintiffs' Motion to Seal (ECF 320) at 16-19 (proposing to seal Exhibit I in full because it reflects commercially-sensitive information and because it contains discussions of client account issues unrelated to Plaintiffs' claims, as well as to seal Exhibit I in part in order to redact personal identifying information related to CHLIC clients).