UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br>       Plaintiffs,<br><br>vs.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br>       Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 26, 2020 |

**DECLARATION OF KEVIN CUMMINGS IN SUPPORT OF DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTIONS TO SEAL DOCUMENTS (ECF 327 & 331)**

I, Kevin Cummings, declare as follows:

1. I am over 18 years of age and have personal knowledge of the matters set forth herein based on my experience and review of documents produced in this case. If called upon, I could testify competently and truthfully to the matters discussed below.

2. I submit this declaration in support of Defendant CHLIC's Response to Plaintiffs' Motions to Seal Documents (ECF 327 & 331).

3. I am Supervising Counsel at Cigna Corporation ("Cigna"), the parent company of Defendant Cigna Health and Life Insurance Company ("CHLIC"). I joined Cigna as a full-time employee of Cigna's Legal department in 2013, providing support to various Cigna in-house lawyers for several months before becoming legal counsel in 2014. From 2014 forward, I served in various capacities within the Legal department, including, from 2015 through 2019 and as is

relevant here, acting as legal counsel to, among other areas, Cigna Pharmacy Management's ("CPM") prescription drug product and sales/client contracting operations. As a result of these roles within Cigna, I have an extensive understanding of CHLIC's pharmacy benefit management business and services and am able to speak to the confidential business information contained in the documents below.

4. I have reviewed each of the specific documents discussed in the paragraph below, which are exhibits to Plaintiff's reply letter to the Court dated September 21, 2020 (ECF 329-01 to 329-05) (together, the "Exhibits").

5. **Exhibit E** is an internal Cigna memorandum from Chris Hocevar (then head of CPM) to David Cordani (President and CEO of Cigna), Tom McCarthy (CFO of Cigna) and Matt Manders (head of CHLIC), providing them with a "September Pharmacy MOR." ("MOR" likely refers to "Monthly Operating Report.") In particular, this memorandum contains highly proprietary information regarding CPM's financial and strategy plans, including analysis of CPM's earnings and identities of key drivers of over- and under-performance (*see* CIGNA07864278); identification of "key areas of risk / opportunity" (*id*.); analysis of "Market Forces," including regulatory climate, industry competitors, prescription drug suppliers, and "feedback" from clients (*id*. at CIGNA07864278-79); an overview of "key operating model shifts" within CPM expected to continue develop in the future (*id*. at CIGNA07864279); analysis of CPM's "multi-year strategy" and related "strategic pivot points" (*id*.); an internal "retail network update" (including network financial analysis and key sources of pricing "variance") (*id*. at CIGNA07864279-80); and a discussion of CPM's prior efforts at attracting exceptional management and future efforts at filling key organization roles" (*id*. at CIGNA07864280). Such analysis was formulated by CHLIC's senior management in order to provide critical financial

and strategic information to Cigna's senior leadership; it therefore it reflects proprietary and commercially-sensitive confidential information.

6. **Exhibit G** is a spreadsheet providing CPM's 2014 earnings estimates. I understand that this document was attached to an email sent by Chris Hocevar to David Cordani, Tom McCarthy, Matt Manders, and other members of Cigna's executive leadership in April 2014. Exhibit G contains a breakdown of CPM's earnings for this period across relevant categories, such as the specific earning attributed to CPM's "Home Delivery" products and "Core (Retail/Rebate)" products, which I understand are not at issue in this litigation, as described below. It also contains internal analysis and commentary on these various items. The document also reflects CHLIC's assessment of potential future risks and opportunities, and overall earnings projections. Like Exhibit E, this internal financial analysis was formulated by CHLIC's senior management, was provided to Cigna's executive leadership, and reflects proprietary and commercially-sensitive confidential information.

