## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>Defendant. | Civ. A. No. 16-cv-1702 (JAM)<br><br><br>September 29, 2020 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S SURREPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 1

    I.    Plaintiffs' Claims Do Not Present Questions Of Law Or Fact Whose Answers Would Be Common To The Proposed Classes Or Subclasses ............... 1

        A.    Plan Variations Regarding Class And Subclass Members' Prescription Drug Payments Defeat Commonality.................................... 1

        B.    The Class And Subclass Language Is Not Unambiguous In Plaintiffs' Favor, And Ambiguities Would Require Consideration Of Extrinsic Evidence That Destroys Commonality ................................ 5

        C.    Plaintiffs Fail To Satisfy Rule 23(a)'s Commonality Requirement With Respect To "Clawbacks" .................................................................. 8

        D.    Plan Variations Relating To The Standard Of Review Applicable To CHLIC's Plan Language Interpretation Defeat Commonality............ 9

    II.    Plaintiffs Have Not Carried Their Burden On Claims They Failed To Address, Including Counts II, III, IV, V, And VI Of The SACC ......................... 9

    III.    Fundamental Intraclass Conflicts Preclude Class Certification......................... 11

    IV.    Plaintiffs Cannot Fairly And Adequately Protect The Interests Of Class Or Subclass Members With Deductible Claims Or In Insured Plans ...................... 13

    V.    Plaintiffs Cannot Satisfy Rule 23(b)(2) ............................................................ 14

    VI.    Plaintiffs Cannot Satisfy Rule 23(b)(3) ............................................................ 15

        A.    Plaintiffs Have Not Offered A Method For Calculating Damages That Matches Their Liability Theory....................................................... 15

        B.    Plan-Specific Issues Related To ERISA Claims Defeat Predominance.................................................................................... 16

        C.    Individualized Issues Specific To RICO Claims Defeat Predominance.................................................................................... 17

CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997).................................................................................................2

*Audet v. Fraser*,
 332 F.R.D. 53 (D. Conn. 2019)..............................................................................13

*Buckley v. Slocum Dickson Med. Grp., PLLC*,
 585 F. App'x 789 (2d Cir. 2014) .............................................................................9

*Chavez v. Plan Benefit Servs., Inc.*,
 957 F.3d 542 (5th Cir. 2020) .................................................................................11

*CIGNA Corp. v. Amara*,
 563 U.S. 421 (2011)...............................................................................................19

*Commercial Union Assurance Co., plv v. Milken*,
 17 F.3d 608 (1994).................................................................................................12

*Coraud LLC v. Kidville Franchise Co., LLC*,
 121 F. Supp. 3d 387 (S.D.N.Y. 2015)....................................................................13

*Estate of Kenyon v. L+M Healthcare Health Reimbursement Account*,
 404 F. Supp. 3d 627 (D. Conn. 2019)......................................................................8

*Fay v. Oxford Health Plan*,
 287 F.3d 96 (2d Cir. 2002)..................................................................................1, 7

*Feifer v. Prudential Ins. Co. of Am.*,
 306 F.3d 1202 (2d Cir. 2002)...................................................................................5

*FMC Corp. v. Holliday*,
 498 U.S. 52 (1990)....................................................................................................7

*In re EpiPen ERISA Litig.*,
 No. 17-1884, 2020 WL 4501925 (D. Minn. Aug. 5, 2020)...................................10

*In re Express Scripts, Inc., PBM Litig.*,
 No. 05-1672, 2008 WL 2952787 (E.D. Mo. July 30, 2008)..................................10

*In re U.S. Foodservice Inc. Pricing Litig.*,
 729 F.3d at 119 (2d Cir. 2013)....................................................................17, 18, 19

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
    634 F.3d 883 (7th Cir 2011) ...............................................................15

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)...........................................................................14

*Mayer v. Mercy Health Servs., LLC*,
    No. 18-00391, 2019 WL 527964 (E.D. Mo. Feb. 11, 2019)...............16

*Met. Life Ins. Co. v. Massachusetts*,
    471 U.S. 724 (1985).............................................................................7

*Mulder v. PCS Health Sys.*,
    216 F.R.D. 307 (D.N.J. 2003)............................................................11

*Owens v. Metro. Life Ins. Co.*,
    323 F.R.D. 411 (N.D. Ga. 2017).........................................................16

*Peters v. Aetna, Inc.*,
    No. 15-00109, 2019 WL 1429607 (W.D.N.C. Mar. 29, 2019)...................11, 12, 13

*Royal Park Invs. v. U.S. Bank Nat'l Ass'n*,
    324 F. Supp. 3d 387 (S.D.N.Y. 2018)..........................................10, 20

*Smith v. OSF Healthcare Sys.*,
    933 F.3d 859 (7th Cir. 2019) ..............................................................16

*Stern v. Oxford Health Plans, Inc.*,
    No. 12-2379, 2013 WL 3762898 (E.D.N.Y. July 17, 2013)..................8

*U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*,
    No. 17- 7857, 2019 WL 948120 (S.D.N.Y. Feb. 15, 2019)................12

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016).................................................................19

*Versico, Inc. v. Engineered Fabrics Corp.*,
    520 S.E.2d 505 (Ga. Ct. App. 1999) ................................................5, 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................................1, 15, 17

## STATUTES

ERISA § 502(a)(1)(B)...........................................................................11, 14

ERISA § 502(a)(2)......................................................................................10

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................ *passim*

Fed. R. Civ. P. 23(b)(2) ...................................................................................................14, 15

Fed. R. Civ. P. 23(b)(3) ...................................................................................................15, 17

## INTRODUCTION

Plaintiffs seek to cram the claims of millions of participants in tens of thousands of different group benefit plans—maintained by thousands of different plan sponsors—into a single proceeding, ignoring all the plan-specific and individualized questions that must be answered to resolve them.  Plaintiffs' barebones opening motion ignored a host of fundamental problems with the proposed classes and did not satisfy their burden under Federal Rule of Civil Procedure 23. Plaintiffs' reply does not cure those deficiencies.  Their motion should be denied.

