## THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br>                         Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 29, 2020 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE THE DECLARATION AND TESTIMONY OF LAUNCE B. MUSTOE, JR. OFFERED IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.     Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims ........ 2

          A.     Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Ignores How Plaintiffs Contend Their Cost-Share Payments "Should Have Been Calculated" ..................................... 4

          B.     Mr. Mustoe's Methodology Is Unreliable And Does Not "Fit" Plaintiffs' Claims For Relief Because It Ignores Undisputed Plan Terms ...................................................................................................... 6

          C.     Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Does Not Account For Coupons ............................... 11

          D.     Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Cannot Distinguish Transactions For Which No ERISA Relief Lies Against CHLIC ........................................................ 13

          E.     Plaintiffs' Other Arguments Against Exclusion Lack Merit .................. 13

    II.    Mr. Mustoe's Opinion Is Unreliable Because He Did Not Test His Attempts To Identify Class And Subclass Members On A Classwide Basis ...... 14

    III.    Plaintiffs' Improper Attempt To Supplement The Class Certification Record In Their Opposition To Cigna's Motion To Exclude Weighs Against Class Certification ................................................................................. 18

CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002).................................................................................2, 15

*Banta Properties, Inc. v. Arch Specialty Ins. Co.*,
No. 10-61485, 2011 WL 7118542 (S.D. Fla. Dec. 23, 2011)................................16

*Benkwith v. Matrixx Initiatives, Inc.*,
467 F. Supp. 2d 1316 (M.D. Ala. 2006) ...............................................................15

*Brooks v. Outboard Marine Corp.*,
234 F.3d 89 (2d Cir. 2000)....................................................................................16

*Colon ex rel. Molina v. BIC USA, Inc.*,
199 F. Supp. 2d 53 (S.D.N.Y. 2001)......................................................................15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013).................................................................................................3

*Coraud LLC v. Kidville Franchise Co., LLC*,
121 F. Supp. 3d 387 (S.D.N.Y. 2015)...................................................................13

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993)............................................................................................2, 3

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..................................................................................12

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)...................................................................11

*Faulkner v. Arista Records LLC*,
46 F. Supp. 3d 365 (S.D.N.Y. 2014)......................................................................7

*Franco v. Conn. Gen. Life Ins. Co.*,
299 F.R.D. 417 (D.N.J. 2014), *aff'd on other grounds*, 647 F. App'x 76 (3d
Cir. 2016) ...............................................................................................................6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)....................................................................3

*Lara v. Delta Int'l Mach. Corp.*,
174 F. Supp. 3d 719 (E.D.N.Y. 2016) ..................................................................15

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)........................................................................................6

*Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC*,
    No. 05-8665, 2008 WL 4449412 (S.D.N.Y. Sept. 30, 2008) ....................................5

*Peters v. Aetna, Inc.*,
    No. 15-00109, 2019 WL 1429607 (W.D.N.C. Mar. 29, 2019)..........................9, 13

*R.F.M.A.S., Inc. v. So*,
    748 F. Supp. 2d 244 (S.D.N.Y. 2010)......................................................................12

*Royal Park Invs. v. U.S. Bank Nat'l Ass'n*,
    324 F. Supp. 3d 387 (S.D.N.Y. 2018)......................................................................18

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)..............................................................................................12

*U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*,
    No. 17-7857, 2019 WL 948120 (S.D.N.Y. Feb. 15, 2019)........................................6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................................18

*Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*,
    No. 14-00549, 2018 WL 1525709 (D. Conn. Mar. 28, 2018), *aff'd sub nom.*,
    782 F. App'x 9 (2d Cir. 2019) ...................................................................................7

*Wills v. Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004)......................................................................................15

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
    746 F.3d 1008 (11th Cir. 2014) .................................................................................4

*Yaccarino v. Motor Coach Indus., Inc.*,
    No. 03-4527, 2006 WL 5230033 (E.D.N.Y. Sept. 29, 2006) ...................................15

**STATUTES**

18 U.S.C. § 1964(c) ...........................................................................................................11

ERISA § 502(a)(1)(B)...........................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Evid. 104(b)..............................................................................................................3

Fed. R. Evid. 401(b)..............................................................................................................3

Fed. R. Evid. 702(a) ............................................................................................................2

Conn. R.P.C. 3.3(a)(2) ........................................................................................................12

## INTRODUCTION

The Court should exclude the opinion of Launce B. Mustoe, Jr. because it is at odds with the relief available under Plaintiffs' claims. Mr. Mustoe's opinion focuses solely on "clawbacks," but Plaintiffs concede that "clawbacks" are "not the harm" at issue. ECF 308 at 4. Had Mr. Mustoe attempted to calculate the true measure of harm for Plaintiffs' claims—what members of the class and subclass should have paid under the terms of their plans, as interpreted by Plaintiffs—Mr. Mustoe would have used a completely different method. Because Mr. Mustoe admits he has not articulated a reliable method to determine the amount of impermissible "overcharges" on a classwide basis, his opinions are irrelevant and should be excluded.

Plaintiffs acknowledge that CHLIC has raised valid critiques with respect to Mr. Mustoe's use of DST Reports, but they ignore the broader problems with his opinions, namely that he has not validated his proposed methodology in any way. He has no idea how often his analysis of DST Reports is wrong and, when wrong, how severely. The inability to determine the error rate associated with his use of the reports means that his method is not reliable and should be excluded.

