# EXHIBIT 57

Page 1

```
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
Case No. 16-cv-1702
- - - - - - - - - - - - - - - - - -x
KIMBERLY A. NEGRON, Individually   :
and on Behalf of All Others        :
Similarly Situated,                :
                                   :
                    Plaintiffs,    :
                                   :
        - vs -                     :
                                   :
CIGNA CORPORATION and CIGNA HEALTH :
AND LIFE INSURANCE COMPANY, et al.,:
                                   :
                    Defendants.    :
- - - - - - - - - - - - - - - - - -x
```

                July 22, 2020
                9:05 a.m.
                  - - -

        VIDEOTAPED VIRTUAL DEPOSITION UPON
ORAL EXAMINATION OF JUSTIN PITT, held at the
above-mentioned time and place, before Randi
Friedman, a Registered Professional Reporter,
within and for the State of New York.

1                    J. Pitt
2     there's an email from you that begins on the
3     bottom of that page.  Right on the bottom of that
4     page it says, "The pharmacy should not be sharing
5     price difference information with the customer,
6     as that can be considered breach of contract with
7     Catamaran."
8              Is there someone at Cigna that handles
9     these types of issues where a pharmacy is
10    suspected of breaching a contract?
11        A    No.
12        Q    You said that it breaches the contract
13    with Catamaran.
14             Is that like a standard provision in
15    Catamaran's agreements with its pharmacies?
16        A    I'm not sure whether it is.
17        Q    What's the basis of your knowledge
18    about that?
19        A    So when these inquiries came through,
20    it's not only specific to how the customer or the
21    client are being charged, but it's also in
22    regards to how the pharmacy is being reimbursed,
23    those differences.  So any situations in which
24    the pharmacy was questioning their reimbursement
25    amount, I was advised to send the inquiries or

Page 56

```
 1                    J. Pitt
 2   information over to Catamaran for review.
 3        Q    Just so I understand, whenever you
 4   heard about a pharmacy questioning reimbursement,
 5   part of your job was to send that information to
 6   Catamaran?
 7        A    Uh-huh, or direct to pharmacy, all
 8   depending on what the situation was.  In this
 9   instance, yes, to send it to Catamaran.  We could
10   also potentially just direct the pharmacy to
11   contact Catamaran themselves.
12        Q    So would you handle that, contacting
13   the pharmacy directly?
14        A    I would not, no.
15        Q    Who at Cigna would handle that?
16        A    Millicent Collins.
17        Q    And she would --
18        A    She would -- sorry.  Go ahead.
19        Q    No.  Please tell me.  Just tell me
20   more about that.  What would she do when she
21   contacts the pharmacy directly?
22        A    She would -- I can't tell you what she
23   would say to the pharmacy.  We just know that the
24   directive was to -- if the pharmacy was inquiring
25   and they were still sending those inquiries to
```

Page 57

1             J. Pitt
2  Cigna, we would advise that pharmacy to contact
3  Catamaran.
4       Q    Do you know if Ms. Collins contacted
5  the pharmacy by phone or email or fax?  Do you
6  know the method of communication?
7       A    I do not know the method of
8  communication, no.
9       Q    And what other conduct would breach
10 the -- what other conduct of the pharmacy would
11 be a breach of their agreement with Catamaran?
12      A    I do not know.  I did not have deep
13 knowledge of Catamaran's pharmacy contracts.
14      Q    If you had questions about that, who
15 would you ask?
16      A    If I had questions about pharmacy
17 contracts?
18      Q    Yes.
19      A    Who would I ask in Catamaran?
20      Q    Catamaran or Cigna.
21      A    I would ask -- I would have asked
22 Julia Kristenko.
23      Q    And where does she work?
24      A    She worked in Catamaran.  I'm not sure
25 whether she still works there anymore.

```
                                                     Page 58
1                         J. Pitt
2         Q     Do you know what department or
3    division she was in?
4         A     I do not.
5         Q     Are you aware of pharmacies being
6    warned for the type of conduct that is discussed
7    in this email?
8         A     No.
9         Q     Do you know what Catamaran would do if
10   they found out about this conduct?
11        A     No.
12        Q     Do you know what the consequences
13   would be for a pharmacy breaching their agreement
14   in this way?
15              MS. FARRELL:  Objection to form.
16              THE WITNESS:  No.
17   BY MR. BARRETT:
18        Q     If you wanted to find out whether
19   pharmacies were warned or if there were other
20   consequences for these types of -- this type of
21   conduct, who would you ask about that?
22        A     I'm not sure.
23        Q     Would Julia Kristenko have knowledge
24   of that?
25        A     She would have knowledge about it, but
```

```
                                             Page 59
 1                      J. Pitt
 2   she maybe will be able to provide direction or
 3   guidance if I wanted to know or find out.
 4        Q    The next page, 192, you say, "Zero
 5   Balance Due Logic."
 6             Is that synonymous with zero balance
 7   logic?
 8        A    That's synonymous with negative
 9   reimbursement.
10        Q    So that's the second meaning of zero
11   balance logic?
12        A    Correct.
13        Q    So when you say "Zero Balance Due
14   Logic," that would not be interpreted as having
15   the first meaning?
16        A    That is correct.
17        Q    So back to the email, you say, "Zero
18   Balance Due Logic, a capability recently
19   implemented in our vendor's processing system -
20   takes place when a customer's cost sharing
21   amounts defined in the client's plan description
22   are greater than the reimbursement amounts the
23   PBM is contractually obligated to pay the
24   pharmacy."
25             What do you mean by the "client's plan
```