# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br>　　　　　　　　Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>September 29, 2020 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

STATEMENT OF FACTS .................................................................................... 3

I.     RELEVANT FACTS REGARDING PLAINTIFFS' REQUESTS FOR DST REPORTS ............................................................................................. 3

     A.     The DST Reports Resulted from CHLIC's Efforts in Mid-2018 and Early-2019 to Address Plaintiffs' Desire to Identify Plans with Certain Language, Without Reviewing the Plans Themselves............................................ 3

     B.     Plaintiffs Continued to Request DST Reports Following and Notwithstanding CHLIC's Disclosures of Their Limitations and Production of Plans........................................................................... 5

     C.     Plaintiffs' Obscured Pivot Regarding DST Reports Based on Their Expert's Methodology and Evolving Class Certification Theory.................... 7

     D.     By the Time Plaintiffs Issued Discovery Making Clear to CHLIC What They Were Attempting to Do, Plaintiffs' Class Certification Motion Deadline Was Looming ........................................................................ 9

     E.     Plaintiffs Did Not Meet and Confer Again Regarding the Fourth and Fifth Sets of Interrogatories Until After They Moved for Class Certification ............. 10

     F.     CHLIC Agreed to Produce and Has Produced the BenOpt Code from DST ...... 11

II.    PLAINTIFFS NEVER SOUGHT, AND THEIR EXPERT'S METHODOLOGY DID NOT CONSIDER, DEDUCTIBLE AND OUT-OF-POCKET MAXIMUM ACCUMULATIONS ................................................................................. 13

LEGAL ARGUMENT ...................................................................................... 17

III.   PLAINTIFFS DO NOT MAKE THE SHOWING REQUIRED FOR THE RELIEF THEY SEEK ........................................................................... 17

IV.   THE COURT SHOULD DENY PLAINTIFFS' REQUESTED RELIEF REGARDING DST REPORTS........................................................................ 19

     A.     Plaintiffs Lack of Information Is Not Due to Any Wrongdoing by CHLIC........ 19

     B.     Plaintiffs Misrepresent CHLIC's Interrogatory Responses ................................. 20

     C.     Plaintiffs' Requested Relief Is Inappropriate and Overreaching ........................ 24

V.    THE COURT SHOULD DENY PLAINTIFFS' REQUESTED RELIEF REGARDING ACCUMULATOR DATA ........................................................ 26

     A.     Plaintiffs Have Never Intended to Use Accumulator Information .................... 27

     B.     CHLIC Never Misrepresented the Status of the Accumulator Information Available in the Prescription Drug Transaction Data ........................................... 28

## TABLE OF CONTENTS
(continued)

**Page**

C.     Plaintiffs Never Propounded a Formal Discovery Request Asking CHLIC to Produce Accumulator Information ................................................... 29

CONCLUSION ............................................................................................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Sears*,
  No. 07-11706, 2009 WL 36472 (E.D. Mich. Jan. 6, 2009) ....................................................22

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002).................................................................................................25

*Baca v. Wal-Mart Stores, Inc.*,
  No. 97-1270, 1998 WL 36030854 (D.N.M. Apr. 30, 1998)..................................................30

*Britton v. Dallas Airmotive, Inc.*,
  No. 07-CV-00547, 2011 WL 13196562 (D. Idaho June 16, 2011) .......................................17

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...............................................................................................................30

*Excellent Home Care Servs., LLC v. FGA, Inc.*,
  No. 13-5390 2017 WL 9732082 (E.D.N.Y. June 5, 2017).....................................................20

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..............................................................................................................25

*Hinton v. Patnaude*,
  162 F.R.D. 435 (N.D.N.Y. 1995) ..........................................................................................19

*Hogan v. Gen. Elec. Co.*,
  109 F. Supp. 2d 99 (N.D.N.Y. 2000)......................................................................................17

*In re Master Key Litig.*,
  53 F.R.D. 87 (D. Conn. 1971)................................................................................................22

*Loggerhead Tools, LLC v. Sears Holdings Corp.*,
  No. 12-cv-9033, 2016 WL 5080034 (N.D. Ill. Sept. 20, 2016).............................................17

*McCullough v. World Wrestling Ent., Inc.*,
  No. 3:15-1074, 2018 WL 2932354 (D. Conn. Feb. 22, 2018)................................................22

*Miller v. Bridgeport Bd. of Educ.*,
  No. 3:12-01287, 2014 WL 3738057 (D. Conn. July 30, 2014) (Meyer, J.) ............................9

*Mullins v. Prudential Ins. Co. of Am.*,
  267 F.R.D. 504 (W.D. Ky. 2010)...........................................................................................22

*Nemir v. Mitsubushi Motors Corp.*,
    228 F.R.D. 573 (E.D. Mich. 2005) ........................................................................19

*NovelPoster v. Javitch Canfield Grp.*,
    No. 13-05186, 2014 WL 7149216 (N.D. Cal. Dec. 12, 2014)...................................23

*Picciano v. McLoughlin*,
    No. 07-0781, 2010 WL 4366999 (N.D.N.Y. Oct. 28, 2010) ....................................30

*Rambarran v. Dynamic Airways, LLC*,
    No. 14-10138, 2015 WL 4523222 (S.D.N.Y. July 27, 2015)............................20, 24

*Rowell v. NCO Fin. Sys., Inc.*,
    No. 13-2514, 2014 WL 2154422 (D. Kan. Ma 22, 2014).........................................22

*Sandvik Intell. Prop. AB v. Kennametal, Inc.*,
    No. 10-cv-00654, 2012 WL 4378205 (W.D. Pa. Sept. 25, 2012)............................17

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
    490 F.3d 130 (2d Cir. 2007)....................................................................................19

*This, LLC v. Jaccard Corp.*,
    No. 15-1606, 2017 WL 547902 (D. Conn. Feb. 9, 2017) .........................................22

*Zuniga v. Bernalillo Cty.*,
    No. 11-877, 2013 WL 3328692 (D.N.M. Mar. 21, 2013) ........................................22

## Other Authorities

Fed. R. Civ. P. 37(a)(1)............................................................................................26

Fed. R. Civ. P. 26(a) ................................................................................................18

Fed. R. Civ. P. 33(d) ................................................................................................21

## INTRODUCTION

Plaintiffs' motion to strike ("Motion") seeks extraordinary relief: an order precluding Cigna Health and Life Insurance Company ("CHLIC") from making certain arguments and introducing certain evidence in opposition to Plaintiffs' motion for class certification, and in effect, absolving Plaintiffs and their class certification expert Launce B. Mustoe, Jr. for "shortcomings" (Mot. at 28) in the methodology, opinions, and arguments advanced in support of certification. Plaintiffs filed this Motion—even though the two issues upon which Plaintiffs rely were never the subject of a motion to compel or other discovery motion—two months after CHLIC filed its opposition to class certification and its *Daubert* motion challenging Mr. Mustoe's opinions.

The Motion is without merit.  The two discovery-related issues that Plaintiffs complain about—Benefit Option Code ("BenOpt Code") information and deductible/out-of-pocket maximum accumulator data—are neither new to Plaintiffs nor the result of anything improper, let alone intentional misconduct, by CHLIC.  They exist primarily as a result of (1) Plaintiffs' unwillingness to review the thousands of plan documents implicated by their claims; (2) Plaintiffs' shifting objectives, uses, and requests regarding reports extracted from CHLIC's Document Source Tool ("DST") system over the past two-plus years—reports that do not exist in the ordinary course of business and which CHLIC spent considerable money and employee hours to generate for Plaintiffs in good faith; and (3) with respect to deductibles and out-of-pocket maximum limits, Plaintiffs' own position that the information is not relevant to their damages model.

Plaintiffs' suggestion that they were wildly misled by CHLIC's initial discovery responses is contradicted by the parties' numerous communications over the past two years, in which CHLIC explained the limitations of reports generated from the DST system, and also explained the content of its discovery responses, including what information Plaintiffs could find in the DST reports. CHLIC did not "hide" the "BenOpt Code" from them; CHLIC could not read Plaintiffs' mind to

know that they thought the reports were inadequate, especially when the concept of searching DST emerged to help Plaintiffs identify plans with certain language, and ***not*** to tie prescription drug transactions to specific plan language.

In response to their requests for the BenOpt Code, CHLIC has agreed to produce, and has produced, that information. Moreover, CHLIC's supplemental discovery responses, many of which CHLIC served six months before Plaintiffs' class certification deadline, provided more detail about CHLIC's data systems and how CHLIC ensures transactions are adjudicated in accordance with plan terms and design. Plaintiffs did not serve discovery to follow up on that information until well after they filed their class certification motion and related expert declaration.

