# EXHIBIT O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Civ. A. No. 16-cv-1702 (JAM) |
| vs. | |
| CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al., | |
| Defendants. | |

**DECLARATION OF DAMON HELLANDBRAND IN SUPPORT OF DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION TO STRIKE**

I, Damon Hellandbrand, hereby declare as follows:

1.      I am over 18 years of age and have personal knowledge of the matters set forth herein based on my experience and review of documents produced in this case.  If called upon, I could testify competently and truthfully to the matters discussed below.

2.      I submit this declaration in support of Defendant CHLIC's Memorandum in Opposition to Motion to Strike.

3.      I am currently a Technical Support Specialist at Cigna Corporation ("Cigna"), the parent company of Defendant Cigna Health and Life Insurance Company ("CHLIC").  I joined Cigna in 2001 as a Contract Analyst.  I assumed my current role as a Technical Support Specialist in 2005.  In both of those roles, I work with the Document Source Tool ("DST") application to generate draft plan and plan related documents, including certificates, policies, riders and commitments, based on client benefit selections.  As a result of that experience, I

have an extensive understanding of CHLIC's DST application, as well as an understanding of other CHLIC databases and applications, and am able to speak to the information set forth below.

4.    CHLIC has generated reports from its DST application for Plaintiffs in connection with this litigation.  It takes CHLIC anywhere from 4-8 weeks to run one of these DST reports, depending on the language and number of documents being searched and other demands on CHLIC's system as it is being used in the ordinary course of business.

5.    I have reviewed Plaintiffs' interrogatories asking CHLIC to identify each transaction in the prescription drug transaction data produced in this case that was adjudicated pursuant to a plan containing certain selections of plan language.

6.    CHLIC does not maintain the information that Plaintiffs request in their interrogatories—specifically, Interrogatory No. 2 in the Fourth Set and Interrogatory Nos. 1-6 in the Fifth Set—in the form and format that Plaintiffs have requested.  CHLIC does not have a list or other compilation by claim number of each transaction in its prescription drug transaction data where the member's plan contains the particular phrase Plaintiffs quote in their interrogatories.  To my knowledge, nor do any of CHLIC's systems contain information or programming that would allow CHLIC to generate such a list of prescription drug transactions systematically.

7.    As stated in CHLIC's interrogatory responses, it is my understanding that various data sources and documents can be used to identify which plan document governs a particular prescription drug transaction.

8.    CHLIC's process is set up so that it can take the prescription drug benefits that its client accounts select and "downstream" that information to appropriate systems to both

generate draft plan booklets for client review based off of those benefit selections and also configure coding to send information to its prescription drug transaction adjudication vendor.

9.      Plaintiffs' interrogatories, however, essentially ask CHLIC to "reverse engineer" this complex, multi-step process for what I have been informed would be more than 100 million prescription drug transactions and tens of thousands of plans spanning multiple years.  CHLIC cannot generate the information to respond to those interrogatories by clicking a button, running searches for additional data, or utilizing CHLIC's DST or other IT systems to do so.  Rather, reverse engineering the process to identify which plan document with particular excerpts of language governed a particular prescription drug transaction would require a manual review of several data systems and sources of information for each individual transaction in the prescription drug transaction data.

10.     As far as I am aware, CHLIC has never performed such a manual review for thousands or millions of transactions, as I understand would be required here.  Based on my knowledge and understanding of CHLIC databases and applications that would be necessary to perform that review, it would be unduly burdensome, costly, and time-consuming to perform for each of the more than 100 million prescription drug transactions to confirm which ones were adjudicated pursuant to a plan document with any one of the excerpts of plan language identified by Plaintiffs.

11.     It is my best estimate that conducting the type of process outlined in the example in CHLIC's second supplemental responses as to a single prescription drug transaction would take a person knowledgeable about CHLIC's systems at least several minutes to complete.  It could easily take longer and require an individual to consult with individuals in multiple departments responsible for different systems and databases.  Once the

plan document is identified, it would take additional time to review it to see if it includes any one of the seven excerpts of language Plaintiffs identify in their interrogatories.

12.     Based on my understanding that there are well over 100 million transactions for which Plaintiffs seek this information, and performing a manual review of one transaction would take at least several minutes, it would take millions of hours to fully complete this task.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of September 2020.

*Damon Hellandbrand*
Damon Hellandbrand

4