# EXHIBIT II

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiffs,<br>　vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al.<br><br>　　　　　　　　　　　Defendants. | Civil No. 16-cv-1702 (JAM)<br><br>**NOTICE OF DEPOSITION OF CIGNA HEALTH AND LIFE INSURANCE COMPANY**<br><br>July 2, 2020 |

　　　　PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil Procedure, Plaintiffs, Kimberly A. Negron, Daniel Perry, Courtney Gallagher, Nina Curol, Roger Curol, and Billy Ray Blocker, will take the deposition by oral examination of a corporate representative of Defendant Cigna Health and Life Insurance Company ("Cigna"). Cigna means Cigna Health and Life Insurance Company and any of its parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, or consultants), and any other person purporting to act on their behalf, including Cigna Pharmacy Management.

　　　　Pursuant to Fed. R. Civ. P. 30(b)(6), Cigna shall designate one or more officer(s), director(s), managing agent(s), or other person(s) knowledgeable and qualified to testify on Cigna's behalf regarding the matters described in the attached Schedule A. Each such designee produced to testify has an affirmative duty to review all relevant documents, reports, and other matters known or reasonably available to Cigna and familiarize himself or herself with relevant witnesses known or reasonably available (including former employees) to provide informed,

binding answers at the deposition. Plaintiffs reserve the right to seek relief if any designee is not adequately prepared to testify to the matters identified in the attached Schedule A.

The deposition will commence on **July 20, 2020 at 9:00 a.m.** Eastern (or at such time agreed to by counsel for the parties) and will continue day to day as necessary. The deposition will be conducted in accordance with the parties' agreed-upon Remote Deposition Protocol, attached to this Notice of Deposition. It will be conducted using video teleconferencing services (e.g., Zoom) and/or telephonically; and will be recorded by stenographic means before a notary public or officer authorized by law to administer oaths. The audio and video will be recorded by electronic means.

DATED: July 2, 2020

                                                            *s/ Meghan S. B. Oliver*
Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
860-493-6292
860-493-6290 fax
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
Mathew Jasinski (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
860-882-1681
860-882-1682 fax
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Meghan S. B. Oliver

- 3 -

        MOTLEY RICE LLC
        28 Bridgeside Blvd.
        Mount Pleasant, SC 29464
        843-216-9000
        moliver@motleyrice.com

        **Attorneys for Plaintiffs**

## SCHEDULE A

I.  **Definitions**

Unless otherwise stated herein, the terms set forth below are defined as follows:

1. "Action" refers to *Negron v. Cigna Corp.*, 3:16-cv-01702-JAM (D. Conn.).

2. "Argus," "you," and "your" refers to DST Pharmacy Solutions, Inc., and any of its predecessor entities (including Argus Health Systems, Inc.), successor entities, divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors, or bankers), and any other person purporting to act on their behalf.

3. "Catamaran" means Catamaran PBM of Illinois, Inc., and includes any of its parents, subsidiaries, affiliates, predecessor entities, successor entities (including OptumRx), divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, or consultants), and any other person purporting to act on their behalf.

4. "CDB" means Client Data Base as that term is used in CIGNA00144285.

5. "CED" means the Central Eligibility Database as that term is used in CIGNA00144285.

6. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7. "CID" means a Client Intent Document.

8. "Cigna" means Cigna Corporation and any of its parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including

attorneys, accountants, or consultants), and any other person purporting to act on their behalf, including Cigna Health and Life Insurance Company ("CHLIC") and Cigna Pharmacy Management.

9. "Clients" means employers, sponsors, or groups with which Cigna had contracts or agreements to provide or administer prescription drug benefits.

10. "Clawback" means the amount of Spread or other money paid by or credited back to Cigna Group or Cigna Group PBMs in connection with the sale of prescription drugs, such as a negative reimbursement.

11. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

12. "Copay G" means lesser of three logic.

13. "DST" means Document Source Tool as that application is described in CIGNA00144285.

14. "DST Report" refers to the "DST language search results" as that phrase is used in Cigna's responses to Plaintiffs' Fourth Set of Interrogatories, and to the "DST Report" referred to in footnote 2 of Cigna's Second Supplemental Objections and Responses of Defendant Cigna to Interrogatory No. 2 from Plaintiffs' Fourth Set of Interrogatories ("Cigna's Second Supplemental Responses").

15. "EPro" means the "EPro Profile Administration System" as that term is used in CIGNA00144285.

16. "Fees Paid to Pharmacy" are the fees negotiated between Defendants and/or Cigna Group PBMs, on the one hand, and Participating Pharmacies (defined below), on the

other, that will be paid to the pharmacies by Defendants and/or Cigna Group PBMs for the sale of a particular prescription drug.

