# EXHIBIT LL



Robert A. Izard<br>rizard@ikrlaw.com

June 27, 2020

*Via email*
Brian Shaffer
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103-2921

    Re:  *Negron v. Cigna Health & Life Insurance*, No. 3:16-cv-1702 (D. Conn.)

Dear Brian,

I write concerning Cigna Health and Life Insurance Company's deficient and misleading responses during discovery in this action — namely Cigna's failure to disclose material information that can be used to tie plan booklets to prescription drug benefits claims. Specifically, Plaintiffs have recently learned that Cigna has been withholding at least one key piece of information from Plaintiffs — the "BenOpt" code that Cigna contends is necessary to tie prescription drug claims to the relevant plan provisions pursuant to which those claims were adjudicated.

Almost two years ago, on July 17, 2018, when the parties met to discuss this issue, Cigna proposed to use its Document Source Tool ("DST") system. After several meet and confers, the parties agreed that Cigna would provide DST reports containing information concerning plans containing various phrases provided by Plaintiffs that are relevant to the adjudication of claims for prescription drug benefits.

### A.     Cigna's representations about the DST reports

On February 7, 2019 (almost seven months after the use of DST was first proposed), Cigna produced the first DST report listing plan documents that contained the phrase "exceed the amount paid by the plan to the pharmacy." The report provided only six pieces of information for each plan: (1) account number, (2) account name, (3) document type, (4) CN number, an employer specific number identifying the plan certificate, (5) funding arrangement, and (6) plan effective date. Importantly, because these reports did not include data unique to the plan booklet that is also found in the claims data, they could not be used to tie claims to plans. They could only tie claims to the employers who sponsored the plans through the employer account number. Where an employer had multiple plans, the DST reports could not link the relevant phrase to the plan or the claim.

After Cigna provided this initial report, Plaintiffs' counsel requested confirmation that all relevant information was provided. Specifically, on April 5, 2019 — before Cigna provided any additional DST reports — Plaintiffs requested that Cigna "confirm that the reports contain **all data concerning the plans available on the DST system**."[1]

On April 24, 2019, **Cigna represented that it had produced all "relevant data fields" and that the only fields that were withheld were "administrative fields":**

> [Y]ou have asked that Cigna confirm "that the reports contain all data concerning the plans available on the DST system." We are not sure what you mean by all data concerning the plans. However, with regard to the DST reports, **we have provided you with all of the relevant data fields available for the report** and which are necessary for the parties to review the client information, the document type, the plan identifier, the funding arrangement, and the effective date of the document. **Certain administrative fields have not been produced**.[2]

Based on Mr. Lester's testimony on June 23 and subsequent discovery responses, this representation was clearly false in that Mr. Lester testified that the DST system can search all data bases throughout Cigna which would obviously be far more than the few fields produced and certain administrative fields.

On May 25, 2019 Cigna produced two more DST reports concerning the plan phrases: (1) "Charges means the discounted amount that the pharmacy benefits manager makes available to the Insurance Company"; and (2) "prescription drug charge." And, Cigna produced the fourth and fifth DST reports on July 11 and November 18, 2019, respectively. All of the reports provided through November 2019 included only the same six pieces of information as provided in the first DST report and thus could not be used to tie plans to claims.

**B.    Cigna's responses to Plaintiffs' interrogatories**

Because the DST reports could not be used to tie prescription drug claims to the terms of plans pursuant to which the claims were adjudicated, Plaintiffs served Cigna with interrogatories asking that it tie claims to plans with specific language that Plaintiffs' allege supports their claims. On May 3, 2019, Plaintiffs served their Fourth Set of Interrogatories, which included a specific interrogatory asking Cigna to tie transactions to plans. Specifically, Interrogatory 2 of the Fourth Set asked:

---

[1]   April 5, 2019 email to Joseph Costello, Brian Shaffer, Lisa Veasman, and Eleanor Farrell (emphasis added).
[2]   April 24, 2019 email from Eleanor Farrell to Christopher Barrett (emphasis added).

> Identify, by claim number (i.e., CLM_NUM), each transaction in the prescription drug transaction data produced by Cigna on January 20, 2019 that was pursuant to a plan containing the sentence: "In no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge."

Similarly, Plaintiffs' Fifth Set of Interrogatories included six interrogatories asking Cigna to tie transactions to plans with the following respective phrases:

(1) "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies." (Interrogatory 1, Fifth Set.)

(2) "To receive Prescription Drug Benefits, you [and your] [or your] Dependents may be required to pay a portion of the Covered Expenses for Prescription Drug Products." (Interrogatory 2, Fifth Set.)

(3) "As applicable, your Deductible or Coinsurance payment will be based on the Plan's Prescription Drug Charge when the Pharmacy is a Network Pharmacy[, and the Usual and Customary Charge when the Pharmacy is a non-Network Pharmacy]." (Interrogatory 3, Fifth Set.)

