UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | October 13, 2020 |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO CIGNA'S SURREPLY
REGARDING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

I. Interpretation of the Plans Raises Common Issues ............................................................... 1

    A. Plan Variations Do Not Defeat Commonality ............................................................ 2

    B. Cigna Has Not Articulated Any Ambiguity ................................................................ 4

II. Plaintiffs Have Carried Their Burden On the ERISA Claims .............................................. 6

III. There are No Fundamental Interclass Conflicts and Plaintiffs Will Fairly Protect the Class ..................................................................................................................... 7

IV. Plaintiffs Have Satisfied Rule 23(b)(2) ................................................................................. 8

V. Plaintiffs Have Satisfied Rule 23(b)(3) .................................................................................. 8

    A. Common Issues Predominate For Plaintiffs' ERISA Claims .................................... 8

    B. Common Issues Predominate For Plaintiffs' RICO Claims ...................................... 9

## TABLE OF AUTHORITIES

**CASES**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,
   No. 16 C 2513, 2018 WL 488257 (N.D. Ill. Jan. 18, 2018) ...................................................... 1

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   133 S. Ct. 1184 (2013) ............................................................................................................. 9

*Barbu v. Life Ins. Co. of North Am.*,
   987 F. Supp. 2d 281 (E.D.N.Y 2013) ...................................................................................... 2

*Dawson v. Cigna Corp.*,
   261 F. Supp. 3d 1275 (S.D. Fla. 2017) .................................................................................... 2

*Fay v. Oxford Health Plan,*
   287 F.3d 96, 106 (2d Cir. 2002) ............................................................................................... 2

*Feifer v. Prudential Ins. Co. of AM.*,
   306 F.3d 1202 (2d Cir. 2002) ................................................................................................... 1

*George v. Shamrock Saloon II LLC*,
   No. 17-CV-6663(RA), 2020 WL 133621 (S.D.N.Y. Jan. 13, 2020) ........................................ 1

*Glynn v. Bankers Life and Cas. Co.*,
   432 F. Supp. 2d 272 (D. Conn. 2005) ...................................................................................... 2

*Grisham v. Life Ins. Co. of North Am.*,
   No. 06-CV-251, 2007 WL 3145804 (E.D. Tenn. Oct. 25, 2007) ............................................. 2

*Hayes v. Liberty Ins. Corp.*,
   Case No. 11-cv-15520, 2012 WL 12930667 (E.D. Mich. Jul. 24, 2012) ................................. 3

*Jeffrey Farkas, M.D., LLC v. Cigna Health and Life Ins. Co.,*
   386 F. Supp. 3d 238 (E.D.N.Y. 2019) ..................................................................................... 2

*Mahon v. Chi. Title Ins. Co.,*
   296 F.R.D. 63 (D. Conn. 2013) ................................................................................................ 9

*Masella v. Blue Cross & Blue Shield of Conn.*,
   936 F.2d 98 (2d Cir. 1991) ....................................................................................................... 2

*Mayer v. Mercy Health Servs., LLC,*
   No. 18-CV-00391-JCH, 2019 WL 527964 (E.D. Mo. Feb. 11, 2019) .................................... 8

*Morgan v. CIGNA Grp. Ins.*,
   2003 WL 722804 (S.D. Ind. Jan. 14, 2003) ............................................................................. 2

*Owens v. Metro. Life Ins. Co.*,
   323 F.R.D. 411 (N.D. Ga. 2017) .................................................................................... 8

*Royal Park Invs. v. U.S. Bank Nat'l Ass'n*,
   324 F. Supp. 3d 387 (S.D.N.Y. 2018) ............................................................................ 7

*Ruggiero v. Watner-Lambert Co.*,
   242 F.3d 249 (2d Cir. 2005) ........................................................................................... 7

*Sealy v. Gruntal & Co.*,
   No. 94Civ.7948 (KTD)(MHD), 1998 WL 698257 (S.D.N.Y. Oct. 7, 1998) ................ 8

