UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) (Consolidated) |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC., | October 13, 2020 |
| Defendants. | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO CIGNA'S MOTION TO EXCLUDE THE DECLARATION AND TESTIMONY OF LAUNCE B. MUSTOE, JR.**

## <u>TABLE OF CONTENTS</u>

I.    Mr. Mustoe's methodology is reliable and "fits" Plaintiffs' theory of the case. ................ 1

    A.    Clawbacks prove the harm. ...................................................................... 1

    B.    Measuring damages on a transaction-by-transaction basis is consistent with "the terms of the plan." ................................................................... 2

    C.    Omitting coupon usage is not a basis for exclusion. ............................... 6

II.    Mr. Mustoe's method for determining class membership is reliable under the flexible inquiry required by Rule 702. ................................................................... 7

III.    Plaintiffs do not improperly supplement the class-certification record. ............................ 9

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Mills*,
   286 U.S. 397 (1932) .................................................................................. 5

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) .................................................................... 7

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ........................................................................ 8

*Brooks v. Outboard Marine Corp.*,
   234 F.3d 89 (2d Cir. 2000) ...................................................................... 9

*Citizens Bank of Md. v. Strumpf*,
   516 U.S. 16 (1995) .................................................................................. 4

*Colon ex rel. Molina v. BIC USA, Inc.*,
   199 F. Supp. 2d 53 (S.D.N.Y. 2001) ...................................................... 9

*Corsini v. United HealthCare Servs., Inc.*,
   145 F. Supp. 2d 184 (D.R.I. 2001) .......................................................... 5

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) .................................................................... 6

*Dover v. British Airways, PLC (UK)*,
   254 F. Supp. 3d 455 (E.D.N.Y. 2017) .................................................... 6

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
   No. 11-cv-0564 (BMC) (PK), 2019 WL 1515231 (E.D.N.Y. Feb. 21, 2019) .............. 1, 3, 6, 8

*Dubuisson v. Stonebridge Life Ins. Co.*,
   887 F.3d 567 (2d Cir. 2018) .................................................................... 6

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11 Civ. 8405 (CM), 2013 WL 12224042 (S.D.N.Y. Jul. 12, 2013) ................................ 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   No. 1:00-1898, 2008 WL 1971538 (S.D.N.Y May 7, 2008) .................................. 9

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................ 6

*In re Vitamin C Antitrust Litig.*,
   No. 06-MED-1738 (BMC)(JO), 2012 WL 6675117 (E.D.N.Y. Dec. 21, 2012) ................. 3, 8

*Lara v. Delta Int'l Mach. Corp.*,
  174 F. Supp. 3d 719 (E.D.N.Y. 2016) ..................................................................... 9

*Lee v. Cty. of Onondaga*,
  5:13-CV-01285-BKS-TWD, 2016 WL 9441028 (N.D.N.Y. Oct. 26, 2016) ......................... 7

*MacDermid Printing Sols., Inc. v. Cortron Corp.*,
  No. 3:08cv1649 (MPS), 2014 WL 2616836 (D. Conn. Jun. 12, 2014) ................................. 3

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
  106 F. Supp. 3d 369 (S.D.N.Y. 2015)....................................................................... 7

*Peters v. Aetna, Inc.*,
  No. 15-00109, 2019 WL 1429607 (W.D.N.C. Mar. 29, 2019)........................................ 4, 5

*Pichardo v. Carmine's Broadway Feast Inc.*,
  No. 15-CV-03312 (RA)(SN), 2016 WL 4379421 (S.D.N.Y. Jun. 13, 2016) ......................... 6

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
  245 U.S. 531 (1918)........................................................................................... 5

*Smith v. United HealthCare Servs., Inc.*,
  No. CV-00-1163, 2002 WL 192565 (D. Minn. Feb. 5, 2002) ................................................ 5

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ............................................................................... 6

*Yaccarino v. Motor Coach Indus., Inc.*,
  No. 03-4527, 2006 WL 5230033 (E.D.N.Y. Sept. 29, 2006) ................................................ 9

**Rules**

Fed. R. Civ. P. 23(b)(2)............................................................................................ 3

Fed. R. Civ. P. 23(b)(3)............................................................................................ 3

Fed. R. Civ. P. 702................................................................................................. 7, 8

Cigna argues that (1) Mr. Mustoe's methodology does not "fit" Plaintiffs' claims because he does not make the same assumptions Cigna's expert makes; (2) his opinion is "unreliable" because he did not test the validity of or determine the error rate of his method for determining the composition of the class; and (3) Plaintiffs improperly supplement the record.  None of these arguments is a basis for excluding Mr. Mustoe's opinions and testimony.[1]

**I.      Mr. Mustoe's methodology is reliable and "fits" Plaintiffs' theory of the case.**

Cigna's "fit" argument boils down to four erroneous points: (1) the clawback is not the "harm;" (2) Mustoe used the Client Rate for claims where there was no overpayment because the cost-share did not exceed the Pharmacy Rate; (3) Mustoe calculated damages on a transaction-by-transaction basis rather than a plan-year basis; and (4) Mustoe did not account for rare coupon usage which neither Cigna nor Argus nor Optum tracked. While these assumptions may be inconsistent with ***Cigna's*** theory of the case, they are reliable and "fit" ***Plaintiffs'*** claims.  *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, No. 11-cv-0564 (BMC) (PK), 2019 WL 1515231, at *6 (E.D.N.Y. Feb. 21, 2019) ("Just because [Mr. Mustoe's] opinion does not align with defendants' theory of the case does not make it inherently unreliable or irrelevant.  It just means defendants will have to convince the jury why their view is correct . . . .").

**A.  Clawbacks prove the harm.**

Cigna does not argue (and does not present evidence) that clawbacks do not equal the overcharges. Nor can it, because the evidence indisputably shows that they do. Pls.' Opp. to Def.'s Mot. to Exclude the Decl. and Test. of Launce B. Mustoe, Jr. ("Daubert Opp.") [ECF 310] at 13.  Every penny that class members paid above the Pharmacy Rate is an overcharge.  Any

---

[1] Plaintiffs do not respond in this brief to all of Cigna's redundant arguments, choosing instead to rely on their responses in earlier briefs to Cigna's same arguments.  Where appropriate, Plaintiffs refer to their earlier brief.

amount of the overcharge that Cigna clawed back is greater than a "portion" of the "charges made by a pharmacy" and greater than "the amount paid by the plan to the pharmacy." Accordingly, the clawback is evidence of the amount of the harm. Mustoe's assumption that the clawbacks evidence the overcharges and harm is reasonable and "fits" Plaintiffs' claims.

### B.  Measuring damages on a transaction-by-transaction basis is consistent with "the terms of the plan."

Cigna's argument that calculating damages on a transaction-by-transaction basis is inconsistent with the terms of the Plan is really an argument that, rather than calculating damages, Mustoe should have readjudicated claims and (1) performed that readjudication on a hindsight basis, including subsequent transactions that did not even exist at the time of the overcharges, and (2) included claims where there were no overcharges. Def. Cigna Health and Life Ins. Co.'s Reply in Supp. of Def.'s Mot. to Exclude the Decl. and Test. of Launce B. Mustoe, Jr. Offered in Supp. of Pls.' Mot. for Class Certification ("Daubert Reply") [ECF 344] at 10.  Because Mustoe calculated damages based on Cigna's clawback transactions and did not reprocess all claims, Mr. Mustoe's methodology is inconsistent with ***Cigna's*** theory of the case.

Under ***Plaintiffs'*** theory of the case, however, the injury occurred at the moment when a member overpaid for a prescription drug.  This happened at the point of sale when the pharmacy collected the member's cost-share and dispensed the drug.  Under the Plans, the cost-share payments must be determined on each of these individual transactions based "charges made by ***a*** pharmacy" (not on the multiple pharmacies a member may go to over a year).  Similarly, the Plans state that "[i]In no event will the Copayment for ***the Prescription Drug*** [not multiple prescriptions filled over a plan year] . . . exceed the amount paid by the plan to the pharmacy." (emphasis added).  Mustoe's calculation of damages by measuring overcharges on a prescription-by-prescription basis, rather than over the course of a plan year, is consistent with

the Plan language.  Accordingly, Cigna is simply wrong that Plan terms require consideration of the entire transaction history. Daubert Reply at 5.

Mr. Mustoe did not reprocess pharmacy benefit claims because he calculated damages. Decl. of Brian W. Shaffer, July 6, 2020 ("July Shaffer Decl.") [ECF 275], Ex. 14 at 185:1–6.[2] Consistent with Plaintiffs' theory, he calculated damages on a transaction-by-transaction basis, excluding claims for which there was no overpayment. [3]  This dispute about Mr. Mustoe's assumption that damages should be calculated on a transaction-by-transaction basis does not justify excluding his opinions or testimony.  *DPWN Holdings*, 2019 WL 1515231, at *3, 6, 11; *In re Vitamin C Antitrust Litig.*, No. 06-MED-1738 (BMC)(JO), 2012 WL 6675117, at *5 (E.D.N.Y. Dec. 21, 2012); *MacDermid Printing Sols., Inc. v. Cortron Corp.*, No. 3:08cv1649 (MPS), 2014 WL 2616836, at *6 (D. Conn. Jun. 12, 2014).

Cigna's insistence on netting member prescription drug purchases over the course of a plan year is inconsistent with the Plan language and with Cigna's own business practices and capabilities. Cigna appears to claim that if a member recovers damages for an overcharge in this litigation, then Cigna is entitled to set off what may have been an undercharge on a subsequent transaction if the member reached the deductible or out of pocket maximum.  Daubert Reply at 10. Standard plan language provides that if Cigna made an overpayment on a claim, "Cigna will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a ***future*** claim payment." *See, e.g.*, July Shaffer Decl., Ex. 24 at CIGNA00001796 (2015 Putnam Plan); July Shaffer Decl.,

---

[2] Plaintiffs are seeking a readjudication by Cigna under Rule 23(b)(2).  Mr. Mustoe's opinions support Plaintiffs' alternative claim for damages under Rule 23(b)(3).

[3] Contrary to Cigna's argument, Mustoe does not include the Client Rate in any of his calculations and, therefore, does not include claims where there were no overcharges. Daubert Reply at 4-5.

Ex. 27 at CIGNA00000177 (2015 Hampton Affiliates Plan) (emphasis added). Thus, according to its own Plan terms, Cigna may bring a counterclaim to recover past overpayments, or it may offset them against future underpayments. It has done neither, and therefore may not offset any claimed overpayments to putative class members with its underpayments from the even more distant past.

Moreover, in the case of client self-funded plans, a setoff is improper for the additional reason that customer underpayments resulting from hitting deductibles earlier would have led to *client or employer* overpayments, not overpayments by *Cigna*. The law does not provide for an offset where there is no mutuality of obligation. *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995) ("The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other. . . .").[4]

Finally, as of 2014 and 2015, consistent with plan language that precluded setting off benefit overpayments against past transactions, Cigna did ██████████████████████████████ ███████████████████████████████████████████████████████████████ " Ex. CC[5] at CIGNA00179044; *see also* Ex. CD at CIGNA00302910 (Cigna had ██████████████████ ████████████████ "). This is evidence that Cigna itself did not believe it had the right to readjudicate claims in the manner it argues Plaintiffs should do here.

Cigna relies on a single thinly-reasoned case – *Peters v. Aetna, Inc.*, No. 15-00109, 2019 WL 1429607, at *8 (W.D.N.C. Mar. 29, 2019) – to argue that Mr. Mustoe's failure to net transactions over the course of a plan year is a basis for exclusion. This case, unlike *Peters*,

---

[4] Moreover, many of Plaintiffs' claims seek equitable relief. While Mustoe calculated damages, his calculations also measure the equitable harm to Plaintiffs and the Class. It would be inequitable for Cigna to wrongfully take Clawbacks and set off against these Clawbacks amounts that, under Cigna's erroneous theory of the case, belong to its clients. In that case, Cigna would benefit from its misconduct.

[5] Unless otherwise stated, all exhibit references are to the October 13, 2020 Declaration of Meghan S.B. Oliver.

depends on specific Plan provisions that expressly limit a participant's cost-share for each prescription.  The plaintiffs in *Peters* did not rely on any plan language, let alone language that expressly limited cost-shares, and the class was not defined to reflect any such limitation. Furthermore, in considering setoffs, the *Peters* court (wrongly) failed to consider both plan underpayment limitations and the question of who paid the difference in the case of an underpayment, and thus who would be entitled to setoff.

In contrast, other courts have certified classes asserting claims similar to those here, including *Corsini v. United HealthCare Servs., Inc.*, 145 F. Supp. 2d 184, 193 (D.R.I. 2001), which held that the "measure of damages that the plaintiff class is entitled to recover on its plan violation claim is the difference between the co-payment obligations that class members incurred and the co-payment obligations that they would have incurred if those obligations had been calculated as 20% of the 'reasonable and customary charges ... incurred' for the services received."  *See also Smith v. United HealthCare Servs., Inc*., No. CV-00-1163, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002) (certifying class where "[i]n multiple instances, each [plaintiff] was charged the fixed dollar co-pay in circumstances where the fixed dollar co-pay was greater than the Prescription Drug Cost").  Unlike *Peters*, the analysis in these cases is based on black letter law.[6]

---

[6] *See also Adams v. Mills*, 286 U.S. 397, 407 (1932) ("In contemplation of law the claim for damages arose at the time the extra charge was paid . . ."); *accord S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533–34 (1918) ("The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events.").

### C.  Omitting coupon usage is not a basis for exclusion.

Cigna did not track coupon usage and did not produce data reflecting coupon usage.

Daubert Opp. at 23-24.  In light of the absence of data, Mustoe's extrapolation from a publicly

available Massachusetts government study was not unreasonable and is not a basis for exclusion.

*See DPWN Holdings*, 2019 WL 1515231, at *6 ("the fact that defendants did not have any

information on United's security costs suggests that Dr. Maness's choice to look elsewhere and

employ the data he could find was not necessarily unreasonable . . .").

Cigna accuses Plaintiffs' counsel for not citing *Denney v. Deutsche Bank AG*, 443 F.3d

253, 264 (2d Cir. 2006), which it wrongly contends is controlling in this case.  Daubert Reply at

12 n.15.  Plaintiffs did not cite *Denney* because it is not relevant.  Under *Denney*, "a class

member must have been affected in a personal and individual way, but the member 'need not be

capable of sustaining a valid cause of action.'"  *In re Restasis (Cyclosporine Ophthalmic*

*Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 16 n.12 (E.D.N.Y. 2020) (quoting *Dubuisson v.*

*Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018)).  *Restasis* "reject[ed] defendant's

claim that *Denney*. . . , which held that a class must be defined to ensure that all class members

have Article III standing, shows that the Second Circuit does not permit certification of a class

containing uninjured members." *Id*. "*Denney*'s holding 'signifies only that it must be possible

that class members have suffered injury, not that they did suffer injury, or that they must prove

such injury at the certification phase.'" *Id*. (quoting *Torres v. Mercer Canyons Inc.*, 835 F.3d

1125, 1137 n.6 (9th Cir. 2016)). The court concluded, "[h]ere, because they purchased Restasis,

all class members have standing—whether or not they paid an overcharge." *Id*.[7]  Here, the class

---

[7] *See also* Daubert Opp. at 25 (citing *Dover v. British Airways, PLC (UK)*, 254 F. Supp. 3d 455, 462 n.2 (E.D.N.Y. 2017)); *Pichardo v. Carmine's Broadway Feast Inc.*, No. 15-CV-03312 (RA)(SN), 2016 WL 4379421, at *10 (S.D.N.Y. Jun. 13, 2016) (certifying class where some class members may have been paid properly but where "the declarations fall short of establishing that there are a great many class members who could not have been harmed by

and subclass include only claims that were subject to a clawback.  Possible (as of yet

undocumented) coupon usage is not a barrier to class certification or a basis for excluding Mr.

Mustoe's opinion.[8]

## II.   Mr. Mustoe's method for determining class membership is reliable under the flexible inquiry required by Rule 702.

"[I]n analyzing the admissibility of expert evidence, the district court has broad discretion

in determining what method is appropriate for evaluating reliability under the circumstances of

each case." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  The

reliability inquiry is flexible and does not require the use of all factors listed, especially in the

case of non-scientific experts.  *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d

369, 411 (S.D.N.Y. 2015); *Lee v. Cty. of Onondaga*, 5:13-CV-01285-BKS-TWD, 2016 WL

9441028, at *1 (N.D.N.Y. Oct. 26, 2016).

Despite the flexibility of the inquiry, Cigna criticizes Mustoe because he did not

determine the error rate of his methodology and "failed to test its validity."  Daubert Reply at 14-

15.  Cigna suggests that Mustoe should have reviewed Plan documents and identified false-

positive and false-negative rates, but it does not explain how review would have been useful

without DST reports showing the Ben Opt codes which identify which Plans to be reviewed,

***none*** of which Cigna had produced at the time of Mustoe's Report and many of which Cigna ***still***

has not produced.[9]  Even Cigna's own expert could not remember if he had reviewed Plans

---

defendants' alleged unlawful general policy" (internal quotations omitted)); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2013 WL 12224042, at *7 (S.D.N.Y. Jul. 12, 2013) (certifying class and rejecting standing concerns based on *Denney* where the class was defined to include only policyholders who had paid at least one of the COI increases at issue, and "plaintiffs have plainly indicated that they do not seek to represent such entities and individuals, if indeed they exist").

[8] If necessary, coupon usage can be documented by class members during the claims process.

[9] Cigna has produced six of seven requested DST reports with Ben Opt code.  One requested DST report with Ben Opt code has yet to be produced.

manually or electronically with DST, demonstrating that the means of review (manually or electronically) is not material. But, he did admit that using a combination of account numbers and benefit option codes—as Mustoe proposes to do—is one necessary step of identifying the Plans to be reviewed and class and subclass members.[10]  In light of Cigna's own expert's testimony regarding identification of plans, and Cigna's corporate witness testimony that ██████ ████████████████████████████████████████████████, Ex. CE at 24:5-9, 27:10-14, 28:16-19, and that ████████████████████████████████████████████████████████████████ Daubert Opp. at 11, Mustoe's reliance on the DST reports without reviewing each of the tens of thousands of plan documents was reasonable.  His reliance on DST reports was certainly not "'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'"  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).  Any contention that he should have manually reviewed the plans in lieu of relying solely on the DST reports is an expert disagreement that should be resolved by the jury, rather than the Court in its gatekeeper function under Rule 702.  *DPWN Holdings*, 2019 WL 1515231, at *3, 6, 11; *In re Vitamin C Antitrust Litig.*, 2012 WL 6675117, at *5.

Cigna has cited a number of cases excluding scientific expert testimony because the scientific expert failed to test the proposed methodology or identify the error rate. Daubert Reply at 15-16.  These cases involve scientific expert opinions, and none justifies excluding Mr. Mustoe's report and testimony.  Mr. Mustoe is not a scientific expert, and "the four factors set

---

[10] Decl. of Meghan S.B. Oliver, Sept. 3, 2020 ("Sept. Oliver Decl.") [ECF 314], Ex. M at 183:20-184:11 ("Q: My question is how did you identify the plans for these three participants and did you use the same methodology that you described in paragraph eighty-eight in identifying the plans that govern the transactions of these participants in paragraph ninety-six? . . . A: In the previous example, I was looking for transactions in Ms. Negron's and Mr. Perry's plans, so I'd find the account numbers and benefit option code and look at the transaction data for those two figures."); *id.* at 185:8-13 ("So my question is how did you identify the plan to make that determination? A: I don't—I don't remember if I used the DST reports or if I looked at the plan document.  I just don't recall.").

out in *Daubert* as a means of determining reliability may. . . not be applicable when assessing the testimony of non-scientific experts." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, 2008 WL 1971538, at \*3 (S.D.N.Y May 7, 2008).

Several of the cases Cigna cites are design defect cases. *See Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719 (E.D.N.Y. 2016); *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53 (S.D.N.Y. 2001); *Yaccarino v. Motor Coach Indus., Inc.*, No. 03-4527, 2006 WL 5230033 (E.D.N.Y. Sept. 29, 2006); *Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 92 (2d Cir. 2000). In these cases, "the touchstone of an expert's report should be comparison of the utility and cost of the product's design and alternative design," *Lara*, 174 F. Supp. 3d at 736. Courts typically reject expert testimony in such cases where the expert fails to test alternative designs or causation theories. *Yaccarino*, 2006 WL 5230033, at \*15. The primary purpose of the testing requirement is to ensure that the expert's conclusions are based on more than speculation. *Lara*, 174 F. Supp. 3d at 737; *Colon*, 199 F. Supp. 2d at 75; *Yaccarino*, 2006 WL 5230033, at \*15; *Brooks*, 234 F.3d 91-92. Here, Mustoe's use of the DST reports and conclusions about who is in the class are supported by factual evidence about the DST system, how plan booklets are created, and the fields in the transaction data, not speculation.

## III.   Plaintiffs do not improperly supplement the class-certification record.

Plaintiffs included in their opposition an explanation of Cigna's business systems and processes that provide a factual foundation for Mr. Mustoe's reliance on the DST reports. In their opposition, Plaintiffs reference this evidence several times. *See, e.g.*, Daubert Opp. at 29 (citing "Factual Background," *supra*), 30 (same), 36 (same); 18-19 (citing evidence included in Factual Background). Cigna concedes Plaintiffs' reliance on this evidence in their opposition. Daubert Reply at 17 ("Plaintiffs suggest that Mr. Mustoe's methodology is reliable because it is consistent with certain evidence about the evolution over time of certain language in plans

- 9 -

administered by CHLIC.").  Yet according to Cigna, this account was both too much and too

little.  Cigna argues this "whole factual recitation is improper," but then claims that "Plaintiffs

have not presented sufficient evidence to support a finding that the amount of a 'clawback' is

equal to the amount of alleged harm," Daubert Reply at 9, even though that evidence is, in fact,

included in the allegedly improper Factual Background. Daubert Opp. at 13.

Despite its indisputable relevance to Mr. Mustoe's opinions and Cigna's objections,

Cigna argues that the evidence should be disregarded.  Daubert Reply at 1.  Cigna elected to file

its Motion, and Plaintiffs are entitled to respond with evidence. There was no improper

supplementation here, and even if there had been, Cigna has had two opportunities to respond—

in their class certification surreply and their motion to exclude reply.


Dated: October 13, 2020                    Respectfully submitted,

                                                *s/ Robert A. Izard*
                                           Robert A. Izard (ct01601)
                                           *Plaintiffs' Interim Co-Lead Class Counsel*
                                           Craig A. Raabe (ct04116)
                                           Seth R. Klein (ct18121)
                                           Christopher M. Barrett (ct30151)
                                           IZARD, KINDALL & RAABE, LLP
                                           29 South Main Street, Suite 305
                                           West Hartford, CT 06107
                                           Telephone:  860-493-6292
                                           Facsimile: 860-493-6290
                                           rizard@ikrlaw.com
                                           craabe@ikrlaw.com
                                           sklein@ikrlaw.com
                                           cbarrett@ikrlaw.com

                                           William H. Narwold (ct00133)
                                           *Plaintiffs' Interim Co-Lead Class Counsel*
                                           Mathew Jasinski, (ct27520)
                                           MOTLEY RICE LLC

One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Meghan S. Oliver, *pro hac vice*
Charlotte Loper, *pro hac vice*
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com

Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:   860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052

- 11 -

Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:  516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434

- 12 -

Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:   866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:   612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs