UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al.<br><br>Defendants. | No. 16-cv-1702 (JAM)<br><br><br><br><br>October 13, 2020 |

**PLAINTIFFS' REPLY MEMORANDUM SUPPORTING MOTION TO STRIKE
CERTAIN ARGUMENTS AND EVIDENCE SUBMITTED BY CIGNA
IN OPPOSING CLASS CERTIFICATION, OR, ALTERNATIVELY,
TO REMEDY CIGNA'S DISCOVERY ABUSES**

**TABLE OF CONTENTS**

I.   Plaintiffs Were Explicit in What They Were Seeking, and Cigna Knew It ......................... 1

    A.   Accumulator Data ............................................................................................. 1

    B.   Tying Claims to Relevant Plans ......................................................................... 3

    C.   Cigna's Inconsistent Class Certification Arguments .......................................... 3

II.  Cigna's Accumulator Arguments Are Abusive ................................................................. 5

III. Cigna Abused Rule 33(d) .................................................................................................. 8

## TABLE OF AUTHORITIES

**CASES**

*Archibald v. City of Hartford,*
    274 F.R.D. 371 (D. Conn. 2011) ................................................................................... 5, 6

*In re Anthem-Cigna Merger Litig.,*
    Consolidated C.A. No. 2017-1114-JTL, 2020 WL 5106556
    (Del. Ch. Aug. 31, 2020) ................................................................................................... 8

*Reilly v. Natwest Markets Group, Inc.,*
    181 F.3d 253 (2d Cir. 1999) .............................................................................................. 8

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
    306 F.3d 99 (2d Cir. 2002) ................................................................................................ 8

**RULES**

Fed. R. Civ. P. 26 ..................................................................................................................... 10

Fed. R. Civ. P. 33(d) ................................................................................................. 3, 4, 8, 9, 10

Cigna's main theme in seeking to evade this motion is that Plaintiffs were not clear, or Cigna did not understand, what Plaintiffs wanted during discovery.  Cigna's own words destroy its argument. If Cigna's gamesmanship is not stopped, Plaintiffs will be unfairly prejudiced.

## I.  Plaintiffs Were Explicit in What They Were Seeking, and Cigna Knew It

### A.  Accumulator Data

In their first Request for Production of Documents, Plaintiffs requested all "Documents sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated." Ex. BV[1] at 13, RFP 7. After the Court denied Cigna's motion to dismiss, Cigna filed amended responses to Plaintiffs' RFPs and the parties met and conferred. With respect to RFP 7, "[Cigna] agreed to produce prescription drug transaction data, ***which is 'sufficient to identify the amount of' what Plaintiffs call 'Clawbacks' and 'Spread.'"*** Ex. BW at 9 (emphasis added). In RFP 17, Plaintiffs requested "All documents supporting, providing a basis for, contradicting, or otherwise concerning or relating to any claim or defense asserted in the Action, including both claims and defenses on the merits, as well as any defenses or opposition to class certification." Ex. BV at 14. In response, Cigna stated:

> In your Letter, you state, "To be clear, Plaintiffs are requesting any information that Cigna intends to use in motion practice or at trial to support any position or defense." At this juncture, CHLIC does not know which information may or may not be used in motion practice or at trial, and, if it did, at this early stage in the litigation, such information or documents are protected attorney work product.  When it becomes appropriate to do so, CHLIC will either update its disclosures or provide additional information regarding such documents — i.e., ***in support of its opposition to Plaintiffs' motion for class certification***, or on appropriate exhibit lists.

Ex. BW at 10 (emphasis added).  From that point forward, if Cigna thought that accumulator data was relevant to calculating spread or clawbacks, affirmatively or defensively, it had an

---

[1] Unless otherwise stated, all exhibit references are to the October 13, 2020 Declaration of Meghan S.B. Oliver.

- 1 -

obligation to produce such data. To this day, Cigna has not produced accumulator data that it is trying to use "in support of its opposition to Plaintiffs' motion for class certification." *Id.*[2]

During multiple oral meet and confer sessions, Plaintiffs could not have been clearer that they wanted all data relevant to calculating damages, including accumulator data if it existed. Frustrated with Cigna's prior delays and evasion, Plaintiffs wrote on January 23, 2019 in a follow-up letter to one of many meet and confer sessions:

> With respect to claims data, Plaintiffs expect Cigna to produce ***all claims data that is relevant to proving liability and calculating damages*** for the Plaintiffs and the Classes. For example, all claims data should be produced to the extent it can be used to identify and calculate overcharges, ***calculate deductible payment balances***, calculate coinsurance obligations, ***tie transactions to employers and plans***, identify cost-share logic, identify and provide the pricing logic or algorithms used to calculate cost share payments, identify reversed transactions, and understand whether any amounts or other data were inflated or changed by, for example, Argus or Catamaran. To the extent Plaintiffs discover that relevant data possessed or controlled by Cigna was not produced, Plaintiffs reserve all rights.

Decl. of M. Oliver, Sept. 3, 2020 ("Sept. Oliver Decl.") [ECF 314], Ex. F (emphasis added).

In response, Cigna declared that its production of claims data "included all available fields ***that are relevant for the purposes of this case***." Pls.' Mot. to Strike Certain Args. and Evid. Submitted by Cigna in Opposing Class Certification, or, Alternatively, to Remedy Cigna's Disc. Abuses ("Opening Memo.") [ECF 311], at 17; Sept. Oliver Decl., Ex. H at 2 (emphasis added). On April 24, 2019, Cigna reaffirmed that it had produced ***"all of the relevant data fields."*** *See* Opening Memo. at 7; Cigna Memo at 6 (admitting same). Yet Cigna has not produced ***any*** accumulator data, deductible or otherwise. To the contrary, it specified that its data "does not track the accumulation toward a particular customer's overall plan deductible."

---

[2] Cigna also has asserted it had "'given Plaintiffs all of the data and fields that CHLIC and its experts are using to evaluate [the transactions at issue].'" Def. Cigna Health and Life Ins. Co's Mem. in Opp. to Pls' Mot. to Strike ("Cigna Memo.") [ECF 347] at 14 (quoting Shaffer Decl., Ex. MM). Based on Cigna's arguments and its expert reports, that statement is false with regard to accumulator data.

Opening Memo. at 17; Sept. Oliver Decl., Ex. H at 2.

### B. Tying Claims to Relevant Plans

With regard to data that will "tie transactions to employers and plans," Plaintiffs served numerous interrogatories requesting Cigna to "identify, by claim number" each transaction that was adjudicated pursuant to the language at issue. Plaintiffs reinforced that demand in the January 23, 2019 meet and confer letter referenced above, as well as in numerous oral meet and confer sessions. *See* Opening Memo. at 8, 9-10, 11. Cigna acknowledges in its Opposition that in response to those discovery demands, it "directed Plaintiffs" "pursuant to Fed. R. Civ. P. 33(d)" to (1) the claims data, (2) DST Reports and (3) the plans. Cigna told Plaintiffs to conduct such tying themselves. *See, e.g.*, Cigna Memo. at 8.

### C. Cigna's Inconsistent Class Certification Arguments

Cigna now is trying to defeat class certification by relying on accumulator data that it did not produce. *Id*. at 26-30. Cigna also seeks to defeat class certification by arguing that the DST Reports cannot be used for the purpose for which Cigna "directed Plaintiffs" to use them. *See, e.g., id*. at 25. Incredibly, Cigna tries to blame Plaintiffs for its misdirection. For instance, Cigna now boldly asserts (literally and figuratively) that Plaintiffs should not have relied on the DST Reports because they were "to help Plaintiffs identify plans with certain language, and ***not*** for purposes of trying to tie specific drug transactions to specific plan language, as plaintiffs claim in their Motion." *Id*. at 3 (emphasis in original). That statement is flatly contradicted by Cigna's repeated invocation of Rule 33(d) and its instruction to Plaintiffs to use the DST Reports to answer interrogatories requesting Cigna to "identify, by claim number" each transaction that was adjudicated pursuant to the language at issue. *See* Opening Memo. at 8, 9-10, 11. Cigna also argues that "Plaintiffs have never served a formal discovery request calling for the production of ***any*** type of data, including prescription drug transaction data (let alone accumulator

information.).") Cigna Memo. at 29.  That assertion is flatly contradicted by Cigna's counsel's representations listed above where, based on Plaintiffs' discovery requests, "CHLIC **agreed to produce prescription drug data**, which is 'sufficient to identify the amount of' what Plaintiffs call 'Clawbacks' and 'Spread.'" Ex. BW at 9 (emphasis added).

Cigna also tries to avoid the consequences of its tactics by blaming Plaintiffs for not taking depositions earlier.  *See, e.g.*, Cigna Memo. at 10 n.9.  But, as Cigna noted, the parties mutually agreed to mediate.  *See id.* at 7 n.3.  The process stretched for nearly a year.  Although Plaintiffs continued document discovery during that time, Plaintiffs, **at Cigna's request,** held off on depositions until the mediation failed in 2020.

Cigna is correct that in the mediation process, Cigna raised out-of-pocket maximum and deductible accumulator data and also the "coupon" defense. Like the accumulator data, Plaintiffs asked for the coupon data and Cigna responded that it had none. Plaintiffs properly assumed that accumulators were like coupons — a defense that Cigna intended to assert based on data it did not have.  Cigna's representations about the coupon data were true; it has none. Apparently, Cigna's representation that it "does not track the accumulation toward a particular customer's overall plan deductible" was false. Opening Memo. at 17; Sept. Oliver Decl., Ex. H at 2.

Further, the parties' discussion about the DST Reports and accumulators (and coupons) were in the context of the inadmissible mediation posturing during 2019, *see, e.g.*, Cigna Memo. at 15, not in the litigation-discovery process.  In the admissible litigation–discovery process, Cigna **never** produced **any** accumulator data, as it stated it would if it intended to rely on such information, specifically including "in support of its opposition to Plaintiffs motion for class certification."  *See* Ex. BW at 10.  Cigna also continued to rely on Rule 33(d) and its affirmation that the DST Reports **were sufficient** to tie claims data to plans.

- 4 -

## II.     Cigna's Accumulator Arguments Are Abusive

Cigna's argument that the Motion to Strike with regard to accumulator data is a "red herring" presents a misunderstanding of Plaintiffs' arguments.  To be clear, under Plaintiffs' case theory, accumulator data is irrelevant. That being said, because Cigna contends it is a defense, Plaintiffs were entitled to discover facts/data supporting that defense.

Cigna's argument that Plaintiffs "have never served a formal discovery request for the production of *any* type of data, including the prescription drug transaction data (let alone accumulator data)" is dubious.  Cigna Memo. at 29.  Although Plaintiffs did not issue an interrogatory or request for production that specifically used the word "accumulator," Cigna knows that Plaintiffs' requests reasonably included such data and it acknowledged just that early in discovery, when Cigna stated:  "RFP No. 7:  This RFP sought '[d]ocuments sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated.'  In response, ***CHLIC agreed to produce prescription drug transaction data***, which is 'sufficient to identify the amount of' what Plaintiffs call 'Clawbacks' and 'Spread.'"  Ex. BW at 9.  Plaintiffs followed up and specified that they sought data to "***calculate deductible payment balances***." Sept. Oliver Decl., Exhibit F.  The deductible payment balances *are* the accumulator data. Moreover, RFP 17 sought all documents relating to all claims and defenses to class certification and the merits. In response, Cigna declared that it had produced "all available fields that are relevant for purposes of this case."  Opening Memo. at 17; Sept. Oliver Decl., Ex. H at 2.

Cigna's assertion to the Court that there was no discovery request for prescription drug or accumulator data is emblematic of Cigna's obfuscating tactics—and it undermines the credibility of Cigna's entire position.  See *Archibald v. City of Hartford,* 274 F.R.D. 371, 382 (D. Conn. 2011) ("discovery is not a shell game, where the hidden ball is moved around and only revealed after so many false guesses are made and so much money is squandered.  Defense counsel is not

- 5 -

entitled to transform discovery . . . into a game of hide and seek.") (internal citations omitted).

Cigna also now argues for the first time that there is a difference between "prescription drug transaction data" and "'claims data' or accumulator information that CHLIC may have." Cigna Memo. at 29. The Court should reject this argument. Cigna assured Plaintiffs that it produced ***all data*** "sufficient" to calculate clawbacks and spread, Exhibit BW at 9, and all fields that were "relevant for the purposes of this case." Opening Memo. at 17-18; Sept. Oliver Decl., Ex. H at 2. It also promised to produce all "information" that it would use "in support of its opposition to Plaintiffs motion for class certification." Ex. BW at 10. Cigna cannot now argue that accumulator data falls outside of these representations and therefore was not produced, but can be used in opposition to a class certification. *See Archibald,* 274 F.R.D. at 382.

Cigna's representation that "the parties had always spoke about prescription drug transaction data from CHLIC's GHTR database," which does not include accumulator data, is both too shrewd and demonstrably false. Since at least January 2019, Cigna's counsel represented in letters and emails that the prescription drug claims were on a system called "Proclaim." *See* Decl. of Brian W. Shaffer in Supp. of Def.'s Mem. in Opp. to Mot. to Strike ("Shaffer Decl.") [ECF 348], Ex. F at 1 ("Cigna has developed the ability to run text searches of the systems that store plan-related documents for clients whose claims are handled on the Proclaim or Facets systems."); Shaffer Decl., Ex. KK ("prescription drug transaction data" in a file called "proclaim.txt."); Shaffer Decl., Ex. H ("prescription drug transactions are handled on the Proclaim system"); Shaffer Decl., Ex. U (discussing prescription drug claims field "on the Proclaim system"). This documentary record shows that counsels' discussion "always" was in the context of "Proclaim" data, not GHTR.

In a May 15, 2020 deposition of David Despard, despite Cigna's counsel's representations, Plaintiffs learned that " █████████████████████████████████████████████████████████████ " Ex. BX at 11:22-24, 40:5-13. When Plaintiffs asked █████████████████████████████████████ Mr. Despard ████████████████████████████████████████████████████ *Id*. at 83:22-84:15. Three days after the deposition, Plaintiffs' counsel asked Cigna's counsel to confirm where the data is stored. *See* Ex. BY. Tellingly, Cigna's counsel did not know that GHTR was the prescription drug claims repository and responded that he had to ask his contact at Cigna. *Id*. If ***Cigna's*** counsel only learned of GHTR in May 2020, then plainly the parties did not "always" speak about GHTR data.

Because it is now apparent that the accumulator data was stored in the "█████████ ████████████" Ex. BZ at 401:15-19, had Cigna actually produced Proclaim rather than GHTR data as promised, it should have produced the accumulator data. In any event, Cigna's alternative history does not excuse its failure to produce data that it intended to use "in opposition to Plaintiffs' motion for class certification," Exhibit BW at 10, regardless of where it was stored.

Next, Cigna repeatedly argues that discovery requests derived through the court-mandated meet-and-confer process cannot be the basis for this motion. In an attempt to justify its evasive conduct, Cigna argues that Plaintiffs "Never Sought" the accumulator data because "Plaintiffs ***sent CHLIC a letter—not a formal discovery request***—asking CHLIC to produce 'all claims data that is relevant to proving liability and calculating damages for the Plaintiffs and the Classes.'" Cigna Memo. at 13 (including Heading II) (emphasis added). Indeed, that is precisely what Plaintiffs did as part of the meet and confer process to try to work through

- 7 -

Cigna's objections to Plaintiffs' discovery requests, believing that written compromises and representations developed through the mandated meet and confer process are no less binding than the initial requests and responses — especially when reduced to writing.

Similarly, on more than one occasion, Cigna argues that this motion cannot be granted because there was no "formal discovery request," no "court order" or "no discovery motion." *See id.* at 13, 15, 18, 22, 29. To adopt Cigna's arguments would make the meet and confer process meaningless. It also ignores the unassailable principle that courts have broad discretion to ensure the orderly administration of justice. *See* Opening Memo. at 20-21; *see also Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106-07 (2d Cir. 2002) ("Even in the absence of a discovery order [under Rule 37], a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs")*; Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267-71 (2d Cir. 1999). A Motion to Strike specific arguments under these circumstances is well within the Court's discretion.[3]

### III.    Cigna Abused Rule 33(d)

In its opposition, Cigna also amplifies its violation of Rule 33(d). As set forth in Plaintiffs' Opening Memorandum, the axiom of Rule 33(d) is that the answering party "certif[ies]" that the interrogating party "will be able to secure the information that is sought by the interrogatory" and "such records must contain the information sought by the interrogatory." *See* Opening Memo. at 22-23 quoting and citing cases. Cigna does not cite a single case to the contrary. Instead, it presents meritless "distinguishing" arguments, such as some cases stating

---

[3] Cigna's sharp discovery tactics start at the top. Cigna recently was involved in contentious litigation with Anthem after a failed merger. When Cigna's CEO tried to defend his covert efforts to torpedo the merger after learning that he would not be CEO of the merged entity, a Delaware court found nearly twenty times that his testimony "conflicted with the weight of the evidence" and was "misleading," "obfuscating," "evasive," "not credible," and "exaggerated and embellished," among other unflattering characteristics. *See, e.g., In re Anthem-Cigna Merger Litig.*, Consolidated C.A. No. 2017-1114-JTL, 2020 WL 5106556, at *4, 7, 8, 66, 70, 71, 118, 119, 120 (Del. Ch. Aug. 31, 2020).

the Rule 33(d) axiom involved multiple prior sanctions.  Cigna Memo. at 22.  Indeed, Cigna admits its abuse of Rule 33(d).  It acknowledges that it provided only "some of the information" necessary to answer the interrogatories.  *Id*. at 22.  Providing "some of the information" is a violation of Rule 33(d).  *See* Opening Memo. at 22-23.

Further, Cigna's explanation as to why it did not include in its initial interrogatory responses the known information about tying claims to plans through Ben Opt Codes and other databases that it provided in "supplemental" responses on June 18, 2020, Cigna Memo. at 9 n.5, raises questions about its motives. At the outset of discovery, Cigna's counsel claimed, "We have not identified any system capabilities that can identify or pinpoint which CHLIC clients had particular benefit language in their plan booklets during particular time periods." Ex. CA at 2. Plaintiffs' counsel continued to press the issue because Cigna's claimed inability to tie claims to plans would violate DOL regulations and Cigna's fiduciary duty. Cigna then interposed its repeated interrogatory answers that it could not tie claims to plans in the "ordinary course of business," but it "direct[ed] Plaintiffs" to the claims data, DST Report and plans under Rule 33(d) to perform that task.  Wanting to be sure that they were not being set up, Plaintiffs amended their complaint to allege the fiduciary duty/DOL regulation violation claim.

During that time, neither Plaintiffs' discovery requests nor the underlying facts changed.  However, *after* Plaintiffs moved for class certification, Cigna significantly modified its interrogatory responses by removing its assertion that claims could not be tied to plans in the "ordinary course of business" and explaining in detail how tying could be accomplished.  Cigna asserts that it changed its response "to refute Plaintiffs' new breach of fiduciary theory."  Cigna Memo. at 9 n.5.  It is evident, however, that Cigna crafted its initial responses to create an escape hatch to argue later, as it has done, that Plaintiffs cannot certify a class because the DST Reports

upon which it told Plaintiffs to rely are not adequate to tie claims to plans. When Plaintiffs sealed the escape hatch with the breach of fiduciary duty claim, Cigna was forced to explain in detail how it can tie claims to plans.  Because the facts and Plaintiffs' discovery requests never changed, the Court should question Cigna's motives in its earlier, incomplete responses.

The prejudice from Cigna's conduct is manifest.  Plaintiffs met and conferred endlessly with Cigna's counsel and reasonably relied on Cigna's representation under Rule 33(d) that the (1) claims data, (2) DST Reports and (3) plans were adequate sources to "tie transactions to employers and plans."  Cigna cannot argue now that supposed shortcomings in the DST Reports are so significant so as to prohibit them from being used for the ***exact purpose*** that Cigna designated them under the Rule.  For that reason, Cigna's arguments that Plaintiffs and their expert cannot rely on the DST Reports should be stricken.  Alternatively, if Cigna's position now is that the DST Reports are not adequate to tie claims to plans, Cigna should be required to answer the interrogatories and tie the claims to the relevant plan language through the sources that it claimed are sufficient in its June 18, 2020 "supplemental" discovery responses. *See* Opening Memo. at 8.[4]

---

[4] In another abuse of Rule 33(d), Cigna's now argues that its ***own records*** about the ERISA status of the Plans are unreliable . Def.'s Surreply in Opp. to Pls' Mot. for Class Certification. [ECF 343] at 16; Pls' Reply Mem. in Further Supp. of Class Certification. [ECF 308] at 34-35.  In response to Plaintiffs' Seventh Set of Interrogatories asking Cigna to state whether insured Plans with Class and Subclass language were or were not covered by ERISA, Cigna responded under Rule 33(d) that "CHLIC maintains data that identifies whether a prescription drug transaction under a participant's plan is subject to the Employee Retirement Income Security Act of 1974. CHLIC will produce this supplemental file to use in addition to the aforementioned documents." Ex. CB at 3. That is the precise data that Cigna now says is unreliable.

Cigna also, just six days before fact discovery closed, served "Supplemental" initial disclosures, which substantially modified the original initial disclosures by, among other things, listing ***dozens*** of new potential witnesses.  A red-line comparison of the initial disclosures and the tardy "Supplemental" disclosures is attached as Ex. CF. Then, on the last day of fact discovery, Cigna produced over 3,000 documents, which, according to Cigna, "includes certain documents related to CHLIC's supplemental Rule 26 disclosures."  Plaintiffs will meet and confer on these untimely "initial disclosures" and, if Cigna persists, they will seek relief to prohibit Cigna from relying on this untimely disclosed information.

Dated: October 13, 2020        Respectfully submitted,

                               _____*s/ Robert A. Izard*_____
                               Robert A. Izard (ct01601)
                               *Plaintiffs' Interim Co-Lead Class Counsel*
                               Craig A. Raabe (ct04116)
                               Seth R. Klein (ct18121)
                               Christopher M. Barrett (ct30151)
                               IZARD, KINDALL & RAABE, LLP
                               29 South Main Street, Suite 305
                               West Hartford, CT 06107
                               Telephone: 860-493-6292
                               Facsimile: 860-493-6290
                               rizard@ikrlaw.com
                               craabe@ikrlaw.com
                               sklein@ikrlaw.com
                               cbarrett@ikrlaw.com

                               William H. Narwold (ct00133)
                               *Plaintiffs' Interim Co-Lead Class Counsel*
                               Mathew Jasinski, (ct27520)
                               MOTLEY RICE LLC
                               One Corporate Center
                               20 Church Street, 17th Floor
                               Hartford, CT 06103
                               Telephone: 860-882-1681
                               Facsimile:  860-882-1682
                               bnarwold@motleyrice.com
                               mjasinski@motleyrice.com

                               Meghan S. Oliver, *pro hac vice*
                               Charlotte Loper, *pro hac vice*
                               MOTLEY RICE LLC
                               28 Bridgeside Blvd.
                               Mount Pleasant, SC 29464
                               Telephone: 843-216-9000
                               moliver@motleyrice.com
                               cloper@motleyrice.com

                               Joseph P. Guglielmo (ct27481)
                               *Plaintiffs' Executive Committee Chair*
                               Carey Alexander, *pro hac vice*
                               SCOTT+SCOTT,
                               ATTORNEYS AT LAW, LLP

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206- 623-1900
Facsimile: 206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Facsimile: 612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone: 985-783-6789

Facsimile:   985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:   504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:   516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:   866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:   612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330

Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs