# EXHIBIT BV

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE CIGNA CORPORATION PBM LITIGATION | Civil No. 16-cv-1702 |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, and subject to the definitions and instructions set forth below, plaintiffs Kimberly A. Negron, Courtney Gallagher, Daniel Perry, Nina Curol and Roger Curol ("Plaintiffs") request that Defendants[1] produce the following documents that are in their actual or constructive possession, custody or control, within 30 days from the conference held pursuant to Fed. R. Civ. P. 26(f), or at such other time and place as the parties mutually agree.

Copies of documents or electronically stored information responsive to these Requests may be sent to the offices of Izard Kindall & Raabe, 29 South Main St., West Hartford, CT 06107, or emailed to counsel listed at the end of this document.

### I.    Definitions

Unless otherwise stated, the terms set forth below are defined as follows:

1.       "Action" means *In re Cigna Corporation PBM Litigation*, Civil No. 16-cv-1702 (D.Conn.)

2.       "Argus" means Argus Health Systems, Inc. and its subsidiaries and affiliates.

---

[1] Defendants are (1) Cigna Corporation; (2) Cigna Health and Life Insurance Company ("CHL") and (3) OptumRx, Inc.

3.      "Cigna Group" means Cigna Corporation and any of its parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors, or bankers), and any other person purporting to act on their behalf, including Cigna Health and Life Insurance Company ("CHL") and Cigna Pharmacy Management.

4.      "Cigna Group PBMs" or "its PBMs" means PBMs utilized by Cigna Group to administer prescription drug benefits (for example, Argus and Optum).

5.      "Clawback" is the amount of the Spread (defined below) or other money paid by or credited back to Cigna Group or Cigna Group PBMs in connection with the sale of prescription drugs, such as a negative reimbursement.

6.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

8.      "Cost-sharing" refers to the contractual arrangement between plan members, Insureds, participants, and beneficiaries and Cigna Group, pursuant to which Cigna Group and the plan members, Insureds, participants, and beneficiaries share in the cost of prescription drugs. Such Cost-sharing can take the form of copayments or coinsurance, for example.

9.      "Disagreement" means a failure to agree; a dispute; a conflict or a difference of opinion; or a quarrel.

10.    "<u>Document</u>" or "<u>document</u>" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

11.    "<u>ESI</u>" means electronically-stored information and includes, but is not limited to, the following: all items covered by Fed. R. Civ. P. 34(a)(1)(A); files, information, or data that are generated, received, processed, recorded, or stored by computers or other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.); files, information, or data saved on backup media, including tapes and hard drives; files, information, or data stored on external servers administered and maintained by third parties; files, information, or data stored on employees' smartphones, notebook computers, or other portable computing devices used for work purposes; internal or external websites; output resulting from the use of any software program, application, platform, or the like, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs, outlines, images, electronic mail, instant messages (or similar programs), bulletin board (or online forum) programs, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside, regardless of whether such data exists in an active file, a deleted file, or file fragment; activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage, or transmittal, such as, but not limited to, personal digital assistants, hand-held wireless devices, smartphones, tablets, or similar devices.

12.    "<u>ERISA</u>" means the Employee Retirement Income Security Act of 1974.

13.    "<u>Fees Paid to Pharmacy</u>" are the fees negotiated between Defendants and/or Cigna Group PBMs, on the one hand, and Participating Pharmacies (defined below), on the other, that

will be paid to the pharmacies by Defendants and/or Cigna Group PBMs for the sale of a particular prescription drug.

14. "Fees Paid by Insured" are the fees paid by plan members, Insureds, participants, and beneficiaries to a pharmacy while purchasing prescription drugs and include copayments, coinsurance, and money paid toward satisfying a deductible.

15. "Internal Emails" means emails sent between and/or among Cigna Group, its subsidiaries, its PBMs, and/or its contractors.

16. "Insureds" are plan members, insureds, participants and beneficiaries of any Cigna Group insurance plan or insurance product.

17. "Meeting" or "Meetings" means the contemporaneous presence, telephonic, or electronic connection among natural persons, whether or not such presence was by chance or pre-arranged and whether or not the Meeting was formal or informal or occurred in connection with some other activity.

18. "Native Format" means the file structure of a document created by the original creating application (in contrast to a static image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

19. "Optum" means OptumRx, Inc.  This includes any of its parents, subsidiaries, affiliates, predecessor entities, successor entities, divisions, departments, groups, acquired entities, related entities, directors, officers, employees, partners, members, representatives, agents (including attorneys, accountants, consultants, investment advisors, or bankers), and any other person purporting to act on their behalf.

20. "Participating Pharmacies" are pharmacies participating in a PBM's (defined below) network of pharmacies that Cigna Group or Cigna Group PBMs authorize its plan members, Insureds, participants, and beneficiaries to use to fill prescriptions and have their covered prescription drug costs paid within the terms of their insurance plan with Cigna Group.

21. "PBM" means pharmacy benefits manager retained by Cigna Group to provide pharmacy benefits or pharmacy administrative services to Insureds (for example, Optum).

22. "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

23. "Prescription Drug Transactions" are defined as including an Insured's name, address, birth date, gender, plan name, plan type, National Drug Code ("NDC"), drug description, drug quantity, Participating Pharmacy name, Participating Pharmacy address, prescription number, date of transaction, store number, Fees Paid by Insured, Fees Paid to Pharmacy, amount of Spread, amount of Clawback, and the basis for Fees Paid by Insured (*e.g.*, whether the transaction was in the deductible portion of the policy and whether it involved a deductible payment, coinsurance payment, or copayment).

24. "Refer" or "relate" or "referring" or "relating" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated, or maintained, as a result of the subject matter of the request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review, or report on the subject matter of the request.

25. "RICO" means the Racketeer Influenced and Corrupt Organizations Act.

26. "Spread" is the amount, if any, that the Fees Paid by Insured exceeds the Fees Paid to the Pharmacy.

- 5 -

27.     "<u>Structured Data</u>" means ESI stored in a structured format, such as databases or data sets, according to specific form and content rules, as defined by each field of the database.

28.     "<u>You or Your</u>" means Defendants in the Action.

## II.     Rules of Construction

1.     All/Any/Each.   The terms "all," "any," and "each" shall each be construed as encompassing any and all.

2.     And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.     Including.  "Including" shall be construed to include the phrase "but not limited to" and/or "without limitation."

4.     Number.  The use of the singular form of any word includes the plural and vice-versa.

5.     Tense.  The use of verb in any tense shall be construed to be in the tense necessary to bring within the scope of a request all responses that might otherwise be construed as outside its scope.

## III.     Instructions

1.     All documents shall be produced as they are maintained in the ordinary course of business and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2.     In responding to these requests, you shall produce all responsive documents (Including those stored electronically), which are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions or

affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants, or other representatives.  A document shall be deemed to be within your control if, for example, you have the right to secure the document or a copy of the document from another Person having possession or custody of the document.

3.     Plaintiffs reserve their right to request inspection of the original documents, Including those stored electronically, as they are kept in the usual course of business.

4.     To the extent that there are documents containing information relevant to these requests that are currently in electronic format, the documents are to be produced in their native format.

5.     If production of documents is withheld on the ground of privilege, as to each such withheld document, state the following information:

(a)     which privilege is claimed;

(b)     who is asserting the privilege;

(c)     a precise statement of the facts upon which said claim of privilege is based;

(d)     the following information describing each purportedly privileged document:

(i)     a brief description sufficient to identify its nature, *i.e.*, agreement, letter, memorandum, type, etc.;

(ii)     a brief description sufficient to identify its subject matter and purpose of the document;

(iii)     the date it was prepared;

(iv)     the date it bears;

(v)     the date it was sent;

     (vi)     the date it was received;

     (vii)     the identity of the Person preparing it;

     (viii)     the identity of the Person sending it;

     (ix)     the identity of each Person to whom it was sent, or was to have been sent, including all addresses and all recipients of copies;

     (x)     a statement as to whom each identified Person represented, or purported to represent, at all relevant times; and

     (xi)     all Persons to whom its contents have been disclosed; and

(e)     a precise description of the place where each copy of that document is kept, Including the title or description of the file in which said document may be found and the location of such file.

6.     If a portion of any document responsive to these requests is withheld under claim of privilege, pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.     You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instruction Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.     Whenever a document is not produced in full or is produced in redacted form, so indicate on the document, state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information, and belief, and with as much particularity as possible, those portions of the document which are not being produced.

9.      If a document responsive to these requests was at any time in your possession, custody, or control, but is no longer available for production, as to each such document, state the following information:

> (a)      whether the document is missing or lost;
>
> (b)      whether it has been destroyed;
>
> (c)      whether the document has been transferred or delivered to another Person and if so, at whose request;
>
> (d)      whether the document has been otherwise disposed of; and
>
> (e)      a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.      With respect to any category of documents, the production of which you contend is in some way "burdensome" or "oppressive," please state the specific reasons for that objection.

11.      The fact that a document is produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

12.      This is a continuing request for the production of documents.  If, after making your initial production, you obtain or become aware of any further documents responsive to these requests, you are required by Fed. R. Civ. P. 26(e) to produce such additional documents to Plaintiffs.

## IV.      Form of Hard-Copy Documents

1.      Hard-copy documents should be scanned as single-page, Group IV, 300 DPI, TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO;" "ENDNO;" "BEGATTACH;" "ENDATTACH;" "PAGES;" and "CUSTODIAN."  The documents should be logically unitized

- 9 -

(*i.e.*, distinct documents should not be merged into a single record and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each document should also be provided.  The OCR software should maximize text quality over process speed.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## V.    Form of Electronically Stored Information

1.    ESI should be produced as single-page, Group IV, 300 DPI, TIFF images with the exception of source code, audio, video, and spreadsheet-type files, Including Microsoft Excel, CSV – which should be produced in Native Format.  All ESI should be produced with a delimited database load file that contains the metadata fields listed in Table 1, attached hereto.  An .opt image cross-reference file should also be provided for all TIFF images.

2.    TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFF images of email messages should include the BCC line.  PowerPoint documents should be processed with hidden slides, all speaker notes unhidden, and show both the slide and the speaker's notes on the TIFF/JPG image.  If an original document contains color, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images.

3.    If a document is produced in Native Format, a single-page, bates-stamped, TIFF image slip-sheet, containing the confidentiality designation and text stating the document has been produced in Native Format, should also be provided.  If documents requested in Native Format require redactions, the parties should meet and confer regarding how to implement redactions

while ensuring that proper formatting and usability are maintained. Each native file should be named according to the bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

4.      Where a discovery request requires production of Structured Data, in lieu of producing Structured Data systems or applications, the parties shall meet and confer on the content and format of a data extraction from such structured data source. The parties shall discuss and attempt to agree upon the sets of data or fields to be included in the extraction and the format in which data extracted from the data source shall be produced. The producing party shall make all disclosures necessary for the requesting party to understand and evaluate whether the content and format of a proposed data extraction would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source, and whether a data dictionary exists, the time period over which data exists, any database scheme, or other relevant information. The producing party shall generate a sample report of such extracted data for review by the requesting party or counsel upon agreement of the parties, as to the fields to be produced and the format of production.

5.      Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the family level). Attachments should not be eliminated as duplicates for purposes of production unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN field should list each custodian, separated by a semicolon, who was a source of that document.

- 11 -

Should the custodian metadata field produced become outdated, due to rolling productions, an overlay file providing all of the custodians for the affected documents will be produced prior to substantial completion of the document production.

6.      Prior to use, the parties should meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, file type culling, near de-duplication, email thread suppression, or technology assisted review).  Use of these technologies to reduce the reviewable collection or production, other than as described within this document, requires the consent of the receiving party.

**VI.     Relevant Period**

Unless otherwise specifically indicated, the following requests refer to the period from October 4, 2010 through present (the "Relevant Period") and shall Include all documents and information that relate to such period, even if prepared or published outside of the Relevant Period. Nothing herein alters your obligation to supplement your responses to the requests.

**VII.    Documents Requested**

**A.     From Both Cigna Group and Optum:**

1.      Documents sufficient to show Your organizational structure and management hierarchy, Including the groups, divisions, and all employees involved with prescription drug benefits, prescription drug pricing, and pricing policies and procedures concerning the sale of prescription drugs.

2.      Documents sufficient to identify each Participating Pharmacy, Including the length of time the pharmacy has been a Participating Pharmacy.

3.      All Documents constituting agreements pursuant to which a PBM (Including but not limited to Optum and Argus) administers prescription drug benefits purchased through health insurance and/or prescription drug policies or plans issued or administered by Cigna Group.

4.     All Documents and Communications relating to Spread or Clawbacks, Including Communications between or among employees, officers, and/or directors of Cigna Group and/or Optum and/or Argus and/or any other PBM, insurance company, or other Person.

5.     All Documents and Communications relating to the decision to create Spread income or to seek or obtain Clawbacks.

6.     Documents sufficient to identify all prescription drugs that were subject to Spread income or Clawbacks either directly or indirectly.

7.     Documents sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated.

8.     Documents sufficient to show the monthly revenues, profits, and other consideration received or credited from prescription drug premiums, Clawbacks, and Spread.

9.     Documents sufficient to show the recipient(s) and amount of money or other consideration paid, sent, transferred, or credited relating to Clawbacks or Spread.

10.    All Documents and Communications relating to actions or policies to enforce limitations on Participating Pharmacies' ability to inform plan members, Insureds, participants and beneficiaries, or any other Person of the option to pay the pharmacies' retail price for a prescription drug directly and outside of their insurance coverage, Including when such a payment would be less expensive than the Fees Paid by Insured if the prescription were filled through the insurance coverage.

11.    All Documents and Communications relating to any limitation on Participating Pharmacies' ability to inform plan members, Insureds, participants and beneficiaries, or any other Person, of the option to pay the pharmacies' retail price for a prescription drug directly and outside

of their insurance coverage, Including when such a payment would be less expensive than the Fees Paid by Insured if the prescription were filled through the insurance coverage.

12.    All Documents and Communications relating to any actual or potential media coverage of Spread or Clawbacks.  This request Includes documents concerning the investigation by the New Orleans television station WVUE New Orleans FOX 8.

13.    All Documents relating to Communications with any third-party relating to Clawbacks and Spreads, Including Communications with trade groups, lobbyists, government agencies, and consultants. Trade groups Include groups representing pharmacies, such as the National Pharmacists Association, the National Community Pharmacists Association, and the Louisiana Independent Pharmacies Association.

14.    All Documents produced to any government agency relating to Clawbacks and Spreads.

15.    All Documents and Communications relating to complaints from any Person (Including PBMs, employees, former employees, pharmacies, groups representing PBMs or pharmacies, plan members, Insureds, participants, and beneficiaries) concerning Clawbacks, Spreads, or Fees Paid by the Insured being higher than a Participating Pharmacy's retail price for a prescription if paid for directly without insurance.

16.    Documents sufficient to identify the computer system(s) used to adjudicate pharmacy benefits and to determine the amount of any Clawback or Spread.

17.    All Documents supporting, providing a basis for, contradicting, or otherwise concerning or relating to any claim or defense asserted in the Action, Including both claims and defenses on the merits, as well as any defenses or opposition to class certification.

18.     Documents sufficient to show policies or practices concerning the retention, destruction, disposal, or preservation of Documents, ESI, and Structured Data, Including any changes to, or different versions of, such policies or practices, in effect during the Relevant Period.

19.     Documents sufficient to show all steps taken to preserve all Documents concerning the claims or events at issue in the Action.

20.     All Documents concerning any insurance policies, indemnification agreements, hold harmless agreements, or by-laws under which you may claim coverage to satisfy part or all of any possible liabilities resulting from any of the claims asserted in the Action.

**B.     From Cigna Group Only:**

21.     Documents sufficient to identify all Cigna Group health and/or prescription drug policies or plans regulated by ERISA (*e.g.*, offered as part of an employee benefit plan).

22.     Documents sufficient to identify the approximate number of Persons covered by each policy or plan responsive to Request No. 21 on December 31, 2010, 2011, 2012, 2013, 2014, 2015 and 2016.

23.     Documents sufficient to identify all Cigna Group health and/or prescription drug policies or plans not regulated by ERISA (*e.g.*, not offered through employer).

24.     Documents sufficient to identify the approximate number of Persons covered by each policy or plan responsive to Request No. 23 on December 31, 2010, 2011, 2012, 2013, 2014, 2015 and 2016.

25.     A copy of each form of group and individual health and prescription drug insurance policies issued by Cigna Group under which Clawbacks have been paid.

26.     All Documents relating to the determination of premiums or fees under policies or plans issued by Cigna Group under which Clawbacks have been paid.

27.     All Documents supporting the determination of premiums under policies or plans issued by Cigna Group under which Clawbacks have been paid that have been filed with a State department of insurance or similar State agency.

28.     All Documents relating to Cigna Group's relationships with Participating Pharmacies, Including agreements, policies, procedures, manuals, handbooks, guidelines, formulas, methodologies, practices, and/or rules related thereto.

29.     All Documents and Communications concerning information provided to actual or potential plan members or beneficiaries about prescription drug benefits, Fees Paid by Insureds, Spreads, or Clawbacks.

**C.      From Optum Only:**

30.     All Documents concerning Optum's Pharmacy Reimbursement Overpayment Program.

31.     A copy of each form of agreement between Optum and Participating Pharmacies.

32.     All Documents relating to Optum's relationships with Participating Pharmacies, Including agreements, policies, procedures, manuals, handbooks, guidelines, formulas, methodologies, practices, and/or rules related thereto.

33.     All Documents and Communications concerning information provided to Insureds and/or Participating Pharmacies concerning Spreads or Clawbacks.

34.     All Documents and Communications relating to any Disagreement with Cigna Group, Participating Pharmacies, other PBMs, or any other health insurance company relating to Spreads or Clawbacks.

| February 6, 2017 | /s Robert A. Izard |

Robert A. Izard (ct01601)
*Plaintiffs' Interim Co-Lead Class Counsel*
Craig A. Raabe (ct04116)
Christopher M. Barrett (ct30151)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone:  860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com


William H. Narwold (ct00133)
*Plaintiffs' Interim Co-Lead Class Counsel*
Mathew Jasinski, *pro hac pending*
**MOTLEY RICE LLC**
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  860-882-1681
Facsimile:   860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com


Joseph P. Guglielmo (ct27481)
*Plaintiffs' Executive Committee Chair*
Carey Alexander, *pro hac vice*
**SCOTT+SCOTT,**
**ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:   212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

- 17 -

Erin Green Comite (ct24886)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
**KELLER ROHRBACK, LLP**
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
**ZIMMERMAN REED, LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
**LEMMON LAW FIRM LLC**
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789
Facsimile:  985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

- 18 -

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
**SARRAF GENTILE LLP**
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:  516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
**LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.**
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:  612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

CERTIFICATE OF SERVICE

I, Robert A. Izard, certify that, on February 6, 2017, I caused a true and correct copy of the foregoing document to be served electronically on counsel for all parties.

Executed this 6th day of February 2017.

_s/ Robert A. Izard_
Robert A. Izard (ct01601)

# EXHIBIT BW

# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

July 9, 2018

**VIA ELECTRONIC MAIL**

Craig A. Raabe, Esq.
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

Re:     *In re Cigna Corporation PBM Litigation – No 3:16-CV-1702 (WWE)*

Dear Craig:

We write in response to your June 28, 2018 letter (the "Letter"), in which you purport to outline the "major areas of discovery dispute" between Plaintiffs and Cigna Health and Life Insurance Company ("CHLIC"). We address the specific issues raised in the Letter in detail below, but want to highlight two general points.

First, Plaintiffs' Letter attempts to create discovery issues where none actually exist. As an example, your Letter takes issue with CHLIC's responses to several Requests for Admission ("RFAs"), to which CHLIC responded with an unqualified denial, or otherwise responded that it was unable to respond with an unqualified admission or denial, and provided the reasons for doing so. While you attempt to reframe many of Plaintiffs' requests in your Letter, that does not make CHLIC's response deficient. Similarly, you "demand compliance" with many Requests for Production ("RFPs") to which CHLIC agreed to produce documents following "a reasonable and diligent search, using search terms and other parameters." No compliance need be demanded, therefore, because CHLIC has already agreed to do so upon reasonable terms, which the parties are currently negotiating.

Second, much of your Letter attempts to clarify or redraft the discovery requests Plaintiffs originally served. In many instances, however, the clarification differs materially from what Plaintiffs initially propounded and amounts to an entirely new request. Your desire to now reframe or clarify the discovery Plaintiffs originally served validates many of CHLIC's objections—i.e., regarding the failure to particularize the types of documents and/or information sought, or the vagueness of undefined terms—which will not be withdrawn. Nevertheless, as discussed during our June 29, 2018 meet and confer, CHLIC has not withheld any documents or information on those objections. At the same time, as noted in CHLIC's discovery responses, where CHLIC objected to certain undefined terms, CHLIC responded using reasonable efforts and based on its understanding of each request.

**Morgan, Lewis & Bockius** LLP

1701 Market Street
Philadelphia, PA  19103-2921
United States

**T** +1.215.963.5000
**F** +1.215.963.5001

Craig A. Raabe, Esq.
July 9, 2018
Page 2

Craig A. Raabe, Esq.
July 9, 2018
Page 3



**5.** **Privileged Materials**

CHLIC has agreed to prepare privilege and redaction logs and will do so in compliance with the District of Connecticut's Local Rules and the Stipulation and Order Regarding Discovery of ESI [Docket No. 90]. While you state that "Plaintiffs are not requesting privileged materials and Cigna need not object on such grounds," CHLIC's privilege objections are proper and necessary to preserve those privileges and protections. As such, they will not be withdrawn.

Craig A. Raabe, Esq.
July 9, 2018
Page 4



### 8. First Interrogatory Responses dated September 1, 2017

Interrogatory No. 3 asks CHLIC to "state by total dollars and by percentage allocation between Cigna and Cigna PBMs (broken out by each PBM) the amount of Spread that you created and the amount of Clawbacks that you took" for each named Plaintiff.  As an initial matter, this interrogatory prematurely seeks expert information.  Additionally, CHLIC's objection to the term "percentage allocation" is appropriate because it cannot allocate its data in this manner, as no such allocation is tracked.  CHLIC, therefore, properly stood on its objections to this Interrogatory.

Interrogatory No. 4 refers to the same email that is the subject of Plaintiffs' First RFAs, and asks CHLIC to state whether a non-CHLIC employee's statements about "Optum's Pharmacy Reimbursement Overpayment program" were true when made, and, if either or both were not true, state why they were made and identify who was aware that they were being made.  As noted in CHLIC's response to this Interrogatory, and noted above as to the First RFAs, such requests require the internal knowledge of a non-CHLIC employee, which is not information available to CHLIC.  While

Craig A. Raabe, Esq.
July 9, 2018
Page 5

you state that CHLIC has an obligation to ask OptumRx whether it made those statements and whether they are true, you provide no authority for that contention. Moreover, that contention is misplaced considering that OptumRx is a Defendant in this action and Plaintiffs posed the exact same Interrogatory to OptumRx.

### 9.     Second RFA Responses dated May 24, 2018

CHLIC properly objected to certain of Plaintiffs' Second RFAs on the ground and to the extent that they may call for a legal conclusion. *See E.E.O.C. v. Bloomberg L.P.*, No. 07 CIV 8383 LAP, 2010 WL 3260150, at *1 (S.D.N.Y. Aug. 4, 2010) (sustaining objections based on improper legal conclusions to requests asking for an admission that a specific action or decision "complied with Title VII." "'[I]t would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts.'"); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432–33 (S.D.N.Y. 2012) (declining to admit as deemed admissions Rule 36 requests asking whether "the sunglasses depicted in various exhibits are counterfeit goods," whether they "infringe" on certain marks and whether the defendants "sold thousands of Infringing Products"); *Matysiak v. Spectrum Servs. Co.*, No. 3:10 CV 1841 CSH, 2014 WL 3819206, at *4 (D. Conn. Aug. 4, 2014) (In an FLSA case, the defendants were not required to admit that the FLSA and Florida Minimum Wage Act applied to its business and to plaintiff's work at the time she was employed by defendants because "[a]lthough Rule 36(a) authorizes a party to serve a request for admission relating to the application of law to fact, a party may not seek an admission as to a pure conclusion of law[,]" and the four requests at issue "improperly [sought] admissions of pure legal conclusions."). Similarly, here, many of the Second RFAs improperly seek admissions of pure legal conclusions—i.e., RFAs asking for admissions as to whether notice or disclosures compliant with the DOL Regulations was provided or whether procedures compliant with the DOL Regulations were established or maintained. Nevertheless, as noted above, CHLIC responded to those RFAs and did not simply stand on that objection.

As to the issues you raise regarding specific requests in the Second RFAs, we address them as follows:

**Request Nos. 1 and 2**: CHLIC denied these RFAs, notwithstanding its objections.

**Request No. 4**: This RFA asked CHLIC to admit that the "pharmacies were paid in full for the drugs that were prescribed with respect to each prescription drug transaction." You note that Plaintiffs believe CHLIC's objection to the phrase "paid in full" is meritless. Not so. In fact, because you felt the need to clarify what Plaintiffs' understanding of that term meant for purposes of the RFA confirms the merit of CHLIC's objection. Moreover, while not the actual language of the RFA, in your Letter, you also attempt to revise the RFA to pertain to "every prescription drug transaction in which there was Spread from October 1, 2010 to the present." Although you now desire to revise this RFA, CHLIC has no obligation to revise its answer. Instead, CHLIC's response—that it cannot "admit or deny the Request as phrased, as it seeks an admission requiring information known to Plaintiffs and/or the pharmacies, but which is not known to CHLIC"—is appropriate. CHLIC does not know what the pharmacies consider as being "paid in full." For example, there could have been disputes between certain pharmacies and OptumRx about the rate of payment for a particular transaction or series of transactions for a particular day, month, year, or years. Such disputes would, in most cases, be solely between the pharmacy and OptumRx and arise out of the contract between those two parties. CHLIC would not be involved or even aware of such disputes. CHLIC, therefore, cannot admit or deny that the pharmacies were "paid in full" for every prescription drug transaction.

Craig A. Raabe, Esq.
July 9, 2018
Page 6

**Request No. 12:**  This RFA sought an admission that CHLIC "did not disclose to Plaintiffs the amount of the Spread or Clawback in connection with prescription drug transactions." CHLIC responded that it cannot "admit or deny the Request as phrased" because it does not specify to which of Plaintiffs' prescription drug transactions it relates, and because information in Plaintiffs' Consolidated Amended Complaint ("CAC") indicated that such information was disclosed to Plaintiffs. Now, for the first time in your Letter, you completely reframe this request to pertain to "the time of the prescription drug transactions," which you explain as "at the point of sale or in an explanation of benefits." That modification fares no better, as it relates to two different points in time. It is also nonsensical because CHLIC is not present at the point of sale. Moreover, CHLIC provided information supporting its response to this RFA in its response to Plaintiffs' Second Set of Interrogatories. CHLIC, therefore, has fully and appropriately responded to the RFA propounded and no amendment or supplemental response is warranted.

**Request No. 15:** This RFA asks CHLIC to admit that it "instructed pharmacies to charge Plaintiffs fees (in the form of copayments, coinsurance, and/or deductibles) that exceeded the amount paid to pharmacies in connection with prescription drug transactions." CHLIC responded with an unqualified denial, and, thus, has fully and appropriately responded.

In your Letter, you take issue with certain of CHLIC's objections—specifically, objections that Plaintiffs did not identify the particular prescription drug transactions, that Plaintiffs may be better positioned to have information to respond, and that the request assumes facts. As an initial matter, you provide no explanation or rationale to support your position. Even if you had, however, those objections are appropriate for the following reasons:

- CHLIC did not state that it could not identify the drug transactions at issue. CHLIC objects to Plaintiffs' failure to identify the specific prescription drug transactions that are the subject of the RFA, which makes the RFA overly broad and vague. Asking for an admission that pertains to multiple prescription drug transactions for multiple Named Plaintiffs is improper and a response could be misconstrued.

- Plaintiffs also have information about what they were charged, so information necessary to respond may also be "more readily available" to Plaintiffs than it is to CHLIC. Indeed, CHLIC is not present at the time the pharmacy charges Plaintiffs, but Plaintiffs are.

- This request assumes facts not in evidence, specifically the manner in which information regarding the prescription drug transactions is facilitated, and that CHLIC directly communicates with the pharmacies in OptumRx's network. It also assumes that in every prescription drug transaction, the pharmacies charged Plaintiffs fees that exceeded the amount paid to pharmacies, which is not true, as set forth in CHLIC's response to Plaintiffs' Second Set of Interrogatories relating to this RFA.

CHLIC's objections to this RFA, therefore, are well-founded and will not be withdrawn.

**Request No. 16:** This RFA asks CHLIC to admit "it instructed pharmacies to collect Spread from Plaintiffs in connection with prescription drug transactions." CHLIC again responded with an unqualified denial, and, thus, has fully and appropriately responded. CHLIC's objection that Plaintiffs' failure to identify the specific prescription drug transactions that are the subject of this RFA is well-founded, as noted above. Similarly, CHLIC's objection to the undefined terms "instructed" or "collect" are appropriate. CHLIC has a right to object to such terms to the extent that the parties have different understandings of terms. As shown by your Letter, Plaintiffs' interpretation of certain

Craig A. Raabe, Esq.
July 9, 2018
Page 7

requests and or terms may differ from CHLIC's.   CHLIC, therefore, will not delete its proper objections.

**Request No. 17**:  This RFA asks *CHLIC* to admit that "*Pharmacies* collected Spread from Plaintiffs in connection with prescription drug transactions."  (emphasis added).  As to Plaintiffs' concerns regarding CHLIC's objections to this RFA, we reiterate what is stated above.[1]  Your statement that "Cigna admitted that its network pharmacies collected 'participants' payments' that 'exceeded' the 'Pharmacy Contract Rate' and 'Catamaran Rate,'" is false.  Instead, in response to Plaintiffs' First Interrogatories, CHLIC states that "[t]he participants' payments sometimes exceeded, sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue[.]"  This same information is provided in CHLIC's response to Plaintiffs' Second Interrogatories, which asked CHLIC to provide facts supporting the reason it could provide an unqualified admission to this RFA.  In addition to that information, this RFA specifically asks about amounts that *pharmacies* collected from Plaintiffs, which requires information outside of CHLIC's possession, custody, or control, and which may be more readily available to Plaintiffs.  *See CAC* ¶¶ 10-13, 66-69.  CHLIC, therefore, does not "need to admit this RFA," as you demand.  While you may not like CHLIC's answer, the response to this RFA and the corresponding Interrogatory more than satisfy CHLIC's discovery obligations.

**Request No. 18**:  This RFA asks CHLIC to admit that "[p]harmacies remitted Spread paid by Plaintiffs to Defendants in connection with prescription drug transactions."  As noted previously, in failing to identify which prescription drug transactions to which this request specifically pertains, CHLIC cannot "admit this RFA," as you demand in your Letter.  As noted in CHLIC's corresponding response to Plaintiffs' Second Set of Interrogatories, "participants' payments sometimes exceeded, sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."  While you state that Plaintiffs "are employing the common meaning of 'remitted' as found in any dictionary," CHLIC's objection is appropriate to the extent the parties operated using different understanding of that term.  Additionally, while CHLIC stated that "in and around the February-May 2014 time period, Argus implemented the operational capability for CHLIC to track and reconcile the differential in instances where a participant's payment to a Catamaran network pharmacy exceeded the Catamaran Rate, and Catamaran credited CHLIC with that differential," that does not equate to the same meaning as "remitted"—which contemplates an actual transfer of money from one party to another (in the context of this RFA, from the pharmacies to CHLIC)—especially considering the complexity of the agreements at issue.  Nor does it require CHLIC to admit this RFA, which pertains to "prescription drug transactions" where it is possible and likely the case that Plaintiffs' "payments … sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."

**Request No. 19**:  CHLIC's denial of this RFA seeking an admission that "Defendants allocated Clawbacks among each other" is not based on the objections posed.  Again, we reiterate the fact that Plaintiffs did not identify the specific prescription drug transactions that are the subject of this RFA, such that it concerns transactions where "participants' payments … sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."  CHLIC also properly objected to the undefined term "allocate."  Thus, CHLIC will not revise or delete its objections to this RFA.

---

[1]   Where you state "[s]ame as above" in your Letter, we likewise refer you to CHLIC's positions as set forth earlier in this response.

Craig A. Raabe, Esq.
July 9, 2018
Page 8

### 10.    Supplemental RFP Responses dated May 25, 2018

**RFP No. 1**: This request sought documents "sufficient to show [CHLIC's] organizational structure and management hierarchy, Including the groups, divisions, and all employees involved with prescription drug benefits, prescription drug pricing, and pricing policies and procedures concerning the sale of prescription drugs." In response, CHLIC produced documents showing the organization of the Cigna Pharmacy Management business unit as it pertains to commercial retail pharmacy network operations. More recently, you and your co-counsel have inquired into other areas of CHLIC, and now claim that "Cigna cannot restrict organizational charts to its 'Cigna Pharmacy Management business unit.'" Please see our response to Item 2 above regarding other areas of CHLIC's business.

**RFP No. 2**: As to RFP No. 2, which asks for "[d]ocuments sufficient to identify each Participating Pharmacy, Including the length of time the pharmacy has been a Participating Pharmacy," CHLIC agreed to "produce, based on information available to it, prescription drug transaction records sufficient to identify the retail pharmacies implicated by" Plaintiffs' claims in this case for the period January 1, 2014 through the filing of the CAC. The prescription drug transaction data that CHLIC has agreed to produce in response to this RFP will identify all network pharmacies that engaged in prescription drug transactions for putative class members over that timeframe. In your Letter, however, you "demand the identification of all network pharmacies that engaged in prescription drug transactions involving Spread between October 1, 2010 and the present." That demand is no small feat, as no magical list of such pharmacies exists. As you know, there are multiple factors at play, at various different time periods, that relate to whether or not a prescription drug transaction generated "Spread," as Plaintiffs define that term. It appears that your concern relates to the time period. As noted above, CHLIC will not stand on its objections and limitation of the time frame to January 1, 2014 with respect to collecting and producing documents, and we are still in discussions regarding the relevant plan language and appropriate time period for prescription drug transaction data. Nevertheless, to the extent CHLIC can locate a list of network pharmacies, it will be produced as well. CHLIC also notes that Plaintiffs can obtain information regarding pharmacies participating in OptumRx's network, from OptumRx, which is also a defendant in this case.

**RFP No. 3**: This request sought CHLIC's agreements with PBMs. In response, CHLIC noted that it has already produced relevant portions of its agreement with OptumRx and Argus. Plaintiffs now "demand production of unredacted versions of all agreements with any PBM that Cigna used between October 1, 2010 and the present." As set forth in the redaction log prepared by CHLIC at Plaintiffs' request, CHLIC's agreements with OptumRx and Argus contain confidential, proprietary, and commercially sensitive business information that is not relevant to the claims or defenses in this action. As a result, that information has been redacted appropriately. The parties are still meeting-and-conferring on this issue, and we look forward to receiving further information from you identifying the particular Bates numbers for pages, or sections of agreements, that were redacted, and Plaintiffs' position as to why the redacted information is relevant, as requested in Lisa Veasman's email to Meghan Oliver earlier today.

**RFP No. 4**: This request seeks all documents or communications relating to "Spread" or "Clawbacks." CHLIC responded that it will conduct a reasonable and diligent search using search terms and other parameters to which the parties agree. CHLIC also directed Plaintiffs to the agreements with OptumRx and Argus, which it already produced, and agreed to produce other plan-related documents after the parties agree on a reasonable and appropriate protocol. In your Letter,

Craig A. Raabe, Esq.
July 9, 2018
Page 9

you demand production of the policy, procedure, and accounting documents discussed with Magistrate Garfinkel.  Please see CHLIC's response to Item 6 above.

**Request No. 5,6, 9-15 and 26-29**:  As to these RFPs, Plaintiffs contend that "Cigna's objections to 'undefined terms' are meritless," and/or "demand compliance with this request" beyond ESI discovery.  As to CHLIC's objections to the "undefined terms," CHLIC will not withdraw its objections for the same reasons explained above.  Similarly, CHLIC's objection to RFP No. 12 on the grounds of relevancy, because the RFP is not limited to media coverage that could pertain to CHLIC also, is appropriate.  Please explain how media coverage that does not pertain to CHLIC is relevant in this case.  Further, CHLIC does not understand the issue you raise as to RFP No. 10 and incorporating a response to RFP No. 4.  CHLIC's response to Request No. 10 does not incorporate its response to Request No. 4.  If you intended to refer to CHLIC's response to RFP No. 9, which asked for documents showing "the recipient(s) and amount of money or other consideration paid, sent, transferred, or credited relating to Clawbacks and Spread," CHLIC's incorporation of its response to RFP No. 4 is an appropriate response.  Indeed, that response identifies several ways in which CHLIC will comply with the request.  Finally, as to your demand for compliance, CHLIC notes that it has already agreed to comply.  Your statement that the requests are not "limited to ESI discovery" is also misplaced, as explained above in Item 6.

**RFP No. 7**:  This RFP sought "[d]ocuments sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated."  In response, CHLIC agreed to produce prescription drug transaction data, which is "sufficient to identify the amount of" what Plaintiffs call "Clawbacks" and "Spread."  Additionally, as noted above, we are still in discussions regarding the relevant plan language and appropriate time period for prescription drug transaction data.  Nonetheless, Plaintiffs contend that "[c]ompliance cannot be limited to prescription drug transaction data," and that "there are finance, accounting, budgeting or planning documents that reflect aggregation of Spread and Clawbacks.  Plaintiffs' assumptions about what documents exist are incorrect.  Based on the current investigation, there are no "finance, accounting, budgeting or planning documents" in CHLIC's custody, control, or possession that "identify the amount of all Clawbacks," as this RFP requests.  CHLIC's response, therefore, is appropriate and fully satisfies the RFP.

**RFP No. 8**:  This RFP requests "[d]ocuments sufficient to show the monthly revenues, profits, and other consideration received or credited from prescription drug premiums, Clawbacks, and Spread."  In response, CHLIC agreed to produce prescription drug transaction data.  As noted above, that data is "sufficient to show" amounts of what Plaintiffs call "Clawbacks" or "Spread," and we are still discussing the relevant plan language and appropriate time period for prescription drug transaction data.  CHLIC's response, therefore, is appropriate and fully satisfies the RFP as it pertains to "Clawbacks" or "Spread."  Plaintiffs, however, "demand compliance with this request, including the premium information requested."  As to the premium-related documents Plaintiffs request, CHLIC stands on its objection that this RFP is vague, ambiguous, lacks particularity, and requests information not relevant to the claims and defenses in this action.  It is still unclear what type of information Plaintiffs seek.  As discussed during our June 29 meet-and-confer call, please clarify so that we can further inquire as to whether any such documents exist.  Additionally, please explain how monthly revenues generated from prescription drug premiums, if any is measured at all, is relevant to Plaintiffs' claims.

**RFP No. 17**:  This request sought "[a]ll Documents supporting, providing a basis for, contradicting, or otherwise concerning or relating to any claim or defense asserted in the Action, Including both claims and defenses on the merits, as well as any defenses or opposition to class

Craig A. Raabe, Esq.
July 9, 2018
Page 10

certification." CHLIC again agreed to conduct a reasonable and diligent search using agreed upon search terms and parameters, which include any such documents. In your Letter, you state: "To be clear, Plaintiffs are requesting any information that Cigna intends to use in motion practice or at trial to support any proposition or defense." At this juncture, CHLIC does not know which information may or may not be used in motion practice or at trial, and, if it did, at this early stage in the litigation, such information or documents are protected attorney work-product. When it becomes appropriate to do so, CHLIC will either update its disclosures or provide additional information regarding such documents—i.e., in support of its opposition to Plaintiffs' motion for class certification, or on appropriate exhibit lists.

**RFP No. 18**: This RFP calls for CHLIC's document retention policies, and CHLIC agreed to produce them as it relates to its commercial retail pharmacy network operations. Some document retention policies are applicable across the company and therefore should satisfy your request and resolve the stated issues. You contend, again, that "Plaintiffs are entitled to" documents and information for other "areas: pharmacy network operations, finance/accounting, marketing, plan design, media/public relations, government relations, provider relations." We again direct you to the response to Item 2 above.

**RFP No. 20**: This RFP requests "[a]ll Documents concerning any insurance policies, indemnification agreements, hold harmless agreements, or by-laws under which [CHLIC] may claim coverage to satisfy part or all of any possible liabilities resulting from any of the claims asserted in the Action." As set forth in CHLIC's response, CHLIC is not aware of any insurance policy that would provide coverage in this case. Plaintiffs contend that "[t]his request encompasses more than insurance policies," and that "Cigna must produce any indemnification, hold harmless, or similar agreements." We are in discussions with CHLIC and Optum regarding what, if anything, is responsive and can be produced, and will get back to you.

Based on the above, we are hopeful that Plaintiffs will significantly narrow the issues set forth in your Letter. As to any remaining issues, we are available to further meet and confer with you after you have had an opportunity to consider the responses set forth herein.

Very truly yours,

Brian W. Shaffer

cc:    All Counsel of record

# EXHIBIT BX
# FILED UNDER SEAL

# EXHIBIT BY

**From:** Shaffer, Brian W. <brian.shaffer@morganlewis.com>
**Sent:** Monday, May 18, 2020 5:03 PM
**To:** Robert Izard <rizard@ikrlaw.com>; Christopher Barrett <cbarrett@ikrlaw.com>
**Cc:** Craig Raabe <craabe@ikrlaw.com>; William H. Narwold <bnarwold@motleyrice.com>; Meghan Oliver <moliver@motleyrice.com>; Farrell, Eleanor R. <eleanor.farrell@morganlewis.com>; Weddle, Lisa R. <lisa.weddle@morganlewis.com>; McDowell, Margaret M. <margaret.mcdowell@morganlewis.com>; Blumenfeld, Jeremy P. <jeremy.blumenfeld@morganlewis.com>
**Subject:** RE: Negron v. Cigna

Bob,

Thank you for your email.

We are working on supplemental interrogatory responses but it is taking a bit longer than anticipated due primarily to remote working issues stemming from COVID-19.  That said, we anticipate providing them no later than next Tuesday, along with our responses to Plaintiffs' Ninth Set of Interrogatories which are also due that same day.

Tyler Lester can be available on June 10 or 11 – let us know which day you prefer.

We will provide you the courtesy of an answer to your question regarding the transaction data and GHTR.  Our contact on that question is out of the office until Wednesday so we will have an answer for you then.

Finally, although you say you are "following up on [my] letter," I don't see any response regarding Plaintiffs' intention to change the class definitions as discussed  in your letter of last Monday, and my response of last Tuesday.  What is your position on that?

Thank you,

Brian

**Brian W. Shaffer**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5103 | Main: +1.215.963.5000 | Fax: +1.215.963.5001 | Mobile: +1.215.901.9252
brian.shaffer@morganlewis.com | www.morganlewis.com
Assistant: Marlene E. Mackason | +1.215.963.4930 | marlene.mackason@morganlewis.com

---

**From:** Robert Izard <rizard@ikrlaw.com>
**Sent:** Monday, May 18, 2020 11:14 AM
**To:** Shaffer, Brian W. <brian.shaffer@morganlewis.com>; Christopher Barrett <cbarrett@ikrlaw.com>
**Cc:** Craig Raabe <craabe@ikrlaw.com>; William H. Narwold <bnarwold@motleyrice.com>; Meghan Oliver <moliver@motleyrice.com>; Farrell, Eleanor R. <eleanor.farrell@morganlewis.com>; Weddle, Lisa R. <lisa.weddle@morganlewis.com>; McDowell, Margaret M. <margaret.mcdowell@morganlewis.com>
**Subject:** RE: Negron v. Cigna

[EXTERNAL EMAIL]
Brian
Following up on your letter
By my count, we were getting revised answers to interrogatories last Friday. Can you let us know the timing.
And, we are still waiting for a date for the depo of Tyler Lester – can we lock that in?
Finally, at his deposition Friday, Mr. Despard was unclear where the claims data Cigna produced came from. He thought it was from GHTR, but not sure.
Can you confirm that the data was from GHTR, and if not, can you tell us which source it came from
Thanks Bob

Robert A. Izard
Izard Kindall & Raabe, LLP
29 South Main St., St. 305
West Hartford, CT 06107
860.493.6295

# EXHIBIT BZ
# FILED UNDER SEAL

# EXHIBIT CA

# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

December 17, 2018

**VIA ELECTRONIC MAIL**

Robert A. Izard, Esq.
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

Re:     *In re Cigna Corporation PBM Litigation – No 3:16-CV-1702 (WWE)*

Dear Bob:

We write in response to your October 16, 2018 letter (the "Letter") in which you further inquire about questions/issues discussed at the parties' meet-and-confer, and also ask additional follow-up questions not previously raised.

### 1. Discovery Time-frame

To clarify your Letter, we understand that you are asking about the burden or technological issues faced by Cigna in collecting the historical "Your Payment" templates for Proclaim for the three-month time period from October 2010 to January 2011, as well as identifying any other difficulties associated with gathering other templates back to October 2010. These templates cannot be collected because the database from which the "Your Payments" templates are maintained and collected did not exist before 2011. Cigna also agreed to produce the "Schedule of Benefits" and "Covered Expenses" templates for Proclaim. As previously described, these templates – maintained in the same tool as the "Your Payments" templates – are only available back to January 2011.

### 2. Plan Provisions

Your Letter asks for the status of the "Schedule of Benefits" and "Covered Expenses" templates. CHLIC produced the "Schedule of Benefits" templates for Proclaim on November 6, 2018 (Production 14). As with the previous templates, we produced additional data with this production in an effort to provide guidance as to when these provisions for the Proclaim system were approved for use in plan booklets. We anticipate starting production of the "Covered Expenses" templates before the end of the year.

**Morgan, Lewis & Bockius LLP**

1701 Market Street
Philadelphia, PA  19103-2921
United States

☏ +1.215.963.5000
🖷 +1.215.963.5001

DB1/ 101144217.2

Robert A. Izard, Esq.
December 17, 2018
Page 2

**3.** **Ability to tie provisions to plans**

CHLIC previously explained that identifying the varying plan language for certain provisions through the use of the historical templates does not answer the question of which plan booklets include specific provisions and in which combination. In many cases, CHLIC's clients do not completely revise or update their plan booklets every year. Some clients, for example, refresh their plans on a 3-year cycle. That cycle varies from client to client. For example, one client could issue a new, updated plan in 2018 and then again in 2021, while a different client could issue a new, updated plan in 2017 and 2020. There is no set schedule that applies to all of the clients for which CHLIC provides administrative services.

CHLIC's systems do not track which version of a particular plan booklet section ultimately ends up in a plan booklet for a particular CHLIC client. We have not identified any system capabilities that can identify or pinpoint which CHLIC clients had particular benefit language in their plan booklets during particular time periods. It appears that a manual review of plan booklets would be required to determine such information. We therefore propose continuing to confer regarding the collection and production of additional plan documents.

**4.** **Templates**

We are gathering any procedures used during the creation of the plan booklet process and anticipate producing these documents, to the extent not otherwise produced in CHLIC's ESI document productions, in the next several weeks.

**5.** **Facets**

You asked why "Facets" is mentioned in the Proclaim "Your Payments" provision templates. Any green instruction is a Facets instruction, and those are included when there is a difference between what is necessary for Proclaim where those instructions are in blue. Additionally, we are looking into your inquiries regarding the approximate percentage of plans with prescription drug benefits administered or insured by CHLIC on Facets.

**6.** **Curols' Proclaim plans**

The Curols' plan for Island Operating Company was moved from the Facets to Proclaim platform. CHLIC will produce additional plans for the Curols if they exist and are within CHLIC's possession, custody, and control.

**7.** **Volume of plans**

Your Letter stated that you were reviewing the plans that CHLIC identified as being client-prepared to determine whether you intend to keep such plans in the proposed class. Given Plaintiffs' stated intention of December 4, 2018 to include all client-generated plans in the proposed class, and requested production of all such plans, we do not see value in expending further resources to attempt to more specifically identify the number of plans in various general descriptive "buckets." Moreover, we cannot respond to your specific questions in your December 3, 2018 email about client-prepared documents in the abstract. As stated in our December 7, 2018 email, please provide us with reference to a particular client or plan document and we can see if we can provide a simple answer to the inquiry. As for the request that we produce

Robert A. Izard, Esq.
December 17, 2018
Page 3

additional client-generated plans, we are looking into the burden and feasibility of doing so, and will be in touch to discuss any issues or concerns that we identify.

**8. <u>Terms</u>**

Your Letter asks whether there are any "claims logics" other than Copay G and Copay K that were used during the relevant time period.  Copay G and Copay K are two pharmacy transaction logics used by Argus to calculate participant cost-share for retail pharmacy transactions, but other "claims logic" was available.

Additionally, with respect to Plaintiffs' request for definitions for terms and acronyms used in the "Your Payments" Proclaim templates, CHLIC responds as follows:

- "NGF" means non-grandfathered
- "ET" means extraterritorial
- "EGWP" means Employer Group Waiver Plan
- "MET" means Multiple Employer Trust
- ANE means ASO Non-ERISA
- Q-Document (Seton OOA) means QANI (QalCare Alliance Networks, Inc.) documents (Seton [DSA = Delivery System Alliance] Out-of-Area)

**9. <u>Organization Charts & Additional Custodians</u>**

As indicated in our September 25, 2018 Letter, rather than gather organizational charts for business units outside of Cigna Pharmacy Management ("CPM"), we concluded that it would be more productive for CHLIC to provide names of individuals who have roles related to pharmacy benefits and the issues in this litigation based on the business functions that you have identified. Below are the additional custodians CHLIC has identified.

| Function/Business Unit | Potential Custodians |
|---|---|
| Finance | None beyond those already disclosed. |
| Pharmacy Benefits | Claudia Skarvinko |
| Pharmacy Claims | None beyond those already disclosed. |
| Contract Drafting | We are unclear what is intended by contract drafting, but we have interpreted this to mean ASO Agreements or Certificates of Coverage.  In any event, no custodians to identify. |
| Plan Design | Claudia Skarvinko<br>Karen Montanaro |
| Plan Administration | We are unclear what is intended by plan administration as CHLIC is not a plan administrator.  To the extent Plaintiffs intended to refer to claims administration, there are no additional custodians to identify. |
| Media / Public Relations | Karen Eldred |
| Lobbying | None who work with Cigna Pharmacy Management. |

Robert A. Izard, Esq.
December 17, 2018
Page 4

| Marketing/Pharmacy/Provider Relations | Claire Burchill |
|---|---|
| Accounting/Bookkeeping | We interpret this to mean underwriting and identify Chalon Carpenter. |
| Government Affairs | None who work with Cigna Pharmacy Management |
| Compliance / Government Affairs | Karen Montanaro<br>Claire Burchill<br>Debra Nelson<br>Paula Easterling |
| Sales | None beyond those already disclosed. |

Unlike the custodians within CPM or who solely work for CPM, these additional custodians work in business units where they support units other than CPM.  Not all of their work relates to Cigna's pharmacy business, let alone commercial retail network pharmacies or issues involving the claims in this case.  For that reason, and given the overbroad search terms previously requested by Plaintiffs, CHLIC will only agree to add these custodians if Plaintiffs agree that the searches to be run against their collected ESI and documents be limited to 10 searches that are targeted to find responsive documents.

As for any historical organizational charts for those already produced, they are archived and it is proving difficult to obtain them.  To date, CHLIC has produced thousands of documents for custodians who have been part of Cigna Pharmacy Management during the relevant time period.  Any persons who were involved with the issues in this case, but who are not on the previously produced organizational charts, are identifiable from the documents produced to date, and those that will be produced.  While CHLIC believes it has already identified the key custodians with relevant documents relating to the issues in this case, to the extent that there are additional custodians you contend should be added, please send us a list for consideration, and the reasons why you believe adding each additional custodian is necessary.

**10. Accounting related to Catamaran contract**

Your letter attempts to clarify the request by seeking – with reference to the Second Amendment to the Catamaran Agreement – documents showing the accounting necessary to calculate amounts that would be sent or credited to Cigna by either Optum or Argus when a participant's cost share exceeds the amount that pharmacy was actually paid.   CHLIC previously explained that specific documents showing an accounting of "Spread" (as Plaintiffs define it) do not exist.  CHLIC nevertheless agreed to conduct a reasonable and diligent search using agreed upon search terms and parameters, and produce responsive, non-privileged documents.  This production is ongoing.

**11. Prescription transaction data**

Plaintiffs acknowledge that CHLIC has produced more than fifty pharmacy transaction data fields but fail to explain why that data is insufficient or what additional fields you believe are necessary.  You indicated at the parties' July 2018 meeting that your expert believes that there are approximately 200 "standard format" codes for transmitting pharmacy transaction data.  As stated in our September 25, 2018 Letter, CHLIC remains willing to consider a request from Plaintiffs for specific additional data fields and to schedule a call involving the parties' experts to discuss.

***

Robert A. Izard, Esq.
December 17, 2018
Page 5


        We are available to further meet and confer with you after you have had an opportunity to consider the responses set forth herein and the documents forthcoming.


Very truly yours,

/s Brian W. Shaffer

Brian W. Shaffer


cc:     All counsel of record

# EXHIBIT CB

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | Civil No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | February 27, 2020 |
| Defendants. | |

## OBJECTIONS AND RESPONSES OF DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY TO PLAINTIFFS' SEVENTH SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the District of Connecticut, Defendant Cigna Health and Life Insurance Company ("CHLIC"), by and through its undersigned counsel, hereby provides its objections and responses to Interrogatory No. 1 of Plaintiffs' Seventh Set of Interrogatories (the "Interrogatories").[1] CHLIC reserves the right to supplement or amend its objections and these responses (the "Responses") as may be necessary or appropriate in the future in accordance with Rule 26 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

1.     The Responses are made solely for the purpose of the Action and are not to be used in connection with any other action.

---

[1] Cigna Corporation has been dismissed from the Action, so these Responses are made by and on behalf of CHLIC only.

2.     The Responses reflect CHLIC's knowledge, information, and belief as of this date. CHLIC may engage in further investigation, discovery, and analysis, which may lead to changes in CHLIC's Responses herein. Such investigation and discovery are continuing, and CHLIC specifically reserves the right to supplement its Responses as necessary.

3.     No Response made herein, or lack thereof, is an admission as to the existence or non-existence of any documents, information, or the truth of any "facts" set forth or assumed in any Interrogatory and/or Request.

4.     CHLIC will make reasonable efforts to respond to every Interrogatory, to the extent the Interrogatory has not been objected to, as CHLIC understands and interprets the Interrogatory. In the event that Plaintiffs subsequently assert an interpretation of an Interrogatory that differs from that of CHLIC, CHLIC reserves the right to amend and/or supplement its Response, but undertakes no obligation to do so.

5.     In responding to Plaintiffs' Interrogatories, CHLIC does not waive, and hereby expressly reserves, (a) its right to assert any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any information provided in response to Plaintiffs' Interrogatories; (b) its right to object on any ground to the use of the information provided in response to Plaintiffs' Interrogatories at any hearing, trial, or other point during the litigation; and (c) its right to object on any ground at any time to a demand for further responses to Plaintiffs' Interrogatories. The objections set forth by CHLIC are without prejudice to CHLIC's right to assert additional grounds for objection, or otherwise amend its objections, should CHLIC discover additional grounds for objections.

## OBJECTIONS AND RESPONSES TO
## PLAINTIFFS' SEVENTH SET OF INTERROGATORIES

**Interrogatory No. 1:** For each item listed in the three DST reports listing documents containing the phrases "exceed the amount paid by the plan to the pharmacy," "incurs expenses for charges made by a Pharmacy," and "required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies" that has a "T/FI" funding arrangement: disclose whether or not the respective plan is subject to the Employee Retirement Income Security Act of 1974.

**RESPONSE:**

CHLIC reasserts and incorporates its Preliminary Statement as set forth above. CHLIC objects to this Interrogatory because Plaintiffs have already exceeded the 40 interrogatories permitted by the Amended Stipulated Joint Case Management Plan [Docket No. 192] entered by the Court. CHLIC further objects to this Interrogatory on the ground that it is unduly burdensome and seeks information that is not proportional to the needs of the case in the form and format requested by Plaintiffs.

Subject to and without waiving these objections, CHLIC responds as follows: After reasonable investigation, CHLIC does not maintain the information requested in this Interrogatory in the ordinary course of business for tens of thousands of documents in the form and format requested by Plaintiffs. Further, to the extent that the information sought by this Interrogatory may be able to be ascertained from the prescription drug transaction data and plan-related documents that CHLIC has produced in this Action, the burden of locating and identifying such information is the same for Plaintiffs as CHLIC, and CHLIC directs Plaintiffs to those data and documents pursuant to Federal Rule of Civil Procedure 33(d). By way of further response, CHLIC maintains data that identifies whether a prescription drug transaction under a participant's plan is subject to the Employee Retirement Income Security Act of 1974. CHLIC will produce this supplemental file to use in addition to the aforementioned documents.

3

Dated:  February 27, 2020

*/s/ Eleanor R. Farrell*

Michael D. Blanchard (ct25891)
Morgan, Lewis & Bockius LLP
One State Street
Hartford, CT  06103
Telephone:  +1.860.240.2731
Facsimile:  +1.860.240.2800
michael.blanchard@morganlewis.com

Joseph J. Costello (*pro hac vice*)
Brian W. Shaffer (*pro hac vice*)
Eleanor R. Farrell (*pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  +1.215.963.5000
Facsimile: +1.215.963.5001
joseph.costello@morganlewis.com
brian.shaffer@morganlewis.com
eleanor.farrell@morganlewis.com

*Attorneys for Defendant Cigna Health
and Life Insurance Company*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 27, 2020, a copy of the foregoing Objections and

Responses of Defendant Cigna Health and Life Insurance Company to Plaintiffs' Seventh Set of

Interrogatories was served via electronic mail on all counsel of record.

*/s/ Eleanor R. Farrell*
Eleanor R. Farrell

**VERIFICATION FORTHCOMING**

# EXHIBIT CC
# FILED UNDER SEAL

# EXHIBIT CD
# FILED UNDER SEAL

# EXHIBIT CE
# FILED UNDER SEAL

# EXHIBIT CF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

KIMBERLY A. NEGRON, Individually and
on Behalf of All Others Similarly Situated,
~~DANIEL PERRY, Individually and on Behalf
of All Others Similarly Situated, COURTNEY
GALLAGHER, Individually and on Behalf of
All Others Similarly Situated, NINA CUROL,
Individually and on Behalf of All Others
Similarly Situated, and ROGER CUROL,
Individually and on Behalf of All Others
Similarly Situated,~~et al.,

Civil Action No. 3:16-cv-01702-
~~WWE~~JAM

**~~DEFENDANTS CIGNA CORPORATION AND~~DEFENDANT CIGNA HEALTH AND
LIFE  INSURANCE COMPANY'S  SUPPLEMENTAL RULE 26(a)(1) DISCLOSURES**

~~Defendants Cigna Corporation ("Cigna") and~~Defendant Cigna Health and Life Insurance
Company ("CHLIC~~") (collectively, "Defendants~~"), by and through ~~their~~its counsel, hereby
~~provide these~~supplements its Rule 26(a)(1) Disclosures ("Initial Disclosures~~") based on
information learned in discovery in this matter ("Supplemental Disclosures~~").

**I.      Preliminary Statement.**

~~These Initial~~CHLIC bases these Supplemental Disclosures ~~are based~~ on the information
now reasonably available to ~~Defendants. Because Defendants'~~it after investigation ~~and,~~ review
of Plaintiffs' current allegations ~~are ongoing, Defendants reserve their~~and discovery to date in
this matter. CHLIC reserves its right to amend, withdraw, further supplement, or update these
~~Initial~~Supplemental Disclosures ~~at a later date~~pursuant to Rule 26(e), and to rely on information
not identified herein but ~~subsequently~~ produced in discovery, or otherwise disclosed by other
parties, or third parties, in the lawsuit, including former defendant OptumRx, Inc. Thus, by
making these ~~Initial~~Supplemental Disclosures, ~~Defendants do~~CHLIC does not represent that ~~they
have~~it has identified every witness, document, or tangible thing ~~they~~CHLIC may

1

use to support ~~their~~its claims or defenses in this action; rather, these disclosures represent
a good-faith effort to identify information that ~~Defendants~~CHLIC now reasonably ~~believe
they~~believes it may use to support ~~their~~its claims or defenses.

1

**II.      Required  Disclosure  Rule  26(a)(1)(A)(i):** The name and, if known, the address and
telephone number of each individual likely to have discoverable information—along with

the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

**Response:**

1. **Plaintiffs Kimberly Negron, Daniel Perry, Courtney Gallagher, Nina Curol, and Roger Curol**

   These individuals are likely have information relevant to the claims and defenses at issue in the litigation, including but not limited to facts and documents concerning their prescription drug claims, their alleged damages, and their role and responsibilities as putative class representatives.

2. **Cigna Pharmacy Management Employees**

   ___The following people likely have discoverable information concerning CHLIC's commercial retail pharmacy network operations. This information includes, among other things, how CHLIC provides commercial retail pharmacy benefits through a contracted network of pharmacies.

   - James Sheninger
   - Edward Stacey
   - Maryanne Bourdier;

   - Other CHLIC custodians from whose files CHLIC produced documents in this matter, including the following:
     - Todd Arciszewski
     - Claire Burchill
     - Chris Bradbury
     - Julie Burns-McAvoy
     - Stephanie Byrne
     - Chalon Carpenter
     - Millicent Collins
     - Stephen Courtman
     - Enkeleda Duka
     - Paula Easterling
     - Karen Eldred
     - Christopher Hocevar
     - Rob Johnson
     - Deborah Kronberg
     - Tyler Lester
     - Matt Manders
     - Tom McCarthy

2

- ■   Jason Meade
- ■   Karen Montanaro
- ■   Deborah Nelson
- ■   Mary Payeur
- ■   Catherine Riley
- ■   Paul Schaeffer
- ■   Claudia Skarvinko
- ■   Edmund Skworonek
- ■   John Smith
- ■   Ray Smithberger
- ■   Kathleen Stevens
- ■   Karen Vancour
- ■   Madras Whitfield
- ■   Daniel Whitnah;

- o   Other CHLIC witnesses deposed in this matter, in a fact witness or corporate representative capacity, including the following:
- ■   Robin Boyce
- ■   David Cordani
- ■   Kevin Cummings
- ■   David Despard
- ■   Damon Hellandbrand
- ■   Wil Parsell
- ■   Justin Pitt
- ■   Paul Urick
- ■   Michelle Vancura;

- o   Other CHLIC current and former employees identified on the organizational charts produced by CHLIC in this matter and as described in response to CHLIC's Responses to Plaintiffs' Second Set of Interrogatories, No. 1, including the following:
- ■   John Carlson
- ■   Rich Cunningham
- ■   Tamara Marshall
- ■   Craig Steel.

- The following people likely have discoverable information concerning CHLIC's business relationship with Catamaran, Inc. and its successor OptumRx, Inc. relating to commercial retail pharmacy network operations. This information includes the relevant contract terms, how the parties perform their day-to-day operations and contractual obligations, and how payments are determined and made between CHLIC and OptumRx.

- o  Todd Arciszewski;
- o  Daniel Whitnah;
- o  ~~Enkeleda Duka~~

- o ~~■          Deborah Kronberg~~
  - o   Enkeleda Duka;

3

  - o   Deborah Kronberg;

  - o   Other CHLIC custodians from whose files CHLIC produced documents in this matter, including the following:
    - ■   Maryanne Bourdier
    - ■   Chris Bradbury
    - ■   Claire Burchill
    - ■   Julie Burns-McAvoy
    - ■   Stephanie Byrne
    - ■   Chalon Carpenter
    - ■   Millicent Collins
    - ■   Stephen Courtman
    - ■   Paula Easterling
    - ■   Karen Eldred
    - ■   Christopher Hocevar
    - ■   Rob Johnson
    - ■   Tyler Lester
    - ■   Matt Manders
    - ■   Tom McCarthy
    - ■   Jason Meade
    - ■   Karen Montanaro
    - ■   Deborah Nelson
    - ■   Mary Payeur
    - ■   Catherine Riley
    - ■   Paul Schaeffer
    - ■   James Sheninger
    - ■   Claudia Skarvinko
    - ■   Edmund Skworonek
    - ■   John Smith
    - ■   Ray Smithberger
    - ■   Edward Stacey
    - ■   Kathleen Stevens
    - ■   Karen Vancour
    - ■   Madras Whitfield;

  - o   Other CHLIC Witnesses deposed in this matter, in a fact witness or corporate representative capacity, including the following:
    - ■   Robin Boyce
    - ■   David Cordani

- ■  Kevin Cummings
- ■  David Despard
- ■  Damon Hellandbrand
- ■  Wil Parsell
- ■  Justin Pitt
- ■  Paul Urick
- ■  Michelle Vancura;

4

o  Catamaran, Inc./OptumRx, Inc. current and former employees identified in documents produced by CHLIC or OptumRx, Inc. in this matter, including a corporate representative of Catamaran, Inc./Optum Rx, Inc. to address this subject matter (including the content of documents produced by OptumRx, Inc.; the allegations in the Second Amended Consolidated Complaint; OptumRx, Inc.'s Answer in this case; and the content of communications made by Catamaran, Inc./OptumRx, Inc.).

- ◆  ___The following people likely have discoverable information concerning how commercial retail pharmacy network claims are adjudicated and paid, including CHLIC's relationship with Argus and the functions that Argus provides:

  - o  Karen Vancour
  - o  Millicent Collins;

  - o  Other CHLIC custodians from whose files CHLIC produced documents in this matter, including the following:
  - ■  Todd Arciszewski
  - ■  Maryanne Bourdier
  - ■  Chris Bradbury
  - ■  Claire Burchill
  - ■  Julie Burns-McAvoy
  - ■  Stephanie Byrne
  - ■  Chalon Carpenter
  - ■  Stephen Courtman
  - ■  Enkeleda Duka
  - ■  Paula Easterling
  - ■  Karen Eldred
  - ■  Christopher Hocevar
  - ■  Rob Johnson
  - ■  Deborah Kronberg
  - ■  Tyler Lester
  - ■  Matt Manders

- Tom McCarthy
- Jason Meade
- Karen Montanaro
- Deborah Nelson
- Mary Payeur
- Catherine Riley
- Paul Schaeffer
- James Sheninger
- Claudia Skarvinko
- Edmund Skworonek
- John Smith

5

- Ray Smithberger
- Edward Stacey
- Kathleen Stevens
- Madras Whitfield
- Daniel Whitnah;

o   Other CHLIC Witnesses deposed in this matter, in a fact witness or corporate representative capacity, including the following:
- Robin Boyce
- David Cordani
- Kevin Cummings
- David Despard
- Damon Hellandbrand
- Wil Parsell
- Justin Pitt
- Paul Urick
- Michelle Vancura;

o   Other CHLIC current and former employees identified on the organizational charts produced by CHLIC in this matter and as described in response to CHLIC's Responses to Plaintiffs' Second Set of Interrogatories, No. 1, including the following:
- John Carlson
- Rich Cunningham
- Tamara Marshall
- Craig Steel;

o   Argus current and former employees identified in documents produced by CHLIC, OptumRx, Inc. or Argus in this matter, or

deposed in this matter, including Michelle Emanuel-Johnson.

o ■   ~~Karen Vancour~~
    o ■   ~~Millicent Collins~~

• The following people likely have discoverable information concerning the various types of commercial retail network pharmacy benefits that CHLIC offers, including pricing those benefits for self-funded and insured clients:

    o ■   ~~Tyler Lester~~
    o ■   ~~Stephanie Byrne~~

    o   Tyler Lester
    o   Stephanie Byrne;

    o   Other CHLIC custodians from whose files CHLIC produced documents in this matter, including the following:
    ■   Todd Arciszewski
    ■   Maryanne Bourdier
    ■   Chris Bradbury
    ■   Claire Burchill
    ■   Julie Burns-McAvoy
    ■   Chalon Carpenter

6

    ■   Millicent Collins
    ■   Stephen Courtman
    ■   Enkeleda Duka
    ■   Paula Easterling
    ■   Karen Eldred
    ■   Christopher Hocevar
    ■   Rob Johnson
    ■   Deborah Kronberg
    ■   Matt Manders
    ■   Tom McCarthy
    ■   Jason Meade
    ■   Karen Montanaro
    ■   Deborah Nelson
    ■   Mary Payeur
    ■   Catherine Riley
    ■   Paul Schaeffer
    ■   Jim Sheninger
    ■   Claudia Skarvinko
    ■   Edmund Skworonek

- John Smith
- Ray Smithberger
- Edward Stacey
- Kathleen Stevens
- Karen Vancour
- Madras Whitfield
- Daniel Whitnah;

o   Other CHLIC Witnesses deposed in this matter, in a fact witness or corporate representative capacity, including the following:
- Robin Boyce
- David Cordani
- Kevin Cummings
- David Despard
- Damon Hellandbrand
- Wil Parsell
- Justin Pitt
- Paul Urick
- Michelle Vancura;

o   Other CHLIC current and former employees identified on the organizational charts produced by CHLIC in this matter and as described in response to CHLIC's Responses to Plaintiffs' Second Set of Interrogatories, No. 1, including the following:
- John Carlson
- Rich Cunningham
- Tamara Marshall

7

- Craig Steel;

o   Representatives of third parties subpoenaed by CHLIC or Plaintiffs to address this subject matter, including the documents produced by the entity in this matter, including the following brokers and consultants:
- Aon Consulting, Inc.
- Arthur J. Gallagher & Co.
- CBIZ Benefits and Insurance Inc.
- Lockton Companies, LLC and Lockton Benefit Group
- Marsh & McLennan Agency LLC
- Mercer Health & Benefits, LLC and Mercer (US) Inc.
- Strategic Benefit Advisors
- USI Insurance Services

- ■ Willis Towers Watson US LLC;

- o Representatives of third parties subpoenaed by CHLIC or Plaintiffs to address this subject matter, including the documents produced by the entity in this matter, including the following pharmacy associations:
- ■ American Associated Pharmacies
- ■ Arete Pharmacy Network
- ■ National Community Pharmacists Association;

- o Other CHLIC current and former employees to address this subject matter who submitted declarations in connection with CHLIC's Opposition to Plaintiffs' Motion for Class Certification, including the following:
- ■ Chalon Carpenter
- ■ David Kasper
- ■ Christopher Mandy;

- o Representatives of plan sponsors from whom Plaintiffs received pharmacy benefits, to address this subject matter, including the following:
- ■ Cobb County, Georgia
- ■ Hampton Resources, Inc.
- ■ Island Operating Co.
- ■ Putnam Investments
- ■ Sivantos, Inc.;

- o Representatives of plan sponsors from whom alleged absent class members or others received pharmacy benefits, to address this subject matter, including the following identified on DST reports and/or in documents produced by CHLIC in this matter:
- ■ Benefit Administrative Systems, LLC (BAS)
- ■ Davita Healthcare Partners, Inc. and/or Davita Kidney Care
- ■ Estes Express Lines

8

- ■ General Motors Financial Company, Inc.
- ■ O'Reilly Automotive
- ■ Saint-Gobain Corporation
- ■ Wyndham Worldwide Corporation;

o Other CHLIC current and former employees identified in documents produced by CHLIC and with knowledge of plan sponsors from whom Plaintiffs, absent class members or others received pharmacy benefits, to address this subject matter, including the following:

■ Jennifer Bak
■ Carolyn Battista
■ Eric Carlson
■ Kelly Dill
■ Melissa Macri
■ Mark McPhail
■ Emad Mikail
■ Anthony Nowacki
■ Kim Richards.

**3.      Representatives of OptumRx, Inc.**

Representatives of OptumRx, Inc. likely have discoverable information concerning OptumRx, Inc.'s contractual relationships with retail network pharmacies, including current and former employees identified in documents produced by CHLIC or OptumRx, Inc. in this matter.

**4.      All Individuals Identified in Any Other Party's Initial or Supplemental Disclosures.**

Individuals identified in other party's initial or supplemental disclosures may have information relevant to the claims and defenses at issue in the litigation.

The current and former employees of ~~Defendants~~CHLIC identified above can be contacted through the undersigned counsel. ~~Defendants reserve~~Other witnesses can be contacted through the company with whom they are affiliated, or counsel for that company. CHLIC reserves the right to supplement the list of individuals and related information above ~~as their investigation into the facts of this case progresses~~.

**III. Required Disclosure Rule 26(a)(1)(A)(ii):** A copy of—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.

9

**Response:**

1.   Plaintiffs' prescription drug claims history;

2.   Plan documents and plan communications governing Plaintiffs' benefits;

3

3. Agreements between and among Defendants, the plan sponsors for Plaintiffs' Plans, and Argus, relating to Plaintiffs' prescription drug claims and/or CHLIC's commercial retail pharmacy network operations;

4. Communications between (i) Plaintiffs; (ii) Defendants; (iii) plan sponsors; (iv) brokers and/or consultants; and/or (iv) pharmacies from which Plaintiffs obtained their prescription drugs, relating to Plaintiffs' and absent class members prescription drug claims and/or CHLIC's commercial retail pharmacy network operations; and

5. Payments related to Plaintiffs' prescription drugs claims.;

6. Defendants reserveDocuments produced by CHLIC in this matter;

7. Documents produced by Plaintiffs in this matter;

8. Documents produced by OptumRx, Inc. in this matter; and

9. Documents produced by any third party subpoenaed in this matter.

CHLIC reserves the right to further supplement the list of documents above should the Court deny their Motion to Dismiss andand to rely on any

documents identified in any other party's initial or supplemental disclosures.

**IV.     Required Disclosure Rule 26(a)(1)(A)(iii):** A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

**Response:** Defendants doCHLIC does not seek any damages from Plaintiffs at this time, but reservereserves the right to seek attorneys' fees and costs incurred in defending against Plaintiffs' claims.

**V.      Required Disclosure Rule 26(a)(1)(A)(iv):** For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**Response:** Defendants are not aware of any insuranceDuring the period from October 1, 2016 to October 1, 2017, CHLIC was insured under a primary Managed Care Errors and Omissions policy issued by Ace American Insurance Company, as well as various excess liability policies that would provide coverage in this case.follow the 10

terms and conditions of the primary policy. The policies are available for inspection and copying.

\*                          \*                \*      \*

~~Defendants~~ ~~reserve~~ CHLIC reserves the right to further supplement these ~~Initial~~Supplemental Disclosures and to rely on witnesses and documents not identified herein but subsequently identified in any further discovery or disclosures before trial.

4

# EXHIBIT CG
# FILED UNDER SEAL

# EXHIBIT CH

Page 1

1

2     UNITED STATES DISTRICT COURT
      DISTRICT OF CONNECTICUT
3     Case No. 16-cv-1702
      - - - - - - - - - - - - - - - - - -x
4     KIMBERLY A. NEGRON, Individually    :
      and on Behalf of All Others         :
5     Similarly Situated,                 :
                                          :
6                        Plaintiffs, :
                                          :
7              - vs -                     :
                                          :
8     CIGNA CORPORATION and CIGNA HEALTH :
      AND LIFE INSURANCE COMPANY, et al.,:
9                                         :
                         Defendants. :
10    - - - - - - - - - - - - - - - - - -x
11
12                             August 12, 2020
                               9:23 a.m.
13                             9 Cimmeron City Drive
                               Cape Neddick, Maine
14
15
16
17
18
19
20            VIDEOTAPED VIRTUAL DEPOSITION UPON
21    ORAL EXAMINATION OF STEPHANIE BYRNE, held at the
22    above-mentioned time and place, before Randi
23    Friedman, a Registered Professional Reporter,
24    within and for the State of New York.
25

```
                                                Page 102
 1                        S. Byrne
 2          the way the financial systems work and what
 3          they call credits and debits is foreign to
 4          me when they try to explain them to me.
 5     BY MR. RAABE:
 6          Q    Do you know whether the negative
 7     reimbursements that we talked about, called
 8     clawbacks, do you know whether they are booked as
 9     income to Cigna?
10                    MR. SHAFFER:  Objection to form.
11          Beyond the scope.
12                    THE WITNESS:  I would not -- I
13          would assume that they're not booked as
14          income.  Premium isn't booked as income, you
15          know.  Interest on reserves isn't booked as
16          income.  It's booked as revenue.  Profit is
17          then generated based on revenue, less
18          claims, as well as administrative expenses.
19          In a nutshell, I mean, there's a lot of
20          complexities to it, I'm sure.
21     BY MR. RAABE:
22          Q    Sure.  So the revenue -- clawback
23     revenue comes in and it is calculated with
24     expenses and at some point you end up at the
25     income level; right?
```

Page 103

1                   S. Byrne
2                   MR. SHAFFER:  Objection to form.
3          Misstates the testimony.
4                   You can answer.
5                   THE WITNESS:  Yeah, it's a very
6          comprehensive process to complete what we
7          would call the all-source gains, is
8          ultimately what our profit is.  So you have
9          to take into account all sources of revenue,
10         all sources of expenses, taxes, sales tax on
11         pharmacy, all claims paid out.  And it
12         depends on the point in time you're doing it
13         and on what basis, on a reserved basis or on
14         a paid basis.  But essentially all sources
15         of revenue are taken into account versus
16         expenses and claims to determine how it's
17         all paid.
18                  MR. RAABE:  Sure.
19                  I have no further questions.
20         Thank you for your time.
21                  MR. SHAFFER:  I don't have any
22         questions for Ms. Byrne at this time.
23                  Craig, if it's okay with you, we
24         want to just attach to the transcript as an
25         exhibit, the email that identified Ms. Byrne

# EXHIBIT CI

Page 1

1
2          IN THE UNITED STATES DISTRICT COURT
3            FOR THE DISTRICT OF CONNECTICUT
4
5     KIMBERLY A. NEGRON,          )
      Individually and on          )
6     Behalf of All Others         )
      Similarly Situated,          )CIVIL ACTION NO.
7     DANIEL PERRY,                )3:16-cv-1702
      Individually and on          )(JAM)
8     Behalf of All Others         )
      Similarly Situated,          )
9     COURTNEY GALLAGHER,          )
      Individually and on          )
10    Behalf of All Others         )REMOTE
      Similarly Situated,          )VIDEOTAPED
11    NINA CUROL,                  )DEPOSITION OF
      Individually and on          )DR. GARY OWENS
12    Behalf of All Others         )
      Similarly Situated,          )
13    ROGER CUROL,                 )
      Individually and on          )
14    Behalf of All Others         )
      Similarly Situated, and      )
15    BILLY RAY BLOCKER,           )
      Individually and on          )
16    Behalf of All Others         )
      Similarly Situated,          )
17               Plaintiffs,       )
                                   )
18           vs.                   )
                                   )
19    CIGNA CORPORATION,           )
      CIGNA HEALTH AND LIFE        )
20    INSURANCE COMPANY, and       )
      OPTUMRX, INC.,               )
21               Defendants.       )
      _____     )
22
23            Wednesday, July 29, 2020
24
      Reported By:
25    CATHI IRISH, RPR, CRR, CLVS, CCR

```
                                          Page 33
 1                    O W E N S
 2    plan.
 3         Q.   Do you consider Cigna to be a
 4    health plan?
 5         A.   Yes, they are.
 6         Q.   Are you offering any opinions in
 7    this matter?
 8         A.   In the portion on assignment in
 9    my declaration, I am offering opinions on
10    how the pharmacy benefit is selected by
11    employers, the complexity of managing the
12    pharmacy benefit and how benefit
13    consultants interact with employer plan
14    sponsors and the pharmacy benefit.
15         Q.   And are your opinions based
16    solely on your experience?
17         A.   Yes, they are based on my
18    experience.
19         Q.   Did you as part of your work in
20    this case, did you reach out to any
21    sponsors with Cigna health plans?
22         A.   I did not.
23         Q.   Let me rephrase that.
24              As part of your work in this
25    case, did you reach out to any sponsors
```

# EXHIBIT CJ

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY and OPTUMRX, INC.,<br><br>                              Defendants. | No. 16-cv-1702 (JAM) (Consolidated)<br><br><br><br><br><br>October 13, 2020 |

## DECLARATION OF LAUNCE B. MUSTOE, JR., R.Ph.

I, Launce B. Mustoe, Jr., R.Ph., declare under penalty of perjury:

1.     I have been retained by Plaintiffs in this action to, among other things, analyze the data produced by defendant Cigna Health and Life Insurance Company ("Cigna") in this action and to estimate the total aggregate Clawbacks taken by Cigna in connection with prescription drug purchases by Class members.

2.     In connection with responding to certain assertions and arguments made by Cigna in its *Surreply in Opposition to Plaintiffs' Motion for Class Certification* (ECF 343) ("Cigna's Surreply"), Plaintiffs' counsel has asked me to provide the following observations of the data produced by Cigna, including the transaction data produced by Cigna (the "Prescription Drug Transaction Data").

1

3.      In its Surreply, Cigna discusses ██████████████, which is an Open Access Plus Medical Benefits Plan for sponsor ████████████████ According to ████████ the account number is ██████ and the document number (also known as "CN number") is ASO9.

4.      According to the revised DST 2 Report provided by Cigna, ████████ has an effective date of 1-1-2015, an Account Number of ██████, a CN number of ASO9, an arrangement of ASO ERISA, and a Benefit Option Code of OAPE.

5.      The Prescription Drug Transaction Data associated with the ███████████ — which is identified using the account number, the CN Number, the Benefit Option Code, and date — establishes that when Cigna adjudicated Tier 1 prescription drug claims for this plan, it did not consider minimum copayment provisions of the plan.

6.      ██████████ has three prescription drug tiers. According to the plan, Retail Prescription Drug Tier 1 purchases are generic drugs "subject to a minimum [copayment] of $6."

7.      According to the Prescription Drug Transaction Data, for the calendar year 2015, Account number ████████, Ben Op Code OAPE, there were approximately 824 Tier 1 claims where the copayment was greater than $.01 and *less* than $6 of which 625 were subject to Clawbacks. In these transactions, *every* one of the less-than-$6 copayments except one was equal to the Client Rate.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of October 2020.

**Launce B. Mustoe, Jr. R.Ph.**
Strategic Pharmacy Solutions LLC
3802 Kinsey Ct.
Columbia, MO 65203

2

Work:  (573) 446-2030
Home:  (573) 446-2031
Cell:  660-676-1141
lmustoe@strategicpharmacysolutions.com
www.strategicpharmacysolutions.com