# EXHIBIT C

# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

August 5, 2020

**VIA EMAIL**

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
29 S. Main Street, Suite 305
rizard@ikrlaw.com
West Hartford, CT  06107

Re:    *Negron, et al. v. Cigna Corporation, et al.*, No. 3:16-cv-1702 (JAM) (D. Conn.)

Dear Bob and Chris:

We write again in response to your June 27, 2020 letter and as a follow-up to our July 17, 2020 and July 27, 2020 teleconferences discussing, among other things, the Document Source Tool ("DST") application and issues with respect to the reports generated for this litigation using DST. As stated in our July 3, 2020 email and during our subsequent teleconferences, we disagree with Plaintiffs' characterization of the events involving the DST reports and that CHLIC has been misleading in its communications about these reports.  So the record is clear, we have set forth the facts below.  We also wanted to provide you with some additional information regarding the DST search capabilities in advance of the 30(b)(6) deposition on the DST system, and in connection with CHLIC's  responses to Plaintiffs' Tenth Set of Interrogatories seeking additional information regarding DST, served on August 3, 2020.

You likely recall that discussions regarding DST reports began when Plaintiffs were searching for an alternative to reviewing language in all of the plan and plan-related documents.  As we made clear back in 2018 when the parties first discussed the possibility of generating DST reports regarding plan language and the limitations associated with doing so, these reports are not generated and do not exist at CHLIC in the ordinary course of business.[1]

Nevertheless, CHLIC was willing to develop custom-created searches within DST for purposes of this litigation in a good-faith effort to address the volume of plans and plan-related documents implicated by Plaintiffs' case.  Accordingly, and despite the clear and communicated limitations in the functionality of the DST reports, we agreed to provide such DST reports in response to Plaintiffs' request to identify Proclaim documents created in DST with certain language as located

---

[1] You acknowledged this point in a January 3, 2019 email from C. Barrett to E. Farrell, et al.

**Morgan, Lewis & Bockius LLP**

1701 Market Street
Philadelphia, PA  19103-2921
United States

**T** +1.215.963.5000
**F** +1.215.963.5001

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
August 5, 2020
Page 2

through searches in DST.  CHLIC was able to query the finalized and draft plans and plan-related documents created in DST that contained specific phrases.  CHLIC never promised that the DST reports would be a substitute for review of the actual plan documents; rather, the ability to procure such reports was a capability we investigated in response to Plaintiffs' request.  Indeed, we have repeatedly advised that Plaintiffs should review the actual plans and plan-related documents to determine the language in effect at a particular time and that governed any prescription drug benefits of the named Plaintiffs and putative class members because plan documents must be read as a whole[2] and that the DST reports might not accurately represent all plans or plan-related documents with certain language given the limitations that we outlined.

On February 7, 2019, we provided an initial DST report regarding the phrase "exceed the amount paid by the plan to the Pharmacy," and produced six additional DST reports thereafter throughout 2019 and 2020 as part of the meet-and-confer efforts, in connection with the parties' mediation process, and/or in response to Plaintiffs' discovery requests.[3]  Under both circumstances, CHLIC provided the DST reports to Plaintiffs in response to Plaintiffs' requests for DST reports run using specific language Plaintiffs requested.

Based on what we were told at that time about Plaintiffs' interest in the DST reports, we believed other fields to be administrative—i.e., that they did not identify which plans and plan-related

---

[2]   *See* CHLIC's Objections and Responses to Pls.' Fourth Set of Interrogs. and Third Set of Requests for Production (June 17, 2019), at 7 ("Plan documents must be read as a whole to determine whether there has been a violation thereof.").

[3]   On February 7, 2019, as part of the parties' meet-and-confer efforts, CHLIC produced a DST report for the period January 1, 2010 to December 4, 2018 regarding the phrase "exceed the amount paid by the plan to the Pharmacy."  *See* Email from E. Farrell to C. Barrett, et al. (February 7, 2019).

   On May 15, 2019, as part of the parties' meet-and-confer efforts, CHLIC produced two DST reports for the period January 1, 2010 to the present regarding the phrase "Charges means the discounted amount that the pharmacy benefits manager makes available to the Insurance Company" and "prescription drug charge," respectively.  *See* Email from E. Farrell to C. Barrett, et al. (May 15, 2019).

   On July 11, 2019, as part of the parties' meet-and-confer efforts, CHLIC produced a DST report for the period January 1, 2010 to the present regarding the phrase "incurs expenses for charges made by a Pharmacy."  *See* Email from E. Farrell to C. Barrett, et al. (July 11, 2019).

   On November 18, 2019, in connection with mediation, CHLIC produced a DST report for the period January 1, 2010 to the present regarding the phrase "required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies."  *See* Email from E. Farrell to C. Barrett, et al. (November 18, 2019).

   On May 12, 2020, as part of the parties' meet-and-confer efforts and in response to Plaintiffs' Eighth Set of Interrogatories, CHLIC produced two DST reports for the period January 1, 2010 to the present regarding the phrase "may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products" and "discretionary authority to interpret and apply plan terms."  *See* Email from E. Farrell to C. Barrett, et al. (May 12, 2020).

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
August 5, 2020
Page 3

documents had the precise language that Plaintiffs were seeking—and told you so.  However, we made clear that we provided you with "all of the relevant data fields available for the report and which are necessary for the parties to review the client information, the document type, the plan identifier, the funding arrangement, and the effective date of the document."  *See* Email from E. Farrell to C. Barrett, et al. (April 24, 2019).  The parties also used the DST reports for purposes of mediation in 2019, and CHLIC continued to explain their limitations at that time.

Plaintiffs included a request for the BenOpt Code for the first time when they served their Eighth Set of Interrogatories on February 25, 2020, before they filed their motion for class certification and accompanying expert declaration.  Accordingly, at Plaintiffs' request, we included the BenOpt Code in the two DST reports that were provided on May 12, 2020 in response to Plaintiffs' Eighth Set of Interrogatories.  Plaintiffs waited more than six weeks after receiving these DST reports with the "BenOpt Code" to raise an issue about this field and the DST reports on CHLIC on June 27, 2020.

At the same time, we understand that Plaintiffs' counsel continued to engage in meet-and-confer efforts in *Neufeld et al. v. Cigna Health & Life Insurance, Co.*, as well, where it was confirmed to you on May 6, 2020, that benefit option codes could be included in the DST reports to the extent the data is populated for that field.[4]  As noted in that response, DST reports may be generated with those additional codes "to the extent the data is populated for either."  Additionally, in CHLIC's responses to Plaintiffs' Second Set of Interrogatories in the *Neufeld* matter, CHLIC also made clear that there were significant limitations in tying the DST reports to any specific transaction data,[5] consistent with what we have repeatedly communicated to Plaintiffs in this matter.

Accordingly, as communicated during our July 17 teleconference and in our July 3 initial email response, CHLIC is running queries again for the five DST reports that CHLIC previously provided in order to add the "BenOpt Code" field to them.[6]

---

[4]     *See* Email from R. Nicholson to C. Barrett (May 6, 2020) ("As requested during our meet and confer yesterday, we confirmed with Cigna that the CN number is a unique number the Cigna contracts team assigns to a document. It is distinct from the benefit options code. It is our understanding that the DST reports will have both the CN number and benefit options code to the extent the data is populated for either."); *see also* Cigna's Responses and Objections to Plaintiffs' Second Set of Interrogatories, *Neufeld et al. v. Cigna Health & Life Insurance, Co.*, (June 9, 2020), at 11 ("Cigna further states that the DST reports will contain data for (a) account number, (b) account name, (c) document type, (d) CN Number, (e) funding arrangement, (f) effective date, and (g) benefit option code, to the extent that the data is populated. Cigna further states that the Facets reports contain data points including: (1) the policy number; (2) the document id; and (3) the effective date.").

[5]     *See Neufeld et al. v. Cigna Health & Life Insurance, Co.*, (June 9, 2020), at 12-13.

[6]     These DST reports will search for any plans or plan-related documents since January 1, 2010 that contain the following language, respectively: (1) "required to pay a portion of the Covered Expenses for Prescription Drugs and Related Supplies"; (2) "incurs expenses for charges made by a Pharmacy"; (3) "prescription drug charge"; (4) "exceed the amount paid by the plan to the Pharmacy"; and (5) "Charges means the discounted amount that the pharmacy benefits manager makes available to the Insurance Company."

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
August 5, 2020
Page 4

In Plaintiffs' Tenth Set of Interrogatories, they now ask about the DST system and these reports. Plaintiffs' Rule 30(b)(6) Notice of Deposition served on July 2, 2020, likewise seeks discovery related to the DST system and reports.  As we have previously confirmed with you, Damon Hellandbrand will be produced as CHLIC's corporate representative on those topics later this week.

We want to make clear, however, as we communicated to Plaintiffs throughout this process, that there are significant limitations in using the DST reports in lieu of reviewing the actual plans and plan-related documents.  As a threshold matter, for example, CHLIC uses DST to build plans and plan-related documents on the Proclaim system using client benefit selection data that is populated into various data systems—including, but not limited to, ePro.  CHLIC contract analysts and CHLIC's client contacts then review and manually modify these draft documents to reflect a client's specific needs.  Some of these documents are never finalized but remain in DST in their draft form, nevertheless.  Additionally, CHLIC contract analysts often create "dummy jobs" to create test documents in DST, which are not used to create final plans or plan-related documents.

Furthermore, the DST reports do not capture when a plan or plan-related document with a certain effective date was superseded and replaced by a new document.  That determination requires a separate, manual and individual inquiry of each client account.  That inquiry may not be possible by relying on the DST reports if the DST reports do not capture all plan and plan-related documents for a given account because the searches run have been for only the language Plaintiffs requested, and omit documents that do not contain the language Plaintiffs requested be searched, including those plans that are not created in DST.  Additionally, various clients maintain different schedules for when they update their plan and plan-related documents.  Some clients update theirs every year, every two years, etc.  Depending on the timing, many updates are made through annual riders, which must also be read in conjunction with the plans and other plan-related documents to determine which language was superseded through each update, and which language was in effect on a particular date.  Even if a benefit option code is populated in DST, moreover, it may not be possible to match the document on the DST report to a specific pharmacy transaction with certainty, especially when the effective date for the plan booklet in DST is not the same as the plan year of the pharmacy transaction at issue.

Separately, we also communicated to you that the DST system could only search for specific phrases of identical language.  We reiterated that to you in our call on July 17, 2020, when you suggested that Cigna's counsel in *Neufeld* had indicated that the search capability did not require exact phrases.  You subsequently provided us with an email from Cigna's counsel in *Neufeld*.  As we discussed during our July 27, 2020 call, that email indicated that while the DST tool is not case-sensitive or dependent on punctuation, it did *not* permit the use of wildcard searches, and therefore the search needs to include the specific phrase that Plaintiffs seek.  *See* Email from R. Nicholson to C. Barrett, et al. (April 27, 2020) ("We also asked about the sensitivity of the DST search tool, and it is Cigna's understanding that it is not case-sensitive or dependent on punctuation. For example, "Charge" and "chARge" and "charges" would be all be pulled.  The search tool does not permit use of wildcards, however.").  Cigna's counsel in *Neufeld* further clarified via email that if the DST tool is searching a phrase—rather than an individual word—the DST tool will *not* pick up variations in single/plural words that appear within the phrase, but will still search for the phrase regardless of capitalization and punctuation.  *See* Email from R. Nicholson to C. Barrett, et al. (July 20, 2020).  Plaintiffs acknowledged this misunderstanding during our July 27, 2020 discussion, and appear now to be in agreement regarding this limitation of DST.

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
August 5, 2020
Page 5

Despite the limitations with the DST reports described above, CHLIC can, in the course of its business, identify a benefit plan selection and corresponding benefit plan for a particular participant.  CHLIC outlined this process in its Supplemental Objections and Responses to Plaintiffs' Fifth Set of Interrogatories, for example.  After a client confirms its plan design, the benefit design information is input into ePro.  Participant information is reflected in CHLIC's Central Eligibility Database ("CED").  Using that identifying information, along with the information in Member Materials, CHLIC can identify the operative plan documents and prescription drug benefits that governed and were in effect for any particular transaction.  CHLIC's prescription drug transaction data includes a field ("PLAN_OF_BEN") that is associated with the benefit options reflected in the CED for the participant and Member Materials for the plan sponsor.  Thus, using the claim number (i.e., CLM_NUM), CHLIC is able to confirm whether a particular transaction in the prescription drug transaction data was pursuant to a plan containing certain plan language.  However, this is a manual process to review information across several data sources and documents, which can be done once a particular participant is identified.  It has not been performed, and it would be unduly burdensome, costly, and time-consuming to try to perform, for each of the millions of prescription drug transactions in the data CHLIC produced to confirm which transactions were adjudicated pursuant to certain excerpted plan language.  *See, e.g.*, CHLIC's Supplemental Objections and Responses to Plaintiffs' Fifth Set of Interrogatories (June 18, 2020), at 5-7.

Beyond that, and the fact that much of this is discovery on discovery, as we've explained previously and summarized during our July 27, 2020 teleconference, DST is an application that uses the data that is populated into various systems—including, but not limited to, ePro—to build plans and plan-related documents for client accounts, and such drafts can then be manually revised by both CHLIC contract analysts and CHLIC clients prior to being finalized and issued to participants.

For purposes of clarity, the below identifies the fields in the results that we have generated for the DST reports:

1. Account Number*
2. Account Name*
3. Document Type*
4. CN Number*
5. Funding Arrangement*
6. Effective Date*
7. Contract State**
8. Benefit Option Code**[7]

---

[7]   As discussed during our July 27, 2020 teleconference, CHLIC is exploring why the benefit option code data field in a  DST report might have a "NULL" or blank response, and this may occur for a variety of reasons.  If the benefit option code is not populated or available, it may not be possible to match a particular prescription drug transaction to the specific plan document and benefit options selected by the member.  It is our understanding that if either the system data request or manual entry were not completed for the benefit option code data field, this data field may not be populated and thus show a blank or null value in the reports.  CHLIC will continue to explore this issue, and we will provide an update if and when we learn of any additional clarifying information.

   *   These fields were previously provided in all DST reports produced by CHLIC.

Robert A. Izard, Esq./Christopher Barrett, Esq.
Izard, Kindall & Raabe, LLP
August 5, 2020
Page 6


As previously explained, given the breadth of the data fields that are in DST, it is not feasible to generate a report with all available data fields since it would crash the system.  We are working diligently to rerun the five DST reports that did not previously include the BenOpt Code, and should be able to provide an update by August 10.

While CHLIC has been willing to work with Plaintiffs and provide numerous DST reports informally, we do not think it is productive to argue about Plaintiffs' characterization of what the reports will allow Plaintiffs to accomplish.  Indeed, your letter recognizes that there continue to be limitations in identifying plans and plan-related documents with specific language and connecting those documents to a participant's prescription drug transactions.  That being said, if after you receive the rerun reports you believe that you need to supplement your expert report to address the BenOpt Code, we are certainly willing to discuss possible ways to address that issue in the context of the overall schedule.



Sincerely,

Brian W. Shaffer


CC: All counsel of record

---

** These additional fields were provided in the two DST reports produced on May 12, 2020 by CHLIC.