

Robert A. Izard<br>rizard@ikrlaw.com

November 4, 2020

Honorable Jeffrey A. Meyer
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT 06510

    Re:    **Negron, et al. v. Cigna Health and Life Insurance Company**, 3:16-cv-1702-JAM

Dear Judge Meyer:

      This letter responds on behalf of Plaintiffs to the Court's Order regarding Letter Briefing concerning whether Plaintiffs' proposed Classes extend to plans containing "the" before "Covered Expenses." [ECF 375]. The proposed Classes are defined as including plans that "provided that a member 'may be required to pay a portion of *the* Covered Expenses.'" [ECF 260, 253 (emphasis added)]. A prior version of the Class definitions did not contain "the." [ECF 205]. Mr. Mustoe's analysis also includes individuals in the class whose plans have "required to pay a portion of *the* Covered Expenses . . . ." The confusion arose because, on the morning of the hearing, while Plaintiffs were otherwise preparing, they received Cigna's 41-page handout containing excerpts of various Plans that Cigna proposed to discuss at the hearing. In reviewing and analyzing the relevance of the Plans, Plaintiffs inadvertently referred to a prior version of the Class definition that did not contain the word "the." *Id.* Plaintiffs apologize for the confusion that arose from the rush. That being said, the presence of "the" does not change Plaintiffs' analysis concerning either the excerpted Plans or the other Plans that Cigna referenced at the hearing.

***The Subclass Plans Are Not Ambiguous***

      At the hearing, Cigna discussed three Plans with the Subclass Plan language, Exhibits B, 40 and 55. As to these three Plans, although Cigna did not actually state that the Subclass language was ambiguous, Cigna at the hearing for the first time speculated with respect to Exhibit 55 that the Plan language providing for a $6 minimum copayment for a Tier 1 drug might conflict with the "in no event" language. [ECF 346-2 Page 35 and 38 of 64]. This new "whatabout" speculation is directly contrary to Cigna's prior admission that the Subclass Plan language sets a "limitation[] on participant's prescription drug payments…." [ECF 274 Page 26 of 61].[1] Moreover, whether the "[i]n no event" Subclass language that Cigna previously acknowledged was a contractual limitation on copayments is in fact a contractual limitation or cap on the amount of the copayment, or whether Cigna can read "in no event" out of the Plans

---

[1] Cigna previously argued with respect to Subclass language only that the "amount paid by the plan to the pharmacy" language might be ambiguous. [ECF 274 Page 31 of 61]; [ECF 343 Page 12-13 of 17].

and instead argue that this language is an inconsistent alternative definition of the amount of the copayment, is a Subclass-wide issue that does not defeat class certification. Further, because "the" in the Class language does not implicate the Subclass Plan language, the presence or absence of "the" is irrelevant to the Subclass.

### *The Class Plans Are Not Ambiguous*

The "may be required to pay a portion of *the* Covered Expenses" class definition language is standard language included in Cigna's boilerplate Master Schedule of Prescription Drug Benefits. *See, e.g.*, Decl. of Meghan S. B. Oliver, Sept. 3, 2020 (Sept. Oliver Decl.) [ECF 314], Ex. AZ (emphasis added). The only variation permitted in the Schedule for this language was to allow for dependent coverage. Other than that, the language was included at the beginning of the Master Schedule in every Cigna-generated plan booklet on DST regardless of the benefit selections made by the sponsor (*e.g.*, minimum copays, limited fills, different copays for preventive medications, limitations on specialty medications). "The" is present in every one of these booklets and in the Plan of **_every_** class member.

### *Coinsurance Language Is Not Relevant To the Class Claims*

At the hearing, in its latest "whatabout," for all but *one* of the Class language Plans Cigna discussed, Cigna focused on the coinsurance language in the Plans. As Cigna well knows, the Class claims are limited to claims where members paid "a copayment or deductible payment" and coinsurance terms are irrelevant. [ECF 253 Page 2 of 7]. For all but two of these Plans, Cigna focused on materially identical coinsurance language. Exhibits B, 39, 40, 44, 47, 50 and 55, all have a definition of "Charges" with a capital "C." All expressly provide that "Coinsurance" is a "percentage of Charges." Exhibit B [ECF 210-2 Page 34 of 65]; Exhibit 39 [ECF 275-39 Page 44 of 77]; Exhibit 40 [ECF 275-40 Page 33 of 63]; Exhibit 44 [ECF 275-44 Page 43 of 83]; Exhibit 47 [ECF 275-47 Page 37 of 72[2]]; Exhibit 55, [ECF 346-2 Page 35 of 64]. The "Charges" definition is not found in any of these Plans that do not provide for Coinsurance in the Schedule of Benefits such as copayment only Plans. *See, e.g.*, ECF 275-27 at 32 of 61. Additionally, "Charges" does not appear in the Class definition of Covered Expenses, which are "expenses for charges made by a Pharmacy" with a lower case "c." Cigna does not argue that this Coinsurance language makes the definition of Covered Expenses ambiguous (or to use Cigna's parlance, "not unambiguous"). To the contrary, Cigna argued only that the Coinsurance language applies to Coinsurance claims. For example, with respect to Exhibit 39, Cigna argued that the 30% payment obligation had to be 30% of "Charges." Cigna is correct because

---

[2] Exhibit 47 provides that the term "Charges means the discounted amount that the pharmacy benefits manager makes available to the Insurance Company with respect to Participating Pharmacies." In yet another "whatabout," Cigna speculated that Plaintiffs "may" argue that this coinsurance language could be used to interpret copayment and deductible language. Cigna is wrong because Plaintiffs do not argue that this or any other coinsurance language is relevant to copayment and deductible language.

"Coinsurance" is a "percentage of Charges." [ECF 275-39 Page 44 of 77]. However, these Coinsurance terms are irrelevant to the deductible and copayment terms.

Additionally, Cigna referred to the Plan of Plaintiff Gallagher, but that is a New Jersey coinsurance Plan. It is not part of the Class.[3] Finally, Cigna referred to the City of Nashville Plan. Exhibit 46 [ECF 275-46 Page 50 of 120]. In addition to Plaintiffs' prior arguments concerning this Plan, s*ee* [ECF 307 Page 19 of 55 and 19 n.8 of 55]; [ECF 361 Page 7 n.5 of 18], this Plan provides that the portion of the Covered Expenses is limited to "Coinsurance," not copayments or deductibles. Accordingly, because these two Plans only concern coinsurance as they relate to a "portion of the Covered Expenses," their language is not relevant to the Class.

### *Facets Plan Language Is Not Relevant to This Case*

As Cigna also well knows, Plaintiffs' case does not involve plans maintained on Cigna's Facets platform, which included plans known as Great West plans.[4] It instead involves only so-called Cigna East plans maintained on Cigna's Proclaim platform. Plaintiffs notified Cigna at least fifteen months ago that they were not pursuing class claims on behalf of Facets plans, and Cigna did not provide discovery concerning those plans. (July 22, 2019 Letter from Cigna counsel ("Insofar as Plaintiffs have indicated that they are no longer pursuing any claims for plans on Facets, such information is no longer relevant, and the burden of further investigating these fields is plainly disproportionate to the needs of the case . . . .").)

Exhibit 51 [ECF 275-51] is the ***only*** Plan on which Cigna does not base its arguments on coinsurance language. But this plan is ***not*** part of this case because it a Facets platform plan. Exhibit 51 contains none of the coded source pages that are the basis of the Class definitions and the claims in this case. It was not generated by the DST system. It is not included in Plaintiffs' damages estimates because Mr. Mustoe's analysis does not include Facets claims data. As Cigna has known for a year and a half, long before Plaintiffs filed their motion for class certification, if members under this plan paid overcharges that were clawed back by Cigna, those clawbacks are not part of this case.[5] Accordingly, Cigna's "whatabout" Exhibit 51 is not relevant to the Class claims.

---

[3] Plaintiff Gallagher, while a plaintiff, is bringing only her individual claims and does not seek to represent a class of members with similar plans.

[4] Great West plans are legacy plans from Great-West Healthcare, an insurance company acquired by Cigna in 2008. The claims data for these plans resides on the Facets platform, and the plan booklets for these plans are not created on DST.

[5] To the extent the Court believes the Class definition could be interpreted to include Exhibit 51, a modification could be made to the definition to limit the Class to exclude Facets plans.

### *The Minimum Copayment Provisions Do Not Conflict with the Class Language, With or Without "the"*

Cigna speculated with respect to Exhibit 55 that the $6 minimum copayment for Tier 1 drugs set forth in the section of the Schedule of Benefits describing"[t]he amount you pay for each 30-day supply" of "Retail Prescription Drugs" could conflict with the obligation to pay a portion of the Covered Expenses. Although Cigna did not argue that there is an actual conflict or ambiguity, Plaintiffs dealt with this issue in prior briefing. [ECF 361 Page 9-10 of 18].

### *Specialty Drug Provisions Do Not Conflict with the Class Language and Do Not Raise Individualized Issues Sufficient to Defeat Predominance*

Plaintiffs addressed Exhibit 35's requirement that participants pay "100% of Cigna's discounted cost," the Pharmacy Rate, in its Reply Brief. [ECF 307 Page 20-21 of 55.] Moreover, "[p]urchases of 'specialty' drugs were generally not subject to Clawbacks" and account for only 3,751 of 71,058,863 transactions among the Class Clawback transactions. Decl. of Launce B. Mustoe at ¶ 8 (Sept. Oliver Decl, Ex. P). To the extent that Cigna argues that specialty drugs are treated differently among Plans, that issue affects only an exceedingly small percentage of the class and does not present an individualized issue that will "overwhelm questions common to this class." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 404 (2d Cir. 2015).

In conclusion, Cigna does not dispute that *every* one of the approximately 6,000 Class Plans provided that a member "may be required to pay a portion of the Covered Expenses." Moreover, Cigna has *not* argued that this language is actually ambiguous. These facts are buttressed by the irrelevance of Cigna's "whatabout" this plan or "whatabout" that plan arguments that Cigna raised at the hearing because those arguments do not raise any questions about the clear meaning of the Class language concerning copayment and deductible transactions. Accordingly, this Class should be certified just like every other form contract case. The presence or absence of "the" in the Class definition does not change this fact.

                                              Respectfully submitted,

                                              s/ Robert A. Izard