# EXHIBIT 4

# EXHIBIT F



Craig A. Raabe
craabe@ikrlaw.com

January 23, 2019

*Via email*
Brian Shaffer
Morgan, Lewis & Bockius LLP
300 South Grand Avenue
Los Angeles, CA 90071

      Re:   *Negron v. Cigna Health & Life Insurance*, No. 3:16-cv-1702 (D. Conn.)

Dear Brian:

We write in furtherance of last Thursday's meet and confer during which we discussed, among other things, document production, custodians, claims data, and Cigna's ability to tie provisions to plans.

**1.    Cigna's document production and custodians**

As you are aware, there were internal discussions in Cigna about implementing the ability to collect spread. For example, (and as previously explained in our November 13, 2018 letter) on November 1, 2013, Ms. Burns-McAvoy emailed a group explaining that she had "an urgent request from management . . . . to react to a missed revenue opportunity." CIGNA00055862. As explained in that email: "Customers occasionally pay the pharmacy more than the cost of the drug because of spread. Cigna allowed the pharmacies to keep the overpayment with our own contracts, but now that we are on Catamaran's contracts, we need to recoup the dollars from the pharmacies." *Id*. "[O]verpayments" by customers in excess of "the cost of the drug" is the heart of this case as it relates to cost-sharing payments and thus any documents concerning such collection of spread are highly relevant and must be produced.

Important for our discussion here, Ms. Burns-McAvoy noted that the collection of spread "is being supported by the **highest levels of Cigna management** as it **represents a tremendous loss of revenue**." *Id*. (emphasis added). This "tremendous loss of revenue" was quantified in a December 2, 2013 email where Ms. Burns-McAvoy told Rick Scottson that "Management has

Brian Shaffer
January 23, 2019
Page 2

already made the decision to proceed. Cigna is losing approximately $100M a year." CIGNA00056019.

We have not seen documents concerning (1) management's deliberation and decision to proceed and (2) the estimated and actual losses from not collecting spread and the projected revenue if Cigna were to collect spread and the actual revenue from collecting spread. On November 13, 2018, we requested that Cigna confirm that the individuals among the "highest levels of Cigna management" who supported collecting spread are among the agreed-upon custodians. Although Cigna responded to that letter on December 13, it ignored this request for confirmation. We repeated our request in a January 9, 2019 email, but Cigna again ignored our request for confirmation in its January 14 response.

Given that you and your client are in the best position to identify these individuals, we again request that you **(1)** confirm that the senior management involved in the deliberation and decision to collect spread from pharmacies are custodians. Please also **(2)** identify these individuals and **(3)** confirm that the custodians and search terms being used will find documents concerning senior management's deliberation about whether to collect spread, the estimated and actual losses from not collecting spread, and the projected and actual revenue that Cigna receives from spread.

With respect to custodians, we note that David Cordani is listed as the Project Sponsor for numerous projects related to the Argus Transition, including, for example, the "Pharmacy Over Payments" Project, which is the project described above. *See* CIGNA00054733. The purpose of this project was to "allow Cigna to reduce the amount owed to pharmacies by the negative amount [when customer payments exceed the amount paid the pharmacy] and eliminate current over payments to pharmacies." CIGNA00054734; *see also, e.g.*, CIGNA00057251 (Project Sponsor of Pharmacy Over Payments HRA and HSA Claims), CIGNA00057641 (Project Sponsor of Pharmacy Over Payments HRA Claims). Please **(4)** ensure that Mr. Cordani is a custodian and that responsive documents possessed or controlled by him are produced.

Lastly, and without limiting who should be designated by Cigna as custodians, it has come to our attention that other individuals likely to possess or control highly relevant documents were not used as custodians. For example:

- According to an internal email, Edmund Skowronek's and Kathleen Steven's area was responsible for creating language for the booklets and Mary Payeur's area was responsible for automating it. CIGNA00050312.

- According to internal documents, Tom McCarthy, Matt Manders, and Chris Hocevar were involved in the management of Cigna's pharmacy business and thus likely sent and received documents concerning the projections and the results of the pharmacy business and related projects. *See, e.g.*, CIGNA00177523.

Brian Shaffer
January 23, 2019
Page 3

- Internal documents show that Jason Meade and Paul Schaeffer, of Cigna Global Healthcare FP&A, were involved in pharmacy planning, including, but not limited, planning with respect to ZBL. *See, e.g.*, CIGNA00155518.

Please **(5)** ensure that these eight individuals are custodians and that responsive documents possessed or controlled by them are produced and also **(6)** confirm that the appropriate individuals from the Financial Planning and Analysis unit are or will be custodians.

**2.     Organizational charts and Cigna's proposal concerning custodians**

Plaintiffs have been requesting organizational charts since February 2017. While Cigna did produce four organizational charts purportedly from 2017, organizational charts from prior to 2017 are relevant given that the relevant conduct at issue goes back to 2010 and indeed the decision to collect spread from pharmacies seemingly occurred in the 2013-2014 time period. In September 2018, you represented that Cigna was *still* investigating whether historical organizational charts could be located from archives. On December 17, you conceded that these charts existed in archived form but noted, without explanation, that "it is proving difficult to obtain them." Instead of producing the requested organization charts, Cigna proposed instead that it would "provide names of individuals who have roles related to pharmacy benefits and the issues in this litigation based on the business functions that you have identified."

But now that Cigna has identified these individuals, it will only agree to add them as custodians if Plaintiffs agree to limit the searches to be run against their collected ESI to 10 searches targeted to responsive documents, rather than the search terms negotiated by the parties. The purported reason for this condition is that "these additional custodians work in business units where they support units other than CPM" and Plaintiffs' "overbroad search terms" are not limited to Cigna's pharmacy business. The parties negotiated the search terms *for over four months* in an effort to limit their scope. The search terms that Cigna agreed to should be used and we see no reason to limit these custodians to ten searches. If you still disagree, please identify the search terms that you claim are too broad for these custodians, and please provide evidence in support of your claims of overbreadth and burden. *See e.g.*, *Sullivan v. StratMar Sys., Inc.*, 276 F.R.D. 17, 20 (D. Conn. 2011) ("[Defendant] must specifically show how plaintiff's requests and questions are overly broad, burdensome or oppressive 'by submitting affidavits or offering evidence revealing the nature of the burden.'" (internal citation omitted)). To the extent that Cigna agrees that certain of the search terms do not present burden or overbreadth issues, we reiterate our request that Cigna run those searches without further delay.

With respect to the organizational charts, as Plaintiffs explained in our October 16 letter, we would let you know whether we believe organizational charts are still necessary after you had identified the names of individuals who have roles related to pharmacy benefits and the issues in this litigation based on the business functions we have identified. Now that we have reviewed the

Brian Shaffer
January 23, 2019
Page 4

limited number of individuals provided, we believe that organizational charts are still necessary, and we request that they be produced. To the extent you are claiming that providing these documents — which we first requested almost two years ago — is unduly burdensome, please specifically explain why.  *See id*.

**3.     Claims data**

With respect to claims data, Plaintiffs expect Cigna to produce all claims data that is relevant to proving liability and calculating damages for the Plaintiffs and the Classes. For example, all claims data should be produced to the extent it can be used to identify and calculate overcharges, calculate deductible payment balances, calculate coinsurance obligations, tie transactions to employers and plans, identify cost-share logic, identify and provide the pricing logic or algorithms used to calculate cost share payments, identify reversed transactions, and understand whether any amounts or other data were inflated or changed by, for example, Argus or Catamaran. To the extent Plaintiffs discover that relevant data possessed or controlled by Cigna was not produced, Plaintiffs reserve all rights.

                Best regards,

                Craig A. Raabe