# EXHIBIT 10

# EXHIBIT M

Page 1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
_____
KIMBERLY A. NEGRON, Individually and on
Behalf of All Others Similarly Situated,
DANIEL PERRY, Individually and on Behalf
of All Others Similarly Situated, COURTNEY
GALLAGHER, Individually and on Behalf of
All Others Similarly Situated, NINA CUROL,
Individually and on Behalf of All Others
Similarly Situated, ROGER CUROL,
Individually and on Behalf of All Others
Similarly Situated, and BILLY RAY BLOCKER,
Individually and on Behalf of All Others
Similarly Situated,

                        Plaintiffs,

          -against-

CIGNA CORPORATION, CIGNA HEALTH AND LIFE
INSURANCE COMPANY, and OPTUMRX, INC.,
                        Defendants.
Civil Action No. 3:16-cv-1702 (JAM)
_____

                        July 31, 2020
                        9:02 a.m.

          VIDEOCONFERENCE DEPOSITION of
SEAN MAY, taken by Plaintiffs, held at 23
Margarets Place, St. Johns, Newfoundland,
Canada before Wayne Hock, a Notary Public
of the State of New York.
```

```
                                              Page 107
 1                     S. May
 2       Q.    You don't know if the Curols had
 3  any clawback in 2017; is that right?
 4       A.    If the Curols themselves?
 5       Q.    Yes.
 6       A.    I don't know.
 7       Q.    Okay.
 8             Let's move to paragraph
 9  fifty-eight, please.
10       A.    Of Exhibit 140?
11       Q.    Yeah, I'm sorry.  Let's stick
12  with one hundred forty.  I think they're
13  all in one hundred forty from here on out.
14       A.    I'm with you.
15       Q.    In paragraph fifty-eight, it
16  talks about how the class definition
17  includes will be based on the plan before
18  the word "prescription drug charge."
19             Do you see that?
20       A.    Yes.
21       Q.    And then you point out how some
22  plans don't have the word "plan."
23             Do you see that?
24       A.    Yes.
25       Q.    Would the problem be solved, the
```

```
                                          Page 140
 1                    S. May
 2              How did that occur?  How could
 3    it be used to refine his approach?
 4        A.    Well, I'm going to put aside the
 5    problem that I don't think Mr. Mustoe's
 6    correctly re-adjudicating claims; I'm
 7    going to put aside the problems of the DST
 8    reports, the language used to generate
 9    them doesn't match the plan language; I'm
10    going to, you know, put aside the coupon
11    issue; I'm going to put aside that he's
12    assuming that the plan documents are
13    terminated by DST four and five.
14              So putting aside all the other
15    problems I've described with his method in
16    my report, my declaration, I think the DST
17    reports and benefit option codes are
18    useful, potentially useful in the narrow
19    circumstance in which the same account
20    number has different plan documents that
21    contain different language.  So when you
22    have the transaction data on the one side
23    and the DST reports on the other side,
24    using that benefit option code may be
25    mitigating the problem part of Mr.
```

Page 183

1  S. May
2  it all again if you want, but I think we
3  had a long discussion about this topic.
4      Is there anything different
5  about how you treated the creation of the
6  chart in figure three at paragraph
7  ninety-six as compared to the chart at
8  figure two at paragraph eighty-eight?
9      MS. FARRELL: Objection.
10     THE WITNESS:  These are --
11 obviously this figure three concerns
12 deductible claims and none of the
13 named plaintiffs have deductible
14 claims in their plans.  So one thing
15 different here is this is not
16 Plaintiffs' plans.
17     So is the question did I
18 actually look at a plan documents for
19 these particular transactions?
20 Q.   My question is how did you
21 identify the plans for these three
22 participants and did you use the same
23 methodology that you described in
24 paragraph eighty-eight in identifying the
25 plans that govern the transactions of

Page 184

1                         S. May
2    these participants in paragraph
3    ninety-six?
4              MS. FARRELL: Objection.
5              THE WITNESS:  In the previous
6         example, I was looking for
7         transactions in Ms. Negron's and Mr.
8         Perry's plans, so I'd find the account
9         numbers and benefit option code and
10        look at the transaction data for those
11        two figures.
12             Here I didn't need -- couldn't
13        do that because there are no
14        deductible transactions associated
15        with their plans.  So I didn't need to
16        search for particular transactions
17        with a benefit option code and account
18        number in the same that I did for the
19        Negron and Perry plans.
20        Q.    Well, do you know if the plan
21   that you refer to in paragraph ninety-six
22   is a plan that falls within --
23             MR. IZARD: Withdrawn.
24        Q.    Do you know if the plan you
25   referred to in paragraph ninety-six

Page 185

1                       S. May
2    contains any of the language that is used
3    to define the class and the subclass?
4         A.    Yes, I think participants in
5    those plans would be members and the
6    deductible claims would fall within the
7    definition.
8         Q.    So my question is how did you
9    identify the plan to make that
10   determination?
11        A.    I don't -- I don't remember if I
12   used the DST reports or if I looked at the
13   plan document.  I just don't recall.
14        Q.    Did you look at the plan?
15              MR. IZARD: Withdrawn.
16        Q.    What plan or plans are these
17   transactions related to?
18        A.    I don't recall.
19        Q.    Did you ever know?
20        A.    I mean, the answer is in the
21   backup I provided you.  I'm not sure I
22   ever had that memorized.
23        Q.    Did you look to see if the plan
24   or plans related to the three transactions
25   you identify in figure three are or are

1                      S. May
2     not covered by the class definition?
3          A.    As I said, I think these are
4     class deductible claims.  I am not sure if
5     I made that determination by looking at
6     the plan documents themselves or using the
7     DST reports.
8          Q.    And if you used the DST reports
9     to determine whether these plans are
10    covered by the class definition, did you
11    use the same methodology for tying
12    transactions to plans that you referred to
13    when we were discussing paragraph
14    eighty-eight?
15              MS. FARRELL: Objection.
16              THE WITNESS:  I just don't
17       understand that question.
18         Q.    What did you do with regard to
19    the DST reports with respect to the
20    specific plans relating to paragraph
21    ninety-six to determine whether the plans
22    had the class language?  Explain
23    step-by-step what you did solely with
24    respect to this plan or plans.
25         A.    I said repeatedly I don't

Page 187

S. May

1
2  recall.  One option is that -- I just
3  don't recall.
4        Q.    In fact, you didn't even look;
5  did you?
6            MS. FARRELL: Objection.
7            THE WITNESS:  I think I answered
8     repeatedly that I don't recall.
9        Q.    In your report do you cite to
10 any plan referenced in paragraph
11 ninety-six?
12       A.    Do I cite to the plan document
13 that governs --
14       Q.    Do you cite to any information
15 that would help me identify the plan?
16       A.    We talked about you have eleven
17 hundred lines of computer code that will
18 tell you exactly what the account number
19 and benefit option code is.
20       Q.    So for the plan referenced in
21 paragraph ninety-six?
22       A.    Yes.  Ask Mr. Mustoe to run the
23 computer code for you and he can tell you
24 the answer to that question.  I don't know
25 the answer to the question sitting right

Page 208

1      S. May
2   data, whether or not those plans, you
3   know, that look in the -- so if you ever
4   looked at the transaction date -- sorry,
5   if you never looked at the plan document,
6   the transaction data looks like a combined
7   co-insurance/copayment plan; right?  I
8   don't know if Plaintiff intended to
9   include those plans or not.  I know that
10  Mr. Mustoe calculates clawbacks for
11  transactions, at least according to his
12  methodology that he articulated, he
13  calculates clawback in transactions where
14  the copayment field is populated and the
15  copayment exceeds the pharmacy
16  reimbursement rate.
17      Q.   So you identified transaction
18  with plans of this nature where --
19           MR. IZARD: Withdrawn.
20      Q.   Have you identified any specific
21  transactions that are covered by the
22  subclass that have transactions like those
23  in the copayment field?
24           MS. FARRELL: Objection.
25           THE WITNESS:  In the subclass?

Page 209

1                         S. May
2        Q.    Yes.
3        A.    I don't know in the subclass.  I
4   think this particular plan document, I
5   think the way we sort of fell into the
6   example is we were looking at transactions
7   in the claims data where we didn't
8   understand how the amount the participant
9   payment was being adjudicated so we had
10  the account, benefit option codes, the
11  plan years where it was a mixture of
12  copayment and co-insurance.  So I think we
13  asked to see some plan documents for those
14  transactions to understand what is going
15  on.
16              So I think there were clawbacks
17  associated with these types of
18  transactions.  I don't know if they're
19  class claims or subclass claims.  That I
20  don't know.
21       Q.    Let's go back to paragraph one
22  hundred two, please.
23       A.    Would this be a good time to
24  take a short break?
25              MR. IZARD: Sure.