# EXHIBIT 38

# EXHIBIT AY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

KIMBERLY A. NEGRON, et al.,
Individually and on Behalf of All Others
Similarly Situated,

                                 Plaintiffs,

      vs.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY, et al.

                                 Defendants.

No. 16-cv-1702 (JAM)

July 7, 2020

**WRITTEN REPORT OF PLAINTIFFS' EXPERT, LAUNCE B. MUSTOE, R.Ph.**

## TABLE OF CONTENTS

I.      Assignment and summary .................................................................................. 1

II.     Qualifications and experience ......................................................................... 1

III.    Background ........................................................................................................ 3

        A.      The Classes ........................................................................................... 3

        B.      The claims transaction data set ......................................................... 5

        C.      The DST reports and plan documents ................................................ 7

        D.      Additional Data From Defendant ...................................................... 10

IV.     Opinion: Classwide Clawbacks for the Classes are approximately $440 million
        and Clawbacks for the Subclasses are approximately $132 million ................. 10

        A.      Calculating "Clawbacks" for the Classes .......................................... 12

        B.      Calculating "Clawbacks" for the Subclasses ..................................... 15

        C.      Allocating Clawbacks between ERISA Classes, State Law Classes, and
                RICO Classes ........................................................................................ 16

        D.      Examples of Clawback calculations ................................................... 16

V.      Differing Clawback Periods ............................................................................. 18

VI.     Prejudgment interest ........................................................................................ 18

VII.    Conclusion ......................................................................................................... 18

I.       **Assignment and summary**

I have been asked by Plaintiffs' counsel to provide my opinion as to the amount of overcharges via "Clawbacks" for the Classes and Subclasses (described below) using evidence that is common to each Class. The "Clawbacks" at issue in this case occur when a participant pays a copayment or deductible payment for prescription drugs that exceed the total amount charged by, or paid to, the pharmacy and such excess payment is credited to Cigna Health and Life Insurance Company ("Cigna") as a negative reimbursement, which Cigna refers to as a "Clawback."

II.      **Qualifications and experience**

I graduated from the University of Missouri at Kansas City, School of Pharmacy with a Bachelor of Science Degree in Pharmacy in 1975.  I have been a Registered Pharmacist for over 45 years.  At the present time my license is inactive pending completion and submission of continuing education hours.

My pharmacy experience includes hospital, nursing home and retail experience as a practicing pharmacist.  My pharmacy-benefit-management experience includes sales and service of individual and third-party administrator (TPA) accounts, underwriting of pharmacy benefit plans, analysis and consultation concerning pharmacy benefit plans and auditing of pharmacy benefit plans.  I have conducted over 50 audits of pharmacy benefits managers (PBMs) to date.

I am currently self-employed and co-founder of Strategic Pharmacy Solutions LLC a Missouri limited  liability company.

Previously I  was one of two pharmacists at Stephens Consulting Services responsible for day to day interaction with clients and prospective clients and the preparation, performance, and analysis of audits.  I also developed the original logic of the audit software used by Stephens Consulting Services, and for this reason, I am heavily involved in the testing of the audit

program, the overall program improvement, and expanding the program's capabilities.  I perform

and present prescription drug claim analysis and make recommendations to clients concerning

their prescription drug plans.  I also prepare and process requests for proposals, provide analysis,

and support clients in connection with their pharmacy-benefit-services agreements.

Prior to joining Stephens Consulting Services, I co-founded Strategic Pharmacy

Solutions, LLC, a Missouri limited liability company.  Strategic Pharmacy Solutions was formed

in April of 2005 and developed a program to examine pharmacy claims on a claim by claim

basis.  This program has grown in breadth and depth since its inception and will continue to

expand as the needs of our clients continue to become more complex.  I was instrumental in the

development of the program and the logic necessary to perform the claim-by-claim examination

the program performs.  While with Strategic Pharmacy Solutions, I also performed multiple

pharmacy claims analyses concerning the calculation of expected claims expenditures.  I was

also involved in several requests for proposals for pharmacy benefit services and other data

analyses for pharmacy benefit consulting services.  I also conducted contract analysis and

assisted clients with negotiation of their pharmacy-benefit-services contracts.

Prior to establishing Strategic Pharmacy Solutions, I was a Senior Pharmacy Benefit

Analyst and underwriter with PRAM Insurance Services, Inc.  PRAM is a pharmacy risk and

management company based in Orange County, California.  PRAM provided pharmacy benefit

consultation and underwriter functions for several insurance companies offering fully insured

carve-out pharmacy programs to clients nationwide.  While with PRAM Insurance Services I

was instrumental in developing proprietary rating models for PRAM's internal use.  I assisted

PRAM in moving prescription benefit analysis to an individual claim-by-claim basis.  I oversaw

the development of software used to convert various NCPDP formats into a readable, usable and

2

manageable database files.  This method is now used by PRAM to obtain reports and other data needed to complete the fully insured quote generating process.

Prior to my duties at PRAM, I managed a multi-state territory for Wal-Mart.   I joined the Wal-Mart Pharmacy Division in July of 1990.  I began as a pharmacist for Wal-Mart and then accepted a new position as regional sales manager for Wal-Mart's PBM, WMS.  I marketed this pharmacy-benefit-management service and serviced clients in five states.   Since Wal-Mart chose not to restrict the pharmacy network to Wal-Mart Pharmacies or process their own claims, I was exposed to 3 of the top 4 PBMs at the time.  As a sales manager for Wal-Mart I worked with Paid Prescriptions (Medco), Express Scripts, and Caremark during this time period.  This gave me in-depth experience with all three of these PBMs.  I worked with each of the PBM's private label departments and became familiar with their procedures for claims processing.

I have not authored any articles in the past.  I have testified as an expert in two depositions.  One in the case *Smithfield Foods, Inc. vs National Medical Health Card Systems, Inc*. in United States District Court for the Eastern District of Virginia, Richmond Division Case No. 3:07-CV-00625 RLW and one with this case.  I have not testified at trial.

I am being compensated for my work on this matter at $250.00 per hour. My compensation does not depend on my conclusions or the case outcome.

III.    **Background**

A.    **The Classes**

Plaintiffs' counsel has asked me to calculate the "Clawbacks" for several different classes, which differ by (1) plan language, (2) whether the respective plan is subject to ERISA or not, and (3) claims (e.g., whether brought under ERISA, State Law, or RICO). Specifically, there are three classes and three subclasses. The "ERISA Class" and "ERISA Subclass" include individuals covered by certain Cigna health plans that are governed by ERISA. The "State Law

Class" and "State Law Subclass" include individuals covered by certain Cigna health plans that are not governed by ERISA. And, the "RICO Class" and "RICO Subclass" include individuals covered by certain Cigna health plans without regard to whether they are governed by ERISA.

The three Classes all concern the same relevant language and the three Subclasses all concern the same relevant language. The "ERISA Class," the "State Law Class," and the "RICO Class" comprise participants with plans providing that the participant "may be required to pay a portion of Covered Expenses." "Covered Expenses" arise when a plan member "incurs expenses for charges made by a pharmacy." The "ERISA Subclass," the "State Law Subclass" and the "RICO Subclass" comprise participants with plans providing that "in no event will the Copayment" "exceed the amount paid by the plan to the Pharmacy." Thus, the language at issue for the Classes prohibits "Clawbacks" with respect to copayments and deductible payments and the language at issue for the Subclasses prohibits "Clawbacks" with respect to copayments. It is my understanding that, in general, all plans in each Subclass are also in the respective Class.

Because RICO applies to all plans regardless of whether they are subject to ERISA, the RICO Class and Subclass are a combination of the members of the ERISA Class and the State Law Class or, alternatively, a combination of the members of the ERISA Subclass and the State Law Subclass.

The Classes and Subclasses sought to be certified by Plaintiffs are attached hereto as **Exhibit A**.

Each Class is broader than — and includes all of the plans in — the respective Subclass. Accordingly, to the extent Plaintiffs are successful in proving the copayment Clawback claims on behalf of the Classes, Plaintiffs would not seek Subclass copayment Clawback damages and the model can easily accommodate for this adjustment.

B.      **The claims transaction data set**

Cigna produced a data set that it asserts contains all prescription drug transactions from

October 13, 2010 through August 1, 2019 that are stored on Cigna's GHTR system (the

"transaction data set"). This data set contains transactions of Class members in addition to

transactions for non-members. The data set contains 56 data fields, which are listed in the

attached **Exhibit B** (CIGNA07777352). Of these, the following data fields are material to

calculating "Clawbacks."

| Data Field | Description |
| --- | --- |
|  |  |



The transaction data set contains approximately ████████ transactions.  I cleaned the data set by identifying all reversals[1] (including paid claims paired to a reversal) and duplicates, ensuring that they will not be included in the calculations. There were ███████ reversals and ██████ duplicates in the transaction data set.

Reversals are identified by an "R" or "N" in  the claim type field ███████ field. Reversals are then matched with the corresponding paid claims, which are identified by a "P" or "A" in the claim type field. The software will first attempt to match the reversal to a paid claim that has the same claim number ██████████ but if this cannot be done, the software will compare the content of the fields below. Both the reversals and the corresponding paid claims will be set aside by the software and not be utilized in further searches, reports or calculations.



---

[1] A reversal occurs, for example, when a prescription is filled but never picked up by the member. In this instance, the prescription may be recorded in the data when originally filled by the pharmacy. When the pharmacy decides that it will likely not be picked up by the member, the transaction is reversed.

The few reversals that could not be paired with a paid claim are removed from the data as unpaired reversals.

Similarly, the below fields are utilized to search for and mark duplicates claims.  If a match is found, then one of the claims is removed from the set of data that is utilized to perform searches, reports or calculations.



### C.    The DST reports and plan documents

Throughout this litigation, Cigna represented that its system capabilities do not allow it to identify whether a claim in the transaction data set was adjudicated pursuant to a specific plan of a specific member of the respective classes using available fields in the data set. In other words, Cigna represented that its internal systems were unable to link specific member transactions to the applicable Class and Subclass language that must be applied in adjudicating claims, although Cigna can link transactions to the employer-sponsors of plans by their corresponding account numbers in the DST Reports (*i.e.*, field ▮▮▮▮▮▮▮▮). Cigna proposed using "DST reports" that list plan documents that contain a certain "phrase." It is my understanding this process permits the identification of employer/sponsors who sponsored plans containing the relevant Class and Subclass language. These reports were compiled using Cigna's "DST System" that stores certain plan documents for clients whose prescription drug transactions are handled on the "Proclaim" system. For each plan document, the DST report provides six types of information:

(1)   the account number, which is unique to the employer/sponsor;

    (2)   the account name;

    (3)   the document type;

    (4)   the CN number, which Cigna represented is a document ID for a particular document of a particular client;[2]

    (5)   the funding arrangement, which describes whether the plan is (a) administrative-services only (ASO) subject to ERISA, (b) ASO not subject to ERISA, (c) fully insured,  (d) cash management program (CMP) or (e) Advanced ERISA Benefit (AEB); and

    (6)   the effective date of the document.

These reports state whether a particular employer/sponsor sponsored a plan with relevant plan language and the date that plan became effective.

Cigna has produced five DST reports listing plan documents that contain one of the following phrases:

    (1)   "exceed the amount paid by the plan to the pharmacy" ("DST Report 1")

    (2)   "incurs expenses for charges made by a pharmacy" ("DST Report 2")

    (3)   "required to pay a portion of the covered expenses for prescription drugs and related supplies"  ("DST Report 3")

    (4)   "prescription drug charge" ("DST Report 4")

    (5)   "may be required to pay a Deductible, Copayment or Coinsurance requirement for Covered Expenses for Prescription Drug Products" ("DST Report 5").[3]

Additionally, Cigna produced the plan documents for all plans listed in DST Reports 1-5.

Using DST Reports 1-3, I am able to identify the plans related to the Classes and Subclasses. Because the DST reports include the employer/sponsor account number for each plan and the dates the plans became effective, I am able to determine when Class and Subclass

---

[2] While the CN number might identify a specific plan, it is not included in the transaction data set and cannot be linked to a specific claim.

[3] This DST Report includes two additional fields: "Contract State" and "BenOpt Code."

members first began making claims under a particular employer/sponsor's plans whose plan or plans contained the relevant Class and Subclass language.  Using DST Reports 2 and 3, I am able to determine the beginning of the time period in which employers began using a plan with the relevant language for the Classes. Using DST Report 1, I am able to determine the beginning of the time period in which each employer began using plans with the relevant language for the Subclasses.

I am also able to use the DST Reports to determine the end of the time period any employer used a plan with actionable language. DST Report 4 lists each plan document that contains the "prescription drug charge" definition. I understand that this language modified the plans to terminate the Classes' claims as they relate to the Classes' deductibles claims and the Subclasses' copayment claims. An algorithm was created — that referenced the Account Number listed in DST Report 4 and utilized the corresponding  Effective Date — to determine when a sponsor used plans with such language. Using DST Report 4, I am able to determine the end of the time period any employer/sponsor sponsored a Plan with language that prohibited deductible "Clawbacks" for the Classes and copayment "Clawbacks" for the Subclasses.

DST Report 5 lists the account number for each plan document that contains the provision that replaced the actionable "portion" language. I understand that this language modified the plans to terminate the Classes' copayment claims. An algorithm was created — that referenced the Account Number listed in DST Report 5 and utilized the corresponding Effective Date — to determine when a sponsor used plans with such language and to calculate "Clawbacks" for all relevant transactions for each account during that period. Using DST Report 5, I am able to determine the end of the time period any employer used a plan with language that prohibited copayment "Clawbacks" for the Classes.

|  | **Classes** | **Subclasses** |
|---|---|---|
| Relevant accounts | DST Reports 2 and 3 | DST Reports 1 |
| Beginning of relevant period | DST Reports 2 and 3 | DST Reports 1 |
| Ending of relevant period for copayment "Clawbacks" | DST Report 5 | DST Report 4 |
| Ending of relevant period for deductible "Clawbacks" | DST Report 4 | N/A |

### D.    Additional Data From Defendant

Plaintiffs' counsel has informed me that after I submitted my declaration supporting class certification, Cigna disclosed for the first time that its Central Eligibility and Member Materials databases might be useful in tying particular claims to the relevant plan language. In particular, I understand that I may need to review the BenOpt Code for each Plan. I further understand that Cigna's DST system is able to produce reports that include the ██████████ field along with the other 6 fields set forth above and that this ██████████ field in the DST reports can be used in combination with the Account Number to match plans in the DST reports to claims in the transaction data set. DST Reports 1 through 4 that Cigna produced did not include this field. In the most recently produced report, DST Report 5, Cigna did include the ██████████ field. As noted above, the current methodology, which is limited to the data provided by Cigna to date, matches accounts (*i.e.*, sponsors but not plans) in the DST reports to claims. I also understand that Cigna now has agreed to reproduce DST Reports 1-4 with the ██████████ field, and perhaps the necessary data from the Central Eligibility and Member Materials databases. Without first reviewing this data, I am unable to determine whether its inclusion will improve the current methodology. Accordingly, I reserve the right to supplement this report after receiving that data.

**IV.     Opinion: Classwide Clawbacks for the Classes are approximately $440 million and Clawbacks for the Subclasses are approximately $132 million**

As summarized in the Table found in Section VII, I have calculated that approximately $440,122,671 in Clawbacks were taken from the Classes and approximately $131,762,359 were taken from the Subclasses.[4]

I have calculated Clawbacks for each Class and Subclass using the data and documents produced by Cigna, including the prescription drug transaction data set, the ERISA report and the DST reports (but as noted above, DST Reports 1-4 provided by Cigna did not include the ███████████ field). I have determined from the data the amount of the Clawback for each prescription drug claim, and calculated both a set estimate and a range of aggregate damages, because Plaintiffs' counsel has informed me that certain parameters will depend on conclusions of law to be made by the Court. Moreover, the Clawback estimates could potentially be made more precise with information, including the ███████████, to be produced by Cigna in the future.

As mentioned above, Clawbacks in this case occur when a participant of a relevant plan pays a copayment or deductible that exceeds the Pharmacy Rate, and such overcharge is clawed back (negative pharmacy reimbursement) by Cigna. The Pharmacy Rate is the sum of three data fields:



---

[4] These estimates do not include RICO Clawbacks. I have been advised by counsel that the RICO Class and Subclass might be entitled to treble damages.  If damages are trebled under RICO, damages for the Classes would be approximately $1.779 billion and damages for the Subclasses would be approximately $547.8 million.

For claims where there was an overcharge, the Clawback amount can be determined by identifying negative amounts in the ████████████ field. It is my understanding that this field is normally used to account for the amounts that Cigna pays to the pharmacy, but when the amount in the field is negative, it signifies a Clawback. Accordingly, Cigna's own data set clearly shows the amount of each Clawback on a transaction basis.

The transaction data set includes the same employer/sponsor account numbers ████████████ found in the DST reports for each prescription drug transaction. The transaction data set also provides the individual member number ████████ and the date of the transaction ████████ Accordingly, I am able to tie the employer/sponsor accounts and employer/sponsor plans to the individual member transactions as of the date of each transaction using an algorithm that utilizes certain transaction data and certain DST Report data. Through this analysis, I have identified each individual member transaction during the specific time period during which that member's sponsor/employer sponsored a plan with the relevant Class and Subclass terms. I have also identified the Clawback amount for each such transaction as set forth above.

A.   **Calculating "Clawbacks" for the Classes**

"Clawbacks" for the Classes, for both deductible and copayment transactions, are calculated using the transaction data set, the ERISA Report and the DST reports. I have created an algorithm that sums the "Clawbacks" for individual member transactions in the data set that (1) have an employer account number found in both DST Report 2 and DST Report 3; (2) occurred after the later of (a) the respective effective date of that employer/sponsor's plans in the DST Reports (*see* Table: Class date range, below) or (b) the individual state's relevant limitation

period beginning date (for State Law claims)[5]; and (3) any transaction that occurred before the respective effective date of that employer/sponsor's plans in DST Report 4 for deductible "Clawbacks" or in DST Report 5 for copayment "Clawbacks") (*see* Table: Class date range, below).  And I exclude any claim that has a value in the Coinsurance field and any claims that has a value of Zero or less Excess Member Pay.

  In many instances, an employer may sponsor multiple plans through Cigna. To date, I have not been provided data that will allow me to tie member claims to the specific applicable plan. Rather, I can establish that the claim relates to any one of the plans sponsored by the employer. Since different plans may have different effective dates, even though sponsored by a single employer, I am unable to determine precisely when the relevant plan language was or was not in effect as applied to specific member claims (and I understand that the BenOpt Codes might allow me to refine this analysis). Accordingly, I have run three different models, and I understand that the selection of the applicable model may be an issue of law. The "High End of the Range"  assumes that a claim is part of the class if ***any*** plan sponsored by the employer contained the relevant language. The "Low End of the Range" assumes that a claim is part of the class if ***every*** plan sponsored by the employer contained the relevant language. The "FIFO Estimate" assumes that a claim is part of the class if it falls within the period between when a plan sponsored by the employer first contained the relevant language and first contained the replacement language (*i.e.*, first in, first out).

---

[5] Attached as **<u>Exhibit C</u>** is the table provided Plaintiffs' counsel of the respective limitations periods for each state. The state assigned to a claim is based on the location of the pharmacy, according to the ██████████████ field in the claims data. Attached as **<u>Exhibit D</u>** is a table listing the ████████████ prefixes along with the corresponding states.

**Table: Class date range**

|  | **Beginning date** | **Ending date** |
|---|---|---|
| High end of range | Earliest date in DST reports 2/3 | Latest date in DST reports 4/5 |
| FIFO estimate | Earliest date in DST reports 2/3 | Earliest date in DST reports 4/5 |
| Low end of range | Latest date in DST reports 2/3 | Earliest date in DST reports 4/5 |

For these transactions, overcharges can be identified by subtracting the Pharmacy Rate from the copayment or deductible paid by the participant. Specifically:



For Deductible Only:  has Positive Deductible value and Coinsurance value of 0

████████████ > 0
████████ = 0

**Deductible** ████████████

minus

**Pharmacy Rate** ████████████████████████

For Copay Only:  has Positive Copay value and Coinsurance value of 0

████████ > 0
████ = 0

**Copay** ████████

minus

**Pharmacy Rate** ████████████████████████

Of these identified overcharges, "Clawbacks" are calculated by summing the negative amounts in the ████████████ field.

**B.**     **Calculating "Clawbacks" for the Subclasses**

Copayment "Clawbacks" for the Subclasses are calculated using the transaction data set and DST reports according to the same methodology. I have created an algorithm that sums the "Clawbacks" for individual member transactions in the data set that (1) have an account number found in DST Report 1; (2) occurred after respective effective date of the employer/sponsor's plans in the DST Report (see Table: Subclass date range, below) or (b) the relevant individual state limitation period beginning date (State Law claims)[6]; and (3) any transaction that occurred before the respective effective date of that employer/sponsor's plans in DST Report 4 (*see* Table: Subclass date range, below). And exclude any claim that has a value in the Coinsurance field and any claims that has a value of Zero or less Excess Member Pay.

| | Beginning date | Ending date |
|---|---|---|
| High end of range | Earliest date in DST reports 1 | Latest date in DST reports 4 |
| FIFO estimate | Earliest date in DST reports 1 | Earliest date in DST reports 4 |
| Low end of range | Latest date in DST reports 1 | Earliest date in DST reports 4 |

**Table: Subclass date range**

For these transactions, overcharges can be identified by subtracting the Pharmacy Rate from the copayment paid by the participant. Specifically:



For Copay Only:  has Positive Copay value and Coinsurance value of 0

&gt; 0
= 0

**Copay**

minus

**Pharmacy Rate**

---

[6] *See* note 5.

███████████████████████

Of these identified overcharges, "Clawbacks" can be calculated by summing the negative

amounts in the ████████████ field.

### C.    Allocating Clawbacks between ERISA Classes, State Law Classes, and RICO Classes

I have  allocated Clawbacks to the ERISA Classes, the State Law Classes and the RICO

Classes using information provided by Cigna. Cigna produced a report that identifies whether a

participant's account is subject to ERISA ("ERISA Report"). The ERISA Report identifies an

ERISA account with an indicator of "Y" in the ERISA IND field and non-ERISA account with

an indicator other than a "Y" in the ERISA IND field. Using the information in the DST reports

and the ERISA Report, I have created an algorithm that will sum the "Clawbacks" (a) for

accounts and thus transactions subject to ERISA for the ERISA Class and Subclass and (b) for

accounts and thus transactions not subject to ERISA for the State Law Class and Subclass.

To identify accounts subject to ERISA, we would search all accounts identified as being

subject to ERISA in the ERISA Report and utilizing all claims under accounts with an indicator

of "Y" in the ERISA IND FIELD.  To identify accounts not subject to ERISA, we would search

all accounts identified as being not subject to ERISA in the ERISA Report and utilizing all

claims under accounts with an indicator other than a "Y" in the ERISA IND FIELD.

All accounts in DST Report 1 for RICO Subclass and accounts in both DST Reports 2

and 3 for RICO Class are subject to RICO, regardless of whether they are governed by ERISA.

### D.    Examples of Clawback calculations

To show how the model works, the following is a Clawback analysis for a participant in

the plans of Plaintiff Negron's employer. The member paid a copayment that exceeded the

Pharmacy Rate that was retained by Cigna as a negative reimbursement or "Clawback" for 11 of

the 26 claims over the relevant time period.  These 11 claims totaled $40.29 in copayment

"Clawbacks" for both the ERISA Class and the ERISA Subclass.

Below is the Clawback detail analysis for 1 of these 11 claims.

| | Negron Claim | | |
|---|---|---|---|
| Account Number: | Audit_ID | | |
| ▮▮▮ | ▮▮▮ | | |
| Fields in data | | **Pharmacy** | **Member-Plan** |
| FILL_DT | Date of Service | 20150706 | 20150706 |
| PHARM_INGRD_CST_AMT | Ingredient Cost | $2.00 | $10.00 |
| PHARM_DISP_FEE_AMT | Dispensing Fee | $1.27 | $1.27 |
| PHARM_SALES_TAX_AMT | Tax | $0.00 | $0.00 |
| Calculation | Total Rx Cost | $3.27 | $11.27 |
| | | | |
| DEDCT_APPLD_AMT | Deductible | $0.00 | $0.00 |
| COPAY_AMT | Copay | $10.00 | $10.00 |
| COINS_AMT | Coinsurance | $0.00 | $0.00 |
| | Plan Pay | | $1.27 |
| Calculation | Member Pay  Copay/Deductible | $10.00 | $10.00 |
| Calculation | Total Rx Cost | $3.27 | |
| **PHARM_PD_AMT** | **Negative Pharmacy Reimbursement** | **($6.73)** | |
| Calculation | Pharmacy Net Payment | $3.27 | |
| | **Clawback  (Copay)** | | **($6.73)** |

Below are additional examples of "Clawbacks" that I have calculated on a transaction by

transaction basis using the model.

| Transaction ID | Drug | FILL_DT | Patient Paid | PHARM PD AMT | Pharmacy Rate | Percentage of Patient Paid Clawed Back | Percentage Clawback to Pharmacy Rate |
|---|---|---|---|---|---|---|---|
| | LAMICTAL | 20160116 | $1,684.98 | ($1,676.78) | $8.20 | 99.51% | 20448.54% |
| | ENOXAPARIN SODIUM | 20170104 | $1,722.42 | ($1,691.74) | $30.68 | 98.22% | 5514.15% |
| | ARIPIPRAZOLE | 20170110 | $2,013.96 | ($1,681.24) | $332.72 | 83.48% | 505.30% |
| | ARIPIPRAZOLE | 20160828 | $2,294.78 | ($1,714.40) | $580.38 | 74.71% | 295.39% |
| | CAPECITABINE | 20170106 | $3,424.92 | ($2,321.91) | $1,103.01 | 67.79% | 210.51% |
| | TEMOZOLOMIDE | 20170208 | $3,746.82 | ($2,483.21) | $1,263.61 | 66.28% | 196.52% |
| | ENOXAPARIN SODIUM | 20140920 | $2,536.03 | ($1,675.11) | $860.92 | 66.05% | 194.57% |
| | CAPECITABINE | 20160912 | $2,569.16 | ($1,586.01) | $983.15 | 61.73% | 161.32% |
| | LAMOTRIGINE ER | 20150203 | $2,819.99 | ($1,729.01) | $1,090.98 | 61.31% | 158.48% |
| | ENOXAPARIN SODIUM | 20150118 | $3,269.48 | ($1,857.83) | $1,411.65 | 56.82% | 131.61% |

## V.      Differing Clawback Periods

It is my understanding that depending on the Court's conclusions of law with respect to issues concerning limitations periods, the period of time for when a Clawback was actionable may differ by state. The methodology described herein can account for such differing relevant periods. I have been provided with tables stating the relevant period of time for each state, and I have created an algorithm that will calculate "Clawbacks" during such relevant time periods.

## VI.     Prejudgment interest

I have been advised by counsel that the members of the Class might be entitled to prejudgment interest on the Clawbacks.  Although the awarding of prejudgment interest and the rate[7] and method used are left to the sound discretion of the Court, I will be able calculate prejudgment interest for the Classes and Subclasses.

## VII.    Conclusion

For the reasons explained above, I have calculated aggregate "Clawbacks" for the three Classes and the three Subclasses and that the model has accounted for differences in relevant Clawback periods.  The following chart identifies the aggregate "Clawback" for each of the Classes and Subclasses for the FIFO Estimate and the low and high ends of the ranges.

**Classes for Deductible**

|  | FIFO Estimate | | | Low Calculations | | | High Calculations | |
|---|---|---|---|---|---|---|---|---|
|  | claims | Clawbacks | | claims | Clawbacks | | claims | Clawbacks |
| ERISA | 8,366,155 | $103,249,203.65 | | 1,322,655 | $16,585,984.93 | | 12,965,835 | $164,330,047.35 |
| State Law | 1,697,303 | $19,453,075.13 | | 523,156 | $4,569,801.50 | | 2,105,255 | $24,682,187.97 |
| RICO | 10,192,609 | $124,337,297.69 | | 1,856,903 | $21,319,497.80 | | 15,200,750 | $190,654,372.95 |

---

[7] *See, e.g.*, *Tyll v. Stanley Black & Decker Life Ins. Program*, 403 F. Supp. 3d 27 (D. Conn. 2019) (awarding 8% prejudgment interest compounded annually).

**Classes for Copay**

| | FIFO Estimate | | | Low Calculations | | | High Calculations | |
|---|---|---|---|---|---|---|---|---|
| | claims | Clawbacks | | claims | Clawbacks | | claims | Clawbacks |
| ERISA | 49,180,221 | $265,697,622.74 | | 10,832,471 | $61,388,825.48 | | 54,161,238 | $291,255,340.78 |
| State Law | 10,556,535 | $51,722,769.39 | | 2,158,515 | $11,386,057.26 | | 12,315,162 | $60,185,118.30 |
| RICO | 60,804,702 | $322,054,542.46 | | 13,099,846 | $73,316,070.22 | | 67,544,346 | $356,074,609.41 |

**Subclasses for Copay**

| | FIFO Estimate | | | Low Calculations | | | High Calculations | |
|---|---|---|---|---|---|---|---|---|
| | claims | Clawbacks | | claims | Clawbacks | | claims | Clawbacks |
| ERISA | 25,506,643 | $109,148,536.78 | | 13,155,299 | $56,225,442.03 | | 34,157,212 | $154,369,913.81 |
| State Law | 5,624,873 | $22,613,821.95 | | 3,519,092 | $14,258,364.16 | | 8,488,191 | $36,316,637.79 |
| RICO | 31,915,694 | $138,683,177.06 | | 16,792,853 | $70,986,081.13 | | 43,430,120 | $193,608,882.39 |

\*   \*   \*   \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on  July 7, 2020.

**Launce B. Mustoe, Jr. R.Ph.**
STRATEGIC PHARMACY
SOLUTIONS, LLC
*Main Office:*
3802 Kinsey Ct.
Columbia, MO 65203
(573) 446-2030
lmustoe@strategicpharmacysolutions.com
www.strategicpharmacysolutions.com

Exhibit A

**ERISA Class.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy subject to ERISA that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that:

- provided that a member "may be required to pay a portion of the Covered Expenses"; and

- provided that "Covered Expenses" are where an individual "incurs expenses for charges made by a Pharmacy"; and

- with respect to deductible payments, did not provide that the "Deductible payment" "will be based on the plan's Prescription Drug Charge"; and

(B)  paid a copayment or deductible payment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment or deductible payment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.


**ERISA Subclass.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy subject to ERISA that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that provided that "in no event will the Copayment . . . exceed the amount paid by the plan to the Pharmacy"; and

(B)  paid a copayment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.

**State Law Class.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy not subject to ERISA that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that:

- provided that a member "may be required to pay a portion of the Covered Expenses"; and

- provided that "Covered Expenses" are where an individual "incurs expenses for charges made by a Pharmacy"; and

- with respect to deductible payments, did not provide that the "Deductible payment" "will be based on the plan's Prescription Drug Charge"; and

(B)  paid a copayment or deductible payment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment or deductible payment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.

**State Law Subclass.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy not subject to ERISA that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that provided that "in no event will the Copayment . . . exceed the amount paid by the plan to the Pharmacy"; and

(B)  paid a copayment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.

**RICO Class.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that:

- provided that a member "may be required to pay a portion of the Covered Expenses"; and

- provided that "Covered Expenses" are where an individual "incurs expenses for charges made by a Pharmacy"; and

- with respect to deductible payments, did not provide that the "Deductible payment" "will be based on the plan's Prescription Drug Charge"; and

(B)  paid a copayment or deductible payment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment or deductible payment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.


**RICO Subclass.**  All individuals residing in the United States and its territories who:

(A)  were enrolled in a health benefit plan or policy that was issued and/or administered by Cigna Health and Life Insurance Company including its affiliates ("Cigna") that provided that "in no event will the Copayment . . . exceed the amount paid by the plan to the Pharmacy"; and

(B)  paid a copayment to purchase prescription drugs pursuant to such plan or policy where according to the transaction data produced by Cigna in this action:

- the copayment exceeds the amount the pharmacy agreed with Cigna or the pharmacy benefit manager to accept for such drugs on a transaction-by-transaction basis; and

- the excess amount is credited or transferred to Cigna or the pharmacy benefit manager.

Exhibit B

| Data Field | Data Type | Description | Start Column | End Column |
|---|---|---|---|---|
| | | | 1 | 12 |
| | | | 13 | 20 |
| | | | 21 | 22 |
| | | | 23 | 26 |
| | | | 27 | 30 |
| | | | 31 | 37 |
| | | | 38 | 38 |
| | | | 39 | 44 |
| | | | 45 | 54 |
| | | | 55 | 66 |
| | | | 67 | 75 |
| | | | 76 | 77 |
| | | | 78 | 84 |
| | | | 85 | 93 |
| | | | 94 | 102 |
| | | | 103 | 111 |
| | | | 112 | 119 |
| | | | 120 | 127 |
| | | | 128 | 135 |
| | | | 136 | 143 |
| | | | 144 | 151 |
| | | | 152 | 159 |
| | | | 160 | 167 |
| | | | 168 | 175 |
| | | | 176 | 183 |
| | | | 184 | 191 |
| | | | 192 | 196 |
| | | | 197 | 207 |
| | | | 208 | 208 |
| | | | 209 | 209 |
| | | | 210 | 210 |
| | | | 211 | 211 |
| | | | 212 | 215 |
| | | | 216 | 216 |
| | | | 217 | 228 |
| | | | 229 | 229 |
| | | | 230 | 230 |
| | | | 231 | 245 |
| | | | 246 | 246 |
| | | | 247 | 247 |
| | | | 248 | 256 |
| | | | 257 | 258 |
| | | | 259 | 260 |
| | | | 261 | 268 |
| | | | 269 | 276 |
| | | | 277 | 284 |
| | | | 285 | 293 |
| | | | 294 | 302 |
| | | | 303 | 314 |
| | | | 315 | 325 |
| | | | 326 | 336 |
| | | | 337 | 347 |
| | | | 348 | 358 |
| | | | 359 | 369 |
| | | | 370 | 377 |
| | | | 378 | 385 |

Exhibit C

**Relevant periods for State Law Claims**

State claims were filed on:     **10/18/18**

| State | SOL | Statute | Beginning date |
|---|---|---|---|
| Alaska | 3 | AS § 09.10.053 / 3 | 10/18/15 |
| Colorado | 3 | C.R.S.A. § 13-80-101 / 3 | 10/18/15 |
| Delaware | 3 | 10 Del.C. § 8106 / 3 | 10/18/15 |
| District of Columbia | 3 | / DC ST § 12-301 / 3 | 10/18/15 |
| Maryland | 3 | MD Code, Courts and Judicial Proceedings, § 5-101 / 3 | 10/18/15 |
| New Hampshire | 3 | N.H. Rev. Stat. § 508:4 / 3 | 10/18/15 |
| North Carolina | 3 | N.C.G.S.A. § 1-52 / 3 | 10/18/15 |
| South Carolina | 3 | Code 1976 § 15-3-530 / 3 | 10/18/15 |
| Virginia | 3 | VA Code Ann. § 8.01-246 / 3 if unsigned / / (5 if signed. To be conservative, going with 3.) | 10/18/15 |
| California | 4 | West's Ann.Cal.C.C.P. § 337 / 4 | 10/18/14 |
| Pennsylvania | 4 | 42 Pa.C.S.A. § 5525 / 4 | 10/18/14 |
| Texas | 4 | V.T.C.A., Civil Practice & Remedies Code § 16.051 / 4 | 10/18/14 |
| Arkansas | 5 | A.C.A. § 16-56-111 / 5 | 10/18/13 |
| Florida | 5 | West's F.S.A. § 95.11 / 5 | 10/18/13 |
| Idaho | 5 | I.C. § 5-216 / 5 | 10/18/13 |
| Kansas | 5 | K.S.A. 60-511 / 5 | 10/18/13 |
| Missouri | 5 | MO ST 516.20  / 5 / / (10 "for payment of money or property" (516.110)) | 10/18/13 |
| Nebraska | 5 | Neb.Rev.St. § 25-205 / 5 | 10/18/13 |
| Oklahoma | 5 | 12 Okl.St.Ann. § 95 / 5 | 10/18/13 |
| Alabama | 6 | Ala.Code 1975 § 6-2-34(9) / 6 | 10/18/12 |
| Arizona | 6 | A.R.S. § 12-548 / 6 | 10/18/12 |
| Connecticut | 6 | C.G.S.A. § 52-576 / 6 | 10/18/12 |
| Georgia | 6 | Ga. Code Ann., § 9-3-24 / 6 | 10/18/12 |
| Hawaii | 6 | HRS § 657-1 / 6 | 10/18/12 |
| Maine | 6 | 14 MRSA § 752 / 6 | 10/18/12 |
| Massachusetts | 6 | M.G.L.A. 260 § 2 / 6 | 10/18/12 |
| Michigan | 6 | M.C.L.A. 600.587 / 6 | 10/18/12 |
| Minnesota | 6 | M.S.A. § 541.05 / 6 | 10/18/12 |
| Mississippi | 6 | Miss. Code. § 15-1-49 / 3 / (catch-all applies) | 10/18/12 |
| Nevada | 6 | N.R.S. 11.190 / 6 | 10/18/12 |
| New Jersey | 6 | N.J.S.A. 2A:14-1 / 6 | 10/18/12 |
| New Mexico | 6 | N. M. S. A. 1978, § 37-1-3 / 6 / / | 10/18/12 |
| New York | 6 | McKinney's CPLR § 213 / 6 | 10/18/12 |
| North Dakota | 6 | NDCC, 28-01-16 / 6 | 10/18/12 |
| Oregon | 6 | O.R.S. § 12.080 / 6 | 10/18/12 |
| South Dakota | 6 | SDCL § 15-2-13 / 6 | 10/18/12 |
| Tennessee | 6 | T. C. A. § 28-3-109 / 6 | 10/18/12 |
| Utah | 6 | U.C.A. 1953 § 78B-2-309 / 6 | 10/18/12 |
| Vermont | 6 | 12 V.S.A. § 511 / 6 | 10/18/12 |
| Washington | 6 | West's RCWA 4.16.040 / 6 | 10/18/12 |
| Wisconsin | 6 | W.S.A. 893.43 / 6 | 10/18/12 |
| Montana | 8 | MCA 27-2-202 / 8 | 10/18/10 |
| Ohio | 8 | R.C. § 2305.06 / 8 | 10/18/10 |
| Illinois | 10 | / 735 ILCS 5/13-206 / 10 | 10/18/08 |
| Indiana | 10 | IC 34-11-2-11 / 10 | 10/18/08 |
| Iowa | 10 | I.C.A. § 614.1 / 10 | 10/18/08 |
| Kentucky | 10 | KRS § 413.160 / 10 / / 15 for contracts entered before 7-15-2014, but going with 10. | 10/18/08 |
| Louisiana | 10 | LSA-C.C. Art. 3499 / 10 | 10/18/08 |
| Rhode Island | 10 | Gen.Laws 1956, § 9-1-13 / 10 | 10/18/08 |
| West Virginia | 10 | W. Va. Code, § 55-2-6 / 10 | 10/18/08 |
| Wyoming | 10 | W.S.1977 § 1-3-105 / 10 | 10/18/08 |

Exhibit D

| NCPDP / prefix | State |
|---|---|
| 111017 | AL |
| 200953 | AK |
| 306301 | AZ |
| 404246 | AR |
| 504135 | CA |
| 608111 | CO |
| 719279 | CT |
| 844717 | DE |
| 903410 | DC |
| 1007043 | FL |
| 1123621 | GA |
| 1240528 | HI |
| 1301504 | ID |
| 1418006 | IL |
| 1533303 | IN |
| 1606447 | IA |
| 1707629 | KS |
| 1806681 | KY |
| 1916331 | LA |
| 2007171 | ME |
| 2118429 | MD |
| 2231645 | MA |
| 2322965 | MI |
| 2406595 | MN |
| 2509757 | MS |
| 2608086 | MO |
| 2702808 | MT |
| 2803927 | NE |
| 2906494 | NV |
| 3001865 | NH |
| 3148005 | NJ |
| 3200792 | NM |
| 3301152 | NY |
| 3404720 | NC |
| 3503883 | ND |
| 3643928 | OH |
| 3708255 | OK |
| 3808548 | OR |
| 3924075 | PA |
| 4004026 | PR |
| 4106072 | RI |
| 4202812 | SC |
| 4351639 | SD |
| 4414431 | TN |
| 4503593 | TX |
| 4603747 | UT |
| 4702569 | VT |

| 4838314 | VA |
|---------|----|
| 4911702 | WA |
| 5002011 | WV |
| 5107669 | WI |
| 5203625 | WY |
| 5300532 | VI |
| 5411171 | GU |
| 5510068 | MP |
| 56 | CA |
| 57 | FL |
| 58 | NY |
| 59 | TX |
| 60 | PA |