# EXHIBIT 44

# EXHIBIT BE

```
                                                           Page 1
 1
 2         IN THE UNITED STATES DISTRICT COURT
 3            FOR THE DISTRICT OF CONNECTICUT
 4
 5   KIMBERLY A. NEGRON,            )
     Individually and on            )
 6   Behalf of All Others           )
     Similarly Situated,            )CIVIL ACTION NO.
 7   DANIEL PERRY,                  )3:16-cv-1702
     Individually and on            )(JAM)
 8   Behalf of All Others           )
     Similarly Situated,            )
 9   COURTNEY GALLAGHER,            )
     Individually and on            )
10   Behalf of All Others           )REMOTE
     Similarly Situated,            )30(b)(6)
11   NINA CUROL,                    )VIDEOTAPED
     Individually and on            )DEPOSITION OF
12   Behalf of All Others           )KEVIN CUMMINGS
     Similarly Situated,            )
13   ROGER CUROL,                   )
     Individually and on            )
14   Behalf of All Others           )
     Similarly Situated, and        )
15   BILLY RAY BLOCKER,             )
     Individually and on            )
16   Behalf of All Others           )
     Similarly Situated,            )
17              Plaintiffs,         )
                                    )
18         vs.                      )
                                    )
19   CIGNA CORPORATION,             )
     CIGNA HEALTH AND LIFE          )
20   INSURANCE COMPANY, and         )
     OPTUMRX, INC.,                 )
21              Defendants.         )
     _____)
22
23           Tuesday, August 11, 2020
24
     Reported By:
25   CATHI IRISH, RPR, CRR, CLVS, CCR
```

```
                                                  Page 44
 1               CUMMINGS
 2         MR. SHAFFER:  Let me interject an
 3     objection.  The notice defines
 4     specific language which the witness
 5     has referred to as relevant language
 6     and so I just ask that the questions
 7     be clear about whether it's referring
 8     to that language or other language in
 9     the document.
10  BY MR. IZARD:
11     Q.   Well, what I'm referring to --
12  let's break it down a little bit.  Up in
13  the top where it says the plan provides
14  prescription drug benefits for
15  prescription drug products and it goes on
16  through the language, that portion
17  includes any applicable copayment,
18  deductible and/or coinsurance.
19         Do you see that?
20     A.   Yes, I see those sentences.
21     Q.   That's the same language from
22  157; is that right?
23     A.   No, not in all respects.  So for
24  instance, the Exhibit 157 uses a term or
25  two terms and a phrase that states
```

1                    CUMMINGS
2    prescription drugs and related supplies in
3    both the first and second sentence that
4    you referenced.  Alternative --
5    alternatively, the Exhibit 0164 uses the
6    term prescription drug products.
7         Q.   Okay.  And this reflects a change
8    to the paragraph -- I'm sorry, this
9    reflects a change to the Exhibit 157
10   template; is that right?
11        A.   Yes, the term prescription drug
12   products is a new term as of this DST
13   release described in this Exhibit 0164.
14        Q.   If we look down to the next
15   section, it says as applicable, your
16   deductible or coinsurance payment will be
17   based on a prescription drug charge when
18   the pharmacy is a network pharmacy.
19             Do you see that?
20        A.   Yes, I see that on 0164.
21        Q.   And that is a change to the
22   template that's Exhibit 157 as well;
23   right?
24        A.   This sentence starting as
25   applicable your (inaudible) -- sorry, this

```
                                          Page 46
 1                  CUMMINGS
 2   sentence starting as applicable, your
 3   deductible or coinsurance payment was not
 4   in Exhibit 0157.
 5        Q.   You faded out when you said not
 6   in Exhibit --
 7        A.   Not in Exhibit 0157.
 8        Q.   And then if you go down a couple
 9   more boxes, there is a definition for the
10   term charges.
11             Do you see that?
12        A.   Yes, I do.
13        Q.   That also is not in Exhibit 157;
14   is that right?
15        A.   There is a definition of charges
16   in Exhibit 157.  The definition is stated
17   differently in Exhibit 157 compared to
18   Exhibit 164.
19        Q.   Now, between Exhibit 157 and 164,
20   were there any changes to the prescription
21   drug benefit schedule template?
22        A.   Are you referring to the
23   sentences we just -- we were just
24   referring to, namely the charges provision
25   and the three sentences in the gray box
```

|     | Page 47 |
|-----|---------|

1             CUMMINGS
2    starting "This plan provides"?
3         Q.    Yes.  And the definition of
4    deductible and coinsurance payments.
5         A.    So in this schedule specifically
6    which is obviously in the context of
7    several other related terms elsewhere,
8    these sentences in terms of standard draft
9    product language may have differed by
10   state over time, by which I mean for our
11   insurance business there are -- there's a
12   process generally that we must follow
13   where we need to get approval from the
14   state regulator to offer as part of an
15   insurance certificate (inaudible) and
16   language so there may be deviations over
17   time as to all the particulars by state
18   (inaudible).  Of course for our
19   self-funded business and insurance
20   business as well, clients may not adopt
21   this language in connection with their
22   plan.
23        Q.    Right.  But in terms of my
24   question, focusing on changes to the
25   template, I understand all the qualifiers

Page 48

1          CUMMINGS
2  you want to put in but were there any
3  changes to the template between the
4  version that's Exhibit 157 and the version
5  that's Exhibit 164?
6          MR. SHAFFER:  Objection, asked
7      and answered.
8          THE WITNESS:  Yeah, restate that
9      in terms of draft product language
10     offered for consideration by insurance
11     regulators and then ultimately
12     clients, these sentences we were just
13     looking at that starts with "This plan
14     provides" and then respectively
15     "Charges" to my knowledge did not
16     change the term period.
17         MR. IZARD:  Charlotte, let's go
18     to the next exhibit, please.
19         MS. LOPER:  This one has
20     previously been marked as Exhibit 159.
21  BY MR. IZARD:
22     Q.   Keep 164 there because I'm going
23  to ask you basically a question about the
24  change from 164 to 159, okay?
25     A.   Okay.

Page 49

1      CUMMINGS
2          MS. LOPER:  You should be able to
3      see it now.
4          THE WITNESS:  Yes, I have 159
5      open.
6   BY MR. IZARD:
7      Q.   Okay.  And you're welcome to
8   obviously look at it as much as you want
9   but I'm only going to ask you about the
10  language at the bottom of the page with
11  the Bates number 173085 which should be
12  the third page in -- second page in.
13     A.   Okay, I'm at that page and I'm
14  ready.
15     Q.   Okay.  You can see at the bottom
16  there's a box that says Prescription Drug
17  Benefits, The Schedule.
18          Do you see that?
19     A.   Yes.
20     Q.   Beneath that it says include for
21  ASO, and then it says this plan provides
22  for prescription drug benefits for
23  prescription drug products and then it
24  goes on.  It talks about how you're
25  required to pay a deductible copay or

Page 50

1                    CUMMINGS
2    coinsurance.
3            Do you see that?
4       A.   Yes, under the header Include for
5    ASO, yes.
6       Q.   Is that language the next
7    iteration of the portion of the
8    prescription drug benefit schedule we
9    looked at on Exhibit 164 that begins with
10   "This plan provides prescription drug
11   benefits" and goes on?
12           MR. SHAFFER:  Objection to form.
13           THE WITNESS:  Can you restate
14      that question?  I apologize.  Were you
15      referring to these Exhibit 164?
16   BY MR. IZARD:
17      Q.   If you look at Exhibit 164, and
18   that's the 2017 DST template document;
19   right?
20      A.   Yes, I see exhibit -- yes.
21      Q.   At the top you can see there's
22   three sentences that begin "This plan
23   provides prescription drug benefits."
24           Do you see that?
25      A.   Yes.

Page 51

1                    CUMMINGS
2        Q.    And the last sentence says that
3    portion includes any applicable copayment
4    deductible and/or coinsurance.
5              Do you see that?
6        A.    Yes.
7        Q.    If we go over to 159 the page
8    ending in 085 at the bottom of that page
9    where it says include for ASO, it says
10   this plan provides prescription drug
11   benefits and it goes on.
12             Do you see that?
13       A.    Yes, I do.
14       Q.    And that language has changed, in
15   particular where the last sentence on that
16   paragraph of 159 is different than the
17   last two sentences of that language on
18   164.
19             Do you see that?
20       A.    I'm just perusing kind of -- I'm
21   going to have to go back and forth between
22   the two documents.
23             I see under the -- to answer your
24   question, include for ASO, it states in
25   the second sentence, to receive

```
                                                         Page 52
 1                     CUMMINGS
 2     prescription drug benefits, you, and in
 3     brackets, and your dependents may be
 4     required to pay a deductible, copayment or
 5     coinsurance (inaudible) --
 6            MR. SHAFFER:  You broke up, Kevin
 7        but --
 8            THE WITNESS:  The Exhibit 159, I
 9        was stating that I see there is a
10        difference in the second sentence
11        between under the "Include for ASO"
12        between 159 and 164 which I believe
13        you were referring to.
14     BY MR. IZARD:
15         Q.   So does the language we just
16     looked at in Exhibit 159 reflect the next
17     historical change in the prescription drug
18     benefit schedule language that we just
19     talked about in 159, I mean 164?
20         A.   Yes, for this these sentences
21     starting with "This plan provides," yes,
22     for ASO.
23         Q.   And to the extent that that
24     language was used in insured plans, the
25     same would hold true; is that right?
```

Page 55

1              CUMMINGS
2         MR. SHAFFER: Objection to form.
3         THE WITNESS: No, the goal is to,
4    assuming there's -- we're talking
5    about a product, in this case a
6    pharmacy product, that we would offer
7    to clients. We try to propose to
8    clients who may be looking to fund
9    their benefits differently, namely
10   self-funded or insured, the same kind
11   of language for consideration.
12  BY MR. IZARD:
13       Q.   And if you submitted language to
14  a client for consideration, unless they
15  sent something back to you that was
16  different, you would adjudicate according
17  to the language you sent to them; is that
18  right?
19       A.   We would -- if we sent draft
20  product language, whether insurance
21  certificate or draft booklet, to a client
22  and we did not hear that this does not
23  reflect my plan design, we would proceed
24  administering the plan in accordance with
25  that insurance certificate or draft

Page 70

1                    CUMMINGS
2    how this parlance is used.  While I can't
3    speak to -- I didn't write this but I
4    think the term "Use ASO text for insured"
5    refers to a concept whereby if draft
6    product language is produced for
7    consideration by self-funded clients, that
8    that same text would be or could be used
9    for insured plans that chose to adopt our
10   insurance certificate language as part of
11   its plan.
12        Q.    If a client -- if an insured
13   client does not want to adopt Cigna's
14   language that's been approved by a
15   regulator, does the client language
16   that -- does the language that the client
17   wants have to get approved by an insurance
18   regulator?
19            MR. SHAFFER:  Objection to form,
20        outside the scope, but if you know the
21        answer, Mr. Cummings, you can answer.
22            THE WITNESS:  I can answer that
23        question.  If a client who wants to
24        purchase an insurance product from
25        Cigna wishes to customize the terms of

```
                                            Page 86
 1                   CUMMINGS
 2       Q.   Okay.  And this language was
 3   approved by lawyers; right?
 4           MR. SHAFFER:  Instruct the
 5       witness not to disclose any privileged
 6       communications or work product.  If
 7       you can answer the question without
 8       doing so, you can proceed.
 9           THE WITNESS:  I'm not aware if
10       this particular -- so, for example,
11       155 was if a lawyer was consulted.
12       And to the extent the lawyer was
13       consulted, I would not be able to
14       speak to any communications or the
15       like between the company's counsel and
16       the business representatives who, in
17       the product organization perhaps, who
18       would have been responsible for
19       ultimately approving and pushing forth
20       this language.
21   BY MR. IZARD:
22       Q.   In your experience, did Cigna
23   submit plans for review by insurance
24   regulators that hadn't been reviewed by a
25   lawyer?
```