# EXHIBIT 63

# EXHIBIT BW

# Morgan Lewis

**Brian W. Shaffer**
Partner
+1.215.963.5103
brian.shaffer@morganlewis.com

July 9, 2018

**VIA ELECTRONIC MAIL**

Craig A. Raabe, Esq.
Izard, Kindall & Raabe, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107

Re:     *In re Cigna Corporation PBM Litigation – No 3:16-CV-1702 (WWE)*

Dear Craig:

We write in response to your June 28, 2018 letter (the "Letter"), in which you purport to outline the "major areas of discovery dispute" between Plaintiffs and Cigna Health and Life Insurance Company ("CHLIC"). We address the specific issues raised in the Letter in detail below, but want to highlight two general points.

First, Plaintiffs' Letter attempts to create discovery issues where none actually exist. As an example, your Letter takes issue with CHLIC's responses to several Requests for Admission ("RFAs"), to which CHLIC responded with an unqualified denial, or otherwise responded that it was unable to respond with an unqualified admission or denial, and provided the reasons for doing so. While you attempt to reframe many of Plaintiffs' requests in your Letter, that does not make CHLIC's response deficient. Similarly, you "demand compliance" with many Requests for Production ("RFPs") to which CHLIC agreed to produce documents following "a reasonable and diligent search, using search terms and other parameters." No compliance need be demanded, therefore, because CHLIC has already agreed to do so upon reasonable terms, which the parties are currently negotiating.

Second, much of your Letter attempts to clarify or redraft the discovery requests Plaintiffs originally served. In many instances, however, the clarification differs materially from what Plaintiffs initially propounded and amounts to an entirely new request. Your desire to now reframe or clarify the discovery Plaintiffs originally served validates many of CHLIC's objections—i.e., regarding the failure to particularize the types of documents and/or information sought, or the vagueness of undefined terms—which will not be withdrawn. Nevertheless, as discussed during our June 29, 2018 meet and confer, CHLIC has not withheld any documents or information on those objections. At the same time, as noted in CHLIC's discovery responses, where CHLIC objected to certain undefined terms, CHLIC responded using reasonable efforts and based on its understanding of each request.

**Morgan, Lewis & Bockius** LLP

1701 Market Street
Philadelphia, PA  19103-2921
United States

☎ +1.215.963.5000
🖷 +1.215.963.5001

Craig A. Raabe, Esq.
July 9, 2018
Page 2

**1.   CHLIC's Objections Are Proper and Will Not Be Withdrawn**

**a.   Whether CHLIC Is Withholding Responsive Materials**

As noted above, unless CHLIC has stood on its objections and has not responded, CHLIC is not withholding responsive materials or information on the basis of the objections.  As we have discussed on several occasions now, materials that CHLIC has withheld or redacted, or will withhold or redact in the future, on the basis of privilege, confidentiality, commercial sensitivity, or privacy will be logged.  Indeed, CHLIC already produced a log for documents withheld and redacted in its production to date.

**b.   CHLIC's Objections to Plaintiffs' Definitions Are Appropriate**

Despite your statement to the contrary, the defined terms in Plaintiffs' discovery are not "straightforward" for the reasons stated in CHLIC's objections to those definitions.  For instance, for Plaintiffs' definition of "Fees Paid to Pharmacy," Plaintiffs do not define the terms "fees" and "sale," rely on the objectionable term "Cigna Group PBMs," and do not specify what is meant by "to be paid, or credited, to a pharmacy" or "a particular prescription drug."  Because the term is defined to include amounts paid by "Defendants" or "Cigna Group PBMs" based on "fees negotiated between Defendants and/or Cigna PBMs...and Participating Pharmacies," the term could mean amounts paid by OptumRx to the pharmacy, amounts paid by Cigna to a pharmacy, or amounts paid by some other unidentified "Cigna Group PBM" to the pharmacy.  Those amounts varied over time and with respect to each prescription drug transaction and, as a result, the definition is far from "straightforward."  Additionally, as noted in CHLIC's responses, several of the defined terms are not only vague and misleading, but also incorrect.  Nevertheless, as indicated above and during our telephonic meet and confer, CHLIC has not refused to produce any material or answer any interrogatories or RFAs based on its objections to Plaintiffs' definitions.  Rather, CHLIC has noted its understanding and interpretation of the defined terms, which is the interpretation on which CHLIC based its responses.

**c.   Requests Not Limited to "Prescription Drug Transactions"**

While we appreciate your assurance that Plaintiffs' discovery requests "relate to prescription drug transactions, not transactions for other medical services or supplies," that attempt to clarify falls short because you have not specified the discovery requests to which that clarification pertains.  Plaintiffs have served two sets of interrogatories, two sets of RFAs, and one set of 29 document requests.  It would be unduly burdensome for CHLIC to search through five sets of discovery to try to determine to which particular discovery requests you are referring.  Accordingly, CHLIC is not in a position to respond or otherwise address the concerns expressed by Plaintiffs with respect to this issue until Plaintiffs identify the particular discovery requests to which this purported "discovery dispute" relates.

**2.   CHLIC's Objections to "Cigna Group" and "Cigna Defendants" Are Proper**

Contrary to your representation, by its objection to the definitions of "Cigna Group" and "Cigna Defendants," CHLIC is not "attempting improperly to limit the discovery to the pharmacy segment of CHLIC."  To be clear, CHLIC has not refused to produce information simply because it might technically reside outside the CHLIC entity.  For example, CHLIC has made significant efforts to collect and produce plan-related documents for plans other than those for which the Named Plaintiffs are participants and/or beneficiaries, and to collect and produce historical templates of the

Craig A. Raabe, Esq.
July 9, 2018
Page 3

"Your Payments" plan language variations.  These efforts were made without any limitation to which legal entity provided the services to the plan, underwrote the plan, developed the benefit design for the plan, etc.  CHLIC understands the essence of these discovery requests – and its discovery obligations – and has not sought to skirt those obligations in any way, including splitting hairs between legal entities.   At the same time, simply because you have named CHLIC in this litigation does not permit Plaintiffs to engage in unfettered discovery into every aspect of CHLIC's business.  As we explained previously, information from areas such as finance/accounting that is relevant to this litigation is within CHLIC's pharmacy operations.  CHLIC has already produced the Pharmacy Economics and Healthcare Pricing organizational charts for those areas and agreed to custodians that are part of those business areas.  As to the other areas in which Plaintiffs are interested (marketing, plan design, media/public relations, government relations, provider relations), as indicated on our June 29 meet and confer call, please provide us with a written list identifying what types of individuals in each area you are looking for CHLIC to identify, what information you believe such individuals would have, and why such information is relevant to Plaintiffs' claims.  This will allow CHLIC to (1) determine whether Plaintiffs are entitled to discovery of such information; and (2) identify the appropriate individuals who might have responsive information.

**3.    Plaintiffs' Definition of "PBM" and Argus Documents**

Next, as we discussed during our meet and confer, we fundamentally disagree about what constitutes a "pharmacy benefits manager."  CHLIC's position is that Plaintiffs' definition of "pharmacy benefits manager," which you contend includes "every pharmacy benefit manager that CHLIC used between October 2010 and the present," is overly broad.  As set forth in its discovery responses, CHLIC serves as its own PBM and contracts with certain vendors (i.e., Argus and OptumRx) to provide specific services in furtherance of CHLIC's PBM operations.  As we discussed on our last meet-and-confer call, documents/information in Argus's possession, which is not otherwise made available to CHLIC, are not within the control of CHLIC or any of its affiliates.

**4.    Discovery Time-Frame**

As we discussed during our meet and confer on June 29, 2018, CHLIC will not stand on its objections and limitation of the time frame to January 1, 2014 with respect to collecting and producing documents.  As we have advised, however, due to burden or technological issues, there may be certain types of documents and/or information for which going back to October 4, 2010 is not reasonably feasible.  For example, the templates of historical "Your Payment" plan language have been located going back to 2011.  Additionally, we are still in discussions with you regarding the appropriate time period for prescription drug transaction data based on what plan language will be relevant to this case, which Plaintiffs have indicated will be limited to certain language in certain plans, and as a result will impact the size of the class and the data to be produced.

**5.    Privileged Materials**

CHLIC has agreed to prepare privilege and redaction logs and will do so in compliance with the District of Connecticut's Local Rules and the Stipulation and Order Regarding Discovery of ESI [Docket No. 90].  While you state that "Plaintiffs are not requesting privileged materials and Cigna need not object on such grounds," CHLIC's privilege objections are proper and necessary to preserve those privileges and protections.  As such, they will not be withdrawn.

Craig A. Raabe, Esq.
July 9, 2018
Page 4

### 6. ESI

Plaintiffs appear to take issue with CHLIC's agreement to produce documents in response to several RFPs "using search terms and other parameters." But Plaintiffs omit CHLIC's agreement to produce documents following "a reasonable and diligent search." Your concern seems to be that CHLIC is somehow limiting its production to responsive emails that hit agreed-upon search terms. That concern is unfounded. CHLIC has agreed to perform a reasonable and diligent search (using, among other things, search terms and other parameters) for responsive, non-privileged documents that it has collected. That collection includes email, hard copy, and other electronic documents. To reduce the unnecessary burden of reviewing an unreasonably large volume of irrelevant and non-responsive documents, CHLIC will utilize the agreed upon search terms and other parameters to identify potentially responsive documents and emails. As to "the policy and procedure documents," we have not identified or located general CHLIC policies and/or procedures that relate to "the implementation of and accounting for Spread-pricing and Clawbacks." If any such documents are located during document review, they will be produced as part of CHLIC's rolling production. If they are otherwise identified and can be produced earlier, CHLIC will undertake its best efforts to do so.

### 7. First RFA Responses dated August 15, 2017

Plaintiffs' First RFAs referred to a May 5, 2016 email, which includes the phrase "OptumRx's Pharmacy Reimbursement Overpayment program," but was not sent from or to anyone at CHLIC, and then asks CHLIC to admit or deny that the "Cigna Defendants did not have a 'Pharmacy Reimbursement Overpayment program,'" and that "Optum did not have a 'Pharmacy Reimbursement Overpayment program.'" Your representation in your Letter that "[t]hese two RFA's ask simply whether Cigna has a program by that same name or whether, *to its knowledge*, Optum *had* such a program," thus, mischaracterizes the requests. After conducting a reasonable and diligent inquiry of relevant employees, CHLIC appropriately responded that it was "unable to admit or deny" the requests "as phrased" because they seek "an admission requiring the internal knowledge about the meaning and intent of statements in an email sent by an employee of another company that was neither sent to nor mentions [CHLIC]." Indeed, without knowing what "Pharmacy Reimbursement Overpayment program" means, CHLIC cannot respond with an unqualified admission or denial, and it is beyond CHLIC's discovery obligation to speak with individuals at other companies to determine what was meant by that phrase. Information known by employees of a separate vendor, e.g., Catamaran or OptumRx, is not information CHLIC is obligated to obtain.

### 8. First Interrogatory Responses dated September 1, 2017

Interrogatory No. 3 asks CHLIC to "state by total dollars and by percentage allocation between Cigna and Cigna PBMs (broken out by each PBM) the amount of Spread that you created and the amount of Clawbacks that you took" for each named Plaintiff. As an initial matter, this interrogatory prematurely seeks expert information. Additionally, CHLIC's objection to the term "percentage allocation" is appropriate because it cannot allocate its data in this manner, as no such allocation is tracked. CHLIC, therefore, properly stood on its objections to this Interrogatory.

Interrogatory No. 4 refers to the same email that is the subject of Plaintiffs' First RFAs, and asks CHLIC to state whether a non-CHLIC employee's statements about "Optum's Pharmacy Reimbursement Overpayment program" were true when made, and, if either or both were not true, state why they were made and identify who was aware that they were being made. As noted in CHLIC's response to this Interrogatory, and noted above as to the First RFAs, such requests require the internal knowledge of a non-CHLIC employee, which is not information available to CHLIC. While

Craig A. Raabe, Esq.
July 9, 2018
Page 5

you state that CHLIC has an obligation to ask OptumRx whether it made those statements and whether they are true, you provide no authority for that contention. Moreover, that contention is misplaced considering that OptumRx is a Defendant in this action and Plaintiffs posed the exact same Interrogatory to OptumRx.

### 9.    Second RFA Responses dated May 24, 2018

CHLIC properly objected to certain of Plaintiffs' Second RFAs on the ground and to the extent that they may call for a legal conclusion. *See E.E.O.C. v. Bloomberg L.P.*, No. 07 CIV 8383 LAP, 2010 WL 3260150, at *1 (S.D.N.Y. Aug. 4, 2010) (sustaining objections based on improper legal conclusions to requests asking for an admission that a specific action or decision "complied with Title VII." "'[I]t would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts.'"); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 432–33 (S.D.N.Y. 2012) (declining to admit as deemed admissions Rule 36 requests asking whether "the sunglasses depicted in various exhibits are counterfeit goods," whether they "infringe" on certain marks and whether the defendants "sold thousands of Infringing Products"); *Matysiak v. Spectrum Servs. Co.*, No. 3:10 CV 1841 CSH, 2014 WL 3819206, at *4 (D. Conn. Aug. 4, 2014) (In an FLSA case, the defendants were not required to admit that the FLSA and Florida Minimum Wage Act applied to its business and to plaintiff's work at the time she was employed by defendants because "[a]lthough Rule 36(a) authorizes a party to serve a request for admission relating to the application of law to fact, a party may not seek an admission as to a pure conclusion of law[,]" and the four requests at issue "improperly [sought] admissions of pure legal conclusions."). Similarly, here, many of the Second RFAs improperly seek admissions of pure legal conclusions—i.e., RFAs asking for admissions as to whether notice or disclosures compliant with the DOL Regulations was provided or whether procedures compliant with the DOL Regulations were established or maintained. Nevertheless, as noted above, CHLIC responded to those RFAs and did not simply stand on that objection.

As to the issues you raise regarding specific requests in the Second RFAs, we address them as follows:

**Request Nos. 1 and 2**: CHLIC denied these RFAs, notwithstanding its objections.

**Request No. 4**: This RFA asked CHLIC to admit that the "pharmacies were paid in full for the drugs that were prescribed with respect to each prescription drug transaction." You note that Plaintiffs believe CHLIC's objection to the phrase "paid in full" is meritless. Not so. In fact, because you felt the need to clarify what Plaintiffs' understanding of that term meant for purposes of the RFA confirms the merit of CHLIC's objection. Moreover, while not the actual language of the RFA, in your Letter, you also attempt to revise the RFA to pertain to "every prescription drug transaction in which there was Spread from October 1, 2010 to the present." Although you now desire to revise this RFA, CHLIC has no obligation to revise its answer. Instead, CHLIC's response—that it cannot "admit or deny the Request as phrased, as it seeks an admission requiring information known to Plaintiffs and/or the pharmacies, but which is not known to CHLIC"—is appropriate. CHLIC does not know what the pharmacies consider as being "paid in full." For example, there could have been disputes between certain pharmacies and OptumRx about the rate of payment for a particular transaction or series of transactions for a particular day, month, year, or years. Such disputes would, in most cases, be solely between the pharmacy and OptumRx and arise out of the contract between those two parties. CHLIC would not be involved or even aware of such disputes. CHLIC, therefore, cannot admit or deny that the pharmacies were "paid in full" for every prescription drug transaction.

Craig A. Raabe, Esq.
July 9, 2018
Page 6

**Request No. 12:**  This RFA sought an admission that CHLIC "did not disclose to Plaintiffs the amount of the Spread or Clawback in connection with prescription drug transactions."  CHLIC responded that it cannot "admit or deny the Request as phrased" because it does not specify to which of Plaintiffs' prescription drug transactions it relates, and because information in Plaintiffs' Consolidated Amended Complaint ("CAC") indicated that such information was disclosed to Plaintiffs. Now, for the first time in your Letter, you completely reframe this request to pertain to "the time of the prescription drug transactions," which you explain as "at the point of sale or in an explanation of benefits."  That modification fares no better, as it relates to two different points in time. It is also nonsensical because CHLIC is not present at the point of sale.  Moreover, CHLIC provided information supporting its response to this RFA in its response to Plaintiffs' Second Set of Interrogatories.  CHLIC, therefore, has fully and appropriately responded to the RFA propounded and no amendment or supplemental response is warranted.

**Request No. 15:**  This RFA asks CHLIC to admit that it "instructed pharmacies to charge Plaintiffs fees (in the form of copayments, coinsurance, and/or deductibles) that exceeded the amount paid to pharmacies in connection with prescription drug transactions."  CHLIC responded with an unqualified denial, and, thus, has fully and appropriately responded.

In your Letter, you take issue with certain of CHLIC's objections—specifically, objections that Plaintiffs did not identify the particular prescription drug transactions, that Plaintiffs may be better positioned to have information to respond, and that the request assumes facts.  As an initial matter, you provide no explanation or rationale to support your position.  Even if you had, however, those objections are appropriate for the following reasons:

- CHLIC did not state that it could not identify the drug transactions at issue.  CHLIC objects to Plaintiffs' failure to identify the specific prescription drug transactions that are the subject of the RFA, which makes the RFA overly broad and vague.  Asking for an admission that pertains to multiple prescription drug transactions for multiple Named Plaintiffs is improper and a response could be misconstrued.

- Plaintiffs also have information about what they were charged, so information necessary to respond may also be "more readily available" to Plaintiffs than it is to CHLIC.  Indeed, CHLIC is not present at the time the pharmacy charges Plaintiffs, but Plaintiffs are.

- This request assumes facts not in evidence, specifically the manner in which information regarding the prescription drug transactions is facilitated, and that CHLIC directly communicates with the pharmacies in OptumRx's network.  It also assumes that in every prescription drug transaction, the pharmacies charged Plaintiffs fees that exceeded the amount paid to pharmacies, which is not true, as set forth in CHLIC's response to Plaintiffs' Second Set of Interrogatories relating to this RFA.

CHLIC's objections to this RFA, therefore, are well-founded and will not be withdrawn.

**Request No. 16:**  This RFA asks CHLIC to admit "it instructed pharmacies to collect Spread from Plaintiffs in connection with prescription drug transactions."  CHLIC again responded with an unqualified denial, and, thus, has fully and appropriately responded. CHLIC's objection that Plaintiffs' failure to identify the specific prescription drug transactions that are the subject of this RFA is well-founded, as noted above.  Similarly, CHLIC's objection to the undefined terms "instructed" or "collect" are appropriate.  CHLIC has a right to object to such terms to the extent that the parties have different understandings of terms.  As shown by your Letter, Plaintiffs' interpretation of certain

Craig A. Raabe, Esq.
July 9, 2018
Page 7

requests and or terms may differ from CHLIC's.  CHLIC, therefore, will not delete its proper objections.

**Request No. 17**:  This RFA asks *CHLIC* to admit that "*Pharmacies* collected Spread from Plaintiffs in connection with prescription drug transactions."  (emphasis added).  As to Plaintiffs' concerns regarding CHLIC's objections to this RFA, we reiterate what is stated above.[1]  Your statement that "Cigna admitted that its network pharmacies collected 'participants' payments' that 'exceeded' the 'Pharmacy Contract Rate' and 'Catamaran Rate,'" is false.  Instead, in response to Plaintiffs' First Interrogatories, CHLIC states that "[t]he participants' payments sometimes exceeded, sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue[.]"  This same information is provided in CHLIC's response to Plaintiffs' Second Interrogatories, which asked CHLIC to provide facts supporting the reason it could provide an unqualified admission to this RFA.  In addition to that information, this RFA specifically asks about amounts that *pharmacies* collected from Plaintiffs, which requires information outside of CHLIC's possession, custody, or control, and which may be more readily available to Plaintiffs.  *See CAC* ¶¶ 10-13, 66-69.  CHLIC, therefore, does not "need to admit this RFA," as you demand.  While you may not like CHLIC's answer, the response to this RFA and the corresponding Interrogatory more than satisfy CHLIC's discovery obligations.

**Request No. 18**:  This RFA asks CHLIC to admit that "[p]harmacies remitted Spread paid by Plaintiffs to Defendants in connection with prescription drug transactions."  As noted previously, in failing to identify which prescription drug transactions to which this request specifically pertains, CHLIC cannot "admit this RFA," as you demand in your Letter.  As noted in CHLIC's corresponding response to Plaintiffs' Second Set of Interrogatories, "participants' payments sometimes exceeded, sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."  While you state that Plaintiffs "are employing the common meaning of 'remitted' as found in any dictionary," CHLIC's objection is appropriate to the extent the parties operated using different understanding of that term.  Additionally, while CHLIC stated that "in and around the February-May 2014 time period, Argus implemented the operational capability for CHLIC to track and reconcile the differential in instances where a participant's payment to a Catamaran network pharmacy exceeded the Catamaran Rate, and Catamaran credited CHLIC with that differential," that does not equate to the same meaning as "remitted"—which contemplates an actual transfer of money from one party to another (in the context of this RFA, from the pharmacies to CHLIC)—especially considering the complexity of the agreements at issue.  Nor does it require CHLIC to admit this RFA, which pertains to "prescription drug transactions" where it is possible and likely the case that Plaintiffs' "payments … sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."

**Request No. 19**:  CHLIC's denial of this RFA seeking an admission that "Defendants allocated Clawbacks among each other" is not based on the objections posed.  Again, we reiterate the fact that Plaintiffs did not identify the specific prescription drug transactions that are the subject of this RFA, such that it concerns transactions where "participants' payments … sometimes were the same as, and sometimes were less than, the amount the pharmacy had contractually agreed to be paid for the prescription drug transaction at issue."  CHLIC also properly objected to the undefined term "allocate."  Thus, CHLIC will not revise or delete its objections to this RFA.

---

[1]  Where you state "[s]ame as above" in your Letter, we likewise refer you to CHLIC's positions as set forth earlier in this response.

Craig A. Raabe, Esq.
July 9, 2018
Page 8

**10.**  **Supplemental RFP Responses dated May 25, 2018**

**RFP No. 1:** This request sought documents "sufficient to show [CHLIC's] organizational structure and management hierarchy, Including the groups, divisions, and all employees involved with prescription drug benefits, prescription drug pricing, and pricing policies and procedures concerning the sale of prescription drugs." In response, CHLIC produced documents showing the organization of the Cigna Pharmacy Management business unit as it pertains to commercial retail pharmacy network operations. More recently, you and your co-counsel have inquired into other areas of CHLIC, and now claim that "Cigna cannot restrict organizational charts to its 'Cigna Pharmacy Management business unit.'" Please see our response to Item 2 above regarding other areas of CHLIC's business.

**RFP No. 2:** As to RFP No. 2, which asks for "[d]ocuments sufficient to identify each Participating Pharmacy, Including the length of time the pharmacy has been a Participating Pharmacy," CHLIC agreed to "produce, based on information available to it, prescription drug transaction records sufficient to identify the retail pharmacies implicated by" Plaintiffs' claims in this case for the period January 1, 2014 through the filing of the CAC. The prescription drug transaction data that CHLIC has agreed to produce in response to this RFP will identify all network pharmacies that engaged in prescription drug transactions for putative class members over that timeframe. In your Letter, however, you "demand the identification of all network pharmacies that engaged in prescription drug transactions involving Spread between October 1, 2010 and the present." That demand is no small feat, as no magical list of such pharmacies exists. As you know, there are multiple factors at play, at various different time periods, that relate to whether or not a prescription drug transaction generated "Spread," as Plaintiffs define that term. It appears that your concern relates to the time period. As noted above, CHLIC will not stand on its objections and limitation of the time frame to January 1, 2014 with respect to collecting and producing documents, and we are still in discussions regarding the relevant plan language and appropriate time period for prescription drug transaction data. Nevertheless, to the extent CHLIC can locate a list of network pharmacies, it will be produced as well. CHLIC also notes that Plaintiffs can obtain information regarding pharmacies participating in OptumRx's network, from OptumRx, which is also a defendant in this case.

**RFP No. 3:** This request sought CHLIC's agreements with PBMs. In response, CHLIC noted that it has already produced relevant portions of its agreement with OptumRx and Argus. Plaintiffs now "demand production of unredacted versions of all agreements with any PBM that Cigna used between October 1, 2010 and the present." As set forth in the redaction log prepared by CHLIC at Plaintiffs' request, CHLIC's agreements with OptumRx and Argus contain confidential, proprietary, and commercially sensitive business information that is not relevant to the claims or defenses in this action. As a result, that information has been redacted appropriately. The parties are still meeting-and-conferring on this issue, and we look forward to receiving further information from you identifying the particular Bates numbers for pages, or sections of agreements, that were redacted, and Plaintiffs' position as to why the redacted information is relevant, as requested in Lisa Veasman's email to Meghan Oliver earlier today.

**RFP No. 4:** This request seeks all documents or communications relating to "Spread" or "Clawbacks." CHLIC responded that it will conduct a reasonable and diligent search using search terms and other parameters to which the parties agree. CHLIC also directed Plaintiffs to the agreements with OptumRx and Argus, which it already produced, and agreed to produce other plan-related documents after the parties agree on a reasonable and appropriate protocol. In your Letter,

Craig A. Raabe, Esq.
July 9, 2018
Page 9

you demand production of the policy, procedure, and accounting documents discussed with Magistrate Garfinkel. Please see CHLIC's response to Item 6 above.

**Request No. 5,6, 9-15 and 26-29**: As to these RFPs, Plaintiffs contend that "Cigna's objections to 'undefined terms' are meritless," and/or "demand compliance with this request" beyond ESI discovery. As to CHLIC's objections to the "undefined terms," CHLIC will not withdraw its objections for the same reasons explained above. Similarly, CHLIC's objection to RFP No. 12 on the grounds of relevancy, because the RFP is not limited to media coverage that could pertain to CHLIC also, is appropriate. Please explain how media coverage that does not pertain to CHLIC is relevant in this case. Further, CHLIC does not understand the issue you raise as to RFP No. 10 and incorporating a response to RFP No. 4. CHLIC's response to Request No. 10 does not incorporate its response to Request No. 4. If you intended to refer to CHLIC's response to RFP No. 9, which asked for documents showing "the recipient(s) and amount of money or other consideration paid, sent, transferred, or credited relating to Clawbacks and Spread," CHLIC's incorporation of its response to RFP No. 4 is an appropriate response. Indeed, that response identifies several ways in which CHLIC will comply with the request. Finally, as to your demand for compliance, CHLIC notes that it has already agreed to comply. Your statement that the requests are not "limited to ESI discovery" is also misplaced, as explained above in Item 6.

**RFP No. 7**: This RFP sought "[d]ocuments sufficient to identify the amount of all Clawbacks, Including the amount of Spread income generated." In response, CHLIC agreed to produce prescription drug transaction data, which is "sufficient to identify the amount of" what Plaintiffs call "Clawbacks" and "Spread." Additionally, as noted above, we are still in discussions regarding the relevant plan language and appropriate time period for prescription drug transaction data. Nonetheless, Plaintiffs contend that "[c]ompliance cannot be limited to prescription drug transaction data," and that "there are finance, accounting, budgeting or planning documents that reflect aggregation of Spread and Clawbacks. Plaintiffs' assumptions about what documents exist are incorrect. Based on the current investigation, there are no "finance, accounting, budgeting or planning documents" in CHLIC's custody, control, or possession that "identify the amount of all Clawbacks," as this RFP requests. CHLIC's response, therefore, is appropriate and fully satisfies the RFP.

**RFP No. 8**: This RFP requests "[d]ocuments sufficient to show the monthly revenues, profits, and other consideration received or credited from prescription drug premiums, Clawbacks, and Spread." In response, CHLIC agreed to produce prescription drug transaction data. As noted above, that data is "sufficient to show" amounts of what Plaintiffs call "Clawbacks" or "Spread," and we are still discussing the relevant plan language and appropriate time period for prescription drug transaction data. CHLIC's response, therefore, is appropriate and fully satisfies the RFP as it pertains to "Clawbacks" or "Spread." Plaintiffs, however, "demand compliance with this request, including the premium information requested." As to the premium-related documents Plaintiffs request, CHLIC stands on its objection that this RFP is vague, ambiguous, lacks particularity, and requests information not relevant to the claims and defenses in this action. It is still unclear what type of information Plaintiffs seek. As discussed during our June 29 meet-and-confer call, please clarify so that we can further inquire as to whether any such documents exist. Additionally, please explain how monthly revenues generated from prescription drug premiums, if any is measured at all, is relevant to Plaintiffs' claims.

**RFP No. 17**: This request sought "[a]ll Documents supporting, providing a basis for, contradicting, or otherwise concerning or relating to any claim or defense asserted in the Action, Including both claims and defenses on the merits, as well as any defenses or opposition to class

Craig A. Raabe, Esq.
July 9, 2018
Page 10

certification." CHLIC again agreed to conduct a reasonable and diligent search using agreed upon search terms and parameters, which include any such documents. In your Letter, you state: "To be clear, Plaintiffs are requesting any information that Cigna intends to use in motion practice or at trial to support any proposition or defense." At this juncture, CHLIC does not know which information may or may not be used in motion practice or at trial, and, if it did, at this early stage in the litigation, such information or documents are protected attorney work-product. When it becomes appropriate to do so, CHLIC will either update its disclosures or provide additional information regarding such documents—i.e., in support of its opposition to Plaintiffs' motion for class certification, or on appropriate exhibit lists.

   **RFP No. 18**: This RFP calls for CHLIC's document retention policies, and CHLIC agreed to produce them as it relates to its commercial retail pharmacy network operations. Some document retention policies are applicable across the company and therefore should satisfy your request and resolve the stated issues. You contend, again, that "Plaintiffs are entitled to" documents and information for other "areas: pharmacy network operations, finance/accounting, marketing, plan design, media/public relations, government relations, provider relations." We again direct you to the response to Item 2 above.

   **RFP No. 20**: This RFP requests "[a]ll Documents concerning any insurance policies, indemnification agreements, hold harmless agreements, or by-laws under which [CHLIC] may claim coverage to satisfy part or all of any possible liabilities resulting from any of the claims asserted in the Action." As set forth in CHLIC's response, CHLIC is not aware of any insurance policy that would provide coverage in this case. Plaintiffs contend that "[t]his request encompasses more than insurance policies," and that "Cigna must produce any indemnification, hold harmless, or similar agreements." We are in discussions with CHLIC and Optum regarding what, if anything, is responsive and can be produced, and will get back to you.

   Based on the above, we are hopeful that Plaintiffs will significantly narrow the issues set forth in your Letter. As to any remaining issues, we are available to further meet and confer with you after you have had an opportunity to consider the responses set forth herein.

Very truly yours,

Brian W. Shaffer

cc:    All Counsel of record