# EXHIBIT 71

# Exhibit CK

Page 1

```
 1
 2           C O N F I D E N T I A L
 3     IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF CONNECTICUT
 4     ----------------------------------x
       KIMBERLY A. NEGRON, Individually
 5     and on Behalf of All Others
       Similarly Situated, DANIEL PERRY,
 6     Individually and on Behalf of All
       Others Similarly Situated,
 7     COURTNEY GALLAGHER, Individually
       and on Behalf of All Others
 8     Similarly Situated, NINA CUROL,
       Individually and on Behalf of All
 9     Others Similarly Situated, ROGER
       CUROL, Individually and on Behalf
10     of All Others Similarly Situated,
       and BILLY RAY BLOCKER,
11     Individually and on Behalf of All
       Others Similarly Situated
12                       Plaintiffs
13             -against-          Civil Action
                                  No.
14     CIGNA CORPORATION, CIGNA HEALTH   3:16-cv-1702
       AND LIFE INSURANCE COMPANY, and  (JAM)
15     OPTUMRX, INC.
                       Defendants
16     ----------------------------------x
17                   October 21, 2020
                     10:06 a.m.
18
19           Remote Videotaped 30(b)(6)
20     Deposition of Cigna Health and Life
21     Insurance Company by DEBORAH TURNER,
22     located in Charlotte, North Carolina,
23     taken via Zoom before Dawn Matera, a
24     Shorthand Reporter and Notary Public.
25
```

Page 8

1            Turner - Confidential
2    benefit determinations in connection with
3    claims for prescription drug benefits; is
4    that right?
5            A.    Right.
6            Q.    Okay.  The third is the way in
7    which Cigna's claim procedures contain
8    processes and safeguards designed to
9    ensure and to verify benefit claim
10   determinations for prescription drug
11   benefits that were made in connection
12   with the relevant plan booklets; is that
13   right?
14           A.    Yes.
15           Q.    And then the final is the way
16   in which Cigna's claim procedures contain
17   processes and safeguards designed to
18   ensure and to verify that the plan
19   provisions for prescription drug benefits
20   have been consistently applied with
21   respect to similarly situated claimants;
22   is that right?
23           A.    That's correct.
24           Q.    Okay.  Let's start with the
25   first one.  Cigna's procedures for

1          Turner - Confidential
2     notifying members of adverse benefit
3     determinations in connection with claims
4     for prescription drug benefits.
5               First, can you tell me what an
6     adverse benefit determination is?
7          A.    Yes.  An adverse benefit
8     determination is when Cigna has denied
9     coverage, in part or in whole, for a
10    particular situation for a customer.
11         Q.    Okay.  So for example in a
12    prescription drug area, that would be
13    where Cigna denies coverage, in part or
14    in whole, for a claim for prescription
15    drug benefits?
16         A.    That is accurate to a degree.
17    But for pharmacy benefits, for retail
18    pharmacy benefits, the customer goes into
19    the pharmacy, gets their prescription or
20    if for some reason at the pharmacy it
21    can't be filled, or they -- that doesn't
22    really constitute the claim at that
23    point, because the pharmacy really has no
24    discretion in the plan.
25               But if they -- same with, they

1          Turner - Confidential

2     go into a pharmacy and they pay their

3     co-pay straight out and the rest is paid,

4     there is no adverse determination there.

5               So a little different with

6     retail pharmacy in that regard.  But we

7     do offer reasonable procedures for the

8     customers that may fall into one of those

9     situations to reach out to Cigna

10    Healthcare for any kind of complaint,

11    concern, et cetera, about a particular

12    experience they've had at the pharmacy.

13        Q.    Okay.  Is an adverse benefit

14    determination different from a benefit

15    denial or is it the same?

16        A.    I think they can be used

17    interchangeably.  Adverse determination,

18    benefit denial is a subset of that.

19        Q.    Would a denial notice be the

20    same thing as a notice of an adverse

21    benefit denial determination?

22        A.    Yes.

23        Q.    So let's step back a little

24    bit, because, you know, you just alluded

25    to what is a claim for a prescription

1          Turner - Confidential
2     Cigna needs to be put on point that I'm a
3     customer and I've got questions, concerns
4     or complaints about what happened at the
5     drugstore when I tried to get this
6     prescription filled.
7          Q.    We are not on complaints yet.
8     We are trying to take this step by step.
9     So just so, I just want to clarify, so
10    your view is the prescription drug
11    benefit is Cigna will pay the pharmacy
12    expenses subject to the co-payment,
13    deductible payment and coinsurance that a
14    member has to make under a plan, is that
15    fair?
16               MS. FARRELL:  Objection.
17          A.    Yes, that's fair.
18          Q.    Now, I want to shift gears a
19    little bit and I want to talk about a
20    claim for prescription drug benefits.
21    And you mentioned the applicable
22    regulations a minute ago.  So for the
23    next exhibit, I want to show you a
24    regulation and tell me if Cigna's
25    definitions are consistent with the

Page 24

1            Turner - Confidential

2    it's my understanding that a pre-service

3    appeal, it's something that is, that

4    requires a preauthorization of some sort,

5    and a customer either calls in or submits

6    a request for pre-service, and when that

7    occurs we do treat that in our process as

8    a claim/appeal.

9         Q.    So Cigna views a claim and

10   appeal as the same thing.

11        A.    Well, generally pre-service

12   appeals are around things that are called

13   into our pharmacy.  I am keeping it in

14   conjunction with this pharmacy topic, in

15   conjunction with a prescription

16   medication that needs prior approval,

17   et cetera.  So when that customer or

18   their physician calls in to the pharmacy

19   service center or faxes in information,

20   or sends a letter even, asking for we see

21   this coverage of X and Y, requires prior

22   authorization, here is the medical

23   records, is this covered under this

24   particular plan of benefits.

25        Q.    So is a claim different from an

```
 1          Turner - Confidential
 2    well, pre-service claim/appeal.
 3          Q.    Well, okay.  So you think
 4    that -- I guess I'm not sure what you
 5    mean by pre-service claim/appeal.  So
 6    here this definition of pre-service
 7    claim, you interpret this to be
 8    consistent with Cigna's view of both a
 9    pre-service claim and an appeal, is that
10    your testimony?
11          A.    Well, yes.  It could be.
12    Somebody -- if somebody --
13          Q.    That's fine.  I am just trying
14    to move us along here.  The next one M 3.
15               MS. FARRELL:  Bob, please let
16          her answer the question.  You keep
17          cutting off her answer.  Please --
18               MR. IZARD:  I am asking very
19          simple questions and we're not getting
20          answers, but that's fine.
21          A.    Go ahead.
22          Q.    The next definition is
23    post-service claim, that's subpart III,
24    do you see that?  Is that consistent with
25    Cigna's definition of post-service claim?
```

1          Turner - Confidential
2          A.    I would say it's consistent.
3     Basically, a post-service claim means a
4     claim that has been filed with Cigna
5     Healthcare being on point to review and
6     there has been some type of limitation,
7     denial, in whole or in part, and it's
8     after this service was delivered.
9          Q.    Now, the next one is a
10    definition of adverse benefit
11    determination.  Do you see that?
12         A.    Yes, I do.
13         Q.    My question is, is that
14    definition consistent with Cigna's
15    definition of adverse benefit
16    determination?
17         A.    It is consistent.
18         Q.    Okay.  Now, let's flip back to
19    (e), which is at page 4, claim for
20    benefits.  Do you see that on page 4,
21    claim for benefits?
22         A.    I am almost back there.
23               Yes, I see that.
24         Q.    Now that you've had a chance to
25    look at the definition of pre and

Page 34

```
 1          Turner - Confidential
 2    post-service claims, is definition (e),
 3    definition of claim for benefits, is that
 4    consistent with Cigna's understanding of
 5    a claim for benefits?
 6        A.    Okay.  One moment.  I will read
 7    through it.
 8             (Witness reviews document.)
 9        A.    Yes, I think it's consistent.
10        Q.    Okay.  All right.
11             MR. IZARD:  Charlotte, let's
12        move on to the next exhibit, which is
13        Cigna 12479742, which will be Exhibit
14        285.
15             (Exhibit 285, Document Bates
16        stamped Cigna 12479742, was so marked
17        for identification, as of this date.)
18             MS. LOPER:  Okay.  It should be
19        loaded now.
20             THE WITNESS:  Give me a moment
21        to refresh.
22             MS. LOPER:  And Bob, just so you
23        know, the sticker covers the Bates
24        number on the first page, but you can
25        see it on the radiating pages.
```

1          Turner - Confidential

2               MR. IZARD:   Okay.

3      A.    I have the image open.

4      Q.    Okay.  Can you tell me what

5  that is, please, Ms. Turner?

6      A.    It is a prescription drug claim

7  form.  A claimant can fill out this form

8  and submit it to Cigna Healthcare.

9      Q.    So this is the claim form you

10  would use when you would not go to a

11  network pharmacy; is that right?

12      A.    It could be used, yes.

13      Q.    Well, if you look in the upper

14  box, it says reason for reimbursement, it

15  says emergency, primary coverage,

16  eligibility?

17      A.    Right.

18      Q.    Non-participating pharmacy, do

19  you see that?

20      A.    Right, right.  And the only

21  reason I say it could is it may not be

22  this official form and someone would send

23  it in in a different method.  But, yes,

24  that's what this form is designed for.

25      Q.    And so in this scenario, you go

Page 36

1          Turner - Confidential

2      to the non-participating pharmacy.  You

3      pay the pharmacy in full for the drug.

4      And then you submit this form to Cigna to

5      try to get reimbursed for some or all of

6      the amount you pay to the pharmacy.  Do

7      you see that?

8          A.    Yes, that would be correct.

9          Q.    Okay.  Now, if we go down to

10     prescription information, I just want to

11     talk about that for a second.  And you

12     can see there is a 1 for the box on the

13     left side and a 2 for the box on the

14     right side, do you see that?

15         A.    Yes.

16         Q.    And so let's start with 1, it

17     has date filled, that would be the date

18     the prescription is filled; is that

19     right?

20         A.    Correct.

21         Q.    And then RX number, what is RX

22     number?

23         A.    That is the national drug code

24     number that follows the particular

25     medication through the process.  Each

Page 37

1              Turner - Confidential
2      drug has an NDC number.
3          Q.    And then there is the quantity,
4      that would be the number of pills, for
5      example?
6          A.    Right.
7          Q.    Is that right?
8          A.    Correct.  Correct.
9          Q.    And then the day supply, how
10     many days those pills are going to last
11     you?
12         A.    Right.
13         Q.    And then over on 2, there is a
14     separate box with the same information,
15     do you see that?
16         A.    I do see that.  Let me back up
17     for just a minute.  The RX number.
18         Q.    Yeah.
19         A.    That could also, in the sense
20     of this form, with a customer filling it
21     out, a pharmacist may put an identifying
22     number for that customer on that
23     particular prescription.  So that RX
24     number could also be that.
25         Q.    I see.  So for box number 1, it

1              Turner - Confidential

2       has those fields.  And then for box

3       number 2, it has the same fields.  Do you

4       see that?

5            A.    I do.

6            Q.    And do each of those represent

7       a separate claim under, using this form?

8            A.    I mean, it does appear that

9       this form could be used to file, if a

10      customer has two prescriptions, that they

11      can fill out the information for one

12      prescription in box 1, the second

13      prescription in box 2.

14           Q.    Or you could use a separate

15      claim form for the first prescription and

16      then a different claim form for the

17      second prescription, is that right?

18           A.    That is a possibility they

19      could do, yes.

20           Q.    So you're making a claim for

21      each separate prescription; is that

22      right?

23           A.    Yes.

24           Q.    Now, this information, if you

25      went to a network pharmacy, the

```
1              Turner - Confidential
2      information in this box here, that would
3      be -- you wouldn't submit the form.  The
4      pharmacist would input this information
5      from the slip that you got from the
6      doctor?
7              MS. FARRELL:  Objection.
8         A.    I'm sorry, ask the question
9      again.
10        Q.    Sure.  If you're going to an
11     in-network pharmacy, you said earlier
12     that you don't have to file the form.
13        A.    Right.
14        Q.    But an in-network pharmacy, the
15     pharmacist types this information in, for
16     example, box 1, into the computer; is
17     that right?
18             MS. FARRELL:  Objection.
19        A.    Well -- yeah, I can't really
20     testify to the specifics of what they
21     type in at the pharmacy.  I would say
22     some of the information may be same or
23     similar.  But I can't confirm what they
24     are doing at the pharmacy and getting
25     that to Cigna through the pharmacy's
```

Page 40

1          Turner - Confidential
2     systems to be reimbursed.
3          Q.    Okay.  Well, you know that the
4     pharmacist at least has to type in the
5     quantity of pills they are getting,
6     right?
7          A.    Yeah.  I mean there is
8     fundamental information that they need to
9     add in as they are submitting their
10    electronic request.
11         Q.    Sure.  And what is that
12    fundamental information?
13         A.    I can't speak to all of it.  I
14    don't really know.  It's not -- I don't
15    deal with the front-end pharmacies and
16    the relationship and the systematic
17    setups between pharmacies direct into
18    Cigna.
19         Q.    Well, do you know any
20    information that the pharmacist inputs?
21         A.    Well, I am sure that it would
22    be, it would be speculating.  But they
23    are obviously going to have to identify
24    themselves, which pharmacy and what the
25    medication is.  But again, I am not privy

Page 41

1              Turner - Confidential

2     to or have the specifics on what's

3     submitted back and forth between the

4     pharmacy, as a contracted pharmacy, and

5     Cigna.

6          Q.    Sure.  You know they have to

7     put in the quantity though, right?

8                 MS. FARRELL:  Objection.

9          Q.    Of pills?

10                 MS. FARRELL:  Asked and

11          answered.

12          A.    I can't say I know to anything

13     that I don't 100 percent know.  I can

14     speculate and say.

15          Q.    That's okay.  That's fine.

16     Now, when the pharmacy inputs whatever

17     information the pharmacist inputs, then

18     that information goes up to Cigna; is

19     that right?

20                 MS. FARRELL:  Objection.

21          A.    I mean, not -- again, that's

22     the front-end process at point of sale

23     and it's really outside of what my

24     knowledge would entail.

25          Q.    Okay.  Well, you know, when the

Page 42

1            Turner - Confidential
2     pharmacist -- I don't want to pry into
3     personal information on what you get, but
4     you have gone to a pharmacist and had a
5     prescription filled before in your life?
6          A.    I have.
7          Q.    Okay.  And when you go to the
8     pharmacist, you give the pharmacist the
9     information regarding your prescription;
10    is that right?
11         A.    I do.
12         Q.    And that includes what the
13    medication is and the quantity and how
14    long you're meant to use that quantity
15    for, that type of information, right?
16         A.    That is correct.
17         Q.    And you're not sure what the
18    pharmacist does with that information; is
19    that right?
20              MS. FARRELL:  Objection.
21         A.    Yeah, I don't want to speculate
22    for the particulars of what the pharmacy
23    does.
24         Q.    Sure.  But whenever the
25    pharmacist does whatever the pharmacist

Page 43

1              Turner - Confidential
2     does, the pharmacist tells you whether
3     that prescription is covered under your
4     plan; is that right?
5         A.    They will generally say, here
6     is your co-pay for this medication,
7     et cetera, or your coinsurance, whatever
8     the case may be, they collect that and go
9     from there.
10        Q.    And they collect it before they
11    give you the drug?
12             MS. FARRELL:  Objection.
13        A.    Sure.  At least upon checkout,
14    my experience is I hand them the
15    prescription and my ID card, they fill
16    the prescription and then they tell me
17    what my co-pay and/or my coinsurance
18    might be for that particular medication.
19        Q.    Sure.  And they could also say,
20    you know, this medication is not covered
21    under your plan, and if you want it, you
22    have to pay 100 percent; is that right?
23             MS. FARRELL:  Objection.
24        A.    That is correct, that could
25    happen.

```
1              Turner - Confidential
2         Q.     Yeah.  And so before you
3    receive your prescription, you know if
4    the prescription is covered under your
5    plan and how much your co-payment or
6    coinsurance will be; is that right?
7                 MS. FARRELL:  Objection.
8         A.     Can you ask the question again,
9    I'm sorry.
10        Q.     Sure.  So before you get the
11   prescription from the pharmacist.
12        A.     Right.
13        Q.     You know two things.  You know
14   if your prescription is covered under
15   your plan, and two, how much you owe for
16   either a co-payment or coinsurance or a
17   deductible payment; is that right?
18                MS. FARRELL:  Objection.
19        A.     Yes, I would know when I left
20   the pharmacy what the situation was and
21   how much I had to pay.
22        Q.     And in fact before you left the
23   pharmacy, you have to pay, you have to
24   pay before you get the drug, right?
25        A.     Well, yes, just like with any
```

Page 45

1            Turner - Confidential
2      other -- yes, you would.  Yes.
3          Q.    Okay.  And so before -- and
4      payment for that drug is a requirement
5      before you can have a drug; is that
6      right?
7                MS. FARRELL:  Objection.
8          A.    Let me make sure I am following
9      the question.  Your question is, the
10     customer at the retail would need to pay
11     or they are not going to obtain their
12     medication at that point?
13         Q.    Right.
14               MS. FARRELL:  Objection.
15         A.    Yeah.
16         Q.    Sorry, I didn't hear, was that
17     a yes?
18         A.    I mean, you're going to know if
19     you had to pay and if they are -- yeah.
20         Q.    So, yeah, to get the drug, you
21     have to pay for it?
22         A.    Yes.
23               MS. FARRELL:  Objection.
24         A.    Yes, you have to pay for it --
25               THE COURT REPORTER:  I'm sorry,

Page 46

1          Turner - Confidential
2       can you repeat that?
3       A.    Yes, you would have to pay the
4    pharmacy for what they are indicating you
5    owe them before they are going to let you
6    take the medication.  And then the
7    customer has avenues to call into Cigna
8    and say, hey, you know, I've got a
9    concern here.  Is this right.  Should I
10   have to pay this co-pay or, you know,
11   what do I need to do.
12             And so they have that avenue at
13   that point, and they can further take it
14   through the full blown appeal process as
15   well.
16      Q.    And for home delivery, it's
17   similar in that before the drug is mailed
18   to you, you have to pay for it?
19             MS. FARRELL:  Objection.
20      Q.    You have to pay your
21   co-payment, your deductible payment or
22   your coinsurance?
23      A.    For home delivery, that co-pay
24   or coinsurance will be billed to the
25   customer.  And I can only speak on this

Page 47

1              Turner - Confidential
2     piece to my own personal experience.  You
3     know, I don't know if that process is in
4     place for everyone.  But there is, if
5     there is a co-pay or an applicable
6     coinsurance, then that will be billed to
7     that customer and the drugs will be
8     dispensed.
9          Q.    Okay.  All right.  Now we're
10    going to shift to notification of adverse
11    benefit determinations.  And let's go
12    back to the plan that we looked at a
13    minute ago, Exhibit 144.
14         A.    Okay.  I'm there.
15         Q.    Now, let's go to the page at
16    the bottom where the number is 1716.
17         A.    Moving a little slow on my
18    side, catching up, but I'm almost there.
19              MS. FARRELL:  You can take a
20    moment to load that.
21         A.    Okay.  I am on 1716.
22         Q.    I'm sorry, I am at 1717.  If
23    you could just flip over to that.
24         A.    1717.  Okay.
25         Q.    And you can see in the upper

```
 1            Turner - Confidential
 2     right corner there is a section entitled
 3     Notice of Adverse Benefit Determination,
 4     do you see that?
 5          A.    I do.
 6          Q.    Okay.  Now, as I recall, you
 7     said earlier Cigna does not provide
 8     notices of adverse benefit determination
 9     when you have -- if you're denied
10     coverage for network pharmacy claims, is
11     that right?
12               MS. FARRELL:  Objection.
13          Q.    Let me rephrase the question.
14     If I go into a network pharmacy and I
15     give the pharmacist my prescription and
16     the pharmacist submits it into the system
17     for approval, and say he comes back and
18     says your drug is not covered by your
19     plan.  Is that an adverse benefit
20     determination?
21          A.    No, it isn't.
22          Q.    Okay.
23          A.    Because at that -- I'm sorry,
24     what was that?
25          Q.    Go ahead, I didn't mean to cut
```

Page 49

1            Turner - Confidential

2       you off.  I apologize.

3            A.    At the point of sale, the

4       pharmacy, what the pharm -- all the

5       pharmacy can do is say -- tell the

6       customer, I am getting that this is not

7       going to be payable, et cetera, and then

8       the customer from there can go back.  An

9       adverse benefit determination has to come

10      through, this is on notice, we get a

11      situation, we review it at Cigna and put

12      it through our robust review processes.

13      And then we make a determination, is it

14      covered or is it not.  And if it isn't,

15      what is the rationale and the basis for

16      the denial.

17           Q.    Right.  But at the point of

18      sale, when the pharmacist tells you if

19      the prescription is covered or not

20      covered, that information comes from

21      Cigna, right?

22                 MS. FARRELL:  Objection.

23           A.    You know, I can't speak to what

24      all the pharmacists can see at that, or

25      the pharmacy can see at that point.  But

Page 51

1          Turner - Confidential

2               MS. FARRELL:  Objection.

3      A.    I don't know that I can say one

4    way or the other firmly that that is the

5    process.

6      Q.    Okay.  But in any event, there

7    is no notice of adverse determination

8    provided if a pharmacist tells a customer

9    that their prescription is not covered,

10   right?

11     A.    At that point of sale, there

12   would not be.  However, there are avenues

13   for any question, any concern, any

14   complaint to reach out to Cigna with

15   that, and we would investigate and handle

16   it appropriately to get our customer the

17   details they need to understand why the

18   benefit occurred as it did.

19     Q.    Okay.  Let's go back to Exhibit

20   144, please -- withdrawn.

21               If you submit a claim form for

22   a non-network pharmacy claim like Exhibit

23   285 that we looked at a little while ago,

24   the claim form.

25     A.    Yes, sir.

Page 72

1          Turner - Confidential

2     coverage into the computer, that the

3     prescription is covered by a plan or it's

4     not covered by a plan, and if it is

5     covered by a plan, how much the

6     co-payment is.  So my question is, does

7     the person who makes that decision look

8     at the plan documents in making that

9     decision or not?

10               MS. FARRELL:   Objection.

11          A.    I can't speak to that,

12     because -- well, there is not -- with

13     every retail pharmacy, there is not

14     necessarily a physical review.  But

15     from -- I can tell you from my

16     understanding the clients are set up by

17     the benefits within a specific plan

18     document.  And those are the benefits the

19     pharmacy would be expecting at a point of

20     sale.  Other than that, you know --

21          Q.    So Cigna would set up into the

22     benefit system the drugs that are covered

23     and the co-pay or deductible amount, and

24     then that would be electronically

25     communicated to the pharmacy when the

Page 73

```
 1              Turner - Confidential
 2      customer asks for a prescription to be
 3      filled?
 4              MS. FARRELL:  Objection.
 5          A.    Based on, based on my
 6      understanding, that would be the high
 7      level process.
 8          Q.    Sure.  And the pharmacist
 9      doesn't -- you said earlier the
10      pharmacist doesn't have discretion.  The
11      pharmacist has to tell the customer,
12      look, this is what was communicated to me
13      by Cigna based on the way your benefits
14      are structured; is that right?
15              MS. FARRELL:  Objection.
16          A.    Correct.
17          Q.    Okay.
18              MR. IZARD:  I have no more
19      questions.
20              MS. FARRELL:  Can we take a
21      five-minute break, please.
22              THE VIDEOGRAPHER:  The time is
23      12:20, we are off the record.
24              (Off the record.)
25              THE VIDEOGRAPHER:  The time is
```