UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | September 3, 2020 |
| Defendants. | |

**PLAINTIFFS' REPLY MEMORANDUM
IN FURTHER SUPPORT OF CLASS CERTIFICATION**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................. 1

II.     ARGUMENT .................................................................................................................... 2

   A.    The Class and Subclass Definitions Are Clear and Ascertainable ...................................... 2

   B.    The Clawbacks Raise Common Questions .......................................................................... 4

   C.    The Uniform Class and Subclass Plan Language Supports Commonality ........................... 4

        1.     There Are No Material Plan Variations ...................................................................... 6

              (a)   The Relevant "Your Payments" Subclass "Boilerplate"
                    Language Raises Common Questions .......................................................... 6

              (b)   The Relevant Class "Boilerplate" Language Raises Common
                    Questions ..................................................................................................... 7

        2.     There are No "Apparent Ambiguities" That Create Plan Variations ................... 11

        3.     Differences in the Standard of Review of Do Not Permit Cigna to Create
               Plan Variations .......................................................................................................... 14

              (a)   Cigna's Plan Interpretation Should Be Given No Deference
                    Because Cigna Failed to Establish and Maintain Reasonable
                    Claim Procedures ......................................................................................... 14

              (b)   Cigna's Interpretations Are Unreasonable Under Any Standard
                    of Review ..................................................................................................... 16

                    i.    Cigna's Interpretation of the Subclass Plan Language Is
                          Arbitrary and Capricious .............................................................. 17

                    ii.   Cigna's Interpretation of the Class Language Is
                          Arbitrary and Capricious .............................................................. 20

   D.    There Are No Fundamental Intraclass Conflicts ............................................................... 22

   E.    Plaintiffs Will Fairly and Adequately Represent the Interests of Class Members ............ 26

   F.    The Plaintiffs Satisfy Rule 23(b)(2) On a Class-Wide Basis ............................................ 30

   G.    Plaintiffs Satisfy Rule 23(b)(3) ........................................................................................ 33

        1.     Plaintiffs' Damages Calculation Matches Their Liability Theory ......................... 33

        2.     Mustoe's Methodology Is Consistent With Plaintiffs' Class Definitions ............. 34

        3.     No ERISA Issues Defeat Predominance ................................................................ 34

       H.       No RICO Issues Defeat Predominance ........................................................................... 35

III.      CONCLUSION .................................................................................................................. 40

# TABLE OF AUTHORITIES

## CASES

*A.R. v. Connecticut State Bd. of Educ.*,
No. 3:16-CV-01197 (CSH), 2020 WL 2092650 (D. Conn. May 1, 2020) ............................ 39

*Adams v. Anheuser–Busch Companies, Inc.*,
No. 10–cv–826, 2012 WL 1058961 (S.D. Ohio Mar. 28, 2012) ...................................... 29, 30

*Advocate Health Care Network v. Stapleton*,
137 S. Ct. 1652 (2017) ................................................................................ 35

*Amara v. Cigna Corp.*,
775 F.3d 510 (2d Cir. 2014) ........................................................................ 12

*Ang v. Bimbo Bakeries USA, Inc.*,
No. 13-CV-01196-HSG, 2018 WL 4181896 (N.D. Cal. Aug. 31, 2018) .............................. 27

*Aramony v. United Way of Am.*,
254 F.3d 403 (2d Cir. 2001) ........................................................................ 16

*Arch Ins. Co. v. Precision Stone, Inc.*,
584 F.3d 33 (2d Cir. 2009) .......................................................................... 24

*Atakhanova v. Home Family Care, Inc.*,
No. 16-CV-6707 (KAM) (RML), 2020 WL 4207437 (E.D.N.Y. July 27, 2020) ................. 11

*Audet v. Fraser*,
332 F.R.D. 53 (D. Conn. 2019) .................................................................. 26, 27

*Bakalar v. Vavra*,
237 F.R.D. 59 (S.D.N.Y. 2006) ...................................................................... 3

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015) .................................................................... 28

*Berrien v. New Raintree Resorts, Int'l, LLC*,
276 F.R.D. 355 (N.D. Cal. 2011) .................................................................. 24

*Braintree Labs., Inc. v. McKesson Corp.*,
No. 11-80233 MISC JSW (JSC), 2011 WL 5025096 (N.D. Cal. Oct. 20, 2011) .................. 25

*Brand v. AXA Equitable Life Ins. Co.*,
No. CIV.A. 08-2859, 2008 WL 4279863 (E.D. Pa. Sept. 16, 2008) ...................... 28

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .............................................................................. 38, 39

*Brown v. Plata,*
   563 U.S. 493 (2011) ..................................................................... 31

*Butto v. Collecto Inc.,*
   290 F.R.D. 372 (E.D.N.Y. 2013) ................................................... 27

*Caranci v. Blue Cross & Blue Shield of R.I.,*
   194 F.R.D. 27 (D.R.I. 2000) .......................................................... 5

*Central States Southeast & Southwest Areas Health  & Welfare Fund v. Merck-Medco
   Managed Care, LLC,* 504 F.3d 229 (2d Cir. 2007) ....................... 27

*Chemung Canal Trust Co. v. Sovran Bank/Maryland,*
   939 F.2d 12 (2d Cir.1991) ............................................................. 29

*Cohen v. S.A.C. Trading Corp.,*
   711 F.3d 353 (2d Cir. 2013) .......................................................... 38

*Cohen v. Trump,*
   303 F.R.D. 376 (S.D. Cal. 2014) ................................................... 39

*Commercial Union Assurance Co.* v. *Milken,*
   17 F.3d 608 (2d Cir. 1994) ....................................................... 39, 40

*Cryer v. Franklin Templeton Res., Inc.,*
   No. C 16-4265 CW, 2017 WL 4023149 (N.D. Cal. July 26, 2017) ....................................... 29

*Curtiss-Wright Corp. v. Schoonejongen,*
   514 U.S. 73 (1995) ........................................................................ 13

*Davis v. Transamerica Commercial Fin. Corp.,*
   1996 U.S. Dist. LEXIS 3644 (N.D. Ill. Mar. 22, 1996) .................. 23

*Dr. Robert L. Meinders D.C., LTD v. Emery Wilson Corp.,*
   No. 14-CV-596-SMY-SCW, 2016 WL 3402621 (S.D. Ill. June 21, 2016) ........................... 7

*Duling v. Gristede's Operating Corp.,*
   267 F.R.D. 867 (S.D.N.Y.2010) ................................................... 30

*Dunnigan v. Metro. Life Ins. Co.,*
   214 F.R.D. 125 (S.D.N.Y. 2003) ................................................... 3

*Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan,*
   217 F. Supp. 3d 608 (N.D.N.Y. 2016) ........................................... 28

*Ebin v. Kangadis Food Inc.,*
   297 F.R.D.  561 (S.D.N.Y 2014) ................................................... 3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)..................................................................................... 35

*Estate of Gardner v. Cont'l Cas. Co.*,
    316 F.R.D. 57 (D. Conn. 2016)................................................................... 30

*Feifer v. Prudential Ins. Co. of Am.*,
    306 F.3d 1202 (2d Cir. 2002)...................................................................... 16

*Friedman v. 24 Hour Fitness USA, Inc.*,
    No. CV 06-6282 AHM (CTX), 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009).................... 36

*Fritcher v. Health Care Services Corp.*,
    301 F.3d 811 (7th Cir. 2002) ...................................................................... 13

*Frommert v. Becker,*
    153 F. Supp. 3d 599 (W.D.N.Y. 2016).......................................................... 31

*Glass Dimension, Inc. v. State Street Bank & Trust Co.*,
    285 F.R.D. 169 (D. Mass. 2012).................................................................. 35

*Haddock v. Nationwide Fin. Servs., Inc.*,
    262 F.R.D. 97 (D. Conn. 2009), *vacated and remanded on other grounds sub nom.*
    *Nationwide Life Ins. Co. v. Haddock,* 460 F. App'x 26 (2d Cir. 2012)................... 27

*Hall v. Lhaco, Inc.*,
    140 F.3d 1190 (8th Cir. 1998) ..................................................................... 28

*Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*,
    819 F.2d 42 (2d Cir. 2016).......................................................................... 15

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ................................................................... 5

*Herman v. SeaWorld Parks & Entm't, Inc.*,
    320 F.R.D 271 (M.D. Fla. 2017)................................................................... 24

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
    No. Civ. 02-6030 (WHW), 2006 WL 891362 (D.N.J. Apr. 4, 2006)....................... 22

*In re Checking Acct. Overdraft Litig.*,
    275 F.R.D. 666 (S.D. Fla. 2011) .................................................................... 7

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    317 F.R.D. 675 (N.D. Ga. 2016)............................................................... 24, 25

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    No. 98CIV.4318(HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000).................... 27

*In re Elec. Books Antitrust Litig.*,
  No. 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) .............................. 24

*In re Glumetza Antitrust Litig.*,
  No. 19-cv-05822-WHA (RMI), 2020 WL 3498067 (N.D. Cal. June 29, 2020).................... 25

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ................................................................................... 3

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ................................................................................. 26

*In re MyFord Touch Consumer Litig.*,
  No. 13-cv-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ................................... 7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................. 23

*In re Nifedipine Antitrust Litig.*,
  246 F.R.D. 365 (D.D.C. 2007).................................................................................... 26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................... 3

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)......................................................................................... 3

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  292 F. Supp. 3d 14 (D.D.C. 2017) .............................................................................. 25

*In re SCOR Holding (Switz.) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008)........................................................................... 23

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017)............................................ 26

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)........................................................... 5, 11, 36, 38, 39

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)...................................................................................... 23

*Kennedy v. United Healthcare of Ohio, Inc.*,
  206 F.R.D. 191 (S.D. Ohio 2002) ................................................................................. 5

*Kohen v. Pac. Inv. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009) ..................................................................................... 26

*Korman v. Consol. Edison Co. of N.Y., Inc.,*
  915 F. Supp. 2d 359 (E.D.N.Y. 2013) ................................................................. 28

*Krakauer v. Dish Network L.L.C.,*
  311 F.R.D. 384 (M.D.N.C. 2015) ......................................................................... 7

*Kurtz v. Kimberly-Clark Corp.,*
  321 F.R.D. 482 (E.D.N.Y. 2017) ......................................................................... 27

*L & W Assocs. Welfare Ben. Plan v. Estate of Wines ex rel. Wines,*
  No. 12-CV-13524, 2014 WL 117349 (E.D. Mich. Jan. 13, 2014) ........................ 13

*L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission*
  *of Nassau County, Inc.,* 710 F.3d 57 (2d Cir. 2013) ........................................... 29

*Lapin v. Goldman Sachs & Co.,*
  254 F.R.D. 168 (S.D.N.Y.2008) .......................................................................... 28

*Laurenzano v. Blue Cross & Blue Shield,*
  134 F. Supp. 2d 189 (D. Mass. 2001) ................................................................. 30

*Local 1522 of Council 4 v. Bridgeport Health Care Center, Inc.,*
  No. 15-CV-1019 (JCH), 2018 WL 1419792 (D. Conn. March 21, 2018) ............ 40

*Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.,*
  898 F. Supp. 1118 (D.N.J. 1995) ......................................................................... 13

*Long Island Neurological Assocs., P.C. v. Highmark Blue Shield,*
  375 F. Supp. 3d 203 (E.D.N.Y. 2019) ................................................................. 13

*Macedonia Church v. Lancaster Hotel Ltd. P'ship,*
  270 F.R.D. 107 (D. Conn. 2010) .......................................................................... 39

*Mahon v. Chicago Title Ins. Co.,*
  296 F.R.D. 63 (D. Conn. 2013) ............................................................................. 3

*Mayer v. Mercy Health Servs., LLC,*
  No. 18-CV-00391-JCH, 2019 WL 527964 (E.D. Mo. Feb. 11, 2019) ................. 35

*McCutcheon v. Colgate-Palmolive Co.,*
  No. 16. Civ. 4170 (LGS), 2020 WL 3893303 (S.D.N.Y. July 10, 2020) ........ 16, 18

*McLaughlin v. American Tobacco Co.,*
  522 F.3d 215 (2d Cir.2008) ............................................................................ 39, 40

*Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,*
  938 F. Supp. 1131 (E.D.N.Y. 1996) ...................................................................... 5

vii

*Meidl v. Aetna, Inc.*,
   No. 15-CV-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017) .................................... 5

*Metro Life Ins. Co. v. RJR Nabisco, Inc.*,
   906 F.2d 884 (2d Cir. 1990) ............................................................................... 17

*Mora v. Alberton's, L.L.C.*,
   No. EP-15-CV-00071-FM, 2015 WL 13804487 (W.D. Tex. May 15, 2015) ....................... 12

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
   798 F.3d 125 (2d Cir. 2015) ............................................................................... 28

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   247 F.R.D. 253 (D. Mass. 2008) .......................................................................... 25

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) .......................................................................... 39

*Negron v. Cigna Health and Life Ins.*,
   300 F. Supp. 3d 341 (D. Conn. 2018) ............................................................ 14, 15, 30, 35

*O'Malley v. New Yok City Transit Auth.*,
   896 F.2d 704 (2d Cir. 1990) ............................................................................... 38

*O'Shea v. First Manhattan Co. Thrift Plan & Tr.*,
   55 F.3d 109 (2d Cir. 1995) ................................................................................ 16

*Owens v. Metro. Life Ins. Co.*,
   323 F.R.D. 411 (N.D. Ga. 2017) ...................................................................... 34, 35

*Patterson v, Retirement and Pension Plan for Officers and Employees of New York Dist.
   Council of Carpenters and Related Organizations*,
   No. 00 Civ. 5962 (MBM), 2001 WL 1178670, (S.D.N.Y. Oct. 5, 2001) ............................. 18

*Peters v. Aetna Inc.*,
   No. 15-cv-00109-MR, 2019 WL 1429607 (W.D.N.C. Mar. 29, 2019),
   *appeal docketed*, No. 19-2085 (4th Cir. Oct. 4, 2019) ............................................. 26

*Poonawala v. AIG Claim Servs., Inc.*,
   No. 06-CV-1990-RDP, 2006 WL 8436586 (N.D. Ala. Nov. 20, 2006) ............................... 28

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................... 26

*Rose v. Long Island R.R. Pension Plan*,
   828 F.2d 910 (2d Cir. 1987) ............................................................................... 35

*Santiago v. Merriman River Assocs.*,
  No. 17-cv-2054-VAB, 2018 WL 2465358 (D. Conn. June 1, 2018)....................................... 40

*Savani v. Washington Safety Mgmt. Sols.*, LLC,
  No. 1:06-CV-02805-MBS, 2012 WL 3757239 (D.S.C. Aug. 28, 2012) ................................. 5

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
  769 F.3d 807 (2d Cir. 2014)..................................................................................................... 16

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
  959 F.2d 425 (2d Cir. 1992)........................................................................................... 16, 17, 20

*Senior Executive Benefit Plan Participants v. New Valley Corp.*,
  89 F.3d 143 (3rd Cir. 1996) ..................................................................................................... 16

*Seven Corners Shopping Ctr. Falls Church, Va. Ltd. P'ship v. Chesapeake Enters, USA
  LLC*, No. 07-CV-6332T, 2010 WL 5253528 (W.D.N.Y. Aug. 6, 2010)................................ 24

*Sinclair v. United Healthcare of Ga., Inc.*,
  No. 1:96-CV-3412-GET, 1998 WL 34080882 (N.D. Ga. Aug. 31, 1998) .............................. 5

*Smith v. United HealthCare Services, Inc.*,
  No. CIV 00-1163 ADM/AJB, 2002 WL 192565 (D. Minn. Feb. 5, 2002) ............................. 5

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
  256 F.R.D. 284 (D. Conn. 2009)................................................................................... 36, 37, 39

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015)........................................................................................................ 36

*Thomas v. SmithKline Beecham Corp.*,
  201 F.R.D. 386 (E.D. Pa. 2001) ............................................................................................... 30

*Torres v. S.G.E. Mgmt., L.L.C.*,
  838 F.3d 629 (5th Cir. 2016) .................................................................................................... 7

*Tyll v. Stanley Black & Decker Life Ins. Program*,
  403 F. Supp. 3d 27 (D. Conn. 2019) ........................................................................................ 14

*Valley Drug Co. v. Geneva Pharm., Inc*,
  350 F.3d 1181 (11th Cir. 2003) ................................................................................................ 25

*Versico v. Engineered Fabrics Corp.*,
  520 S.E.2d 505 (Ga. Ct. App. 1999)................................................................................... 13, 14

*Vetromile v. JPI Partners, LLC*,
  706 F. Supp. 2d 442 (S.D.N.Y. 2010)................................................................................. 16, 17

ix

*VKK Corp. v. Nat'l Football League,*
    244 F.3d 114 (2d Cir. 2001) .................................................................... 16

**STATUTES**

18 U.S.C. § 1341 ........................................................................................ 37

18 U.S.C. § 1342 ........................................................................................ 37

18 U.S.C. § 1962(c) .................................................................................... 36

29 U.S.C. § 1024(b)(2) .............................................................................. 13

29 U.S.C. § 1024(b)(4) .............................................................................. 13

29 U.S.C. § 1102(a)(1) .............................................................................. 16

ERISA § 502(a) .......................................................................................... 29

ERISA § 502(a)(1)(B) ................................................................................ 28

**RULES**

Fed. R. Civ. P. 23 ............................................................................. 1, 25, 26

Fed. R. Civ. P. 23(a)(2) ............................................................................... 5

Fed. R. Civ. P. 23(b)(2) ............................................................................. 30

Fed. R. Civ. P. 23(b)(3) .................................................................. 5, 26, 32

Fed. R. Civ. P. 41 ........................................................................................ 2

**REGULATIONS**

29 C.F.R. § 2560.503-1(b) ........................................................................ 14

29 C.F.R. § 2560.503–1(b)(5) .............................................................. 12, 32

29 C.F.R. § 2560.503-1(b)-(j) ................................................................... 15

**OTHER AUTHORITIES**

Newburg on Class Actions (5th Ed.) ......................................................... 30

Wright & Miller, 7A Fed. Prac. & Proc. Civ.3d  (4th ed. 2016) ....................3

## I.      INTRODUCTION

This is precisely the type of case that should be certified under Rule 23. Cigna Health and Life Insurance Company ("Cigna") sold pharmacy-benefit plans to approximately 6,000 clients (*i.e.,* employers) covering millions of plan participants and their families (the putative Class and Subclass "Members"). Because Cigna sold many thousands of plans covering many millions of Members who filed many hundreds of millions of claims for prescription drug benefits, Cigna sold standardized, "off the shelf" pharmacy benefit products. And because these products are standardized, Cigna pharmacy benefit plans use standard plan language for each specific type of benefit option. Cigna calls this standard plan language "boilerplate." See Plaintiffs' Memorandum of Law in Opposition to Cigna's Motion to Exclude the Declaration of Launce B. Mustoe, Jr. ("Opp. to Mot. to Exclude") at Factual Background, Part I Cigna engaged in a pervasive classwide scheme by which it took overcharges ("clawbacks"[1]) that violated the boilerplate terms of the plan documents.

The Class and Subclass are expressly defined as members of plans with specific, boilerplate language. There are *no* variations in the relevant language across the Class or Subclass. The Class Members' Plans *all* provided that copayments and deductible payments were limited to a "*portion*" (*i.e.*, no more than the total) of "charges made by a Pharmacy." The Subclass Member Plans *all* stated that "[i]n no event" would copayments "exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge." In its

---

[1] Cigna suggests that Plaintiffs made up the term "Clawback." In fact, Cigna employees routinely used the term during the class period to describe the overcharges it wrongfully took. Ex. K at 276:12-277:6; Ex. AR at CIGNA00260814 Unless otherwise states, all references to "Ex. __" are to exhibits to the declaration of Meghan S. B. Oliver.

Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Def. Mem.") [ECF 274],[2] Cigna does not identify *any* Class or Subclass Plans that do *not* have the identical boilerplate language. *See generally* Plaintiffs' Memorandum of Law in Support of Class Certification ("Pl. Opening Memo") [ECF 206] at 2-4. Accordingly, this is a "form contract" class action that is routinely certified.

Cigna tries to deflect the focus from the form plan language by discussing rationales and forms of different types of health-insurance products with *different* benefit designs that plan sponsors could buy from different insurance companies based on different choices. Def. Mem. at 1-8. Cigna's discussion is irrelevant. This case only concerns Cigna's off-the-shelf, boilerplate plans that prohibited the overcharges.

## II.   ARGUMENT

### A.   The Class and Subclass Definitions Are Clear and Ascertainable

The Class and Subclass are precisely defined in terms of specific plan language. Cigna's condescending dismissal of the plan language as "snippets" (Def. Mem. at 9) is just an attempt to ignore their simplicity. These "snippets" are the provisions of the plans that address a plan participant's cost-share obligations. Plans with the operative language are in the Class and/or Subclass; those without are not. No class definition could be more direct.[3]

Cigna claims that trivial variations in Plan language defeat ascertainability. *Id.* at 9 n. 7. It

---

[2]  This reply responds to arguments raised by Defendants Cigna Corporation and Cigna Health and Life Insurance Company (collectively, "Defendants" or "Cigna"). Plaintiffs will be dismissing Optum pursuant to Fed. R. Civ. P. 41. Moreover, as to Cigna, the Court dismissed Plaintiffs' state law claims (*see* Order Granting Partial Mot. to Dismiss [ECF 306]), so Plaintiffs do not address Cigna's class certification arguments as to those claims.

[3]  Cigna's attempt to minimize this class action as an attack against "snippets" rings hollow.  Cigna itself predicted that it would face this class action.  *See* Ex. BU at CIGNA004914 (stating in connection with 2016 language change, "[i]f Cigna doesn't update benefit language into customer certificates or coverage/booklets then: We face exposure under ERISA – through a regulatory audit or a lawsuit filed by a customer (or, more likely, a class action by many customers) – for failure to follow the coverage documents or, worse, breach of fiduciary duty.")

further argues that the benefit funding arrangement (ASO or insured plan) or Plan interpretation issues somehow affect the class definitions. *Id.* at 9-10. Cigna also argues in its *Daubert* motion that the Class and Subclass claims cannot be ascertained using the methodology of Plaintiffs' expert, Mr. Mustoe. Def.'s Mem. of Law in Supp. of Def.'s Mot. to Exclude Launce B. Mustoe, JR. ("Mot. Excl.") [ECF 279] at Part II. Cigna is wrong.

"Unlike other circuits, the Second Circuit does not have a 'heightened' requirement of ascertainability — it only requires that a 'class be defined using objective criteria that establish a membership with definite boundaries,' and does not require 'administrative feasibility' of identifying each class member based on that objective criteria. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 54 (E.D.N.Y. 2019)(citing *In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017)).[4] Ascertainability does not require each class member to be identified at the outset of the litigation. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); *see also Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006) (same); Wright & Miller, 7A Fed. Prac. & Proc. Civ.3d § 1760 (4th ed. 2016). Moreover, ascertainability is satisfied even if the process required to identify class members involves a burdensome manual review of individual files at some point after class certification. *See, e.g.*, *Mahon v. Chicago Title Ins. Co.,* 296 F.R.D. 63, 73 (D. Conn. 2013); *Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003).

Plaintiffs' Classes and Subclasses are defined using objective criteria: whether the

---

[4] The ascertainability standard is "not demanding" and is "designed only to prevent the certification of a class whose membership is truly indeterminable." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). "The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 269.

Member's Plan contains specific language. Using its Document Source Tool ("DST") Reports,

Cigna can link individual Members to the Plans with the operative language. Although Cigna

wrongly contends that the DST search process is deficient (*see* Mot. Excl. at 24-32), Cigna

nevertheless admitted that Plaintiffs can ascertain class members by reviewing the Plans.

Declaration of Sean M. May, Ph.D. ("May Decl.") [ECF 275-4] at ¶ 51; *Daubert* Mem. at 31.

**B.    The Clawbacks Raise Common Questions**

Cigna's argument that clawbacks do not give rise to common issues affecting Class

Members because they are revenue sharing arrangements (Def. Mem. at 24-25) misses the point.

Whether they are revenue sharing arrangements or not, members were overcharged any time they

paid (on a transaction-by-transaction basis) more than the Pharmacy Rate. Opp. to Mot. to

Exclude, Argument, Part II.A. The amount Cigna clawed back as reflected in Cigna's claims data

is proof of the amount of the overcharge for each such transaction. The "clawback" is not the

harm, the overcharge is. The clawback is Cigna's indisputable evidence of the amount of each

overcharge. Since every class member, by definition, was overcharged, this is indisputably a

class-wide issue. [5]

**C.    The Uniform Class and Subclass Plan Language Supports Commonality**

---

[5] Cigna argues in passing that payments to the pharmacies may not have been accurately reflected in Cigna's data (Def. Mem. at 10) without explaining why the issue is relevant to class certification. In any event, if it is true, ███████████████████████████████████████████████████████████████████████████████. Ex. BJ at CIGNA00149594-95; Ex. BK at CIGNA00002413; Ex. K at 22:24-23:12. Accordingly, ████████████████████████████████████████████████████████ *Id.* █████████████████████████████████████████████████

████████ Class members are identified using the same data that Cigna used to calculate the copayments and deductible payments. Ex. AU (sample claims with field descriptions); Ex. K at 155:20-156:12; Ex. AS at 24:3-26:25. Cigna also used that data to calculate the amounts ASO sponsors paid Cigna. ██████████████████████ ████████████████████████████████████ In other words, Cigna's suggestion here is pure speculation.

Certification is appropriate if the "contracts are substantially similar in all material respects." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 124 (2d Cir. 2013). Indeed, in ERISA cases challenging the interpretation of a standardized benefit plan, courts generally find that common issues exist under Rule 23(a)(2) (and, indeed, predominate under Rule 23(b)(3)). *See, e.g., Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *8 (D. Conn. May 4, 2017); *see also Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191 (S.D. Ohio 2002); *Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 39 (D.R.I. 2000); *Savani v. Washington Safety Mgmt. Sols.*, LLC, No. 1:06-CV-02805-MBS, 2012 WL 3757239, at *3 (D.S.C. Aug. 28, 2012). So long as the key provisions of the Plans are similar, any variations among the Plans unrelated to that standard language will not defeat commonality. *See Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F. Supp. 1131, 1147 (E.D.N.Y. 1996); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 380 (S.D.N.Y. 2019) (*Smith v. United HealthCare Services, Inc.*, No. CIV 00-1163 ADM/AJB, 2002 WL 192565 (D. Minn. Feb. 5, 2002); *Sinclair v. United Healthcare of Ga., Inc.*, No. 1:96-CV-3412-GET, 1998 WL 34080882 (N.D. Ga. Aug. 31, 1998). As set forth more fully in Plaintiffs' Opp. to Mot. to Exclude, this "boilerplate" case is a paradigm for commonality.

In response, Cigna tries to create a smokescreen of irrelevant Plan language that it claims creates variations. Def. Mem. at 15-21. As a fallback, Cigna argues that it has the discretion to interpret clear Plan language in any way it wants, thereby attempting to make common language appear varied. Indeed, Cigna wrongly contends that is can simply redact these clear terms from the Plans. Cigna fails on all counts.

This case concerns three sections of the Plans: the "Schedule of Benefits," "Covered Expenses," and "Your Payments." In the Subclass Plans "Your Payments" section, the operative

language provides: "***In no event*** will the Copayment … exceed the amount paid by the plan ***to the Pharmacy***" (*i.e.,* the Pharmacy Rate) (emphasis added). *See, e.g.,* CIGNA00001669 [ECF 275-48] at CIGNA00001704  (Plaintiff Negron's 2014 Plan); CIGNA00000137 [ECF 275-27] at CIGNA0000170 (Plaintiff Perry's 2015 Plan). This section provides a clear "limitation" or upper cap on the amount of any copayment that a member will pay. Def. Mem. at 17.

The Class claims concern the boilerplate language found in the "Schedule of Benefits" and "Covered Expenses" sections in the Class Plans. These Plans define the copayment and deductible as a "portion of the Covered Expenses," where "Covered Expenses" are defined as where a member "incurs expenses for charges made by a pharmacy." *See, e.g.,* CIGNA00001669 [ECF 275-48] at CIGNA00001678, CIGNA00001703 . As discussed below, although Cigna tries to generate confusion citing other provisions concerning, for example, "Limitations" on coverage or "Reimbursement/Filing a Claim," those provisions have nothing to do with this case.

### 1.     There Are No Material Plan Variations

#### (a)     The Relevant "Your Payments" Subclass "Boilerplate" Language Raises Common Questions

The Subclass plans are defined by the ***same*** "Your Payments" language: "In no event will the Copayment . . . exceed the amount paid by the plan to the Pharmacy." Cigna argues that variations in the "Your Payments" provision that do not include this quoted language preclude a finding of commonality (Def. Mem. at 17-18). But by definition, those plans are ***not*** part of the Subclasses because they do ***not*** have the specific language that defines the Subclasses. Cigna may dispute whether Plaintiffs have correctly interpreted the "in no event" language, but that is a merits question that applies to the whole Subclass equally. Accordingly, the Subclass "boilerplate" raises common questions.

6

> **(b)** **The Relevant Class "Boilerplate" Language Raises Common Questions**

As an initial matter, Plaintiffs note that, of the thousands of plans Cigna produced, Cigna cites to language in a small handful (one of which is not a class plan) to assert the existence of irreconcilable variations in Plan language. As set forth above, the overwhelming majority of Cigna's plans contain standard boilerplate language for calculating Class Members' deductible payments and copayments. As courts have repeatedly held, a limited number of possible outliers will not deprive tens of thousands of class members from recovery.[6] Accordingly, the Court need not even "get into the weeds" of Cigna's cherry-picked examples.

In any event, contrary to Cigna's argument, the Plans cherry-picked by Cigna do ***not*** raise individualized issues. None of the cited variations are material because all of the Class and Subclass Plans Cigna cites in substance limit deductible and copayments to the amount charged by or paid to the pharmacy. For example, the Class Plans define the copayment and deductible as a "portion of the Covered Expenses," where "Covered Expenses" are defined as where a member "incurs expenses for charges made by a pharmacy." *See* CIGNA00001669 [ECF 275-48] at CIGNA00001678; CIGNA00001703. Accordingly, Plans that do not define "Covered Expenses"

---

[6] *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 645 n.74 (5th Cir. 2016) ("[t]his principle that a small number of anomalous class members should not defeat predominance is not unique to securities fraud cases"); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2018 WL 3646895, at *2 (N.D. Cal. Aug. 1, 2018) (noting existence of "an individualized fact-based issue for a small number of class members" does not defeat certification); *Dr. Robert L. Meinders D.C., LTD v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *6 (S.D. Ill. June 21, 2016) (certifying class and noting evidence of consent by "twelve clients (out of a class of potential thousands) . . . is far from overwhelming"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399-400 (M.D.N.C. 2015) ("While there are potentially a number of individual issues, these issues appear ***to apply to only a small number of class members*** and are straightforward. These minor, peripheral issues do not defeat the predominance of the central issue: whether the calls were made by Dish's agent. The essential elements of the class members' claims can be proven at trial with common, as opposed to individualized, evidence") (emphasis added); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 678 n.9 (S.D. Fla. 2011) ("To the extent Union could prove that some customers nonetheless learned of their Matrix limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses ***as to a small number of class members would not destroy the predominance of common liability questions***") (emphasis added).

as "expenses for charges made by a pharmacy" (*see* Def. Mem. at 20, citing Def. Ex. 51 at

CIGNA00004609) are ***not*** in the class at all.[7]  Cigna's Exhibit 46 (cited in Def. Mem. at 16) is

not an ERISA plan, and so is only relevant to Plaintiffs' RICO claim. Moreover, in addition to

the fact that this Plan does not provide for copayments, it limits deductible payments to the

amounts paid to the pharmacy.[8]

Def. Ex. 31 at CIGNA01393876 merely provides that the member will pay as a

deductible the "full cost with ***CIGNA's*** discount" (*i.e.,* the amount "charged by the pharmacy").

Def. Mem. at 16, citing Def. Ex. 31 at CIGNA01393876 (emphasis added).[9]  The amount

"charged by the pharmacy" is the limitation for the Class' claims and, therefore, this is not a

material variation.

Although Cigna's brief is unclear on this point, any suggestion that alleged variations in

the "Your Payments" language (Def. Mem. at 17, citing Def. Exs. 36, 44, 47, 27; Def. Ex. 3 at 5-

6) fails because these terms are irrelevant to the Class definition. As set forth above, these

---

[7] Def. Ex. 51 appears to be a plan from Great West, which is an insurance company acquired by Cigna. Great West plans have different boilerplate and are not included in this case.

[8] This Plan defines the Deductible as "[t]he amount of Covered Services specified in the Schedule of Benefits that must be incurred and paid by a Member before Co-insurance benefits are paid." Def. Ex. 46 at CIGNA01259102.  A Covered Service is a "Medically Necessary service or supply (specified in this Plan) for which benefits may be available." *Id*.  Finally, the "term "charges" means the actual billed charges; except when the provider has contracted directly or indirectly with CIGNA HEALTHCARE for a different amount." *Id.* at CIGNA01259101. Accordingly, the amount of the deductible is the amount of the actual billed charges, the amount charged by the pharmacy. This is completely consistent with the Class Plan language.

[9] Incredibly, in its brief Cigna substitutes "[the employer]'s" (emphasis in original) for "CIGNA's" in this quote, which dramatically changes the meaning of this phrase. Cigna argues that the plan provides that "Cigna" always means "employer" (Def. Mem. at 19 n.12), but the plans expressly state that "Cigna" only means "employer" in connection with distinguishing the plans as self-insured plans as compared to insured plans.  That notion is not implicated in this phrase and the plan does not say that the term "Cigna" should be replaced with "employer" for every purpose.  As a simple example of the absurdity of Cigna's substitution, the plan elsewhere provides that "CIGNA's toll-free care line personnel can provide you with the name of Participating Providers." Def. Ex. 31 at CIGNA01393843.Employers do not have toll-free care lines staffed with personnel who direct callers to Cigna's Participating Providers and thus "employer" cannot be substituted for "Cigna" in all instances, as Cigna argues.

provisions set caps on the amount of the copayments. They do ***not*** determine the amount of the copayments. They also do ***not*** apply to deductibles.

The "minimum and maximum copay" provision (Def. Mem. at 18-19, citing Def. Ex. 39) likewise is not inconsistent with Plaintiffs' class definition. First, under this plan (Ex. 39), minimum copayments only apply to Tier 2 and 3.  There were no copayment Clawbacks associated with minimum copayments for the 2016 plan year (Ex. P. at ¶ 10) for this account, thereby demonstrating that there are no claims in this case related to minimum copayments under this plan. This is not surprising because clawbacks rarely occurred on branded drugs.  *Id*. at ¶ 9. Moreover, with respect to the Tier 1 generics (which are the heart of the case), members of the plan had 358 copayment clawbacks and 1,478 deductible clawbacks during 2016 (*id.* at ¶ 10) and so experienced substantial losses and are entitled to recover.  Additionally, minimum and maximum copays are treated under Cigna's adjudication logic just like regular copayments. *See* Ex. BL at CIGNA00050406; Ex. BM (testing scenarios attached to and referenced in CIGNA00050406); Ex. AK at CIGNA00050500-01. Therefore, Cigna appears to have ignored these terms. Finally, a maximum is a limitation, and no class member would be harmed if the cost-share payment was capped by a maximum. So, the maximum is irrelevant.

The "amount you pay" provision (Def. Mem. at 18-19, citing Def. Ex. 50) appears to be "boilerplate" in the Schedule of Benefits of every Class Plan that concerns a copayment. Indeed, Cigna has not identified any Class copayment Plan that does not have this language. Accordingly, it is not even a variation that could defeat certification. Although that language does not appear to exist in every deductible Class Plan, it is immaterial to determining the amount of the deductible.

The "Specialty Medication" plan Cigna cites (Def. Mem. at 19, citing Ex. 35 at

9

CIGNA00133201) simply provides in the "Limitation" on coverage section of the Plan that an employee has to pay separately for Specialty Medications. In other words, these medications are not even "Covered Expenses" subject to deductibles and copayments. Additionally, even if it was relevant, the provision states that a member may "be required to pay 100% of *CIGNA's* discounted cost" (emphasis added) (*i.e.,* the amount charged by the pharmacy) for those noncovered expenses.[10] This provision is immaterial.[11]

Exhibit 45 (Def. Mem. at 20) provides a $10 copay for the first three Maintenance Drug prescriptions and a deductible payment thereafter for 100% of the cost of the drug, but the deductible is still defined as a "portion" of "Covered Expenses," which are expenses for "charges made by a pharmacy." In other words, the deductible payment under this Plan is like the deductible payment under any other Class deductible plan.

Exhibit 40 provides that there could be a double copayment "up to a maximum of *the actual cost of the drug"* (*i.e*., the amount charged by the Pharmacy). Def. Mem. at 20, citing Def. Ex. 40 at CIGNA02478566 Accordingly, this provision is also completely consistent with the Class definition.

The Reimbursement/Filing a Claim provision Cigna cites (Def. Mem. at 20, citing Def. Ex. 42 at CIGNA00746567) merely provides that the member must pay the full cost of the drug to the pharmacy and submit a claim form to be reimbursed for the amount of the cost above the coinsurance amount. In other words, the pharmacy does not electronically process the claim at the

---

[10] Cigna again wrongly substitutes "**[employer]'s**" for "CIGNA's."

[11] Cigna's argument also ignores that it very seldom imposed clawbacks on specialty drugs.  Based on Mr. Mustoe's review, of the more than seventy-one million clawback transactions, only 3,751 (.005%) involved specialty drugs. Ex. P at ¶ 8.

point of sale. This provision has nothing to do with the amount of the deductible.

Finally, Exhibit 27 (cited at Def. Mem. at 20) simply says that a member must pay the difference between cheaper generic and more expensive branded drugs. Ex. 27 at CIGNA00000169. It has nothing to do with copayments or deductibles.

In sum, none of the variations Cigna cites are material in any respect. And, in any event, a handful of plan language variations among thousands of standard-form plans is not sufficient to defeat class certification. *Atakhanova v. Home Family Care, Inc.*, No. 16-CV-6707 (KAM) (RML), 2020 WL 4207437, at *9 (E.D.N.Y. July 27, 2020) ("some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement").

### 2.     There are No "Apparent Ambiguities" That Create Plan Variations

Cigna suggests that its standard boilerplate form Plan language "***may*** present apparent ambiguities" that could only be resolved through specific evidence of plan sponsor intent. Def. Mem. at 21 (emphasis added). But Cigna has not identified ***any actual*** ambiguities.[12] Moreover, interpretation of boilerplate language is a class-wide issue. If a defendant could avoid class certification simply by saying that there "may" be "apparent" ambiguities in a form contract and a customer "might" have a different understanding of the form, a form contract case could never be certified, which is plainly wrong. *See generally In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013).

Implicit in Cigna's argument is the notion that, regardless of Cigna's interpretation of the

---

[12] Plaintiffs cannot help but wonder whether Cigna told the insurance regulators with whom it filed this language that it believed its plans are ambiguous and susceptible of varying interpretations. None of the documents produced to date suggest that is the case.

boilerplate language it drafted (and filed with insurance departments around the country), it would have to interpret and administer identical language in different ways based on differing plan sponsor intent. In other words, Cigna argues that its form boilerplate means whatever a sponsor says it means. Cigna's argument ignores the nature and purpose of "boilerplate" language. Ex. Q at 29:19-24 ("You have, you know, 6,000 clients. You cannot have individual products for those clients."). Moreover, Cigna necessarily interprets this identical product language in the same way and administers claims pursuant to that interpretation. Cigna's suggestion that the Court would have to examine the sponsor's intent for every plan (Def. Mem. at 22) ignores the fact that Cigna is the creator of its own boilerplate forms. Cigna's argument that the same plan language could be interpreted differently also is contrary to the Department of Labor's claim procedure regulation, which requires CIGNA to utilize procedures that "contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been *applied consistently with respect to similarly situated claimants*." 29 C.F.R. § 2560.503–1(b)(5) (emphasis added). In other words, as a matter of law, Cigna may not apply materially similar plans inconsistently.

Cigna's argument that its ASO agreements with sponsors can create ambiguities in Plans (Def. Mem. at 23) is baseless for numerous reasons. First, the fact that the amount paid by the sponsor to Cigna pursuant to an ASO contract is different than amount paid by the member to the pharmacy is irrelevant. The *Plan,* not the ASO agreement, is part of the employment contract. *See Amara v. Cigna Corp.,* 775 F.3d 510, 525 (2d Cir. 2014); *Mora v. Alberton's, L.L.C.,* No. EP-15-CV-00071-FM, 2015 WL 13804487, at *2 (W.D. Tex. May 15, 2015). It governs employee benefits under ERISA. "For ERISA purposes, a plan document 'is one which a plan

12

participant could read to determine his or her rights or obligations under the plan' and not one that merely 'memorialize[s] the obligations [the administrator] and Defendant Company owed to each other.'" *Long Island Neurological Assocs., P.C. v. Highmark Blue Shield*, 375 F. Supp. 3d 203, 207 (E.D.N.Y. 2019) (quoting *Local 56, United Food and Commercial Workers Union v. Campbell Soup Co.*, 898 F. Supp. 1118, 1136 (D.N.J. 1995)). The Plan, not the ASO agreement between the Cigna and the sponsor, is the document employees have a legal right to review. 29 U.S.C. § 1024(b)(2) & (4); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). The ASO agreements between the sponsor and Cigna "do[] nothing to apprise plan participants of their benefits or rights under the Plan and [are] not [] Plan document[s]. *L & W Assocs. Welfare Ben. Plan v. Estate of Wines ex rel. Wines*, No. 12-CV-13524, 2014 WL 117349, at *8 (E.D. Mich. Jan. 13, 2014); *see also Fritcher v. Health Care Services Corp.*, 301 F.3d 811, 817 (7th Cir. 2002). Indeed, the ASO agreements contain confidential pricing information that is ***hidden*** from members, and Cigna designated its ASO agreements Highly Confidential and Attorneys' Eyes Only, but did not designate Plan documents Confidential.[13]

Moreover, Cigna does not consider the ASO agreements part of the Plans. In their Fourth Set of Interrogatories, Plaintiffs asked Cigna to identify all Plan terms that could affect the interpretation of the operative plan language. In its answer, Cigna did not identify a single term

---

[13]

from an ASO agreement. *See* Ex. A.[14]  Because ASO contracts are not plan documents, they

cannot be used to manufacture an ambiguity. *Tyll v. Stanley Black & Decker Life Ins. Program*,

403 F. Supp. 3d 27, 32 (D. Conn. 2019).[15]

> **3.  Differences in the Standard of Review of Do Not Permit Cigna to Create Plan Variations**

Cigna's argument that the standard of review of Cigna's plan interpretation can somehow

create variations in Plan language fails for two reasons. First, Cigna has no right to deference in

interpreting Plan language because it cannot meet its burden of proving that it established and

maintained reasonable claim procedures for any Class or Subclass Member.[16] Second, Cigna's

interpretations are unreasonable as to the entire Class and Subclass under any standard of review.

> **(a)  Cigna's Plan Interpretation Should Be Given No Deference Because Cigna Failed to Establish and Maintain Reasonable Claim Procedures**

In order to be entitled to a deferential standard of review, Cigna must meet ***its*** burden of

proving (1) that it established and maintained reasonable claim procedures in compliance with 29

C.F.R. § 2560.503-1(b) or (2) that any failure to comply with the claim procedure regulation was

harmless. *Negron, et al v. Cigna Health and Life Insurance Company, et al*, 300 F. Supp. 3d 341,

---

[14]  Cigna's reliance on *Versico v. Engineered Fabrics Corp.*, 520 S.E.2d 505 (Ga. Ct. App. 1999) (*see* Def. Mem. at 21-22) is inapposite. In opposing Cigna's motion to dismiss his claims, Plaintiff Blocker relied on *Versico* to explain that a "no third party beneficiaries" clause **in the ASO agreement** between **Cigna** and non-ERISA **Plan sponsors** was invalidated by other language in the same ASO agreement. *See* Pl. Blocker's Letter Br. re [202] Def.'s Partial *MTD* [ECF 247]. Neither *Versico* nor Plaintiff's discussion thereof address interpreting a Plan by reference to non-Plan documents (like an ASO agreement), as Cigna attempts to do here.

[15] In fact, Cigna's ASO argument backfires.  Cigna acknowledges that it advises sponsors that there may be "spread" pricing between the Client Rate and the Pharmacy Rate.  Def. Mem at 23.  Nowhere in **the Plans** does Cigna advise **members** that there could be "spread" pricing that Cigna might "claw back"—and the evidence establishes that Cigna actively hid the spread and "clawbacks" from members.  Pl. Opening Memo at 5-6.

[16] This argument is directly contrary to Cigna's erroneous argument discussed above that the sponsor's intent controls. If the sponsor decides the meaning of the Plan language, then Cigna effectively has no discretion to interpret that language. Instead, it must ask the sponsor what the language means.

354 (D. Conn. 2018) (citing *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F.2d 42, 56 (2d Cir. 2016)). Cigna has no right to deferential review, regardless of Plan terms giving it discretionary authority, because Cigna failed to establish and maintain reasonable claim procedures. In particular, Plaintiffs contend that Cigna (1) did not provide notice of an adverse benefit determination that complied with 29 C.F.R. § 2560.503-1(b)-(j) (which requires, *inter alia*, disclosure of the "specific reasons for the adverse benefit determination and references the specific applicable plan provisions"); and (2) "inhibited or hampered plaintiff's ability to initiate a claim procedure to recover the inflated cost of the prescription drugs." *See Negron v. Cigna Health and Life Ins.,* 300 F. Supp. 3d 341, 354-55 (D. Conn. 2018). Indeed, Cigna has engaged in a massive scheme to defraud that it hid through, among other means, "gag clauses." Pl. Opening Memo at 2-6. Cigna has presented ***no*** evidence to the contrary and it cannot establish that it met any of the regulatory requirements cited in *Negron*. To the contrary, Cigna was surprised it even got caught. Pl. Opening Memo at 6. Moreover, Cigna' cannot establish that its scheme was not harmless as it cost Class and Subclass Members hundreds of millions of dollars in overcharges. In fact, if Cigna complied with the regulation, it would have been unable to execute its scheme.

Cigna argues without explanation that differences in Plan claim and appeal procedures also impact the standard-of-review. Def. Mem. at 27-29. Cigna is wrong because ***none*** of the violations discussed above have any relationship to claim and appeal procedures. Put another way, Cigna's regulatory violations occurred under each of the claim and appeal procedures Cigna cites. Cigna's violations strike at the core of the regulation designed to ensure that members have adequate information with which they can decide to make claims and appeal denials.

15

**(b)   Cigna's Interpretations Are Unreasonable Under Any Standard of Review**

The standard of review of Cigna's plan language interpretations is irrelevant because Cigna loses under *any* standard of review. A court may interpret an employee plan when the terms of the plan are unambiguous. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 129 (2d Cir. 2001). Extrinsic evidence may not be considered. *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 815–16 (2d Cir. 2014) (internal citation omitted); *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002). In determining ambiguity, "reference may not be had to matters external to the entire integrated agreement." *Aramony v. United Way of Am.*, 254 F.3d 403, 412 (2d Cir. 2001) (citation omitted). Extrinsic evidence cannot create an ambiguity because "29 U.S.C. § 1102(a)(1), which contains ERISA's written instrument requirement, 'essentially operates as a strong integration clause, statutorily inserted in every plan document.'" *Feifer*, 306 F.3d at 1210 (citing *Senior Executive Benefit Plan Participants v. New Valley Corp.*, 89 F.3d 143, 149 (3rd Cir. 1996)).

Even where an administrator's decision is reviewed pursuant to an "arbitrary and capricious" standard, external facts may not be used to make clear contract language ambiguous. To the contrary, "where the trustees of a plan interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious." *McCutcheon v. Colgate-Palmolive Co.,* No. 16. Civ. 4170 (LGS), 2020 WL 3893303, at *9 (S.D.N.Y. July 10, 2020) (quoting *O'Shea v. First Manhattan Co. Thrift Plan & Tr.*, 55 F.3d 109, 112 (2d Cir. 1995)) (quotations marks and citations omitted). Moreover, "[l]anguage whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation." *Vetromile*

16

*v. JPI Partners, LLC,* 706 F. Supp. 2d 442, 447-48 (S.D.N.Y. 2010) (quoting *Metro Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990). "The language of a contract is not made ambiguous simply because the parties urge different interpretations. Nor does ambiguity exist where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning.'" *Seiden Assocs.*, 959 F.2d at 428.

i.   **Cigna's Interpretation of the Subclass Plan Language Is Arbitrary and Capricious**

Cigna has not identified any ambiguity in the operative Subclass Plan language. The language is clear: "In no event will the Copayment … exceed the amount paid by the plan to the Pharmacy" (*i.e.,* the Pharmacy Rate). Cigna argues that the amount "paid by the plan" to Cigna "may be different" from the amount "paid to the Pharmacy." Def. Mem at 22. In other words, Cigna **rewrites** the language, **deleting** the actual phrase "to the Pharmacy" entirely, and **replacing** it with its new preferred language "to Cigna." This argument fails for many reasons.

First, Cigna's attempt to buttress this naked rewrite by reference to the ASO agreements (*see* Def. Mem. at 23) is unavailing. As discussed in Part II.C.2 above, the ASO agreements are irrelevant to any analysis of any "potential ambiguity" in the Plans because they are not part of the plans. Moreover, the fact that the employer may pay the Client Rate to Cigna under an ASO plan is irrelevant to the **portion** of that amount the member must pay **to the Pharmacy**

Second, as discussed above, Plaintiffs served an Interrogatory asking Cigna to identify all Plan terms that could affect the interpretation of the operative plan language. ***None*** of the Plan terms identified in Cigna's response address the Subclass language at all. *See generally* Def. Mem. Accordingly, Cigna has not identified any Plan terms that cause the operative language to be ambiguous.

Third, with respect the meaning of "to the Pharmacy," the term "Pharmacy" is defined in

the Plan boilerplate to mean a "retail Pharmacy, or a home delivery Pharmacy."[17]  Of course, **no** words should be deleted and replaced by other substantively different words, but a defined term especially should not be deleted and replaced with an undefined term that has a significantly different meaning.

Fourth, Cigna actually ***did*** omit the phrase "to the Pharmacy" from ***other*** boilerplate. Those plans provide "In no event will the Copayment …exceed the amount paid by the plan." Ex. BE at 88:4-15; Ex. BN. Accordingly, Cigna knew how to write plan language consistent with its argument. However, it did ***not*** use that language for the Subclass plans. Interpreting materially different plan terms (one of which includes "to the Pharmacy," and one of which does not) in exactly the same way as Cigna does here is the textbook definition of arbitrary and capricious. *McCutcheon,* 2020 WL 3893303, at *11 ("on the most basic level, the words are different, suggesting that the drafters mean to indicate two different things").

Fifth, Cigna has offered ***no*** contemporaneous evidence of any ambiguity. Indeed, Cigna witnesses have no idea where the language came from or why it was included in the Plans. Cigna's after-the-fact attempt to generate an ambiguity is not proper, because "it is the Trustees' contemporaneous intent at the time of [contract] that determines the plan terms, not their subsequent intent." *Patterson v, Retirement and Pension Plan for Officers and Employees of New York Dist. Council of Carpenters and Related Organizations,* No. 00 Civ. 5962 (MBM), 2001 WL 1178670, at *5 (S.D.N.Y. Oct. 5, 2001).

Finally, Cigna's current litigation strategy of attempting to create an ambiguity by arguing that a client may interpret the Subclass plan language as referring to either the "amount

---

[17] This definition has a boilerplate code which is, for example, HC-DFS61 04-10 VI.

paid by the plan" or the amount paid "to the pharmacy" (Def. Mem. at 22) makes no sense based on the way Cigna does business. Cigna required uniform "paid by the plan to the Pharmacy" language for both ASO and insured Plans, both of which had to be interpreted in the same way. Ex. BE at 55:7-11 ("We try to propose to clients who may be looking to fund their benefits differently, namely self-funded or insured, the same kind of language for consideration."); *Id.* at 70:4-11 ("'Use ASO text for insured' refers to a concept whereby if draft product language is produced for consideration by self-funded clients, that that same text would be or could be used for insured plans that chose to adopt our insurance certificate language as part of its plan."). The way Cigna administered insured Plans shows the absurdity of its position.

For insured Plans, there is no "amount paid by the plan" for prescription drug claims because the sponsor only pays an annual premium and Cigna pays the pharmacy on individual drug claims. In that case, the plan buys a Cigna insurance policy, and unlike a self-funded ASO plan, Cigna makes all of the payments. Because there is *no* payment "by the plan" for an individual drug claim, the Subclass Plan language cannot have the meaning proffered by Cigna (*i.e.,* "the amount paid by the plan to Cigna"). The only logical explanation is that "paid by the plan" refers to the benefits paid under the plan and, in the fully insured context, this refers to the only payment that is made; the payment to the Pharmacy ***by Cigna***. Indeed, before this case started that is precisely the way Cigna interpreted this language – paid by the plan to the Pharmacy was the payment by Cigna to the Pharmacy because Cigna was "the plan" in this context.[18]

_____

[18]For example, when one Cigna employee asked a very knowledgeable employee "Is the plan referring to Cigna?", the knowledgeable employee responded, "Yes, the plan refers to Cigna and what we owe the pharmacy."   Ex. BO.

Moreover, as set forth above, the Plan is part of the employment contract between the employer and the employee, and *no* employee would interpret the phrase "exceed the amount paid by the plan to the Pharmacy" to mean "exceed the amount Cigna charges itself" in the insured context Any interpretation that a copayment is the amount Cigna elects to charge itself "'strain[s] the contract language beyond its reasonable and ordinary meaning'" and is arbitrary and capricious. *Seiden Assocs.*, 959 F.2d at 428.

Because there is never a payment by the plan to the pharmacy under insured plans, there is only one rational way to harmonize Cigna's use of the same language for both ASO and insured plans. The common substance of the transaction is the payment to the pharmacy. As this Court recognized recently in its ruling on Defendants' motion to dismiss the state law claims, plan documents have to be read to avoid the situation where "parts of the plans simply make no sense." Order Granting Partial Mot. to Dismiss [ECF  306] at 5 n. 3. Here, Cigna's interpretation is nonsensical and, therefore, arbitrary and capricious. Therefore, its interpretation is not entitled to deference under any standard of review and, therefore, Plan interpretation is a Subclass wide issue.

### ii.     Cigna's Interpretation of the Class Language Is Arbitrary and Capricious

Under the Plans, a copayment and deductible are defined only as "expenses to be paid by you or your Dependent . . . ." Ex. BP at CIGNA07597285 (2016 Sample ASO OAPIN with Pharmacy). However, this language does not define the ***amount*** of the copayment or deductible. The ***amount*** of those payments is defined by incorporating the definition of "Covered Expenses." Specifically, the Class Plans define the amount of the copayment and deductible as a

"portion of the Covered Expenses"[19] (in the case of a deductible, a 100% portion), where "Covered Expenses" are defined as where a member "incurs expenses for charges made by a pharmacy."

Cigna argues that this "Covered Expenses" language is just a description of coverage. Def. Mem. at 21-22. Although "incurs expenses for charges made by a pharmacy" is in the section of the plan entitled "Covered Expenses," Cigna ignores the fact that the Schedule of Benefits expressly incorporates the definition of Covered Expenses into the deductible and copayment definition (by providing that a member "may be required to pay a portion of the Covered Expenses" as the amount of the copayment or deductible). Cigna defined the "copayment" and "deductible" by incorporating the definition of "Covered Expenses" in order to tie the details of member cost shares to the scope of coverage. Ex. Q at 63-64. Moreover, none of the provisions identified in Cigna's Interrogatory response regarding Plan terms that could affect the interpretation of the operative plan language relate at all to this definition of "Covered Expenses," much less create an ambiguity. *See supra* at Part II.C.3.b.i. Because this is the **only** definition for the amount of the copayment and deductible in the Plan boilerplate, there can be no alternative interpretation, and any suggestion to the contrary would be arbitrary and capricious. Cigna cannot simply delete this language and substitute the language it wishes it wrote in the Plans. Under Cigna's interpretation, the Court need only ask, "What is the limit on how much a member needs to pay for a deductible payment?"  Cigna's interpretation provides **no** answer.

Cigna similarly argues that "charges made by a Pharmacy" may not be the Pharmacy

---

[19] A portion, of course, is only "a **part** of a whole" (*i.e.,* 100% or less). *See* definition of "portion" at dictionary.com (last accessed August 30, 2020) (emphasis added). By definition, it plainly cannot be **more than** 100%.

Rate (*i.e.,* the charges by the pharmacy under Cigna plans), but instead may refer to some other pharmacy charge that is "an amount more than they are ultimately reimbursed." Def. Mem. at 22. By not limiting payment to the Pharmacy Rate, Cigna implies that that it will reimburse a member for an amount "charged" by the pharmacy that is greater than the pharmacy agrees to be paid, and the member can pay the pharmacy the lower amount and keep the difference. That argument sounds less like the insurance coverage and more like an invitation to insurance fraud.

In any event, this argument is contrary to Cigna's entire business model, which is dependent on managing costs through network pharmacy discounts. *See* Def. Mem. at 5. Cigna does not offer a health plan product that provides for coverage in an amount greater than the amount actually paid to the pharmacy. Ex. Q at 93:19-23. Indeed, the notion that Cigna would provide coverage for the cost of a drug in an amount greater the amount actually paid for the drug is absurd. Accordingly, "charges by a pharmacy" cannot be more than the Pharmacy Rate. Consequently, the amount of the deductible or copayment cannot be reasonably interpreted to be more than the Pharmacy Rate.

Because Cigna's proffered interpretation of the Class Plan language is arbitrary and capricious, its interpretation is not entitled to deference under any standard of review and, therefore, Plan interpretation is a Class wide issue.

### D.    There Are No Fundamental Intraclass Conflicts

Contrary to Cigna's argument (Def. Mem. at 29-31), there are no "fundamental intraclass conflicts that preclude class certification." Indeed, "courts are generally skeptical of defenses to class certification based on conflicts between the proposed class members." *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.,* No. Civ. 02-6030 (WHW), 2006 WL 891362, at *8 (D.N.J. Apr. 4, 2006). A supposed conflict will bar certification only in very exceptional cases.

See *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 571 (S.D.N.Y. 2008) (the

conflict "must be fundamental") (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280

F.3d 124, 145 (2d Cir. 2001)). To defeat class certification, a defendant must show "that any

asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in

proceeding with the litigation." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493,

514-15 (S.D.N.Y. 1996) (emphasis added). Cigna does not come close to meeting that standard.

Cigna's argument rests on faulty premises underlying Plaintiffs' Class and Subclass

definitions. Those definitions are premised on two transactional criteria:

1. A class member's cost-share payment exceeded the amount Cigna agreed to pay the
   pharmacy; and

2. The excess amount was transferred or credited by the pharmacy to Cigna (the
   clawback).

*See* ECF 253 at 2. Under the Plans, class members' cost-share payments should have been no

more than the Pharmacy Rate. They were not. Plaintiffs are seeking return of this overcharge –

nothing more.

A defendant is "not free to unilaterally redefine the class," *Davis v. Transamerica*

*Commercial Fin. Corp.*, 1996 U.S. Dist. LEXIS 3644, at *5 (N.D. Ill. Mar. 22, 1996), yet Cigna

attempts to add an additional group of claims. Cigna proposes to add claims where:

1. A class members' cost-share payment was ***less than*** the amount Cigna agreed to pay
   the pharmacy; and

2. ***No excess amount*** was transferred to Cigna (*i.e.*, no clawback).

Cigna wrongly posits that Plaintiffs are seeking a reprocessing of these claims "using the

Pharmacy Rate instead of the Client Rate as a cap on class members' prescription drug

payments." Def. Mem. at 30; But these claims are not part of this case because the member cost-

share payments were lower than the Pharmacy Rate. In such cases, there was no overcharge and

23

no clawback.[20]

Cigna's assertion of an "intraclass conflict" is, at best, a set-off argument. But this affirmative defense (to the extent it applies) is not a reason to deny class certification.[21] *See, e.g.*, *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1282293, at *20 (S.D.N.Y. Mar. 28, 2014); *Herman v. SeaWorld Parks & Entm't, Inc.*, 320 F.R.D 271, 298 (M.D. Fla. 2017); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 685-86 (N.D. Ga. 2016); *Berrien v. New Raintree Resorts, Int'l, LLC*, 276 F.R.D. 355, 364 (N.D. Cal. 2011). Furthermore, none of Cigna's affirmative defenses mentions set-off or recoupment. *See* ECF No. 145 at 132-37.[22] Nor has Cigna filed any counterclaims here. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009); *Seven Corners Shopping Ctr. Falls Church, Va. Ltd. P'ship v. Chesapeake Enters, USA LLC*, No. 07-CV-6332T, 2010 WL 5253528, at *5 (W.D.N.Y.

---

[20] Cigna's reliance on Plaintiffs' response to Interrogatory 13 (*see* Def. Mem. at 30) is misplaced. There, each named Plaintiff stated that his or her cost-share payments should not have exceeded the Pharmacy Rate. Nowhere do the named Plaintiffs contend – as Cigna claims – that ███████████████ *See* Decl. of Dr. Sean M. May, Ph.D.  [ECF No. 275-4] at ¶ 85. Moreover, any doubt regarding Plaintiffs' theory is answered in the very next interrogatory response. In Interrogatory 14, Cigna requested that plaintiffs "[d]escribe in detail any and all remedies that you seek" and "the method of calculating each … element of damages or other relief." Plaintiffs responded that "the calculation of damages will be done by an expert retained by Plaintiffs." And, that is precisely what Mr. Mustoe did in his declaration. *See generally* Mustoe Decl.

[21] Cigna's contention that Plaintiffs' calculation of damages creates a class or subclass where some members will "ow[e] more for prescription drugs," Def. Mem. at 30, is wrong and based entirely on Cigna's recasting of the class and subclass definitions. Those definitions are expressly limited to those transactions where the class member made a cost-share payment in excess of the Pharmacy Rate and Cigna clawed back that excess. There is no transaction under the proposed definitions where a class member will "owe more." And, as explained previously, Cigna cannot unilaterally redefine/control a class (or subclass) that Plaintiffs seek to certify.

Moreover, Cigna does not alert the Court to the *de minimis* nature of this issue.  For instance, the Class Representatives and their families had 312 clawback transactions totaling $1,482 and ***just ten*** transactions in which the Client Rate was lower than the Pharmacy Rate, totaling approximately $33. Ex. P at ¶ 6.

[22] Cigna's alleged entitlement to some type of set-off also rings hollow since it has never taken any necessary steps to pursue such relief.

Aug. 6, 2010).[23] Cigna cannot defeat certification based on a defense that it has not even pled.

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003) – the principal case relied upon by Cigna – does not preclude class certification due to alleged offsetting benefits because "there is no suggestion . . . that class members were subjectively aware of any offsetting benefits [and they] have also not been shown to have a greater-than-average level of sophistication, which further cautions against finding a conflict of interest." *In re Delta/AirTran*, 317 F.R.D. at 695-96. Finally, even if some conflict did exist (it does not), opt out rights under Rule 23 would protect class members, a fact overlooked by the court in *Valley Drug*:

> The problem with the Eleventh Circuit's reasoning is that it ignores that if any putative class member would prefer not to participate in a lawsuit . . . ***that class member can opt out of the lawsuit***. As one court has noted, the opt out procedure determines "whether alleged conflicts are real or speculative. It avoids class certification denial for conflicts that are merely conjectural and, if conflicts do exist, resolves them by allowing dissident class members to exclude themselves from the action." ***It is thus unsurprising that* Valley Drug *has not been followed in this District and others***.

*Braintree Labs., Inc. v. McKesson Corp.*, No. 11-80233 MISC JSW (JSC), 2011 WL 5025096, at *2 (N.D. Cal. Oct. 20, 2011) (emphasis added) (citations omitted); *see also In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 WL 3498067, at *13-14 (N.D. Cal. June 29, 2020) (same); *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253,

---

[23] The set-off argument also fails on its merits because Cigna is not entitled to "net" claimed undercharges against any overcharges. Def. Mem. at 29-31. That assertion ignores that each prescription drug purchase is a separate transaction which initiated and concluded at the point of sale. Ex. AN at 37:9-39:3. The alleged "undercharges" are not within the scope of this litigation. If a class member was overcharged at the point of sale, then he or she is entitled to a refund at that time. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 136 (D.D.C. 2017) ("[A] single overcharge is sufficient to show injury . . ."). That Cigna may subsequently undercharge that same person in a separate transaction is irrelevant to the earlier overcharge.

268 (D. Mass. 2008).[24]

### E. Plaintiffs Will Fairly and Adequately Represent the Interests of Class Members

In the section of its brief on "adequacy" (Def. Mem. at 31-34), Cigna makes a number of arguments that concern both the typicality and adequacy prongs of Rule 23. First, Cigna claims that the named Plaintiffs' copayment claims are not typical of the deductible claims because Plaintiffs have no incentive to establish overcharges on deductibles. Def. Mem. at 32. However, Cigna ignores the fact that the core violation and the Plan language for both copayments and deductibles are the same.

The typicality requirement is met whenever a plaintiff and the proposed class were affected by the same improper conduct, regardless of "minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). All that is required is that "'the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Audet v. Fraser*, 332 F.R.D. 53, 67–68 (D. Conn. 2019) (quoting *In re MF Glob. Holdings Ltd. Inv. Litig.,* 310 F.R.D. 230, 236 (S.D.N.Y. 2015)). Here, each Class Member claim arises from the same core "portion of the Covered Expenses" Plan language and the same course of transactional events that violated their Plans. And, the claims arising from these Plan violations

---

[24] Nor is Cigna aided by the decision in *Peters v. Aetna Inc.*, No. 15-cv-00109-MR, 2019 WL 1429607 (W.D.N.C. Mar. 29, 2019), *appeal docketed*, No. 19-2085 (4th Cir. Oct. 4, 2019). Not every class member must have been damaged in order for a claim to be certified under Rule 23(b)(3). *See, e.g.*, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *12 n.12, *15 (D. Mass. Oct. 16, 2017) (granting class certification even though Defendants argued "at least 378,000 consumers were uninjured even if Defendants are found liable for antitrust violations as a result of coupon and voucher programs"); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369 (D.D.C. 2007) ("[P]laintiffs do not need to prove that every class member was actually injured.). As the Seventh Circuit explained, "a class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility *or indeed inevitability* does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (emphasis added).

are based on the same legal theories. Accordingly, incentives are not "misaligned" and typicality is satisfied. Here, as in all of these cases,[25] Plaintiffs are challenging a single policy and practice, and while there are some factual differences between co-payments and deductibles,[26] they create no conflicts of interest and do not defeat typicality.

Cigna also wrongly argues that Plaintiffs' claims are not typical because Plaintiffs are all members of self-funded plans, which might be subject to specific defenses that would not apply to class members who are participants of insured plans. *See* Def. Mem. at 33. However, "the existence of unique defenses is insufficient to defeat typicality unless the defenses threaten to become the focus of the litigation." *Audet,* 332 F.R.D. at 68. "[I]n fact, a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him or her that would not impact other class members." *Id.* (internal citations omitted). Indeed, the cases cited by Cigna make this same point. In *Butto v. Collecto Inc.,* 290 F.R.D. 372, 384 (E.D.N.Y. 2013), plaintiff's claims were typical even though the defendant had a potential defense to plaintiff that did not apply to other class members. The court noted that "'the presence of a meritorious unique defense as to Plaintiff . . . will not threaten to

---

[25] Courts often certify classes where the named plaintiff did not suffer identical types of loss as all class members. *See, e.g., Central States Southeast & Southwest Areas Health  & Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 235, 236-37 (2d Cir. 2007); *Haddock v. Nationwide Fin. Servs., Inc.,* 262 F.R.D. 97, 117 (D. Conn. 2009), *vacated and remanded on other grounds sub nom. Nationwide Life Ins. Co. v. Haddock,* 460 F. App'x 26, 29 n. 2  (2d Cir. 2012). For instance, plaintiffs can represent investors in multiple securities, even if they did not purchase each of the challenged securities, so long as plaintiffs allege a "single course of wrongful conduct." *In re Dreyfus Aggressive Growth Mut. Fund Litig.,* No. 98CIV.4318(HB), 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000) (citing cases). Additionally, where plaintiffs' claims allege the same injury, the fact that plaintiffs "did not purchase all (or even most) of the challenged products" does not defeat typicality. *Ang v. Bimbo Bakeries USA, Inc.,* No. 13-CV-01196-HSG, 2018 WL 4181896, at *9 (N.D. Cal. Aug. 31, 2018) (citing cases); *accord, Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 535 (E.D.N.Y. 2017).

[26] That deductibles may accumulate is irrelevant because, as set forth above, under Plaintiff's theory of the case, each individual overcharge on a deductible transaction is a claim at the moment of the overcharge, without regard to subsequent transactions. Opp. to Mot. to Exclude, Argument, Part II.C.

become the focus of the litigation . . . because it does not go to the heart of Plaintiff's case and will not require considerable time and effort to rebut." *Id.* (quoting *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 180 (S.D.N.Y.2008)). *Belfiore v. Procter & Gamble Co.,* 311 F.R.D. 29, 63–64 (E.D.N.Y. 2015), which Cigna also cites, reached the same result. Here, the "unique defenses" identified by Cigna will not shift the focus of the lawsuit from Cigna's common conduct of overcharging members and clawing back those overcharges.[27]

Cigna argues that it is not a proper defendant with respect to self-insured plans because it is not responsible for funding benefits, no longer provides administrative services with respect to some of the plans, and does not exercise "total control" over claims for benefits. Def. Mem. at 33. The cases Cigna cites, however, relate solely to claims for benefits; they do not also involve claims for breaches of fiduciary duties, RICO claims, or claims where the defendant clawed back overcharges.[28] Moreover, even as to the claims for benefits, the cases cited by Cigna are fundamentally different. Here, the claims administrator did not simply deny a benefit to be paid by the sponsor, it secretly appropriated the benefit and kept it for itself. The Plans did not profit from Cigna's improper actions, and, if Cigna is no longer acting as an administrator, the current plan administrators did not profit either. In this case, because Cigna wrongfully took Plaintiffs' Plan benefits, and still has "total control" over those misappropriated benefits, it should be

---

[27] Cigna lists without argument a number of "differences" among the putative class representatives. Def. Mem. at 11. To the extent this is an argument that any of the named plaintiffs are inadequate class representatives, it fails because courts routinely certify classes where Plaintiffs do not share every attribute of the class they seek to represent, as discussed in the foregoing cases.

[28] Defendants cite *Brand v. AXA Equitable Life Ins. Co.,* No. CIV.A. 08-2859, 2008 WL 4279863 (E.D. Pa. Sept. 16, 2008), *Poonawala v. AIG Claim Servs., Inc.,* No. 06-CV-1990-RDP, 2006 WL 8436586 (N.D. Ala. Nov. 20, 2006); *Korman v. Consol. Edison Co. of N.Y., Inc.,* 915 F. Supp. 2d 359 (E.D.N.Y. 2013); *Hall v. Lhaco, Inc.,* 140 F.3d 1190, 1192 (8th Cir. 1998); *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,* 798 F.3d 125, 132 (2d Cir. 2015); *Easter v. Cayuga Med. Ctr. at Ithaca Prepaid Health Plan,* 217 F. Supp. 3d 608, 630 (N.D.N.Y. 2016);. Def. Mem. at 33, 37, and 43-44. *Brand* and *Poonawala* involved contractual claims for disability benefits; the remaining cases were claims for benefits under ERISA section 502(a)(1)(B).

ordered to pay them back and, therefore, is the proper party.

The Second Circuit discussed an analogous situation in *L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*, 710 F.3d 57, 66–67 (2d Cir. 2013). In *L.I. Headstart*, the court rejected the administrator's argument that former fiduciaries have no standing to sue under ERISA because the former fiduciary had an interest in the plan's assets and, therefore, was a proper party:

> The Administrators rely on *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 14–15 (2d Cir.1991), for the proposition that a former fiduciary lacks standing under ERISA § 502(a). The circumstances in *Chemung,* however, are distinguishable. There, we held that a former fiduciary—whose interests were adverse to those of the plan—lacked standing where it "no longer [had] an interest in protecting a plan to which it [was] now a complete stranger." *Chemung,* 939 F.2d at 15. Here, far from being a complete stranger to the Plan, the district court found that LIHS had a continuing interest in protecting the Plan assets, which consisted in part of the funds LIHS had contributed to the Plan during its participation. Accordingly, we conclude that LIHS has standing under ERISA § 502(a) as a fiduciary of the Plan. Our conclusion is consistent with ERISA's remedial scheme designed to "remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities.

*Id.* at 66-67 (internal quotations omitted). This logic is also applied to participants in defined contribution plans after they have withdrawn all of their funds from the plan. *See, e.g., Cryer v. Franklin Templeton Res., Inc.,* No. C 16-4265 CW, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017). Here, Cigna is not a "complete stranger" to the Plans — it misappropriated Plan benefits and still has "total control" over them. Thus, it is a proper defendant.

Finally, shifting gears to an adequacy analysis, Cigna argues that the named Plaintiffs "may" be subject to the affirmative defense of failure to exhaust administrative remedies, but other class members may have exhausted and, therefore, are not subject to that defense. Def. Mem. at 33-34. This argument fails because the exhaustion argument only applies to the named Plaintiffs in a class action. *See Adams v. Anheuser–Busch Companies, Inc.*, No. 10–cv–826, 2012

WL 1058961, at *4-5 (S.D. Ohio Mar. 28, 2012); *Thomas v. SmithKline Beecham Corp.*, 201

F.R.D. 386, 395 (E.D. Pa. 2001); *Laurenzano v. Blue Cross & Blue Shield*, 134 F. Supp. 2d 189,

211 (D. Mass. 2001); *see also* Newburg on Class Actions § 2:3 (5th Ed.). Moreover, Cigna has

the burden of proving that the named Plaintiffs failed to exhaust. *Negron* 300 F. Supp. 3d at 352-

55. Because they have not even attempted to meet this burden,[29] and argue only that Plaintiffs'

claims "***may*** be premature" (emphasis added), this argument does not approach the level of

"antagonistic interests" necessary to establish that the Plaintiffs are inadequate. Pl. Opening

Memo at 10. As this Court has emphasized, "[t]he unique defense rule . . . is not rigidly applied

in this Circuit and is intended to protect [the] plaintiff class—not to shield defendants from a

potentially meritorious suit.'" *Estate of Gardner v. Cont'l Cas. Co.,* 316 F.R.D. 57, 72 (D. Conn.

2016) (quoting *Duling v. Gristede's Operating Corp.,* 267 F.R.D. 86, 97 (S.D.N.Y.2010)).

### F.      The Plaintiffs Satisfy Rule 23(b)(2) On a Class-Wide Basis

Cigna's arguments concerning Rule 23(b)(2) (Def. Mem. at 34-38) are essentially a

rehash of prior arguments. Cigna's argument that the Court needs to consider various "benefit

designs" set forth in "tens of thousands of different plan documents" (Def. Mem. at 34) fails

because this case only concerns Cigna's boilerplate Plan language. Cigna's argument that

Plaintiffs "demand ***different*** methods of calculating prescription drug payments" (Def. Mem. at

35, emphasis in original) is facially untrue: Plaintiffs argue for a common method of

recalculating prescription drug payments according to boilerplate Plan language. Opp. to Mot. to

Exclude, Argument, Parts II & III. Accordingly, no individual Plan-by-Plan determinations need

to be made.

---

[29] In fact, Cigna cannot meet this burden because Plaintiffs are deemed to have exhausted as a result of Cigna's failure
to establish and maintain reasonable claim procedures. *Negron,* 300 F. Supp. 3d  at 352-55.

Cigna's argument that "'clawbacks' [are] a red herring" (Def. Mem. at 35) also fails. As set forth above, the issue in this case is whether members were overcharged, and whether Cigna took the overcharges for itself as clawbacks. If the Court orders recalculation, Class and Subclass members will receive concrete benefits in the form of the return of the overcharges that were "clawed back."

Cigna's argument that the class is not cohesive due to conflicts because some class members would be "worse off" if reprocessing is ordered (Def. Mem. at 37) is also wrong. The only claims Plaintiffs seek to reprocess are claims where there were overcharges. *See* Part II.D above; *see also* Opp. to Mot. to Exclude, Argument, Part II.B. No one will be "worse off" if Plaintiffs prevail.

Cigna's argument that it cannot recalculate claims because it is no longer the claims administrator (Def. Mem. at 37) fails for the reasons set forth above in Part II.E. Moreover, Cigna tries to confuse the issue of recalculating benefits that are being paid under current plans and those benefits that should have been paid under prior plans. In contrast to the cases Cigna cites (Def. Mem. at 37), Cigna was the claims administrator *at the time* it improperly overcharged Class and Subclass members and took the overcharges *for itself*. The Court should exercise its broad equitable powers to order Cigna to use its data and the claim processing system it used to process the claims the first time to reprocess the claims correctly this time. *See Frommert v. Becker,* 153 F. Supp. 3d 599, 610 (W.D.N.Y. 2016) (in ERISA action, "[o]nce invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies") (quoting *Brown v. Plata,* 563 U.S. 493, 538 (2011))).

Cigna's admission that it has a claims processing system that can track which Plan language applies to particular claims (Def. Mem. at 36) demonstrates that Cigna can efficiently

31

recalculate benefits. Def. Mem. at 36.[30] Moreover, Cigna used (and continues to use) Argus to process its pharmacy claims. Argus has the ability to reprocess pharmacy claims for Cigna and did so on an unidentified number of occasions. *See, e.g.*, Exs. BQ and BR (documenting ongoing remediations, including several involving Argus). It can do so again.

Cigna argues that reprocessing is not proper because Plaintiffs cannot establish that Cigna used a common method to process transactions in the first instance. (Def. Mem. at 38). As a matter of law, claim procedures must be "applied consistently with respect to similarly situated claimants" 29 C.F.R. § 2560.503–1(b)(5). Here, all of the Class and Subclass members were charged in excess of the Pharmacy Rate. To reprocess the claims, Cigna would simply lower the amount of the cost-share to the Pharmacy Rate. If the member paid more, they would be reimbursed; if they paid less (*i.e.*, the limited instances when the Client Rate was lower), they would not be reimbursed. Argus's corporate designee testified that Argus "do[es] have the ability to change price" "if a plan wanted to change the rate . . . and reprocess a claim." Ex. AN at 44:13-20. None of the other processing elements would change, and Argus has all of the data necessary to reprocess the claims.

Cigna argues that Plaintiffs' cases (*see* Pl. Opp. Mem. at 14-15) involved courts ordering reprocessing "after rejecting a single method used to deny coverage" or where "the individuals all participated in a single plan." (Def. Mem. at 37-38 and nn. 18-19) But these purported distinctions are irrelevant (and not even distinctions). As discussed above, every Class and Subclass Member was subject to the exact same misconduct, arising under materially uniform

---

[30] The facts relating to Cigna's continued refusal to explain how to tie claims to Plan language are set forth in the Motion to Strike filed herewith.

contractual Plan terms. Accordingly, every Class and Subclass Member *was* denied full coverage under a "single method" pursuant to "single" Class or Subclass Plan language.

### G.   Plaintiffs Satisfy Rule 23(b)(3)

#### 1.   Plaintiffs' Damages Calculation Matches Their Liability Theory.

As discussed above, Plaintiffs' damages theory is quite simple:  Plaintiffs seek to recover, on a transaction-by-transaction basis, the amount they were overcharged (any amount in excess of the Pharmacy Rate), which is measured here by the amount that was clawed back by Cigna. In other words, the clawback amount equals Plaintiffs' damages on each transaction. Because Cigna's claims data tracked the amount of these clawbacks on a transactional basis, Mr. Mustoe isolated the clawback field for each claim in Cigna's data and is able to determine the aggregate amount of those clawbacks. Mustoe Decl. at 11-12. Mr. Mustoe can also identify the aggregate damages (clawbacks) amount due each class member (with interest as appropriate).

Unable to attack Mustoe's overcharge calculations, Cigna claims that Mustoe should have done an additional calculation determining the potential impact of deductible-shifting and out-of-pocket maximums. Def. Mem. at 40-41. First, Cigna's argument should be stricken. *See generally* Plaintiffs' Memorandum of Law in Support of Motion to Strike ("Mot. to Strike Mem.") filed herewith. In addition, as Plaintiffs demonstrate in their Opposition to the Motion to Exclude at Argument, Part II.C, such calculations are not required, or, if they are, they are better performed at some later point in the litigation after class certification has been granted.

Cigna also argues that Mr. Mustoe improperly used the Client Rate as a "cap" on members' cost-share payments. Def. Mem. at 41-42. But for each claim where the member paid a Client Rate that was less than the Pharmacy Rate, the claim was not adjudicated in violation of the Plan language and there was no overpayment. *See* Parts II.D & E above. Since there were no

33

overcharges on those claims, they are not asserted by the Class or Subclass, and Mr. Mustoe's

exclusion of them is consistent with Plaintiffs' liability theory.

### 2. Mustoe's Methodology Is Consistent With Plaintiffs' Class Definitions.

At page 42, Cigna summarizes, in a single paragraph, pages 24-32 of its Motion to

Exclude. As demonstrated in Plaintiffs' Opposition to the Motion to Exclude filed herewith (at

Argument, PartIII), Mustoe's methodology is fully consistent with plaintiffs' class definitions.

### 3. No ERISA Issues Defeat Predominance

During discovery, Cigna produced data that it represented "identifies whether a

prescription drug transaction under a participant's plan is subject to [ERISA]." Ex. BS at 3.

Plaintiffs' damages methodology relies on this data and Cigna's representations about it. Cigna

now argues that the Court and Plaintiffs cannot rely on Cigna's own records which were based

on representations from Cigna customers, even though Cigna relies on those same records in

setting up Plans and in adjudicating claims. Def. Mem. at 43; Ex. K at 169:13-170:3 ("I believe

this document is based on what we house within Cigna as to . . . how the client has told us to set

up their ERISA status. Yes."). In other words, Cigna essentially argues that no ERISA class

action could ever be certified because no one can be certain if plans are subject to ERISA

without direct evidence from every sponsor. Cigna seems to suggest that certifying Plaintiffs'

proposed Classes and Sub-classes may implicate ascertainability and determining whether Plans

fall within the ERISA classes.

In *Owens v. Metro. Life Ins. Co.,* 323 F.R.D. 411 (N.D. Ga. 2017), MetLife argued that

the class could not be ascertained because the plaintiff would have to prove "that each of the

policies and certificates covered by 32,000 plans contains the specific payment language that

Plaintiff seeks to litigate (while not containing other language specified in the proposed class

definition), and that each of those plans is in fact governed by ERISA." *Id.* at 416. The court

found that using the defendant's business records, the plaintiff could determine which plans were

governed by ERISA. *Id.* at 416. Just like in *Owens*, Plaintiffs can identify which plans are

governed by ERISA based on Cigna's records.[31] Moreover, given the many ERISA class actions

involving multiple plans that have been certified, Cigna's argument is not credible. *See, e.g.,*

*Glass Dimension, Inc. v. State Street Bank & Trust Co.,* 285 F.R.D. 169, 176-77, 181 (D. Mass.

2012) (certifying class of at least 1,790 tax exempt retirement plans).[32] And, Cigna cites no case

supporting its novel theory. This is because private health plans are indisputably governed by

ERISA. Plus, as set forth above, any Class or Subclass member who believes that their Plan is

not an ERISA Plan is fully protected in two ways. First, if Cigna's records are wrong, it is easy

enough to move class members in and out of the ERISA class. Second, as set forth above, any

class member is protected by the right to opt out.[33]

### H.     No RICO Issues Defeat Predominance

In assessing predominance, courts should focus on the claim's elements. *See Erica P.*

*John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). RICO makes it unlawful for "any

---

[31]  By contrast, the cases cited by Cigna that involved "[d]isputes regarding the applicability of ERISA" (Def. Mem. at 43) are inapposite. Those cases involve church or governmental plans, in which the applicability of ERISA was hotly contested by the sponsors themselves. *See Advocate Health Care Network v. Stapleton,* 137 S. Ct. 1652 (2017) (status of church plan disputed); *Mayer v. Mercy Health Servs., LLC,* No. 18-CV-00391-JCH, 2019 WL 527964 (E.D. Mo. Feb. 11, 2019) (same); *Rose v. Long Island R.R. Pension Plan,* 828 F.2d 910 (2d Cir. 1987) (status of governmental plan disputed). Here, the sponsors themselves all considered their Plans to be ERISA-qualified, as set forth in Cigna's own records. It would be strange for Cigna to argue that they were not providing what the sponsors requested and paid for (an ERISA plan).

[32] Plaintiffs addressed Cigna's repeated argument (Def. Mem. at 43-44) that it can't be liable as a claims administrator above at Part II.E.

[33]  Cigna's argument that Plaintiffs have failed to specify which of their ERISA claims they are pursuing (Def. Mem. at 8 n. 5) is peculiar. Plaintiffs are pursuing all six of their ERISA claims, and have never indicated otherwise. The parties, including Cigna, are well aware of the elements of such claims, as the Court spelled them out in its ruling on Defendants' motion to dismiss. *See generally Negron v. Cigna Health and Life Ins.,* 300 F. Supp. 3d 341, 354-55 (D. Conn. 2018). These elements are all subject to common proof, in the manner discussed herein.

person employed by or associated with any enterprise . . . to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity." To establish a violation of 18 U.S.C. § 1962(c), "a plaintiff must demonstrate an injury to business or property caused by "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 295 (D. Conn. 2009) (citations omitted).

As a general matter, "[c]ommon issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme." *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTX), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009). Accordingly, courts routinely certify RICO classes. *See, e.g., Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 89 (2d Cir. 2015), *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) .

Contrary to Cigna's arguments (Def. Mem. 47), common issues as to Plaintiffs' RICO claims predominate, and each of the RICO elements will be proven by class-wide evidence. Elements 1 (participating in conduct) and 2 (of an enterprise) of Plaintiffs' RICO claims focus on Cigna's directing the Argus Enterprise and Optum Enterprise to create a mechanism through which Cigna could obtain additional monies beyond what Plaintiffs and Class members should have paid under their Plans. The common evidence will include the agreement between Cigna and Argus, the agreement between Cigna and OptumRx, the provider manual that governed the relationship between OptumRx and its network pharmacies, and common evidence (such as emails and internal documents) establishing the control that Cigna exerted over Argus and/or

OptumRx.[34]

Element 3 (pattern) can also be shown through common proof. During the Class Period, there were tens of millions of clawbacks worth many hundreds of millions of dollars. Ex. AY at 18-19.With regards to Element 4 (racketeering activity), Plaintiffs allege Defendants engaged in mail and wire fraud. SACC ¶¶ 288-89. "The 'essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'" *Spencer*, 256 F.R.D. at 296. Here, as discussed in Plaintiff's opening memorandum (at Part II), Cigna's overcharge and clawback scheme included: directing pharmacies participating in the pharmacy networks to collect improper overcharges; transmitting requests, money, and other signals via U.S. mail or interstate wire (in violation of 18 U.S.C. §§ 1341 and 1342) to execute the clawback scheme; misrepresenting material facts in the language of the Plans concerning the amount participants would pay for prescription drugs and failure to disclose important information concerning the cost of those drugs; and imposing "gag" agreements by Cigna to prohibit Argus, OptumRx and the pharmacies from disclosing Cigna's scheme.

Cigna's argument that Plaintiffs have not alleged a uniform misrepresentation (Def. Mem. at 47-48) is also incorrect. Cigna's entire argument is premised on the assertion that there are "[m]aterial variations in plan language." Because Cigna is incorrect on this point (as

---

[34] The fact that Optum may negotiate indirectly with some pharmacies through PSAO's (Def. Mem. at 47) is irrelevant. Plaintiffs have alleged that Cigna exercised control over Argus and OptumRx and commanded them to enforce "gag" clauses against the pharmacies that hid the fraudulent scheme, whether directly or indirectly. (*see, e.g.*, Pl. Opening Memo at 5-6). Nor is it fatal to class certification that OptumRx did not contract with mail order pharmacies. (Def. Mem. at 47). There is no dispute that OptumRx did control retail pharmacies and that such control can be proven through the common proof of uniform "gag clauses." Further, Plaintiffs alleged both an OptumRx enterprise and an Argus enterprise and there is no dispute that Argus was involved in the mail order transactions. *See* Pl.'s Second Am. Consol. Compl. ("SACC") [ECF 198] at, ¶¶ 263-66. That is sufficient to certify the RICO Class and Subclass.

discussed in Part II.C above), this argument, and its arguments trying to avoid *U.S. Foodservice* (Def. Mem. At 50), fail. This case is just like *U.S. Foodservice*. *See* Pl. Opening Memo at 19-20. Moreover, Cigna completely ignores the other alleged misrepresentations, including, but not limited to, the false representations concerning the amount that the Member owed as a cost share. These false misrepresentations can be proved by common evidence: the prescription drug transaction data which states the cost share paid.

Cigna's argument that Plaintiffs cannot demonstrate "fraudulent intent" (Def. Mem. at 48) likewise ignores the facts. ***Cigna***, not the plan sponsors, drafted the language at issue as part of its boilerplate. *See* Part II.C.2 above; Opp. to Mot. to Exclude, Factual Background, Part I.A. ***Cigna***, not the plan sponsors, actively imposed gag clauses and otherwise did everything in their power to hide the clawbacks from Class Members. *See* Part II.C.3.a above. Accordingly, ***Cigna*** acted with fraudulent intent, and thereby caused Class Members' injury. In addition, for civil RICO, the intent element can be met with proof of reckless indifference. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *O'Malley v. New Yok City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990). Cigna's documents showing that it reaped hundreds of millions of "clawbacks" for years without reviewing its plan language to see whether it was permissible is sufficient classwide proof to establish RICO intent. Pl. Opening Memo at 4.

Cigna's argument that Plaintiffs' RICO claims require they prove individual reliance (Def. Mem. at 48-49) is without merit. A "plaintiff asserting a RICO claim predicated on mail fraud need ***not*** show that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 661 (2008) (emphasis added). Indeed, "[n]othing on the face of the relevant statutory provisions imposes such a [reliance] requirement." *Id.* at 648. Accordingly, Cigna's discussion of individual "reliance" (Def. Mem. at 49) is irrelevant.

Plaintiffs may need to show **causation** (as distinct from reliance). *See In re U.S. Foodservice*, 729 F.3d at 119 n. 6.[35]  But as set forth above, Cigna caused harm to Class Members by causing pharmacies to charge, and then clawing back, overcharges under the Plans.[36]

Cigna is also wrong when it argues that individual issues related to damages undermine certification. Def. Mem. at 49-50. Even if individual damage issues did arise, they would pose no barrier to certifying a class. *See A.R. v. Connecticut State Bd. of Educ.*, No. 3:16-CV-01197 (CSH), 2020 WL 2092650, at *13 (D. Conn. May 1, 2020); *Spencer*, 256 F.R.D. at 294; *Macedonia Church v. Lancaster Hotel Ltd. P'ship*, 270 F.R.D. 107, 117 (D. Conn. 2010). Moreover, the damages caused by RICO violations resulting in plaintiffs overpaying for products offered by defendants can be proven on a class-wide basis. *See In re U.S. Foodservice,* 729 F.3d at 123 (holding that measure of damages was customers' overpayments resulting from the defendants' fraud; "[w]e accordingly conclude that USF's contention that the district court abused its discretion in certifying the RICO class because RICO damages cannot be shown on a class-wide basis is without merit").[37] Cigna relies on *Commercial Union Assurance Co.*

---

[35] Cigna's reliance on *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 220 (2d Cir.2008), for arguments that issues of reliance defeat predominance is misplaced. *See Spencer*, 256 F.R.D. at 297 ("after *Bridge*, the *Moore* and *McLaughlin* decisions are no longer good law on the question of whether a plaintiff must show that he or she was personally a recipient of a material misrepresentation").

[36] Even if reliance were a requisite element of Plaintiffs' RICO claims, reliance is subject to common proof. No rational actor who knew about the illegality of Cigna's clawback scheme would have willingly elected to pay more for prescription drugs than they had to. "Courts have found that reliance can be established on a class-wide basis where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct." *Cohen v. Trump*, 303 F.R.D. 376, 385 (S.D. Cal. 2014); see also *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491–92 (C.D. Cal. 2006) ("[R]eliance can be shown where it provides the 'common sense' or 'logical explanation' for the behavior of plaintiffs and the members of the class"); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 119–120 ("proof of payment constitutes circumstantial evidence that the plaintiffs lacked knowledge of the scheme.")

[37] Cigna's attempt to distinguish *U.S. Foodservice* (Def. Mem. at 50) fails because it completely misframes the core issue. Contrary to Cigna's argument, "the fundamental question" is **not** "whether the plan document for each class

v. *Milken*, 17 F.3d 608, 612 (2d Cir. 1994) for the proposition that "damages under RICO must

'place [plaintiffs] in the same position they would have been in but for the illegal conduct.'" Def.

Mem. at 49. But these are precisely the type of damages that Plaintiffs seek here. Moreover, in

*Commercial Union*, the court denied recovery because, there, the defendants had already

returned to plaintiffs all the money they were owed (plus a 10.2% return), and any other damages

were entirely speculative. *Id.* at 612-64. Cigna, despite being caught in its fraud, has yet to do

so.[38] Cigna's remaining arguments concerning the sufficiency of Plaintiffs' damages model are

addressed in Plaintiffs' response to Cigna's *Daubert* motion.

## III.    CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request their Motion for

Class Certification be granted in full. Should the Court identify any potential concerns, Plaintiffs

respectfully request the opportunity to amend the Class definitions to address any such issues.[39]

---

member misrepresented the plan-specific benefit design selected by each plan sponsor." Rather, as discussed above, the question is whether "the **boilerplate** plan document **drafted by Cigna** allowed **Cigna** to claw back monies to be **retained by Cigna,** while imposing gag provisions and otherwise doing its best to ensure Class Members remained ignorant to what **Cigna** was doing for **its own benefit.**"

[38]   Cigna also cites *McLaughlin* for the proposition that Plaintiffs cannot recover what it seems to suggest are expectancy damages. Def. Mem. at 49-50 (*citing McLaughlin*, 522 F.3d at 228-29). While *McLaughlin* held that expectancy damages are unavailable under RICO, plaintiffs can nevertheless recover damages by showing that they paid more "than they would have but for defendants' misrepresentation . . . ." 522 F.3d at 227. Here, Plaintiffs' damages represent the amount Class Members overpaid for prescription drugs, and such non-speculative damages are recoverable.

[39]   In addition, the Court has the inherent power to amend the proposed class definitions itself as it deems appropriate. *See Santiago v. Merriman River Assocs.,* No. 17-cv-2054-VAB, 2018 WL 2465358, at *7 (D. Conn. June 1, 2018) (courts have "broad discretion to modify the class definition as appropriate," and "[m]odifying the class definition may be particularly appropriate at the certification stage") (citations omitted); *Local 1522 of Council 4 v. Bridgeport Health Care Center, Inc.,* No. 15-CV-1019 (JCH), 2018 WL 1419792, at *16 (D. Conn. March 21, 2018) ("district courts generally enjoy broad discretion to 'alter or modify' proposed classes").

Dated: September 3, 2020                    Respectfully submitted,

                                            _s/ Robert A. Izard_
                                            _____
                                            Robert A. Izard (ct01601)
                                            _Plaintiffs' Interim Co-Lead Class Counsel_
                                            Craig A. Raabe (ct04116)
                                            Seth R. Klein (ct18121)
                                            Christopher M. Barrett (ct30151)
                                            IZARD, KINDALL & RAABE, LLP
                                            29 South Main Street, Suite 305
                                            West Hartford, CT 06107
                                            Telephone:  860-493-6292
                                            Facsimile: 860-493-6290
                                            rizard@ikrlaw.com
                                            craabe@ikrlaw.com
                                            sklein@ikrlaw.com
                                            cbarrett@ikrlaw.com

                                            William H. Narwold (ct00133)
                                            _Plaintiffs' Interim Co-Lead Class Counsel_
                                            Mathew Jasinski, (ct27520)
                                            MOTLEY RICE LLC
                                            One Corporate Center
                                            20 Church Street, 17th Floor
                                            Hartford, CT 06103
                                            Telephone:  860-882-1681
                                            Facsimile:   860-882-1682
                                            bnarwold@motleyrice.com
                                            mjasinski@motleyrice.com

                                            Meghan S. Oliver, _pro hac vice_
                                            Charlotte Loper, _pro hac vice_
                                            MOTLEY RICE LLC
                                            28 Bridgeside Blvd.
                                            Mount Pleasant, SC 29464
                                            Telephone: 843-216-9000
                                            moliver@motleyrice.com
                                            cloper@motleyrice.com

                                            Joseph P. Guglielmo (ct27481)
                                            _Plaintiffs' Executive Committee Chair_
                                            Carey Alexander, _pro hac vice_
                                            SCOTT+SCOTT,
                                            ATTORNEYS AT LAW, LLP

41

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
Telephone:  206- 623-1900
Facsimile:  206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Facsimile:  612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone:  985-783-6789

42

Facsimile:  985-783-1333
andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone:  504-581-5644
Facsimile:  504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone:  516-699-8890
Facsimile:  516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone:  205-908-4906
Facsimile:  866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone:  612-596-4097
Facsimile:  612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330

Telephone: 206.448.1777
Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile:  919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs