# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR., individually and on behalf of all others similarly situated,<br><br>                                    Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br>                                    Defendant. | Civ. A. No. 16-cv-1702 (JAM)<br><br>June 28, 2021 |

## DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND THE SCHEDULING ORDER TO PERMIT THE FILING OF AN AMENDED CLASS CERTIFICATION MOTION

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................I

ARGUMENT ..............................................................................................................3

I.    THE PARTIES NEVER AGREED TO A SECOND ROUND OF CLASS
CERTIFICATION BRIEFING.............................................................................3

II.   PLAINTIFFS CANNOT SATISFY RULE 16'S "GOOD CAUSE"
REQUIREMENT FOR AMENDING THE OPERATIVE JCMP ...................................6

    A.    Plaintiffs Were Not Diligent In Pursuing Their New Class Definitions. ..............8

    B.    CHLIC Would Suffer Undue Prejudice From Having To Oppose Yet
Another Proposed Class ...............................................................................13

        1.    A Class Certification Do-Over Will Require Substantial New
Discovery and Expert Work. .................................................................14

        2.    A Class Certification Do-Over Will Result In Substantial Delay. ...........18

III.   PLAINTIFFS CANNOT SATISFY RULE 23(C)(1)(C)'S STANDARD FOR
MODIFYING AN ORDER DENYING CLASS CERTIFICATION. ............................20

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. WPX Energy Prod., LLC,*
322 F.R.D. 592 (D.N.M. 2017) ...................................................................................21

*Anderson Living Tr. v. WPX Energy Prod., LLC,*
308 F.R.D. 410 (D.N.M. 2015) ...................................................................................21

*Cabrera v. Gov't Emps. Ins. Co.,*
No. 12-cv-61390, 2015 WL 464237 (S.D. Fla. Jan. 16, 2015) ..............................21

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) .......................................................................................................15

*Commc'ns Workers of Am., AFL-CIO v. N.Y. Tel. Co.,*
327 F.2d 94 (2d Cir. 1964) ..........................................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) ..........................................................................................22

*Dash v. Seagate Tech. (US) Holdings, Inc.,*
No. 13-cv-6329, 2016 WL 4491822 (E.D.N.Y. July 12, 2016) ..............................17

*de Lacour v. Colgate-Palmolive Co.,*
16-cv-8364, 2019 WL 4359554 (S.D.N.Y. Sept. 12, 2019)....................................24

*Fair Housing of the Dakotas, Inc. v. Goldmark Property Management, Inc.,*
No. 3:09-cv-58, 2011 WL 13118548 (D.N.D. Nov. 1, 2011) ...................................3

*Fleischman v. Albany Med. Ctr.,*
No. 06-cv-0765, 2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ...............................22

*Friend v. Hertz Corp.,*
No. 07-cv-5222, 2014 WL 4415988 (N.D. Cal. Sept. 8, 2014) ..............................20

*Guity v. Uniondale Union Free Sch. Dist.,*
No. 12-cv-1482, 2014 WL 795576 (E.D.N.Y. Feb. 27, 2014)...................................8

*Gustafson v. BAC Home Loans Servicing, LP,*
No. 11-cv-915, 2014 WL 10988335 (C.D. Cal. Feb. 5, 2014)................................21

*Hargrove v. Sleepy's LLC,*
974 F.3d 467 (3d Cir. 2020) ........................................................................................21

*Hartis v. Chi. Title Ins. Co.*,
  694 F.3d 935 (8th Cir. 2012) ........................................................................... 9

*Hartman v. United Bank Card, Inc.*,
  291 F.R.D. 591 (W.D. Wash. 2013) ................................................................ 21

*In re Initial Pub. Offering Sec. Litig.*,
  483 F.3d 70 (2d Cir. 2007) ............................................................................. 21

*Johnson v. City of New Haven*,
  No. 3:17-cv-1479, 2019 WL 1122993 (D. Conn. Mar. 12, 2019) ..................... 13

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ............................................................................ 9

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ................................................................... 7, 8, 13

*Leary v. Manstan*,
  No 3:13-cv-00639, 2015 WL 521497 (D. Conn. Feb. 9, 2015) ......................... 8

*Loughlin v. Amerisave Mortg. Corp.*,
  No. 1:14-cv-3497, 2019 WL 1495302 (N.D. Ga. Feb. 4, 2019) ...................... 24

*McNamara v. Felderhof*,
  410 F.3d 277 (5th Cir. 2005) .......................................................................... 20

*In re Milk Prod. Antitrust Litig.*,
  195 F.3d 430 (8th Cir. 1999) ............................................................................ 9

*Mogel v. UNUM Life Ins. Co. of Am.*,
  677 F. Supp. 2d 362 (D. Mass. 2009) ............................................................. 21

*Ortiz v. McNeill-PPC, Inc.*,
  2009 WL 1322962 (S.D. Cal. May 8, 2009) ..................................................... 11

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) ............................................................................. 8

*Pettco Enterprises, Inc. v. White*,
  162 F.R.D. 151 (M.D. Ala. 1995) .................................................................... 24

*Sosa v. Airprint Sys., Inc.*,
  133 F.3d 1417 (11th Cir. 1998) ........................................................................ 9

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
  No. 2:17-cv-00035, 2020 WL 7314794 (C.D. Cal. Nov. 30, 2020) ............ 7, 8, 11

*This, LLC v. Jaccard Corp.*,
No. 3:15-cv-1606, 2016 WL 11582700 (D. Conn. Nov. 30, 2016) ........................................7

*Thorne v. U.S. Bancorp., et al.*,
No. 0:18-cv-03405, ECF 154-155 (D. Minn. June 1, 2021)................................................2

*Torrent v. Yakult U.S.A., Inc.*,
No. 15-cv-00124, 2016 WL 6039188 (C.D. Cal. Mar. 7, 2016) ........................................21

*Torres v. Am. Airlines, Inc., et al.*,
No. 4:18-cv-983, ECF 78 (N.D. Tex. June 15, 2020) ........................................................2

*In re Tropicana Orange Juice Marketing and Sales Practices Litigation.*,
No. 2:11-cv-07382, 2018 WL 6819331 (D.N.J. Dec. 28, 2018) ......................................24

*Washington v. Vogel*,
158 F.R.D. 689 (M.D. Fla. 1994) ......................................................................................21

*Young v. Cerner Corp.*,
No. 06-cv-0321, 2007 WL 1859265 (W.D. Mo. June 26, 2007) ........................................8

**Statutes**

ERISA ...........................................................................................................................................1, 5

RICO ....................................................................................................................................1, 5, 19

**Other Authorities**

Fed. R. Civ. P. 16(b) ....................................................................................................................7, 9

Fed. R. Civ. P. 16(b)(3)(A) ..............................................................................................................7

Rule 15(a)(1) ....................................................................................................................................8

Rule 15(a)(2) ....................................................................................................................................8

Rule 16 .....................................................................................................................................*passim*

Rule 16(b) .......................................................................................................................................13

Rule 16(b)(4) ...........................................................................................................................2, 4, 7

Rule 23 .....................................................................................................................................*passim*

Rule 23(a) ..................................................................................................................9, 12, 16, 23

Rule 23(b)(1) ..................................................................................................................................21

Rule 23(b)(3) ........................................................................................................ 21

Rule 23(c)(1)(C) ............................................................................................... *passim*

Rule 23(f) ........................................................................................................ 4, 12

## INTRODUCTION

After years of extensive discovery, voluminous briefing, and Plaintiffs' repeated amendments to their Class and Subclass definitions, this Court denied Plaintiffs' Motion for Class Certification.  *See* ECF 401.  In a detailed and rigorous fifty-one-page opinion, the Court held that commonality was lacking among both the Class and Subclass that Plaintiffs sought to certify on their ERISA claim for benefits and RICO claims.  *See id.* at 27-51.  The Court's order did not contemplate, let alone invite, further motions for class certification.

Plaintiffs now seek leave to file an untimely second motion for class certification raising arguments that the Court has already rejected and based on a vague, new (as yet undefined) class that Plaintiffs could have pursued in their original Motion for Class Certification.  In their Motion to Amend the Scheduling Order to Permit the Filing of an Amended Class Certification Motion (the "Motion"), Plaintiffs mischaracterize the history of the case, the Court's decision on class certification, the operative legal standard, and the burdens that a re-do of class certification briefing would impose on the parties and this Court.

Plaintiffs argue that the parties and the Court supposedly contemplated serial class certification motions.  This is wrong.  Their argument ignores the series of Joint Case Management Plans ("JCMPs")—which have governed this case for more than three years—that include only a single deadline for filing a Motion for Class Certification (which passed more than a year ago, in March 2020) and never included a deadline for any other motion for class certification.  Plaintiffs point to a June 2020 stipulation between the parties that supposedly allows Plaintiffs to redefine their class definitions yet again (and again and again), but that stipulation was actually designed to ***prevent*** Plaintiffs from continuing to litigate this case as a "moving target" with shifting class definitions, as explained below.

Plaintiffs' Motion seeks to "amend the scheduling order" (ECF 407-1 at 1) and is thus

subject to Federal Rule of Civil Procedure 16(b)(4)'s requirement that a "schedule may be modified only for good cause and with the judge's consent."  But Plaintiffs do not even acknowledge—let alone satisfy—Rule 16's requirements.  Plaintiffs' proffered basis for leave to amend the schedule and submit another motion for class certification is to propose a "narrower" class.  Plaintiffs already had this opportunity.  *E.g.*, ECF 254 at 1 ("As set forth below, the proposed amendments *narrow* the scope of the original Class definitions. . . .") (emphasis in original).  They were not diligent in pursuing their new class definition because they could have proposed it ***before*** the Court denied their original Motion for Class Certification.  For tactical reasons, Plaintiffs chose not to.[1]  Plaintiffs' current requested relief would also cause undue prejudice, including substantial additional discovery—such as new expert reports and depositions—and would significantly delay proceedings.  There is no good cause to do so.

Beyond that, Plaintiffs contend that they are allowed to file a second motion for class certification under Rule 23(c)(1)(C), which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  But they are still subject to the requirements of Rule 16(b)(4), and courts in the Second Circuit routinely require a change in circumstances to justify revisiting a prior class certification order under Rule 23 in any event.  Here, Plaintiffs concede that there are no new facts and no new law.  Every argument Plaintiffs

---

[1] This is the third time in a year that Plaintiffs' counsel has filed nearly identical motions seeking to modify scheduling orders and re-litigate class certification based on representations that narrowed class definitions would alleviate a court's concerns.  *See* Pls.' Mot. to Amend the Scheduling Order to Permit the Filing of an Am. Class Certification Mot., *Thorne v. U.S. Bancorp., et al.*, No. 0:18-cv-03405, ECF 154-155 (D. Minn. June 1, 2021); Pls.' Mot. to Modify the Scheduling Order to Permit a Second Mot. to Certify a Class, *Torres v. Am. Airlines, Inc., et al.*, No. 4:18-cv-983, ECF 78 at 3-4 (N.D. Tex. June 15, 2020).  If, in instances like this, plaintiffs are permitted to re-litigate class certification simply by proposing a narrower class definition when an initial attempt falls short, they would have every incentive to assert broad classes in the first instance (as happened here) on the off chance they get certified.  The law does not countenance this approach.  *See infra* Part III.

would seek to make in their second motion for class certification could have been made in the motion they filed more than a year ago.  In fact, some arguments that Plaintiffs seem interested in making—including that commonality is satisfied by the "in no event" language that was the subject of the Subclass the Court refused to certify—were expressly *rejected* by the Court in denying that motion.  *See* ECF 401 at 39 ("It may be the case that plaintiffs are now defining the Subclass language to include the U&C portion, but the plaintiffs' ever-evolving class definitions undermine their argument that there are common issues across thousands of plans that are suitable for class-wide resolution.").  The Court should not entertain Plaintiffs' untimely request for reconsideration, especially given they have not articulated their new class definitions and offer only vague and unpersuasive assurances that the new definitions would resolve the substantial obstacles to certification that the Court identified.[2]

The Court should deny Plaintiffs' Motion.

## ARGUMENT

### I.    The Parties Never Agreed To A Second Round Of Class Certification Briefing.

Plaintiffs suggest that they should be permitted to file a new class certification motion because "the parties agreed that the stipulated class definition was without prejudice to Plaintiffs' requesting permission to file this motion to seek to amend the class definition to address any concerns that the Court raised."  ECF 407-1 at 1.  That is a gross mischaracterization of this case's history and the parties' positions.  The parties never contemplated—let alone agreed to—a second round of class certification briefing.  Nor did the parties agree that Plaintiffs could file a new class

---

[2] Plaintiffs' failure to articulate their new proposed class definition distinguishes this case from *Fair Housing of the Dakotas, Inc. v. Goldmark Property Management, Inc.*, No. 3:09-cv-58, 2011 WL 13118548, at *1 (D.N.D. Nov. 1, 2011), which allowed modification only in response to a specifically redefined class that the Court found to resolve all outstanding Rule 23 concerns.

certification motion without satisfying the good cause requirements of Rule 16(b)(4) and the changed circumstances required under Rule 23.

Since June 2018—after almost two years of litigation concerning the sufficiency of Plaintiffs' initial complaint—this case has been governed by a series of JCMPs agreed to by the parties and approved by the Court.  *See* ECF 140, 141, 158, 174, 177, 187, 236, 257, 264, 337. Each JCMP contained a single deadline for filing a motion for class certification.[3]   None contemplated multiple motions for class certification.[4]  In the three years during which the JCMPs have been in effect, Plaintiffs never requested that the JCMPs be amended to reflect even the possibility of subsequent Motions for Class Certification.[5]

To distract from the JCMPs, which demonstrate conclusively that the parties never contemplated multiple class certification motions, Plaintiffs argue that their Motion follows "the precise procedure contemplated by the parties" in a June 2020 stipulation (the "Stipulation").  ECF 407-1 at 5.  But that Stipulation came in response to—and was intended to foreclose, ***not*** permit— Plaintiffs' repeated attempts to redefine the class and redo class certification.

As the Court has observed, Plaintiffs' class definitions have been a moving target

---

[3] Plaintiffs' Motion misleadingly omits the long-ago passed deadline in the JCMP for filing a Motion for Class Certification that renders untimely any subsequent motion for class certification. *See infra* at 6-7.

[4] Plaintiffs' suggestion that they should be allowed to file their second motion for class certification because the JCMP has no deadline for filing an "amended" or "second" motion for class certification, ECF 407 at 1, proves too much.  The JCMP has one deadline because it only contemplated one motion for class certification.  By Plaintiffs' logic, they also could file a third or fourth motion for class certification, and CHLIC could file second, third and fourth summary judgment motions anytime, because the JCMP does not have a specific deadline for "second," "third," or "fourth" summary judgment motions.

[5] By contrast, each JCMP has other deadlines reflecting contingencies that the parties actually contemplated, such as the possibility of the joinder of additional parties or a Rule 23(f) petition following a decision on class certification.

throughout this case.  *See* ECF 401 at 39 (noting Plaintiffs' "ever-evolving class definitions").  By

the time the Court denied Plaintiffs' Motion for Class Certification, Plaintiffs had proposed seven

different class definitions:

1) Plaintiffs' original Complaint, filed in October 2016, contained one set of proposed class and subclass definitions.  *See* ECF 1 ¶¶ 78-79.

2) Plaintiffs then filed a Consolidated Complaint in January 2017 with revised class and subclass definitions.  *See* ECF 48 ¶¶ 135-36.

3) Their Amended Consolidated Complaint, filed in October 2018, contained further revised class and subclass definitions.  *See* ECF 166 ¶¶ 140-41.

4) In December 2019 and January 2020, Plaintiffs presented CHLIC with yet another set of revised class definitions that they intended to pursue.  *See* ECF 255 n.1.

5) In February 2020, after Plaintiffs sought leave from the Court to file their Second Amended Consolidated Complaint to, among other things, "propos[e] revised class and subclass definitions," ECF 195 at 3, the definitions in that Second Amended Consolidated Complaint were ***different*** than the ones presented previously to CHLIC.  ECF 198 ¶¶ 179-80.

6) Then, weeks later, in March 2020, Plaintiffs filed their Motion for Class Certification, moving to certify their ERISA claim for benefits and RICO claims with definitions that were ***different*** than the ones used to justify the amended pleading just weeks earlier.  *See* ECF 205.

7) And in May 2020—after their Motion for Class Certification had been pending for two months—Plaintiffs again sought leave to pursue yet ***another*** set of class definitions, ostensibly "to narrow the Class and Subclass definitions."  *See* ECF 253-54.

CHLIC did not initially consent to Plaintiffs' May 2020 request to amend their class

definitions in the middle of the parties' class certification briefing schedule.  *See* ECF 255.  But

CHLIC eventually agreed not to oppose Plaintiffs' request on certain conditions.  Specifically,

CHLIC sought—and Plaintiffs agreed to—protection from further amended class definitions by

stipulating that Plaintiffs "shall not seek to amend their proposed class definitions further[.]"  *See*

ECF 260 ¶ 3.  CHLIC drafted the Stipulation in no uncertain terms.  *See* Redline Stipulation

attached to June 3, 2020 Email from C. Barrett, attached as Ex. A.  Plaintiffs proposed adding a

limited exception allowing them to "address any issue(s) identified by the Court," *id.*, because—as Plaintiffs themselves explained—they were concerned that the Court might "raise issues ***and ask that Plaintiffs address them***[.]"  Ex. A (emphasis added).  Recognizing that Plaintiffs should not be foreclosed from responding to a Court order expressly requiring them to address an issue, CHLIC acquiesced to the exception with the understanding that, as had been represented, Plaintiffs would only seek to amend their class definitions further if the Court requested that they do so.  But that is not what has happened.

The Stipulation does not authorize Plaintiffs to seek to amend their class definitions under the current circumstances.  The Court's order denying their Motion for Class Certification does not invite Plaintiffs to address any specific class certification issues.  On the contrary, the Court recognized in its order that Plaintiffs' repeated attempts to revise the class definitions only undermine their positions on commonality and predominance.  *See* ECF 401 at 39 ("[P]laintiffs' ever-evolving class definitions undermine their argument that there are common issues across thousands of plans that are suitable for class-wide resolution.").  Moreover, Plaintiffs repeatedly asked the Court to invite such briefing, but the Court declined to do so.  *E.g.*, ECF 307 at 40 & n.39.  Accordingly, the Stipulation does not provide grounds to seek a do-over of class certification.

## II.    Plaintiffs Cannot Satisfy Rule 16's "Good Cause" Requirement For Amending The Operative JCMP.

The operative JCMP provides a single deadline for filing a Motion for Class Certification and expert declarations supporting class certification.  ECF 337 at 5.  That deadline passed more than a year ago in March 2020.  *Id.*  Other deadlines related to class certification passed by October 2020.  *Id.*  Plaintiffs' Motion misleadingly ignores those existing deadlines and purports to ask for a new deadline to file an "Amended Motion for Class Certification."  ECF 407 at 1.  But that is

too clever by half.  The expiration of the deadline to file a Motion for Class Certification clearly renders untimely any second (or "amended") motion for class certification.  Plaintiffs' Motion effectively seeks to modify those expired deadlines to allow for the filing of an otherwise untimely motion for class certification.

Rule 16 requires that the Court set a schedule, which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  Under Rule 16(b)(4), deadlines set forth in a scheduling order may be modified "only for good cause and with the judge's consent."  In determining "good cause" under Rule 16, the "primary consideration is whether the moving party can demonstrate diligence," but courts also "consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  The District of Connecticut Local Rules similarly emphasize that "good cause" requires "a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan."  *This, LLC v. Jaccard Corp.*, No. 3:15-cv-1606, 2016 WL 11582700, at *1 (D. Conn. Nov. 30, 2016) (quoting D. Conn. L. Civ. R. 16(b)).

Incredibly, Plaintiffs' Motion does not mention Rule 16 at all.  The Motion should be denied on those grounds alone.  *See Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:17-cv-00035, 2020 WL 7314794, at *3 (C.D. Cal. Nov. 30, 2020) ("As Plaintiffs fail to address why good cause exists to modify the deadlines in this case, Plaintiffs' Motion should be denied on this

basis alone.").[6]  In any event, Plaintiffs' conclusory argument that there is "good cause" to permit

the filing of a second motion for class certification fails for two reasons: (1) Plaintiffs were not

diligent in pursuing their new, unspecified class definition, which they could have proposed in

their original Motion for Class Certification or when they "narrowed" the Class and Subclass

definitions in May 2020; and (2) CHLIC would suffer substantial prejudice if it were forced to

devote considerable time and resources to a do-over of class certification based on the vague and

fatally flawed definition to which Plaintiffs allude.

### A.    Plaintiffs Were Not Diligent In Pursuing Their New Class Definitions.

It is well settled in the Second Circuit that "[a] party is not considered to have acted

diligently where the proposed amendment is based on information that the party knew, or should

have known, in advance of the motion deadline."  *Guity v. Uniondale Union Free Sch. Dist.*, No.

12-cv-1482, 2014 WL 795576, at *4 (E.D.N.Y. Feb. 27, 2014); *see Leary v. Manstan*, No 3:13-

cv-00639, 2015 WL 521497, at *3 (D. Conn. Feb. 9, 2015) (Meyer, J.) ("A party fails to show

good cause when the proposed amendment rests on information that the party knew, or should

have known, in advance of the deadline."); *Parker*, 204 F.3d at 340-41 (no good cause where

---

[6] Plaintiffs ignore Rule 16 in favor of Rule 23(c)(1)(C), which they contend confers the
unconditional right to file serial class certification motions.  *See* ECF 407-1 at 1-2.  Setting aside
that Plaintiffs cannot satisfy Rule 23(c)(1)(C)'s requirements, *see infra* Part III, the requirements
of Rule 16 are not optional.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.
2000) (approving application of Rule 16 to decision whether to allow amendment after scheduling
order deadline to amend had passed, notwithstanding the more lenient standard of Rule 15(a)(2));
*Kassner*, 496 F.3d at 242-43 (approving application of Rule 16 to decision whether to allow
amendment after scheduling order deadline to amend has passed, notwithstanding Rule 15(a)(1)'s
allowance of amendment "once as a matter of course").  Rule 16 is a threshold inquiry that must
be satisfied if the motion is filed outside the deadlines approved by the Court in a JCMP.  *See
Stockinger*, 2020 WL 7314794, at *4 ("As Plaintiffs have not demonstrated good cause [under
Rule 16] to modify the schedule in this case" to permit an untimely second class certification
motion, "the Court need not consider th[eir] argument" under Rule 23(c)(1)(C)); *Young v. Cerner
Corp.*, No. 06-cv-0321, 2007 WL 1859265, at *1 (W.D. Mo. June 26, 2007) (applying Rule 16 to
deny second class certification motion as untimely).

plaintiff had all the necessary information to support a claim he sought to add when filing the original complaint).  That is the consensus view across the federal courts,[7] and the District of Connecticut puts a finer point on it by prohibiting amendment absent "a particularized showing that the schedule cannot reasonably be met, despite the diligence of the party seeking the modification, for reasons that were not reasonably foreseeable when the parties submitted their proposed case management plan."  D. Conn. L. Civ. R. 16(b).

Plaintiffs were unquestionably on notice of the deficiencies in their class definitions **years** before filing their Motion for Class Certification.  As early as April 2018, in connection with the adoption of the first JCMP in this case, CHLIC explained that Plaintiffs could not satisfy Rule 23(a)'s commonality requirement because "different iterations of plan or contract language must be reviewed and interpreted as a prerequisite to resolving liability," and "[a]nswering the question of whether CHLIC violated the plan terms necessarily requires a review of the individual plans themselves for each named Plaintiff and putative class member," involving "thousands of different benefit plans and millions of participants – each of whom has his or her own, unique prescription drug use history, or none at all."  ECF 144 at 2-3.  Despite this—and having more than 100,000 plans and plan-related documents from CHLIC by February 2019—Plaintiffs made the tactical

---

[7] *See, e.g.*, *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 949 (8th Cir. 2012) (affirming denial of motion to amend scheduling order to allow the plaintiff to amend complaint after denial of class certification where "there has been no change in the law, no newly discovered facts, or any other changed circumstance" and plaintiff's "tactical decision" not to pursue a certain theory earlier in litigation "hardly constitutes good cause"); *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (finding no good cause where dismissal of the first complaint "should have alerted plaintiffs" to inadequacies in the second complaint); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (finding no good cause where party failed to discover necessary information and was on notice in advance of the deadline that her complaint was inadequate); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609-10 (9th Cir. 1992) (refusing to find good cause under Rule 16 where party received notice long in advance of the deadline that the complaint did not name all necessary parties).

decision to forego any narrower Class and Subclass definitions, either instead of or in the alternative to the Class and Subclass definitions they proposed in their Motion for Class Certification.  *See* ECF 401 at 51 (finding that liability against CHLIC could not "be adjudged on the massive class-wide basis that plaintiffs ha[d] chosen to propose as the vehicle for deciding this case").

Leading up to and throughout the class certification briefing, Plaintiffs were well aware of the potential obstacles to a certifiable class and tried unsuccessfully to navigate around them, as evidenced by their ever-evolving class definitions.  *See supra* at 5.  Plaintiffs could have pursued their new class definitions in their original Motion for Class Certification in March 2020 or in the amended class definitions that they chose to pursue in May 2020.  And Plaintiffs could have proposed their new class definitions in connection with their Reply Brief in support of certification (ECF 307) or in their Response to CHLIC's Surreply (ECF 361) after they saw CHLIC's Opposition.  They chose not to do so and instead persisted in their arguments that "[t]his is precisely the type of case that should be certified under Rule 23" and that "there are no variations in the relevant language across the Class or Subclass."  ECF 307 at 1.  Of course, this is the same florid language Plaintiffs use now about their new proposed class.

Yet all of the facts and legal principles underpinning their newly proposed class existed since at least February 2019 (if not earlier), and Plaintiffs now offer no legitimate reasons for failing to pursue this proposed class sooner.  They do not claim any new evidence supporting their new request for certification—there is none.  Nor can Plaintiffs claim a change in the law since their original Motion for Class Certification or the Court's decision.[8]  Again, there is none.  Nor

---

[8] The only "new" case Plaintiffs cite in support of certifying their amended class is a decision from 1964 that they clearly could have included in their Motion for Class Certification through the exercise of diligence.  *See Commc'ns Workers of Am., AFL-CIO v. N.Y. Tel. Co.*, 327 F.2d 94 (2d

do they offer any explanation as to why they could not have proposed earlier to limit the Subclass to generic drugs or to quote more of the plan language in the class definitions.  Plaintiffs offer only empty assurances that the "new definition will also resolve the Court's concerns regarding Plan language relating to maintenance drugs prescriptions filled at retail rather than mail order pharmacies and relating to minimum and maximum copayments on generic drugs."  ECF 407-1 at 4.  Surely the exercise of diligence requires some indication at this stage how Plaintiffs would propose to address the issues supposedly warranting another class certification motion and why Plaintiffs did not address those issues previously, but Plaintiffs' Motion is conspicuously devoid of even the proposed new class definitions.  Plaintiffs' strategic and purposeful prior decision to forego the narrower class they now propose undermines any claim of diligence.

In reality, the only thing that changed is that the Court denied Plaintiffs' Motion for Class Certification based on the Class and Subclass that they chose to pursue.  The mere denial of a class certification motion cannot establish good cause under Rule 16 to allow them to file a new second motion for class certification.  *See Stockinger*, 2020 WL 7314794, at *3 ("[T]he only reason for the requested modification is because the Court denied Plaintiffs' motion for class certification. This is insufficient."); *Ortiz v. McNeill-PPC, Inc.*, 2009 WL 1322962, at *3 (S.D. Cal. May 8, 2009) (finding no good cause where "Plaintiffs waited until after this Court denied their motion for class certification to seek amendment in order to change the class definition and pursue a second attempt at class certification").

Further undermining any assertion of diligence is the fact that Plaintiffs' arguments in favor of the new class definitions seem to effectively seek untimely reconsideration of the Court's class

---

Cir. 1964).  Moreover, that case dealt with a single contract—not thousands of plans with material variations, like those the Court described in detail in its opinion—and thus does not disturb the Court's conclusion that commonality is lacking notwithstanding the "in no event" language.

certification order.  The Court specifically held that Plaintiffs "bear the burden of satisfying Rule 23(a)'s threshold requirements, including that of commonality," and that Plaintiffs did not establish "how, relying on the Class language alone and without reference to the plans as a whole, [the Court] can determine that the 'in no event' [Subclass] language necessarily controls over any other copayment provisions."  ECF 401 at 45, 42.  Plaintiffs did not move for reconsideration or file a Rule 23(f) Petition with the Second Circuit to seek interlocutory review of this Court's decision. They chose not to either, and purport to be "respecting th[e] Court's decision."  ECF 407-1 at 6.  But Plaintiffs' new proposed class definition apparently would again hinge on treating the "in no event" language in the plans as a "controlling proviso" that will satisfy commonality. ECF 407-1 at 5.  That is precisely what the Court determined could not be shown on a classwide basis through common proof.  Although Plaintiffs vaguely suggest that they will add some additional words to these new definitions to make them different from their original Subclass definition, the Court already gave Plaintiffs the benefit of the doubt on that issue, and nevertheless denied their motion.  *See* ECF 401 at 39 ("It may be the case that plaintiffs are now defining the Subclass language to include the U&C portion, but the plaintiffs' ever-evolving class definitions undermine their argument that there are common issues across thousands of plans that are suitable for class-wide resolution.").  If Plaintiffs believed the Court's commonality determination was flawed, they should have sought reconsideration or appellate review under the deadlines and standards applicable to those vehicles.[9]  Their failure to do so further demonstrates the lack of diligence.

---

[9] *See* D. Conn. L. Civ. R. 7(c) (reconsideration must be sought within "seven (7) days of the filing of the decision or order from which such relief is sought"); Fed. R. Civ. P. 23(f) (petition for permission to appeal from order denying class certification must be filed "within 14 days after the order is entered").

Plaintiffs claim that they "diligently pursued their initial class certification motion" and that they "expeditiously filed this motion to amend the scheduling order."  ECF 407-1 at 6.  Even if true (which it is not), that is irrelevant to the Rule 16 analysis.  Plaintiffs' attempt last year to certify, for tactical reasons, a *different* class after their Motion for Class Certification was on file, when they could have pursued the class definition they now wish to propose, exemplifies gamesmanship, not diligence.  And Plaintiffs could have proposed a JCMP allowing for the filing of subsequent motions for class certification at any point during the three-plus years that this case has been governed by a JCMP.  They failed to do so.  That Plaintiffs now filed this Motion "expeditiously" after deciding that they wanted to seek certification of a different class than the one they originally proposed—and that the Court rejected—does not constitute diligence or good cause.

## B.     CHLIC Would Suffer Undue Prejudice From Having To Oppose Yet Another Proposed Class.

Plaintiffs' Motion also should be denied because amending the scheduling order in the manner they propose will prejudice CHLIC.  In the exercise of discretion under Rule 16(b), the Court may consider whether modifying the scheduling order will prejudice the nonmoving party.  *Kassner*, 496 F.3d at 244.  A proposed modification that would "result in delay of many more months as well as substantial new discovery at significant cost," including "the re-deposition of witnesses who have already been examined," constitutes substantial prejudice weighing strongly against the proposed modification.  *Johnson v. City of New Haven*, No. 3:17-cv-1479, 2019 WL 1122993, at *3 (D. Conn. Mar. 12, 2019) (Meyer, J.) (denying leave to add defendant).

CHLIC and its experts have already spent substantial time and resources responding to the class definitions that Plaintiffs proposed.  The Court, too, devoted significant resources— reviewing thousands of pages of briefing and exhibits, hearing hours of argument over multiple

days, and drafting a fifty-one-page opinion—to determining that Plaintiffs could not satisfy Rule

23.  But even setting aside the resources committed to the question of class certification to date,

allowing Plaintiffs to redo class certification would result in substantial additional prejudice

because it would (1) require further discovery, including new expert reports, the re-deposition of

expert witnesses, and another round of certification briefing, all at significant cost, on an issue that

has already been decided; and (2) result in substantial delay to the case.

### 1. A Class Certification Do-Over Will Require Substantial New Discovery and Expert Work.

A do-over of class certification based on Plaintiffs' eighth attempt to define the class would

require substantial new discovery at significant cost, including the likely re-deposition of witnesses

who have already been examined.  The briefing related to Plaintiffs' original Motion for Class

Certification included substantial discussion of the parties' expert reports.  Plaintiffs' expert

submitted multiple reports describing his proposed methodology for identifying members of the

Class and Subclass and calculating their supposed damages.  *See* ECF 207-01, 315-02, 364-01.

CHLIC's experts submitted reports of their own.  One such expert report explained at great length

and in great detail how Plaintiffs' expert's proposed method for identifying members of the Class

and Subclass and calculating their supposed damages was fundamentally flawed.  *See* ECF 277-2.

The parties deposed all experts and then submitted scores of pages of briefing addressing the issues

raised in the experts' reports, with CHLIC moving to exclude Plaintiffs' expert report and Plaintiffs

moving to strike portions of CHLIC's expert report.  *See* ECF 278, 311.  The Court then heard

hours of argument on issues related to the parties' class certification experts and devoted a

substantial portion of its fifty-one-page opinion to them, as well.  *See* ECF 401 at 19-27.

If Plaintiffs were to file a second motion for class certification using a different class

definition, additional expert discovery would be required to build a record that enables the Court

to perform the "rigorous analysis" required by Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27,

33-34 (2013). For example, the parties' expert reports about identifying class members and

calculating their supposed damages were based on the Class and Subclass definitions in Plaintiffs'

Motion, not the class they say they will propose now. *E.g.*, ECF 307 (Plaintiffs' Reply Brief in

support of certification) ("Mustoe's methodology is fully consistent with plaintiffs' class

definitions."). CHLIC would invariably need to prepare new expert reports, which would have to

discern the contours of the newly defined class[10] in order to determine, among other things: (1)

whether Plaintiffs' proposed damages methodology is flawed, (2) whether other obstacles to class

certification that CHLIC previously identified, such as intraclass conflicts, persist, and (3) whether

Plaintiffs' efforts to define a new class created additional obstacles that neither the parties nor the

Court had previously addressed. This alone contradicts Plaintiffs' assertion that "the parties have

engaged in full discovery on the issues relating to the proposed amended class." ECF 407-1 at 6.[11]

Plaintiffs ignore these critically important—and massively burdensome—endeavors. They

instead attempt to downplay the amount of new information the parties would present (and the

Court would have to consider) on a second motion for class certification. Plaintiffs do not even

---

[10] Plaintiffs' suggestion that a class certification do-over would not be burdensome because "the proposed amended class . . . is comprised entirely of a subset of the class that Plaintiffs originally proposed," ECF 407-1 at 6, ignores the substantial burdens associated with simply identifying which participants satisfy the class definition, a threshold inquiry that must be accomplished to perform a satisfactory Rule 23 analysis. It also bears repeating that Plaintiffs already purported to narrow their class definitions, so the Court has already rejected certification of a "subset of the class that Plaintiffs originally proposed," and in particular rejected certification of Plaintiffs' "Subclass."

[11] Even if true, Plaintiffs' assertion actually weighs against the Motion because it confirms Plaintiffs' lack of diligence. *See supra* Part II.A. If Plaintiffs already had all the information they needed to propose their new class definitions, they should have proposed them sooner, either instead of or as an alternative to the Class and Subclass they actually proposed. Their unsuccessful gamble in proposing a broad class does not constitute diligence or good cause under Rule 16 for not seeking certification of a narrower class sooner.

propose to modify the expired deadline for expert reports in support of class certification, suggesting that they do not intend to present any new evidence at all to support their second motion for class certification.  *See* ECF 407.  But those suggestions are unrealistic because, given the absence of any change in the law, the only conceivable pathway Plaintiffs would have of succeeding on a second motion for class certification is to present new evidence.  The Court denied class certification because Plaintiffs did not carry their burden of proof on commonality.  *See* ECF 401 at 44 ("Nor can I simply take plaintiffs' word that other variations do not exist in all the other thousands of plans that fall under the Class and Subclass definitions."); *id.* at 45 ("[I]t is plaintiffs who bear the burden of satisfying Rule 23(a)'s threshold requirements, including that of commonality, not Cigna's burden to disprove it."); *see also id.* at 48 ("[P]laintiffs' own expert did not even review any plan documents.").  To support a newly proposed class, Plaintiffs have no option but to submit *new evidence*.  On the other hand, if, as Plaintiffs suggest, the parties have already "engaged in full discovery" and a second motion for class certification would not present any new evidence, then Plaintiffs cannot possibly carry their burden under Rule 23.  The alternative—that Plaintiffs will present new evidence—underscores the substantial burdens that would accompany a class certification do-over.  Plaintiffs cannot have it both ways.

Another possibility Plaintiffs seem to embrace is that they will ask the Court to hold that the "in no event" language used to define the Subclass in Plaintiffs' Motion for Class Certification[12] controls over all other plan provisions regarding the amount a participant should pay.  *See* ECF 407-1 at 6 (arguing that the "in no event" language is a "controlling proviso" presenting a common question); *id.* (arguing that *res judicata* would bar litigation by any other

---

[12] Of course, as noted above, the Subclass definition was not included in the original Motion for Class Certification because months after filing that Motion for Class Certification, Plaintiffs asked to proceed on a revised Subclass definition.  *See supra* at 5.

participant who has the "in no event" language in their plans because the meanings of all such plans must be the same). But the Court already rejected that very argument when it ruled that it could not determine through common proof on a class-wide basis whether the "in no event" language is determinative of the amount a participant should pay for any given prescription. Despite claiming to be "respecting" the Court's class certification decision, ECF 407-1 at 6, Plaintiffs actually seek untimely reconsideration of the Court's decision without even satisfying the requirements to do so. *See infra* at 23-24. CHLIC would face substantial undue prejudice if the schedule were amended to allow Plaintiffs to file a second motion for class certification that simply reargues arguments that have already been rejected without any changed circumstances, legal or factual.[13]

Though it is clear that CHLIC will suffer substantial prejudice if compelled to redo class certification, the full extent of that prejudice is impossible to know at this stage because Plaintiffs have not presented their new class definitions. Plaintiffs identify their proposed changes only in broad strokes and make only vague promises. CHLIC has been prejudiced by this approach before. When Plaintiffs revised their Class and Subclass definitions in May 2020 after their Motion for Class Certification was already filed, they represented that the revised definitions reflected only two "substantive changes" and otherwise were "simply . . . reformatted with bullet points" and the "language has been changed and clarified to make the definitions more readable to Class Members." ECF 254 at 4. The actual revised definitions reflected numerous fundamental and material changes that had never previously been disclosed. *See* ECF 255 (describing changes to class definitions). Now, Plaintiffs ask the Court to allow them to file a second motion for class

---

[13] A second motion for class certification cannot be used as "a vehicle to attempt to obtain reconsideration of the Court's prior decision." *Dash v. Seagate Tech. (US) Holdings, Inc.*, No. 13-cv-6329, 2016 WL 4491822, at *1 (E.D.N.Y. July 12, 2016).

certification based on an eighth (or ninth) class definition that Plaintiffs have not shared and perhaps have not even yet crafted. Requiring CHLIC and the Court to respond to "[P]laintiffs' ever-evolving class definitions" (ECF 401 at 39) would result in substantial prejudice.

**2.      A Class Certification Do-Over Will Result In Substantial Delay.**

In light of the substantial undertaking required to redo class certification using the new class definition to which Plaintiffs allude, allowing a second motion for class certification would result in substantial delay. Under the operative JCMP, Motions for Summary Judgment are due on July 19, 2021. Under Plaintiffs' proposed schedule, briefing in connection with a second motion for class certification would not be complete until October 2021 at the earliest, assuming the Court immediately issues an order permitting them to re-file. Moreover, Plaintiffs' proposed schedule is unrealistic because it ignores the substantial discovery that would be necessary to actually evaluate Plaintiffs' mystery definition. In all likelihood, the second motion for class certification would not be fully briefed until at least 2022. Then, if the Court were to hold another hearing on the second motion for class certification, it is unlikely that Motions for Summary Judgment would be filed until late 2022, resulting in a delay of more than a full year.[14] For a case that is already nearly five years old, delaying resolution by another year so Plaintiffs could make another attempt at class certification would represent a tremendous waste of resources.

Plaintiffs suggest that such extreme delay would be in the "interest of justice" because it would allow Plaintiffs to "efficiently litigate their claims as a class." ECF 407-1 at 5. Clearly, that puts the rabbit in the hat. The Court has already determined that Plaintiffs **_cannot_** litigate their claims as a class because commonality is lacking with respect to the Subclass that will supposedly

---

[14] For reference, Plaintiffs' Motion for Class Certification was filed in March 2020, hearings on the Motion for Class Certification were held in November 2020, and the Court denied the Motion for Class Certification in May 2021.

serve as the basis of the new-but-not-yet-articulated class definition.  Moreover, Plaintiffs' vague assurances that they will fix the issues addressed in the Court's denial of class certification confirms neither that those issues can be fixed nor that the litany of other issues that the Court did not reach in its denial will be resolved (CHLIC believes they will not).  Indeed, some issues identified by the Court as obstacles to class certification—such as the lack of uniformity of the applicable law discussed by the Court relating to RICO (*see* ECF 401 at 49-50)—loom as barriers to class certification that Plaintiffs' preview of their new definitions do not purport to remedy.[15]

Plaintiffs also suggest that a lengthy delay would not be prejudicial because the case is "far from trial," with expert discovery deadlines adjourned and non-expert fact discovery ongoing. ECF 407-1 at 6.  Neither claim has merit.  As for fact discovery, it concluded in October 2020, other than production of the limited information contemplated by the Court in its ruling on Plaintiffs' motion to strike and denial of class certification.  Expert discovery was adjourned pending CHLIC's production of updated DST Reports with additional data fields so that Plaintiffs' expert could amend his July 2020 merits report.  After producing numerous updated DST reports in January 2021, CHLIC produced that last of these updated DST Reports nearly two months ago and asked Plaintiffs how they proposed to proceed with their expert amending his report.  *See* Apr. 30, 2021 Email from E. Farrell (without attachment), attached as Ex. B.  Plaintiffs never responded. They cannot use their own delay in expert discovery as grounds for a further months-long delay in this case.  Moreover, in light of the Court's decision denying class certification, the parties now can proceed expeditiously with merits expert discovery tailored to the Named Plaintiffs' claims.

---

[15] Even if Plaintiffs were able to cure the fatal commonality defect as to the material variations in plan language dictating their cost-share obligations—which they cannot—their newly proposed class is replete with the same defects that CHLIC previously identified, including fundamental problems with the relief they seek and intra-class conflicts that they do not address.

The only delay is Plaintiffs' new request to file a second motion for class certification.

### III.   Plaintiffs Cannot Satisfy Rule 23(c)(1)(C)'s Standard For Modifying An Order Denying Class Certification.

Even if Plaintiffs could satisfy Rule 16's requirements for modifying a scheduling order (to be clear, they cannot), Plaintiffs cannot satisfy Rule 23(c)(1)(C).  Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment."  But it applies only where, "upon fuller development of the facts, the original determination appears unsound."  Fed. R. Civ. P. 23 Advisory Committee Note (1966).  The Advisory Committee's Notes confirm that Rule 23(c)(1)(C) is principally concerned with amending a class definition when "[a] determination on the merits" shows "a need to amend the class definition" or when "[d]ecertification may be warranted after further proceedings."  *Id.* It does not give unconditional license to file serial motions for class certification.

Courts interpreting Rule 23(c)(1)(C) generally require a party seeking to alter or amend a class certification order to demonstrate some changed circumstances—such as new facts or new law—warranting alteration or amendment.  *See, e.g.*, *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005) (affirming district court's refusal to reconsider class ruling where plaintiffs' counsel "identified no new legal authority or a changed circumstance that compels the court to arrive at a different conclusion" and instead were "effectively seeking repetitive proceedings in hopes of keeping alive the possibility of obtaining class certification"); *see also* Newberg on Class Actions § 7:47 ("In the absence of materially changed or clarified circumstances . . . courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class[.]").[16]  The weight of authority does not condone serial class certification motions based

---

[16] *See also, e.g.*, *Friend v. Hertz Corp.*, No. 07-cv-5222, 2014 WL 4415988, at *2 (N.D. Cal. Sept. 8, 2014) ("In the absence of subsequent developments warranting a revision, however, the Court ordinarily has little reason to revisit the issue of the propriety of its original determination.");

on theories that could have been asserted earlier.  *See, e.g.*, *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-cv-61390, 2015 WL 464237, at *6 (S.D. Fla. Jan. 16, 2015) ("The decision to not separate potential class members with cellular lines from those with residential lines until after the Court denied his motion for class certification does not warrant the Court revisiting its prior order.").[17] This is because "[c]ourts are generally reluctan[t] to allow parties to have a second bite at" class certification. *Torrent v. Yakult U.S.A., Inc.*, No. 15-cv-00124, 2016 WL 6039188, at *2 (C.D. Cal. Mar. 7, 2016).

Courts in the Second Circuit are no exception.  Though district courts have "discretion to consider (or to decline to consider) a revised class certification motion after an initial denial," *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007), they generally require some

---

*Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013) ("Reconsideration of an original class [certification] ruling typically occurs as a result of a change in circumstances, and [i]n the absence of materially changed or clarified circumstances, . . . courts should not condone a series of rearguments on the class issues by either the proponent or the opponent of the class."); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 308 F.R.D. 410, 438 (D.N.M. 2015) (a second motion for certification generally requires "a change in controlling law, the availability of new evidence, or the need to correct manifest error or injustice").  *But see Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476-77 (3d Cir. 2020) (reconsideration does not apply to renewed class certification motions).  Even if the Court declines to construe every renewed class certification motion as a motion for reconsideration, Plaintiffs' arguments actually seek reconsideration of key aspects of the Court's prior ruling, such as the Court's conclusion that the "in no event" language is not by itself enough to establish commonality.  Thus, Plaintiffs have effectively converted their requested "new class certification motion into a motion to reconsider, thereby asking the Court to apply the standards applicable to motions to reconsider" that they cannot meet.  *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017).

[17] *See also, e.g.*, *Gustafson v. BAC Home Loans Servicing, LP*, No. 11-cv-915, 2014 WL 10988335, at *2 (C.D. Cal. Feb. 5, 2014) (rejecting proposition that "the Court should entertain endless class certification motions with no effort whatsoever by a plaintiff to consider timely proposing realistically narrowed subclasses"); *Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 366 (D. Mass. 2009) ("[T]he Court declines to allow plaintiffs to revisit their prior (unsuccessful) tactical decision" not to move for certification under Rule 23(b)(3) "or to delay the case any further."); *Washington v. Vogel*, 158 F.R.D. 689, 692 (M.D. Fla. 1994) (rejecting reconsideration where "the Plaintiffs could have easily sought alternative certification under Rule 23(b)(3) (or Rule 23(b)(1)) in their . . . amended motion[] for class certification")).

material change in circumstances before a class certification order can be altered or amended under Rule 23(c)(1)(C).  *See, e.g.*, *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 n.9 (2d Cir. 2007) (recognizing that a class certification order can be amended if a "change in circumstances" arises); *Fleischman v. Albany Med. Ctr.*, No. 06-cv-0765, 2010 WL 681992, at *2 (N.D.N.Y. Feb. 16, 2010) ("[T]here must be some development or change in circumstances to merit revisiting a class certification decision.").

In *In re Federal Home Loan Mortgage Corp. (Freddie Mac) Securities Litigation*, for example, the court denied class certification after a multi-day class certification hearing and then denied plaintiffs leave to file a renewed motion for class certification under Rule 23(c)(1)(C) because "the facts pertinent to the [class certification] efficiency inquiry have not materially changed, and plaintiff has not made a showing of changed circumstances."  No. 09-832, 2012 WL 4435292, at *1 (S.D.N.Y. Sept. 26, 2012).  Noting that "[a] plaintiff who wants to lead a class action should be prepared to put his best foot forward on the initial application," the court explained the "proposed new class definition is not an adequate basis for reopening a question that has been exhaustively litigated."  *Id.*

Similarly, in *Fleischman*, the court declined to revisit a class certification order under Rule 23(c)(1)(C) in light of a new methodology developed by plaintiffs to satisfy Rule 23's requirements because that new methodology "relie[d] on information that was readily available to Plaintiffs at the time of the initial motion."  2010 WL 681992, at *3.  Thus, "rather than presenting new facts, Plaintiffs [we]re presenting a new formula addressing the Court's prior concerns," which did "not constitute the requisite changed circumstances."  *Id.*

Here, Plaintiffs likewise do not identify any changed circumstances justifying a second motion for class certification.  As noted above, they cite no new precedential law and no new facts

warranting any modification of the Court's prior ruling, and there is none.  Plaintiffs suggest they will make certain tweaks to their prior class definitions (such as limiting the class to generic drugs, which they have already conceded make up the overwhelming majority of transactions at issue under their original definitions, *e.g.*, ECF 308 at 9), but they do not argue that those adjustments are the result of new law or new facts.  Rather, Plaintiffs made a change in their class certification *strategy* only after their first seven attempts were unsuccessful.  That does not constitute the "changed circumstances" required by Rule 23(c)(1)(C).  *See supra* at 20-21 & nn.15-16.

Further illustrating the absence of changed circumstances is the fact that Plaintiffs simply recycle the same argument that the Court has already rejected, namely that commonality is satisfied because the "in no event" language "creates a cap on the amount that members should be charged for their copayments."  *Compare* ECF 407-1 at 4 (regarding their new proposed class) ("[T]he plans in the proposed class will all have this ['in no event'] language and thus satisfy the commonality requirement of Rule 23(a)."), *and* ECF 407-1 at 5 ("[B]ecause all of the plans in the Proposed Class have the same controlling proviso, a class-wide proceeding will generate common answers apt to drive the resolution of the litigation." (internal quotation marks omitted)), *with* ECF 206 at 9 ("[A]ll Subclass Plans contained the additional 'in no event' language.  Accordingly, . . . a decision on the common question of whether class members paid too much in violation of the uniform language of their Plans will determine liability on a class-wide basis."), *and* ECF 308 at 6 ("The Subclass plans are defined by the *same* ['in no event'] language . . . Accordingly, the Subclass 'boilerplate' raises common questions.").  Similarly, Plaintiffs' proposal to "include the entirety of the 'In no event' clause" is an adjustment the Court already *considered and rejected*.  *See* ECF 401 at 39 ("It may be the case that plaintiffs are now defining the Subclass language to include the U&C portion, but the plaintiffs' ever-evolving class definitions undermine their

argument that there are common issues across thousands of plans that are suitable for class-wide resolution."). Far from citing any "changed circumstances" that could satisfy Rule 23(c)(1)(C), Plaintiffs' motion is a vehicle to seek untimely reconsideration of the Court's class certification ruling by raising arguments that the Court considered and rejected without even acknowledging that the Court did so.

Plaintiffs' cited cases are distinguishable. In *In re Tropicana Orange Juice Marketing and Sales Practices Litigation*, for example, the renewed certification motion was filed after an additional five months of discovery and did not require amending the scheduling order. No. 2:11-cv-07382, 2018 WL 6819331, at *2 (D.N.J. Dec. 28, 2018) (noting that motions to revisit a prior denial of class certification are generally only proper when "there is a change in the circumstances or facts since that prior denial"). And in *de Lacour v. Colgate-Palmolive Co.*, the district court denied class certification without prejudice and simultaneously, apparently *sua sponte*, granted leave to refile a class certification motion to address three specific issues requested by the Court to evaluate whether certification was or was not appropriate. 16-cv-8364, 2019 WL 4359554, at *4 (S.D.N.Y. Sept. 12, 2019). Here, by contrast, there has been no new discovery, and the Court has already rigorously analyzed—and rejected—Plaintiffs' materially indistinguishable commonality arguments.

Other cases are distinguishable because they involved defendants who did not oppose the requested relief, *see Pettco Enterprises, Inc. v. White*, 162 F.R.D. 151, 156 (M.D. Ala. 1995) (defendant did not object to plaintiffs' motion to amend the complaint and filed nothing in response to plaintiffs' renewed class certification motion), or plaintiffs who had never before amended their class definitions, *see Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-cv-3497, 2019 WL 1495302, at *5 (N.D. Ga. Feb. 4, 2019).

## CONCLUSION

CHLIC respectfully requests that the Court deny Plaintiffs' Motion.


Respectfully submitted,

Dated:  June 28, 2021

*/s/ Brian W. Shaffer*
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Eleanor R. Farrell (phv08309)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215-963-5000
Facsimile:  215-963-5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
eleanor.farrell@morganlewis.com
matthew.klayman@morganlewis.com

Lisa R. Weddle (phv08957)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone:  213-612-2500
Facsimile:  213-612-2501
lisa.weddle@morganlewis.com

Michael D. Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  860-240-2945
Facsimile:  860-240-2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and
Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2021, the foregoing document and all attachments thereto were filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>/s/ *Brian W. Shaffer*</u>
Brian W. Shaffer