UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., Individually and on Behalf of All Others Similarly Situated, | No. 16-cv-1702 (JAM) |
| Plaintiffs, | |
| vs. | |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al. | July 12, 2021 |
| Defendants. | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO AMEND
THE SCHEDULING ORDER TO PERMIT THE FILING OF
AN AMENDED CLASS CERTIFICATION MOTION**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT .......................................................................................................... 2

        A.      The Interests of Justice Are Served by Plaintiffs' Motion ................................ 2

        B.      Cigna Stipulated That A Second Motion Would Be Permissible to Address
                Specific Issues Raised by the Court ................................................................... 3

        C.      Plaintiffs' Motion is Proper Under the Federal Rules of Civil Procedure ......................... 4

                1.      Plaintiffs' Motion Is Proper Under Rule 23(c)(1)(C) ............................ 4

                2.      Rule 16 Does Not Apply, But If It Did, Plaintiffs' Motion Would Be
                        Proper ...................................................................................................... 6

        D.      Plaintiffs' Redefined Class Will Address the Court's Concerns ......................... 8

III.    CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*3081 Main St., LLC v. Bus. Owners Liab. Team LLC*,
   No. 3:11-CV-1320 (SRU), 2012 WL 4755048 (D. Conn. Sept. 24, 2012) ............................ 4

*de Lacour v. Colgate-Palmolive Co.*,
   No. 16-cv-8364, 2019 WL 4359554 (S.D.N.Y. Sept. 12, 2019) ............................................ 6

*Fleischman v. Albany Med. Ctr.*, No. 06-cv-0765,
   2010 WL 681992 (N.D.N.Y. Feb. 16, 2010) ..................................................................... 5, 6

*Gen. Tel. Co. of the S.W. v. Falcon*,
   457 U.S. 147 (1982)..................................................................................................................4

*Hargrove v. Sleepy's LLC*,
   974 F.3d 467 (3d Cir. 2020)............................................................................................ 5, 6, 8

*Hirsch v. Qingdao Orien Com. Equip. Co.*,
   No. 12-CV-952 RRM, 2015 WL 1014352 (E.D.N.Y. Mar. 6, 2015) ...................................... 3

*In re Fed. Home Loan Mort. Corp. (Freddie Mac) Sec. Litig.*,
   No. 09-832, 2012 WL 443292 (S.D.N.Y. Sept. 25, 2012) ..................................................... 5

*In re Initial Pub. Offering Sec. Litig.*,
   483 F.3d 70 (2d Cir. 2007)...................................................................................................... 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F. Supp. 3d 430 (S.D.N.Y. 2018)...................................................................................... 4

*In re Tropicana Orange Juice Marketing and Sales Practices Litig.*,
   No. 11-cv-07382, 2018 WL 6819331 (D.N.J. Dec. 28, 2018).................................................. 5

*Indergit v. Rite Aid Corp.*,
   293 F.R.D. 632 (S.D.N.Y. 2013) .......................................................................................... 10

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015) .......................................................................................... 10

*Oshonya Spencer v. The Hartford Fin. Servs.*,
   No. CIV.A. 3:05-CV-01681, 2008 WL 1925098 (D. Conn. May 1, 2008)............................ 6

*Scott v. Chipotle Mexican Grill, Inc.*,
   954 F.3d 502 (2d Cir. 2020)................................................................................................... 10

*Soto v. Castlerock Farming & Transp., Inc.*,
   No. 1:09-CV-00701 AWI, 2011 WL 3489876 (E.D. Cal. Aug. 9, 2011)................................ 6

**RULES**

Fed. R. Civ. P. 16 ................................................................................................................ 6, 7

Fed. R. Civ. P. 23 ............................................................................................................ 4, 5, 6, 8

Fed. R. Civ. P. 23(c) ........................................................................................................... 4

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................. 4, 6, 8

## I.      INTRODUCTION

Cigna admits that the Court has discretion to consider a renewed motion for certification of a narrower class following denial of an initial motion. [ECF No. 411] ("Cigna Mem.") at 21. Accordingly, the issue here is straightforward: is allowing Plaintiffs the opportunity to file such a motion in the interests of justice? Plaintiffs respectfully submit that the answer is "yes," and that they should be granted the opportunity to demonstrate that a narrower class will include materially uniform language, the interpretation of which will present a common question.

Plaintiffs originally sought to certify a class and a subclass. The class was comprised of individuals in plans with language that limited a member's payment to a "portion" of expenses for charges made by a Pharmacy (the "Class" language). The subclass plans separately provided that "in no event will the Copayment … exceed the amount paid by the plan to the Pharmacy" (the "Subclass" language).[1] The Court took issue with the Subclass, in three principal respects: ***First***, in defining the Subclass, Plaintiffs truncated the following language (omitting the italicized portion): "in no event will the Copayment . . . exceed the amount paid by the plan to the Pharmacy, *or the Pharmacy's Usual and Customary (U&C) charge*." The Court viewed this as an example of variability, observing that "the U&C portion does *not* appear in the amended Class and Subclass definitions." [ECF No. 401] ("Order") at 39.[2] ***Second***, the Court observed that the "in no event"

---

[1] As the Court noted, Plaintiffs' position is that the "in no event" language imposes a cap on the cost-sharing amount owed by the member. *See* Order at 37. Under Plaintiffs' narrowed class, whether the "in no event" language will control over any other copayment provisions will be a classwide issue. *See* Order at 41 (expressing concern that the Court cannot determine whether "in no event" language controls without reference to "plans as a whole").

[2] In the Order, the Court noted that Plaintiffs pointed out that all of the Subclass plans include the language "or the Pharmacy's Usual and Customary (U&C) charge." Order at 39. The Court further suggested that "it may be the case" that Plaintiffs were amending the Subclass definition. Plaintiffs respectfully submit that they were not. Because a class definition does not need to include all common contract language, but instead needs to include only enough language to permit identification of class

- 1 -

language might apply differently to brand-name drugs in certain circumstances. Order at 39-40. ***Third***, considering plans with mandatory or incentivized home delivery for maintenance drugs, the Court concluded that "plaintiffs have not established how … I can determine that the 'in no event' language necessarily controls over any other copayment provisions." Order at 41-42.

Plaintiffs seek to submit a motion to certify a narrowed class (based on a subset of the former Subclass language) that addresses the Court's concerns by, among other things: (1) limiting the new class solely to standard "in no event" template language from the former Subclass, so that the new class is limited only to plans that provide "in no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge" or "in no event will the Copayment for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge;" (2) excluding claims for brand-name and specialty drugs; and (3) using Cigna's boilerplate templates to limit the new class to plans without potentially-material variations in language, such that the Court can determine on class-wide basis whether the "in no event" language controls over any other copayment provisions.[3]

## II.   ARGUMENT

### A.   The Interests of Justice Are Served by Plaintiffs' Motion

Plaintiffs' request for an opportunity to move for and brief certification of a narrower class serves the interests of justice. Cigna's documents reveal that it ***knew*** that "[i]f   Cigna d[id]n't

---

members, and because ***all*** Subclass plans included both the "paid by the plan to the Pharmacy" and the "Pharmacy's Usual and Customary (U&C) charge" language, Plaintiffs could have defined the Subclass as they did or by using both clauses.

[3] For example, Plaintiffs anticipate excluding plans with mandatory or incentivized home delivery (*see* Order at 41-42), minimum-payment language (*see* Order at 31), and "greater of" language (not in Order but in templates) based on the plan-language templates (*see, e.g.*, [ECF No. 315, Ex. BC]) and Pharmacy Product Standards ([ECF 315 Ex. T]) Cigna has produced.

update benefit language into customer certificates or coverage/booklets then: [it]face[s] exposure under ERISA – through a regulatory audit or a lawsuit filed by a customer (or, more likely, a class action by many customers) for failure to follow the coverage documents or, worse, a breach of fiduciary duty." [ECF No. 210-9, Ex. I] at 00491453. The narrowed class will permit hundreds of thousands, if not millions, of consumers to recoup the overcharges (amounting to tens if not hundreds of millions of dollars) that Cigna acknowledged in its internal communications.

> **B.** **Cigna Stipulated That A Second Motion Would Be Permissible to Address Specific Issues Raised by the Court**

Contrary to Cigna's argument (Cigna Mem. at 3-6), Cigna is bound by the stipulation it agreed to and signed in June 2020 (the "Stipulation"). "Stipulations and orders are binding agreements, that are enforceable just as contracts are." *Hirsch v. Qingdao Orien Com. Equip. Co.*, No. 12-CV-952 RRM, 2015 WL 1014352, at *7 (E.D.N.Y. Mar. 6, 2015) (internal citations and alterations omitted). The language of the Stipulation is clear and unambiguous: "Plaintiffs shall not seek to amend their proposed class definitions further *except to address any specific issue[s] identified by the Court*." [ECF No. 260] (emphasis added). By their motion, Plaintiffs simply seek to effectuate the Stipulation's terms.

Cigna attempts to evade the clear language of the Stipulation by limiting its scope to instances where the Court affirmatively "ask[ed]" Plaintiffs to address a concern. Cigna Mem. at 5-6. However, that is not what the Stipulation provides. Cigna was free to (but did not) insist on that language in the Stipulation. Recognizing that fundamental fact, Cigna instead cites to an extrinsic email exchange in which Plaintiffs' counsel explained that Plaintiffs needed the ability to further amend the class definition "to address specific issues identified by the Court" and then noted that, "[t]he court clearly has the authority to raise issues and ask that Plaintiffs address them." Cigna Mem. at 6 (quoting [ECF No. 411-1]). Here, the Court clearly specified and raised issues.

Cigna's undue focus on the verb "ask" ignores not just the actual language of the Stipulation (which is all that matters here), but also the realities of litigation practice. Just as plaintiffs routinely file amended complaints after motions to dismiss are granted even absent a specific "request" from the court, so too is it appropriate for plaintiffs to file renewed motions for class certification to remedy the concerns (and address the implicit questions) in a court's denial of an initial motion. And courts routinely grant such requests under a permissive standard. *See* Part II.C.1 below.

### C.       Plaintiffs' Motion is Proper Under the Federal Rules of Civil Procedure

#### 1.       Plaintiffs' Motion Is Proper Under Rule 23(c)(1)(C)

Pursuant to Rule 23(c)(1)(C), "[a]n order that grants *or denies* class certification may be altered or amended before final judgment" (emphasis added). Accordingly, "[a]n order denying certification, much like an order granting certification, is 'inherently tentative.'" *3081 Main St., LLC v. Bus. Owners Liab. Team LLC*, No. 3:11-CV-1320 (SRU), 2012 WL 4755048, at *2 (D. Conn. Sept. 24, 2012) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160 (1982)). Indeed, the committee notes to the 2003 amendment to Rule 23(c)(1)(C) explain that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification *until they have been met*" (emphasis added). Once those prerequisites *are* met—even if not on the initial motion—certification becomes proper, as "Rule 23(c) contemplates that class certification is *not* a one-shot process." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 602-03 (S.D.N.Y. 2018) (citing Fed. R. Civ. P. 23(c)(1)(C)).

As Cigna acknowledges (Cigna Mem. at 21), the Second Circuit has specifically held that district courts have "discretion to consider" renewed motions for class certification under Rule 23 "after an initial denial." *In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007). Indeed, courts routinely allow and consider renewed motions form class certification under the authority of Rule 23(c)(1)(C) itself. *See* Pl. Mem. at 2-3 and n.2. Against this weight of authority,

- 4 -

Cigna argues that courts nonetheless "generally require some material change in circumstances" before considering a renewed motion for class certification" under Rule 23. Cigna Mem. at 21-22. But as stated in a case Cigna cites (Cigna Mem at 24), such "[a] change in circumstances or facts includes developments in the factual background, *a modified proposed class definition*, new class representatives, or any other changes which may cure defects earlier found by the Court." *In re Tropicana Orange Juice Mktg. and Sales Pracs. Litig.*, No. 11-cv-07382, 2018 WL 6819331, at *2 (D.N.J. Dec. 28, 2018) (emphasis added). Accordingly, "[p]laintiffs can succeed on a renewed motion for class certification if they more clearly define their proposed class even if there has been no change in the law and no new evidence produced." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020).

Plaintiffs have grounds for filing a renewed motion for class certification, as narrowing the class definition to address the Court's concerns is itself a sufficient basis to allow a renewed motion for class certification under Rule 23. Cigna's reliance (Cigna Mem. at 22) on *In re Fed. Home Loan Mort. Corp. (Freddie Mac) Sec. Litig.*, No. 09-832, 2012 WL 443292, at *1 (S.D.N.Y. Sept. 25, 2012), is unavailing. That court had denied the plaintiff's first motion for class certification based on its conclusion that plaintiff had failed to establish an efficient market. Because "the facts pertinent to the efficiency inquiry have not materially changed," the court concluded that the "proposed new class definition" could not cure the previously-found defect. *Id.* Here, Plaintiffs' new class definition will directly address the Court's concerns.[4] Cigna's attempt (Cigna Mem. at

---

[4] The procedural history in *Fleischman v. Albany Med. Ctr.*, No. 06-cv-0765, 2010 WL 681992, at *2 (N.D.N.Y. Feb. 16, 2010) (Cigna Mem. at 26), is distinguishable from the present case, as it appears that plaintiffs there filed a "Motion to Amend the Class Certification Order" that substantively advanced all of their arguments, rather than seeking permission to file a renewed motion for class certification as Plaintiffs have done here.  Moreover, although the *Fleischman* court concluded that failure to advance a new factual basis for limiting a class was itself an adequate ground for denying the motion to amend the class

24) to distinguish *de Lacour v. Colgate-Palmolive Co.*, No. 16-cv-8364, 2019 WL 4359554 (S.D.N.Y. Sept. 12, 2019) (cited in Pl. Mem. at 2), is meritless. As Cigna observes, the *de Lacour* court specifically invited a renewed class certification motion to address the court's concerns. But nothing in the opinion implies (much less states) that such an express invitation is a prerequisite to a renewed motion for class certification.

### 2.     Rule 16 Does Not Apply, But If It Did, Plaintiffs' Motion Would Be Proper

Cigna's argument that Plaintiffs must satisfy Rule 16 in addition to Rule 23 (*see generally* Cigna Mem. at 6-18, 20) is incorrect. Applying a Rule 16 standard to a renewed motion for class certification is contrary to "the language of Rule 23(c)(1)(C)." *Hargrove*, 974 F.3d at 476. Accordingly, "[t]he best course of action is to treat renewed motions like any other for class certification, and to apply the usual Rule 23 standard." *Id.* at 477 (internal alterations, citations and quotation marks omitted).

Rule 16 is also inapplicable because the scheduling order Plaintiffs seek to amend does not set a deadline for amended motions for class certification. Where a scheduling order does not set a deadline, Rule 16 is inapplicable. *See, e.g.*, *Oshonya Spencer v. The Hartford Fin. Servs.*, No. CIV.A. 3:05-CV-01681, 2008 WL 1925098, at *1 n.1 (D. Conn. May 1, 2008); *see also Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701 AWI, 2011 WL 3489876, at *2 (E.D. Cal. Aug. 9, 2011) ("because a specific deadline was not set in the scheduling order … the good cause required by Rule 16 is inapplicable"). Here, Cigna acknowledges that the scheduling order

---

certification order (*id.* at *3), the court also conducted a detailed analysis of the *substance* of plaintiffs' new analysis and concluded that plaintiffs' "new methodology fails for the same reasons as those articulated" in the initial certification denial. *Id.* at *6. Accordingly, the *Fleischman* plaintiffs were effectively afforded a full opportunity to correct the problems initially identified by the District Court.

in this case does not include deadlines for "subsequent motions for class certification." Cigna Mem. at 13. Thus, Rule 16's "good cause" standard does not apply.

But even if Rule 16 were relevant to the present motion, Plaintiffs have established "good cause." As set forth above, denying Plaintiffs the opportunity to file a motion to seek certification of a narrower class would mean that even if a narrower class is viable, Cigna will never be held accountable for *knowingly* violating many thousands of its members' plans. *See* Part II.A. above. Moreover, good cause exists for modifying the scheduling order because Cigna *agreed* that Plaintiffs should have the opportunity to address the Court's certification concerns (*see* Part II.B. above) and because there is strong reason to believe that a renewed motion will be successful (*see* Part II.D. below).

Cigna's argument that it would be burdened by the need for new discovery and expert work (Cigna Mem. at 14-18) is incorrect. Plaintiffs' narrower proposed class will simply limit the number of covered plans to a core group based on Cigna's boilerplate templates from the former Subclass in order to address the Court's practical concerns about language variations. Nor will a renewed motion cause undue delay (Cigna Mem. at 18-20). The time required to fully brief a narrower class definition is constrained.[5]  Plaintiffs are as eager as Cigna to bring this case to a conclusion and the interests of justice outweigh any additional time that is required to deal with a renewed class certification motion.[6]

---

[5] Cigna's effort to portray itself as a victim in this hard-fought litigation is unavailing.  As demonstrated through the Court's ruling on the Motion to Strike, Plaintiffs have been hampered through Cigna's sharp discovery tactics, which were neither "substantially justified nor harmless" (Order at 15), and **Plaintiffs** now have to conduct additional discovery.  Requiring a corporation the size of Cigna to oppose a renewed class certification motion in a case such as this, in which Cigna knew that it likely would be sued for its conduct, is not an undue burden.

[6] Cigna also suggests that summary judgment will be delayed.  Plaintiffs suggested to Cigna that summary judgment and class certification could be considered simultaneously, as they often are in other

Cigna's complaint that Plaintiffs previously amended the class definition (*see, e.g.,* Cigna Mem. at 8-13) does not warrant denying Plaintiffs an opportunity to seek certification of a narrower class.  This is a complicated case that impacts many consumers who suffered significant losses, and raises the possibility of substantial recovery for those consumers.  As discovery progressed, Plaintiffs and their counsel revised the class definitions in an effort to obtain recovery for as many of those consumers as they believed was reasonably possible. The fact that Plaintiffs refined the definitions based upon discovery obtained from Cigna with the objective of benefiting everyone harmed by Cigna's practices is not a sufficient reason to deny this motion. Rule 23(c)(1)(C) "allows for multiple bites at the apple throughout the litigation…. [W]e know no reason why plaintiffs who can cabin more clearly their class, and meet the other Rule 23 requirements, should be barred from succeeding on a renewed motion." *Hargrove*, 974 F.3d at 476-77.[7]

### D.    Plaintiffs' Redefined Class Will Address the Court's Concerns

In anticipation of filing a renewed motion for class certification, Plaintiffs will refine and brief a narrower class to ensure that the new definition fully addresses the Court's concerns. Broadly speaking, Plaintiffs no longer seek certification of what was previously defined as the "Class" in light of the Court's ruling. Rather, Plaintiffs will seek certification only of an even narrower version of what was previously designated as the "Subclass." As described above, the narrowed class will eliminate any need to reference the plan provisions from the former proposed Class. Specifically, Plaintiffs anticipate seeking new ERISA and RICO classes of members of

---

cases.  Cigna stated its preference to have the issues dealt in sequence.  That preference should not be a basis to deny this motion.

[7] Plaintiffs recognize that a renewed class certification motion requires the Court to expend additional resources.  Plaintiffs and their counsel do not diminish that issue.  As set forth above, they believe that the interests of justice warrant those resources to remedy Cigna's knowing overcharges.

plans that (1) provide only for fixed copayments for the purchase of generic drugs;[8] and (2) provide that "[i]n no event will the Copayment for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual and Customary (U&C) charge;" or "[i]n no event will the Copayment or Coinsurance for the Prescription Drug or Related Supply exceed the amount paid by the plan to the Pharmacy, or the Pharmacy's Usual & Customary (U&C) charge," where those members (3) paid a copayment that exceeded the pharmacy rate where the pharmacy rate was the lowest rate, and the excess amount was clawed back by Cigna.[9] Unlike the previous "Class" plans, all plans that had the "Subclass" language were adjudicated the same way under Cigna's "copay G logic," which was also known as "lesser of three" logic. *See* [ECF No. 310] at 6-7. That adjudication decision was one of the "failure[s] to follow the coverage documents" that Cigna predicted would result in a class action. [ECF No. 210-8, Ex. I] at slide 10.

Cigna and the Court identified very few instances of language that may have conflicted with the former Subclass's "in no event" language. Plaintiffs' new class parameters will remedy any conflicts, including those that the Court identified. The Court recognized that "these plans are largely comprised of boilerplate language," but raised a concern "as to how many other plans in the thousands of plans . . . do not have the 'typical boilerplate language.'" Order at 36, 45. Plaintiffs' revised class definition will account for and exclude plans with potential conflicts, including ones identified by the Court and Cigna, and others that appear in the boilerplate

---

[8] In limiting the class to fixed copayments for generic drugs, Plaintiffs intend to exclude plans with minimum or maximum copayments (*see* Order at 33), exclusive or incentivized home delivery (*see id.* at 34, 41), and so-called "greater of" provisions. Claims for brand and specialty drugs will also be excluded.

[9] While the Court observed that including the U&C "in no event" language begs the question of "how does the U&C charge interact with the 'amount paid by the plan to the Pharmacy' that plaintiffs argue is a cap on members' payments" (Order at 38), the answer to that common question will not vary from one plan to the next and it will be answered objectively through Cigna's transaction data.

templates [ECF No. 315, Ex. BC] and in Cigna's pharmacy product standards [Ex. 315, Ex. T]. Nonstandard prescription-drug-benefit variations that do not appear in the templates are subject to an approval process and are uncommon. True nonstandard variations that relate to prescription drug pricing (as opposed to drug coverage provisions, for example) are rarer still. "[I]n any group there will always be outliers," but those outliers are not a basis for denial of class certification. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 644 (S.D.N.Y. 2013), *abrogated on other grounds by Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020); *see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399-400 (M.D.N.C. 2015).

Contrary to Cigna's argument (*see, e.g.,* Cigna Mem. at 11-12, 17, 24), Plaintiffs' motion for an opportunity to certify a redefined class in the foregoing manner does *not* constitute a backdoor request for "reconsideration" of the Court's Order. Plaintiffs fully accept the Order as written and the concerns expressed therein. Rather, as discussed above, Plaintiffs intend to revise the proposed class definition to *remedy*—not circumvent—the issues that the Court identified. The renewed motion will be for a *new* class, not reconsideration of the former Subclass. Plaintiffs have outlined the parameters of a different, narrowed class and believe they can address concerns and limit this case to a class that is a subset of the former proposed Subclass. The purpose of this Motion to Amend is to permit Plaintiffs to file a motion and memorandum of law so the parties and the Court can address the merits of the narrowed class.

## III.   CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' moving brief, the Court should allow Plaintiffs to file a renewed motion for class certification that addresses the issues raised in the Order.

Dated: July 12, 2021

Respectfully submitted,

_s/ Robert A. Izard_

Robert A. Izard (ct01601)
_Plaintiffs' Interim Co-Lead Class Counsel_
Craig A. Raabe (ct04116)
Seth R. Klein (ct18121)
Christopher M. Barrett (ct30151)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: 860-493-6292
Facsimile: 860-493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com
cbarrett@ikrlaw.com

William H. Narwold (ct00133)
_Plaintiffs' Interim Co-Lead Class Counsel_
Mathew Jasinski, (ct27520)
MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1681
Facsimile: 860-882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Meghan S. Oliver, _pro hac vice_
Charlotte Loper, _pro hac vice_
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
cloper@motleyrice.com

Joseph P. Guglielmo (ct27481)
_Plaintiffs' Executive Committee Chair_
Carey Alexander, _pro hac vice_
SCOTT+SCOTT,
ATTORNEYS AT LAW, LLP
The Helmsley Building

- 11 -

230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
calexander@scott-scott.com

Erin Green Comite (ct24886)
SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile: 860-537-4432
ecomite@scott-scott.com

Derek W. Loeser, *pro hac vice*
*Plaintiffs' Executive Committee Member*
Gretchen S. Obrist, *pro hac vice*
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206- 623-1900
Facsimile: 206-623-3384
dloeser@kellerrohrback.com
gobrist@kellerrohrback.com

Brian C. Gudmundson, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
ZIMMERMAN REED, LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-341-0400
Facsimile: 612-341-0844
brian.gudmundson@zimmreed.com

Andrew A. Lemmon, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
LEMMON LAW FIRM LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Telephone: 985-783-6789
Facsimile: 985-783-1333

- 12 -

andrew@lemmonlawfirm.com
- and -
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Telephone: 504-581-5644
Facsimile: 504-581-2156
andrew@lemmonlawfirm.com

Ronen Sarraf
*Plaintiffs' Executive Committee Member*
Joseph Gentile, *pro hac vice pending*
SARRAF GENTILE LLP
14 Bond Street, Suite 212
Great Neck, NY 11021
Telephone: 516-699-8890
Facsimile: 516-699-8968
ronen@sarrafgentile.com
joseph@sarrafgentile.com

E. Kirk Wood, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
WOOD LAW FIRM, LLC
P. O. Box 382434
Birmingham, AL 35238-2434
Telephone: 205-908-4906
Facsimile: 866-747-3905
ekirkwood1@bellsouth.net

Karen Hanson Riebel, *pro hac vice pending*
*Plaintiffs' Executive Committee Member*
Kristen G. Marttila, *pro hac vice pending*
LOCKRIDGE GRINDAL NAUEN,
P.L.L.P.
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile: 612-339-0981
khriebel@locklaw.com
kmarttila@locklaw.com

Brad J. Moore
STRITMATTER KESSLER WHELAN
KOEHLER MOORE KAHLER
3600 15th Ave W, Suite 300
Seattle, WA 98119-1330
Telephone: 206.448.1777

- 13 -

Facsimile: 206.728.2131
Brad@stritmatter.com

Daniel K. Bryson
Jeremy R. Williams
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
Dan@wbmllp.com
Jeremy@wbmllp.com

Additional Counsel for Plaintiffs