**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KIMBERLY A. NEGRON, et al., <br><br><br> Plaintiffs, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al., <br><br><br><br> Defendants. | Civil No. 3:16-cv-1702 (JAM) <br><br> **[REDACTED]** |

**DEFENDANT CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56(a)1, Defendant Cigna Health and Life Insurance Company ("CHLIC") hereby sets forth a concise statement of each material fact as to which it contends there is no genuine issue to be tried.

**CHLIC's Administration of Plaintiffs' Plans**

1.      Cigna Corporation, together with its subsidiaries, including CHLIC, is a global health services organization which helps customers improve their health and well-being through a variety of insurance products and services. *See* Cigna Corporation Form 10-K for Fiscal Year Ended December 31, 2015, at 1, *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001739940/602c4fe7-ca7f-49c9-abc6-d29b33c33fb0.pdf.

2.      Plan sponsors working with CHLIC to provide prescription drug benefits may choose to offer administrative services only ("ASO") plans (also known as self-funded plans) or fully insured plans. Ex. A, Deposition Transcript of Tyler Lester ("Lester Tr.") at 93:7–94:11. For ASO plans, plan sponsors use their own funds to pay for prescription drug benefits and contract

with CHLIC to administer those benefits, whereas for fully insured plans, plan sponsors pay premiums to an insurance company for coverage of benefits due. *See id.* at 93:25–94:11, 331:22–332:18.

3.      CHLIC's administrative services may include access to a network of retail pharmacies that have agreed to fill participants' prescriptions at contracted prices. Ex. A, Lester Tr. at 332:19–333:13, 338:4–22.

4.      Traditional "spread" pricing and pass-through pricing are the two most common types of benefit designs that plan sponsors select from to pay for prescription drug benefit costs. Ex. A, Lester Tr. at 345:20–347:8; 259:3–22.  Spread pricing allows plan sponsors to negotiate predictable drug costs for the plan year and pay for pharmacy benefit management services through a differential or "spread" between the plan sponsor's negotiated cost and the amount of the pharmacy benefit manager's or its vendor's network pharmacy reimbursement. *Id.* at 210:10–18; 316:24–318:3.  In pass-through pricing, the plan sponsor's drug costs are typically equal to the pharmacy reimbursement rates, but the costs for the plan's range of administrative services are paid as a separate recurring fee. *Id.* at 320:7–321:20; 347:19–348:13.

5.      Plaintiff Kimberly Negron participated in an ASO plan administered by CHLIC that provided prescription drug benefits offered by her employer, Putnam Investments, Inc. ("Putnam"), during the relevant time period.  Ex. B, Deposition Transcript of Kimberly Negron ("Negron Tr.") at 32:13–21, 55:5–56:4, 59:9–14; *see also* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 9–13.  *See, e.g.*, Ex. D, CIGNA00002315–CIGNA00002358 (2014 Putnam Investments, Inc. ASO Agreement).

6.      ███████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████ Ex. B, Negron Tr. at 56:20–57:6, 87:2–17, 89:2–90:20, 98:11–

99:17, 129:4–18. ████████████████████████████████

████████████████████████████ Ex. B, Negron Tr. at 72:3–

10, 125:13–126:2, 145:4–11, and 189:2–6.

      7.    Plaintiff Daniel Perry participated in an ASO plan administered by CHLIC that

provided prescription drug benefits offered by his employer, Hampton Affiliates, during the

relevant time period, participated in such benefits through his wife, a current employee of Hampton

Affiliates.  Ex. E, Deposition Transcript of Daniel Perry ("Perry Tr.") at 27:3–28:21; *see also* Ex.

C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 13–18.

*See, e.g.*, Ex. F, CIGNA00001817–CIGNA00001856 (2012 Hampton Affiliates ASO Agreement).

      8.    ████████████████████████████████

████████████████████████████ Ex. E, Perry Tr. at 44:15–

45:7, 48:2–49:2, 51:20–53:24, 93:10–22, 136:21–37:15, 139:11–23, 146:1–6, 147:18–24, 154:8–

155:2. ████████████████████████████████

████████████████████████████ *Id.* at 42:10–24, 78:3–15,

191:23–192:4, 197:5–16, 207:8–20, 221:21–222:6, and 237:11–238:6. ██████████████

████████████████████████████████████

████████████████████████████████████

███ *Id.* at 167:23–168:9.

      9.    Plaintiffs Roger and Nina Curol, along with their two dependents, participated in

an ASO plan administered by CHLIC that provided prescription drug benefits offered by Mr.

Curol's employer, Island Operating Company, Inc., during the relevant time period.  Ex. G,

Deposition Transcript of Roger Curol ("R. Curol Tr.") at 23:1–24:18, 28:1:24; Ex. H, Deposition

Transcript of Nina Curol ("N. Curol Tr.") at 30:4–32:9; *see also* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 3–8.  *See, e.g.*, Ex. I, CIGNA00001245–CIGNA00001279 (2015 Island Operating Company, Inc. ASO Agreement).

10.     ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. G, R. Curol Tr. at 25:4–

17, 26:10–14, 36:1–15, 38:6–10, 49:15–20, 50:13–21, 58:21–59:10, 95:6–21, and 100:1–101:5;

Ex. H, N. Curol Tr. at 34:6–22, 41:4–20, 47:6–9, and 52:7–53:13, 90:8–12. █████████████

██████████████████████████████████████████████████████████████

█████████ Ex. G, R. Curol Tr. at 84:19–22, 95:22–96:8, 102:1–8, 105:14–22, 134:1–19; Ex. H,

N. Curol Tr. at 47:6–9, 63:19–24, 68:23–69:4, 84:11–85:17, 94:9–16. ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████ Ex. G, R. Curol Tr. at 85:6–10; Ex. H, N. Curol Tr. at 46:15–19, 83:15–23.

11.     Plaintiff Billy Ray Blocker, Jr. participated in an ASO plan administered by CHLIC that provided prescription drug benefits offered by his employer, Cobb County, since starting his employment and during the relevant time period.  Ex. J, Deposition Transcript of Billy Ray Blocker, Jr. ("Blocker Tr.") at 14:4–13; 17:2–20; *see also* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 18–19; Ex. K, CIGNA12361815–48 (2014 Cobb County ASO Agreement).

12.     ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ Ex. J, Blocker Tr. at 19:6–20:13; 31:20–

22, 37:12–16, 57:11–20, 70:10–24; 141:1–5. 

*Id.* at 107:15–108:2, 109:7–11, 123:3–10, 134:16–135:4, 136:1–4, 137:23–138:3, and 159:4–11.

Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 25–26; Ex. J, Blocker Tr. at 94:23–95:9.

13.     Plaintiff Courtney Gallagher participated in a plan that provided prescription drug benefits offered by her employer during the relevant time period.  *See* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 8–9.  Ms. Gallagher's employer initially had a fully insured plan that later switched to an ASO plan administered by CHLIC.  *See, e.g.*, Ex. L, CIGNA00381922–CIGNA00382009 (2015 Sivantos ASO Agreement).  Ms. Gallagher does not allege that she ever reviewed her plan documents in deciding to join her plan or in filling any prescriptions, and also does not allege anything regarding her interactions with any pharmacist.  Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 34.

14.     As a service offered to its plan sponsor clients, CHLIC may generate a sample plan document containing plan language based on the client's benefit selections.  The ultimate decision whether to use the sample plan document with its beneficiaries is the client's choice, not CHLIC's.  Ex. M, CHLIC's Supplemental Objections and Responses to Plaintiffs' Fifth Set of Interrogatories at 5.

**CHLIC's Arm's-Length Contractual Relationship with Optum**

15.     OptumRx, Inc. ("Optum") is a wholly-owned subsidiary of UnitedHealth Group, a direct competitor of CHLIC.  *See* UnitedHealth Group, Inc. Form 10-K, December 31, 2015, *available at* https://www.sec.gov/Archives/edgar/data/731766/000073176616000058/0000731766-16-000058-index.htm at 15, 23 (listing Optum as subsidiary and Cigna as direct competitor); Compl. ¶ 63 n.3; *see also* CHLIC's Answer to Compl. at ¶ 68 n.4.

16.     CHLIC and Optum are two completely separate, independent companies.  They are not subsidiaries or affiliates of one another, and there is no overlap in management or ownership. *See* UnitedHealth Group 2015 Form 10-K, at 15, 23 (listing Optum as subsidiary and Cigna as direct competitor); Exhibit 21 to Cigna's 2015 Form 10-K (listing CHLIC as a subsidiary) *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001739940/602c4fe7-ca7f-49c9-abc6-d29b33c33fb0.pdf; *see also* Compl. ¶¶ 66–68, 268.

17.     In 2013, CHLIC contracted with Catamaran PBM of Illinois, Inc. ("Catamaran"), which was acquired by Optum in 2015 (Catamaran and Optum referred to hereinafter as "Optum"). *See* Ex. N, Declaration of Danielle Wefelmeyer ("Wefelmeyer Decl.") at ¶ 3.  Since 2013, CHLIC has contracted with Optum to provide access to some or all of Optum's retail pharmacy network for CHLIC's customers, which comprises retail pharmacies that agree to certain terms and conditions set forth in contractual arrangements—direct or indirect—with Optum.  Ex. A, Lester Tr. at 10:21–11:23, 333:14–334:18; *see also* Ex. O, CIGNA00002368, Excerpts of Pharmacy Benefit Management Agreement ("PBM Agreement").

18.     The PBM Agreement dictated the terms of CHLIC's access to Optum's network, including the rates CHLIC paid Optum for the prescription drugs that Optum's network pharmacies provided to participants in CHLIC's clients' plans.  Ex. N, Wefelmeyer Decl. ¶ 3.

19.     Optum was not involved in drafting plan documents for the participants in plans insured or administered by CHLIC and did not have knowledge of or access to those documents. Ex. N, Wefelmeyer Decl. ¶ 5.  Optum also did not have knowledge regarding CHLIC's agreements with plan sponsors and was not privy to the financial or pricing arrangements between them.  *Id.* at ¶ 6.

20.     The PBM Agreement creates an independent contractor relationship between CHLIC and Optum.  Ex. O, PBM Agreement § 24.7 ███████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████.

21.     The PBM agreement lays out a dispute resolution process, stating that ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████  *Id.* § 9.2.

22.     Optum was responsible for maintaining its retail pharmacy network.  CHLIC was not a party to Optum's network pharmacy contracts.  Ex. A, Lester Tr. at 11:9–19, 22:20–23.

23.     Optum did not share in or receive any of the alleged "Clawback" amounts allegedly paid to CHLIC.  *See* Ex. P, Optum's Responses to Plaintiffs' Second Interrogatories at 7; *see also* Ex. Q, CHLIC's Responses and Objections to Plaintiffs' Second Interrogatories at 14; Ex. A, Lester Tr. at 11:6–19 and 18:25–19:5; *see also* Ex. R, Schedule 20 to the PBM Agreement; Ex. S, Amendment 2 to the PBM Agreement.

24.     Optum maintains its own records detailing its transactions with pharmacies in its retail network separate from CHLIC's records, and it does not share such records with CHLIC. Ex. A, Lester Tr. at 336:10–337:2.

25.     CHLIC transacted business with Optum at arm's length, with each company acting in its own self-interest.  *See, e.g.*, Ex. T, Deposition Transcript of Stephanie Byrne ("Byrne Tr.") at 84:19–87:22.

26.     During the course of their contractual relationships with each other, CHLIC and Optum sometimes experienced disagreements and disputes over the terms of their agreements.  *See id.* at 84:19–87:22.

27.     Optum was careful in deciding whether to share its own confidential or proprietary information with CHLIC.  *See, e.g.*, Ex. U, ORX_00006120 (internal Optum email chain showing that it was up to Optum whether or not to share its information with CHLIC, particularly regarding its pharmacy pricing data).

**CHLIC's Arm's-Length Contractual Relationship with Argus**

28.     CHLIC and DST Pharmacy Solution Systems, Inc. ("Argus") are two completely separate, independent companies, are not subsidiaries or affiliates of one another, and have no overlap in management or ownership.  Compl. ¶¶ 66–67, 69, and 268.  CHLIC does not participate

on or control Argus' board of directors or executive management team.  Ex. V, Deposition
Transcript of Michelle Emanuel-Johnson ("Emanuel-Johnson Tr.") at 149:22–150:3.

29.     Since 2008, CHLIC has contracted with Argus, which served as the claims
processor for pharmacy benefit claims and managed the point of sale transactions for prescription
drug benefits for all of CHLIC's pharmacy business.  Ex. A, Lester Tr. at 12:3–21; *see also* Ex. X,
CIGNA00002133, Master Services Agreement ("MSA").  Argus served as a pharmacy transaction
administrator for CHLIC throughout the relevant time period.  Ex. A, Lester Tr. at 13:20–25.

30.     CHLIC has never exercised control over Argus' business operations or systems.
Ex. V, Emanuel-Johnson Tr. at 156:7–157:6 ████████████████████████████████████
████████████████████████████████████

31.     The MSA creates an independent contractor relationship between CHLIC and
Argus. ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████ *id.* at § 3.1.

32.     CHLIC's contract with Argus was for claims processing and nothing more.  Ex. V,
Emanuel-Johnson Tr. at 8:21–9:13.

33.     Argus negotiated its contracts with CHLIC using practices that are similar to what
Argus uses with all of its customers; that Argus's contractual arrangement with CHLIC is similar
to Argus's contractual arrangements with its other clients; and there is nothing significantly
different with Argus's contractual relationship with CHLIC as compared to Argus's contractual
relationships with its other clients.  Ex. V, Emanuel-Johnson Tr. at 160:2–9; 172:2–11.

34.     Under the MSA, CHLIC reimbursed Argus based on ███████████████ ██████████████████████████████ Ex. W, DSTPS000027–30; *see also* Ex. X, CIGNA00002133–2266 (Argus's contractual fee schedule setting ████████████ █████████████████████████████; *see* Ex. V, Emanuel-Johnson Tr. at 158:21– 159:5 ████████████████████████████████████████ ████████████████████████████.

35.     Optum contracted with CHLIC to provide pricing to CHLIC, and Argus would adjudicate participants' cost shares in accordance with the contracted rates between Optum and CHLIC. Ex. V, Emanuel-Johnson Tr. at at 17:20–18:13.

36.     Argus did not share in or receive any of the alleged "Clawback" allegedly paid to CHLIC.  *See* Ex. Q, CHLIC's Responses and Objections to Plaintiffs' Second Interrogatories at 14; Ex. A, Lester Tr. at 11:6–19, 18:25–19:5.

37.     CHLIC transacted business with Argus at arm's length, with each company acting in its own self-interest.  *See, e.g.*, Ex. Y, DSTPS000863 ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ Ex. Z, DSTPS003642 ████████████████████████████ █████████████████████████████████████.

38.     CHLIC and Argus at all times acted pursuant to their contractual obligations to each other.  Ex. V, Emanuel-Johnson Tr. at 155:15–156:6.

**Alleged Misrepresentations at the Point of Sale**

39.     Plaintiffs have at times generally asserted that misrepresentations occurred "at the point of sale," *i.e.*, when they went into a pharmacy to have a prescription filled and paid a

copayment.  *See* Complaint ¶¶ 276, 284–86; *see also* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 20–22.

40.     In response to interrogatories served by CHLIC, each of the Plaintiffs stated that they would provide details about the particular point-of-sale interactions that they contend constituted misrepresentations evidencing the alleged scheme to defraud after the completion of fact discovery, though they never did so.  *See* Ex. C, Pls.' Second Am. Objections and Responses to CHLIC's First Set of Interrogatories at 20–22. Plaintiffs never responded further or supplemented their responses to these interrogatories with any evidence regarding what was said to them by whom, where the interaction occurred, for what prescription, on what date, how much they paid, or what (if anything) was said about that price.

Dated: March 18, 2022                    Respectfully submitted,

                                          */s/ Brian W. Shaffer*
                                          Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  +1.215.963.5000
Facsimile:  +1.215.963.5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
matthew.klayman@morganlewis.com

Lisa R. Weddle (phv08957)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone: +1.213.612.2500
Facsimile: +1.213.612.2501
lisa.weddle@morganlewis.com

Michael Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  +1.860.240.2945
Facsimile:  +1.860.240.2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and Life
Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on March 18, 2022 via the Court's ECF system upon all counsel of record.

*/s/ Brian W. Shaffer*
Brian W. Shaffer