# EXHIBIT 40

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-03422

ARAPAHOE SURGERY CENTER, LLC, et al.,

    Plaintiffs,

v.

CIGNA HEALTHCARE, INC., et al.,

    Defendants.

## CIGNA'S COUNTERCLAIMS

Connecticut General Life Insurance Company, Cigna Health and Life Insurance Company, Cigna Healthcare, Inc., Cigna Healthcare - Mid-Atlantic, Inc., and Cigna Healthcare of Colorado, Inc., (together, "Cigna" or "Counterclaim Plaintiffs") as and for their Counterclaims against Arapahoe Surgery Center, LLC ("Arapahoe"), Cherry Creek Surgery Center, LLC ("Cherry Creek"), Hampden Surgery Center, LLC ("Hampden"), Kissing Camels Surgery Center, LLC ("Kissing Camels"), SurgCenter of Bel Air, LLC ("Bel Air"), Westminster Surgery Center, LLC ("Westminster") (collectively, the "ASCs"), and Surgical Center Development, Inc. d/b/a SurgCenter Development ("SurgCenter" and together, with the ASCs, "Counterclaim Defendants"), hereby allege as follows:

193. By paying the ASCs amounts that the ASCs did not charge plan members, these plans made overpayments to the ASCs.

194. These overpayments were made directly by Cigna to the ASCs.

195. These overpayments belong in good conscience to the plans because the plans managed by Cigna made benefit payments to the ASCs for services provided to plan members based on the charges that the ASCs listed on the claim forms that they submitted to Cigna.

196. These overpayments are within the possession and control of the ASCs.

197. These overpayments were made in contravention of plan terms.

198. Cigna seeks recovery of these overpayments on behalf of the plans. Alternatively, Cigna seeks a declaration that it may offset from future claim payments to the ASCs in the amount of these overpayments.

199. Additionally, Cigna seeks a permanent injunction directing all of the ASCs to submit to Cigna only charges that the ASC actually charges the plan member as payment in full for the ASCs' services and not to submit charges which include amounts that the ASC does not actually require the member to pay (including, without limitation, the waiver of any portion of the members' required out-of-network co-insurance, co-payment, and deductible amounts).

### Count II – RICO § 1962(c)
### (Against All Counterclaim Defendants)

200. The preceding paragraphs are incorporated by reference as if set forth fully herein.

41

201. <u>The Enterprise</u>. The following allegations are made upon information and belief. SurgCenter entered into separate two-party association-in-fact enterprises with each of the six ASCs. SurgCenter came to agreements with each of the ASCs to create the enterprises, the purpose of which is to operate operate for-profit medical centers and thereby enrich the enterprise's members by luring Cigna plan members to use these out-of-network centers through misrepresentations about the centers' costs to plan members, Cigna, and their plans.

202. <u>The RICO Schemes</u>. The following allegations are made upon information and belief. SurgCenter and each individual ASC each agreed to engage in the fraudulent dual pricing and fee forgiving schemes (the "RICO Schemes") as described above. (*See* ¶¶ 55-187.)

203. <u>The Pattern of Racketeering Activity</u>. The following allegations are made upon information and belief. Each of the ASCs and SurgCenter actively participate and participated in the conduct and operation of the respective two-party enterprises by participating in each stage of the RICO Schemes, as described above. (*See* ¶¶ 55-187.)

204. SurgCenter partners with each of the ASCs to develop ambulatory surgical centers, and then provides no-fee management and consulting services in managing and running each of the ASCs, and takes a 35% ownership share in each of the ASCs. As described above, as part of this scheme, each of the ASCs, with the assistance and guidance of SurgCenter, submits fraudulent claim forms to insurers like Cigna in order to induce the insurers to make payments to the ASCs.

205. As part of these schemes, each of the ASCs then funnels a portion of the fraudulently-obtained money paid by insurers like Cigna back to SurgCenter.

206. Upon information and belief, in furtherance of the RICO Schemes, each ASC has submitted and continues to submit false claims to other insurers as well as Cigna, including those claims described above. (*See* ¶¶ 55-187.)

207. SurgCenter and each ASC knew that Cigna would reasonably rely on the falsely-stated charges in these forms when Cigna processed benefit payments for the services listed on the forms and therefore pay the ASC its inflated, out-of-network rates.

208. Each ASC took further steps to conceal the true nature of its fraudulently inflated charges to Cigna by, for instance, misrepresenting to patients that they could use their "in-network" benefits at the respective ASC, and by refusing Cigna's requests to provide information regarding the ASCs' billing practices. Only through its extensive investigations did Cigna discover the RICO Schemes.

209. Each time the ASC submitted such a form to Cigna by mail, it committed a separate act of mail fraud in violation of 18 U.S.C. § 1341.

210. Each time each ASC submitted such a form to Cigna electronically, it committed a separate act of wire fraud in violation of 18 U.S.C. § 1343.

211. Each ASC committed these acts of mail and wire fraud at the direction of, and in coordination with, SurgCenter.

212. Indeed, when Cigna contacted one of the ASCs, Westminster, regarding its billing practices, SurgCenter responded on the ASC's behalf. SurgCenter's Vice President of Managed Care and Revenue Cycle referred to the dual pricing scheme as

"an internal corporate policy" with which SurgCenter represented Westminster had followed.

213. By submitting hundreds of these forms over the past several years, SurgCenter and each ASC engaged in a pattern of racketeering activity, one that continues now. The direct and intended victims of this pattern of racketeering activity are Cigna and entities that sponsor Cigna's ASO plans.

214. As a direct result of the ASCs' fraudulent claim submissions, Cigna paid the ASCs more than $14.8 million.

215. Thus, as a result of the conduct by SurgCenter and the ASCs, Cigna and its ASO plan sponsors have been injured in an amount to be determined at trial but in no event less than $14.8 million.

216. Pursuant to 18 U.S.C. § 1964(c), Cigna and its ASO plan sponsors are entitled to recover threefold their damages, costs, and attorneys' fees. In addition, they are entitled to injunctive relief to enjoin SurgCenter and each of the ASCs' ongoing racketeering.

### Count III – Fraud
### (Against All ASCs)

217. Paragraphs 1 through 187 are incorporated by reference as if set forth fully herein.

218. Under both Maryland law (as applied to Bel Air and Westminster (collectively, the "Maryland ASCs")) and Colorado law (as applied to Kissing Camels, Arapahoe, Hampden, and Cherry Creek (collectively, the "Colorado ASCs")), each of the ASCs' conduct constitutes fraud.

practices, thereby hindering its ability to learn of its dual pricing scheme and the extent of its fee-forgiving practices.

## PRAYER FOR RELIEF

Based on the foregoing, Cigna prays that the Court enter a judgment awarding the following:

a. a declaration that the products and services provided by the ASCs do not constitute covered services under the employee health and welfare benefit plans administered or insured by Cigna and that the ASCs are not entitled to receive any payments on the claims for reimbursement that it has submitted or may submit in the future;

b. a declaration that the Colorado ASCs are in direct violation of section 18-13-119 of the Colorado Criminal Code;

c. return of any all monies paid to the ASCs on claims for reimbursement submitted by the ASCs;

d. monetary damages for all harm suffered as a result of the ASCs' conduct;

e. exemplary and punitive damages;

f. pre-judgment and post-judgment interest;

g. the reasonable and necessary attorneys' fees incurred;

h. costs of court; and

i. such other and further relief to which they may show themselves entitled in law or equity.

DATED this 10th day of February, 2014.


Respectfully submitted,

By: */s/ Edwin P. Aro*
Edwin P. Aro
ARNOLD & PORTER LLC
370 Seventeenth Street, Suite 4400
Denver, CO 80202
Telephone: 303.863.1000
ed.aro@aporter.com

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10016
Telephone: 212.446.4800
Facsimile: 212.446.4900

*Counsel for Defendants*
*and Counterclaim Plaintiffs*