# EXHIBIT 44

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

_____

Civil Action No. 13-cv-03422
_____

ARAPAHOE SURGERY CENTER, LLC, CHERRY CREEK SURGERY CENTER, LLC, HAMPDEN SURGERY CENTER, LLC, KISSING CAMELS SURGERY CENTER, LLC, SURGCENTER OF BEL AIR, LLC, and WESTMINSTER SURGERY CENTER, LLC,

    Plaintiffs,

v.

CIGNA HEALTHCARE, INC., CONN. GENERAL LIFE INSURANCE CO., CIGNA HEALTHCARE - MID-ATLANTIC, INC., and CIGNA HEALTHCARE OF COLO., INC.,

    Defendants.
_____

**CIGNA'S OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**
_____

**PRELIMINARY STATEMENT**

This case involves fraudulent practices by Counterclaim Defendants designed to bill enormous and unjustified costs to health plans while at the same time virtually eliminating patients' responsibility to pay for their medical care. Specifically, the ASCs sent claim forms to Cigna listing exorbitant "charges" for their services. But unknown to Cigna, the charges on the ASCs' claim forms were not what the ASCs actually billed to patients. Instead, the ASCs quoted the patient a charge based on Medicare rates, which are significantly lower than the rack rates the ASCs submitted to Cigna. (Countercl. ("CC") ¶ 62.) The ASCs then applied the members' lower *in-network* coinsurance, copayment, and deductible rates to this already much lower Medicare rate, ignoring the patients' required *out-of-network* cost-sharing responsibilities. And to be clear,

medical centers to implement "dual pricing" and "fee forgiving" schemes, which they accomplished through the repeated transmission of fraudulent claim forms to Cigna through the mail and wires. (*Id.* ¶¶ 68-78, 80-187, 202-16, 283-99.)

### A. Counterclaim Defendants Committed Mail and Wire Fraud By Submitting Fraudulent Claim Forms to Cigna.

Counterclaim Defendants mistakenly argue that "[t]he lynchpin of Cigna's Counterclaims . . . is the ASCs' alleged failure to collect the full amount of copayments and deductibles . . . required by the terms of [Cigna's] plans." (Mot. at 3.) This was only part of the scheme: Cigna alleges not only that the ASCs, at the direction of SurgCenter, waived the patients' required out-of-network cost-sharing, but also that the ASCs submitted grossly inflated "phantom" charges to Cigna that—unknown to Cigna—the ASCs never intended to collect. (CC ¶ 71.) Cigna relied on these fraudulent claim forms when processing and paying the ASCs' claims. (*Id.* ¶ 73.) As a result, Cigna overpaid the ASCs millions of dollars. (*Id.* ¶ 193.)

Counterclaim Defendants' contention that Cigna has not properly pled fraud because the ASCs disclosed their scheme to Cigna is incorrect. (*See supra* Prelim. Statement.) Cigna's "real problem with the ASCs" (Mot. at 4) is not that Cigna has to pay them for services rendered to Cigna members—it is that Cigna unknowingly overpaid the ASCs based on its reliance on the ASCs' fraudulent claim forms. These allegations establish the predicate acts of mail and wire fraud. *See, e.g.*, *Dewey v. Lauer*, Civ. 08-cv-01734, 2009 WL 3234276, at *4 (D. Colo. Sept. 30, 2009) (allegations defendants committed mail and wire fraud by over-billing construction jobs satisfied

5

Rule 9(b) requirements where complaint "identif[ied] the purpose of … communications within the fraudulent scheme").[3]

### B. Cigna Paid the ASCs Nearly $15 Million As A Result of Counterclaim Defendants' Fraudulent Schemes.

Counterclaim Defendants' arguments that Cigna did not reasonably rely or suffer injury from their false statements (Mot. at 7) fail for the same reason. Because the ASCs' claim forms do not reflect the amounts that they actually charged patients, Cigna had no way to verify that the amount billed to Cigna was not the ASCs' actual charge. (CC ¶¶ 77-78, 213.) Cigna thus relied on the ASCs' false claim forms when reimbursing the ASCs for their services. (*Id.* ¶ 214.) And contrary to Counterclaim Defendants' contention that "Cigna's only 'injuries' flow from the ASCs' decision to honor patients' in-network benefits" (Mot. at 7), Cigna's claims make clear that its damages, totaling nearly $15 million before Cigna uncovered Counterclaim Defendants' fraud, flow from the ASCs' failure to disclose that they falsely charged Cigna a much higher rate than they billed their patients. (CC ¶ 215.)

### C. SurgCenter Entered into Separate Two-Party Association-in-Fact Enterprises with Each ASC.

In *Boyle v. United States*, 556 U.S. 938 (2009), the Supreme Court established that an association-in-fact enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to

---

[3] Whether the ASCs' initial quote to patients is "simply an estimate" or they "cannot determine final responsibility until Cigna calculates the allowed amount" (Mot. at 5) is irrelevant. Both the "estimate" and the member's "final responsibility" are based on a charge that Cigna never sees and is far lower than what the ASCs bill Cigna. (CC ¶¶ 96, 101, 116, 120, 137-38, 140, 161-64, 179-82.)

6

DATED this 12th day of May, 2014.   Respectfully submitted,


By: */s/ Edwin P. Aro*_____
Edwin P. Aro
ARNOLD & PORTER LLC
370 Seventeenth Street, Suite 4400
Denver, CO 80202
Telephone: 303.863.1000
ed.aro@aporter.com

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10016
Telephone:  212.446.4800
Facsimile:  212.446.4900
joshua.simon@kirkland.com
warren.haskel@kirkland.com
ryan.mcenroe@kirkland.com

*Counsel for Defendants*