# EXHIBIT 46

Page 1

1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF CONNECTICUT

2

                         -   -   -

3

     KIMBERLY A. NEGRON,        : CIVIL ACTION NO.
4    Individually and on        : 3:16-cv-1702(JAM)
     Behalf of All Others       :
5    Similarly Situated,        :
     DANIEL PERRY,              :
6    Individually and on        :
     Behalf of All Others       : Videoconference
7    Similarly Situated,        : Deposition of
     COURTNEY GALLAGHER,         : KIMBERLY NEGRON
8    Individually and on        :
     Behalf of All Others       :
9    Similarly Situated,        :
     NINA CUROL,                :
10   Individually and on        :
     Behalf of All Others       :
11   Similarly Situated,        :
     ROGER CUROL,               :
12   Individually and on        :
     Behalf of All Others       :
13   Similarly Situated, and    :
     BILLY RAY BLOCKER,          :
14   Individually and on        :
     Behalf of All Others       :
15   Similarly Situated,        :
          Plaintiffs,           :
16                              :
          vs.                   :
17                              :
     CIGNA CORPORATION,         :
18   CIGNA HEALTH AND LIFE      :
     INSURANCE COMPANY, and     :
19   OPTUMRX, INC.,             :
          Defendants.           :
20
                         -   -   -
21                     April 21, 2020
                         -   -   -
22

23            VERITEXT LEGAL SOLUTIONS
                 MID-ATLANTIC REGION
          1801 Market Street - Suite 1800
24             Philadelphia, PA  19103

Page 2

```
 1                - - -
 2         Videoconference deposition of
 3   KIMBERLY NEGRON, taken remotely via Veritext
 4   Virtual and Zoom, at 243 Fox Hill Road,
 5   Burlington, Massachusetts  01803, beginning at
 6   9:30 a.m., before LINDA ROSSI-RIOS, a
 7   Federally Approved RPR, CCR and Notary Public.
 8
 9
10
11
12                - - -
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1   A P P E A R A N C E S :
 2
 3   On behalf of the Plaintiffs
       (VIA ZOOM)
 4
         IZARD, KINDALL & RAABE, LLP
 5       BY:  CRAIG A. RAABE, ESQUIRE
             SETH KLEIN, ESQUIRE
 6           ROBERT A. IZARD, JR.,  ESQUIRE
             and
 7           CHRISTOPHER M. BARRETT, ESQUIRE
         29 South Main Street
 8       Suite 305
         West Hartford, CT  06107
 9       860.493.6292
         craabe@ikrlaw.com
10       sklein@ikrlaw.com
         rizard@ikrlaw.com
11       cbarrett@ikrlaw.com
             AND
12       MOTLEY RICE LLC
         BY:  MEGHAN S.B. OLIVER, ESQUIRE
13       28 Bridgeside Boulevard
         Mount Pleasant, SC  29464
14       843.216.9492
         moliver@motleyrice.com
15           AND
         SARRAF GENTILE
16       BY:  RONEN SARRAF, ESQUIRE
             JOSEPH GENTILE, ESQUIRE
17       10 Bond Street, Suite 212
         Great Neck, New York 11021
18       516.699.8890
         ronen@sarrafgentile.com
19       joseph@sarrafgentile.com
20
21
22
23
24
```

Page 4

```
 1   APPEARANCES (cont'd.):
 2   On behalf of the Defendants, Cigna Health
       and Life Insurance Company
 3     (VIA ZOOM)
 4       MORGAN LEWIS & BOCKIUS, LLP
         BY:  BRIAN W. SHAFFER, ESQUIRE
 5           ELEANOR R. FARRELL, ESQUIRE
             and
 6           JILL SETTLEMYER, ESQUIRE
         1701 Market Street
 7       Philadelphia, PA 19103
         215.963.5000
 8       brian.shaffer@morganlewis.com
         eleanor.farrell@morganlewis.com
 9       jill.settlemyer@morganlewis.com
10
11   On behalf of the Defendant, OptumRX, Inc.
       (VIA ZOOM)
12       DORSEY & WHITNEY, LLP
         BY:  MICHELLE S. GRANT, ESQUIRE
13       50 South Sixth Street
         Suite 1500
14       Minneapolis, MN 55402-1498
         612.340.2600
15       grant.michelle@dorsey.com
16
17   A L S O   P R E S E N T :
18       BRETT BOSKIEWICZ
         Senior Managing Counsel, Cigna
19
20       DANIEL GRBICH, Videographer
21
22                - - -
23
24
```

Page 5

```
 1              I N D E X
 2
     WITNESS                    PAGE
 3
     KIMBERLY NEGRON
 4
       BY MR. SHAFFER              8
 5
       BY MS. GRANT             190
 6
 7
             E X H I B I T S
 8
     MARKED       DESCRIPTION      PAGE
 9
     Negron-01    Putnam Summary Plan    95
10               Description
11   Negron-02    Plaintiffs' Second    133
                 Amended Objections and
12               Responses To CHLIC'S
                 First Set of
13               Interrogatories
     Negron-03    Second Amended        134
14               Consolidated Complaint
15   Negron-04    Consolidated Complaint  141
16   Negron-05    Excel sheet,          172
                 extraction
17   Negron-06    CVS documents         196
                 Negron_000101 - 104
18
19
20
21
22
23
24
```

2 (Pages 2 - 5)

Page 6

1      DEPOSITION SUPPORT INDEX
2   DIRECTION TO WITNESS NOT TO ANSWER
3   Page  Line
4   92    3
5
6
7   REQUEST FOR PRODUCTION OF DOCUMENTS
8   Page  Line
9   168   23
10
11
12   STIPULATIONS
13   Page  Line
14   8     16
15
16
17   REQUEST TO SEAL
18   Page  Line
19   29    6
20   171   20
21   172   2
22
23
24

Page 7

1              - - -
2        VIDEOGRAPHER:  Good morning.  We
3    are going on the record at 9:30 on
4    April 21, 2020.  This is media unit
5    number 1 for the video deposition of
6    Kimberly Negron being taken in the
7    matter of Negron versus Cigna
8    Corporation, et al., which is filed in
9    the United States District Court for
10   the District of Connecticut, Case
11   Number 16-CV-1702.
12        My name is Daniel Grbich from
13   the firm of Veritext.  I'm the
14   videographer.  The court reporter is
15   Linda Rossi from the firm of Veritext.
16        I'm not authorized to administer
17   an oath nor am I related to any party
18   in this action or financially
19   interested in the outcome.
20        Counsel, please state their
21   appearance and affiliations for the
22   record.
23        MR. RAABE:  For the plaintiff,
24   Craig Raabe, Bob Izard, Christopher

Page 8

1    Barrett, Seth Klein, Meghan Oliver,
2    Ronen Sarraf and Joseph Gentile.
3        MR. SHAFFER:  And for defendant
4    Cigna, this is Brian Shaffer along with
5    Eleanor Farrell and Jill Settlemyer.
6        MS. GRANT:  And for defendant
7    OptumRX, this is Michelle Grant.
8        VIDEOGRAPHER:  Court reporter,
9    please swear in the witness and you may
10   proceed.
11             - - -
12        KIMBERLY NEGRON, after having
13   been duly sworn, was examined and
14   testified as follows:
15             - - -
16        MR. RAABE:  I'll note for the
17   record we'll have Kim read and sign,
18   and I don't know if we put that on the
19   record for Mr. Mustoe last week, but he
20   also will read and sign.
21        MR. SHAFFER:  Sounds good.
22             - - -
23        EXAMINATION
24             - - -

Page 9

1    BY MR. SHAFFER:
2        Q.    Good morning, Ms. Negron.  Can
3    you hear me okay?
4        A.    I can.  I just moved the phone a
5    little closer to me, too.  So it should be
6    better.
7        Q.    Great.  My name is Brian
8    Shaffer, and as I just mentioned on the
9    record, I'm one of the lawyers representing
10   Cigna in connection with the lawsuit brought
11   in the District of Connecticut where you are
12   one of the plaintiffs.  We're here to take
13   your deposition this morning.  Do you
14   understand that?
15       A.    I do.
16       Q.    We're taking this deposition on
17   April 21, 2020, in the midst of the COVID-19
18   pandemic, and so we have coordinated with your
19   lawyers to take your deposition in a remote
20   fashion with everyone being in a different
21   place through this Veritext deposition system
22   so that we can take your deposition even
23   though we can't all be together.  Do you
24   understand that as well?

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

1 insured by Cigna and call up anybody at Cigna
2 and ask about those prescription benefits. Is
3 that also correct?
4     A.    I did not reach out to anyone
5 regarding that. I mean, to be honest with
6 you, like most people, I think you kind of
7 assume the best intent and you're not
8 questioning the amounts. It wasn't until I
9 saw that on the CVS website that I was, like,
10 what, wait a second. You assume, like, you
11 know, that a company is going to be forthright
12 and charge you what they're supposed to charge
13 you or that they're paying or whatever the
14 situation may be. No, I didn't --
15     Q.    What do you think the amount was
16 you were supposed to be charged?
17     A.    Whatever the prescription costs.
18     Q.    What do you mean whatever the
19 prescription costs?
20     A.    Well, so my understanding was,
21 you know, that based on the tier of, you know,
22 the prescription itself is, like, falls under,
23 you pay based on that tier. I'm assuming that
24 that is like, you know, like most people, the

1 cost is the cost and I didn't know -- I didn't
2 -- no one -- until I saw that information on
3 the website, I didn't know there was a
4 difference between the two. I don't think
5 that it's advertised that way. And I don't
6 think it's like transparent to people.
7 Whether it's --
8     Q.    Your understanding -- your
9 understanding when you go into a pharmacy and
10 pay $10 for a drug, your understanding is that
11 drug costs $10?
12     A.    Yeah, essentially I guess, yeah.
13     Q.    Every drug, including brand
14 drugs that have just come on the market, your
15 understanding is that those cost $10?
16         MR. RAABE: I object to the form.
17         THE WITNESS: I'm assuming you
18     charge people depending on the category
19     and, you know, if it's lumped under my
20     insurance, I'm trying to think how
21     to -- yeah, I don't think it's -- if
22     you guys advertise, like -- oh, yeah, I
23     think that's what average people think,
24     yeah, I do.

1 BY MR. SHAFFER:
2     Q.    And that understanding is based
3 off of what?
4     A.    Because you're not really
5 disclosing otherwise.
6     Q.    And the information that you
7 said you saw on a CVS website, what kind of
8 website is that?
9     A.    I don't know. Basically you log
10 in, you can see your prescription history, you
11 can see for a certain time frame. I remember
12 it said the name and it said, like, you paid
13 or plan paid or I paid this amount, you know.
14 So you could see that there was a clear
15 difference between the two.
16     Q.    And when you say a difference,
17 you mean that the amount that you paid was
18 more than the amount the plan paid?
19     A.    Correct, yeah.
20     Q.    And when did you look at this
21 website, in 2015 when you were thinking about
22 bringing this lawsuit and unhappy about the
23 Cigna situation?
24     A.    Yeah. Because I -- it's not --

1 I never had a reason to look, like to dig into
2 it. I really had to do digging to pull it up.
3 It's not in your face.
4     Q.    And how did you know to dig for
5 it?
6     A.    Well, in conversations with my
7 dad, out of sheer curiosity, you know, I
8 decided to investigate it myself, you know.
9 So I logged in to the online portal. It was
10 through the -- it's like My Care CVS, whatever
11 it was.
12     Q.    Did you, in reviewing the CVS My
13 Care website, did you see that there were
14 instances where the amount that you paid was
15 less than the amount that the plan was paying?
16     A.    I don't recall offhand.
17     Q.    Did you see in reviewing that
18 information on the CVS website about
19 situations when you were paying less than the
20 pharmacy was being paid for the prescription?
21     A.    It didn't say -- I don't, like,
22 recall the specifics. It didn't break out
23 pharmacy. It just said my plan and what I
24 paid. So it didn't reference pharmacy at all

KIMBERLY NEGRON

Page 122

1  prescription, it's wonderful your company is
2  making it more affordable.  But if, you know,
3  you're overcharging me for something that
4  normally costs a buck, like, I don't think
5  it's right to overcharge.
6      Q.    And if Putnam and Cigna negotiated
7  and agreed on how pricing was going to be done
8  for prescription drugs that you were going to
9  fill once you were on a Putnam plan, don't you
10  think that they can decide between themselves
11  how much you're going to pay?
12          MR. RAABE:  Object to the form.
13          THE WITNESS:  I mean, is that --
14      is it, like, presented to them like
15      that?  Or is it, like, here, I would
16      kind of think that a lot of these
17      things are probably standard and
18      offering plans and making selections.
19  BY MR. SHAFFER:
20      Q.    Would that make a difference to
21  you if they were able to sit down and talk
22  about here is different ways we could price
23  how much members pay when they go into the
24  pharmacy, and if you price them this way,

Page 123

1  monthly payroll deductions might be X, and if
2  you price them this way, maybe they'll be
3  cheaper.  Would that make a difference to you?
4          MR. RAABE:  Object to the form.
5          THE WITNESS:  From Putnam's
6      perspective, I feel like -- I'm sure
7      they, of course, care about, you know,
8      how much they're, you know, contributing
9      to employees' insurance plans, but I
10      don't necessarily think that, you
11      know -- I don't think it's -- like I
12      would be surprised if Cigna presented
13      it that way; like in the clear,
14      transparent way.  But it's neither here
15      nor there.
16  BY MR. SHAFFER:
17      Q.    Why do you say it's neither here
18  nor there?  I'm not trying to be difficult,
19  but I'm trying to get to the end of your
20  perspective why that wouldn't -- I guess in
21  your view doesn't matter?
22          MR. RAABE:  Object to the form.
23          THE WITNESS:  Well, so I mean I
24      -- I'm sure, I mean, I can't imagine

Page 124

1  Cigna presenting, you know, their plans
2  as like saying, oh, we'll overcharge
3  members for, you know, certain drugs
4  here if you choose these plans.  I
5  guess the pitch in trying to sell your
6  insurance plans to the company, I'm
7  sure a company wouldn't, you know, walk
8  into something that is, you know, not
9  transparent or, you know, prudent for
10  their employees.  I don't think that
11  they would walk into a situation like
12  that.  I don't know.
13  BY MR. SHAFFER:
14      Q.    What if Cigna put in the
15  contract that it had with Putnam for pharmacy
16  benefits that there could be differences in
17  the price that the plan is going to pay for
18  prescription drugs and how much the pharmacy
19  might get paid for prescription drugs; and if
20  there is a difference that is higher, Cigna
21  will pay the part that is higher; and if it's
22  lower, Cigna gets to keep the differential, do
23  you still have a problem with what you're
24  paying at the pharmacy?

Page 125

1          MR. RAABE:  Object to the form.
2          THE WITNESS:  I don't really
3      know how to answer that.
4  BY MR. SHAFFER:
5      Q.    If you're told to pay $10 in the
6  information that you got when you sign up for
7  your prescription benefits and you paid $10 at
8  the pharmacy to get that prescription but the
9  pharmacy only got paid $5 for that prescription,
10  do you believe there is something wrong with
11  that?
12          MR. RAABE:  Object to the form.
13          THE WITNESS:  I feel that, you
14      know, you should be -- I mean, we
15      should -- I feel like there just needs
16      to be transparency.  I feel like, you
17      know, whatever -- there is no
18      transparency.  Like I think, you know,
19      okay, if that scenario is happening,
20      like why isn't that being included in
21      the packet that I pick up at the
22      pharmacy, what I'm paying, what Cigna
23      is paying, what the pharmacy is paying.
24      I just feel like, you know, it's kind

32 (Pages 122 - 125)

1    Q.   That's what you were referring
2  to earlier when you said you had pulled
3  information on a website regarding past
4  prescriptions and it said the amount you paid
5  and the amount that the plan paid?
6    A.   Yes, that's what I --
7    Q.   And when you pulled this, do you
8  recall pulling it for each of your family
9  members?
10    A.   Well, because I'm, you know,
11  their guardian, we're all under the same
12  policy. It's all, like, the same.
13    Q.   And how far back did you pull
14  the information for?
15    A.   The system is kind of like your
16  bank statements, you can only pull a certain
17  amount. I don't remember specifically what it
18  was at the time, but...
19    Q.   And you see at the top there is
20  a couple of boxes that look like a pull-down
21  menu. There it says "View Claims for HUNTER,"
22  and the next box says "Within Previous Year."
23  Do you recall if you were able to pull other
24  time periods in that drop-down menu?

1    A.   I don't think so. If I could
2  have, I would have.
3    Q.   You don't recall looking for
4  prior to the previous year?
5    A.   I don't know. I think I was
6  just looking then. I don't know. I don't
7  recall. It was five years ago.
8    Q.   Understood. You can turn away
9  from that exhibit. I'm done with that.
10    A.   Okay.
11    Q.   Ms. Negron, what remedy are you
12  seeking from OptumRX?
13         MR. RAABE: Object to the form.
14         THE WITNESS: Basically, I mean,
15    I feel like they should give people
16    their money back. They, you know,
17    overcharged members.
18  BY MS. GRANT:
19    Q.   What do you believe OptumRX
20  charged you?
21    A.   I can't say off the top of my
22  head, like the specifics.
23    Q.   You testified earlier regarding
24  your understanding of a clawback. Do you have

1  any knowledge or evidence that OptumRX
2  retained any of the amount clawed back as you
3  described it?
4    A.   I relied on my lawyers for that.
5         MS. GRANT: Thank you. I have
6    no further questions.
7         MR. RAABE: I have no questions.
8         MR. SHAFFER: I don't have any
9    other questions, either. So we can
10    wrap the deposition for today. Thank
11    you again, Ms. Negron.
12         THE WITNESS: Thanks so much.
13         VIDEOGRAPHER: The time is now
14    3:50. This concludes media unit 4 and
15    the video deposition.
16              - - -
17         (Witness excused at 3:50 p.m.)
18
19
20
21
22
23
24

1         C E R T I F I C A T E
2
       I do hereby certify that I am a Notary
3  Public in good standing, that the aforesaid
   testimony was taken before me, pursuant to
4  notice, at the time and place indicated; that
   said deponent was by me duly sworn to tell the
5  truth, the whole truth, and nothing but the
   truth; that the testimony of said deponent was
6  correctly recorded in machine shorthand by me
   and thereafter transcribed under my
7  supervision with computer-aided transcription;
   that the deposition is a true and correct
8  record of the testimony given by the witness;
   and that I am neither of counsel nor kin to
9  any party in said action, nor interested in
   the outcome thereof.
10
       WITNESS my hand and official seal May
11  1, 2020.
12
13
             <%signature%>
14  _____
             Linda Rossi-Rios, RPR, CSR
15           Notary Public
16
17
18
19
20
21
22
23
24