# EXHIBIT 5
# FILED UNDER SEAL

# SCHEDULE A-1

## CLAIMS PROCESSING SERVICES

1. **OVERVIEW**

    1.1. Supplier shall provide Company with all services related to the processing and adjudication of all Claims under Company Plans in the manner described below.

    1.2. For the avoidance of any doubt, all references to Company as a recipient, beneficiary or requester of services or rights in this Schedule A-1 shall be deemed to include the Affiliated Companies.

    1.3. Additionally, each reference to Benefit Plan Design (or Benefit Plan Design information) shall be deemed to include all applicable Benefit Plan Designs (and Benefit Plan Design information), including applicable Formularies, new Benefit Plan Designs (and Benefit Plan Design information), and revisions or variations to Benefit Plan Designs (and Benefit Plan Design information).

2. **BENEFIT PLAN DESIGN ADMINISTRATION**

    2.1. Benefit Plan Design Transmission and Implementation.

       2.1.1. Receipt of Benefit Plan Design Information. Supplier shall obtain and receive Benefit Plan Design information from Company for each Company Plan, including variations with respect to particular Company Clients or Company Customers, in Company-specified electronic or paper formats. Company shall be responsible for the accuracy of all Benefit Plan Design information provided to Supplier.

       2.1.2. Loading of Benefit Plan Design Information. Without limiting Supplier's obligations pursuant to Section 1.6 of the Agreement, Supplier shall (a) make available to Company online access that will enable Company personnel, as specified by Company, to load Benefit Plan Design information (including updates) into the Claims Processing System (as defined in Schedule A-7); (b) provide and maintain all personnel and system resources necessary to permit Supplier, to the extent requested by Company, to accurately load and update Benefit Plan Design information that is supplied by Company into the Claims Processing System; and (c) maintain and implement Benefit Plan Design information in the Claims Processing System. To the extent Supplier will load Benefit Plan Design information in the Claims Processing System, Supplier shall complete the loading of Benefit Plan Design information in the Claims Processing System with respect to Commercial Plans, within the timeframe set forth in SLA A02 in Schedule B-2 to the Statement of Work. To the extent that Company loads, updates or edits Benefit Plan Design information in the Claims Processing System, Company shall follow the Benefit Plan Design setup

Confidential and Attorneys' Eyes Only    DSTPS 000722

guidelines and naming conventions provided by Supplier to Company, and Supplier shall maintain all setup guidelines and naming conventions as shall be necessary to permit the loading of all Benefit Plan Design information. If Company does not comply with the Benefit Plan Design setup guidelines and naming conventions provided by Supplier, issue resolution by Supplier may be delayed. Company and Supplier shall develop policies and procedures that address communications between the Parties to coordinate whether Company or Supplier is loading, updating or editing Benefit Plan Design information in the Claim processing.

2.1.3. <u>Testing</u>. Supplier shall, and shall provide such assistance necessary to enable Company to, conduct testing in order to verify the accuracy of each element of the Benefit Plan Design information loaded into the Claims Processing System, in accordance with requirements as specified by Company. Such testing conducted by Supplier shall, at a minimum, include the following:

   a. Confirmation of adjudication of accurate Cost Share;

   b. Confirmation of compliance with applicable national provider identifier requirements;

   c. Confirmation of accurate Claim acceptance and rejections;

   d. Confirmation of accurate Claims payments;

   e. Confirmation of accurate application of accumulators; and

   f. Confirmation of Formulary compliance.

2.1.4. <u>Timing of Testing</u>. Unless otherwise specified in writing by Company, Supplier shall complete all testing it is required to perform pursuant to <u>Section 2.1.3</u> within the timeframes provided for the loading of Benefit Plan Design information pursuant to <u>Section 2.1.2</u>.

2.1.5. <u>Communication of Test Results</u>. Supplier and Company shall mutually agree upon a format for the communication of Benefit Plan Design loading testing results to Company. Supplier shall report all findings and results from such testing to Company within twenty-four (24) hours of the completion of testing and shall provide responsible for Company with summary reports of such findings and results on a monthly and quarterly basis pursuant to SLA A03 in <u>Schedule B-2</u> to the Statement of Work. Notwithstanding the communication of such testing results, Supplier shall remain solely performing its obligations pursuant to this <u>Schedule A-1</u> accurately and in a timely manner.

2.1.6. <u>Testing by Company</u>. As requested by Company, Supplier also shall support Company's independent testing of the accuracy of Benefit Plan Design information, including Benefit Plan Design information loaded by Company

Confidential and Attorneys' Eyes Only                                           DSTPS 000723

into the Claims Processing System, and the interaction of such Benefit Plan Design information with Company's systems.

2.1.7. Error Correction. Subject to Company's right to enter such corrections into the Claims Processing System directly, Supplier shall correct any inaccuracies, mistakes or omissions indicated by Benefit Plan Design testing, whether identified by Supplier or by Company, within the timeframes set forth in SLA 02 in Schedule B-2 to the Statement of Work and in any event prior to the Company-specified effective date for each Benefit Plan Design with respect to the applicable Company Plan(s) and Company Client(s). Supplier shall resolve any errors discovered following the effective date of a Benefit Plan Design pursuant to Section 5.10. Subject to Sections 12 and 1.6 of the Agreement and consistent with Section 10 of this Statement of Work, Supplier, and not Company, shall be solely responsible for any Loss resulting from an incorrect Claim payment to the extent caused by Supplier's error.

2.1.8. Edits Prohibited. Supplier shall not make any modifications to any Benefit Plan Design, including with respect to any particular Company Client, other than at Company's request.

2.1.9. Progress Log. Supplier shall provide to Company a Benefit Plan Design progress log, updated at a minimum daily, and to which Company shall have read and write access via a Web-based tool that enables online access. The progress log shall track the status of in-progress loading, implementation, testing, and correction of Benefit Plan Design information and identify to Company whether work is completed or pending, including with respect to particular Company Plans and Company Clients. Supplier shall provide the progress log in Excel format or such other format that enables Company to manipulate/sort the data therein. Company shall have the ability, subject to Company's payment of applicable license fees set forth in Exhibit 14 to the Agreement and project request procedures, to the extent necessary, to update the Benefit Plan Design progress log to reflect Benefit Plan Design information entry performed by Company.

2.1.10. Benefit Plan Design Policies and Procedures. Supplier shall establish and utilize such policies and procedures and take such other actions as shall be necessary to ensure that Supplier implements and administers Benefit Plan Designs accurately and in accordance with this Schedule A-1 and all related Service Levels. Supplier shall provide a copy of such policies and procedures to Company upon Company's request and at least two times per year. Supplier shall modify such policies and procedures as necessary to address and resolve any errors or omissions, or concerns and issues raised by Company and agreed upon by the appropriate governance committee, with the form and content of such modifications mutually agreed upon by the Parties.

Confidential and Attorneys' Eyes Only

2.1.11. <u>Quality Assurance</u>. Supplier shall implement and maintain a quality assurance program to ensure that Benefit Plan Design implementation and administration is provided in accordance with this <u>Schedule A-1</u> and all related Service Levels. Supplier shall provide a copy of such policies and procedures to Company upon Company's request and at least two times per year. Supplier shall modify such policies and procedures as necessary to address and resolve any errors or omissions, or concerns and issues raised by Company and agreed upon by the appropriate governance committee, with the form and content of such modifications mutually agreed upon by the Parties.

2.1.12. <u>Training</u>. Supplier shall provide initial and ongoing training for Company personnel with respect to the transmission of Benefit Plan Design information to Supplier and the loading and testing of Benefit Plan Design information in the Claims Processing System. Supplier shall provide such training in accordance with <u>Section 7</u>.

## 3. BENEFIT RECONCILIATION.

3.1. Supplier shall provide the "Benefit Levers File", at the Company Client level (i.e., all benefits for a given client) and benefit detail level (i.e., all clients that have a given benefit), all benefit details (including all rules, tables, pricing, networks, drug safety checks, and other rules required to adjudicate a Claim) that are used to process a claim to enable Company to reconcile such information in Company's systems with such information in the Supplier Systems. To the extent Company requires additional benefit reconciliation information or reports not otherwise provided for in the Agreement and not currently provided by Supplier, Company shall utilize project request procedures.

## 4. ELIGIBILITY DATA ADMINISTRATION

4.1. <u>Coordination</u>. Supplier shall undertake such efforts as shall be necessary to ensure that Eligibility Data is accurately entered into the Claims Processing System in accordance with this <u>Schedule A-1</u>.

4.2. <u>Eligibility Data Fields</u>. Supplier shall provide and maintain the Claims Processing System in a manner that permits the implementation of all Eligibility Data fields used by Company as of the Effective Date and, subject to project request procedures, such other Eligibility Data fields as Company reasonably may request from time to time. Supplier shall ensure that appropriate validation exists so as to minimize the possibility of incorrect or invalid Eligibility Data input.

4.3. <u>Eligibility Data Transmission and Implementation</u>.

4.3.1. <u>Receipt of Eligibility Data</u>. Supplier shall receive Eligibility Data from Company for each Company Plan in one or more mutually agreed to Company-specified formats, including all existing formats used by Company; provided, however, Eligibility Data not provided by Company in the Supplier Format

Confidential and Attorneys' Eyes Only                                                                                           DSTPS 000725

shall be subject to project request procedures to account for Supplier's conversion efforts. At Company's request, Supplier shall accommodate, and provide assistance to Company in respect of, Company's transition to a single, Company-specified Eligibility Data transmission format. Supplier shall receive Eligibility Data from Company in any of the following means of transmission (as determined by Company on a case-by-case basis):

   a. Electronic. Company may provide Supplier with files containing Eligibility Data electronically.

   b. Manual. Company may provide Supplier representatives with eligibility override transactions by telephone, electronic mail and such other mutually agreed upon means for entry into the Claims Processing System by such Supplier representatives.

   c. Online. Supplier shall provide an on-line and/or Web-based tool that enables online access to process Eligibility Data changes and additions received from Company on a real time basis.

4.3.2. Loading Of Eligibility Data. Without limiting Supplier's obligations pursuant to Section 1.6 of the Agreement, Supplier shall provide and maintain all personnel and system resources necessary to permit the accurate loading, updating, maintaining and implementation of daily (or upon such other frequency as otherwise requested by Company) change Eligibility Data in the Claims Processing System, including manual adjustments to eligibility termination end dates for Company Clients and Company Customers. Daily change Eligibility Data files transmitted electronically by Company to Supplier by 5:00 a.m. (Eastern Time) shall be loaded by Supplier by not later than ten (10) hours following receipt and Supplier shall load any other daily change Eligibility Data file transmitted by Company within ten (10) hours of the transmission thereof; provided, however, that Supplier shall commence loading of files transmitted by Company to Supplier between 10:00 a.m. (Eastern Time) and 2:00 p.m. (Eastern Time) after 2:00 p.m. (Eastern Time) in the order received during such period; provided further that Supplier shall promptly communicate with and provide updates to Company regarding the expected loading of such other files. Supplier shall load complete eligibility replacement files within such timeframes as Company shall reasonably specify pursuant to SLA A12 in Schedule B-2 to the Statement of Work.

   a. Loading Issues. Supplier shall implement procedures to identify potentially inaccurate, incomplete or problematic Eligibility Data files, in which case Supplier shall stop the file load/update into the Claims Processing System, immediately communicate with Company and work with Company to resolve the issues prior to completing the load of such Eligibility Data into the Claims Processing System.

4.3.3. <u>Eligibility Data Transactions Reports</u>. Supplier shall deliver to Company Company-specified files and reports on a frequency determined by Company that set forth all Eligibility Data transactions recorded in the Claims Processing System and indicate the transactions that were accepted and any errors that occurred. Supplier and Company shall mutually agree upon the format for such reports. Supplier also shall provide email confirmation to Company, in accordance with Company's instructions, to confirm that Supplier has completed the loading of Eligibility Data.

4.3.4. <u>Eligibility Data Files</u>. Supplier shall deliver to Company such Company-specified extracts, files and reports as Company shall require, and on a frequency determined by Company, that Company will use for a variety of downstream processes.

4.3.5. <u>Testing</u>. Supplier shall conduct testing to verify the accuracy and completeness of Eligibility Data loading in accordance with testing requirements and procedures mutually agreed by Company and Supplier. With respect to Eligibility Data files transmitted electronically to Supplier, Supplier shall complete such testing within the time frame for loading Eligibility Data as provided in <u>Section 4.3.2</u>. Notwithstanding the performance of such tests and reporting of test results to Company, Supplier shall remain solely responsible for performing its obligations pursuant to this <u>Schedule A-1</u> accurately and in a timely manner.

4.3.6. <u>Communication of Test Results</u>. Supplier shall report all findings and results from such testing to Company within twenty-four (24) hours of the completion of testing. Supplier and Company shall mutually agree upon the format for such testing reports.

4.3.7. <u>Testing by Company</u>. Supplier also shall support Company's independent testing of the accuracy of Eligibility Data in the Claims Processing System, and the interaction of such Eligibility Data with Company's systems. Supplier shall provide test environments for such purposes as required by <u>Exhibit 6</u> to the Agreement and by <u>Schedule A-7</u>.

4.4. <u>Eligibility Data Loading Errors</u>.

4.4.1. <u>Intentionally omitted</u>.

4.4.2. <u>Intentionally Omitted</u>.

4.4.3. <u>Incorrect Claims Payment</u>. If an Eligibility Data error results in an incorrect Claim payment, Supplier shall re-process such Claim in accordance with <u>Section 5</u> and shall effect any necessary payment adjustment in accordance with <u>Section 5</u>. Subject to <u>Sections</u> 12 and 1.6 of the Agreement and consistent with <u>Section 10</u> of the Statement of Work, Supplier, and not Company, shall be

Confidential and Attorneys' Eyes Only

solely responsible for any Loss resulting from an incorrect Claim payment to the extent caused by Supplier's error.

4.5. Eligibility Data Policies and Procedures. Supplier shall establish and utilize such policies and procedures and take such other actions as shall be necessary to ensure that Eligibility Data loads into and updates in the Claims Processing System are provided in accordance with this Schedule A-1 and all related Service Levels. Supplier shall provide a copy of such policies and procedures to Company upon Company's request and at least two times per year. Supplier shall modify such policies and procedures as necessary to address and resolve any concerns and issues raised by Company with respect thereto.

4.6. Recovery Program. Supplier shall assist Company with respect to Company's implementation of programs to secure reimbursement from Company Customers deemed not eligible for coverage, in whole or in part, after Claim payment has been made (and Supplier shall not otherwise take any action to seek reimbursement from any Company Customer without Company's prior written approval). In addition to other support requested by Company, Supplier shall provide the following support Services, or, at Company's option, Company may instead utilize the applicable self-service tools set forth on Schedule A-7 which will enable Company to:

4.6.1. Identify Company Customers whose eligibility was retro-terminated, whose eligibility effective period was decreased, or who are otherwise impacted by changes in Eligibility Data that resulted in an excess Claim payment; and

4.6.2. Identify all Paid Claims for Company Customers with respect to or during an ineligible period.

4.7. Training. Supplier shall provide initial and ongoing training for Company personnel (and other Company-identified Persons) with respect to the transmission of Eligibility Data to Supplier, the loading of Eligibility Data in the Claims Processing System, and the conduct of testing and ongoing monitoring of Eligibility Data in the Claims Processing System. Supplier shall provide such training in accordance with Section 7.

## 5. CLAIMS PROCESSING AND ADJUDICATION

5.1. General Requirements. Supplier shall provide Company with Claims processing and adjudication services for all Claims under Company Plans.

5.2. Supplier shall maintain processing system in accordance with the requirements set forth in this Statement of Work and the Agreement.

5.3. Standards.

5.3.1. Requirements. Supplier shall accurately process Claims in accordance with:

a. Applicable Law;

Confidential and Attorneys' Eyes Only                                                DSTPS 000728

  b. The most current HIPAA-mandated standards;

  c. The NCPDP D.0 standard, where applicable;

  d. Any future applicable NCPDP format requirements;

  e. Company-approved requirements, including (i) applicable Benefit Plan Design requirements, including all step edits; (ii) current Eligibility Data; (iii) confirmation that the prescribing Provider is appropriately credentialed and not excluded; (iv) as set forth in Schedule A-3, requirements related to DUR and Company prior authorization determinations, including coordinating with Company's systems and databases that support, or relate to, the adjudication function; (v) the requirements of applicable Company clinical programs, including medical benefits integration programs; (vi) Company override policies; (vii); Company compliance requirements, and (viii) other Company Policies; and

  f. Such additional requirements as reasonably specified by Company from time to time and agreed to by Supplier.

 5.3.2. Changes in Standards. Supplier shall integrate and implement (including, to the extent necessary, working with system vendors and Participating Network Pharmacies) new versions of standards required by Sections 5.3.1(a), (b), (c) and (d) as expeditiously as possible after the release of such new versions of standards, the timing of such releases to be coordinated to the extent practicable with the timing of Company's release of new versions of such standards, and in all cases within the time period required by applicable Law.

 5.3.3. Remediation. In the event Company identifies the need to remediate the processing of Claims for a Company Client(s) or Company Customer(s) in connection with a Company compliance, Company Policy or other requirement, Supplier shall provide Company with the information requested, reprocess such Claims and provide applicable reports in compliance with Cigna's timeframes and the timing requirements of the applicable Governmental Body.

5.4. Claim Submission.

 5.4.1. Direct Company Customer Reimbursement.

  a. Supplier shall produce and mail: (i) a paper Claim reconciliation statement together with a check for the adjudicated reimbursement amount; (ii) requests for information for Claims that are ineligible for payment due to incomplete information; or (iii) if Claim payment is denied, a written notice of determination inclusive of appeal rights consistent with all applicable Laws. Supplier shall issue and mail Company Customer reimbursement payments each Business Day and in any event within one (1) Business Day of the date on which Supplier adjudicates such Claim. All Communications

pursuant to this Section 5.4.1.b shall be made only in accordance with Section 7.6 of the Agreement.

5.4.2. Claims from Participating Network Pharmacies.

a. Company shall require the Participating Network Pharmacies to send Claims to Supplier, at the expense of the Participating Network Pharmacies, via online point-of-sale terminals, completed Claims on the universal Claim form, and/or encrypted compressed electronic data files containing the Claims information. Claims data not provided via the online point-of-sale terminals shall be sent to:

> Argus Health Systems, Inc.
> 1300 Washington St.
> Kansas City, Missouri 64105-1433

b. Supplier shall provide online, real-time Company Customer Eligibility Data and Benefit Plan Design information to each Participating Network Pharmacy, upon Supplier's receipt of each Claim from a Participating Network Pharmacy. Supplier shall electronically communicate to Participating Network Pharmacies the following information online, in real-time, at the point of sale: (i) the Claim status, (ii) Cost Share, (iii) applicable DUR and safety edits, including as required pursuant to Schedule A-3, and (iv) and other messages reasonably agreed upon by Supplier and Company as part of the Claim adjudication process consistent with NCPDP and HIPAA. In addition to the foregoing requirements, with respect to Claims (and such other Claims as Company may from time to time specify), Supplier shall provide (A) the difference between the Cost Share for the Covered Drug dispensed and the lowest priced Generic Drug version of that Covered Drug that is therapeutically equivalent and bioequivalent at the Participating Network Pharmacy, (B) preferred alternative substitution opportunities as defined and approved by Company in writing (including Generic Drug substitution), and (C) Formulary products. The Parties shall cooperate in good faith and mutually agree to a process for applying the items required by the preceding sentence to all Claims if and to the extent requested by Company.

c. Supplier shall maintain a process to load Eligibility Data, and implement revisions to Eligibility Data and associated reimbursement rates, into the electronic claims processing and adjudication systems of Participating Network Pharmacies in accordance with Company's instructions and requirements subject to Section 10 of the Statement of Work and the requirements of Schedule A-5 and Schedule C.

    d.  Supplier shall reimburse the Participating Network Pharmacies for Claims (exclusive of the applicable Cost Share) in accordance with Company's instruction.

    e.  Supplier shall process and pay all Claims on a frequency established by Company. Supplier shall be solely responsible for all interest and other penalties, if any, due on late paid Claims to the extent due to Supplier's error.

5.4.3. <u>Claims from Participating Network Pharmacies</u>. Supplier shall process Claims for Covered Drugs dispensed by Participating Network Pharmacies in accordance with the following:

    a.  Supplier shall load the reimbursement rates and reimbursement/pricing logic applicable to Claims from Participating Network Pharmacies into the Claims Processing System within one (1) Business Day for reimbursement rates and three (3) Business Days for reimbursement/pricing logic requests, respectively, after receipt of such information from Company pursuant to SLA A-18 for reimbursement rates and SLA A-20 for reimbursement/pricing logic in <u>Schedule B-2</u> to the Statement of Work; *provided, however,* that where the volume of changes requested and the time required to load such reimbursement rates and / or reimbursement/pricing logic significantly exceeds the number of changes Supplier makes in the ordinary course with respect to number of rate changes or logic requests the Parties shall equitably adjust the respective one (1) and three (3) Business Day deadlines to take into account the additional time reasonably required by Supplier to complete the loading of such reimbursement rates and reimbursement/pricing logic applicable to Claims from Participating Network Pharmacies into the Claims Processing System;

    b.  Intentionally omitted

    c.  Supplier shall make available to Company Web-based access that enables Company to validate and view pharmacy information in the Supplier's processing system;

    d.  Supplier shall process and pay Claims submitted by POS or direct member reimbursement Claims (*i.e.*, paper Claims) for Covered Drugs dispensed by Direct Pharmacies in accordance with the generally applicable requirements of this <u>Schedule A-1</u>; and

    e.  Supplier shall pay each Participating Network Pharmacy for Covered Drugs dispensed to Company Customers in accordance with the billing cycle set forth in Section 10.1(a)(i) of the Statement of Work.

    f.  Supplier shall maintain and enhance Company Client pricing adjudication processing to correctly charge Company Clients as required by the

Confidential and Attorneys' Eyes Only

applicable Company Client arrangement. Supplier shall develop and maintain processing that correctly applies applicable Company Client discounts by drug category as defined by Company. Upon Company request, Supplier shall complete work plans to enable enhancements to Company Client pricing logic to include incremental drug categories and application of Company Client MAC levels that vary by pharmacy chain. With Company review and approval of work plans, Supplier shall build, test and implement work plans to complete enhancements.

5.5. Claim Edits. Supplier shall not make any edits in Claims Processing System in respect of Company Plans, Company Clients, or Company Customers other than at Company's request. Company's view access into the Claims Processing System shall permit Company to identify the edits that were in effect as of the date and time on which any Claim was processed through.

5.6. Accumulators. At a frequency determined by Company, including on a real time basis, Supplier shall apply and share accumulator information via electronic interface with systems of Company, vendors or other Persons.

5.7. Subrogation. Supplier shall cooperate with any subrogation efforts undertaken by Company, or by third party vendors on Company's behalf, including by permitting such vendor to access information necessary to provide such services.

5.8. Coordination of Benefits.

  5.8.1. Supplier shall utilize and apply Company's coordination of benefits ("COB") payment requirements, as communicated by Company to Supplier, for all Claim adjudications, in each case applying the applicable COB where Company is the primary or secondary payor, based on applicable "order of benefits" data provided by Company.

  5.8.2. To the extent available, Company shall provide data regarding primary and secondary payor status to Supplier either electronically or by paper information.

  5.8.3. Intentionally omitted.

  5.8.4. If a Participating Network Pharmacy submits data with a Claim that is inconsistent with applicable order of payor information provided by Company to Supplier, Supplier shall adjudicate (*i.e.*, pay or reject) the Claim in accordance with the information provided by Company.

  5.8.5. As directed by Company, Supplier shall process secondary payments for all drugs covered primary under Government Health Programs (including Medicare Part D and State Health Care Programs) and commercial Company Plans, provided that Supplier receives a copy of the applicable primary explanation of benefits ("EOB"); *provided, however,* that Supplier shall not require receipt of the applicable primary EOB in order to process Claims under Medicare Plans

where coverage is available under employer group waiver plan plus wrap products or 800 series employer group plus wrap products, and Supplier shall process such Claims as a single transaction on a real-time basis. Supplier shall investigate and respond appropriately to any request by a payor, including a State Health Care Program, for reimbursement by Company or a Company Client for the amount, as asserted by such payor, which (a) the payor paid as primary for a Covered Drug dispensed by a pharmacy to a Company Customer, and (b) Company or such Company Client should have paid as primary.

5.9. <u>Claims Corrections/Errors</u>. Subject to <u>Sections 12</u> and <u>1.6</u> of the Agreement and consistent with <u>Section 4.2</u> of the Agreement, Supplier, and not Company, shall be solely responsible for any Loss resulting from an incorrect Claim payment to the extent caused by Supplier's error. In accordance with a schedule determined by Company and unless Company otherwise directs Supplier, Supplier shall manage and carry out Claims corrections and adjustments for inaccurately or incorrectly processed Claims as follows:

    5.9.1. Supplier shall correct all Claims processing errors that do not require changes to the Claims Processing System coding within the time period set forth in Schedule B-2, including by accurately reprocessing and/or making applicable financial adjustments to the Claims pursuant to SLA A07 in <u>Schedule B-2</u> to the Statement of Work. Within one (1) Business Day of the identification of any Claims processing error that requires a change to the Claims Processing System coding, Supplier shall prepare and deliver to Company an impact plan that provides for the implementation of all necessary corrections as promptly as practicable;

    5.9.2. Upon identification of a Claims processing error that could potentially impact more than one Claim or more than one Company Customer, Supplier shall no later than five (5) Business Days after identification of such error generate and provide to Company an impact report, including a corrective action plan, that identify at a minimum: (i) all Company Customers impacted; (ii) all Claims impacted; (iii) all drugs impacted, if applicable; (iv) the root cause of the error; (v) the mitigation steps that were/are being/will be taken to correct the situation (which shall be subject to Company's approval); and (vi) the measures and procedures that were/are being/will be implemented to prevent this type of error in the future (which shall be subject to Company's approval) pursuant to SLA A08 in <u>Schedule B-2</u> to the Statement of Work. In the event that Company does not accept Supplier's corrective action plan, Company shall give written notice to Supplier specifying its objections in reasonable detail; and, within three (3) Business Days, Supplier shall propose a revised corrective action plan that addresses Company's objections; and Company shall either accept such revised corrective action plan or provide written notice of any further objections to Supplier. This process shall be repeated as necessary until Supplier has delivered a corrective action plan that is reasonably acceptable to Company. Supplier shall implement any such corrective action plan (or any portion

CIGNA PROPRIETARY AND CONFIDENTIAL
Schedule A-1 – Page 12

Confidential and Attorneys' Eyes Only        DSTPS 000733

thereof) immediately after such plan (or portion thereof) is approved by Company pursuant to this Section 5.9.2;

5.9.3. Supplier shall, if requested by Company, generate and mail Company-provided/approved reimbursement letters and Company-approved Company Customer reimbursement checks to affected Company Customers;

5.9.4. Supplier shall, if requested by Company, generate and mail Company-provided/approved recoupment letters to affected Company Customers;

5.9.5. Supplier shall provide to Company within twenty-four (24) hours after reprocessing and/or making the applicable financial adjustments to the Claims, a report identifying the "before and after" status of the Claims and all Claims values;

5.9.6. Supplier shall track and administer Claim payment and overpayment recovery as a result of Claim processing errors and shall provide Company with an online or Web-based tool that enables online access to such tracking data;

5.9.7. Without limiting the generality of the foregoing in this Section 5.9, with respect to MAC List pricing, if it is determined that an error was made in a MAC program or logic, or, the application of a MAC or MAC List, including where the MAC price was only applied to a portion of products under the Generic Price Indicator list ("GPI") or National Drug Code list; then, consistent with Section 10 of the Statement of Work, to the extent the error was caused by Supplier, Supplier shall be at full financial risk for the error and shall reimburse or credit Company for any Losses incurred by Company, Company Clients or Company Customers as a result thereof.

5.9.8. Company and Supplier shall develop policies and procedures that address communications between the Parties to coordinate whether Company or Supplier is correcting a Claims processing error in an effort to avoid duplication of effort.

5.10. Claims Testing.

5.10.1. Testing. Supplier shall conduct testing of any new, or modification of an existing, administrative, clinical, or system program, or any modifications to the Claims Processing System (to the extent permitted by the Agreement), that is utilized in or affects Claims adjudication to confirm and assure accuracy. Such testing shall, at a minimum, include each of the requirements set forth in Section 2.1.3 and confirmation of satisfactory performance of all other Claims processing functions in accordance with Supplier's obligations under the Agreement, including all related Service Levels.

5.10.2. Timing of Testing. Unless otherwise mutually agreed in writing, Supplier shall complete all testing required pursuant to Section 5.10.1 within a reasonably

CIGNA PROPRIETARY AND CONFIDENTIAL
Schedule A-1 – Page 13

Confidential and Attorneys' Eyes Only                                                                DSTPS 000734

sufficient time in advance of implementation of such new or modified program or the Claims Processing System or other system modification to permit Company to conduct such testing as Company determines is necessary in order to approve such change. Supplier shall provide Company with notice of such planned tests not less than thirty (30) calendar days prior to the commencement of such testing or for such shorter notice period as otherwise required to permit Cigna to conduct such testing as Cigna determines is necessary in order to approve such change.

5.10.3. <u>Communication of Test Results</u>. Supplier shall report all findings and results from such testing to Company within one (1) Business Day of the completion of testing. Supplier and Company shall mutually agree upon the format for such testing reports. Notwithstanding the communication of such testing results, Supplier shall remain solely responsible for performing its obligations pursuant to this <u>Schedule A-1</u>.

5.10.4. <u>Testing by Company</u>. Supplier also shall support Company's independent testing of the accuracy of changes subject to this <u>Section 5.10</u>, and the interaction of such changes with Company's systems. Supplier shall provide test environments for such purposes as required by <u>Exhibit 6</u> to the Agreement and by <u>Schedule A-7</u>.

5.10.5. <u>Access to Supplier Employees</u>. Upon reasonable request by Company, Supplier shall make appropriate personnel available to discuss with Company any concerns Company may have regarding the results of Claims testing conducted under this <u>Section 5.10</u>.

5.10.6. <u>Error Correction</u>. Supplier shall correct any inaccuracies, mistakes or omissions indicated by testing conducted pursuant to <u>Section 5.10.1</u>, whether identified by Supplier or by Company, within the applicable TATs set forth in <u>Schedule B-2-A, or if not specified in Schedule B-2-A, use commercially reasonable efforts to correct within one (1) Business Day,</u> and in any event prior to the effective date of such change.

5.11. <u>Claim Adjudication Testing</u>. As further provided in <u>Schedule A-3</u> and <u>Schedule A-6</u>, Supplier shall make available to Company a Web-based tool that enables online access for Company's use in conducting trial adjudications of test or live Claims (including both individual Claims and multiple Claims as part of a test set). Such testing shall enable Company to determine the adjudication outcome of the applicable test Claims under scenarios as specified by Company. Supplier shall also provide an online or Web service-based, and a batch-based, version of this functionality that can be called by various Company processes.

5.12. <u>Training</u>. Supplier shall provide initial and ongoing training for Company personnel (and other Company identified Persons) with respect to matters related to the types of

Confidential and Attorneys' Eyes Only                                                                                                            DSTPS 000735

changes contemplated by Section 5.11, and the conduct of testing with respect thereto. Supplier shall provide such training in accordance with Section 7.

5.13. Claims Files and Extracts. Supplier shall deliver to Company such Company-specified extracts, files and reports as Company shall require, and on a frequency determined by Company, that Company will use for a variety of downstream processes; provided, however that if such extract, file or report is in a form not previously provided by Supplier, Supplier may notify Company and the Parties shall discuss Company's request.

5.14. Escheat Laws. Supplier shall provide all data requested by Company in order for Company to satisfy any and all escheat obligations that are or may become the responsibility of Company or that relate to Supplier's handling of the escheat laws and obligations that directly or indirectly arise as a result of or in connection with this Schedule A-1 or the Agreement. Such data shall include account numbers, check numbers, issue dates, dollar amounts, company names/individual names, street addresses, payment types, and other data requested by a state. Such information shall be provided by Supplier on a quarterly basis, or upon such other frequency as mutually agreed by the Parties, in a Company-specified electronic format.

## 6. E-PRESCRIBING.

6.1. Definition of e-Prescribing. "e-Prescribing" means the electronic transmission of certain clinical and economic decision support information, including Company Customers' eligibility, Benefit Plan Design information and medication claims history, to authorized prescribers on a real-time basis at the point of care, including in order to enable prescriptions to be electronically routed to the Company Customer's chosen Participating Network Pharmacy.

6.2. Standards. All e-Prescribing services shall be provided in accordance with the standards/guidance by NCPDP, Certification Commission for Healthcare Information Technology ("CCHIT"), National Committee on Vital and Health Statistics ("NCVHS"), CMS and any other similar or successor Governmental Body or standards organization.

6.3. e-Prescribing Transactions.

6.3.1. Supplier shall make available to Company real-time Company Customer-level e-Prescribing transactions as these standards are adopted by NCPDP or CMS and become available as an industry standard.

6.3.2. Supplier shall maintain relationships with such e-Prescribing vendors, including required systems interfacing with such vendors' systems, as necessary to provide the e-Prescribing transactions approved by Company. Supplier shall ensure that such vendors shall have access to the Data and Information necessary to correctly and accurately route transactions to the appropriate Person when received from Providers. Such Data and Information shall include

Confidential and Attorneys' Eyes Only

real time access to Eligibility Data, Claims history, Formulary data, and other Company-specified Data and Information.

6.3.3. Supplier shall consult with Company, upon Company's request, with respect to the e-Prescribing transactions, including the availability, development, implementation, and operation of various e-Prescribing transactions.

6.3.4. Supplier shall incorporate all Company-developed Care Management and other adherence initiatives, custom messaging, and custom reporting into e-Prescribing transactions, subject to project request procedures.

6.3.5. Supplier shall provide a monthly report to Company that identifies the number of e-Prescribing transactions processed. Company shall specify the data points to be included in such report, based on the availability of such data points from a pharmacy benefits management industry standard perspective, and the parties shall mutually agree upon the format.

6.4. <u>Use of Information</u>. Without limiting the generality of <u>Section 9.3</u> of the Agreement, Supplier shall ensure that the transmission of any Data and Information in connection with e-Prescribing is done only with all necessary Company Customer consents and in accordance with all applicable Laws, including Privacy Laws.

## 7. TRAINING

7.1. Subject to and consistent with <u>Sections 2.1.12</u>, <u>4.7</u> and <u>5.12</u>, Supplier shall provide training for Company personnel, (including all such personnel specified by Company) and other Company-identified Persons, in accordance with the following, subject to the quantity and frequency of training (and applicable rates for additional training) set forth in Exhibit 14 to the Agreement:

7.1.1. <u>When Training Required</u>. Supplier shall provide initial training to Company personnel (and other Company-identified Persons) as set forth in this <u>Schedule A-1</u>. Supplier shall provide initial training and training material to Company personnel (and other Company-identified Persons) regarding the Claims Processing System as well as ongoing training related to planned modifications and/or updates to the Claims Processing System, including all such modifications and/or updates that involve corresponding modifications and/or updates to the online and/or Web-based tools utilized by Company personnel to access the Claims Processing System.

7.1.2. <u>Timing; Manner; and Location</u>. Supplier shall provide such training in a manner, location and at such times, in each case, as specified by Company; *provided, however*, that each such training with respect to any changes to the Claims Processing System shall be completed a sufficient period of time in advance of the effective date of such change in order to provide an adequate opportunity for affected Company personnel (and other Company-identified Persons) to receive adequate training to avoid any disruption to Company's

business as a result of such change. Supplier shall at all times during the Term and any Termination Assistance Period provide Company with Supplier's most current training and training technology available. Supplier shall use commercially reasonable efforts to maintain Supplier training and training technology at prevailing industry standards.

## 8. ONLINE CLAIMS RETENTION

8.1. Supplier shall provide a online and/or Web-based tool that enables both online and mobile access to Claims history and provides data feeds of Claims history to Company's systems, including accumulator files and systems for the integration of prescription drug and medical claim information, in accordance with the following requirements (and any additional requirements under applicable Law):

8.1.1. Commercial Plans.

    a. Claims Retention. Claims history records shall be maintained and available on a real-time basis to Company for a minimum of twenty-five (25) calendar months from the date of such Claim's adjudication (the "Claim Online Retention Period").

    b. Claims Archival. Supplier may schedule for archival Claims history records at any time after the last day of a designated Claim's Claim Online Retention Period; *provided, however*, that Supplier shall provide Company with not less than five (5) Business Days' notice of the scheduled archival date for the designated Claims and Company shall have the right to monitor Supplier's archival activities.

    c. Archived Claim Retrieval Procedure. Within three (3) Business Days of the date of a request from Company to reinstate any archived Claim(s), up to a maximum number of 10,000 Claims requested per day, which request shall identify the Claim(s) to be reinstated, Supplier shall retrieve from the archive and reinstate such Claim(s) on the on-line system, so that Company's real time access to such Claims history is restored; provided such reinstatement may be delayed by the amount of time elapsed during scheduled system processing or maintenance. For requests for reinstatement by Company exceeding 10,000 Claims requested per day, Supplier shall provide to Company the timing for fulfillment of such request within one (1) Business Day.

Confidential and Attorneys' Eyes Only       DSTPS 000738