UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR.,<br><br>                  Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY et al.,<br><br>                  Defendants. | Civ. A. No. 16-cv-1702 (JAM)<br><br>June 16, 2022 |

**REPLY IN SUPPORT OF DEFENDANT
CIGNA HEALTH AND LIFE INSURANCE COMPANY'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, Connecticut 06103
860-240-2945

*Attorneys for Defendant Cigna Health and Life Insurance Company*

## TABLE OF CONTENTS

Page

I. Introduction ........................................................................................................................ 1
II. CHLIC did not conduct the affairs of Optum or Argus. .................................................... 2
III. Summary judgment is warranted on Plaintiffs' RICO claims based on alleged misrepresentations in plan documents. ............................................................................... 7
IV. Summary judgment is warranted on Plaintiffs' RICO claims based on alleged misrepresentations at the point of sale. .............................................................................. 8
V. The Court should grant summary judgment on the RICO conspiracy claim. .................. 10
VI. Conclusion ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Seigel*,
    312 F. Supp. 2d 260 (D. Conn. 2004) ....................................................................................... 6

*Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*,
    No. 13-cv-03422 (D. Colo. Feb. 10, 2014) ............................................................................... 5

*Chisolm v. TransSouth Fin. Corp.*,
    194 F.R.D. 538 (E.D. Va. 2000) ............................................................................................. 10

*Counts v. General Motors, LLC*,
    No. 16-cv-12541, 2018 WL 5264194 (E.D. Mich. Oct. 23, 2018) ........................................... 5

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) ..................................................................................................... 5

*Gomez v. Guthy-Renker, LLC*,
    No. EDCV 14-01245 JGB (KKx), 2015 WL 4270042 (C.D. Cal. July 13,
    2015) ............................................................................................................................... 1, 2, 4

*Klay v. Humana*,
    382 F.3d 1241 (11th Cir. 2004) .............................................................................................. 10

*Lockheed Martin Corp. v. Boeing Co.*,
    357 F. Supp. 2d 1350 (M.D. Fla. 2005) .................................................................................... 5

*Muench Photography, Inc. v. Houghton Mifflin Hardcourt Pub. Co.*,
    No. 09 CV 2669(LAP), 2013 WL 4464002 (S.D.N.Y. Aug. 21, 2013) ................................. 10

*Negron v. Cigna Health & Life Ins. Co.*,
    300 F. Supp. 3d 341 (D. Conn. 2018) ................................................................................... 5-6

*Palmieri v. Lynch*,
    392 F.3d 73 (2d Cir. 2004) ................................................................................................... 1, 8

*Project 74 Allentown, Inc. v. Frost*,
    143 F.R.D. 77 (E.D. Pa. 1992), *aff'd*, 998 F.2d 1004 (3d Cir. 1993) ....................................... 9

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................................................. 4, 6

*Reynolds v. Condon*,
    908 F. Supp. 1494 (N.D. Iowa 1995) ....................................................................................... 3

-iii-

*Shepard v. DineEquity, Inc.*,
   No. 08-2416-KHV, 2009 WL 8518288 (D. Kan. Sept. 25, 2009) ............................................ 4

*Strong & Fisher Ltd. v. Maxima Leather, Inc.*,
   No. 91 CIV. 1779 (JSM), 1993 WL 277205 (S.D.N.Y. July 22, 1993) ................................... 6

*Town of Islip v. Datre*,
   245 F. Supp. 3d 397 (E.D.N.Y. 2017) ................................................................................... 9

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ................................................................................................ 10

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010) ................................................................................................ 10

*Vickers Stock Research Corp. v. Quotron Sys., Inc.*,
   No. 96 CIV. 2269(HB), 1997 WL 420265 (S.D.N.Y. July 25, 1997) ........................... 3, 5, 6, 7

**Statutes**

Racketeer Influenced and Corrput Organization Act ("RICO"),
   18 U.S.C. § 1962(c) ..................................................................................................... *passim*

I.    **INTRODUCTION**

Plaintiffs' Opposition fundamentally changes their pleaded RICO theory in two respects, neither of which salvages Plaintiffs' RICO claims.

First, Plaintiffs now contend that Optum and Argus were not RICO co-conspirators but rather "passive instruments or victims" who were "in the dark" about the alleged RICO scheme. *See* ECF 435 ("Opp.") at 1, 4 n.2, 25 n.10.  This new position contradicts Plaintiffs' theory of the past six years, that CHLIC, Optum, and Argus "conspired" to engage in a "Clawback Scheme." ECF 198 ¶ 298.  Plaintiffs now abandon their RICO conspiracy claim (Count VIII) and seem to recognize that there is no evidence of any conspiracy to violate RICO.  *See* ECF 427-1 ("Mot.") at 26–28.  But in shifting their story this way, Plaintiffs sabotage their substantive RICO claims, too.  Plaintiffs' new theory is essentially that the only explanation for Optum's and Argus's services to CHLIC—because there was no conspiracy among these parties—is that CHLIC was "conducting the affairs" of Optum and Argus in violation of RICO.  Courts widely reject that argument.  *See infra* Part II.  "RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client."  *Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01245 JGB (KKx), 2015 WL 4270042, at *5 (C.D. Cal. July 13, 2015).  The absence of evidence suggesting anything more than arms-length service contracts between CHLIC, Optum, and Argus provides the clearest basis to grant CHLIC's Motion.

Second, Plaintiffs abandon their RICO claims to the extent they are based on alleged misrepresentations in Plaintiffs' plan documents.  *See Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (holding that arguments not raised in opposition to summary judgment are waived). CHLIC's Motion addressed at length the problems with Plaintiffs' attempt to base their RICO claims on alleged misrepresentations in plan documents.  *See* Mot. 17–23.  Instead of defending that theory, Plaintiffs pivot to an alternative theory predicated on alleged misrepresentations at the

1

"point of sale," *i.e.*, at the pharmacy. *See* Opp. 30–35. But that alternative theory cannot survive summary judgment, either. Plaintiffs offer no evidence regarding their interactions with pharmacists from which a jury could find Plaintiffs suffered injury "by reason of" an alleged RICO violation, and the record forecloses Plaintiffs' plea to infer RICO causation from the mere fact of payment. Under either theory, CHLIC is entitled to summary judgment.

The balance of Plaintiffs' Opposition argues that CHLIC violated the terms of Plaintiffs' prescription drug benefit plans. *See, e.g.*, Opp. 8–12, 36–37. That argument is a red herring. The fact that a trial is necessary to resolve the parties' disputes over certain terms in Plaintiffs' benefit plans explains why CHLIC did not move for summary judgment on Plaintiffs' ERISA claims. But it does not change the fact that a claim for benefits under ERISA cannot sustain allegations of racketeering. The Court should therefore grant summary judgment for CHLIC on Plaintiffs' RICO claims because there is no evidence that CHLIC conducted the affairs of Optum or Argus or that Plaintiffs were injured by reason of a RICO violation.

## II. CHLIC DID NOT CONDUCT THE AFFAIRS OF OPTUM OR ARGUS.

Plaintiffs' new articulation of their RICO claims fits a familiar pattern that courts correctly recognize as insufficient: "Some provider of services ('Provider') has a business client ('Business'). Completely unbeknownst to Provider, Business is conducting its affairs fraudulently. Someone ('Injured Party') is injured by Business's fraudulent practices and wishes to seek compensation from Business." *Gomez*, 2015 WL 4270042, at *5. Here, Optum and Argus provide services to CHLIC. ECF 427-2 ("SOF") at ¶¶ 17, 29, 32. Plaintiffs contend that Optum and Argus were "in the dark" about CHLIC's alleged fraud. Opp. 1. Plaintiffs claim they were injured by CHLIC's practices and seek compensation from CHLIC. The question in this case, then, is simple: "can a defendant accused of fraud be subjected to RICO liability simply on the basis of receiving routine commercial services from some other entity?" *Gomez*, 2015 WL 4270042, at *5.

2

Courts overwhelmingly hold that the answer is "no." "Despite the wide variety of approaches adopted by courts in interpreting the requirements of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Id.* at *11; *see, e.g.*, *Vickers Stock Research Corp. v. Quotron Sys., Inc.*, No. 96 CIV. 2269(HB), 1997 WL 420265, at *4 (S.D.N.Y. July 25, 1997) (granting summary judgment on RICO claim because evidence that "the parties had worked closely together to realize contractual goals" was insufficient); *Reynolds v. Condon*, 908 F. Supp. 1494, 1511 (N.D. Iowa 1995) (holding that a plaintiff could not "turn a client's demands upon a lawyer into 'conduct' of the law firm").

Plaintiffs' RICO claims are predicated on this widely-rejected theory. Plaintiffs admit that CHLIC, Optum, and Argus are completely separate and independent companies, with no overlap in management or ownership. ECF 436 ("Pls.' SOF Resp.") at 11 ¶ 16, 15–16 ¶ 28. It is undisputed that Optum and Argus were paid to provide services to CHLIC for the benefit of CHLIC's clients and customers but did not share in or receive any of the alleged "Clawback" amounts. *See id.* at 11 ¶¶ 17–18, 13 ¶ 23, 16 ¶ 29, 19 ¶ 36. Plaintiffs also contend that Optum and Argus were "in the dark" regarding the alleged "Clawback" scheme. Opp. 1. There is no evidence of other arrangements between CHLIC, Optum (part of CHLIC's competitor, UnitedHealth), or Argus. What's left, then, is a "routine contract" between allegedly faultless service providers (Optum and Argus) and their client (CHLIC). That cannot support a RICO claim.

Plaintiffs' attempts to avoid the weight of authority rejecting their RICO theory fall short. First, they attack a strawman by arguing that defendants are not "immune from RICO liability" simply "because their relationship was governed by a commercial contract." Opp. 28. That is not CHLIC's contention. CHLIC's position is that "a routine contract between a service provider and

3

its client," without more, cannot support RICO liability.  *Gomez*, 2015 WL 4270042, at \*11.

Second, Plaintiffs say they will "paint Argus and Optum as passive instruments or victims of [CHLIC]'s scheme" because they supposedly were "required" to provide certain services under their contracts with CHLIC.  Opp. 25 n.10; *see generally* Opp. (using the word "required" more than thirty times).  But Plaintiffs' spin is no substitute for evidence at summary judgment, and Plaintiffs have no evidence that Optum and Argus were "required" to do anything for CHLIC beyond the express terms of the routine contracts those highly sophisticated entities negotiated with CHLIC.  In fact, all the evidence is to the contrary: Optum's and Argus's only obligations to and relationships with CHLIC stem from their service contracts, and the only relationship that CHLIC has with either Optum or Argus is its respective contracts with each.  *See* Mot. 13–17.  Plaintiffs insist that Optum and Argus relied on information from CHLIC (for example, regarding applicable benefit designs and cost-share logic) in providing these services and agreed to keep that non-public, commercially sensitive information confidential.  *See, e.g.*, Opp. 4–5, 21–22.  But at most, that proves CHLIC was conducting its ***own*** affairs when it hired Optum and Argus as service providers and contracted to maintain the confidentiality of its ***own*** business information.  This fact cannot support a RICO claim.  *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (holding that RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs").

Third, Plaintiffs cite inapposite cases.  The vast majority were at the motion-to-dismiss stage—not summary judgment—and involved alleged enterprises with corrupt insiders who violated RICO and/or conspired with outsiders to violate RICO.[1]  This is true even for the few

4

---

[1] *See, e.g.*, *131 Main Street Assocs. v. Manko*, 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995) (alleging that defendants were members of an association-in-fact enterprise with "the common goal of defrauding the investor/partners and deceiving outside auditors and tax authorities"); *Shepard v. DineEquity, Inc.*, No. 08-2416-KHV, 2009 WL 8518288, at \*8 (D. Kan. Sept. 25, 2009) (alleging that defendants formed an association-in-fact enterprise and conspired to

cited cases involving enterprises alleged to be "passive instruments or victims" of a RICO scheme.[2] For example, in *First Capital Asset Management, Inc. v. Satinwood, Inc.* (cited at Opp. 19–22), the Second Circuit affirmed the dismissal of a RICO claim against a mother who allegedly helped her son conduct the affairs of his bankruptcy estate to "defraud the bankruptcy court and trustee." 385 F.3d 159, 178 (2d Cir. 2004). Though the mother was an outsider to the RICO enterprise, the court stated in *dicta* that she allegedly conducted its affairs only because she conspired with a corrupt insider (her son) to accomplish the fraud. *Id.* It has no bearing on this case, in which the RICO enterprises were independently functioning businesses that were supposedly kept "in the dark" about the alleged RICO scheme while providing their legitimate services to the RICO defendant—and now, all allegations of RICO conspiracy have been withdrawn. Not one of the Opposition's cases involves an independent legal entity enterprise that provided legitimate services to the RICO defendant while supposedly being kept "in the dark" about the alleged RICO scheme.

Fourth, Plaintiffs fail to distinguish CHLIC's case law. For example, Plaintiffs argue (at Opp. 26–27) that the Court cannot grant CHLIC's summary judgment motion under *Vickers* because the Court did not grant CHLIC's motion to dismiss under *Vickers*. But the Court ruled on CHLIC's motion to dismiss against the backdrop of a plausibly alleged "conspiracy between Cigna and OptumRx or other unnamed health insurance companies and PBMs." *Negron v. Cigna Health*

---

conduct the affairs of that enterprise in furtherance of a fraudulent scheme to provide misleading nutritional information); *Counts v. General Motors, LLC*, No. 16-cv-12541, 2018 WL 5264194, *8–10 (E.D. Mich. Oct. 23, 2018) (alleging that defendants formed an association-in-fact enterprise and conspired to conduct the affairs of that enterprise in furtherance of a fraudulent scheme to defeat emissions testing requirements); *see also* ECF 109-1, Cigna's Counterclaims in *Arapahoe Surgery Center, LLC v. Cigna Healthcare, Inc.*, No. 13-cv-03422 (D. Colo. Feb. 10, 2014), at ¶ 202 (alleging that SurgCenter and each individual ASC formed association-in-fact enterprises and "agreed to engage in the fraudulent dual pricing and fee forgiving schemes").

[2] *See, e.g.*, *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d Cir. 2001) (finding RICO's conduct element satisfied where the alleged enterprise was formally controlled by a RICO defendant and other defendants used that defendant to exert undue influence over the enterprise); *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1355 (M.D. Fla. 2005) (stating in *dicta* that defendants allegedly conducted the affairs of various association-in-fact enterprises of which they were allegedly members).

*& Life Ins. Co.*, 300 F. Supp. 3d 341, 367 (D. Conn. 2018). Those allegations failed, as Plaintiffs recognize, and their new theory is fundamentally different. Moreover, *Vickers* was decided at summary judgment; on CHLIC's motion to dismiss, Judge Eginton concluded that Plaintiffs' "relatively low hurdle" at the pleading stage made him "unable to 'decide definitively' that a defendant did not participate in the enterprise's affairs." *Id.* at 363–64 (citation omitted). Judge Eginton clearly left the door open to a different outcome on summary judgment, especially now that the undisputed record establishes, as in *Vickers*, that "the parties had worked closely to realize contractual goals but did not have a partnership or joint venture agreement and did not consider sharing profits or losses in any way." *Id.* Those facts are undisputed. *See* Pls.' SOF Resp. at 11 ¶¶ 16–17, 13 ¶ 23, 15–16 ¶¶ 28–29, 19 ¶ 36. Accordingly, this case is on all fours with *Vickers* and the same result is warranted.

Plaintiffs' expansive RICO theory would transform virtually any defendant accused of fraud into a racketeer. Any defendant who uses a third party's services could be said to have conducted the affairs of that third party with respect to the subject matter of their contractual arrangement, thereby opening the door to RICO liability. But that approach is "inconsistent with *Reves*" and the "rigorous approach" to RICO adopted by courts in the Second Circuit. *Allstate Ins. Co. v. Seigel*, 312 F. Supp. 2d 260, 275 (D. Conn. 2004) (rejecting the notion that RICO's conduct element is satisfied "any time a company is defrauded by the conduct of a defendant"); *see also Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 91 CIV. 1779 (JSM), 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993) (holding that even "substantial persuasive power to induce management to take certain actions" does not, by itself, satisfy RICO's conduct requirement).[3]

---

[3] Plaintiffs' suggestions (at Opp. 3, 29 and Pls.' SOF Resp. at 14 ¶ 25, 19–20 ¶ 37) that CHLIC conducted the affairs of Optum and Argus because it supposedly breached its contracts with Optum and Argus with respect to the matters at issue in this case finds no support in the record (indeed, there is no evidence either Optum or Argus agrees with

6

There is no genuine dispute that Optum and Argus only provided commercial services to CHLIC pursuant to routine, albeit complex, written service contracts which they negotiated at arms-length. That is not enough to prove a RICO claim. CHLIC's Motion should be granted.

### III.  SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' RICO CLAIMS BASED ON ALLEGED MISREPRESENTATIONS IN PLAN DOCUMENTS.

CHLIC detailed (at Mot. 17–23) why it is entitled to summary judgment on Plaintiffs' RICO claims to the extent they are based on alleged misrepresentations in their plan documents: *inter alia*, (1) there is no evidence that Plaintiffs (or any other party to their prescription drug transactions) relied on or otherwise suffered injury "by reason of" purported misrepresentations in plan documents; (2) CHLIC cannot be liable for alleged misrepresentations in Administrative Services Only ("ASO") plans that are attributable to plan sponsors, whom Plaintiffs do not even contend are part of the alleged RICO scheme; and (3) there is no evidence that CHLIC administered Plaintiffs' benefits in a manner inconsistent with the traditional/spread pricing that CHLIC believed each of the Plaintiffs' plan sponsors had requested.

Plaintiffs do not even attempt to defend a RICO theory predicated on alleged misrepresentations in plan documents. They acknowledge Plaintiffs' "unsurprising" testimony that they "did not read their 100-plus page plan documents" and offer no evidence that Plaintiffs relied on alleged misrepresentations in the plan documents or were injured "by reason of" such misrepresentations. Opp. 34; *see* Pls' SOF Resp. at 3–9 ¶¶ 6, 8, 10, 12, 13 (citing no evidence Plaintiffs relied on plan language at issue). Instead, Plaintiffs argue RICO causation based solely on alleged misrepresentations ***at the point of sale***. *See* Opp. 34 ("But Plaintiffs alleged—and the evidence described above shows—that they relied on misrepresentations at the point-of-sale when

Plaintiffs) or in the law. *See Vickers*, 1997 WL 420265, at *4 (disapproving of attempts to "'RICO-ize' contract claims").

7

they paid what they were told they owed for their prescriptions."); *see also id.* at 1–2, 3, 4, 27, 31. Because Plaintiffs have now abandoned their RICO claims based on alleged plan document misrepresentations, CHLIC is entitled to partial summary judgment with respect to that theory. *See Palmieri*, 392 F.3d at 87 (arguments not raised in summary judgment opposition are waived).

Beyond Plaintiffs' abandonment of this RICO theory, their Opposition offers no meaningful response to the role of ASO plan sponsors or CHLIC's understanding of the benefits that Plaintiffs' plan sponsors intended to offer. They concede that CHLIC advised Plaintiffs' plan sponsors that their prescription drug costs may differ from the amounts reimbursed to pharmacies. Def.'s Resp. to Pls.' SOF ¶ 52.[4] Plaintiffs rely instead on cherrypicked, out-of-context evidence regarding the benefits experiences of other participants (*i.e.*, persons other than Plaintiffs) and plans and plan sponsors that are not Plaintiffs' own plans and sponsors, which are not material to their claims. *See, e.g.*, Def.'s Resp. to Pls.' SOF at ¶¶ 19–35, 38–40, 42–49.

## IV. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFFS' RICO CLAIMS BASED ON ALLEGED MISREPRESENTATIONS AT THE POINT OF SALE.

Plaintiffs' alternative RICO theory based on alleged misrepresentations at the point of sale similarly fails for lack of evidence regarding Plaintiffs' interactions with pharmacists when purchasing their prescription drugs. *See* Mot. 23–26. Plaintiffs present no evidence from which a reasonable jury could find based on point-of-sale interactions that Plaintiffs suffered injures "by reason of" a RICO violation.

Plaintiffs rely heavily on their November 11, 2020 Supplemental Responses to CHLIC's First Set of Interrogatories.[5] *See* Opp. 31–32. But those interrogatory responses do little more

---

[4] This admission negates Plaintiffs' suggestion (at Opp. 15) that CHLIC's confidentiality practices were designed to mislead plan sponsors or suggest the existence of a scheme to defraud.

[5] CHLIC previously misstated that no supplemental interrogatory responses were served. They were in fact served but, as explained above, are wholly inadequate for purposes of creating an issue of material fact.

than parrot their vague and conclusory allegations from the pleadings. The responses include no dates, no names of pharmacies or individual pharmacists with whom Plaintiffs interacted, and no descriptions of the interactions with those pharmacists. That is not enough to survive summary judgment. *See* Mot. 23–26; *see also, e.g.*, *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 414 (E.D.N.Y. 2017) (dismissing RICO claim because the "[c]omplaint here does not identify any statements made by the arranger defendants that were fraudulent, much less the person who made those statements, the time they were made, or their content"); *Brown v. Coleman Investments, Inc.*, 993 F. Supp. 439, 447 (M.D. La. 1998) (granting summary judgment for lack of "allegations regarding the time, place or manner of specific actions taken by [defendant] which furthered the alleged fraud"); *cf. Project 74 Allentown, Inc. v. Frost*, 143 F.R.D. 77, 91 (E.D. Pa. 1992), *aff'd*, 998 F.2d 1004 (3d Cir. 1993) ("it is axiomatic that a plaintiff cannot prevail in a case alleging a RICO conspiracy to defraud without some proof that a fraud occurred").

Plaintiffs' deposition testimony (discussed at Opp. 32–33) is similarly insufficient. It describes generally that Plaintiffs feel aggrieved and believe that participants should have more transparency into pharmacy-benefit pricing, but that does not permit a jury to fill in the blanks about Plaintiffs' interactions with their pharmacists or determine that Plaintiffs suffered injury through misrepresentations made by pharmacists during prescription drug transactions.[6] *See* Pls' SOF Resp. at 3–9 ¶¶ 6, 8, 10, 12, 13 (citing no testimony specifying the time, place, speaker, and content of alleged point-of-sale misrepresentations).

Nor can Plaintiffs rely on an inference of reliance. The Opposition concedes that a number

---

[6] Plaintiffs do not respond to CHLIC's argument that communications with pharmacists—whom Plaintiffs have never alleged to be complicit in CHLIC's scheme—cannot support RICO liability. *See* Mot. 26. Now Plaintiffs contend that even Optum and Argus were not part of the RICO scheme, further removing Plaintiffs' point-of-sale interactions from the alleged scheme and further demonstrating that Plaintiffs' RICO claims fail for lack of causation evidence.

of the Plaintiffs used their benefits to fill prescriptions even after coming to learn of the alleged RICO scheme.  *See* Opp. 32–33 n.14.  Plaintiffs also acknowledge that pharmacists sometimes disclosed to participants information concerning the pharmacies' own financial arrangements with Optum, notwithstanding the confidentiality provisions in their contracts with Optum.  *See* Def.'s Resp. to Pls. SOF at ¶¶ 39, 45.  Those facts distinguish this case from the cases Plaintiffs cite for the proposition that payment may constitute circumstantial proof of reliance[7]; they also preclude an inference of reliance under *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010), which Plaintiffs do not address at all.  *See* Mot. 18–19.

## V. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE RICO CONSPIRACY CLAIM.

By arguing that Optum and Argus were "in the dark" about the RICO scheme, Opp. 1, and declining to defend Plaintiffs' RICO conspiracy claim, Plaintiffs essentially concede that six years of litigation has uncovered no evidence that CHLIC conspired with Optum or Argus to violate RICO.  CHLIC is therefore entitled to summary judgment on Plaintiffs' RICO conspiracy claim.  Plaintiffs' attempt to "withdraw" the claim at this stage (Opp. 4 n.2) is improper.  *See Muench Photography, Inc. v. Houghton Mifflin Hardcourt Pub. Co.*, No. 09 CV 2669(LAP), 2013 WL 4464002, at *4 (S.D.N.Y. Aug. 21, 2013) (granting summary judgment in defendant's favor where plaintiff sought to voluntarily withdraw claims after defendant moved for summary judgment).

## VI. CONCLUSION

For these reasons, CHLIC's motion for partial summary judgment should be granted.

---

[7] *See, e.g.*, *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) ("the record lacks evidence that any of USF's customers had knowledge of USF fraudulently inflating the cost component of its products"); *Chisolm v. TransSouth Fin. Corp.*, 194 F.R.D. 538, 562–63 (E.D. Va. 2000) (inferring reliance by distinguishing cases where the record may "undermine[] any claim of reliance by the plaintiffs"); *Klay v. Humana*, 382 F.3d 1241, 1259 (11th Cir. 2004) (explaining that transaction-specific misrepresentations "raise substantial individualized issues of reliance" not allowing for an inference of reliance).

Dated: June 16, 2022	Respectfully submitted,

   /s/ *Brian W. Shaffer*
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  +1.215.963.5000
Facsimile:  +1.215.963.5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
matthew.klayman@morganlewis.com

Lisa R. Weddle (phv08957)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone: +1.213.612.2500
Facsimile: +1.213.612.2501
lisa.weddle@morganlewis.com

Michael Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone:  +1.860.240.2945
Facsimile:  +1.860.240.2800
michael.blanchard@morganlewis.com

*Attorneys for Defendant Cigna Health and Life Insurance Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 16, 2022, the foregoing document and any attachments thereto were filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                */s/ Brian W. Shaffer*
                                                Brian W. Shaffer