## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| KIMBERLY A. NEGRON, DANIEL PERRY, COURTNEY GALLAGHER, NINA CUROL, ROGER CUROL, and BILLY RAY BLOCKER, JR.,<br><br>                             Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY et al.,<br><br>                             Defendants. | Civil No. 3:16-cv-1702 (JAM)<br><br>**FILED WITH REDACTIONS** |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' ADDITIONAL FACTS IN OPPOSITION TO SUMMARY JUDGMENT

Defendant Cigna Health and Life Insurance Company ("CHLIC") hereby submits its response to the additional "facts" stated in Plaintiffs' Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment (ECF 431). The length of this submission should not give the misimpression of any genuine disputes of facts relevant to resolution of CHLIC's motion for partial summary judgment ("Motion"). Many of Plaintiffs' "additional" submissions are duplicative of facts CHLIC submitted and/or are not material to CHLIC's Motion. CHLIC provides the below chart to help with clarity. Nothing in Plaintiffs' Local Rule 56(a)2 Statement of Facts creates a genuine issue of material fact or changes that partial summary judgment should be granted to CHLIC.

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| 1 | Cigna used Argus to adjudicate the prescription drug claims, including Plaintiffs' claims. Answer [ECF 145] at ¶ 43; 2008 Restated Agreement., Ex. 1, at 1 ("2008 Argus Agreement"); Deposition of Tyler Lester, Ex. 2, at 12:3-10 ("Lester Tr."). | Admitted that Argus processes transactions for certain of CHLIC's pharmacy benefit management plan sponsors and plan participants and that, under the terms of CHLIC's contract with Argus, Argus adjudicated prescription drug transactions, including Plaintiffs' transactions. The word "used" and the phrase "the prescription drug claims" are undefined and vague, and so the assertion is denied. |
| 2 | Cigna used Optum's network of pharmacies to fill prescriptions for Cigna's members, including Plaintiffs' prescriptions, and to collect the cost-share payments and to remit them up to Optum and then to Cigna. Answer ¶ 42; Lester Tr., Ex. 2, at 11:6-23, 12:22-13:11. | Admitted that in 2013, CHLIC entered into a contract with Catamaran, to which Optum is Catamaran's successor by merger in July 2015. CHLIC contracts with Optum to allow plan participants, including Plaintiffs, to access Optum's network of retail pharmacies. CHLIC denies the remaining assertions in this Paragraph because the materials cited do not support them. Neither the Answer (ECF 203) at ¶ 42 nor Mr. Lester's cited deposition testimony (ECF 432-2 at 11:6–23, 12:22–13:11) mention anything about collecting or remitting cost share amounts. The word "used" is undefined and vague, and so the assertion is denied. |
| 3 | Argus processed claims pursuant to "Plan Specifications" that Cigna represented were based on Cigna's Plan language. 2008 Argus Agreement, Ex. 1, at 19-21, 26. | Denied as written, as Plaintiffs mischaracterize the materials cited. Admitted that the 2008 contract between CHLIC and Argus states, in part: "CIGNA will provide Plan Specifications for each Benefit Plan in sufficient detail to permit Claims Processing and check issuance for Claims submitted under each Benefit Plan. Since CIGNA changes to Plan Specifications for Benefit Plans may require IPNS [Argus's claims processing system] changes, such changes will be coordinated with ARGUS to assure timely implementation and minimal disruption of ongoing Processing of Claims with respect to Benefit Plans." 2008 Argus Agreement, ECF 432-1 at 26. "Plan Specifications" are defined as "[t]he IPNS specifications, also known as 'edits' agreed to by CIGNA and ARGUS that reflect the combination of Plan and healthcare industry factors, clinical criteria and other factors that determine amounts due to Providers and Members under a Benefit Plan." *Id.* at 20. Thus, Plan Specifications are not solely based on plan language, but "reflect the combination of Plan and healthcare industry factors, clinical criteria and |

| *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|
| | other factors."  CHLIC admits that Argus processed claims according to Plan Specifications, which reflected the benefit design selections of plan sponsors.  *See* Ex. AA, Deposition of Tyler Lester ("Lester Tr.") at 318:25–333:13 (explaining how plan sponsors select their benefit designs); ECF 425-13 at pp. 4–5 (explaining that CHLIC's client, the plan sponsor, selects the benefits it chooses to offer; the plan sponsor's benefit selections are loaded into CHLIC's data system; using that information, CHLIC configures coding so that transactions are adjudicated according to the plan terms and associated adjudication logic; and CHLIC sends the configuration to its vendor, Argus). |
| 4 | Cigna had sole responsibility to "provide ARGUS with the Plan Specifications for such Benefit Plan in order for Processing Claims under such Benefit Plan." *Id.* at 22, 26. | Admitted that the quoted language appears in the cited document.  Admitted also that under its contract with Argus, CHLIC was responsible for providing Argus "with the Plan Specifications for such Benefit Plan in order for Processing Claims under such Benefit Plan."  The phrase "sole responsibility" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 5 | Argus was required to "process such Claims consistent with the instructions, values and coding programmed and loaded therein for Cigna-provided files … and Plan Specifications …." Argus had no role in determining the adjudication logic that determined the amount of the cost-share and, therefore, had no role in determining the amount of the cost-shares that resulted from Argus computers applying Cigna's logic. *Id.* at 22. | Admitted that the quoted language appears in the cited document.  Admitted also that under its contract with CHLIC, Argus agreed to "process such Claims consistent with the instructions, values and coding programmed and loaded therein for Cigna-provided files … and Plan Specifications …."  Admitted also that CHLIC's client, the plan sponsor, selects the benefits it chooses to offer; the plan sponsor's benefit selections are loaded into CHLIC's data system; using that information, CHLIC configures coding so that transactions are adjudicated according to the plan terms and associated adjudication logic; and CHLIC sends the configuration to its vendor, Argus.  ECF 425-13 at pp. 4–5. |
| 6 | Argus had no access to Cigna's Plans, Lester Tr., Ex. 2, at 152:10-15, and the Argus Agreement provided that "CIGNA acknowledges and agrees that ARGUS has no | Admitted. |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | responsibility to interpret Plans to resolve coverage issues and is merely applying the Plan Specifications programmed into [the processing program] to submissions of Claims," 2008 Argus Agreement, Ex. 1, at 22. | |
| 7 | The Cigna/Argus relationship and responsibilities were reinforced in a 2016 "Master Services Agreement," Ex. 3, and "Statement of Work No. 1," Ex. 4. Schedule A-1 to the Statement of Work specified that "Supplier [Argus] shall obtain and receive Benefit Plan Design information from Company [Cigna] for each Company Plan …. Company [Cigna] shall be responsible for the accuracy of all Benefit Plan Design information provided to Supplier [Argus]." Statement of Work No. 1, Schedule A-1, Ex. 5, at 1. | Admitted. |
| 8 | The members' cost-share responsibility was Cigna's sole responsibility under the Benefit Plan Design, with the cost-share responsibility being defined in the Master Services Agreement as "the amount that a Company [Cigna] Customer is required to pay under the terms of the applicable Company Plan for a Covered Drug." Master Services Agreement at 36; Deposition of Michelle Emanuel-Johnson, Ex. 8, at 10:23-11:19, 20:24-21:4, 22:15- 23:7; 8:21-9:17 ("Emanuel-Johnson Tr."); Lester Tr., Ex. 2, at 152:10-15; SJ Memo. at 14. Cigna created and sent to Argus a Word or Excel | Admitted that the quoted language appears in the cited document. Admitted also that CHLIC's client, the plan sponsor, selects the benefits it chooses to offer; the plan sponsor's benefit selections are loaded into CHLIC's data system; using that information, CHLIC configures coding so that transactions are adjudicated according to the plan terms and associated adjudication logic; and CHLIC sends the configuration to its vendor, Argus. ECF 425-13 at pp. 4–5. The phrase "[t]he members' cost-share responsibility was Cigna's sole responsibility under the Benefit Plan Design" is undefined, vague, and does not appear in the evidence cited by Plaintiffs, and so this assertion is denied. Members, not CHLIC, are responsible for any cost-share obligations. *See* Ex. AA, Lester Tr. at 357:17–358:3. |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | document that directed Argus what "co-pay logic" to use for Cigna's clients. Emanuel-Johnson Tr., Ex. 8, at 20:3-22:7, 26:4-30:22; 36:10-16. | |
| 9 | The Pharmacy Benefit Management Agreement dated June 10, 2013 ("Optum Agreement") provided that Cigna "shall have full control and authority over Cigna Plans and Benefit Plan Designs" and that Cigna "shall have full control and authority with respect to all Cigna Clients and/or Cigna's and its Affiliates business generally." Optum Agreement, Ex. 6, at Art. II, § 2.4 at 30. | Admitted. |
| 10 | The "Cigna Clients" over whom Cigna retained "full control and authority" included "any Person or group of Persons" with whom Cigna contracted to provide benefits, including "some or all employees, members, beneficiaries or other individuals associated with such Person or Group of Persons." *Id.* at Art. I, § 1.1 at 4. | Admitted that the quoted language appears in the cited document.  Admitted also that CHLIC's contract with Optum provided, in part, that "[a]s between" CHLIC and Optum, CHLIC and its affiliates "shall have full control and authority with respect to all Cigna Clients and/or Cigna's and its Affiliates' business generally."  ECF 432-6 at Art. II § 2.4 at 30.  The cited document does not say that CHLIC retained full control and authority "over" Cigna Clients, and so the assertion is denied. |
| 11 | The cost-share element of the Benefit Plan Designs over which Cigna maintained "full control and authority" was defined in the Optum Agreement as "the amount that a Cigna Customer is required to pay under the terms of the applicable Cigna Plan for a Covered Drug." *Id.* at Art. I, § 1.1 at 7. | Admitted that the quoted language appears in the cited document.  Admitted also that CHLIC's contract with Optum provided, in part, that "[a]s between" CHLIC and Optum, CHLIC and its affiliates "shall have full control and authority over Cigna Plans and Benefit Plan Designs and over the product development process pertaining to Cigna Plans and Benefit Plan Designs."  ECF 432-6 at Art. II § 2.4 at 30. |

|  | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| 12 | Cigna did not provide Argus or Optum with "knowledge of or access to" Cigna's plan documents. SJ Memo. at 14. | Admitted.  *See* CHLIC's SOF at ¶¶ 19, 32. |
| 13 | Optum made available to Cigna a network of pharmacies. *Id.* at Art. III, § 3.1(a)(iv) at 31; Schedule 8 to Optum Agreement, Ex. 7; Answer ¶ 42 [ECF 145]. Schedule 8 provided that Optum "shall negotiate contract, create, and maintain network(s) of Participating Pharmacies that are available to provide prescription drug benefits for or under Included Plans and to Cigna Customers." Schedule 8, Ex. 7, § 2.1 at 1. | Admitted. |
| 14 | Optum entered into "Participating Pharmacy Contracts" and Cigna had the right to review the terms of those contracts and force compliance with the Optum Agreement. Schedule 8, Ex. 7, §§ 4.2 & 4.3 at 8. | Admitted that under CHLIC's contract with Optum, CHLIC had "the right to review [Optum]'s Participant Pharmacy Contract Templates for compliance with the Agreement … twice each calendar year."  ECF 432-7, Sch. 8 § 4.2 at 8. Admitted also that CHLIC's contract with Optum provided, in part, that "[u]pon reasonable request by Cigna, [Optum] shall make appropriate personnel available to discuss with Cigna any concerns Cigna may have regarding whether a Participating Pharmacy Contract includes all clauses required by applicable Law, this Schedule 8, and the Agreement." *Id.*, Sch. 8 § 4.3 at 8.  The phrase "force compliance" is vague, undefined, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 15 | Cigna had the right to terminate a pharmacy from Optum's network. *Id.* § 2.3.7 at 5. | Admitted only that CHLIC's contract with Optum provided, in part, that "[i]f at any time there exists a valid cause (as reasonably mutually determined by Cigna and [Optum], but in any event including any situation where Cigna or [Optum] reasonably believes that the Participant Pharmacy has violated [Optum]'s applicable fraud, waste and abuse policies) for termination of a Participating Pharmacy from a PBM Pharmacy Network, upon Cigna's request, |

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| | | [Optum] shall terminate such Participant Pharmacy's provision of services to Cigna Customers in accordance with applicable law."  ECF 432-7, Sch. 8 § 2.3.7 at 5.  The phrase "right to terminate" is vague, undefined, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 16 | Optum had to ensure that its network pharmacy communications with Cigna's members were "consistent with Cigna's marketing strategies, brand management initiatives and other reasonable Cigna goals, initiatives and plans." *Id.* § 5.7.1(c) at 11. | Admitted that the quoted language appears in the cited document.  Admitted also that under CHLIC's contract with Optum, Optum agreed, in part, "that it is the intent that all Communications distributed or disseminated by [Optum] pursuant to this <u>Schedule 8</u> shall be consistent with Cigna's marketing strategies, brand management initiatives, and other reasonable Cigna goals, initiatives and plans."  ECF 432-7, Sch. 8 § 5.7.1(c) at 11. The phrase "had to" is vague, undefined, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 17 | To fill a prescription, a Cigna member, including Plaintiffs, would present his or her prescription to the Optum network pharmacy, which would enter the prescription information into a computer. Argus' system would instantaneously process the prescription based on the false cost-share logic that Cigna created and required Argus to use. Argus would then inform the Optum network pharmacy the amount of the cost-share to charge the member. Emanuel-Johnson Tr., Ex. 8, at 37:9-39:3. | Denied, as the cited testimony does not support these assertions.  When asked "what happens for a paid claim to become a paid claim in a point of sale transaction," Ms. Emanuel-Johnson, Argus's corporate representative, responded: "The pharmacy would have received information in regards to the member and the prescription that has been prescribed by a physician for that member.  The pharmacy would then submit using industry standard information so that the claim is routed to, in this case, Argus.  In the adjudication of a claim, we're looking at potentially hundreds of elements.  The key elements would be whether or not that member was eligible under the plan first, and then we're looking at the eligibility of a pharmacy, and then the other high-level components that are leveraged are inclusive of drug coverage exclusions, what the member co-payment may be, and/or deductible, and then we go through all of those edits and then return a response to the pharmacy indicating, you know, the position of the claim, if it's paid, in this case it's because that's what you asked for, and then what the co-payment or cost out of member pocket will be."  ECF 432-8 at 37:9–38:13.  Ms. Emanuel-Johnson further testified about when a paid claim exists.  *Id.* at 38:21–39:3 ("Q: So for purposes of this definition, a paid claim |

|  | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
|  |  | exists before the member leaves the pharmacy with the prescription? [Objections.] A: Yes."). That is the extent of her cited testimony. Neither CHLIC nor Optum are referenced at all. She does not testify about who the pharmacy "receive[s] information" from and she does not state or imply that any "false cost share logic" is involved. |
| 18 | The flow of funds was handled through a periodic reconciliation. Argus would fund the pharmacies at the point-of-sale, Cigna would fund Argus, and Optum would fund Cigna. Lester Tr., Ex. 2, at 166:23- 167:22. The "clawbacks" were "net[ted] out" in the reconciliation between Optum and Cigna, *id.,* and, thereby, Optum "sen[t] the spread back to Cigna," Deposition of Stephanie Byrne, Ex. 9, at 77:9-19 ("Byrne Tr."). | Admitted only that, pursuant to the relevant contracts, the flow of funds was handled through a periodic reconciliation, and Argus would fund the pharmacies at the point-of-sale, CHLIC would fund Argus, and Optum would fund CHLIC. ECF 432-2 at 166:23–167:22. The cited testimony does not use the term "clawbacks" or describe "clawbacks" as being "net[ted] out," and so the assertion is denied. |
| 19 | Cigna's CEO served as the "sponsor" for the scheme, euphemistically called the "Pharmacy Over Payments" project. Ex. 10 at 199867. | Plaintiffs' Paragraph 19 is immaterial to the resolution of CHLIC's Motion. CHLIC moved for summary judgment on Plaintiffs' RICO claims—and not on Plaintiffs' ERISA claims—on certain limited grounds described below (hereinafter, "CHLIC SJ Grounds"). They include the argument that Plaintiffs' RICO claims are based on the flawed premise that CHLIC "conducted the affairs of" Optum and Argus, two completely separate, independent vendors that contracted to provide services to CHLIC's pharmacy benefit management operations. ECF 423 at 2. In its Motion, CHLIC argues that "[w]hatever disputes may exist regarding the parties' view of various snippets of plan language, there is zero evidence that CHLIC operated or managed Optum or Argus, and Plaintiffs' RICO claims fail for this dispositive reason." *Id.* at 3. CHLIC also argues that Plaintiffs' RICO claims fail for other, independent reasons, including: (i) Plaintiffs cannot establish that any purported misrepresentations caused them any cognizable injury under RICO because none of the Plaintiffs |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | | read or relied on any plan language in deciding to enroll in their group benefit plans or to obtain prescription drugs under their plans, *id.*; (ii) Plaintiffs cannot establish that any alleged misrepresentations by CHLIC in their plan documents constitute predicate acts of mail or wire fraud, *id.* at 4; and (iii) with respect to alleged point-of-sale misrepresentations, none of the Plaintiffs can offer evidence from which a factfinder could conclude that a RICO violation occurred during those interactions, as none has presented sufficient evidence of the particular interactions at issue, *id.*  Plaintiffs' Paragraph 19 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.<br><br>Admitted only that the cited document indicates that the CEO of Cigna Corporation was listed as "Project Sponsor" for "Argus Transition: Pharmacy Over Payments HRA Claims."  This project was a work order change requested by Argus to modernize its technology platform to help facilitate claims processing more efficiently, and the project sponsor is the individual whose budget code is used by the project manager to pay for the project.  *See* Ex. BB, Deposition Transcript of David Cordani ("Cordani Tr.") at 52:11–53:23.  Plaintiffs' characterization of the project as a "scheme" that was named "euphemistically" is inappropriate argument and unsupported by the cited document, and so the assertion is denied. |
| 20 | "Clawbacks" were a "top priority" due to the fact that, without them, "Cigna [wa]s losing approximately $100M a year." Ex. 11 at 248002; Ex. 12 at 56019. | Plaintiffs' Paragraph 20 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale. |

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| | | The cited document does not use the term "clawbacks," describe "clawbacks" as a "top priority," or say that without "clawbacks" "Cigna [wa]s losing approximately $100M a year," and so the assertion is denied. |
| 21 | Implementation of "clawbacks" was an "urgent request from management" to "react to a missed revenue opportunity." Ex. 13 at 54923-24. | Plaintiffs' Paragraph 21 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.<br><br>The cited document does not use the term "clawbacks" or describe "clawbacks" as an "urgent request from management" to "react to a missed revenue opportunity," and so the assertion is denied. |
| 22 | Christopher Hocevar referred to the money that Cigna obtained through "clawbacks" as "trapped money." Deposition of Christopher Hocevar, Ex. 14, at 100:19-101:2, 113:25-114:9; 141:25-142:9. ("Hocevar Tr."). | Plaintiffs' Paragraph 22 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.<br><br>Admitted only that Mr. Hocevar described "trapped money" as money retained by retail pharmacies in excess of their contracted reimbursement rates and as money that was due to CHLIC under its contract with Optum.  Mr. Hocevar testified that "there was trapped money that sat between the contracted rates with Catamaran and what sat at the retail side," which "were trapped dollars at pharmacies," and which the CHLIC team was working on reconciling. *See* Ex. CC, Deposition Transcript of Christopher Hocevar ("Hocevar Tr.") at 100:21–101:2; 114:4–13; 121:10–21.  The cited testimony does not use the word "clawbacks" or state that CHLIC "obtained money" through "clawbacks," and so the assertion is denied. |
| 23 | The "trapped money" was "spread" and, when paid to | Plaintiffs' Paragraph 23 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion |

|  | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
|  | Cigna through the reconciliation process, constituted the "clawback" amount. *Id.* at 100:19-101:2, 113:25-114:9; 121:7-21. | because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.<br><br>The cited testimony does not use the terms "spread" or "clawback" and does not describe "trapped money" as "spread" or "clawback," and so the assertion is denied. |
| 24 | Knowledgeable Cigna employees told management that there were "inconsistencies between plan language and how we administer" claims. Ex. 15 at 4. | Plaintiffs' Paragraph 24 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 24, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion.<br><br>Denied because the cited document refers to unspecified "inconsistencies between plan language and how we administer *UM protocols*."  ECF 432-15 at 4 (emphasis added).  "UM" stands for "utilization management," which "has no single, well-accepted definition," but generally refers to "a set of techniques used by or on behalf of purchasers of health care benefits to manage health care costs by influencing patient care decision-making through case-by-case assessments of the appropriateness of care prior to its provision." https://www.ncbi.nlm.nih.gov/books/NBK234995/. UM protocols are not at issue in this case.  In addition, the term "[k]nowledgeable" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied.  The cited document does not identify the author by name, establish that the author was "[k]nowledgeable," or prove that the document was shared with management, and so the assertion is denied. |
| 25 | Cigna referred to these "inconsistencies" as "gapped language." Ex. 15 at 2. | Plaintiffs' Paragraph 25 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 25, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. |

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| | | Plaintiffs' Paragraph 25 is also immaterial because it refers to plan language regarding UM protocols, which are not at issue in this case. |
| | | Denied because the cited document does not indicate that CHLIC referred to "these 'inconsistencies'" as "gapped language." The phrase "gapped language" appears on page 2 of the cited document and the word "inconsistencies" appears on page 4 of the cited document. Nor does the cited document identify inconsistencies with plan language except as to UM protocols, and so the assertion is denied. |
| 26 | In a 2013 email exchange, knowledgeable Cigna employees confirmed that the Plan language at issue, known internally as "copay G logic," entitled members to cost-share amounts that compared three factors: (1) the stated copay amount, (2) the usual and customary pharmacy charge, and (3) the amount "agreed to by the pharmacy with Cigna." Ex. 16 at 7435181. In the email, a Cigna employee wrote, "The member will always pay the lowest of these three amounts." *Id.* The email also gave an example of how the cost-share logic should have worked. | Plaintiffs' Paragraph 26 is immaterial to the CHLIC SJ Grounds. Through Paragraph 26, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. Plaintiffs' Paragraph 26 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans. Rather, the cited document addresses CHLIC's Individual and Family Plans. None of the Plaintiffs had Individual and Family Plans; rather, they had employer-sponsored group health plans. <br><br> Admitted that the quoted language appears in the cited document. The term "[k]nowledgeable" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 27 | In another 2013 email exchange, knowledgeable Cigna employees similarly stated: "Our copay logic looks at the copay, U&C, and allowed cost …. This ensures the customer pays the *lowest* amount. The allowed cost is based on our contract with the pharmacy — the reimbursement amount we agree to for a drug | Plaintiffs' Paragraph 27 is immaterial to the CHLIC SJ Grounds. Through Paragraph 27, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. Plaintiffs' Paragraph 27 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans. Rather, the cited document involves the |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | for a pharmacy." Ex. 17 at 246200. | benefit design selected by plan sponsor "Barrick," which is not the plan sponsor for any of the Plaintiffs.<br><br>Admitted that the quoted language appears in the cited document.  The term "[k]nowledgeable" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 28 | In a document that Cigna used to educate its sales force as to how its copay logic worked, Byrne Tr., Ex. 9, at 59:4-7, Cigna explained how the copay G logic at issue in this case was modifying prior "copay K" language. Ex. 18 at 50555. The document explained that copay K only had two comparison points: the stated copay and the usual and customary charge. *Id.* The document noted that "[t]his method often results in the pharmacy charging the customer more than Cigna's allowed cost, or the cost at which Cigna has agreed to reimburse the pharmacy for any given drug." *Id.* (emphasis added). Cigna further explained to its sales force that "[t]he new standard method, Copay G, adds a third point in the price comparison — the allowed cost. With the Copay G method, the customer pays the lowest of the applicable copay, U&C, or allowed cost. *This guarantees that the customer will pay the lowest possible price." Id.* (emphasis in original). The document provided an example of how the logic worked. | Plaintiffs' Paragraph 28 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 28, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. Plaintiffs' Paragraph 28 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.<br><br>Admitted that the quoted language appears in the cited document.  The cited testimony does not state that the referenced document was in fact "used to educate" CHLIC's sales force, and so the assertion is denied.  The phrase "how its copay logic worked" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 29 | Cigna knew that the language at issue in this case entitled all | Plaintiffs' Paragraph 29 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 29, Plaintiffs |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | members with that language, including Plaintiffs, to pay cost-share amounts that never would exceed the amount paid to the pharmacy for any particular prescription drug. Ex. 19 at 102075; Ex. 20 at 185904; Ex. 21 at 50557; Ex. 22 at 212990. | improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. Plaintiffs' Paragraph 29 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.  For example, ECF 432-19 involves "███████████," which is not the plan sponsor for any of the Plaintiffs.<br><br>Denied because the cited documents do not quote or reference "the language at issue in this case."  The phrases "language at issue in this case" and "amount paid to the pharmacy for any particular prescription drug" are undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 30 | In early 2013, draft language was circulated in conjunction with "Pharmacy benefit release 2013." *See, e.g.,* Ex. 23 at 1; Ex. 24 at 1. The draft proposed striking "to the pharmacy" from the Copay G Language. *Id.* However, the change was not made. | Plaintiffs' Paragraph 30 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 30, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. Plaintiffs' Paragraph 30 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.<br><br>Denied.  The cited documents do not contain the phrase "Pharmacy benefit release 2013" or show that draft language was circulated, and so those assertions are denied.  Admitted that the cited documents contained strikethroughs of the phrase "to the Pharmacy."  Plaintiffs cite no evidence showing that "the change was not made," so the assertion is denied. |
| 31 | When Cigna employees reviewed the plan language in 2016, employees predicted that Cigna would face "a lawsuit by a customer." Ex. 25 at 491453. | Plaintiffs' Paragraph 31 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 31, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. |

| *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|
| | Plaintiffs' Paragraph 31 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.<br><br>Denied that the cited document's generic reference to a "lawsuit by a customer" refers to a lawsuit such as that brought by Plaintiffs based on allegations regarding their "plan language" regarding their cost-share obligations.  Denied also that the cited document "predicted" that CHLIC "would" face a lawsuit because the document purports to assess potential risks; it did not offer a prediction about what would or would not happen.  The terms "the plan language" and "a lawsuit by a customer" are undefined and vague, and so the assertion is denied. |
| 32 | Cigna employees contemporaneously described "clawbacks" as "unreasonable" and "egregious," Ex. 26 at 491619, and could not "believe we can live with ourselves charging the member 172% more than what [a] drug costs," *id.* at 491623. | Plaintiffs' Paragraph 23 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.  Plaintiffs' Paragraph 32 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.  Rather, the cited document expressly pertains to plan sponsors and members not involved in this case.<br><br>Admitted that the quoted language appears in the cited document.  The word "contemporaneously" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied |
| 33 | Another employee wrote, "it seems strange that Cigna would charge a member for a copay that exceeds the ingredient cost + dispensing fee + tax, if applicable *[i.e., the amount that Cigna paid the pharmacy]*. To me that is no longer a 'co'pay, but more of a single | Plaintiffs' Paragraph 33 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 33, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion.  Plaintiffs' Paragraph 33 is also immaterial because it does not address any of the Plaintiffs, their various |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | (over)payment by the customer." Ex. 27 at 54926. | prescription drug benefit plans, or the sponsors of those plans. |
| | | Admitted that the quoted language, but not the bracketed language, appears in the cited document. The bracketed phrase "the amount that Cigna paid the pharmacy" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 34 | In one of Plaintiff Negron's transactions, Cigna required Argus to adjudicate and required Optum, through its network pharmacy, to collect a copayment of $10.00, even though the pharmacy was only being paid $6.06 for that prescription drug, resulting in a $3.94 "clawback." Declaration of Launce B. Mustoe, Jr., R.Ph. ¶ 4. | Admitted that Plaintiff Negron's prescription drug transaction records reflect a transaction in which under the terms of Plaintiff Negron's plan, she would have been expected to pay a copayment of $10.00. Admitted that according to CHLIC prescription drug transaction records, the pharmacy's reimbursement under its contract with Optum would have been expected to be $6.06. The phrase "Cigna required Argus to adjudicate and required Optum, through its network pharmacy, to collect" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 35 | Cigna's Vice President of Pharmacy expressed disbelief that its "uneducated" members had figured out that Cigna was "clawing back" "spread." When a subordinate asked the vice president "how does this person know about a 'spread,'" the vice president responded, "no clue." Ex. 28. at 367625. | Plaintiffs' Paragraph 23 is immaterial to the CHLIC SJ Grounds and resolution of CHLIC's Motion because, *inter alia*, it has no bearing on whether CHLIC conducted the affairs of Optum or Argus or whether Plaintiffs suffered an injury by reason of alleged misrepresentations by CHLIC, whether in plan documents or at the point of sale.

Denied that Cigna's Vice President of Pharmacy wrote that Cigna was "clawing back" "spread." Plaintiffs' characterization of the author as expressing "disbelief" is inappropriate argument, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. Admitted that the quoted language (other than "clawing back") appears in the cited document. |
| 36 | The 2008 Argus Agreement provided that "Proprietary Information shall also mean all information … pertaining to CIGNA's business and services, | Admitted. |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | Plan Specifications, and the identity of or any information concerning Members of CIGNA's Plans, customers and Providers." 2008 Argus Agreement, Ex. 1, § 14(a) at 9. | |
| 37 | The Optum Agreement defined "Confidential Information" broadly to include all of Cigna's "information relating to costs, profits … pricing policies, operational methods or business affairs." Optum Agreement, Ex. 6, Art. I, § 1.1 at 6-7. | Admitted that CHLIC's contract with Optum defined "Confidential Information" to include, among other things, "all confidential and proprietary information of, or relating to, a Party (including, in the case of Cigna, a Cigna Client)," including "information relating to costs, profits … pricing policies, operational methods or business affairs." |
| 38 | A form Optum network pharmacy agreement provided that the "Pharmacy will not share information concerning the terms of this Agreement or other proprietary information, including but not limited to, reimbursement rates and pricing as provided to Pharmacy …." Ex. 29 ¶ 3.3 at 177316. | Admitted only that a template retail pharmacy contract produced by Optum in this litigation provides, in part, that "[u]nless required to do so by operation of law or order of any court or governmental authority, Pharmacy will not share information concerning the terms of this Agreement or other proprietary information, including but not limited to, reimbursement rates and pricing as provided to Pharmacy by [Optum] with any other person or entity without the permission of [Optum]. If any such disclosure is made or contemplated, Pharmacy will notify [Optum]." ECF 432-29 at ¶ 3.3 at 177316–177317. |
| 39 | A Cigna employee wrote: "This provider has been telling the member many things that should not be shared as it is not the members' issue. [Cigna] need[s] to educate the provider as to not to discuss reimbursements with the member or reach out directly to the employer regarding the problem." Ex. 26 at 491624. | Plaintiffs' Paragraph 39 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.  Rather, the cited document expressly pertains to plan sponsors, plan participants, and pharmacies not involved in this case.<br><br>Admitted only that the quoted language, other than the bracketed language, appears in the cited document.  ECF 432-26 at 491624.  Denied that the word "[t]hey" in the cited document refers to Cigna because, from the context of the email, it is clear that the Cigna employee was noting that it was Optum's |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | | responsibility to manage its retail pharmacy network in accordance with its contractual obligations to CHLIC. |
| 40 | A Cigna employee wrote that "Cigna should avoid explaining the 'spread pricing' model." Ex. 30 at 433127. | Plaintiffs' Paragraph 40 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits. Rather, the cited document expressly pertains to plan sponsors, plan participants, and pharmacies not involved in this case. Admitted only that the quoted language appears in the cited document. |
| 41 | Cigna, through Optum, prohibited a network pharmacy from charging less than the cost-share amounts that Cigna directed. Cigna retained "full control and authority" over its plan benefits and members. Optum Agreement, Ex. 6, at Art. II, § 2.4 at 30. | Admitted that CHLIC's contract with Optum provided, in part, that "[a]s between" CHLIC and Optum, CHLIC and its affiliates "shall have full control and authority with respect to all Cigna Clients and/or Cigna's and its Affiliates' business generally" and "shall have full control and authority over Cigna Plans and Benefit Plan Designs and over the product development process pertaining to Cigna Plans and Benefit Plan Designs." ECF 432-6 at Art. II § 2.4 at 30. The referenced provision does not say that CHLIC, "through Optum, prohibited a network pharmacy from charging less than the cost-share amounts that Cigna directed" and says nothing about network pharmacies or the amounts network pharmacies may charge, and so the assertion is denied. |
| 42 | The agreements that Optum had with its network pharmacies required that pharmacies "with respect to any Claim, collect any Copayment indicated in the claim response message from Catamaran to the Pharmacy in the exact amount specified in that message." Ex. 29 ¶ 3.1(l) at 3. | Admitted only that under a template retail pharmacy contract produced by Optum in this litigation, retail pharmacies agree, among other things, that they will "with respect to any Claim, collect any Co-payment indicated in the claim response message from [Optum] to the Pharmacy in the exact amount specified in that message and not seek any further compensation from Member for dispensing the pharmaceutical product." ECF 432-29 at ¶ 3.1(*l*) at 3. |

|  | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| 43 | Cigna considered Optum network pharmacy clauses "compulsory." Ex. 31 at 180952. | Plaintiffs' Paragraph 43 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.  Rather, the cited document pertains to plan sponsors, plan participants, and pharmacies not involved in this case.

Admitted only that in an email from a CHLIC employee to an Optum employee discussing a pharmacy unrelated to Plaintiffs or their prescription drug benefits, the CHLIC employee wrote, in part, that "Cigna's contract with the client and [Optum]'s contract with the pharmacy are two entirely separate agreements that are administered independently of one another" and that "it is compulsory that the pharmacy not discuss these agreements with the member and/or the client."  ECF 432-31 at 180952. |
| 44 | When one pharmacist labeled deductible "clawbacks" a "[n]ew ponzi scheme," Cigna's "Pharmacy Network Operations" a Cigna employee stated, "I explained that [the pharmacist] is not to discuss reimbursement matters with members." Ex. 32 at 309576-577. | Plaintiffs' Paragraph 44 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.

The term "clawbacks" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 45 | After a pharmacy disclosed Cigna's "clawback" scheme to a customer, a Cigna employee wrote that "our network pharmacies are contractually prohibited from discussing pricing with our customers. … Should the pharmacy continue to break their contract, Juan advised that they would be reviewed for possible termination from the network." Ex. 33 at 7504938. | Plaintiffs' Paragraph 45 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.

The term "clawback" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied.  Admitted only that the remaining quoted language appears in the cited document. |

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| 46 | A Human Relations employee of a Cigna client contacted Cigna about a pharmacist's concerns "about the way CIGNA is billing participants and charging her back for portions of the prescription cost." Ex. 34 at 180859. The HR employee wrote, "It looks like the employee is paying the pharmacy the negotiated price, plus paying CIGNA as well." *Id.* at 180856. Because "[o]ne of Cigna's earnings driver[s] [wa]s spread pricing on generic prescriptions" (albeit unknown to members), Ex. 35 at 192937, Cigna worked to prohibit disclosures to the client about the "clawbacks." To its own customer service representative, Cigna explained "to answer your question so you can understand, yes, the $7.73 comes back to Cigna as it is above the Pharmacy's contracted reimbursement rate which calculated to $11.36. I do not believe you should be communicating this to the Client nor should you be discussing pharmacy reimbursement with the client." Ex. 34 at 180852. | Plaintiffs' Paragraph 46 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.<br><br>Denied that "spread pricing on generic prescriptions" was "unknown to members," as that statement is not supported by the evidence cited by Plaintiffs. CHLIC clients have the option of whether they want to be in a spread pricing environment or a pass-through pricing environment. *See* Ex. AA, Lester Tr. at 318:25-333:13; *see also* Pls.' SOF Resp. at 2 ¶ 4 (admitting that "[t]raditional 'spread' pricing and pass-through pricing are the two most common types of benefit designs that plan sponsors select from to pay for prescription drug benefit costs"). The documents cited by Plaintiffs—one from 2014 (ECF 432-34) and one from 2016 (ECF 432-35)—give no indication that they have any relation to one another, and so Plaintiffs' attempt to read them together is improper argument, and so the assertion is denied. The term "clawback" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 47 | Cigna directed Optum to warn the pharmacist against such disclosures: "Catamaran [now Optum] reached out to the pharmacy and spoke with Ann [pharmacist] … C[atamaran] advised Ann that she cannot contact the member's employer as this would hold her out of contract." *Id.* at 180853. | Plaintiffs' Paragraph 47 is immaterial to the resolution of CHLIC's Motion because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.<br><br>Admitted only that the quoted language appears in the cited document. Even assuming "the pharmacist" refers to the pharmacist described in Paragraph 46 *supra* and "such disclosures" refers to disclosures |

| | *Plaintiffs' Additional Facts* | *CHLIC's Response* |
|---|---|---|
| | | regarding pharmacy reimbursement described in Paragraph 46 *supra*, the terms "pharmacist" and "such disclosures" are undefined and vague, and so the assertion is denied. |
| 48 | Disclosure of the "clawbacks" to Cigna's clients and members was a violation of the network pharmacy contract and cause for termination from the network. *See, e.g.,* Ex. 33 at 7504938; Ex. 37 at 158092; Ex. 29 ¶ 3.3 at 177316-17. | Plaintiffs' Paragraph 48 is a legal conclusion that is not properly considered in a statement of facts on summary judgment.  Plaintiffs' Paragraph 47 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, the sponsors of those plans, or the pharmacies where Plaintiffs used their benefits.<br><br>The evidence cited by Plaintiffs does not support the assertion, and so it is denied. |
| 49 | Client and customer reporting was done in such a way as to conceal the "clawbacks" from employers and members. Ex. 38 at 55857. | Plaintiffs' Paragraph 49 is also immaterial because it does not address any of the Plaintiffs, their various prescription drug benefit plans, or the sponsors of those plans.<br><br>The evidence cited by Plaintiffs does not support the assertion, and so it is denied.  Admitted only that the document cited by Plaintiffs provides, in part, that CHLIC typically shared client pricing with plan sponsors and members but typically did not share pharmacy pricing with plan sponsors or members. Ex. 38 at 55857. |
| 50 | CEO David Cordani described the "clawbacks" as "micro overpayments." Deposition of David Cordani, Ex. 36 at 52:11-18. | Admitted only that Mr. Cordani described "micro overpayments" whereby retail pharmacies inappropriately retained money in excess of their contracted reimbursement rates.  The term "clawbacks" is undefined, vague, and not found in the evidence cited by Plaintiffs, and so the assertion is denied. |
| 51 | Effective January 1, 2017, Cigna added the following language to Plaintiff Negron's Plan: "Cigna may pay a Network Pharmacy a different amount for a Prescription Drug Product than the plan pays to Cigna." Ex. 39 | Plaintiffs' Paragraph 51 is immaterial to the CHLIC SJ Grounds.  Through Paragraph 51, Plaintiffs improperly attempt to interject a dispute about the parties' view of various snippets of plan language (and what benefits Plaintiffs were entitled to), but that is immaterial to resolution of CHLIC's Motion. |

| | Plaintiffs' Additional Facts | CHLIC's Response |
|---|---|---|
| | at 68 (Prescription Drug Charge). | Admitted only that the quoted language appears in the referenced document.  Denied that "Cigna added the [quoted] language to Plaintiff Negron's Plan," as the decision regarding the language in that plan belonged to its plan sponsor, Putnam Investments, Inc.  *See* Ex. AA, Lester Tr. at 318:25-333:13. |
| 52 | Cigna advised employers that "[t]he amount paid to the Retail Pharmacy for Brand, Generic, or Specialty Drug Claims may or may not be equal to the amount charged to the employer, and CHLIC will absorb or retain any difference." *See* Ex. 41 at 1323; Ex. 42 at 1531; Ex. 43 at 336 (emphasis added). | Admitted. |
| 53 | Plaintiffs served their Supplemental Responses to CHLIC's First Set of Interrogatories on November 11, 2020 and those responses describe the point-of-sale misrepresentations and Plaintiffs' injuries. Ex. 45. | Admitted that Plaintiffs served Supplemental Responses to CHLIC's First Set of Interrogatories on November 11, 2020 describing at a high level of generality the alleged point-of-sale misrepresentations and Plaintiffs' alleged injuries. The descriptions in the cited evidence are immaterial and insufficient to establish any genuine dispute of material fact because, *inter alia*, they fail to describe in detail the who, what, when, where, and how of Plaintiffs' interactions with retail pharmacies, which is necessary to prove an injury "by reason of" a RICO violation. |
| 54 | Plaintiffs' deposition testimony and Cigna documents provide evidence of Plaintiffs' reliance on Cigna's misrepresentations and omissions. Deposition of Kimberly Negron, Ex. 46, at 110:4-13, 125:15-23; Deposition of Roger Curol, Ex. 47, at 100:24-101:5; Deposition of Billy Ray Blocker, Ex. 48, at 94:23-95:9; Deposition of Daniel Perry, Ex. 49, at 67:10-23, 68:8-22. | Denied, as the cited testimony does not provide support for this assertion because, *inter alia*: (1) the cited testimony references alleged misrepresentations purportedly made by pharmacists, not by CHLIC; (2) the cited testimony fails to describe in detail the who, what, when, where, and how of Plaintiffs' interactions with retail pharmacists, which is necessary to prove an injury "by reason of" a RICO violation; and (3) Plaintiffs fail to cite any evidence at all concerning Plaintiffs Nina Curol or Courtney Gallagher. |

Dated: June 16, 2022

/s/ Brian W. Shaffer
Brian W. Shaffer (phv08654)
Jeremy P. Blumenfeld (phv23943)
Matthew D. Klayman (phv08656)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001
brian.shaffer@morganlewis.com
jeremy.blumenfeld@morganlewis.com
matthew.klayman@morganlewis.com

Lisa R. Weddle (phv08957)
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Telephone: +1.213.612.2500
Facsimile: +1.213.612.2501
lisa.weddle@morganlewis.com

Michael D. Blanchard (ct25891)
MORGAN, LEWIS & BOCKIUS LLP
One State Street
Hartford, CT 06103
Telephone: +1.860.240.2945
Facsimile: +1.860.240.2800
michael.blanchard@morganlewis.com

*Attorneys for Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, the foregoing document was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<em>/s/ Brian W. Shaffer</em>

Date: September 16, 2022                    Brian W. Shaffer