7. The financial and strategic analysis in **Exhibits E and G** reflects broader strategic issues and multi-year commitments by CPM that remain relevant today and would competitively injure CHLIC if publicly disclosed. For instance, Exhibit E reflects describes CPM's "multi-year strategy for CPM," and the discussion of "Strategic Pivot Points" explicitly describes CPM's focus over next three or more years. (*See* Ex. E at CIGNA07864279.) Exhibit E also contains a detailed assessment of CHLIC's Pharmacy Benefit Management ("PBM") relationship with Catamaran (now, OptumRX), including an analysis of multi-year transition costs, anticipated financial synergies, and potential issues. (*See* Ex. E at CIGNA 07864278-280.) CHLIC's PBM agreement was a 10-year contract with Catamaran that encompassed a broad spectrum of services, and CHLIC only ceased using OptumRx for retail network contracting in

mid-2019.  Accordingly, the strategic information and analysis reflected in these documents reflected long-term commitments and strategy of CPM, and public disclosure of those discussions today would continue to cause commercial injury to CHLIC.

8. The information in **Exhibits E and G** is highly confidential and proprietary to CHLIC, and CHLIC maintains their utmost confidentially and limits disclosure.  Disclosure of this information would result in significant, irreparable economic injury to CHLIC and Cigna.  For example, as described above, Exhibit E reflects not only specific financial analysis and results, but also CHLIC's internal analysis of the pharmacy benefit marketplace, its view of competitors, client feedback on CPM's performance, a description of strategic changes in CPM's operating model, and a summary of its "multi-year strategy."  Such information clearly reflects highly confidential and proprietary commercial information that, if publicly disclosed (and therefore available to CHLIC's competitors), could allow those competitors to use that information to the serious disadvantage of CHLIC.  For instance, such information would allow CHLIC's competitors to gain insight into CPM's internal processes and strategies, including CPM's multi-year strategy, the strategic "pivot points" that CPM believed would increase its competitiveness in the prescription drug health care market-place, details of its financial performance (including internal analysis of the drivers of that performance), and its plans to recruit additional personnel in specific positions.  Disclosure of such sensitive information would cause commercial harm to CHLIC.

9. I have been involved in various aspects of this litigation, including being deposed by Plaintiffs' counsel on August 11, 2020 as a corporate representative of CHLIC to address various Rule 30(b)(6) topics identified by Plaintiffs' counsel. Accordingly, I have an understanding of Plaintiffs' claims in this litigation.  In addition to the commercially-sensitive

and proprietary confidential information described above, **Exhibits E and G** contain confidential information that does not relate to the issues raised in this litigation and whose disclosure would unnecessarily harm CHLIC.  Both documents are designed to provide Cigna's senior leadership with certain key information regarding CPM's financial status, market strategy, performance, and personnel decisions.  Given this purpose, it is not surprising that these documents contain only brief references to negative reimbursements and the participant cost-sharing practices on which Plaintiffs focus their claims here.  I understand that CHLIC has agreed to unseal those portions of Exhibits E and G that Plaintiffs rely upon in their filings with the Court, including the two bullets regarding the "claw back mechanism" and "retail spread" in Exhibit E, as well as row in Exhibit G regarding "ZBD."  Accordingly, I understand that CHLIC seeks to seal the remaining portions of these documents, which reflect commercially-sensitive and confidential analysis with no relevance to Plaintiff's claims.  For example, in Exhibit E, there are extensive discussions with no relation to Plaintiff's allegations, such as discussions of CPM performance related to specialty prescription drug market (*see* CIGNA07864278), CHLIC's "Home Delivery" services, strategic assessments of various "Market Forces" (such as competitors, clients, and suppliers), as well as discussions of CPM hiring initiatives (*see* CIGNA07864278-79.)  Similarly, Exhibit G contains a breakdown of CPM earnings performance, with specific earnings amounts identified with various business segments (e.g., Home Delivery or Retail), as well as internal comments on those components.  None of these discussions are relevant to Plaintiffs' claims in this action because they are not figures limited to negative reimbursement.  As a result, their public disclosure would needlessly cause CHLIC competitive injury by providing detailed internal assessments and analysis to CHLIC's competitors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of September, 2020, in Hartford, Connecticut.

*Kevin Cummings*

Kevin Cummings