## ARGUMENT

**I.    Plaintiffs' Claims Do Not Present Questions Of Law Or Fact Whose Answers Would Be Common To The Proposed Classes Or Subclasses**

### A.    Plan Variations Regarding Class And Subclass Members' Prescription Drug Payments Defeat Commonality

The central question on Plaintiffs' claims for benefits is whether they paid more than they should have under the terms of their prescription drug benefit plans.  Plaintiffs' burden is to show that their proposed classwide proceeding is able to "generate common *answers*" to that question. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  They have not done so.

Plaintiffs claim that a few snippets of plan language present common questions because they can be interpreted in isolation and without reference to the rest of each class member's plan document.  That ignores that the Court must read the "Plan as a whole."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *see* ECF 306 at 5 & n.3 (interpreting isolated provisions of the Cobb County plan document at issue in this case "in context," and noting that the word "Cigna" means different things in different places within the same plan document, depending on context).

Plaintiffs contend that the plan variations identified by CHLIC are irrelevant.[1]  ECF 308 at 5, 11.  But the reply belies that contention by offering Plaintiffs' own interpretations of certain variations to argue that they support Plaintiffs' position.  ECF 308 at 7–11.  For example, Plaintiffs claim that references to "CIGNA's discount" (Exs. 31 & 35) or "the actual cost of the drug" (Ex. 40) or the "full cost" (Ex. 42)—language that appears in some plans but not others —must refer to the Pharmacy Reimbursement Rate, not the discounted Client Rate that each class member's plan agreed to pay for the drug.  If the phrase "CIGNA's discount" actually means what Plaintiffs say, *i.e.*, the Pharmacy Reimbursement Rate, then the language is not irrelevant.  To the contrary, that language would be very helpful to the claims of class and subclass members whose plans have that language.[2]  Conversely, if that language is interpreted to refer to the discounted Client Rate, then the language undermines the claims of those class and subclass members.  The same analysis is true for class members whose plans say participants must pay the "full cost" of the drug or "the actual cost of the drug."  Depending on the meaning of each phrase in the context of each plan in which it appears when such plan is interpreted as a whole, the language can support or undermine the claims of class and subclass members.  And regardless of who is right, plans that do ***not*** refer to "CIGNA's discount" or require class members to pay the "full cost" of the drug or "the actual cost of the drug" are subject to an entirely different analysis.  *See* ECF 275-3.

Plaintiffs also admit that the plans do ***not*** "uniformly" and "expressly" describe the phrase "portion of the Covered Expenses" to "include copayments and deductibles" because some plans

[1] Plaintiffs' effort to downplay all plan language other than the class and subclass language as "irrelevant" rings hollow when their own interrogatory responses identify myriad plan provisions that CHLIC supposedly "violated" and concede that yet additional provisions are "necessary to interpret or construe" the plans.  ECF 277, Ex. 11 at 2–19.

[2] The proposed class representatives do not have that language in their plans.  If Plaintiffs' interpretation is correct and the language supports the claims of absent class members whose plans have it, then Plaintiffs' argument that the language is ***irrelevant*** would undermine the claims of those absent class members.  That is compelling evidence that Plaintiffs cannot satisfy the adequacy or typicality requirements of Rule 23(a), which guard against conflicts between class representatives and absent class members.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

(like Ex. 46) describe that phrase without reference to deductibles and instead clarify, "That portion

is the Coinsurance."  ECF 274 at 15–16.  They concede that this variation is "relevant to Plaintiffs'

RICO claim," but they contend it is immaterial based on their interpretation of Ex. 46 as a whole,

including (among other things) the plan's definitions of "Deductible," "Covered Service," and

"charges."  ECF 308 at 8 & n.8.  Yet other plans do not have those same definitions.

    Plaintiffs also pretend that the plan variations identified by CHLIC affect only the class

and do not affect the subclass.  ECF 308 at 6.  That is wrong.  The plan described above that refers

to "CIGNA's discount" is a class and subclass plan (Ex. 31), as is the plan that refers to the "actual

cost of the drug" (Ex. 40).  Numerous other plans with the subclass language have material

variations in other provisions that bear on class members' entitlement to benefits and were

included as exhibits to CHLIC's Opposition.  *See* ECF 275 (CHLIC Exs. 32, 34, 35, 37, 41, 43,

48, & 52 all containing subclass language).  Plaintiffs' other attempts to address plan variations

identified by CHLIC are conclusory[3] or nonresponsive.[4]  And Plaintiffs say they did not intend for

participants in another plan to be part of the class, but they do not explain how or why, since that

plan contains the class language.[5]

    In fact, Plaintiffs' most recent filings introduce additional variations that make their claims

even less susceptible to classwide proof.  Plaintiffs' initial filings—including their motion to

amend their class definitions and the amended class definitions themselves—suggested that

Plaintiffs were not asserting class copayment claims in connection with any plan that defined

---

[3] *E.g.*, ECF 308 at 9 (asserting without explanation that the plan variation in Ex. 50 is "immaterial to determining the amount of the deductible"); ECF 308 at 11 (asserting without explanation that the description of what "a member must pay" in Ex. 27 "has nothing to do with copayments or deductibles").

[4] *E.g.*, ECF 308 at 10 (failing to argue or explain how the plan variation in Ex. 45, a plan and subclass plan, providing for a "$10 copay" for certain transactions is immaterial).

[5] *E.g.*, ECF 308 at 7–8 (describing Ex. 51 as ***not*** in the class" even though it meets the class definition).  *See also* ECF 275-51 at CIGNA00004609, CIGNA00004631 (containing class language).

deductible payments (and often copayments, in the "Your Payments" provision) by reference to the "Prescription Drug Charge."  *See, e.g.*, ECF 254 at 3.  Now, Plaintiffs say they do intend to assert class copayment claims in connection with such plans.  ECF 310 at 33.  That position means class copayment claims now arise under plans with any of *five* different "Your Payments" provisions describing differently how much participants should pay for prescription drugs, including one provision that defines the subclass, one provision that refers to the "Prescription Drug Charge," and three other variations that Plaintiffs do not specifically challenge.  *See* ECF 274 at 17–18; ECF 275-3 at 4–5; Ex. 54 at CIGNA02379814–02379815.

Plaintiffs also argue that the "Your Payments" provisions "do ***not*** determine the amount of the copayments."  ECF 308 at 9 (emphasis in original).  But that is precisely how Plaintiffs propose to use the "Your Payments" provision in connection with subclass claims.  If the "Your Payments" language were truly "irrelevant" (ECF 308 at 8) to determining the amount of the copayments, there would be no need for a subclass at all.  "Your Payments" variations—and Plaintiffs' muddled attempts to address them—both defeat commonality and give rise to intraclass conflicts between subclass members (who want to argue that the "Your Payments" language is relevant) and non-subclass members (who want to argue that the "Your Payments" language is irrelevant).

Lastly, Plaintiffs argue that the Court should disregard the plan variations identified by CHLIC as "cherry-picked" examples that appear in only a "small handful" of plan documents.  ECF 308 at 7.  But Plaintiffs have presented no ***evidence*** that the plan variations identified by CHLIC appear in only a "small handful" of plans or even that material plan variations are "limited" to those identified by CHLIC.  ECF 308 at 7.  Plaintiffs offer no evidence as to how many plans refer to "CIGNA's discount" or the "full cost" of a drug, or have each variation of the "Your

Payments" language.  They have not met their burden under Rule 23.[6]

**B.     The Class And Subclass Language Is Not Unambiguous In Plaintiffs' Favor, And Ambiguities Would Require Consideration Of Extrinsic Evidence That Destroys Commonality**

Plaintiffs do not dispute that plan-specific evidence of plan sponsor intent (such as sponsor testimony, histories of negotiations, and related ASO agreements) would be admissible to resolve ambiguous plan language.[7]  *See* ECF 274 at 22–24.  They offer no response to CHLIC's showing that sponsors may intend for participants to sometimes pay more than the Pharmacy Reimbursement Rate.  *See* ECF 275-7 & 275-8.  Nor do they dispute that such plan-specific evidence is not common to all members of the class and subclass.  Instead, Plaintiffs argue that the class and subclass language each unambiguously limits all participant prescription drug payments to no more than the Pharmacy Reimbursement Rate.  Plaintiffs are wrong.

CHLIC's ambiguity argument is based on the well-established principle that the language of each plan must be interpreted as a whole.  *See* ECF 274 at 21–22.  Conflicts between the class or subclass language in a plan and other provisions in the ***same plan*** (that appear in some plans and not others) give rise to ambiguities.  *See, e.g.*, *Versico, Inc. v. Engineered Fabrics Corp.*, 520 S.E.2d 505, 508 (Ga. Ct. App. 1999) (contract was ambiguous notwithstanding apparently unambiguous snippet of language because of contradictory language elsewhere in the contract).

For example, Plaintiffs suggest that the class language is the "***only*** definition for the amount

---

[6] Plaintiffs contend that there were no "clawbacks" associated with the minimum-payment provision in the plan identified by CHLIC, but they have not shown that there are no "clawbacks" associated with ***any*** minimum-payment provision.  CHLIC has identified numerous other plans for which there are "clawbacks" associated with a minimum-payment provision, including the plan attached as Ex. 55.

[7] Plaintiffs suggest that CHLIC's intent should dictate the meaning of plan language drafted by CHLIC.  ECF 308 at 12.  That is wrong as a matter of law because a plan document—including one drafted by CHLIC—has legal effect only if it is adopted by the plan sponsor offering the benefit.  What matters is the intent of the employer (plan sponsor) offering the benefit, not the service provider who prepared a draft plan document for the employer's review.  *See Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1211 (2d Cir. 2002) ("If a plan is unambiguous regarding ***the employer's*** intent to promise a vested benefit, that promise is enforced." (emphasis added)).

of the copayment" in class member plans.  ECF 308 at 21 (emphasis in original).  That is false.  *See, e.g.*, ECF 207-02 at CIGNA00001701 ("No charge after $10 copay"); Ex. 55 at CIGNA04523926 (describing "[t]he amount you pay for each 30-day supply" to include a "minimum of $6" for "Tier 1" generic drugs).[8]  It is also fatal to Plaintiffs' argument that the class language unambiguously limits the amount of prescription drug payments.  Plaintiffs may contend that the class language limits a prescription drug payment to a Pharmacy Reimbursement Rate of $12 for a particular drug, but if the plan also explains to participants that "[t]he amount you pay" is a "minimum of $6," that plan may be ambiguous when read as a whole.  *See, e.g.*, *Versico, supra*.  Resolving that ambiguity will be critically important to class members whose plans require a "minimum of $6" but irrelevant to class members whose plans do not.

Plaintiffs' next argument confuses the concepts of coverage and reimbursement—that "charges made by a Pharmacy" cannot refer to the amount a pharmacy "charges" (*i.e.*, asks to be paid), which they do not dispute is often higher than the amount a pharmacy is ultimately reimbursed.[9]  *See* ECF 274 at 22.  Without coverage, a participant would have to pay whatever the pharmacy "charges" that participant.  With coverage, a participant can receive prescription drugs by paying only the cost share required by his or her plan.  In other words, CHLIC provides "coverage" for the prescription, regardless of what the participant ultimately pays or the pharmacy

---

[8] Plaintiffs' argument (ECF 308 at 9) that CHLIC supposedly "ignored" minimum copayment provisions misses the point.  Class and subclass plans differ in how they describe a participant's payment obligation, with some describing a flat dollar amount and others describing a "minimum" payment obligation.  The meaning of each plan cannot be determined on a classwide basis because it requires consideration of the particular words used or not used.

[9] Plaintiffs mischaracterize the testimony of a former CHLIC employee on this issue.  *Compare* ECF 308 at 22 (stating that CHLIC "***does not*** offer a health plan product" providing certain coverage (emphasis added)), *with* ECF 315, Ex. Q at 93:19–23 (testimony by a former CHLIC employee testifying in her personal capacity that she did not ***recall*** any CHLIC health plan products providing certain coverage).  In any event, Plaintiffs' need to resort to extrinsic evidence belies their claim that the plan language is unambiguous in their favor; if the language were truly unambiguous, it would be improper (and unnecessary) to consider extrinsic evidence.

ultimately is reimbursed.  That is a basic principle of prescription drug benefits.[10]

With respect to the subclass language referring to "the amount paid by the plan to the Pharmacy," Plaintiffs' reply confirms ambiguity requiring consideration of plan-sponsor intent. Plaintiffs do not dispute that "plan[s]" do not pay anything directly "to the Pharmacy," and that the "amount paid by the plan" to CHLIC (*i.e.*, the Client Rate) may be different than the amount paid "to the Pharmacy" (*i.e.*, the Pharmacy Reimbursement Rate).  Because there is no "amount paid by the plan to the Pharmacy," the phrase is ambiguous.  ECF 274 at 22–23.[11]  To decide what it means, the Court must look to "the language of the policy and other indicia of the intent of the policy's creator," including evidence "outside the plan's written language." *Fay*, 287 F.3d at 104; *see* ECF 274 at 22–23.  That inquiry is not capable of common proof.[12]

Similarly, Plaintiffs' argument that the ***subclass*** language is unambiguous and entitles them to pay no more than the Pharmacy Reimbursement Rate, regardless of the other language in each

---

[10] Plaintiffs' position would also result in deductible payments that are inconsistent with the very notion of a "deductible."  Deductibles are amounts paid by participants before plans start to pay. https://www.healthcare.gov/glossary/deductible/.  Plan sponsors choose deductibles as part of their benefit designs to help control the plan's total prescription drug costs for all participants.  If Plaintiffs are correct that deductible payments should have been set at the Pharmacy Reimbursement Rate when it was less than the Client Rate, the plan would have paid at least part of the cost of drugs purchased during a participant's deductible phase, *i.e.*, the difference between the Client Rate described in the ASO agreement and the Pharmacy Reimbursement Rate.  That is contrary to the definition of a deductible and its purpose of controlling costs to the plan.

[11] Plaintiffs suggest that the "plan" must mean the insurance company in the fully insured context.  But the insurance company and the ERISA plan are distinct entities.  Indeed, every time the Supreme Court has discussed insured benefit plans, it has distinguished between the "plan" that purchases the insurance and the insurance company that provides it.  *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer."); *Met. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) ("Plans may self-insure or they may purchase insurance for their participants.").  Regardless, none of the Plaintiffs participated in fully insured plans, so they have no interest in arguing what the term "plan" means in that context.

[12] Plaintiffs' arguments also are internally inconsistent.  For example, Plaintiffs claim that the language is unambiguous, but they try to use a fully insured plan as extrinsic evidence to interpret a self-funded plan.  Plaintiffs' use of extrinsic evidence (like a fully insured plan) to interpret their self-funded plans is no surprise given Plaintiffs' half-hearted and inconsistent efforts to exclude extrinsic evidence.  For example, in an effort to bolster their interpretation of the subclass language, Plaintiffs misleadingly cite an email from a supposedly "very knowledgeable employee" for the proposition that the "plan" in the subclass language refers to CHLIC.  ECF 308 at 19 n.18.  But the email itself has nothing to do with plan language, a fact that the employee confirmed at deposition and that Plaintiffs ignore.  Ex. 56 at 96:8–98:15.

plan, is inconsistent with their separate argument that the *class* language is unambiguous and means exactly the same thing.  If the class language unambiguously means that class members should never pay more than the Pharmacy Reimbursement Rate (as Plaintiffs claim), then the subclass language would be superfluous.  That cannot be.[13]

The Court should not and cannot resolve the meaning of the class and subclass language, or each plan's language as a whole, at this stage.  The question under Rule 23 is limited to whether those provisions can be interpreted with respect to all members of the class and subclass on a classwide basis using common proof.  They cannot.  Class certification should be denied.

### C.  Plaintiffs Fail To Satisfy Rule 23(a)'s Commonality Requirement With Respect To "Clawbacks"

Plaintiffs have abandoned their original argument that a common question supporting class certification is whether plans "prohibited [CHLIC] from 'clawing back' the copayment and deductible 'overpayments' that [it] charged to Class Members."  ECF 205 at 3.  They effectively concede that plan documents do *not* prohibit "clawbacks."  ECF 308 at 4 ("The 'clawback' is not the harm").  Instead, Plaintiffs argue that commonality is satisfied because "clawbacks" are supposedly common evidence of the amount of "overcharges."  ECF 308 at 4.

Whether a "clawback" is associated with an impermissible "overcharge," however, requires an individualized analysis to determine whether the participant in fact paid too much for prescription drugs under his or her plan.  Even under Plaintiffs' interpretation of class members' plan terms, "clawbacks" do not reflect what a participant *should have paid* because they do not account for the effects of shifting deductibles, out-of-pocket maximums, and cross-accumulation

---

[13] *See Estate of Kenyon v. L+M Healthcare Health Reimbursement Account*, 404 F. Supp. 3d 627, 632 (D. Conn. 2019) ("ERISA plans are contracts, and courts use familiar rules of contract interpretation.  One such rule is that the law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous or meaningless."); *Stern v. Oxford Health Plans, Inc.*, No. 12-2379, 2013 WL 3762898, at *11 (E.D.N.Y. July 17, 2013) (plan interpretations rendering a clause superfluous "must be rejected").

that appear to varying degrees in different plans.[14]  *See* ECF 274 at 40–41; ECF 279 at 17–22.

### D. Plan Variations Relating To The Standard Of Review Applicable To CHLIC's Plan Language Interpretation Defeat Commonality

Plaintiffs do not dispute that plans differ in how (if at all) they confer discretionary authority on CHLIC to interpret plan terms.  *See* ECF 274 at 27–29.  Instead, Plaintiffs argue that varied claims procedures in the plan documents at issue are irrelevant to evaluating the reasonableness of any given plan's claims procedures under DOL regulations.  ECF 308 at 15.  But Plaintiffs have at times acknowledged that what constitutes a "claim" for purposes of the DOL regulations on claims procedures is a plan-specific inquiry.  ECF 198 ¶¶ 133–37.  Thus, CHLIC's compliance with the DOL regulation cannot be determined through common proof because claims procedures vary across plans.  *See, e.g.*, ECF 274 at 27–28 (noting that emergency services or out-of-network services had different claim requirements than in-network non-emergency services).

Plaintiffs also argue that variations in the applicable standard of review are immaterial because the class and subclass language are unambiguous in Plaintiffs' favor.  ECF 308 at 16–22.  They are not.  *See supra* at 5–8.  Nor is this the appropriate stage of the case in which to make that determination.  Plaintiffs therefore cannot avoid a plan-by-plan review of whether to apply the deferential arbitrary and capricious standard of review to ambiguous plan terms.  *Buckley v. Slocum Dickson Med. Grp., PLLC*, 585 F. App'x 789, 793 (2d Cir. 2014).

## II. Plaintiffs Have Not Carried Their Burden On Claims They Failed To Address, Including Counts II, III, IV, V, And VI Of The SACC

In their reply, Plaintiffs argue for the first time (in a footnote) that they "are pursuing all six of their ERISA claims" on a classwide basis.  ECF 308 at 35 n.33.  But Plaintiffs still have not

---

[14] Plaintiffs are inadequate representatives insofar as their copayment plans give them no reason to develop a damages model that adequately accounts for deductible shifting or cross-accumulation for putative class members with deductible plans.  *See infra* at 13.

actually addressed the elements of these other ERISA claims. They never mention "prohibited transactions" or the elements of such a claim. They never mention claims on behalf of their respective plans under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for losses to their ERISA plans, which would focus on o each plan's and plan sponsor's contract with CHLIC. The lone mention of "fiduciary duties" was in the context of an allegation that CHLIC operated "a claims processing system that cannot track which Plan language applies to which claims," ECF 274 at 36—an allegation Plaintiffs now admit they never believed to be true and have abandoned,. *see* ECF 313 at 27. Plaintiffs have not carried their burdens under Rule 23 as to liability theories they failed to address. *See Royal Park Invs. v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018) ("[As] the party seeking class certification, Royal Park bears the initial burden [under Rule 23] and cannot solely wait to respond to deficiencies U.S. Bank raises in its in opposition.").

Nor have Plaintiffs satisfied Rule 23 as to any relief tied to CHLIC's compensation for their other ERISA claims, such as disgorgement, constructive trust, restitution, equitable lien, or surcharge—none of which are mentioned in Plaintiffs' submissions. Plaintiffs concede that CHLIC's compensation is pursuant to ASO and insurance contracts with plan sponsors, not the plan documents. ECF 308 at 12. But Plaintiffs do not even attempt to show that CHLIC's contracts with plan sponsors allow for common answers to questions about CHLIC's compensation or otherwise satisfy the demands of Rule 23. *See* ECF 308 at 12 (ASO contracts between CHLIC and plan sponsors are "irrelevant").

Regardless, courts routinely decline to certify ERISA fiduciary duty claims under Rule 23, even where (unlike here) plaintiffs have proffered evidence and arguments to attempt to carry their burden on class certification. *See In re EpiPen ERISA Litig.*, No. 17-1884, 2020 WL 4501925, at *3 (D. Minn. Aug. 5, 2020) (issue of fiduciary status, breach, and injury lack commonality); *In re*

10

*Express Scripts, Inc., PBM Litig.*, No. 05-1672, 2008 WL 2952787, at *17–22 (E.D. Mo. July 30, 2008) (same as to issue of fiduciary status); *Mulder v. PCS Health Sys.*, 216 F.R.D. 307, 312–16 (D.N.J. 2003) (same); *accord Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 548-49 (5th Cir. 2020) (vacating certification order of fiduciary duty and prohibited transaction claims where liability would turn on defendant's fiduciary status and compensation). Plaintiffs have not met their burden, and class certification on these other theories should be denied.

### III.   Fundamental Intraclass Conflicts Preclude Class Certification

Plaintiffs' motion asked the Court to order the "reprocessing of all affected prescription drug claims and recalculation of all class member benefits." ECF 206 at 12. Plaintiffs articulated precisely how they contend that should be accomplished in certain interrogatory responses. ECF 277, Ex. 11 at 27–33. CHLIC then demonstrated in its Opposition that Plaintiffs' proposed method for recalculation creates intraclass conflicts, as more than 335,000 class members—including more than 190,000 subclass members—would be worse off under Plaintiffs' method than under the method actually used by CHLIC.[15] ECF 274 at 29–31.

Now, Plaintiffs have abandoned their request for a "recalculation of all class member benefits" and instead ask for the Court to order "the return of the overcharges," as measured by "clawbacks." ECF 308 at 4, 31. But Plaintiffs still do not satisfy the requirements of Rule 23. As explained above, "clawbacks" are not common evidence of the amount of alleged "overcharges" for a claim under ERISA § 502(a)(1)(B). *See supra* at 8–9; *see also Peters v. Aetna, Inc.*, No. 15-

---

[15] Plaintiffs point to the supposedly "*de minimis* nature of this issue" by noting that Plaintiffs and their families would owe more under Plaintiffs' method in only a few transactions. ECF 308 at 24 n.21. But that only highlights the real intraclass conflicts between Plaintiffs (who are generally better off under their method) and the hundreds of thousands of class members who would be worse off under their method. Plaintiffs also cannot use whatever opt-out rights may be available under Rule 23(b) to avoid Rule 23(a)'s adequacy requirement. It would be antithetical to the requirements of Rule 23 to demand that each absent class member determine at the outset of class proceedings that he or she has a conflict with the class representatives seeking to represent them or, for example, is one of the tens of thousands of class or subclass members who would be worse off under Plaintiffs' proposed calculation method if Plaintiffs prevail. If opt outs could cure glaring intraclass conflicts like those in this case, adequacy would be a dead letter.

00109, 2019 WL 1429607, at *7 (W.D.N.C. Mar. 29, 2019) (measure of benefits that ignores plan-specific benefit designs, like deductibles and out-of-pocket maximums, is arbitrary and does not support class certification).

Nor have Plaintiffs carried their burden to show that requesting a "return of the overcharges" is a viable way to avoid intraclass conflicts.  Plaintiffs essentially argue that the plans of many class and subclass members call for participants to pay the lesser of the Client Rate *or* the Pharmacy Reimbursement Rate (among other things).  This directly contradicts Plaintiffs' binding interrogatory responses explaining how their benefits should have been determined based on their interpretation of the plans' terms.[16]  *U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*, No. 17-7857, 2019 WL 948120, at *21 (S.D.N.Y. Feb. 15, 2019).  And Plaintiffs have presented no evidence or argument that any plan can be read as requiring class members to pay the lesser of those two different rates.

Plaintiffs also invite the Court to ignore intraclass conflicts because they supposedly arise from a set-off argument that CHLIC failed to plead.  ECF 308 at 24–25.  That is false.  Under both ERISA and RICO, it is Plaintiffs' burden to prove injury and damages, the measure of which is the difference between what a participant actually paid and what that participant should have paid under the plan's terms.[17]  *See Peters*, 2019 WL 1429607, at *6–8; *Commercial Union Assurance Co., plc v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994).  Determining what a participant should have paid for a given transaction requires consideration of other transactions because "a participant's responsibility on one claim may depend on the participant's and the plan's responsibility on the

---

[16] Plaintiffs say the SACC should take precedence over their interrogatory responses, but since filing the SACC, Plaintiffs did not amend their interrogatory responses and have, at times, endorsed them. *See, e.g.*, ECF 277, Ex. 16 at 173:4–174:9.

[17] None of the cases cited by Plaintiffs on this issue arise in the ERISA or RICO context. *See* ECF 308 at 24–25.

participant's previous claims." *Peters*, 2019 WL 1429607, at *8.[18]  And if Plaintiffs are right, they do not get the benefit of the Client Rate on any of their transactions, even when that rate was lower than the Pharmacy Reimbursement Rate.  That is the conflict that Plaintiffs created.

## IV.  Plaintiffs Cannot Fairly And Adequately Protect The Interests Of Class Or Subclass Members With Deductible Claims Or In Insured Plans

Plaintiffs do not dispute that they engaged only in copayment transactions, but they argue that they have an incentive to pursue deductible claims on behalf of absent class members because "the core violation and the Plan language for both copayments and deductibles are the same." ECF 308 at 26.  That is a gross oversimplification.  As explained in CHLIC's Opposition (ECF 274 at 31–32), deductibles present unique issues not present in the copayment context—such as how to account for subsequent transactions (that may require additional payments to reach the deductible), cross-accumulation between prescription and medical benefits toward the deductible, deductible-specific language in the plans, and particular benefit design goals—that do not "occupy essentially the same degree of centrality" to Plaintiffs' copayment-only claims.  *Audet v. Fraser*, 332 F.R.D. 53, 67–68 (D. Conn. 2019).  Plaintiffs' failure to present a model accounting for deductibles or cross-accumulation confirms that their claims are atypical of class or subclass members with deductibles.  *See Peters*, 2019 WL 1429607, at *6–8 (denying class certification for failure to present damages model accounting for deductibles).

In addition, participants in self-funded plans (like Plaintiffs) are differently situated than class or subclass members in fully insured plans.  Plaintiffs argue that CHLIC is a proper defendant as to all ASO plans—even those that it no longer services—because CHLIC "secretly appropriated

---

[18] It is analogous to how a plaintiff seeking lost profits bears the burden of proving both lost revenue and avoided costs in order to recover.  *See, e.g.*, *Coraud LLC v. Kidville Franchise Co., LLC*, 121 F. Supp. 3d 387, 398 (S.D.N.Y. 2015) ("The party claiming lost profits must establish not only the revenue that it would have received absent the breach of contract, but also what costs it avoids as a result of being relieved of its obligations under the contract.").  Avoided costs reduce the plaintiff's recovery, but they are not considered a set-off argument that the defendant must plead.

the benefit and kept it for itself."  ECF 308 at 28.  But the law is clear that claims for benefits lie only against parties who can be ordered to pay plan benefits, without regard for who "profit[ed]" from the violation.  ECF 274 at 32–33.  The contracts governing CHLIC's authority to pay benefits on behalf of a self-funded plan—the ASO agreements—typically strip CHLIC of that authority shortly after CHLIC stops providing services to that plan.  *See* ECF 275-23 at CIGNA12361819. Once CHLIC no longer has access to the plan sponsor's funds necessary to pay benefits, and because CHLIC is not an insurer, it never had (or has) financial responsibility to fund the benefits due.  *Id.*  In fact, those same ASO agreements govern how plans would compensate CHLIC for providing services, and Plaintiffs do not even allege that CHLIC was overcompensated under those ASO agreements.  Nor have Plaintiffs demonstrated that the ASO agreements are uniform or subject to common proof.  *See supra* at 10.[19]

## V.      Plaintiffs Cannot Satisfy Rule 23(b)(2)

In their initial filings, Plaintiffs suggested that two CHLIC practices "apply generally to the class" and therefore supported certification under Rule 23(b)(2).  ECF 274 at 35–36.  In their reply, Plaintiffs have effectively abandoned their allegation that CHLIC operated "a claims processing system that cannot track which Plan language applies to which claims," ECF 274 at 36, now admitting that this allegation is wrong and that they never even believed it to be true, *see* ECF 313 at 27.  Plaintiffs also abandoned their allegation that the "practice of 'clawing back' copayments and deductibles" (ECF 206 at 12) warranted injunctive relief respecting the class as a whole when they acknowledged that "[t]he 'clawback' is not the harm" at issue.  ECF 308 at 4.

Following these concessions, Plaintiffs are left with only a quintessential claim for

---

[19] Nor can the ERISA § 502(a)(1)(B) remedy be expanded as a matter of judicial discretion, as Plaintiffs suggest.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) ("We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.").

monetary relief that cannot be certified under Rule 23(b)(2).  *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th Cir 2011) ("[P]laintiffs are not really interested in final prospective equitable relief at all; they are singularly focused on recovering a retrospective damages remedy, and Rule 23(b)(3), not (b)(2), governs certification of a damages class.").   In fact, Plaintiffs do not even seek reprocessing of their claims under the plan terms, which would require accounting for deductibles, out-of-pocket maximums, cross-accumulation, and all the specific terms that govern the amount of each class member's benefit; instead, they simply ask the Court to order CHLIC to pay a lump sum to each participant based on the amount that was "clawed back" on specific transactions.  That is damages, not an injunction.

## VI.    Plaintiffs Cannot Satisfy Rule 23(b)(3)

### A.    Plaintiffs Have Not Offered A Method For Calculating Damages That Matches Their Liability Theory

Plaintiffs wrongly suggest that CHLIC is "[u]nable to attack Mustoe's overcharge calculations." ECF 308 at 33.  To the contrary, CHLIC moved to exclude Mr. Mustoe's declaration because his method does not measure "overcharge[s]" at all.  *See* ECF 275 at 14–24.  His method fails to consider a "but-for" world in which benefit designs (like deductibles and out-of-pocket maximums) apply to participant benefit determinations.  *Id.*[20]  And the "but-for" world Mr. Mustoe considers does not replace the Client Rate with the Pharmacy Reimbursement Rate (as Plaintiffs allege CHLIC should have done) but instead applies both, without any basis even in Plaintiffs' interpretation of the plans' terms.  Plaintiffs' efforts to ignore those benefit designs or delay addressing them until "some later point in the litigation" are insufficient.  *Dukes*, 564 U.S. at 350

---

[20] In a desperate attempt to distract from the deficiencies of their motion for class certification, Plaintiffs filed a discovery motion—improperly styled as a "motion to strike"—that mischaracterizes the history of discovery in this case.  *See* ECF 311.  CHLIC's response to that motion to strike sets the record straight and confirms that the Court should not certify a massive class action based on illusory alleged discovery abuses.

(movant must "affirmatively demonstrate his compliance" with Rule 23).

**B.      Plan-Specific Issues Related To ERISA Claims Defeat Predominance**

Plaintiffs point to a notation in CHLIC's records to argue that it will be easy to determine the ERISA status of every plan at issue.  ECF 308 at 34–35.  Aside from coming too late, CHLIC's records are not binding on class members or on CHLIC.  *See* ECF 274 at 43–44.  At most, they constitute one piece of evidence as to whether a plan is governed by ERISA.  *See Mayer v. Mercy Health Servs., LLC*, No. 18-00391, 2019 WL 527964, at *6 (E.D. Mo. Feb. 11, 2019) (remanding claim to state court despite Cigna Group Insurance's argument that plan was governed by ERISA and had filed ERISA Form 5500s for the plan for several years).  And entire class action cases have been litigated about whether a single plan sponsored by a single employer satisfied the church plan or governmental plan exemption.  *See* ECF 274 at 43; *see also, e.g.*, *Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 869–70 (7th Cir. 2019) (reversing summary judgment and remanding for additional discovery in putative ERISA class action to determine whether hospital system qualified for the church plan exemption).

The cases Plaintiffs cite on this issue did not specifically address whether ERISA status in a sprawling class action such as this defeats predominance.  ECF 308 at 34–35.[21]  And the plaintiffs in one of those cases proposed a method for individually assessing the ERISA status of each plan based on more than the claims administrator's internal notation.  *See Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 416–17 (N.D. Ga. 2017).  Plaintiffs have not proposed such a method.  Nor have they undertaken to show that CHLIC's notations are a reliable indicator of ERISA status for every class member's plan.

---

[21] The *Owens* case discussed the issue in the context of ascertainability, which Plaintiffs address at the outset of their reply.  ECF 308 at 2–4.  CHLIC's ascertainability argument focuses on Plaintiffs' position that the class should encompass participants in any plan that "***Plaintiffs consider*** . . . to be substantively the same and to have the same legal effect" as the class language.  ECF 274 at 9 n.7 (emphasis added).  That is not ascertainable.

### C.      Individualized Issues Specific To RICO Claims Defeat Predominance

For the first time on reply, Plaintiffs acknowledge their burden under Rule 23 to focus on the elements of their RICO claim.  But Plaintiffs' showing still does not satisfy Rule 23(b)(3).  Plaintiffs promise that they plan to use common evidence to establish "the control that Cigna exerted over Argus[22] and/or OptumRx," ECF 308 at 36–37, but what matters at this stage is evidence, not assurances that the requirements of Rule 23 will one day be met.  *See Dukes*, 564 U.S. at 350.  And it is black-letter law that Plaintiffs' reliance on the allegations of the SACC—as opposed to record evidence—is insufficient.  *See id.  But see* ECF 308 at 37 n.34 (incorrectly stating that allegations in the SACC are "sufficient to certify the RICO Class and Subclass").

The reply suggests that two distinct types of alleged misrepresentations support two different approaches to Plaintiffs' RICO claims.  Neither approach satisfies Rule 23(b)(3).

Plaintiffs first contend that snippets of language in the plans at issue were fraudulent misrepresentations.  Those snippets were the only "alleged misrepresentations" discussed in Plaintiffs' motion for class certification, *see* ECF 206 at 20, and CHLIC's Opposition explained at length why this approach cannot satisfy Rule 23, *see* ECF 274 at 47–50.  In their reply, Plaintiffs do not explain how this approach avoids overwhelmingly individualized questions of causation, such as whether members of the class or subclass actually reviewed or relied upon certain snippets of plan language or whether members would have acted differently if the plans did not contain those snippets.  *See id.*  Plaintiffs also concede that they cannot recover expectancy damages.  ECF 308 at 40 n.38.  But that is precisely what they are seeking under this approach to RICO.[23]  The

---

[22] The reply marks the first time Plaintiffs even mention Argus, one of the alleged RICO enterprises, but they still cite no evidence regarding Argus, let alone evidence that CHLIC's relationship with Argus presents common issues that predominate over individual issues.

[23] Plaintiffs' attempt to enforce plan terms that they also contend are fraudulent misrepresentations distinguishes this case from *In re U.S. Foodservice Inc. Pricing Litig.*, which expressly noted that such an attempt would be problematic under RICO.  *See* 729 F.3d 108, 122–23 (2d Cir. 2013).

proper measure of damages is the difference between what participants actually paid and what participants would have paid in the absence of the alleged misrepresentations (*i.e.*, if the snippets of language had been ***omitted*** from the plans). Plaintiffs' failure to show that common proof can be used to make that determination means that they have not carried their burden under Rule 23.

Plaintiffs then contend that "false representations concerning the amount that the Member owed as a cost share" support class certification. ECF 308 at 38. They waived this argument by not making it in their motion. Regardless, this alternative approach to RICO cannot satisfy Rule 23. For example, individualized questions of causation and reliance are overwhelming insofar as Plaintiffs will have to prove that each member of the class and subclass was deceived into paying too much for prescription drugs. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 119 ("[P]roof of misrepresentation—even widespread and uniform misrepresentation—only satisfies half of the equation" in cases such as this because plaintiffs must also demonstrate reliance on a defendant's common misrepresentation to establish causation under RICO" (internal quotation marks omitted)). Plaintiffs try to avoid these individualized issues by assuming that the information set forth in the transaction data is the only information that pharmacists communicated to participants at the point of sale and that so-called "gag clauses" in OptumRx's pharmacy contracts universally prevented participants from learning of alleged "overcharges." But record evidence debunks those assumptions. Plaintiffs themselves had various conversations with their pharmacists about how much they were to pay, ECF 277, Ex. 2, and there are examples in the record of pharmacies disclosing the existence of "clawbacks," notwithstanding any confidentiality obligations they owed to OptumRx.[24] Moreover, Mr. Perry filled many prescriptions with the

---

[24] Plaintiffs repeatedly suggest that CHLIC "impos[ed] 'gag' agreements to prohibit Argus, OptumRx, and the pharmacies from disclosing Cigna's scheme." ECF 308 at 37–38. But the record shows that OptumRx—not CHLIC—included confidentiality obligations in its pharmacy contracts ***without*** direction from CHLIC. *See, e.g.*, Ex. 57 at 55:3–59:3.

actual belief that he was being asked to pay more than he was supposed to.  ECF 274 at 49.  That directly contradicts Plaintiffs' assertion that ignorance of the "scheme" can be assumed based on proof of payment because "[n]o rational actor who knew about the illegality of Cigna's clawback scheme would have willingly elected to pay more for prescription drugs than they had to."  ECF 308 at 39 n.36.  Mr. Perry apparently did just that.[25]

Under either approach, Plaintiffs must prove a plan violation to succeed on their RICO claims; there is no RICO injury unless participants paid more than they were supposed to.  This means that plan variations defeating commonality and predominance will also prevent class certification of the RICO claims.  And because the RICO class and subclass include participants in plans governed by state law rather than by ERISA, Plaintiffs must also show that variations in state law do not prevent a classwide determination of whether those plans were violated.  As explained in CHLIC's Opposition (at 44–46), Plaintiffs have not carried their burden to show that choice-of-law issues are capable of classwide resolution or that Rule 23 is satisfied notwithstanding variations in state law.  This further sinks Plaintiffs' motion as to the RICO claims.

Plaintiffs contend that supposedly common questions regarding CHLIC's intent to defraud warrant class certification.  That is wrong under either of Plaintiffs' approaches to RICO because plan-sponsor intent is critically important.   To know if a plan document contains a misrepresentation, one must consider what the plan sponsor intended for the plan to provide.  That is a plan-specific inquiry.  *See, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011) ("The plan's sponsor (e.g., the employer), like a trust's settlor, creates the basic terms and conditions of the plan [and] executes a written instrument containing those terms and conditions . . . ."); *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662 (2d Cir. 2016)

---

[25] It also distinguishes this case from *In re U.S. Foodservice Inc. Pricing Litig.*, which expressly noted the lack of evidence that any class members knew of the alleged scheme when they suffered injury.  *See* 729 F.3d at 120–21.

(requiring proof of contemporaneous intent to defraud where alleged misrepresentation is a contractual promise).  And because Plaintiffs bear the burden of proving "lack of good faith" to establish predicate acts of mail or wire fraud, *see* ECF 274 at 48, their case in chief will require a showing of how CHLIC understood each plan sponsor chose to design the benefits of each plan at issue.  This, too, is a plan-specific inquiry.

Plaintiffs also argue that CHLIC was reckless because it went "years without reviewing its plan language" and that CHLIC's recklessness is a common question that predominates over individualized issues.  ECF 308 at 38.  But after CHLIC prepared a draft plan document, it was generally "subject to client approval"; plan sponsors had an opportunity to "make corrections and language changes" based on their review of the documents.  ECF 310 at 10.[26]  Plaintiffs have not shown that the level of review that each plan underwent is capable of classwide resolution.  To the contrary, the review process often differed from plan to plan, depending on the plan sponsor's involvement and the benefit funding arrangement.  *Id.* at 10–11.  Plaintiffs' argument also ignores other plan-specific evidence bearing on alleged recklessness, including the existence of benefit audits for some plans (but not others) in which sponsors reviewed prescription drug transactions and confirmed whether CHLIC was administering the benefits correctly.  Far from showing that common issues predominate over individualized issues, asking whether CHLIC was reckless in its administration of any particular plan—or its adjudication of any particular transaction—implicates myriad individualized issues that defeat predominance.

## CONCLUSION

For the foregoing reasons, class certification should be denied.

---

[26] Plaintiffs attached this new evidence to an ancillary filing in what appears to be a belated attempt to supplement the record before the Court on class certification.  *Cf. Royal Park Invs.*, 324 F. Supp. 3d at 395.  Regardless, it confirms that class certification is not warranted.

Dated:  September 29, 2020

Respectfully submitted,

*/s/* Brian W. Shaffer
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com

Elise M. Attridge (phv10802)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  202-739-5704
Facsimile:  202-739-3001
elise.attridge@morganlewis.com

Michael D. Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2945
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and
Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2020, the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*/s/ Brian W. Shaffer*
Brian W. Shaffer