Plaintiffs also include a lengthy (and irrelevant) discussion of certain CHLIC business processes. It appears to be a belated attempt to supplement the factual record in support of class certification that should be rejected. In any event, the evidence does not bolster Mr. Mustoe's opinions because he did not consider it.[1]

In sum, Mr. Mustoe's opinions are not reliable and do not "fit" Plaintiffs' claims for relief. They do not satisfy Federal Rule of Evidence 702 or *Daubert*, and should be excluded.

---

[1] Substantively, the evidence confirms that class certification should be denied because of plan-specific issues regarding plan-sponsor intent.

**ARGUMENT**

**I.      Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims**

As CHLIC explained (at ECF 279 at 12–13), a threshold question for the Court is whether the "proffered expert testimony is relevant." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  Expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a), a requirement that "goes primarily to relevance," *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993).  Relevance is sometimes expressed as a question of "fit"—"whether the expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.*  An expert opinion is inadmissible if it does not "fit" the case or help the trier of fact resolve the questions at issue.  *Id.* at 591–93.

Mr. Mustoe's opinion focuses on "clawbacks."  *See* ECF 207-1 at 1 ("



"); *id.* at 4 ("

."); *id.* at 11 ("

.").  According to Plaintiffs' initial filings, that opinion was relevant because the plans at issue prohibited "clawbacks."  *See* ECF 205 at 3; ECF 206 at 16; *see also* ECF 207-1 at 4 ("

").

Plaintiffs now expressly concede that the plans at issue do ***not*** prohibit "clawbacks."  ECF 308 at 4 ("The 'clawback' is not the harm.").  This undercuts the asserted relevance of Mr. Mustoe's opinion.  But in an effort to salvage Mr. Mustoe's opinion, Plaintiffs argue that even though "clawbacks" are "not the harm" in this case, Mr. Mustoe's analysis of "clawbacks" remains

relevant because Plaintiffs propose to rely on "clawbacks" as the measure of harm in this case (what Plaintiffs call "overcharges" or "overpayments"). ECF 308 at 4. Thus, the ability to calculate "clawbacks" using common evidence is "of consequence in determining the action" (and thus relevant) only if the amount of a "clawback" is equal to the amount of alleged harm. Fed. R. Evid. 401(b).

That is a gatekeeping question for the Court to decide. Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). It is for the Court to decide whether Mr. Mustoe's opinion has "a valid scientific connection to the pertinent inquiry." *Daubert*, 509 U.S. at 591–92. And insofar as Mr. Mustoe's opinion is intended to bolster Plaintiffs' motion for class certification, the Court must decide whether Plaintiffs have proffered "a method to measure and quantify damages on a classwide basis" for the claims that they seek to certify and to assess "whether the methodology [was] a just and reasonable inference or speculative." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).[2]

Plaintiffs suggest that because Plaintiffs alleged in their pleading that "clawbacks" are the proper measure of harm, the Court must assume that to be true. They deride CHLIC's citations to legal authority[3] about the proper measure of harm under their claims as an effort to "refram[e] Plaintiffs' legal theories and the evidence in the case" that cannot result in the exclusion of Mr.

---

[2] Plaintiffs suggest that expert evidence submitted at the class certification stage warrants only "minimal scrutiny." ECF 310 at 17. But courts in the Second Circuit typically scrutinize expert evidence at class certification with no less rigor than at any other point in a case. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 470 (S.D.N.Y. 2018) ("[G]iven the Second Circuit's direction that we consider 'the relevant evidence admitted at the class certification stage,' it appears to us that the standard rules of evidence should apply." (quoting *In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (emphasis in original)).

[3] Plaintiffs cite no authority to dispute CHLIC's description of the proper measure of harm under their ERISA and RICO claims. *See* ECF 279 at 15–17. And none of Plaintiffs' citations to the record support the proposition that "clawbacks" are equal to the measure of harm under the claims they assert in this case.

Mustoe's opinion.  ECF 310 at 18–19.  That is not the law.  Plaintiffs cannot demand that the Court admit unreliable expert evidence based on their flawed legal theory simply because they "say it" in their complaint.  CHLIC is entitled to point out the logical gap between the true measure of harm under the claims asserted by Plaintiffs and Mr. Mustoe's flawed methodology so that the Court can decide for itself whether Mr. Mustoe's methodology passes muster.  *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1028 (11th Cir. 2014) (excluding expert reports that analyzed "the wrong problem" and therefore did not "assist the trier of fact to determine a fact in issue in this case").  Indeed, if an expert opinion were admissible based solely on the proffering party's say so or averments in a complaint, Rule 702 and *Daubert* would be reduced to nullities.

As explained below, in light of Plaintiffs' admission that the "clawback" is "not the harm," Plaintiffs have not presented sufficient evidence to support a finding that the amount of a "clawback" is equal to the amount of alleged harm.  Plaintiffs never asked Mr. Mustoe to calculate the amount of harm supposedly suffered by class members in this case or to validate how it compares to the amount of any "clawback."  They have not shown the requisite "fit" between Mr. Mustoe's opinion focusing on "clawbacks" and their claims, for which "clawbacks" are admittedly "not the harm."  ECF 308 at 4.  The Court should exclude Mr. Mustoe's opinion.

### A.   Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Ignores How Plaintiffs Contend Their Cost-Share Payments "Should Have Been Calculated"

Plaintiffs argue that Mr. Mustoe's methodology is consistent with their liability theory because it is supposedly consistent with certain allegations in their pleading.  ECF 310 at 18.  But Plaintiffs ignore their interrogatory responses, in which they articulated precisely (and, in contrast to their complaint, under oath), "how their prescription drug cost-share payments under the terms of the respective Plan should have been calculated"—not just for some transactions, but rather for all transactions.  ECF 277, Ex. 11 at 28.  Those responses list the various rates (*e.g.*, Usual &

Customary) that Plaintiffs contend are relevant considerations in determining any cost-share payments. *Id.*; *see also* ECF 279 at 22, n.13. Those responses did ***not*** list the Client Rate as a relevant consideration in determining any cost-share payments made by participants under those plans. ECF 277, Ex. 11 at 28–33. This is because a large portion of Plaintiffs' case is premised on the theory that, under their plan terms, the Pharmacy Reimbursement Rate ***instead of*** the Client Rate should be a cap on their cost-share payments. ECF 277, Ex. 11 at 27–33. In other words, Plaintiffs' interrogatory responses treat the Client Rate as irrelevant to how much they should pay.

Mr. Mustoe's methodology is not true to those sworn responses. For transactions where the participant's actual payment was less than the Pharmacy Reimbursement Rate, Mr. Mustoe effectively gives participants the benefit of ***both*** the Pharmacy Reimbursement Rate ***and*** the Client Rate. ECF 277, Ex. 4 at ¶ 87. But that is inconsistent with Plaintiffs' interrogatory responses indicating that participant's payments should ***never*** be determined by reference to the Client Rate.

The only other possibility is that Mr. Mustoe believes that the Client Rate should be considered for some transactions, but not for others, but that possibility is fundamentally inconsistent with Plaintiffs' interpretations of the class and subclass language as ***never*** referring to the Client Rate.[4] And because plan terms require that a participant's entire transaction history be considered when calculating any given transaction, *see infra*, the method Mr. Mustoe uses for all transactions is an important consideration.[5]

Plaintiffs' post hoc attempts to undo the admissions in their interrogatory responses are improper because those admissions are binding on Plaintiffs. *See, e.g.*, *Med. Educ. Dev. Servs.,*

---

[4] CHLIC, by contrast, does not interpret the language of a single plan as applied to a single participant as referring to the Client Rate for some transactions and the Pharmacy Reimbursement Rate for other transactions.

[5] It is not clear what Plaintiffs mean when they write that Mr. Mustoe "excluded . . . from the class" individuals who "did not overpay for their prescriptions." ECF 310 at 20. As CHLIC has explained, the class and subclass undeniably include participants with particular transactions where they did not overpay even under Plaintiffs' theory. ECF 274 at 29–31; ECF 277, Ex. 4 at ¶¶ 102–07.

*Inc. v. Reed Elsevier Grp., PLC*, No. 05-8665, 2008 WL 4449412, at \*11 (S.D.N.Y. Sept. 30, 2008) ("[I]n this Circuit, contention interrogatories are treated as judicial admissions that generally stop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses."); *U.S. Bank Nat'l Ass'n v. Windstream Servs., LLC*, No. 17-7857, 2019 WL 948120, at \*21 (S.D.N.Y. Feb. 15, 2019) (same).[6]   Indeed, even after filing their amended pleading, Plaintiffs did not amend their interrogatory responses and have, at times, endorsed them.  *See, e.g.*, ECF 277, Ex. 16 at 173:4–174:9.

### B.      Mr. Mustoe's Methodology Is Unreliable And Does Not "Fit" Plaintiffs' Claims For Relief Because It Ignores Undisputed Plan Terms

ERISA § 502(a)(1)(B) creates a cause of action for a participant "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  It is axiomatic that the "benefits due" must be consistent with "the terms of [the] plan" at issue.  *See, e.g.*, *Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417, 430 (D.N.J. 2014), *aff'd on other grounds*, 647 F. App'x 76 (3d Cir. 2016) ("In an ERISA action to recover unpaid benefits and/or to seek relief for breach of a fiduciary duty, the theory of liability, and thus the awardable damages, must be grounded in the plan documents.").  Similarly, RICO damages restore injured parties to the same position they would have been in but for the illegal conduct.  *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 227 (2d Cir. 2008); *see also* ECF 308 at 40 n.38.  Plaintiffs contend that they would have received the benefits provided for in their plan documents but for CHLIC's alleged misconduct. ECF 198 at ¶ 295.  Accordingly, their RICO claim (like their ERISA claim) requires consideration

---

[6] The out-of-circuit cases Plaintiffs cite (ECF 310 at 19–20 n.7) to argue that they are not bound by their interrogatory responses are distinguishable because they involved plaintiffs seeking to assert new causes of action without amending their pleadings.  Here, by contrast, CHLIC seeks to hold Plaintiffs to certain clarifications of the legal theory they are pursuing.  Not surprisingly, Plaintiffs cite no authority suggesting they can disavow sworn interrogatory responses in lieu of a complaint written by their lawyers.

of each applicable plan document.[7]  Here, that means, among other things, that a method for measuring alleged harm that is inconsistent with applicable plan terms does not "fit" the case and should be excluded.

Plaintiffs do not dispute that the plans at issue include terms creating deductibles, out-of-pocket maximums, and rules for cross-accumulation, and limiting benefits based on those terms. They do not dispute that Mr. Mustoe's method ignores all of those plan terms.[8]  ECF 310 at 2, 21–22.  They do not even dispute that considering the effects of those plan terms can have a drastic effect on the amount a member of the class or subclass should have paid for prescription drugs, as CHLIC has explained.  *See* ECF 279 at 17–22.  That, alone, is grounds for excluding Mr. Mustoe's opinions.  *See, e.g.*, *Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*, No. 14-00549, 2018 WL 1525709, at *16 (D. Conn. Mar. 28, 2018) (excluding expert opinion because, *inter alia*, it was "based on an analysis which failed to consider all relevant facts and data"), *aff'd sub nom.*, 782 F. App'x 9 (2d Cir. 2019); *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (finding failure to consider all relevant evidence grounds for exclusion of expert's testimony).

Plaintiffs argue that Mr. Mustoe does not have to consider those plan terms because Plaintiffs wish to proceed on a "transaction-by-transaction basis" and believe that the correct

---

[7] Plaintiffs do not respond to CHLIC's argument that Mr. Mustoe's method cannot be used to support their RICO theory predicated on the plan language itself comprising fraudulent misrepresentations because that would effectively award expectancy damages that are not recoverable under RICO.  *See* ECF 274 at 49–50.  In their class certification reply, Plaintiffs try to recast their RICO theory by relying on "other misrepresentations" that were not addressed in their class certification motion and that were not contained in plan documents.  *See* ECF 308 at 38.  Plaintiffs waived any such reliance by failing to mention it in their motion for class certification.

[8] Mr. Mustoe admitted during his deposition—repeatedly—that he did not determine what class members should have paid had their benefits been administered under the plan terms as interpreted by Plaintiffs.  *See, e.g.*, ECF 277, Ex. 14 at 185:1–22.

measure of alleged harm is the difference between the amount actually paid by a member of the class or subclass and the Pharmacy Reimbursement Rate, without further analysis.[9]

Plaintiffs are wrong that Mr. Mustoe has considered all of the information necessary to measure alleged harm under ERISA or RICO, even on a transaction-by-transaction basis.[10] Determining the amount a participant should pay in connection with a transaction requires consideration of many more pieces of information than the amount actually paid and the Pharmacy Reimbursement Rate. For example, accumulator data[11] is necessary to determine whether a transaction should process as a deductible (if the deductible has not yet been satisfied), a copayment or coinsurance (if the deductible has been satisfied), or as a $0 cost share (if the out-of-pocket maximum has been satisfied).[12] These general rules are subject to any plan-specific benefit designs that a plan sponsor may select. For example, a plan sponsor may choose to exempt particular drugs from the deductible requirement or to allow $0 cost shares for preventive medications in all cases. Without this accumulator data—and an understanding of each plan's

---

[9] *See, e.g.*, ECF 310 at 2 ("Cigna claims that Mr. Mustoe's methodology should be excluded because he did not account for individuals' claim histories, including any deductible or out-of-pocket maximum requirements. It does not, because consistent with Plaintiffs' theory of liability, damages should be measured on a transaction-by-transaction basis rather than a plan-year basis." (internal citation omitted)); ECF 308 at 22 ("Cigna is simply wrong when it argues that [Mr.] Mustoe needed to account for class member claims history [including taking accumulator data into account] under Plaintiffs' theory of the case." (internal citation omitted)).

[10] CHLIC is not faulting Mr. Mustoe for attempting to measure alleged harm on a transaction-by-transaction basis, as Plaintiffs suggest. (To be sure, had he considered the benefits at issue in the aggregate, he would have seen that CHLIC provided participants in the plans at issue with tremendous savings—on the order of $29.1 billion—and there would be few (if any) allegedly injured participants. ECF 277, Ex. 4 at ¶ 25.) Rather, on this point, CHLIC's motion to exclude takes issue with Mr. Mustoe's failure to perform a transaction-by-transaction analysis that is consistent with the terms of each plan. The central failing in Mr. Mustoe's method is that he fails to consider plan terms that unquestionably play a role in determining what a participant pays for any given transaction and that must be considered to avoid results that are inconsistent with the plans themselves.

[11] Accumulator data may include (among other things) the plan's deductible, the plan's out-of-pocket maximum, the amount already paid toward the deductible during the plan year, and the amount already paid towards the out-of-pocket maximum during the plan year.

[12] Mr. Mustoe's analysis ignores that properly reprocessing copayment or deductible transactions may affect how much a participant should pay for a subsequent coinsurance transaction (which Plaintiffs do not challenge) for members in the class or subclass with combination coinsurance plans. ECF 279 at 19–20.

terms and design—it is impossible to determine whether a transaction processed as the correct form of cost share.  ECF 277, Ex. 4 at ¶¶ 108–17; *see also* ECF 279 at 19–20.

After accumulator data is used to determine how a transaction should process, transaction-specific information must be considered to determine how much the participant should pay for the transaction at issue.  Transaction-specific information used to adjudicate member cost shares—such as the cash price of the drug, the copay listed in the plan document, the Client Rate (according to CHLIC), and the Pharmacy Reimbursement Rate (according to Plaintiffs)—may derive from several different contractual arrangements, including the plan document, the ASO agreement or certificate of insurance, or the retail pharmacy contract.

It is impossible to determine what a participant should pay for prescription drugs without considering ***both*** deductible and out-of-pocket accumulations ***and*** transaction-specific information.  *See Peters v. Aetna, Inc.*, No. 15-00109, 2019 WL 1429607, at *8 (W.D.N.C. Mar. 29, 2019) ("[A] participant's responsibility on one claim may depend on the participant's and the plan's responsibility on the participant's previous claims.").  For example, whether a participant has satisfied his or her plan's deductible will determine the type of cost share the participant should pay under the plan, but it is impossible to determine the specific amount of that cost share without applying plan terms to transaction-specific information.   Conversely, transaction-specific information is insufficient to determine the specific amount the participant should pay because it is unclear how that information should be analyzed without knowing the appropriate form of cost share.[13]  It depends on all applicable plan terms.

---

[13] To illustrate, the copayment amount listed in the plan document is irrelevant to the amount of a deductible payment, but it is essential to determining the amount of a copayment.

Without any explanation whatsoever, Mr. Mustoe's "clawback" analysis ignores accumulator data entirely.  In so doing, it fails to ask the threshold question of whether each transaction processed as the correct type of cost share.  A faithful application of plan terms on a transaction-by-transaction basis would have involved (among other things) considering whether the deductible had been satisfied (to determine whether the transaction correctly processed as a deductible payment).  Mr. Mustoe admits that if he had tried to adjudicate what class members should have paid under their plans as interpreted by Plaintiffs, he would have used a completely different method than the one he was instructed to use by Plaintiffs' counsel.  *See infra*; *see also* ECF 277, Ex. 14 at 185:7–189:5.

Critically, if Plaintiffs are correct that some participants should have paid less for certain transactions, then plan terms require that information associated with subsequent transactions (such as the amount already paid towards a deductible or out-of-pocket maximum) must reflect a corresponding reduction.  For example, if Mr. Mustoe's analysis suggests that a participant should have paid $5 less for his or her first prescription, that means the deducible (and out-of-pocket maximum) for his or her second and subsequent prescriptions should be $5 more.  As a result, some transactions that actually processed as copayments (because prior transactions had satisfied the deductible) should have processed as deductible payments under Plaintiffs' interpretation of the plan (because the participant's reduced deductible payments in prior transactions did not yet satisfy the deductible).  ECF 279 at 19–20.  And some class members that actually hit their out-of-pocket maximums (and therefore had prescriptions processed at no cost to them) may not do so under Mr. Mustoe's analysis; such class members would owe additional amounts on subsequent transactions (copayment or coinsurance) that Mr. Mustoe's analysis ignores.  *Id.* at 20–22.

Plaintiffs do not dispute that Mr. Mustoe's failure to account for deductible and out-of-pocket accumulations results in a windfall for many participants that violates plan terms. As illustrated by CHLIC's expert Dr. Sean May (ECF 277, Ex. 4 at ¶¶ 110–12), using Mr. Mustoe's methodology allows participants to have paid copayments without having satisfied their deductibles. Only by accounting for plan terms such as deductibles and out-of-pocket maximums can Mr. Mustoe's opinion actually speak to the issue in the case, *i.e.*, the "benefits due" under the plan or RICO damages. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 311 (S.D.N.Y. 2010) ("RICO damages cannot place plaintiffs in a better position than they would have been in if the racketeering had not occurred."). Because Mr. Mustoe's method measures "clawbacks" (which are "not the harm") and cannot reliably measure harm, his method does not "fit" the available relief in this case and his opinions should be excluded.[14]

### C. Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Does Not Account For Coupons

Plaintiffs do not dispute that Mr. Mustoe failed to account for coupons in his declaration. Because the transaction data he proposes to use does not reflect coupon usage, Mr. Mustoe cannot reliably identify payments by participants. That information is critical, especially to Plaintiffs' RICO claims where an "injury to business or property" is a required element, 18 U.S.C. § 1964(c); if Mr. Mustoe cannot identify whether a payment came from a participant or a coupon, he cannot identify whether the participant was actually injured. Plaintiffs cite misleadingly to out-of-circuit authority for the proposition that the presence of uninjured class members is not an obstacle to class certification. But controlling authority from the Second Circuit describes the presence of

---

[14] Plaintiffs also refer to illusory discovery abuses that are the subject of their procedurally improper and meritless Motion to Strike and supposedly excuse the failure to consider plan terms. Those issues are addressed in CHLIC's opposition thereto, which points out that Plaintiffs never requested accumulator data even though they were aware of CHLIC's position that they needed to consider this information as part of the class and damages theories.

uninjured class members as an absolute bar to class certification. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.").[15]  *See also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020) ("There is no ERISA exception to Article III.").

Plaintiffs argue that Mr. Mustoe need not account for coupon usage because CHLIC failed to maintain classwide coupon information.  But the absence of classwide evidence on coupons— which CHLIC is not required to track and maintain—is not a reason to excuse Mr. Mustoe's failure to account for coupons; it is a reason to exclude Mr. Mustoe's opinion altogether because it is proof positive that he cannot reliably measure alleged harm using common evidence.

Plaintiffs try to dismiss concerns about coupons as mere speculation, but they ignore pertinent deposition testimony.  ECF 283-2 at 368:13–369:25.  Moreover, Plaintiffs' attempt to explain away evidence that Plaintiff Blocker used coupons to buy prescription drugs (ECF 310 at 24 n.9) proves CHLIC's point: an individualized assessment of each participant's transaction history—including evidence about particular transactions, like receipts and participant testimony—is necessary to account for coupons.

Finally, Plaintiffs refer to a study about coupon usage in Massachusetts in 2018 to argue that the effect of coupons on their class of hundreds of thousands of members and more than 100 million transactions is immaterial.  ECF 310 at 25.  Even then, Mr. Mustoe does not explain how or why information about Massachusetts in 2018 has any bearing on coupon usage in other states or in other years.  This attempt to cure a glaring deficiency in Mr. Mustoe's original declaration falls short.  *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 274 (S.D.N.Y. 2010) (finding "ample

---

[15] Plaintiffs were no doubt aware of *Denney* and its holding because CHLIC previously cited to it.  ECF 274 at 35–36.  It is unclear why Plaintiffs would cite contrary out-of-circuit authority in this manner.  *Cf.* Conn. R.P.C. 3.3(a)(2) ("A lawyer shall not knowingly . . . [f]ail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

reason" to exclude expert opinions because experts failed to "justify their chosen methodologies in light of the facts of this case").

### D. Mr. Mustoe's Method Is Unreliable And Does Not "Fit" Plaintiffs' Claims Because It Cannot Distinguish Transactions For Which No ERISA Relief Lies Against CHLIC

Plaintiffs do not dispute that Mr. Mustoe has articulated no method for identifying inactive ASO accounts. Plaintiffs argue that he is not obligated to do so because CHLIC is equally liable as to both active and inactive ASO accounts. ECF 310 at 27 n.10. But as CHLIC has explained, CHLIC is not a proper defendant on a claim for benefits as to inactive ASO accounts because it is no longer authorized to pay benefits for those plans. *See* ECF 274 at 33, 43–44. Mr. Mustoe's analysis is incapable of distinguishing transactions associated with those plans from other transactions, so it does not "fit" the case and should be excluded.

### E. Plaintiffs' Other Arguments Against Exclusion Lack Merit

Plaintiffs mischaracterize several of CHLIC's arguments as arising solely from a setoff argument that it has not raised. They are wrong. Under both ERISA and RICO, it is Plaintiffs' burden to prove injury and damages, the measure of which is the difference between what a participant actually paid and what that participant should have paid under the plan's terms. *See supra*. Determining what a participant should have paid under the terms of his or her plan for a given transaction requires consideration of other transactions because "a participant's responsibility on one claim may depend on the participant's and the plan's responsibility on the participant's previous claims." *Peters*, 2019 WL 1429607, at *8.[16] CHLIC's argument is that Mr.

---

[16] It is analogous to how a plaintiff seeking lost profits bears the burden of proving both lost revenue and avoided costs in order to recover. *See, e.g.*, *Coraud LLC v. Kidville Franchise Co., LLC*, 121 F. Supp. 3d 387, 398 (S.D.N.Y. 2015) ("The party claiming lost profits must establish not only the revenue that it would have received absent the breach of contract, but also what costs it avoids as a result of being relieved of its obligations under the contract."). Avoided costs reduce the plaintiff's recovery, but they are not considered a set-off argument that the defendant must plead.

Mustoe failed to account for changes to "the participant's previous claims" that would arise from a consistent application of Plaintiffs' theory.  That is not a setoff argument; it is a fundamental flaw in Mr. Mustoe's methodology.

Plaintiffs also argue that the flaws in Mr. Mustoe's opinion go to weight, not admissibility. To be sure, Mr. Mustoe's opinion is entitled to no weight because of the myriad problems with his methodology.  But many of the problems that CHLIC has identified are so fundamental that they warrant the exclusion of his opinion altogether.  Mr. Mustoe has articulated no justification for his decision to ignore certain plan terms, other than to say he was following instructions from counsel. ECF 277, Ex. 14 at 124:8–125:20, 127:10–128:4, 128:14–129:1, 158:6–159:18, 175:23–176:7.  He did not even attempt to determine whether consideration of those plan terms would make a difference to his analysis; CHLIC has shown that it does.  ECF 279 at 19–22.  And Plaintiffs have no response for Mr. Mustoe's admission that had he been asked to calculate the true measure of harm for Plaintiffs' claims—what members of the class and subclass should have paid under the terms of their plans, as interpreted by Plaintiffs—he would have used a completely different method.  ECF 277, Ex. 14 at 106:12–108:4, 181:6–182:13, 186:3–16 ("███████████████ ███████████████████████████████████████████████████").  That is not what he did here.  *See id.* at 107:21–108:4.  His opinion is unreliable and unhelpful to the trier of fact as a matter of law, so it should be excluded.

## II.   Mr. Mustoe's Opinion Is Unreliable Because He Did Not Test His Attempts To Identify Class And Subclass Members On A Classwide Basis

Plaintiffs do not dispute that Mr. Mustoe's proposed method for identifying members of the class and subclass produces incongruous results.  *See* ECF 279 at 24–32.  Instead, they offer explanations as to how those incongruous results came to be, propose changes to Mr. Mustoe's methods in an effort to fix those incongruous results, and describe the issues as minor without any

explanation.  ECF 310 at 27–38.  These responses do not make Mr. Mustoe's method reliable.

They also misconstrue the more fundamental problem with Mr. Mustoe's method.[17]

One of the central problems with Mr. Mustoe's proposed method for identifying members

of the class and subclass is that he failed to test its validity.  A critical part of the reliability analysis

under *Daubert* is consideration of a methodology's error rate.  *See, e.g.*, *Amorgianos*, 303 F.3d at

266 (stating that one of the factors bearing on reliability is the technique's known or potential rate

of error and the existence and maintenance of standards controlling the technique's operation);

*Wills v. Amerada Hess Corp.*, 379 F.3d 32, 49 (2d Cir. 2004) (affirming district court decision

excluding expert testimony because the expert did not state a known or potential error rate for the

theory, among other factors).

An expert's failure to test a theory can justify a trial court's exclusion of the expert's

testimony.  *See Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 736 (E.D.N.Y. 2016)

(excluding expert testimony as unreliable based on, among other things, the absence of any

methodological testing); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 79 (S.D.N.Y.

2001) (same); *Yaccarino v. Motor Coach Indus., Inc.*, No. 03-4527, 2006 WL 5230033, at *15

(E.D.N.Y. Sept. 29, 2006) (excluding expert testimony as unreliable based on, among other things,

a party's failure to show that a "measurable rate of error can be assigned" to its methodology);

*Benkwith v. Matrixx Initiatives, Inc.*, 467 F. Supp. 2d 1316, 1330 (M.D. Ala. 2006) (granting

defendant's motion to exclude expert testimony because its opinions had not been tested and a rate

---

[17] Plaintiffs also appear to misconstrue CHLIC's argument as focusing on ascertainability.  ECF 310 at 27.  To be sure, there are ascertainability problems to the extent Plaintiffs contend that plans without the precise class or subclass language should be part of this case if Plaintiffs think it has the same legal effect, ECF 274 at 9 n.7, and Mr. Mustoe's opinion does not account for that approach to defining the class and subclass.  But the issues identified by CHLIC in the motion to exclude are more properly understood as presenting insurmountable obstacles to class certification under Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance and superiority requirements.  Mr. Mustoe's opinion cannot support Plaintiffs' contention that plans with class or subclass language may be identified using a common method, and their argument that the plans can also "be reviewed manually" is no response.  ECF 310 at 28.

of error could not be provided); *cf. Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir.

2000) (expert's failure to test a causation theory may warrant exclusion of expert's testimony).

In *Banta Properties, Inc. v. Arch Specialty Insurance Co.*, for example, a property

management company sought payment from its insurer for losses sustained to windows and doors

at various properties during a hurricane.  No. 10-61485, 2011 WL 7118542, at *1 (S.D. Fla. Dec.

23, 2011).  The company hired an engineer as an expert to identify which windows and doors had

been damaged using a methodology she had developed.  *Id.* at *3.  The insurer moved to exclude

the engineer's testimony on the grounds that her methodology was unreliable under *Daubert*.  *Id.*

at *4.  The district court granted the motion to exclude and noted, "There is no evidence that [the

engineer's] technique has been tested or peer reviewed.  She acknowledged that it had not been

published.  There is no information on the known or potential rate of error of the technique, nor

the existence and maintenance of standards controlling its operation."  *Id.*

Similar to the engineer in *Banta Properties*, Mr. Mustoe employed a method intended to

identify instances of alleged legal harm, but he failed to test the method in any way.  He did not

review any plan documents to confirm that they matched what he would expect from his analysis

of the DST Reports.  ECF 277, Ex. 14 at 90:8–17.  He did not attempt to calculate how often his

use of the DST Reports generated a false positive (as where a plan on the DST Reports was never

operative or removed the language at issue without appearing on DST Reports 4 or 5) or a false

negative (as where a plan contained language that satisfied the class definition but did not appear

on a DST Report at all).  Mr. Mustoe cannot say with any degree of confidence how likely his

method is to yield correct results.  Neither can Plaintiffs.  ECF 310 at 27 (asserting with no

evidence that Mr. Mustoe's method identified "almost all—if not all—class and subclass Plans").

Plaintiffs rightly note that they can ask for new DST Reports or rewrite their class definition.[18] But this ignores the more fundamental problem that Mr. Mustoe has no idea how often his methodology yields correct results or incorrect ones. It also does not cure for the fact that Mr. Mustoe's failure to review any plan documents means that he cannot confirm that the discrepancies identified by CHLIC are the only ones that exist.[19]

Plaintiffs suggest that Mr. Mustoe's methodology is reliable because it is consistent with certain evidence about the evolution over time of certain language in plans administered by CHLIC. That does not excuse Mr. Mustoe's failure to determine the error rate associated with his methodology. If anything, Mr. Mustoe should have validated that Plaintiffs' counsel's interpretation of that evidence generated the results he would expect using his theory. Had he done so, he would have discovered that Plaintiffs' assumptions are not always correct.[20] Because he did not, there is no basis to say that his methodology yields reliable results.

---

[18] Plaintiffs contend that the "cause of the mismatch" that CHLIC identified "between [DST Report 4] and the class definition is a misplaced quotation mark in the definition." ECF 310 at 34. They propose to alter the class definition simply by moving the quotation mark to remove the word "plan's" from the quoted language in their class definition since only some, but not all, plan documents refer to "the Plan's Prescription Drug Charge." *Id.* Plaintiffs' explanation presupposes that the word "plan" is not important in the document even though they have made the meaning of the word "plan" in plan documents a central disputed issue in this case. *See, e.g.*, ECF 308 at 19–20. A class definition based on a word whose meaning is hotly contested is unworkable.

[19] Plaintiffs miss the point when they argue that the Court should only exclude variations that it finds "material." ECF 310 at 28. The issue is that a plan with even an immaterial variation may not be reflected in DST Reports, and at most Mr. Mustoe can only speculate as to whether the reports are correct. More importantly, litigating which variations of language are material and which are not is a plan-specific inquiry not appropriate for class treatment, or one that Plaintiffs are adequately positioned to litigate when none of their plans have that language.

[20] Plaintiffs confusingly claim that named plaintiff Roger Curol is not a class member because he was a member of a "Great West" plan. ECF 310 at 24. But the plan they are referring to was not a "Great West" plan; it was a plan administered by CHLIC. In reality, one of Mr. Curol's plan documents has the snippets of language in Plaintiffs' class definition. *See* ECF 275-30 at CIGNA00036974, CIGNA0036977. Plaintiffs merely assume that he is not within the class because his plan document does not show up on DST Report 3, which searched for language that did not match the class definition. That Plaintiffs have not reviewed Mr. Curol's actual plan document to see that the language satisfies their own class definition demonstrates both the flaws with relying on Mr. Mustoe's approach to the DST Reports and the need to review the actual plan documents.

Taking a step back, it is notable that Plaintiffs' counsel—not Mr. Mustoe—are offering this justification for Mr. Mustoe's methodology.  That is because Mr. Mustoe has never reviewed any class or subclass plans and has never reviewed the evidence Plaintiffs cite about the evolution over time of plan language.  ECF 277, Ex. 14 at 90:8–17, 136:8–137:16, 163:24–164:12.  He has no explanation for why he used the DST Reports as he did; he was simply following counsel's direction.  That reveals an even more fundamental problem with Mr. Mustoe's opinion, namely that it is not based on any "scientific, technical, or other specialized knowledge" as required by Rule 702.  Mr. Mustoe has not independently applied any expertise to the use of DST Reports.  It is yet another reason to exclude his opinions.

### III.   Plaintiffs' Improper Attempt To Supplement The Class Certification Record In Their Opposition To Cigna's Motion To Exclude Weighs Against Class Certification

It is Plaintiffs' burden to prove that the requirements of Rule 23 have in fact been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs' barebones motion for class certification fell far short of meeting that burden, as CHLIC explained in its Opposition.  *See generally* ECF 274.  Perhaps recognizing that it is largely improper to present new evidence on reply—and in an effort to give the impression that they have carried their burden under Rule 23— Plaintiffs submitted an eleven page discussion of CHLIC's business practices as part of its opposition to CHLIC's motion to exclude Mr. Mustoe's opinions.  ECF 310 at 4–15.  Plaintiffs try to suggest that certain "standardization" and "automation" built into CHLIC's business means that Rule 23's commonality and predominance requirements have been satisfied.

This is neither the time nor the place for CHLIC to correct all of Plaintiffs' misstatements and mischaracterizations of the evidence because Plaintiffs' whole factual recitation is improper. Plaintiffs cannot supplement the record before the Court on class certification by appending new evidence to an ancillary filing.  *Cf. Royal Park Invs. v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387,

395 (S.D.N.Y. 2018) ("[As] the party seeking class certification, [plaintiff] bears the initial burden [under Rule 23] and cannot solely wait to respond to deficiencies U.S. Bank raises in its opposition.").

The evidence of CHLIC's "standardization" and "automation" is also irrelevant to Plaintiffs' opposition to the motion to exclude. Mr. Mustoe did not consider such evidence in performing his calculation. *See* ECF 277, Ex. 14 at 104:3–105:11. And CHLIC has identified aspects of Mr. Mustoe's opinions that are unreliable notwithstanding the described "standardization" and "automation." *See supra*. In other words, Plaintiffs failed to show that Mr. Mustoe relied on any "standardization" or "automation" in forming his opinions or that such reliance would be justified.

Notwithstanding the described "standardization" and "automation" in CHLIC's business, Plaintiffs' factual recitation confirms what CHLIC has been saying all along: each plan is a separate benefit offering with its own unique combination of provisions and terms. Plaintiffs concede that each plan refers to a defined set of benefits selected by the plan sponsor, not CHLIC. ECF 310 at 7. Plaintiffs further concede that with respect to each aspect of a particular benefit design, CHLIC allows plan sponsors to choose from a variety of options. *Id.* The result is an exponential number of possible permutations reflecting plan-specific decisions. Plaintiffs concede that plan documents were ultimately "subject to client approval," which included "corrections and language changes" to plan documents to ensure consistency with "previously agreed-upon benefit selections." ECF 310 at 10. That directly contradicts Plaintiffs' repeated assertions that "nobody" reviewed plan language for years. ECF 206 at 4; *see also* ECF 308 at 38.

Plaintiffs also acknowledge that the process whereby a plan sponsor adopts a plan document may vary. They contend that some plan documents became operative after sponsors

actually reviewed the language to confirm accuracy, while others became operative by default after CHLIC did not hear from the sponsor.  ECF 315-4, Ex. AM at CIGNA00001527.  Plaintiffs also describe the Pharmacy Benefit Advisory Board ("PBAB") process that approves exceptions to benefit selections based on plan sponsor requests, which demonstrates that benefit design—and associated plan language—can vary based on plan sponsors' selections.  ECF 310 at 7.  Plaintiffs concede that plan sponsors had more opportunities to change plan language in the ASO context than the fully insured context.  ECF 310 at 10–11.  And even in the fully insured context, Plaintiffs concede that the availability of certain plan language and benefit designs varied from state to state depending on which state departments of insurance approved certain language.  ECF 310 at 7.  All of these variations are important to questions like CHLIC's intent or alleged recklessness, which is not capable of classwide resolution through common proof.  *See* ECF 274 at 48.

In sum, far from demonstrating that plan documents were "boilerplate" because of "standardization" or "automation" in certain CHLIC business practices, Plaintiffs' new evidence—which Mr. Mustoe never reviewed—confirms that each plan is carefully crafted by a plan sponsor that may review the plan language to confirm that it is consistent with the benefits it chooses to offer and before the plan sponsor adopts the plan.  CHLIC's "standardization" and "automation" are not proof of uniformity, but rather proof of the system CHLIC has designed to keep track of all the variations in plan language and benefit designs that exist across tens of thousands of plan documents that are offered by plan sponsors.

## CONCLUSION

For the foregoing reasons, the Court should grant CHLIC's motion to exclude the declaration and testimony of Mr. Mustoe regarding the results of his analysis.

Dated:  September 29, 2020

Respectfully submitted,

*/s/* Brian W. Shaffer
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com


Elise M. Attridge (phv10802)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  202-739-5704
Facsimile:  202-739-3001
elise.attridge@morganlewis.com

Michael D. Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2945
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and
Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2020, the foregoing document and all attachments thereto were filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ *Brian W. Shaffer*                    </u>
Brian W. Shaffer