Plaintiffs' actions belie the severity of their current complaints and their claim that they remain confused; among other things, they never filed a discovery motion in compliance with the Court's procedures and did not seek a Rule 30(b)(6) deposition on the DST system and reports until July 2020, eighteen months after the first report was provided. Whatever discovery ambiguities or disputes they believe existed regarding the BenOpt Code in the DST reports have instead been injected into the class certification process to try to shield their expert's flawed methodology. Plaintiffs' Motion also misses the mark—CHLIC's *Daubert* motion does not criticize Mr. Mustoe for failing to use the BenOpt Code, which still does not remedy the lack of plan document end dates, references to inoperative plan documents, Plaintiffs' mismatches between class definition language variations and DST reports, and other issues in the DST reports that CHLIC told Plaintiffs about years ago and that are the focal point in CHLIC's *Daubert* motion.

Plaintiffs' argument with respect to the deductible and out-of-pocket maximum accumulator data is also baseless and inconsistent. Plaintiffs make clear in their class certification and *Daubert* briefing that they believe they do not need to account for deductibles and out-of-

pocket maximums as part of their class proof and damages theories, and that they and their expert never intended to use this data. Moreover, CHLIC never misrepresented the status of accumulator information or concealed it, and indeed highlighted the significance of that information to Plaintiffs well over a year ago. CHLIC has acted in good faith and done nothing to warrant the overbroad and punitive relief sought by Plaintiffs. The Court should deny Plaintiffs' Motion.

## STATEMENT OF FACTS

### I.   Relevant Facts Regarding Plaintiffs' Requests For DST Reports

#### A.   The DST Reports Resulted from CHLIC's Efforts in Mid-2018 and Early-2019 to Address Plaintiffs' Desire to Identify Plans with Certain Language, Without Reviewing the Plans Themselves

Plaintiffs' Motion picks up the story of the "DST reports" provided by CHLIC midway through, and in doing so, leaves out important information and context. The concept of searching documents in CHLIC's DST system (a tool to create draft plan documents) and generating reports was originally borne to help Plaintiffs identify plans with certain language, and *not* for purposes of trying to tie specific prescription drug transactions to specific plan language, as Plaintiffs now claim in their Motion. *See* Declaration of Brian W. Shaffer ("Shaffer Decl.") ¶ 3. In response to Plaintiffs' request for copies of all plans and policies under which "Clawbacks" were paid, CHLIC explained the burden of the request because it would involve tens of thousands of plans, millions of individuals with their own unique prescription drug use history, and thousands of Administrative Services Only ("ASO") agreements. ECF 315-02, Ex. E at 53-55. CHLIC offered to discuss a reasonable and appropriate protocol to provide Plaintiffs with such documents. *Id.*

At an in-person meet and confer in mid-July 2018, Plaintiffs' counsel explored whether there was an alternative to reviewing all of the plans and plan-related documents encompassed by Plaintiffs' then even more broadly-defined class that encompassed *all* plans with prescription drug

benefits.[1]  Shaffer Decl. ¶ 4; ECF 48 at 55; *see also* ECF 48 at ¶ 135.  CHLIC's counsel mentioned the capability of searching documents in CHLIC's DST system, which is something CHLIC did in one prior litigation, but is not how CHLIC uses the DST system in its regular course of business. Shaffer Decl. ¶ 4.  Because CHLIC does not ordinarily generate the types of DST reports provided in this litigation, nor do they exist in its normal course of business, CHLIC's counsel indicated that it would need to see whether CHLIC could run such reports to identify plans with certain language for litigation purposes in this case.  *Id*. at ¶ 4.

CHLIC had produced over 600 plan and plan-related documents by fall 2018, but Plaintiffs continued to inquire regarding a system capability to identify plans with certain language, rather than reviewing the actual plans.  *Id*. at ¶ 5.  Exs. A and B.  After investigating whether CHLIC could systematically identify which plans documents had particular language, CHLIC updated Plaintiffs that it had "not identified any ***system capabilities that can identify or <u>pinpoint</u> which CHLIC clients had particular benefit language*** in their plan booklets ***during particular time periods***."  Shaffer Decl., Ex. Q at 2 (emphasis added).  In response, Plaintiffs' counsel asked about searching the documents in the DST system to "suit [their] needs," which at that point in time was only to identify plan documents with certain language—***not*** to use those results to tie plan language to prescription drug transaction data.  *Id*., Ex. D at 1.  Days later, Plaintiffs' counsel again inquired about the "[a]bility to tie terms to plans."  *See id*., Ex. E at 1 ("Please provide an update as to whether the application mentioned … during our first in-person meet and confer can be modified ***to identify plans that contain certain terms/provisions***.") (emphasis added).

---

[1] For the first several years of this lawsuit, Plaintiffs' claims concerned *all* plans with prescription drug benefits, not only those with specific provisions, until Plaintiffs revised their class definitions (multiple times) in the spring of 2020. *See* ECF 198 at ¶ 179 (limiting class to plans with particular language); *cf*. ECF 48 at ¶ 135; *see also* ECF 205 at 2-3 (seeking to certify six classes listed in motion for class certification); ECF 253 at 1-4 (moving to amend classes listed in motion for class certification).

CHLIC again explained to Plaintiffs that the DST "functionality is not used in Cigna's normal course of business," however, CHLIC had developed the ability to run text searches of plan documents created in the DST system and could generate "a list of plan documents with responsive language to an exact string of text." *Id.*, Ex. F at 1. As early as January 2019, CHLIC disclosed to Plaintiffs and emphasized that the parties needed to discuss "the limitations inherent in this approach." *Id.* Counsel then conferred regarding several discovery items. Plaintiffs asked about CHLIC's "ability to tie provisions to plans." *Id.*, Ex. G at 1. During that discussion, CHLIC's counsel explained that DST reports do not contain information reflecting the end date for when a particular plan or plan-related document contained the specific phrase Plaintiffs requested for the DST search. *Id.* at ¶ 6. This is the same argument CHLIC again makes in opposing Plaintiffs' motion for class certification and in challenging Mr. Mustoe. *See* ECF 274 at 42; ECF 278-1 at 27-28. This argument was no surprise to Plaintiffs, nor do Plaintiffs address it in their Motion.

**B.    Plaintiffs Continued to Request DST Reports Following and Notwithstanding CHLIC's Disclosures of Their Limitations and Production of Plans**

CHLIC again disclosed to Plaintiffs the limitations with the DST reports at the same time it produced its first report in February 2019:

> As we have discussed, the "Effective Date" field reflects the effective date of that document for a particular client. Cigna is currently unable to provide the end date for each document or when the phrase searched no longer appeared in particular documents for that client and plan. Please note that clients on the Proclaim system reissue/update their plans periodically. In the interim, there may be riders issued to address regulatory changes, benefit changes, or any other changes requested by the client….

Shaffer Decl., Ex. H. Despite knowing these limitations, Plaintiffs informally requested four more DST reports regarding other plan language snippets. *Id.*, Ex. I at 1. While it was evaluating that new request, CHLIC produced more than 138,000 plan and plan-related documents based on the results of the sample DST report, among other plans it had produced. *Id.*, Exs. J at 1 and K at 1.

Shortly thereafter, counsel for the parties again met-and-conferred to discuss, among other things, Plaintiffs' request for CHLIC to run additional DST reports for additional language Plaintiffs wanted to try to identify in specific plans.  Shaffer Decl. ¶ 8; *id.*, Exs. EE and L.  Although CHLIC had provided the initial report more than six weeks earlier, Plaintiffs did not ask any other questions about the DST reports.  Shaffer Decl. ¶ 8.  For example, they did not say that they needed information to try to distinguish among different plans if a CHLIC plan sponsor had more than one benefit plan in a particular year.  *Id.*  Instead, a few weeks later, Plaintiffs vaguely and broadly asked CHLIC to confirm that the DST reports "contain all data concerning the plans available on the DST system."  Shaffer Decl., Ex. L.  At the time, the discussions still concerned the Plaintiffs' desire to use the DST reports for purposes of identifying plans with particular plan language. CHLIC thus reasonably interpreted Plaintiffs request as asking whether there were other data fields on the specific DST report generated and produced in February addressing that question. Accordingly, CHLIC responded:

> We are not sure what you mean by all data concerning the plans.  However, with regard to the DST reports, we have provided you with all of the relevant data fields available for the report and which are necessary for the parties to review the client information, the document type, the plan identifier, the funding arrangement, and the effective date of the document.

*Id.*, Ex. M.  The other fields in the sample DST report are administrative—i.e., they do not identify which plans had the precise language that Plaintiffs were seeking—and CHLIC told Plaintiffs that from the reports run by CHLIC, "[c]ertain administrative fields have not been produced."  *Id.* at 1; Shaffer Decl., Ex. C.  Accordingly, at this point in time, CHLIC had no information from Plaintiffs to know what specific additional information CHLIC could look for to assist Plaintiffs.[2]

---

[2] Plaintiffs did not serve discovery about the DST reports until almost four months after they filed their class certification motion when they propounded an interrogatory in June 2020 asking CHLIC to identify "all … data fields that can be (a) queried by Cigna's Document Source Tool and/or (b) included in 'DST reports," a more clear question than that asked back in February 2019.  Shaffer Decl., Ex. P at 1.  In response, CHLIC provided Plaintiffs with a

### C.    Plaintiffs' Obscured Pivot Regarding DST Reports Based on Their Expert's Methodology and Evolving Class Certification Theory

If Plaintiffs were struggling to link the prescription drug transaction data produced in this case directly to the DST reports, that was not what they conveyed to CHLIC.   In May 2019, Plaintiffs served their Fourth Set of Interrogatories, which was the first time Plaintiffs asked CHLIC to "[i]dentify, by claim number (i.e., CLM_MUM [sic]), each transaction in the prescription drug transaction data produced by Cigna on January 20, 2019 that was pursuant to a plan containing" a certain snippet of language.  ECF 315-01, Ex. A at 4.  Before its responses were due, CHLIC provided the requested DST reports as part of meet and confer efforts, as well as produced another almost 50,000 plan and plan-related documents.[3]  *Id.*, Exs. N at 1 and K at 1-2.

In its initial response to that interrogatory, CHLIC responded that the information that Plaintiffs were requesting "is not maintained by Cigna in the ordinary course of business *in the form and format* requested by Plaintiffs."[4]  ECF 315-01, Ex. A at 9 (emphasis added).  To try to

---

[3] Around this time, in March 2019, the parties began discussing the possibility of a mediation or Early Neutral Evaluation ("ENE") for purposes of exploring settlement.  Shaffer Decl. ¶ 9.  In May 2019, the parties agreed to schedule an in-person Early Neutral Evaluation for July 30, 2019 ("ENE Session").  *Id.*  The parties had numerous discussions regarding the DST reports leading up to and following that ENE Session.  *Id.*  In the late summer and fall of 2019, counsel for the parties discussed and agreed to participate in a mediation session with a mediator for purposes of exploring settlement.  *Id.* ¶ 13.  In October 2019, the parties agreed to schedule an in-person mediation for November 20, 2019 ("Mediation Session").  *Id.*  The parties had numerous discussions regarding the DST reports leading up to and following that Mediation Session.  In October 2019, prior to the Mediation Session, counsel for the parties arranged for a call between their respective experts, Sean May (for CHLIC) and Launce Mustoe (for Plaintiffs) to discuss aspects of the data.  *Id.*

[4] Contrary to Plaintiffs' contention, CHLIC never stated that it could not tie a transaction to a plan document.  Rather, CHLIC stated that it could not do so in the form and format requested by Plaintiffs.  CHLIC has informed Plaintiffs numerous times that they have mischaracterized CHLIC's initial interrogatory responses, but Plaintiffs have ignored CHLIC, choosing instead to file an amended complaint with a breach of fiduciary duty claim against CHLIC.  Despite alleging in that amended complaint that CHLIC "cannot even identify which claims should be adjudicated based on the specific applicable Plan language," ECF 198 at ¶ 131, Plaintiffs now admit in their Motion that they "***believed all along***" that CHLIC could tie specific transactions to specific plan language.  Mot. at 27 (emphasis added).  Adding such allegations to the second amended complaint when they "believed" otherwise "all along" is, at best, inconsistent, or could possibly form the basis for dismissal of that claim.  *See Miller v. Bridgeport Bd. of Educ.*, 3:12-01287, 2014 WL 3738057, at *7 (D. Conn. July 30, 2014) (Meyer, J.) (dismissing case with prejudice due to party asserting allegations known to be false).

---

spreadsheet of information in the DST system.  *Id.*, Ex. PP.  Plaintiffs have not followed up in any way and have not requested that CHLIC provide them with any of that additional information.

point Plaintiffs towards pieces of the information they sought, CHLIC further responded that, to the extent information sought "may be able to be ascertained" from the prescription drug transaction data, DST language search results, and plan documents that CHLIC has produced, the burden of deriving that information from those sources is the same for Plaintiffs as CHLIC and directed Plaintiffs to those documents and data pursuant to Rule 33(d). *Id.*

CHLIC produced another DST report on July 11, 2019 (*see* Shaffer Decl., Ex. R, and the next day, the parties met-and-conferred regarding several discovery issues, including CHLIC's responses to Plaintiffs' Fourth Set of Interrogatories. Shaffer Decl. ¶ 11. During that discussion, among other things, CHLIC identified the types of information Plaintiffs could obtain through the DST reports. *Id.* Plaintiffs' counsel expressed the view that, because CHLIC responded that the information Plaintiffs requested in their interrogatory "is not maintained by Cigna in the ordinary course of business *in the form and format*" Plaintiffs requested, CHLIC was breaching its fiduciary duty to be able to verify it had adjudicated a prescription drug transaction in accordance with its plan terms. *Id.* Plaintiffs' counsel stated that they were most interested in learning about and getting the extent to which plan language matters and drives certain types of adjudications. *Id.* CHLIC's counsel again explained that, if CHLIC and its client agree on benefit design, and agree on the terms for the pricing and adjudication, CHLIC implements those selections. *Id.*

After that discussion, Plaintiffs served their Fifth Set of Interrogatories, which were identical to Interrogatory No. 2 in their Fourth Set except pertained to five new snippets of plan language. Shaffer Decl., Ex. S. To address the concerns that Plaintiffs' counsel raised for the first time in the July 2019 meet and confer, CHLIC informed Plaintiffs that it would "supplement [its] response which you have taken issue with regarding Cigna's administration of benefits in accordance with plan terms." *Id.*, Ex. T. On September 18, 2019, CHLIC did just that and

explained how each prescription drug transaction is adjudicated in accordance with the applicable plan language, including describing a multi-step process involving various data systems.[5]  ECF No. 207-20.  CHLIC also responded that day to Plaintiffs' Fifth Set of Interrogatories, in which CHLIC provided responses similar to those in its supplemental responses to the Fourth Set.  ECF No. 315-01, Ex. B.  About one month later, CHLIC produced another 179,725 plan and plan-related documents containing any of the phrases that Plaintiffs had selected.  *Id.*, Ex. V.

All the while, CHLIC continued to produce—and Plaintiffs continued to request—DST reports.[6]  *Id.*, Ex. X.  None of those requests indicated what other information Plaintiffs needed to try to tie specific transactions to specific plans identified on the DST reports.

> **D.    By the Time Plaintiffs Issued Discovery Making Clear to CHLIC What They Were Attempting to Do, Plaintiffs' Class Certification Motion Deadline Was Looming**

Months later and less than a week before Plaintiffs' class certification motion was due, Plaintiffs served their Eighth Set of Interrogatories, wherein they requested that CHLIC identify all plans containing another two new snippets of plan language—but ***not*** to identify transactions adjudicated pursuant to plans with that language—and requested that the report include the "Group ID (which should include the Benefit Option/Plan of Benefit)."  Shaffer Decl., Ex. AA at 2.

---

[5] CHLIC did not supplement because its prior response was "false," as Plaintiffs self-servingly contend.  Mot. at 2. CHLIC supplemented to provide information to refute Plaintiffs' new breach of fiduciary duty theory, which Plaintiffs contrived from mischaracterizing CHLIC's original response in wholly ignoring CHLIC's answer that it could not generate the information in the "form and format" requested.  Shaffer Decl., ¶ 12.  Despite supplementing to refute Plaintiffs' new theory, and although Plaintiffs now admit they believed all along that CHLIC adjudicated claims according to plan terms (Mot. at 27), Plaintiffs elected not to meet and confer regarding these responses and instead filed their amended complaint nearly five months later asserting that new cause of action based on that unsupported allegation.  ECF 198 at ¶¶ 129-131.  Plaintiffs did not seek information about these data systems until July 2020.

[6] In late 2019, Plaintiffs requested a DST report that CHLIC had already produced seven months earlier, as well as a DST report concerning "coinsurance" language, although Plaintiffs are not pursuing claims on behalf of a coinsurance class.  Shaffer Decl., Ex. W.  Plaintiffs followed up on these requests by serving its Sixth Set of Interrogatories in January 2020, which asked CHLIC to identify plans that contained certain clauses, including a request for the "Group ID (which should include the Benefit Option/Plan of Benefit)."  *Id.*, Ex. Y at 1.  CHLIC responded by referring Plaintiffs to the DST report it had produced earlier and objected to the part of the interrogatory seeking information about coinsurance claims, as Plaintiffs had stated they were not pursuing those class claims.  ECF 315-01, Ex. C.

CHLIC's responses to that discovery would not be due until after Plaintiffs filed their motion for class certification on March 2, 2020. If Plaintiffs truly needed the "Group ID" and "Benefit Option/Plan of Benefit" from DST for any of the reports for purposes of their class certification motion and expert declaration, they could have sought to push back that deadline; instead, Plaintiffs pressed forward despite not having the information they now claim they needed.[7]

Plaintiffs then filed their motion for class certification on March 2, 2020. ECF 205; Sealed ECF 209. CHLIC subsequently served its responses and objections to the Eight Set of Interrogatories, ECF 315-01, Ex. D, and, in May 2020, CHLIC produced two DST reports in response to Plaintiffs' Eighth Set of Interrogatories, including the requested Benefit Option field.[8] Shaffer Decl., Ex. BB.

### E. Plaintiffs Did Not Meet and Confer Again Regarding the Fourth and Fifth Sets of Interrogatories Until After They Moved for Class Certification

Despite providing Plaintiffs with detailed information on September 18, 2019 about how CHLIC adjudicates transactions in accordance with plan language, including how Proclaim clients' selected benefits are loaded on to CHLIC's systems, Plaintiffs did not serve any additional discovery about these processes or the systems until issuing their Rule 30(b)(6) deposition notice to CHLIC on July 2, 2020.[9] And, Plaintiffs sent their first meet and confer letter to CHLIC

---

[7] Had Plaintiffs requested that CHLIC consent to an extension of their deadline to move for class certification, CHLIC would have agreed, as CHLIC has done every other time Plaintiffs have asked for an extension in this case. *See, e.g.,* ECF 296 (agreeing to extend Plaintiffs' deadline to file class certification reply due to their desire to conduct additional depositions); ECF 264 (extending again expert report deadlines to allow additional discovery to occur beforehand).

[8] Notably, many of the plans that CHLIC had already produced to Plaintiffs earlier in the case list the BenOpt Code on the face of the plan itself—particularly, the fully insured plans. *See, e.g.*, Shaffer Decl., Ex. CC at CIGNA00000373 (Plaintiff Negron's plan listing the BenOpt Code "HIGH"). However, Plaintiffs' expert confirmed that he has not reviewed the plan documents that CHLIC produced and does not intend to do so. ECF 277-14 at 102:8-14, 103:10-104:13, 137:12-16.

[9] Notably, CHLIC produced to Plaintiffs on October 2, 2018, a spreadsheet containing information regarding various CHLIC applications and systems, including DST, ePro, the Central Eligibility Database, and the data repository for pharmacy transactions (GHTR). Plaintiffs did not take discovery about any of those systems until deposing their first witness on May 15, 2020. Shaffer Decl., ¶ 12, n.1.

regarding its September 2019 responses seven months later (on April 22, 2020)—and more than six weeks *after* Plaintiffs had already filed their motion for class certification—claiming that these responses were deficient, including CHLIC's reference to and invocation of Rule 33(d) as part of its responses served seven months prior on September 18, 2019.  ECF No. 315-02, Ex. G at 3.

CHLIC responded to Plaintiffs' accusations, clarifying that CHLIC's answers to the Fourth and Fifth Sets of Interrogatories were appropriate and Plaintiffs' dissatisfaction stemmed from (1) flaws in the way the interrogatories were drafted, or in assumptions they made in drafting them; and (2) the fact that the answers CHLIC properly gave did not support the flawed fiduciary duty theories Plaintiffs want to advance.  ECF No. 315-02, Ex. O at 1.  Nonetheless, CHLIC agreed to further supplement these responses, which it did on June 18, 2020, and indicated it would be prepared to discuss the applicable legal principles set forth in those supplemental responses.  *Id*. Though CHLIC's supplemental responses further explained how it can confirm whether a particular transaction in the prescription drug transaction data was adjudicated pursuant to a plan containing certain plan language, Plaintiffs never engaged in a further meet and confer.[10]  Instead, Plaintiffs waited eleven weeks and simply filed their motion to strike on these unaddressed discovery issues along with their reply in support of class certification.

**F.    CHLIC Agreed to Produce and Has Produced the BenOpt Code from DST**

CHLIC agreed to produce and has produced the DST BenOpt Code, including re-running previously provided DST reports.  Shaffer Decl., Exs. GG and HH.  As noted above, CHLIC produced two DST reports on May 12, 2020 containing the BenOpt Code.  But again, Plaintiffs waited another six weeks to raise for the first time an issue about that field and the prior DST

---

[10] CHLIC also further explained the burden that would be required to confirm on a class-wide basis whether a particular transaction was adjudicated pursuant to a plan containing certain plan language for the many millions of prescription drug transactions in the data CHLIC produced.  ECF 315-01, Ex. B.

reports.  *Id.*, Ex. LL.  Then, more than one year after receiving the first DST report, and more than

three months after Plaintiffs filed their class certification motion, Plaintiffs for the first time sought

formal discovery regarding the fields available in DST in their Tenth Set of Interrogatories to

CHLIC served on June 30, 2020.  *Id.*, Ex. P.  And it was not until July 2, 2020, when Plaintiffs

served their Rule 30(b)(6) deposition notice, that Plaintiffs likewise sought discovery related to

the DST system and reports, and the ePro system, which CHLIC first described in September 2019.

*Id.*, Ex. II.

      Notwithstanding the timing of Plaintiffs' discovery—after the filing of their motion for

class certification and their expert declaration in support thereof—CHLIC agreed to rerun the five

DST reports that it previously provided in order to add the BenOpt Code field from DST.[11]  *Id.*,

Ex. JJ.  CHLIC also served its responses to the Tenth Set of Interrogatories, in which CHLIC

further explained the DST system and its limitations, including the end date limitation that CHLIC

first mentioned in February 2019.  *Id.*, Ex. PP.  CHLIC also produced a list of more than 6,000

sources of information in DST that can be searched.  *Id.*  To date, Plaintiffs have not inquired about

that list in any respect; they proceeded with this motion instead.

      One month before Plaintiffs filed this Motion, CHLIC sent a letter to Plaintiffs to further

clarify the record regarding the DST reports.  CHLIC explained that it disagreed with Plaintiffs'

characterization of the events involving the DST reports and accusations that CHLIC has been

misleading in its communications about those reports.  *Id.*, Ex. C at 1.  CHLIC also provided

additional information regarding CHLIC's DST search capabilities, and stated that if Plaintiffs

needed to supplement their expert report after receiving the new DST reports with the BenOpt

Code field, CHLIC was "certainly willing to discuss possible ways to address that issue in the

---

[11] CHLIC agreed to do so in July 2020, but each DST report can take anywhere from 4-8 weeks to run depending on the language and number of documents being searched.  Shaffer Decl., Ex. O at ¶ 4; ECF 315-02, Ex. L at 132:10-13

context of the overall schedule." *Id.* at 6.  Plaintiffs did not respond to CHLIC's letter in any fashion.  Instead, they filed this Motion on September 3, 2020, and in it, completely ignore CHLIC's August 5, 2020 letter and all the information disclosed therein.

Consistent with its agreement, CHLIC recently produced four of the five DST reports that it previously provided in order to add the BenOpt Code field.  Shaffer Decl., Exs. GG and HH.  CHLIC has also produced the DST report with the BenOpt Code requested by Plaintiffs in their Eleventh Set of Interrogatories, which Plaintiffs served on July 28, 2020.  *Id.*, Ex. GG.  CHLIC will produce the remaining report as soon as it is finalized.  *Id.*, ¶ 16.  Notably, CHLIC's expert, Sean May, and Plaintiffs' expert, Launce Mustoe, have used the same DST reports for purposes of their opinions in this case.  *Id.*, ¶ 17.

## II.    Plaintiffs Never Sought, And Their Expert's Methodology Did Not Consider, Deductible And Out-Of-Pocket Maximum Accumulations

To date, Plaintiffs have never served a discovery request upon CHLIC to produce all data necessary to effectively "reprocess" the pharmacy transactions at issue, effectively the damages theory Plaintiffs pursued in their motion for class certification (although they change that theory in their reply brief).

In connection with the prescription drug transaction data that CHLIC produced for the Named Plaintiffs in 2018,[12] Plaintiffs sent CHLIC a letter—not a formal discovery request— asking CHLIC to produce "all claims data that is relevant to proving liability and calculating damages for the Plaintiffs and the Classes."  ECF No. 315-02, Ex. F.  Because this was early 2019, and the parties had always spoke about prescription drug transaction data from CHLIC's GHTR database, and Plaintiffs had not served a request for production seeking other data, CHLIC

---

[12] That data, from CHLIC's GHTR system, includes information about each transaction that Plaintiffs have described to be in their class and sub-class definitions.  This was the "claims data" that the parties discussed in the context of discovery, the ENE Session and Mediation Session.

reasonably interpreted Plaintiffs' inquiry as relating to the prescription drug related data in GHTR.
Shaffer Decl., ¶ 18.

Approximately one week later, CHLIC produced prescription drug transaction data for the putative class and provided Plaintiffs with the relevant fields to evaluate amounts paid by individuals for their prescription drugs, which included amounts paid on that particular transaction that were applied to a customer's deductible. *Id.*, Ex. KK at 1-2. In response to Plaintiffs' inquiry regarding "all claims data", and based on CHLIC's understanding that it related to the prescription drug transaction data, CHLIC also explained to Plaintiffs that it had produced prescription drug transaction data for the putative class containing "all available fields that are relevant for purposes of this case." ECF No. 315-02, Ex. H. CHLIC specified that "[a]s for data fields regarding deductible information, Cigna's data only contains fields regarding the dollar amount applied toward a customer's deductible for a particular transaction" and that the data is transaction-based "and thus does not track the accumulation toward a particular customer's overall plan structure." *Id.*

More than four months later, Plaintiffs demanded that CHLIC produce within additional data fields for "the classes' ***prescription drug transaction data***." Shaffer Decl., Ex. NN (emphasis added). CHLIC responded that Plaintiffs' demand was time-consuming and burdensome, but clarified that "with respect to the ***prescription transaction data***," CHLIC had "given Plaintiffs all of the data and fields that CHLIC and its experts are using[13] to evaluate these transactions." *Id.*, Ex. MM (emphasis added). Plaintiffs did not thereafter inquire about accumulator information.

---

[13] Tyler Lester confirmed this during his deposition, explaining that the "deductible applied amount" column in the prescription drug transaction data "represents any cost share that the customer is paying at the point of sale that is applied towards their deductible." ECF 315-02 at 155:20-25.

In July 2019, CHLIC pointed out to Plaintiffs their failure to consider accumulation of deductibles and out-of-pocket maximums.  Shaffer Decl., ¶ 19.  CHLIC explained, on more than one occasion, that one of the many issues with Plaintiffs' damages model was that it failed to address accumulation of deductibles and out-of-pocket maximums, which is necessary and requires individual assessments of whether a putative class member hit his or her out-of-pocket maximum or deductible, while taking into account all of the unique aspects of each plan's design. *Id*.  CHLIC explained these same limitations again in November 2019.  *Id.*  Though CHLIC identified this deficiency 14 months ago, Plaintiffs never served discovery requesting CHLIC to produce data necessary to reprocess the pharmacy transactions at issue to account for accumulation of deductibles and out-of-pocket maximums.  This is not surprising, as Plaintiffs repeatedly have taken the position that they are not required to consider such issues as part of their arguments regarding class proof (ECF 308 at 33; ECF 310 at 2, 22), and their expert has testified that he has not been asked to reprocess any claims or consider the impact of these issues on his opinions regarding damages.  ECF 277-14 at 176:2-178:4, 185:1-13, 187:18-189:5.

Despite the objectionable nature of Plaintiffs' demands, CHLIC also responded to their continued inquiries regarding specific additional data fields (including administrative fields) in the prescription drug transaction data by providing specific information regarding each data field Plaintiffs asked about and identified whether CHLIC already produced a corresponding data field. Shaffer Decl., Ex. U at 1-4.  Plaintiffs did not ask further about data fields, let alone accumulator information, and did not ask to meet and confer further on this issue.  Instead, more than seven months later, Plaintiffs moved for class certification and with an accompanying expert declaration, without taking into account or responding to the position that CHLIC had raised in July and

November 2019.[14]  ECF 206; ECF 207, Ex. A.  Four months after moving for class certification, on July 2, 2020, Plaintiffs served their Rule 30(b)(6) deposition notice to CHLIC, which—despite listing more than 47 topics, many of which contained numerous sub-topics—did ***not*** include a topic concerning deductible or out-of-pocket maximum accumulator information.[15]  Shaffer Decl., Ex. II.

When it opposed Plaintiffs' class certification motion on July 6, 2020, CHLIC raised the same concern about the flaw in Plaintiffs' damages model for not considering accumulation toward deductibles and out-of-pocket maximums which CHLIC had disclosed to Plaintiffs more than a year before.  ECF 274 at 40-41; ECF. No. 279 at 17-22.  Plaintiffs now cry foul over the deductible and out-of-pocket maximum accumulator data, even though CHLIC expressly told Plaintiffs that it would challenge their damages model on this basis in July 2019, more than seven months before Plaintiffs moved to certify a class.  Shaffer Decl. ¶ 19.  Plaintiffs have not requested this data because they have confirmed that they do not believe it is relevant, as they make expressly clear in their most recent class certification and *Daubert* briefing.  *See* ECF 308 at 33; ECF 310 at 2, 22.  That is no surprise, given their expert's repeated admission that he was instructed that he did not need to consider accumulation of deductibles and out-of-pocket maximums.  ECF 277-14 at 176:2-178:4, 185:1-13, 187:18-189:5.[16]  Plaintiffs' position regarding accumulator information is disingenuous, and a red herring.

---

[14] CHLIC's expert, Sean May, and Plaintiffs' expert, Launce Mustoe, have used the same prescription drug transaction data for purposes of their opinions in this case.

[15] CHLIC, however, agreed to, and did, present a corporate witness for deposition regarding accumulator information, in response to Plaintiffs' email request on August 25, 2020 (more than five months after filing their motion for class certification and nearly two months after CHLIC filed its opposition).  Shaffer Decl., Ex. Z.

[16] The factual record shows that CHLIC has acted in good faith and, unquestionably, has not engaged in a "pattern of obstruction," as Plaintiffs erroneously claim.  Mot. at 4.  Certain of Plaintiffs' accusations are completely unfounded and appear to be designed to inflame prejudices against CHLIC.  For example, Plaintiffs' reference to an email regarding CHLIC's processing of prescription drug transactions from ████████████ pharmacies is misleading and an attempt to cast bold, unfounded aspersions on CHLIC to cloud the issues before the Court.  *See* Mot. at 4 (claiming, without support, that ████████████████████

**LEGAL ARGUMENT**

**III.    Plaintiffs Do Not Make The Showing Required For the Relief They Seek**

Plaintiffs bring their Motion seeking extraordinary relief under the Court's "inherent authority to remedy discovery abuses" and Rules 37(b)(2)(A)(i)-(vi) and 37(c)(1) of the Federal Rules of Civil Procedure, but do not make the necessary showing under either standard.  The authorities on which Plaintiffs rely regarding the Court's inherent power to issue relief based on discovery reflect circumstances where there was a violation of a court order, the court had warned the sanctioned party numerous times, documents were produced after the close of discovery or on the eve of trial, or evidence was destroyed.  *See* Mot. at 20.[17]  Similarly, Rule 37(b)(2)(A) permits relief for not obeying a discovery order, and Rule 37(c)(1) allows for relief for failing to provide information "as required by Rule 26(a) or (e)."

Even if applicable, the Court's discretion is limited to relief that is both just and "commensurate" in severity with any non-compliance.  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).   Relief under Rule 37 "is a drastic remedy and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous

---

████████ .  The email Plaintiffs reference involves a separate pharmacy contract between CHLIC and a particular pharmacy, not a contract that was part of Catamaran's (now Optum's) retail pharmacy network, and therefore, does not concern transactions that are at issue in this case.  Further, the subject of this email has nothing to do with the DST reports or other issues in Plaintiffs' Motion.  In addition, Plaintiffs suggestion that CHLIC refused to permit the witness (Tyler Lester) from testifying about this document omits any reference to the preceding questions and answers that Mr. Lester provided.  Shaffer Decl., Ex. OO at 303:6-312:12.  Instead, Plaintiffs cite only the last question in a series of questions about this email, which CHLIC's counsel was forced to end after Plaintiffs' continued badgering of Mr. Lester—even after he answered questions numerous times about this document.  *Id.* at 306:16-311:17.

[17] *See also* Mot. at 24-26 (citing *Loggerhead Tools, LLC v. Sears Holdings Corp.*, 12-9033, 2016 WL 5080034 (N.D. Ill. Sept. 20, 2016) (willful production of clearly requested documents just days before the close of expert discovery); *Britton v. Dallas Airmotive, Inc.*, 07-00547, 2011 WL 13196562 (D. Idaho June 16, 2011) (production of the requested documents five months after the discovery deadline and two weeks from trial); *Hogan v. Gen. Elec. Co.*, 109 F. Supp. 2d 99 (N.D.N.Y. 2000) (declining to exclude expert report where other party had provided "directly contradictory answers" in interrogatory responses and failed to provide adequate information to plaintiffs due to "lack of recordkeeping"); *Sandvik Intell. Prop. AB v. Kennametal, Inc.* 10-00654, 2012 WL 4378205 (W.D. Pa. Sept. 25, 2012) (serving only objections after receiving two extensions, and later providing incomplete responses as fact discovery closed)).

disregard of the Federal Rules of Civil Procedure." *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995).

Here, there are no such "discovery abuses," let alone flagrant bad faith, to remedy. Rather than conducting diligent discovery and exhausting meet and confer efforts before filing their class certification motion and expert report, or pursuing a discovery motion in 2019 or the first half of 2020, Plaintiffs now belatedly raise unripe discovery disputes concerning the DST reports and accumulator information in the form of a motion to strike. In doing so, Plaintiffs mischaracterize CHLIC's discovery responses and conveniently ignore when they previously did not act on the issue (DST reports) and also say is irrelevant (accumulator information). Because Plaintiffs have not even brought a discovery motion, no court order exists, and Rule 37(b)(2)(A) does not apply. Likewise, the Court should deny Plaintiffs' alternative requested relief seeking to compel CHLIC to further respond to interrogatories, as there is no properly pending discovery motion on which the Court could order this relief, and the relief sought is neither appropriate nor feasible. Plaintiffs also do not establish how the BenOpt Code in the DST reports or accumulator information falls within the bounds of what Rule 26(a) requires be disclosed,[18] or are information of which CHLIC was aware to supplement its interrogatory responses before it did. Rule 37(c)(1) also does not apply. Moreover, Plaintiffs' desperate request to strike ***all*** of CHLIC's arguments and evidence about the DST reports, which involve substantially more than the BenOpt Codes arguably at issue, is overbroad, not "just" or "commensurate" in severity with the alleged non-compliance, and should be denied.

---

[18] Because that information relates to Plaintiffs' case in chief, and is not being used by CHLIC's experts, it falls outside of Rule 26(a). Fed. R. Civ. P. 26(a) (requiring disclosure of documents and information a party "may use to support its claims or defenses").

IV.     **The Court Should Deny Plaintiffs' Requested Relief Regarding DST Reports**

A.      **Plaintiffs Lack of Information Is Not Due to Any Wrongdoing by CHLIC**

Plaintiffs' suggestion that CHLIC intentionally worked to deprive Plaintiffs of information they now claim they needed for their class certification motion and expert declaration rings hollow. To the extent Plaintiffs are to be believed that they lack information they wish they had for class certification, it is primarily due to their own unartful discovery, their decision not to disclose to CHLIC where they were struggling or what they needed, and their failure to follow up and meet and confer on CHLIC's discovery responses.  Courts decline to award the extraordinary remedies Plaintiffs seek, when like here, the factual record shows no discovery abuses or other wrongdoing. *See supra* Part I(A); *Nemir v. Mitsubushi Motors Corp.*, 228 F.R.D. 573, 601-603 (E.D. Mich. 2005) (finding no discovery abuse and declining to preclude expert evidence when there was no willfulness or bad faith to cooperate with discovery, and when plaintiff did "not bring his motion with clean hands" and plaintiff's poorly-worded discovery did not clearly include discovery sought).

In their Motion, Plaintiffs ignore CHLIC's September 18, 2019 responses to the Fourth and Fifth Sets of Interrogatories, which discuss in detail the process CHLIC has in place to adjudicate transactions according to plan terms and plan design.  ECF 207-20; ECF 315-01, Ex. B.  CHLIC explained how the process works in its ePro system and how the client's benefit design is used to create the operative plan document and to set up coding to adjudicate transactions in accordance with the plan terms and design.  *Id*.  Despite having this information as of September 18, 2019, Plaintiffs declined to seek ***any*** additional discovery about these processes or systems until well after moving for class certification.  Plaintiffs never even asked for ePro-related information for the Named Plaintiffs' plans.  Instead, they waited more than seven months, and six weeks after they filed their class certification motion, to send CHLIC a letter about these interrogatory

responses, which they now claim are insufficient in their Motion.[19]  ECF 315-02, Ex. G.  And, they only began to conduct discovery about the ePro and DST systems and other CHLIC processes several months *after* moving for class certification, even though they received the first DST report more than a year earlier.  *Id.*, Exs. P and II.

Plaintiffs' Motion also does not disclose that Plaintiffs used CHLIC's September 18, 2019 responses to file an amended pleading in February 2020.[20]  Nor do they provide any factual support for their unfounded position that needing a way to decipher among plans by way of a benefit option code was "*precisely* the issue that Cigna *knew* Plaintiffs were trying to resolve in their series of discovery requests and multiple meet and confer sessions."  Mot. at 16.  The record instead demonstrates that Plaintiffs did not disclose that as "*precisely* the issue" their discovery targeted— which is in no way apparent from the interrogatories themselves—until *after* Plaintiffs moved for class certification.  ECF 315-02, Ex. G at 3.  That does not make CHLIC's conduct wrongful or warranting the extraordinary and punitive relief Plaintiffs request.[21]

## B.    Plaintiffs Misrepresent CHLIC's Interrogatory Responses

In an attempt to manufacture some wrongdoing, Plaintiffs misrepresent CHLIC's interrogatory responses and reference to Rule 33(d) therein.  In response to Plaintiffs' unartful requests to "[i]dentify, by claim number (i.e., CLM-MUM), each transaction" or "each copayment

---

[19] Once the parties did confer, CHLIC agreed to supplement its responses again, which it did on June 18, 2020, providing detailed transaction examples.  ECF 315-01, Ex. B.  Plaintiffs never engaged in a further meet and confer on these responses, and instead, filed this Motion eleven weeks later.

[20] Plaintiffs appear now to concede that their breach of fiduciary duty allegations are unwarranted, as Plaintiffs "believed all along" that CHLIC can tie specific transactions to specific plan language.  Mot. at 27; *see also supra* n.6.

[21] *See Excellent Home Care Servs., LLC v. FGA, Inc.*, 13-5390 2017 WL 9732082, at *13 (E.D.N.Y. June 5, 2017) (finding no basis for sanctions where plaintiff did not give "defendant an opportunity to cure any deficiencies before seeking sanctions," and instead ordering plaintiff to "meet and confer … and *specifically* identify any deficiencies in defendant's interrogatory responses" (emphasis added)); *Rambarran v. Dynamic Airways, LLC*, 14-10138, 2015 WL 4523222, at *7 (S.D.N.Y. July 27, 2015) ("If plaintiffs sought to rely on discovery from [defendant], and such discovery was not forthcoming, plaintiffs should have promptly filed a motion to compel—and, if necessary, requested an extension of the deadline to move for class certification.").

and/or deductible transaction in the prescription drug transaction data produced by Cigna that was pursuant to a plan containing" six different snippets of language, CHLIC unequivocally stated that it does not maintain such information "in the ordinary course of business *in the form and format* requested by Plaintiffs." ECF 315-01, Ex. A; Shaffer Decl., Ex. QQ (emphasis added).[22]  CHLIC further indicated that, to the extent that the information sought could be ascertained from the prescription drug transaction data, DST search results, and plan documents that CHLIC has produced, the burden of deriving that information from those documents and data is the same for Plaintiffs as CHLIC and directed Plaintiffs to those documents and data pursuant to Rule 33(d). *Id*.  In doing so, CHLIC intended to provide Plaintiffs with as much information that could be helpful in providing the requested information because CHLIC did not maintain it in the "form and format" Plaintiffs wanted.  But as clearly indicated in the response, CHLIC's response was just that—that it did not maintain the information "in the ordinary course of business *in the form and format requested*," and therefore was not solely pointing Plaintiffs to documents and data under Rule 33(d).  *Id*.

During that meet and confer about the responses in July 2019, which Plaintiffs completely ignore in their Motion, Plaintiffs' counsel asked whether CHLIC's response meant that CHLIC had no way of identifying whether transactions were adjudicated in accordance with their plan terms.  Shaffer Decl., ¶ 10.  This confirms that Plaintiffs' counsel understood that CHLIC's answer was that the information did not exist "in the ordinary course of business *in the form and format requested*."  In response, CHLIC counsel responded that CHLIC could not provide a compilation of the information in Plaintiffs' requested "form and format," especially given the many millions

---

[22] Plaintiffs also propounded other interrogatories asking CHLIC to identify plans with certain language.  Shaffer Decl., Exs. Y and AA.  CHLIC referred Plaintiffs to the plan documents produced in this case and the DST reports that CHLIC provided to Plaintiffs.  This is a reasonable use of Rule 33(d).  *See* Fed. R. Civ. P. 33(d).

of transactions in the data. *Id.* Counsel also explained that CHLIC could do so for an individual transaction if presented with a particular transaction (the normal situation in which CHLIC might be asked that question). Nevertheless, CHLIC's counsel also provided additional information about for what information could be found in the three document and data sources mentioned in CHLIC's initial interrogatory response (i.e., the prescription drug transaction data, DST language search results, and plan-related documents that CHLIC had produced). *Id.* Plaintiffs therefore were aware that CHLIC did not identify these document and data sources as the sole sources to answer the interrogatory. Their contention that CHLIC "affirmed that the DST Reports were sufficient to answer the interrogatories requesting that Cigna tie claims to relevant plan language" (Mot. at 22) is completely false.

Moreover, because CHLIC identified with specificity the three sources where they could look for some of the information, produced those sources, and advised Plaintiffs what information could be obtained in each (even if not with Plaintiffs' desired specificity in the initial written responses, certainly in follow up meet-and-confers), CHLIC complied with Rule 33(d) as to that response. As such, the authorities that Plaintiffs cite are inapposite and do not control. *See In re Master Key Litig.*, 53 F.R.D. 87, 90 (D. Conn. 1971) (responding party failed to give definitive answer of whether requested information was even available).[23] The remaining two Rule 33(d) decisions from this Court that Plaintiffs cite are also distinguishable.[24] Here, Plaintiffs have not brought a discovery motion related to CHLIC's responses, and there are no related court discovery

---

[23] *See also Allen v. Sears*, 07-11706, 2009 WL 36472 (E.D. Mich. Jan. 6, 2009) (same); *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 515 (W.D. Ky. 2010) (involving only "passing reference" to existence of business records); *Zuniga v. Bernalillo Cty.*, 11-877, 2013 WL 3328692 (D.N.M. Mar. 21, 2013) (no actual invocation of Rule 33(d) and no reference to business records in responses); *Rowell v. NCO Fin. Sys., Inc.*, 13-2514, 2014 WL 2154422 (D. Kan. Ma 22, 2014) (no clear indication that all of requested information was unavailable).

[24] *See McCullough v. World Wrestling Ent., Inc.*, 3:15-1074, 2018 WL 2932354 (D. Conn. Feb. 22, 2018) (involving violation of court's discovery order after court previously "admonished plaintiffs' counsel on several occasions"); *This, LLC v. Jaccard Corp.*, 3:15-1606, 2017 WL 547902 (D. Conn. Feb. 9, 2017) (involving failure to supplement interrogatory responses in violation of court order after two other violations of court order).

orders.  Nor are there grounds for any because CHLIC has supplemented its responses on several occasions and has agreed to produce, and has produced, the BenOpt Code information.

The factual record also supports CHLIC's position.  After CHLIC supplemented its responses in September 2019, which contained the same reference to Rule 33(d), Plaintiffs did ***not*** promptly allege that these responses were insufficient or that use of Rule 33(d) was improper. They waited seven months—and six weeks after they moved for class certification—to do so.  ECF 315-02, Ex. G.

Plaintiffs now try to feign surprise and outrage to distract from the numerous flaws in their class certification motion and expert report.  Plaintiffs erroneously claim that CHLIC somehow knew that Plaintiffs needed more information in the DST reports, and that CHLIC hid this information only to sandbag them later after they filed their class certification motion.  This is completely false.  As Plaintiffs are well aware, CHLIC does not create DST reports in its normal course of business, but rather, developed this ability for purposes of litigation.  *See supra* Part I(A)(1).  As a result, CHLIC and its counsel was learning about the DST search capabilities, and how they could be aligned with transaction data during this litigation.  *See* Shaffer Decl., ¶ 4.  And, as explained above, Plaintiffs did not disclose their "***precise*** issue" of needing a way to identify benefit options until after their class certification motion and related expert report was on file.  ECF 315-02, Ex. G at 3.  Once Plaintiffs informed CHLIC that they were looking for a way to link the prescription drug transaction data and DST reports beyond how Plaintiffs had already been using the reports, and that the BenOpt Codes was ***precisely*** what they apparently needed, CHLIC agreed to provide it and has now done so or will do so for each of the DST reports requested.  *Id*., Exs. GG and HH.  These facts do not justify the relief Plaintiffs seek.  *See NovelPoster v. Javitch Canfield Grp.*, 13-05186, 2014 WL 7149216, at *13-14 (N.D. Cal. Dec. 12, 2014) (denying

sanctions when scope of claims and requested discovery was unclear, but discovery was ultimately provided).

### C.    Plaintiffs' Requested Relief Is Inappropriate and Overreaching

Plaintiffs request that the Court strike *all* of CHLIC's arguments and evidence—including the report of CHLIC's expert, Dr. Sean May—related to (1) Plaintiffs' use of the DST reports and (2) supposed shortcomings of the DST reports.[25]  Mot. at 28.  Even if Plaintiffs were justified in seeking some relief from the Court (they are not), their request is inappropriate and overreaching.  *See Rambarran*, 14-10138, 2015 WL 4523222, at *7 ("If plaintiffs sought to rely on discovery from [defendant], and such discovery was not forthcoming, plaintiffs should have promptly filed a motion to compel—and, if necessary, requested an extension of the deadline to move for class certification.").

The arguments and evidence that Plaintiffs ask the Court to strike—specifically, that the DST reports do not have an end date and include references to plan documents that never became operative—have nothing to do with the use of the BenOpt Code field.  *See* Mot. at 18-19 (Plaintiffs describe CHLIC's challenges to Mr. Mustoe's report with respect to the DST reports' lack of end dates and references to inoperative plan documents, not missing BenOpt Code information).  Those same limitations would exist, and would not cure the flaws in Mr. Mustoe's model, even if CHLIC

---

[25] It is not clear whether Plaintiffs are asking the Court to strike Dr. May's entire report or just the parts relating to Plaintiffs' use of the DST reports and shortcomings of those reports.  CHLIC assumes Plaintiffs are seeking the latter, given the nature of the Motion, but Plaintiffs should clarify.  In any event, the Court should deny any request to strike the entire report because Plaintiffs' Motion provides no justification for doing so, and much of Dr. May's opinion is not based on arguments about the DST reports, benefit option code, and accumulator data.  *See, e.g.*, ECF 277, Ex. 4 at ¶¶ 74-76 (discussing how the pharmacy transaction data does not always record the amount that participants paid) and 125-139 (discussing how members of the proposed class have differing financial incentives regarding whether deductible transactions should be included).  Moreover, CHLIC challenges Mr. Mustoe's improper and inadequate use of the DST reports as the basis for his opinions for reasons completely unrelated to any of the issues Plaintiffs raise in their Motion.  *See, e.g.*, ECF 279 at 24-27 (describing mismatch of snippets of language Plaintiffs selected to generate DST reports with their amended class definitions).  Striking *all* of CHLIC's arguments and evidence concerning the DST reports sweeps far too broad.

had known about the significance of the BenOpt Codes to Plaintiffs.[26]  *See, e.g.*, ECF 277-04 at ¶¶ 64-68.  Moreover, CHLIC's expert, Sean May, and Plaintiffs' expert, Launce Mustoe, have used the same DST reports for purposes of their opinions in this case so there is no unfair advantage to CHLIC.

Additionally, CHLIC informed Plaintiffs about the DST reports' limitations even before CHLIC produced its first DST report in February 2019.  Despite these known limitations, ***Plaintiffs*** continued to ask for other reports.  But CHLIC has repeatedly advised that Plaintiffs should review the actual plans and plan-related documents to determine the language in effect at a particular time because plan documents must be read as a whole and the DST reports might not accurately represent all plans or plan-related documents with certain language.  Shaffer Decl., ¶ 7. Indeed, CHLIC has produced over 368,000 plan and plan-related documents to Plaintiffs for this purpose.  *See id.*, Exs. A, B, J, K, N, and V.

This all reveals that Plaintiffs' requested relief is not really about allegedly improper arguments that CHLIC makes in opposing Plaintiffs' class certification motion and challenging their expert.  Parties often challenge experts due to an "analytical gap" in the information and data considered or a flaw in the expert's model.[27]  That is what CHLIC did here.

Plaintiffs' request for alternative relief—ordering CHLIC to "answer the previously propounded interrogatories requesting it to link claims to specific plans"—should also be denied

---

[26] As CHLIC explained to Plaintiffs since early 2019, the DST reports do not capture when plan language may have no longer been in effect, and clients update their plan and plan-related documents on different schedules.  Shaffer Decl., Ex. H.  As a result, even if the BenOpt Code field is populated in the DST reports (and it is not always), it may not be possible to match with certainty the plan document on the DST report to a specific pharmacy transaction.  ECF 277, Ex. 4 at ¶¶ 64-68.  For these reasons, review of the plan documents (which CHLIC has produced) is also necessary, but Mr. Mustoe confirms he has not done so and does not intend to do so.  ECF 277-14 at 102:8-14, 103:10-104:13, 137:12-16.

[27] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may exclude an expert when "there is simply too great an analytical gap between the data and the opinion proffered."); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (same).

because it is inappropriate.  There is no pending discovery motion on which the Court could order Plaintiffs' alternative requested relief, but even if there was, that motion would be procedurally improper for Plaintiffs' failure to exhaust meet and confer efforts regarding their need for the BenOpt Code, which CHLIC agreed to produce, and has produced, now that Plaintiffs have clarified what they needed.  *See* Fed. R. Civ. P. 37(a)(1); Local Civil Rule 37(a).

Additionally, the Court should not grant Plaintiffs' request for alternative relief because as CHLIC has already informed Plaintiffs numerous times, the requested information is not available in their desired form and format, and compiling it would be extremely burdensome, time-consuming, costly, and impractical.  ECF 277-12; Shaffer Decl, Ex. O at ¶¶ 5-12.  A complex, multi-step process using various data sources and documents is required to identify which plan document governs a particular prescription drug transaction.  Shaffer Decl., Ex. O at ¶ 9; *see also, e.g.*, ECF 207-20 and ECF 277-12.  To do what Plaintiffs request, CHLIC would need to reverse engineer that process for hundreds of millions of transactions, which span multiple years and different plans and different effective dates.  Hellandbrand Decl. ¶ 8.  And it would require a manual review of several data systems and sources of information for each individual transaction in the prescription drug transaction data, which would take numerous Cigna employees an estimated millions of hours to do.  Hellandbrand Decl. ¶¶ 8-11.  This is the embodiment of burden.

## V.     The Court Should Deny Plaintiffs' Requested Relief Regarding Accumulator Data

Plaintiffs' arguments regarding the deductible and out-of-pocket maximum accumulator data are baseless and no more than a red herring because Plaintiffs have made it abundantly clear that they believe this data is irrelevant to their theory of the case and their expert's methodology. Even if Plaintiffs did intend to account for accumulator data in their damages model (they do not), CHLIC has never misrepresented to Plaintiffs the status of this data.  Rather, in an attempt to bolster their unfounded request that this Court strike arguments CHLIC disclosed to Plaintiffs more

than a year ago, Plaintiffs ignore and omit parts of CHLIC's communications about data in to try to manufacturer wrongdoing by CHLIC and create a distraction from the flaws in their expert's methodology.  The factual record provides no basis to shift blame to CHLIC for Mr. Mustoe's shortcomings and Plaintiffs' flawed damages model.

### A.       Plaintiffs Have Never Intended to Use Accumulator Information

Plaintiffs never served discovery requesting deductible and out-of-pocket maximum accumulator data, never intended to, and still do not intend to.  They have made it clear that they believe this data need not be accounted for in their expert's methodology.  *See, e.g.*, ECF 308 at 33 ("Cigna claims that Mustoe should have done an additional calculation determining the potential impact of deductible-shifting and out-of-pocket maximums.… [S]uch calculations are not required…."); ECF 309 at 2 ("Cigna claims that Mr. Mustoe's methodology should be excluded because he did not account for individuals' claim histories, including any deductible or out-of-pocket maximum requirements.  It does not, because consistent with Plaintiffs' theory of liability, damages should be measured on a transaction-by-transaction basis rather than a plan-year basis." (internal citation omitted)); *id.* at 22 ("Cigna is simply wrong when it argues that Mustoe needed to account for class member claims history [including taking accumulator data into account] under Plaintiffs' theory of the case." (internal citation omitted)).  Their expert repeatedly admitted that he would not have considered the data even if it had been requested and produced. ECF 275-14 at 176:2-178:4, 185:1-13, 187:18-189:5.

Nor do Plaintiffs request relief in its Motion that would require production of this data. Mot. at 28-29.  That is likely for two reasons: (1) there is no formal request for production on which they could premise a motion; and (2) they still do not intend to use it for their supposed damages methodology.  If Plaintiffs truly wanted data for accumulator information, CHLIC would

not have refused to produce the information it has as Plaintiffs claim.  Indeed, CHLIC willingly

produced a 30(b)(6) witness to testify on this topic.  Shaffer Decl., Ex. Z.

### B.     CHLIC Never Misrepresented the Status of the Accumulator Information Available in the Prescription Drug Transaction Data

Even if Plaintiffs did intend to account for deductible and out-of-pocket maximum

accumulator data in their damages model, which is not the case, CHLIC never misrepresented the

status of this information.  Instead, the communications cited in Plaintiffs' Motion referred to the

prescription drug transaction data that CHLIC produced from GHTR, not benefit data in a general

sense, which would include medical claims data or any separate data tracking accumulator

information in a different database as well.  Indeed, as the above factual record reflects, the context

of the parties' discussions and CHLIC's representations about data concerned only the prescription

drug transaction data contained in CHLIC's GHTR database.  *See, e.g.*, Shaffer Decl., Exs. NN

and MM.  The complete factual record demonstrates that CHLIC appropriately responded to

Plaintiffs and provided all information regarding accumulator information contained within that

data set.  *See supra* Part I(B).

Plaintiffs incorrectly argue that "Cigna represented in discovery and the meet and confer

process that information concerning the accumulation of member cost share payments toward

annual deductibles or out of pocket maximums was not relevant and/or did not exist."  Mot. at 18.

That argument is based on a concocted version of the parties' discussions.  In reality, CHLIC

represented that the relevant fields for the prescription drug transaction data had been produced,

including the field regarding amounts applied toward a deductible.  ECF 315-02, Ex. H.  CHLIC

also explained that the data is transaction-based "and thus does not track the accumulation toward

a particular customer's overall plan structure."  *Id*.  CHLIC witnesses have confirmed that any

accumulator information resides outside of CHLIC's prescription drug transaction data.  *See*

Shaffer Decl., Ex. FF at 400:15-401:2, 403:7-13, 407:3-6 (explaining that if there is a separate pharmacy deductible or out-of-pocket maximum that information is housed "within the Argus claim processing system"); *id.* at 401:15-19 (noting that, when a medical and pharmacy deductible or out-of-pocket maximum are combined, the accumulation information is stored in medical claims processing system).[28]  CHLIC thus correctly represented that the prescription drug transaction data does not contain additional deductible or out-of-pocket maximum accumulator information.

Plaintiffs also conflate the prescription drug transaction data with any potential "claims data" or accumulator information that CHLIC may have.  Plaintiffs even incorrectly assume that the accumulator information CHLIC mentions in its Class Certification Opposition and *Daubert* Motion is in fact "claims data."  It is not.  Accumulator information is not stored in the GHTR database that houses CHLIC's prescription drug transaction data, which CHLIC agreed to produce, did produce, and which was the subject of the parties' meet and confer discussions in early 2019.

### C.   Plaintiffs Never Propounded a Formal Discovery Request Asking CHLIC to Produce Accumulator Information

Given that Plaintiffs have never served a formal discovery request calling for the production of ***any*** type of data, including the prescription drug transaction data (let alone accumulator information), if Plaintiffs intended to make a broader inquiry for more data, they should have served a formal discovery request for it.  Plaintiffs' broad request that CHLIC confirm it produced all data fields relevant to determine liability and damages, which was made informally and not through formal discovery requests, is not sufficient for two important reasons.

***First***, Plaintiffs made that request within the context of the GHTR prescription drug transaction data.  ECF 315-02, Ex. F at 4.  ***Second***, Plaintiffs bear the burden of proving their

---

[28] Plaintiffs fail to cite for the Court that deposition testimony or explain that they could have requested depositions on this topic years ago if they intended to use this information (which they do not).  *See* Mot., *passim.*

alleged damages and presenting an appropriate model to calculate damages on a class wide basis. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (requiring plaintiffs to present damages model showing that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)" and "measure only those damages attributable to" plaintiffs' theory of liability). To meet that burden, Plaintiffs need to request via the Federal Rules the information they need, as CHLIC has not always known Plaintiffs' intended damages model.[29] *See Baca v. Wal-Mart Stores, Inc.*, 97-1270, 1998 WL 36030854, at *2 (D.N.M. Apr. 30, 1998) (denying motion to compel response to interrogatory that was poorly drafted, as "[d]efendant is certainly under no obligation to build plaintiff's case for her"). Once Plaintiffs revealed more information about their model, CHLIC indicated that their failure to account for deductibles and out-of-pocket maximums was problematic to their damages theory. Shaffer Decl., ¶ 19.

But even after CHLIC made that clear, Plaintiffs continued to respond that they do not believe they have to account for that information. Consistent with that position, Plaintiffs did not ever ask to confer about that information. *Id.* ¶ 20-21. To date, even after filing their Motion, Plaintiffs still have not served discovery asking CHLIC to produce the deductible and out-of-pocket maximum accumulator information. The Court should therefore reject Plaintiffs' effort to strike as a discovery sanction CHLIC's previously-disclosed argument when Plaintiffs themselves decided accumulator information was not relevant to their case in chief, and therefore declined to pursue it. *See Picciano v. McLoughlin*, 07-0781, 2010 WL 4366999, at *7 (N.D.N.Y. Oct. 28, 2010) (denying "Defendant's request to have the Court compel Plaintiff to provide releases for records" where "Defendant waited almost two months to file a motion to compel" after becoming aware of the incident related to records at issue).

---

[29] In fact, that damages model appears to have changed even since Plaintiffs filed their class certification motion. *See* ECF 308 at 4 (abandoning the argument that "clawbacks" are the harm and focusing instead on "overcharges").

**CONCLUSION**

CHLIC respectfully requests that the Court deny Plaintiffs' Motion.


Respectfully submitted,

Dated:  September 29, 2020

*/s/* Brian W. Shaffer
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com


Elise M. Attridge (phv10802)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  202-739-5704
Facsimile:  202-739-3001
elise.attridge@morganlewis.com


Michael D. Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2945
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and
Life Insurance Company*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 29, 2020, the foregoing document and all attachments thereto were filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Brian W. Shaffer*
Brian W. Shaffer