17. "Fees Paid by Plaintiffs" are the fees paid by Plaintiffs to a pharmacy while purchasing prescription drugs and include copayments, coinsurance, and money paid toward satisfying a deductible.

18. "GHTR" means GHTR-Pharmacy as that term is used in CIGNA00144285.

19. "Member" means any individual covered by a Plan.

20. "Member Materials" means the database or databases referred to as such in Cigna's Second Supplemental Responses.

21. "Participating Pharmacies" are pharmacies participating in a network of pharmacies that Cigna authorized its Members to use to fill prescriptions.

22. "PBAB" refers to Cigna's Pharmacy Benefit Advisory Board.

23. "PBS" means a Pharmacy Benefit Summary.

24. "PCT" means pharmacy claims transmissions or paid claims tape, or the like.

25. "Plan" means any group health plan or policy administered or insured by Cigna.

26. "Plan Documents" means policies, certificates, riders, plan booklets, and summary plan documents.

27. "Prescription Drug Claim Transaction Data" means the prescription drug claim transaction data produced by Cigna in this action, excluding data from the Facets system.

28. "Relevant Language" means one or more of the following provisions:

**In the Prescription Drug Benefits Schedule:**

"To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies."

"To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drug Products."

**In the Covered Expenses section:**

"If you or any one of your Dependents, while insured for Prescription Drug Benefits, incurs expenses for charges made by a Pharmacy, for Medically Necessary Prescription Drugs or Related Supplies ordered by a Physician, Cigna will provide coverage for those expenses as shown in the Schedule."

**In the Your Payments section:**

"In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge."

29. "Relevant Plans" means all plans that meet the operative definitions of the Classes and Subclasses. *See* ECF 253.

30. "Spread" is the amount, if any, that the Fees Paid by Plaintiffs exceeds the Fees Paid to the Pharmacy.

31. "You" and "Your" means Cigna and Cigna's.

## II. RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the following topics refer to the period from October 1, 2010 until present.

## III. IDENTIFICATION OF SUBJECT MATTERS FOR EXAMINATION UNDER RULE 30(b)(6)

1. Your organizational structure, including the identification of the primary Persons with managerial or supervisory authority or responsibility in any such division, department, or group relating to the design, development, implementation, processing, and adjudication of prescription drug transactions; pharmacy relations; and handling issues involving participating pharmacies (including allegations that pharmacies violated their provider agreements).

2. The computer applications, databases, programs, and software used to:

    a. create, modify, search, and store plan-language templates, proposed and final Plan Documents, and ASO agreements;

    b. document, modify, and store Client's benefit selections;

    c. adjudicate, process, reprocess, readjudicate, remediate, and pay pharmacy claims; and

    d. communicate with Argus, Participating Pharmacies, and Catamaran.

3. To the extent not covered by Topic 2, GHTR, CED, CDB, Member Materials, EPro, and DST.

4. To the extent not covered by Topic 2, the various claim platforms used by Cigna to adjudicate prescription drug claims including Proclaim, Power, Facets, etc.

5. The processes and procedures used to create, modify, approve, audit, and store client benefit selections, including but not limited to the PBAB process, and the use of CIDs, PBSes, DST, Member Materials, CED, and EPro.

6. The processes and procedures used to create, modify, approve, audit, and store proposed and final plan-language templates and amendments or revisions thereto, including but not limited to the use of CIDs, PBSes, Member Materials, DST, CED, and EPro.

7. Communications with clients concerning Plans, Plan terms and Plan Documents and amendments or revisions thereto.

8. Ben Opt Codes, the definitions of the various Code Fields, including NULL, and the processes and procedures used to create, modify, approve, audit, store, and apply such Codes to Plans and/or Plan language.

9. The processes and procedures used to create, modify, approve, audit, and store proposed and final Plan Documents, including but not limited to the PBAB process, and the use of CIDs, PBSes, DST, CED, Member Materials, and EPro.

10. The processing, adjudication, remediation, reprocessing, and payment of pharmacy benefit claims, including related communications with Clients, Members, Argus, Participating Pharmacies, and Catamaran.

11. The transmission, content, and format of Prescription Drug Claim Transaction Data, claims data, eligibility information, and drug-pricing information between and among Clients, Members, Participating Pharmacies, Cigna, Argus, and Catamaran.

12. The transmission, content, and format of Clients' benefit-selection information and Plan information between and among Clients, Members, Participating Pharmacies, Cigna, Argus, and Catamaran.

13. Your communications with Participating Pharmacies, Catamaran, third-party benefits administrators, third-party payors, Clients, and Members relating to the adjudication of Cigna's prescription drug claims.

14. The flow of money, including the payment, crediting, and debiting of money between and among Argus, Cigna, Catamaran, Participating Pharmacies, Clients and Members in connection with the adjudication of prescription drug benefits for Cigna, including but not limited to Spread, Clawbacks, claim adjustments, claim reversals, and reconciliations.

15. The decision to implement Copay G, including but not limited to, the identification of employees involved in the decision to implement Copay G.

16. The implementation of Copay G, including but not limited to, the identification of employees involved in the implementation of Copay G, changes made to Plan templates and Documents to implement Copay G, changes made to ASO agreements to implement Copay G, changes made to claims processing, and communications with Clients, Members, Argus, and Participating Pharmacies about Copay G.

17. The decision to take Clawbacks, including but not limited to the identification of employees involved in the decision to take Clawbacks.

18. The implementation of Clawbacks, including but not limited to the identification of employees involved in the implementation of Clawbacks, changes made to Plan templates and Documents to implement Clawbacks, changes made to ASO agreements to implement Clawbacks, changes made to claims processing to implement Clawbacks, and communications with Clients, Members, Argus, and Participating Pharmacies, and Catamaran about Clawbacks.

19. Projections and calculations of the amount of Clawbacks, including internal claims that pharmacy overpayments were valued at approximately $100 million per year.

20. Complaints from Clients, Members, and Participating Pharmacies about Clawbacks, and Your responses to those complaints.

21. Your contract with Catamaran, including but not limited to Project Ascension, disputes about compliance with the contract, performance guarantees contained in the contract, and any amendments to the contract.

22. Your contracts with Argus.

23. Your contracts with Participating Pharmacies.

24. Your ASO agreements for pharmacy-benefit Clients.

25. The handling, management, suspension, and termination of any Participating Pharmacies from Your network or Catamaran's network that disclosed certain drug pricing information to Your Members or otherwise violated an agreement not to disclose certain information to Members.

26. Historical changes to the Prescription Drug Schedule including changes to, removal of, and replacement of the Relevant Language in the Prescription Drug Schedule.

27. Historical changes to the Your Payments provision (in the Prescription Drug Benefits section) including changes to, removal of, and replacement of the Relevant Language in the Your Payments provision.

28. Historical changes to the Covered Expenses provision (in the Prescription Drug Benefits section) including changes to, removal of, and replacement of the Relevant Language in the Covered Expenses provision.

29. Differences in language found in the Prescription Drug Schedule, Covered Expenses, Your Payments section in (a) Relevant Plans, (b) EGWP plans, (c) other commercial plans where pass-through pricing was used to calculate Cost Shares.

30. The identification and description of each of the databases, servers, data fields, data dictionaries, data sources, and mapping documents for Prescription Drug Claim Transaction Data maintained by You or for. your benefit.

31. The various adjudication logics used by Cigna or Argus to adjudicate prescription-drug cost shares and changes to adjudication logics during the Relevant Period.

32. The Prescription Drug Claim Transaction Data including its scope (e.g., what plans are included in the Prescription Drug Claim Transaction Data) and each field produced.

33. Claims data fields that are available but were not produced in the Prescription Drug Transaction Data, including but not limited to "Group ID" and its constituents such as Network ID and State code.

34. The Document Source Tool and similar applications used by Cigna that can search for Relevant Plan documents, including their search capabilities and the data available for their reports.

35. The databases and data sources available to queries by the DST system and inclusion in DST Reports.

36. The creation and content of the DST Reports in this action, including the inclusion of NULL values in the BenOpt Code field, and the choice of fields for inclusion in the DST Reports.

37. The differences between the contracts between Cigna and its network pharmacies and the contracts between Catamaran and its network pharmacies, including the reasons for and opportunities presented by Cigna's move from using its own pharmacy network to the Catamaran network.

38. The decision to switch to Catamaran's network of pharmacies.

39. Any provisions in agreements with pharmacies prohibiting them from disclosing information to Members.

40. Cigna's response to the negative media reaction about Clawbacks, including, but not limited to, the FOX 8 investigation.

41. Cigna's response to the legislative and regulatory actions taken to limit Clawbacks.

42. Your policies and procedures that describe any duties and obligations You have to Plan participants relating to the provision of health benefits.

43. The claims and appeals procedures in the Relevant Plans.

44. Cigna's procedures for notifying participants of adverse benefit determinations in connection with prescription drug benefits.

45. The manner and content of Cigna's notice(s) of adverse benefit determinations in connection with prescription drug benefits.

46. The way in which Cigna's claims procedures contained processes and safeguards designed to ensure and to verify that benefit claim determinations were made in accordance with the relevant Plan booklets.

47. The way in which Cigna's claims procedures contained processes and safeguards designed to ensure and to verify that the plan provisions have been applied consistently with respect to similarly situated claimants.