(4) "To receive Prescription Drug Benefits, you and your Dependents may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products." (Interrogatory 4, Fifth Set.)

(5) "After satisfying the plan Deductible, if any, your responsibility for a covered Prescription Drug Product will always be the lowest of: the Copayment or Coinsurance for the Prescription Drug Product; or the Prescription Drug Charge for the Prescription Drug Product; or the Pharmacy's Usual and Customary (U&C) charge for the Prescription Drug Product." (Interrogatory 5, Fifth Set.)

(6) "You are not entitled to the difference between the rate Cigna charges to the Plan and the rate Cigna pays to the Pharmacy for a Prescription Drug Product. For the purposes of Prescription Drug benefit payments, the "Plan" is the entity or business unit responsible for funding benefits in accordance with the terms and conditions outlined in this booklet/certificate." (Interrogatory 6, Fifth Set.)

In response to each of the above interrogatories, Cigna did not provide a substantive response to the question, but instead relied on Rule 33(d). But, it identified only three categories of documents that it had produced – the DST reports, the Claims Data and the Plans. As set forth above, these documents can only link claims to employers but not to a specific employer's plans

or the relevant plan language. Importantly, in order to rely on this rule, the "the **burden** of deriving or ascertaining the answer" must be "**substantially the same** for either party." Fed. R. Civ. P. 33(d) (emphasis added). As discussed below, since Cigna did not produce the Ben Opt Codes, this response was deficient in that Cigna did not provide to Plaintiffs a key piece of information which Cigna possessed necessary to determine the answer.

### C.     Plaintiffs' Sixth and Eighth Sets of Interrogatories and the DST reports produced in response thereto

On December 12, 2019, Plaintiffs requested that Cigna run two additional DST reports for phrases that were relevant to Plaintiffs' claims. After Cigna refused to agree to run the reports, Plaintiffs' served their Sixth Set of Interrogatories consisting of the following interrogatory:

> For the period beginning on October 13, 2010 and continuing to the present, identify each plan and certificate that contain both of the following clauses: (1) "Charges means the discounted amount that the pharmacy benefits manager makes available" and (2) "Coinsurance means the percentage of Charges for covered Prescription Drugs"; and for each identified plan/certificate provide the account number, account name, document type, CN Number (as used in the previously produced "DST Reports"), funding arrangement, date plan/certificate went into effect, date plan/certificate came out of effect, and Group ID (which should include the Benefit Option/Plan of Benefit).

This interrogatory asked that Cigna provide the information that was produced in the previous DST reports, plus two additional pieces of information — the date the plan/certificate came out of effect and Group ID (which should include the Benefit Option/Plan of Benefit). Because Cigna had previously represented that all relevant fields in the DST reports were produced and that the only fields that were not provided were "administrative," Plaintiffs did not know whether, how, or in what form Cigna could or would provide the additional information. Rather than provide the requested new information, Cigna again referred to the prior DST reports and plan documents and again relied on Rule 33(d) and represented that the burden was substantially the same for Plaintiffs and Cigna. But, because Cigna had not produced the plan Ben Opt Codes to Plaintiffs, this response was also deficient for the reasons set forth below.

On February 25, 2020, Plaintiffs served their Eighth Set of Interrogatories, which consisted of two interrogatories seeking DST reports for two additional phrases: (1) "may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products"; and (2) "discretionary authority to interpret and apply plan terms." In addition to the fields provided in the initial five DST reports, Plaintiffs also requested "the date period the plan/certificate was in effect, Group ID (which should include the Benefit Option/Plan of Benefit), and the BRANCH_POLICY_CDES."

On March 26, 2020, Cigna served its responses to the Eighth Set, and although it again cited to Rule 33(d), it agreed to produce a DST report in response to each of these two interrogatories with the requested information, except it would not provide "the 'Group ID' and the 'BRANCH_POLICY_CDES' because Cigna represented that those are not fields available in the DST system." Cigna, however, did not provide that DST report concurrently with its responses.

On April 22, Plaintiffs raised their views about deficiencies in Cigna's discovery responses. On May 1, Cigna responded that it would supplement its prior answers to the Fourth and Fifth Sets of Interrogatories seeking to tie the claims data to the Plan terms pursuant to which they were being adjudicated. Cigna originally agreed to provide those responses on May 15, 2020. Plaintiffs also asked to depose Tyler Lester, the Cigna employee who verified the Answers to Interrogatories, which Plaintiffs intended to take shortly after they received the supplemental answers and before their merits expert report was due.

At about the same time, on May 12, 2020, Cigna produced the DST reports responsive to the Eighth Set. These reports included the same six fields in the previous five reports, but unlike the first five DST reports, they also included for the first time two additional fields: "Contract State" and "BenOpt Code." For reasons that are unclear at this time, Cigna was able to produce DST Reports with these new fields in response to the Eighth Set of Interrogatories, yet it did not do so in response to the Sixth Set, even though the two Interrogatories asked for the same field. Cigna also did not provide the two fields in response to any of the prior sets of interrogatories. Obviously, this issue was to be a subject of Mr. Lester's deposition.

Although they were originally to be produced in mid-May, due to various health issues concerning Mr. Lester's family, on June 18, 2020, Cigna finally served its Second Supplemental Responses to the Fourth Interrogatories and its Supplemental Responses to the Fifth Interrogatories. Contrary to the assertion in your May 1, 2020 letter, these "supplemental" responses did not merely "clarify" the previous responses, but included wholesale changes which demonstrated that Cigna's earlier produced responses and DST reports were deficient. For example, again referring to Rule 33(d), Cigna now directed Plaintiffs to both the Ben Opt Codes and something called the Member Materials database. Indeed, Mr. Lester admitted that the Ben Opt Code is synonymous with the "Plan_of_Ben" field found in the claims data, confirming that the Ben Opt Code can be used with the Account Number to link the claims data with specific plan language.  Lester Tr. (rough) at 155:12-12. But Cigna did not update all of the prior DST reports to provide the Ben Opt Codes, which Cigna now contends need to be reviewed under Rule 33(d), nor did it provide the Member Materials database. Because Mr. Lester didn't even know at his deposition what the Member Materials database is, Plaintiffs don't either. In any event, these Supplemental Answers confirm that Cigna's prior answers relying on Rule 33(d) were deficient as none of this information was identified or produced.

Cigna's discovery strategy is inconsistent with its obligations under the federal rules and obfuscatory. For example, Cigna claims that in order to tie claims to plans, it would need to

Brian Shaffer
June 27, 2020
Page 6 of 7

consult the Central Eligibility Database and the Member Materials Database to find the account number, plan effective date, Ben Opt Code and Certificate Number. In fact, based on discovery to date and Defendants' representations, all of the information needed to tie claims to plans is available in the DST Reports that were produced on May 12. Lester Tr. (rough) at 200-202. Thus, despite Cigna's representations to the contrary, the DST system did, in fact, have access to other non-"administrative" fields that were "relevant." Rather than simply produce updated DST Reports, Cigna substantially downplayed the DST Reports in favor of a contrived and convoluted system that presumably was designed to argue against class certification. *See* Second Supplemental Responses to the Fourth Interrogatories n.2; Supplemental Responses to the Fifth Interrogatories n.2.

Cigna's discovery failures in this case stand in sharp contrast to the forthright answers to interrogatories Cigna served in the *Neufeld* case. Indeed, the limitation on using the DST reports that Cigna identified in *Neufeld* was determining the plan end date, which is precisely the same issue identified by Mr. Lester in *Negron*.[3]

The Ben Opt codes should have been brought to Plaintiffs' attention in 2018 when the parties began meeting and conferring about how to match plans with transactions. Cigna's representations in the responses to the Fourth and Fifth Sets of Interrogatories that the burden of matching claims to plan was "substantially the same for either party" were false when made. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 894 (S.D.N.Y. 1999) ("a party is 'charged with knowledge of what its agents know and the contents of its available records"). Cigna had possession of the BenOpt codes for the plans in the first five produced DST reports and thus could match claims to plans far more effectively and efficiently than Plaintiffs could.

Cigna's conduct has prejudiced Plaintiffs. Plaintiffs' expert has spent many months working on a damages model without the benefit of the BenOpt codes. His declaration in support of class certification was filed on March 2, 2020, well before Cigna produced a single DST report with BenOpt codes; and his merits expert report must be served on or before July 7.

Since Cigna has failed to meet its discovery obligations under the Federal Rules of Civil Procedure, including under Rule 33(d), Cigna is obliged at this time to make use of the BenOpt codes, any other relevant DST fields that it has yet to disclose, and any other databases that it has not produced (to the extent they even are relevant) to answer Plaintiffs' interrogatories. It cannot use Rule 33(d) as a sword while shielding relevant information from Plaintiffs.  That is exactly what it has done. In particular, Cigna needs to provide answers to Fourth, Fifth and Eighth Sets of Interrogatories as set forth above.  In light of the schedule, and Cigna's inexcusable delay and

---

[3] In *Neufeld*, Cigna also referred to a null result, which Mr. Lester could not explain in his testimony.

obfuscation which has prejudiced Plaintiffs, Plaintiffs ask that Cigna produce these answers by July 2, 2020.

Plaintiffs are considering their options, which will depend in part on what Cigna produces by July 2. Plaintiffs reserve all rights, including, but not limited to, the right to seek sanctions, to recoup fees paid or owed to Plaintiffs' expert, and to seek adverse inferences during motion practice and at trial. Plaintiffs also reserve the right to file supplemental expert reports after their expert has had the opportunity to analyze the information Cigna wrongfully withheld.

Sincerely,

s/ Robert A. Izard