*Smith v. Life Ins. Co. of North Am.*,
   459 Fed. Appx. 480 (5th Cir. 2012) ............................................................................... 2

*Smith v. OSF Healthcare Sys.*,
   933 F.3d 859 (7th Cir. 2019) ......................................................................................... 8

*Thomas v. Cigna Group Ins.*,
   No. 09-CV-5029, 2013 WL 12084484 (E.D.N.Y. Jan. 10, 2013) ................................. 2

*Travelers Indem. Co. v. Excalibur Reinsurance Corp.*,
   No. 11-CV-1209 (CSH), 2013 WL 4012795 (D. Conn. Aug. 5, 2015) ....................... 7

*U.S. Bank Nat'l Ass'n v. Widsream Servs., LLC*,
   No. 17-7857, 2019 WL 948120 (S.D.N.Y. Feb. 15, 2019) ........................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ....................................................................................................... 9

**STATUTES**

ERISA § 406(a)(1)(C) ............................................................................................................ 7

ERISA § 406(a)(1)(D) ............................................................................................................ 7

ERISA § 406(b) ...................................................................................................................... 7

**RULES**

Fed. R. Civ. P. 23(b)(2) .......................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) .......................................................................................................... 8

Fed. R. Civ. P. 33 (d) .............................................................................................................. 9

## I.     Interpretation of the Plans Raises Common Issues

Every member of the class and subclass had the same boilerplate Plan language, and every member of the class and subclass paid excessive cost-shares that Cigna clawed back under the company-wide Pharmacy Overpayment Project.  Cigna cannot reasonably dispute that these identical Plan terms raise common class-wide issues. Instead, Cigna tries to muddy the waters by highlighting a variety Plan language that does not vary or contradict the Class or Subclass language. *See* Pls.' Reply Memo. in Further Supp. of Class Certification ("Reply Memo.") [ECF No. 308] at 6-14. Even if these variations created ambiguities, which they do not, a limited number of outliers does not defeat certification. *Id.* at 7, 7 n. 6. Cigna's core argument in its attempt to create ambiguities is that the "intent" of individual sponsors controls. It speculates that the Class and Subclass Plan language is "***not unambiguous***" because sponsors "***may*** intend" that employees pay more than the Pharmacy Rate. Def.'s Surreply in Opp. to Pls.' Mot. for Class Certification ("Surreply") [ECF 343] at 5 (emphasis added). But Cigna has not established ***any*** actual sponsor intent. Because unsupported speculation of this type does not defeat certification, this argument should be rejected. *George v. Shamrock Saloon II LLC*, No. 17-CV-6663(RA), 2020 WL 133621, at *7-8 (S.D.N.Y. Jan. 13, 2020); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018).

Even if it were not pure speculation and lacking in any legal support,[1] Cigna's novel sponsor intent argument fails because it is illogical.  For example, if two sponsors have different interpretations of the same deductible boilerplate language, and Cigna must follow the subjective

---

[1] Cigna's only case, *Feifer v. Prudential Ins. Co. of AM.*, 306 F.3d 1202, 1211 (2d Cir. 2002) (Surreply at 5 n. 7), does not hold that administrators of boilerplate Plans must defer to each individual sponsor's supposed intent. It simply recognizes that unambiguous plan terms must be enforced.  The Court's reference to "employer's intent" (versus administrator intent) was conversational shorthand as it was not an issue in the case.

intent of each, then Cigna necessarily violates the Plan of at least one of them as it administers the two Plans in the same way. If Cigna's novel legal theory were correct, no company could rely on form language because each customer could decide what the form means.[2]

### A.     Plan Variations Do Not Defeat Commonality

Cigna appears to have scoured thousands of Plans to pluck a couple of variations out of context. These variations do not raise individualized issues. For example, Cigna argues that "Cigna's discount" could mean the "discounted Client Rate" (Surreply at 2), even though converting the term "***Cigna's*** discount" into "***Client's*** discount" is not a matter of interpretation, it is a wholesale rewrite. Moreover, Cigna ignores the fact that Plans define the terms "actual cost" and "full cost" through the overarching cost-share definition as a portion of expenses for charges made by a pharmacy. Although Cigna speculates that these Plans may require a different analysis, it identifies no ambiguous Plan language or suggests a contrary interpretation.

Cigna's language variations do not affect the Subclass. By Cigna's own admission, the "in no event will" language is a limitation on the amount a member would otherwise have to pay. Def.'s Memo. of Law in Opp. to Pls.' Mot. for Class Certification ("Opp. Memo.") [ECF No.

---

[2] If Cigna must interpret and administer Plans based individual subjective sponsor belief, it does not have discretion to interpret Plan terms and decide what they mean. If credited, this argument would therefore be an implicit claim that Cigna does not exercise discretionary authority. This position is diametrically opposed to the position that Cigna has taken in ***other*** cases, where Cigna has argued that it gets to decide what its form language means. *See, e.g., Jeffrey Farkas, M.D., LLC v. Cigna Health and Life Ins. Co.,* 386 F. Supp. 3d 238, 244-45 (E.D.N.Y. 2019); *Dawson v. Cigna Corp.*, 261 F. Supp. 3d 1275, 1297 (S.D. Fla. 2017); *Smith v. Life Ins. Co. of North Am.*, 459 Fed. Appx. 480, 484 (5th Cir. 2012); *Grisham v. Life Ins. Co. of North Am.*, No. 06-CV-251, 2007 WL 3145804, at *4 (E.D. Tenn. Oct. 25, 2007); *Morgan v. CIGNA Grp. Ins.*, 2003 WL 722804, at *6-8 (S.D. Ind. Jan. 14, 2003). Moreover, if Cigna believes it has no discretion, it would necessarily have to concede that the typical rules of Plan interpretation apply, including that ambiguities must be construed in favor of the beneficiary. *Thomas v. Cigna Group Ins.,* No. 09-CV-5029, 2013 WL 12084484, at *14 (E.D.N.Y. Jan. 10, 2013); *see Fay v. Oxford Health Plan,* 287 F.3d 96, 106 (2d Cir. 2002); *Barbu v. Life Ins. Co. of North Am.,* 987 F. Supp. 2d 281, 283, 289 (E.D.N.Y 2013); *Glynn v. Bankers Life and Cas. Co.*, 432 F. Supp. 2d 272, 278 (D. Conn. 2005) (quoting *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98, 107 (2d Cir. 1991)). Accordingly, under Cigna's new argument, if the Court were to conclude that any language is ambiguous (which it is not), that language should be construed in favor of Plaintiffs, not Cigna.

274] at 17. This clear limitation applies to *all* other Plan cost-share terms. Moreover, Defendant does not even argue that other variations vary or contradict this language. But, even if Cigna did, whether the "in no event" language controls is a class-wide issue.

The existence of multiple "Your Payments" provisions (Surreply at 4) does not affect the Class claims because those provisions do not set the amount of the copayment or deductible. The copayment and deductible amounts are "expenses for charges made by a pharmacy." The "Your Payments" provisions set a maximum. There are no intraclass conflicts because all Class members would want to enforce any limit on "expenses for charges made by a pharmacy." [3]

Cigna suggests that Plaintiffs have the duty to identify every Plan with the variations Cigna has identified, regardless of how unreasonable Cigna's views may be. Surreply at 4-5. But given that Cigna sells the Plans and administers claims, it presumably knows which Plans have which cost-share provisions. The fact that Cigna has not come forward with a list of Plans with these allegedly contradictory terms speaks volumes.[4] Moreover, the existence of a few outliers does not defeat certification.[5]

---

[3] Cigna's argument that Plaintiffs' position must be wrong because the Class and Subclass language is consistent (Surreply at 7-8) fails because Plans only become ambiguous when language is inconsistent. Given the length and amount of "fine print" in Cigna's Plans (which are supposed to be understandable to the average member), having consistent language in both the Schedule of Benefits and Your Payments sections does not create an ambiguity. Contrary to Cigna's argument (Surreply at 8 n. 13), consistent language does not render either "superfluous" – rather, they are two ways of saying the same thing, one reinforcing the other, drafted separately in the context of Plans. *See Hayes v. Liberty Ins. Corp.*, Case No. 11-cv-15520, 2012 WL 12930667, at *2 (E.D. Mich. Jul. 24, 2012) (refusing to apply surplusage canon, which "has 'limits'" where "certain language in an insurance contract was merely serving to reinforce the meaning of other contractual provisions").

[4] Mr. Parsells, Cigna's corporate witness on the Policyholder Approval Process, testified that any changes to the Plan benefit structure had to be separately approved and documented. He did not recall *any* specific changes to the Class or Subclass boilerplate language, but if they occurred, they would be documented." Ex. CE at 25-29, 38-45. Accordingly, any changes affecting the Class and Subclass language should be minimal if they exist at all.

[5] Although the Court need not walk through the weeds of Cigna's attempt to create Plan ambiguities where none exist, Plaintiffs reply to Cigna's latest arguments in this footnote. July Shaffer Decl., Ex. 46 (Surreply at 2-3) is a "one off" client-generated plan for Nashville and Davidson County. It does not have the typical boilerplate

### B. Cigna Has Not Articulated Any Ambiguity

Though sponsor intent is not relevant, Cigna's effort to generate individualized issues depends on unreasonable speculation about what sponsors may think. For example, with respect to the Subclass, Cigna has no reasonable basis for arguing that the Subclass Plan language does not limit the copayment to the Pharmacy Rate. For self-funded ASO Plans, the Plan pays the pharmacy and Cigna is paid an administrative fee in the form of either the Spread between the Client Rate and the Pharmacy Rate or, under a "pass through" arrangement with no Spread, a separate administrative fee. Ex. BZ at 441:6-22[6]; Decl. of Brian W. Shaffer, July 6, 2020 ("July Shaffer Decl.") [ECF 275], Ex. 4 at 9-10, Ex. 6 at 8. Although the money passes through Cigna and Argus accounts, the amount paid to the Pharmacy (*i.e.*, the Pharmacy Rate) comes from the Plan and is the "amount paid by the Plan to the Pharmacy."

For fully insured Plans, Cigna's experts agree that sponsors pay a single premium and Cigna pays the pharmacy for individual prescription drugs. July Shaffer Decl., Ex. 4 at 7, Ex. 6 at 7. For these Plans, Cigna is the Plan. Ex. CI 33:3-5. "████████████████████" is the "████████████████████" July Shaffer Decl., Ex. 4 at 10. Because there is *no* payment by a sponsor for individual prescription drugs, *no* Plan sponsor would believe that "the amount paid by the Plan" could mean a payment by the sponsor to Cigna for such drugs. These unsupported speculations do not change that the Subclass boilerplate raises common questions.

---

language. Although it defines the portion to be coinsurance, it is a deductible plan with the class definition language. Elsewhere in the Plan, it defines the deductible to be the amount paid to the pharmacy. Reply Memo. at 8, 8 n 8.n. 8. July Shaffer Decl., Ex. 50 is immaterial to determining the amount of the deductible because it is not a deductible Plan for in network benefits, it is a copayment Plan. *Id.* at CIGNA07381725. July Shaffer Decl., Ex. 45 is subject to the "in no event" maximum regardless of any other copayment provision. *Id.* at CIGNA02661675. July Shaffer Decl., Ex. 51 is not in the Class because it does not have the applicable definition of Covered Expenses. *Id.* at CIGNA00004621.

[6] Unless otherwise stated, all exhibit references are to the October 13, 2020 Declaration of Meghan S.B. Oliver.

As to the Class Plan language, Cigna does not dispute that the definition of Covered Expenses was incorporated into the Schedule of Benefits. Instead, it mischaracterizes the Covered Expense provision. This provision does ***not*** provide "'coverage' for the prescription." Surreply at 6. Instead, it provides coverage for "expenses for charges made by a pharmacy," the amount the pharmacy is paid. Although Cigna seeks to undermine its own employee (Surreply at 6 n. 9), it does not argue that it provides coverage for more than the amount paid to the pharmacy. Reply Memo. at 21-22. Cigna also does not dispute that the ***only*** definition for the amount of the deductible within the four corners of ***all*** Class Plans is a "portion" of "expenses for charges made by a pharmacy." *Id.* at 20-21. Speculation that some sponsors might have intended otherwise does not manufacture an ambiguity where none exists. Surreply at 7 n. 7.[7]

As to the Class copayment claims, Cigna tries unsuccessfully to generate ambiguities between the Class language and the fixed and minimum copayment provisions. For example, Cigna wrongly argues that differences between a "No charge after $10 copay" Plan and a "'minimum of $ 6' copayment for 'Tier 1'" drug Plan defeat commonality. Surreply at 6. Both of these provisions are included within the "The amount you pay for a 30-day supply" for Retail Prescription Drugs section of the Schedule of Benefits. *See, e.g.,* Decl. of Brian W. Shaffer, Sept. 29, 2020 ("Sept. Shaffer Decl.") [ECF 346], Ex. 55 at CIGNA04523926. In making this argument, Cigna ignores the predominant class-wide issue of whether the overriding "portion of Covered Expenses" Class language at the top of the Schedule of Benefits prevails over these

---

[7] Moreover, Cigna's speculation that sponsors might have intended that members pay the Client Rate could only apply to a Spread based self-insured Plan. There is no Client Rate for an insured Plan. And, in a self-funded Plan that has pass through pricing, the Client Rate and the Pharmacy Rate are the same. An equally plausible speculation is that Cigna drafted the Plans this way to fit them into its "one size fits all" approach. Or that employers who bought self-funded Spread based Plans want to limit employee costs to the actual pharmacy costs, with the employer picking up the administrative costs. But none of this matters as the deductible provisions are not ambiguous.

subordinate "amount you pay" provisions, regardless of whether it is a fixed or minimum copayment provision. That overriding issue applies equally to *every* Class Plan that has either a minimum or fixed "amount you pay" copayment provision. Moreover, Cigna adjudicated claims under these Plans at the Client Rate without regard to these minimum or fixed provisions, thereby demonstrating that Cigna believed that the Class language controls over these subordinate provisions. *See* Reply Memo. at 9.[8] Cigna should not be able to run away from the way it administered its Plans. Finally, Cigna's example demonstrates that minimums are likely a non-issue: if the Pharmacy Rate is $12, that is the amount the member will pay regardless of whether the Plan has a $6 minimum, as the Pharmacy Rate is above the minimum.

## II.     Plaintiffs Have Carried Their Burden On the ERISA Claims

Cigna's argument that Plaintiffs have not carried their burden with respect to certain ERISA claims (Surreply at 9-11) fails. Plaintiffs have always alleged that Cigna violated its fiduciary duty by failing to compute participant cost shares in accord with Plan terms. Memo. of Law in Supp. of Mot. for Class Certification ("Class Cert. Memo.") [ECF No. 206] at 1.  Cigna then clawed back these illegal overpayments.  *Id.*  All of Plaintiffs' ERISA claims arise from this common nucleus of fact.  *See id.* at 16.  Moreover, the common legal issue for all of these claims is whether Cigna was a fiduciary in its role as claims administrator (and, where applicable, insurer).  *See* Pls.' Memo. of Law in Opp. to Defs.' Mots. to Dismiss [ECF 96] at 18-36.

---

[8] For example, Cigna brings up for the first time in its Surreply a new Plan, Exhibit 55. *See, e.g.,* Surreply at 5 n.6, 6. Cigna's claim processing under the minimum copayment provision of Exhibit 55 confirms that for Cigna, the Class language overrides the subordinate "amount you pay" terms such as the "$6 minimum copayment for Tier 1 drug" provision in Exhibit 55. Under this Plan, there were 1,169 Tier 1 claims where the copayment was less than $6. These claims were adjudicated at the Client Rate. Although Cigna wrongly used the Client Rate instead of the Pharmacy Rate to adjudicate these claims, it applied its interpretation of the Class language to adjudicate claims, not the subordinate minimum copayment clause. Ex. CJ. In other words, Cigna ignored the minimum copayment terms and instead adjudicated based on the Class definition language.

Plaintiffs' prohibited transactions claims are just specific, statutory breaches of that fiduciary duty. *Id.* at 36-40.[9] Thus, ***all*** of Plaintiffs' fiduciary claims share a common theme: whether Cigna, as a fiduciary, violated its fiduciary duty by engaging in clawback transactions for its own benefit. *See id.* at 18-40. Cigna understands the interrelation of all of Plaintiffs' ERISA claims; indeed, Cigna relegated this issue to a single footnote of their opposition to class certification (Opp. Memo. at 8 n. 5), and Plaintiffs responded in kind (Reply Memo. at 35 n. 33).[10]

Finally, as to Cigna's argument that Plaintiffs have not tied Cigna's compensation to the relief they seek (Surreply at 10), there is no dispute that ███████████████████ ███████ Ex. CH at 102: 6-103:17; Ex. CG at 66:21-67:2. Whether revenue qualifies as compensation is a class-wide issue.

### III. There are No Fundamental Interclass Conflicts and Plaintiffs Will Fairly Protect the Class

Contrary to Cigna's argument (Surreply at 11), Plaintiffs have ***not*** "abandoned" their claim for a recalculation. Rather, it is an ***alternative*** basis for relief. *See* Class Cert. Memo. at 7, 15 n.9. There is no conflict between putative Class Members, even assuming participants

---

[9] These claims all arise out of a common core of facts which predominate: Cigna used the Plans in breach of its fiduciary duty to overcharge Plaintiffs and take those overcharges in the form of clawbacks in violation of the Plans. The claims under ERISA § 406(a)(1)(C) concern taking clawback compensation through Plan transactions. The claims under ERISA § 406(a)(1)(D) concern using the Plans to take clawbacks. The claims under ERISA § 406(b) all concern self-dealing in taking clawbacks.

[10] Defendants wrongly argue that Plaintiffs improperly waited to raise issues in their reply. Surreply at 10, 20 n. 26. As recognized by Cigna's own case, "in certain circumstances is it appropriate to supplement the record to support prior points and rebut the opposition." *Royal Park Invs. v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018). Here, at the time plaintiffs filed their motion for class certification, depositions of Cigna witnesses had not even begun. Accordingly, the parties jointly ***agreed*** (with the Court's consent) to change the briefing schedule and reallocate and expand the pages of briefing allowed to each side, specifically so that Plaintiffs could both complete discovery and respond to issues raised in Cigna's opposition brief. Moreover, Plaintiffs specifically agreed that Cigna could file a surreply. Such circumstances warrant this Court exercising its discretion to consider all of the material in Plaintiffs' reply. *See Ruggiero v. Watner-Lambert Co.*, 242 F.3d 249, 252 (2d Cir. 2005); *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 11-CV-1209 (CSH), 2013 WL 4012795, at * 2-3 (D. Conn. Aug. 5, 2015).

benefited from Cigna's calculation methodology on certain transactions, because Plaintiffs seek recalculation only where Cigna **overcharged** participants. To the extent Cigna complains Plaintiffs' early, pre-Class Certification interrogatory discovery responses did not fully capture their final damages model, Cigna has not demonstrated prejudice.[11] *See Sealy v. Gruntal & Co.*, No. 94Civ.7948 (KTD)(MHD), 1998 WL 698257, at *1 (S.D.N.Y. Oct. 7, 1998).

## IV.  Plaintiffs Have Satisfied Rule 23(b)(2)

Plaintiffs have not "abandoned" their argument concerning Cigna's inability to process claims (Surreply at 14), but rather plead that argument in the alternative given Cigna's own (mis)conduct during discovery. Now that Cigna admits it **can** reprocess claims, Plaintiffs seek to compel Cigna to do so. Plaintiffs likewise have not "abandoned" their clawback argument. As soon as Cigna clawed back the illegal overcharges, that money was no longer paid "to the Pharmacy." The overcharge is the harm and the clawback is evidence of the harm. Plaintiffs are entitled to a reprocessing where there was an overcharge clawed back by Cigna.

## V.  Plaintiffs Have Satisfied Rule 23(b)(3)

### A.  Common Issues Predominate For Plaintiffs' ERISA Claims

Cigna's argument that its **own records** about the ERISA status of the Plans are unreliable is another abuse of its discovery obligations (Surreply at 16). *See* Reply Memo. at 34-35.[12]  For

---

[11] *U.S. Bank Nat'l Ass'n v. Widsream Servs., LLC*, No. 17-7857, 2019 WL 948120, at *21 (S.D.N.Y. Feb. 15, 2019) (Surreply at 12), addressed an admission of *fact* in a contention interrogatory, which is wholly different in nature from the lay Plaintiffs' response here to a complex issue of damages calculation and Plan interpretation.

[12] Just like *Mayer v. Mercy Health Servs., LLC,* No. 18-CV-00391-JCH, 2019 WL 527964 (E.D. Mo. Feb. 11, 2019) (discussed in Reply Memo. at 35 n. 31), Cigna's citation to *Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 869-70 (7th Cir. 2019), is inapposite: both involved church plans in which the applicability of ERISA was hotly contested by the sponsors themselves. Moreover, the "proposed method for individually assessing the status of each plan" that Cigna touts as existing in *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411 (N.D. Ga. 2017) (but purportedly

self-insured Plans, Plaintiffs served an interrogatory asking Cigna to state whether insured Plans with Class and Subclass language were or were not covered by ERISA, and Cigna responded under Rule 33 (d) that "CHLIC maintains data that identifies whether a prescription drug transaction under a participant's plan is subject to the Employee Retirement Income Security Act of 1974. CHLIC will produce this supplemental file to use in addition to the aforementioned documents." Ex. CB at 3. That is the precise data that Cigna now says is unreliable.[13] This gamesmanship should be rejected.[14]

### B.      Common Issues Predominate For Plaintiffs' RICO Claims

Cigna's argument that Plaintiffs must present evidence regarding control (Surreply at 17) is incorrect. For class certification, Plaintiffs need only establish that common issues ***exist,*** not that they will ultimately ***prevail***. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1195 (2013); *Mahon v. Chi. Title Ins. Co.,* 296 F.R.D. 63, 73 (D. Conn. 2013).[15] Whether Cigna controlled Argus and/or OptumRx is not dependent on the unique circumstances of any individual Class Member.

---

not here) was simply to look at each Plan. *Id.* at 416-17 (class ascertainable even though "individual records will have to be examined in order to determine class membership"). Should the Court conclude that Cigna's own records regarding Plans' ERISA status are unreliable, Plaintiffs can similarly examine each plan here.

[13] As to ASO Plans, the DST Reports undisputedly establish whether the Plans are covered by ERISA.

[14] Cigna's insinuation that Plaintiffs seek to include Plans in classes based on insufficiently rigorous subjective opinion (*see* Surreply at 16 n. 21) is wrong. Plaintiffs have explained repeatedly why the Plans included in the Classes and Subclasses are materially the same.  The "Plaintiffs consider" language quoted by Cigna in their footnote is from an email explaining Plaintiffs' position on a particular issue: that Plan language using "***incur*** expenses for charges made by a Pharmacy" instead of "***incurs*** expenses for charges made by a Pharmacy" (emphasis added) is functionally the same.  *See* July Shaffer Decl., Ex. 13.  Cigna itself apparently agrees the difference between "incur" and incurs" is immaterial. *See* Opp. Memo. at 9 n.7 (Cigna "will treat plans with 'incur' and 'incurs' interchangeably").

[15] Cigna's reliance on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), is misplaced. *Dukes* held that Plaintiffs must provide sufficient evidence on class certification ***where necessary*** to show an element of Rule 23 has been met. Here, the question of whether Cigna controlled Argus and OptumRX (***however*** that question is resolved at summary judgment or trial) is common to all putative Class Members and not subject to individualized evidence. Indeed, Cigna does not explain how any individual Class Member evidence has possible relevance to this question.

Cigna's argument that Plaintiffs must demonstrate that "members of the class or subclass actually reviewed or relied upon" Plan language or "would have acted differently" if they had (Surreply at 17) is wrong. Plaintiffs must show *causation*, not *reliance*. Reply Memo. at 39. Here, causation is clear (and common): Cigna damaged Class Members by causing pharmacies to charge more than allowed under Plan language (and then clawed back those overcharges).[16] *See, e.g., id.* The same is true of Cigna's false representations about cost share (Surreply at 18). Even if pharmacists discussed Cigna's clawbacks with certain Class Members, those Class Members overpaid based on the amount that Cigna caused pharmacies to charge fraudulently.

Cigna's argument concerning variations in state law (Surreply at 19) is irrelevant. The section of Cigna's opposition brief (Opp. Memo at 44-46) that Cigna incorporates into its Surreply concerned Plaintiffs' *state-law* claims and has been mooted by this Court's dismissal thereof. The RICO class may include Plans whose substantive terms are governed by state law, but the RICO claim *itself* (including the claim that Cigna acted fraudulently or recklessly) alleges predicate acts that violate *federal* law. *See* Second Am. Consol. Compl. [ECF No. 198] at ¶¶ 282-83, 299 (alleging mail and wire fraud). Accordingly, Plaintiffs' RICO claim is governed by uniform federal law.[17]

---

[16] Cigna's Plan violations did not cause expectancy damages as they were out of pocket losses at the time of the violation. *See*, Def.'s Reply in Supp. of Mot. to Exclude [ECF 345] at 7 n.7.

[17] Cigna's argument that Plan sponsor intent is "critically important" (Surreply at 19) is incorrect for the reasons discussed above. Finally, Cigna's argument that its failure to review its Plan language for many years does not give rise to a common issue as its reckless conduct (Surreply at 20) is without merit. Cigna speculates that the sponsor could "make corrections and language changes" after Cigna drafted the Plan. *Id.* But the cost-share terms were boilerplate language.

Dated: October 13, 2020

Respectfully submitted,

*s/ Robert A. Izard*

Robert A. Izard (ct01601)
*Plaintiffs' Interim Co-Lead Class Counsel*
Craig A. Raabe (ct04116)
Seth R. Klein (ct18121)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone:  860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
*Plaintiffs' Interim Co-Lead Class Counsel*
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Meghan S. Oliver, *pro hac vice*
Charlotte Loper, *pro hac vice*
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com

Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
SCOTT+SCOTT,

- 11 -

ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206- 623-1900
Facsimile: 206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Facsimile: 612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057

- 12 -

Telephone: 985-783-6789
Facsimile: 985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone: 504-581-5644
Facsimile: 504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone: 516-699-8890
Facsimile: 516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile: 866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile: 612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300

Seattle, WA 98119-1330
Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs